## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 1:21-cv-01417-RGA |
| v. | ) | |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

_____

## **DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

OF COUNSEL:

David A. Jakopin
Dianne L. Sweeney
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

    *Attorneys for Akoustis Technologies, Inc.*
    *and Akoustis, Inc.*

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

    *Attorneys for Akoustis Technologies, Inc.*
    *and Akoustis, Inc.*

**TABLE OF CONTENTS**

Page

I.   NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 1

II.  SUMMARY OF ARGUMENT ................................................................................... 1

III. INTRODUCTION ..................................................................................................... 1

IV.  STATEMENT OF ALLEGED FACTS FROM QORVO'S COMPLAINT ........................ 4

V.   LEGAL STANDARD ................................................................................................. 6

VI.  ARGUMENT ............................................................................................................ 7

      A.   QORVO FAILS TO STATE A CLAIM FOR VIOLATION OF UNFAIR OR
          DECEPTIVE ACTS/PRACTICES (N.C.G.S. SECTION 75-1.1) .............................. 7

          1.   Employee Mobility is not an Unfair Practice/Act .................................. 8

          2.   A Breach of Contract is not an Unfair Practice/Act ............................ 11

          3.   The Inevitable Disclosure Doctrine Is Not an Unfair Practice/Act ..................... 13

      B.   QORVO FAILS TO STATE A CLAIM FOR FALSE MARKING ........................... 14

      C.   QORVO FAILS TO STATE A CLAIM FOR FALSE ADVERTISING .................. 16

      D.   QORVO FAILS TO SATISFY THE KNOWLEDGE AND INTENT PLEADING
          REQUIREMENTS FOR ENHANCED DAMAGES BASED ON WILLFULNESS
          AND INDUCED PATENT INFRINGEMENT, AS WELL AS THE PLEADING
          REQUIREMENT FOR PAST DAMAGES .............................................................. 18

VII. CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
    581 F. Supp. 2d 654 (D. Del. 2008)....................................................................17

*Analog Devices, Inc. v. Michalski*,
    157 N.C. App. 462 (2003) ............................................................................13

*Anesthesiology Consultants, PLLC v. Charlotte-Mecklenburg Hosp. Auth.*,
    No. 18 CVS 5899, 2018 WL 3304441 (N.C. Bus. Ct. June 22, 2018) ....................13

*Artskills, Inc. v. Royal Consumer Prods., LLC*,
    3:17-cv-1552, 2018 U.S. Dist. LEXIS 121227 (D. Conn. 2018)...........................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................6

*Avocet Sport Tech., Inc. v. Garmin Int'l, Inc.*,
    No. C 11–04049 JW, 2012 WL 2343163 (N.D. Cal. June 5, 2012) ......................20

*Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*,
    2011 U.S. Dist. LEXIS 158195 (D. Minn Sept. 15, 2011) ..................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................6, 7, 11

*Brinkmeier v. Graco Children's Prods. Inc.*,
    767 F. Supp. 2d 488 (D. Del. 2011)................................................................14

*Broussard v. Meineke Disc. Muffler Shops*,
    155 F.3d 331 (4th Cir. 1998) ........................................................................12

*Clontech Laboratories, Inc. v. Invitrogen Corp.*,
    406 F.3d 1347 (Fed. Cir. 2005)......................................................................14

*Copypro, Inc. v. Musgrove*,
    232 N.C. App. 194 (2014) .............................................................................8

*Cot'n Wash, Inc. v. Henkel Corp.*,
    56 F. Supp. 3d 613 (D. Del. 2014)..................................................................16

*Dalton v. Camp*,
    353 N.C. 647 (2001) ....................................................................................7

*Eastern Shore Mkts. v. J.D. Assocs. Ltd. Pshp.*,
    213 F.3d 175 (4th Cir. 2000) ...................................................................6

*Ellis v. Louisiana-Pac. Corp.*,
    699 F.3d 778 (4th Cir. 2012) .................................................................12

*Exergen Corp. v. Wal–Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009).................................................................7

*Express Mobile, Inc. v. Liquid Web, LLC*,
    No. 1:18-CV-01177-RGA, *consol.,* at *2 (D. Del. Apr. 15, 2019).......................20

*FMC Corp. v. Cyprus Foote Mineral Co.*,
    899 F. Supp. 1477 (W.D.N.C 1995) .......................................................13

*Golan v. Pingel Enter., Inc.*,
    310 F.3d 1360 (Fed. Cir. 2002)...............................................................18

*In re BP Lubricants USA Inc.*,
    637 F.3d 1307 (Fed. Cir. 2011)...............................................................14

*In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*,
    756 F.3d 917 (6th Cir. 2014) .................................................................11

*Kemin Foods v. Pigmentos Vegetales Del Centro*,
    464 F.3d 1339 (Fed. Cir. 2006).............................................................16

*Khouri v. Nat'l Gen. Ins. Mktg., Inc.*,
    501 F. Supp. 3d 353 (M.D.N.C. 2020) .....................................................9

*Kinesis Advert., Inc. v. Hill*,
    652 S.E.2d 284, 298 (N.C. App. 2007).....................................................9

*Legacy Data Access, LLC v. MediQuant, Inc.*,
    No. 3:15-CV-00584-FDW-DSC, 2017 WL 6001637 (W.D.N.C. Dec. 4, 2017) .............10, 14

*Malvern Panalytical Ltd v. Ta Instruments-Waters LLC*,
    No. 19-CV-2157-RGA, 2021 WL 3856145 (D. Del. Aug. 27, 2021) ....................19

*Marshall v. Miller*,
    302 N.C. 539 (1981) ............................................................................7

*Max Impact, LLC v. Sherwood Grp., Inc.*,
    No. 09 Civ. 902, 2011 WL 507600 (S.D. N.Y. Feb. 14, 2011) ............................16

*Merck & Co., Inc. v. Lyon*,
    941 F. Supp. 1443 (M.D.N.C.1996) .......................................................13

