IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QORVO, INC.,                              )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      C.A. No. 21-1417 (RGA)
                                          )
AKOUSTIS TECHNOLOGIES, INC. and           )      **DEMAND FOR JURY TRIAL**
AKOUSTIS, INC.,                           )
                                          )
            Defendants.                   )


**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS</u>**


MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Kevin A. Ryan
Thomas Carr
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

*Attorneys for Plaintiff Qorvo, Inc.*

December 8, 2021

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.    NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

III.    SUMMARY OF THE ARGUMENT ...................................................................... 2

IV.    FACTUAL BACKGROUND ................................................................................... 2

    A.    The Parties ................................................................................................... 2

    B.    Akoustis Raided Qorvo Employees to Obtain Confidential Information .............. 3

    C.    Akoustis Willfully Infringes Two Qorvo Patents ..................................... 4

    D.    Akoustis Falsely Advertised Its Products as "Single Crystal" .............................. 4

    E.    Akoustis Falsely Marked Its Products as Practicing the '786 Patent ..................... 5

V.    LEGAL STANDARDS ............................................................................................ 5

VI.    ARGUMENT ............................................................................................................ 6

    A.    Qorvo States an Unfair Competition Claim under North Carolina Law ............... 6

        1.    Raiding employees to obtain confidential information is unfair competition ................................................................................... 7

        2.    Encouraging employees to violate confidentiality obligations is unfair competition .......................................................................... 9

        3.    Making false statements to consumers and investors qualifies as unfair competition ......................................................................... 10

    B.    Qorvo States a Claim for False Marking ................................................. 10

        1.    The '786 patent requires a single crystal piezoelectric layer .................. 10

        2.    Akoustis has acted with the intent to deceive ............................................ 13

    C.    Qorvo States a Claim for False Advertising ............................................ 13

        1.    Qorvo identified the false statements in the Complaint ............................ 14

        2.    The sophistication of Akoustis's customers is not relevant ...................... 15

        3.    Akoustis made false statements about its products ................................... 15

    D.    Qorvo Satisfied the Knowledge and Intent Requirements ................................... 16

        1.    Qorvo adequately alleges pre-suit knowledge ......................................... 16

        2.    Qorvo adequately alleges intent ................................................................ 17

    E.    Qorvo Does Not Seek Past Damages for Patent Infringement (Counts I and II) at this Time ............................................................................................................. 18

VII.    CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

Cases

*10x Genomics, Inc. v. Celsee, Inc.*
  No. 19-cv-862, 2019 WL 5595666 (D. Del. Oct. 30, 2019)....................................................15

*Ace Chem. Corp. v. DSI Transps., Inc.*
  446 S.E.2d 100 (N.C. Ct. App. 1994)...........................................................................................6

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009).................................................................................................................5, 6

*Axcess Int'l, Inc. v. Genetec (USA), Inc.*
  375 F. Supp. 3d 533 (D. Del. 2009)...........................................................................................6, 9

*Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*
  No. 11-cv-883, 2011 U.S. Dist. LEXIS 158195 (D. Minn. Sept. 15, 2011).....................12, 14

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)....................................................................................................................5

*Birtha v. Stonemor, N.C., LLC*
  727 S.E.2d 1 (N.C. Ct. App. 2012)..............................................................................................6

*Bumpers v. Cmty. Bank of N. Va.*
  747 S.E.2d 220 (N.C. 2013).........................................................................................................6

*CNC/Access, Inc. v. Scruggs*
  No. 04-CVS-1490, 2006 NCBC LEXIS 22 (N.C. Super. Ct. Nov. 17, 2006)......................8, 9

*Defamafocus LLC v. Ulthera, Inc.*
  201 F. Supp. 3d 465 (D. Del. 2016)..............................................................................................9

*Ellis v. N. Star Co.*
  388 S.E.2d 127 (N.C. 1990).......................................................................................................10

*Express Mobile, Inc. v. Squarespace, Inc.*
  No. 20-cv-1163-RGA, 2021 WL 3772040 (D. Del. Aug. 25, 2021).........................................17

*Glover Constr. Co. v. Sequoia Servs., LLC*
  No. 18-cvs-1900, 2020 WL 3393065 (N.C. Super. Ct. June 18, 2020)......................................7

*Homeland Housewares, LLC v. Whirlpool Corp.*
  865 F.3d 1372 (Fed. Cir. 2017)..................................................................................................11

*LStar Dev. Grp., Inc. v. Vining*
  No. 20-CV-184, 2021 U.S. Dist. LEXIS 181972 (E.D.N.C. Sept. 23, 2021)..........................10

*Malvern Panalytical, Inc. v. TA Instruments-Waters, LLC*
  No. 19-cv-2157-RGA, 2020 WL 8225650 (D. Del. May 5, 2020)........................................18

*McDermott v. Clondalkin Grp., Inc.*
  649 F. App'x 263 (3d Cir. 2016) ................................................................................................9

*Monec Holding AG v. Motorola Mobility, Inc.*
  897 F. Supp. 2d 225 (D. Del. 2012)..........................................................................................17

*Nalco Co. v. Chem-Mod, LLC*
  883 F.3d 1337 (Fed. Cir. 2018)................................................................................................13

