IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QORVO, INC.,

Plaintiff,

v.

AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC.

Defendants.

C.A. No. 1:21-cv-01417-RGA

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

OF COUNSEL:

David A. Jakopin
Dianne L. Sweeney
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. QORVO FAILS TO STATE A CLAIM FOR VIOLATION OF UNFAIR OR DECEPTIVE ACTS/PRACTICES (N.C.G.S. SECTION 75-1.1) .......... 1

1. Qorvo cannot state a claim merely by labeling ordinary hiring practices as “systematic poaching” or “raiding” .......... 3

2. Qorvo fails to identify the alleged confidential information with sufficient specificity .......... 5

3. Qorvo fails to allege any specific act by Akoustis that either induced the ex-Qorvo employees to breach their confidentiality agreements or hired the ex-Qorvo employees for an improper purpose .......... 6

4. Qorvo cannot allege any false statements as unfair acts without sufficient factual allegations .......... 7

B. False Marking Demands Facts Supporting Both Falsity and Intent to Deceive .......... 7

C. Qorvo’s Reliance on False Patent Marking to Allege False Advertising Changes the Rules and Qorvo Still has to Allege Falsity .......... 8

D. Qorvo’s “Guilt By Former Association” Theory Does not Satisfy the Pre-Suit Knowledge Pleading Requirement for Willfulness and Inducement .......... 10

III. CONCLUSION .......... 10

## I. INTRODUCTION

Qorvo's opposition, like the allegations in its Complaint, is an argument untethered to facts. Legal theories, labels, and conclusions are not factual allegations and not presumed true for purposes of this pleading motion. Factual pleading is required, not just legally required but also practically required to provide Akoustis with reasonable notice of the who/what/when/where so that Akoustis can meaningfully respond to the claims and the parties can identify the proper scope of discovery. The claims subject to this motion fail to meet these legal and practical requirements.

Qorvo's "raiding" claim is just an unsupported conclusion. When the prose is set aside, the skeletal facts remaining show lawful conduct – the hiring of about 20 people over a seven-year period in a broad range of areas (engineering, customer service, business development and tax). Qorvo's confidential information claim is similarly devoid of facts and compounds the problem by using an overbroad definition of "confidential" information. Thus, Qorvo's Complaint denies Akoustis notice of what specific information is at issue, when it was allegedly used and by whom. Having failed to allege facts beyond its theories, labels and conclusions, dismissal is warranted. Additionally, Qorvo's false marking and related Lanham Act claims are inconsistent with the very patent upon which they rely. Those claims are also insufficiently pled as Qorvo again uses conclusory allegations in an effort to allege falsity for the Lanham Act and pre-suit knowledge of the patents-in-suit. As no such facts exist, amendment would be futile (and Qorvo fails to even allude to any other facts much less offer an amended pleading).

## II. ARGUMENT

### A. QORVO FAILS TO STATE A CLAIM FOR VIOLATION OF UNFAIR OR DECEPTIVE ACTS/PRACTICES (N.C.G.S. SECTION 75-1.1)

Qorvo fails to allege facts sufficient to state a claim under the North Carolina Unfair Trade Practices Act (N.C. Gen. Stat. § 75–1.1) ("Section 75-1"), relying instead almost entirely on conclusions, labels, and improper information-and-belief allegations. While Qorvo defends its

paucity of factual allegations as sufficient under Rule 8 because "factual allegations do not have to be detailed," Qorvo omits the full quote from the case it cites: "The factual allegations do not have to be detailed, ***but they must provide more than labels, conclusions, or a 'formulaic recitation' of the claim elements***." *Axcess Int'l, Inc. v. Genetec (USA) Inc.*, 375 F. Supp. 3d 533, 535 (D. Del. 2019) (emphasis added to portion omitted); *see also In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness."). While Qorvo similarly asserts that it can freely rely on information-and-belief allegations, it again omits the full quote from the case it cites for that proposition:

> "***This Court has explained that pleading upon information and belief is permissible where it can be shown that the requisite*** factual information is peculiarly within the defendant's knowledge or control—***so long as there are no boilerplate and conclusory allegations and [p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible***."

*McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (internal citations omitted and emphasis added to omitted portions).

