IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 1:21-cv-01417-JPM |
| v. | ) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) |
| AKOUSTIS, INC. | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' OPENING BRIEF THEIR SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

OF COUNSEL:

David A. Jakopin
Dianne L. Sweeney
PILLSBURY WINTHROP SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

David L. Stanton
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 S Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS ..................................................1

II.   INTRODUCTION ................................................................................................1

III.  STATEMENT OF ALLEGED FACTS FROM QORVO'S COMPLAINT ...............................5

IV.  LEGAL STANDARD ..........................................................................................6

V.   QORVO FAILS TO STATE A CLAIM UNDER THE UNFAIR AND DECEPTIVE TRADE PRACTICES ACT..........................................................................................8

    A.   Employee Mobility is Not a Deceptive or Unfair Practice or Act ......................................8

    B.   Qorvo Failed to Allege Facts Linking Akoustis' Hiring of Ex-Qorvo Employees to Any Unfair or Deceptive Practice..................................................................9

        1.  Qorvo Failed to Allege That Akoustis Hired the Ex-Qorvo Employees to Obtain Qorvo's Confidential Information ..................................................10

            a.  Qorvo Cannot Fill the Gaps in its Factual Allegations with the Trade Secret Doctrine of Inevitable Disclosure ........................................12

            b.  Qorvo's Allegations are Inconsistent with the Inevitable Disclosure Doctrine....14

        2.  Qorvo Failed to Allege That Akoustis Hired the Ex-Qorvo Employees to Damage Qorvo ....................................................................................14

        3.  Qorvo Failed to Allege That Akoustis' Engineering Manager Knowingly Requested or Received Qorvo's Confidential Information ........................................16

        4.  Qorvo's Allegations Concerning the December 2021 Issue of Wireless Watch are Inconsistent with the Corrected Article Itself ........................................17

        5.  Akoustis' Success Does Not Support Qorvo's Claim................................19

VI.  CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir. 1994) .......................................................................................... 19

*Analog Devices, Inc. v. Michalski*,
  157 N.C. App. 462 (2003) .......................................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................... 6

*Austin Maint. & Const., Inc. v. Crowder Const. Co.*,
  224 N.C. App. 401 (2012) .................................................................................... 15, 16

*Bartolomeo v. S.B. Thomas, Inc.*,
  889 F. 2d 530 (4th Cir. 1989) .................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................... 6, 7, 20

*Dalton v. Camp*,
  353 N.C. 647 (2001) ............................................................................................... 8, 17

*In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*,
  756 F.3d 917 (6th Cir. 2014) .................................................................................... 20

*Eastern Shore Mkts. v. J.D. Assocs. Ltd. Pshp.*,
  213 F.3d 175 (4th Cir. 2000) ...................................................................................... 7

*Exergen Corp. v. Wal–Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ................................................................................... 7

*Khouri v. Nat'l Gen. Ins. Mktg., Inc.*,
  501 F. Supp. 3d 353 (M.D.N.C. 2020) ........................................................................ 9

*Kinesis Advert., Inc. v. Hill*,
  652 S.E.2d 284 (N.C. App. 2007)................................................................................. 9

*Krawiec v. Manly*,
  370 N.C. 602 (2018) ............................................................................................. 11, 12

*Legacy Data Access, LLC v. MediQuant, Inc.*,
  No. 3:15-CV-00584-FDW-DSC, 2017 WL 6001637 (W.D.N.C. Dec. 4, 2017) ......................... 13

*Marshall v. Miller*,
  302 N.C. 539 (1981) .................................................................................................... 8

*McDermott v. Clondalkin Grp., Inc.*,
    649 F. App'x 263 (3d Cir. 2016) ........................................................... 7, 10

*Metito (Overseas) Ltd. v. Gen. Elec. Co.*,
    No. 05 Civ. 9478(GEL), 2009 WL 399221 (S.D.N.Y. Feb. 18, 2009) ...................... 14

*Nat'l Distillers & Chem. Corp. v. Dep't of Energy*,
    No. CIVIL 79-399, 1980 WL 1057 (D. Del. Oct. 23, 1980) ........................ 19

*Nucor Corp. v. Prudential Equity Group, LLC*,
    189 N.C. App. 731 (2008) ................................................................. 12

*Peoples Sec. Life Ins. Co. v. Hooks*,
    322 N.C. 216 (1988) ......................................................................... 9

*PNC Bank, N.A. v. Welsh Realty, LLC*,
    No. 5:13-CV-203-BO, 2014 WL 4386064 (E.D.N.C. Sept. 5, 2014) .............. 7

*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ............................................................ 7

*Spirax Sarco, Inc. v. SSI Eng'g, Inc.*,
    No. 5:14-CV-519-F, 2015 WL 1810093 (E.D.N.C. Apr. 17, 2015) ................ 13

*Sunbelt Rentals, Inc. v. Head Equip., L.L.C.*,
    174 N.C. App. 49 (2005) ................................................................. 15

*Travenol Lab'ys, Inc. v. Turner*,
    30 N.C. App. 686 (1976) ................................................................ 13

*Tyco Healthcare Grp., LP v. C.R. Bard, Inc.*,
    818 F. Supp. 2d 777 (D. Del. 2011) ................................................... 7

