**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 1:21-01417-JPM |
| v. | ) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC. | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
(202) 747-1900

Trevor J. Quist
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
1540 El Camino Real
Menlo Park, CA 94025March 25, 2022

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
Jack B. Blumenfeld (#1014)|
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS .............................................................1

III.    SUMMARY OF THE ARGUMENT ............................................................................2

IV.     FACTUAL BACKGROUND .....................................................................................3

      A.      The Parties ...................................................................................................3

      B.      Akoustis Raided Qorvo Employees to Obtain Confidential Information ...............3

      C.      Akoustis Falsely Advertised Its Products as "Single Crystal" ..............................5

V.      LEGAL STANDARDS ...........................................................................................5

VI.     ARGUMENT .......................................................................................................6

      A.      Akoustis Did Not Move to Dismiss Counts I-IV of the FAC ...............................6

      B.      Count V of the FAC States a Claim for Unfair Competition ................................7

            1.      Raiding employees to obtain confidential information is an unfair trade practice ...................................................................................................8

            2.      Inducing ex-Qorvo employees to violate confidentiality obligations is and unfair and deceptive trade practice .........................................................19

            3.      Making false statements about a product is an unfair and deceptive trade practice .................................................................................................19

VII.    CONCLUSION ..................................................................................................20

Page(s)

<u>Cases</u>

*Analog Devices, Inc. v. Michalski*
    579 S.E.2d 449 (N.C. Ct. App. 2003) ..................................................................................13

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...................................................................................................5, 6

*Austin Maint. & Const., Inc. v. Crowder Const. Co.*
    742 S.E.2d 535 (N.C. App. 2012) ......................................................................................18

*Axcess Int'l, Inc. v. Genetec (USA), Inc.*
    375 F. Supp. 3d 533 (D. Del. 2009) .................................................................................6

*Bartolomeo v. S.B. Thomas, Inc.*
    889 F.2d 530 (4th Cir. 1989) ...........................................................................................18

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................................................5, 14

*Birtha v. Stonemor, N.C., LLC*
    727 S.E.2d 1 (N.C. Ct. App. 2012) ...................................................................................7

*Calloway v. Green Tree Servicing, LLC*
    599 F. Supp. 2d 543 (D. Del. 2009) ...........................................................................6, 7

*CNC/Access, Inc. v. Scruggs*
    No. 04-CVS-1490, 2006 NCBC LEXIS 22 (N.C. Super. Ct. Nov. 17, 2006)
    .................................................................................................. 8, 9, 10, 11

*DermaFocus LLC v. Ulthera, Inc.*
    201 F. Supp. 3d 465 (D. Del. 2016) ...........................................................................11, 12

*Ellis v. N. Star Co.*
    388 S.E.2d 127 (N.C. 1990)..............................................................................................19

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*
    935 F. Supp. 2d 772 (D. Del. 2013) ................................................................................12

*Glover Constr. Co. v. Sequoia Servs., LLC*
    No. 18-cvs-1900, 2020 WL 3393065 (N.C. Super. Ct. June 18, 2020) ..............................8, 9

*Johnson v. Brady*
    No. 20-1732-RGA, 2021 WL 2682719 (D. Del. June 30, 2021)...........................................7

*Konate, Inc. v. Banish*
No. 10-cv-90, 2011 WL 3804181 (W.D.N.C. Aug. 29, 2011) ..............................11

*Krawiec v. Manly*
811 S.E.2d 542 (N.C. 2018) .................................................................................17

*LStar Dev. Grp., Inc. v. Vining*
No. 20-CV-184, 2021 U.S. Dist. LEXIS 181972 (E.D.N.C. Sept. 23, 2021) .......19

*Merck & Co. v. Lyon*
941 F. Supp. 1443 (M.D.N.C. 1996) ....................................................................13

*Nucor Corp. v. Prudential Equity Group, LLC*
189 N.C. App. 731 (2008) ....................................................................................18

*Olivia v. United States*
961 F.3d 1359 (Fed. Cir. 2020) ..............................................................................6

*Palakovic v. Wetzel*
854 F.3d 209 (3d Cir. 2017) ...................................................................................6

*Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*
620 S.E.2d 222 (N.C. Ct. App. 2005) ..................................................................8, 9

*Sunshine Media Grp., Inc. v. Goldberg*
No. cv-10-0761, 2010 WL 2899081 (D. Ariz. July 22, 2010).........................11, 12

*Tatis v. Allied Interstate, LLC*
882 F.3d 422 (3d Cir. 2018) .........................................................................5, 14, 16

*Velocity Sols., Inc. v. BSG Fin., LLC*
No. 15-CVS-1059, 2016 .......................................................................................8, 9

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*
712 F.3d 165 (3d Cir. 2013) ...................................................................................6

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*
No. 13-1353, 2018 WL 4502178 (D. Del. Sept. 20, 2018) ...................................6

Statutes

N.C.G.S. § 75-1.1.............................................................................................7, 19

Other Authorities

Fed. R. Civ. P. 8 ...................................................................................5, 7, 9, 10, 12

Fed. R. Civ. P. 8(a)...................................................................................................5

North Carolina law. *Kuykendall* ............................................................................... 19

Rule 12(b)(6) ............................................................................................................. 5

## I.    INTRODUCTION

Qorvo, Inc. ("Qorvo") brought this lawsuit to stop the widespread anticompetitive practices of Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis"). Unwilling to invest in its own research and development, Akoustis pursued a series of shortcuts to compete in the market for thin-film bulk acoustic wave ("BAW") filters, including by systemically raiding employees from Qorvo to obtain Qorvo's valuable know-how and other confidential information.

