IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:21-cv-01417-JPM |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) |
| AKOUSTIS, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

PILLSBURY WINTHROP
SHAW PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

David L. Stanton
725 S Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

*Attorneys for Defendants Akoustis
Technologies, Inc. and Akoustis, Inc.*

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis
Technologies, Inc. and Akoustis, Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ....................................................................................................... 2

    A. AKOUSTIS' COMPLIANCE WITH THE COURT'S ORDER TO SET A HEARING ON THE FIRST MOTION TO DISMISS IS NOT A WAIVER ............. 2

    B. QORVO FAILED TO STATE A ................................................................... 3

    C. SECTION 75-1 CLAIM ................................................................................ 3

        1. No authority supports Qorvo's assertion of a Section 75-1 claim based on Akoustis' hiring of ex-Qorvo employees ................................. 3

        2. Qorvo failed to allege any misappropriation of confidential information .............. 4

        3. Qorvo cannot state a claim by repackaging its deficient misappropriation allegations as induced-breach allegations ................. 6

        4. The doctrine of inevitable disclosure has not been adopted by North Carolina courts and does not support Qorvo's claim in any event ........................ 8

        5. Qorvo's recruiter (late 2020) and Wireless Watch (December 2021) allegations cannot support Qorvo's seven-year scheme allegation .......................... 9

III. CONCLUSION ................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Analog Devices, Inc. v. Michalski*,
  157 N.C. App. 462 (2003) .................................................................................. 9, 11

*Axcess, Int'l, Inc. v. Genetec Inc.*,
  375 F. Supp. 3d 533 (D. Del. 2019) .......................................................................... 5

*Branch Banking v. Thompson*,
  107 N.C. App. 53 (1992) ........................................................................................ 10

*Brown v. Camden School Dist.*,
  2020 WL 6055070 (D.N.J. Oct. 13, 2020) ............................................................... 6

*Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC*,
  116 F. Supp. 3d 644 (M.D.N.C. 2015) ................................................................... 10

*CNC/Access, Inc. v. Scruggs*,
  No. 04 CVS 1490, 2006 WL 3350854 (N.C. Super. Nov. 15, 2006) ....................... 7

*FMC Corp. v. Cyprus Foote Min. Co.*,
  899 F. Supp. 1477 (W.D.N.C. 1995) ...................................................................... 12

*Glover Constr. Inc. v. Sequoia Servs., LLC*,
  No. 18 CVS 1900, 2020 WL 3393065 (N.C. Super. June 18, 2020) ....................... 7

*Jordan v. Philadelphia*,
  66 F. Supp. 2d 638 (E.D. Pa. 1999) ......................................................................... 6

*Krawiec v. Manly*,
  370 N.C. 602 (2018) ........................................................................................... 9, 10

*McDermott v. Clondalkin, Inc.*,
  649 F. App'x 263 (3d Cir. 2016) .......................................................................... 5, 8

*Merck & Co. v. Lyon*,
  941 F. Supp. 1443 (M.D.N.C. 1996) ...................................................................... 12

*Peoples Sec. Life Ins. Co. v. Hooks*,
  322 N.C. 216 (1988) ................................................................................................. 5

*Se. Anesthesiology Consultants v. Charlotte-Mecklenburg Hosp.*,
  No. 18 CVS 5899, 2018 WL 3304441 (N.C. Super. June 22, 2018) ..................... 12

*Spirax Sarco, Inc. v. SSI Eng'g, Inc.*,
 No. 5:14-CV-519-F, 2015 WL 1810093 (E.D.N.C. Apr. 17, 2015) ....................................... 12

*Sun Co. v. Badger Design*,
 939 F. Supp. 365 (E.D. Pa. 1996) ........................................................................................ 6

*Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*,
 174 N.C. App. 49 (2005) ..................................................................................................... 7

*United Lab'ys, Inc. v. Kuykendall*,
 102 N.C. App. 484 (1991) ................................................................................................. 11

*United Lab'ys, Inc. v. Kuykendall*,
 322 N.C. 643 (1988) .................................................................................................... 10, 11

