IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>AGREEMENT AND ORDER ON DOCUMENT AND E-DISCOVERY</u>

This Agreement will govern how the parties manage discovery of electronically stored information and other documents in the above captioned case. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

## I.     E-DISCOVERY COORDINATORS

The parties have identified e-discovery coordinators to each other who are and will be knowledgeable about and responsible for discussing their respective electronically stored information ("ESI"). Each e-discovery coordinator will be familiar with the party's electronic information systems and capabilities, and generally able to explain these systems and answer relevant questions, and shall be knowledgeable about the technical aspects of e-discovery related to this matter, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter, and be prepared to participate in e-discovery dispute resolution. The e-discovery coordinators for each of the parties are as follows:

Lauren Doucette                          e-discovery coordinator for Plaintiff
ldoucette@sheppardmullin.com

David Stanton                            e-discovery coordinator for Defendants
david.stanton@pillsburylaw.com

If the parties need to make modifications to their designated e-discovery coordinators, the party effecting the changes shall notify all other parties within five (5) business days of the change, including the new contact information for the e-discovery coordinator.

## II.    PRESERVATION

Consistent with the parties' obligations under Rule 26(f), each party has undertaken steps to preserve materials reasonably related to this matter and have begun work to identify custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation.  The parties will disclose categories or sources of information responsive to discovery requests that they have reason to believe have not been preserved or should not be preserved and will explain with specificity the reasons to support such a belief.

Nothing in this order shall prohibit the following actions taken in the ordinary course of business: (1) routine maintenance, operation, or replacement of computer systems or equipment; and (2) upgrading, loading, reprogramming, customizing, or migrating software, even if such actions modify or alter the way in which ESI is maintained, stored, or viewed, provided the integrity of the original ESI is reasonably maintained.

## III.    IDENTIFICATION OF SOURCES OF POTENTIALLY RELEVANT INFORMATION

On April 29, 2022, the Parties shall exchange a list of the topics of discovery, which are viable and related to the claims in the case ("Discovery Topics"). On or before May 13, 2022, the parties shall disclose sources of documents and ESI that may reasonably be relevant to each Discovery Topic identified by the other party. These disclosures will include identification of:

- The party's email system(s).
- Any electronic communication or storage systems, or other locations, likely to contain information relevant to the Discovery Topics, including shared drives, network folders, document management systems, and chat

> platforms, and the persons most knowledgeable about each of those systems or locations.

- Persons whose electronic or hard copy files are likely to contain information relevant to any Discovery Topic. This will include a description of the proposed custodians' job title and brief description of such person's responsibilities (including dates of employment by the applicable party).

- Any third party sources, including online or "cloud" accounts, likely to contain information relevant to any Discovery Topic.

- Any collections or repositories of hard copy documents likely to include relevant information.

## IV.   SOURCES OF INFORMATION THAT ARE NOT REASONABLY ACCESSIBLE

Discovery in this matter shall be conducted in accordance with Rule 26(b)(2)(B). The parties agree that the following ESI need not be preserved or produced:

- Slack, fragmented, or unallocated data on hard drives;

- Random Access Memory ("RAM") or other ephemeral data;

- System or executable files (i.e. exe, .dll); and

- Electronic documents from mobile devices (e.g., smart phones) provided that the party reasonably believes – based on it standard practices – that the potentially relevant documents contained on such a device is duplicative of other sources (e.g., email synchronized between a server and a smartphone or tablet).

## V.   PROCEDURES FOR RESPONDING TO DISCOVERY REQUESTS

Within 14 days of receiving any request for production pursuant to Rule 34 of the Federal Rules of Civil Procedure (or, for any requests for production served prior to the Court's entry of this Protocol as an Order, by May 20, 2022), the responding party shall inform the requesting party of the following proposed search parameters for collecting potentially responsive documents (the "Search Parameters"):

- The non-custodial sources that will be searched for responsive documents and ESI;

- The custodial sources that will be searched for responsive documents and ESI;

- The keyword searches that the party will use to identify and cull potentially responsive documents and ESI;

- Any time period restrictions the party will use to identify and cull potentially responsive documents and ESI.

Within 10 days of receiving the Search Parameters, the requesting party may request a meet and confer to discuss the Search Parameters. The parties shall negotiate in good faith and attempt to agree to Search Parameters. The parties will not approach the Court with disputes over Search Parameters until the parties have first attempted, in good faith, to resolve any disputes.

