IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., )<br>)<br>    Plaintiff, )<br>v. )<br>)<br>AKOUSTIS TECHNOLOGIES, INC. and )<br>AKOUSTIS, INC. )<br>)<br>    Defendants. ) | Case No. 1:21-cv-01417-JPM<br><br>JURY TRAL DEMANDED |

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

Before the Court is Defendants Akoustis Technologies, Inc. and Akoustis Inc.'s ("Akoustis") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on November 24, 2021. (ECF No. 10.) Also before the Court is Defendants' Motion to Dismiss Count V of Plaintiff Qorvo, Inc.'s First Amended Complaint, filed on March 11, 2022. (ECF No. 33.) For the following reasons, the Court **DENIES** both Motions.

**I.   BACKGROUND**

**A.   Factual Background**

Plaintiff Qorvo, Inc. ("Qorvo") is a Delaware corporation with its principal place of business in Greensboro, North Carolina. (First Amended Complaint ("FAC"), ECF No. 28 ¶ 2.) Defendants are Delaware corporations with principal places of business in Huntersville, North Carolina. (Id. ¶¶ 3–4.) The Parties are competitors in the BAW (bulk acoustic wave) filter market. (Id. ¶ 9.) BAW filters "are a vital component in advanced frequency filtering solutions for wireless devices, as well as the world's most advanced radar and communications systems." (Id. ¶ 15.) "[W]ireless devices communicate in particularized frequency bands in the electromagnetic

1

spectrum that are assigned by government entities to prevent interferences between different devices and service providers," and as a result, "it is important to filter out signals, through BAW filters, from those frequencies that are irrelevant to a particular device (i.e. communications in frequency bands above or below that assigned to the device) to improve communications efficacy." (Id.)

Qorvo alleges direct infringement, induced infringement, and willful infringement of U.S. Patent No. 7,522,018 (the "'018 Patent") and U.S. Patent No. 9,735,755 (the "'755 Patent"). (Id. ¶¶ 76–100.) Qorvo also alleges false advertising claims under 15 U.S.C. § 1125(a) and false patent marking claims under 35 U.S.C. § 292. (Id. ¶¶ 101–119.) Lastly, Qorvo alleges that Akoustis engaged in unfair and deceptive trade practices prohibited in North Carolina by N.C.G.S. § 75-1. (Id. ¶ 121.)

### B.     Procedural Background

On October 4, 2021, Qorvo filed its original Complaint. (ECF No. 1.) Akoustis then filed its first Motion to Dismiss on November 24, 2021, with an Opening Brief in Support. (ECF Nos. 10–11.) Qorvo filed a Response in Opposition on December 8, 2021. (ECF No. 13.) Akoustis filed a Reply on December 15, 2021. (ECF No. 15.)

After the Video Scheduling Conference, in which the Court indicated that Qorvo's unfair and deceptive trade practice claims required greater specificity (see ECF No. 23 at PageID 212 n.1), Qorvo filed its First Amended Complaint on February 18, 2022. (ECF No. 28.) Akoustis filed a second Motion to Dismiss to address Qorvo's additions to Count V (the unfair and deceptive trade practices claim) on March 11, 2022, as well as an Opening Brief in Support. (ECF Nos. 33–34.) Qorvo filed a Response in Opposition on March 25, 2022. (ECF No. 41.) Akoustis filed a Reply on April 1, 2022. (ECF No. 47.)

Akoustis filed a Request for Oral Argument on April 1, 2022. (ECF No. 50.) The Court scheduled a hearing for May 11, 2022 but indicated it may find oral argument unnecessary to resolve the Motions. (ECF No. 52.) Having reviewed the full record, the Court finds the Motions can be resolved without a hearing.

## II.   LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555). A complainant must plead facts sufficient to show that a claim has "substantive plausibility." Id. at 247. That plausibility must be found on the face of the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.   ANALYSIS

Defendants contend that Qorvo has failed to allege willful and induced infringement of both patents because it "has not adequately pleaded knowledge of patents and infringement, or notice marking of the asserted patents, or intent to infringe for induced infringement." (ECF No. 11 at PageID 90.) Defendants also contend that Qorvo has not adequately pleaded "the alleged false or misleading statements or bad faith as to Count III; deceptive intent or falsity of patent marking as to Count IV and an unfair or deceptive act as to Count V." (Id.) In its second Motion to Dismiss, Akoustis contends that Qorvo's additional allegations as to Count V still fail to establish all the required elements for a Section 75-1 claim.[1] (ECF No. 34 at PageID 378.)

