IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 21-01417 (JPM) |
| v. ) | |
| ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS TECHNOLOGIES, INC. and ) | |
| AKOUSTIS, INC. ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES Defendants, Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Defendants" or "Akoustis"), by and through their attorneys, and hereby responds to Plaintiff, Qorvo, Inc.'s ("Plaintiff" or "Qorvo"), First Amended Complaint (D.I. 28) (hereinafter "Complaint" or "FAC") as follows:

Unless specifically admitted below, Akoustis denies each and every allegation contained in Plaintiff's Complaint and Defendants further deny that Plaintiff is entitled to any relief, including those requested in the Prayer for Relief. Headings provided by Plaintiff in their filing are included below, but only for ease of reference, and amended as deemed necessary.

## I. NATURE OF THE CASE

1. This is an action for patent infringement, false advertising, false patent marking, and unfair competition respectively arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., the Lanham Act, 15 U.S.C. § 1125, and under North Carolina law.

**ANSWER**:    Akoustis admits that Plaintiff purports to bring actions under patent infringement, false advertising, false patent marking, and unfair competition arising respectively under the patent

laws of the United States, 35 U.S.C. § 1, *et seq.*, the Lanham Act, 15 U.S.C. § 1125, and under North Carolina law.  Akoustis denies the allegations individually and collectively.

## II.   **THE PARTIES**

2.      Plaintiff is a Delaware corporation with its principal place of business at 7628 Thorndike Road, Greensboro, North Carolina 27409.

**ANSWER**:     Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2 and therefore denies them.

3.      Defendant Akoustis Technologies, Inc. is a Delaware corporation with its principal place of business at 9805 Northcross Center Court, Suite A, Huntersville, North Carolina, 28078. The Delaware registered agent for Akoustis Technologies, Inc. is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

**ANSWER**:    Admitted.

4.      Defendant Akoustis, Inc. is a Delaware corporation with its principal place of business located at 9805 Northcross Center Court, Suite A, Huntersville, North Carolina, 28078. The Delaware registered agent for Akoustis, Inc. is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

**ANSWER**:    Admitted.

## III.   **JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over Qorvo's patent infringement and false marking claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), because they arise under the laws of the United States, specifically those relating to the infringement of U.S. patents, 35 U.S.C. § 1, *et seq.*

**ANSWER**:    Akoustis asserts that the issues raised in paragraph 5 are not factual issues but rather legal questions that require no response.  Akoustis preserves all rights and defenses under the Federal Rules of Civil Procedure.

6.    This Court has subject matter jurisdiction over Qorvo's Lanham Act claims pursuant to 28 U.S.C. §§ 1331, because they arise under the laws of the United States, specifically those related to the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

**ANSWER**:    Akoustis asserts that the issues raised in paragraph 6 are not factual issues but rather legal questions that require no response.  Akoustis preserves all rights and defenses under the Federal Rules of Civil Procedure.

7.    This Court also has supplemental jurisdiction over Qorvo's state law claims pursuant to 28 U.S.C. §1367, because the supplemental state law claims arise out of the same case or controversy as the federal claims over which this Court has original jurisdiction.

**ANSWER**:    Akoustis asserts that the issues raised in paragraph 7 are not a factual issue but rather legal questions that require no response.  Akoustis preserves all rights and defenses under the Federal Rules of Civil Procedure.

8.    Akoustis is subject to this Court's personal jurisdiction, at least because Akoustis is incorporated, organized, and existing under the laws of the State of Delaware and has a registered agent in Wilmington, Delaware.

**ANSWER**:    Akoustis asserts that the issue raised in paragraph 8 is not a factual issue but rather a legal question that requires no response.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b) at least because Akoustis resides in this district.

**ANSWER**:     Akoustis asserts that the issue raised in paragraph 9 is not a factual issue but rather a legal question that requires no response.

IV.     **FACTUAL BACKGROUND**

      A.     **Qorvo**

10.     Qorvo is a leader in the development and commercialization of technologies and products for wireless and wired connectivity. Qorvo combines a broad portfolio of innovative radio frequency ("RF") solutions, highly differentiated semiconductor technologies, systems-level expertise and global manufacturing to supply to a diverse set of customers a broad range of products that enable a more connected world.

**ANSWER**:     Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 10 and therefore denies them.

11.     Qorvo was formed on January 1, 2015, as a result of the merger between TriQuint Semiconductor ("TriQuint") and RF Micro Devices ("RFMD"), which were formed in 1985 and 1991, respectively. Qorvo is headquartered in Greensboro, North Carolina.

**ANSWER:**     Admitted that RFMD merged with TriQuent to become Qorvo in 2015.  As to any remaining allegations, Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 11 and therefore denies them.

12.     Qorvo operates in a highly competitive industry characterized by rapid advances in technology and new product introductions. Qorvo's continued success therefore depends in substantial part on its constant attention to research and development and the creation of new technologies. Each year, Qorvo invests significant resources on research and development activities to develop the most innovative and highest quality products in the markets in which it operates, and to establish the most efficient, repeatable, and highest quality manufacturing processes to support those products.

**ANSWER:**   Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 12 and therefore denies them.

13.   Qorvo's success depends in part on its ability to improve its products and processes faster than its competitors, anticipate changing customer requirements, and successfully develop and launch new products while reducing costs.

**ANSWER:**   Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 13 and therefore denies them.

14.   As part of its research and development, Qorvo has produced, among other cutting-edge technologies, a wide range of novel technologies and processes directed to thin-film bulk acoustic wave (BAW) resonator filters.

**ANSWER:**   Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 14 and therefore denies them.

15.   BAW resonator filters, or BAW filters, are a vital component in advanced radio frequency filtering solutions for wireless devices, as well as the world's most advanced radar and communications systems. This is because wireless devices communicate in particularized frequency bands in the electromagnetic spectrum that are assigned by government entities to prevent interference between different devices and service providers. Thus, because devices using nearby frequencies could create interference, it is important to filter out signals, through BAW filters, from those frequencies that are irrelevant to a particular device (i.e., communications in frequency bands above or below that assigned to the device) to improve communications efficacy.

**ANSWER:**   Akoustis agrees with the general description of BAW resonator filters, but is without specific knowledge or information as to the detailed allegations set forth in paragraph 15

- 5 -

to form a belief as to the truth of the specific allegations set forth in paragraph 15 and therefore denies them.

16.    The rapid growth of wireless devices has created an increasing demand for bandwidth, resulting in different devices using immediately adjacent bands. Thus, filter effectiveness has become a critical requirement. Moreover, prior filter designs were relatively less effective for removing unwanted frequencies. Thus, demand for more effective filters has greatly increased.

**ANSWER:**    Akoustis agrees with the general description of the development and demands for BAW resonator filters but is without specific knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 16 and therefore denies them.

17.    Qorvo's current BAW filter offerings are the result of many years of intensive, dedicated, and expensive research, design, development, testing, and refinement.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 17 and therefore denies them.

18.    Qorvo's BAW filters are industry leading. Qorvo's BAW filters have been instrumental in awards received by Qorvo, including the 2015 Corporate Innovation Award (for its development of RF solutions, including BAW technology), the 2020 World Electronic Achievement Award (for Qorvo's QM28014 antennaplexer, which utilizes Qorvo BAW filters), and the 2020 GTI Innovative Breakthrough Award (for Qorvo's RF Fusion™ 5G chipset, which utilizes Qorvo BAW filters). Qorvo's substantial research and development investment was (and remains) key to gaining its current position in the market and BAW filters enjoy competitive performance advantages because of such investment.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18 and therefore denies them.

19.    Qorvo protects its investments in its technology and products, including its BAW filter products, by, among other things, maintaining information regarding its products as confidential and proprietary information and filing patent applications.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 19 and therefore denies them.

20.    Examples of Qorvo's confidential and proprietary information include, but are not limited to, technical expertise and know-how, such as BAW filter designs, specifications, development methods and techniques, material specifications, design tolerances, packaging, quality assurance and testing, manufacturing specifications, methods, and techniques; and business information, such as future product development and refinement plans, pricing information, cost information, marketing and sales strategies, internal organization structures, employee information, and capabilities, as well as supplier lists, customer lists, contracts, demands, desires, and requirements related to the BAW filters (together referred to herein as the "Qorvo BAW Proprietary Information").

**ANSWER:**    Until Qorvo identifies specific Qorvo BAW Proprietary Information, Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 and therefore denies them.  Akoustis further asserts that the definition of Qorvo BAW Proprietary Information is so vague and overbroad it is meaningless and fails to provide notice of what specific and allegedly confidential information is at issue in the FAC. Due to these issues, the FAC does not provide Akoustis with information sufficient for Akoustis to form a belief about the truth of any allegation about Qorvo BAW Proprietary Information and

accordingly, as set forth further below, Akoustis denies each allegation involving Qorvo BAW Proprietary Information and incorporates this response therein.

21.     Qorvo has invested significant time and money developing, maintaining, and protecting the Qorvo BAW Proprietary Information. The Qorvo BAW Proprietary Information is strategic, proprietary information that is not generally known to the public and would not be ascertainable without the expenditure of substantial time, effort, and resources.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 21 and therefore denies them.

22.     The Qorvo BAW Proprietary Information has significant independent economic value, potential and actual, as a result of not being generally known or readily ascertainable, including by those in the industry. The Qorvo BAW Proprietary Information would be particularly valuable to Akoustis as a start-up company trying to enter the highly competitive BAW filter market.

**ANSWER:**    The allegation that "Akoustis [is] a start-up company trying to enter the highly competitive BAW filter market" is denied as Akoustis has entered the market.  As to all other allegations in paragraph 22, Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein and therefore denies them.

23.     To protect its valuable intellectual property, Qorvo often seeks patent protection. Qorvo has applied for and has been awarded over 3,000 patents in the United States and abroad through its history (including through TriQuint and RFMD), and including hundreds of patents related to its BAW filter technology.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 23 and therefore denies them.

24.     Two of these patents, U.S. Patent Nos. 7,522,018 (the "'018 Patent") and 9,735,755 (the "'755 Patent") describe important structural features of BAW filters that enable the performance required by today's wireless devices. A copy of each patent (collectively, the "Patents-in-Suit") is attached hereto as Exhibits A (the '018 Patent) and Exhibit B (the '755 Patent).

