IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | DEMAND FOR JURY TRIAL |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Trevor J. Quist
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1540 El Camino Real
Menlo Park, CA 94025
(650) 815-2600

*Attorneys for Plaintiff Qorvo, Inc.*

August 30, 2022

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................ 1

II.  OVERVIEW OF THE TECHNOLOGY ............................................................. 1

III.  LEGAL STANDARD............................................................................................ 2

IV.  DISPUTED CLAIM TERMS ............................................................................... 4

    A.  The '755 Patent ......................................................................................... 4

        1.  "Active Region" / "Outer Region" ............................................. 6

        2.  "A Density Of Mechanical Energy In The Outer Region Of The BAW Resonator Is Reduced As Compared To A Density Of Mechanical Energy In The Outer Region Of The BAW Resonator When N Is Equal To 1" .. 11

        3.  "Acoustically Matched In Such A Manner That One Or More Wavelengths That Cause Energy Leakage Into The Outer Region Are Not Excited In The Active Region"................................................................. 16

    B.  The '786 Patent ....................................................................................... 19

        1.  "Piezoelectric Layer" ................................................................ 20

V.  CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Abbott Labs. v. Sandoz, Inc.*
    544 F.3d 1341 (Fed. Cir. 2008)..............................................................................16

*Adams Resp. Therapeutics v. Perrigo Co.*
    616 F.3d 1283 (Fed. Cir. 2010)..............................................................................24

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*
    811 F.3d 1334 (Fed. Cir. 2016)..............................................................................15

*Allergan Sales, LLC v. Sandoz, Inc.*
    935 F.3d 1370 (Fed. Cir. 2019)................................................................................3

*Apple Inc. v. MPH Techs. Oy*
    28 F.4th 254 (Fed. Cir. 2022) ..................................................................................3

*AstraZeneca LP v. Apotex, Inc.*
    633 F.3d 1042 (Fed. Cir. 2011)..............................................................................25

*Barry Fiala, Inc. v. Card USA, Inc.*
    292 F. Supp. 2d 1009 (W.D. Tenn. 2003)..............................................................22

*Default Proof Credit Card v. Home Depot*
    412 F.3d 1291 (Fed. Cir. 2005)..............................................................................19

*Eon Corp. v. Silver Spring Networks, Inc.*
    815 F.3d 1314 (Fed. Cir. 2016)..........................................................................3, 10

*GPNE Corp. v. Apple Inc.*
    830 F.3d 1365 (Fed. Cir. 2016)..............................................................................21

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*
    887 F.2d 1050 (Fed. Cir. 1989)..............................................................................15

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*
    933 F.3d 1345 (Fed. Cir. 2019)................................................................................3

*Meds. Co. v. Mylan, Inc.*
    853 F.3d 1296 (Fed. Cir. 2017)..............................................................................24

*Neville v. Foundation Constructors, Inc.*
    972 F.3d 1350 (Fed. Cir. 2020)..............................................................................18

*Newell Operating Co. v. Intercrown USA*
    No. 06-C-50241, 2008 WL 5760155 (N.D. Ill. June 13, 2008)..............................16

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...............................................................3

*Profectus Tech. LLC v. Huawei Techs. Co.*
    823 F.3d 1375 (Fed. Cir. 2016) ................................................................3, 9, 10

*Prolifiq Software Inc. v. Veeva Sys. Inc.*
    No. 13-03644, 2014 WL 3870016 (N.D. Cal. Aug. 6, 2014) ................................16

*Retractable Techs. Inc. v. Becton, Dickinson & Co.*
    653 F.3d 1296 (Fed. Cir. 2011) ..............................................................................21

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*
    242 F.3d 1337 (Fed. Cir. 2001) .........................................................................23, 24

*Sumitomo Dainippon Pharma Co. v. Emcure Pharms. Ltd.*
    887 F.3d 1153 (Fed. Cir. 2018) ................................................................................2

*VirnetX, Inc. v. Cisco Sys., Inc.*
    767 F.3d 1308 (Fed. Cir. 2014) ..............................................................................21

*Wasica Finance GmbH v. Continental Auto. Sys., Inc.*
    853 F.3d 1272 (Fed. Cir. 2017) ..............................................................................15

*Wisconsin Alumni Rsch. Found. v. Apple Inc.*
    905 F.3d 1341 (Fed. Cir. 2018) ..............................................................................25

*Zodiac Pool Care, Inc. v. Red Leopard, LLC*
    No. 10-04747, 2011 WL 13217288 (C.D. Cal. June 7, 2011) ..............................16

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|:---:|:---|
| A1 | *Initial Claim Construction Declaration of John C. Bravman, Ph.D.* ("Bravman Initial Decl.") |
| A2 | *Rebuttal Claim Construction Declaration of John C. Bravman, Ph.D.* ("Bravman Rebuttal Decl.") |
| A3 | *RF Bulk Acoustic Wave Filters for Communications* (Ken-ya Hashimoto ed., 2009 ("Hashimoto") |
| A4 | *Initial Claim Construction Expert Report and Declaration by Dr. Clark Nguyen* ("Nguyen Initial Decl.") |
| A5 | *Rebuttal Claim Construction Expert Report and Declaration by Dr. Clark Nguyen* ("Nguyen Rebuttal Decl.") |
| A6 | Transcript for Deposition of Dr. John C. Bravman, August 12, 2022 ("Bravman Tr.") |
| A7 | Transcript for Deposition of Dr. Clark Nguyen, August 10, 2022 ("Nguyen Tr.") |
| A8 | U.S. Patent No. 7,795,781 |
| A9 | U.S. Patent No. 8,999,187 |
| A10 | U.S. Patent No. 9,197,185 |
| A11 | U.S. Patent No. 9,679,765 |
| A12 | Akoustis Ex. B03 (U.S. Patent Publication No. 2014/0159548) |
| A13 | Akoustis Ex. B05 (F. Shen et al., *Energy Trapping in Mesa-shaped Quartz Crystal Microbalance*, 2002 IEEE: Sensors (Nov. 2002)) |

| Exhibit No. | Description |
|---|---|
| A14 | Akoustis Ex. B08 (Li-Wen Hung & Clark T-C. Nguyen, *Capacitive-piezoelectric Transducers for High-Q Micromechanical AlN Resonators*, 24 J. of Microelectromechanical Sys. No. 2, (Apr. 2015)) |
| A15 | Akoustis Ex. B10 (Clark T-C. Nguyen et al., *A Negative-Capacitance Equivalent Circuit Model for Parallel-plate Capacitive-gap-transduced Micromechanical Resonators*, 61 IEEE Transactions On Ultrasonics, Ferroelectrics, and Frequency Control No. 5, (May 2014)) |
| A16 | Akoustis Ex. B15 (Mustafa U. Demirci & Clark T-C. Nguyen, *Higher-mode Free-free Beam Micromechanical Resonators*, Symposium, 2003 IEEE Int'l Frequency Control (May 5-8, 2003)) |
| A17 | Akoustis Ex. B16 (Clark T-C. Nguyen et al., *RF Channel-select Micromechanical Disk Filters—Part II: Demonstration*, 66 IEEE Transactions On Ultrasonics, Ferroelectrics, and Frequency Control No. 1 (Jan. 2019)) |

