**Public Version**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417-JPM |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | [FILED UNDER SEAL] |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO UNSEAL THE SECOND AMENDED COMPLAINT

PILLSBURY WINTHROP
SHAW PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Theresa A. Roozen
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*

Public Version

## **TABLE OF CONTENTS**

Page

I.  Introduction ..................................................................................................... 1

II. Meet and Confer Background............................................................................ 3

III. Legal Standard ................................................................................................. 4

IV. Argument .......................................................................................................... 7

    A.  Qorvo's Descriptions of Its Purported Trade Secrets Do Not Meet the
    Standard for Redaction – SAC Paras. 80, 88, 94, 99, 105, 110, 114, 120, 125,
    129, and 134 ................................................................................................ 9

    B.  Qorvo's General Process Descriptions Do Not Meet the Standard for
    Redaction – SAC Paras. 82, 90, 99, 105, 125, 127, 129, 131, 134, and 136 .......... 14

    C.  The Date of a Document of Other File Does Not Meet the Standard for
    Redaction – SAC Paras. 79, 87, 93, 99, 105, 110, 120, 125, 129, 134, and 139. .... 15

    D.  The Age of the Documents Underlying the Purported Trade Secret
    Descriptions Further Warrant Unsealing the SAC.................................................. 16

    E.  Qorvo's Remaining Redactions Are Not Trade Secrets and Disclosing Them
    Would Not Cause Any Harm – Paras. 84, 85, 91, 92, 97, 102, 104, 108, 109,
    113, 118, 124, 128, 133, 138, 139, and 143. .......................................................... 18

V.  Conclusion ........................................................................................................ 18

Public Version

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Alchem USA Inc. v. Cage*,
No. 21-2994, 2022 WL 3043153 (3d Cir. July 5, 2022)................................................... *passim*

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
924 F.3d 662 (3d Cir. 2019)............................................................................................ *passim*

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
800 F.2d 339 (3d Cir. 1986)............................................................................................5

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
814 F.3d 132 (2d Cir. 2016)............................................................................................7

*Courthouse News Serv. v. Brown*,
908 F.3d 1063 (7th Cir. 2018) ........................................................................................ 6-7

*Feenix Payment Sys., LLC v. Steel Cap. Mgmt., LLC*,
No. 20-1519-MAK, 2021 WL 2587844 (D. Del. June 24, 2021)...................................6, 7, 10

*Glenmede Trust Co. v. Thompson*,
56 F.3d 476 (3d Cir. 1995)..............................................................................................4, 7, 9, 12

*Goldstein v. Forbes (In re Cendant Corp.)*,
260 F.3d 183 (3d Cir. 2001)............................................................................................5, 7

*Keen Mktg. and Mfg., LLC v. Sweeney*,
No. 6:17-cv-2189-Orl-37TBS, 2018 WL 7463441 (M.D. Fla. Mar. 28, 2018)...........12, 13, 14

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
998 F.2d 157 (3d Cir. 1993)............................................................................................5

*Lithero, LLC v. AstraZeneca Pharms. LP*,
No. 19-cv-2320, 2020 WL 4699041 (D. Del. Aug. 13, 2020)........................................6, 7, 10

*N. Jersey Media Grp. Inc. v. United States*,
836 F.3d 421 (3d Cir. 2016)............................................................................................6

*Nelson v. Nissan N. Am., Inc.*,
No. 11-cv-5712, 2014 WL 12617593 (D.N.J. Dec. 22, 2014)........................................ *passim*

*PCT Int'l Inc. v. Holland Elecs. LLC*,
No. 12–1797, 2014 WL 6471419 (D. Ariz. Nov. 18, 2014)...........................................6

ii

Public Version

*PG Publ'g Co. v. Aichele*,
   705 F.3d 91 (3d Cir. 2013)........................................................................................................7

*Proctor & Gamble Co. v. Nabisco Brands, Inc.*,
   111 F.R.D. 326 (D. Del. 1986) ............................................................................................17

*Publicker Indus. v. Cohen*,
   733 F.2d 1059 (3d Cir. 1984)...............................................................................................7

Plaintiff Qorvo, Inc. ("Qorvo") recently filed a public version of its motion for leave to file its Second Amended Complaint ("Motion for Leave") and its Second Amended Complaint ("SAC"). (D.I. 132, 133). As set forth below, Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis") respectfully request that the Court unseal the SAC, or at least limit the redactions to those Akoustis previously proposed to Qorvo, because Qorvo's redactions cannot meet the high standard required to keep information sealed from public view.

