Public Version

# PART 3 OF 3 TO EX. 6, D.I. 139



("Trade Secret 11"), *see, e.g.*, Exhibit C-1, QORVO_00035014-019 at Sections 7.2.1-7.2.2;  (j) ████████████████████████████ ("Trade Secret 12"), *see, e.g.*, Exhibit C-1, QORVO_00035019-020 at Section 7.2.3;  (k) ████████████ ("Trade Secret 13"), *see, e.g.*, Exhibit C-1, QORVO_00035020-21 at Section 7.2.4;  (l) ████████████ ("Trade Secret 14"), *see, e.g.*, Exhibit C-1, QORVO_00035021-23 at Section 7.2.5;  (m) ████████ Trade Secret 15"), *see, e.g.*, Exhibit C-1, QORVO_00035023 at Sections 7.2.6;  (n) ████████ , (o) ████ ("Trade Secret 17"), *see, e.g.*, Exhibit C-1, QORVO_00035030-059; and  (p) ("Trade Secret 18") *see, e.g.*, Exhibit C-1, QORVO_00035024-027.

81.     Qorvo has taken and continues to take commercially reasonable steps to protect Trade Secrets 1-18.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

82.     As a result none of Trade Secrets 1-18 were or are generally known or readily ascertainable, nor can they be obtained through the public domain.  Nor could Trade Secrets 1-18 be determined through reverse engineering.  Trade Secrets 1-18 derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, entities who can obtain economic value from the disclosure or use of the information.  Trade Secrets 1-18 create competitive value for Qorvo by enabling its manufacturing team to efficiently

and accurately inspect its products and determine whether such products have been manufactured to an acceptable standard. This information, in turn, informs Qorvo's engineers in making modifications and improvements to the manufacturing process to avoid the issues leading to unacceptable products.  This enables Qorvo to, among other things, create more reliable and more robust products that can perform with greater resilience when deployed in real world environments, and gives Qorvo a competitive edge in the industry.  In short, Trade Secrets 1-18 enable Qorvo to create products, including BAW filters, of a high level of quality that drives its business. Moreover, Trade Secrets 1-18 also create competitive value for Qorvo

thereby avoiding waste and saving resources to use elsewhere in the business.  Trade Secrets 1-18 took Qorvo several years to develop, and cost Qorvo millions of dollars to create. By misappropriating Trade Secrets 1-18, Akoustis obtained an unfair advantage, including but not limited to obtaining a head start in its ability to produce and offer semiconductor products that realize the same efficiencies and cost savings, and to avoid failures resulting from missed quality considerations.   Moreover, Akoustis avoided the great costs and expenses of developing its own inspection procedures and criteria through trial and error.

83.     Akoustis misappropriated Trade Secrets 1-18 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit.  Upon information and belief, Akoustis' misappropriation is continuing. Akoustis and its employees knew or had reason to know that Trade Secrets 1-18 were acquired by improper means, including through at least one Ex-Qorvo employee who improperly disclosed Trade Secrets 1-18 with Akoustis personnel.  At least because these Ex-Qorvo employees had access to Qorvo documents and trade secrets during their employment with Qorvo, such Ex-Qorvo employees had a specific opportunity to acquire the same for disclosure or

use without the express or implied consent or authority of Qorvo. Furthermore, at least because Akoustis recruited and hired these employees (those who had accessed and taken such Qorvo documents), Akoustis, as their new employer, had a specific opportunity to improperly obtain and use the documents, and the trade secrets within them, without the express or implied consent or authority of Qorvo.

84.

85.

Public Version

86. Upon information and belief, in addition to acquiring, accessing, and disclosing Qorvo's trade secret information, Akoustis knowingly used and continues to use Qorvo's trade secret information to advance its business.

**Trade Secrets 19-24 (Exhibits D-1, D-2, D-3)**

87. Through years of research and development, and at great expense, Qorvo developed trade secrets related to BAW filter testing. These trade secrets existed ████████████████ ████████████████ , including as reflected in a confidential-marked Qorvo document attached hereto as Exhibit D-1 and bearing the bates label QORVO_00035070-105.

88. Qorvo trade secrets contained in Exhibit D-1 include, but are not limited to: (a) ███████████████████████ ██████████ ( "Trade Secret 19"), *see* Exhibit D-1 at QORVO_00035084; (b) █████████████████████████████ ("Trade Secret



20"), *see* Exhibit D-1 at QORVO_00035084, 086; (c) ██████████████████████

████████████████ ( "Trade Secret 21"), *see*

Exhibit D-1 at QORVO_00035084-085, 079, 093; (d) ████████████ ████████

████████████████████ ████████ ██████████████

████████████████ ("Trade Secret 22"), *see* Exhibit D-1 at

QORVO_00035081, 087-088, 094; (e) ████████ ████████ ("Trade Secret 23"), *see* Exhibit

D-1 at QORVO_00035084; and (f) ██████████████████████

("Trade Secret 24"), *see* Exhibit D-1 at QORVO_00035098-105.

89.      Qorvo has taken and continues to take commercially reasonable steps to protect

Trade Secrets 19-24. As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at

least in part by maintaining the confidentiality of documents containing such information.

90.      As a result, none of Trade Secrets 19-24 were or are generally known or readily

ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 19-24

be determined through reverse engineering.  Trade Secrets 19-24 derive independent economic

value from not being generally known to, and not being readily ascertainable through proper means

by, entities who can obtain economic value from the disclosure or use of the information.  Trade

Secrets 19-24 create competitive value for Qorvo by ██████████████████████

████████████████████████████████████████

████████████████████████████████████ This

information, in turn, informs Qorvo's design engineers in improve their processes, identify new

rejection/acceptance criteria, and to track and take preventative steps to avoid the issues resulting

in a particular defect. This enables Qorvo to create more reliable and more robust BAW filters that

can perform with greater resilience when deployed in real world environments, and giving Qorvo

Public Version

a competitive edge in the industry. In short, Trade Secrets 19-24 enable Qorvo to create BAW filters of a high level of quality that drives its business. Trade Secrets 19-24 took Qorvo several years, and cost Qorvo millions of dollars to create. By misappropriating Trade Secrets 19-24, Akoustis obtained an unfair advantage, including but not limited to obtaining a head start in producing and offering competing BAW filters accounting for the same quality considerations. Moreover, Akoustis avoided the great costs and expenses of developing its own testing methods and criteria through trial and error.

91.     Akoustis misappropriated Trade Secrets 19-24 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade Secrets 19-24 were acquired by improper means, including through former Qorvo employees who improperly disclosed Trade Secrets 19-24 withing Akoustis and to its other employees (including officers  and  other  executives  at  Akoustis).



92.     Upon information and belief, in addition to acquiring, accessing, and disclosing Qorvo's trade secret information, Akoustis knowingly used and continues to use the information to advance its business.

**Trade Secrets 25-29 (Exhibits E-1, E-2)**

93.     Through years of research and development, and at great expense, Qorvo developed trade secrets related to the manufacture and production of semiconductor devices, including but not limited to the inspection of products such as BAW filters. These trade secrets existed including as reflected in a confidential-marked Qorvo document attached hereto as Exhibit E-1 and bearing the bates label QORVO_00034983-5001.

94.     Qorvo trade secrets contained in Exhibit E-1 include, but are not limited to: (a) ("Trade Secret 25"), *see* Exhibit E-1 at QORVO_00034984-985; (b) ("Trade Secret 26"), *see* Exhibit E-1 at QORVO_00034985-87; (c) ("Trade Secret 27"), *see* Exhibit E-1 at QORVO_00034985-87; (d) ("Trade Secret 28"), *see* Exhibit E-1 at QORVO_00034986-88;

██████████████████████████████████████

and (e) ███████████████████████████████████████████

("Trade Secret 29"), *see* Exhibit E-1 at QORVO_00034988-5000.

95.     Qorvo has taken and continues to take commercially reasonable steps to protect
Trade Secrets 25-29.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at
least in part by maintaining the confidentiality of documents containing such information.

96.     As a result, none of Trade Secrets 25-29 were or are generally known or readily
ascertainable, nor can they be obtained through the public domain.  Nor could Trade Secrets 25-
29 be determined through reverse engineering. Trade Secrets 25-29 derive independent economic
value from not being generally known to, and not being readily ascertainable through proper means
by, entities who can obtain economic value from the disclosure or use of the information.  Trade
Secrets 25-29 create competitive value for Qorvo by enabling its manufacturing team to efficiently
and accurately inspect its products and determine whether such products have been manufactured
to an acceptable standard.  This information, in turn, informs Qorvo's engineers in making
modifications and improvements to the manufacturing process to avoid the issues leading to
unacceptable products.  This enables Qorvo to, among other things, create more reliable and more
robust filters that can perform with greater resilience when deployed in real-world environments,
and gives Qorvo a competitive edge in the industry.  In short, Trade Secrets 25-29 enable Qorvo
to create products, including BAW filters, of a high level of quality that drives its business and
sets it apart from its competitors.  Trade Secrets 25-29 took Qorvo several years, and cost Qorvo
millions of dollars, to create. By misappropriating Trade Secrets 25-29, Akoustis obtained an
advantage, including but not limited to obtaining a head start in producing and offering competing
BAW filters and other products accounting for the same quality considerations.  Moreover,

Public Version

Akoustis avoided the great costs and expenses of developing its own inspection procedures and criteria through trial and error.

97.     Akoustis misappropriated Trade Secrets 25-29 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade Secrets 25-29 were acquired by improper means, including through at least one former Qorvo employee who improperly disclosed Trade Secrets 25-29 to Akoustis personnel. ███████

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████

98.     Upon information and belief, in addition to acquiring, accessing, and disclosing Qorvo's trade secret information, Akoustis knowingly used and continues to use the information to advance its business.

**Trade Secrets 30-32 (Exhibits F-1, F-2)**

99.     Through years of research and development, and at great expense, Qorvo developed trade secrets related to implementation requirements for ███████████   █████████

Public Version



These trade secrets existed ███████████████████ ████████████ including as reflected in a confidential marked Qorvo document attached hereto as Exhibit F-1, ██████████████████████████████████████████████ █████████████████████████ Qorvo trade secrets contained in Exhibit F-1 include, but are not limited to: (a) ██████████████████████ ███████████████, ███████ ██████████████████████████████████████████ ██████████████████ ("Trade Secret 30"), *see* Exhibit F-1 at QORVO_00035121; (b) ███████████████████████████ █████████████████████████ ("Trade Secret 31"), *see* Exhibit F-1 at QORVO_00035121-123; and (c) ██████████████████ ███████████ ██████████████████████████████████████ ("Trade Secret 32"), *see* Exhibit F-1 at QORVO_00035122-123.

