Public Version

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QORVO, INC.,                               )
                                           )
Plaintiff,                                 )
                                           )      C.A. No. 21-1417-JPM
v.                                         )
                                           )      [FILED UNDER SEAL]
AKOUSTIS TECHNOLOGIES,                     )
INC. and AKOUSTIS, INC.,                   )
                                           )
Defendants.                                )
                                           )

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO RE-DESIGNATE THE SECOND AMENDED COMPLAINT MARKED ATTORNEYS' EYES ONLY TO CONFIDENTIAL

4866-5089-6222

Public Version

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................ 4

    A.  The Protective Order. ................................................................................... 4

    B.  The Second Amended Complaint. ................................................................ 5

    C.  The Meet and Confer. .................................................................................. 7

III. REQUESTED RELIEF ........................................................................................ 10

IV.  ARGUMENT ...................................................................................................... 11

    A.  Qorvo Cannot Demonstrate Good Cause to Designate Any Portions of the Second Amended Complaint or the 1,000+ Pages of Akoustis-Produced Documents as AEO ... 11

    B.  Qorvo Fails to Meet the Terms of the Protective Order for an AEO Designation of the SAC and 1000+ Pages of Akoustis-Produced Documents ................................................ 14

        1.  Qorvo Has Not Yet Established that the SAC or its Exhibits Constitute Any Trade Secret or Highly Sensitive Business or Personal Information .................................... 14

        2.  Qorvo Has Not Demonstrated Particularized "Significant Harm" From Any De-Designation of the SAC ................................................................................................ 16

    C.  Any Generic Harm to Qorvo is Outweighed by Prejudice to Akoustis and its Need to Defend Itself in this Litigation. ....................................................................................... 17

V.   CONCLUSION ................................................................................................... 19

i

Public Version

## Table of Authorities
### Cases

*Alchem USA Inc. v. Cage*,
   No. 21-2994, 2022 WL 3043153 (3d Cir. 2022) .................................................. 12

*Analog Devices v. Michalski*,
   157 N.C. App. 462 (N.C. Ct. App. 2003) ............................................................ 15

*Cipollone v. Liggett Grp., Inc.*,
   785 F.2d 1108 (3d Cir. 1986)............................................................................... 12

*Core Lab'ys. LP v. AmSpec, LLC*,
   No. 16-cv-00526-CG-N, 2017 WL 6945580 (S.D. Ala. July 12, 2017), *aff'd* 2017 WL
   3585420 (S.D. Ala. Aug. 18, 2017) ..................................................................... 18

*DIRTT Env't Sols., Inc. v. Henderson*,
   No. 1:19-CV-144 DPB, 2020 WL 6263039 (D. Utah Oct. 23, 2020) .............................. 12, 13

*E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*,
   1982 WL 63780 (D. Del. May 17, 1982)............................................................... 13

*Gillespie v. Charter Commc'n*,
   133 F. Supp. 3d 1195 (E.D. Mo. 2015)................................................................. 19

*Glenmede Trust Co. v. Thompson*,
   56 F.3d 476 (3d Cir. 1995)................................................................................. 12

*Martinez v. City of Ogden*,
   1:08-cv-00087-TCDN, 2009 WL 424785 (D. Utah Feb. 18, 2009) ................................. 13, 18

*No Spill, LLC v. Scepter Canada, Inc.*,
   No. 2:18-cv-2681-HLT-KGG, 2022 WL 16948592 (D. Kan. Nov. 15, 2022)..................... 16

*Pansy v. Borough of Stroudsburg*,
   23 F.3d 772 (3d Cir. 1994)............................................................................ passim

*RAJ Enters. of Cent. Fla. LLC v. Select Lab'y Partners Inc.*,
   No. 5:14-CV-344-OC-30PRL, 2015 WL 4602550 (M.D. Fla. July 29, 2015)..................... 12

*Standard Space Platforms Corp. v. United States*,
   35 Fed. Cl. 505 (Fed. Cl. 1996) ......................................................................... 18

*Vision Ctr. N.W., Inc. v. Vision Value LLC*,
   No. 3:07-CV-183 RLM, 2008 WL 11413540 (N.D. Ind. July 1, 2008) ........................... 13, 18

*Water Tree Ventures, LLC v. Giles*,
   No. 3:18-cv-1421-MCR-HTC, 2019 WL 13162408 (N.D. Fla. Apr. 26, 2019)... 16, 17, 18, 19

ii

Public Version

<u>Rules and Regulations</u>

Federal Rule of Civil Procedure
    Rule 26.................................................................................................................................11
    Rule 26(c)......................................................................................................................11, 12

4866-5089-6222

## I.      INTRODUCTION

Plaintiff Qorvo, Inc. ("Qorvo") designated as "Attorneys Eyes Only" ("AEO") all the trade secret allegations and over 1,000 pages of exhibits in the Second Amended Complaint ("SAC")[1] contending that the allegations themselves constitute "trade secrets" that Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Akoustis") allegedly misappropriated.  The vast majority of ***Qorvo's AEO designations*** to the SAC hide the information and documents ***produced by Akoustis***.  Inexplicably, Qorvo asserts that it is entitled to designate as AEO the materials that Akoustis produced to prevent Akoustis from accessing them.  The impact of Qorvo's AEO position is profound—leaving Akoustis blind to the 85+ newly alleged trade secrets now at issue in this case and prohibiting Akoustis from seeing and consulting with its counsel about exhibits that Akoustis produced from its own files.  Qorvo, on the other hand, can see the entirety of the SAC including the exhibits produced by Akoustis.[2]