*Monec Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012)................................................................19, 20

*Mosley & Mosley Builders, Inc. v. Landin Ltd.*,
  97 N.C. App. 511, *cert. denied*, 326 N.C. 801 (1990) ..........................................12

*N. Bottling Co. v. Henry's Foods, Inc.*,
  474 F. Supp. 3d 1016 (D.N.D. 2020) ....................................................................17

*Peoples Sec. Life Ins. Co. v. Hooks*,
  322 N.C. 216 (1988) ...............................................................................................9

*Pequignot v. Solo Cup Co.*,
  608 F.3d 1356 (Fed. Cir. 2010)..............................................................................15

*PNC Bank, N.A. v. Welsh Realty, LLC*,
  No. 5:13-CV-203-BO, 2014 WL 4386064 (E.D.N.C. Sept. 5, 2014).......................6

*Radware, Ltd., v. A10 Networks, Inc.*,
  No. C–13–02021–RMW, 2013 WL 5373305 (N.D. Cal. Sept. 24, 2013).............19

*Reckitt Benckiser Inc. v. Motomco Ltd.*,
  760 F.Supp.2d 446 (S.D. N.Y. 2011)......................................................................17

*SciGrip, Inc. v. Osae*
  373 N.C. 409, 427 (2020) .......................................................................................12

*Sebela Pharms. Inc. v. TruPharma, LLC*,
  No. 1:20-CV-01677-SB, 2021 WL 1785042 (D. Del. May 5, 2021) ...............17, 18

*Select Comfort Corp. v. Sleep Better Store, LLC*,
  796 F. Supp. 2d 981 (D. Minn. 2011) ....................................................................17

*Spirax Sarco, Inc. v. SSI Eng'g, Inc.*,
  No. 5:14-CV-519-F, 2015 WL 1810093 (E.D.N.C. Apr. 17, 2015).......................14

*ThermoLifeInt'l, L.L.C. v. NeoGenis Labs, Inc.*
  411 F. Supp. 3d at 494, 497 (D. Ariz. 2019).........................................................16

*Tyco Healthcare Grp., LP v. C.R. Bard, Inc.*,
  818 F. Supp. 2d 777 (D. Del. 2011).........................................................................7

*VisionAIR, Inc. v. James*,
  167 N.C. App. 504 (2004) ........................................................................................9

*Zenith Electronics Corp. v. Exzec, Inc.*,
  182 Fed. 3d 1340, 1353-54 (Fed. Cir. 1999) .........................................................18

## Statutes and Codes

United States Code
   Title 35 Section 287(a).....................................................................................................6, 20

United States Code
   Title 35 Section 292..........................................................................................................1, 5, 14

United States Code
   Title 35 Section 292(a)......................................................................................................14

North Carolina General Statute
   Section 1-52(1)...................................................................................................................12

North Carolina General Statute
   Section 75-1 ....................................................................................................... *passim*

North Carolina General Statute
   Section 75-1.1 ....................................................................................................................7

North Carolina General Statute
   Section 75-16.2..................................................................................................................12

## Rules and Regulations

Federal Rules of Civil Procedure
   Rule 9 ..................................................................................................................................8, 16, 17

Federal Rules of Civil Procedure
   Rule 9(b) .............................................................................................................................15, 17

Federal Rules of Civil Procedure
   Rule 12(b)(6)......................................................................................................................1, 6

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Qorvo, Inc. ("Qorvo" or "Plaintiff"), filed a five Count Complaint ("Complaint") on October 4, 2021, against Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Akoustis" or "Defendants"). Counts I and II allege patent infringement. Count III alleges false advertising under the Lanham Act. Count IV alleges false patent marking under 35 U.S.C. § 292. Count V alleges Unfair and Deceptive Trade Practices under N.C.G.S. § 75-1.1. Defendants move to dismiss the willful, enhanced, and pre-suit damages and induced patent infringement allegations of Counts I and II, as well as Counts III-V, and respectfully submit this opening brief in support of their motion to dismiss.

## II.      SUMMARY OF ARGUMENT

1.      As to Counts I and II, the willful, pre-suit damages and induced infringement allegations must be dismissed for failure to state a claim pursuant to Rule 12(b)(6) because Qorvo has not adequately pleaded knowledge of patents and infringement, or notice marking of the asserted patents, or intent to infringe for induced infringement.

2.      As to Counts III, IV and V, each count must be dismissed for failure to state a claim pursuant to Rule 12(b)(6) because Qorvo has not adequately pleaded the requisite elements: the alleged false or misleading statements or bad faith as to Count III; deceptive intent or falsity of patent marking as to Court IV and an unfair or deceptive act as to Count V.

## III.      INTRODUCTION

This is a case between competitors in the BAW (bulk acoustic wave) filter space. A BAW filter is a type of circuit heavily used in wireless devices to eliminate noise or other unwanted signals. Both companies are deeply tied to North Carolina and are located about an hour and a half apart from the other. As described in the Complaint, Plaintiff Qorvo was formed in 2015 following the merger of TriQuint Semiconductor and RF Micro Devices ("RFMD") and

supplies a "broad range" of products, BAW filters being just one of those products. Akoustis was formed in 2014, a year earlier than Qorvo, by Jeffrey Shealy, a former vice-president of RFMD along with Steven Denbaars and Richard Ogawa. Plaintiff does not allege any relationship between Mr. Denbaars or Mr. Ogawa with Qorvo, RFMD or any other predecessor entities but notes that Akoustis' Board also includes other former executives of RFMD. As both parties are public entities and competitors, these are facts that have been known for years.