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*
  290 F.3d 578 (3d Cir. 2002)......................................................................................................15

*Olivia v. United States*
  961 F.3d 1359 (Fed. Cir. 2020)..................................................................................................6

*Peloton Interactive, Inc. v. Icon Heath & Fitness, Inc.*
  No. 20-662, 2021 WL 2188219 (D. Del. May 28, 2021) ........................................................14

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005).................................................................................................11

*Radware, Ltd., v. A10 Networks, Inc.*
  No. C–13–02021, 2013 WL 5373305 (N.D. Cal. Sept. 24, 2013)...........................................17

*Reckitt Benckiser Inc. v. Motomco Ltd.*
  760 F. Supp. 2d 446 (S.D.N.Y. 2011).......................................................................................14

*Sandoz Pharms. v. Richardson-Vicks*
  902 F.2d 222 (3d Cir. 1990)......................................................................................................15

*Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*
  620 S.E.2d 222 (N.C. Ct. App. 2005) .........................................................................................7

*United Lab. v. Kuykendall*
  403 S.E.2d 104 (N.C. Ct. App. 1991), *aff'd*, 437 S.E.2d 374 (N.C. 1993)....................8, 9, 10

*Velocity Sols., Inc. v. BSG Fin., LLC*
  No. 15-CVS-1059, 2016 ..............................................................................................................7

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*
  No. 13-1353, 2018 WL 4502178 (D. Del. Sept. 20, 2018).........................................................6

*Zenith Elecs. Corp. v. Exzec, Inc.*
  182 F.3d 1340 (Fed. Cir. 1999)...........................................................................................15, 16

Statutes

35 U.S.C. § 287...................................................................................................18

35 U.S.C. § 292.............................................................................................13, 16

Lanham Trade-Mark Act of 1946, 50 Stat. 427 (Jul. 5,1946), *codified*, *as amended*, at 15
    U.S.C. 1051 *et seq*..................................................................................2, 14

N.C.G.S. § 75-1.1.........................................................................................6, 7, 10

Other Authorities

Fed. R. Civ. P. 8.............................................................................9, 14, 15, 16

Fed. R. Civ. P. 8(a) ..............................................................................................5

Fed. R. Civ. P. 9................................................................................................14

Fed. R. Civ. P. 9(b) ............................................................................................13

Fed. R. Civ. P. 12(b)(6).................................................................................5, 13

## I.     INTRODUCTION

Qorvo, Inc. ("Qorvo") brought this lawsuit in an effort to stop the widespread anticompetitive practices of Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis").  Unwilling to invest in research and development and unable to compete on the merits of its own technology, Akoustis has instead pursued a series of shortcuts to enter the market for thin-film bulk acoustic wave ("BAW") filters.  In particular, Akoustis has systemically raided employees from Qorvo to obtain Qorvo's confidential information; used Qorvo's patented technology without authorization; and sought to distinguish its products as having superior performance and deceived potential customers and investors by falsely claiming to use "single crystal" technology.

In moving to dismiss most of Qorvo's claims, Akoustis disregards the governing pleading standards and largely ignores the well-pled factual allegations of the detailed, thirty-page Complaint, which go well beyond a short and plain statement of why Qorvo is entitled to relief.

## II.    NATURE AND STAGE OF PROCEEDINGS

Qorvo filed this lawsuit on October 4, 2021.  D.I. 1.  On November 24, 2021, Akoustis moved to dismiss the claims for false advertising (Count III), false patent marking (Count IV), and unfair and deceptive trade practices under North Carolina law (Count V).  D.I. 10, 11. Akoustis also moved to dismiss three "limited points" related to Qorvo's patent infringement claims: "willful damages; past (pre-suit) damages; and induced infringement allegations."  D.I. 11 at 4 n.1.  Akoustis has not moved to dismiss Qorvo's claims of direct patent infringement.

## III.    SUMMARY OF THE ARGUMENT

1.  Qorvo has made factual allegations supporting each claim for relief.  Akoustis

disputes certain of those allegations, but factual disputes cannot be resolved on a motion to

dismiss.

2.  Qorvo states a claim for unfair competition under North Carolina law.  The Complaint

identifies three unfair and deceptive trade practices, each of which is alone sufficient to sustain a

claim: (i) Akoustis systematically raided Qorvo employees to obtain confidential information;

(ii) Akoustis encouraged those employees to breach their confidentiality obligations; and (iii)

Akoustis made false statements that its BAW filters enjoy superior performance because they are

"single crystal."

3.  Qorvo states a claim for false patent marking.  Akoustis's motion to dismiss is based

on a dispute concerning the disclosure of the Akoustis patent and an incorrect claim

interpretation that cannot be resolved on the pleadings.

4.  Qorvo states a false advertising claim under the Lanham Act.  Akoustis falsely

advertised its BAW filters as "single crystal" when those filters are, in fact, polycrystalline.

5.  Qorvo has adequately alleged pre-suit knowledge and intent because Qorvo has

alleged that ex-Qorvo employees who now work for Akoustis, including current Akoustis

executives, were aware of the patents-in-suit and Akoustis's infringement of those patents.