Qorvo's Section 75-1 claim relies heavily on labels, conclusions, and improper information-and-belief allegations. For example, Qorvo alleges that Akoustis "systematically poached" (or, as described in Qorvo's opposition, "raided") Qorvo's former employees. But those conclusions are not entitled to a presumption of truthfulness. The factual allegation behind those conclusions is that Akoustis allegedly hired approximately 20 former Qorvo employees at unspecified times between 2014 and the present. As another example, Qorvo alleges on information and belief that Akoustis "requested the Ex-Qorvo BAW Employees, to disclose, use, or share the Qorvo BAW Proprietary Information as part of Akoustis' recruitment process, or otherwise expected the Ex-Qorvo BAW Employees to disclose, use, or share, the Qorvo BAW Proprietary Information . . ." without providing a single grounding factual allegation in support.

(Complaint, ¶ 123.) This conclusory allegation, and others specifically referred to in Qorvo's opposition (*See, e.g.*, D.I. 13 at 6-7; Complaint, ¶¶ 115, 117, 123-126), results in a Section 75-1 claim comprised of conclusory allegations based on information and belief assertions unsupported by facts.

After disregarding Qorvo's conclusory allegations, Qorvo's Section 75-1 claim boils down to the following factual allegations:

- approximately 20 former Qorvo employees were hired by Akoustis at unspecified times over a period of seven years (Complaint, ¶ 46);
- those employees had access to one or more categories of "Qorvo BAW Proprietary Information," a term defined only by reference to a list of "example" categories so broad that it includes "employee information" (Complaint, ¶¶ 20, 49);
- Akoustis was aware that those employees had non-disclosure agreements with Qorvo (Complaint, ¶¶ 52, 122); and
- those employees have responsibilities at Akoustis that overlap with their roles at Qorvo (Complaint, ¶ 117).

These factual allegations show lawful conduct and are insufficient to state a Section 75-1 claim.

**1. Qorvo cannot state a claim merely by labeling ordinary hiring practices as "systematic poaching" or "raiding"**

Qorvo's "raiding" accusation is patterned after a claim in *Austin Maint. & Const., Inc. v. Crowder Const. Co.*, 224 N.C. App. 401 (2012). In *Austin*, a maintenance company brought a claim under Section 75-1 against a competitor that hired plaintiff's foreman and his four-member crew responsible for one of the plaintiff's key customers. *Id.* at 406. Immediately thereafter, the plaintiff lost its customer's business to the defendant. *Id.* The plaintiff alleged that the defendant "surreptitiously raided" its workforce. *Id.* at 420. Notwithstanding the plaintiff's proof of a stronger set of facts than Qorvo has even alleged here – the hiring of an entire specific team, loss of a specific customer and identifiable damages – the court, as a matter of law, upheld the dismissal of the Section 75-1 claim on summary judgment. *Id.* at 421; *see also United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 664 (1988) (under Section 75-1, it is a question of law for the court as to whether proven facts constitute an unfair or deceptive trade practice). The court explained

why plaintiff's analogy to *Sunbelt Rentals, Inc. v. Head Equip., L.L.C.*, 174 N.C. App. 49 (2005) – the principal case cited by Qorvo here – was inapplicable. Among other things, the hiring of one crew from an organization with more than 7,000 employees "differs dramatically from the situation at issue in *Sunbelt*" *and* the defendants did not misappropriate the plaintiff's trade secrets. *Austin Maint. & Const.*, 224 N.C. App. at 421-22. Here, the hiring alleged by Qorvo is far removed from both *Austin* and *Sunbelt*. Qorvo has not alleged that Akoustis hired a material part of Qorvo's workforce much less any specific department or project group and does not allege any trade secret misappropriation. The few facts Qorvo alleges show the very opposite: single hires over seven years in diverse areas of the business and a definition of confidential information that is so overbroad it is meaningless for notice purposes. Qorvo's omissions are equally insightful: no trade secret claim, no specific confidential information (or usage) identified; no allegation that it complained about these hirings over the last seven years and no allegation that Qorvo – an international, publicly traded company – suffered any impact by these hires.

A further review of the facts in *Sunbelt* confirms that Qorvo's reliance on it is entirely misplaced. In *Sunbelt,* the defendants unfairly competed by, among other things, using plaintiff's employees to solicit other key employees while both the soliciting and solicited employees were still employed by the plaintiff.[1] It was that deceptive hiring practice that "***differentiate[d] [the Sunbelt] case from others where courts have found the hiring of competitor's employees to be acceptable***". *Sunbelt Rentals, Inc.*, 174 N.C. App. at 60-61 (2005) (emphasis added). The extensive hiring was also massive and crippling – 25 employees from one branch, the entire outside sales staff from another branch, and every one of the plaintiff's employees in a third