*United Lab'ys, Inc. v. Kuykendall*,
    322 N.C. 643 (1988) ...................................................................... 15

## Statutes and Codes

North Carolina General Statutes,
    Section 75-1.1 ...................................................................*passim*

## Rules and Regulations

Federal Rules of Civil Procedure,
    Rule 12 ............................................................................... 19
    Rule 12(b)(6) ...................................................................... 1, 6, 7

# I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Qorvo, Inc. ("Qorvo" or "Plaintiff"), filed a five-count Complaint ("Complaint") on October 4, 2021, against Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Akoustis" or "Defendants"). Defendants previously moved to dismiss certain claims, and, on February 7, 2022, the Court issued a Scheduling Order that stated: "The Court will allow Plaintiff to amend its Complaint in order to add specificity to its claim of unfair and deceptive trade practices. For the other claims at issue in the Defendants' Motion to Dismiss, the Court will set a hearing if desired by the Parties." (D.I. 23 at p. 2 n.1.) On February 18, 2022, Plaintiff filed its First Amended Complaint ("FAC"), which only amended Plaintiff's allegations related to Count V. Pursuant to Rule 12(b)(6), Defendants now move to dismiss Count V of the FAC (Unfair & Deceptive Trade Practices Act) and respectfully submit this opening brief in support of their motion to dismiss.

# II. INTRODUCTION

This is a case between competitors in the bulk acoustic wave ("BAW") filter space. A BAW filter is a type of circuit heavily used in wireless devices to eliminate noise in the signal. Both companies are deeply tied to North Carolina and are located about ninety minutes from each other. As described in the FAC, Qorvo was formed in 2015 following the merger of TriQuint Semiconductor and RF Micro Devices ("RFMD") and supplies a "broad range" of products including BAW filters. Akoustis was formed a year earlier by Jeffrey Shealy, a former vice president of RFMD along with two co-founders. Qorvo did not allege any relationship between these co-founders and Qorvo, RFMD or any other predecessor entities but noted that Akoustis' Board also includes other former RFMD executives. As both parties are public entities and competitors, these facts have been known for years.

While Qorvo alleged that "Akoustis was formed specifically to compete with Qorvo [and its predecessors]," Akoustis was formed seven years ago; any claims that theoretically existed at the time (and Akoustis disputes there were any) are long barred by the passage of time. Nonetheless, Qorvo generally alleged that Akoustis has acted inappropriately since 2014 by "poaching" more than 20 of Qorvo's former employees (ranging widely from a device engineer to a senior tax manager to a customer quality manager). According to Qorvo, these ex-Qorvo employees must have breached their contracts with Qorvo by sharing Qorvo confidential information with Akoustis, enabling Akoustis to develop its leading-edge technology. Tellingly, Qorvo has not filed any claim for breach of any such confidentiality agreement.

Qorvo's purported basis for this alleged elaborate scheme is its assumption that Akoustis' success should not have come so quickly. Such conjecture is not sufficient to sustain a federal complaint. What the Federal Rules of Civil Procedure require, and what Qorvo's allegations continue to lack, are *contemporaneous facts* linking Akoustis to the allegedly unfair or deceptive conduct for at least some reasonable portion of this alleged seven-year scheme. Specifically, the FAC lacks any allegations of specific unfair or deceptive acts (as those terms are defined by law), the nature of any allegedly confidential information (relying on the same meaninglessly broad definition as the original Complaint), the circumstances of any ex-Qorvo employee's departure (*e.g.*, whether first contact was initiated by Akoustis or the ex-Qorvo employee), and whether any specific confidential information was actually misappropriated. These factual allegations are vital because employee migration is lawful and common. Qorvo ignores that fact and omits the facts needed to support its allegation of a broad hiring scheme. Rather than meeting its burden, Qorvo defaults to conclusory assertions about the poaching of ex-Qorvo employees sharing some unspecified Qorvo information with Akoustis. Ultimately, Qorvo

concludes that Akoustis must have done something improper because it succeeded in less time and with fewer people than Qorvo did.

Omissions in the FAC suggest that Qorvo's expansive unfair business practice claim is motivated by Qorvo's competitive concerns rather than any unlawful actions by Akoustis. For example, nothing in the FAC suggests that in the last seven years either Qorvo or any of its predecessor companies has ever issued a single cease-and-desist letter or raised any other proprietary interest concern to Akoustis. Qorvo did not allege even a single cause of action against any of the 20-plus people who allegedly breached (or are about to breach) Qorvo's confidentiality agreements despite that the alleged breaches, according to Qorvo, have been ongoing for years. Similarly, Qorvo has not even attempted to meet the pleading standard for any claim of misappropriation of trade secrets. Rather, Qorvo repackaged its flawed misappropriation theory into an unfair business practice claim to force Akoustis into years of expensive discovery. Given that this purported scheme has allegedly been underway for more than seven years, Qorvo's inability to make specific allegations strain credulity.