To advance this case , Qorvo accepted this Court's invitation to file an amended complaint, adding specificity to its unfair competition claim. Qorvo supplemented its allegations in the First Amended Complaint (the "FAC") to provide the "who/what/when/why/how" information Akoustis argued was missing from the original Complaint. Notwithstanding the additional detail Qorvo provided, Akoustis filed yet another motion to dismiss (the "Motion"), reprising its arguments that the unfair competition claim is "conclusory" and lacks "sufficient specificity." Akoustis' arguments are belied by the FAC itself. The Motion should be denied.

## II.    NATURE AND STAGE OF PROCEEDINGS

Qorvo filed this lawsuit on October 4, 2021. D.I. 1. On November 24, 2021, Akoustis moved to dismiss the claims for false advertising (Count III), false patent marking (Count IV), and unfair and deceptive trade practices under North Carolina law (Count V). D.I. 10, 11. Akoustis also moved to dismiss the "willful damages; past (pre-suit) damages; and induced infringement allegations" related to Qorvo's patent infringement claims (Counts I and II). D.I. 11 at 4 n.1. On February 8, 2022, the Court issued a Scheduling Order stating, in part, that the Court would "allow Plaintiff to amend its Complaint in order to add specificity to its claim of unfair and deceptive trade practices." D.I. 23 at 2 n.1. Qorvo filed the FAC on February 18, 2022. D.I. 28. On March 11, 2022, Akoustis filed a motion to dismiss the unfair competition claim (Count V) of the FAC. D.I. 33. Akoustis did not move to dismiss Counts I-IV of the FAC. *See id.*

## III.    SUMMARY OF THE ARGUMENT

1. Akoustis did not move to dismiss any portions of Counts I-IV of the FAC, and has therefore waived any argument that those claims should be dismissed.

2. The FAC states a claim for unfair competition under North Carolina law (Count V) because the FAC includes detailed allegations concerning Akoustis' scheme to recruit key Qorvo employees to obtain Qorvo's confidential information. There is no dispute that raiding employees to obtain confidential information is an unfair and deceptive trade practice under North Carolina law. Akoustis, however, argues that the FAC lacks "sufficient specificity." But the FAC includes detailed allegations concerning Akoustis' scheme, including names of ex-Qorvo employees Akoustis targeted, dates on which those employees were recruited, and specific confidential information Akoustis has sought from each employee. The FAC also includes allegations concerning Akoustis' efforts to gain access to Qorvo's computer system in late 2020 as part of its recruitment scheme. Akoustis has not (and cannot) identify any case that found such detailed allegations to be insufficient to state a claim.

3. The FAC also states a claim for unfair competition under Count V because the FAC alleges that Akoustis made false statements to differentiate its products from those of competitors. In particular, Akoustis stated that its products achieve superior performance because they are "single crystal," as opposed to the polycrystalline products of competitors. Such statements were false. Akoustis argues—in a single footnote with no support—that making such false statements does not qualify as an unfair or deceptive trade practice under North Carolina law because it is not "dishonest or immoral." This argument finds no legal support; courts have consistently held that making false claims about a product qualifies as an unfair and deceptive trade practice.

## IV. FACTUAL BACKGROUND

### A. The Parties

Plaintiff Qorvo is a leading producer of thin-film BAW filters. D.I. 28, ¶¶ 14, 18. BAW filters are a vital component in wireless communication devices, allowing the devices to filter out irrelevant signals. *Id.*, ¶ 15. Qorvo developed its cutting-edge BAW filter technology through decades of substantial investment in research and development.[1] *Id.*, ¶ 17. As a result, Qorvo has been awarded hundreds of patents on BAW filter technology. *Id.*, ¶¶ 23-24.

Defendant Akoustis was founded by a former Qorvo executive who left to compete with Qorvo in the BAW filter market. D.I. 28, ¶¶ 37-38, 40-42. Unlike Qorvo, Akoustis has made relatively minimal investments in research and development. *Id.*, ¶ 43. Instead of developing its own technology, Akoustis has built its BAW filter portfolio by improperly using Qorvo's patented technology and improperly leveraging Qorvo's confidential information. *Id.*, ¶¶ 43-45.

### B. Akoustis Raided Qorvo Employees to Obtain Confidential Information

Akoustis has engaged in a systematic effort to raid Qorvo for key employees who have highly confidential information about Qorvo's BAW filter business. D.I. 28, ¶¶ 46-47, 53. Akoustis has aggressively and proactively contacted Qorvo employees with access to Qorvo's confidential information as part of this raiding scheme. *Id.*, ¶ 54. By way of example, in late 2020, Akoustis targeted a particular Qorvo Product Engineer. *Id.* An engineering manager at Akoustis contacted this Qorvo employee through LinkedIn. *Id.* During a subsequent call, Akoustis expressly asked the Qorvo Product Engineer to disclose Qorvo's confidential information to Akoustis. *Id.* In particular, Akoustis asked the Qorvo employee to access Qorvo's

---

[1] Qorvo was formed by the merger of TriQuint Semiconductor ("TriQuint") and RF Micro Devices ("RFMD"). D.I. 28, ¶ 11. TriQuint was formed in 1985; RFMD was formed in 1991. *Id.*

corporate yield page and send Akoustis screenshots of confidential information found on that page. *Id*. There is no legitimate reason for Akoustis to ask a Qorvo employee to provide this type of confidential information. *Id*.