*Velocity Sols., Inc. v. BSG, LLC*,
 No. 15 CVS 1059, 2016 WL 698506 (N.C. Super. Feb. 22, 2016) ......................................... 7

*Waggoner v. Laster*,
 581 A.2d 1127 (Del. 1990) .................................................................................................. 6

*Wells Fargo Ins. Servs. USA, Inc. v. Link*,
 372 N.C. 260 (2019) .................................................................................................... passim

*Williams v. Hershey Co.*,
 No. 20-9394, 2021 WL 1686568 (D.N.J. April 29, 2021) ..................................................... 6

Statutes and Codes

North Carolina Unfair Trade Practices Act (North Carolina General Statutes § 75–1.1) ..... passim

Other Authorities

Wright *et al.*, *Federal Practice and Procedure* § 1476 .................................................................. 6

**I.     INTRODUCTION**

Qorvo alleges a seven-year "raiding scheme" where Akoustis allegedly built its company through "a series of shortcuts" by extracting confidential information from ex-Qorvo employees at critical points along the way. Even after seven years, this fanciful alleged scheme has no factual support. The alleged facts show lawful behavior: employee mobility and competition.

The rules of pleading are designed to ensure fair notice and avoid speculative allegations and wasteful litigation. While Qorvo extensively argues that it has met the pleading standard, the absence of alleged facts over the course of the alleged "series of shortcuts" and "raiding" is dispositive. Qorvo has not alleged a single incident of unlawful conduct in 2014, 2015, 2016, 2017, 2018, or 2019. Where would discovery begin in such a scenario? The limited facts that are set forth (an alleged recruiting violation in late 2020 and alleged media statement in December 2021) fail to meet the requisite legal standards for a Section 75-1 Claim because two isolated incidents in 2020 and 2021 cannot plausibly support Qorvo's claim of a seven-year "raiding scheme" dating back to 2014. The factual allegations that do underpin this alleged scheme are simply that former Qorvo employees with technical knowledge moved to Akoustis over many years. While Qorvo believes that the purpose of Akoustis' hires was to extract confidential information at key junctures, Qorvo's information-and-belief allegations fail because they are not tethered to "factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin, Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (internal citations omitted). Qorvo's alleged seven-year scheme is theoretical and does not meet basic pleading standards.

Qorvo's claim also asks this Court to create new law that would contravene North Carolina public policy, which rejects claims that impede employee mobility or lawful competition:

> public policy demands that absent some monopolistic purpose everyone has the right to offer better terms to another's employee, so long as the latter is free to leave. A contrary result would be intolerable, both to the new employer who could use the employee more effectively and to the employee who might receive added

1

pay. To hold otherwise would unduly limit lawful competition.

*Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 222 (1988); *see also Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 285 (2019) ("The recruitment of employees from a business competitor is presumptively privileged competitive activity, absent an allegation of legal malice").

Akoustis requests that the Court grant this motion and reject Qorvo's attempt to open the door to wide-ranging discovery on the basis of such thin, unsupported allegations.

## II. ARGUMENT
### A. AKOUSTIS' COMPLIANCE WITH THE COURT'S ORDER TO SET A HEARING ON THE FIRST MOTION TO DISMISS IS NOT A WAIVER

Akoustis properly requested a hearing on its motion to dismiss Counts I-IV pursuant to the Court's Scheduling Order and with Qorvo's agreement. The Court's Scheduling Order states: "The Court will allow Plaintiff to amend its Complaint in order to add specificity to its claim of unfair and deceptive trade practices. For the other claims at issue in the Defendants' Motion to Dismiss, the Court will set a hearing if desired by the Parties." (D.I. 23 at p. 2 n.1.) Further to that Order, Akoustis conferred with Qorvo to schedule a hearing on the pending Motion to Dismiss ("November Motion") and a hearing on the new motion to dismiss Qorvo's amended Count V ("March Motion"). Qorvo agreed – both before and after Akoustis filed its March Motion – to a consolidated hearing schedule on both motions. Declaration of Dianne Sweeney in Support of Reply, ¶¶ 5-7, Exs. 4-6. Even if Qorvo's waiver argument had any merit, Qorvo would be estopped from making it. *See Waggoner v. Laster*, 581 A.2d 1127, 1136 (Del. 1990). The Court also expressly permitted the parties to schedule a hearing on the November Motion concurrent with the amendment. Courts regularly consider prior motions to dismiss where an amended complaint did not address the defects at issue in the prior motion.[1] "To hold otherwise would be to