In performing keyword searches, the parties shall make reasonable efforts to OCR image files to make them searchable. The parties shall also evaluate for responsiveness any non-indexed files or items that fail during processing. Online access data such as temporary internet files, history, cache, cookies or logs need only be searched for requests specifically directed to such files.

Parties need not specify the particular request(s) to which a produced document is responsive, provided the production format specifications of this agreement are met.

Electronic searches of ESI identified as not reasonably accessible shall not be conducted until the initial electronic document search has been completed, and only if a requesting party has made a narrowly focused request for information expected to be found in not reasonably accessible sources, with some basis in fact supporting the request.

On-site inspections of electronic information system under Fed. R. Civ. P. 34(b) shall not be ordered absent good cause and demonstration of specific need.

## VI.     DOCUMENT AND ESI PRODUCTIONS

### A.     Timing and Delivery

Each party may produce documents and ESI on a rolling basis, unless otherwise agreed or ordered, with supplemental productions to occur regularly thereafter until complete. Unless a

different method of production is discussed and agreed upon, each producing party will establish a secure FTP or ShareFile site for the purpose of producing documents and ESI in this case. The parties will each provide usernames and passwords as reasonably requested to facilitate access to and downloads from these online production repositories. All productions will be containerized, and password protected. Documents will be deemed produced once they are uploaded to the FTP or ShareFile site and notification is sent via email to the other parties of their availability for download, with the corresponding password. If, upon agreement, documents are produced through any other mechanism, they will be deemed produced upon receipt by the receiving party.

**B.      Format for ESI**

The parties will produce ESI as single-page, 300 DPI or higher JPG images with JPG compression and a high quality setting as to not degrade the original image, with the exception of spreadsheet-type files, source code, audio, and video files, which shall be produced in native format.

JPGs shall be configured to show any and all text and images which would be visible to the reader using the native software that created the document. For example, JPGs of e-mail messages should include the BCC line. PowerPoint documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the JPG image. If an original document contains color, the document should be produced as single-page, 300 DPI or higher JPG images with JPG compression and a high quality setting as to not degrade the original image. Annotations, edit marks and comments should be visible and legible. The parties are under no further obligation to enhance an image beyond how it was kept in the usual course of business.

If a document is produced in native format, a single-page Bates-stamped image slip sheet stating the document has been produced in native format will also be provided. Each native file

should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the FILE_PATH field. To the extent that any party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

The Parties will utilize industry standard file exclusion, including the NIST list (www.nsrl.nist.gov) to remove system and other executable files from productions.

### C.      De-Duplication

Each party shall undertake reasonable efforts to apply standard Custodian-level deduplication to all electronic documents collected from a single custodian prior to production, and to apply global deduplication to their respective productions of electronic documents, provided they identify all associated custodians in the Custodian Other field, and any duplicate file path information in the appropriate metadata field of their load files, separated by semi-colons. When performing de-duplication, the parties shall use MD5 or SHA-1 hash values at the family level. In other words, in the case of emails, a parent email along with its associated attachments is considered a single document for purposes of deduplication, and attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and e-mail thread suppression is not acceptable. The parties will produce all relevant emails within a thread, including non-inclusive emails, barring any privilege issues. Should the Custodian Other metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

### D.       Metadata, Text and Organization of ESI Productions

All ESI will be produced with (a) a Concordance delimited load file(s) (.dat), and (b) an Opticon delimited cross-reference file(s) (.opt), showing document breaks, which links the JPG images and any native files to the Concordance-type database records. There should be a BEGDOC number in each Concordance .dat load file that corresponds with the name of each production JPG image in the .opt file. JPG images will be provided in a folder called "IMAGES" on the production media. All JPG images for a single document will be in one subfolder within the IMAGES folder, and the number of image files in any one subfolder will not exceed 1000. An ASCII delimited database load file will be produced with the corresponding ESI images. The database load file shall contain the metadata fields designated in Table 1, attached hereto, to the extent that such metadata is available and reasonably practicable to provide, not privileged, and the corresponding native fields are already populated. Metadata field information available from the native ESI source files will be extracted therefrom and will not be altered or modified from the original. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

All metadata and load files (.dat and .opt), for ESI and hard-copy document images will be provided in a folder called "DATA" on the production media, all natives files in a folder called "NATIVES," and all extracted text in folder called "TEXT.