---

[1] Because Akoustis does not reiterate or adopt by reference its arguments as to the other Counts in its Second Motion to Dismiss, Qorvo contends that these arguments have now been waived. (ECF

3

A.      **Induced and Willful Infringement**

Akoustis contends that "Qorvo's Complaint fails to sufficiently allege pre-suit knowledge of the Asserted Patents and infringement by Akoustis." (ECF No. 11 at PageID 107.) Akoustis asserts that "Qorvo does not allege factual circumstances in which the Asserted Patents were called to the attention of any of the senior executives or the unnamed ex-Qorvo BAW employees, other than to say that some of them worked in the same department as the inventors." (Id. at PageID 108.) Defendants contend that "[e]ven considering the totality of the circumstances here, Qorvo's allegations cannot support inferences of either pre-suit knowledge of the patents-in-suit or pre-suit knowledge of infringement. Qorvo's generalized allegations of knowledge are comparable to those previously rejected in this District and others." (Id.) (citing MONEC Holding AG v. Motorola Mobility, Inc., 897 F. Supp. 2d 225, 232 (D. Del. 2012); Radware, Ltd. v. A10 Networks, Inc., No. C-13-02021-RMW, 2013 WL 5373305, at *2–3 (N.D. Cal. Sept. 24, 2013).)

Akoustis further contends that "[l]ikewise, Qorvo fails to allege sufficient facts that Akoustis intended customers to infringe the Asserted Patents or knew that customers' use of the BAW filters constituted infringement." (Id.) Akoustis contends that "[w]hile Qorvo makes the conclusory allegation that 'Akoustis induces infringement' by publishing instructions instructing third parties on how to use the Accused Products (see e.g., D.I. 1 ¶ 73), nowhere in the Complaint does Qorvo set forth any factual support to establish the requisite 'intent.'" (ECF No. 11 at PageID 108–09.) (citing MONEC Holding AG, 897 F. Supp. 2d at 234; Avocet Sport Tech., Inc. v. Garmin Int'l, Inc., No. C-11-04049 JW, 2012 WL 2343163, at *4 (N.D. Cal. June 5, 2012).)[2]

---

No. 41 at PageID 481.) This contention, however, is foreclosed by the language in the Scheduling Order which indicates that no further amendment or briefing was required for those issues in Defendants' Original Motion to Dismiss that were not modified in the First Amended Complaint. (See ECF No. 23 at PageID 213 n.1.) The Court will address Akoustis's arguments on their merits.
[2] Akoustis also contends that Qorvo cannot seek pre-suit damages because it did not "plead any facts detailing the marking of its own products with the Asserted Patents or alternatively[,] facts from which the Court could conclude that there is no need to mark." (ECF No. 11 at PageID 109.)

In response, Qorvo contends that "[t]he factual allegation that Akoustis hired ex-Qorvo employees with knowledge of the patents is sufficient to plausibly allege Akoustis had pre-suit knowledge." (ECF No. 13 at PageID 162.) Qorvo contends that "[n]either M[ONEC] nor Radware address comparable allegations":

> In Radware, the court held there was no plausible basis to infer that an ex-employee informed the management of his new company of a patent that "had not yet issued at the time [the employee] transferred." 2013 WL 5373305, at *3. By contrast, the Complaint here alleges that former Qorvo employees knew of the patents as part of their responsibilities at Qorvo and then transferred that knowledge to Akoustis. D.I. 1, ¶ 50. Additionally, the Complaint here alleges that Akoustis management knew of the patents. Id., ¶ 51. M[ONEC] is even further afield—the court there held that pre-suit knowledge cannot be inferred merely because the defendant was a competitor in the same market as the plaintiff. 897 F. Supp. 2d at 232. Qorvo does not rely on any such inference in this case.

(ECF No. 13 at PageID 163.)