**ANSWER:**     Akoustis admits that U.S. Patent Nos. 7,522,018 (the "'018 Patent") and 9,735,755 (the "'755 Patent") appear on their faces to be the "Patents-in-Suit" issued by the Patent Office. Akoustis has insufficient knowledge to admit or deny any remaining facts alleged in paragraph 24 of the Complaint and therefore the allegations are denied.

25.     The '018 Patent (Exhibit A), entitled "Electro-Acoustic Resonator With A Top Electrode Layer Thinner Than A Bottom Electrode Layer," was duly and legally issued on April 21, 2009 from an application filed on December 4, 2003, naming Robert Milsom and Hans-Peter Löbl as the inventors.

**ANSWER:**     Akoustis admits that the '018 Patent (Exhibit A), entitled "Electro-Acoustic Resonator With A Top Electrode Layer Thinner Than A Bottom Electrode Layer," appears on its face to be issued on April 21, 2009 from an application filed on December 4, 2003, naming Robert Milsom and Hans-Peter Löbl as the inventors. Akoustis has insufficient knowledge to admit or deny any remaining facts alleged in paragraph 25 of the Complaint and therefore the allegations are denied.

26.     The '018 Patent claims priority to European Application No. 02258613, filed December 13, 2002.

**ANSWER:**     Akoustis admits that the '018 Patent appears on its face to claim priority to European Application No. 02258613, filed December 13, 2002. Akoustis has insufficient

knowledge to admit or deny any remaining facts alleged in paragraph 26 of the Complaint and

therefore the allegations are denied.

27.     Qorvo owns, by assignment, all substantial right, title, and interest in and to the

'018 Patent.

**ANSWER:**   Akoustis admits that the '018 Patent appears to be assigned to Qorvo.  Akoustis

has insufficient knowledge to admit or deny any remaining facts alleged in paragraph 27 of the

Complaint and therefore the allegations are denied.

28.     Pursuant to 35 U.S.C. § 282, the '018 Patent is presumed valid.

**ANSWER:**   Akoustis asserts that the issue raised in paragraph 28 is not a factual issue but

rather a legal question that requires no response.  To the extent a response is required, Akoustis

acknowledges that issued U.S. patents enjoy a legal presumption of validity, but Akoustis states

that the asserted claims of the '018 Patent are invalid.

29.     Claim 1 of the '018 Patent reads as follows:

> 1. Electro-acoustic resonator (1, 8, 17) comprising a membrane structure
> FBAR (1) with a layer structure comprising a piezoelectric layer (5, 14,
> 24) and a top (6, 15, 25) and a bottom (4, 13, 23) electrode layer, with the
> thickness (T1, T2, . . . T6) of the two electrode layers being unequal,
> characterised in that the top electrode layer (Tl, T3, TS) is thinner than the
> bottom (T2, T 4, T6) electrode layer to increase a filter bandwidth of the
> electro-acoustic resonator.

**ANSWER:**   Akoustis admits that claim 1 of the '018 Patent appears to use the language

alleged in paragraph 29.  Akoustis further asserts that the '018 Patent speaks for itself.  Akoustis

has insufficient knowledge to admit or deny any remaining facts alleged in paragraph 29 of the

Complaint and therefore the allegations are denied.

30.     The '755 Patent (Exhibit B), entitled "BAW Resonator Having Lateral Energy

Confinement And Methods of Fabrication Thereof," was duly and legally issued on August 15,

2017 from an application filed on October 6, 2015, naming Gernot Fattinger and Alireza Tajic as the inventors.

**ANSWER:**    Akoustis admits that the '755 Patent (Exhibit B), entitled "BAW Resonator Having Lateral Energy Confinement And Methods of Fabrication Thereof," appears on its face to be issued on October 6, 2015, naming Gernot Fattinger and Alireza Tajic as the inventors. Akoustis has insufficient knowledge to admit or deny any remaining facts alleged in paragraph 30 of the Complaint and therefore the allegations are denied.

31.    The '755 Patent claims priority to provisional application No. 62/207,702, filed August 20, 2015.

**ANSWER:**    Akoustis admits that the '755 Patent appears on its face to claim priority to provisional application No. 62/207,702, filed August 20, 2015.  Akoustis has insufficient knowledge to admit or deny any remaining facts alleged in paragraph 31 of the Complaint and therefore the allegations are denied.

32.    Qorvo owns, by assignment, all substantial right, title, and interest in and to the '755 Patent.

**ANSWER:**    Akoustis admits that the '755 Patent appears to be assigned to Qorvo.  Akoustis has insufficient knowledge to admit or deny any remaining facts alleged in paragraph 32 of the Complaint and therefore the allegations are denied.

33.    Pursuant to 35 U.S.C. § 282, the '755 Patent is presumed valid.

**ANSWER:**    Akoustis asserts that the issue raised in paragraph 33 is not a factual issue but rather a legal question that requires no response.  To the extent a response is required, Akoustis acknowledges that issued U.S. patents enjoy a legal presumption of validity, but Akoustis asserts that the asserted claims of the '755 Patent are invalid.

34.     Claim 9 of the '755 Patent reads as follows:

9. A BAW resonator comprising:

a piezoelectric layer;

a first electrode on a first surface of the piezoelectric layer;

a second electrode on a second surface of the piezoelectric layer opposite the first electrode on the first surface of the piezoelectric layer;

a passivation layer on a surface of the second electrode opposite the piezoelectric layer within an active region of the BAW resonator, the passivation layer having a thickness (TPA) within the active region of the BAW resonator; and

one or more material layers on the second surface of the piezoelectric layer adjacent to the second electrode in an outer region of the BAW resonator,

the outer region of the BAW resonator being a region outside of the active region of the BAW resonator and the one or more material layers having a thickness that is n times the thickness (TPA) of the passivation layer within the active region, wherein:

n is a value other than 1; and

n is such that the outer region of the BAW resonator and the active region of the BAW resonator are acoustically matched in such a manner that one or more wavelengths that cause energy leakage into the outer region are not excited in the active region.

**ANSWER:**     Akoustis admits that claim 9 of the '755 Patent appears to use the language alleged in paragraph 34.  Akoustis further asserts that the '755 Patent speaks for itself.  Akoustis has insufficient knowledge to admit or deny any remaining facts alleged in paragraph 34 of the Complaint and therefore the allegations are denied.

35.     Qorvo's considerable investment in the development, manufacturing, and marketing of its BAW filters, as well as its efforts to maintain the confidentiality of the Qorvo BAW Proprietary Information and patent other innovations related to its BAW filters—such as

through the Patents-in-Suit—has resulted in substantial sales for Qorvo in the BAW filter market.

**ANSWER:**   Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 35 and therefore denies them.

36.     Qorvo's business is also dependent on its ability to attract and keep key technical personnel and management. Qorvo has invested substantial time, effort, and expense in developing and training its employees' knowledge and experience in the areas crucial to Qorvo's BAW filter technologies, including in RF engineering, integrated circuit and filter design, and technical marketing and support.

**ANSWER:**   Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36 and therefore denies them.

### B.     Akoustis

37.     Defendant Akoustis was founded in 2014 by Jeffrey B. Shealy, Steven P. Denbaars, and Richard T. Ogawa.

**ANSWER:**   Admitted.

38.     Mr. Shealy was, from October 2001 through February 2014, a vice-president of RFMD which, together with TriQuint, merged to become Qorvo in 2015. By virtue of his leadership role at RFMD, Mr. Shealy had extensive knowledge of RFMD's and Qorvo's operations, business strategies, patents, and personnel as of the date of his departure from Qorvo to form Akoustis.

**ANSWER:**   Admitted that Mr. Shealy was, from October 2001 through February 2014, a vice-president of RFMD which merged with TriQuint to become Qorvo in 2015 after Mr. Shealy left RFMD.  Further admitted that Mr. Shealy had certain business and technical knowledge of RFMD.  Akoustis denies knowledge of the Patents-in-Suit before the filing of this litigation and

- 13 -

denies that Mr. Shealy was employed by Qorvo or had knowledge of the operations, business strategies, patents, and personnel of TriQuint or of Qorvo.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 38 and therefore denies them.

39.     Mr. Shealy also sits on Akoustis' Board of Directors, a majority of which are ex-Qorvo employees. Beyond Mr. Shealy, Co-Chairman Jerry D. Neal founded RFMD in 1991 and served in various leadership roles, including as Executive Vice President of Marketing and Strategic Development at the time of his departure. Board member Arthur E. Geiss was Vice President of Wafer Fab Operations at RFMD until his departure. Board member Suzanne Rudy was Vice President of Tax and Corporate Treasurer, Compliance Officer, and Assistant Secretary at Qorvo at the time of her departure. Mr. Neal, Mr. Geiss, and Ms. Rudy had extensive knowledge of Qorvo's (including RFMD's) operations, business strategies, patents, and personnel as of their dates of departure.

**ANSWER:**     Admitted that Mr. Shealy sits on Akoustis' Board of Directors.  Admitted that Akoustis' Co-Chairman Jerry D. Neal founded RFMD in 1991 and served in various leadership roles at RFMD, including as Executive Vice President of Marketing and Strategic Development at the time of his departure from RFMD in 2012.  Admitted that Akoustis' board member Arthur E. Geiss was Vice President of Wafer Fab Operations at RFMD until his departure from this role in 2003.  Admitted that Mr. Geiss subsequently had a consulting relationship with RFMD and then Qorvo, but that relationship was designed to be unrelated to BAW and was disclosed to and approved by RFMD/Qorvo.  Admitted that Akoustis' board member Suzanne Rudy was Vice President of Tax and Corporate Treasurer, Compliance Officer, and Assistant Secretary at Qorvo at the time of her departure in 2015.  Admitted that Mr. Neal and Mr. Geiss had certain business

and technical information of RFMD and that Ms. Rudy had certain business and technical information of Qorvo.  Akoustis denies knowledge of the Patents-in-Suit before the filing of this litigation.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 39 and therefore denies them.

40.     Akoustis was formed specifically to compete with Qorvo (and its predecessor companies) in the BAW filter market. While Akoustis describes itself as being focused on "developing, designing, and manufacturing … RF filter products for the wireless industry," its current product offerings are narrowly limited to what it calls its "3-7 GHz BAW RF filter portfolio."