## I.      INTRODUCTION

The parties dispute the meaning of three claim terms in Qorvo's '755 Patent and one in

Akoustis' '786 Patent. The disputed terms utilize straightforward language and would have been

easily understood by a person of ordinary skill in the art at the time of the respective inventions

("POSITA")[1] without detailed explanation or resort to publications. For each term, according to

well-established claim construction precedent of the Federal Circuit, Qorvo offers constructions

based on the patents' ***intrinsic record*** (*i.e.*, the patents' claims, specification, and prosecution

history). Akoustis, in contrast, ignores the intrinsic record, basing its constructions on cherry-

picked language from ***extrinsic*** sources unrelated to the patents, or its experts' unsupported

statements. Akoustis' approach violates the rules of claim construction and must be disregarded.

## II.     OVERVIEW OF THE TECHNOLOGY

The '755 and '786 Patents both relate to structural features of Bulk Acoustic Wave

("BAW") resonators used as filters in wireless devices (*e.g.*, smartphones). Bravman Initial

Decl., ¶7. The heart of a BAW resonator is a piezoelectric layer sandwiched between two

metallic electrodes, as shown here. *See id.*, ¶8. The



materials forming the piezoelectric layer are capable of

converting electrical energy (*e.g.*, a voltage across the

two electrodes) into mechanical energy (*e.g.*, vibrations). Hashimoto at 51. In the above BAW

resonator configuration, the piezoelectric layer is electrically driven by applying voltages to the

---

[1] The parties largely agree as to the definition of a POSITA (*e.g.*, as Qorvo proposes, an artisan with "a bachelor's degree, or the equivalent degree, in electrical engineering, materials science, physics, or a related field, and 3-5 years of experience in the research, design, or development of thin film devices, or equivalent experience"). Bravman Initial Decl., ¶14; *accord.* Nguyen Initial Decl., at 9. And both expert witnesses agree that the competing definitions do not affect the claim construction analysis. Bravman Tr., 17:16-18:6; *accord.* Nguyen Tr., 26:16-27:3.

electrodes, causing it to mechanically vibrate and excite particular acoustic waves which are internally reflected from the top and bottom surfaces to form a standing acoustic wave. Bravman Initial Decl., ¶8.

Conceptually, the standing wave (*e.g.*, the black wave here) results from combining reflected waves (*e.g.*, the red and green waves). A simple real world example is a plucked guitar string. A standing acoustic wave creates a BAW resonator's filtering effect, allowing only desired frequencies to pass. *See* Hashimoto at



1-2. The properties of the standing acoustic wave (*e.g.*, wavelength, amplitude) are set by the physical properties (*e.g.*, composition, mass, thickness) of the electrodes and piezoelectric layer, along with the surrounding structure(s) discussed below. *See* Hashimoto at 97-101.

The stack of electrodes and piezoelectric layer themselves cannot contain all of the acoustic waves generated therein. BAW resonators therefore include supporting structure to reduce wave leakage. Bravman Initial Decl., ¶11. For example, as shown here, supporting structures may include reflectors (as used in a BAW-SMR type device) or an air cavity (as used in an FBAR device) prevent ***vertical*** escape of



waves. *Id.*, ¶12. Prevention of ***lateral*** leakage (*e.g.*, left/right in these figures) is a focus of the '755 Patent, as discussed below.

## III. LEGAL STANDARD

The Court is no doubt familiar with general claim construction principles, but Qorvo will highlight precedent particularly relevant here. The goal for the Court when construing a disputed term is to identify the term's "ordinary and customary" or "plain and ordinary" meaning to a

POSITA. *Sumitomo Dainippon Pharma Co. v. Emcure Pharms. Ltd.*, 887 F.3d 1153, 1157 (Fed. Cir. 2018). The ordinary meaning of a term "is not the meaning of the term in the abstract." *Eon Corp. v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1321 (Fed. Cir. 2016). "Plain and ordinary meaning[] is the meaning one of ordinary skill in the art would ascribe to a term when read in the context of the claim, specification, and prosecution history." *Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022); *Eon Corp.*, 815 F.3d at 1321 ("the ordinary meaning of a claim term is its meaning to the ordinary artisan **after** reading the entire patent."). The claims, specification, and prosecution history of a patent together is known as the patent's "intrinsic record." *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d 1345, 1350 (Fed. Cir. 2019).

Mechanically, "claim construction must begin with the words of the claims themselves." *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1373 (Fed. Cir. 2019). Next, the Court should review the patent's specification, as it "is always highly relevant to claim construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). Indeed, the specification "is the single best guide to the meaning of a disputed term" and "[u]sually, it is dispositive." *Id*. Finally, the Court "should also consider the patent's prosecution history" to the extent it addresses the claim term. *Id.* at 1317.

In addition to the intrinsic record, a court **may** also consider extrinsic evidence, such as dictionaries and treatises. *Phillips*, 415 F.3d at 1317-1318. However, the Federal Circuit has found that it is unnecessary to consider extrinsic evidence where "the intrinsic evidence fully determines the proper construction of the contested claim term." *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1381 (Fed. Cir. 2016). Moreover, while extrinsic evidence "can shed useful light, . . . it is less significant than the intrinsic [evidence]" to determine the "meaning of

claim language." *Phillips*, 415 F.3d at 1317. In no case can extrinsic evidence be used "to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id*. at 1324.

## IV.    DISPUTED CLAIM TERMS

### A.    The '755 Patent

The '755 Patent focuses on a configuration where "an outer region of the BAW resonator is engineered in such a manner that lateral leakage of mechanical energy from an active region of the BAW resonator is reduced." '755 Patent, Abstract, 2:30-34. To understand this concept, the '755 Patent provides comparison embodiments in FIGS. 2A (reference) and 2B (inventive). FIG. 2A shows reference BAW resonator 38 with piezoelectric layer 40 and electrodes 42, 44, along with reflector structure 46 and border ring 58. '755 Patent, 5:24-6:5. Reference BAW resonator 38 also includes passivation layer 60 with a constant thickness ($T_{PA}$) over both an active region 62 and an outer region 64. '755 Patent, 6:6-25.