## I.     **Introduction**

For better and for worse, lawsuits often have a material impact on the marketplace. The law strongly favors public access to all pleadings for a host of reasons including that it allows the public to consider the claims and defenses and avoids speculation about them. There is, of course, a balance to be struck where disclosing certain information, such as an actual trade secret, would genuinely harm the pleading party. Akoustis recognizes this, and while it disputes that any of the information in the SAC constitutes an actual trade secret, it seeks at least a fair balance between disclosure and redaction. Akoustis, for instance, does not object to the voluminous exhibits Qorvo attached to the SAC remaining under seal, and Qorvo asserts that the documents themselves are its alleged trade secrets. What Akoustis strenuously objects to, however, is Qorvo's attempt to entirely redact high-level, general descriptions of its alleged trade secrets, which cannot lawfully be withheld from public view. For example, the SAC seeks to redact the following types of information:[1]

---

[1] Throughout this brief, the redacted text in Qorvo's SAC is indicated either by yellow highlighting or strikethroughs. The highlighting indicates redactions that Akoustis most strenuously opposes, while the strikethrough text indicates redactions that Akoustis suggested during the parties' meet and confer could remain intact, if the others (i.e., the highlighted portions) were unredacted. (*Compare* Exh. 1 to Declaration of Theresa A. Roozen in Support of Defendants' Motion to Unseal the SAC ("Roozen Decl."), *with* Exh. D.I. 133.) None of the redactions—highlighted or strikethrough—meet the legal burden to remain under seal.

Public Version



SAC, ¶80.[2]

SAC, ¶94.[3]

SAC, ¶125.[4]

None of the foregoing text—not even the strikethroughs—constitutes a trade secret.

Under Third Circuit law, discussed further below, a mere description of a trade secret is distinct

from an actual trade secret, and the only information that can be lawfully redacted from a federal

---

[2] The document underlying these purported trade secrets was last edited in ▮▮▮▮▮.  SAC, Exh. C-1 at QORVO_00035064-069.

[3] The document underlying these purported trade secrets was last edited in ▮▮▮▮▮ SAC, Exh. E-1 at QORVO_00035001.

[4] The document underlying these purported trade secrets was last edited in ▮▮▮▮▮.  SAC, Exh. J-1 at last page of exhibit.

Public Version

court pleading is information that if disclosed will cause a clearly defined and serious injury to the party seeking to seal the information.  The legal presumption is that the public is entitled to judicial records.  Qorvo cannot overcome that presumption with respect to its SAC redactions.

In advance of bringing this motion, Akoustis worked in good faith to resolve this dispute and repeatedly asked Qorvo to reconsider its redactions—ultimately proposing that Qorvo just remove the redactions from generic language about its trade secrets, as exemplified in the highlighted sections above.  Qorvo declined to tailor its redactions and would not identify any discrete harm that would occur if the SAC were unsealed.  Qorvo's only explanation was that there could be some harm if all the aggregate information in the SAC were disclosed.  But this is not the legal standard.  Qorvo may only redact a pleading if it can show that "disclosure will work a clearly defined and serious injury."  *Alchem USA Inc. v. Cage*, No. 21-2994, 2022 WL 3043153, at *3 (3d Cir. July 5, 2022).  No such injury exists here.

Qorvo cannot meet its burden to seal this SAC.  At a minimum, the public, including investors in this space and Akoustis' customers, should have access to basic information about the types of purported trade secrets at issue in this case, so they can understand the general nature of each party's claims and defenses.  Therefore, Akoustis respectfully requests that Qorvo be required to unredact the entire SAC, or at least limit its redactions to the portions of SAC Akoustis proposed during the parties' meet and confer, as further explained in this motion.

## II.    <u>Meet and Confer Background</u>

On Tuesday, February 14, 2023, after close of business, Qorvo sent Akoustis draft public versions of the Motion for Leave and SAC, asking Akoustis for its feedback before the opening of business the following day.  (Declaration of Theresa A. Roozen in Support of Defendants' Motion to Unseal the SAC ("Roozen Decl."), Exh. 2.)  The proposed public version of the SAC was

heavily redacted, and on February 15, 2023, Akoustis reached out to Qorvo, multiple times, asking for a meet and confer about the redactions, including agreeing to extend the time to file a public version. (*Id.* at Exh. 3.) Qorvo did not respond until shortly before the close of business on February 15, 2023, and stated that it intended to file its redacted public version without a meet and confer, disregarding Akoustis' concerns. (*Id.* at Exh. 4.) At Akoustis' repeated urging, the parties agreed to extend the time to file the public versions and to meet and confer. (*Id.* at Exh. 5.)