100.   Qorvo has taken and continues to take commercially reasonable steps to protect Trade Secrets 30-32.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

101.   As a result, none of Trade Secrets 30-32 were or are generally known or readily ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 30-32 be determined through reverse engineering. Trade Secrets 30-32 derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, entities who can obtain economic value from the disclosure or use of the information.  Trade Secrets 30-32 create competitive value for Qorvo by enabling assembly, manufacturing, and engineering teams to produce BAW filters and other products that are more reliable and more robust and can perform with greater resilience when deployed in real-world environments, and giving Qorvo a competitive edge in the industry.  In short, Trade Secrets 30-32 enable Qorvo to

create BAW filters of a high level of quality that drives its business. Trade Secrets 30-32 took Qorvo several years, and cost Qorvo millions of dollars, to create. By misappropriating Trade Secrets 30-32, Akoustis obtained an unfair advantage, including but not limited to obtaining a head start in producing and offering competing BAW filters accounting for the same quality considerations.  Moreover, Akoustis avoided the great costs and expenses of developing its own reflow preconditioning procedure through trial and error.

102.    Akoustis misappropriated Trade Secrets 30-32 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade Secrets 30-32 were acquired by improper means, including through former Qorvo employees who improperly disclosed Trade Secrets 30-32 within Akoustis and to its employees.

103.    Upon information and belief, Mr. Dry doctored Qorvo's confidential document in attempt to conceal his misappropriation and use of Qorvo confidential information.  As stated above, Mr. Dry is a former Qorvo employee who knew or had reason to know that Exhibits F-1 and F-2 contained Qorvo's trade secrets.  Moreover, because Exhibit F-1 was marked as Qorvo's "Confidential & Proprietary Information" and was, or at least a version of it was, shared by former Qorvo employees having obligations of confidentiality to Qorvo, Akoustis and its employees knew or should have known that Exhibits F-1 and/or F-2 were derived from or through a person who owed a duty of non-disclosure to Qorvo.

104.    Upon information and belief, in addition to acquiring, accessing, and disclosing Qorvo's trade secret information, upon information and belief, Akoustis knowingly used and continues to use the information to advance its business. ███████████████████████

███████████████████████████████████████████████████████████

### Trade Secrets 33-36 (Exhibits G-1, G-2, G-3)

105.    Through years of research and development, and at great expense, Qorvo developed trade secrets related to implementation requirements for ████████████████ ██████████ ███████████████████ These trade secrets existed ██████████████████ ██████████ including as reflected in a confidential-marked Qorvo document attached hereto as Exhibit G-1, ████████████████████████████████████████████ █████████████████████████████████. Qorvo trade secrets contained in Exhibit G-1 include, but are not limited to: (a)█████████████████████ ████ ████████████████ ██████████████████████████████████ ████████████████████████████████ ("Trade Secret 33"); see Exhibit G-1 at QORVO_00034926-30; (b)███████████ ███████████████████

Public Version



("Trade Secret 34"), *see* Exhibit G-1 at QORVO_00034929; (c) ███████████ ("Trade Secret 35"), *see* Exhibit G-1 QORVO_00034927-28; and (d) ████████████ ("Trade Secret 36"), *see* Exhibit G-1 at QORVO_00034929-30.

106.    Qorvo has taken and continues to take commercially reasonable steps to protect Trade Secrets 33-36.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

107.    As a result, none of Trade Secrets 33-36 were or are generally known or readily ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 33-36 be determined through reverse engineering. Trade Secrets 33-36 derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, entities who can obtain economic value from the disclosure or use of the information.  Trade Secrets 33-36 create competitive value for Qorvo by enabling assembly, manufacturing, and engineering teams to produce BAW filters and other products that are more reliable and more robust and can perform with greater resilience when deployed in real-world environments, and giving Qorvo a competitive edge in the industry.  In short, Trade Secrets 33-36 enable Qorvo to create BAW filters of a high level of quality that drives its business.  Trade Secrets 33-36 took Qorvo several years, and cost Qorvo millions of dollars, to create. By misappropriating Trade Secrets 33-36, Akoustis obtained an unfair advantage, including but not limited to obtaining a head start in its ability to produce and offer competing BAW filters accounting for the same quality

considerations.  Moreover, Akoustis avoided the great costs and expenses of developing its own reflow preconditioning procedure through trial and error.

108.    Akoustis misappropriated Trade Secrets 33-36 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade Secrets 33-36 were acquired by improper means, including through former Qorvo employees who improperly disclosed Trade Secrets 33-36 within Akoustis and to its employees.

109.    Upon information and belief, Mr. Dry doctored Qorvo's confidential document in attempt to conceal his misappropriation and use of Qorvo confidential information.  As stated above, Mr. Dry is a former Qorvo employee who knew or had reason to know that Exhibits G-1 and G-3 contained Qorvo's trade secrets.  Moreover, because Exhibit G-1 was marked as Qorvo's

"Confidential & Proprietary Information" and was, or at least a version of it was, shared by former Qorvo employees having obligations of confidentiality to Qorvo, Akoustis and its employees knew or should have known that Exhibits G-1 and/or G-3 were derived from or through a person who owed a duty of non-disclosure to Qorvo. In addition to acquiring, accessing, and disclosing Qorvo's trade secret information, upon information and belief, Akoustis knowingly used and continues to use the information to advance its business. ██████████████████

██████████████████████████████████

### Trade Secrets 37-46 (Exhibits H-1, H-2, H-3)

110.    Through years of research and development, and at great expense, Qorvo developed trade secrets related to its QPF4551 product. ██████████████████████████ ███████████████. These trade secrets existed ██████████████████ ██████, including as reflected in a confidential-marked Qorvo document attached hereto as Exhibit H-1 and bearing the bates label QORVO_00059418 ("Exhibit H-1"). Qorvo trade secrets contained in Exhibit H-1 include, but are not limited to: (a) ██████ ████████ ████ ("Trade Secret 37"), *see* Exhibit H-1 at Overview sheet; (b) ██████████████ ("Trade Secret 38"), *see* Exhibit H-1; and (c) ████████████████████████████ ██████████████████████ ("Trade Secret 39"), *see* Exhibit H-1.

111.    Qorvo has taken and continues to take commercially reasonable steps to protect Trade Secrets 37-39. As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

112.    As a result, none of Trade Secrets 37-39 were or are generally known or readily ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 37-39 be determined through reverse engineering. Trade Secrets 37-39 derive independent economic

value from not being generally known to, and not being readily ascertainable through proper means by, entities who can obtain economic value from the disclosure or use of the information.  Trade Secrets 37-39 create competitive value for Qorvo by enabling it design, manufacture, test, price, and sell its product according to acceptable standards.  In short, Trade Secrets 37-39 enable Qorvo to create products of a high level of quality that drives its business.  Trade Secrets 37-39 took Qorvo several years, and cost Qorvo millions of dollars, to create. By misappropriating Trade Secrets 37-39, Akoustis obtained an advantage, including but not limited to obtaining a head start in producing and offering products accounting for the same quality considerations.  Moreover, Akoustis avoided the great costs and expenses of developing its own products.

113.    Akoustis misappropriated Trade Secrets 37-39 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit.  Upon information and belief, Akoustis' misappropriation is continuing. Akoustis and its employees knew or had reason to know that Trade Secrets 37-39 were acquired by improper means, including through at least one former Qorvo employee who improperly disclosed Trade Secrets 37-39 to Akoustis personnel.

Public Version

114. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

115.     Qorvo has taken and continues to take commercially reasonable steps to protect Trade Secrets 40-46.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

116.     As a result, none of Trade Secrets 40-46 were or are generally known or readily ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 40-46

be determined through reverse engineering. Trade Secrets 40-46 derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, entities who can obtain economic value from the disclosure or use of the information.  Trade Secrets 40-46 create competitive value for Qorvo by enabling it design, manufacture, test, price, and sell its product according to acceptable standards.  In short, Trade Secrets 40-46 enable Qorvo to create products of a high level of quality that drives its business.  Trade Secrets 40-46 took Qorvo several years, and cost Qorvo millions of dollars, to create. By misappropriating Trade Secrets 40-46, Akoustis obtained an unfair advantage, including but not limited to obtaining a head start in producing and offering products accounting for the same quality considerations.  Moreover, Akoustis avoided the great costs and expenses of developing its own products.

117.   Akoustis misappropriated Trade Secrets 40-46 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade Secrets 40-46 were acquired by improper means, including through former at least one former Qorvo employee who improperly disclosed Trade Secrets 40-46 with Akoustis personnel. At least because these Ex-Qorvo employees had access to Qorvo documents and trade secrets during their employment with Qorvo, such Ex-Qorvo employees had a specific opportunity to acquire the same for disclosure or use without the express or implied consent or authority of Qorvo.  Furthermore, at least because Akoustis recruited and hired these employees (those who had accessed and taken such Qorvo documents), Akoustis, as their new employer, had a specific opportunity to improperly obtain and use the documents, and the trade secrets within them, without the express or implied consent or authority of Qorvo.

118.



119.    Upon information and belief, in addition to acquiring, accessing, and disclosing Qorvo's trade secret information, Akoustis knowingly used and continues to use the information to advance its business.

**Trade Secrets 47-51 (Exhibits I-1, I-2, I-3, I-4, I-5)**

120.    Through years of research and development, and at great expense, Qorvo developed trade secrets relating to its QPD2593 product.  These trade secrets existed  including as reflected in a confidential-marked Qorvo document attached hereto as Exhibit I-1 and bearing the bates label QORVO_00035126-132.  Qorvo trade secrets contained in Exhibit I-1 include, but are not limited to: (a) ("Trade Secret 47"), *see* Exhibit I-1 at QORVO_00035126-132; (b) ("Trade Secret 48"), *see* Exhibit I-1 at QORVO_00035127; (c) ("Trade Secret 49"), *see* Exhibit I-1 at QORVO_00035128; (d) ("Trade Secret 50"), *see* Exhibit I-1 at QORVO_00035129-30; and (d)

████████████████████████████████████ ("Trade Secret 51"), *see* Exhibit I-1 at

QORVO_00035131.