Qorvo's use of the Court's Stipulated Protective Order (D.I. 57) ("Protective Order" or "Order") as a sword and shield is contrary to the provisions of the Protective Order and triggers a broad range of practical and fundamental due process considerations.  The Protective Order was entered "for the purpose of facilitating discovery."  (D.I. 57 at §20.)  But Qorvo is now using it to obstruct and delay discovery and impede Akoustis from mounting an effective defense.  Akoustis requires discovery to establish various facts about every one of the alleged trade secrets

---

[1] This includes the exhibits filed with both the SAC (D.I. 125) and the supplemental filing including the missing exhibits (D.I. 127).

[2] To expedite discovery, Qorvo consented to Akoustis' initially designating its productions AEO; however, Akoustis redesignated all of the exhibits to the SAC, including Akoustis' internal emails, as "Confidential," under the Protective Order so that both Parties could see this information.  Qorvo, however, asserts that it has an overriding AEO designation that prevents Akoustis' counsel from sharing those materials with Akoustis.  (*See* Declaration of Dianne Sweeney in Support of Motion to De-Designate SAC ("Sweeney Decl."), Ex. G (Apr. 6, 2023 email from Akoustis counsel); *see also id.*, Ex. I at pp. 2-3 (Apr. 7, 2023 email from Qorvo counsel).)

Public Version

in the SAC, including whether and how the SAC exhibits were obtained or used, if at all, by Akoustis. For example, how can Akoustis reasonably investigate these claims if the SAC's allegations and the exhibits it produced from its own files cannot be reviewed with Akoustis personnel? As another example, Qorvo has issued a corporate deposition notice to Akoustis that includes over 50 topics such as, "Akoustis' access to and use of Qorvo's trade secrets and confidential information." How can Akoustis identify and prepare a corporate witness if it cannot discuss the substance of the information at issue in the SAC? Could Qorvo's counsel question Akoustis' witnesses about trade secret allegations that the witness has been unable to review to due to Qorvo's AEO designations? Could Qorvo's counsel ask questions about trade secret allegations that the witness has been unable to discuss with counsel? And how could Akoustis' expert witnesses evaluate the alleged usage and value of this purported trade secret information if the experts cannot discuss the allegations with Akoustis personnel or follow up with them about the documents from Akoustis' files? Similar concerns apply to Akoustis' defenses, strategies, settlement positions and due process rights. How can Akoustis' counsel give proper advice without consulting with its client and investigating the allegations in the case? How can Akoustis make decisions if its management and Board are not allowed to consider the charges levelled against it?

Akoustis does not seek to make the SAC public or to change, in any way, the designations Qorvo applied to the exhibits Qorvo produced in this case. Rather, Akoustis seeks to have the SAC allegations and only those exhibits that Akoustis produced (*i.e.*, bearing Akoustis' Bates numbers) re-designated as "Confidential," under the Protective Order (D.I. 57). This will limit use of the SAC and its exhibits to "the prosecution or defense of this action and of any appeal thereof," which is the *exact same protection* afforded to documents designated AEO

Public Version

except Akoustis personnel would be allowed to evaluate and consult with counsel about the SAC and the exhibits it produced.  (Compare D.I. 57 §8(b) and § 8(c).)

An AEO designation is not appropriate where the material sought to be hidden is the operative pleading which largely relies on the very information and related documents that Akoustis produced in discovery.  (*See e.g.*, SAC, Exhibits C-2, C-3, D-2, D-3, E-2, F-2, G-2, H-2, I-2 to I-5, J-2, J-3, K-2, K-3, L-3, L-4, M-1, M-2, N-1.)  Indeed, the Protective Order permits an AEO designation only if the disclosure itself "is likely to cause *significant* harm."  (D.I. 57 at §5 (emphasis added).)  There is no such harm here.  The face of many of the exhibits show that Akoustis has had these documents for years.  Setting aside the dispute over Qorvo's alleged *past* harm, Qorvo cannot show any *significant new* harm from permitting Akoustis personnel "to whom it is reasonably necessary to disclose the information for the preparation and trial of the action" to access, under the Protective Order, the SAC or exhibits that Akoustis has possessed for years.  (D.I. 57 at §(8)(b)(2).)

The reality is that without this Court's intervention, Qorvo's AEO designations will permeate every aspect of this case through trial, leaving Akoustis in the dark about the allegations against it, handcuffing its counsel, and allowing depositions and trial "by ambush."  As explained below, the Protective Order cannot be used to deny a party the fundamental rights at issue here—the ability to consult with counsel, develop a strategy and marshal an appropriate defense.  In light of the substantial prejudice to Akoustis, Qorvo has not shown and cannot show the type of harm necessary to maintain its AEO designations on these items.  Therefore, Akoustis respectfully requests that the Court enter an Order redesignating the SAC, any accompanying exhibits produced by Akoustis, and any other Akoustis-produced documents identified by the

SAC as "Confidential."[3]

## II.     FACTUAL BACKGROUND

### A.     The Protective Order.

Under the Protective Order the Parties may designate competitively sensitive information as Confidential or AEO.  (D.I. 57 at §§4-5.)  The designations to such "Protected Material," are to be narrowly applied.