While Plaintiff alleges that "Akoustis was formed specifically to compete with Qorvo [and its predecessors]," Akoustis was formed seven years ago and whatever claims could have theoretically existed at the time (and Akoustis disputes there were any) are long barred by the passage of time. Nonetheless, Plaintiff generally alleges that Akoustis has acted inappropriately since 2014 by "poaching" more that 20 of Qorvo's former employees (whose job titles widely vary from a device engineer to a senior tax manager to a customer quality manager). According to Qorvo, all or some of these ex-Qorvo employees must have breached their contractual obligations to Qorvo and shared Qorvo confidential information with Akoustis in such a manner that Akoustis was able to take its technology to its current leading-edge. Essentially, Qorvo's factual evidence of this alleged elaborate scheme is Akoustis' success.

Such conjecture is not sufficient to sustain a federal complaint. What the Federal Rules of Civil Procedure require, and what the Complaint lacks, are *contemporaneous facts* supporting the alleged unfair/deceptive conduct for at least some reasonable portion of this alleged seven-year scheme. Specifically, the who/what/why/when/how of Akoustis' alleged misappropriation scheme—such as the specific unfair/deceptive act(s) (as those terms of defined by law), the identity of any ex-Qorvo employee(s) that Qorvo believes has disclosed or will disclose alleged Qorvo information; the date when that employee(s) departed from Qorvo and the reason for the departure; the nature of the Qorvo information held by that ex-Qorvo employee(s) at the time of

departure; the date when that employee(s) joined Akoustis and the reason for that arrival; and the specific Qorvo information at issue and whether it is actually confidential and has been used by Akoustis. These factual allegations are vital because employee migration alone is both a lawful and a common occurrence. Plaintiff ignores that fact and, more troubling, glosses over the factual allegations needed to support this broad alleged scheme. Rather than meeting its burden, Qorvo defaults to conclusory assertions about ex-Qorvo employees being poached from Qorvo and sharing some unspecified Qorvo information with Akoustis. Ultimately, Plaintiff simply concludes that there must be something improper because Akoustis succeeded in less time and with less people than Qorvo did.

Omissions in the Complaint further suggest this lawsuit was motivated by Qorvo's competitive concerns as opposed to any genuine concern for its intellectual property. For example, nothing in the Complaint suggests that in the last seven years either Qorvo or any of its predecessor companies has ever issued a single cease-and-desist letter or raised any other proprietary interest concern to Akoustis. Nor does Qorvo allege even a single cause of action against any of the 20+ people it now alleges breached (or are about to breach) Qorvo's far-reaching confidentiality provision despite the fact that the alleged breach, according to Qorvo, is the reason Akoustis is successful. Similarly, Qorvo has failed to even attempt to meet the pleading standard required for any claim of misappropriation of trade secrets against Akoustis or any other person. Rather, Qorvo attempts to repackage its flawed misappropriation theory into a state law claim for unfair business practice so that it can force Akoustis into years of expensive discovery. The Court should not entertain such speculative claims.

As described below, except for Qorvo's patent infringement claims,[1] the balance of Qorvo's Complaint focuses on a set of unfair competition/practice claims (*i.e.*, a deceptive practice/act claim under a North Carolina statute, a false patent marking claim and a false advertising claim under the Lanham Act). Each claim fails as a matter of law because Qorvo's claims are largely based on self-serving, conclusory allegations that rely on layer after layer of statements asserted upon information and belief. Akoustis respectfully requests that the Court grant its motion.

## IV.   STATEMENT OF ALLEGED FACTS FROM QORVO'S COMPLAINT

*Alleged Unfair and Deceptive Trade Practices*:  Qorvo contends that "[s]ince its inception, Akoustis has engaged in conscious, methodical, and systematic recruitment and solicitation of Qorvo's employees in all major areas. Indeed, and beyond a majority of its board being ex-Qorvo employees, Akoustis has poached over twenty key employees, including crucial personnel from engineering, operations, sales, quality control and testing, packaging, and management." (D.I. 1 ¶ 46; and ¶¶ 47, 120.) Qorvo asserts that "[i]t is highly probable—and on information and belief, inevitable—that Akoustis has used, relied upon, and exploited the Ex-Qorvo BAW Employees' knowledge of the Qorvo BAW Proprietary Information." (*Id.* ¶ 55; *see also* ¶ 57.)[2] And that false statements account for the unfair competition. (*Id.* ¶¶ 59, 66.)

As to the alleged "BAW Proprietary Information" that Qorvo believes has likely been

---

[1] While Qorvo's claims of direct patent infringement lack merit, this motion does not challenge the patent claims except for three limited points:  willful damages; past (pre-suit) damages; and induced infringement allegations; each of which is subject to dismissal.

[2] Qorvo's contention, in the alternative, that Akoustis *will inevitably use* (future tense) "the Qorvo BAW Proprietary Information" plainly conflicts with its contention that Akoustis has *already* "gained an unfair advantage" to enter the BAW market "more quickly". (D.I. 1 ¶ 56.)

exploited by its ex-employees, Qorvo alleges that its proprietary information[3] includes all of its technical expertise and know-how as well as all of its "business information" (from its organization structure and employees lists to its supplier lists and its "desires"). (D.I. 1 ¶ 20.) [4]

***Alleged False Statements about "single-crystal" technology (Alleged False Patent Marking and Alleged False Advertising)***:  Plaintiff asserts two related claims based on its contention that Akoustis improperly identifies its products as including single-crystal-technology when Qorvo contends that it is actually polycrystalline.  Specifically, Count IV alleges false patent marking under 35 U.S.C. § 292 based on contentions that Akoustis marked each of the "Accused Products" with U.S. Patent No. 10,256,786 (the "'786 Patent") (*see* Exhibit 1) on datasheets available on its website. (*Id.* ¶¶ 106-109.)  Qorvo fails to allege and cannot allege that the '786 Patent claim language actually requires a single-crystal because it is simply an optional feature.  Count III similarly alleges that, under the Lanham Act, Akoustis either falsely or misleadingly advertised to "target customers" and investors that Akoustis' own BAW filters are "single crystal" devices, based on Qorvo's "information and belief" that Akoustis used the false advertising to promote that its BAW filters have better technology than Qorvo's products. (*Id.* ¶¶ 93-97.)  Qorvo fails to make the required factual allegations including the specific advertisements and the allegations needed to show confusion of a highly-skilled customer.