## IV.    FACTUAL BACKGROUND

### A.    The Parties

Plaintiff Qorvo is a leading producer of thin-film bulk acoustic wave ("BAW") filters.

D.I. 1, ¶¶ 14, 18.  BAW filters are a vital component in wireless communication devices,

allowing the devices to filter out irrelevant signals.  *Id.*, ¶ 15.  Qorvo developed its cutting-edge

-2-

BAW filter technology through decades of substantial investment in research and development.[1]
*Id.*, ¶ 17.  As a result of those investments, Qorvo has been awarded hundreds of patents related
to BAW filter technology.  *Id.*, ¶¶ 23-24.

Defendant Akoustis was formed by a former Qorvo executive to compete with Qorvo in
the BAW filter market.  D.I. 1, ¶¶ 37, 38, 40, 41.  Unlike Qorvo, Akoustis has made relatively
minimal investments in research and development.  *Id.*, ¶ 43.  Instead of developing its own
technology, Akoustis has built its BAW filter portfolio by improperly leveraging Qorvo's
confidential information and using Qorvo's patented technology.  *Id.*, ¶¶ 43-45.

### B.    Akoustis Raided Qorvo Employees to Obtain Confidential Information

Akoustis has engaged in a systematic effort to raid Qorvo for employees who have
confidential information about Qorvo's BAW filter business.  D.I. 1, ¶¶ 46, 53.  Akoustis has
specifically targeted employees with knowledge of confidential aspects of Qorvo's product
design, testing, manufacturing, and customer demands.  *Id.*, ¶¶ 47-49.  The Complaint provides
specific examples of recently-poached employees, along with their job descriptions.  *Id.*, ¶ 48.
As a result of Akoustis's systematic efforts, ex-Qorvo employees now comprise a substantial
portion of the overall Akoustis workforce and more than half of the Akoustis Board of Directors.
*Id.*, ¶¶ 39, 115.

Akoustis has solicited and used confidential information from the ex-Qorvo employees.
D.I. 1, ¶ 53.  For example, Akoustis intentionally recruited and assigned ex-Qorvo employees to
positions with overlapping job responsibilities so the ex-Qorvo employees can use the
confidential information they obtained at Qorvo.  *Id.*, ¶¶ 47, 53.  Akoustis has also engaged in

---

[1] Qorvo was formed by the merger of TriQuint Semiconductor ("TriQuint") and RF Micro
Devices ("RFMD").  D.I. 1, ¶ 11.  TriQuint was formed in 1985; RFMD was formed in
1991.  *Id.*

tactics such as soliciting confidential information from a Qorvo employee during at least one interview, asking the employee to access Qorvo's computer system and share confidential information on the employee's screen.  *Id.*, ¶ 54.

Through its efforts, Akoustis has obtained confidential information from ex-Qorvo employees concerning, *inter alia*, design, development, manufacturing, and qualification of BAW filters.  *Id.*, ¶ 57.  Akoustis has used the information to shortcut the normal product development process and shorten the time to market for its products.  D.I. 1, ¶ 53.  Akoustis has also used Qorvo's confidential information to compete directly against Qorvo for customers and market share.  *Id.*

### C.   Akoustis Willfully Infringes Two Qorvo Patents

In addition to soliciting Qorvo employees to obtain confidential information, Akoustis is also infringing at least two Qorvo patents: U.S. Patent Nos. 7,522,018 (the "'018 patent") and 9,735,755 (the "'755 patent").  D.I. 1, ¶¶ 67-91.  Akoustis's infringement of those patents has been knowing and willful.  *Id*., ¶¶ 75, 88.  For example, current Akoustis employees previously worked in the same department at Qorvo as inventors of the patents-in-suit and were aware of the patents at least from the time the patents were issued or acquired.  *Id*., ¶¶ 50, 51, 74, 87.  Moreover, ex-Qorvo executives—who are now executives at Akoustis—had knowledge of the patents-in-suit.  *Id.*  At least as a result of hiring these ex-Qorvo employees, Akoustis learned of the patents-in-suit and had notice of Akoustis's infringement.  *Id.*

### D.   Akoustis Falsely Advertised Its Products as "Single Crystal"

While Akoustis built its products using Qorvo's patented technology and confidential information, Akoustis has marketed those products as having new and proprietary "single-crystal" technology that offers superior performance compared to polycrystalline products.  D.I. 1, ¶¶ 60, 65, 95.  Akoustis refers to this "single crystal" technology as "XBAW$^{TM}$."  *Id.*, ¶ 60.

Akoustis's statements concerning its alleged "single-crystal" XBAW technology can be found throughout its promotional materials, on its website, and in product data sheets. *Id.*, ¶¶ 61-64, 93-94. For example, Akoustis states on its website that its "next-gen materials allow for single-crystal bulk acoustic wave (BAW) high-band filters." *Id.*, ¶ 61. Akoustis similarly states in promotional materials that it uses a "new proprietary XB1 single-crystal BAW manufacturing process." *Id.*, ¶ 62.