[1] The defendants also told customers that plaintiff's company name had changed to that of defendants' new venture, used plaintiff's leasing contracts and pricing information for their own benefit, inserted defendants' company name on plaintiff's documents, deleted plaintiff's job information, and forwarded plaintiff's phones to defendant upon leaving plaintiff's employment. *Sunbelt Rentals, Inc.*, 174 N.C. App. at 59.

branch. *Id.* at 51 n.2. Plaintiff's local branches were thus "'crippled,' to the point [the plaintiff's] opportunity and ability to compete for key employees on a level playing field was completely eliminated." *Id.* at 60. Qorvo does not allege any facts even remotely comparable to *Sunbelt*, including no factual allegations that show Akoustis' hiring was of a "deceptive, secretive nature" as distinguished from standard hiring practices much less any massive recruiting or crippling of Qorvo anywhere in the world. In *Sunbelt*, the action was filed within *seven months* of extensive concentrated hiring in multiple cities following a specific plan and crippling operations. In contrast, Qorvo tries to stitch single hires with various backgrounds over *seven years* into some type of alleged unscrupulous practice based on information and belief. There is no comparison. *Id.* at 51.

**2. Qorvo fails to identify the alleged confidential information with sufficient specificity**

While Qorvo may argue that Akoustis' alleged use of ex-Qorvo employees to misappropriate Qorvo's confidential information is sufficient to make Akoustis' hiring "practice" unfair under Section 75-1, a stronger, more specific set of misappropriation allegations was found too general and insufficient to state a claim in *Krawiec v. Manly*, 370 N.C. 602 (2018). In that case, the plaintiffs alleged a violation of Section 75-1, claiming that a competitor "maliciously, deliberately, secretly, [and] wantonly. . ." hired their employees, and misappropriated their trade secrets (including dance production concepts and client lists) from their former employees. *Id.* at 608, 611-613. The Supreme Court of North Carolina affirmed the dismissal of plaintiffs' Section 75-1 claim, explaining that they "made no further allegations of *specific* unfair or deceptive acts." *Id.* at 613 (emphasis added). The court also explained that the plaintiffs' trade secret allegations were "too general" to proceed. *Id.* at 611 (quoting N.C. Gen. Stat. Ann. § 66-152(3)(a)). While Qorvo alleges misappropriation of confidential information rather than trade secrets, Qorvo must still allege facts sufficient to show that it derives independent value from the confidentiality of its

information to allege that it is harmed by disclosure of that information. (*See* Complaint, ¶ 118); *see also Dalton v. Camp*, 353 N.C. 647, 656 (2001) (Section 75-1 claim requires showing that the act proximately caused injury to the plaintiff). Like *Krawiec*, the Complaint's broad definition of Qorvo's confidential information is too general to allow the court to make that determination.[2]

**3. Qorvo fails to allege any specific act by Akoustis that either induced the ex-Qorvo employees to breach their confidentiality agreements or hired the ex-Qorvo employees for an improper purpose**

Qorvo's assertion that the mere inducement of a breach of contract is sufficient to state a claim under Section 75-1 is incorrect. North Carolina courts consider the elements of tortious interference with contract in determining whether an inducement of a breach constitutes a Section 75-1 violation,[3] and the Supreme Court of North Carolina has explained that no claim can be made for tortious interference with a contract when a breach of contract is induced for a reasonable and *bona fide* competitive purpose. *United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 662 (1988) (quoting *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221 (1988) (competition between the plaintiff and defendant was sufficient to justify defendant offering plaintiff's employees job opportunities and inducing them to terminate their at will contracts)). Moreover, the *Kuykendall* opinion cited by Qorvo reflects that specific acts of inducement were identified in establishing the plaintiff's Section 75-1 claim (*e.g.*, offered to pay the legal fees and costs of the plaintiff's former employee (Kuykendall) to breach his covenant not to compete and offered to subsidize

[2] Qorvo's authorities are unavailing as none of its cases address a situation where multiple employees of different disciplines/knowledge migrated over a number of years. Plaintiff's own cases show more information and notice was provided concerning a more discrete set of facts. *See Velocity Sols., Inc. v. BSG, LLC*, No. 15 CVS 1059, 2016 WL 698506, at *1 (N.C. Super. Feb. 22, 2016) (one individual was involved in developing a response to federal regulations for overdraft services and usage of that information by that same person to develop the same software was identified); *CNC/Access, Inc. v. Scruggs*, No. 04 CVS 1490, 2006 WL 3350854, at *10 (N.C. Super. Nov. 15, 2006) (fifty-seven policies and forms contained in a specific exhibit were identified); *United Lab'ys, Inc. v. Kuykendall*, 87 N.C. App. 296, 303 (1987), *aff'd in part, rev'd in part*, 322 N.C. 643 (1988) (customer lists and customer information were identified).