Akoustis raised these defects in its motion to dismiss Qorvo's initial Complaint, after which the Court allowed Qorvo to "amend its Complaint in order to add specificity to its claim of unfair and deceptive trade practices." (D.I. 23 at p. 2 n.1.) Qorvo subsequently filed the FAC which (1) retained all the original conclusory allegations concerning the alleged seven-year scheme and (2) added three types of allegations to its unfair and deceptive trade practices claim. None of these new allegations provide the specificity required to support an unfair business practice for an alleged seven-year raiding scheme. First, Qorvo alleged that one unidentified Akoustis engineering manager asked a Qorvo product engineer during a job interview to "access the corporate yield page on Qorvo's computer system and provide screen shots of information

found on that page." But Qorvo did not allege the specific information requested, that such information was confidential, or that any information was actually shared with Akoustis. To the contrary, Qorvo appears to concede that the alleged request was declined. Second, Qorvo has now identified seven ex-Qorvo employees who were allegedly recruited by Akoustis between April 2019 and November 2020, and who allegedly had access to broad categories of allegedly confidential information while employed by Qorvo. Qorvo further alleged on "information and belief" that nine other named ex-Qorvo employees who were allegedly hired by Akoustis "had access to Qorvo BAW Proprietary Information that would benefit Akoustis." But Qorvo failed to allege even a single instance where any of these ex-Qorvo employees used or disclosed any "Qorvo BAW Proprietary Information," relying instead on inadequate information-and-belief allegations that speculate these ex-Qorvo employees would "inevitably" use Qorvo's broadly defined "Qorvo BAW Proprietary Information" (defined the same way as in Qorvo's original Complaint). Third, Qorvo has now alleged that in December 2021, after this lawsuit was filed, a third-party publication claimed that an Akoustis employee discussed a Qorvo product that is not on the market and further alleged "on information and belief" that the Akoustis employee's knowledge of that product was "based on Qorvo BAW Proprietary Information concerning Qorvo's development pipeline and prototyping process." But Qorvo omitted two judicially noticeable facts: the publication subsequently retracted that aspect of the story and, even if it had not, Qorvo has been publicly discussing the product at issue on its own website since 2020.

Qorvo's claim for unfair and deceptive practices fails as a matter of law because, even after Qorvo received an opportunity to amend with guidance from the Court, the claim is founded on conclusory allegations made on information and belief without any supporting facts. Akoustis respectfully requests that the Court grant its motion.

## III. **STATEMENT OF ALLEGED FACTS FROM QORVO'S FAC**

As in Qorvo's original Complaint, the FAC continued to allege that "[s]ince its inception, Akoustis has engaged in conscious, methodical, and systematic recruitment and solicitation of Qorvo's employees in all major areas. Indeed, and beyond a majority of its board being ex-Qorvo employees, Akoustis has poached over twenty key employees, including crucial personnel from engineering, operations, sales, quality control and testing, packaging, and management." (D.I. 28 ¶ 46.) Qorvo also alleged that "[i]t is highly probable—and on information and belief, inevitable—that Akoustis has used, relied upon, and exploited the Ex-Qorvo BAW Employees' knowledge of the Qorvo BAW Proprietary Information," (*Id.* ¶ 55; *see also* ¶ 57),[1] and that false statements account for the unfair competition (*Id.* ¶¶ 68, 75).

Notwithstanding the discussion at the hearing, Qorvo did not change its amorphous definition of "Qorvo BAW Proprietary Information." Instead, Qorvo continued to define its "Qorvo BAW Proprietary Information" by reference to a list of broad "example" categories:

> Examples of Qorvo's confidential and proprietary information include, but are not limited to, technical expertise and know-how, such as BAW filter designs, specifications, development methods and techniques, material specifications, design tolerances, packaging, quality assurance and testing, manufacturing specifications, methods, and techniques; and business information, such as future product development and refinement plans, pricing information, cost information, marketing and sales strategies, internal organization structures, employee information, and capabilities, as well as supplier lists, customer lists, contracts, demands, desires, and requirements related to the BAW filters (together referred to herein as the "Qorvo BAW Proprietary Information").

(*Compare* D.I. 28 ¶ 20 *with* D.I. 1 ¶ 20.) Qorvo did not allege any facts showing that any of this allegedly confidential information was disclosed or constitutes a trade secret.

Qorvo's FAC added only three new categories of allegations: (1) during a job interview

---

[1] Qorvo's contention, in the alternative, that Akoustis *will inevitably use* (future tense) "the Qorvo BAW Proprietary Information" plainly conflicts with its contention that Akoustis has *already* "gained an unfair advantage" to enter the BAW market "more quickly". (D.I. 28 ¶ 65.)

with a Qorvo employee, an Akoustis employee allegedly asked for, but did not receive, unspecified "information" from a Qorvo web page that contained at least some allegedly confidential information (D.I. 28 ¶ 54); (2) seven named ex-Qorvo employees who were hired to perform similar roles at Akoustis had access to broad categories of allegedly confidential information, and, "on information and belief," nine other named ex-Qorvo employees hired by Akoustis had access to Qorvo BAW Proprietary Information (D.I. 28 ¶¶ 56-63); and (3) the December 2021 issue of Wireless Watch[2] claimed that an Akoustis employee made a statement about Qorvo's BAW filter that Qorvo interpreted as referring to WiFi 6E Qorvo products that are not currently on the market (D.I. 28 ¶ 64).