Akoustis has specifically targeted certain employees with knowledge of confidential aspects of Qorvo's product design, testing, manufacturing, and customer demand. D.I. 28, ¶¶ 47-49. For example, Akoustis has recruited the following employees to obtain confidential information:

| Employee | Confidential Information | Date Recruited | FAC |
|----------|--------------------------|----------------|-----|
| Robert Dry | Qorvo's micro BAW processes | October 2019 | ¶ 56 |
| David Breton | Simulations performed by Qorvo's Developmental Physics Team | November 2020 | ¶ 57 |
| Guillermo Moreno | BAW filter design features resulting in superior performance | November 2019 | ¶ 58 |
| William Schmid | Product testing procedures and Qorvo's software libraries for product testing | May 2020 | ¶ 59 |
| Kindra Lane | Qorvo's EFC modeling tool, financial targets, vendors, and mid- and long-term plans | July 2020 | ¶ 60 |
| Wendy Wright | Qorvo's IBP system and "what if" scenarios | April 2019 | ¶ 61 |
| Paul Makowenskyj | Qorvo's product pipeline and performance requirements | August 2020 | ¶ 62 |

As a result of Akoustis' systematic efforts, ex-Qorvo employees now comprise more than half of the Akoustis Board of Directors, and a substantial portion of the overall Akoustis workforce. D.I. 28, ¶¶ 39, 124.

Akoustis has solicited and used Qorvo confidential information from the ex-Qorvo employees. D.I. 28, ¶¶ 53, 55. For example, Akoustis intentionally recruited and assigned ex-Qorvo employees to positions with overlapping job responsibilities so the ex-Qorvo employees can use the confidential information they obtained at Qorvo. *Id.*, ¶¶ 47, 50, 53. Akoustis has used the information to shortcut the normal product development process and shorten the time to

market for its products. *Id.*, ¶ 53. Akoustis has also used Qorvo's confidential information to compete directly against Qorvo for customers and market share. *Id.*

### C.    Akoustis Falsely Advertised Its Products as "Single Crystal"

While Akoustis built its products using Qorvo's patented technology and confidential information, Akoustis has falsely marketed those products as having new and proprietary "single-crystal" technology that offers superior performance compared to polycrystalline products. D.I. 28, ¶¶ 69, 74, 104. Akoustis refers to this "single crystal" technology as "XBAW™." *Id.*, ¶ 69. Akoustis' statements concerning its alleged "single-crystal" XBAW technology can be found throughout its promotional materials, on its website, and in product data sheets. *Id.*, ¶¶ 70-73, 102-103. For example, Akoustis states on its website that its "next-gen materials allow for single-crystal bulk acoustic wave (BAW) high-band filters." *Id.*, ¶ 70. Akoustis similarly states in promotional materials that it uses a "new proprietary XB1 single-crystal BAW manufacturing process." *Id.*, ¶ 71.

Akoustis' advertisements characterizing its products as "single-crystal" are false. D.I. 28, ¶¶ 74, 104. Akoustis' BAW filters are, in fact, polycrystalline—not "single crystal." *Id.*

## V.    LEGAL STANDARDS

Under Fed. R. Civ. P. 8(a), a complaint must have "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When reviewing a motion to dismiss under Rule 12(b)(6), courts accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See, e.g.*, *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018). The factual allegations must be sufficient to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere labels, conclusions, or a formulaic recitation of the claim elements are insufficient. *Id.* The plausibility standard "is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, No. 13-1353, 2018 WL 4502178, at *1 (D. Del. Sept. 20, 2018). As such, a plaintiff is not required to "prove [its] case at the pleading stage." *Olivia v. United States*, 961 F.3d 1359, 1364 (Fed. Cir. 2020). And the "factual allegations do not have to be detailed." *Axcess Int'l, Inc. v. Genetec (USA), Inc.*, 375 F. Supp. 3d 533, 535 (D. Del. 2009). But the complaint's factual content must be sufficient to "allow[] [a] court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## VI.    ARGUMENT

### A.    Akoustis Did Not Move to Dismiss Counts I-IV of the FAC

Akoustis' Motion seeks dismissal only of Count V of the FAC. *See* D.I. 33. The Motion does not request dismissal of Counts I-IV (*see id.*), nor does Akoustis address those Counts in its opening brief (*see* D.I. 34).

Akoustis appears to assume that its motion to dismiss Counts I-IV of the **original** Complaint is still pending and would somehow apply to dismiss Counts I-IV of the FAC. *See, e.g.*, D.I. 34 at 9 n.3 (stating that the motion "has been fully briefed but not yet heard"). But the filing of the FAC supplanted the original Complaint and mooted the first motion to dismiss. *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("[T]he amended complaint supersedes the original and renders it of no legal effect[.]"); *see also Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017). To the extent Akoustis wanted to seek dismissal of Counts I-IV of the FAC, Akoustis was required to include those Counts in the current motion to dismiss and explain in its opening brief why those claims should be dismissed (rather than dedicating the entirety of its 20-page brief to addressing only Count V). *Calloway v. Green Tree Servicing, LLC*, 599 F. Supp. 2d 543, 546 (D. Del. 2009) ("[Original] motion to dismiss is responsive to plaintiffs' original complaint. As the amended complaint has superseded

the original, defendant's [original] motion to dismiss has become moot."); *see also Johnson v. Brady*, No. 20-1732-RGA, 2021 WL 2682719, at *1 n.2 (D. Del. June 30, 2021) ("Defendants' motion to dismiss the original complaint will be dismissed as moot. Plaintiff's Amended Complaint is the operative pleading."). Having failed to include Counts I-IV in the Motion, Akoustis has waived any argument that those Counts should be dismissed at this time. *See Calloway*, 599 F. Supp. 2d at 546; *see also Johnson*, 2021 WL 2682719, at *1 n.2.