---

[1] *See, e.g.*, *Jordan v. Philadelphia*, 66 F. Supp. 2d 638, 641 n. 1 (E.D. Pa. 1999) (as the counts at issue "suffer from the same deficiencies that are addressed in defendants' motion to dismiss, the court will allow the motion to dismiss these counts to be considered as addressing the amended complaint"); *Sun Co. v. Badger Design*, 939 F. Supp. 365, 369 (E.D. Pa. 1996) (same); *Williams v. Hershey Co.*, No. 20-9394, 2021 WL 1686568, at *2 (D.N.J. April 29, 2021) (same).

exalt form over substance." *Brown v. Camden School Dist.*, 2020 WL 6055070, at *4 (D.N.J. Oct. 13, 2020) (citing Wright *et al.*, *Federal Practice and Procedure* § 1476). Qorvo's authorities are inapposite in light of its own conduct and the procedural posture here.

### B. QORVO FAILED TO STATE A SECTION 75-1 CLAIM

Qorvo fails to allege facts sufficient to state a claim under the North Carolina Unfair Trade Practices Act (N.C. Gen.Stat. § 75–1.1) ("Section 75-1"), relying instead almost entirely on conclusions, labels, and improper information-and-belief allegations.[2]

#### 1. No authority supports Qorvo's assertion of a Section 75-1 claim based on Akoustis' hiring of ex-Qorvo employees

Qorvo cites four cases for the proposition that "raiding a competitor's employees to obtain confidential information is an unfair trade practice." (D.I. 41 at 8.) But of those cases, only *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49 (2005) found a Section 75-1 claim based on alleged "raiding," and reached that conclusion based on a set of facts so extreme that it bears no resemblance to Qorvo's FAC. In *Sunbelt*, the defendants hired plaintiff Sunbelt's local branch managers and directed them to recruit the remaining employees at their branches (while the managers were still employed by Sunbelt) to launch competing local branches for defendants. *Id.* at 60-61. The defendants hired such a large share of Sunbelt's employees (*e.g.*, 100% of Sunbelt's Atlanta employees and more than 90% of its Tampa/Fort Meyers employees) that its local branches "were severely impacted, or 'crippled,' to the point [its] opportunity and ability to compete for key employees on a level playing field was completely eliminated." *Id.* at 51 n.2, 60. The court explained that the "deceptive, secretive nature" of this hiring practice "***differentiate[d] this case from others where courts have found the hiring of competitor's***

---

[2] Qorvo again brazenly claims that Akoustis did not dispute paragraph 139 of the FAC that public statements about the single crystal were false or misleading. Akoustis noted the limited reference and confirmed that the assertion (like the balance of Qorvo's claim) (i) failed to allege that the act was dishonest or immoral as required, and (ii) failed separately as a matter of law under the Lanham Act and false marking analysis. (*See* D.I. 28 at 8 n.3; *see also*, D.I. 11 at 14-18.) Section 75-1 is not a catch-all for all alleged bad deeds but requires specific allegations not present here.

3

*employees to be acceptable*." *Id.* at 60-61 (emphasis added). Qorvo cannot allege any "deceptive, secretive" hiring practices or severe, crippling impact on its ability to compete for key employees.[3]

While Qorvo attempts to state a Section 75-1 claim based on hiring, the "recruitment of employees from a business competitor is presumptively privileged competitive activity, absent an allegation of legal malice." *Wells Fargo*, 372 N.C. at 285. After disregarding Qorvo's conclusory, unsupported labels for Akoustis' lawful hiring (*e.g.*, "aggressively recruiting," "raiding"), Qorvo fails to allege facts that support its claim that hiring approximately 20 ex-Qorvo employees over seven years was deceptive or unfair. Qorvo seeks to address its paucity of facts with conclusory misappropriation and inducement allegations, the inapplicable doctrine of inevitable disclosure, and two isolated alleged incidents in late 2020 and December 2021, which cannot plausibly support Qorvo's allegation of a seven-year hiring "scheme" from 2014 to 2021.