All Concordance delimited text files shall meet the following specifications:

- The "comma" delimiter is "," (ASCII 020)
- The "quote" delimiter is "þ" (ASCII 254)
- The "new line" delimiter is "®" (ASCII 174)
- The first line must contain the column/field names
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8

Searchable text will be produced for all ESI, in a document-level, multi-page text file format, with a corresponding path reference appearing in the TEXTLINK field of the load file. If an electronic document does not have extractable text, then an industry-standard OCR process will be executed and OCR-rendered text, if available, will be provided in the multi-page text file instead. The filename of each text file will equal the production BEGDOC number of the corresponding page and have a .txt file extension. The text files will be provided in a folder called "TEXT" on the production media.

### E.    Embedded Objects

The parties agree to exclude embedded files within non-text message data (Microsoft Office documents, emails, etc.) from the production.

### F.    Compressed Files Types

Reasonable efforts shall be made such that compressed file types (*i.e.* .ZIP, .RAR, .CAB, .Z) get decompressed so that the lowest level document or file is extracted.

### G.    Family Relationships

Family relationships shall be maintained for all responsive records, unless a claim of privilege is being asserted. Families refer to connected records, such as an email (the "parent") with its corresponding attachments (the "children"). If family relationships are severed due to privilege, the producing party shall provide a privilege log including the name of the individual from whom the privileged document emanated, the name of the individual(s) to whom the allegedly privileged document was directed, the date the document was created, the title of the document or subject line of the document claimed to be privileged, if not privileged content itself, and the privilege claimed and its basis in law, in addition to the corresponding Group Identifier to identify the broken familial relationship from the privilege log. A Party need not produce

attachments to items included on a privilege log unless they are themselves responsive and not privileged.

The parties will take reasonable steps to produce non-privileged attachments to ESI contemporaneously and in sequential order. Thus, the producing party will take reasonable steps to ensure that all items attached to an email, are produced contemporaneously and sequentially, immediately after the parent email. Attachments should be numbered consecutively following each parent file.

### H.     Structured Data

To the extent party determines that the production of information contained in a structured database is appropriate, that producing party may determine the sets of data or fields to be included in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the receiving party, in lieu of producing the database system itself. The receiving party may make reasonable requests for additional information from a structured database, including to explain the database schema, codes, abbreviations, or different report formats or to request additional responsive data from identified fields. The parties further agree to meet and confer as necessary regarding the format of production for information contained structured databases or other relational or dynamic repositories, or in non-standard format not considered herein. To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production. Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

### I.     Cellphone Data

Text or chat message data retrieved from a cellphone, application, or the cloud shall be collected and then parsed by 24 hour increments. Multimedia files, such as images, GIFs, videos,

audio files, etc. that are sent via text message or chat shall be produced as an attachment, linked to its parent record through an attachment ID. Parties shall meet and confer if any cellphones or chat data during the relevant time period has been lost due to changes in devices or destruction.

### J.      Encryption

Native ESI that is password protected, encrypted or compressed (as in the case of zip folders) in the usual course of business shall, where reasonably practicable, be unencrypted or have password protection removed, and be uncompressed, in order to enable review and production of the underlying documents, except where such measures are necessary to comply with data security laws or to protect the privacy or security of the data.

### K.      Redactions

For records that contain redactions, the OCR text shall be provided in lieu of the document's extracted text, the redactions shall be performed such that the words "REDACTED," "CONFIDENTIAL" or other text are in the OCR searchable text, replacing the redacted text, and the word "REDACTED," "CONFIDENTIAL" or other text appears clearly on the associated document image (e.g., black text in white box) over each specific portion of the document that has been redacted. Each line in an email header shall appear on a separate line in the extracted text/OCR. Any metadata fields redacted from a document shall be replaced with the word "Redacted," in the corresponding load file. If documents that the parties have agreed to produce in native format need to be redacted, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

### L.      Native Files

Responsive documents and ESI that are unable to be imaged shall be produced natively with a placeholder image referencing the native file's bates number, that will correspond with the native file's file name, and containing a legend such as "This document produced in native file

format." These placeholder images shall be endorsed with a sequential Bates number and the produced native file named to match the Bates Number of this placeholder image, plus any appropriate Confidentiality designation in the file name, e.g., BATES000001 – CONFIDENTIAL.xls, with the same file extension as the original native. The load file will link the native file with the Bates stamped placeholder and all relevant metadata as listed in Table I. Such responsive documents to be produced natively include video files, audio files, database files, CAD drawings, Excel spreadsheets, and other files that the parties may agree to produce natively through the meet and confer process. In the event a party requests native copies of other documents, they shall be provided upon good cause shown. In particular, the parties are generally entitled to request and receive native files for produced ESI where visibility, usability or functionality is impaired by the JPG and extracted text format specified herein. If a dispute arises over the production of files in native format, the parties shall promptly meet and confer.