Qorvo also contends that "the Complaint alleges that Akoustis provides customers with instructions and diagrams that encourage customers to use the infringing products," and that "[t]his Court has repeatedly held that such allegations are sufficient to show intent." (Id.) (citing Express Mobile, Inc. v. Squarespace, Inc., No. 10-cv-1163-RGA, 2021 WL 3772040, at *3 (D. Del. Aug. 25, 2021).)

On Reply, Defendants contend that "the fact Akoustis hired ex-Qorvo employees over many years is not enough to infer knowledge as to the two Asserted Patents." (ECF No. 15 at PageID 183.) Akoustis contends that "[e]ven if this Court finds that 'instructions and diagrams' and 'encourage to use' meet the bare minimum for pleading inducement . . . ., Qorvo's own authority confirms that adequate pleading of pre-suit knowledge of the patent is still required to survive Akoustis'[s] motion to dismiss." (Id.) (citing Express Mobile, 2021 WL 3772040).)

---

Qorvo states, in its Response, that it "is not seeking an award of past damages on its infringement claims at this time," and thus the Parties appear to be in agreement. (See ECF No. 13 at PageID 164.)

5

Knowledge of the patents-in-suit is required for claims of induced infringement and willful infringement. See Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 765 (2011); WCM Indus., Inc. v. IPS Corp., 721 F. App'x 959, 970 (Fed. Cir. 2018). Qorvo alleges knowledge of the patents-in-suit via knowledge of Qorvo's patent portfolio that ex-Qorvo executives who now work at Akoustis would have. (See, e.g., ECF No. 28 ¶¶ 38–39, 83, 96.) In Radware, the ex-employee was not executive or management-level, as the complaint alleged that he told defendant's management about the existence of the patents-in-suit, and additionally, one of the patents in suit had not issued at the time the ex-employee left to work for the defendant. 2013 WL 5373305, at *3. Thus, unlike in MONEC or Radware, there are plausible factual allegations that Akoustis had knowledge of the patents-in-suit because of the knowledge of executive employees who transferred from Qorvo to Akoustis.

"Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." Jackson v. Seaspine Holdings Corp., No. 20-1784-RGA, 2022 WL 610703, at *5 (D. Del. Feb. 14, 2022) (citing Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936 (2005)). Plaintiff's FAC alleges that Akoustis induced infringement through instructions and diagrams published on its website, which is sufficient to show intent to induce infringement. (ECF No. 28 ¶¶ 82, 95.)

Because Plaintiff's FAC adequately pleads the knowledge and intent required, Akoustis's Motion is **DENIED** as to willful and induced infringement.

### B. False Advertising

Qorvo's FAC alleges that "Akoustis describes its BAW filters as being 'single crystal' construction, which misrepresents the nature, characteristics, and/or qualities of Akoustis'[s]

6

BAW filters and constitutes false advertising in violation of 15 U.S.C. § 1125(a)." (ECF No. 28 ¶ 102.)

Akoustis contends that "Qorvo's pleading fails to identify the false and misleading statements at issue" because "Qorvo simply alleges that Akoustis'[s] 'commercial advertising or promotion, including via Akoustis'[s] website, presentations, and press releases in its SEC filings' are allegedly false or misleading regarding current Akoustis products." (ECF No. 11 at PageID 106.) Akoustis contends that "[n]othing in the Complaint identifies any 'single crystal' reference by Akoustis as to any current BAW filter products." (Id.) Akoustis further contends that "[e]ven if Qorvo amended its allegations to clearly identify the alleged false/misleading statements, Qorvo cannot simply assume that Akoustis'[s] sophisticated audience will be misled by any such statement." (Id. at PageID 106–07.) Akoustis also contends that "before a patentee may be held liable for unfair competition under the Lanham Act for marketplace statements about its patent, it must have made the statements in bad faith." (Id. at PageID 107.) (citing Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1353–54 (Fed. Cir. 1999); Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002).)