**ANSWER:**     Denied as to the first sentence.  Admitted that Akoustis' current product offerings are limited to its "3-7 GHz BAW RF filter portfolio" and otherwise denied.

41.     Akoustis' "3-7 GHz BAW RF filter portfolio" currently includes twelve BAW filters. See ALL PRODUCTS - AKOUSTIS TECHNOLOGIES, https://akoustis.com/products/filters/applications/all-products/ (last visited Sept. 14, 2021).

**ANSWER:**     Admitted that Akoustis' current product offerings include twelve "3-7 GHz BAW RF filter portfolio" and generally admitted that the website contains various products.

42.     Akoustis' BAW filters compete with Qorvo's BAW filters.

**ANSWER:**     Admitted that various companies including Broadcom Corporation, Murata Manufacturing Co., Ltd., Qorvo, Skyworks Solutions Inc., Taiyo Yuden Co. Ltd., and Qualcomm Incorporated are part of the RF (radio frequency) component supplier market and that Akoustis competes or is likely to compete with these and other companies in efforts to sell products to companies that procure filters or internally source filters.  Except as admitted,

Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 42 and therefore denies them.

43.     While Qorvo's design and development of BAW filters has taken many years and great expense, Akoustis was able to design and qualify its 3-7 GHz BAW RF filter portfolio from scratch in just a few years and with just a fraction of the number of Qorvo's employees and a fraction of the amount of Qorvo's research and development investment. To do so, Akoustis improperly leveraged Qorvo's intellectual property, including the Patents-in-Suit and the Qorvo BAW Proprietary Information, as obtained by its systematic poaching of Qorvo's employees.

**ANSWER:**     Akoustis denies any unlawful design and development of its BAW filters and denies any systematic unlawful hiring (so-called "poaching") of Qorvo's employees.  Akoustis further denies any improper leveraging of Qorvo's intellectual property for the design and development of Akoustis' BAW filters, including the Patents-in-Suit and Qorvo BAW Proprietary Information.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 43 and therefore denies them.

44.     Akoustis built its 3-7 GHz BAW RF filter portfolio using Qorvo's patented technology.  Each of Akoustis' BAW filters identified above infringes the Patents-in-Suit. Each of Akoustis' BAW filters uses the structural configurations disclosed and claimed by the Patents-in-Suit to provide the performance necessary to compete in the BAW filter market. On information and belief, Akoustis has been aware of Qorvo's patent portfolio throughout its existence, including specifically the Patents-in-Suit.

**ANSWER:**     Akoustis denies any unlawful design and development of its BAW filters, denies having knowledge of the Patents-in-Suit, denies knowledge of Qorvo's patented technology,

denies use of the Patents-in-Suit to develop Akoustis' technology, and further denies infringement of the Patents-in-Suit.  Akoustis admits that it was generally aware that Qorvo had a patent portfolio but is otherwise without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 44 and therefore denies them.

45.     On information and belief, Akoustis has also used the Qorvo BAW Proprietary Information to design, manufacture, market, and sell its BAW filters, and to otherwise develop its technological know-how.

**ANSWER:**    Denied.

**C.    Akoustis' Alleged Poaching of Employees**

46.     Since its inception, Akoustis has engaged in conscious, methodical, and systematic recruitment and solicitation of Qorvo's employees in all major areas. Indeed, and beyond a majority of its board being ex-Qorvo employees, Akoustis has poached over twenty key employees, including crucial personnel from engineering, operations, sales, quality control and testing, packaging, and management.

**ANSWER:**    Denied except that Akoustis admits that one member of its Board was employed by Qorvo more than six years ago and three members of its Board were employed by RFMD prior to the merger of RFMD and TriQuint to form Qorvo in 2015.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 46 and therefore denies them.

47.     On information and belief, Akoustis recruited ex-Qorvo employees for positions with largely overlapping responsibilities to their positions at Qorvo, focusing on employees with the specialized knowledge of Qorvo's confidential and proprietary information, including the Qorvo BAW Proprietary Information, that Akoustis needed at the particular stage of its development. For example, Qorvo focused on those Qorvo employees with business

development and BAW filter design experience when it was initially defining and designing its products, and then focused on those Qorvo employees with quality, manufacturing, and management expertise as it moved from product design to manufacture and sales.

**ANSWER:**    Denied as to the first sentence.  As to the second sentence, denied to the extent this was intended to refer to Akoustis but otherwise Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations about Qorvo's alleged actions as set forth therein and therefore denies them.

48.    As examples, since its formation, Akoustis has poached Qorvo employees (the "Ex-Qorvo BAW Employees") with the following job titles/descriptions.

|  | Job Title | Job Description |
|---|---|---|
| 1 | Director, Business Development | developed, coordinated, and implemented plans designed to increase existing business and capture new opportunities |
| 2 | Device Engineer | evaluated and characterized high power and mm-wave GaN RF technologies; supported foundry customers in evaluation and selection of RFMD GaAs and GaN semiconductor processes; planned, implemented, and managed GaN device performance and reliability projects; generated production test plans for customer discrete FET and MMIC designs; developed and supported customer qualification tests |
| 3 | Plasma Process Engineer | analyzed BAW resonator electrical data and metrology data; developed new processes on plasma platforms; improved process reliability; demonstrated proficiency in design of experiment, statistical process control, and model based problem solving |
| 4 | Customer Quality Manager | managed customer concerns and ensured their satisfaction; traveled extensively to train local teams and to work with customers; lead team responsible for chemical compliance monitoring and reporting |

| | Job Title | Job Description |
|---|---|---|
| 5 | Senior Tax Manager | managed all federal, foreign, and state & local income tax filings; managed audit activities; responsible for corporate cash planning, investment, and funds management; managed all sales and use and property tax functions for the US; and responsible for expatriate tax compliance |
| 6 | Senior Business Analyst, SAP IBP | managed implementation of SAP integrated business planning; supported planning team regarding demand and supply; assisted with revenue planning and margin analysis |
| 7 | Director of Infrastructure and Defense Packaging | evaluated current and future enterprise infrastructure needs |
| 8 | Senior BAW Design Engineer | responsible for the research and design of new BAW products and systems |
| 9 | Senior Planner | responsible for the execution of in-house and external prototype assembly |
| 10 | Senior RF Test Engineer | responsible for hardware and software development for 2G/3G/4G power amplifiers; developed production test solutions; performed production line debug and efficiency optimization; performed product data analysis; and performed production |
| 11 | Senior Customer Quality Engineer | acted as the representative to premier customers; provided strategic direction and leadership; and knowledgeable in quality, design, supply chain, product engineering, sales, and marketing |
| 12 | Manager, BAW R&D, Technology | managed technology divisions and BAW research and development |

**ANSWER:**     Denied as to unlawful hiring (so-called "poaching") of any of the above persons.

Akoustis admits that it has lawfully hired various former Qorvo employees in various areas of expertise.  As to any remaining allegations about the twelve unidentified persons described by Qorvo, including their alleged Qorvo job descriptions, Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 48 and therefore denies them.

49.     Each of the Ex-Qorvo BAW Employees identified above had routine and repeated access to one or more categories of the Qorvo BAW Proprietary Information.

**ANSWER:**   Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 49 and therefore denies them.

50.     On information and belief, numerous Ex-Qorvo BAW Employees who are now employed by Akoustis were aware of the Patents-in-Suit during their work at Qorvo. For example, the Ex-Qorvo BAW Employees include employees who formerly worked in the same department at Qorvo as the inventors of the Patents-in-Suit and those Ex-Qorvo BAW Employees now work in a similar department at Akoustis that is involved in developing the technology embodied in the Accused Products. As part of their former employment with Qorvo, these Ex-Qorvo BAW Employees would have been aware of the Patents-in-Suit. This knowledge then transferred to Akoustis when they became Akoustis employees.

**ANSWER:**   Akoustis denies that Ex-Qorvo BAW Employees had pre-suit knowledge of the Patents-in-Suit.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 50 and therefore denies them.

51.     Additionally, on information and belief, Akoustis has had knowledge of the Patents-in-Suit because a number of senior executives of Akoustis were executives at Qorvo (or one of its predecessor companies, such as RFMD) at the time when the Patents-in-Suit were issued or acquired. On information and belief, these former Qorvo executives had knowledge of the Patents-in-Suit in connection with their positions at Qorvo and brought that knowledge to Akoustis.

**ANSWER:**   Denied.

52.     The Ex-Qorvo BAW Employees entered into non-disclosure agreements as a condition of their employment.  The non-disclosure agreements require the Ex-Qorvo BAW Employees not to use, take, or disclose Qorvo's confidential information, including the Qorvo BAW Proprietary Information, without authorization.

**ANSWER:**     Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 52 and therefore denies them.

### D.     Akoustis Alleged Misappropriated of Qorvo BAW Proprietary Information Via Its Systematic Poaching of the Ex-Qorvo BAW Employees.

53.     Akoustis has, on information and belief, misappropriated the Qorvo BAW Proprietary Information to shortcut the hard work of building an innovative company and to shorten the typical time to market for new products in the relevant market. For example, Akoustis has poached the Ex-Qorvo BAW Employees for employment in positions with substantial responsibility overlap to those employees' previous roles at Qorvo. On information and belief, the Ex-Qorvo BAW Employees were hired for the specific purpose of using their knowledge of the Qorvo BAW Proprietary Information to permit Akoustis to compete directly against Qorvo for customers and market share.

**ANSWER:**     Denied.

54.     Akoustis has aggressively recruited Qorvo employees to obtain confidential information. On several occasions, Akoustis proactively contacted employees with access to Qorvo BAW Proprietary Information—sometimes repeatedly—as part of this recruitment scheme. For example, in late 2020, an Akoustis engineering manager contacted a Qorvo Product Engineer through LinkedIn. During a subsequent call, the Akoustis engineering manager expressly asked the Qorvo Product Engineer to disclose Qorvo BAW Proprietary Information. More specifically, the Akoustis engineering manager asked this Qorvo employee to access the

corporate yield page on Qorvo's computer system and provide screen shots of information found on that page. The corporate yield page is a repository for confidential information. It reflects, for example, analytical tools Qorvo is using to assess its products, the parts that Qorvo is using, the tests that Qorvo is running on those parts, and the performance and failure rates of those parts. There is no legitimate reason that Akoustis would ask a Qorvo employee to provide this type of confidential information as part of the recruitment process. The Qorvo Product Engineer felt that Akoustis' request for the confidential information was unethical and reported the incident to a supervisor.