In comparison, FIG. 2B shows an example of the inventive "BAW resonator 66 with improved lateral confinement (*i.e.*, reduced lateral leakage) of mechanical energy" with piezoelectric layer 68, electrodes 70, 72, reflector 74, and border ring 86 that are "the same as the corresponding components of the reference BAW resonator 38." '755 Patent, 6:32-41. The primary difference between FIG. 2A and 2B is the passivation layer 88:



Within the active region 90, the passivation layer 88 has a thickness ($T_{PA}$), which is equal to that of the passivation layer 60 of the reference BAW resonator 38. However, in the outer region 92, the passivation layer 60 has a thickness of

-4-

n×T$_{PA}$, where n≠1 (i.e., the thicknesses of the passivation layers 60 and 88 in the outer regions 64 and 92 of the reference BAW resonator 38 and the BAW resonator 66, respectively, are not the same).

'755 Patent, 6:48-54.

In other words, the '755 Patent discovered that adjusting the thickness of the passivation layer 88 in the outer region[2] versus the active region reduces lateral energy leakage from the active region. The value of n defining the passivation layer thickness in the outer region is:

> in a range that reduces the lateral leakage of mechanical energy from the active region 90 of the BAW resonator 66 into the outer region 92 as compared to that of the reference BAW resonator 38 of FIG. 2A. This reduction of lateral leakage is illustrated in FIG. 3B, where FIGS. 3A and 3B are graphical illustrations of the results of a simulation of the density of mechanical energy throughout the structures of the reference BAW resonator 38 and the BAW resonator 66, respectively.

'755 Patent, 6:54-63. FIGS. 3A and 3B are reproduced here.



By comparing them, one sees that the density of mechanical energy in the outer region of FIG. 3B is less than that in the outer region of FIG. 3A. This is true whether comparing the entirety of the depicted outer regions of FIGS. 3A and 3B, or smaller constituent regions thereof.

---

[2] The '755 Patent includes additional embodiments where the outer region is constructed of material layers 94 with the same thickness parameters. *See, e.g.*, FIG. 4.

-5-

Additionally, the '755 Patent describes that the value of n can be further selected:

> … such that the outer region 92 and the active region 90 of the BAW resonator 66 are acoustically matched such that one or more acoustic wavelengths that cause lateral leakage of mechanical energy from the active region 90 into the outer region 92 are not excited in the active region 90. As a result, the acoustic coupling between the active and outer regions 90 and 92 is mitigated and, as such, lateral leakage is reduced. In other words, n is selected such that the total thickness of the material on the surface of the piezoelectric layer 68 in the outer region 92 of the BAW resonator 66 changes the extinction coefficient associated with the exponential decay in the outer region 92 (as compared to that in the reference BAW resonator 38) and modifies the imaginary part of the lateral dispersion in the outer region 92 in such a manner that lateral leakage is reduced.

'755 Patent, 7:1-16.

In other words, the value of n can be selected such that the properties of the active and outer regions relative to each other interact (*e.g.*, the above-described "matching") to mitigate acoustic coupling (*i.e.*, the permissibility of acoustic waves between the regions) and reduce lateral leakage. Because, as discussed above, the material properties of various layers affect the properties of the waves that are excited in the active region, selecting the properties of the active and outer regions in the inventive manner results in particular wavelengths of the acoustic waves that would otherwise cause energy leakage to the outer region from the active region not being excited (*i.e.*, not excited at all or not excited enough) to cause such leakage. '755 Patent, 8:36-61.

### 1.    "Active Region" / "Outer Region"

| Qorvo's Proposed Construction | Akoustis' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning. If a construction is necessary, "active region" is the region of the BAW resonator that is electrically driven to provide the resonator functionality. | Active region: That region of the device where motional current density is generated through the piezoelectric layer. |
| Plain and Ordinary Meaning. If a construction is necessary, "outer region" is the region of the BAW resonator that is not electrically driven. | Outer region: defined as that region outside the active region. |

***Qorvo's Construction is Correct:*** Established Federal Circuit claim construction rule

support Qorvo's constructions (to the extent any are necessary) in view of the intrinsic record.

Looking first at how the terms are used in the claims, the '755 Patent's claim 1 recites (emphasis

added):

> 1. A Bulk Acoustic Wave (BAW) resonator, comprising:
>
> . . . a passivation layer on a surface of the second electrode opposite the piezoelectric layer within ***an active region*** of the BAW resonator, the passivation layer having a thickness (TPA) within ***the active region*** of the BAW resonator; and
>
> one or more material layers on the second surface of the piezoelectric layer adjacent to the second electrode in ***an outer region*** of the BAW resonator, ***the outer region*** of the BAW resonator being a region outside of ***the active region*** of the BAW resonator and the one or more material layers having a thickness that is n times the thickness (TPA) of the passivation layer within ***the active region***, wherein:
>
> n is a value other than 1; and
>
> n is within a range of values for which a density of mechanical energy in ***the outer region*** of the BAW resonator is reduced as compared to a density of mechanical energy in ***the outer region*** of the BAW resonator when n is equal to 1.

Claim 1 uses "active region" and "outer region" to define laterally ***where*** particular

thickness measurements are taken for comparison purposes (*e.g.*, the passivation layer thickness

in the active region ($T_{PA}$) versus the material layer thickness in the outer region ($n \times T_{PA}$)).

The '755 Patent's specification provides a specific description and express definition of

"active region" and "outer region," as shown by the bolded and italicized language in the

following reproduction of the specification:

> In operation, acoustic waves in the piezoelectric layer 12 within an active region 34 of the BAW resonator 10 are excited by an electrical signal applied to the bottom and top electrodes 14 and 16. ***The active region 34 is the region of the BAW resonator 10 that is electrically driven***. In other words, the active region 34 is the region of the BAW resonator 10 consisting of, in this example, the bottom electrode 14, the top electrode 16, the portion of the piezoelectric layer 12 between the bottom and top electrodes 14 and 16, and the portion of the reflector 18 below the bottom electrode 14. Conversely, ***an outer region 36 of the BAW***

> **resonator 10 is a region of the BAW resonator 10 that is not electrically driven (*i.e., the area outside of the active region 34*)**. The frequency at which resonance of the acoustic waves occurs is a function of the thickness of the piezoelectric layer 12 and the mass of the bottom and top electrodes 14 and 16.

'755 Patent, 1:51-2:3 (emphasis added). Again, at least the sake of clarity, the '755 Patent **repeats** this definition at 6:15-25 ("[n]otably, as used herein, the active region 62 is the region of the reference BAW resonator 38 that is electrically driven [and] . . . [t]he outer region 64 is the region of the reference BAW resonator 38 that is not electrically driven").