On February 16, 2023, the parties met and conferred. (Roozen Decl., ¶2.) Qorvo was unable to provide justification for its redactions. It did not identify a discrete, specific harm that would arise from removing any particular redaction and instead made general assertions that the information was confidential and that Qorvo was broadly concerned about disclosing it, particularly in the aggregate. (*Id.* at ¶3.) Akoustis argued that the entire SAC should be unsealed, to which Qorvo disagreed, but Qorvo told Akoustis that it was willing to consider a more narrowly tailored set of redactions. (*Id.* at ¶4.) That night, in an attempt to resolve the conflict, Akoustis provided the narrowly tailored redactions described throughout this motion. (*Id.*; *see also id.* at Exhs. 1, 6.)[5] Qorvo largely ignored this proposal and filed a broadly redacted public version of its SAC at the end of the day on Friday, February 17, 2023. (*Compare id.* at Exh. 1 *with* D.I. 133; *see also* Roozen Decl., Exh. 7.)

## III.   <u>Legal Standard</u>

There is a "strong public interest in open proceedings." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 484 (3d Cir. 1995). "[T]he common law presumes that the public has a right to access judicial materials" which includes judicial records. *In re Avandia Mktg., Sales*

---

[5] Akoustis provided its initial proposed redactions on February 17, 2023, at 1:30 a.m. ET, and provided some additional proposed revisions on February 17, 2023 at 1:21 p.m. ET. (Roozen Decl., Exhs. 1, 6.)

*Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019); *Alchem*, 2022 WL 3043153, at

*3.  "A 'judicial record' is a document that 'has been filed with the court ... or otherwise

somehow incorporated or integrated into a district court's adjudicatory proceedings.'… Once a

document becomes a judicial record, a presumption of access attaches."  *In re Avandia Mktg.*,

924 F.3d at 672 (quoting *Goldstein v. Forbes (In re Cendant Corp.*), 260 F.3d 183, 192-93 (3d

Cir. 2001)).  "The party seeking to overcome the presumption of access bears the burden of

showing 'that the interest in secrecy outweighs the presumption.'"  *Id.* (quoting *Bank of Am.*

*Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)).  The

party seeking the sealing has the burden to show that the redacted information "is the kind of

information that courts will protect and that disclosure will work a clearly defined and serious

injury to the party seeking closure."  *Alchem USA Inc.*, 2022 WL 3043153, at *3 (quoting *In re*

*Avandia Mktg.*, 924 F.3d at 672).  Delineating an actual injury is essential.  *In re Avandia Mktg.*,

924 F.3d at 673 ("Broad allegations of harm, bereft of specific examples or articulated reasoning,

are insufficient." (quoting *In re Cendant Corp.*, 260 F.3d at 194)).  To overcome the presumption

of access, "the District Court must articulate 'the compelling, countervailing interests to be

protected,' [and] make 'specific findings on the record concerning the effects of disclosure….'"

*Id.* at 672.  Indeed, "careful factfinding and balancing of competing interests is required before

the strong presumption of openness can be overcome by the secrecy interests of private

litigants." *Id.* at 677 (quoting *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167

(3d Cir. 1993)).  "To that end, the District Court must 'conduct[ ] a document-by-document

review' of the contents of the challenged documents."  *Id.* at 673 (quoting *Leucadia*, 998 F.2d at

167).

Public Version

Business information, even if confidential, is not a trade secret – "confidentiality alone does not transform business information into a trade secret, a party alleging trade secret protection as a basis for sealing court records must show that the business information is in fact a trade secret." *Nelson v. Nissan N. Am., Inc.*, No. 11-cv-5712, 2014 WL 12617593, at *4 (D.N.J. Dec. 22, 2014) (quoting *PCT Int'l Inc. v. Holland Elecs. LLC*, No. 12–1797, 2014 WL 6471419, at *2 (D. Ariz. Nov. 18, 2014)); *see also In re Avandia Mktg.*, 924 F.3d at 673, 679 n.14. Likewise, broad allegations and general descriptions are not considered trade secrets. *Lithero, LLC v. AstraZeneca Pharms. LP*, No. 19-cv-2320, 2020 WL 4699041, at *2 (D. Del. Aug. 13, 2020) (holding that merely pointing to the sharing of information about large, general areas, such as processes, training, parameters, and research and development is not sufficient to identify a trade secret). Broad allegations of trade secrets (as opposed to the disclosure of the trade secret itself) do not warrant redaction. *Feenix Payment Sys., LLC v. Steel Cap. Mgmt., LLC*, No. 20-1519-MAK, 2021 WL 2587844, at *3 (D. Del. June 24, 2021) ("The language a party is seeking to redact must specifically articulate the trade secret."). Also, documents that do "not include any detailed information regarding either the internal processes or analysis that led to the data's generation" will not meet the standard to remain under seal. *See Nelson*, 2014 WL 12617593, at *4.