121.    Qorvo has taken and continues to take commercially reasonable steps to protect

Trade Secrets 47-53.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at

least in part by maintaining the confidentiality of documents containing such information.

122.    As a result, none of Trade Secrets 47-51 were or are generally known or readily

ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 47-51

be determined through reverse engineering. Trade Secrets 47-51 derive independent economic

value from not being generally known to, and not being readily ascertainable through proper means

by, entities who can obtain economic value from the disclosure or use of the information.  Trade

Secrets 47-51 create competitive value for Qorvo by enabling it to assemble its product according

to acceptable standards.  In short, Trade Secrets 47-51 enable Qorvo to create a product of a high

level of quality that drives its business.  Trade Secrets 47-51 took Qorvo several years, and cost

Qorvo millions of dollars, to create. By misappropriating Trade Secrets 47-51, Akoustis obtained

an unfair advantage, including but not limited to obtaining a head start in producing and offering

products accounting for the same quality considerations.  Moreover, Akoustis avoided the great

costs and expenses of developing its own products.

123.    Akoustis misappropriated Trade Secrets 47-51 by improperly acquiring, accessing,

disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis'

misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade

Secrets 47-51 were acquired by improper means, including through at least one former Qorvo

employee who improperly disclosed Trade Secrets 47-51 with Akoustis personnel. At least

because these Ex-Qorvo employees had access to Qorvo documents and trade secrets during their

Public Version

employment with Qorvo, such Ex-Qorvo employees had a specific opportunity to acquire the same for disclosure or use without the express or implied consent or authority of Qorvo. Furthermore, at least because Akoustis recruited and hired these employees (those who had accessed and taken such Qorvo documents), Akoustis, as their new employer, had a specific opportunity to improperly obtain and use the documents, and the trade secrets within them, without the express or implied consent or authority of Qorvo.

124.

**Trade Secrets 52-63 (Exhibits J-1, J-2, J-3)**

125.    Through years of research and development, and at great expense, Qorvo developed

trade secrets relating to detailed ███████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████.  This intelligence included detailed promotion

criteria for each job title through years of training employees and human resources analyses. These

trade secrets existed ███████████████████████████████ including as reflected in a

confidential-marked Qorvo document attached hereto as Exhibit J-1 and bearing the bates label

QORVO_00039655. Qorvo trade secrets contained in Exhibit J-1 include, but are not limited to:

(a)███████████████████████████████ ("Trade Secret 52"); *see*

Exhibit J-1, ███████████████ (b)████████████████████████████████

█████████████ ("Trade Secret 53"), *see* Exhibit J-1, ████████████████; (c)

██████████████████████████████ ("Trade Secret 54"), *see* Exhibit

J-1, ████████████████████; (d)████████████████████████

██████ ("Trade Secret 55"), *see* Exhibit J-1, ████████████████████

████; (e)████████████████████████ ████ ("Trade Secret 56"), *see* Exhibit

J-1 at "███████████████ █████████████ ; (f) ████████████████

█████ █████████ ("Trade Secret 57"), *see* Exhibit J-1 at ████████████

███████ ████ (g)████████████████████████ ████████ ("Trade Secret

58"), *see* Exhibit J-1 at ██████████████████████; (h) ████████████████

█████████ █████████ ("Trade Secret 59"), *see* Exhibit J-1 at ████████████████

███████; (i) ██████████████████████████ ████████ ("Trade Secret

60"), *see* Exhibit J-1 at ████████████████████████ (j)████████████

█████████ █████████ ("Trade Secret 61"), *see* Exhibit J-1 at ████████████



-48-



Public Version

████████ (k) ████████████████████████ ████ ("Trade Secret 62"),

*see* Exhibit J-1 at ████████████ ; and (l) ████████████████████████████

████████████ ("Trade Secret 63"), *see* Exhibit J-1 ████████████

126.    Qorvo has taken and continues to take commercially reasonable steps to protect Trade Secrets 52-63.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

127.    As a result none of Trade Secrets 52-63 were or are generally known or readily ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 52-63 be determined through reverse engineering. Trade Secrets 52-63  derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, entities who can obtain economic value from the disclosure or use of the information.  Trade Secrets 52-63 create competitive value for Qorvo by enabling Qorvo to strike a delicate balance between ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ In short, Trade Secrets 52-63 enable Qorvo to hire and retain highly competent employees who are critical to its business. Trade Secrets 52-63 took Qorvo several years, and cost Qorvo millions of dollars, to create. By misappropriating Trade Secrets 52-63, Akoustis obtained an unfair advantage, including but not limited to obtaining a head start in its ability to create an effective hiring process, internal performance evaluation manuals, and most importantly, effectively poach key Qorvo employees. Moreover, Akoustis avoided the great costs and expenses of losing employees, hiring employees without the necessary skillsets, and promoting ill-prepared employees, all avoidable only through many years of trial and error.

Public Version

128.    Akoustis misappropriated Trade Secrets 52-63 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that 52-63 were acquired by improper means, including through former Qorvo employees who improperly disclosed Trade Secrets 52-63 within Akoustis and to its other employees. ███████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████ ████████████████████

████████████████████

### Trade Secrets 64-67 (Exhibits K-1, K-2, K-3)

129.    Through years of research and development, and at great expense, Qorvo developed trade secrets relating to its branding requirements and guidelines for marking its products ███

███████████████████████████████.  These trade secrets existed ███

████████████████████ including as reflected in a confidential-marked Qorvo document attached hereto as Exhibit K-1 and bearing the bates label QORVO_00035135-



148 ("Exhibit K-1"). Qorvo trade secrets contained in Exhibit K-1 include, but are not limited to

█████████████████████████████████████████████████████ including with respect to

(a) ███████████████████████████████████████████████████████████████

██████████████████████  ██████████████  ("Trade Secret 64"), *see* Exhibit K-1 at

QORVO_00035135-148; (b) ██████ ████████████████████████████ ████████████

████████████████████████████████████ ("Trade Secret 65"), *see* Exhibit K-1 at

QORVO_00035135-148; (c) ████████████████████████████████████████████ █

████████████████████ ("Trade Secret 66"), *see* Exhibit K-1 at QORVO_00035135-148;

and (d) ████████ ██████████████████████████ ██████████████████████████

████████ ("Trade Secret 67"), *see* Exhibit K-1 at QORVO_00035135-148.

130.    Qorvo has taken and continues to take commercially reasonable steps to protect

Trade Secrets 64-67.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at

least in part by maintaining the confidentiality of documents containing such information.

131.    As a result, none of Trade Secrets 64-67 were or are generally known or readily

ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 64-67

be determined through reverse engineering. Trade Secrets 64-67 derive independent economic

value from not being generally known to, and not being readily ascertainable through proper means

by, entities who can obtain economic value from the disclosure or use of the information.  Trade

Secrets 64-67 create competitive value for Qorvo ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████.  In short, Trade Secrets 64-67 enable Qorvo to create a product of a high level of

quality and usability in the assembly process, that drives Qorvo's business.  Trade Secrets 64-67

took Qorvo several years and cost Qorvo tens of thousands of dollars to create. By misappropriating Trade Secrets 64-67, Akoustis obtained an advantage, including but not limited to obtaining a head start in producing and offering products accounting for the same quality and usability considerations, ██████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████

132.     Akoustis misappropriated Trade Secrets 64-67 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade Secrets 64-67 were acquired by improper means, including through at least one former Qorvo employee who improperly disclosed Trade Secrets 64-67 with Akoustis personnel. At least because these Ex-Qorvo employees had access to Qorvo documents and trade secrets during their employment with Qorvo, such Ex-Qorvo employees had a specific opportunity to acquire the same for disclosure or use without the express or implied consent or authority of Qorvo.  Furthermore, at least because Akoustis recruited and hired these employees (those who had accessed and taken such Qorvo documents), Akoustis, as their new employer, had a specific opportunity to improperly obtain and use the documents, and the trade secrets within them, without the express or implied consent or authority of Qorvo.

133.     ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████     ████████████████████████████████████

Upon information and belief, in addition to acquiring, accessing, and disclosing Qorvo's trade secret information, Akoustis knowingly used and continues to use the information to advance its business.

**Trade Secrets 68-85 (Exhibits L-1, L-2, L-3, L-4)**

134.    Through years of research and development, and at great expense, Qorvo developed trade secrets relating to BAW filters in development, including high-performance, high power Bulk Acoustic Wave (BAW) band-pass filters with extremely steep skirts.

. Qorvo invested significant resources into developing

this BAW filter to enables, among other ████████████████████████████████

████████████████████████████████████. The products under

development include filters with highly unique power handling capabilities that allow for

implementation into high-power applications. The trade secrets concerning these filters, their

applications, technical architecture and layout plans, and product roadmaps ████████████

█████████████████████ including as reflected in a confidential-marked Qorvo document

attached hereto as Exhibit L-1 and bearing the bates label QORVO_00034746-821. See also the

confidential-marked Qorvo document attached hereto as Exhibit L-2 and bearing the bates label

QORVO_00034822-896, and containing some overlapping content. Qorvo trade secrets contained

in Exhibit L-1 include, but are not limited to Qorvo's: (a) ████████████████ ████████

████████████████████████████ ("Trade Secret 68"), see Exhibit L-1

at QORVO_00034758; (b) ████████████████████ ████████████████ ("Trade

Secret 69"), see Exhibit L-1 at QORVO_00034759; (c) ████████████████████████

████████████ ("Trade Secret 70"), see Exhibit L-1 at QORVO_00034760; (d) ████

████████████████████ ████████████████████████ ("Trade Secret 71"),

see Exhibit L-1 at QORVO_00034761; (e) ████████████████████ ████████

("Trade Secret 72"), see Exhibit L-1 at QORVO_00034762; (f) ████████████████

████████ ████████████████████ ("Trade Secret 73"), see Exhibit

L-1 at QORVO_00034764; (g) ████ ████████████████████████████ ██

████████ ████ ████ ████████ ("Trade Secret 74"), see Exhibit L-1 at

QORVO_00034766; (h) ████████████████████ ████████████████████

████████████ ("Trade Secret 75"), see Exhibit L-1 at QORVO_00034770-73; (i)

████████████████████████ ████████████████████████████





("Trade Secret 76"), *see* Exhibit L-1 at QORVO_00034775-76; (j) ("Trade Secret 77"), *see* Exhibit L-1 at QORVO_00034777, 790; (k) ("Trade Secret 78"), *see* Exhibit L-1 at QORVO_00034780-83; (l) ("Trade Secret 79"), *see* Exhibit L-1 at QORVO_00034784; (m) ("Trade Secret 80"), *see* Exhibit L-1 at QORVO_00034789; (n) ("Trade Secret 81"), *see* Exhibit L-1 at QORVO_00034790-91; (o) ("Trade Secret 82"), *see* Exhibit L-1 at QORVO_00034792-97; (p) ("Trade Secret 83"), *see* Exhibit L-1 at QORVO_00034799; (r) ("Trade Secret 84"), *see* Exhibit L-1 at QORVO_00034800-808; (r) ("Trade Secret 85"), *see* Exhibit L-1 at QORVO_00034816-820.