> "To the extent it is practical to do so, the designating Party must designate for protection only those parts of materials, documents, items, or oral or written communications that qualify – so that other portions of materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order."

(*Id.* at §3.)

"Protected Material" regardless of whether it is designated AEO or Confidential, is subject to the same limitation on its use:  such materials "shall not be used for any purpose whatsoever other than the prosecution or defense of this action and of any appeal thereof."  (*Id.* at §8(b) and (c).)  All other provisions in the Protective Order—related to control, storage, copies, disclosure to experts, filing under seal, etc.—apply equally to "Protected Material," whether designated AEO or Confidential.  (*Id.* §§6, 8, 10, 11, 13-15.)  The *sole* difference between AEO and Confidential designations is that "Parties" are excluded from reviewing AEO documents.  (*Compare* D.I. 57 §8(b) *with* §8(c).)  As a further limitation, "Parties" does not capture every person at the company but rather is restricted to only the "officers, directors, and employees (including in-house counsel) of the Parties *to whom it is reasonably necessary to disclose the information for the preparation and trial of the action*…."  (*Id.* at §8(b) (emphasis added).)  Additionally, any Party viewing a Confidential document must agree to be bound to the

---

[3] Alternatively, Akoustis would be amenable to an order aligned with its final meet and confer proposal to Qorvo, which is further discussed below.

Public Version

Protective Order.  (*Id.*)  In contrast, when a document is designated AEO, the non-designating

Party, including their management and other employees, cannot see the document unless the

person authored or previously received it.  (*Id.* at §8(c); (b)(1) and (3)-(9).)

The Protective Order allows any party to challenge designations if there is good cause for

doing so including an inability to resolve the matter informally.  (D.I. 57, §11(a)-(b).)

### B.     The Second Amended Complaint.

Throughout discovery Qorvo claimed that it could not identify its claims or damages until

Akoustis produced its own documents.  This is reflected in Qorvo's General Objection No. 3 to

Akoustis' second set of Requests for Production of Documents:

> Qorvo's complete responses to multiple requests for production will depend, in
> part, on Qorvo first receiving complete responses to the discovery requests it has
> served on Akoustis.  For example, in multiple requests, Defendants seek
> production of documents concerning the specific Qorvo BAW Proprietary
> Information that Akoustis has obtained from former Qorvo employees.  Qorvo
> cannot know the full scope of what was disclosed until Akoustis completes its
> production.  Accordingly, before Qorvo can produce such information,
> Defendants must produce documents in response to Qorvo's requests reflecting
> the information that Akoustis has obtained from the former Qorvo employees.

(Sweeney Decl., Ex. K at p. 2 (General Objection No. 3).)  Accordingly, over the course of many

months, Akoustis produced over 60,000 documents (totaling close to 500,000 pages including

native files) in response to Qorvo's requests for production.  Armed with these materials, Qorvo

filed its Second Amended Complaint on February 8, 2023, substantially modifying its prior

claims and adding, for the first time, allegations of misappropriating 86 trade secrets (SAC at

¶¶79 -143), and appearing to add a placeholder for a series of unidentified "Additional Trade

Secrets."  (SAC at ¶144.)[4]

---

[4] Akoustis filed a Motion to Unseal the Second Amended Complaint; however, that motion was
resolved when Qorvo agreed to accept Akoustis' meet and confer proposal shortly before its
opposition was due.  Akoustis expected the parties would also resolve the issues presented here
but such efforts proved futile.  (*See* Declaration of Dianne L. Sweeney at ¶ 3.)

Public Version

Surprisingly, Qorvo designated as AEO over 30 paragraphs (or portions thereof) of the SAC and over 1,000 pages of exhibits which are mostly Akoustis-produced documents, including internal Akoustis emails.  (SAC at ¶¶80, 82, 84, 85, 88, 90, 91, 92, 94, 97, 99, 102, 104, 105, 108, 109, 110, 113, 114, 118, 120, 124, 125, 127, 128, 129, 131, 133, 134, 136, 138, 139, 143; *see also* SAC Exhibits C-1 through N-1.)[5]  Qorvo asserts that the documents are its trade secrets, in part, because some of them bear a legend stating, "Qorvo$^{TM}$ Confidential & Proprietary Information," and Qorvo regularly marks documents containing sensitive business information with this label.  (SAC at ¶25.)  Qorvo's SAC further alleges that the misappropriation is so pervasive that Akoustis, founded in 2014, "has built its company based on the misappropriation of Qorvo BAW Proprietary Information and other confidential information, using that information to shortcut the hard work of building an innovative company and to shorten the typical time to market for new products in the relevant market."  (SAC at ¶61; *see also, generally, id.* at ¶¶70-144.)  But Qorvo now wants to conceal from Akoustis the very documents that it claims Akoustis already relied on, that Akoustis produced, and that Qorvo now claims Akoustis misappropriated over the last 9 years.  (*See* Sweeney Decl. at ¶¶ 7-12.)

---

[5] Akoustis produced these documents originally as "AEO" further to the parties' meet and confer agreement.  While Akoustis has re-designated all of them to Confidential so that Qorvo can see them, Qorvo maintains that the documents should remain as AEO so that Akoustis, the producing party, cannot see the documents.   (*See* Sweeney Decl., ¶9.)