***Alleged Willful and Induced Patent Infringement; Past Damages***:  Qorvo alleges two counts of patent infringement, including allegations of "willful, deliberate, and intentional"

---

[3] Qorvo also highlights its "over 3,000 patents… including hundreds of patents related to its BAW filter technology," leaving unstated that these are in the public domain and cannot be "the Qorvo BAW Proprietary Information." (D.I. 1 ¶ 23.)

[4] Qorvo's pleadings identify a laundry list of "examples" of generic labels for effectively an all-encompassing umbrella of business and technical information and calls it "BAW Proprietary Information."  (*Id.* ¶ 20 (hereinafter referred to as "confidential information").)  To be clear, Qorvo does not allege any facts to support that any of the "confidential information" has actually been used, nor does it allege that any such information constitutes trade secrets.

infringement and that Akoustis acted in "reckless disregard of Qorvo's patent right." (*Id.* ¶¶ 75, 88.) Qorvo alleges that "on information and belief" Akoustis has knowledge of the Patents-in-Suit because a number of senior executives and other employees of Akoustis were once at Qorvo (or one of its predecessor companies) (*Id.* ¶¶ 50-51.) In addition to again failing to supply the factual basis for its allegations, Plaintiff also fails to allege, as it must to the extent it seeks past, pre-suit damages, that it satisfied the marking requirements of 35 U.S.C. § 287(a).

## V.  LEGAL STANDARD

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. A legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Bare assertion[s]" and "conclusory allegation[s]" will not suffice. *Id.* Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 (pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). While the Court must generally accept Plaintiff's factual allegations as true, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000). Indeed, an unfair practices claim is properly dismissed when defendants have "failed to sufficiently plead facts manifesting their plausible right to relief." *PNC Bank, N.A. v. Welsh Realty, LLC*, No. 5:13-CV-203-BO, 2014 WL 4386064, at *2 (E.D.N.C. Sept. 5, 2014) (unfair practices claim properly dismissed because it was predicated on a fraud claim that was insufficiently pleaded under Fed. R. Civ. P. 12(b)(6)). While certain allegations can be on the basis of "information and belief," sufficient facts must be pleaded to make such allegations

plausible. *See Twombly*, 550 U.S. at 551, 557 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible); *see, also*, *Exergen Corp. v. Wal–Mart Stores, Inc*., 575 F.3d 1312, 1327 (Fed. Cir. 2009) ("[a]lthough 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.") (cited by *Tyco Healthcare Grp., LP v. C.R. Bard, Inc*., 818 F. Supp. 2d 777, 784-85 (D. Del. 2011)).

## VI.    ARGUMENT

### A.    QORVO FAILS TO STATE A CLAIM FOR VIOLATION OF UNFAIR OR DECEPTIVE ACTS/PRACTICES (N.C.G.S. SECTION 75-1.1)

Dismissal of the North Carolina Unfair Trade Practices Act claim (N.C. Gen.Stat. § 75–1.1) ("Section 75-1") is appropriate because Akoustis is left only to guess as to the nature of the alleged misappropriation that Qorvo claims is the underlying unfair act/practice. To state a claim under Section 75-1 the following criteria must be met: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Dalton v. Camp,* 353 N.C. 647, 656 (2001); N.C.G.S. § 75-1.1. The North Carolina Supreme Court has explained that the purpose of Section 75-1 is to regulate those acts that "offend established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller,* 302 N.C. 539, 548 (1981). Plaintiff has failed to allege such an act/practice.

The gravamen of Qorvo's Section 75-1 claim is an allegation, based on information and belief, of an overarching misappropriation scheme over seven years resulting in the use of unspecified Qorvo information disclosed by unspecified ex-Qorvo employees. (D.I. 1 ¶¶ 47, 49-

50, 53, 54, 56, 116.) Qorvo's Section 75-1 claim primarily rests on two theories—that some unspecified misappropriation (1) was accomplished through the alleged "poaching" of various unidentified former Qorvo employees (*Id.* ¶¶ 46-58, 123-126); or (2) occurred at some point in the last seven years or will occur at some unspecified time in the future because these unspecified employees will inevitably disclose unspecified Qorvo information to Akoustis. (*Id.* ¶¶ 55, 57, 117, 123-124.)[5] While Qorvo uses some of the buzz words of misappropriation in its Section 75-1 claim, it has not filed any trade secret claims (and the allegations it does offer certainly would not meet the specificity requirements of Rule 9). Qorvo's efforts to repackage its speculative theories into a state law claim also falls short as Section 75-1 requires an allegedly deceptive act or practice by Akoustis, and Qorvo pleads no such facts despite, according to Qorvo, "[*t*]*he sheer number of highly-knowledgeable and qualified* [*ex-*]*Qorvo employees poached"* over a seven-year period "resulted in Akoustis inevitably using their knowledge." (*Id.* ¶ 55 (emphasis added).). The over-reaching expanse of the unspecified Qorvo information (*see infra* at fn. 4) creates another layer of uncertainty as to the specifics of the claim being alleged.[6]

### 1.    Employee Mobility is not an Unfair Practice/Act

As an initial matter, employee mobility alone is not actionable—public policy strongly favors the right of each employee to change jobs. Here, Plaintiff does not suggest that any type of non-compete was signed by any former ex-Qorvo employee and, in any event, non-competes

---

[5] Qorvo also alleges in passing that alleged false and misleading representations about a single crystal construction qualifies as an act/practice under Section 75-1. Again, Qorvo fails to allege facts sufficient to indicate that the alleged act was dishonest or immoral. Additionally, as these references appear to refer to Qorvo's Lanham Act and false marking claims, those claims separately fail as a matter of law as set forth herein.