Akoustis's advertisements characterizing its products as "single-crystal" are false. D.I. 1, ¶¶ 65, 95. Akoustis's BAW filters are, in fact, polycrystalline, not "single crystal." *Id.*

### E.   Akoustis Falsely Marked Its Products as Practicing the '786 Patent

In addition to falsely advertising its products as "single crystal," Akoustis has marked its products as practicing U.S. Patent No. 10,256,786 (the "'786 patent"), titled "Communication Filter Using Single Crystal Acoustic Resonator Devices." D.I. 1, ¶¶ 63-65, 106. Consistent with its title, the '786 patent is directed to BAW filter products with single-crystal piezoelectric layers. *Id.*, ¶ 107. As alleged, however, Akoustis's products do not have single-crystal piezoelectric layers and, as such, have been falsely marked as practicing the '786 patent. *Id.*, ¶ 108.

## V.   LEGAL STANDARDS

Under Fed. R. Civ. P. 8(a), a complaint must have "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts accept the factual allegations in the complaint as true, while disregarding mere labels, conclusions, or a formulaic recitation of the claim elements. *Id.* The factual allegations must be sufficient to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, No. 13-1353, 2018 WL 4502178, at *1 (D. Del. Sept. 20, 2018). As such, a plaintiff is not required to "prove [its] case at the pleading stage." *Olivia v. United States*, 961 F.3d 1359, 1364 (Fed. Cir. 2020). And the "factual allegations do not have to be detailed." *Axcess Int'l, Inc. v. Genetec (USA), Inc.*, 375 F. Supp. 3d 533, 535 (D. Del. 2009). But the complaint's factual content must be sufficient to "allow[] [a] court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## VI.   ARGUMENT

### A.   Qorvo States an Unfair Competition Claim under North Carolina Law

Under North Carolina law, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1. To state a claim under N.C.G.S. § 75-1.1, a plaintiff must allege, among other things, that the defendant "committed an unfair or deceptive act or practice, or an unfair method of competition." *Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and a practice is deceptive if it has the capacity or tendency to deceive." *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 228 (N.C. 2013) (internal quotations omitted); *see also Ace Chem. Corp. v. DSI Transps., Inc.*, 446 S.E.2d 100, 106 (N.C. Ct. App. 1994) ("An act or practice is deceptive if it has the capacity or tendency to deceive.") (internal quotations omitted).

Akoustis argues that it is "left only to guess" at the nature of Qorvo's unfair competition claim. D.I. 11 at 7. But Akoustis need not guess in the face of Qorvo's detailed Complaint. Qorvo has identified the specific unfair and deceptive practices that form the basis for its claim—i.e., Akoustis has (i) systematically recruited Qorvo employees to obtain confidential

information (*see* Part IV.B, *supra*; *see also* D.I. 1, ¶¶ 115-117); (ii) encouraged those employees

to breach their contractual confidentiality obligations to Qorvo (D.I. 1, ¶¶ 121-123); and (iii)

made false claims that its products use superior "single crystal" technology (*see* Part IV.D,

*supra*; *see also* D.I. 1, ¶ 129).  Each of these alleged practices is alone sufficient to support a

claim for unfair competition under N.C.G.S. § 75-1.1.

1.    **Raiding employees to obtain confidential information is unfair competition**

Under North Carolina law, the systematic raiding of a competitor's employees to obtain

confidential information qualifies as an unfair trade practice.  For example, courts have found

unfair and deceptive trade practices when "employees were solicited to work for defendants *en

masse*" and placed in positions to use their former employer's confidential information.  *Sunbelt

Rentals, Inc. v. Head & Engquist Equip., LLC*, 620 S.E.2d 222, 230-31 (N.C. Ct. App. 2005); *see

also id.*, at 230 ("By using [Plaintiff's] former BPS employees and confidential information,

defendant-H & E was able to tailor rental fleets at its branches without spending the time, money

and effort necessary to develop such information. In fact, the actual profits generated by

defendants' greenfields should have taken much longer than it actually did (e.g. months, rather

than days) . . . . Defendants' acts were unfair and unscrupulous and caused injury to plaintiff.");

*see also Glover Constr. Co. v. Sequoia Servs., LLC*, No. 18-cvs-1900, 2020 WL 3393065, at

*17-18 (N.C. Super. Ct. June 18, 2020) (finding allegations of soliciting employees and

misappropriating trade secrets sufficient to state a claim).

Courts have also more broadly recognized that misuse of confidential information is a

sufficient basis for an unfair competition claim under North Carolina law.  *See, e.g.*, *Velocity

Sols., Inc. v. BSG Fin., LLC*, No. 15-CVS-1059, 2016 NCBC LEXIS 19, at *7-8 (N.C. Super. Ct.

Feb. 22, 2016) (denying the motion to dismiss where the plaintiff alleged the defendant had

-7-

"specifically engaged and directed [the plaintiff's former employee] to utilize the [p]laintiff's confidential and proprietary information in order to achieve competitive gain"); *CNC/Access, Inc. v. Scruggs*, No. 04-CVS-1490, 2006 NCBC LEXIS 22, at *27-31 (N.C. Super. Ct. Nov. 17, 2006) (denying a motion for summary judgment for an unfair trade practice claim based on the defendant's alleged use of the plaintiff's confidential information); *United Lab. v. Kuykendall*, 403 S.E.2d 104, 109 (N.C. Ct. App. 1991), *aff'd*, 437 S.E.2d 374 (N.C. 1993) (affirming trial court's finding that the defendant's inducement of the plaintiff's former employee to use his "knowledge of confidential business information to attempt to divert to [the defendant], unfairly, [the plaintiff's] accounts . . . constituted unfair methods of competition").