[3] *Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC*, 116 F. Supp. 3d 644, 656, 661 (M.D.N.C. 2015) (drawing guidance from elements of tortious interference with contract in determining that payment of $100,000 to induce breach of terminable-at-will contract was not a violation of Section 75-1).

Kuykendall's income, draw, and expenses in the event of an injunction). *United Lab'ys, Inc. v. Kuykendall*, 102 N.C. App. 484, 491-92 (1991). No such inducements are alleged here.

**4. Qorvo cannot allege any false statements as unfair acts without sufficient factual allegations**

To save its Section 75-1 claim, Qorvo brazenly claims that Akoustis did not dispute paragraph 129 of the Complaint that public statements about the single crystal were false or misleading. Akoustis noted the limited reference and confirmed that the assertion (like the balance of its claim) (i) failed to allege that the act was dishonest or immoral as required, and (ii) failed separately as a matter of law under the Lanham Act and false marking analysis. (*See* D.I. 11 at 8, fn. 5; *see also*, *id*. at 14-18.) North Carolina law is clear that Section 75-1 is not a catch-all claim for all alleged bad deeds but requires specific allegations not present here. (S*ee* D.I. 11 at 7-14.)

**B. False Marking Demands Facts Supporting Both Falsity and Intent to Deceive**

Qorvo acknowledges that the '786 Patent claims do not recite a "single-crystal" piezoelectric layer, but now contends that "the '786 patent does not describe any other kind of piezoelectric layer." (D.I. 13 at 11.) What Qorvo ignores is that the patent specification references that the substrate can include "functional regions, combinations and the like" that are clearly not single crystal; and "single crystal" represents a preferred embodiment of the broader claimed piezoelectric layer and used "by way of example". *See, e.g.*, (D.I. 11-1 at 14:24-31, 1:40-50 and 3:45-52); *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1381 (Fed. Cir. 2009) ("even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope …."). Also, since the '786 Patent was allowed on a first office action, Qorvo does not and cannot contend that the alleged Akoustis "disclosures" and "statements" are a prosecution disclaimer.[4] *Speedtrack, Inc. v.*

[4] Qorvo also mischaracterizes Akoustis' reference to claim 2 as "misdirection." (D.I. 13 at 12.) The independent claims lack the single-crystal modifier entirely, while the dependent claim uses it for the seed substrate; showing that where the patentee intended to include the modifier, it did so.

*Amazon.com, Inc.*, 998 F.3d 1373, 1379 (Fed. Cir. 2021) ("[p]rosecution disclaimer can arise from both claim amendments and arguments.") (internal citation omitted). Qorvo's proffered claim construction is not facially reasonable, and its argued disclaimer is unsupported in the Complaint.

As to the second element of false marking, intent to deceive, Qorvo only vaguely argues that Akoustis "regularly portrayed its products as 'single crystal' and used this feature to differentiate them from polycrystalline products. *See* Part IV.D, *supra."* (D.I. 13 at 13.) Qorvo's reliance on unclear "false advertising" (*see* Part II.C below) fails to satisfy the Rule 9 standard. Beyond that, Qorvo failed to address the *Kemin Foods v. Pigmentos Vegetales Del Centro*, 464 F.3d 1339 (Fed. Cir. 2006), decision that stands for the critical proposition that a party's legal position, as to the scope of a patent, if sufficiently plausible itself, *negates* any requisite deceptive purpose, as a matter of law. *Kemin Foods* is satisfied because Akoustis contends that the '786 Patent claims do not require a single crystal piezoelectric layer and Akoustis' position is consistent with the plain language of the claims. Qorvo's false marking claim similarly fails.

**C. Qorvo's Reliance on False Patent Marking to Allege False Advertising Changes the Rules and Qorvo Still has to Allege Falsity**