## IV. <u>LEGAL STANDARD</u>

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. A legal claim brought in federal court mandates the pleading of sufficient facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Bare assertion[s]" and "conclusory allegation[s]" will not suffice. *Id.* Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 (pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). While the Court must generally accept Plaintiff's factual allegations as true, a court need not accept as true a

---

[2] Although the FAC refers to a publication by Wireless Watch, the December 2021 article described by the FAC was actually published by Faultline, one of three weekly research services (along with Wireless Watch and Rethink Energy) run by Rethink Technology Resource, on December 16, 2021. (*See* Request for Judicial Notice in Support of Motion to Dismiss Plaintiff's First Amended Complaint ("RJN") p.2, ¶ 3; Declaration of Tom Sepenzis in Support of Defendants' RJN in Support of Motion to Dismiss Plaintiff's First Amended Complaint ("Sepenzis Decl."), Ex. 1.)

plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. V. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000). Similarly, "legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Indeed, an unfair practices claim is properly dismissed when defendants have "failed to sufficiently plead facts manifesting their plausible right to relief." *PNC Bank, N.A. v. Welsh Realty, LLC*, No. 5:13-CV-203-BO, 2014 WL 4386064, at *2 (E.D.N.C. Sept. 5, 2014) (unfair practices claim properly dismissed because it was predicated on a fraud claim that was insufficiently pleaded under Fed. R. Civ. P. 12(b)(6)).

While certain allegations can be on the basis of "information and belief," such allegations are permitted only "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control—so long as there are no boilerplate and conclusory allegations and [p]laintiffs … accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (internal citations omitted); *see also Twombly*, 550 U.S. at 551, 557 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible); *Exergen Corp. v. Wal–Mart Stores, Inc*., 575 F.3d 1312, 1327 (Fed. Cir. 2009) ("[a]lthough 'knowledge' and 'intent' may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.") (cited by *Tyco Healthcare Grp., LP v. C.R. Bard, Inc*., 818 F. Supp. 2d 777, 784-85 (D. Del. 2011)).

**V.   QORVO FAILS TO STATE A CLAIM UNDER THE UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

Dismissal of Qorvo's North Carolina Unfair Trade Practices Act claim (N.C. Gen.Stat. § 75–1.1) ("Section 75-1") is appropriate because Akoustis is still left to guess as to the substance of the alleged misappropriation.  Qorvo must allege facts sufficient to establish the following elements to state a Section 75-1 claim: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff.  *Dalton v. Camp,* 353 N.C. 647, 656 (2001); N.C.G.S. § 75-1.1. The purpose of Section 75-1 is to regulate acts that "offend established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *Marshall v. Miller,* 302 N.C. 539, 548 (1981). Qorvo's Section 75-1 claim must be dismissed because, when its conclusory and improper information-and-belief allegations are properly disregarded, Qorvo fails to allege any unfair or deceptive act or practice by Akoustis.[3] The gravamen of Qorvo's Section 75-1 claim remains unchanged from the original Complaint: Qorvo alleged, on information and belief alone, that Akoustis engaged in a seven-year scheme to hire ex-Qorvo employees that has resulted in or will result in the use of unspecified confidential information disclosed by various ex-Qorvo employees.  (D.I. 28 ¶¶ 46-47, 49-50, 53-66, 125.) While these allegations are "new", they fail to set forth the misappropriation of confidential information with sufficient specificity and simply cannot provide plausible support for any seven-year scheme as required by North Carolina law.

**A.   Employee Mobility is Not a Deceptive or Unfair Practice or Act**

Qorvo's Section 75-1 claim continues to heavily rely on the allegation that approximately

---

[3] Qorvo also alleged in passing that allegedly false and misleading representations about a single crystal construction qualify as an unfair or deceptive act or practice under Section 75-1.  Again,

20 ex-Qorvo employees took jobs at Akoustis over a seven-year period, and repeatedly describes those hires in conclusory fashion as "poaching," "raiding," and a "scheme." (*See, e.g.*, D.I. 28, ¶¶ 46, 48, 125, 126, 132, 136.) But, as Akoustis explained in its motion to dismiss Qorvo's original Complaint, employee mobility alone is not actionable—public policy strongly favors the right of each employee to change jobs. Employee movement between employers competing to retain the best and brightest reflects *lawful* competition. *See Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 222 (1988) (applying "the general principle that interference may be justified when the plaintiff and the defendant are competitors" because "[t]o hold otherwise would unduly limit lawful competition"); *see also Kinesis Advert., Inc. v. Hill*, 652 S.E.2d 284, 298 (N.C. App. 2007) (North Carolina courts have "consistently held that the employer/employee relationship does not fall within the intended scope and purpose of [Section 75-1].").

### B. Qorvo Failed to Allege Facts Linking Akoustis' Hiring of Ex-Qorvo Employees to Any Unfair or Deceptive Practice

Because employee mobility itself is neither deceptive nor unfair, Qorvo cannot state a claim under Section 75-1 by alleging merely that ex-Qorvo employees with access to allegedly confidential information changed jobs. Qorvo must set forth some factual allegation of an unfair or deceptive act or practice by Akoustis itself. An act or practice is unfair "if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive only if a misleading act occurs "under egregious or aggravating circumstances" and caused harm that the plaintiff could not reasonably avoid. *Khouri v. Nat'l Gen. Ins. Mktg., Inc.*, 501 F. Supp. 3d 353, 359 (M.D.N.C. 2020). Qorvo relies on five different types of allegations in an effort to

Qorvo failed to allege facts sufficient to indicate that the alleged act was dishonest or immoral. Additionally, as these references appear to refer to Qorvo's Lanham Act and false marking claims, those claims separately fail as a matter of law as set forth in Akoustis' motion to dismiss Counts III and IV of Qorvo's original complaint, which has been fully briefed but not yet heard.

convert Akoustis' lawful hiring into an act that is either unfair ("immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers") or deceptive (misleading under "egregious or aggravating circumstances"). None of these allegations succeed.