## B. Count V of the FAC States a Claim for Unfair Competition

To state a claim for unfair competition under North Carolina law, N.C.G.S. § 75-1.1, a plaintiff must allege facts plausibly showing "(1) the defendants committed an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiffs or to the plaintiffs' business." *Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012).

Akoustis argues that Count V should be dismissed because "Qorvo fails to allege any unfair or deceptive act or practice by Akoustis." D.I. 34 at 8. But the FAC alleges that Akoustis engaged in three unfair and deceptive trade practices actionable under North Carolina law: (i) Akoustis systematically raided Qorvo employees to obtain confidential information (D.I. 28, ¶¶ 46-47, 53-63, 124, 126); (ii) Akoustis encouraged those employees to breach their confidentiality obligations (*id.*, ¶¶ 54, 56-63, 126, 132-134, 136); and (iii) Akoustis made false statements that its BAW filters enjoy superior performance because they are "single crystal" (*id.*, ¶¶ 69-73, 102-104, 106, 139). The allegations in the FAC concerning these unfair trade practices go **far beyond** the short and plain statement required under Rule 8.

### 1. Raiding employees to obtain confidential information is an unfair trade practice

Under North Carolina law, raiding a competitor's employees to obtain confidential information is an unfair trade practice. *See, e.g.*, *Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 620 S.E.2d 222, 230-31 (N.C. Ct. App. 2005) ("Defendants' acts were unfair and unscrupulous and caused injury to plaintiff."); *Glover Constr. Co. v. Sequoia Servs., LLC*, No. 18-cvs-1900, 2020 WL 3393065, at *17-18 (N.C. Super. Ct. June 18, 2020) (allegations of soliciting employees and misappropriating trade secrets state an unfair competition claim). North Carolina courts also more broadly recognize that misuse of confidential information is a sufficient basis for an unfair competition claim. *See, e.g.*, *Velocity Sols., Inc. v. BSG Fin., LLC*, No. 15-CVS-1059, 2016 NCBC LEXIS 19, at *7-8 (N.C. Super. Ct. Feb. 22, 2016) (denying the motion to dismiss where the plaintiff alleged the defendant had "specifically engaged and directed [the plaintiff's former employee] to utilize the [p]laintiff's confidential and proprietary information in order to achieve competitive gain"); *CNC/Access, Inc. v. Scruggs*, No. 04-CVS-1490, 2006 NCBC LEXIS 22, at *27-31 (N.C. Super. Ct. Nov. 17, 2006) (denying summary judgment where defendant allegedly used plaintiff's confidential information).

As set forth above (*see* Part IV.B), Akoustis raided Qorvo employees to obtain confidential information to shortcut the time and investment normally required to enter the market for BAW filters. This scheme squarely qualifies as unfair competition under North Carolina law. *See, e.g.*, *Sunbelt Rentals*, 620 S.E.2d 222, 230-31 ("By using [Plaintiff's] former BPS employees and confidential information, defendant … was able to tailor rental fleets at its branches without spending the time, money and effort necessary to develop such information.").

Akoustis nonetheless argues that the allegations in the FAC are insufficient to state such a claim because: (1) "employee mobility alone is not actionable" (D.I. 34 at 8-9); and (2) the

allegations in the FAC "fail to set forth the misappropriation of confidential information with sufficient specificity" (*id.* at 7, 9-20). Both arguments lack merit.

### a. The FAC does not rely on "employee mobility alone"

Akoustis' arguments concerning the lawfulness of "employee mobility" can be quickly set aside. Even the most cursory review of the FAC reveals that Qorvo's claim is not based on "employee mobility alone." Instead, Qorvo alleged the systematic raiding of employees to obtain confidential information and shortcut the investment and effort needed to enter the BAW market. *See* Part IV.B, *supra*. Such conduct is unlawful even if "employee mobility alone" is permissible. *See, e.g.*, *Sunbelt Rentals*, 620 S.E.2d 222, 230-31; *Glover*, 2020 WL 3393065, at *17-18; *Velocity*, 2016 NCBC LEXIS 19, at *7-8; *CNC/Access*, 2006 NCBC LEXIS 22, at *27-31.

### b. The FAC includes detailed allegations concerning Akoustis' scheme to obtain Qorvo's confidential information

Akoustis dedicates the majority of the opening brief reprising its argument that Qorvo's allegations of unfair competition are too "conclusory" to state a claim. In its motion to dismiss the original Complaint, Akoustis similarly argued that it was "left only to guess" as to the nature of Qorvo's unfair competition claim in the absence of details concerning "the who/what/why/when/how of Akoustis' alleged misappropriation scheme." D.I. 11 at 2. As Qorvo pointed out in its original answering brief, "Rule 8 requires only a short and plain statement of a claim, not a novella reciting such details." D.I. 13 at 9. But, following the case management conference, Qorvo elected to file the FAC to move this case forward expeditiously.