### 2. Qorvo failed to allege any misappropriation of confidential information

Contrary to Qorvo's assertions, the new allegations regarding the 16 named ex-Qorvo employees are boilerplate, insufficient to state a Section 75-1 claim, and rely on the same vague, uncertain definition of "confidential information" discussed at the February 7, 2022, scheduling hearing. Qorvo's allegations about seven of those employees follow the same pattern: (1) Akoustis recruited the employee; (2) the employee had access to Qorvo BAW Proprietary Information, including a broad subcategory of such information, at Qorvo; (3) Akoustis allegedly needed that information to compete with Qorvo; and (4) on information and belief, Akoustis recruited the

---

[3] The other cases cited by Qorvo did not rely on any "raiding" allegations in ruling on Section 75-1 claims at various procedural stages, but relied on disclosures of specific, identifiable, confidential information. *See Glover Constr. Inc. v. Sequoia Servs., LLC*, No. 18 CVS 1900, 2020 WL 3393065 at **12, 17-18 (N.C. Super. June 18, 2020) (denying defendants' motion for summary judgment based on evidence that defendant Glover sent documents with plaintiff's trade secrets, including pricing information and work plans, to defendant Sequoia); *Velocity Sols., Inc. v. BSG, LLC*, No. 15 CVS 1059, 2016 WL 698506, at *1 (N.C. Super. Feb. 22, 2016) (individual was involved in developing a response to federal regulations for overdraft services and use of that information by that same person to develop the same software was identified); *CNC/Access, Inc. v. Scruggs*, No. 04 CVS 1490, 2006 WL 3350854, at *10 (N.C. Super. Nov. 15, 2006) (57 policies and forms contained in a specific exhibit were identified).

employee because of his or her knowledge of Qorvo's confidential information and placed the employee in a role expecting that such knowledge would be used.[4] (D.I. 28, ¶¶ 56-62.) Qorvo does not allege any act of misappropriation of specifically identified confidential information; instead, the *only* factual allegations are that these employees had access to Qorvo's broadly defined Qorvo BAW Proprietary Information (including, but not limited to, broad subcategories of such information) and were hired by Akoustis.[5] Such allegations are insufficient as a matter of law.

In *Wells Fargo*, 372 N.C. 260 (2019), the North Carolina Supreme Court held that these same types of allegations failed to state a Section 75-1 claim. Wells Fargo alleged that BB&T hired three former Wells Fargo employees who had access to its trade secrets within a six-month span, 18 customers assigned to those employees later transferred their business to BB&T, and "upon information and belief, the Defendants have misappropriated Wells Fargo's trade secret information in order to unfairly compete against Wells Fargo and solicit its customers." *Id.* at 262, 265, 281. The Court rejected those allegations as "conclusory speculation" and dismissed Wells Fargo's Section 75-1 claim against BB&T. *Id.* at 281, 286-87. Qorvo's conclusory speculation that some or all of its Qorvo BAW Proprietary Information has been or will be used or disclosed should similarly be rejected. Indeed, the law favors the mobility of employees, including those with access to confidential information. *See Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 470 (2003) (explaining that if courts were to hold that a former employee with access to confidential information would inevitably disclose that information when hired by a competitor to

---

[4] Qorvo makes one boilerplate allegation regarding the other nine named ex-Qorvo employees, and does not explain why it can only allege on information and belief that they had access to Qorvo BAW Proprietary Information. (*See* D.I. 28, ¶ 63.) As the scope of their knowledge of Qorvo BAW Proprietary Information is not "peculiarly within [Akoustis'] knowledge or control," that allegation cannot be credited. *See McDermott*, 649 F. App'x at 267–68.