**M.     Time Zone**

The parties will process and produce ESI using the Eastern time zone.

**N.     Format for Hard Copy Documents**

Hard copy documents should be scanned as single-page, Group IV, 300 or higher DPI JPG images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).. The image shall be embossed with a Bates number for each image (with the document boundaries identified in the corresponding load file), and an appropriate confidentiality designation. Scans of hard-copy documents shall be provided with load files comprised of: (a) a Concordance Delimited text file (.dat), and (b) an Opticon delimited cross-reference file(s) (.opt), showing document breaks, which links the JPG images to the Concordance-type database records. There should be a BEGDOC number in each Concordance .dat load file that corresponds with the name of each production JPG image in the .opt file. JPG images will be provided in a folder called "IMAGES"

on the production media. All JPG images for a single document will be in one subfolder within the IMAGES folder, and the number of image files in any one subfolder will not exceed 1000.

Reasonable efforts shall be used to scan the pages at or near their original size and so that the image appears straight and not skewed. Physically oversized originals, however, may appear reduced (unless full-size images/copies are reasonably requested). In addition, reducing image size may be necessary to display Bates Numbers and Confidentiality Designations without obscuring text.

All hard-copy documents that have been converted to images will be processed through an Optical Character Recognition ("OCR") process. An ASCII delimited database load file will be produced with the corresponding hard-copy document image files. the load file shall contain the fields designated below. The OCR text for hard-copy documents will be provided in separate .TXT files organized at the document level and named with the corresponding image file name. The path to the OCR text file will be included in the load file. The filename of each text file will equal the production BEGDOC number of the corresponding page and have a .txt file extension. The text files will be provided in a folder called "TEXT" on the production media. The database load file should contain the following fields: "BATES BEG," "BATES END," "PAGES," "VOLUME," "CUSTODIAN," and "OCR." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI or higher JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality over process

speed and shall not include bates numbers, unless redactions have been applied. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

Hard-copy documents shall be produced with the following fields:

| Field Name | Description |
|---|---|
| Custodians | The names of any Custodians of the document |
| Source | Source data sufficient to identify the physical location of the original document |
| BegDoc | Bates number on first page of each document |
| EndDoc | Bates number on last page of each document |
| Full Text Path | Path to text file on delivery media |
| Designation | Confidentiality designation |
| Redacted | Whether or not the document contains any redactions ("Y" if yes; "N" if not) |

## VII.   DATA SECURITY

The parties agree to take reasonable steps to prevent the unauthorized access, use or disclosure of the documents and ESI received from any party in this litigation, including to prevent any use of documents and ESI produced in this action for any purpose other than in connection with the prosecution or defense of this action. Each receiving party shall treat the other parties' documents with the same standard of care with which the receiving party treats and protects its own confidential and proprietary documents or pursuant the standard set forth in the parties' protective order, whichever is greater.

## VIII.   DOCUMENT RETENTION POLICIES

The parties will disclose any document retention policies or standard practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits) likely to impact the existence or accessibility of information relevant to any Discovery Topic. The parties will also disclose the name of the individual designated by each as being the most knowledgeable regarding that party's document retention policies ("the Retention Coordinator"), as well as a general description of the party's document retention policies for the sources identified above.

## IX.     PRIVILEGE LOGS

For any documents and ESI withheld based on the claim of privilege, the parties agree to provide logs that expressly make the claim of privilege and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. For each document or ESI withheld on the basis of a claim of privilege, the parties agree to provide the following metadata fields (if available) to facilitate the determination for the basis of privileged claimed, along with identifying the particular privilege invoked and sufficient factual information about the contents of the document for other parties to evaluate the merits of the privilege claim, including the identification of relevant attorneys or law firms involved:

- SORT NUMBER
- CUSTODIAN(S)
- BEGDOC (redacted docs)
- EMAIL_DATESENT
- EMAIL_TIMESENT
- LASTMODDATE
- LASTMODTIME
- CREATEDDATE
- CREATEDTIME
- AUTHOR
- EMAIL_FROM
- EMAIL_TO
- EMAIL_CC
- EMAIL_BCC

The Parties are not required to log or produce non-responsive attachments to responsive documents or ESI on a privilege log, but must log or produce the parent emails transmitting any responsive attachments on a log.