In response, Qorvo contends that "[t]he Complaint directly and repeatedly alleges that Akoustis falsely advertised its products as 'single crystal' when those products are, in fact, polycrystalline." (ECF No. 13 at PageID 160.) Qorvo contends that these allegations include specific examples of those false advertisements. (Id.) Qorvo further contends that "because Akoustis's statements are literally false, there is no requirement to prove customers were actually deceived." (Id. at PageID 161.) (citing Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002).) Qorvo also contends that "even if the sophistication of Akoustis's customers were relevant, that would be an issue to address in

7

discovery, not on a motion to dismiss." (Id.) (citing 10x Genomics, Inc. v. Celsee, Inc., No. 19-cv-862, 2019 WL 5595666, at *8 (D. Del. Oct. 30, 2019); Sandoz Pharms. v. Richardson-Vicks, 902 F.2d 222, 229 (3d Cir. 1990).) Finally, Qorvo contends that "Akoustis's false statements here are not statements 'regarding its patent rights,'" so "the holding in Zenith has no application here." (Id. at PageID 162.)

On Reply, Akoustis contends that "[t]o establish this type of derivative Lanham Act claim, a plaintiff has to first set forth a viable false marking claim." (ECF No. 15 at PageID 181.) Akoustis also contends that "[t]he webpage referenced in paragraph 61, taken as a whole, does not contend that the current product line consists of single crystal filters" and that "Qorvo does not explain how that statement is false other than to baldly assert that Akoustis'[s] current product line is not single crystal." (Id. at PageID 182.)

Any person who uses a "false or misleading description of fact, or false or misleading representation of fact" that "is likely to cause confusion, or to cause mistake" or "in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities" of that person's consumer goods "shall be liable in a civil action by any person who believes" that they have been damaged by the misrepresentation. 15 U.S.C. § 1125(a). In the FAC, Qorvo provides specific examples of Akoustis describing its BAW filters as "single crystal." (See ECF No. 28 ¶¶ 70–72.) Qorvo alleges that the reason this statement is false is because Akoustis's filters are polycrystalline, alleges this statement deceives target customers, and also alleges that Akoustis knows the filters are polycrystalline. (See id. ¶¶ 104–06.) Qorvo further alleges how these misrepresentations harm its own monetary interests. (Id. ¶¶ 108, 111.) These pleadings plausibly state a claim for false advertising under the Lanham Act. Further, as the Court has not dismissed Qorvo's false marking claims (as discussed below), Akoustis's arguments about this being a derivative Lanham Act claim

are unavailing, and as Qorvo points out, the sophistication of Akoustis's customers requires a factual determination.  Akoustis's Motion to Dismiss as to false advertising is **DENIED**.

      **C.**      **False Marking**

Qorvo's FAC states that "Akoustis has marked each of the Accused Products with U.S. Patent No. 10,256,786 [('the '786 Patent')] on datasheets available on its website," and that the independent claims of that patent "recite piezoelectric layers."  (Id. ¶¶ 115–16.)  Qorvo alleges that "[b]ased on the disclosure of U.S. Patent No. 10,256,786 and Akoustis'[s] statements, the recited piezoelectric layers are single-crystal."  (Id. ¶ 116.)  Qorvo further alleges that Akoustis "knew or should have known that Akoustis'[s] BAW filter products are polycrystalline" and "knew or should have known that U.S. Patent No. 10,256,786 covered only single-crystal piezoelectric layers," so as a result, "Akoustis falsely marketed the Accused Products with purpose or intent to deceive the public . . . in violation of 35 U.S.C. § 292."  (Id. ¶¶ 117–18.)

Akoustis contends that "Qorvo fails to allege, and cannot allege, a single '786 Patent claim that requires a 'single-crystal.'  To the contrary, independent claim 1 does not include the term 'single-crystal' at all."  (ECF No. 11 at PageID 104.)  Akoustis further contends that "[e]ven if Qorvo could sufficiently allege that Akoustis marked an unpatented article, the allegations required for deceptive intent are particularly high in a false marking case," and "Qorvo's allegations entirely fail to meet this standard."  (Id.) (citing Pequignot v. Solo Cup Co., 608 F.3d 1356, 1363 (Fed. Cir. 2010); Artskills, Inc. v. Royal Consumer Prods., LLC, 3:17-cv-1552 (VAB), 2018 U.S. Dist. LEXIS 121226, at *12 (D. Conn. July 20, 2018).)  Akoustis contends that "[t]o successfully allege a claim for false patent marking, a plaintiff must identify specific facts to indicate knowledge of the deception."  (Id. at PageID 105.)  Finally, Akoustis contends that "courts have held that where a patentee's legal position, as to its own patents, is sufficiently plausible, the false marking claim cannot survive as a matter of law," so "Akoustis'[s] contention that polycrystalline products are

covered by at least one claim means Qorvo's false marking claim should be dismissed." (Id.) (citing Kemin Foods v. Pigmentos Vegetales Del Centro, 464 F.3d 1339, 1355 (Fed. Cir. 2006); Max Impact, LLC v. Sherwood Grp., Inc., No. 09 Civ. 02, 2011 WL 507600, at *3 (S.D.N.Y. Feb. 14, 2011).)