**ANSWER:**   Akoustis denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis admits that it has hired former Qorvo employees and that as part of the hiring process, Akoustis has contacted prospective employees while they were employed at Qorvo and that Akoustis has been independently contacted by Qorvo employees seeking to be employed at Akoustis.  Akoustis admits that it contacted a Qorvo employee in 2020 for a potential job opportunity but denies that it sought any information that it understood to be confidential and admits that no confidential information was received. Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 54 and therefore denies them.

55.     The sheer number of highly-knowledgeable and qualified Qorvo employees poached by Akoustis over its history has resulted in Akoustis inevitably using their knowledge and experience, including the Qorvo BAW Proprietary Information. It is highly probable—and on information and belief, inevitable—that Akoustis has used, relied upon, and exploited the Ex-Qorvo BAW Employees' knowledge of the Qorvo BAW Proprietary Information.

**ANSWER:**   Denied.

56.      For example, in October 2019, Akoustis recruited Robert Dry. Mr. Dry was the Director of Qorvo's Infrastructure and Defense Packaging business. In that position, Mr. Dry had access and was aware of Qorvo BAW Proprietary information, including but not limited to micro BAW processes used to shrink the size of filters. As Akoustis attempted to manufacture competing products, Akoustis was in need of the specific kind of confidential information known to Mr. Dry. This technology is not publicly available and is highly valuable. Mr. Dry was also a member of the patent committee at Qorvo and one of the persons who determined whether inventions should be maintained as trade secrets or disclosed in patent applications. As such, Mr. Dry was in a position to have widespread knowledge of Qorvo BAW Proprietary information. On information and belief, Akoustis actively recruited Mr. Dry specifically because of his knowledge of Qorvo's proprietary information and placed him in the position of Vice President of Operations with the expectation that Mr. Dry would use Qorvo BAW Proprietary information to the benefit of Akoustis, including micro BAW technology.

**ANSWER:**   Akoustis admits it hired Mr. Dry but denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 56 and therefore denies them.

57.      By way of further example, in November 2020, Akoustis recruited David Breton. Mr. Breton was a Manager of BAW Research and Development at Qorvo. In that position, Mr. Breton had access to and was aware of Qorvo BAW Proprietary Information, including but not limited to how Qorvo filters achieve superior performance in high frequency bands (5-7 GHz).

Mr. Breton was also knowledgeable about the customized, proprietary, and highly confidential tools used by the Developmental Physics Team at Qorvo to perform simulations as part of the technology development process. As Akoustis is engaged in designing, developing and manufacturing competing products in the 5-7 GHz frequency band, Akoustis was in need of the specific kind of confidential information known to Mr. Breton. The Qorvo BAW Proprietary Information known to Mr. Breton is not publicly available and is highly valuable. On information and belief, Akoustis actively and specifically recruited Mr. Breton and placed him in the position of Manager with the expectation that Mr. Breton would use Qorvo BAW Proprietary Information, including confidential information concerning how Qorvo simulates and achieves improved performance in its BAW filters, to the benefit of Akoustis.

**ANSWER:**   Akoustis admits it hired Mr. Breton but denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 57 and therefore denies them.

58.     By way of further example, in November 2019 Akoustis recruited Guillermo Moreno. Mr. Moreno was a Senior BAW Design Engineer at Qorvo. In that position, Mr. Moreno had access to and was aware of Qorvo BAW Proprietary Information, including but not limited to how Qorvo BAW filters achieve superior performance. The Qorvo BAW Proprietary Information known to Mr. Moreno is not publicly available and is highly valuable. As Akoustis engaged in designing, developing and manufacturing competing BAW products, Akoustis was in need of the specific kind of confidential information known to Mr. Moreno. On information and belief, Akoustis actively recruited Mr. Moreno and placed him in the position of Design

Engineering Manager with the expectation that Mr. Moreno would use Qorvo BAW Proprietary information to the benefit of Akoustis.

**ANSWER:**   Akoustis admits it hired Mr. Moreno but denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 58 and therefore denies them.

59.     By way of further example, in May 2020 Akoustis recruited William Schmid. Mr. Schmid was a Senior RF Test Engineer at Qorvo. In that position, Mr. Schmid had access to and was aware of Qorvo BAW Proprietary Information, including but not limited to the proprietary procedures and software libraries that Qorvo uses to test products. The Qorvo BAW Proprietary Information known to Mr. Schmid is not publicly available and is highly valuable. In its business cycle, Akoustis was in need for someone specifically having knowledge of Qorvo's confidential and proprietary information relating to testing of BAW filters. Accordingly, on information and belief, Akoustis actively recruited Mr. Schmid and placed him in the position of Operations Test Senior Manager with the expectation that Mr. Schmid would use Qorvo BAW Proprietary information, including Qorvo's testing procedures and information concerning Qorvo's software libraries.

**ANSWER:**   Akoustis admits it hired Mr. Schmid but denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 59 and therefore denies them.

60.     By way of further example, in July 2020, Akoustis recruited Kindra Lane. Ms. Lane was a Senior NPI Planner at Qorvo. In that position, Ms. Lane worked on new product development and was responsible for worldwide logistics. Ms. Lane had access to and was aware of Qorvo BAW Proprietary Information, including but not limited to Qorvo's EFC modeling tool, which is a secret and confidential estimation process Qorvo has built to estimate costs for products. Ms. Lane was also aware of Qorvo's confidential internal financial targets and mid- and long-term plans, proprietary cost issues relating to the manufacture of BAW filters, and the identities of Qorvo's critical vendors. The Qorvo BAW Proprietary Information known to Ms. Lane is not publicly available and is highly valuable. Akoustis was in specific need of the Qorvo BAW Proprietary Information known to Ms. Lane, including Qorvo's proprietary modeling processes and information related to sourcing components and materials from world-wide suppliers critical to the manufacture of BAW filters. Accordingly, on information and belief, Akoustis actively and specifically recruited Ms. Lane and placed her in the position of Operations Planning Manager with the expectation that Ms. Lane would use Qorvo BAW Proprietary information, including information concerning Qorvo's EFC modeling tool, financial targets, vendors, and mid- and longterm plans to the benefit of Akoustis.

**ANSWER:**     Akoustis admits it hired Ms. Lane but denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 60 and therefore denies them.

61.     By way of further example, in April 2019 Akoustis recruited Wendy Wright. Ms. Wright was a Senior Business Analyst at Qorvo. In that position, Ms. Wright was responsible for

implementing and customizing Qorvo's integrated business planning ("IBP") system. Ms. Wright had access to and was aware of Qorvo BAW Proprietary Information, including but not limited to Qorvo's customized IBP system and Qorvo's proprietary process for generating "what if" scenarios to analyze demand and supply. The Qorvo BAW Proprietary Information known to Ms. Wright is not publicly available and is highly valuable. On information and belief, Akoustis actively recruited Ms. Wright and placed her in the position of Global Planning Manager with the expectation that Ms. Wright would use Qorvo BAW Proprietary information, including information concerning Qorvo's IBP system and "what if" analysis to the benefit of Akoustis.

**ANSWER:**   Akoustis admits it hired Ms. Wright but denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 61 and therefore denies them.

62.     By way of further example, in August 2020 Akoustis recruited Paul Makowenskyj. Mr. Makowenskyj was a Senior Customer Quality Engineer at Qorvo. In that position, Mr. Makowenskyj had access to and was aware of Qorvo BAW Proprietary Information, including but not limited to Qorvo's product pipeline, the performance and requirements for those products, and Qorvo's interactions with customers relating to quality issues of BAW filters. The BAW Proprietary Information known to Mr. Makowenskyj is not publicly available and is highly valuable. On information and belief, Akoustis was in specific need of the Qorvo BAW Proprietary Information known to Mr. Makowenskyj, and therefore actively recruited Mr. Makowenskyj and placed him in the position of Staff Quality Engineer with the expectation that Mr. Makowenskyj would use Qorvo BAW Proprietary Information,

including information concerning Qorvo's product pipeline, the performance and requirements for those products, and Qorvo's customers, for the benefit of Akoustis.

**ANSWER:**   Akoustis admits it hired Mr. Makowenskyj but denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.   Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 62 and therefore denies them.

63.     The former Qorvo employees identified in the preceding paragraphs are only recent examples of Akoustis' efforts to raid Qorvo employees to obtain confidential information that would allow Akoustis to short-cut its entry into the BAW filter market. In addition to the former Qorvo employees listed above, Akoustis has also hired at least the following employees away from Qorvo: Tony Espinoza, Ali-Imran Bawangaonwala, Todd Bender, Shawn Gibb, David Hodge, Rohan Houlden, Joonbum Kwon, John Myrick, and Ya Shen. On information and belief, each of these former Qorvo employees had access to Qorvo BAW Proprietary Information that would benefit Akoustis.

**ANSWER:**   Akoustis admits it hired Tony Espinoza, Ali-Imran Bawangaonwala, Todd Bender, Shawn Gibb, David Hodge, Rohan Houlden, Joonbum Kwon, John Myrick, and Ya Shen but denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 63 and therefore denies them.

64.     Akoustis has also made public statements that indicate it has obtained Qorvo BAW Proprietary Information, including confidential information about Qorvo's product pipeline and development activities. For example, in a December 2021 issue of Wireless Watch, Akoustis' Vice President of Corporate Development stated that Akoustis WiFi 6E products will outperform future Qorvo WiFi 6E products: "Sepenzis claimed that Qorvo's BAW filter can only operate with a low temperature co-fired ceramic (LTCC) filter placed on top. He described the LTTC component was 'low performance,' noting that while it can cover the 5GHz and 6GHz bands, it cannot separate them so that they can be used simultaneously, which renders the addition of an extra band somewhat useless." Mr. Sepenzis did not provide any basis for his statement and Qorvo does not have a WiFi 6E 6GHz product on the market. As such, Mr. Sepenzis's statement about potential future Qorvo products is, on information and belief, based on Qorvo BAW Proprietary Information concerning Qorvo's development pipeline and prototyping process.

**ANSWER:**    Denied.

65.     By using the Qorvo BAW Proprietary Information obtained according to the preceding paragraphs, Akoustis has gained an unfair advantage, enabling Akoustis to enter the BAW filter market more quickly than it could have without  the  Qorvo  BAW  Proprietary Information  and/or  other  proprietary  or  confidential information of Qorvo.