"Active region" and "outer region" are also described graphically in the Figures. For example, in FIGS. 2A and 2B, the lateral bounds of the active region are defined (with vertical dashed lines) by where the electrodes and piezoelectric layer are stacked. This stack is what both experts agree to be the elements that are "**electrically driven**," as specified in the above passage. Bravman Tr., 64:13-18; *accord.* Nguyen Tr., 45:15-17.[3] Thus, the specification and figures consistently define the active and outer regions (*i.e.*, the lateral boundaries are defined by the electrically-driven elements).



---

[3] Dr. Nguyen argues that "electrically driven" is "not a well-defined term in the art." Nguyen Initial Decl., at 12. This is not correct. *See, e.g.*, Hashimoto at 4, 6, 14, 38, 39, 56, 187, 201; *see also, e.g.*, Akoustis' Exs. B03 at [0005] ("electrically driven . . . region"); B05 at 2 ("driving input"); B08 at 461 ("drive electromechanical"); B10 at 851("drive voltage"); B15 at 3 ("drive . . . electrodes"); B16 at 218 ("electrical drive"). Electrically driving a circuit is a basic concept that would have been well-known to and understood by a POSITA.

"Active region" and "outer region" are used throughout the remainder of the specification and figures to describe portions of BAW resonators in the same manner. Bravman Initial Decl., ¶28.[4]

In view of the above, the meaning of "active region" and "outer region" is clear from the intrinsic record. In such a situation there is no reason to resort to extrinsic evidence. *Profectus Tech.* 823 F.3d at 1381. That is, when the intrinsic evidence provides a clear and unambiguous definition for the terms, there is no reason to resort to extrinsic evidence. Nevertheless, even if the Court were to consider extrinsic evidence, further support for Qorvo's construction is found. For example, the leading BAW resonator treatise repeatedly explains that active regions are defined by the electrically driven elements—the overlapping portions of the electrodes and piezoelectric layer. *See, e.g.*, Hashimoto at 42-43 (active regions are defined by electrode overlaps), 71-74, 80-87, 102 (identifying as active layers the electrodes and piezoelectric layer), 145, 205, 208, 211 (active regions are "metallized"), 214, 226 (defining "active part" as the "bottom electrode [], the piezoelectric [] layer [], and . . . top electrode"). Further, various contemporary patents confirm this understanding.[5] Thus, a POSITA would have understood that "active region" and "outer region" are used in the '755 Patent consistently with their use in the extrinsic record. Thus, there is no reason to deviate from the constructions specified by the intrinsic record, which are reflected in Qorvo's constructions.

---

[4] As noted in the above passage and shown in the Figures, other portions of the BAW resonator may be considered ***part*** of the active/outer regions by nature of being located below the electrically driven region (*e.g.*, beneath the stack of electrodes and piezoelectric layer), ***but the lateral dimensions of those elements do not define the active/outer regions***.

[5] For example, U.S. Patent 7,795,781 specifies the lateral extent of the stack of electrodes 106, 102 and piezoelectric layer 111 "defines the width of the active portion of BAW resonator." 3:22-38. Patent 8,999,187 specifies "active layers" are the "two electrodes and the piezoelectric layer." 2:14-16. Patent 9,197,185 specifies active area 108 includes acoustic stack 105 of electrodes/piezoelectric layer. 7:40-43, FIG. 1. And Patent 9,679,765 specifies the lateral extent of an active region is set by the stack of electrodes and piezoelectric layer. 23:4-18, FIG. 8.

*Akoustis' Construction is Improper:* In contrast to Qorvo's intrinsic record-based construction, Akoustis completely *ignores* the intrinsic record and defines "active region" using a phrase—"motional current density"—entirely absent from the intrinsic record. Akoustis' construction cannot be correct for at least three reasons.

<u>First</u>, while a POSITA may have understood the term "motional current" (*e.g.*, how often a piezoelectric layer vibrates) in reference to BAW resonators (as described in Akoustis' cherry-picked references), the construction violates well-established Federal Circuit precedent that forbids importing such language into the definition of a term ("active region") that is *already defined* by the '755 Patent. *Profectus Tech.*, 823 F.3d at 1381.

<u>Second</u>, Akoustis has not identified any appropriate *reason* to import a construction that is inconsistent with the intrinsic record. As discussed above, the asserted claims define "active" and "outer" regions to identify where, for example, particular thickness or mechanical energy density measurements are made. An inventor is free to specify the parameters of his invention the way he sees fit. *Eon Corp.*, 815 F.3d at 1320. It is clear from the intrinsic record what portions of a BAW resonator are in "active" and "outer" regions to the extent necessary to make the relevant measurements. And Akoustis appears to agree, as its apparent basis for importing "motional current density" is not for clarity, rather, it is because "a skilled artisan designing a resonator is interested in . . . that part of the device that generates motional current density." Nguyen Initial Decl., at 9. But whether or not an engineer would have been "interested" in motional current density in a hypothetical design process is not the relevant question for claim construction. Rather, the relevant question is what would "active region" and "outer region" mean to a POSITA *in the context of the '755 Patent* and necessary to carry out the invention. Bravman Rebuttal Decl., ¶23.

*Third*, while Akoustis relies on a handful of cherry-picked extrinsic references[6], a proper consideration of the weight of the extrinsic record leads to the conclusion that Akoustis' "motional current density" definition was not commonly used in the art. For example, a Google Patents search for documents mentioning "BAW Filter"/"BAW Resonator," "active region"/"active area"/"active portion," and "motional current" fails to identify ***a single document*** using Akoustis' definition. Bravman Rebuttal Decl., ¶18. If Akoustis' definition were truly the "plain and ordinary" meaning of "active region," it would have been more commonly used.

2. **"A Density Of Mechanical Energy In The Outer Region Of The BAW Resonator Is Reduced As Compared To A Density Of Mechanical Energy In The Outer Region Of The BAW Resonator When N Is Equal To 1"**

| Qorvo's Proposed Construction | Akoustis' Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning. If a construction for "density of mechanical energy" is needed, it means the amount of mechanical energy from acoustic waves leaked from the active region, measured over a volume of the outer region. | The density of mechanical energy means a total density over the full volume of the outer region, or otherwise indefinite. |

***Qorvo's Construction is Correct:*** Qorvo's construction (to the extent any construction is necessary) is fully informed and supported by the intrinsic record. Looking first at the claims, the '755 Patent's claim 1 recites (emphasis added):

1. A Bulk Acoustic Wave (BAW) resonator, comprising:

. . . a passivation layer on a surface of the second electrode opposite the piezoelectric layer within an active region of the BAW resonator, the passivation layer having a thickness (TPA) within the active region of the BAW resonator; and

---

[6] While Akoustis' extrinsic references discuss the (uncontroversial) concept of motional current, the descriptions of active regions and motional current in these papers are focused on the narrow scope of the underlying research topics. None provides particular evidence that "active region" and "outer region" are inextricably defined in the art in terms of motional current. Bravman Rebuttal Decl., ¶19.

one or more material layers on the second surface of the piezoelectric layer adjacent to the second electrode in an outer region of the BAW resonator, the outer region of the BAW resonator being a region outside of the active region of the BAW resonator and the one or more material layers having a thickness that is n times the thickness (TPA) of the passivation layer within the active region,

wherein:

n is a value other than 1; and

n is within a range of values for which *a density of mechanical energy* in the outer region of the BAW resonator is reduced as compared to *a density of mechanical energy* in the outer region of the BAW resonator when n is equal to 1.