Furthermore, determinations of whether to redact a public pleading require strict scrutiny due to First Amendment concerns. A two-prong test is used to determine "whether the [First Amendment] right of access attaches: (1) the experience prong asks 'whether the place and process have historically been open to the press'; and (2) the logic prong evaluates 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *In re Avandia Mktg.*, 924 F.3d at 673 (quoting *N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 429 (3d Cir. 2016)). A civil complaint satisfies this standard. *Courthouse*

6

*News Serv. v. Brown*, 908 F.3d 1063, 1069 (7th Cir. 2018) ("The press's right of access to civil proceedings and [a complaint] fits squarely within the First Amendment's protections."); *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (holding that First Amendment right of access applied to a complaint). This being the case, the "First Amendment right of access requires a much higher showing than the common law right [of] access …." *In re Avandia Mktg.*, 924 F.3d at 673 (quoting *In re Cendant Corp.*, 260 F.3d 198 n.13). When the First Amendment applies, a restriction of public access is "evaluated under strict scrutiny." *Id.* (quoting *PG Publ'g Co. v. Aichele*, 705 F.3d 91, 104 (3d Cir. 2013)). "The party seeking closure may rebut the presumption of openness only if able to demonstrate 'an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (quoting *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984)). Qorvo cannot demonstrate the "overriding interest" required to preclude the public from viewing its SAC, and its redactions are certainly not "narrowly tailored."

## IV.   Argument

Qorvo has the burden to establish that its proposed redactions are proper. *See Glenmede Trust Co.*, 56 F.3d at 483. Qorvo cannot meet this burden as to the entire SAC and especially as to the particular redactions Qorvo refused to remove during meet and confer, because the targeted provisions are mere general descriptions in language that is common in this industry, including statements about when documents were created and general summaries of information in the documents. As a matter of law, these are not trade secrets warranting confidential treatment. *See Nelson*, 2014 WL 12617593, at *4-8; *Feenix Payment Sys.*, 2021 WL 2587844, at *3; *Lithero*, 2020 WL 4699041, at *2.

The issues here are like those in *Nelson*, where a third party sought to keep several documents under seal, but the court declined to do so. *Nelson*, 2014 WL 12617593, at *4-8. The first document the court considered consisted of research and development analyses and process information, including detailed testing results. *Id.* at *3. The court held that this should not remain sealed because it did not include detailed information regarding the internal processes or the analyses that led to the data's generation. *Id.* at *4-5. It was also five-years old. *Id.* at *3, 5.

The second document in *Nelson* was a letter that addressed warranty payment negotiations and disclosed pricing information, as well as cost and profit details. *Id.* at *7. The court found that this also should not be sealed because even though the third-party had an interest in keeping it confidential, the information was from 2004 and 2008, i.e., ten-years and six-years old, respectively. *Id.* Since the third-party failed to articulate any specific harm that would result from disclosing such dated information, the court ordered it unsealed. *Id.*

The third type of document at issue in *Nelson* was a presentation that purportedly contained results of a confidential business practice and could be used to determine future product developments. *Id.* at *8. The court unsealed it because it simply consisted of short summaries and lacked detail. *Id.* The presentation did not "explicitly discuss any internal processes, testing, or future business projections." *Id.*

As discussed below, Qorvo's purported trade secret descriptions (Section IV.A), general process descriptions (Section IV.B), and notation of when the purported trade secrets were written (Section IV.C) are similarly generic. None of the redacted statements disclose any replicable internal processes or testing parameters, and the documents cited to support the

███████████ Public Version ███████████

purported trade secrets are outdated, ███████████████████████████ ████[6]  In

these circumstances, sealing is not proper.  *Nelson*, 2014 WL 12617593, at *4-8.

Further, when Akoustis asked Qorvo during meet and confer to identify the harm that

would result from disclosure, Qorvo could articulate nothing more than an overarching assertion

that the redacted information was confidential and that it should remain confidential, in the

aggregate, or some unspecified harm would result.  (*See* Roozen Decl., ¶3.)  Blanket assertions

that information is confidential or that disclosure would be harmful are insufficient.  "Broad

allegations of harm, unsubstantiated by specific examples, however, will not suffice."

*Glenmede*, 56 F.3d at 483.  Thus, Qorvo cannot meet the high burden required to keep the SAC

under seal.