135.    Qorvo has taken and continues to take commercially reasonable steps to protect Trade Secrets 68-85. As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

136.    As a result, none of Trade Secrets 68-85 were or are generally known or readily ascertainable, nor can they be obtained through the public domain. Nor could Trade Secrets 68-85 be determined through reverse engineering. Trade Secrets 68-85 derive independent economic value from not being generally known to, and not being readily ascertainable through proper means

by, entities who can obtain economic value from the disclosure or use of the information.  Trade Secrets 68-85 create competitive value for Qorvo by enabling it to mark and brand its ███████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████.  In short, Trade Secrets 68-85 enable ██████████████████████████████ ████████████████████████████████████████████████.  Trade Secrets 68-85 took Qorvo several years and cost Qorvo millions of dollars to create.  By misappropriating one or more of Trade Secrets 68-85, Akoustis obtained an advantage, including but not limited to obtaining a head start in producing and offering products ███████████████████████████ ████████████████████████.

137.    Akoustis misappropriated Trade Secrets 68-85 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade Secrets 68-85 were acquired by improper means, including through at least one former Qorvo employee who improperly disclosed one or more of Trade Secrets 68-85 with Akoustis personnel. At least because these Ex-Qorvo employees had access to Qorvo documents and trade secrets during their employment with Qorvo, such Ex-Qorvo employees had a specific opportunity to acquire the same for disclosure or use without the express or implied consent or authority of Qorvo. Furthermore, at least because Akoustis recruited and hired these employees (those who had accessed and taken such Qorvo documents), Akoustis, as their new employer, had a specific opportunity to improperly obtain and use the documents, and the trade secrets within them, without the express or implied consent or authority of Qorvo.

138.

**Trade Secret 86 (Exhibits M-1, M-2)**

139.    Through years of research and development, and at great expense, Qorvo developed trade secrets relating to BAW filter simulation and performance data that informed its research, development, and competitive analysis in the BAW filter space. Qorvo invested significant resources into generating such data, identifying parameters/variables to modify to best understand underlying products associated with this data, and interpreting this data to inform the way it refines its products.  This data is highly sensitive. The trade secrets reflected in this data existed in the

Public Version



form of, e.g., ████████████████████████████ ██████████████████████████

████████████████████ ████████████████████████████████

███████████████████████████████████████████ The trade

secrets arising out of Qorvo generated ████████ are collectively referred to herein as "Trade Secret

86." ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

140.    Qorvo has taken and continues to take commercially reasonable steps to protect Trade Secret 86.  As set forth in paragraphs 1 through 29, Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

141.    As a result, Trade Secret 86 was not or is not generally known or readily ascertainable, nor can it be obtained through the public domain. Trade Secret 86 derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, entities who can obtain economic value from the disclosure or use of the information.  Trade Secret 86 creates competitive value for Qorvo by enabling it to evaluate its products at various points throughout the development process, and under different conditions of unique interest, and refine their BAW filter designs to produce the most reliable and highest performance filters relative to their competition.  In short, Trade Secret 86 enables Qorvo to create a product of a high level of quality and usability that drives Qorvo's business.  Trade Secret 86 took Qorvo considerable time and financial resource to create. By misappropriating

Trade Secret 86, Akoustis obtained an advantage, including but not limited to obtaining a head start in their competitive analysis and production of BAW filter products, among others, that account for the same performance and usability considerations that Qorvo learned through trial and error over an extensive period of time.

142.    Akoustis misappropriated Trade Secret 86 by improperly acquiring, accessing, disclosing and using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that Trade Secret 86 were acquired by improper means, including through at least one former Qorvo employee who improperly disclosed Trade Secret 86 with Akoustis personnel. At least because these Ex-Qorvo employees had access to Qorvo documents and trade secrets during their employment with Qorvo, such Ex-Qorvo employees had a specific opportunity to acquire the same for disclosure or use without the express or implied consent or authority of Qorvo. Furthermore, at least because Akoustis recruited and hired these employees (those who had accessed and taken such Qorvo documents), Akoustis, as their new employer, had a specific opportunity to improperly obtain and use the documents, and the trade secrets within them, without the express or implied consent or authority of Qorvo.

143.

Public Version

**Additional Trade Secrets  (Exhibits N-1)**

144.     In addition to enumerated Trade Secrets 1–86,  Qorvo has developed many other

highly valuable trade secrets ("Additional Trade Secrets"). Upon information and belief, Akoustis

has improperly acquired, accessed, disclosed and/or used such Additional Trade Secrets in

advancing its own business interests. Examples of this are attached hereto as Exhibit N-1, which

includes documents bearing the bates labels: AKTS_00156270, AKTS_00117498,

AKTS_00138229, AKTS_00138271, AKTS_00141631, AKTS_00151319, AKTS_00143669,

AKTS_00145340, AKTS_00146974, AKTS_00146974, AKTS_00167236; AKTS_00198676;

AKTS_00198680; AKTS_00198699; AKTS_00198718; AKTS_00198736; AKTS_00198755;

AKTS_00198821; AKTS_00198836; AKTS_00198854; AKTS_00198873; AKTS_00198944;

AKTS_00199018; AKTS_00199032; AKTS_00199035; AKTS_00199038; AKTS_00199040;

AKTS_00199042; AKTS_00199107; AKTS_00199110; AKTS_00199113 (collectively, "Exhibit

N-1").

145.     Qorvo has taken and continues to take commercially reasonable steps to protect the

Additional Trade Secrets, including as set forth in paragraphs 1 through 29.

146.     As a result the Additional Trade Secrets are not generally known or readily

ascertainable, nor can they be obtained through the public domain. Nor could the Additional Trade

Secrets be determined through reverse engineering. The Additional Trade Secrets derive

independent economic value from not being generally known to, and not being readily

ascertainable through proper means by, entities who can obtain economic value from the disclosure or use of the information.  The Additional Trade Secrets create competitive value for Qorvo by, *inter alia*,  enabling Qorvo to meet or exceed performance objective and requirements, to accelerate the research and development cycle, to avoid errors in future product builds, to reduce the amount of time between design and manufacture, to reduce waste and other expenditure of resources to achieve profitability targets, to attract and retain talent, to maintain the product quality that customers have come to associate with the "Qorvo" brand, and to isolate the reason why certain defects arise or certain failures are experienced with BAW filters. If misappropriated, a competitor could (and Akoustis did) avoid the great costs and expenses resulting from running a BAW filter business without these Additional Trade Secrets.

147.   Upon information and belief, Akoustis misappropriated the Additional Trade Secrets by improperly acquiring, accessing, disclosing and/or using such trade secrets for its own benefit. Upon information and belief, Akoustis' misappropriation is continuing.  Akoustis and its employees knew or had reason to know that the Additional Trade Secrets were Qorvo's confidential information, at least on account of the "Confidential" and/or "Proprietary" marking on the documents containing these Additional Trade Secrets, and/or the nature of the content included within these documents.  Moreover, Akoustis and its employees knew or had reason to know that the Additional Trade Secrets were acquired by improper means, including through former Qorvo employees who improperly shared such Additional Trade Secrets within Akoustis, knowing that the information was not authorized for such use.

148.   Accordingly, Akoustis has improperly built its 3-7 GHz BAW RF filter portfolio, and created related business opportunities, based on the Qorvo BAW Proprietary Information and confidential information, including trade secrets.

Public Version

149.    The Akoustis employees who misappropriated Qorvo's trade secrets knew or had

reason to know that the trade secrets, including confidential-marked documents, were acquired by

improper means.  For example, the Akoustis employees knew that they were not authorized to take

confidential Qorvo documents and keep those documents after their employment with Qorvo

terminated and knew that doing so violated and/or breached one or more agreements with Qorvo,

among other things.  In addition, Akoustis employees, including but not limited to Rohan Houlden,

in soliciting Qorvo employees to divulge Qorvo confidential documents and information, knew or

should have known that they were inducing Qorvo employees to breach their confidentiality

agreements with Qorvo.  Further, the Akoustis employees acquired confidential-marked Qorvo

documents by theft, including by emailing the documents to a personal email account or

downloading the documents from Qorvo's computer systems without authorization to use them in

the intended manner or the manner in which they were used.  Moreover, the Akoustis employees

disclosed and/or used Qorvo's trade secrets without Qorvo's consent and in violation and/or breach

of one or more agreements with Qorvo.

150.    Akoustis and Qorvo are direct competitors in the BAW filter market.  Qorvo's trade

secrets, including confidential-marked documents, were directly transferable for use by Akoustis.

By way of non-limiting example, Akoustis took certain confidential-marked Qorvo documents as

described above and re-purposed them to be used by Akoustis for essentially the same purpose for

which they were used within Qorvo, including for the development and related activities of

competing BAW filters.

151.    Akoustis' wrongful conduct alleged herein by their misappropriation of Qorvo's

trade secrets has and will continue unless enjoined and restrained by this Court, and will cause

great and irreparable injury to Qorvo's business, and it could cause Akoustis to have improper

advantages, positions, and rights in the marketplace to Qorvo's detriment. Absent injunctive relief, Akoustis' further disclosure and use of Qorvo's trade secrets could irreparably harm Qorvo.

152.    By using the Qorvo BAW Proprietary Information and other confidential information obtained according to the preceding paragraphs, Akoustis has gained an unfair advantage, enabling Akoustis to misappropriate trade secrets and to enter the BAW filter market more quickly than it could have without the Qorvo BAW Proprietary Information and/or other proprietary or confidential information of Qorvo.