4866-5089-6222

Public Version

Qorvo's AEO designations leave Akoustis with meaningless fragments and a host of citations to the SAC's exhibits (which Akoustis also cannot see).  By way of illustration, this is the only information that Qorvo will allow Akoustis to see about trade secrets 1-8:



(SAC at ¶80.)  As to Qorvo's "catch-all" allegation, all Akoustis can see is a list of Akoustis Bates numbers because Qorvo improperly designated those documents as AEO:

**Additional Trade Secrets  (Exhibits N-1)**

144.   In addition to enumerated Trade Secrets 1–86,  Qorvo has developed many other highly valuable trade secrets ("Additional Trade Secrets"). Upon information and belief, Akoustis has improperly acquired, accessed, disclosed and/or used such Additional Trade Secrets in advancing its own business interests. Examples of this are attached hereto as Exhibit N-1, which includes documents bearing the bates labels: AKTS_00156270, AKTS_00117498, AKTS_00138229, AKTS_00138271, AKTS_00141631, AKTS_00151319, AKTS_00143669, AKTS_00145340, AKTS_00146974, AKTS_00146974, AKTS_00167236; AKTS_00198676; AKTS_00198680; AKTS_00198699; AKTS_00198718; AKTS_00198736; AKTS_00198755; AKTS_00198821; AKTS_00198836; AKTS_00198854; AKTS_00198873; AKTS_00198944; AKTS_00199018; AKTS_00199032; AKTS_00199035; AKTS_00199038; AKTS_00199040; AKTS_00199042; AKTS_00199107; AKTS_00199110; AKTS_00199113 (collectively, "Exhibit N-1").

(*Id.* at ¶ 144.)  Qorvo's position leaves Akoustis blindfolded and unable to defend itself against 85+ trade secret claims and alleged damages in the millions.

### C.     The Meet and Confer.

Despite the extensive factual allegations and damages assertions levelled against Akoustis, Qorvo refuses to allow Akoustis to review the entirety of the SAC and Akoustis-

Public Version

produced exhibits with its key managers (*e.g.*, Founder and CEO Jeff Shealy; Executive Vice President, David Aichele) and other persons with relevant information.  (*See* Sweeney Decl. at ¶8; Ex. F (Mar. 28, 2023 email from Qorvo counsel).)

Akoustis repeatedly attempted to resolve these issues with Qorvo.  For instance, on March 6, 2023, Akoustis' counsel asked Qorvo to confirm that the SAC and the accompanying exhibits *produced by Akoustis* could be shared with Akoustis, since Qorvo filed those under seal.  (*See* Sweeney Decl. at ¶4; Ex. B (Mar. 6, 2023 email from Akoustis counsel).)  During the subsequent meet and confer, Qorvo took the position that Akoustis could only share the Akoustis-produced documents with two Qorvo-approved employees who "are not involved in competitive decision making roles on a day to day basis and are not involved in engineering, manufacturing and/or marketing related functions."  (Sweeney Decl. at ¶5; Ex. C (Mar. 9, 2023 email from Qorvo counsel); *see also* Ex. F (Mar. 28, 2023 email from Qorvo counsel).)  As Qorvo already knows, for a company the size of Akoustis, such a proposal is absurd.  The proposal would not only exclude most of Akoustis' employees, including the personnel with relevant technical know-how, but also the entire executive team and Board.

On March 22, 2023, Akoustis asked Qorvo to modify its SAC designations to allow Akoustis to view the entire SAC and specifically to allow access to individuals defined as "Parties" under the Protective Order.  (*Compare* Protective Order at §8(b)(2) *with* Ex. F (Mar. 22, 2023 email from Akoustis counsel).)  Akoustis explained that it needed to share the SAC with its client to "investigate and analyze claims and marshal our defense (including interviewing witnesses)."  (Ex. F (Mar. 22, 2023 from Akoustis counsel).)  Specifically, Akoustis asked for the SAC to be re-designated Confidential and undersigned counsel would only share the SAC with the Akoustis board members, management team, and to the extent reasonably

necessary with others.  (*Id.*)  Akoustis also confirmed that anyone permitted to view the SAC would agree to be bound by the Protective Order.  (*Id.*)

Qorvo refused and responded in generic terms that this re-designation (1) would place too much risk on Qorvo because it would further disseminate Qorvo's alleged trade secrets at Akoustis; (2) Akoustis' management team is in competitive decision making; and (3) certain Board members have already been accused of misappropriating Qorvo's trade secrets.  (Ex. G (Mar. 28, 2023 email from Qorvo counsel.)  Qorvo further suggested that Akoustis create an "audit committee" of members that Qorvo approved excluding anyone involved in day-to-day management of the company.[6]  (*Id.*)  Qorvo similarly refused to allow a 30(b)(6) witness to review the SAC, contending that Akoustis could only designate as its 30(b)(6) witness those Akoustis employees who had already seen the documents.  (*Id.*)  This is nonsensical because Qorvo's 30(b)(6) request seeks a witness to testify to Akoustis' collective knowledge about the precise topics Qorvo seeks to shield from Akoustis' purview.  Given Qorvo's position, there can be no such person.  For example, Qorvo's 30(b)(6) topics include:

- "**Topic No. 30**: Akoustis' awareness and/or knowledge of dissemination of Confidential Information to Akoustis, including but not limited to such dissemination by former Qorvo employees then employed by Akoustis."
- "**Topic No. 31**: Akoustis' access to and use of Qorvo documents."
- "**Topic No. 32**: Akoustis' access and use of Qorvo's trade secrets and confidential information."