[6] Given the extensive reliance on information and belief and the lack of factual allegations after seven years of a purported scheme, it is apparent that Qorvo has not (and cannot) state facts sufficient to allege any specific act/practice of Akoustis but is instead using its Complaint and the discovery process to try and find (or conjure) it.

are generally disfavored in North Carolina because of the state's public policy interest in promoting employment and competition. *See e.g.*, *Copypro, Inc. v. Musgrove*, 232 N.C. App. 194, 199-201 (2014) (employers cannot protect their interests in a way that causes unreasonable hardship for employees); *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 507-10 (2004) (stating that non-competes that prohibit direct or indirect competition because they restrict too many activities, are generally disfavored). The fact that employees are shifting between competitors is common and competition between employers to retain the best and brightest is often simply a reflection of lawful competition. *See Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 222 (1988) (applying "the general principle that interference may be justified when the plaintiff and the defendant are competitors" because "[t]o hold otherwise would unduly limit lawful competition").

North Carolina courts have "consistently held that the employer/employee relationship does not fall within the intended scope and purpose of [Section 75-1]." *Kinesis Advert., Inc. v. Hill*, 652 S.E.2d 284, 298 (N.C. App. 2007). Accordingly, to state a claim under Section 75-1, Qorvo must do more than attack years of employee mobility, it must set forth some factual allegation of an unfair or deceptive act or practice. For purpose of Section 75-1 an act or practice is unfair only "'if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers'" and it is deceptive if the misleading act occurs "under egregious or aggravating circumstances, and the harm resulting from the alleged deceptive practice must be such that the plaintiff could not reasonably avoid it." *Khouri v. Nat'l Gen. Ins. Mktg., Inc.*, 501 F. Supp. 3d 353, 359 (M.D.N.C. 2020).

Here, it is not alleged that the ex-Qorvo employees were anything other than at-will employees, nor is any type of immoral, oppressive, egregious or aggravating circumstances (as those terms of contemplated by Section 75-1) alleged to have been done by or at the direction of

Akoustis. The most specific example that Qorvo sets forth appears to be alleged conduct by an outside recruiter. Qorvo alleges that at an unknown time, unspecified persons working as "recruiters" on behalf of Akoustis asked "a Qorvo employee to disclose BAW Proprietary Information during the recruitment process" by sharing their computer screen with the recruiters. Without more, those statements cannot rise to the level of an immoral or egregious act under Section 75-1 much less any conduct by or attributable to Akoustis. (D.I. 1 ¶ 54.) Without reasonable allegations, Akoustis is left to guess as to what Qorvo is referring to. The situation is compounded by Qorvo's senselessly broad definition of BAW Proprietary Information that could mean virtually any information related to Qorvo. This could have been an employee sharing their employment agreement to confirm (s)he was not subject to a non-compete or an employee substantiating job responsibilities or compensation details during negotiations for a job offer. There are no factual allegations detailing the nature of that information (including whether it was actually confidential) much less clarity as to who were the involved parties (*e.g.*, an outside employment agency or an Akoustis employee), what were the circumstances of the discussion (*e.g.*, the nature of the alleged recruitment, what type of job was at issue), when did this take place, and was there any disclosure (much less any usage of such information) to the recruiters or to Akoustis. Qorvo strategically omits these important details on the hope this Court will make assumptions and inferences adverse to Akoustis. The analysis by the court in *Legacy Data Access, LLC v. MediQuant, Inc.*, No. 3:15-CV-00584-FDW-DSC, 2017 WL 6001637, at *17 (W.D.N.C. Dec. 4, 2017) applying North Carolina law, confirms that even if there is a trade secret violation, that violation would not, in turn, result in a Section 75-1 claim absent "***the factual findings of the jury to determine if the act or practice is 'unfair' or 'deceptive'*** as previously defined by the North Carolina Supreme Court." (emphasis added). Here, Qorvo's vague and conclusory allegations simply fail to set forth the factual allegations needed for its

claim.

Qorvo's belief that there must be some unfair act to explain Akoustis' success is also insufficient. For example, Qorvo offers a laundry list of "[e]xamples of Qorvo's confidential and proprietary information [of alleged] technical expertise and know-how …" *(Id.* ¶ 20) and then based "[o]n information and belief" asserts that the alleged poaching allowed Akoustis to bring its Accused Products to market in a timeframe that is "highly unlikely, if not impossible, without these unfair practices." (*Id.* ¶ 126.) But again, Qorvo uses a grossly overbroad definition of confidential information (*i.e.* BAW Proprietary Information) that essentially treats **every** aspect of its business as confidential and fails to allege the factual allegations necessary to plausibly show an unfair practice/act by Akoustis. Qorvo's repetitive speculation, moreover, is not a factual allegation, and the "mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756 F.3d 917, 931 (6th Cir. 2014). Additionally, attempting to state a *prima facie* case by making the assertion based on "information and belief" does not meet the legal requirement to assert a plausible factual basis for the claim. *See e.g., Twombly*, 550 U.S. at 551, 557 (conclusory allegation "upon information and belief" is insufficient absent facts to make that statement plausible).

While Qorvo will likely seek to amend its claim, it should only be allowed to do so if it can allege some actual factual basis for its alleged scheme. Given that over the last seven years Qorvo has not even issued a single demand letter to inquire about any ex-Qorvo employee's potential use (or misuse) of any Qorvo alleged confidential information that seems doubtful.