Akoustis largely ignores the actual allegations of the Complaint and seeks to portray the raiding of Qorvo's employees as merely a "common" example of employees "shifting between competitors." D.I. 11 at 9. Akoustis argues that such "employee mobility alone is not actionable." D.I. 11 at 8-11. But even the most cursory review of the Complaint reveals that Qorvo's claim is not based on "employee mobility alone"; Qorvo has alleged the systematic raiding of employees to obtain confidential information and shortcut the effort needed to enter the BAW market. *See* Part IV.B, *supra*. As noted above, such conduct is actionable under North Carolina law.

Akoustis also repeats the refrain that Qorvo's allegations are too "vague and conclusory" to state a claim. D.I. 11 at 10-11. Not so. The factual allegations in the Complaint include (i) a list of the recently-poached employees by title and job responsibility (D.I. 1, ¶ 48); (ii) the confidential information that Akoustis has targeted from ex-Qorvo employees (*id.*, ¶47); (iii) Akoustis's efforts to place the former Qorvo employees in positions to use Qorvo's confidential information (*id.*); (iv) Akoustis's efforts to obtain confidential information from

-8-

Qorvo employees during the interview process (*id.*, ¶54); and (v) Akoustis's use of Qorvo's confidential information to shorten the time required to enter the BAW market (*id.*, ¶ 53). Akoustis argues that it is entitled to further "details" about the raiding scheme, such as the dates that each employee arrived at Akoustis and the "reason" each employee gave for leaving Qorvo. *See* D.I. 11 at 2-3 (providing laundry list of the "who/what/why/when/how" Akoustis believes are necessary to state a claim); *id.* at 10 (listing additional "important details" allegedly missing from the Complaint). But Rule 8 requires only a short and plain statement of the claim, not a novella reciting such details. *See, e.g.*, *Axcess*, 375 F. Supp. 3d at 535 ("factual allegations do not have to be detailed"). The facts alleged in the Complaint are more than sufficient to give rise to a reasonable inference that Akoustis has engaged in unfair competition by raiding Qorvo employees to obtain confidential information.[2]

### 2.   Encouraging employees to violate confidentiality obligations is unfair competition

The Complaint also alleges that Akoustis engaged in unfair competition by encouraging ex-Qorvo employees to disclose confidential information in violation of their contractual obligations. D.I. 1, ¶¶ 121-123. Akoustis argues that breaching a contract is not an unfair business practice absent "substantial aggravating circumstances." D.I. 11 at 11-12. Akoustis's argument misses the mark. While breaching a contract may not qualify as a deceptive act standing alone, ***soliciting or encouraging others*** to breach their contracts is actionable under North Carolina law. *Kuykendall*, 403 S.E.2d at 109 (affirming the lower court's finding of unfair

---

[2] Akoustis also complains that certain of Qorvo's allegations are made on "information and belief." But it is well-established that such allegations are permissible when "factual information is peculiarly within the defendant's knowledge or control." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-8 (3d Cir. 2016); *Defamafocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 468 (D. Del. 2016).

and deceptive trade practices relating to defendant's inducement of plaintiff's former employee to breach a non-compete agreement).

### 3. Making false statements to consumers and investors qualifies as unfair competition

Akoustis also engaged in unfair competition by falsely claiming that its BAW filters use "single crystal" technology to achieve superior performance.  D.I. 1, ¶ 129.  Akoustis used these false claims to divert sales from Qorvo.  *Id.*  Akoustis does not address this allegation in the motion to dismiss.  *See* D.I. 11 at 7-14.  But this allegation is alone sufficient to sustain the unfair competition claim.  *LStar Dev. Grp., Inc. v. Vining*, No. 20-CV-184, 2021 U.S. Dist. LEXIS 181972, at *30-33 (E.D.N.C. Sept. 23, 2021) (denying defendant's motion to dismiss plaintiff's unfair and deceptive trade practices claim because "it c[ould] be reasonably inferred that an alleged false statement . . . [was] likely to harm plaintiff."); *Ellis v. N. Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990) ("We have concluded, for example, that both false advertising and fraud violate [N.C.G.S. § 75-1.1].").

### B. Qorvo States a Claim for False Marking

Akoustis seeks dismissal of the false patent marking count for two reasons.  Both are meritless.

### 1. The '786 patent requires a single crystal piezoelectric layer

Akoustis first argues that it has not falsely marked its products because the '786 patent does not require single crystal piezoelectric layers.  D.I. 11 at 15.  Akoustis's view of the disclosure and interpretation of the claims of the '786 patent are simply wrong.  As set forth in the Complaint, a person of ordinary skill in the art (a "POSITA") at the time of the claimed invention of the '786 patent would have understood the written description of the '786 patent to

-10-

disclose and the claims to require a single crystal piezoelectric layer.  D.I. 1, ¶¶ 64, 107.  In fact, the '786 patent does not describe any other kind of piezoelectric layer.