While Qorvo suggests that its false advertising claim is based on statements outside of its false marking claims, a review of their allegations confirm that Qorvo's false advertising claim is derivative to its false patent marking. *Compare* D.I. 13 at 14 (suggesting that the "nex-gen" reference it is not a "'forward looking statement' that the product will only be available in a future generation. D.I. 1 at ¶ 63.") *with* Complaint, ¶ 63 (which contains false patent marking allegations). To establish this type of derivative Lanham Act claim, a plaintiff has to first set forth a viable false marking claim. As detailed in *Kemin Foods,* a derivative Lanham Act claim cannot be based on a deficient false marking claim. *Kemin Foods*, 464 F.3d at 1355 ("Kemin cannot be said to have acted with the deceptive purpose necessary to trigger liability under the false marking statute (or, derivatively, to form the basis for an antitrust or Lanham Act claim.") (emphasis

added). *Wing Enters. v. Tricam Indus*., No. 20-cv-2497, 2021 WL 3620272 (D. Minn. Aug. 16, 2021), recently confirmed this pleading standard issue. *Id*. at *3. Noting that while "[i]t is true that some courts have not applied the Rule 9(b) standards to *more typical* Lanham Act false advertising claims," the court determined that it is "appropriate to apply 9(b) here because Tricam's false advertising counterclaim is firmly grounded in fraud, as it is based on the same allegations underlying its false marking claim." *Id.* Because Tricam's false marking claim failed, the derivative false advertising claim also fails to satisfy Rule 9(b)'s heightened pleading standard. *Id*. at *14 (citing *Kemin Foods*). Qorvo should be held to the same standard.[5]

Qorvo also fails to allege actual falsity of Akoustis' advertising. Aside from its reference to the alleged false marking (which fails as a matter of law), the Complaint offers only vague, conclusory proclamations of falsity. Qorvo adds no further clarity. By way of example, "Pioneering next generation materials" (D.I. 13 at 14) cannot be reasonably viewed as false. The webpage referenced in paragraph 61, taken as a whole, does not contend that the current product line consists of single crystal filters. Qorvo does not explain how that statement is false other than to baldly assert that Akoustis' current product line is not single crystal. Likewise, Qorvo contends that "XBAW™ technology" (¶ 60) means single crystal piezoelectric layers (D.I. 13 at 4) but offers no cogent explanation as to why. There is no plausible basis for the Court to infer that any identified statement ties the current Akoustis products to single crystal filters. Absent any current false or misleading statement, the claim should be dismissed.

[5] Qorvo's reliance on *Peloton Interactive, Inc. v. Icon Health & Fitness, Inc*., No. 20-662, 2021 WL 2188219, at *5 (D. Del. May 28, 2021), is misplaced because the Court was deciding whether to apply a pre-*Twombly* intermediate standard. Qorvo is also incorrect by suggesting it need not make a plausible claim based on the sophistication of target audience, for the reasons explained in *Sebela Pharms. Inc. v. TruPharma, LLC*, No. 1:20-CV-01677-SB, 2021 WL 1785042, at *1 (D. Del. May 5, 2021); another case wholly ignored in Qorvo's opposition.

**D. Qorvo's "Guilt By Former Association" Theory Does not Satisfy the Pre-Suit Knowledge Pleading Requirement for Willfulness and Inducement**

Qorvo's attempted rebuke of Akoustis' cited caselaw illustrates its pleading shortfall as to pre-suit knowledge of the Asserted Patents. Facts available to Qorvo illustrate the speciousness of the allegations.[6] Similar to Qorvo's arguments now, the court in *Monec Holding*, rejected plaintiff's pleading because it "improperly merge[d] the burden of pleading indirect infringement with the burden of proving it." *Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 231 (D. Del. 2012). The Court concluded that "it is not a plausible argument to charge Defendants with knowledge of the '678 patent from among hundreds of cases involving their competitors' products." *Id*. at 233. Likewise, Qorvo contends that it "has been awarded hundreds of patents related to BAW filter technology. *Id.*, ¶¶ 23-24." (D.I. 13 at 3.) And the fact Akoustis hired ex-Qorvo employees over many years is not enough to infer knowledge as to the two Asserted Patents. Even if this Court finds that "instructions and diagrams" and "encourage to use" meet the bare minimum for pleading inducement under Rule 8 as Qorvo contends (D.I. 13 at 17), Qorvo's own authority confirms that adequate pleading of pre-suit knowledge of the patent is still required to survive Akoustis' motion to dismiss. *Express Mobile, Inc. v. Squarespace, Inc.,* No. 20-cv-1163-RGA, 2021 WL 3772040, (D. Del. Aug. 25, 2021) ("These facts do not plausibly support an allegation that Defendant knew that the third parties' acts were infringing [], as Defendant was not notified of its infringement until a day before this suit was filed.").

## III. CONCLUSION

Akoustis respectfully requests that the Court grant this motion in its entirety.

[6] The '018 Patent was not invented by Qorvo but purchased from another third party. (*See* Ex. A to the Complaint.) And the '755 Patent did not issue until August 15, 2017; well after the founding of Akoustis.

December 15, 2021

OF COUNSEL:

David A. Jakopin
Dianne L. Sweeney
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*