### 1. Qorvo Failed to Allege That Akoustis Hired the Ex-Qorvo Employees to Obtain Qorvo's Confidential Information

Qorvo alleges, on information and belief only, that Akoustis hired Qorvo's former employees not for their abilities, but because Akoustis expected them to use or disclose their knowledge of one or more categories of Qorvo's "BAW Proprietary Information." (D.I. 28, ¶¶ 53, 56-62, 132.) But information-and-belief allegations are permitted only where they are not boilerplate or conclusory and are accompanied by facts that make the allegation plausible. *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016). Qorvo fails to meet both requirements. Qorvo's information-and-belief allegation is boilerplate, as the same allegation is made in the same form with respect to every ex-Qorvo employee allegedly hired by Akoustis. (D.I. 28, ¶¶ 48, 53, 56-62, 132.) Whether it was the Director of Business Development, Senior RF Test Engineer, or Senior Tax Manager, Qorvo makes the exact same allegation: Akoustis hired each employee for their knowledge of Qorvo BAW Proprietary Information and with the expectation that they would use that knowledge for Akoustis' benefit. (*Id.*)

Qorvo's information-and-belief allegation is also not accompanied by any factual allegations that make it plausible. Qorvo alleges that its former employees were hired by Akoustis and had access to various broad categories of Qorvo BAW Proprietary Information, but no other supporting factual allegations are made about Akoustis beyond the fact of the hiring itself. As noted above, Qorvo's factual allegations reflect only lawful hiring and the right of each employee to change jobs. Qorvo certainly never offered these employees lifetime

employment and could not compel them to remain at Qorvo for life. Qorvo's amendment of its claim failed to address this deficiency, as it did nothing further to identify any specific confidential information that was allegedly disclosed, focusing instead on allegations related to certain employees' job responsibilities while at Qorvo. The FAC added the names of 16 individuals allegedly hired by Akoustis and examples of broad categories of Qorvo BAW Proprietary Information that seven of those employees allegedly had access to while at Qorvo (*e.g.*, "how Qorvo BAW filters achieve superior performance"), but that fact (which is true of virtually every technical employee who changes jobs) does not link the use of any such information to Akoustis.[4]

These allegations are insufficient as a matter of law. The court in *Krawiec v. Manly*, 370 N.C. 602 (2018), rejected a stronger, more specific set of misappropriation allegations than Qorvo's as too general. The plaintiffs in *Krawiec* alleged a violation of Section 75-1, claiming that a competitor "maliciously, deliberately, secretly, [and] wantonly. . ." hired their employees, and misappropriated their trade secrets (including dance production concepts and client lists) from their former employees. *Id.* at 608, 611-613. The Supreme Court of North Carolina affirmed the dismissal of the plaintiffs' Section 75-1 claim, explaining that they "made no further allegations of *specific* unfair or deceptive acts." *Id.* at 613 (emphasis added). The court also explained that the plaintiffs' trade secret allegations were "too general" to proceed. *Id.* at 611 (quoting N.C. Gen. Stat. Ann. § 66-152(3)(a)). Although Qorvo does not even attempt to allege

---

[4] Even these broad example categories for those seven employees did not limit the broad scope of allegedly confidential information at issue, however, as Qorvo alleged that each of those seven employees had access to and were aware of "Qorvo BAW Proprietary Information" and were hired with the expectation that they would use "Qorvo BAW Proprietary Information" to the benefit of Akoustis. (D.I. 28, ¶¶ 56-62.) Notably, with respect to the other nine named ex-Qorvo employees, Qorvo alleges only on information and belief that they had access to Qorvo BAW Proprietary Information, even though that information is uniquely within the control of Qorvo, not Akoustis. (D.I. 28, ¶ 63.)

a trade secret claim, its allegations of misappropriation of confidential information must still set forth facts sufficient to describe the information at issue and show that such information derives independent value from its confidentiality, such that harm would be caused by its disclosure. *See* D.I. 28, ¶ 127; *see also Bartolomeo v. S.B. Thomas, Inc.*, 889 F. 2d 530, 535 (4th Cir. 1989) (finding that plaintiff's unfair and deceptive trade practices claim based on misappropriation of confidential information failed because plaintiff "has not shown how the supposedly proprietary information that he gave to [defendants'] representatives was misappropriated to his actual injury"); *Nucor Corp. v. Prudential Equity Group, LLC*, 189 N.C. App. 731, 738 (2008) (same). Like in *Krawiec*, the FAC's broad definition of Qorvo's confidential information is too general to allow the court to make that determination.