The FAC identifies specific Qorvo employees Akoustis has targeted (the "who"), specific confidential information Akoustis has sought from those employees (the "what"), the dates on which Akoustis recruited those employees (the "when"), and even an example of the way Akoustis has solicited confidential information from Qorvo employees (the "how"). Akoustis,

however, filed another motion to dismiss, this time dropping its demands for the "the who/what/why/when/how" in favor of arguing more generally that the FAC lacks "sufficient specificity." D.I. 34 at 8. But Akoustis' argument is belied by the Opening Brief itself, which includes nearly 12 pages attempting to explain why "five different types of allegations" are now somehow insufficient under Rule 8. *See id.* at 9-20. Despite Akoustis' efforts to downplay the allegations of the FAC, those detailed allegations are more than sufficient to state a claim.

>   **(i)     The FAC identifies specific employees Akoustis targeted, dates on which those employees were targeted, and specific confidential information sought from each employee**

The FAC identifies seven specific Qorvo employees that Akoustis targeted since April 2019 as part of its scheme to obtain confidential information. D.I. 28, ¶¶ 56-62; *see also* Part IV.B, *supra*. For each employee, the FAC also identifies specific confidential information that Akoustis sought to obtain and why Akoustis was targeting that information. *Id.* The following allegation concerning Robert Dry, Qorvo's former Director of Infrastructure and Defense Packaging, is representative of the allegations added to the FAC:

> 56. For example, in October 2019, Akoustis recruited Robert Dry. Mr. Dry was the Director of Qorvo's Infrastructure and Defense Packaging business. In that position, Mr. Dry had access and was aware of Qorvo BAW Proprietary information, including but not limited to micro BAW processes used to shrink the size of filters. As Akoustis attempted to manufacture competing products, Akoustis was in need of the specific kind of confidential information known to Mr. Dry. This technology is not publicly available and is highly valuable. Mr. Dry was also a member of the patent committee at Qorvo and one of the persons who determined whether inventions should be maintained as trade secrets or disclosed in patent applications. As such, Mr. Dry was in a position to have widespread knowledge of Qorvo BAW Proprietary information. On information and belief, Akoustis actively recruited Mr. Dry specifically because of his knowledge of Qorvo's proprietary information and placed him in the position of Vice President of Operations with the expectation that Mr. Dry would use Qorvo BAW Proprietary information to the benefit of Akoustis, including micro BAW technology.

Not surprisingly, Akoustis avoids reproducing this or any other specific allegations from the FAC because they directly contradict its claim that the allegations are merely "boilerplate" and "conclusory" (*see* D.I. 34 at 10). Instead, Akoustis recharacterizes the allegations in a light it believes will be more favorable to its new motion. For example, in addressing the allegations concerning Mr. Dry and the other employees identified in the FAC, Akoustis argues that Qorvo merely "added the names of 16 individuals allegedly hired by Akoustis and examples of broad categories of Qorvo BAW Propriety Information that seven of those employees allegedly had access to while at Qorvo (e.g., "how Qorvo BAW filters achieve superior performance")." *Id.* at 11. This attempt to "spin" the allegations of the FAC bears little resemblance to the detailed allegations themselves (*compare id. with* D.I. 28, ¶¶ 56-62) and should be rejected.

Akoustis also argues that the allegations added to the FAC are insufficient because *certain portions* of those allegations are made on "information and belief." *See, e.g.*, D.I. 34 at 10. But, as Akoustis admits, information and belief allegations are permissible so long as they are not boilerplate and conclusory and they are accompanied by other factual allegations. *See id.*, at 7 (citing *McDermott*, 649 F. App'x at 267-68); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 468 (D. Del. 2016) ("So long as plaintiffs do not use 'boilerplate and conclusory allegations' and 'accompany their legal theory with factual allegations that make their theoretically viable claim plausible,' the Third Circuit has held 'pleading upon information and belief [to be] permissible [w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control.'") (citing *McDermott*, 649 F. App'x at 267-268) (alterations in original); *see also Konate, Inc. v. Banish*, No. 10-cv-90, 2011 WL 3804181, at *3 (W.D.N.C. Aug. 29, 2011); *Sunshine Media Grp., Inc. v. Goldberg*, No. cv-10-0761, 2010 WL 2899081, at *4-5 (D. Ariz. July 22, 2010). Qorvo's use of information and

belief allegations easily meets this standard, as exemplified by the allegation concerning

Akoustis' recruitment of Mr. Dry (reproduced above). *See* D.I. 28, ¶ 56. The information and

belief portion of that allegation is not boilerplate; it is specific to Mr. Dry—i.e., that Akoustis

recruited him for his knowledge of Qorvo's confidential micro BAW technology and expected

him to use that confidential technology to benefit Akoustis.[2] The allegation is also surrounded by

other supporting factual allegations. *See id.* Moreover, the allegation concerns Akoustis' intent,

an area that is commonly alleged on "information and belief."[3] *Fairchild Semiconductor Corp. v.*

*Power Integrations, Inc.*, 935 F. Supp. 2d 772, 778, 778 n.9 (D. Del. 2013) (finding that pleading

"intent" using "on information and belief" under Rule 8 is sufficient because a complaint in the

"'light most favorable to plaintiff'" may 'include [] facts alleged on information and belief.'").