[5] Qorvo's opposition boasts that it has successfully alleged the who, what, when, and how of its Section 75-1 claim. (D.I. 41 at 9.) But its description of those allegations refers back to Akoustis' lawful hiring of ex-Qorvo employees (with the exception of Qorvo's reference to its unsupported argument that the recruiter allegation is an "example of the way Akoustis has solicited confidential information"). In other words, Qorvo's who/what/when/how allegations do not support a claim that Akoustis has misappropriated *anything*.

perform similar work, then "no employee could ever work for its former employer's competitor" and such employees would "not be able to market their expertise" (citations omitted)).

Qorvo's attempt to distinguish *Krawiec v. Manly*, 370 N.C. 602 (2018), is unavailing. Qorvo asserts that it identified a more specific set of confidential information than was identified by the plaintiff in *Krawiec*, but a comparison undermines that claim. *Compare id.* at 611 ("original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information") *with* D.I. 28, ¶ 20 (broadly defining "Qorvo BAW Proprietary Information"), ¶¶ 56-63 (alleging that 16 employees had access to Qorvo BAW Proprietary Information, seven of which had access to various broad subcategories of such information). Qorvo further argues that *Krawiec* is distinguishable because of the plaintiff's conclusory allegation that the defendants "maliciously, deliberately, secretly, wantonly, recklessly, and unlawfully solicit[ed] and subsequently hir[ed] Plaintiffs' employees…and misappropriat[ed] Plaintiffs' trade secrets for their own benefit." (D.I. 41 at 17 (quoting *Krawiec*, 370 N.C. at 613).) While Qorvo used different labels, it equally relied on unsupported conclusions. (*See, e.g.*, D.I. 28, ¶ 46 ("conscious, methodical, and systematic recruitment and solicitation of Qorvo's employees in all major areas"), ¶ 53 ("On information and belief, the Ex-Qorvo BAW Employees were hired for the specific purpose of using their knowledge of the Qorvo BAW Proprietary Information"), ¶ 54 ("aggressively recruited" to "obtain confidential information").) Like the *Krawiec* plaintiff, Qorvo failed to allege any facts that support its conclusory allegations.

### 3. Qorvo cannot state a claim by repackaging its deficient misappropriation allegations as induced-breach allegations

Qorvo attempts to rescue its deficient allegations that Akoustis misappropriated ill-defined confidential information by pointing to its information-and-belief allegation that Akoustis induced ex-Qorvo employees to breach their confidentiality agreements as part of the alleged seven-year scheme. But again, Qorvo fails to identify any specific instance of misappropriation or specific

6

confidential information that was misappropriated, or any factual basis for the contention. Even if Qorvo had done so, this argument would fail because mere inducement of a breach of contract does not state a claim under Section 75-1[6] and no tortious interference claim can be made when a breach of contract is induced for a reasonable and *bona fide* competitive purpose. *United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 662 (1988) (competition justified defendant's offering plaintiff's employees job opportunities and inducing them to terminate their at-will contracts)). Moreover, the *Kuykendall* opinion cited by Qorvo reflects that specific acts of inducement were identified in establishing the plaintiff's Section 75-1 claim (*e.g.*, offering to pay the legal fees and costs of the plaintiff's former employee (Kuykendall) to breach his covenant not to compete and offering to subsidize Kuykendall's income in the event of an injunction). *United Lab'ys, Inc. v. Kuykendall*, 102 N.C. App. 484, 491-92 (1991). No such inducements are alleged here.