Notwithstanding the above, the Parties shall not be required to log or produce metadata fields for any privileged or work product communications or documents exchanged with, created, generated, or written by or at the direction of their inside or outside counsel to the extent such

communications or documents were created on or after October 4, 2021 (the date the initial complaint was filed), in furtherance of the investigation, prosecution, or defense of this action.

## X.      AMENDMENTS AND DISPUTES

Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents. The parties agree to negotiate in good faith any issues, which arise concerning the terms of this agreement, or any other issues that arise in the course of document productions during the litigation. Parties shall meet and confer regarding requests to seek additional documents outside the scope of this agreement and/or to seek to revise the terms of this agreement if an issue arises regarding the economic value of the production and/or the technical ability to review and/or produce pursuant to this agreement. If the parties are unable to agree, need further clarification on any issue covered herein, or require modification of this stipulation, any party may seek appropriate relief from the Court (after meeting and conferring in good faith).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP          BAYARD, P.A.

*/s/ Jeremy A. Tigan*                         */s/ Stephen B. Brauerman*
_____              _____
Jack B. Blumenfeld (#1014)|                   Stephen B. Brauerman (#4952)
Jeremy A. Tigan (#5239)                       Ronald P. Golden III (#6254)
1201 North Market Street                      600 N. King Street, Suite 400
P.O. Box 1347                                 Wilmington, Delaware 19801
Wilmington, DE 19899                          (302) 655-5000
(302) 658-9200                                sbrauerman@bayardlaw.com
jblumenfeld@morrisnichols.com                 rgolden@bayardlaw.com
jtigan@morrisnichols.com

                                              *Attorneys for Defendants Akoustis*
*Attorneys for Plaintiff Qorvo, Inc.*         *Technologies, Inc. and Akoustis, Inc.*

April 27, 2022

IT IS SO ORDERED, this 27th of April, 2022.


/s/ Jon P. McCalla
———————————————————
PRESIDING UNITED STATES JUDGE

**TABLE I – ESI Metadata Fields**

| FIELD NAME | DESCRIPTION |
|---|---|
| BegDoc | Beginning bates number of document |
| Bates EndDoc | Ending bates number of document |
| BegAttach | Beginning bates number of attachment |
| EndAttach | Ending bates number of attachment |
| Media_Volume | Production volume of the media or deliverable |
| Author | Author of document |
| Custodian | Individual who had custody of the document (LastName, FirstName) |
| Custodian Other | If more than one custodian of a hash-equivalent duplicate, list all custodians who had custody of the document, separated by semicolon |
| Comments | To indicate with a "Y" or "N" whether Microsoft documents are identified as having comments (e.g., ppt speaker notes, cell comments, annotations). |
| CreatedDate | Date document was created (mm/dd/yyyy) |
| CreatedTime | Time document was created |
| LastModDate | Date the document was last modified (mm/dd/yyyy) |
| LastModTime | Time the document was last modified |
| ReceivedDate | Date email was received (mm/dd/yyyy) |
| ReceivedTime | Time email was received |
| SentDate | Date email was sent (mm/dd/yyyy) |
| SentTime | Time email was sent |
| FileName | File name |
| FileExt | File extension of document (.msg, .docx, .xlsx, etc.) |
| Email_From | Sender of email |
| Email_To | Recipient of email |
| Email_CC | Copied recipients of email |
| Email_BCC | Blind-copied recipients of email |
| Email_Subject | Subject line of email |
| SMS_Recipients | Participants on a text message or chat message |
| TextLink | Relative file path of text file |
| MD5 Hash | MD5 Hash Value |
| NativeLink | Relative file path of native file |
| FolderPath | Original file path where file was kept (by the custodian) |
| PageCount | Number of pages per document |
| Redacted | Whether the document contains redactions or not. ("Y" if yes; "N" if not) |
| DateTimeRead | Populated for text message and/or chat data that identifies the date and time values for when the message was read |
| Unread | Yes/No value populated for text message data to identify whether the message had been read |

| Deleted | Yes/No value populated for text messages and/or chat data that identifies messages that have been deleted by the user |
|---------|-----------------------------------------------------------------------------------------------------------------------|
| ThreadID | Conversation threading information populated for text/chat messages that are replies within the same conversation |
| GroupIdentifier | Attachment information populated for text message data to identify multimedia attachments sent within a text conversation |
| Designation | If the document is designated as confidential, the designation should be listed here. |
| FileSize | File size of the native document |
| SortDateTime | Date field used to pair attachments to parent documents for purposes of chronological sorting, which may include two subfields for FAMDATE and FAMTIME. |