In response, Qorvo contends that "Akoustis's view of the disclosure and interpretation of the claims of the '786 patent [is] simply wrong." (ECF No. 13 at PageID 156.) Qorvo contends that "[h]ere, the specification makes clear that the '786 patent is directed to single crystal 'piezoelectric layers,'" and that "[t]here is no mention in the '786 patent of any different construction for the 'piezoelectric layer,' such as a polycrystalline structure." (Id. at PageID 157.) Qorvo contends that "[t]o the extent Akoustis disagrees with Qorvo's interpretation that the 'piezoelectric layer' of the '786 patent is single crystal, that is also no basis to dismiss the false marking claim" because "Qorvo's allegations are to be reviewed in the light most favorable to Qorvo." (Id. at PageID 158.) (citing Battenfeld Techs., Inc. v. Birchwood Labs., Inc., No. 11-cv-883, 2011 U.S. Dist. LEXIS 158195, at *19–20 (D. Minn. Sept. 15, 2011).) Qorvo further contends that the Complaint adequately pleads intent to deceive because "Akoustis has regularly portrayed its products as 'single crystal' and used this feature to differentiate them from polycrystalline products" and that it "knew the construction of its own products," so therefore Akoustis "knew or should have known that . . . it was improperly marking its products as practicing the 'single crystal' technology of the '786 patent in an effort to gain market advantage." (Id. at PageID 159.)

In reply, Akoustis asserts that "Qorvo's proffered claim construction is not facially reasonable, and its argued disclaimer is unsupported in the Complaint." (ECF No. 15 at PageID 181.) Akoustis also reiterates that Qorvo's allegations of false advertising "fail to satisfy the Rule 9 standard" and that "Akoustis'[s] position is consistent with the plain language of the claims."

10

(Id.)

"Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public" is liable for up to $500 for each offense. 35 U.S.C. § 292(a). "[I]n order to determine if an article is 'unpatented' for purposes of section 292, it must be first determined whether the claims of a patent cover the article in question." Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005). "To make that determination, the claim in question must be interpreted to ascertain its correct scope, and then it must be ascertained if the claim reads on the article in question." Id. "[I]n order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e. covered by a patent)." Id. at 1352–53. As made clear from the Parties' arguments and controlling case law, the Court will need to engage in claim construction, and then the finder of fact must determine whether any claim of the '786 Patent reads on the Accused Products. See id. at 1352.

As for deceptive intent, the FAC alleges Akoustis "knew or should have known" both that the Accused Products are polycrystalline and that the '786 Patent claims only cover single-crystal piezoelectric layers. (ECF No. 28 ¶ 117.) The FAC further alleges that "Akoustis falsely marked the Accused Products with purpose or intent to deceive the public . . . to support a claim that the products are innovative and result in superior performance." (Id. ¶ 118.) As a result, Qorvo has sufficiently alleged both knowledge that the products were falsely marked and that the false marking was done for a deceptive purpose. While there is a higher standard of proof for proving that deceptive intent, the Court will not engage in fact-finding during a Motion to Dismiss, and thus, Akoustis's argument about the higher standard of proof is irrelevant here. See Pequignot,

11

608 F.3d at 1363 ("The bar for *proving* deceptive intent here is particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine.") ("Thus, mere knowledge that a marking is false is insufficient to *prove* intent if Solo can *prove* that it did not consciously desire the result that the public be deceived.") (emphasis added).  Because Qorvo has alleged facts to meet each element of the statute, Akoustis's Motion to Dismiss is **DENIED** as to the false marking claims.