**ANSWER:**    Denied.

66.     On information and belief, Akoustis has used, continues to use, has inevitably used, or will inevitably use, the Qorvo BAW Proprietary Information via the Ex-Qorvo BAW Employees in connection with Akoustis' design, development, manufacture, and qualification of its BAW filters.

**ANSWER:**   Denied.

67.   Accordingly, Akoustis has improperly built its 3-7 GHz BAW RF filter portfolio, and created related business opportunities, based on the Qorvo BAW Proprietary Information.

**ANSWER:**   Denied.

**E.   Akoustis' Alleged False Advertising and False Patent Marking By Falsely Describing its BAW Filters as "Single-Crystal"**

68.   Akoustis' unfair competition has also extended to making false and misleading statements about the characteristics of its BAW filters in an attempt to derive an unfair competitive advantage over competing products including Qorvo products.

**ANSWER:**   Denied.

69.   Akoustis repeatedly promotes and asserts in advertisements, marketing and related materials including investor brochures that its BAW filters use "single-crystal" piezoelectric layers, which it refers to as "XBAW™ technology."

**ANSWER:**   Admitted that Akoustis has advertised and marketed single-crystal BAW filters in various settings.  As to any remaining allegations of paragraph 69, including the contention that XBAW technology exclusively involves single-crystal piezo electric layers, denied.

70.   For example, this alleged differentiation is prominent on Akoustis' website blog, as shown below (see AKOUSTIS GOES LIVE – AKOUSTIS TECHNOLOGIES, https://akoustis.com/akoustis-goes-live/ (last visited Sept. 14, 2021)).

> **Pioneering Next-Generation Materials**
>
> At the core of our success lies the conceptualization, development, and manufacturing capabilities of patented XBAW™ technology and our high-purity piezoelectric materials.
>
> Our next-gen materials allow for single-crystal bulk acoustic wave (BAW) high-band RF filters which utilize our advanced resonator-filter process technology to drive higher electro- mechanical coupling wider bandwidth RF filter solutions.

**ANSWER:**     Akoustis denies this allegation including the inference that the referenced "website blog" describes its BAW filters as exclusively using "single-crystal" piezoelectric layers.  Akoustis further asserts that the referenced "website blog" speaks for itself.

71.     Akoustis makes similar claims in its press releases, such as the Press Release related to the AKF-1938 Filter (see AKOUSTIS EXPANDS COMMERCIAL PRODUCT PORTFOLIO WITH  NEW 3.8 GHZ BAW RF FILTER :: AKOUSTIS TECHNOLOGIES, INC. (AKTS),  https://ir.akoustis.com/news-events/press-releases/detail/90/akoustis-expands-commercial-product-portfolio-with-new-3-8 (last visited Sept. 14, 2021)), as shown below.

> The AKF-1938 is a high performance, ultra-small passband 3.8 GHz BAW RF filter designed for use in radar and RF transceiver applications. The filter wafers will be manufactured using Akoustis' new proprietary XB1 single-crystal BAW manufacturing process which delivers high-performance RF filter solutions for frequencies up to 7 GHz. The AKF-1938 provides

**ANSWER:**     Akoustis denies this allegation including the inference that the referenced Press Release describes its current BAW filters as exclusively using "single-crystal" piezoelectric layers.  Akoustis further asserts that the referenced Press Release speaks for itself.

72.     Further, in product datasheets for each of the twelve BAW filters identified above that are currently offered for sale on its website (see ALL PRODUCTS – AKOUSTIS TECHNOLOGIES, https://akoustis.com/products/filters/applications/all-products/ (last visited

Sept. 14, 2021)), Akoustis states that the filters utilize "Akoustis' patented, XBAW technology which provides leading RF filter performance" and that U.S. Patent No. 10,256,786 (the "'786 Patent") covers that BAW filter.

**ANSWER:**  Akoustis admits that the product datasheets for each of the twelve BAW filters are marked with U.S. Patent No. 10,256,786 (the "'786 Patent") but denies that the marking describes the products as using "single-crystal" piezoelectric layers.  Akoustis denies any remaining allegations of paragraph 72 including that the referenced product datasheets for each of the twelve BAW filters describe the products as using "single-crystal" piezoelectric layers. Akoustis further asserts that the referenced product datasheets for each of the twelve BAW filters speak for themselves.

73.    U.S. Patent No. 10,256,786 is titled "Communication Filter Using Single Crystal Acoustic Resonator Devices." The independent claims of U.S. Patent No. 10,256,786 define piezoelectric layers, and the disclosure of U.S. Patent No. 10,256,786 and Akoustis' statements make clear that these recited piezoelectric layers are single-crystal.

**ANSWER:**  Admitted that U.S. Patent No. 10,256,786 is entitled "Communication Filter Using Single Crystal Acoustic Resonator Devices."  Akoustis asserts that any remaining issues raised in paragraph 73 are not factual issues but rather a legal question that requires no response. To the extent a response is required, Akoustis denies any remaining allegations including that independent claims of U.S. Patent No. 10,256,786 define piezoelectric layers, or that disclosure of U.S. Patent No. 10,256,786 and Akoustis' statements make clear that the recited piezoelectric layers are single-crystal.

74.    Akoustis relies on its descriptions of its filters as "single-crystal" and the related marking of those filters with U.S. Patent No. 10,256,786 to attract customers and prospective

customers in conjunction with its claims that single-crystal piezoelectric materials drive superior performance as compared to polycrystalline technology, such as is used in competitor's BAW filters, including by Qorvo. However, Akoustis' BAW filter products are not "single crystal." They are polycrystalline.

**ANSWER:**     Admitted that Akoustis has marketed and manufactured resonators using both single-crystal and polycrystalline piezoelectric materials in its filter devices (and told customers the same) and continues to leverage its expertise in both single-crystal and polycrystalline piezoelectric materials in its efforts to develop single-crystal and polycrystalline materials and future innovative filter devices and products leveraging such materials.  Admitted also that the resonators in all BAW filter products currently advertised for sale on Akoustis' website use polycrystalline piezoelectric material.  All remaining allegations of paragraph 74 are denied.

> **F.     Akoustis' Alleged Unfair Competition By Promoting Its Infringing, Misappropriated, and Falsely Advertised Products to Qorvo Customers**

75.     On information and belief, Akoustis has competed with Qorvo and has attempted to persuade Qorvo's customers to replace Qorvo BAW filters with Akoustis' BAW filters that: (i) infringe the Patents-in-Suit; (ii) were developed with the Qorvo BAW Proprietary Information; and (iii) are falsely advertised as "single-crystal" and marked with U.S. Patent No. 10,256,786.

**ANSWER:**     Denied.

**V.     CLAIMS FOR RELIEF**

> **A.     Count I - Infringement of U.S. Patent No. 7,522,018 (the '018 Patent)**

76.     Qorvo incorporates by reference the allegations of paragraphs 1 through 66 set forth above.

**ANSWER:**   Akoustis incorporates by reference the responses to allegations of paragraphs 1 through 75 set forth above.

77.   Akoustis infringes the '018 Patent under 35 U.S.C. § 271(a), by making, using, selling, or offering for sale the 3-7 GHz BAW RF filter portfolio including, but not limited to its 5.2 GHz RF BAW filters (i.e., AKF-1252), 5.6 GHz RF BAW filters (i.e., AKF-1256), 3.6 GHz CBRS bandpass BAW filters (i.e., AKF-1336), and 3.5 GHz 5G coexistence BAW filters (i.e., AKF-10235) and related products (collectively the "Accused Products"), each of which utilizes the inventions disclosed and claimed in the '018 Patent. On information and belief, each of the Accused Products is of similar design and construction as it pertains to the '018 Patent.

**ANSWER:**   Akoustis denies allegations of infringement in the first sentence.  As to the second sentence, Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 77 and therefore denies them.

78.   Qorvo recently acquired a sample Accused Product, conducted testing and analysis on it, and determined that it meets all of the limitations of one or more claims of the '018 Patent. As an example, Akoustis directly infringes at least independent claim 1 of the '018 Patent. The Accused Products are film bulk acoustic resonators ("FBAR") that have a membrane structure FBAR with a layer structure including a piezoelectric layer and a top and a bottom electrode layer.

**ANSWER:**   Akoustis denies allegations of infringement.  Akoustis denies that the Accused Products are film bulk acoustic resonators ("FBAR").  Each of the resonators in the Accused Products are FBAR and each include a bottom electrode layer, a piezoelectric layer, and a top electrode formed of one or more layers.  Some resonators in the Accused Products have different thicknesses of the top electrode and other layers, with some of the different thicknesses

potentially being unequal to the thickness of the bottom electrode layer. Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 78 and therefore denies them.

79.     Like claim 1, the Accused Products are configured with thicknesses of the two electrode layers being unequal, characterized in that the top electrode layer is thinner than the bottom electrode layer. By way of example, the Akoustis AKF-10235 BAW Filter has a top electrode layer that is averages about 110 nm thick and a bottom electrode layer that averages about 129 nm thick. On information and belief, the other Accused Products similarly have piezoelectric layers and top electrode layers that are thinner than their bottom electrode layers.

**ANSWER:**     Akoustis denies allegations of infringement. Akoustis denies that the Akoustis A10235 BAW Filter (improperly referenced by Qorvo as the AKF-10235) has a top electrode layer that averages about 110 nm thick and a bottom electrode layer that averages about 129 nm thick. Akoustis admits that the resonators in each Accused Product include a bottom electrode layer, a piezoelectric layer, and the top electrode is formed of one or more layers. Some resonators in the Accused Products have different thicknesses of the top electrode and other layers, with some of the different thicknesses potentially being unequal to the thickness of the bottom electrode layer. Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 79 and therefore denies them.

80.     To the extent required by claim 1, the Accused Products have increased filter bandwidth performance. By way of example, increased filter bandwidth performance of the Akoustis AKF-10235 BAW Filter is shown in the below graph taken from the AKF-10235 Data Sheet. On information and belief, the other Accused Products similarly have increased filter bandwidth performance.