Here, the claim specifies that a density of mechanical energy in the outer region (*e.g.*, an amount of energy measured over a volume of the outer region) is reduced when n does not equal 1 versus when n equals 1. The source of the mechanical energy in question is the acoustic waves excited in the active region as discussed above which, while vertically reflected by the reflector structure of FIGS. 2A, 2B, may leak laterally into the outer regions. The amount that leaks should be reduced to provide a higher quality resonator, as described throughout the '755 Patent, such as in the portion reproduced below (with relevant language bolded and italicized):

Ideally, in order to achieve a high Q value, the *mechanical energy* should be contained, or trapped, within the active region 34 of the BAW resonator 10. The reflector 18 operates to prevent acoustic waves from leaking longitudinally, or vertically, from the BAW resonator 10 into the substrate (not shown, but below the reflector 18). Notably, in a Film Bulk Acoustic Resonator (FBAR) type BAW resonator, an air cavity is used instead of the reflector 18, where the air cavity likewise prevents acoustic waves from escaping into the substrate.

While the reflector 18 (or air cavity for a FBAR type BAW resonator) confines *mechanical energy* within the active region 34 of the BAW resonator 10 in the longitudinal, or vertical, direction, a substantial amount of *mechanical energy* still leaks laterally from the active region 34 of the BAW resonator 10 into the outer region 36 of the BAW resonator 10 and then down into the substrate, as illustrated FIG. 1B. This lateral leakage of *mechanical energy* at the boundaries of the BAW resonator 10 degrades the Q of the BAW resonator 10. As such, there is a need for systems and methods for mitigating the loss of *mechanical energy* through lateral dispersion into the outer region 36 of the BAW resonator 10.

'755 Patent at 2:4-26.

-12-

As discussed above, to reduce this lateral leakage of mechanical energy, the '755 Patent indicates that the thickness of the outer region can be made n times the thickness ($T_{PA}$) of the passivation layer in the active region. '755 Patent, 2:30-51. In particular, in comparing the FIG. 3A and 3B graphs discussed above, the '755 Patent describes:

> As illustrated in FIG. 3A, during operation, the reference BAW resonator 38 of FIG. 2A exhibits a significant amount of lateral leakage of *mechanical energy* from the active region 62 into the outer region 64. This lateral leakage, or lack of lateral confinement, degrades the quality factor (Q) of the reference BAW resonator 38.
>
> FIG. 2B illustrates a BAW resonator 66 with improved lateral confinement (i.e., reduced lateral leakage) of *mechanical energy* according to some embodiments of the present disclosure. …
>
> * * *
>
> … Within the active region 90, the passivation layer 88 has a thickness ($T_{PA}$), which is equal to that of the passivation layer 60 of the reference BAW resonator 38. However, in the outer region 92, the passivation layer 60 has a thickness of n×$T_{PA}$, where n≠1 (i.e., the thicknesses of the passivation layers 60 and 88 in the outer regions 64 and 92 of the reference BAW resonator 38 and the BAW resonator 66, respectively, are not the same). The value of n is in a range that reduces the lateral leakage of *mechanical energy* from the active region 90 of the BAW resonator 66 into the outer region 92 as compared to that of the reference BAW resonator 38 of FIG. 2A. This reduction of lateral leakage is illustrated in FIG. 3B, where FIGS. 3A and 3B are graphical illustrations of the results of a simulation of the *density of mechanical energy* throughout the structures of the reference BAW resonator 38 and the BAW resonator 66, respectively.

'755 Patent at 6:26-63.[7] FIGS. 3A and 3B show the reduction in the amount of mechanical energy effected by the claimed configuration. Indeed, the '755 Patent describes these Figures as "illustrat[ing] the reduced lateral leakage of the BAW resonator of FIG. 2B as compared to the reference BAW resonator of FIG. 2A." '755 Patent, 4:1-4.

Thus, the intrinsic record repeatedly indicates that the inventive structure reduces the amount of mechanical energy created by acoustic waves in the active region and leaked laterally

---

[7] *See also* '755 Patent, Abstract; 1:14-18, 2:52-56, 2:57-61, 5:5-23, 6:26-31, 7:1-33, 8:36-61.

into the outer region, where the amount of mechanical energy is measured over a volume of the outer region (*i.e.*, the density of mechanical energy in the outer region).

The parties appear to agree that a density of mechanical energy is the amount of energy divided over a particular volume. For example, in FIGS. 3A, 3B above, the density values are reported in Joules per cubic micrometer (J/$\mu$m$^3$). Importantly, however, the '755 Patent does not require the density of mechanical energy to be measured over a particular extent of the volume of the outer region. As discussed above, it is seen in the FIG. 3A, 3B comparison that the density in the outer region of FIG. 3B is less than that the density in the outer region of FIG. 3A over many different volume comparisons, such as over the entirety of the outer regions depicted in FIGS. 3A and 3B (see FIGS. 2A and 2B), or



FIG. 3A          FIG. 3B

particular constituent regions thereof (*e.g.*, upper half, lower left quarter, middle 25%, *etc.*). On this basis, a POSITA would have understood the extent of the outer region subject to comparison in the context of claim 1 as a volume sufficient to show the desired inventive effect. Bravman Rebuttal Decl., ¶¶35-36.

Based on the above, a POSITA would understand "density of mechanical energy" as proposed by Qorvo, consistently with its clear usage in the intrinsic record.

***Akoustis' Construction is Improper:*** In contrast to Qorvo's intrinsic record-based construction, Akoustis seeks to limit the density calculation to "a total density over the full volume of the outer region." Such a limitation is improper for several reasons.

-14-

*First*, this construction is nowhere supported by the intrinsic record, which never states (or implies) that the density of mechanical energy ***must*** be measured over a "full volume of the outer region." While Akoustis' construction encompasses ***one possible method*** of comparing energy leakage from the active region to the outer region in the n≠1 versus n=1 configurations, it is not the ***only way*** to do so. Bravman Tr., 93:10-21. Rather, as discussed above, a POSITA would have recognized that volumes less than the entire outer region may be compared within the scope of the claims. *Id.*, 94:11-95:1. A POSITA would have recognized such comparisons as sufficient to understand whether the configurations' densities are sufficiently different to provide the inventive effect. *Id.*, 116:17-117:8, 129:16-130:13; Bravman Rebuttal Decl., ¶35.