While it is Qorvo's burden to support each redaction, Akoustis sets forth below the

various types of redactions (using representative examples) and why they cannot be sealed.[7]

### A.   Qorvo's Descriptions of Its Purported Trade Secrets Do Not Meet the Standard for Redaction – SAC Paras. 80, 88, 94, 99, 105, 110, 114, 120, 125, 129, and 134

Qorvo is likely to assert that descriptions of its purported trade secrets are akin to trade

secrets and warrant redaction.  (*See* Appx. A at ¶¶80, 88, 94, 99, 105, 110, 114, 120, 125, 129,

---

[6] *See* D.I. 122-2 at Exh. C-1 at QORVO_00035064-069 (███████████); 122-2 at Exh. D-1 at QORVO_00035070 (███████████); 122-3 at Exh. E-1 at QORVO_00035001 (███████████; 122-4 at Exh. F-1 at QORVO_00035124 (███████████); 122-4 Exh. G-1 at QORVO_00034931 (███████████); 122-4, Exh. H-1 at p. 2 of exhibit (███████████); 122-4, Exh. H-3 at p. 6 of exhibit (███████████); 122-4 at Exh. I-1 at QORVO_00035132 (███████████); 122-5 at Exh. J-1, last page of exhibit (███████████ 122-5 at Exh. K-1 at QORVO_00035148 (████████ ███); 122-5 at Exh. L-1 at QORVO_00034746 (███████████

[7] Appendix A ("Appx. A") attached hereto lists all of Qorvo's redactions, grouped consistent with the headings below.  The Appendix provides the text from the SAC.  The highlighting indicates redactions that Akoustis most strenuously opposes; the strikethrough text indicates redactions that Akoustis suggested during the parties' meet and confer could remain intact, if the others (i.e., the highlighted portions) were unredacted.  (*Compare* Roozen, Decl., Exh. 1 *with* Exh. D.I. 133.)  None of the redactions—highlighted or strikethrough—meet the legal burden to remain under seal.

and 134.)  The descriptions in the SAC—particularly those Akoustis sought to minimally unredact in meet and confer—lack sufficient detail or value to warrant any redactions.  They are only descriptions *about* trade secrets, not trade secrets themselves, and they do not divulge enough information for anyone to discern or replicate the underlying information Qorvo alleges to be the actual trade secrets at issue.  *See Feenix Payment Sys.*, 2021 WL 2587844, at *3; *Lithero*, 2020 WL 4699041, at *2.  Moreover, Qorvo cannot identify any harm that would result from these descriptions being made public, as the law requires.  *In re Avandia Mktg.*, 924 F.3d at 673; *Alchem USA Inc.*, 2022 WL 3043153, at *3; (*see* Roozen Decl., ¶3).  As Akoustis explained in meet and confer and as this Court has held, describing a trade secret in broad terms does not identify the trade secret.  *See Lithero, LLC*, 2020 WL 4699041, at *2; *see also Feenix Payment Sys.*, 2021 WL 2587844, at *3-5.  Moreover, other courts in this Circuit have unsealed documents that explain R&D processes and provide information about products and remanufacturing process presently in use where the documents did not provide "any detailed information regarding either the internal processes or analysis that led to the data's generation." *Nelson*, 2014 WL 12617593, at *4.

Most of the purported trade secret descriptions in the SAC merely indicate that Qorvo has and maintains certain processes, instructions, and roadmaps.  (*See*, *e.g.*, Appx. A at ¶¶80, 88, 94, 99, 105, 114, 120, 129, and 134.)  But indicating that there is a process or roadmap without describing the internal process itself is not sufficient to warrant nondisclosure to the public.  *See Nelson*, 2014 WL 12617593, at *4; *Feenix Payment Sys.*, 2021 WL 2587844, at *3-5.  By way of example, Qorvo's publicly filed SAC wholly redacts the description of its purported "Trade Secret 1": "██████████████████████████████████████████████████████

██████████████████████████████████████." (*See* Appx. A at ¶80.)  Yet this is

something every wafer manufacturer must do, i.e., develop a process to make a good product.

Qorvo's particular process is not detailed in the SAC, only the fact that it has one.  Furthermore,

Qorvo makes such information public in other contexts, including statements in its 10-K that it

engages in visual inspection of its filters.  (*See* Roozen Decl., Exh. 8 at p. 8 (Qorvo 10-K dated

Mar. 28, 2020 10-K) (noting that: "At the end of the semiconductor manufacturing process, we

regularly conduct wafer level tests" which includes "visual defect inspection").)

Similarly, Qorvo redacted the description of purported "Trade Secret 2": ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."  (*See* Appx. A at ¶80.)  Again,

the statement does not disclose any inspection parameters or steps, only that Qorvo has an

inspection process, but Qorvo publicly discloses that it engages in testing prior to shipment in its

10-K.  (*See* Roozen Decl., Exh. 8 at p. 8 (Qorvo, Mar. 28, 2020 10-K) (noting that: "products are

tested for RF[8] performance and prepared for shipment through a tape and reel process"); *see also*

*id.* ("To maximize wafer yields and quality, we test products multiple times, maintain continuous

reliability monitoring and conduct numerous quality control inspections throughout the

production flow.")).