153.    On information and belief, Akoustis has used, continues to use, has inevitably used, or will inevitably use, the Qorvo BAW Proprietary Information obtained through Ex-Qorvo BAW Employees and confidential Qorvo documents (including the trade secrets reflected therein) in connection with Akoustis' design, development, manufacture, and qualification of its BAW filters.

### E.    Akoustis Engages in False Advertising and False Patent Marking By Falsely Describing its BAW Filters as "Single-Crystal"

154.    Akoustis' unfair competition has also extended to making false and misleading statements about the characteristics of its BAW filters in an attempt to derive an unfair competitive advantage over competing products including Qorvo products.

155.    Akoustis repeatedly promotes and asserts in advertisements, marketing and related materials including investor brochures that its BAW filters use "single-crystal" piezoelectric layers, which it refers to as "XBAW™ technology."

156.    For example, this alleged differentiation is prominent on Akoustis' website blog, as shown below (*see* Akoustis Goes Live – Akoustis Technologies, https://akoustis.com/akoustis-goes-live/ (last visited Sept. 14, 2021)).

> **Pioneering Next-Generation Materials**
>
> At the core of our success lies the conceptualization, development, and manufacturing capabilities of patented XBAW™ technology and our high-purity piezoelectric materials.
>
> Our next-gen materials allow for single-crystal bulk acoustic wave (BAW) high-band RF filters which utilize our advanced resonator-filter process technology to drive higher electro- mechanical coupling wider bandwidth RF filter solutions.

157.    Akoustis makes similar claims in its press releases, such as the Press Release related to the AKF-1938 Filter (*see* AKOUSTIS EXPANDS COMMERCIAL PRODUCT PORTFOLIO WITH NEW 3.8 GHZ BAW RF FILTER :: AKOUSTIS TECHNOLOGIES, INC. (AKTS), https://ir.akoustis.com/news-events/press-releases/detail/90/akoustis-expands-commercial-product-portfolio-with-new-3-8 (last visited Sept. 14, 2021)), as shown below.

> The AKF-1938 is a high performance, ultra-small passband 3.8 GHz BAW RF filter designed for use in radar and RF transceiver applications. The filter wafers will be manufactured using Akoustis' new_proprietary_XB1_single-crystal_BAW_manufacturing_process which delivers high-performance RF filter solutions for frequencies up to 7 GHz. The AKF-1938 provides

158.    Further, in product datasheets for each of the twelve BAW filters identified above that are currently offered for sale on its website (*see* ALL PRODUCTS – AKOUSTIS TECHNOLOGIES, https://akoustis.com/products/filters/applications/all-products/ (last visited Sept. 14, 2021)), Akoustis states that the filters utilize "Akoustis' patented, XBAW technology which provides leading RF filter performance" and that U.S. Patent No. 10,256,786 (the "'786 Patent") covers that BAW filter.

159.    U.S. Patent No. 10,256,786 is titled "Communication Filter Using Single Crystal Acoustic Resonator Devices."   The independent claims of U.S. Patent No. 10,256,786 define

piezoelectric layers, and the disclosure of U.S. Patent No. 10,256,786 and Akoustis' statements

make clear that these recited piezoelectric layers are single-crystal.

160.    Akoustis relies on its descriptions of its filters as "single-crystal" and the related

marking of those filters with U.S. Patent No. 10,256,786 to attract customers and prospective

customers in conjunction with its claims that single-crystal piezoelectric materials drive superior

performance as compared to polycrystalline technology, such as is used in competitor's BAW

filters, including by Qorvo.  However, Akoustis' BAW filter products are not "single crystal."

They are polycrystalline.

**F.    Akoustis Engages In Unfair Competition By Promoting Its Infringing, Misappropriated, and Falsely Advertised Products to Qorvo Customers**

161.    On information and belief, Akoustis has competed with Qorvo and has attempted

to persuade Qorvo's customers to replace Qorvo BAW filters with Akoustis' BAW filters that: (i)

infringe the Patents-in-Suit; (ii) were developed and manufactured with the Qorvo BAW

Proprietary Information and Qorvo's trade secrets; and (iii) are falsely advertised as "single-

crystal" and marked with U.S. Patent No. 10,256,786.

**V.    CLAIMS FOR RELIEF**

**A.    Count I - Infringement of U.S. Patent No. 7,522,018 (the '018 Patent)**

162.    Qorvo incorporates by reference the allegations of paragraphs 1 through 161 set

forth above.

163.    Akoustis infringes the '018 Patent under 35 U.S.C. § 271(a), by making, using,

selling, or offering for sale the 3-7 GHz BAW RF filter portfolio including, but not limited to its

5.2 GHz RF BAW filters (*i.e.,* AKF-1252), 5.6 GHz RF BAW filters (*i.e.,* AKF-1256), 3.6 GHz

CBRS bandpass BAW filters (*i.e.,* AKF-1336), and 3.5 GHz 5G coexistence BAW filters (*i.e.,*

AKF-10235) and related products (collectively the "Accused Products"), each of which utilizes

the inventions disclosed and claimed in the '018 Patent.  On information and belief, each of the Accused Products is of similar design and construction as it pertains to the '018 Patent.

164.    Qorvo recently acquired a sample Accused Product, conducted testing and analysis on it, and determined that it meets all of the limitations of one or more claims of the '018 Patent. As an example, Akoustis directly infringes at least independent claim 1 of the '018 Patent.  The Accused Products are film bulk acoustic resonators ("FBAR") that have a membrane structure FBAR with a layer structure including a piezoelectric layer and a top and a bottom electrode layer.

165.    Like claim 1, the Accused Products are configured with thicknesses of the two electrode layers being unequal, characterized in that the top electrode layer is thinner than the bottom electrode layer.  By way of example, the Akoustis AKF-10235 BAW Filter has a top electrode layer that is averages about110 nm thick and a bottom electrode layer that averages about 129 nm thick. On information and belief, the other Accused Products similarly have piezoelectric layers and top electrode layers that are thinner than their bottom electrode layers.

166.    To the extent required by claim 1, the Accused Products have increased filter bandwidth performance. By way of example, increased filter bandwidth performance of the Akoustis AKF-10235 BAW Filter is shown in the below graph taken from the AKF-10235 Data Sheet.  On information and belief, the other Accused Products similarly have increased filter bandwidth performance.



167.    Thus, Akoustis has infringed, and continues to infringe, at least claim 1 of the '018

Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making,

using, selling, and/or offering for sale in the United States, and/or importing into the United States,

the Accused Products that are covered by one or more claims of the '018 Patent.

168.    On information and belief, Akoustis has been and is inducing infringement of

the'018 Patent in violation of 35 U.S.C. § 271(b) at least by actively and knowingly inducing its

customers to, literally or under the doctrine of equivalents, make, use, sell, and/or offer for sale in

the United States, and/or import into the United States, products incorporating the Accused

Products which utilize the inventions disclosed and claimed in the '018 Patent.  Specifically,

Akoustis induces infringement of the '018 Patent by publishing instructions on its website

instructing third parties on how to use the Accused Products.   These instructions include

recommendations for customers of the Accused Products on how to solder and package the

Accused Products as part of customer systems.  Akoustis' intent is further demonstrated by PCB

diagrams published on its website that instruct customers on PCB metal, solder mask, and stencil pattern layouts for implementing the Accused Products in infringing systems.

169.    As of the introduction of the Accused Products, Akoustis has had knowledge of the '018 Patent and Akoustis' infringement thereof, because the Ex-Qorvo BAW Employees, including former executives of Qorvo who are now executives of Akoustis, knew of the '018 patent and brought that knowledge to Akoustis.  Akoustis also has known and knows that its customers' use, sale, and offering for sale of the Accused Products constitutes infringement of at least claim 1 of the '018 Patent for the same reasons set forth above.

170.    Akoustis' infringement of the '018 patent is willful, deliberate, and intentional, and Akoustis is acting in reckless disregard of Qorvo's patent rights.

171.    Because of Akoustis' infringement of the '018 patent, Qorvo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

172.    Unless enjoined, Akoustis, and/or others acting on behalf of Akoustis, will continue their infringing acts, thereby causing additional irreparable injury to Qorvo for which there is no adequate remedy at law.

173.    Akoustis' actions render this an exceptional case and entitle Qorvo to attorneys' fees and costs under 35 U.S.C. § 285.

**B.    Count II - Infringement of U.S. Patent No. 9,735,755 (the '755 Patent)**

174.    Qorvo incorporates by reference the allegations of paragraphs 1 through 173 set forth above.

175.    Akoustis infringes the '755 Patent under 35 U.S.C. § 271(a) by making, using, selling, or offering for sale the 3-7 GHz BAW RF filter portfolio including, but not limited to, its 5.2 GHz RF BAW filters (i.e., AKF-1252), 5.6 GHz RF BAW filters (i.e., AKF-1256), 3.6 GHz

Public Version

CBRS bandpass BAW filters (i.e., AKF-1336), and 3.5 GHz 5G coexistence BAW filters (i.e., AKF-10235), along with related products (collectively, and as defined above, the "Accused Products"), which utilize the inventions disclosed and claimed in the '755 Patent. On information and belief, the Accused Products are of similar design and construction as it pertains to the '755 Patent.

176.    Qorvo recently acquired a sample Accused Product, conducted testing and analysis on it, and determined that it meets all of the limitations of one or more claims of the '755 Patent. As an example, Akoustis directly infringes at least independent claim 9 of the '755 Patent. The Accused Products are BAW resonators comprising a piezoelectric layer, a first electrode on a first surface of the piezoelectric layer, a second electrode on a second surface of the piezoelectric layer opposite the first electrode.

177.    To render a surface of the second electrode inert, the Accused Products include a passivation layer. The passivation layer is on the surface of the second electrode opposite the piezoelectric layer within an active region of the BAW resonators. The passivation layer has a thickness ($T_{PA}$) within the active region of the BAW resonators.

178.    The Accused Products further include one or more material layers on the second surface of the piezoelectric layer adjacent to the second electrode in an outer region of the BAW resonators. The outer region of the BAW resonators is a region outside of the active region of the BAW resonators. The one or more material layers have a thickness that is n times the thickness ($T_{PA}$) of the passivation layer within the active region, wherein: n is a value other than 1. For example, the Akoustis AKF-10235 BAW Filter has one or more material layers outside an active region with a thickness of about 1.5 to 1.6 times a thickness of the passivation layer within the active region.