(Ex. D, Topics 30-32.)  As Qorvo knows well, Akoustis cannot prepare a corporate representative on those types of topics if it cannot properly investigate them, much less ensure that its corporate witnesses are properly prepared to address the topics.

---

[6] Qorvo previously agreed that Akoustis management could see an earlier draft of the SAC for confidential settlement purposes only; however, like the SAC as filed, the descriptions are generic to the BAW filter space and cannot be reasonably understood without the referenced exhibits.  (*See* Ex. B (Mar. 6, 2023 email from Akoustis counsel to Qorvo counsel).)

Public Version

The issue came up again on April 6, 2023. (*See* Ex. I (Apr. 6, 2023 email from Akoustis counsel).) As to the SAC, Qorvo refused to revisit its position, arguing that Akoustis has a "history of stealing and misusing Qorvo's trade secrets" so it was entitled to maintain its chokehold over the SAC and Akoustis-produced documents. (Ex. J (Apr. 7, 2023 email from Qorvo counsel).). Qorvo's allegations, however, do not satisfy Qorvo's burden to establish that these materials qualify for AEO protection and they do not negate Akoustis' right to prepare for trial or take precedence over Akoustis' due process rights.

The result proposed by Qorvo is perverse: it alleges that Akoustis has in its possession Qorvo's alleged trade secrets for the impermissible purpose of using them, while arguing that Akoustis cannot review Qorvo's SAC with relevant personnel for the indisputably proper purpose of investigating and defending against those allegations. This effectively asks the Court to treat Qorvo's allegations as proven while hamstringing Akoustis' ability to disprove them. Qorvo's position leaves Akoustis with no choice but to seek relief from the Court.

## III.    REQUESTED RELIEF

Akoustis asks that the Court enter an Order re-designating the SAC and all of the following exhibits (which were produced by Akoustis) as "Confidential" under the Protective Order: C-2, D-2, D-3, E-2, F-2, G-2, H-2, H-3, I-2, I-3, J-2, J-3, K-2, L-2, L-3, L-4, M-1, M-2, N-1, as well as the other Akoustis-produced documents identified in, but not attached to, the SAC.[7] This would not impact the redacted public version of the SAC and would only enable

---

[7] The exhibits to Qorvo's SAC have various errors (*e.g.*, In the SAC, Exhibit H-3 is referred to as AKTS_00145342 but the attached H-3 exhibit is QORVO_00039638; nevertheless, AKTS_00145342 is included in H-2. Exhibit M-2 has a host of Akoustis documents listed that are not included in the exhibit itself (AKTS_00177917, AKTS_00177918, AKTS_00178088, AKTS_00178089, AKTS_00178654, AKTS_00178655, AKTS_00180686, AKTS_00180687, AKTS_00180690, AKTS_00180691). To avoid any confusion, for purposes of this motion, Akoustis is seeking to re-designate to Confidential both those documents attached as exhibits to the SAC which have an Akoustis Bates label as well as all documents identified in the SAC that have an Akoustis Bates label.

Public Version

Akoustis to review these materials in connection with "the prosecution or defense of this action and of any appeal thereof" under the Protective Order.

Alternatively, and consistent with its final meet and confer position, Akoustis suggests that the Court order that the following Akoustis personnel be provided access to the SAC's AEO content (including in attached or identified Akoustis-produced documents) on these conditions:

1. Akoustis can share the SAC with its Board and management (specifically meaning those persons identified on its website as Board or Management team members).

2. Akoustis can also share relevant portions of the SAC with persons identified therein or any person counsel for Akoustis has identified as a 30(b)(6) witness.

3. Separate from the general provision in the Protective Order that any person who created or received a document in the ordinary course can see the document in the litigation (whether confidential or AEO), Akoustis can also show or discuss with a person at Akoustis any relevant portion(s) of the Confidential SAC if, and only if, counsel for Akoustis has a good-faith belief that this person has relevant information about one or more portions of the SAC.

   This provision is intended to cover those persons, if any, who may have received information that Qorvo contends is Confidential or AEO outside of an email or other trackable document trail (*e.g.*, information discussed in a meeting).

4. Akoustis may also share the Confidential SAC with other retained outside counsel (*e.g.*, its corporate counsel).

5. All of the above would be under the terms of the Protective Order and all persons involved would sign the Protective Order.

## IV.   ARGUMENT

To determine whether an AEO designation is proper, Qorvo must show both good cause—which requires a balancing test—and compliance with the terms of the Protective Order itself—which requires *significant* future harm.  Qorvo cannot meet either test.

### A.   Qorvo Cannot Demonstrate Good Cause to Designate Any Portions of the Second Amended Complaint or the 1,000+ Pages of Akoustis-Produced Documents as AEO

Qorvo must meet the "good cause" required under Rule 26(c) of the Federal Rule of Civil Procedure Rule for each of the AEO allegations and exhibits.  FED. RULE CIV. P. 26.  To be precise, Qorvo—as the party seeking the challenged AEO designation—has the burden of

justifying the confidentiality of "*each and every document* sought to be covered by a protective order". *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786-787 (3d Cir. 1994) (emphasis supplied); (*see also* D.I. 57 at §11(c)).