### 2.        A Breach of Contract is not an Unfair Practice/Act

In an alternative effort to plead some unfair practice and act, Qorvo dedicates much of its Section 75-1 allegations to a confidentiality agreement it allegedly has in place with each of its

employees, including the unspecified former Qorvo employees. While Qorvo opted not to allege a breach of contract claim against any ex-Qorvo employee, Qorvo alleges that these unidentified former employees breached or may breach their confidentiality agreement with Qorvo. (D.I. 1 ¶¶ 49, 50, 54, 56.) This dissembling approach fails at multiple levels. First, this case was brought against Akoustis and there is no privity of contract as to the matters alleged in the Complaint between Akoustis and Qorvo so any unasserted claim should, at most, be addressed elsewhere.[7] Second, even if there was a contractual relationship at issue, under North Carolina law, a Section 75-1 claim must be based on *more* than a breach of contract. North Carolina law does not allow a plaintiff to "piggyback" a Section 75-1 onto a breach of contract claim—a Section 75-1 claim requires an additional showing of "substantial aggravating circumstances" to support a contract related claim, otherwise, the dispute is relegated to contract law. *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 347 (4th Cir. 1998); *see also Ellis v. Louisiana-Pac. Corp.,* 699 F.3d 778, 787 (4th Cir. 2012) (Section 75-1 claims in the context of a contractual relationship must include egregious or aggravating circumstances in addition to the underlying breach of contract); *Mosley & Mosley Builders, Inc. v. Landin Ltd.,* 97 N.C. App. 511, 518, *cert. denied*, 326 N.C. 801 (1990) (identifying that a breach must be accompanied by fraud or deception constituting unfair or deceptive trade practice). As the state Supreme Court found in *SciGrip, Inc. v. Osae*, "an intentional breach of contract, standing alone, simply does not suffice to support the assertion of an unfair and deceptive trade practices claim." 373 N.C. 409, 427 (2020). Absent some additional factual pleadings concerning fraud or an unfair act/practice by Akoustis, an underlying breach of contract claim (which is not even alleged here) cannot support a Section 75-1 claim.

---

[7] Any alleged hiring related claims dating back to Akoustis' inception (in 2014) are long time barred under North Carolina law. *See* N.C.G.S. §1-52(1) and § 75-16.2.

### 3.     The Inevitable Disclosure Doctrine Is Not an Unfair Practice/Act

Seeming to appreciate that its Section 75-1 allegations are deficient, Qorvo asks this Court to fill the gap by invoking the inevitable disclosure doctrine. Specifically, in the midst of its Section 75-1 claim, Qorvo alleges that "[t]*he sheer number of highly-knowledgeable and qualified [ex-]Qorvo employees poached by Akoustis over its history has resulted in Akoustis inevitably using their knowledge and experience*, including the Qorvo BAW Proprietary Information." D.I. 1 ¶ 55 (emphasis added). This confused proposition should be rejected.

Setting aside that there is nothing unlawful about an employee using his/her "knowledge and experience", and Qorvo's "BAW Proprietary Information" is defined so broadly that it is meaningless as to providing any type of notice of the information actually at issue, nothing in North Carolina law suggests that an unfair act or practice can be gap-filled by a legal assumption. The plain meaning of Section 75-1 is clear – a *prima facie* showing requires factual allegations sufficient to show an unfair act or practice (not a legal doctrine). By definition, the inevitable disclosure doctrine is neither an act nor a practice, it is a legal assumption that may be employed by a court in the context of a trade secrets claim. *See Merck & Co., Inc. v. Lyon*, 941 F. Supp. 1443, 1460 (M.D.N.C.1996); *see also Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 471 (2003) (no application of inevitable disclosure in cases where the skills learned were not specific to the processes used by a former employer).

Even if Qorvo had stated a trade secret claim, it would still have needed to make further factual allegations to trigger the inevitable disclosure doctrine.[8] Those factual allegations are

---

[8] In determining when to apply the doctrine of inevitable disclosure, North Carolina courts look to several factors including: (1) any circumstances of bad faith or underhanded dealing; (2) the competitor's comparable level of technical knowledge and achievement; (3) the type of training received and the similarity between the employee's former and current position; (4) the value of the information; and (5) the degree of particularity in which the trade secret was defined.

absent.

Furthermore, the doctrine of inevitable disclosure has never been adopted by the North Carolina Supreme Court or the North Carolina Court of Appeals nor has it been deemed to be an act or practice for purposes of a Section 75-1 claim by any court in North Carolina. *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, No. 5:14-CV-519-F, 2015 WL 1810093, at *5 (E.D.N.C. Apr. 17, 2015). Moreover, consistent with the statute and analysis above, the court in *Legacy Data Access*, interpreting North Carolina law, confirmed that a trade secret violation was insufficient for a Section 75-1 claim as North Carolina law required evidence of an act or practice that is unfair or deceptive in addition to any trade secret violation. *See* 2017 WL 6001637 at *16. Qorvo cannot supplant the act/practice requirement with a judicial doctrine. Qorvo's failure to plead any unfair or deceptive acts by Akoustis is fatal.

## B.   QORVO FAILS TO STATE A CLAIM FOR FALSE MARKING

Section 292 of the Patent Act prohibits marking an article as patented "for the purpose of deceiving the public." 35 U.S.C. § 292(a). To establish a claim for false marking, the claimant must demonstrate two elements: (1) that the defendant marked an unpatented article; and (2) that the defendant intended to deceive the public. *Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 494 (D. Del. 2011); *see also Clontech Laboratories, Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1352 (Fed. Cir. 2005). A false patent marking claim is held to the same pleading standard as Fed. R. Civ. P. 9(b) and prevents "relators using discovery as a fishing expedition." *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011).

---

*See Merck & Co.*, 941 F. Supp. at 1459-60; *see also FMC Corp. v. Cyprus Foote Mineral Co.*, 899 F. Supp. 1477, 1482-83 (W.D.N.C 1995) (declining to find inevitable disclosure where plaintiff "asserted that its technology is superior in very general terms"); *see also Anesthesiology Consultants, PLLC v. Charlotte-Mecklenburg Hosp. Auth.*, No. 18 CVS 5899, 2018 WL 3304441, at *19 (N.C. Bus. Ct. June 22, 2018) (declining to find inevitable disclosure where plaintiffs did not show that former employee could not perform job without using plaintiffs' information).