A POSITA interprets patent claims in view of the entire specification.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005).  Here, the specification makes clear that the '786 patent is directed to single crystal "piezoelectric layers."  Indeed, the '786 patent is titled "Communication Filter Using Single Crystal Acoustic Resonator Devices"  D.I. 11-1 at col.1, ll. 1-3.  The first sentence of the Abstract also indicates the patent is directed to "[a] communication system using a ***single crystal*** *acoustic* resonator device."  D.I. 11-1 at Abstract (emphasis added).  And the specification consistently and repeatedly refers to the single crystal nature of its piezoelectric layer over 20 times, including a disclosure that the preferred (and only) embodiment includes a "single crystal piezoelectric layer 120."  D.I. 11-1 at col. 3, l. 57; col. 4, l. 53; col. 5, l. 9; col. 5, ll. 37-39; col. 6, l. 50; *see also Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1377 (Fed. Cir. 2017) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'").  There is no mention in the '786 patent of any different construction for the "piezoelectric layer," such as a polycrystalline structure.  Moreover, the specification of the '786 patent teaches away from use of polycrystalline structures.  *See, e.g.,* D.I. 11-1 at col. 2, ll. 10-22 ("One or more benefits are achieved over pre-existing techniques using the invention . . . . Using the present method, one can create a reliable single crystal based acoustic filter or resonator using multiple ways of three-dimensional stacking . . . . Such single crystal acoustic resonator enable high band width-low loss filter . . . .").  A POSITA would have understood "piezoelectric layer" in the independent claims of the '786 patent to be of a single crystal construction, as alleged in the Complaint.  *See* D.I. 1, ¶¶ 64, 107.

Rather than addressing paragraphs 64 and 107 of the Complaint head-on, Akoustis argues that the words "single crystal" do not appear in the independent claims of the '786 patent.  D.I. 11 at 15.  But, as explained above, there was no need to use the term "single crystal" in the claims because a POSITA would already have understood that the "piezoelectric layer" of the '786 patent—which is recited in every claim—is "single crystal."  Akoustis fails to provide *any* explanation for why "piezoelectric layer" of the independent claims of the '786 patent would *not* have been read as being of a single crystal construction by a POSITA, as alleged in the Complaint.

Akoustis also argues that the "single crystal limitation is found, as an optional feature, [in] dependent claim 2."  D.I. 11 at 15.  This is misdirection.  Dependent claim 2 is not directed to the crystalline structure of the "piezoelectric layer."  Rather, it describes the structure of the "seed substrate," specifying that it "includes silicon, silicon carbide, aluminum oxide, or single crystal aluminum gallium nitride materials." D.I. 11-1 at col. 14, ll. 62-64.  The "seed substrate" is an entirely different element of the filter described in the '786 patent and it is the substrate on which the single crystal "piezoelectric layer" is formed.  *See, e.g.*, *id.* at col. 3, ll. 55-57 ("As shown, device 101 includes a thinned seed substrate 112 with an overlying single crystal piezoelectric layer 120 . . . ."); *id.* at col. 4, ll. 52-53 (same).  As such, while claim 2 indicates that the "seed substrate" may also be "single crystal," that claim has no impact on a POSITA's understanding of the "piezoelectric layer."

To the extent Akoustis disagrees with Qorvo's interpretation that the "piezoelectric layer" of the '786 patent is single crystal, that is also no basis to dismiss the false marking claim.  To the contrary, Qorvo's allegations are to be reviewed in the light most favorable to Qorvo.  *See, e.g.*, *Battenfeld Techs., Inc. v. Birchwood Labs., Inc.*, No. 11-cv-883, 2011 U.S. Dist. LEXIS

158195, at *19-20 (D. Minn. Sept. 15, 2011) ("Although Defendant may disagree with Plaintiff's claim interpretation, this Court agrees that, after reviewing the allegations of the Amended Complaint in the light most favorable to Plaintiff, Plaintiff's allegations as to marking an unpatented article are sufficient.  Therefore, for purposes of Rule 9(b), Plaintiff has properly pled the first element of a § 292 claim.").  Indeed, Courts often deny motions to dismiss that turn on claim construction issues.  *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) ("It is not appropriate to resolve these disputes, or to determine whether the method claimed in the '692 patent should be confined to the preferred embodiment, on a Rule 12(b)(6) motion, without the benefit of claim construction. The 'purpose of a motion to dismiss is *to test the sufficiency of the complaint, not to decide the merits*.'") (emphasis in original).

### 2.   Akoustis has acted with the intent to deceive

Akoustis also argues that Qorvo has not "identif[ied] specific facts to indicate knowledge of the deception." D.I. 11 at 15-16.  Again, the Complaint belies this assertion.  Akoustis has regularly portrayed its products as "single crystal" and used this feature to differentiate them from polycrystalline products.  *See* Part IV.D, *supra*.  Akoustis thus understood the difference between single crystal and polycrystalline BAW filters.  And Akoustis also knew the construction of its own products.  D.I. 1, ¶ 108.  Thus, Akoustis knew or should have known that its products were, in fact, not single crystal, and that it was improperly marking its products as practicing the "single crystal" technology of the '786 patent in an effort to gain market advantage.  This is more than enough at the pleading stage to state a false marking claim.