Qorvo relies on the trade-secret doctrine of inevitable disclosure in an effort to address its failure to allege any facts showing disclosure of any allegedly confidential information. Qorvo alleges that "[t]he sheer number of highly-knowledgeable and qualified Qorvo employees poached by Akoustis over its history has resulted in Akoustis inevitably using their knowledge and experience, including the Qorvo BAW Proprietary Information. It is highly probable – and on information and belief, inevitable – that Akoustis has used, relied upon, and exploited the Ex-Qorvo BAW Employees' knowledge of the Qorvo BAW Proprietary Information." (D.I. 28, ¶ 55.) This muddled proposition is wrong on the law (and facts) and should be rejected.

a.    Qorvo Cannot Fill the Gaps in its Factual Allegations with the Trade Secret Doctrine of Inevitable Disclosure

Setting aside that employees' use of their "knowledge and experience" is not unlawful and that Qorvo's "BAW Proprietary Information" provides no notice of any allegedly confidential information at issue, a Section 75-1 claim cannot depend on the inevitable-disclosure doctrine for at least four reasons. First, the inevitable-disclosure doctrine does not

12

apply here because Qorvo has not alleged any trade secrets. As the North Carolina Court of Appeals has explained, the doctrine applies "[i]n simplest terms…when an employee who knows *trade secrets* of his employer leaves that employer for a competitor and, because of the similarity of the employee's work for the two companies, it is 'inevitable' that he will use or disclose *trade secrets* of the first employer." *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 470 n.3 (2003) (emphasis added). Second, the doctrine cannot support a Section 75-1 claim under North Carolina law because the doctrine "has *never* been adopted by the North Carolina Supreme Court or the North Carolina Court of Appeals." *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, No. 5:14-CV-519-F, 2015 WL 1810093, at *5 (E.D.N.C. Apr. 17, 2015) (emphasis added). Third, a trade secret violation is insufficient to state a Section 75-1 claim as North Carolina law requires evidence of an act or practice that is unfair or deceptive *in addition* to any trade secret violation. *Legacy Data Access, LLC v. MediQuant, Inc.*, No. 3:15-CV-00584-FDW-DSC, 2017 WL 6001637, at *16 (W.D.N.C. Dec. 4, 2017). Qorvo cannot supplant the act or practice requirement with a judicial doctrine. Fourth, Qorvo's allegation of inevitable disclosure on information and belief fails to meet the standard for such allegations. The allegation is conclusory and boilerplate: Qorvo levels the same allegations repeatedly against every single ex-Qorvo employee allegedly hired by Akoustis since 2014 (D.I. 28, ¶¶ 48, 53, 56-62, 132), yet again fails to allege supporting facts sufficient to make its inevitable-disclosure allegation plausible, as it does not identify any specific trade secret known to any of the ex-Qorvo employees. Instead, Qorvo alleges that all of its ex-employees hired by Akoustis had access to the amorphous "Qorvo BAW Proprietary Information," and that certain ex-employees had access to broad categories of information such as "how Qorvo BAW filters achieve superior performance." (*Id.*) No injunction could stand based on such an ill-defined term. *See Travenol*

*Lab'ys, Inc. v. Turner*, 30 N.C. App. 686, 695 (1976) (upholding trial court's preliminary injunction against disclosure of specifically identified trade secret as well as trial court's denial of preliminary injunction that would have "broadly prohibit[ed] disclosure of 'all information regarded as confidential,'" as it presented "problems of scope and nebulosity" and was "so broad that the defendant Turner may be deprived of the right to use his own skills and talents in his work for [his new employer]").

> b. Qorvo's Allegations are Inconsistent with the Inevitable Disclosure Doctrine

In addition to the lack of legal authority that would allow the inevitable disclosure doctrine to backfill deficient factual pleadings, Qorvo's conduct is inconsistent with its allegation of inevitable disclosure. Whereas Qorvo contends on information and belief that each of its former employees hired by Akoustis since 2014 will inevitably disclose or use Qorvo BAW Proprietary Information, Qorvo has not alleged that it sought any injunctive relief against the hiring of any of those employees at any time during the last seven years. *See Metito (Overseas) Ltd. v. Gen. Elec. Co.*, No. 05 Civ. 9478(GEL), 2009 WL 399221, at *12 (S.D.N.Y. Feb. 18, 2009) (where plaintiff had a confidentiality agreement with former employee and cautioned him to resist any potential temptation to divulge confidential information once it learned of his intent to work for new employer, such actions were "inconsistent with the idea that disclosure of valuable trade secrets would be *inevitable*") (emphasis original). Similarly, Qorvo has not alleged that it filed a single complaint against any ex-Qorvo employee during the last seven years, and no such claims are brought here.

> **2. Qorvo Failed to Allege That Akoustis Hired the Ex-Qorvo Employees to Damage Qorvo**