    Akoustis also argues that Qorvo is attempting to fill unidentified "gaps" in the FAC by

alleging that ex-Qorvo employees will inevitably disclose confidential information as a result of

Akoustis' recruitment scheme. D.I. 34 at 12-14. The entire premise of this argument is wrong—

Qorvo does not allege inevitable disclosure to fill gaps necessary to its claims. Moreover, there is

no prohibition on alleging that, as one part of its scheme, Akoustis expects ex-Qorvo employees

to inevitably disclose confidential information. While inevitable disclosure commonly arises in

---

[2] Akoustis argues that "the same allegation is made in the same form with respect to every ex-Qorvo employee." D.I. 34 at 10. Not so. While the allegations follow the same structure and progression, the facts alleged are specific to each employee. *See* D.I. 28, ¶¶ 56-62.

[3] Information and belief allegations are also permissible for facts that are uniquely within the control of Akoustis. *DermaFocus*, 201 F. Supp. 3d at 468 (citing *McDermott*, 649 F. App'x at 267-268).

the context of trade secret claims, the concept is equally applicable based on the recruitment scheme alleged here.[4]

### (ii)    The FAC provides details on how Akoustis has used the recruiting process to solicit Qorvo's confidential information

In addition to identifying specific employees and confidential information that Akoustis has targeted from Qorvo, the FAC also alleges how Akoustis has used the recruitment process to solicit such information. D.I. 28, ¶ 54. In particular, the FAC details Akoustis' efforts to obtain confidential information from Qorvo's corporate yield page in late 2020:

> 54. Akoustis has aggressively recruited Qorvo employees to obtain confidential information. On several occasions, Akoustis proactively contacted employees with access to Qorvo BAW Proprietary Information—sometimes repeatedly—as part of this recruitment scheme. For example, in late 2020, an Akoustis engineering manager contacted a Qorvo Product Engineer through LinkedIn. During a subsequent call, the Akoustis engineering manager expressly asked the Qorvo Product Engineer to disclose Qorvo BAW Proprietary Information. More specifically, the Akoustis engineering manager asked this Qorvo employee to access the corporate yield page on Qorvo's computer system and provide screen shots of information found on that page. The corporate yield page is a repository for confidential information. It reflects, for example, analytical tools Qorvo is using to assess its products, the parts that Qorvo is using, the tests that Qorvo is running on those parts, and the performance and failure rates of those parts. There is no legitimate reason that Akoustis would ask a Qorvo employee to provide this type of confidential information as part of the recruitment process. The Qorvo Product Engineer felt that Akoustis' request for the confidential information was unethical and reported the incident to a supervisor.

---

[4] Akoustis argues that North Carolina courts have never adopted inevitable disclosure. D.I. 34 at 13 (citing *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, No. 14-cv-519, 2015 WL1810093, at *5 (E.D.N.C. Apr. 17, 2015)). But courts have recognized that North Carolina is likely to adopt the doctrine if confronted with the issue in a case with similar facts. *See Analog Devices, Inc. v. Michalski*, 579 S.E.2d 449, 455 n.4 (N.C. Ct. App. 2003) (stating that an injunction preventing an employee from working for a former employer's competitor is allowed when there is an "inferred misappropriation (justified by circumstances tending to show the new employer plainly lacks comparable technology)[.]"); *see also Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1458 (M.D.N.C. 1996) (denying defendant's argument that North Carolina has refused to apply the "inevitable disclosure" theory).

Akoustis has no colorable argument that this allegation lacks "sufficient specificity." So, Akoustis instead seeks to re-characterize the allegation as: "a single Akoustis engineering manager made a single request for unspecified information (for an unspecified reason) that could be found on a Qorvo page that contains some other information that is allegedly confidential, but no information is shared." D.I. 34 at 17. Akoustis' gloss on paragraph 54 of the FAC again bears virtually no resemblance to the actual allegation.

Akoustis' effort to gaslight this allegation is also contrary to fundamental principles governing motions to dismiss. For example, Akoustis argues that information it requested from Qorvo's corporate yield page may not have been confidential. *See* D.I. 34 at 16-17. But the allegations in the FAC must be accepted as true. *Twombly*, 550 U.S. at 572. And the FAC specifically alleges that the request was for confidential information: "There is no legitimate reason that Akoustis would ask a Qorvo employee to provide **this type of confidential information** as part of the recruitment process." D.I. 28, ¶ 54. Akoustis also asks the Court to draw unwarranted inferences in favor of Akoustis—e.g., that maybe "the Qorvo employee previously referred to something on the corporate yield page," or perhaps "the Akoustis engineering manager had [no] reason to believe the information he or she requested was confidential." D.I. 34 at 16-17. These arguments violate the bedrock principle that inferences are drawn in favor of the complainant, not the movant on a motion to dismiss. *Tatis*, 882 F.3d at 426 ("[W]e accept as true factual allegations in the [] complaint and all reasonable inferences that can be drawn from them, and we construe them in light most favorable to the nonmovant.").

Akoustis also raises a "no-harm-no-foul" defense—arguing that the effort to solicit Qorvo's confidential information should be disregarded because the "Qorvo employee prevented disclosure of any information." D.I. 34 at 17. But Akoustis misses the point of the allegation.

Regardless of whether Akoustis was successful on that specific occasion, the allegation plausibly shows that Akoustis was seeking to obtain confidential information from Qorvo employees.