Qorvo further argues that it properly alleged on information and belief that Akoustis hired the ex-Qorvo employees with the intent that they would use Qorvo's confidential information to Akoustis' benefit. But information-and-belief allegations must still be supported by facts sufficient to make the allegation plausible. The only "supporting" facts that Qorvo has alleged are that Akoustis competes with Qorvo and hired ex-Qorvo employees who had access to Qorvo's confidential information. Those facts are indistinguishable from lawful hiring. Furthermore, Qorvo's allegation that Akoustis is a competitor (D.I. 28, ¶¶ 40, 42) affirmatively establishes that Akoustis' hiring of these employees was justified. *Wells Fargo*, 372 N.C. at 283, 285-87 (dismissing intentional interference and related Section 75-1 claims where the complaint established that the parties were competitors and the plaintiff failed to allege facts supporting the

---

[6] *See Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC*, 116 F. Supp. 3d 644, 656, 661 (M.D.N.C. 2015) (considering tortious interference elements to determine that payment to induce breach of terminable-at-will contract did not violate Section 75-1). Similarly, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75–1.1," as the plaintiff must allege "substantial aggravating circumstances attending the breach." *Branch Banking v. Thompson*, 107 N.C. App. 53, 62 (1992).

7

conclusory claim that defendant BB&T acted without justification).

### 4. The doctrine of inevitable disclosure has not been adopted by North Carolina courts and does not support Qorvo's claim in any event

While failing to allege any act of misappropriation of specifically identified confidential information, Qorvo cites two cases for the speculative proposition that "North Carolina is likely to adopt the [inevitable disclosure] doctrine if confronted with the issue in a case with similar facts." Neither case supports that assertion. *Analog Devices, Inc.*, 157 N.C. App. at 470, expressly declined to consider whether to adopt the doctrine of inevitable disclosure because "it would not be applied in the fashion promoted by [plaintiff]." *Merck & Co. v. Lyon*, 941 F. Supp. 1443, 1460 (M.D.N.C. 1996), predicted in 1996 that North Carolina courts would adopt the doctrine under the right facts and with a limited injunction, but that prediction still has not come to fruition more than 25 years later. *See, e.g.*, *Se. Anesthesiology Consultants v. Charlotte-Mecklenburg Hosp.*, No. 18 CVS 5899, 2018 WL 3304441, at *19 (N.C. Super. June 22, 2018) (noting that the *Merck* court's prediction still had not come to fruition after nearly 22 years in declining to adopt the inevitable-disclosure doctrine); *Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, No. 5:14-CV-519-F, 2015 WL 1810093, at *5 (E.D.N.C. Apr. 17, 2015) (inevitable-disclosure doctrine "has never been adopted by the North Carolina Supreme Court or the North Carolina Court of Appeals").

Even if the doctrine were someday adopted by North Carolina courts, it would not support Qorvo's claim here. For example, *Merck* cautioned that if the doctrine had been adopted, it would require a trade secret at risk that is "clearly identified and of significant value." *Merck*, 941 F. Supp. at 1460. Here, Qorvo has no trade secret and has failed to clearly identify any confidential information. In *FMC Corp. v. Cyprus Foote Min. Co.*, 899 F. Supp. 1477, 1482 (W.D.N.C. 1995), FMC made the same argument that Qorvo does: FMC's former employee would "inevitably disclose" FMC's trade secrets "knowingly or unknowingly" if permitted to work in the same area for the defendant as he did for FMC. In rejecting that argument, the court explained that "[e]ven

assuming that North Carolina would recognize this so-called 'inevitable discovery' doctrine, the Court does not believe that North Carolina would apply the doctrine with the broad strokes urged by FMC." *Id.*; *see also id.* at 1483 (requested application of doctrine would prevent an employee from using his general engineering skill and knowledge elsewhere). Such application would also run afoul of North Carolina's public policies supporting employee mobility.

> **5. Qorvo's recruiter (late 2020) and Wireless Watch (December 2021) allegations cannot support Qorvo's seven-year scheme allegation**

Qorvo argues that two recent isolated alleged incidents demonstrate that Akoustis has been seeking and obtaining Qorvo's confidential information since the beginning of its alleged hiring scheme in 2014. Even if those allegations were viable, they cannot plausibly support the broader seven-year scheme alleged here because a single request for information in "late 2020" and a single alleged statement in December 2021 cannot overcome the presumption that Akoustis' hires dating back to 2014 were privileged competitive activity. *See Wells Fargo*, 372 N.C. at 285.