   D.  **Unfair and Deceptive Trade Practices**

Akoustis contends that "Qorvo's Section 75-1 claim must be dismissed because, when its conclusory and improper information-and-belief allegations are properly disregarded, Qorvo fails to allege any unfair or deceptive act or practice by Akoustis." (ECF No. 34 at PageID 378.) Akoustis contends that "[b]ecause employee mobility itself is neither deceptive nor unfair, Qorvo cannot state a claim under Section 75-1 by alleging merely that ex-Qorvo employees with access to allegedly confidential information changed jobs.  Qorvo must set forth some factual allegation of an unfair or deceptive act or practice by Akoustis itself." (Id. at PageID 379.)

Under North Carolina law, "[i]n order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001) (citing Spartan Leasing Inc. v. Pollard, 101 N.C. App. 450, 461 (1991)).  "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and "a practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." Marshall v. Miller, 302 N.C. 539, 548 (1981).

Akoustis contends that Qorvo's allegations that Akoustis hired ex-Qorvo employees for their confidential information "is boilerplate, as the same allegation is made in the same form with

12

respect to every ex-Qorvo employee allegedly hired by Akoustis." (ECF No. 34 at PageID 380.) Akoustis contends that "Qorvo alleges that its former employees were hired by Akoustis and had access to various broad categories of Qorvo BAW Proprietary Information, but no other supporting factual allegations are made about Akoustis beyond the fact of the hiring itself." (Id.) Akoustis also contends that Qorvo's confidential information is too generic to support the claim: "Although Qorvo does not even attempt to allege a trade secret claim, its allegations of misappropriation of confidential information must still set forth facts sufficient to describe the information at issue and show that such information derives independent value from its confidentiality, such that harm would be caused by its disclosure." (Id. at PageID 381–82.) (citing Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989).) Akoustis also contends that Qorvo's inevitable disclosure contention does not meet the requirements for a claim under section 75-1 and that additionally, "Qorvo's conduct is inconsistent with its allegation of inevitable disclosure." (Id. at PageID 383–84.)

In response, Qorvo contends that "Akoustis raided Qorvo employees to obtain confidential information to shortcut the time and investment normally required to enter the market for BAW filters. This scheme squarely qualifies as unfair competition under North Carolina law." (ECF No. 41 at PageID 487.) (citing Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC, 620 S.E.2d 222, 230–31 (N.C. Ct. App. 2005).) Qorvo contends that "[t]he FAC identifies specific Qorvo employees Akoustis has targeted (the 'who'), specific confidential information Akoustis has sought from those employees (the 'what'), the dates on which Akoustis recruited those employees (the 'when'), and even an example of the way Akoustis has solicited confidential information from Qorvo employees (the 'how')." (Id. at PageID 488.) Qorvo also contends that it "does not allege inevitable disclosure to fill gaps necessary to its claims. Moreover, there is no prohibition on

13

alleging that, as one part of its scheme, Akoustis expects ex-Qorvo employees to inevitably disclose confidential information." (Id. at PageID 491.)

In reply, Akoustis contends that "Qorvo does not allege any act of misappropriation of specifically identified confidential information; instead the *only* factual allegations are that these employees had access to Qorvo's broadly defined Qorvo BAW Proprietary Information (including, but not limited to, broad subcategories of such information) and were hired by Akoustis." (ECF No. 47 at PageID 525.)

In the FAC, Qorvo alleges that "Akoustis recruited ex-Qorvo employees for positions with largely overlapping responsibilities to their positions at Qorvo, focusing on employees with the specialized knowledge of Qorvo's confidential and proprietary information, including the Qorvo BAW Proprietary Information, that Akoustis needed at the particular stage of its development." (ECF No. 28 ¶ 47.) Qorvo defines the Qorvo BAW Proprietary Information as follows:

> Examples of Qorvo's confidential and proprietary information include, but are not limited to, technical expertise and know-how, such as BAW filter designs, specifications, development methods and techniques, material specifications, design tolerances, packaging, quality assurance and testing, manufacturing specifications, methods, and techniques; and business information, such as future product development and refinement plans, pricing information, cost information, marketing and sales strategies, internal organization structures, employee information, and capabilities, as well as supplier lists, customer lists, contracts, demands, desires, and requirements related to the BAW filters (together referred to herein as the "Qorvo BAW Proprietary Information").