**ANSWER:**    Akoustis denies allegations of infringement.  Akoustis admits that the

performance plots in paragraph 80 show a filter bandwidth of the Accused Product, but denies

that the performance plots in paragraph 80 illustrate the performance of any single resonator

within the Accused Product.  Further, Akoustis objects to this Paragraph 80 to the extent that it

calls for a legal conclusion with respect to a claim term for which Akoustis contends that plain

and ordinary meaning does not apply; and on that basis cannot admit or deny such allegations set

forth in paragraph 80.  Akoustis is without knowledge or information sufficient to form a belief

as to the truth of any remaining allegations set forth in paragraph 80 and therefore denies them.

  81. Thus, Akoustis has infringed, and continues to infringe, at least claim 1 of the

'018 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by

making, using, selling, and/or offering for sale in the United States, and/or importing into the

United States, the Accused Products that are covered by one or more claims of the '018 Patent.

**ANSWER:**    Denied.

82.     On information and belief, Akoustis has been and is inducing infringement of the
'018 Patent in violation of 35 U.S.C. § 271(b) at least by actively and knowingly inducing its
customers to, literally or under the doctrine of equivalents, make, use, sell, and/or offer for sale
in the United States, and/or import into the United States, products incorporating the Accused
Products which utilize the inventions disclosed and claimed in the '018 Patent. Specifically,
Akoustis induces infringement of the '018 Patent by publishing instructions on its website
instructing third parties on how to use the Accused Products. These instructions include
recommendations for customers of the Accused Products on how to solder and package the
Accused Products as part of customer systems.  Akoustis' intent is further demonstrated by PCB
diagrams published on its website that instruct customers on PCB metal, solder mask, and stencil
pattern layouts for implementing the Accused Products in infringing systems.

**ANSWER:**     Denied.

83.     As of the introduction of the Accused Products, Akoustis has had knowledge of
the '018 Patent and Akoustis' infringement thereof, because the Ex-Qorvo BAW Employees,
including former executives of Qorvo who are now executives of Akoustis, knew of the '018
patent and brought that knowledge to Akoustis. Akoustis also has known and knows that its
customers' use, sale, and offering for sale of the Accused Products constitutes infringement of at
least claim 1 of the '018 Patent for the same reasons set forth above.

**ANSWER:**     Denied.

84.     Akoustis' infringement of the '018 patent is willful, deliberate, and intentional,
and Akoustis is acting in reckless disregard of Qorvo's patent rights.

**ANSWER:**     Denied.

85. Because of Akoustis' infringement of the '018 patent, Qorvo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

**ANSWER:** Denied.

86. Unless enjoined, Akoustis, and/or others acting on behalf of Akoustis, will continue their infringing acts, thereby causing additional irreparable injury to Qorvo for which there is no adequate remedy at law.

**ANSWER:** Denied.

87. Akoustis' actions render this an exceptional case and entitle Qorvo to attorneys' fees and costs under 35 U.S.C. § 285.

**ANSWER:** Akoustis asserts that the issues raised in paragraph 87 are not factual issues but rather a legal conclusion that requires no response. To the extent a response is required, Akoustis denies the allegation.

**B.    Count II – Infringement of U.S. Patent No. 9,735,755 (the '755 Patent)**

88. Qorvo incorporates by reference the allegations of paragraphs 1 through 87 set forth above.

**ANSWER:** Akoustis incorporates by reference the responses to allegations of paragraphs 1 through 87 set forth above.

89. Akoustis infringes the '755 Patent under 35 U.S.C. § 271(a) by making, using, selling, or offering for sale the 3-7 GHz BAW RF filter portfolio including, but not limited to, its 5.2 GHz RF BAW filters (i.e., AKF-1252), 5.6 GHz RF BAW filters (i.e., AKF-1256), 3.6 GHz CBRS bandpass BAW filters (i.e., AKF-1336), and 3.5 GHz 5G coexistence BAW filters (i.e., AKF-10235), along with related products (collectively, and as defined above, the "Accused Products"), which utilize the inventions disclosed and claimed in the '755 Patent. On information

and belief, the Accused Products are of similar design and construction as it pertains to the '755 Patent.

**ANSWER:**    Akoustis denies allegations of infringement.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 89 and therefore denies them.

90.    Qorvo recently acquired a sample Accused Product, conducted testing and analysis on it, and determined that it meets all of the limitations of one or more claims of the '755 Patent. As an example, Akoustis directly infringes at least independent claim 9 of the '755 Patent.  The Accused Products are BAW resonators comprising a piezoelectric layer, a first electrode on a first surface of the piezoelectric layer, a second electrode on a second surface of the piezoelectric layer opposite the first electrode.

**ANSWER:**    Akoustis denies allegations of infringement.  Akoustis denies that the Accused Products are BAW resonators.  The Accused Products each include Bulk Acoustic Wave resonators, and the BAW resonators in the Accused Products each include a piezoelectric layer and two electrodes located on opposite sides of the piezoelectric layer.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 90 and therefore denies them.

91.    To render a surface of the second electrode inert, the Accused Products include a passivation layer. The passivation layer is on the surface of the second electrode opposite the piezoelectric layer within an active region of the BAW resonators. The passivation layer has a thickness (TPA) within the active region of the BAW resonators.

**ANSWER:**    Akoustis denies allegations of infringement.  The BAW resonators in the Accused Products each include a passivation layer on a surface of the second electrode opposite the

piezoelectric layer.  The passivation layer has a substantially uniform thickness.  Akoustis objects to this Paragraph 91 to the extent that it calls for a legal conclusion with respect to a claim term for which Akoustis contends that plain and ordinary meaning does not apply; and on that basis cannot admit or deny such allegations set forth in paragraph 91.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 91 and therefore denies them.

92.     The Accused Products further include one or more material layers on the second surface of the piezoelectric layer adjacent to the second electrode in an outer region of the BAW resonators. The outer region of the BAW resonators is a region outside of the active region of the BAW resonators. The one or more material layers have a thickness that is n times the thickness (TPA) of the passivation layer within the active region, wherein: n is a value other than 1. For example, the Akoustis AKF-10235 BAW Filter has one or more material layers outside an active region with a thickness of about 1.5 to 1.6 times a thickness of the passivation layer within the active region.

**ANSWER:**     Akoustis denies allegations of infringement.  Akoustis objects to this Paragraph 92 as it calls for a legal conclusion with respect to claim terms for which Akoustis contends that plain and ordinary meaning does not apply; and on that basis cannot admit or deny the allegations set forth in paragraph 92.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 92 and therefore denies them.

93.     In the Accused Products, "n" is such that the outer region of the BAW resonators and the active region of the BAW resonators are acoustically matched in such a manner that the

energy of the one or more acoustic wavelengths leaked into the outer region is not excited in the active region.

**ANSWER:**    Akoustis denies allegations of infringement.  Akoustis objects to this Paragraph 92 as it calls for a legal conclusion with respect to claim terms for which Akoustis contends that plain and ordinary meaning does not apply; and on that basis cannot admit or deny the allegations set forth in paragraph 93.  Akoustis is without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 93 and therefore denies them.

94.    Thus, Akoustis has infringed, and continues to infringe, at least claim 9 of the '755 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products that are covered by one or more claims of the '755 Patent.

**ANSWER:**    Denied.

95.    On information and belief, Akoustis has been and is inducing infringement of the '755 Patent in violation of 35 U.S.C. § 271(b) at least by actively and knowingly inducing its customers to, literally or under the doctrine of equivalents, make, use, sell, and/or offer for sale in the United States, and/or import into the United States, products incorporating the Accused Products which utilize the inventions disclosed and claimed in the '755 Patent. Specifically, Akoustis induces infringement of the '755 Patent by publishing instructions on its website instructing third parties on how to use the Accused Products. These instructions include recommendations for customers of the Accused Products on how to solder and package the Accused Products as part of customer systems. Akoustis' intent is further demonstrated by PCB

diagrams published on its website that instruct customers on PCB metal, solder mask, and stencil pattern layouts for implementing the Accused Products in infringing systems.

**ANSWER:**     Denied.

96.     As of the introduction of the Accused Products, Akoustis has had knowledge of the '755 Patent and Akoustis' infringement thereof, because the Ex-Qorvo BAW Employees, including former executives of Qorvo who are now executives of Akoustis, knew of the '755 patent and brought that knowledge to Akoustis. Akoustis also has known and knows that its customers' use, sale, and offering for sale of the Accused Products constitutes infringement of at least claim 9 of the '755 Patent for the same reasons set forth above.

**ANSWER:**     Denied.

97.     Akoustis' infringement of the '755 patent is willful, deliberate, and intentional, and Akoustis is acting in reckless disregard of Qorvo's patent rights.

**ANSWER:**     Denied.

98.     Because of Akoustis' infringement of the '755 patent, Qorvo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

**ANSWER:**     Denied.

99.     Unless enjoined, Akoustis, and/or others acting on behalf of Akoustis, will continue their infringing acts, thereby causing additional irreparable injury to Qorvo for which there is no adequate remedy at law.

**ANSWER:**     Denied.

100.     Akoustis' actions render this an exceptional case and entitle Qorvo to attorneys' fees and costs under 35 U.S.C. § 285.

**ANSWER:**    Akoustis asserts that the issues raised in paragraph 100 are not factual issues but rather a legal conclusion that requires no response.  To the extent a response is required, Akoustis denies the allegation.

      **C.**    **Count III - Lanham Act False Advertising Under 15 U.S.C. § 1125(a).**

     101.   Qorvo incorporates by reference the allegations of paragraphs 1 through 100 set forth above.

**ANSWER:**    Akoustis incorporates by reference the responses to allegations of paragraphs 1 through 100 set forth above.

     102.   Akoustis describes its BAW filters as being "single crystal" construction, which misrepresents the nature, characteristics, and/or qualities of Akoustis' BAW filters and constitutes false advertising in violation of 15 U.S.C. § 1125(a).

**ANSWER:**    Denied.

     103.   Akoustis' description of its BAW filters as being "single crystal" is made in commercial advertising or promotion, including via Akoustis' website, presentations, and press releases. Akoustis also describes its BAW filters as being "single crystal" in its SEC filings.

**ANSWER:**     Admitted that Akoustis has marketed and manufactured BAW filter devices containing resonators that include either single-crystal or polycrystalline piezoelectric materials and publicly stated the same.  All remaining allegations of paragraph 103 are denied including that all BAW filter products use single or polycrystalline piezoelectric material as that has changed over time.

     104.   Akoustis falsely or misleadingly represents to the consuming public, customers, potential customers (collectively, the "target customers") and investors that Akoustis' BAW filters are of a "single crystal" construction to support a claim of superior performance over the competition. However, Akoustis' BAW filters are, in fact, polycrystalline.

**ANSWER:**     As to the first sentence, denied.  As to the second sentence, admitted that all current Akoustis BAW filter products are polycrystalline but denied that none of the Akoustis BAW filter devices have been single-crystal.

105.     Akoustis' false or misleading representations that its BAW filters are "single crystal" actually deceives a substantial portion of the target customers, or has the tendency to deceive the target customers.

**ANSWER:**     Denied.

106.     On information and belief, Akoustis used its false or misleading representations of its BAW filters as "single-crystal" to promote and advertise that it has better technology than Qorvo, or that its BAW filters have better performance than Qorvo's filters. Akoustis' false or misleading representations that its BAW filters are "single crystal" are material because they are likely to influence the purchasing decisions of the target customers.

**ANSWER:**     Denied.

107.     Akoustis' false or misleading representations that its BAW filters are "single crystal" involves BAW filters that are advertised, promoted, sold, and distributed in interstate commerce, including via Akoustis' website.

**ANSWER:**     Denied.

108.     Akoustis' false or misleading representations that its BAW filters are "single crystal" have competitively injured, and are likely to further competitively injure, Qorvo by diverting sales from target customers and through loss of their goodwill.

**ANSWER:**     Denied.

109.     Akoustis knows that its representations of its BAW filters as being of a "single crystal" construction are false or misleading.

**ANSWER:**     Denied.

110.     Akoustis' false or misleading representations of fact are done with bad faith and malice or reckless indifference to Qorvo's and consumers' interests.

**ANSWER:**     Denied.

111.     Based upon the above wrongful acts of Akoustis, Qorvo has incurred monetary damages through the diversion of sales and loss of goodwill in an amount to be fully demonstrated at trial.

**ANSWER:**     Denied.

112.     Akoustis' intentional and bad faith or misleading representations of fact will continue until enjoined by this Court.

**ANSWER:**     Denied.

113.     Qorvo is entitled to preliminary and permanent injunctive to prevent Defendant's continued false advertising.

**ANSWER:**     Akoustis asserts that the issues raised in paragraph 113 are not factual issues but rather a legal conclusion that requires no response.  To the extent a response is required, Akoustis denies the allegation.

**D.**     **Count IV – False Patent Marking Under 35 U.S.C. § 292**

114.     Qorvo incorporates by reference the allegations of paragraphs 1 through 104 set forth above.

**ANSWER:**     Akoustis incorporates by reference the responses to allegations of paragraphs 1 through 113 set forth above.

115.     Akoustis has marked each of the Accused Products with U.S. Patent No. 10,256,786 on datasheets available on its website (see ALL PRODUCTS – AKOUSTIS

TECHNOLOGIES, https://akoustis.com/products/filters/applications/all-products/ (last visited Sept. 14, 2021)).

**ANSWER:**     Admitted.

116.     The independent claims of U.S. Patent No. 10,256,786 recite piezoelectric layers. Based on the disclosure of U.S. Patent No. 10,256,786 and Akoustis' statements, the recited piezoelectric layers are single-crystal.

**ANSWER:**     Admitted that U.S. Patent No. 10,256,786 speaks for itself, but Akoustis denies any remaining allegations of paragraph 116.

117.     However, Akoustis' BAW filter products are not "single-crystal." They are polycrystalline. On information and belief, Akoustis regularly tests and analyzes its BAW filter products and knew or should have known that Akoustis' BAW filter products are polycrystalline. Moreover, Akoustis knew or should have known that U.S. Patent No. 10,256,786 covered only single-crystal piezoelectric layers.

**ANSWER:**     Denied as Qorvo appears to assume incorrectly that all of Akoustis' BAW filters are polycrystalline at all relevant times.  Admitted that Akoustis has made both single-crystal and polycrystalline and has conducted related testing and analysis of its filters.  Akoustis denies any remaining allegations of paragraph 117.

118.     Akoustis falsely marked the Accused Products with purpose or intent to deceive the public that the Accused Products were covered by U.S. Patent No. 10,256,786 in violation of 35 U.S.C. § 292. Akoustis engaged in the false marketing of its products to support a claim that the products are innovative and result in superior performance. Akoustis' false marking is material because it is likely to influence the purchasing decisions of the target customers.

Akoustis' false marking has competitively injured, and is likely to further competitively injure, Qorvo by diverting sales from target customers and through loss of their goodwill.

**ANSWER:**     Denied.

119.     Qorvo is entitled to compensatory damages in an amount to be determined at trial.

**ANSWER:**     Denied.

      **E.**     **Count V - Unfair and Deceptive Trade Practices Prohibited by N.C.G.S. § 75-1.**

120.     Qorvo incorporates by reference the allegations of paragraphs 1 through 119 set forth above.

**ANSWER:**     Akoustis incorporates by reference the responses to allegations of paragraphs 1 through 119 set forth above.

121.     By virtue of the aforesaid acts, Akoustis has engaged in unfair or deceptive acts or practices and in unfair methods of competition affecting commerce in the state of North Carolina. Such acts violate the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1.

**ANSWER:**     Denied.

122.     Qorvo owns and possesses the Qorvo BAW Proprietary Information and employed the Ex-Qorvo BAW Employees.

**ANSWER:**     Akoustis admits that Qorvo employed the Ex-Qorvo BAW Employees at one point in time.  As to any remaining allegations, Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 122 and therefore denies them.

123.     Qorvo's business is dependent on its ability to attract and keep key technical personnel and management. Qorvo has invested substantial time, effort, and expense in

developing its employees' knowledge and experience in the areas crucial to Qorvo's BAW filter technologies, including in RF engineering, integrated circuit and filter design, and technical marketing and support.

**ANSWER:**     Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 123 and therefore denies them.

124.     Akoustis has engaged in conscious, methodical, and systematic recruitment and solicitation of Qorvo's employees in all major areas. On information and belief, a large number of Akoustis' current employees are ex-Qorvo employees. As detailed above, these include many employees with significant technical and business experience crucial to BAW filter technology, such as the Ex-Qorvo BAW Employees.

**ANSWER:**     Akoustis denies any unlawful recruiting of current or former Qorvo employees including any scheme to improperly leverage Qorvo's intellectual property, the Patents-in-Suit or Qorvo BAW Proprietary Information.  Akoustis admits that it has hired certain former Qorvo employees including employees who were looking to separate from Qorvo.  As to any remaining allegations, Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 124 and therefore denies them.

125.     Akoustis is seeking to damage Qorvo's business through the recruiting and hiring away from Qorvo the Ex-Qorvo BAW Employees. This poaching is intended to damage Qorvo by attrition, rather than by fair competition in the marketplace.

**ANSWER:**     Denied.

126.     Moreover, as described above, the Ex-Qorvo BAW Employees have significant knowledge of the Qorvo BAW Proprietary Information, and were placed by Akoustis in positions with substantial responsibility that overlapped with those employees' previous roles at

Qorvo such that disclosure of the Qorvo BAW Proprietary Information was inevitable. On information and belief, the Ex-Qorvo BAW Employees were hired for the specific purpose of using their knowledge and experience of Qorvo's BAW filter business to permit Akoustis to compete directly against Qorvo for customers and market share.

**ANSWER:**    Denied.

127.    The Qorvo BAW Proprietary Information derives independent economic value, actual or potential, from not being known generally to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 127 and therefore denies them.

128.    Qorvo expended substantial effort, time, and capital in developing, maintaining, and possessing the Qorvo BAW Proprietary Information that it incorporated into its highly successful BAW filter products.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 128 and therefore denies them.

129.    During their employment by Qorvo, the Ex-Qorvo BAW Employees hired by Akoustis had access to the Qorvo BAW Proprietary Information.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 129 and therefore denies them.

130.    Following the termination of their employment, the Ex-Qorvo BAW Employees were not authorized to disclose, share, use, or possess the Qorvo BAW Proprietary Information.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 130 and therefore denies them.

131.    Akoustis was aware that the Ex-Qorvo BAW Employees it recruited and hired had entered into binding agreements with Qorvo that prohibited the employees from taking, disclosing, using, sharing, or possessing the Qorvo BAW Proprietary Information.

**ANSWER:**    Akoustis is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 131 and therefore denies them.

132.    On information and belief, Akoustis requested the Ex-Qorvo BAW Employees to disclose, use, or share the Qorvo BAW Proprietary Information as part of Akoustis' recruitment process, or otherwise expected the Ex-Qorvo BAW Employees to disclose, use, or share, the Qorvo BAW Proprietary Information as part of their employment at Akoustis, or implemented a hiring scheme that resulted in the Ex-Qorvo BAW Employees inevitably disclosing, using, or sharing, the Qorvo BAW Proprietary Information as part of their employment at Akoustis.

**ANSWER:**    Denied.

133.    As set forth above, one example of Akoustis' efforts to obtain Qorvo BAW Proprietary Information as part of the recruitment process occurred in late 2020 when an Akoustis engineering manager asked a Qorvo RF Product Engineer to access Qorvo's computer systems during a job interview and provide screen shots of Qorvo BAW Proprietary information to Akoustis.

**ANSWER:**    Denied.

134.    On information and belief, Ex-Qorvo BAW Employees have disclosed, shared, or used the Qorvo BAW Proprietary Information, at least inevitably, as part of their job responsibilities at Akoustis.

**ANSWER:**   Denied.

135.   On information and belief, the Ex-Qorvo BAW Employees will continue to disclose, share, or use the Qorvo BAW Proprietary Information as part of their job responsibilities at Akoustis unless and until they are enjoined by this Court from doing so.

**ANSWER:**   Denied.

136.   On information and belief, the poaching of the Ex-Qorvo BAW Employees and the misappropriation of the Qorvo BAW Proprietary Information has resulted in Akoustis being able to bring its "3-7 GHz BAW RF filter portfolio," including the Accused Products, to market in a timeframe that is highly unlikely, if not impossible, without these unfair practices. Akoustis' "3-7 GHz BAW RF filter portfolio," has been placed in commerce in North Carolina, and interstate and foreign commerce, within the past four years.

**ANSWER:**   Denied.

137.   As a result of Akoustis' wrongful conduct, Qorvo has been substantially and irreparably harmed in an amount not readily capable of determination and for which there is no adequate remedy at law. Unless restrained by this Court, Akoustis will cause further irreparable injury to Plaintiff.

**ANSWER:**   Denied.

138.   Qorvo is entitled to preliminary and permanent injunctive relief enjoining Akoustis, its agents and employees, and all persons acting in concert or participation with Akoustis, from engaging in any further poaching of Qorvo employees and/or use of the Qorvo BAW Proprietary Information.

**ANSWER:**   Denied.

139.     Moreover, Akoustis has engaged in unfair or deceptive acts or practices and unfair methods of competition affecting commerce in the state of North Carolina through Akoustis' false or misleading representations to the target customers and investors that Akoustis' BAW filters are of a "single crystal" construction. Akoustis' false or misleading representations that its BAW filters are "single crystal" actually deceives, or has the tendency to deceive, the target customers, and its representations are material because they are likely to influence the purchasing decisions of the target customers. Akoustis' false or misleading representations have competitively injured, and are likely to further competitively injure, Qorvo by diverting sales from target customers and through loss of their goodwill.

**ANSWER:**     Denied.

140.     On information and belief, Akoustis has made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

**ANSWER:**     Denied.

141.     On information and belief, Akoustis' violations of N.C.G.S. § 75-1.1 have directly and proximately caused and continue to cause Qorvo substantial actual damages in North Carolina and throughout the United States, and Qorvo is entitled to recover actual damages in an amount to be proven at trial.

**ANSWER:**     Denied.

142.     Pursuant to N.C.G.S. § 75-1.16 and N.C.G.S. § 75-1.6.1 Qorvo is entitled to treble damages and attorney fees for Akoustis' unfair and deceptive trade practices and unfair methods of competition.

**ANSWER:**     Akoustis asserts that the issues raised in paragraph 142 are not a factual issue but rather a legal conclusion that requires no response.  To the extent a response is required, Akoustis denies the allegation.

## VI.    PRAYER FOR RELIEF

The prayer for relief requires no response.

## VII.    JURY DEMAND

Akoustis demands a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

Akoustis' Affirmative Defenses are listed below.  To the extent any affirmative defense raises an issue that is part of Qorvo burden, including its prima face case, Akoustis is not assuming the burden of proof or conceding any such issue need not be established by Qorvo.

### FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

1.      Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

2.      Qorvo's Complaint fails to state a claim against Akoustis upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

3.      Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

4.      Akoustis has not infringed either directly or indirectly any valid claim of the Patents-in-Suit either literally or under the doctrine of equivalents.  By asserting this defense, Akoustis does not assume any burden of proof.

- 53 -

## THIRD AFFIRMATIVE DEFENSE – INVALIDITY

5.      Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

6.      One or more asserted claims of the Patents-in-Suit are invalid for failing to comply with the requirements of 35 U.S.C. § 1 *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112.

## FOURTH AFFIRMATIVE DEFENSE – ATTORNEY FEES UNAVAILABLE

7.      Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

8.      On information and belief, Plaintiff cannot prove that this is an exceptional case and is therefore precluded from seeking recovery of its attorneys' fees under the provisions of 35 U.S.C. § 285.  By asserting this defense, Akoustis does not assume any burden of proof.

## FIFTH AFFIRMATIVE DEFENSE – EXCEPTIONAL CASE

9.      The Court should award Akoustis reasonable attorneys' fees because this is an exceptional case, pursuant to 35 U.S.C. § 285, together with its costs and interest to the extent permitted by law, for at least the following reasons:

   a)      Plaintiff's infringement allegations assert inducement allegations without any material factual basis or support.

   b)      Plaintiff's infringement allegations assert willfulness allegations without any material factual basis or support.

   c)      Plaintiff's false advertising allegations are not based on the claim language and are without any material factual basis or support.

d)      Plaintiff's false marking allegations are not based on the claim language, and are without any material factual basis or support.

e)      Plaintiff's unfair state practices allegations are without any material factual basis or support.

## SIXTH AFFIRMATIVE DEFENSE – FAILURE TO MARK

10.      On information and belief, Plaintiff did not provide actual or constructive notice to Defendants of infringement of the Patents-in-Suit before filing the present litigation, precluding any relief for pre-suit damages or claims of willful or induced infringement.  By asserting this defense, Akoustis does not assume any burden of proof.

## SEVENTH AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

11.      Qorvo's Complaint is barred in whole or in part by the applicable statute of limitations.  On information and belief, Qorvo has known since in or about 2015 that Akoustis has been developing and designing various BAW filters, yet Qorvo has never once, in all that time prior to this action, suggested, requested, demanded, or otherwise informed Akoustis to cease and desist from any activity whatsoever, including raising any concerns about any former Qorvo employee hired by Akoustis.

## EIGHTH AFFIRMATIVE DEFENSE – LACHES

12.      Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

13.      On information and belief, claims by Plaintiff for relief are barred as a matter of equity because Qorvo unjustifiably and unreasonably delayed in commencing this action, that the delay prejudiced the rights of Akoustis, and, therefore, Qorvo's claims should be barred under the doctrine of laches.

### NINTH AFFIRMATIVE DEFENSE – EQUITABLE ESTOPPEL

14.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above as well as paragraphs 11 and 13 of these affirmative defenses and hereby incorporates them herein as if set forth in full.

15.     Qorvo is estopped from asserting claims for relief against Akoustis by reason of representations, conduct, or omissions of Qorvo or their predecessor entities in connection with the subject matter of this action.

### TENTH AFFIRMATIVE DEFENSE – OTHER EQUITABLE DEFENSES

16.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above as well as paragraphs 11 and 13 of these affirmative defenses and hereby incorporates them herein as if set forth in full.

17.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and unclean hands.

### ELEVENTH AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE

18.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above as well as paragraphs 11 and 13 of these affirmative defenses and hereby incorporates them herein as if set forth in full.

19.     Plaintiff's claims are barred, in whole or in part, by its failure to mitigate damages.

### TWELFTH AFFIRMATIVE DEFENSE – LAWFUL BUSINESS CONDUCT

20.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

21.     Qorvo's Complaint is barred in whole or in part because Akoustis' conduct was lawful.  Akoustis' conduct was undertaken in good faith and for legitimate business reasons.

## THIRTEENTH AFFIRMATIVE DEFENSE – NO DUTY

22.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

23.     Qorvo's Complaint is barred in whole or in part because Akoustis has not breached any legal duty, contractual or otherwise, owing to Qorvo.

## FOURTEENTH AFFIRMATIVE DEFENSE –
## EMPLOYEES HAVE THE RIGHT TO CHANGE JOBS

24.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

25.     Qorvo's Complaint is barred in whole or in part because employee mobility and related recruiting is lawful conduct.

## FIFTEENTH AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE

26.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

27.     Qorvo's Complaint is barred in whole or in part because Qorvo failed to mitigate its damages, including failing to raise an issue that it now alleges has been ongoing since 2014.

## SIXTEENTH AFFIRMATIVE DEFENSE –
## QORVO RESPONSIBLE FOR ITS BUSINESS

28.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

29.     Qorvo's Complaint is barred in whole or in part because Qorvo is responsible for its own business failings, including the decision by former Qorvo employees to change job and work for another competitor.

## SEVENTEENTH AFFIRMATIVE DEFENSE – NO INJURY UNDER NORTH CAROLINA LAW

30.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

31.     Qorvo's claims under N.C. Gen. Stat. § 75-1.1, *et seq.* are barred, in whole or in part, because Qorvo has not suffered any actual cognizable injuries or damages under N.C. Gen. Stat. § 75-16 or otherwise under the laws of North Carolina as a result of the conduct complained of herein.

## EIGHTEENTH AFFIRMATIVE DEFENSE – NO INJURY, NO CAUSATION

32.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

33.     Qorvo suffered no actual injury and, to the extent either one did, Akoustis was not the proximate or legal cause of Qorvo's injury.

## NINETEENTH AFFIRMATIVE DEFENSE – CAUSATION

34.     Akoustis re-alleges and incorporates the responses to the allegations of paragraphs 1 through 142 above and hereby incorporates them herein as if set forth in full.

35.     Qorvo's Complaint is barred in whole or in part because any damages alleged by Qorvo, which allegations are denied by Akoustis, should be limited or reduced based on the failures and actions of Qorvo.

## TWENTIETH AFFIRMATIVE DEFENSE – RESERVATION

36.     Akoustis reserves the right to amend its Answer and Affirmative Defenses as additional information comes to light throughout this case including information that after the date of this response becomes known or available to Akoustis or the relevance of known information and documents becomes apparent.  This certainly includes the allegations related to Qorvo Proprietary Information (as defined by Qorvo) which has yet to be set forth in any reasonable manner.   Akoustis requests that the Court grant leave to amend this Answer especially with regard to, but not limited to, the unfair competition allegations.

## AKOUSTIS' PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, Akoustis respectfully requests judgment and relief as follows:

a)  Plaintiff's Complaint be dismissed with prejudice and denied all relief of any kind;

b)  This Court deny, in its entirety, the relief sought by Plaintiff's Complaint and Prayer for Relief including, but not limited to, alleged damages, costs, attorneys' fees and injunctive relief;

c)  This Court adjudge asserted claims of the Patents-in-Suit invalid;

d)  This Court adjudge that the asserted claims of the Patents-in-Suit are not infringed, directly or indirectly, by Akoustis;

e)  This Court adjudge that Akoustis has not willfully infringed any asserted claim of the Patents-in-Suit;

f)  This Court adjudge that Akoustis has not falsely marked its BAW filter products;

g)  This Court adjudge that Akoustis has not falsely advertised its BAW filter products;

h)  This Court adjudge that Akoustis has not violated North Carolina law relating to UDTP or otherwise;

    i)   This Court declare this case to be exceptional and award Akoustis its reasonable attorneys' fees, expenses, and costs in this action; and

    j)   This Court grant such other and further relief to Akoustis as the Court may deem proper.

May 31, 2022

PILLSBURY WINTHROP
SHAW PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

   *Attorneys for Akoustis Technologies, Inc.
   and Akoustis, Inc.*

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

   *Attorneys for Akoustis Technologies, Inc. and
   Akoustis, Inc.*