*Second*, Akoustis has not identified any appropriate ***reason*** to import the unnecessary limitations of its construction. As discussed above, it is clear from the intrinsic record that various portions of the outer region volume may be compared within the claim scope. ***Adding*** requirements (*e.g.*, "total density" or "full volume") to the claims is unnecessary to understand their scope. And Akoustis appears to agree, as its apparent basis (on the current record) for importing "motional current density" is not for clarity but because, in its view, the claim is too broad. *See* Nguyen Initial Decl., at 16-17.[8]  But a claim's breadth is not a claim construction issue. *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989); *see also Wasica Finance GmbH v. Continental Auto. Sys., Inc.*, 853 F.3d 1272, 1281-82 (Fed. Cir. 2017) (declining to construe a broad claim narrowly as a claim "should be granted its full scope").

*Third*, Akoustis' construction does not actually define the term in question—"density of mechanical energy." It ignores "of mechanical energy" completely. Constructions that render

---

[8] Dr. Nguyen also argues that Akoustis' construction is supported because that is what a POSITA would be "mainly concerned about." Nguyen Initial Decl., at 16. But engineers' performance concerns are not the relevant question for claim construction.

parts of the disputed term superfluous are disfavored. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016). Akoustis' construction also re-uses "density" with some additional language (*i.e.*, "a total density over the full volume of the outer region"). But such circular definitions are improper. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008) ("Claim Construction . . . usually requires use of words other than the words that are being defined."); *see also, e.g., Zodiac Pool Care, Inc. v. Red Leopard, LLC*, No. 10-04747, 2011 WL 13217288, at *5 (C.D. Cal. June 7, 2011); *Prolifiq Software Inc. v. Veeva Sys. Inc.*, No. 13-03644, 2014 WL 3870016, at *8 (N.D. Cal. Aug. 6, 2014); *Newell Operating Co. v. Intercrown USA*, No. 06-C-50241, 2008 WL 5760155, at *11 (N.D. Ill. June 13, 2008).

3.    **"Acoustically Matched In Such A Manner That One Or More Wavelengths That Cause Energy Leakage Into The Outer Region Are Not Excited In The Active Region"**

| Qorvo's Proposed Construction | Akoustis' Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning. If a construction for "are not excited" is needed, it means "are not substantively created." | "[A]re not excited" means that the wavelengths do not exist in the whole volume of the active region, or otherwise indefinite. |

*Qorvo's Construction is Correct:* Qorvo's construction (to the extent any construction is necessary) is fully informed and supported by the intrinsic record. Looking first at the claims, the '755 Patent's claim 9 recites (emphasis added):

9. A BAW resonator comprising:

. . . one or more material layers on the second surface of the piezoelectric layer adjacent to the second electrode in an outer region of the BAW resonator, the outer region of the BAW resonator being a region outside of the active region of the BAW resonator and the one or more material layers having a thickness that is n times the thickness (TPA) of the passivation layer within the active region, wherein:

n is a value other than 1; and

n is such that the outer region of the BAW resonator and the active region of the BAW resonator are acoustically matched in such a manner that one or more

-16-

wavelengths that cause energy leakage into the outer region ***are not excited*** in the active region.

As understood in context, the claim specifies that particular wavelengths are not substantively excited (*e.g.*, not excited enough to cause energy leakage) in the active region as a result of the claimed construction. The concept of excitation/non-excitation of waves is described in various portions of the '755 Patent, such as at 1:51-2:3 ("acoustic waves in the piezoelectric layer 12 within an active region 34 of the BAW resonator 10 ***are excited*** by an electrical signal applied to the bottom and top electrodes 14 and 16"), 2:52-56 ("n is such that the outer region of the BAW resonator and the active region of the BAW resonator are acoustically matched in such a manner that one or more wavelengths that cause energy leakage into the outer region ***are not excited*** in the active region"), and 5:5-23[9]:

> Embodiments of a Bulk Acoustic Wave (BAW) resonator in which an outer region of the BAW resonator is engineered in such a manner that lateral leakage of mechanical energy from an active region of the BAW resonator is reduced … are disclosed. In general, in some embodiments, a thickness of a material in the outer region of the BAW resonator is such that the outer region of the BAW resonator is acoustically matched to the active region of the BAW resonator in such a manner that wavelengths that cause the lateral leakage of mechanical energy ***are not excited*** in the active region. As a result, there is no leakage of wavelengths ***excited*** in the active region into oscillation modes in the outer region. In other words, the thickness of the material in the outer region of the BAW resonator is selected such that the extinction coefficient (i.e., the rate of exponential decay for evanescent waves) associated with the exponential decay in the outer region and the imaginary part of the lateral dispersion in the outer region are changed in such a manner that lateral leakage is reduced.

A review of the intrinsic record in its entirety indicates that the recited non-excitation relates to reducing the lateral leakage of mechanical energy into the outer region, which is discussed with regard to the previous element. To do so, the intrinsic record indicates that the

---

[9] *See also* '755 Patent, Abstract, 1:14-18, 2:4-13, 2:14-26, 2:30-51, 2:57-61, 6:26-31, 6:32-41, 6:42-63, 7:1-33, 8:36-61.

phrase "are not excited" means that the particular wavelengths that cause the lateral leakage are not excited *enough* (*e.g.*, substantively excited) to result in energy leakage from the active region to the outer region as a result of the claimed construction. Bravman Initial Decl., ¶51. In other words, excitations of one or more wavelengths that do not cause leakage (*e.g.*, minor or transient excitations) may occur within the scope of the claim. *Id.*

Based on the above, a POSITA would understand "are not excited" as proposed by Qorvo, consistently with its clear usage in the intrinsic record.

***Akoustis' Construction is Improper:*** In contrast to Qorvo's intrinsic record-based construction, Akoustis seeks to limit "are not excited" to "do not exist in the whole volume of the active region." Such a limitation is improper for several reasons.

<u>First</u>, the intrinsic record does not support or even reference the absolute restriction sought by Akoustis. As described above, what is important to the claimed invention is that there be a reduced lateral leakage of mechanical energy (*compare* FIG. 3B *with* FIG. 3A). To do so, the '755 Patent (including the claims) specifies that the resonator is constructed so as not to excite particular wavelengths ***such that energy leakage results***. A POSITA would have understood that it is the leakage that matters, and therefore that non-substantive excitations of wavelengths in the active region that do not result in energy leakage are not prohibited. Bravman Rebuttal Decl., ¶59.

<u>Second</u>, as Dr. Nguyen recognizes, the proposition underlying Akoustis' construction is not scientifically realistic. Nguyen Initial Decl., at 20. A definition that would result in a scientifically impossible construction cannot be applied without specific intrinsic support. *See Neville v. Foundation Constructors, Inc.*, 972 F.3d 1350, 1357 (Fed. Cir. 2020) ("A claim construction that renders asserted claims facially nonsensical [(e.g., physical impossibility)]

cannot be correct."). Thus, absent specific descriptions in the '755 Patent that it was the inventors' intent to limit their invention in such a manner (which are not present), a POSITA would not have understood "are not excited" in the manner proposed by Akoustis. Bravman Rebuttal Decl., ¶60. Moreover, the scientifically impossible construction cannot be proper where there is a reasonable alternative consistent with the intrinsic record (*i.e.*, Qorvo's).

*Third*, Akoustis has not identified any appropriate **reason** to import the unnecessary limitations of its construction. As discussed above, the meaning of "are not excited" is clear from the intrinsic record. **Adding** requirements (*e.g.*, "do not exist in the whole volume of the active region") to the term is unnecessary to understand its scope. Indeed, Akoustis' apparent reason for importing its "do not exist" language is because "[i]n relevant technical literature, when something is 'not excited', it is non-existent." Nguyen Initial Decl., at 19. But Dr. Nguyen does not cite "relevant technical literature" to BAW resonators. *Id.* Rather, he cites a single reference to the Pauli exclusion principle—a principle of atomic physics—without explanation of how it would possibly apply here. *Id.* Moreover, whether or not some literature may use "are not excited" in the manner suggested by Akoustis does not demonstrate some kind of general acceptance of Akoustis' definition in the BAW resonator art. It is simply irrelevant here in view of the intrinsic record. *Default Proof Credit Card v. Home Depot*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) ("As this court has repeatedly cautioned, extrinsic evidence cannot be used to vary the plain language of the patent document."); *see also* Bravman Rebuttal Decl., ¶66.

### B.    The '786 Patent

The '786 Patent is entitled "Communication Filter Using Single Crystal Acoustic Resonator Devices." Title. The specification discloses and emphasizes BAW resonators that use a "single crystal piezoelectric layer" intended to achieve "high bandwidth-low loss" performance

in a "miniature form factor" filter device. *See, e.g.*, '786 Patent, 13:50-67. FIG. 1A of the '786

Patent is reproduced here, with the "single crystal piezoelectric layer 120" outlined in red.

The single crystal piezoelectric
layer feature of the invention is
emphasized throughout the '786 Patent
specification. Indeed, the layer
associated with numeral "120"—
outlined in the figure and introduced as



"single crystal piezoelectric layer 120"—appears in every single one of the thirty-nine (39)

resonator figures provided in the '786 Patent, 3:53-4:2, FIGS. 1B-15E.

### 1.    "Piezoelectric Layer"

| Qorvo's Proposed Construction | Akoustis' Proposed Construction |
|---|---|
| A layer of piezoelectric material having single crystal structure. | A layer of piezoelectric material having single or multiple crystal structure. |

The term "piezoelectric layer" appears in each independent claim of the '786 Patent.

Consequently, its meaning affects all the claims. Representative claim 1 (emphasis added) of the

'786 Patent is recited below, in part, to illustrate how this term is used:

1. A communication filter device comprising:

a piezoelectric substrate having a substrate surface region, the piezoelectric substrate having *a piezoelectric layer* formed overlying a thinned seed substrate;

a topside metal electrode formed overlying a portion of the substrate surface region;

a topside micro-trench formed within a portion of *the piezoelectric layer*;

one or more bond pads formed overlying one or more portions of *the piezoelectric layer*; . . .

The parties' proposed constructions for "piezoelectric layer" differ in one key respect:

Qorvo's is tailored to the "single crystal" piezoelectric layers that the entire invention of the '786

Patent is directed toward, while Akoustis' ignores the teachings of the '786 Patent to argue a much broader construction including "multiple crystal" piezoelectric structures **in addition** to single crystal structures. From a technical perspective, a "single crystal" structure will have a continuous and unbroken crystal lattice throughout the layer, and a "multiple crystal" (also known as "polycrystalline") structure will have discontinuity resulting in many different crystalline parts that are randomly oriented relative to one another throughout the layer. These are binary concepts. That is, a given sample cannot be both "single crystal" and "multiple crystal," it will be classified as one or the other.

*Qorvo's Construction is Correct:* Qorvo's construction adheres to the intrinsic record, recognizing the specific way that the inventors used the "piezoelectric layer" term to describe their invention in the context of the '786 Patent specification and its prosecution history. Qorvo's construction is correct for at least the following reasons.

<u>First</u>, the Federal Circuit has instructed that where "a patent repeatedly and consistently characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization." *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014); *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1304-05 (Fed. Cir. 2011).

The '786 Patent specification repeatedly and consistently characterizes the "piezoelectric layer" as being a "single crystal." *See* Bravman Initial Decl., ¶¶63-74 (citing '786 Patent, Title, Abstract, 1:1-3, 1:40-52, 3:45-4:2, 4:49-54, 5:4-10, 5:32-39, 6:46-50). From the title, to the abstract and figures, to every single embodiment of the invention, the "piezoelectric layer" is invariably linked to the "single crystal" structure identified in Qorvo's construction. *See id*. The Title of the '786 Patent expressly labels the invention as a "communication filter using *single*

*crystal* acoustic resonator devices." The Abstract further emphasizes the same in the very first

sentence. *See* '786 Patent, Abstract. Then, consistent with the title and abstract, the '786 Patent

goes on to provide and describe thirty-nine (39) drawings of acoustic resonator devices that

include a "single crystal piezoelectric layer 120." *See* FIGS. 1A-15E. These consistent

characterizations are not merely a coincidence, but instead should drive the construction. *See,*

*e.g.*, *Barry Fiala, Inc. v. Card USA, Inc.*, 292 F. Supp. 2d 1009, 1016 (W.D. Tenn. 2003)

(adopting narrowing construction, noting that "[t]he fact that every embodiment incorporates [the

narrowing feature] cannot be dismissed as a mere coincidence").

Even where the '786 Patent uses the term "piezoelectric layer 120" without the "single

crystal" qualifier, it is evident that "piezoelectric layer" is the Patentee's shorthand for "single

crystal piezoelectric layer." Figure 1A, for example, where the Patentee first introduces the

piezoelectric layer *120* layer by its full label ("single crystal piezoelectric layer *120*") but then

later refers to exact the same layer *120* in shorthand, calling it the "piezoelectric layer 120." *See*

'786 Patent, 3:53-64 (reproduced below with emphasis added).

> FIG. 1A is a simplified diagram illustrating an acoustic resonator device 101 having
> topside interconnections according to an example of the present invention. As
> shown, device 101 includes a thinned seed substrate 112 with an overlying *single*
> *crystal piezoelectric layer 120*, which has a micro-via 129. The micro-via 129 can
> include a topside micro-trench 121, a topside metal plug 146, a backside trench
> 114, and a backside metal plug 147. Although device 101 is depicted with a single
> micro-via 129, device 101 may have multiple micro-vias. A topside metal electrode
> 130 is formed overlying the *piezoelectric layer 120*. A top cap structure is bonded
> to the *piezoelectric layer 120* . . . .

Moreover, the '786 Patent "claims priority to U.S. Patent Application No. 62/360,904

[(the "'904 Provisional")]." '786 Patent, 1:8-10. The '904 Provisional—the *sole* priority

document for the '786 Patent—*is explicitly focused on single crystal piezoelectric materials*.

*See, e.g.*, '904 Provisional at 13 ("[t]he solution utiliz[ing] Akoustis BAW resonator technology

built from the highest quality, *single crystal* piezoelectric materials."); *see also* Bravman Initial

Decl., ¶¶63-64. Neither the '904 Provisional nor the '786 Patent specification *discloses multiple crystal or polycrystalline structures*. Thus, from the very beginning to the end, the emphasis and focus of the alleged invention of the '786 Patent was exclusively "single crystal piezoelectric" layers, with no mention of "multiple crystal" or "polycrystalline" piezoelectric layers whatsoever. Bravman Initial Decl., ¶¶63-64.

In sum, read in context from the outset of the provisional to the last line of the '786 Patent specification, it is clear that the '786 Patent consistently, repeatedly, and exclusively refers to the piezoelectric layer of its invention as the piezoelectric layer initially introduced as "single crystal." *See also, e.g.*, FIGS. 1C, 2, 4:49-5:3, 5:25-39.  These characterizations cannot be ignored.

*Second*, the Federal Circuit has instructed that "[w]here the specification makes clear that the invention *does not include a particular feature*, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) (emphasis added). By emphasizing the "single crystal" structure of the "piezoelectric layer" throughout the entire specification, the '786 Patent implicitly stresses that "multiple crystal" piezoelectric layers *are not* included. A POSITA would understand this clearly from the specification. *See* Bravman Initial Decl., ¶¶63-74. As noted above, "single crystal" and "multiple crystal" are binary options—a given piezoelectric layer cannot be both "single crystal" and "multiple crystal" at the same time, it is one or the other. Thus, through its consistent characterization of the "piezoelectric layer" being "single crystal" (*see* above), the '786 Patent teaches that "piezoelectric layer" *is not* "multiple crystal."

Moreover, when the specification does provide alternatives for its layer 120, **both alternatives are single crystal**. *See* '786 Patent, 5:37-39 ("[t]he piezoelectric layer 120 can include a piezoelectric **single crystal** layer or a thin film piezoelectric **single crystal** layer" (emphasis added)). Noticeably missing from these alternatives is "multiple crystal" or "polycrystalline." Qorvo's construction excludes these alternatives as they are "deemed to be outside the reach of the claims of the patent" as instructed by the Federal Circuit. *SciMed Life*, 242 F.3d at 1341.

**Akoustis' Construction is Improper**: Akoustis' proposed construction attempts to capture a "piezoelectric layer" regardless of its composition and far beyond the '786 Patent's intrinsic record. The Federal Circuit has cautioned against this, many times, particularly where the broad reading divorces the claims from the specification. *See, e.g., Adams Resp. Therapeutics v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010). Akoustis overlooks these rules of claim construction, resulting in a faulty construction.

<u>First</u>, the Federal Circuit has instructed that "to attribute to the claims a meaning broader than any indicated in the patents and their prosecution history would be to ignore the totality of the facts of the case and exalt slogans over real meaning." *Meds. Co. v. Mylan, Inc.*, 853 F.3d 1296, 1306 (Fed. Cir. 2017). Akoustis' proposed construction violates this principle: it ignores context, and attributes "multiple crystal" and "polycrystalline" features to the "piezoelectric layer" when there is absolutely no indication in the '786 Patent specification or prosecution history to do so. Not a single portion of the '786 Patent, nor any morsel from the intrinsic record, ever references, describes, uses, or even suggests the terms "multiple crystal" or "polycrystalline" structures. Instead, the '786 Patent makes it repeatedly clear that "piezoelectric

layer" only refers to a "single crystal piezoelectric layer." *See* above. Akoustis ignores the context of the '786 Patent, and its construction is improper for at least this reason.

*Second*, the Federal Circuit has instructed that it is improper to read a claim term without an appropriate qualifier—even when that qualifier does not appear expressly in the claims—if the context of the specification suggests that its use of the claim term aligns with ***only a single meaning*** reflecting that qualifier. *See AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1053 (Fed. Cir. 2011) ("When a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, [the patentee] has defined the term 'by implication.'"). As detailed above, the '786 Patent uses the term "piezoelectric layer" throughout the entire specification in a manner consistent with ***only a single meaning***: "a layer of piezoelectric material having single crystal structure." Moreover, Akoustis cannot point to any portion of the specification that describes the "multiple crystal" or "polycrystalline" piezoelectric layers that it now tries to capture. Thus, it is improper to read the "piezoelectric layer" term without the "single crystal" qualifier that reflects the context of the specification. *See, e.g.*, *Wisconsin Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341, 1351 (Fed. Cir. 2018) (finding that the claim term "prediction" meant "static prediction" only, and did not include "dynamic prediction," because the patent specification made it clear that the invention included that feature, and because the appellant had "not pointed [] to any portion of the specification that describes [the "dynamic prediction" feature its construction attempted to capture.]).

## V.   CONCLUSION

In view of above, Qorvo requests that, to the extent any constructions for the identified terms are necessary, the Court adopt each of Qorvo's proposed constructions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Trevor J. Quist
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1540 El Camino Real
Menlo Park, CA 94025
(650) 815-2600

August 30, 2022

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 30, 2022, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                          *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

David A. Jakopin, Esquire                              *VIA ELECTRONIC MAIL*
Dianne L. Sweeney, Esquire
PILLSBURY WINTHROP SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA  94304-1115
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Robert M. Fuhrer, Esquire                              *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA  22102-4856
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

David L. Stanton, Esquire                              *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA  90017-5524
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Theresa A. Roozen, Esquire                                    *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC  20036-3006
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*


                                                    */s/ Jeremy A. Tigan*

                                                    _____

                                                    Jeremy A. Tigan (#5239)