As another example, Qorvo redacted the description of its alleged "Trade Secret 68":

"▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮."  (*See* Appx. A at 134.)  Again, the fact that Qorvo has product roadmaps is

something Qorvo publicly discloses.  (*See, e.g.*, Roozen Decl., Exh. 9 at p. 29 (Qorvo 2019

Proxy Statement) (listing as a rationale for its objective: "Meet technology roadmap for critical

products"); *id.* at Exh. 10 at p. 73 (Qorvo 10-K dated April 2, 2016 ("It is also expected that

---

[8] "RF" means radio frequency.

Public Version

customers will benefit from new scale advantages in manufacturing and R&D, as well as an

aggressive roadmap of new products and technologies.").)  The SAC discloses no internal

processes, procedures, or actual roadmaps, and mere statements that these exist cannot be

shielded from public view.  *See Nelson*, 2014 WL 12617593, at *4.  It is also hard to fathom how

harm could come from letting the public know that these were the types of information at issue

in this case, further supporting removing such redactions.  *Glenmede Trust Co.*, 56 F.3d at 484.

Qorvo likewise seeks to obscure from public scrutiny general statements that indicate it

retains specifications and diagrams.  (*See* Appx. A at ¶¶110, 120, 134.)  For example, purported

"Trade Secret 48" is described as ███████████████████████████████ and

purported "Trade Secret 50" is described as "████████████████████████████████

██████."  (*See* Appx. A at ¶120.)  These statements do not reveal anything about the actual

specifications, components, diagrams showing the location of components, or other internal

information used by Qorvo, and redacting them is improper.  *See Nelson*, 2014 WL 12617593, at

*4.  Further, Qorvo's own public datasheets provide schematics and diagrams.  (*See*, *e.g.*,

Roozen Decl., Exh. 11 (Qorvo, Inc., *QPQ1904 Datasheet* (n.d.)

https://www.qorvo.com/products/d/da007836) (Qorvo preliminary datasheet containing diagrams

and schematics).)  It is, therefore, inconsistent for Qorvo to claim here that simply

acknowledging that it has certain specifications and diagrams should be withheld from the

public.  *See Keen Mktg. and Mfg., LLC v. Sweeney*, No. 6:17-cv-2189-Orl-37TBS, 2018 WL

7463441, at *4 (M.D. Fla. Mar. 28, 2018) ("Now that this information has been publicly

disclosed by Plaintiffs, any justification for keeping it under seal has evaporated.").  Similarly,

there is no way Qorvo could be harmed by disclosing that it has specifications and diagrams.  *See*

*Glenmede Trust Co.*, 56 F.3d at 484; *Alchem USA Inc.*, 2022 WL 3043153, at *3.

Other purported trade secret descriptions merely indicate that Qorvo maintains data results. (*See* Appx. A at ¶¶88, 134.)  For instance, Qorvo describes its purported "Trade Secret 24" as "███████████████████████████."  (*See* Appx. A at ¶88.)  Like *Nelson*, this description does not discuss any hows or whys about the underlying testing, and it is not reasonable for this text to remain under seal.  *Nelson*, 2014 WL 12617593, at *8. Additionally, Qorvo once again publicly discloses that it engages in testing, including on Qorvo's website and in its 10-K, which trumpet that fact that Qorvo tests its filters.  (*See* Roozen Decl., Exh. 12 (Qorvo, Inc. *Improving Wi-Fi Range and Capacity with Qorvo's Bandedge BAW Filters* (June 2019), https://www.qorvo.com/design-hub/technical-articles/improving-wi-fi-range-and-capacity-with-qorvo-bandedge-baw-filters (stating that the underlying article provides information about spectral masks versus bandedge tests)); *id.* at Exh. 8 at p. 8 (Qorvo 10-K dated Mar. 28, 2020 10-K) (noting different testing Qorvo conducts).)  Disclosing the simple fact that Qorvo maintains internal documents with testing information cannot meet the standard to remain under seal.  *Nelson*, 2014 WL 12617593, at *8; *Keen Mktg. and Mfg., LLC*, 2018 WL 7463441, at *4.

Finally, several of the purported trade secret descriptions relate to ████████████ ██████████ (*See* Appx. A at ¶¶110 and 125.)  For example, purported "Trade Secret 37" is described as "███████████████████,"; purported "Trade Secret 52" is described as, "████ ██████████████████████";  and purported "Trade Secret 54" is described as "██████████████████████████████."  *Id.*  These are things that all companies of Qorvo's size maintain, and which Qorvo itself discloses in other contexts.  For instance, in a Qorvo 10-Q, Cash Bonus Exhibit, Qorvo listed "cost targets" as one of its objective criteria for performance objects.  (*See* Roozen Decl., Exh. 13 at p. 46 of the



exhibit.) ▮▮▮▮▮▮▮▮▮ are listed on the website Indeed.com.  (*See id.* at Exh. 14.)  In

fact, Qorvo's own website indicates that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

for some of its open positions.  (*See id.* at Exh. 15 (Qorvo, Inc., *Field Application Engineer,*

*Mobile Comms* (n.d.), https://careers.qorvo.com/job/Field-Application-Engineer%2C-Mobile-

Comms-CA/958582600/) (listing job responsibilities and providing a salary range of $101,300-

131,600).)  Thus, disclosing that Qorvo maintains internal documents with information about

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮cannot meet high burden to remain under seal.

*Keen Mktg. and Mfg., LLC*, 2018 WL 7463441, at *4.  These redactions should be removed.

### B. Qorvo's General Process Descriptions Do Not Meet the Standard for Redaction – SAC Paras. 82, 90, 99, 105, 125, 127, 129, 131, 134, and 136

Qorvo also redacts statements that provide nothing more than a generic indication that it

has a process in place.  (*See* Appx. A. at ¶¶82, 90, 99, 105, 125, 127, 129, 131, 134, and 136.)

For example, Qorvo has redacted these four statements, among others:

1) "… Qorvo developed trade secrets related to implementation requirements for ▮▮▮▮▮

   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Appx. A at ¶99.)

2) "…Qorvo developed trade secrets related to implementation requirements for ▮▮▮▮

   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*See* Appx. A at ¶105.)

3) Qorvo developed trade secrets relating to detailed ▮▮▮▮▮▮▮▮▮▮▮

   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮- (*See*

   Appx. A at ¶125).

4) "Akoustis obtained an advantage, including but not limited to obtaining a head start in

   producing and offering products ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

   ▮▮▮▮▮▮▮▮▮▮▮" (*See* Appx. A at ¶136.)

None of these disclose any internal processes or procedures, and the information does not warrant redaction.  *See Nelson*, 2014 WL 12617593, at *4.  Qorvo has also failed to identify any specific harm from disclosure of this information and cannot meet the burden to keep this information under seal.  (Roozen Decl., ¶3); *Alchem USA Inc.*, 2022 WL 3043153, at *3.)  With regards to the first two statements, the fact that Qorvo engages in such actions is public information, and Qorvo states in its 10-K that it engages in the assembly of filters.  (*See* Roozen Decl. at Exh. 8 at p. 8 (Qorvo 10-K dated Mar. 28, 2020 10-K)).  As for the third statement, Qorvo publicly discloses that it operates domestically and internationally, ██████████████ ████████████████████████████████ (*See id.* at p. 17 ("We operate globally with sales offices and R&D activities as well as manufacturing, assembly and test facilities in multiple countries, and some of our business activities are concentrated in Asia. As a result, we are subject to regulatory, geopolitical and other risks associated with doing business outside the U.S….").)  With regard to the fourth statement, Qorvo publicly stated in the First Amended Complaint that "Akoustis has improperly built its 3-7 GHz BAW RF filter portfolio, and created related business opportunities, based on the Qorvo BAW Proprietary Information."  (D.I. 28, ¶67.)  This redacted allegation merely echoes information Qorvo already made public in this very complaint.

These types of statements, not limited to these illustrative examples above, should be unsealed.

### C.    The Date of a Document of Other File Does Not Meet the Standard for Redaction – SAC Paras. 79, 87, 93, 99, 105, 110, 120, 125, 129, 134, and 139.

Perplexingly, Qorvo repeatedly redacts statements that the document allegedly embodying its purported trade secrets have existed "██████████████████████████]."  (*See* Appx. A at ¶¶79, 87, 93, 99, 105, 110, 120, 125, 129, and 134.)  Qorvo also redacts a

15

Public Version

statement about when certain so-called "████████" were created. (*See* Appx. A at ¶139.) It is unclear how stating that a document was written or when a file was created at a certain point in time is a trade secret. Akoustis asked about one of these redactions during the parties' meet and confer, but Qorvo did not identify any specific harm that would arise due to disclosure of this statement. (*See* Roozen Decl., ¶3.) No harm can arise from disclosing the date of any documents or files, and all such redactions should be removed. *See Alchem USA Inc.*, 2022 WL 3043153, at *3.

### D. The Age of the Documents Underlying the Purported Trade Secret Descriptions Further Warrant Unsealing the SAC.

Qorvo's alleged trade secrets, the descriptions of which it has redacted (*see* Section IV.A), are purportedly supported by documents that are ████████ old. Technology in the BAW filter space at issue in this case is ever changing, and technology quickly becomes outdated. *See, e.g.*, Stephane Elisabeth, Intensifying Technology Competition in the Acoustic Wave Filter Market (Oct. 14, 2020), https://www.microwavejournal.com/articles/34710-intensifying-technology-competition-in-the-acoustic-wave-filter-market (noting that in 2020, "several companies have developed technologies that will disrupt the filter market"); (*see also* Roozen Decl., Exh. 16 (Qorvo, *White Paper, A New Generation of 5G Filter Technology*) ("Bulk acoustic wave (BAW) filters are evolving to address these challenges"; "Table 1 illustrates how RF complexity in mobile infrastructure and devices has increased with each generation of wireless technology."; "Advances in filter technology are critical to achieving all these goals.")). Below is a chart listing the documents underlying the purported trade secrets and the date of the document.

| Trade Secret No. | SAC Exhibit | Document Date |
|---|---|---|
| 1-18 | C-1 (D.I. 122-2) | ████████. SAC, Exh. C-1 at QORVO_00035064-069. |

16

██████████████████████ Public Version ██████████████████████

| Trade Secret No. | SAC Exhibit | Document Date |
|---|---|---|
| 19-24 | D-1 (D.I. 122-2) | ████████ SAC, Exh. D-1 at QORVO 00035070 |
| 25-29 | E-1 (D.I. 122-3) | ████████ SAC, Exh. E-1 at QORVO 00035001. |
| 30-32 | F-1 (D.I. 122-4) | ████████. SAC, Exh. F-1 at QORVO 00035124. |
| 33-36 | G-1 (D.I. 122-4) | ████████. SAC, Exh. G-1 at QORVO 00034931 |
| 37-39 | H-1 (D.I. 122-4) | ████████. SAC, Exh. H-1 at p. 2 of exhibit. |
| 40-46 | H-3 (D.I. 122-4) | ████████. SAC, Exh. H-3 at p. 6 of exhibit. |
| 47-51 | I-1 (D.I. 122-4) | ████████. SAC, Exh. I-1 at QORVO 00035132. |
| 52-63 | J-1 (D.I. 122-5) | ████████. SAC, Exh. J-1 at last page of exhibit. |
| 64-67 | K-1 (D.I. 122-5) | ████████. SAC, Exh. K-1 at QORVO 00035148. |
| 68-85 | L-1 (D.I. 122-5) | ████████. SAC, Exh. L-1 at QORVO 00034746. |

Accordingly, most of these documents are at least ████████ old, and one is ████████ ████████ old. As documents age, they become less likely to cause competitive injury. *See, e.g., Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326, 331 (D. Del. 1986) ("the information contained within these documents is two to three years old. Even if Keebler has a legitimate claim to maintain secrecy in its methods of securing such competitive information, Keebler has not shown that disclosure of this old information at this time will harm it. … it is hard to imagine how Keebler's methods for acquiring information three years ago concerning the physical construction of P & G's cookie facility warrant protection from disclosure at this late date."); *see also, Nelson*, 2014 WL 12617593, at *7. The age of the documents underlying the description of the purported trade secrets further supports the likelihood that the purported trade secret descriptions do not warrant remaining under seal.

**E.     Qorvo's Remaining Redactions Are Not Trade Secrets and Disclosing Them Would Not Cause Any Harm – Paras. 84, 85, 91, 92, 97, 102, 104, 108, 109, 113, 118, 124, 128, 133, 138, 139, and 143.**

The remaining redactions in the SAC are broadly related to conduct by Akoustis.  (Appx. A at ¶¶84, 85, 91, 92, 97, 102, 104, 108, 109, 113, 118, 124, 128, 133, 138, 139, and 143.) Qorvo cannot show that any of this information is a trade secret or that disclosing any of it would cause Qorvo any harm.  Although Akoustis' position in meet and confer was that these provisions could remain under seal, they do not meet the legal standard.  The Court should order these full-paragraph redactions removed so that the public is informed about the true nature of this case and is not left to speculate about the allege misconduct at issue.

## V.     <u>Conclusion</u>

For the foregoing reasons, Akoustis respectfully requests that the Court unseal the entirety of the SAC or, at a minimum, order Qorvo to remove the redactions in a manner consistent with the redactions proposed by Akoustis during the parties' meet and confer.  (*See* Roozen Decl., Exh. 1.)

Dated:  February 22, 2023

| | |
|---|---|
| PILLSBURY WINTHROP<br>SHAW PITTMAN LLP | BAYARD, P.A. |

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

Robert M. Fuhrer
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Theresa A. Roozen
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and
Akoustis, Inc.*