179.    In the Accused Products, "n" is such that the outer region of the BAW resonators and the active region of the BAW resonators are acoustically matched in such a manner that the energy of the one or more acoustic wavelengths leaked into the outer region is not excited in the active region.

180.    Thus, Akoustis has infringed, and continues to infringe, at least claim 9 of the '755 Patent in violation of 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products that are covered by one or more claims of the '755 Patent.

181.    On information and belief, Akoustis has been and is inducing infringement of the '755 Patent in violation of 35 U.S.C. § 271(b) at least by actively and knowingly inducing its customers to, literally or under the doctrine of equivalents, make, use, sell, and/or offer for sale in the United States, and/or import into the United States, products incorporating the Accused Products which utilize the inventions disclosed and claimed in the '755 Patent.  Specifically, Akoustis induces infringement of the '755 Patent by publishing instructions on its website instructing third parties on how to use the Accused Products.   These instructions include recommendations for customers of the Accused Products on how to solder and package the Accused Products as part of customer systems.  Akoustis' intent is further demonstrated by PCB diagrams published on its website that instruct customers on PCB metal, solder mask, and stencil pattern layouts for implementing the Accused Products in infringing systems.

182.    As of the introduction of the Accused Products, Akoustis has had knowledge of the '755 Patent and Akoustis' infringement thereof, because the Ex-Qorvo BAW Employees, including former executives of Qorvo who are now executives of Akoustis, knew of the '755 patent and brought that knowledge to Akoustis.  Akoustis also has known and knows that its customers'

use, sale, and offering for sale of the Accused Products constitutes infringement of at least claim 9 of the '755 Patent for the same reasons set forth above.

183.    Akoustis' infringement of the '755 patent is willful, deliberate, and intentional, and Akoustis is acting in reckless disregard of Qorvo's patent rights.

184.    Because of Akoustis' infringement of the '755 patent, Qorvo has suffered and will continue to suffer irreparable harm and injury, including monetary damages in an amount to be determined at trial.

185.    Unless enjoined, Akoustis, and/or others acting on behalf of Akoustis, will continue their infringing acts, thereby causing additional irreparable injury to Qorvo for which there is no adequate remedy at law.

186.    Akoustis' actions render this an exceptional case and entitle Qorvo to attorneys' fees and costs under 35 U.S.C. § 285.

**C.       Count III - Lanham Act False Advertising Under 15 U.S.C. § 1125(a)**

187.    Qorvo incorporates by reference the allegations of paragraphs 1 through 186 set forth above.

188.    Akoustis describes its BAW filters as being "single crystal" construction, which misrepresents the nature, characteristics, and/or qualities of Akoustis' BAW filters and constitutes false advertising in violation of 15 U.S.C. § 1125(a).

189.    Akoustis' description of its BAW filters as being "single crystal" is made in commercial advertising or promotion, including via Akoustis' website, presentations, and press releases.  Akoustis also describes its BAW filters as being "single crystal" in its SEC filings.

190.    Akoustis falsely or misleadingly represents to the consuming public, customers, potential customers (collectively, the "target customers") and investors that Akoustis' BAW filters

are of a "single crystal" construction to support a claim of superior performance over the competition. However, Akoustis' BAW filters are, in fact, polycrystalline.

191. Akoustis' false or misleading representations that its BAW filters are "single crystal" actually deceives a substantial portion of the target customers, or has the tendency to deceive the target customers.

192. On information and belief, Akoustis used its false or misleading representations of its BAW filters as "single-crystal" to promote and advertise that it has better technology than Qorvo, or that its BAW filters have better performance than Qorvo's filters. Akoustis' false or misleading representations that its BAW filters are "single crystal" are material because they are likely to influence the purchasing decisions of the target customers.

193. Akoustis' false or misleading representations that its BAW filters are "single crystal" involves BAW filters that are advertised, promoted, sold, and distributed in interstate commerce, including via Akoustis' website.

194. Akoustis' false or misleading representations that its BAW filters are "single crystal" have competitively injured, and are likely to further competitively injure, Qorvo by diverting sales from target customers and through loss of their goodwill.

195. Akoustis knows that its representations of its BAW filters as being of a "single crystal" construction are false or misleading.

196. Akoustis' false or misleading representations of fact are done with bad faith and malice or reckless indifference to Qorvo's and consumers' interests.

197. Based upon the above wrongful acts of Akoustis, Qorvo has incurred monetary damages through the diversion of sales and loss of goodwill in an amount to be fully demonstrated at trial.

198.    Akoustis' intentional and bad faith or misleading representations of fact will continue until enjoined by this Court.

199.    Qorvo is entitled to preliminary and permanent injunctive to prevent Defendant's continued false advertising.

### D.    Count IV – False Patent Marking Under 35 U.S.C. § 292

200.    Qorvo incorporates by reference the allegations of paragraphs 1 through 199 set forth above.

201.    Akoustis has marked each of the Accused Products with U.S. Patent No. 10,256,786 on datasheets available on its website (*see* ALL PRODUCTS – AKOUSTIS TECHNOLOGIES, https://akoustis.com/products/filters/applications/all-products/ (last visited Sept. 14, 2021)).

202.    The independent claims of U.S. Patent No. 10,256,786 recite piezoelectric layers. Based on the disclosure of U.S. Patent No. 10,256,786 and Akoustis' statements, the recited piezoelectric layers are single-crystal.

203.    However, Akoustis' BAW filter products are not "single-crystal."  They are polycrystalline.  On information and belief, Akoustis regularly tests and analyzes its BAW filter products and knew or should have known that Akoustis' BAW filter products are polycrystalline. Moreover, Akoustis knew or should have known that U.S. Patent No. 10,256,786 covered only single-crystal piezoelectric layers.

204.    Akoustis falsely marked the Accused Products with purpose or intent to deceive the public that the Accused Products were covered by U.S. Patent No. 10,256,786 in violation of 35 U.S.C. § 292.  Akoustis engaged in the false marketing of its products to support a claim that the products are innovative and result in superior performance.  Akoustis' false marking is material because it is likely to influence the purchasing decisions of the target customers.  Akoustis' false

marking has competitively injured, and is likely to further competitively injure, Qorvo by diverting

sales from target customers and through loss of their goodwill.

205.    Qorvo is entitled to compensatory damages in an amount to be determined at trial.

**E.    Count V - Unfair and Deceptive Trade Practices Prohibited by NC. Gen. Stat. § 75-1**

206.    Qorvo incorporates by reference the allegations of paragraphs 1 through 205 set

forth above.

207.    By virtue of the aforesaid acts, Akoustis has engaged in unfair or deceptive acts or

practices and in unfair methods of competition affecting commerce in the state of North Carolina.

Such acts violate the North Carolina Unfair and Deceptive Trade Practices Act, NC. Gen. Stat.

§ 75-1.1.

208.    Qorvo owns and possesses the Qorvo BAW Proprietary Information and employed

the Ex-Qorvo BAW Employees.

209.    Qorvo's business is dependent on its ability to attract and keep key technical

personnel and management.  Qorvo has invested substantial time, effort, and expense in

developing its employees' knowledge and experience in the areas crucial to Qorvo's BAW filter

technologies, including in RF engineering, integrated circuit and filter design, and technical

marketing and support.

210.    Akoustis has engaged in conscious, methodical, and systematic recruitment and

solicitation of Qorvo's employees in all major areas.  On information and belief, a large number

of Akoustis' current employees are Ex-Qorvo employees.  As detailed above, these include many

employees with significant technical and business experience crucial to BAW filter technology,

such as the Ex-Qorvo BAW Employees.

211.     Akoustis is seeking to damage Qorvo's business through the recruiting and hiring away from Qorvo the Ex-Qorvo BAW Employees.  This poaching is intended to damage Qorvo by attrition, rather than by fair competition in the marketplace.

212.     Moreover, as described above, the Ex-Qorvo BAW Employees have significant knowledge of the Qorvo BAW Proprietary Information, and were placed by Akoustis in positions with substantial responsibility that overlapped with those employees' previous roles at Qorvo such that disclosure of the Qorvo BAW Proprietary Information was inevitable.  On information and belief, Akoustis targeted the Ex-Qorvo BAW Employees, including Robert Dry, David Breton, Guillermo Moreno, William Schmid, Kindra Lane, Wendy Wright, Paul Makowenskyj, Tony Espinoza, Ali-Imran Bawangaonwala, Todd Bender, Shawn Gibb, David Hodge, Rohan Houlden, Joonbum Kwon, John Myrick, and Ya Shen to obtain Qorvo BAW Proprietary Information from those employees.  On information and belief, the goal of the systematic raiding of Qorvo employees was to use this Qorvo BAW Proprietary information as a short-cut for Akoustis to enter the market for BAW filters.

213.     The Qorvo BAW Proprietary Information derives independent economic value, actual or potential, from not being known generally to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

214.     Qorvo expended substantial effort, time, and capital in developing, maintaining, and possessing the Qorvo BAW Proprietary Information that it incorporated into its highly successful BAW filter products.

215.     During their employment by Qorvo, the Ex-Qorvo BAW Employees hired by Akoustis had access to the Qorvo BAW Proprietary Information.

Public Version

216.     Following the termination of their employment, the Ex-Qorvo BAW Employees were not authorized to disclose, share, use, or possess the Qorvo BAW Proprietary Information.

217.     Akoustis was aware that the Ex-Qorvo BAW Employees it recruited and hired had entered into binding agreements with Qorvo that prohibited the employees from taking, disclosing, using, sharing, or possessing the Qorvo BAW Proprietary Information.

218.     On information and belief, Akoustis requested the Ex-Qorvo BAW Employees to disclose, use, or share the Qorvo BAW Proprietary Information as part of Akoustis' recruitment process, or otherwise expected the Ex-Qorvo BAW Employees to disclose, use, or share, the Qorvo BAW Proprietary Information as part of their employment at Akoustis, or implemented a hiring scheme that resulted in the Ex-Qorvo BAW Employees inevitably disclosing, using, or sharing, the Qorvo BAW Proprietary Information as part of their employment at Akoustis.

219.     As set forth above, one example of Akoustis' efforts to obtain Qorvo BAW Proprietary Information as part of the recruitment process occurred in late 2020 when an Akoustis engineering manager asked a Qorvo RF Product Engineer to access Qorvo's computer systems during a job interview and provide screen shots of Qorvo BAW Proprietary information to Akoustis.

220.     On information and belief, Ex-Qorvo BAW Employees have disclosed, shared, or used the Qorvo BAW Proprietary Information, at least inevitably, as part of their job responsibilities at Akoustis.

221.     On information and belief, the Ex-Qorvo BAW Employees will continue to disclose, share, or use the Qorvo BAW Proprietary Information as part of their job responsibilities at Akoustis unless and until they are enjoined by this Court from doing so.

222.    On information and belief, the poaching of the Ex-Qorvo BAW Employees and the misappropriation of the Qorvo BAW Proprietary Information has resulted in Akoustis being able to bring its "3-7 GHz BAW RF filter portfolio," including the Accused Products, to market in a timeframe that is highly unlikely, if not impossible, without these unfair practices.  Akoustis' "3-7 GHz BAW RF filter portfolio," has been placed in commerce in North Carolina, and interstate and foreign commerce, within the past four years.

223.    As a result of Akoustis' wrongful conduct, Qorvo has been substantially and irreparably harmed in an amount not readily capable of determination and for which there is no adequate remedy at law.  Unless restrained by this Court, Akoustis will cause further irreparable injury to Plaintiff.

224.    Qorvo is entitled to preliminary and permanent injunctive relief enjoining Akoustis, its agents and employees, and all persons acting in concert or participation with Akoustis, from engaging in any further poaching of Qorvo employees and/or use of the Qorvo BAW Proprietary Information.

225.    Moreover, Akoustis has engaged in unfair or deceptive acts or practices and unfair methods of competition affecting commerce in the state of North Carolina through Akoustis' false or misleading representations to the target customers and investors that Akoustis' BAW filters are of a "single crystal" construction.  Akoustis' false or misleading representations that its BAW filters are "single crystal" actually deceives, or has the tendency to deceive, the target customers, and its representations are material because they are likely to influence the purchasing decisions of the target customers.  Akoustis' false or misleading representations have competitively injured, and are likely to further competitively injure, Qorvo by diverting sales from target customers and through loss of their goodwill.

226.    On information and belief, Akoustis has made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

227.    On information and belief, Akoustis' violations of NC. Gen. Stat. § 75-1.1 have directly and proximately caused and continue to cause Qorvo substantial actual damages in North Carolina and throughout the United States, and Qorvo is entitled to recover actual damages in an amount to be proven at trial.

228.    Pursuant to NC. Gen. Stat. § 75-16 and NC. Gen. Stat. § 75-16.1 Qorvo is entitled to treble damages and attorney fees for Akoustis' unfair and deceptive trade practices and unfair methods of competition.

### F.    Count VI – Misappropriation of Trade Secrets Under the Defense of Trade Secrets Act (18 U.S.C. § 1832 *et seq.*)

229.    Qorvo incorporates by reference the allegations of paragraphs 1 through 228 set forth above.

230.    By virtue of the aforesaid acts, which upon information and belief, are continuing, Akoustis has and continues to engage in trade secret misappropriation under federal law.  Such acts violate the Defense of Trade Secrets Act (18 U.S.C. § 1832 *et seq.*).

231.    As set forth in paragraphs 61 through 153, Qorvo has developed an extensive trade secret portfolio. Qorvo's trade secrets relate to, among other things, documentation and know-how for designing, developing, modeling, simulating, testing, qualifying, manufacturing, marketing, selling, and supporting its BAW filters and other products, as well as Qorvo's compensation and job structure for its engineers and other employees, including those who work on Qorvo's BAW filters and other products. Use of Qorvo's trade secrets allowed Akoustis to implement technology that would otherwise take months if not years to develop independently and to avoid dead-ends.

In the end, Akoustis was able to get to market much faster compared to a company that did not have the benefit of Qorvo's trade secrets.

232.    As set forth in paragraphs 1 through 29, as well as in paragraphs 61 through 153, Qorvo has taken and continues to take commercially reasonable steps to protect its trade secret information.  Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

233.    As set forth in paragraphs 1 through 29, as well as in paragraphs 61 through 153, Qorvo's trade secrets derive independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain value from the trade secrets' disclosure.  Maintaining the confidentiality of Qorvo's trade secrets gives Qorvo a highly valuable advantage over competitors in the BAW filter market.

234.    Qorvo's trade secrets and their use by Akoustis implicate interstate or foreign commerce.  For example, both Qorvo and Akoustis sell BAW filters in interstate and foreign commerce and the trade secrets were used by both parties to develop such filters.

235.    As set forth in paragraphs 1 through 29, as well as in paragraphs 61 through 153, Akoustis improperly acquired, disclosed, used, appropriated, took, carried away, concealed, copied, duplicated, downloaded, replicated, transmitted, sent, uploaded, communicated, or conveyed the Qorvo trade secrets for the benefit of Akoustis.

236.    As set forth in paragraphs 1 through 29, as well as in paragraphs 61 through 153, Akoustis' improper misappropriations were facilitated through former Qorvo employees who Akoustis recruited for the purpose of obtaining such trade secrets and confidential information, and who—during the time period prior to their departure from Qorvo and their joining Akoustis—

had a specific opportunity to improperly access and take documents containing Qorvo BAW Proprietary Information and other Qorvo confidential information, including for disclosure or use at Akoustis without the express or implied consent or authority Qorvo. Furthermore, at least because Akoustis recruited and hired these employees (those who had accessed and taken such Qorvo documents), Akoustis, as their new employer, had a specific opportunity to improperly obtain and use the documents, and the trade secrets within them, without the express or implied consent or authority of Qorvo.

237.    The use of Qorvo's trade secrets by Akoustis was without Qorvo's authorization. Qorvo did not consent to their acquisition, disclosure, or use of Qorvo's trade secrets.

238.    Akoustis intended to, and continues to, convert Qorvo's trade secrets to the economic benefit of one other than their owner, Qorvo.

239.    Akoustis knew and intended that Qorvo, as the owner of Qorvo's trade secrets, would be injured by their actions.

240.    As a result of Akoustis' misappropriation of Qorvo's trade secrets, Qorvo has suffered actual damages in an amount to be proven at trial.

241.    As a result of Akoustis' misappropriation, Akoustis has been unjustly enriched.

242.    Qorvo further pleads entitlement to a reasonable royalty to compensate Qorvo for Akoustis' misappropriation of trade secrets.

243.    Qorvo is informed and believes, and thereon alleges, that Akoustis' misappropriation of Qorvo's trade secrets was willful and malicious based on the facts alleged herein. Akoustis acted with a purpose and willingness to commit the acts alleged, and Akoustis' conduct was not reasonable under the circumstances. Qorvo is therefore entitled to exemplary damages and attorney fees and costs. Qorvo further seeks exemplary damages against Akoustis in

an amount up to two times the amount of Qorvo's actual damages according to proof under 18 U.S.C. § 1836.

244.     The misappropriation of Qorvo's trade secrets has caused and will continue to cause Qorvo irreparable and substantial injury and therefore cannot be fully redressed through damages alone.

245.     If Akoustis were permitted to continue to use and disseminate Qorvo's trade secrets, Qorvo will be irreparably harmed and the economic damages to Qorvo will be difficult to quantify. An injunction prohibiting Akoustis from further acquisition, disclosure, use, and possession of Qorvo's trade secrets is necessary to provide Qorvo with complete relief.

246.     On information and belief, Akoustis has made and will continue to make substantial profits and/or gains on account of its misappropriations, to which it is not in law or equity entitled.

247.     On information and belief, Akoustis' violations of 18 U.S.C. § 1832 *et seq.* have directly and proximately caused and continue to cause Qorvo substantial actual damages, and Qorvo is entitled to recover actual damages in an amount to be proven at trial.

G.     **Count VII – Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 *et seq.*)**

248.     Qorvo incorporates by reference the allegations of paragraphs 1 through 247 set forth above.

249.     Akoustis is an enterprise because it is a Delaware corporation.

250.     As set forth in paragraphs 61 through 153, Akoustis conspired with Rohan Houlden, Robert Dry, and other former Qorvo employees, before Akoustis formally hired such employees at a later date, to steal, copy, possess and use Qorvo's trade secrets without authorization, violating the Defense of Trade Secrets Act.  Akoustis' prior and continuing conspiracy to misappropriate

Qorvo's trade secrets through improper means constitutes unlawful activity pursuant to 18 U.S.C. § 1962(d).

251.    As set forth in paragraphs 61 through 153, Akoustis has misappropriated Qorvo's trade secrets in violation of the Defense of Trade Secrets Act.  On multiple occasions, persons employed by Akoustis—e.g., Rohan Houlden, Robert Dry—have stolen Qorvo's trade secrets, have shared Qorvo's trade secrets, and have re-purposed Qorvo's trade secrets for Akoustis' use to gain an unfair competitive advantage in the market for BAW filters. Akoustis' multiple and continuing violations of the Defense of Trade Secrets Act and misappropriation through improper means of Qorvo's trade secrets constitutes pattern of racketeering activity pursuant to 18 U.S.C. § 1962(c).

252.    Akoustis' racketeering activities is ongoing because, on belief, Akoustis continues to use Qorvo's trade secrets in its business including, but not limited to, documentation and know-how for designing, developing, modeling, simulating, testing, qualifying, manufacturing, marketing, selling, and supporting its BAW filters and other products, as well as Qorvo's compensation and job structure for its engineers and other employees, including those who work on Qorvo's BAW filters and other products.

253.    Akoustis' racketeering activities are related to Akoustis and the former Qorvo employees using misappropriated Qorvo trade secrets in interstate and foreign commerce by, among other things, using know-how and documentation for designing, developing, modeling, simulating, testing, qualifying, manufacturing, marketing, selling, and supporting Akoustis BAW filters and other products, as well as Qorvo's compensation and job structure for its engineers and other employees.

254.   On information and belief, Akoustis' violations of 18 U.S.C. § 1961 *et seq.* have directly and proximately caused and continue to cause Qorvo substantial actual damages, and Qorvo is entitled to recover actual damages in an amount to be proven at trial.

255.   Pursuant to 18 U.S.C. § 1964(c), Qorvo is entitled to treble damages, costs, and attorney fees for Akoustis' racketeering.

### H.   Count VIII – Misappropriation of Trade Secrets Under the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat § 66-152 et seq.)

256.   Qorvo incorporates by reference the allegations of paragraphs 1 through 255 set forth above.

257.   By virtue of Akoustis' acts of misappropriation, including as set forth in paragraphs 61 through 153, which upon information and belief are continuing, Akoustis has and continues to engage in trade secret misappropriation under North Carolina state law. Such acts violate the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat § 66-152 et seq.).

258.   As set forth in paragraphs 61 through 153, Qorvo has developed an extensive trade secret portfolio. Qorvo's trade secrets relate to, among other things, documentation and know-how for designing, developing, modeling, simulating, testing, qualifying, manufacturing, marketing, selling, and supporting its BAW filters and other products, as well as Qorvo's compensation and job structure for its engineers and other employees, including those who work on Qorvo's BAW filters and other products. Use of Qorvo's trade secrets allowed Akoustis to implement technology that would otherwise take months if not years to develop independently and to avoid dead-ends. In the end, Akoustis was able to get to market much faster compared to a company that did not have the benefit of Qorvo's trade secrets.

259.   As set forth in paragraphs 1 through 29, as well as in paragraphs 61 through 153, Qorvo has taken and continues to take commercially reasonable steps to protect its trade secret

information.  Qorvo protects its trade secrets at least in part by maintaining the confidentiality of documents containing such information.

260.     As set forth in paragraphs 1 through 29, as well as in paragraphs 61 through 153, Qorvo's trade secrets derive independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain value from the trade secrets' disclosure.  Maintaining the confidentiality of Qorvo's trade secrets gives Qorvo a highly valuable advantage over competitors in the BAW filter market.

261.     Qorvo's trade secrets and their use by Akoustis implicate interstate or foreign commerce.  For example, both Qorvo and Akoustis sell BAW filters in interstate and foreign commerce and the trade secrets were used by both parties to develop such filters.

262.     As set forth in paragraphs 1 through 29, as well as in paragraphs 61 through 153, Akoustis improperly acquired, disclosed, used, appropriated, took, carried away, concealed, copied, duplicated, downloaded, replicated, transmitted, sent, uploaded, communicated, or conveyed the Qorvo trade secrets for the benefit of Akoustis.

263.     As set forth in paragraphs 1 through 29, as well as in paragraphs 61 through 153, Akoustis' improper misappropriations were facilitated through former Qorvo employees who Akoustis recruited for the purpose of obtaining such trade secrets and confidential information, and who—during the time period prior to their departure from Qorvo and their joining Akoustis— had a specific opportunity to improperly access and take documents containing Qorvo BAW Proprietary Information and other Qorvo confidential information, including for disclosure or use at Akoustis without the express or implied consent or authority Qorvo. Furthermore, at least because Akoustis recruited and hired these employees (those who had accessed and taken such

Qorvo documents), Akoustis, as their new employer, had a specific opportunity to improperly obtain and use the documents, and the trade secrets within them, without the express or implied consent or authority of Qorvo.

264.    The use of Qorvo's trade secrets by Akoustis was without Qorvo's authorization. Qorvo did not consent to their acquisition, disclosure, or use of Qorvo's trade secrets.

265.    Akoustis intended to, and continues to, convert Qorvo's trade secrets to the economic benefit of one other than their owner, Qorvo.

266.    Akoustis knew and intended that Qorvo, as the owner of Qorvo's trade secrets, would be injured by their actions.

267.    As a result of Akoustis' misappropriation of Qorvo's trade secrets, Qorvo has suffered actual damages in an amount to be proven at trial.

268.    As a result of Akoustis' misappropriation, Akoustis has been unjustly enriched.

269.    Qorvo further pleads entitlement to a reasonable royalty to compensate Qorvo for Akoustis' misappropriation of Qorvo's trade secrets.

270.    Qorvo is informed and believes, and thereon alleges, that Akoustis' misappropriation of Qorvo's trade secrets was willful and malicious based on the facts alleged herein. Akoustis acted with a purpose and willingness to commit the acts alleged, and Akoustis' conduct was not reasonable under the circumstances. Qorvo is therefore entitled to exemplary damages and attorney fees and costs.

271.    The misappropriation of Qorvo's trade secrets has caused and will continue to cause Qorvo irreparable and substantial injury and therefore cannot be fully redressed through damages alone.

272.    If Akoustis were permitted to continue to use and disseminate Qorvo's trade secrets, Qorvo will be irreparably harmed and the economic damages to Qorvo will be difficult to quantify. An injunction prohibiting Akoustis from further acquisition, disclosure, use, and possession of Qorvo's trade secrets is necessary to provide Qorvo with complete relief.

I.    **Count IX – Civil Conspiracy Under North Carolina**

273.    Qorvo incorporates by reference the allegations of paragraphs 1 through 272 set forth above.

274.    By virtue of Akoustis' acts of misappropriation, including as set forth in paragraphs 6161 through 153, Akoustis and its employees engaged in trade secret misappropriation in violation of the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat § 66-152 *et seq.*).

275.    Upon information and belief, Akoustis conspired with one or more Qorvo employees, including former Qorvo employees who later joined Akoustis (but prior to their employment by Akoustis), to violate their legal obligations to Qorvo and misappropriate Qorvo's trade secrets for Akoustis' benefit.  Upon information and belief, it was agreed that if these employees would join Akoustis and aid Akoustis in this manner, Akoustis' resultant success in the marketplace would yield substantial financial increase for these employees including through the increased value of securities in Akoustis that would be granted to such employees pursuant to their anticipated employment with Akoustis. Upon information and belief, Akoustis and the one or more employees committed acts in furtherance of the aforesaid conspiracy.

276.    Akoustis' prior  and continuing conspiracy with such employees to misappropriate Qorvo's trade secrets and confidential information is causing, and threatens to continue causing, Qorvo to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets.

277.     As a result of Akoustis' acts of conspiracy in connection with trade secret misappropriation, Qorvo has suffered actual damages in an amount to be proven at trial, and Akoustis has been unjustly enriched.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Qorvo respectfully prays for relief as follows:

1)     Enter a judgment that Akoustis has directly and indirectly infringed the Patents-in-Suit;

2)     Award Qorvo damages in an amount sufficient to compensate it for Akoustis' infringement of the Patents-in-Suit, together with pre-judgment and post-judgment interest and costs, and all other damages permitted under 35 U. S. C. § 284;

3)     Find that Akoustis' infringement of the Patents-in-Suit has been willful and deliberate;

4)     Enter a judgment awarding Qorvo treble damages as a result of Akoustis' willful and deliberate infringement of the Patents-in-Suit, pursuant to 35 U.S.C. § 284;

5)     Find that Akoustis' actions render this an exceptional case under 35 U.S.C. § 285 and award Qorvo its attorneys' fees, costs and expenses;

6)     Preliminarily and permanently enjoin, pursuant to 35 U.S.C. § 283, Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further infringing the Patents-in-Suit;

7)     Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further falsely advertising the properties of its BAW filters;

Public Version

8)      Award Qorvo damages in an amount sufficient to compensate it for Akoustis' false advertising;

9)      Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further falsely marking its BAW filters;

10)     Award Qorvo damages in an amount sufficient to compensate it for Akoustis' false patent marking;

11)     Award Qorvo damages in an amount sufficient to compensate it for Akoustis' trade secret misappropriation under the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat § 66-152 *et seq.*) and/or under the Defense of Trade Secrets Act (18 U.S.C. § 1832 *et seq.*);

12)     Award Qorvo damages, including exemplary damages, punitive damages, attorneys' fees, and costs and expenses in view of Akoustis' violations under the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat § 66-152 *et seq.*) and/or under the Defense of Trade Secrets Act (18 U.S.C. § 1832 *et seq.*);

13)     Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further misappropriating and using Qorvo's trade secrets under the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat § 66-152 *et seq.*);

14)     Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further misappropriating and using Qorvo's trade secrets under the Defense of Trade Secrets Act (18 U.S.C. § 1832 *et seq.*);

15)      Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further selling any products that resulted, in whole or in part, from misappropriating Qorvo's trade secrets under the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat § 66-152 *et seq.*);

16)      Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further misappropriating and using Qorvo's trade secrets under the Defense of Trade Secrets Act (18 U.S.C. § 1832 *et seq.*);

17)      Award Qorvo damages, including exemplary damages, punitive damages, attorneys' fees, and costs and expenses in view of Akoustis' wrongful acts committed pursuant to a conspiracy in violation of North Carolina law;

18)      Award Qorvo damages in an amount sufficient to compensate it for Akoustis' violation under 18 U.S.C. § 1961 *et seq.*;

19)      Award Qorvo damages, including treble damages, punitive damages, attorneys' fees, and costs and expenses in view of Akoustis' violations under 18 U.S.C. § 1961 *et seq.*;

20)      Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further selling any products that resulted, in whole or in part, from pattern of racketeering activity under 18 U.S.C. § 1961 *et seq.*;

21)      Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or

in active concert or participation with any of them, from further misappropriating and using Qorvo's trade secrets under 18 U.S.C. § 1961 *et seq.*;

22)     Award Qorvo damages in an amount sufficient to compensate it for Akoustis' unfair and deceptive trade practices;

23)     Award Qorvo damages, including treble damages, punitive damages, and attorneys' fees, in view of Akoustis' violation of N.C. Gen. Stat. § 75-1.1;

24)     Preliminarily and permanently enjoin Akoustis, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from further unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1;

25)     Order a full and complete accounting to Qorvo for Akoustis' profits, gains, advantages or the value of business opportunities received from the foregoing acts of infringement;

26)     Award Qorvo all actual, compensatory, consequential, liquidated, treble, and special damages to which it is entitled in an amount to be determined at trial;

27)     Assess punitive damages against Akoustis;

28)     Award Qorvo all attorneys' fees and costs to which it is entitled associated with bringing and prosecuting this action;

29)     Award pre-judgment and post-judgment interest against Akoustis; and

30)     Award Qorvo such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and D. Del. LR 38.1, Qorvo demands a trial by jury on all issues raised by the Complaint.

Dated:  Feburary 8, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
Jack B. Blumenfeld (#1014)|
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
(202) 747-1900

Trevor J. Quist
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1540 El Camino Real
Menlo Park, CA 94025