"In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process." *Pansy*, 23 F.3d at 787 (citing Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv.L.Rev. 427, 432–33 (1991)). The *Pansy* court described non-exclusive factors for the Court to consider in this balancing process. *Id.* at 787-91. Not all of those factors bear on the analysis here, but the Court should consider the following:

> (1)     whether the disclosure would violate any privacy interests;
>
> (2)     whether the information is being sought for a legitimate purpose; and
>
> (3)     whether the sharing of information among litigants will promote fairness and efficiency.

*Id.*

In applying the "privacy" factor, the Third Circuit has said that good cause requires showing specific injury from the disclosure. "'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Pansy,* 23 F.3d at 786-787. Generic allegations of hypothetical future harm, such as those made by Qorvo during the meet and confer, do not satisfy its burden to prevent disclosure of information to another party. "Specificity is essential" for the designating party in setting forth "the injury to be prevented." *Alchem USA Inc. v. Cage*, No. 21-2994, 2022 WL 3043153, at *3 (3d Cir. 2022) (internal citations omitted); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483-84 (3d Cir. 1995) (party that only alleged a generalized harm to reputation and injury to its relations with its clients failed to demonstrate a specific injury that would follow from the disclosure); *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("Broad allegations of harm,

Public Version

unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c)

test"). "Moreover, the harm must be significant, not a mere trifle." *Cipollone*, 785 F.2d at 1121.

Consistent with the above authorities, Qorvo executed a Protective Order in this matter

expressly limiting the use of an AEO designation to circumstances where the disclosure of the

material "*is likely to cause significant harm*." (D.I. 57 (emphasis added).)

As to the "legitimacy of purpose" and "fairness," factors, it is textbook that "[a] litigant

cannot use a [AEO designation] as a sword and shield." *DIRTT Env't Sols., Inc. v. Henderson*,

No. 1:19-CV-144 DPB, 2020 WL 6263039, at *2 (D. Utah Oct. 23, 2020) ("It would be

inherently unfair to allow Plaintiff to assert that [an interrogatory response] demonstrates a

stealing of trade secrets, without allowing Defendant to test this assertion."); *RAJ Enters. of*

*Cent. Fla. LLC v. Select Lab'y Partners Inc.*, No. 5:14-CV-344-OC-30PRL, 2015 WL 4602550,

at *3 (M.D. Fla. July 29, 2015) (explaining that plaintiff improperly made a partial disclosure of

the information to "benefit its own claim for damages, but then claims the trade secret privilege

as to the information necessary for Defendant's defense and counterclaim"); *E.I. duPont de*

*Nemours & Co. v. Phillips Petroleum Co.,* 1982 WL 63780, at *3 (D. Del. May 17, 1982)

(defendant that was also a protester in patent reissue proceeding could not withhold information

at issue in the proceedings). Fairness mandates that the accused party be granted a reasonable

opportunity to test the allegations brought against it. *DIRTT Env't Sols., Inc.* 2020 WL 6263039,

at *2; *Vision Ctr. N.W., Inc. v. Vision Value LLC,* No. 3:07-CV-183 RLM, 2008 WL 11413540,

at *2 (N.D. Ind. July 1, 2008).

Here the *Pansy* factors and balancing test strongly favor re-designation of the challenged

materials as Confidential. *First,* any privacy interests at issue are minimal because there is no

specific substantial harm that can arise from allowing Akoustis to view these items. The AEO

allegations in the SAC are broad, and Akoustis has already seen the documents attached to or

identified by the SAC that Akoustis produced, and all of this material will remain covered by the

Protective Order and subject to enforcement by this Court.  *Second,* the re-designation is sought

for the legitimate purpose of allowing Akoustis to defend itself against extensive and complex

allegations that have been paired with significant claimed damages.  *Third*, disclosing this

information to Akoustis to defend the case is necessary to promote fairness and efficiency.

Indeed, Akoustis has a fundamental due process right to defend itself and meaningfully consult

with counsel.  *Martinez v. City of Ogden,* 1:08-cv-00087-TCDN, 2009 WL 424785, at *3 (D.

Utah Feb. 18, 2009)

> **B.      Qorvo Fails to Meet the Terms of the Protective Order for an AEO
>          Designation of the SAC and 1000+ Pages of Akoustis-Produced
>          Documents**

The Protective Order provides that:

> Any Party may designate Documents as ATTORNEYS EYES ONLY upon
> making a good faith determination that the Documents contain information
> protected from disclosure by statute or that should be protected from disclosure as
> trade secrets or other highly sensitive business or personal information, *the
> disclosure of which is likely to cause significant harm to an individual or to the
> business or competitive position of the designating Party.*

(D.I. 57 at §5 (emphasis added).)  No such significant harm exists here.

> **1.      Qorvo Has Not Yet Established that the SAC or its Exhibits
>          Constitute Any Trade Secret or Highly Sensitive Business or Personal
>          Information**

Whether the SAC information that Qorvo designated AEO constitutes trade secrets or is

otherwise valuable and confidential information are essential issues to be resolved by this case—

they are not, however, foregone conclusions.  To comply with the Protective Order, Qorvo must

do more than assert the designated AEO information warrants that protection—it must

demonstrate that the disclosure itself "is likely to cause a significant harm" if reviewed by

Akoustis personnel for the sole purpose of defending this case.  This showing cannot be made in

14

broad strokes and must be made on a *document-by-document* basis. *Pansy,* 23 F.3d at 786-787.

This specificity is expressly required by the Protective Order, which states:

> Each Party that designates Protected Material under this Order must take care to limit any such designation to *specific material* that qualifies under the appropriate standards.  To the extent it is practical to do so, the designating Party must designate for protection *only those parts of materials, documents, items, or oral or written communications that qualify* – so that other portions of the materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order."

D.I. 57 at §3 (emphasis added).

Merely relying on Qorvo's confidentiality legends and its self-serving identification of alleged trade secrets (as the SAC does) is insufficient to prove harm or justify preventing Akoustis from reviewing the SAC and the Akoustis-produced documents.  A mere legend is not dispositive of any claim—it is simply the beginning of the discovery journey.  Qorvo's own website contains many documents bearing that same legend—all available for public view and download.[8]  Whether Qorvo misuses its "Qorvo$^{TM}$ Confidential & Proprietary Information" label, thereby diluting its meaning, or takes insufficient safeguards to protect information from becoming available to the public are just a few of the issues that discovery will uncover.[9]  Likewise, Qorvo's recitation of its allegations in the SAC is not evidence of anything, much less grounds to block Akoustis from viewing the SAC or 1,000+ pages of materials produced from Akoustis' own files in connection with its defense.

---

[8] *See, e.g.*, https://www.qorvo.com/resources/d/qorvo-banned-restricted-substances-specification-spe-001275; https://www.qorvo.com/products/d/da007809; https://www.qorvo.com/products/d/da007307; https://www.qorvo.com/products/d/da007245; https://www.qorvo.com/products/d/da008556; https://www.qorvo.com/resources/d/qorvo-eu-rohs-position-statement-spe-002106; https://ir.qorvo.com/static-files/f7fb95fc-e624-4c21-b7b4-a2a41e28bcf2; https://www.qorvo.com/resources/d/qorvo-sam-government-contract-information. (Viewed April 20, 2022.)

[9] Months ago, Akoustis notified Qorvo about the existence of documents marked "Qorvo$^{TM}$ Confidential & Proprietary Information" and yet even two months later those documents are still available through a simple online search—further suggesting that these documents are not, in fact, confidential.

4866-5089-6222

Qorvo may also not use AEO designations to escape its basic obligations to notify the accused of the charges against it.  Even as a threshold matter of pleading, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to *delineate that which he is accused of misappropriating* and a court to determine whether misappropriation has or is threatened to occur."  *See, e.g., Analog Devices v. Michalski,* 157 N.C. App. 462, 468 (N.C. Ct. App. 2003) (emphasis added).  Qorvo's AEO designations side-step this requirement.

### 2.     Qorvo Has Not Demonstrated Particularized "Significant Harm" From Any De-Designation of the SAC

For purposes of this motion, the Court does not need to address whether Qorvo is reasonably treating this information as highly sensitive information (much less as a trade secret) because Qorvo has not, and cannot, identify what "significant harm" is "likely" to be caused by the disclosure of these alleged trade secrets to Akoustis personnel for purpose of defending this case.  (*See* Sweeney Decl., Ex. H at p. 2 (Apr. 7, 2023 email from Qorvo counsel), Ex. K (Apr. 20, 2023 email from Qorvo counsel); *see also* D.I. 57 at §5.)  Qorvo's meet-and-confer responses offer nothing but the same generic harm that it has alleged in the SAC.  (*See* Sweeney Decl., ¶¶7-11.)  That is the wrong standard.  The issue for a challenged AEO designation is showing that the disclosure itself will likely cause new significant harm.  In the SAC, Qorvo already alleges it is entitled to damages due to Akoustis' use of the information contained within the AEO documents.  (*See, generally* SAC at ¶¶79-144.)  Accordingly, the potential *new* harm Qorvo may experience from disclosure of the very same documents with the "Confidential" designation is, at worst, incremental.  *Water Tree Ventures, LLC v. Giles*, No. 3:18-cv-1421-MCR-HTC, 2019 WL 13162408, at *4 (N.D. Fla. Apr. 26, 2019) (concluding that the possibility of resulting harm was "minimal" when "confidential" designation can be used and when in "its complaint, Plaintiff alleges it is entitled to damages due to Defendants' use of the information contained within the AEO documents.").  In other words, disclosure of the exhibits and allegations of the SAC do not

16

Public Version

pose some new or significant risk of harm to Qorvo, because Akoustis already has the documents

and Akoustis is already charged with misappropriating the alleged trade secrets contained in

those documents.  Moreover, much of the information is several years old, which further lessens

its potential value.  *See, e.g., id.*; *see also No Spill, LLC v. Scepter Canada, Inc.*, No. 2:18-cv-

2681-HLT-KGG, 2022 WL 16948592, at *2-3 (D. Kan. Nov. 15, 2022) ("The documents are

several years old which weakens […] [the] arguments that they will cause competitive harm.").

Qorvo simply cannot meet its burden.

### C.    Any Generic Harm to Qorvo is Outweighed by Prejudice to Akoustis and its Need to Defend Itself in this Litigation.

Assuming *arguendo*, that the Court finds that all the allegations and each of the Akoustis-

produced documents were properly designated under the Protective Order, the Court should still

re-designate the SAC and exhibits because Akoustis' need for disclosure outweighs Qorvo's

purported harm.  *Pansy*, 23 F.3d at 786–87 (court has discretion to decide whether the need

outweighs the harm of disclosure).

In contrast to Qorvo's generic claims based on the alleged conduct in this case, Akoustis'

right to due process and preparation of a defense heavily tips the balance in favor of the relief

sought by this motion.  *See Pansy,* 23 F.3d at 787-91 (court should consider "fairness" and

"legitimate purpose" of the requests).  Here, the information at issue goes to the very heart of

Qorvo's allegations and it would be fundamentally unfair and unreasonable to prevent Akoustis

from accessing that information now.  *See Water Tree Ventures,* 2019 WL 13162408, at *3

("unreasonable for Plaintiff to allege Defendants misappropriated information, then deny

Defendants access to the information allegedly misappropriated.").

Moreover, Qorvo suggests it is seeking millions of dollars in damages for each of

numerous categories of alleged trade secrets, and the SAC presents 85+ different trade secret

claims (plus some amalgam of unidentified additional alleged trade secrets).  Akoustis needs to

17

Public Version

be able to investigate these issues and prepare its defense, making review of the materials critical to the defense of this case.  Otherwise, how can Akoustis determine how it even received this information much less if or how it was used?  Trade secret litigation is heavily factual work that mandates client involvement.  Akoustis, and only Akoustis, can determine whether certain statements about Akoustis, its actions, and its products' capabilities are accurate.  Akoustis is a small company and if unable to involve its key managers (as Qorvo proposes), there are no other individuals with the history, knowledge, or decision-making authority at the company to support Akoustis' counsel.  This includes determining: whether the information is indeed confidential or trade secret or merely industry standards or otherwise generally available; whether the information was actually used; whether the information could have been obtained elsewhere; and whether the documents have any significance in the context of the Akoustis' business.  All of this requires significant input and knowledge from Akoustis' employees and management.

A party's inability to assist in its own defense of its case triggers fundamental due process concerns.  *Martinez v. City of Ogden,* 1:08-cv-00087-TCDN, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009); *cf. Pansy,* 23 F.3d at 787-91 (considering the promotion of fairness as a factor for the court to consider in the balancing the interests).  Due process requires an opportunity to present evidence and arguments on the claim and to deny a party "the right to…assist in its [own] litigation…could well border on a denial of due process." *Martinez*, 2009 WL 424785, at *3; *Standard Space Platforms Corp. v. United States,* 35 Fed. Cl. 505, 509 (Fed. Cl. 1996); *Core Lab'ys. LP v. AmSpec, LLC,* No. 16-cv-00526-CG-N, 2017 WL 6945580, at *1 (S.D. Ala. July 12, 2017), *aff'd* 2017 WL 3585420, at *1, *3 (S.D. Ala. Aug. 18, 2017) (affirming the granting of defense counsel's request to compel the plaintiff to remove attorneys' eyes only designation from expert reports on damages where "such designations prejudices their ability to adequately consult with their clients.").

18

Public Version

Akoustis' need and due process concerns in defending itself in this litigation outweigh any potential harm that Qorvo claims could result from disclosure, particularly where the information will still be protected under the Protective Order and the exhibits were already produced by Akoustis.  *Water Tree,* 2019 WL 13162408, at \*3 ; *see Vision Ctr. Nw. Inc.*, 2008 WL 11413540, at \*2 (holding that plaintiff in infringement case could not designate expert damages reports as "Attorneys' Eyes Only" and recognizing that the defendant's interest in examining evidence that will be used against it is stronger than the plaintiff's interest in maintaining the confidentiality of its allegedly protected information).

Because an AEO designation "prevents a party from reviewing documents with counsel and can hamper the ability of the party to present his or her case" it is considered a "drastic remedy" and should not be allowed here.  *Gillespie v. Charter Commc'n,* 133 F. Supp. 3d 1195, 1201-02 (E.D. Mo. 2015); *Water Tree Ventures*, 2019 WL 13162408, at \*3-4.  It should only be used for "rare instances in which it is truly justified … and there is no other effective alternative."  *Gillespie,* 133 F. Supp. 3d at 1201-02 (internal citations omitted).

## V.     CONCLUSION

The Protective Order's express purpose is "facilitating discovery," not denying an opposing party the opportunity to defend itself.  (*See* D.I. 57 at §20.)  Akoustis respectfully requests that the Court order Qorvo to re-designate the SAC and the materials set forth in the Requested Relief section above as Confidential.  In the alternative, Akoustis asks that the Court determine that the same documents be re-designated as Confidential but the persons be limited to those set forth in Akoustis' final meet and confer position, set forth in Section III above.

19

Dated:  April 25, 2023

PILLSBURY WINTHROP
SHAW PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
Ryan Selness
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com
ryan.selness@pillsburylaw.com

Robert M. Fuhrer
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Theresa A. Roozen
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
shani.rivaux@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc. and
Akoustis, Inc.*

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P.  Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and
Akoustis, Inc.*

4866-5089-6222

## <u>CERTIFICATE OF SERVICE</u>

I certify that counsel of record is being served on April 25, 2023, with a copy of this document via email.

<u>/s/ Ronald P. Golden III</u>
Ronald P. Golden III (#6254)