While a plaintiff may allege the knowledge and intent element based upon information and belief, the complaint nevertheless must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* at 1311 (internal quotation omitted). Here, Qorvo alleges that "[t]he independent claims of U.S. Patent No. 10,256,786 recite piezoelectric layers." (D.I. 1 ¶ 107.) Qorvo adds that the Akoustis' BAW filters ("Accused Products") are *polycrystalline* – not "single crystal" – piezoelectric layers. (D.I. 1 ¶¶ 65, 108). But Qorvo fails to allege, and cannot allege, a single '786 Patent claim that actually requires a "single-crystal." To the contrary, independent claim 1 does not include the term "single-crystal" at all. Rather, the single-crystal limitation is found, as an *optional* feature, of dependent claim 2 (Exhibit 1, col. 14, ll. 62-64) (emphasis added):

> The device of claim 1 wherein the seed substrate includes silicon, silicon carbide, aluminum oxide, *or single crystal* aluminum gallium nitride materials.

Moreover, the "single-crystal" term is also not in any of the remaining independent claims of the '786 Patent. Qorvo's vague alleged rationale that all the claims require single crystals is "[b]ased on the disclosure of U.S. Patent No. 10,256,786 and Akoustis' statements, [that] the recited piezoelectric layers are single-crystal." D.I. 1 ¶ 107 (underline added). In other words, Qorvo seeks to allege fraud by Akoustis based not on the claim language itself, but on Qorvo's opinion about how the patent could be construed.

Even if Qorvo could sufficiently allege that Akoustis marked an unpatented article, the allegations required for deceptive intent are particularly high in a false marking case because "the false marking statute is a criminal one, despite being punishable only with a civil fine." *Pequignot v. Solo Cup Co*., 608 F.3d 1356, 1363 (Fed. Cir. 2010) (internal citations omitted); *see also Artskills, Inc. v. Royal Consumer Prods., LLC*, 3:17-cv-1552 (VAB), 2018 U.S. Dist. LEXIS 121227 at *12 (D. Conn. 2018). Qorvo's allegations entirely fail to meet this standard.

Qorvo, without any support in the claim language, simply contends that "Akoustis knew or should have known that U.S. Patent No. 10,256,786 covered only single-crystal piezoelectric layers." (D.I. 1 ¶ 108.) This conclusory allegation fails to satisfy the "particularly high" pleading standard of Rule 9 which requires more than a general allegation. *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 622-24 (D. Del. 2014) (a generalized allegation that Plaintiffs knew their products were not covered by the patent is insufficient to prove a purpose of deceit.). To successfully allege a claim for false patent marking, a plaintiff must identify specific facts to indicate knowledge of the deception. In *Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*, for example, the defendant had abandoned its patent enforcement actions against the plaintiff, No. 11-883 (MJD/JJK), 2011 U.S. Dist. LEXIS 158195 (D. Minn Sept. 15, 2011), at *24-25, and, in *ThermoLifeInt'l, L.L.C. v. NeoGenis Labs, Inc.*, the defendant removed patent labels from certain of its products but concurrently continued to advertise the products as patented. 411 F. Supp. 3d at 494, 497 (D. Ariz. 2019). Qorvo's Complaint offers no such allegations.

Also, courts have held that where a patentee's legal position, as to its own patents, is sufficiently plausible, the false marking claim cannot survive as a matter of law. *Kemin Foods v. Pigmentos Vegetales Del Centro*, 464 F.3d 1339, 1355 (Fed. Cir. 2006)); *Max Impact, LLC v. Sherwood Grp., Inc.*, No. 09 Civ. 902, 2011 WL 507600, at *3 (S.D. N.Y. Feb. 14, 2011) (citing 464 F.3d at 1355 for the proposition that a party's legal position as to the scope of a patent was sufficiently plausible such that the party could not have acted with the requisite deceptive purpose). Akoustis' contention that polycrystalline products are covered by at least one claim means Qorvo's false marking claim should be dismissed.

### C.    QORVO FAILS TO STATE A CLAIM FOR FALSE ADVERTISING

Like its false patent marking claim, Qorvo's false advertising claim (Count III) contends that Akoustis' BAW filters are not "single crystal" as advertised and based on "information and

belief" Akoustis used its alleged false advertising to promote that its BAW filters have better technology than Qorvo's products. (D.I. 1 ¶¶ 93-97.) A plaintiff alleging false advertising pursuant to the Lanham Act must plead facts plausibly asserting that: (1) the defendant has made false or misleading statements in commercial advertising or promotion as to the defendant's own product or another's; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. *Accenture Global Servs. GmbH v. Guidewire Software Inc*., 581 F. Supp. 2d 654, 666 (D. Del. 2008). Qorvo failed to sufficiently allege these claims with the specificity required by Rule 9 for Lanham Act claims.[9]

As an initial matter, Qorvo's pleading fails to identify the false and misleading statements at issue.[10] Qorvo simply alleges that Akoustis' "commercial advertising or promotion, including via Akoustis' website, presentations, and press releases [and] in its SEC filings" are allegedly false or misleading regarding current Akoustis products. (*See, e.g.*, D.I. 1 ¶¶ 94-97.) That is insufficient as a matter of law. Nothing in the Complaint identifies any "single crystal" reference by Akoustis as to any current BAW filter products. Even if Qorvo amended its allegations to clearly identify the alleged false/misleading statements, Qorvo cannot simply assume that

---

[9] *N. Bottling Co. v. Henry's Foods, Inc*., 474 F. Supp. 3d 1016, 1028 (D.N.D. 2020) ("The Court finds no reason as to why Rule 9 should apply to claims of deceit, false advertising and consumer fraud protection under state law, but not to a claim of false advertising under the Lanham Act."); *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 983-84 (D. Minn. 2011) (requiring false advertising claims alleged under the Lanham Act and state law to meet Rule 9(b)'s particularity requirements).

[10] Qorvo identifies two statements ("next-gen materials" and "will be manufactured" (D.I. 1 ¶¶ 61-62) but neither qualify as an advertisement as both statements are clearly forward-looking in nature. *Cf. Reckitt Benckiser Inc. v. Motomco Ltd*., 760 F.Supp.2d 446, 456 (S.D. N.Y. 2011).

Akoustis' sophisticated audience will be misled by any such statement.  In a recent decision of this Court in *Sebela Pharms. Inc. v. TruPharma, LLC*, No. 1:20-CV-01677-SB, 2021 WL 1785042, at *1 (D. Del. May 5, 2021) (internal citation omitted), this Court specifically refused to accept the plaintiff's "naked assertion" that the customers would be "tricked" by the alleged false advertisement.  In granting the motion to dismiss, the Court noted:

> I cannot assume that the database's sophisticated audience will misuse it just because Sebela says so. Sebela must 'explain *how* the [database is] supposed to have mislead consumers in light of the whole context.' And ideally, it should point to examples.

Additionally, and because Qorvo has brought both false patent marking and Lanham Act claims, Akoustis' rights as a patentee must also be considered.  In *Zenith Electronics Corp. v. Exzec, Inc*., 182 Fed. 3d 1340, 1353-54 (Fed. Cir. 1999), the Federal Circuit considered the intersection of the Patent Act—which permits patent holders to give public notice of their patent rights—and the Lanham Act—which prohibits false advertising.  The court in *Zenith* stated that before a patentee may be held liable for unfair competition under the Lanham Act for marketplace statements about its patent, it must have made the statements in bad faith.  *Id*.; *see also Golan v. Pingel Enter., Inc*., 310 F.3d 1360, 1371 (Fed. Cir. 2002) ("[P]atentees do not violate the rules of fair competition by making accurate representations, and are allowed to make representations that turn out to be inaccurate provided they make them in good faith.").  Count III should be dismissed for failure to state a claim.

### D.    QORVO FAILS TO SATISFY THE KNOWLEDGE AND INTENT PLEADING REQUIREMENTS FOR ENHANCED DAMAGES BASED ON WILLFULNESS AND INDUCED PATENT INFRINGEMENT, AS WELL AS THE PLEADING REQUIREMENT FOR PAST DAMAGES

Qorvo's Complaint fails to sufficiently allege pre-suit knowledge of the Asserted Patents and infringement by Akoustis.  (*See, e.g.*, D.I. 1 ¶¶ 44, 50, 51.)  Qorvo identifies those with knowledge only by job titles and descriptions, and claims that one or more of them worked with

the named inventors.  (*Id*. ¶¶ 48, 50.)  Qorvo does identify Akoustis senior executives by name (*Id.* ¶¶ 38, 39) and claims they knew about Qorvo's patents.  (*Id.* ¶ 51.)  But Qorvo does not allege factual circumstances in which the Asserted Patents were called to the attention of any of the senior executives or the unnamed ex-Qorvo BAW employees, other than to say that some of them worked in the same department as the inventors.  (*Id.* ¶ 50.)

Knowledge of infringement is based on an assessment "of the totality of the patentee's allegations."  *Malvern Panalytical Ltd v. Ta Instruments-Waters LLC*, No. 19-CV-2157-RGA, 2021 WL 3856145, at \*3 (D. Del. Aug. 27, 2021) (finding sufficient allegations of knowledge based on documentation that defendant would monitor plaintiff's website "once a month" and engaged in other efforts to gather information about plaintiff.).  Even considering the totality of the circumstances here, Qorvo's allegations cannot support inferences of either pre-suit knowledge of the patents-in-suit or pre-suit knowledge of infringement.  Qorvo's generalized allegations of knowledge are comparable to those previously rejected in this District and others. *Cf. Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012) (knowledge of patent is not sufficient pled simply because there are allegations that defendant participated in the same market and there was unrelated litigation by the defendant's competitors and media publicity concerning the relevant patent); *Radware, Ltd., v. A10 Networks, Inc.*, No. C–13–02021–RMW, 2013 WL 5373305, at \*2-\*3 (N.D. Cal. Sept. 24, 2013) (even assuming that a former employee learned that the patent issued after he left his employment, there is no factual basis alleged in the complaint from which to infer that the former employee informed the defendant about the patent).

Likewise, Qorvo fails to allege sufficient facts that Akoustis intended customers to infringe the Asserted Patents or knew that customers' use of the BAW filters constituted infringement.  While Qorvo makes the conclusory allegation that "Akoustis induces

infringement" by publishing instructions instructing third parties on how to use the Accused Products (s*ee e.g.*, D.I. 1 ¶ 73), nowhere in the Complaint does Qorvo set forth any factual support to establish the requisite "intent." *See, e.g., Monec Holding AG*, 897 F. Supp. 2d at 234 (finding that "selling, advertising, supplying and instructing" amounts to conclusory averments that do not establish the requisite "intent."); *Avocet Sport Tech., Inc. v. Garmin Int'l, Inc*., No. C 11–04049 JW, 2012 WL 2343163, at *4 (N.D. Cal. June 5, 2012) (holding "specific instructions or training" is insufficient to allege induced infringement.).  The Court should not accept Qorvo's speculative opinions of intent but rather should dismiss Qorvo's complaint for failing to allege the facts necessary to support its inducement allegations.  Without the requisite knowledge and intent elements, Qorvo cannot adequately state a claim of indirect infringement or willfulness.

Finally, "[a] claim for past damages requires pleading compliance with the marking statute [35 U.S.C § 287(a)]—even when compliance is achieved, factually, by doing nothing at all." *Express Mobile, Inc. v. Liquid Web, LLC*, No. 1:18-CV-01177-RGA, *consol.,* at *2 (D. Del. Apr. 15, 2019).  Qorvo fails to plead any facts detailing the marking of its own products with the Asserted Patents or alternatively facts from which the Court could conclude that there is no need to mark.  Qorvo's claim for past, pre-suit damages must be dismissed.

## VII.    <u>CONCLUSION</u>

For the foregoing reasons, Akoustis respectfully requests that the Court grant this motion in its entirety.

November 24, 2021

OF COUNSEL:

David A. Jakopin
Dianne L. Sweeney
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*