### C.   Qorvo States a Claim for False Advertising

Akoustis argues that the false advertising claim should be dismissed because (i) Qorvo did not identify false advertisements; (ii)  Akoustis has sophisticated customers who will not be

-13-

deceived by false statements; and (iii) patent holders are authorized to make false statements about their patent rights.  Each argument is meritless.

### 1.      Qorvo identified the false statements in the Complaint

The Complaint directly and repeatedly alleges that Akoustis falsely advertised its products as "single crystal" when those products are, in fact, polycrystalline.  D.I. 1, ¶¶ 60, 65, 95; *see also* Part IV.D, *supra*.  Contrary to Akoustis's assertions (*see* D.I. 11 at 17), Qorvo identifies specific examples of these false advertisements in the Complaint.  D.I. 1, ¶¶ 61-63.

Akoustis vaguely argues that the allegations in the Complaint are "insufficient as a matter of law," but does not provide any citations to support that argument.  *See* D.I. 11 at 17.  Akoustis also argues more specifically (in a footnote) that the false statements identified in the Complaint are beyond the purview of the Lanham Act because they are "clearly forward-looking."  *Id.* at 17 n.10 (citing *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 456 (S.D.N.Y. 2011)).  That argument fails in multiple respects.  First, as a matter of plain English, referring to a product as using "pioneering next generation materials" (D.I. 1, ¶ 61) is another way of saying the product is advanced; it is not a "forward looking statement" that the product will only be available in a future generation. D.I. 1, ¶ 63.  Second, Akoustis's "single crystal" advertising applies to each of the products currently in the Akoustis portfolio.  *See* D.I. 1, ¶ 63.  Third, the decision in *Reckitt* states that predictions about uncertain future events fall outside the Lanham Act if "the uncertain nature" of the predictions is made clear.  *Reckitt*, 760 F. Supp. 2d at 456.  Akoustis's false statements do not even arguably satisfy that standard.[3]

---

[3] Akoustis also argues that false advertising claims are subject to heightened pleading under Rule 9.  D.I. 11 at 17 n.9.  The argument is irrelevant here given that Qorvo allegations would satisfy the standard under either Rule 8 or Rule 9.  Moreover, Akoustis fails to note that this Court has held that Rule 8 applies to false advertising claims.  *Peloton Interactive, Inc. v. Icon Heath &*

### 2.      The sophistication of Akoustis's customers is not relevant

Akoustis next argues that its customers are too sophisticated to be deceived by false statements about the crystalline structure of Akoustis's products.  D.I. 11 at 18.  There are two problems with this argument.  First, because Akoustis's statements are literally false, there is no requirement to prove customers were actually deceived.  *See, e.g.*, *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) ("If a plaintiff proves that the challenged commercial claims are literally false, a court may grant relief without considering whether the buying public was actually misled.").  Second, even if the sophistication of Akoustis's customers were relevant, that would be an issue to address in discovery, not on a motion to dismiss. *10x Genomics, Inc. v. Celsee, Inc.*, No. 19-cv-862, 2019 WL 5595666, at *8 (D. Del. Oct. 30, 2019); *Sandoz Pharms. v. Richardson-Vicks*, 902 F.2d 222, 229 (3d Cir. 1990) ("[C]ontext can often be important in discerning the message conveyed and this is particularly true where, as here, the target of the advertising is not the consuming public but a more well informed and sophisticated audience.").

### 3.      Akoustis made false statements about its products

Akoustis's final argument is that a patent holder may engage in false advertising so long as the false statements are not made in bad faith.  D.I. 11 at 18 (citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-1354 (Fed. Cir. 1999)).  This argument has no merit.  *Zenith* held that a patent holder may make good faith statements "regarding its patent rights," not its products.  182 F.3d at 1353.  For example, good faith allegations of infringement are not actionable as false advertising.

---

*Fitness, Inc.,* No. 20-662, 2021 WL 2188219, at *5 (D. Del. May 28, 2021) ("I will examine [false advertising claims] in accordance with Rule 8").

-15-

But Akoustis's false statements here are not statements "regarding its patent rights." Rather, Akoustis falsely advertised the crystalline structure of its BAW filters.  D.I. 1, ¶¶ 61-63. As such, the holding in *Zenith* has no application here.[4]

**D.      Qorvo Satisfied the Knowledge and Intent Requirements**

Akoustis argues that Qorvo's claims for induced infringement and willful infringement should be dismissed because Qorvo failed to adequately allege knowledge of the asserted patents and intent to induce infringement.  Again, Akoustis's arguments lack merit.

**1.      Qorvo adequately alleges pre-suit knowledge**

Akoustis first argues that Qorvo has not sufficiently alleged pre-suit knowledge of the asserted patents.  D.I. 11 at 18-19.  But the Complaint alleges that Akoustis learned of the patents before the lawsuit because Akoustis hired former Qorvo employees who had knowledge of the patents, including ex-Qorvo employees who became executives at Akoustis.  D.I. 1, ¶¶ 50, 51, 87.  Akoustis argues these allegations are insufficient because Qorvo did not identify the ex-employees "by name" or provide a detailed explanation of the "circumstances" under which the employees learned of the patents.  D.I. 11 at 19.  But, again, Rule 8 imposes no requirement that Qorvo provide such details or prove its allegations at the pleading stage.  The factual allegation that Akoustis hired ex-Qorvo employees with knowledge of the patents is sufficient to plausibly allege Akoustis had pre-suit knowledge.

Akoustis cites two cases for the proposition that "comparable" allegations of pre-suit knowledge have been rejected.  D.I. 11 at 19 (citing *Monec Holding AG v. Motorola Mobility,*

---

[4] Akoustis ***also*** falsely marks its products as practicing the '786 patent in violation of 35 U.S.C. § 292, but the false marking gives rise to a separate claim for relief.  *See* D.I. 1, ¶¶ 105-110.  As discussed in Part VI.B.2, *infra*, Qorvo has plausibly alleged that Akoustis acted in bad faith in falsely marking its products with the number of the '786 patent.  *Id.*, ¶ 109.

*Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012), and *Radware, Ltd., v. A10 Networks, Inc.*, No. C–13–02021, 2013 WL 5373305, at *2-3 (N.D. Cal. Sept. 24, 2013)).  Neither *Monec* nor *Radware* address comparable allegations.  In *Radware*, the court held there was no plausible basis to infer that an ex-employee informed the management of his new company of a patent that "had not yet issued at the time [the employee] transferred."  2013 WL 5373305, at *3.  By contrast, the Complaint here alleges that former Qorvo employees knew of the patents as part of their responsibilities at Qorvo and then transferred that knowledge to Akoustis.  D.I. 1, ¶ 50.  Additionally, the Complaint here specifically alleges that Akoustis management knew of the patents.  *Id.*, ¶ 51.  *Monec* is even further afield—the court there held that pre-suit knowledge cannot be inferred merely because the defendant was a competitor in the same market as the plaintiff.  897 F. Supp. 2d at 232.  Qorvo does not rely on any such inference in this case.  *See* D.I. 1, ¶¶ 50, 51, 87.

## 2. Qorvo adequately alleges intent

Akoustis also argues that Qorvo failed to allege Akoustis's intent to induce infringement.  D.I. 11 at 19-20.  But the Complaint alleges that Akoustis provides customers with instructions and diagrams on the Akoustis website that encourage customers to use the infringing products.  D.I. 1, ¶¶ 73, 85.  This Court has repeatedly held that such allegations are sufficient to show intent.  *See, e.g.*, *Express Mobile, Inc. v. Squarespace, Inc.*, No. 20-cv-1163-RGA, 2021 WL 3772040, at *3 (D. Del. Aug. 25, 2021) ("Plaintiff has plausibly alleged that Defendant specifically intended another party to infringe. For each patent, the Complaint alleges that Defendant 'actively encourages the adoption of the Accused Instrumentalities and provides support sites for the vast network of developers working with the Accused Instrumentalities, emphasizing the customizable and user-friendly nature of the Accused Instrumentalities.' The Complaint also identifies language from Defendant's website that promotes and advertises use of

-17-

the Accused Instrumentalities by third parties. These allegations show that it is plausible that

Defendant 'specifically intended another party to infringe' as Defendant was actively

encouraging third parties to use its products."); *Malvern Panalytical, Inc. v. TA Instruments-*

*Waters, LLC*, No. 19-cv-2157-RGA, 2020 WL 8225650, at *1 (D. Del. May 5, 2020)

(identifying product literature that tells customers how to use the products sufficient at the

pleading stage).

     **E.    Qorvo Does Not Seek Past Damages for Patent Infringement (Counts I and II) at this Time**

    Akoustis moves to dismiss past damages under 35 U.S.C. § 287.  D.I. 11 at 20. But

Qorvo is not seeking an award of past damages on its infringement claims at this time.  *See* D.I. 1

at 1 (Prayer for Relief).

**VII.   CONCLUSION**

    For the foregoing reasons, Akoustis's motion to dismiss should be denied.

                   MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                   */s/ Jeremy A. Tigan*

                   _____
OF COUNSEL:               Jack B. Blumenfeld (#1014)

                   Jeremy A. Tigan (#5239)
Robert M. Masters           1201 North Market Street
Jonathan R. DeFosse         P.O. Box 1347
Timothy P. Cremen          Wilmington, DE  19899
Kevin A. Ryan              (302) 658-9200
Thomas Carr               jblumenfeld@morrisnichols.com
SHEPPARD, MULLIN, RICHTER   jtigan@morrisnichols.com
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801    *Attorneys for Plaintiff Qorvo, Inc.*
(202) 747-1900

December 8, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 8, 2021, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                    *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

David A. Jakopin, Esquire                                        *VIA ELECTRONIC MAIL*
Dianne L. Sweeney, Esquire
PILLSBURY WINTHROP SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA  94304-1115
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Robert M. Fuhrer, Esquire                                        *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA  22102-4856
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)