Qorvo also attacks Akoustis' motivation for hiring Qorvo's former employees by alleging that Akoustis is "seeking to damage Qorvo's business through the recruiting and hiring away

from Qorvo the Ex-Qorvo BAW Employees. This poaching is intended to damage Qorvo by attrition, rather than by fair competition in the marketplace." (D.I. 28, ¶ 125.) Yet again, no support is offered for this conclusory allegation. This same type of vague allegation similarly failed in *Austin Maint. & Const., Inc. v. Crowder Const. Co.*, 224 N.C. App. 401 (2012). In *Austin*, a maintenance company brought a claim under Section 75-1 against a competitor that hired the plaintiff's foreman and the rest of his four-member crew responsible for one of the plaintiff's key customers. *Id.* at 406. Immediately thereafter, the plaintiff lost its customer's business to the defendant. *Id.* The plaintiff alleged that the defendant "surreptitiously raided" its workforce. *Id.* at 420. Notwithstanding the plaintiff's proof of actual and significant damage— the hiring of an entire specific team, loss of a specific customer, and identifiable damages (allegations the Qorvo has not made and cannot make)—the court, as a matter of law, upheld the dismissal of the Section 75-1 claim on summary judgment. *Id.* at 421; *see also United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 664 (1988) (explaining that under Section 75-1, it is a question of law for the court as to whether proven facts constitute an unfair or deceptive trade practice). In denying the claim, the *Austin* court explained that *Sunbelt Rentals, Inc. v. Head Equip., L.L.C.*, 174 N.C. App. 49 (2005), was inapplicable because, among other things, the hiring of one crew from an organization with more than 7,000 employees "differs dramatically from the situation at issue in *Sunbelt*" (where more than 70 key managerial employees were hired over a short span in a manner that crippled the plaintiff's branches and eliminated the plaintiff's ability to compete for key employees) *and* the defendants did not misappropriate the plaintiff's trade secrets. *Austin Maint. & Const.*, 224 N.C. App. at 421-22. Here, the hiring alleged by Qorvo is far removed from both *Austin* and *Sunbelt*. Qorvo has not alleged that Akoustis hired a material part of Qorvo's workforce, much less any specific department or project group, and does not

allege any trade secret misappropriation. The few facts Qorvo alleges show the very opposite: isolated hires over seven years in diverse areas of the business and a definition of confidential information that is so overbroad that it is meaningless for notice purposes. Qorvo's omissions further confirm the absence of a viable claim: no trade secret claim, no specific confidential information (or usage) identified; no allegation that it complained about any of these hirings over the last seven years and no allegation that Qorvo—an international, publicly traded company— suffered any impact by these hires.

### 3. Qorvo Failed to Allege That Akoustis' Engineering Manager Knowingly Requested or Received Qorvo's Confidential Information

Qorvo also tried to convert Akoustis' lawful hiring into an unfair or deceptive practice through a carefully worded allegation about a request for unspecified "information" that was rejected during a job interview. Qorvo alleged that, during a job interview in late 2020, an unidentified Akoustis engineering manager asked an unidentified Qorvo product engineer to provide screen shots of "information" found on Qorvo's "corporate yield page." (D.I. 28, ¶ 54.)[5] Qorvo refused, however, to identify the individuals involved or the "information" that was allegedly requested or assert that the requested information was actually confidential. (*Id.*) Instead, Qorvo described an "example" of a different type of information that was not allegedly requested by the Akoustis engineering manager and was allegedly confidential and available on some part of the corporate yield page. (*Id.*) Qorvo never alleges what "information" was actually requested, whether that information is confidential, the circumstances in which the request was made (*e.g.*, whether the Qorvo employee previously referred to something on the "corporate yield page"), whether the Akoustis engineering manager had reason to believe the

---

[5] Qorvo previously alleged that this request was made by multiple "recruiters for Akoustis" (D.I. 1, ¶ 54) rather than by a single "Akoustis engineering manager" (D.I. 28, ¶ 54).

information he or she allegedly requested was confidential, or even whether any information was shared in response to the request.

Qorvo's allegation boils down to: a single Akoustis engineering manager made a single request for unspecified information (for an unspecified reason) that could be found on a Qorvo page that contains some other information that is allegedly confidential, but no information was shared. As Qorvo cannot be damaged by a mere unanswered question for unknown information, this allegation is insufficient to state a Section 75-1 claim. *See Dalton v. Camp*, 353 N.C. 647, 656 (2001) (*prima facie* Section 75-1 claim requires a showing that the act proximately caused injury to the plaintiff).

Notably, this unanswered question in 2020 has no reasonable connection to the existing Section 75-1 claim (*i.e.*, making the alleged seven-year scheme of recruiting ex-Qorvo's employees plausible). Accepting Qorvo's allegations at face value, the Qorvo employee prevented disclosure of any information (regardless of whether it was public or confidential).

### 4. Qorvo's Allegations Concerning the December 2021 Issue of Wireless Watch are Inconsistent with the Corrected Article Itself

Qorvo alleged that, after this lawsuit was filed, Mr. Tom Sepenzis, Akoustis' Vice President of Corporate Development, "stated that Akoustis WiFi 6E products will outperform future Qorvo WiFi 6E products" and, on information and belief, that said statement was "based on Qorvo BAW Proprietary Information" because "Qorvo does not have a WiFi 6E 6GHz product on the market." (D.I. 28, ¶ 64.) This allegation is flawed and misleading.

First, Qorvo's allegation depends on a December 2021 edition of "Wireless Watch" and an interview conducted by a third-party journalist. While Qorvo elected not to attach the article itself, a review of the original article confirms that Mr. Sepenzis never stated "that Akoustis WiFi 6E products will outperform future Qorvo WiFi 6E products" as Qorvo alleges. (RJN p. 2, ¶ 3;

Sepenzis Decl., Ex. 1.)  Indeed, at no point in the article does Mr. Sepenzis refer to any Qorvo WiFi 6E product.  To the contrary, the article states that "Sepenzis claimed that Qorvo's BAW filter can only operate with a low temperature co-fired ceramic (LTCC) filter placed on top" with no mention of a Qorvo WiFi 6E 6GHz product.  (*Id.*)  Qorvo's FAC fails to address this statement.  The article then generally discusses the limitations of using a LTCC filter as well as a number of other BAW filter competitors (including Broadcom and Skyworks), potential new international competitors and possible trends.  (*Id.*)  Additionally, the FAC fails to allege Akoustis improperly obtained any Qorvo BAW Proprietary Information.  The fact that Qorvo is developing a WiFi 6E product cannot be confidential information as Qorvo itself has been touting its own work and upcoming products in the 6E space for almost two years.[6]

Second, the reference to a Qorvo product with a LTCC filter, was simply a misprint that was corrected.  Sepenzis Decl. ¶¶ 4-6, Ex. 3.  Qorvo's FAC failed to attach the Wireless Watch article at issue and failed to disclose that the article itself was promptly corrected by the publisher months before the FAC was filed.  The corrected article shows that the statement about LTCC filters was about Resonant—an entirely different company:

> Akoustis was the ~~second~~first company to launch 6E BAW filters~~, the first being Broadcom~~.  Sepenzis warned that ~~Qorvo's~~certain BAW filter brands, such as Resonant, BAW filter can only operate with a low temperature co-fired ceramic (LTCC) filter placed on top.  He described the LTTC component as "low performance," noting that while it can cover the 5 GHz and 6 GHz bands, it cannot separate them so that they can be used simultaneously, which renders the addition of an extra band somewhat useless.

---

[6] For example, an April 20, 2020, publication on Qorvo's website entitled "Connectivity Q&A: Unscrambling the Wi-Fi 4/5/6/6E Standards" explained with respect to the Wi-Fi 6E standard that "[g]iven that it's still in the early stages and end-product design requirements are still being evaluated and established, we are actively collaborating with standards bodies, customers and partners, to help shape the new 6 GHz products."  (RJN p. 1, ¶ 1; Sweeney Decl., Ex. A.)  Similarly, an August 6, 2020, publication on Qorvo's website titled "Connectivity Q&A: Let's Talk About Wi-Fi 6E – The 6 GHz Wi-Fi Standard" states: "For some time now, Qorvo has supplied product samples, reference platforms, and prototyping to help establish compliance metrics for the new Wi-Fi 6E standard. Qorvo's parts are fully functioning Wi-Fi 6 and 6E RF Front-End modules to help customers get to market faster with end-product solutions."  (RJN p.1, ¶ 2; Sweeney Decl., Ex. B.)

Sweeney Decl. Ex. C.[7]  Akoustis seeks judicial notice of the original and corrected versions of the article as consideration of the actual articles, rather than Qorvo's characterization of them, is appropriate for a Rule 12 motion.  *Nat'l Distillers & Chem. Corp. v. Dep't of Energy*, No. CIVIL 79-399, 1980 WL 1057, at *1 (D. Del. Oct. 23, 1980) (in ruling on a motion to dismiss, the court "was not bound to accept either conclusions of law, or unwarranted factual inferences contradicted by written documents incorporated and referred to in the complaint.").  Moreover, the written agreement trumps any characterization by a litigant.  *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control.").  Here, the contested statement in the FAC (*i.e.*, "that Akoustis WiFi 6E products will outperform future Qorvo WiFi 6E products") simply does not appear in the article.

Separately, this allegation of a post-litigation statement has no reasonable connection to the existing Section 75-1 claim (*i.e.*, making the alleged seven-year scheme of recruiting ex-Qorvo's employees plausible) and should be disregarded on that ground alone.  To the extent Qorvo is seeking to assert a new claim, it should seek leave to amend its pleading.

### 5. Akoustis' Success Does Not Support Qorvo's Claim

Finally, Qorvo alleged on information and belief that "the poaching of the Ex-Qorvo BAW Employees and the misappropriation of the Qorvo BAW Proprietary Information has resulted in" Akoustis' bringing to market certain products "in a timeframe that is highly unlikely,

---

[7] In advance of this filing, Akoustis asked Qorvo for both the original and corrected copies of the article (as the article can only be accessed by members who have paid a substantial license fee) but Qorvo did not respond to the request.  Faultline, however, agree to provide the corrected copy to Mr. Sepenzis (and had provided the original copy in December 2021).  *See* Sepenzis Decl. ¶¶ 3-6.

if not impossible, without these unfair practices." (D.I. 28, ¶ 136.) Qorvo offers no support for its allegation that the referenced timeframe is unlikely or impossible aside from its own speculative belief, but the "mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756 F.3d 917, 931 (6th Cir. 2014). This information-and-belief allegation must be disregarded because it is conclusory and lacks any supporting facts sufficient to make it plausible. *See e.g.*, *Twombly*, 550 U.S. at 551, 557 (conclusory allegation "upon information and belief" is insufficient absent facts to make that statement plausible).

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Akoustis respectfully requests that the Court grant this motion in its entirety.

March 11, 2022

OF COUNSEL:
David A. Jakopin
Dianne L. Sweeney
PILLSBURY WINTHROP SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

David L. Stanton
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 S Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*