### (iii) The FAC identifies Akoustis' statements concerning Qorvo's prototypes and product pipeline

The FAC also details statements that Akoustis made to a publication—Wireless Watch—that plausibly suggest that Akoustis obtained confidential information about Qorvo's product pipeline and prototypes:

> 64. Akoustis has also made public statements that indicate it has obtained Qorvo BAW Proprietary Information, including confidential information about Qorvo's product pipeline and development activities. For example, in a December 2021 issue of Wireless Watch, Akoustis' Vice President of Corporate Development stated that Akoustis WiFi 6E products will outperform future Qorvo WiFi 6E products: "Sepenzis claimed that Qorvo's BAW filter can only operate with a low temperature co-fired ceramic (LTCC) filter placed on top. He described the LTTC component was 'low performance,' noting that while it can cover the 5GHz and 6GHz bands, it cannot separate them so that they can be used simultaneously, which renders the addition of an extra band somewhat useless." Mr. Sepenzis did not provide any basis for his statement and Qorvo does not have a WiFi 6E 6GHz product on the market. As such, Mr. Sepenzis's statement about potential future Qorvo products is, on information and belief, based on Qorvo BAW Proprietary Information concerning Qorvo's development pipeline and prototyping process.

Akoustis raises three arguments to **dispute the truth** of this allegation. First, Akoustis asks the Court to find that the reference to "Qorvo's BAW filter" was not intended to refer to a "Qorvo WiFi 6E 6GHZ product." D.I. 34 at 18. But the passage itself indicates otherwise:

> Akoustis was the second company to launch **6E BAW filters**, the first being Broadcom. Sepenzis warned that **Qorvo's BAW filter** can only operate with a low temperature co-fired ceramic (LTCC) filter placed on top. He described the LTTC component as 'low performance,' noting that while it can cover the 5 GHz and **6 GHz bands**, it cannot separate them so that they can be used simultaneously, which renders the addition of the extra band somewhat useless.

D.I. 35-1 at 39 (emphasis added).

Second, Akoustis asks the Court to make a factual finding that Mr. Sepenzis obtained the information about Qorvo's WiFi 6E product from public statements, not confidential

information. D.I. 34 at 18. Akoustis submits two Exhibits that purportedly support such a factual finding. *See* D.I. 36, Exs. A, B. But, neither Exhibit says that Qorvo's WiFi 6E product will only operate with a low temperature co-fired ceramic (LTCC) filter placed on top. *See id.*

Third, Akoustis asks the Court to find, again as a matter of fact, that Mr. Sepenzis never made the statement about Qorvo to Wireless Watch and it was "simply a misprint." D.I. 34 at 18. To support this finding, Akoustis submits a factual declaration from Mr. Sepenzis and an email exchange between Mr. Sepenzis and the publisher of the article in which Mr. Sepenzis claims that the quote concerning Qorvo was inaccurate. *See* D.I. 35-2, at 1-8. In fact, the original article quoting Mr. Sepenzis has not been "corrected" and continues to be available online. *See* Quist Decl. at ¶ 2. The emails Akoustis includes with its opposition brief appear to refer to a different article by a different author. The article Qorvo quoted in its FAC is not the same article Akoustis attempts to correct with its improper request for judicial notice and supporting declarations.

The overarching problem with Akoustis' arguments concerning the Wireless Watch article is that Akoustis seeks a factual finding to resolve a motion to dismiss. Rather than accepting Qorvo's allegation as true, Akoustis wants the Court to find that Mr. Sepenzis did not make statements based on Qorvo's confidential information. Akoustis argues that it is merely asking the Court to take judicial notice of the "corrected" version of the article and Qorvo's public statements. *See* D.I. 34 at 19; *see also* D.I. 37. In reality, Akoustis is asking more—for the Court to find, based on those materials, that Mr. Sepenzis never made the statements he is alleged to have made. The rules governing judicial notice do not allow for such findings of disputed fact.

### c. Akoustis fails to cite a single case that would support dismissing Qorvo's employee raiding claim

Tellingly, over the course of its 20-page brief, Akoustis fails to cite even a **single case** where allegations of unfair competition as detailed as those in the FAC were dismissed on the pleadings. Akoustis argues that a "stronger, more specific" claim was dismissed in *Krawiec v. Manly*. D.I. 34 at 11-12 (citing *Krawiec*, 811 S.E.2d 542 (N.C. 2018)). But the court in *Krawiec* found that the complaint included only a boilerplate allegation of unfair and deceptive trade practices. *Krawiec*, 811 S.E.2d at 550 ("Here the unfair or deceptive acts alleged … were that the Metropolitan defendants had 'maliciously, deliberately, secretly, wantonly, recklessly, and unlawfully solicit[ed] and subsequently hir[ed] Plaintiffs' employees, Bogosavac and Divljak, and misappropriat[ed] Plaintiffs' trade secrets for their own benefit.' **Plaintiffs made no further allegations of specific unfair or deceptive acts.**") (emphasis added). Moreover, the court in *Krawiec* held that the plaintiffs failed to identify any specific trade secrets, instead referring generally to "concepts for dance productions" and "customer lists." *Id.* at 549 ("[P]laintiffs described their trade secrets only as their 'original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client, and customer lists and their contract information."). While Akoustis argues that the allegations in *Krawiec* were stronger and more specific than the FAC, just the opposite is true. *E.g., compare Kraweic*, 811 S.E.2d at 550 (merely stating hiring certain individuals were unfair) *with* D.I. 28, ¶ 56 (identifying individual, describing confidential information such individual possessed, and describing Akoustis' hiring circumstances and encouragements to obtain the confidential information).

### d. Akoustis' random potpourri of "injury" arguments should be rejected

Akoustis also sprinkles arguments throughout the opening brief that Count V should be dismissed because Qorvo fails to allege injury. Each of the various arguments lacks merit.

On page 12, Akoustis cites two cases—*Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989) and *Nucor Corp. v. Prudential Equity Group, LLC*, 189 N.C. App. 731, 738 (2008)—for the proposition that disclosure of confidential information is only actionable under North Carolina law if the disclosure causes injury to a plaintiff. D.I. 34 at 12. Those cases have no application here because the FAC alleges injury to Qorvo from Akoustis' scheme—i.e., Akoustis has used Qorvo's confidential information to shortcut the time to enter the market and to unfairly compete with Qorvo for sales. D.I. 28, ¶¶ 53, 56-62, 65, 136.

On pages 14-16, Akoustis argues that the court in *Austin Maint. & Const., Inc. v. Crowder Const. Co.*, 742 S.E.2d 535 (N.C. App. 2012) rejected the "same type of vague allegation" of injury despite "proof of actual and significant damage." D.I. 34 at 14-15. Akoustis' characterization of *Austin* is again far wide of the mark. As a threshold matter, *Austin* was decided on summary judgment—**not a motion to dismiss**—with the benefit of a full factual record. In *Austin*, the plaintiff argued it had been injured because a competitor "surreptitiously raided" four employees on a maintenance crew who quit on the same day, causing the plaintiff to lose a client. 742 S.E.2d at 548. The *Austin* court rejected plaintiff's claim of "surreptitious raiding" based on "undisputed evidence" adduced during discovery. *Id.* (reviewing evidence showing no surreptitious raiding); *see also id.* at 549 (finding the "record" did not support the argument that defendant "secretly pressured" the employees to change jobs). Based on the evidence, the court held that the employees simply "became dissatisfied with Plaintiff and left to work for a different company." *Id.* at 549. The court stressed that "the record does not establish that the events in question involved the disclosure of confidential information." *Id. Austin* does not even remotely support Akoustis' motion to dismiss given the allegations in the FAC that Akoustis aggressively targeted Qorvo employees to obtain Qorvo's confidential information.

### 2. Inducing ex-Qorvo employees to violate confidentiality obligations is and unfair and deceptive trade practice

The FAC also alleges that Akoustis engaged in unfair and deceptive trade practices by inducing ex-Qorvo employees to violate their confidentiality obligations. D.I. 28, ¶¶ 54, 56-63, 126, 132-134, 136. Soliciting or encouraging the breach of a contract is actionable as an unfair or deceptive trade practice under North Carolina law. *Kuykendall*, 403 S.E.2d at 109 (affirming the lower court's finding of unfair and deceptive trade practices relating to defendant's inducement of plaintiff's former employee to breach a non-compete agreement). Akoustis does not address this allegation, which is alone sufficient reason to deny the Motion.

### 3. Making false statements about a product is an unfair and deceptive trade practice

The FAC also alleges that Akoustis engaged in unfair and deceptive trade practices by falsely stating that its products use "single crystal" technology. D.I. 28, ¶¶ 69-73, 102-104, 106, 139. This allegation is alone sufficient to sustain the unfair competition claim. *LStar Dev. Grp., Inc. v. Vining*, No. 20-CV-184, 2021 U.S. Dist. LEXIS 181972, at *30-33 (E.D.N.C. Sept. 23, 2021) (denying defendant's motion to dismiss plaintiff's unfair and deceptive trade practices claim because "it c[ould] be reasonably inferred that an alleged false statement . . . [was] likely to harm plaintiff."); *Ellis v. N. Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990) ("We have concluded, for example, that both false advertising and fraud violate [N.C.G.S. § 75-1.1].").

Akoustis dedicated only one footnote to addressing this allegation. *See* D.I. 34 at 8-9 n.3. Akoustis argues that the FAC does not include "facts sufficient to indicate that the alleged act was dishonest or immoral." *Id.* Akoustis makes no effort to explain this conclusory assertion. In any event, the FAC makes clear that Akoustis made a conscious decision to falsely distinguish its products as "single crystal," making those statements both dishonest and deceptive. *See, e.g.*, D.I. 28, ¶ 117 (alleging that Akoustis tests its products and knows they are polycrystalline).

Akoustis also argues that its false statements concerning its "single crystal" BAW filters cannot sustain an unfair competition claim if the false advertising claim is dismissed. Again, Akoustis cites no authority for that proposition. Also, as noted in Part VI.A., Akoustis has waived its arguments that the false advertising claim should be dismissed.

## VII.    CONCLUSION

For the foregoing reasons, Akoustis' motion to dismiss should be denied.

Dated:  March 25, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)|
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
(202) 747-1900

Trevor J. Quist
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1540 El Camino Real
Menlo Park, CA 94025

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 25, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| David A. Jakopin, Esquire<br>Dianne L. Sweeney, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>2550 Hanover Street<br>Palo Alto, CA 94304-1115<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Robert M. Fuhrer, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>1650 Tysons Boulevard, 14th Floor<br>McLean, VA 22102-4856<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| David L. Stanton, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>725 South Figueroa Street, 36th Floor<br>Los Angeles, CA 90017-5524<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)