> *a. Qorvo mischaracterizes its recruiter allegation and fails to allege necessary supporting facts*

In an effort to rescue its flawed recruiter allegation, Qorvo asks the court to interpret it to mean something it does not say. Qorvo cites its allegation that there is "no legitimate reason that Akoustis would ask a Qorvo employee to provide **this type of confidential information** as part of the recruitment process" to argue that it did allege that Akoustis sought disclosure of confidential information. (D.I. 41 at 14 (citing D.I. 28, ¶ 54).) But "this type of confidential information" refers to the previous sentence in paragraph 54 of the FAC, which describes an example of information contained on Qorvo's "corporate yield page," not the information that the Akoustis engineer allegedly requested. Many repositories contain both confidential and non-confidential information. It is telling that Qorvo refused to address this deficiency by identifying the specific information that was supposedly requested. Instead, Qorvo characterizes a plain reading of the

9

words in its own complaint as "gaslighting."[7] Qorvo further argues that Akoustis is improperly seeking a favorable inference on a motion to dismiss, but Akoustis merely identified facts that would be known to Qorvo but are noticeably absent from its conclusory recruiter allegation.

                        b.        *Qorvo's Wireless Watch allegation fails to allege misappropriation*

Qorvo seeks to prevent the Court from considering the corrected version of the article that the FAC relies on because considering the corrected version (rather than Qorvo's characterization of the erroneous article's characterization of Mr. Sepenzis' statement) establishes that Qorvo cannot allege truthfully that it shows Akoustis misappropriated any confidential information, because the alleged statement *related to a different company*. Even the original article cannot support a misappropriation allegation, however, because it does not assert that Mr. Sepenzis made the statement about the Wi-Fi 6E 6GHz products that Qorvo contends are not yet on the market. Additionally, Qorvo does not allege that its Wi-Fi 6E 6GHz products actually require an LTCC filter to operate; instead Qorvo alleges that "Sepenzis did not provide any basis for his statement" and then alleges on information and belief that Sepenzis must have made the (mischaracterized) statement based on Qorvo BAW Proprietary Information. Of course, Mr. Sepenzis did not even make the statement Qorvo complains about as further confirmed by the correction that was made before this allegation was ever brought. In any event, a speculative allegation based on an erroneous article cannot plausibly support a seven-year scheme much less a Section 75-1 claim.

## III. CONCLUSION

Akoustis respectfully requests that the Court grant this motion in its entirety.

---

[7] *Compare* D.I. 28, ¶ 54 ("the Akoustis engineering manager asked this Qorvo employee to…provide screen shots of information found on that page") *with* D.I. 41 at 3-4 (describing same allegation but adding "confidential" where it did not appear: "Akoustis asked the Qorvo employee to…send Akoustis screenshots of confidential information found on that page.").

Date: April 1, 2022

| | |
|---|---|
| PILLSBURY WINTHROP<br>SHAW PITTMAN LLP | BAYARD, P.A.<br><br>*/s/ Ronald P. Golden III* |
| David A. Jakopin<br>Dianne L. Sweeney<br>2550 Hanover Street<br>Palo Alto, CA 94304-1115<br>(650) 233-4500<br>david.jakopin@pillsburylaw.com<br>dianne@pillsburylaw.com | Stephen B. Brauerman (#4952)<br>Ronald P. Golden III (#6254)<br>600 N. King Street, Suite 400<br>Wilmington, Delaware 19801<br>(302) 655-5000<br>sbrauerman@bayardlaw.com<br>rgolden@bayardlaw.com |
| Robert M. Fuhrer<br>1650 Tysons Boulevard, 14th Floor<br>McLean, VA 22102-4856<br>(703) 770-7900<br>robert.fuhrer@pillsburylaw.com | *Attorneys for Defendants Akoustis<br>Technologies, Inc. and Akoustis, Inc.* |
| David L. Stanton<br>725 S Figueroa St., 36th Floor<br>Los Angeles, CA 90017<br>(213) 488-7100<br>david.stanton@pillsburylaw.com | |
| *Attorneys for Defendants Akoustis<br>Technologies, Inc. and Akoustis, Inc.* | |