(Id. ¶ 20.) Qorvo alleges that "Akoustis has poached over twenty key employees" since its formation in 2014 and lists twelve different job titles that those employees have had. (See id. ¶¶ 46, 48.) Qorvo alleges that "[o]n information and belief, the Ex-Qorvo BAW Employees were hired for the specific purpose of using their knowledge of Qorvo BAW Proprietary Information to permit Akoustis to compete directly against Qorvo for customers and market share." (Id. ¶ 53.) Qorvo then provides examples of specific employees and the Qorvo BAW Proprietary Information

to which they likely had access. (Id. ¶¶ 56–63.)

The North Carolina Supreme Court has held that an allegation "that the Metropolitan defendants had 'maliciously, deliberately, secretly, wantonly, recklessly, and unlawfully solicit[ed] and subsequently hir[ed] Plaintiffs' employees, Bogosavac and Divljak, and misappropriat[ed] Plaintiffs' trade secrets for their own benefit'" was insufficient to state a valid claim for unfair and deceptive acts under N.C.G.S. § 75-1. Krawiec v. Manly, 370 N.C. 602, 613 (2018). In particular, because the claim under N.C.G.S. § 75-1 was based on misappropriation of trade secrets, the court held that because the plaintiffs had failed to state a claim for misappropriation of trade secrets, the claim for unfair and deceptive acts must also fail. Id. In that case, the court found plaintiffs' description of their trade secrets to be too generalized:

> In their amended complaint, plaintiffs described their trade secrets only as their "original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information." Plaintiffs provided no further detail about these ideas, concepts, strategies, and tactics sufficient to put defendants on notice as to the precise information allegedly misappropriated. In addition, plaintiffs' failure to describe a specific idea, concept, strategy, or tactic with respect to their marketing plan or to provide any detail about their dance productions renders their claim too general for this Court to determine—even taking plaintiffs' factual allegations as true—whether there is a "formula, pattern, program, device, compilation of information, method, technique, or process" at issue that "[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering." . . .
> In light of the concern inherent in any misappropriation of trade secrets claim that, in pursuing litigation, the alleged trade secret not be revealed in a public document such as the complaint, see Glaxo Inc. v. Novopharm Ltd., 931 F. Supp. 1280, 1301 (E.D.N.C. 1996), we note at this point that our analysis of plaintiffs' claim is entirely dependent upon the extremely general nature of plaintiffs' allegations. There exists a wide gulf between plaintiffs' description of its alleged trade secrets as "original ideas and concepts for dance productions" and "marketing strategies and tactics," and exposure or compromise of the critical details of those alleged trade secrets. If plaintiffs had provided additional descriptors to put defendants and the courts on notice as to which "original ideas and concepts for dance productions" and "marketing strategies and tactics," were allegedly misappropriated, then we would have a different claim before us with the potential for a different outcome.

15

Krawiec, 370 N.C. at 611–12.

Here, the Qorvo BAW Proprietary Information is similarly generalized and broad, with a laundry list of items that are confidential and proprietary. (See ECF No. 28 ¶ 20.) That being said, while the initial identification of proprietary information is likely inadequate, Qorvo then provides factual allegations as to individual employees and the specific proprietary information that Akoustis would have gained by hiring each of them. (See id. ¶¶ 56–62.) For example, in these paragraphs of the FAC, the proprietary information has more concrete description: "confidential information concerning how Qorvo simulates and achieves improved performance in its BAW filters," "how Qorvo BAW filters achieve superior performance," "the proprietary procedures and software libraries that Qorvo uses to test products," and "Qorvo's EFC modeling tool, financial targets, vendors, and mid- and long-term plans." (Id.)

These allegations, along with the facts alleged as to an Akoustis manager asking to view internal Qorvo materials during an interview with a Qorvo employee (see id. ¶ 54), are sufficient to state a plausible claim that Akoustis "committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to [Qorvo]." Dalton, 353 N.C. at 656. Because these allegations alone are sufficient, the Court need not resolve the other disputes around this claim, such as whether inevitable disclosure can be part of the unfair and deceptive trade practices claim and whether the Wireless Watch article referenced Qorvo's proprietary information (see ECF No. 47 at PageID 528–30), at this time. Akoustis's Motion to Dismiss Count V of Plaintiff Qorvo, Inc.'s First Amended Complaint is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** both of Defendants' Motions to Dismiss.

**IT IS SO ORDERED**, this 10th day of May, 2022.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE