1

1    IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF DELAWARE
2

3    _____
                                    |
     QORVO, INC.,                   |
4                                   |
              Plaintiff,            |
5                                   |
     vs.                            |   NO. 21-CV-01417
6                                   |
     AKOUSTIS TECHNOLOGIES,         |
7    INC., AND AKOUSTIS, INC.,      |
                                    |
8              Defendants.          |
                                    |
9    _____

10

11

12         TRANSCRIPT OF THE STATUS VIDEOCONFERENCE

13                     BEFORE THE

14            HONORABLE JON P. MCCALLA

15

16

17                     WEDNESDAY

18                   MAY 10, 2023

19

20

21

22

23         TINA DuBOSE GIBSON, RPR
                OFFICIAL REPORTER
           FOURTH FLOOR FEDERAL BUILDING
24          MEMPHIS, TENNESSEE 38103

25

**UNREDACTED TRANSCRIPT**

2

1                   A P P E A R A N C E S

2

3        Appearing on behalf of the Plaintiff:

4            ROBERT M. MASTERS
             ROY JUNG
5            Sheppard, Mullin, Richter & Hampton, LLP
             2099 Pennsylvania Avenue, NW, Suite 100
             Washington, DC  20006-6801
6            (202) 747-1900

7            JONATHAN DEFOSSE
             Sheppard, Mullin, Richter & Hampton, LLP
8            1540 El Camino Real
             Menlo Park, California  94025
9            (650) 815-2600

10           JEREMY A. TIGAN
             Morris, Nichols, Arsht & Tunnell LLP
11           1201 North Market Street, 16th Floor
             Wilmington, Delaware 19899-1347
12           (302) 351-9106

13

14       Appearing on behalf of the Defendants:

15           DAVID A. JAKOPIN
             DIANNE L. SWEENEY
16           ROBERT M. FUHRER
             THERESA A. ROOZEN
17           DAVID L. STANTON
             RYAN SELNESS
18           Pillsbury, Winthrop, Shaw, Pittman, LLP
             2550 Hanover Street
19           Palo Alto, California 94304-1115
             (650) 233-4500
20
             RONALD P. GOLDEN, III
21           Bayard, PA
             600 North King Street, Suite 400
22           Wilmington, Delaware 19801
             (302) 655-5000

23

24

25

**UNREDACTED TRANSCRIPT**

WEDNESDAY

MAY 10, 2023

----------------------

THE COURT:  This is a follow-up status conference, and I understand that the individuals speaking for the plaintiff will be Mr. Masters, and the individual leading for the defense will be Ms. Sweeney.  So I can see both of you.  I think I can, yes.

There's only one outstanding motion at this time. I did receive, actually, very recently -- it came in later yesterday evening, and I had a meeting elsewhere -- the May 9th position of the parties and a proposed schedule, which is, of course, not agreed upon.  There's significant differences in the schedule.

On the issue of the disclosure -- well, let me check on one thing to start with.  To what degree has there been a relatively detailed disclosure of the trade secrets in the case?

And we'll start with -- we'll start with plaintiff's counsel.

MR. MASTERS:  Good morning, Your Honor.  Robert Masters for the plaintiff.  So to answer your question and pursuant to your order from the April 3rd status conference, we produced an extremely detailed trade secret disclosure on

**UNREDACTED TRANSCRIPT**

1    May 1.  That disclosure consisted of 52 pages and identified

2    71 trade secret groups with a very detailed explanation of

3    each trade secret, including specific references to documents

4    by production numbers.

5            For example, when I say production numbers, it's

6    either an Akoustis -- it's either a document that has an

7    Akoustis Bates number on it or, in some cases, a Qorvo Bates

8    number on it.  There's also specific references to products

9    as well with both Qorvo and Akoustis.  So in our view, it's

10   an extremely detailed disclosure that satisfied your order.

11           THE COURT:  Let me ask a question about the

12   general nature of the trade secrets by category, and you may

13   already have them broken down that way.  I, obviously, have

14   not seen them.

15           I assume that there are, what we might refer to

16   as, financial trade secrets.  There may or may not be, but

17   I'm guessing there might be.  There'll also be -- there'll

18   also be lists of data that's of interest to any competitor in

19   terms of vendors, sources, and various materials, and so

20   forth.  I don't know about that.

21           And then, of course, there would be things that

22   relate to the process for manufacturing.  I don't know if

23   that's right at all.  And I'd like some guidance,

24   Mr. Masters, from you.

25           MR. MASTERS:  Okay.  Well, you're fairly close,

**UNREDACTED TRANSCRIPT**

1   Your Honor.  There are trade secrets relating essentially to

2   the entirety of the business, from the product design and

3   development process to specific products under development

4   and their design, the fabrication, the manufacturing, device

5   inspection processes, and statistical data that reveals the

6   cost of manufacturing.  There's tests, qualification and

7   characterization systems, conditions and procedures, data,

8   and major performance relating to Qorvo products, which is

9   extremely valuable to a competitor trying to match the

10  performance in that respect.

11           There's market intelligence, proposed solutions,

12  product road maps, for example, where Qorvo is headed and

13  strategically in this competitive field.  For example, is it

14  in one industry or another?  Is it headed to the automotive

15  industry; and, if so, what products is the automotive

16  industry demanding, and timing in order to capture that

17  market?

18           And then there's also internal business processes

19  related to tax and finance and also organizational structure,

20  worldwide compensation models and specific ranges each role

21  of a category within the company and what range of salary

22  somebody would pay, and then a customer list as well.

23           So that's a fairly broad spectrum, if you will,

24  of a comprehensive of the business that we have found in

25  these trade secrets.

**UNREDACTED TRANSCRIPT**

1              THE COURT:  All right.  And you are going to have

2    a forensic examination of certain things, is that right,

3    certain computer information?

4              MR. MASTERS:  Yes, Your Honor.  We have served a

5    request for inspection last week or maybe earlier this week.

6    I can't think of the dates right now.

7              THE COURT:  I think everybody would understand

8    that that is not unusual, but we can check on that.

9              So let me go to Ms. Sweeney.  You agree that a

10   forensic examination is not unusual?

11             MS. SWEENEY:  I agree that you do see forensic

12   examinations in these types of cases.  Frequently, you see

13   that done with a third-party neutral being involved.  It's

14   typically a process that we've seen that takes months of

15   time.  It's obviously very sensitive when you have two

16   competitors involved.

17             We just got this request earlier and over the

18   last couple of days, so we're still looking at it, but I

19   certainly agree with the Court that it is not unusual.

20             THE COURT:  Why don't we go back to Mr. Masters

21   and make sure I understand.

22             I assume that this is by a third-party neutral

23   who specializes in forensic examinations?

24             MR. MASTERS:  That's correct, Your Honor.  It is

25   a third party that has experience doing these types of

**UNREDACTED TRANSCRIPT**

```
 1   forensic analysis, and we have suggested in our request for
 2   admission a protocol to carry out this because we recognize
 3   we are competitors.
 4           The information, all that is obtained, will be
 5   under the protective order.  And I just want to clarify one
 6   thing, Judge.  The forensic expert is not a neutral if you
 7   mean in the sense of neutral to both sides.  He is an expert
 8   who has experience doing this that has been retained by Qorvo
 9   for the purposes of carrying out this forensic inspection.
10           Now, again, we're going to work on the protocols
11   with Akoustis; and if they want an expert to see what images
12   we gather, I mean, that's fair enough.  But . . .
13           MS. SWEENEY:  Yes, if I could just speak to that.
14   Our understanding of what was proposed was what Mr. Masters
15   just said.  It's a retained expert by Qorvo, not a neutral.
16   What we're used to seeing in other cases is that there is a
17   neutral discovery referee given the significance of the
18   information that is being examined in this type of
19   inspection.
20           THE COURT:  Well, I take it, though, that this
21   third party -- and usually -- it's not unusual for them to be
22   retained, but it can be that both parties agree on the
23   neutral for the examination.
24           MS. SWEENEY:  We just got this on Friday, Your
25   Honor, so we haven't gotten that far.  And I have to say on
```

**UNREDACTED TRANSCRIPT**

1    the -- just turning back slightly on the trade secrets, the

2    definition that Mr. Masters provided and described of what

3    this identification looks like is more information than our

4    client even has about these trade secrets at this point.

5          We have -- the motion, as the Court mentioned,

6    that's pending is for Akoustis to get access to the second

7    amended complaint so we can understand the allegations and

8    work with the client.  The trade secret identification is

9    also AEO, so we are blinded in terms of working with our

10   client on these particular issues but, obviously, we've now

11   filed the first motion.  We have meet and confers on other

12   AEO issues that are coming up with Qorvo.

13         THE COURT:  I understand, Ms. Sweeney, that they

14   don't have an objection to a number of people having access

15   to this information, and that's set out in the last paragraph

16   on page 3 of the letter.

17         Mr. Masters, is that right?

18         MR. MASTERS:  That is correct, Your Honor.  And

19   that is something that we agreed to shortly before the last

20   status conference, I believe.

21         THE COURT:  So you --

22         MR. MASTERS:  And one --

23         THE COURT:  I'm sorry.  Go ahead.

24         MR. MASTERS:  I was going to say, as one example,

25   they asked for every one of their seven or eight board

**UNREDACTED TRANSCRIPT**

1    members to have access to our trade secret information; and

2    we said, well, what about the auditing committee of the

3    board.  They said they don't have an audit committee.

4              Fair enough.  So we said, how about three?  And

5    they never came back to demand why they need all eight to see

6    it.  Why can three not have access?

7              THE COURT:  They don't need all eight.  That's

8    obvious.  But I do think that they do need access.  I think

9    that they probably don't have a problem with that.

10             Right, Ms. Sweeney?

11             MS. SWEENEY:  Your Honor, if the proposal is as

12   was laid out in the letter last night, Akoustis would have

13   accepted that proposal, but I am looking at --

14             THE COURT:  Well, I think we need not go further.

15             MS. SWEENEY:  Okay.  Well --

16             THE COURT:  You're accepting that proposal.  And

17   we don't -- and that's great.  That's great.  That's

18   progress.  You don't have an objection to basically what's

19   set out on page 3, the last paragraph.  Is that -- that is

20   correct, right?

21             MS. SWEENEY:  That's correct, as long as there

22   are not conditions on who those members are.  I will just --

23             THE COURT:  Well, there can be conditions on who

24   they are.

25             And what -- are there conditions, Mr. Masters?  I

**UNREDACTED TRANSCRIPT**

 1  can understand there might be some people that could be

 2  excluded.  Mr. Masters, do you not have an objection as to

 3  who they are?  Are there some people that you think are

 4  simply inappropriate to receive the information?

 5              MR. MASTERS:  Are we talking about the board

 6  members?  The board members, we said any three.

 7              THE COURT:  Right.

 8              MR. MASTERS:  They were going to tell us who the

 9  three were.  Those three would sign the protective order and

10  we were fine with that, on board members.

11              THE COURT:  Right.  You said the management team?

12              MR. MASTERS:  The management team, we also said

13  three members of the management team, including their general

14  counsel, which was agreed to long ago.  General counsel has

15  had access from right after we filed the second amended

16  complaint.  But we also said they could have three members of

17  their management team.

18              We excluded those management members who have

19  been involved in the misuse of Qorvo's trade secret

20  information.  We have given access to Akoustis's outside

21  corporate counsel.  So it's not counsel here on the call

22  today that's of record.  It's their outside corporate

23  counsel.

24              And, finally, the protective order allows -- and

25  we've agreed to this -- that if an Akoustis employee had

**UNREDACTED TRANSCRIPT**

1  previously seen the Qorvo document, they can confer with that

2  employee under the protective order.

3         THE COURT:  Absolutely.  Well, I think that may

4  have a little bit of an issue there.

5         Ms. Sweeney, it seems like we're okay on board

6  members.  That's not a problem.  What are the other issues?

7         MS. SWEENEY:  So, Your Honor, as you know,

8  Akoustis is a very small company.  In my discussion with

9  Mr. Masters and his colleague on this, I literally brought up

10 the Akoustis website.  We don't have management of a hundred

11 or, you know, even 20.  We --

12        THE COURT:  I'm aware of the size.  I know that.

13        MS. SWEENEY:  We have four key managers, and

14 they're excluding three.  So we felt that we were just in an

15 untenable position because the people that they are

16 excluding, which is our CEO and founder, our executive vice

17 president of business development, and our executive VP of

18 fab and corporate operations is who the board looks to on all

19 of these issues.  They are the technical people.  They run

20 the day-to-day.

21        We don't have a second level of managers to turn

22 to.  It is a very lean startup company; and if we had a

23 company, you know, at a Qorvo scale, this would be -- this is

24 something we're used to seeing in trying to find a different

25 subset of managers.  We simply don't have that.

**UNREDACTED TRANSCRIPT**

1     And I think what we're asking for in the motion

2  that's pending is not to be able to share this information

3  across the company far and wide.  That protective order is

4  actually more narrow.  It limits who can see it.  And it's

5  also solely for purposes of this litigation.

6     We have no desire to expose anyone at Akoustis to

7  documents when we don't need to.  That's standard practice in

8  a trade secret process.  But these three people are the

9  critical people with the history, the technical knowledge,

10  and the management at the company.  And, frankly, they have

11  been our day-to-day people that we work with, in addition, of

12  course, to the general counsel.

13     THE COURT:  Sure.  Just so it's easier for me to

14  follow, will you give me the names of each of the three

15  individuals?  The CEO, I'm sure I can look it up.

16     MS. SWEENEY:  It's Jeff Shealy is our founder and

17  CEO.  He's also a director.

18     THE COURT:  Sure.

19     MS. SWEENEY:  Dave Aichele, which is

20  A-I-C-H-E-L-E.  He's our executive vice president of business

21  development, and Mary Winters, who is the executive vice

22  president of fabrication and corporate operations.  I'm

23  actually not aware of any allegations related to Ms. Winters.

24  But, regardless, these are our key managers.

25     THE COURT:  Sure.  Okay.

**UNREDACTED TRANSCRIPT**

1          And what's the issue as to these three folks,

2    Mr. Masters, just so I'll understand?

3          MR. MASTERS:  Yes.  So with respect to each of

4    them, they have been involved in the misuse of Qorvo's trade

5    secret information, including Mr. Shealy, Mr. Aichele, and

6    Ms. Winters.  They are competitive decision-makers within the

7    company; and as I said, they've been involved in the trade

8    secret information.  Therefore, we permitted counsel to

9    disclose to the other executive members of Akoustis that sit

10   at the same level, including the general counsel.

11         THE COURT:  Now, let me ask this, just so I'll

12   understand, Mr. Masters:  If these individuals have been

13   involved in the disclosure of the trade secrets and these

14   documents relate to what they have been utilizing, aren't

15   they -- what's the point?  They already know the information.

16         MR. MASTERS:  Well, Your Honor, under the

17   protective order, if they have already seen the document,

18   they would be entitled to see it, that's true.

19         THE COURT:  Okay.

20         MR. MASTERS:  What counsel wants is them to see

21   the entirety of what we just disclosed, which is in a 52-page

22   disclosure, and so they get access to far more of Qorvo's

23   trade secrets.

24         THE COURT:  So Mr. Shealy can see anything that

25   he's already participated in or seen?

**UNREDACTED TRANSCRIPT**

1              MR. MASTERS:  Absolutely.  Under the protective

2    order, they have that, and we've never denied that.

3              THE COURT:  And that would be true of the other

4    two individuals also?

5              MR. MASTERS:  That's correct, Your Honor.

6              THE COURT:  And I want to make sure I understand

7    this.  Is Mr. Shealy -- as to Mr. Shealy, are there many,

8    many documents that he would have seen already?

9              MS. SWEENEY:  No, Your Honor.

10             THE COURT:  I didn't ask Ms. Sweeney.  I asked

11   Mr. Masters.  I'm sorry.

12             MR. MASTERS:  There's a lot more than a handful.

13   Many, many, it's hard for me to put a number on many, many.

14             THE COURT:  Sure, sure, sure.

15             Okay.  Well, let's go to Ms. Sweeney and see what

16   she thinks about that.

17             MS. SWEENEY:  Sure.  So we looked and counted,

18   and this was a while ago.  My recollection is that

19   Mr. Shealy -- we were talking with Mr. Masters at this point

20   on the second amended complaint.  Mr. Shealy, I think, was

21   identified on two or three of those documents; and, you know,

22   what we realized is that without Mr. Shealy and Mr. Aichele's

23   input as our day-to-day people who understand this

24   technology, we couldn't just hand them the couple of

25   documents that they were identified on.

**UNREDACTED TRANSCRIPT**

1          The other managers that Mr. Masters speaks of is

2    our chief financial officer and our general counsel.  These

3    aren't people who can understand and parse these types of

4    documents.

5               MR. MASTERS:  And their chief product officer.

6               MS. SWEENEY:  Right, who is new to the company,

7    yes.

8               THE COURT:  There's not a problem -- who is the

9    senior most person, Mr. Masters, as you understand it, at the

10   defendant who can look at everything?

11              MR. MASTERS:  That can look at everything?

12              THE COURT:  Sure.

13              MR. MASTERS:  I believe it would be the general

14   counsel who can see everything; and then, of course, we just

15   talked about Shealy, Aichele, and Winters, who can see what

16   they've already had access to.  Plus Akoustis has outside

17   experts, of course, that can review these documents too, as

18   we've had to do ourselves.

19              THE COURT:  Sure.  Sure.

20              Okay.  Well, let me make sure we've gone back

21   through this list, then.  Entitled to share the documents

22   with any employee who has previously received the document.

23   That's good.  That's important, because you'll need to ask --

24   defense counsel will have to ask questions about that.

25              Employees and then the three members -- three

**UNREDACTED TRANSCRIPT**

1   board members, any three board members, the outside general

2   counsel, and then three members of the management team.  I

3   think you're saying excluding these three individuals.

4                Is that right, Mr. Masters?

5                MR. MASTERS:  That's right.  And just to clarify,

6   Your Honor, on the board, the board members, Mr. Shealy is

7   also a board member, so he --

8                THE COURT:  Right, he's a board --

9                MR. MASTERS:  So we would exclude him as one of

10  the three on the board.

11               THE COURT:  Okay.  All right.

12               Well, I think that, Ms. Sweeney, what you're

13  saying is that the management team is pretty small and that

14  these three individuals are running the company?

15               MS. SWEENEY:  That's exactly right, Your Honor,

16  and that's why we brought the motion and why the proposal

17  wasn't acceptable as originally made.  And, obviously, I said

18  we'd accept what's in here because it doesn't have all the

19  conditions and limitations; but, you know, certainly, if

20  those three managers are acceptable to review this with

21  counsel under the protective order, understanding it's

22  confidential, and solely for the purpose of litigation, we

23  would have moved this, you know, a mile down the road because

24  we can finally then talk to Akoustis about what this case is

25  about and start to prepare our defense, which we have just

**UNREDACTED TRANSCRIPT**

1   absolutely not been able to do.

2          And the practicalities of this is enormous.  I

3   mean, even for things that Qorvo wants us to do, like,

4   they've sent us a 30(b)(6) with 50 different topics.  How do

5   we identify a person who is most knowledgeable about trade

6   secrets when they can't know what it is?  How do we have

7   conversations about whether these trade secrets were used or

8   not?

9          And Mr. Masters is correct, in terms of the trade

10  secret identification, it's voluminous.  It's over 2,000

11  pages once you have all the referenced exhibits with it, and

12  we now are dealing with something in the realm of 300 trade

13  secrets.  He mentioned 71 groups, and when you break up the

14  subgroups, I stopped counting around 300.  So we have a

15  massive undertaking that will require our client to say, did

16  we see this document, did we use this document, what usage

17  did we have?

18          Those are things that only fact witnesses can

19  know.  Experts cannot know that.  So we need to be able to,

20  with counsel, under the protective order, just for purposes

21  of this litigation, ask those questions to form our defense.

22          MR. MASTERS:  Your Honor, if I may respond

23  briefly?

24          THE COURT:  Yes, you may.

25          MR. MASTERS:  So it seems like the focus of the

**UNREDACTED TRANSCRIPT**

1   discussion is on the management team, and the case law that

2   would have been in our opposition says that management does

3   not have -- need access if they have a general counsel, which

4   they do, and they have outside counsel.  And they have at

5   least two law firms.

6           They also have outside technical advisors to

7   address these issues.  And the concern is that competitors

8   should not get further access to Qorvo's top trade secret

9   information.  These are competitive decision-making

10  individuals, and to give them broad access to every Qorvo

11  document that's identified in -- as Ms. Sweeney just said, I

12  think 2,000 pages, it might be more, in our trade secret

13  disclosure is just a great concern to Qorvo, fundamentally

14  unfair, and puts them at a competitive disadvantage.

15          MS. SWEENEY:  If I can clarify, something that we

16  have always thought is pivotal and is set forth in our motion

17  is that the documents that we're talking about are materials

18  that Akoustis has had, in most cases has had for years.  The

19  complaint said we had them, we used them, we have profited

20  from them over -- since our inception, which was in 2014.  So

21  I don't know what more Akoustis can do with documents.  I

22  mean, a document isn't living and breathing and changing.

23  These are historical records of the company.  We produced

24  them all in discovery.

25          We're not looking to have any of these folks see

**UNREDACTED TRANSCRIPT**

1   a document that Qorvo produced.  We have always carved out

2   anything that is a Qorvo-produced document that is AEO.  What

3   we're talking about is materials that Akoustis produced from

4   its own files in its discovery that Qorvo is now saying is

5   our AEO information.

6            And, you know, and that's what the case is about,

7   of course.  But given that we've already seen these things

8   and the standard under the protective order, in terms of

9   designating something AEO and looking at harm, is looking at

10  future harm.  And what is the future harm by Akoustis having

11  access to the same documents it has had and, according to

12  Qorvo, used to its benefit for years, in its own files.

13           THE COURT:  And so the question, Mr. Masters, is:

14  Well, if they've already had it and it's material they

15  produced, it's no harm because they've already had the

16  material?

17           MR. MASTERS:  Well, with the use of the word

18  "they" for Akoustis is -- here is being as if everybody at

19  Akoustis had these documents.  That's why the protective

20  order says if an individual had the document, that

21  individual, you can discuss it with that individual, show

22  that individual the document.

23           But why should we now take this body of Qorvo's

24  trade secret information -- and I admit, it is abundant, a

25  large amount of it -- be now sent to the CEO and director,

**UNREDACTED TRANSCRIPT**

1   the vice president of business development, the vice

2   president of fabrication and corporate operations, who has

3   the opportunity to see this, and eventually further spread

4   Qorvo's trade secrets.  They don't need it to make the

5   assessment.

6           And let me take Mr. Shealy, for example -- or

7   Ms. Winters, let's take Ms. Winters.  She has, let's say, a

8   handful of documents that she has already seen.  You can --

9   they can talk to Ms. Winters about those documents.  But now

10  do we have to let Ms. Winters look at the body of Qorvo's

11  trade secret information, which is a large amount more than

12  the handful of documents she originally had and become privy

13  to all of that competitive information?

14          Case law does not permit that broad access,

15  especially when they have a general counsel and they have

16  technical advisors that can assist them in preparing their

17  defense.  So it's taking documents, Qorvo's trade secret

18  information that had never been seen by Shealy, Winters, or

19  Aichele, and now exposing them to all of it.

20          THE COURT:  How old is the oldest set of

21  documents or oldest documents that are asserted as trade

22  secrets?  I'm sorry.  Mr. Masters?

23          MR. MASTERS:  Yes, I'm trying to make that

24  assessment.  I mean, some of it goes back a few years.  2015,

25  possibly, to more current.

**UNREDACTED TRANSCRIPT**

1              THE COURT:  Okay.

2              MR. MASTERS:  And its ongoing use, of course.  I

3     mean, some of the information remains highly confidential and

4     extremely important to Qorvo's business.

5              THE COURT:  Okay.  Well, this is all helpful to

6     have the discussion, and I think we probably need to talk

7     about some other things.

8              But the second amended complaint can certainly be

9     disclosed to those categories to individuals that have been

10    agreed upon today, and that's dealt with, and that will

11    include members of the board of directors, excluding the --

12    Mr. Shealy, who is in a different category right now.  And,

13    of course, the general counsel has full access to it.  They

14    can certainly look at it, and there will be other members of

15    the management team.

16             I'm going to ask one question, Ms. Sweeney.  I

17    don't think that Mr. Shealy was the person who put together

18    the disclosure of the documents.  Who was the key person in

19    terms of -- we're going to have to move on in a second.  But

20    who was the person who actually put together the materials

21    that defense has produced that we're having now this

22    discussion partly about?

23             MS. SWEENEY:  Your Honor, that was done through a

24    meet and confer process with Qorvo and applying search terms

25    to information that we collected at the company from various

**UNREDACTED TRANSCRIPT**

1   custodians, and so all of that was done through an ESI

2   process, and I have to say that --

3            THE COURT:  I want a name.  I want a name of who

4   coordinated at the company this process.

5            MS. SWEENEY:  I see, Your Honor.  Well, we do

6   that work with the general counsel, so -- to give us access

7   to the documents.  But it wasn't the general counsel who made

8   the decision on what was responsive.  That was Pillsbury.  We

9   collect it, and then we do our job on this side to review and

10  produce.  So in some ways, no one at the company was involved

11  in that process beyond getting us access.

12           THE COURT:  Right.  And I think that, you know,

13  it's always something important for me to understand.  But

14  often general counsel is, well, to be candid, the most

15  knowledgeable person about a lot of things.  And there's

16  not -- I assume that's correct here.

17           Is that right, Ms. Sweeney?

18           MS. SWEENEY:  It's not, Your Honor.  So in terms

19  of the technical issues that we have here, our general

20  counsel is not a technology expert.  He can certainly help

21  point us to the right people at the company, but our primary

22  technical interface has always been Mr. Shealy, Mr. Aichele,

23  and Ms. Wright.  Those have been our day-to-day contacts on

24  that.

25           THE COURT:  Okay.

**UNREDACTED TRANSCRIPT**

1          MS. SWEENEY:  And the other outside counsel

2    Mr. Masters mentioned is just our SEC corporate lawyers.  We

3    wanted to make sure that we could disclose information to

4    them simply for SEC compliance issues.  So that -- no one but

5    the three managers I identified speak to these technical

6    issues.

7          And, ultimately, Akoustis makes this request,

8    frankly, at its only peril.  I mean, we would be exposing

9    Mr. Shealy, Mr. Aichele, and Ms. Wright to the level we

10   decide is appropriate, through this process under the terms

11   of the protective order.  If we violate it, we have the full

12   force of the federal court looking at us.

13         And I should also add that the company has made

14   the decision.  The board has passed a resolution to purge all

15   of these documents even before it's established if they're

16   trade secrets, if they're actually confidential.  We just

17   want them out of the company, and so we have been working on

18   that task to simply remove all of these things because we

19   don't want them in general circulation either, not to say

20   that they are.  But we don't -- we want to draw a line in the

21   sand to try and simplify this case and to go ahead and pull

22   those things out.

23         So all we're looking to is just to use these

24   documents with counsel under the protective order for our

25   defense.  But we don't have another option; or, trust me, we

**UNREDACTED TRANSCRIPT**

1    would have been doing it already.

2            THE COURT:  Sure, sure.

3            Okay.  Mr. Masters, anything else on that?  I

4    think we have at least a partial way forward here, and that's

5    good.  We need to proceed with a partial way we've got, and

6    maybe we can work out -- the rest can be addressed later.

7            MR. MASTERS:  Should we file our opposition to

8    address the last category of the management?

9            THE COURT:  Sure.

10           MR. MASTERS:  I think it's due Wednesday.

11           THE COURT:  Yes, yes.  We don't have everything

12   yet.  We're just trying to see where there's agreement and

13   there's partial agreement here and that's useful and it will

14   facilitate things going forward.

15           MR. MASTERS:  On the three board members, the

16   outside corporate counsel and in-house counsel was --

17   in-house general counsel.

18           THE COURT:  Right, those are ones -- individuals

19   who can receive the documents and participate in the process.

20   It does sound like -- I understand the issues about general

21   counsel, but general counsel is a key person here, and so

22   we've made some progress.

23           Okay.  I think we're going to get some more

24   materials on this.  We'll look at it when we get it, and

25   we'll see what we need to do.  But we do need to move forward

**UNREDACTED TRANSCRIPT**

1   as opposed to not moving forward, which is what we want to

2   avoid.

3           The question then -- let me go back to this -- I

4   think that's all we're going to deal with on that.

5           Okay.  There's a request that we go ahead and

6   change the schedule and for many reasons.  In terms of case

7   management and reducing cost for everyone, we need to stay as

8   close as is practical to the amended scheduling order that

9   is, I think, Document 178, which was filed on the 5th of

10  April.  I know there needs to be a little adjustment, and we

11  understand that.  But we do need to try to stay as close as

12  we can.

13          And I know that the -- I am concerned that the

14  cost for anybody, a small startup, a small startup, a

15  protracted litigation can be great.  If you stretch it out

16  enough, it can be a significant problem for an entity that's

17  in the defendant's position.  So we would like to stay close

18  to that.

19          You've provided us with some materials.  We will

20  hear from both sides on this.  Let's start -- I've really

21  seen the letter.  I've seen the materials that you've

22  submitted.  And the first question is close of fact

23  discovery, and I'm a little concerned that there may be -- we

24  don't want to open the gate so wide that we've deviated from

25  standard practice in terms of limitations on deposition

1    discovery, for example.

2              I understand that there are more people who have

3    been identified appropriately, obviously, in connection with

4    26(a)(1) disclosures, and that's a pretty exhaustive list.

5              Right, Mr. Masters, that's exhaustive?

6              MR. MASTERS:  It is, Your Honor.  Yes, it is.

7              THE COURT:  And my assumption, which may not be

8    correct, is that there are individuals on that list who are

9    more central to the case than others, but you've tried to

10   include individuals who under any -- who might, under pretty

11   much any circumstance, be called on to provide testimony in

12   the case.  So it's -- you probably wouldn't be using

13   everybody in that 22 people.

14             Is that right, Mr. Masters?

15             MR. MASTERS:  That's correct, Your Honor, but on

16   the 22, five were Qorvo.  The balance are Akoustis.

17             THE COURT:  Right.

18             MR. MASTERS:  So it's not that Qorvo added 22 of

19   its own employees, but we did add the names to -- that we

20   thought or think may reasonably be called, although I don't

21   have any expectations of calling all of them.

22             THE COURT:  Right.

23             MR. MASTERS:  The answer is yes, Your Honor.

24   You're correct.

25             THE COURT:  Right.  And so I'm going to ask just

**UNREDACTED TRANSCRIPT**

```
 1    for my understanding, of the -- I think it's 17.  It's 17

 2    additional individuals added that are not -- well, there are

 3    a lot of those.  A lot of them are Akoustis individuals,

 4    right?

 5                    MR. MASTERS:  Yes.

 6                    THE COURT:  Did I get that right?  How many are

 7    Akoustis?

 8                    MR. MASTERS:  I'm sorry?  Your question?

 9                    THE COURT:  How many are employed by the

10    defendant?

11                    MR. MASTERS:  So let me correct myself.  I think

12    there were seven Qorvo and 16 Akoustis.

13                    THE COURT:  Okay.  Seven Qorvo and 16 -- okay.

14                    MS. SWEENEY:  Our count is slightly different,

15    but it's close.  We have nine Qorvo or former Qorvo; and of

16    those nine, we've received documents from one.  We have

17    custodial documents from one of those nine.

18                    THE COURT:  Okay.  And a lot of the individuals,

19    then, are employed or have been employed by the defendant, is

20    that right, Ms. Sweeney?

21                    MS. SWEENEY:  Yes, it is.

22                    THE COURT:  Okay.  So that's --

23                    MS. SWEENEY:  That's correct.

24                    THE COURT:  And you can go talk to them any time

25    you want to.  So they're available, right?
```

**UNREDACTED TRANSCRIPT**

1    MS. SWEENEY:  I believe quite a few of them are

2    former employees that -- they are people that we would need

3    to subpoena if they wouldn't cooperate in an interview, but

4    we've got about nine that are the Qorvo folks.

5        THE COURT:  Okay.  All right.  I'm going to make

6    sure I have not missed something here.  I may have -- there

7    are two ways to interpret a couple of things both of you have

8    said.

9        And so, Mr. Masters, what's the total number of

10   disclosed individuals in the 26(a)(1) by Qorvo?

11       MR. MASTERS:  It is 58, Your Honor.

12       THE COURT:  Okay.  58.  And, obviously, we're not

13   going to be taking 58 depositions.  And of the -- in the

14   total number, can you give me the breakdown there of how many

15   are where?  How many are currently employees or have been

16   recently -- in the fairly recent past of the defendant?

17       MR. MASTERS:  I don't have the exact numbers in

18   front of me, but my -- 25, I believe.

19       THE COURT:  Okay.  Okay.  And then some are not

20   affiliated with either side really; is that right,

21   Mr. Masters?

22       MR. MASTERS:  There are a few that have left the

23   employment of Qorvo or Akoustis.  A couple have already been

24   subpoenaed.

25       THE COURT:  And at trial, Mr. Masters, how many

**UNREDACTED TRANSCRIPT**

1    people do you think you'd be presenting?  And I know that's a

2    long way away, but lawyers think about that pretty early in

3    the case.  How many do you think you'd be presenting, maybe?

4               MR. MASTERS:  Fact witness, experts, or total?

5               THE COURT:  Total.  Let's go with fact witnesses

6    first, I suppose.

7               MR. MASTERS:  Okay.  I would estimate roughly

8    four to five Qorvo employees and maybe the same number of

9    Akoustis employees or ex-employees.

10              THE COURT:  And then you'd have your experts, and

11   there would be about how -- would there be three of those?

12              MR. MASTERS:  There could be five, Your Honor.

13              THE COURT:  There could be five.  That's fine.

14              MR. MASTERS:  I'm including the patent.

15              THE COURT:  Sure.  Sure.  Absolutely.

16   Absolutely.  So we're talking about maybe 15.

17              And, Ms. Sweeney, you've been thinking about

18   this.  Are we talking about equal number or some of these are

19   going to be Akoustis or they'll be on the stand?  Everybody

20   understands that in the process of trying a case, if the

21   plaintiff calls a defense employee, which happens, of course,

22   all the time, that employee will then be on the stand to

23   present generally all of the testimony they're going to

24   present because you don't want to have to go back and set it

25   up again when they might be called by the defense.

**UNREDACTED TRANSCRIPT**

1     So there is some advantage to the defense if

2  plaintiff calls them because then you have this argument,

3  well, we should be able to cross and so forth.  And there is

4  a little more liberal approach in terms of allowing that type

5  of examination.

6     So assuming that we have this mix of ten max

7  probably, nondefense employees, Akoustis employees, and then

8  we have five of the defendants' employees, about how many

9  additional witnesses would we expect possibly from the

10  defense?  It sort of depends on who that five are, but I can

11  assume that the five might include a couple of the senior

12  management team.

13     Mr. Masters, is that pretty routine?

14     MR. MASTERS:  I think that's fairly --

15     THE COURT:  Sure.  So that gives us some idea.

16  Much of the case will be presented in the plaintiff's case in

17  chief.

18     Ms. Sweeney, with that -- and you probably talked

19  about this -- you're looking at then an additional how many

20  witnesses, another four or five?

21     MS. SWEENEY:  I think it would be -- I'm

22  guessing, Your Honor.  We might -- I hope we would be able to

23  get it done with four to five, but my rough count would be in

24  the seven to ten range.  In part, as Mr. Masters described,

25  these 300 trade secrets go to the entirety of Qorvo's

**UNREDACTED TRANSCRIPT**

1   business.  They go to a host of different functions

2   throughout the companies.  So I'm expecting that, you know,

3   we might have seven to ten Akoustis folks to speak to those

4   issues; but, again, we haven't had an opportunity to consult

5   with the client.

6                THE COURT:  Sure.

7                MS. SWEENEY:  So I think my numbers are a little

8   high, and we certainly will work to carve that back.

9                THE COURT:  Sure.  Okay.  And the reason we're

10  kind of having that discussion is I think that sounds about

11  the size of the case on the trial we're going to have in all

12  likelihood, and that helps us understand how many.

13               We should probably not be thinking outside of the

14  normal limitations on the number of discovery depositions --

15  that's really not a distinction -- taken in discovery in the

16  case.  Or if there's some moderate change of that, it will be

17  pretty small.

18               Is that what you think about, Mr. Masters, a

19  fairly small number of depositions?  Or are you thinking

20  you're going to be taking 20?  I mean, give me a hint here.

21               MR. MASTERS:  No more than 20, Your Honor.

22               THE COURT:  I didn't -- I was not even suggesting

23  you were going to be allowed 20.  So kind of think about

24  that.

25               MR. MASTERS:  I mean, I think about this every

**UNREDACTED TRANSCRIPT**

1   day, Your Honor.  The number I gave you for trial --

2              THE COURT:  Sure.

3              MR. MASTERS:  -- based on trying to find those

4   witnesses that cover categories of the trade secrets and what

5   we identified as the most valuable trade secrets or the most

6   egregious of cases and those four or five Qorvo employees can

7   talk about why they're important to the company and Akoustis

8   witnesses, of course, how they have used that information.

9   But to get to that, obviously, we've got to take more fact

10  depositions than the four or five.

11             Now, if we could do it in ten, I would say that

12  would be great.  But I think, you know, just to be upfront

13  with the Court, that we're going to have to take a few more

14  than that, maybe 15.  I mean, I'm not -- I want to get this

15  case to trial as soon as possible, so I'm not looking to take

16  every deposition I can --

17             THE COURT:  Right.

18             MR. MASTERS:  -- just to take a deposition.  I

19  want to be as efficient as possible.  I mean, that's why we

20  put in the August close of fact discovery.

21             THE COURT:  Right.

22             MR. MASTERS:  So --

23             THE COURT:  I'm thinking in terms of the way

24  you're thinking.

25             And, hopefully, Ms. Sweeney, you're thinking sort

**UNREDACTED TRANSCRIPT**

1    of the same way, that we don't want to -- it is not necessary

2    for either side to take every conceivable deposition.  It's

3    not efficient, cost-effective, or anything else.

4          So I'm going to take, Mr. Masters, your statement

5    on fact witnesses, 10 to 15, but probably -- I'm going to say

6    wouldn't really expect to see 12.  And I know the lawyers

7    sometimes say, well, I didn't take their deposition, how am I

8    going to examine them at trial?  The answer is, you're going

9    to do what lawyers do.  You're going to listen to what they

10   have to say.  You've got all the documents.  Probably be the

11   best cross-examinations you've ever done because nobody will

12   be prepped on it if not given a deposition and so it's -- it

13   can be -- it's not a disadvantage, if you've got the major

14   pieces in place, to handle it that way.

15         Ms. Sweeney, I know you're thinking in terms of

16   economies and trying to be efficient, and we talked about

17   that before.  Do you think that your max number would in any

18   way -- fact depositions, would in any way exceed 12?  That's

19   a lot.

20         MS. SWEENEY:  It is a lot of depositions, and I

21   would like to raise one issue --

22         THE COURT:  Sure.

23         MS. SWEENEY:  -- which is the 30(b)(6) notice

24   because we already have Qorvo's 30(b)(6) notice, and it has

25   50 topics.

**UNREDACTED TRANSCRIPT**

1          THE COURT:  I understand the problem.

2          MS. SWEENEY:  We've got that in terms of how did

3    that count towards whatever ultimate number it is.  So -- and

4    that's nothing we've had an opportunity to meet and confer

5    with Qorvo about --

6          THE COURT:  Sure.

7          MS. SWEENEY:  -- in part because we've got the

8    barrier on talking to our client about trade secrets.  But

9    separate and apart from 30(b)(6), you know, I think trying to

10   keep this down to 12 fact witnesses for depositions would be

11   something we should work very hard to do.

12          You know, it's a little bit hard because, you

13   know, I know Mr. Masters last time said that the trial of

14   this case would be a subset of the trade secrets that they

15   had alleged in the second amended complaint, which at that

16   point was 85.  Now we're up to 300 trade secrets.  We don't

17   quite know -- we're going to have to figure out where we're

18   shooting --

19          THE COURT:  Right.

20          MS. SWEENEY:  -- and to figure out depositions.

21   And maybe those are for trade secrets that Qorvo doesn't

22   intend to pursue, which we just don't know now.  We have to

23   deal with the discovery as it comes to us.

24          THE COURT:  Right, and they, of course, have the

25   problem of having to identify everything that is a trade

**UNREDACTED TRANSCRIPT**

1   secret, even though they're going to focus on probably, I'm

2   going to guess completely and don't know, but it would be

3   unusual to focus on more than seven to 12.  That might be --

4   it might be a few more, but -- and they're different

5   categories.  I think financial information is in one

6   category.  It may be categories of material.  I agree with

7   you.  That number will come down.

8           Mr. Masters, that number will come down, in terms

9   of going to trial, because you just can't do the other.  It's

10   not going to -- it's not practical in terms of time

11   limitations.  It just won't work, and most of the time that

12   comes down quite significantly.  I think you would agree, you

13   just don't quite know where it's going right now.  Is that

14   right?

15           MR. MASTERS:  Absolutely, Your Honor.  I said

16   that last conference.

17           THE COURT:  Right.

18           MR. MASTERS:  The jury, if we stayed there to go

19   through the --

20           THE COURT:  We're not saying it's that long

21   because we won't be able to allocate that much time.  And

22   it's really a prioritization as the parties sort through

23   everything, right?

24           MR. MASTERS:  I agree, Your Honor, entirely, and

25   I think these deposition, the fact depositions, especially of

**UNREDACTED TRANSCRIPT**

1  the Akoustis employees and the few that have left Akoustis

2  since under subpoena and into the expert discovery, really is

3  going to help us focus the case and get it down to -- you

4  said seven to 12 trade secrets groups.  That's --

5          THE COURT:  That's still a lot.

6          MR. MASTERS:  That's still a lot, so I don't

7  think we'd ever go more than 12 of the groups; but, you know,

8  obviously, we're at 71 trade secrets groups today.  I should

9  say that we identified more in their most recent production.

10  I don't really want to add to it, but it keeps coming

11  sometimes.  But you're right in terms of the groups for

12  presentation at 12 -- I mean, at trial will be -- your range

13  of seven to 12 is fine.

14          THE COURT:  I think that's probably going to just

15  be necessary from a management point of view and practical

16  priorities.

17          Okay.  We're going to make a note about that.

18  I'm not boxing people in.  We're just trying to get a way

19  forward.

20          Okay.  And, Ms. Sweeney, we've still got our

21  trial time limit here.  Can we hit the time frame we've still

22  got down?

23          MS. SWEENEY:  Your Honor, can I have a moment to

24  mention a couple of points?

25          THE COURT:  Yes.

**UNREDACTED TRANSCRIPT**

1              MS. SWEENEY:  I appreciate that.

2              So when we had our last hearing, Qorvo, at that

3    point, said -- and I'm reading from the transcript:  The

4    nature of this case has not changed.  The scope has changed

5    slightly.

6              Last week, we got a disclosure of 300 trade

7    secrets.  We've also now received about half a million pages

8    of documents.  That's eight times -- that is eight times the

9    size of document production that they've done over the entire

10   life of the case.  We think -- we really are looking at this

11   practically like how do we get that done.  So I went to our

12   eDiscovery team to say how long is it going to take me to

13   just review half a million pages, and the estimate is three

14   to four months to get that work down.

15             Now, obviously, that's not the only work we would

16   be doing.  But just to give you the size of that effort to

17   try and get it done within three months, we would have 15 to

18   20 lawyers reviewing those documents to get through this.  So

19   I can't understate how much document work there is to be

20   done.  And, frankly, these are the initial disclosures.

21   These are the things that Qorvo wants to rely on.  That and

22   the trade secret identification is what really volleys the

23   ball to us to then identify what we're going to present in

24   rebuttal.  What documents do we need for Qorvo?

25             So we really need time in the schedule, which is

1    what we've really been struggling with, to make sure we get

2    not just through their initial disclosures over the next

3    three to four months, but also receive from Qorvo and have an

4    opportunity to review the documents that we think are

5    important to our case.  Are these documents that were public?

6    Were they shared with other people without an NDA?

7              Then there's a host of factual issues that we

8    need to get into long before we're taking depositions, and we

9    really -- you know, we've got this information in connection

10   with a May 1 Rule 26; and so, frankly, I think that belies

11   the concept that Qorvo had said last time that the scope has

12   only changed slightly.

13             We had said this is a new case, and I think the

14   volume, which is eight times what they've given us over the

15   entire case for initial disclosures, confirms that this is a

16   new case, and we need to deal with it.

17             So the idea of having fact discovery close in 90

18   days from when we have notice of these things would be --

19   would not only deny us our discovery rights, but I think

20   would present a very profound due process issue.  So as much

21   as -- I literally have in my notes what the Court said last

22   time, and also our own concern is Akoustis doesn't want a

23   protracted schedule.

24             THE COURT:  Right.

25             MS. SWEENEY:  We know -- we painfully feel what

**UNREDACTED TRANSCRIPT**

1  it is every month to go forward.  So when we stood on our

2  prior schedule asking to have, basically, I think, nine

3  months to finish this discovery, you know, we're calculating

4  that.  We're looking at the bottom line, but the reality is

5  we understand Qorvo has a significant case.  We now

6  understand what it is and hopefully can get that to our

7  management team quickly so we can be more agile.  But we also

8  have viable defenses that require production of information

9  from Qorvo, so we need time to do that.

10          And so if I'm looking at several months, three to

11  four months simply to review the initial disclosures, we'll

12  obviously concurrently be working to issue our own

13  affirmative discovery and work on some of the discovery

14  disputes that we mentioned.  But, you know, we started

15  producing our documents in large chunks -- I can tell you

16  exactly when -- in September.  And we finished with

17  substantial compliance on our production in January, and that

18  was the 64,000 documents that we talked about last time,

19  which is about half a million pages.  We did that -- so

20  that's somewhere between four and eight months ago, those

21  productions in substance were rolling into Qorvo.  And I'm

22  talking about larger productions, not some of the smaller

23  earlier productions, not our initial disclosures.

24          So we're not asking for the same six or eight

25  months that Qorvo has had, but we do -- just to review the

**UNREDACTED TRANSCRIPT**

1    documents, we're trying to do in that same eight- or

2    nine-month time frame, all of the review, get more

3    affirmative defensive discovery we need, and take the

4    depositions once we have that discovery collected.

5            And, unfortunately, in the midst of that, we are

6    going to have, I'm afraid, some discovery disputes, which is

7    not something that Qorvo experienced as it was doing its

8    work.  We didn't have a single motion to compel.  You know,

9    we have cooperated throughout this process to get them the

10   information they need.  And, unfortunately, we're seeing --

11   I hope we can work our way through it.  I can count the

12   number of discovery disputes I've had on my hands.  We try

13   and avoid them.

14           But the reality is we've seen a very different

15   standard of relevancy for what Akoustis has been asked to

16   produce and has produced versus what Qorvo is willing to

17   produce.

18           As an example, we've produced information about

19   how we recruit people in the BAW filter space.  That's what

20   is the industry standard for BAW filter recruiting.  We ask

21   Qorvo to give us their documents about how they recruit their

22   own people in the BAW filter space to see what the industry

23   norm is.  It's an allegation in their complaint.  They've

24   refused to provide those documents.

25           So there's a sea of dispute.  I certainly will

1   not bring the Court into that mud.  I hope we can get through

2   it.  But it is a different process that we're going through

3   now than the process that we had last year, which was highly

4   cooperative.  I hope we can get back to that.  But that

5   certainly comes into play in our timeline, which I feel, in

6   looking at it and relooking at it and talking with my

7   colleagues and considering the expense to Akoustis, is really

8   still quite tight for us.

9           But I will say one other thing, which is, we

10  don't want to just set a date out and say, oh, good, now we

11  have, you know, eight or nine months to do this.  We're

12  also -- we're very willing to be accountable for all the

13  time, for time as it passes.  So if the Court would rather

14  have us come back in 60 or 90 days and assess what the status

15  is since we just got the trade secrets yesterday -- or last

16  week, we can do that as an alternative, but I just really

17  feel that the time that we've asked for at this point is our

18  very best and most conservative window.

19          THE COURT:  Well, I suspect, maybe I'm incorrect,

20  that in light of my caution as to the scope of 26(a)(1)

21  initial disclosures and the problem of failing to include

22  information, Mr. Masters, I assume that you have been perhaps

23  overly inclusive, which is fine in terms of your disclosures.

24          MR. MASTERS:  I don't agree with that, Your

25  Honor.  I believe -- the first thing I'd like to correct is

**UNREDACTED TRANSCRIPT**

our production on May 1 was the disclosure, the document I
talked to you about.  We've updated the initial disclosures
on the nonpatent claims, and we produced documents.  The
documents we produced included those that would comply with
our disclosures.

THE COURT:  Sure.

MR. MASTERS:  So in response to the 179 requests
for production that Akoustis has served on us, that includes
requests after we filed the second amended complaint.  So
that production of documents that counsel was referring to is
not just our initial disclosures.  It is also responding to
their significant number of RFPs.

THE COURT:  Sure.

MR. MASTERS:  As an example, we have 400 search
terms that we are using on our documents to try to comply
with Akoustis's broad range of document requests.  So they
make these requests extremely broad, and I think part of the
purpose, Your Honor, is to -- a way to justify pushing trial
to December of 2024 and fact discovery much later in time.
So, I mean, we're at the point today where we have produced
more pages than Akoustis has produced.

THE COURT:  And so you're -- I understand what
you're saying.  I thought perhaps that you did -- in
connection with making sure you had 26(a)(1) disclosures, you
were pretty comprehensive, though; is that right?

**UNREDACTED TRANSCRIPT**

1          MR. MASTERS:  We were comprehensive, but we

2    weren't so comprehensive that we just buried them with

3    irrelevant information or anything like that.  We're

4    responding to their document requests --

5          THE COURT:  Sure.  I understand.  I understand.

6    You know, the purpose of the whole process is the efficient

7    administration of justice, and that means that we do have to

8    set some clear deadlines.  It is not a bad suggestion that

9    perhaps we come back a little later, and I was going to

10   adjust the close of discovery somewhat, but not very much.

11         I do think that the assertion that we have to

12   look at many, many documents, understanding that people need

13   to be efficient.  They need to look at categories.  They need

14   to make decisions.  This is not learning the encyclopedia.

15   This is becoming more and more focused on the issues in the

16   case.  So I hear exactly what Ms. Sweeney is saying.

17         Ms. Sweeney, I believe what you're saying is what

18   you believe, but I don't believe that that's the way that we

19   will be able to get to a just result in the case because I

20   think that we have to be mindful that some limitations are

21   necessary to prevent the case becoming simply beyond reason

22   in terms of cost.  And I think that that's an issue for the

23   defense.  So we need to be -- recognize that there are

24   choices that have to be made by both sides.

25         Now, having said that, of course, let's go

**UNREDACTED TRANSCRIPT**

1   through a couple of things.  Final infringement contentions,

2   nobody questions that.  Of course, we've got sort of two

3   parts of the case.  And that will be due on June 15th.  That

4   has not changed.  That's not changed.  Final noninfringement

5   contentions, etc., will also be due on June 15th.  That has

6   not changed.

7           Final validity and enforceability contentions,

8   most sides agree, July the 25th.  Of course, Court had set

9   that.  That's not changed.  And you also have things that the

10  Court has completed, which should help you in that regard.

11          Now, the issue is how much would the Court be

12  willing to adjust the trial schedule and then perhaps look at

13  this a little in the -- in a backward-looking way, and I

14  think we can make a small adjustment there, but not a lot.

15  And the thought at this time is that we would move that to

16  May the 6th.

17          We're not going to go to December the 9th.

18  That's simply a prescription for, I'm afraid, very

19  unfortunate results for defense side.  The efficiency is

20  going to be created by having a realistic time frame that

21  will cut costs to some degree.  So I'm definitely going to

22  move -- unless that's a problem.

23          Mr. Masters, do you have a problem with that

24  date?

25          MR. MASTERS:  We do not, Your Honor.

**UNREDACTED TRANSCRIPT**

1          THE COURT:  And, Ms. Sweeney, I know you want

2     December the 9th.  That's a long way away, and there's a good

3     bit of time left.  I think we need to be with May 6th on this

4     case.  And there won't be a lot of flexibility from the Court

5     generally.  We have to keep a pretty strict schedule to get

6     many things done.

7          MS. SWEENEY:  Yes, Your Honor.  I understand.  I

8     wonder if what we can do is expand the time for the close of

9     fact discovery and compress some of these other deadlines so

10    that we can generate some time.

11         THE COURT:  Yes, yes, I think that's kind of

12    where we're going.  I hope that's where we're going.  We're

13    going to give you a pretrial conference date because it will

14    have to be somewhat before May 6th, obviously.

15         And, Mr. Sample, what's our date for that?  And I

16    think we need to be -- I think we need to be a couple of

17    weeks earlier.

18         CASE MANAGER:  Yes, sir.  You're set to be in

19    Delaware from --

20         THE COURT:  Right.

21         CASE MANAGER:  How about Friday, April the 19th?

22         THE COURT:  April 19th is probably a good day

23    because they will need a good bit of time.

24         Is that going to work, Ms. Sweeney, for you?

25         MS. SWEENEY:  Yes, Your Honor.

**UNREDACTED TRANSCRIPT**

1          THE COURT:  Okay.  We're talking about -- we're

2     still deciding whether that will be -- right now, it says

3     video.  We'll leave it at video, but I'm a little concerned

4     about that.

5          What about, Mr. Masters, your situation?

6          MR. MASTERS:  Friday, April 19th, that works,

7     Your Honor.

8          THE COURT:  Okay.

9          CASE MANAGER:  And that would be at 9:30.

10          THE COURT:  At 9:30.  That will be 9:30 Central?

11          CASE MANAGER:  9:30 Central, yes, sir.

12          THE COURT:  Okay.  Which is obviously 10:30

13     Eastern, etc.  Okay.  So we've got that down.  Pretrial order

14     date?

15          CASE MANAGER:  April 3rd, which is a little more

16     than ten working days.  Does that need to be further out?

17          THE COURT:  I think that's okay.  April 3.  That

18     may need to be -- that's fine.  That may -- that's going to

19     push them a little bit.  Let's leave it at April 3 and see if

20     we can make that work for everybody.

21          All right.  Now, the question was:  What do we do

22     in terms of compressing some other dates?  And we need to add

23     some time to completion of discovery.

24          And, Mr. Masters, do you want to propose the

25     poison on that one?  I think that -- I think we're going to

**UNREDACTED TRANSCRIPT**

47

1    have to add 45 days or more, at least.

2              MR. MASTERS:  This is the close of fact discovery

3    or were you going to --

4              THE COURT:  The close of fact discovery.

5              MR. MASTERS:  Okay.  Well, we could do -- 45 days

6    would work.

7              THE COURT:  Okay.  That's going to put us about

8    September the 22nd, approximately, or the 25th.

9              MR. MASTERS:  We had July 10th, Your Honor, was

10   what you ordered.  April 5th, your last order.  So 45

11   days --

12             THE COURT:  Right, right, right.  But we're

13   adding to your proposed date is what I'm doing.

14             MR. MASTERS:  Oh, I misunderstood your question

15   then, Your Honor.

16             THE COURT:  I'm sorry, I wasn't clear.  My issue.

17   I think that's what Ms. Sweeney is saying is that looking at

18   your proposed date, that's a difficult date.

19             MR. MASTERS:  I misunderstood your question.  So

20   September 22nd, I think you said, would be --

21             THE COURT:  Yes.

22             MR. MASTERS:  That's fine, Your Honor.

23             THE COURT:  Well, let me see.  Ms. Sweeney, is

24   that -- that's certainly a lot of -- that's some relief

25   there.

**UNREDACTED TRANSCRIPT**

 1          MS. SWEENEY:  I appreciate that, Your Honor.

 2   That gives us 135 days to deal with 300 trade secrets that I

 3   still can't talk to my management about.  So I -- and I

 4   know --

 5          THE COURT:  Excuse me.  I think you've made that

 6   point, and I understand it.  And you can talk to your

 7   management about it.  You have to talk to your general

 8   counsel.  You have people you can talk to on the board of

 9   directors, and we're going to work on the rest.  I think we

10   need to -- probably, Mr. Masters, we probably need to at

11   least allow consultation with one of the two key people that

12   they've been working with in terms of the case, and I think

13   it sounds like that Ms. Winters may actually be playing a key

14   role in the defense.  It sounds right.

15          Is that right, Ms. Sweeney?

16          MS. SWEENEY:  She is one of the three.  It's

17   primarily that I have to say Mr. Shealy and Mr. Aichele in

18   terms of our day-to-day management.  Ms. Wright runs the

19   foundry, has a different role.  She's recently taken over as

20   head of operations, but it's predominantly Mr. Shealy and

21   Mr. Aichele.

22          And, I'm sorry, Your Honor, in terms of timing,

23   if we could adjust that so that we had 75 days from

24   August 10, that's what we would request.  I wanted to request

25   90, but I'm trying to pull back.  I hear you.  So that would

**UNREDACTED TRANSCRIPT**

 1   be 165 days from now.

 2            THE COURT:  What's the precise date you're

 3   proposing?

 4            MS. SWEENEY:  Let's see.  That would be -- I'm

 5   pulling my calendar, I'm sorry, Your Honor.

 6            THE COURT:  That's fine.

 7            MS. SWEENEY:  I have so many windows up here.

 8            THE COURT:  I'm looking -- we're all looking at

 9   lots of things, so you're good.

10            MS. SWEENEY:  Okay.  There we go.  If we could

11   move that to, let's say, November 10.  Actually, Your Honor,

12   I'm sorry, that's 90 days.  Let me pull that back.

13   October 31, Halloween.

14            THE COURT:  October 31.  Okay.

15            I know that's a big change, Mr. Masters, but I

16   think we probably need to do that.  Now, this is a -- this is

17   a real deadline.  This is, you know, this is like -- this is

18   an important date, the end of fact discovery, so that's -- I

19   think that's rowing the boat about as fast as we can get

20   anybody to move.

21            MR. MASTERS:  So, Judge, I just will raise one

22   point.

23            THE COURT:  Sure.  That's fine.

24            MR. MASTERS:  If it is October 31, then we have

25   expert discovery.  Then the filing of dispositive motions,

**UNREDACTED TRANSCRIPT**

1   are they too close to your pretrial order, or does the Court

2   have sufficient time to handle the dispositive motions?

3            THE COURT:  It's terrible for us.  It's

4   absolutely difficult.

5            MR. MASTERS:  Okay.

6            THE COURT:  And I think but --

7            MR. MASTERS:  If we keep the trial date --

8            THE COURT:  I'm looking to my staff, and they

9   said, please, push it back some.  That's a tough schedule for

10  us.  I think maybe we need to at least be no later than -- I

11  think choosing Friday the 13th of October is probably a bad

12  sign, so we probably should go to the 16th of October.

13  That's not going to help us a lot, but that will help us

14  some.  And I think that's probably the best we can all do.

15  That's a hard -- it's going to be a hard schedule for us.

16  That's the close of fact discovery.

17            And then initial expert witness disclosures,

18  you're talking about having to move rather rapidly.  Now,

19  your patent experts, they will be ready anyway, right,

20  Mr. Masters?

21            MR. MASTERS:  Well, I -- that's --

22            THE COURT:  I mean, that --

23            MR. MASTERS:  That would be the easier.

24            THE COURT:  Yes.

25            MR. MASTERS:  But in terms of when depositions

**UNREDACTED TRANSCRIPT**

1   may be for somebody that's relevant to the patent issues, you

2   know, if that happens in October, then the patent expert is

3   not going to be ready earlier.  But if they take place

4   sooner, then maybe it is.  But --

5               THE COURT:  Do you want to break it down for

6   patent experts, and then we'll just say nonpatent experts?

7   Does that matter?  I don't think so.

8               MR. MASTERS:  I would prefer not to, Your Honor.

9               THE COURT:  Yeah, I understand.  And so you're

10  talking about initial expert disclosures taking place, and

11  the best that we can do is -- would be November -- and you

12  may both say this doesn't work, but hopefully it will --

13  November the 17th.

14              MR. MASTERS:  Okay.

15              THE COURT:  And, you know, they start work

16  earlier than the wrapping up the fact discovery.  They'll be

17  working on this in advance, anyway.  November 17th.

18              Ms. Sweeney, I know that's -- that should work,

19  though.  We should -- it's just --

20              MS. SWEENEY:  I think that works just fine, Your

21  Honor.

22              THE COURT:  I think it will be fine.  Rebuttal

23  expert discloses, basically this is going to be a little bit

24  of a mess.  That's going to have to be December -- this may

25  not work -- December the 14th.

**UNREDACTED TRANSCRIPT**

1          Everybody -- completion of depositions of

2     experts, that's going to push us somewhat.  Doesn't mean you

3     can't start earlier.  That may not work here.  January

4     the 19th --

5          MS. SWEENEY:  Your Honor, if possible, could we

6     push that to January 26?  I am out of the country at a time

7     when I thought it was a perfect escape, the last week of

8     December and the first week of January.

9          THE COURT:  Let me see how that works, and we'll

10    write it down.

11         MS. SWEENEY:  Okay.

12         THE COURT:  And then we have to have filing of

13    dispositive motions.  Dispositive motions, actually, are

14    going to have to be essentially of the -- there will have

15    been reports and other materials that have been disclosed

16    earlier which will allow the preparation of those in

17    substantial part with the wrapping up of details hopefully,

18    certainly, no later than the 26th if we can live with that.

19    But that would mean that dispositive motions is going to be

20    very difficult.  I'm not sure it's practical.

21         February the -- I'm going to write down a date.

22    February 16, which is probably not practical.  That's going

23    to be a terrible schedule.  That's a really difficult

24    schedule.  I don't know that we can make that.  I'm going to

25    have to put the filing of the dispositive motions earlier,

**UNREDACTED TRANSCRIPT**

1   and I'm going to have to leave the completion of depositions

2   for -- I tell you what, you can complete them on the 26th,

3   but you're going to have to -- it's basically -- that's going

4   to be a very close date.

5            And then February -- it will have to be the very

6   first of February, February 1, for the filing of -- it's like

7   icing on the cake in the sense that hopefully everything is

8   pretty well done.  If you complete a deposition on the 26th,

9   that should be just adding some citations.

10           And then February 1st, very tough schedule for

11  us, but we will try to make that work.  I think we can.  We

12  can figure a lot of other things out, and we're willing to

13  try to do that.

14           Okay.  Then we've got the new dates.  That's

15  going to be a very, very -- we're going to have to have a

16  compressed response time on dispositive motions rather than

17  having extensive response time.  That's going to have to be

18  compressed.  So I'm going to have to put that as a unit

19  there, response time, or we'll call reply.  I mean response.

20  That's going to have to be something like February 16.  I

21  understand that will work -- we'll make it the 19th so that

22  whoever is working can work all weekend.

23           And that's -- I know it's not the first time

24  everybody has thought about these issues but, with that, we

25  should be able to make -- we will actually give you a hearing

**UNREDACTED TRANSCRIPT**

54

1   date, not that we like to do that, but it's a management

2   tool, a hearing date on dispositive motions, and we're going

3   to have to give them a hearing date that's going to be -- I

4   know there may be a reply.  I understand that.  That's going

5   to have to be in the very first of -- the very first part

6   of -- very first -- end of the first week of March.  That's

7   aggressive.

8            CASE MANAGER:  We can do it on Thursday, March

9   the 28th, at 10 a.m.

10           THE COURT:  That's not as aggressive as I was

11  going to be.  I was going to be much more -- understanding

12  there may be some briefing that's still coming in.  We're

13  talking about the 8th.  I know I may be in another city.

14           CASE MANAGER:  You may be in Delaware.

15           THE COURT:  I may be in another place.  Have we

16  got another --

17           CASE MANAGER:  What about the following week?

18           THE COURT:  The following week, yes.

19           CASE MANAGER:  We could do it on Friday,

20  March 15, at 10 a.m.

21           THE COURT:  Okay.  March 15.

22           MR. MASTERS:  Is that the hearing date, Your

23  Honor?

24           THE COURT:  Yes, sir.  That does not mean that we

25  will not have been working on it.  That means that that will

**UNREDACTED TRANSCRIPT**

1    hopefully be the last set of questions.  At what time?

2                CASE MANAGER:  10 a.m.

3                THE COURT:  10 a.m. Central?

4                CASE MANAGER:  Yes.

5                THE COURT:  Central.  Okay.  That's -- we are

6    making a commitment to push the case along and we're

7    disadvantaging us to some degree, but we think we will be

8    able to do this.  We obviously have a lot of familiarity with

9    some of the issues in the case, and we will be a lot more

10   familiar with the remaining issues by the time they get here.

11   I do appreciate the --

12           Mr. Masters, I appreciate your listing categories

13   because I really needed to have something there.  I do

14   understand that.  I know this is a rapid schedule.  We do

15   have our focus.

16           There are many reasons that these types of cases

17   need to proceed in an orderly and expeditious way, and those

18   have been asserted by the plaintiff, but I think that that's

19   just a fact that these kind of cases don't get better with

20   age.  They do need to move along.  But you need to have

21   enough time.

22           Ms. Sweeney, I know you're going to have a lot of

23   people working hard, and I appreciate that.

24           And, Mr. Masters, you're going to have to start

25   limiting some things pretty rapidly, and I'm not telling you

**UNREDACTED TRANSCRIPT**

1    what to do because I don't know all the facts and details

2    there.  But to get this schedule done, I know that you know

3    what your responsibilities will be in terms of narrowing some

4    of the issues that are before Ms. Sweeney and helping her

5    team be able to get through the process in the sense that

6    you're required to.  Not that you're helping the other side.

7    You're helping the prompt disposition of the case.  And

8    you've done that before, Mr. Masters, right?  I know you

9    have.

10              MR. MASTERS:  Yes.  Yes, Your Honor.

11              THE COURT:  Absolutely.

12              MR. MASTERS:  I understand your point.  I agree

13   with your point.

14              THE COURT:  We've got a great team here.

15              And, Ms. Sweeney, I just look -- every time I

16   think about the smaller startups, I think about the dollars

17   going out the door and how much they really need the case

18   painfully as it -- painful as it may seem, to get done and to

19   move along and not be a further drain on the assets of the

20   startup, so we're all trying to balance a lot of things here.

21   I've got the schedule here.

22              We're going to -- anything else you want me to

23   schedule, Ms. Sweeney?  You didn't get exactly what you

24   wanted, but you got part of it.  Anything else?

25              MS. SWEENEY:  No, Your Honor, except to thank you

**UNREDACTED TRANSCRIPT**

```
 1    and the Court and the staff for making the accommodations

 2    that you have.  I hear the difficulty in the schedule and

 3    appreciate the additional time on the close of fact

 4    discovery.  That is very helpful.

 5              And if there's anything we can do, if the Court

 6    needs to adjust the ultimate trial schedule, we are obviously

 7    happy to do that, but I just wanted to thank you for taking

 8    that on because we realize it impacts others outside of

 9    Akoustis and Qorvo.

10              THE COURT:  It does, and thank you very much.

11              And, Mr. Masters, I should say anything else

12    before we --

13              MR. MASTERS:  We didn't get a reply date for the

14    dispositive motions.  I don't --

15              THE COURT:  That's because I didn't give you one.

16              MR. MASTERS:  Okay.  Fair enough.  Otherwise,

17    thank you, Your Honor.

18              THE COURT:  I appreciate the thought.  And I

19    haven't -- sometimes replies are more necessary than others.

20    That doesn't mean we might end up not getting them, but I

21    understand what we didn't do.

22              MR. MASTERS:  Okay.

23              THE COURT:  All right.  Well, thank you all very

24    much.  I know we had a lot of people on the line here, and

25    we're going to let Mr. Sample put us in recess.  We have
```

**UNREDACTED TRANSCRIPT**

1   several other pretty significant matters coming up.

2               CASE MANAGER:  Yes, Your Honor.  This honorable

3   Court stands in recess.

4               (Adjournment.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNREDACTED TRANSCRIPT**

1                    **C E R T I F I C A T E**

2

3

4          I, TINA DuBOSE GIBSON, do hereby certify that the

5   foregoing 58 pages are, to the best of my knowledge, skill

6   and abilities, a true and accurate transcript from my

7   stenotype notes of the STATUS CONFERENCE hearing held on the

8   10th day of May, 2023, in the matter of:

9

10  QORVO, INC.

11  vs.

12  AKOUSTIS TECHNOLOGIES, INC.,
    AND AKOUSTIS, INC.

13

14

15  Dated this 15th day of May, 2023.

16

17                          s/Tina DuBose Gibson

18                    _____
                      TINA DuBOSE GIBSON, RPR
19                    Official Court Reporter
                      United States District Court
20                    Western District of Tennessee

21

22

23

24

25

                        **UNREDACTED TRANSCRIPT**

**1**

**1** [3] - 38:10, 42:1, 53:6
**10** [7] - 33:5, 48:24, 49:11, 54:9, 54:20, 55:2, 55:3
**10:30** [1] - 46:12
**10th** [1] - 47:9
**12** [8] - 33:6, 33:18, 34:10, 35:3, 36:4, 36:7, 36:12, 36:13
**135** [1] - 48:2
**13th** [1] - 50:11
**14th** [1] - 51:25
**15** [6] - 29:16, 32:14, 33:5, 37:17, 54:20, 54:21
**15th** [2] - 44:3, 44:5
**16** [4] - 27:12, 27:13, 52:22, 53:20
**165** [1] - 49:1
**16th** [1] - 50:12
**17** [2] - 27:1
**178** [1] - 25:9
**179** [1] - 42:7
**17th** [2] - 51:13, 51:17
**19th** [5] - 45:21, 45:22, 46:6, 52:4, 53:21
**1st** [1] - 53:10

**2**

**2,000** [2] - 17:10, 18:12
**20** [5] - 11:11, 31:20, 31:21, 31:23, 37:18
**2014** [1] - 18:20
**2015** [1] - 20:24
**2024** [1] - 42:19
**22** [3] - 26:13, 26:16, 26:18
**22nd** [2] - 47:8, 47:20
**25** [1] - 28:18
**25th** [2] - 44:8, 47:8
**26** [2] - 38:10, 52:6
**26(a)(1** [4] - 26:4, 28:10, 41:20, 42:24
**26th** [3] - 52:18, 53:2, 53:8
**28th** [1] - 54:9

**3**

**3** [4] - 8:16, 9:19, 46:17, 46:19
**30(b)(6** [4] - 17:4, 33:23, 33:24, 34:9
**300** [6] - 17:12, 17:14, 30:25, 34:16, 37:6, 48:2
**31** [3] - 49:13, 49:14, 49:24
**3rd** [1] - 46:15

**4**

**400** [1] - 42:14
**45** [3] - 47:1, 47:5, 47:10

**5**

**50** [2] - 17:4, 33:25
**52-page** [1] - 13:21
**58** [3] - 28:11, 28:12, 28:13
**5th** [2] - 25:9, 47:10

**6**

**60** [1] - 41:14
**64,000** [1] - 39:18
**6th** [3] - 44:16, 45:3, 45:14

**7**

**71** [2] - 17:13, 36:8
**75** [1] - 48:23

**8**

**85** [1] - 34:16
**8th** [1] - 54:13

**9**

**90** [4] - 38:17, 41:14, 48:25, 49:12
**9:30** [4] - 46:9, 46:10, 46:11
**9th** [2] - 44:17, 45:2

**A**

**A-I-C-H-E-L-E** [1] - 12:20
**a.m** [4] - 54:9, 54:20, 55:2, 55:3
**able** [10] - 12:2, 17:1, 17:19, 30:3, 30:22, 35:21, 43:19, 53:25, 55:8, 56:5
**absolutely** [7] - 11:3, 14:1, 17:1, 29:15, 35:15, 50:4, 56:11
**Absolutely** [1] - 29:16
**abundant** [1] - 19:24
**accept** [1] - 16:18
**acceptable** [2] - 16:17, 16:20
**accepted** [1] - 9:13
**accepting** [1] - 9:16
**access** [17] - 8:6, 8:14, 9:1, 9:6, 9:8, 10:15, 10:20, 13:22,

15:16, 18:3, 18:8, 18:10, 19:11, 20:14, 21:13, 22:6, 22:11
**accommodations** [1] - 57:1
**according** [1] - 19:11
**accountable** [1] - 41:12
**add** [5] - 23:13, 26:19, 36:10, 46:22, 47:1
**added** [2] - 26:18, 27:2
**adding** [2] - 47:13, 53:9
**addition** [1] - 12:11
**additional** [4] - 27:2, 30:9, 30:19, 57:3
**address** [2] - 18:7, 24:8
**addressed** [1] - 24:6
**Adjournment** [1] - 58:4
**adjust** [4] - 43:10, 44:12, 48:23, 57:6
**adjustment** [2] - 25:10, 44:14
**administration** [1] - 43:7
**admit** [1] - 19:24
**advance** [1] - 51:17
**advantage** [1] - 30:1
**advisors** [2] - 18:6, 20:16
**AEO** [5] - 8:9, 8:12, 19:2, 19:5, 19:9
**affiliated** [1] - 28:20
**afraid** [2] - 40:6, 44:18
**age** [1] - 55:20
**aggressive** [2] - 54:7, 54:10
**agile** [1] - 39:7
**ago** [3] - 10:14, 14:18, 39:20
**agree** [6] - 35:6, 35:12, 35:24, 41:24, 44:8, 56:12
**agreed** [4] - 8:19, 10:14, 10:25, 21:10
**agreement** [2] - 24:12, 24:13
**ahead** [3] - 8:23, 23:21, 25:5
**Aichele** [8] - 12:19, 13:5, 15:15, 20:19, 22:22, 23:9, 48:17, 48:21
**Aichele's** [1] - 14:22
**Akoustis** [34] - 8:6, 9:12, 10:25, 11:8, 11:10, 12:6, 13:9, 15:16, 16:24, 18:18, 18:21, 19:3, 19:10, 19:18, 19:19, 23:7, 26:16, 27:3, 27:7, 27:12, 28:23, 29:9, 29:19, 30:7, 31:3, 32:7, 36:1, 38:22, 40:15, 41:7, 42:8, 42:21, 57:9
**Akoustis's** [2] - 10:20, 42:16
**allegation** [1] - 40:23

**allegations** [2] - 8:7, 12:23
**alleged** [1] - 34:15
**allocate** [1] - 35:21
**allow** [2] - 48:11, 52:16
**allowed** [1] - 31:23
**allowing** [1] - 30:4
**allows** [1] - 10:24
**alternative** [1] - 41:16
**amended** [7] - 8:7, 10:15, 14:20, 21:8, 25:8, 34:15, 42:9
**amount** [2] - 19:25, 20:11
**answer** [2] - 26:23, 33:8
**anyway** [2] - 50:19, 51:17
**apart** [1] - 34:9
**applying** [1] - 21:24
**appreciate** [7] - 37:1, 48:1, 55:11, 55:12, 55:23, 57:3, 57:18
**approach** [1] - 30:4
**appropriate** [1] - 23:10
**appropriately** [1] - 26:3
**April** [8] - 25:10, 45:21, 45:22, 46:6, 46:15, 46:17, 46:19, 47:10
**argument** [1] - 30:2
**asserted** [2] - 20:21, 55:18
**assertion** [1] - 43:11
**assess** [1] - 41:14
**assessment** [2] - 20:5, 20:24
**assets** [1] - 56:19
**assist** [1] - 20:16
**assume** [3] - 22:16, 30:11, 41:22
**assuming** [1] - 30:6
**assumption** [1] - 26:7
**audit** [1] - 9:3
**auditing** [1] - 9:2
**August** [2] - 32:20, 48:24
**available** [1] - 27:25
**avoid** [2] - 25:2, 40:13
**aware** [2] - 11:12, 12:23

**B**

**backward** [1] - 44:13
**backward-looking** [1] - 44:13
**bad** [2] - 43:8, 50:11
**balance** [2] - 26:16, 56:20
**ball** [1] - 37:23
**barrier** [1] - 34:8
**based** [1] - 32:3
**BAW** [3] - 40:19, 40:20, 40:22
**become** [1] - 20:12
**becoming** [2] - 43:15,

43:21

**belies** [1] - 38:10
**benefit** [1] - 19:12
**best** [4] - 33:11, 41:18, 50:14, 51:11
**better** [1] - 55:19
**between** [1] - 39:20
**beyond** [2] - 22:11, 43:21
**big** [1] - 49:15
**bit** [6] - 11:4, 34:12, 45:3, 45:23, 46:19, 51:23
**blinded** [1] - 8:9
**board** [18] - 8:25, 9:3, 10:5, 10:6, 10:10, 11:5, 11:18, 16:1, 16:6, 16:7, 16:8, 16:10, 21:11, 23:14, 24:15, 48:8
**boat** [1] - 49:19
**body** [2] - 19:23, 20:10
**bottom** [1] - 39:4
**boxing** [1] - 36:18
**break** [2] - 17:13, 51:5
**breakdown** [1] - 28:14
**breathing** [1] - 18:22
**briefing** [1] - 54:12
**briefly** [1] - 17:23
**bring** [1] - 41:1
**broad** [4] - 18:10, 20:14, 42:16, 42:17
**brought** [2] - 11:9, 16:16
**buried** [1] - 43:2
**business** [5] - 11:17, 12:20, 20:1, 21:4, 31:1

**C**

**cake** [1] - 53:7
**calculating** [1] - 39:3
**calendar** [1] - 49:5
**candid** [1] - 22:14
**cannot** [1] - 17:19
**carve** [1] - 31:8
**carved** [1] - 19:1
**CASE** [12] - 45:18, 45:21, 46:9, 46:11, 46:15, 54:8, 54:14, 54:17, 54:19, 55:2, 55:4, 58:2
**case** [34] - 16:24, 18:1, 19:6, 20:14, 23:21, 25:6, 26:9, 26:12, 29:3, 29:20, 30:16, 31:11, 31:16, 32:15, 34:14, 36:3, 37:4, 37:10, 38:5, 38:13, 38:15, 38:16, 39:5, 43:16, 43:19, 43:21, 44:3, 45:4, 48:12, 55:6, 55:9, 56:7, 56:17
**cases** [4] - 18:18, 32:6, 55:16, 55:19
**categories** [6] - 21:9, 32:4,

35:5, 35:6, 43:13, 55:12
**category** [3] - 21:12, 24:8, 35:6
**caution** [1] - 41:20
**central** [1] - 26:9
**Central** [4] - 46:10, 46:11, 55:3, 55:5
**CEO** [4] - 11:16, 12:15, 12:17, 19:25
**certainly** [9] - 16:19, 21:8, 21:14, 22:20, 31:8, 40:25, 41:5, 47:24, 52:18
**change** [3] - 25:6, 31:16, 49:15
**changed** [7] - 37:4, 38:12, 44:4, 44:6, 44:9
**changing** [1] - 18:22
**chief** [3] - 15:2, 15:5, 30:17
**choices** [1] - 43:24
**choosing** [1] - 50:11
**chunks** [1] - 39:15
**circulation** [1] - 23:19
**circumstance** [1] - 26:11
**citations** [1] - 53:9
**city** [1] - 54:13
**claims** [1] - 42:3
**clarify** [2] - 16:5, 18:15
**clear** [2] - 43:8, 47:16
**client** [6] - 8:4, 8:8, 8:10, 17:15, 31:5, 34:8
**close** [15] - 25:8, 25:11, 25:17, 25:22, 27:15, 32:20, 38:17, 43:10, 45:8, 47:2, 47:4, 50:1, 50:16, 53:4, 57:3
**colleague** [1] - 11:9
**colleagues** [1] - 41:7
**collect** [1] - 22:9
**collected** [2] - 21:25, 40:4
**coming** [4] - 8:12, 36:10, 54:12, 58:1
**commitment** [1] - 55:6
**committee** [2] - 9:2, 9:3
**companies** [1] - 31:2
**company** [16] - 11:8, 11:22, 11:23, 12:3, 12:10, 13:7, 15:6, 16:14, 18:23, 21:25, 22:4, 22:10, 22:21, 23:13, 23:17, 32:7
**compel** [1] - 40:8
**competitive** [4] - 13:6, 18:9, 18:14, 20:13
**competitors** [1] - 18:7
**complaint** [8] - 8:7, 10:16, 14:20, 18:19, 21:8, 34:15, 40:23, 42:9
**complete** [2] - 53:2, 53:8
**completed** [1] - 44:10
**completely** [1] - 35:2

**completion** [1] - 46:23, 52:1, 53:1
**compliance** [2] - 23:4, 39:17
**comply** [2] - 42:4, 42:15
**comprehensive** [3] - 42:25, 43:1, 43:2
**compress** [1] - 45:9
**compressed** [2] - 53:16, 53:18
**compressing** [1] - 46:22
**conceivable** [1] - 33:2
**concept** [1] - 38:11
**concern** [3] - 18:7, 18:13, 38:22
**concerned** [3] - 25:13, 25:23, 46:3
**concurrently** [1] - 39:12
**conditions** [4] - 9:22, 9:23, 9:25, 16:19
**confer** [3] - 11:1, 21:24, 34:4
**conference** [3] - 8:20, 35:16, 45:13
**confers** [1] - 8:11
**confidential** [3] - 16:22, 21:3, 23:16
**confirms** [1] - 38:15
**connection** [3] - 26:3, 38:9, 42:24
**conservative** [1] - 41:18
**considering** [1] - 41:7
**consult** [1] - 31:4
**consultation** [1] - 48:11
**contacts** [1] - 22:23
**contentions** [3] - 44:1, 44:5, 44:7
**conversations** [1] - 17:7
**cooperate** [1] - 28:3
**cooperated** [1] - 40:9
**cooperative** [1] - 41:4
**coordinated** [1] - 22:4
**corporate** [7] - 10:21, 10:22, 11:18, 12:22, 20:2, 23:2, 24:16
**correct** [12] - 8:18, 9:20, 9:21, 14:5, 17:9, 22:16, 26:8, 26:15, 26:24, 27:11, 27:23, 41:25
**cost** [4] - 25:7, 25:14, 33:3, 43:22
**cost-effective** [1] - 33:3
**costs** [1] - 44:21
**counsel** [32] - 10:14, 10:21, 10:23, 12:12, 13:8, 13:10, 13:20, 15:2, 15:14, 15:24, 16:2, 16:21, 17:20, 18:3, 18:4, 20:15, 21:13, 22:6,

22:7, 22:14, 22:20, 23:1, 23:24, 24:16, 24:17, 24:21, 42:10, 48:8
**count** [4] - 27:14, 30:23, 34:3, 40:11
**counted** [1] - 14:17
**counting** [1] - 17:14
**country** [1] - 52:6
**couple** [7] - 14:24, 28:7, 28:23, 30:11, 36:24, 44:1, 45:16
**course** [12] - 12:12, 15:14, 15:17, 19:7, 21:2, 21:13, 29:21, 32:8, 34:24, 43:25, 44:2, 44:8
**Court** [13] - 8:5, 32:13, 38:21, 41:1, 41:13, 44:8, 44:10, 44:11, 45:4, 50:1, 57:1, 57:5, 58:3
**court** [1] - 23:12
**COURT** [125] - 8:13, 8:21, 8:23, 9:7, 9:14, 9:16, 9:23, 10:7, 10:11, 11:3, 11:12, 12:13, 12:18, 12:25, 13:11, 13:19, 13:24, 14:3, 14:6, 14:10, 14:14, 15:8, 15:12, 15:19, 16:8, 16:11, 17:24, 19:13, 20:20, 21:1, 21:5, 22:3, 22:12, 22:25, 24:2, 24:9, 24:11, 24:18, 26:7, 26:17, 26:22, 26:25, 27:6, 27:9, 27:13, 27:18, 27:22, 27:24, 28:5, 28:12, 28:19, 28:25, 29:5, 29:10, 29:13, 29:15, 30:15, 31:6, 31:9, 31:22, 32:2, 32:17, 32:21, 32:23, 33:22, 34:1, 34:6, 34:19, 34:24, 35:17, 35:20, 36:5, 36:14, 36:25, 38:24, 41:19, 42:6, 42:13, 42:22, 43:5, 45:1, 45:11, 45:20, 45:22, 46:1, 46:8, 46:10, 46:12, 46:17, 47:4, 47:7, 47:12, 47:16, 47:21, 47:23, 48:5, 49:2, 49:6, 49:8, 49:14, 49:23, 50:3, 50:6, 50:8, 50:22, 50:24, 51:5, 51:9, 51:15, 51:22, 52:9, 52:12, 54:10, 54:15, 54:18, 54:21, 54:24, 55:3, 55:5, 56:11, 56:14, 57:10, 57:15, 57:18, 57:23
**cover** [1] - 32:4
**created** [1] - 44:20
**critical** [1] - 12:9
**cross** [2] - 30:3, 33:11
**cross-examinations** [1] - 33:11
**current** [1] - 20:25

QORVO V. AKOUSTIS

**custodial** [1] - 27:17
**custodians** [1] - 22:1
**cut** [1] - 44:21

## D

**date** [18] - 41:10, 44:24, 45:13, 45:15, 46:14, 47:13, 47:18, 49:2, 49:18, 50:7, 52:21, 53:4, 54:1, 54:2, 54:3, 54:22, 57:13
**dates** [2] - 46:22, 53:14
**Dave** [1] - 12:19
**day-to-day** [5] - 11:20, 12:11, 14:23, 22:23, 48:18
**days** [10] - 38:18, 41:14, 46:16, 47:1, 47:5, 47:11, 48:2, 48:23, 49:1, 49:12
**deadline** [1] - 49:17
**deadlines** [2] - 43:8, 45:9
**deal** [4] - 25:4, 34:23, 38:16, 48:2
**dealing** [1] - 17:12
**dealt** [1] - 21:10
**December** [6] - 42:19, 44:17, 45:2, 51:24, 51:25, 52:8
**decide** [1] - 23:10
**deciding** [1] - 46:2
**decision** [4] - 13:6, 18:9, 22:8, 23:14
**decision-makers** [1] - 13:6
**decision-making** [1] - 18:9
**decisions** [1] - 43:14
**defendant** [4] - 15:10, 27:10, 27:19, 28:16
**defendant's** [1] - 25:17
**defendants'** [1] - 30:8
**defense** [13] - 15:24, 16:25, 17:21, 20:17, 21:21, 23:25, 29:21, 29:25, 30:1, 30:10, 43:23, 44:19, 48:14
**defenses** [1] - 39:8
**defensive** [1] - 40:3
**definitely** [1] - 44:21
**definition** [1] - 8:2
**degree** [2] - 44:21, 55:7
**Delaware** [2] - 45:19, 54:14
**demand** [1] - 9:5
**denied** [1] - 14:2
**deny** [1] - 38:19
**deposition** [8] - 25:25, 32:16, 32:18, 33:2, 33:7, 33:12, 35:25, 53:8
**depositions** [14] - 28:13, 31:14, 31:19, 32:10, 33:18, 33:20, 34:10, 34:20, 35:25, 38:8, 40:4, 50:25, 52:1, 53:1

**described** [2] - 8:2, 30:24
**designating** [1] - 19:9
**desire** [1] - 12:6
**details** [2] - 52:17, 56:1
**development** [3] - 11:17, 12:21, 20:1
**deviated** [1] - 25:24
**different** [9] - 11:24, 17:4, 21:12, 27:14, 31:1, 35:4, 40:14, 41:2, 48:19
**difficult** [4] - 47:18, 50:4, 52:20, 52:23
**difficulty** [1] - 57:2
**director** [2] - 12:17, 19:25
**directors** [2] - 21:11, 48:9
**disadvantage** [2] - 18:14, 33:13
**disadvantaging** [1] - 55:7
**disclose** [2] - 13:9, 23:3
**disclosed** [4] - 13:21, 21:9, 28:10, 52:15
**discloses** [1] - 51:23
**disclosure** [6] - 13:13, 13:22, 18:13, 21:18, 37:6, 42:1
**disclosures** [14] - 26:4, 37:20, 38:2, 38:15, 39:11, 39:23, 41:21, 41:23, 42:2, 42:5, 42:11, 42:24, 50:17, 51:10
**discovery** [29] - 18:24, 19:4, 25:23, 26:1, 31:14, 31:15, 32:20, 34:23, 36:2, 38:17, 38:19, 39:3, 39:13, 40:3, 40:4, 40:6, 40:12, 42:19, 43:10, 45:9, 46:23, 47:2, 47:4, 49:18, 49:25, 50:16, 51:16, 57:4
**discuss** [1] - 19:21
**discussion** [5] - 11:8, 18:1, 21:6, 21:22, 31:10
**disposition** [1] - 56:7
**dispositive** [9] - 49:25, 50:2, 52:13, 52:19, 52:25, 53:16, 54:2, 57:14
**dispute** [1] - 40:25
**disputes** [3] - 39:14, 40:6, 40:12
**distinction** [1] - 31:15
**Document** [1] - 25:9
**document** [16] - 11:1, 13:17, 15:22, 17:16, 18:11, 18:22, 19:1, 19:2, 19:20, 19:22, 37:9, 37:19, 42:1, 42:16, 43:4
**documents** [41] - 12:7, 13:14, 14:8, 14:21, 14:25, 15:4, 15:17, 15:21, 18:17,

18:21, 19:11, 19:19, 20:8, 20:9, 20:12, 20:17, 20:21, 21:18, 22:7, 23:15, 23:24, 24:19, 27:16, 27:17, 33:10, 37:8, 37:18, 37:24, 38:4, 38:5, 39:15, 39:18, 40:1, 40:21, 40:24, 42:3, 42:4, 42:10, 42:15, 43:12
**dollars** [1] - 56:16
**done** [13] - 21:23, 22:1, 30:23, 33:11, 37:9, 37:11, 37:17, 37:20, 45:6, 53:8, 56:2, 56:8, 56:18
**door** [1] - 56:17
**down** [12] - 16:23, 34:10, 35:7, 35:8, 35:12, 36:3, 36:22, 37:14, 46:13, 51:5, 52:10, 52:21
**drain** [1] - 56:19
**draw** [1] - 23:20
**due** [4] - 24:10, 38:20, 44:3, 44:5

## E

**early** [1] - 29:2
**easier** [2] - 12:13, 50:23
**Eastern** [1] - 46:13
**economies** [1] - 33:16
**eDiscovery** [1] - 37:12
**effective** [1] - 33:3
**efficiency** [1] - 44:19
**efficient** [5] - 32:19, 33:3, 33:16, 43:6, 43:13
**effort** [1] - 37:16
**egregious** [1] - 32:6
**eight** [9] - 8:25, 9:5, 9:7, 37:8, 38:14, 39:20, 39:24, 40:1, 41:11
**either** [3] - 23:19, 28:20, 33:2
**employed** [3] - 27:9, 27:19
**employee** [5] - 10:25, 11:2, 15:22, 29:21, 29:22
**employees** [12] - 15:25, 26:19, 28:2, 28:15, 29:8, 29:9, 30:7, 30:8, 32:6, 36:1
**employment** [1] - 28:23
**encyclopedia** [1] - 43:14
**end** [3] - 49:18, 54:6, 57:20
**enforceability** [1] - 44:7
**enormous** [1] - 17:2
**entire** [2] - 37:9, 38:15
**entirely** [1] - 35:24
**entirety** [2] - 13:21, 30:25
**entitled** [2] - 13:18, 15:21
**entity** [1] - 25:16
**equal** [1] - 29:18

**escape** [1] - 52:7
**ESI** [1] - 22:1
**especially** [2] - 20:15, 35:25
**essentially** [1] - 52:14
**established** [1] - 23:15
**estimate** [2] - 29:7, 37:13
**etc** [2] - 44:5, 46:13
**eventually** [1] - 20:3
**ex** [1] - 29:9
**ex-employees** [1] - 29:9
**exact** [1] - 28:17
**exactly** [4] - 16:15, 39:16, 43:16, 56:23
**examination** [1] - 30:5
**examinations** [1] - 33:11
**examine** [1] - 33:8
**example** [5] - 8:24, 20:6, 26:1, 40:18, 42:14
**exceed** [1] - 33:18
**except** [1] - 56:25
**exclude** [1] - 16:9
**excluded** [2] - 10:2, 10:18
**excluding** [4] - 11:14, 11:16, 16:3, 21:11
**excuse** [1] - 48:5
**executive** [5] - 11:16, 11:17, 12:20, 12:21, 13:9
**exhaustive** [2] - 26:4, 26:5
**exhibits** [1] - 17:11
**expand** [1] - 45:8
**expect** [2] - 30:9, 33:6
**expectations** [1] - 26:21
**expecting** [1] - 31:2
**expeditious** [1] - 55:17
**expense** [1] - 41:7
**experienced** [1] - 40:7
**expert** [7] - 22:20, 36:2, 49:25, 50:17, 51:2, 51:10, 51:23
**experts** [8] - 15:17, 17:19, 29:4, 29:10, 50:19, 51:6, 52:2
**expose** [1] - 12:6
**exposing** [2] - 20:19, 23:8
**extensive** [1] - 53:17
**extremely** [2] - 21:4, 42:17

## F

**fab** [1] - 11:18
**fabrication** [2] - 12:22, 20:2
**facilitate** [1] - 24:14
**fact** [20] - 17:18, 25:22, 29:4, 29:5, 32:9, 32:20, 33:5, 33:18, 34:10, 35:25, 38:17, 42:19, 45:9, 47:2, 47:4, 49:18, 50:16, 51:16, 55:19,

57:3
**facts** [1] - 56:1
**factual** [1] - 38:7
**failing** [1] - 41:21
**fair** [1] - 9:4
**Fair** [1] - 57:16
**fairly** [3] - 28:16, 30:14, 31:19
**familiar** [1] - 55:10
**familiarity** [1] - 55:8
**far** [2] - 12:3, 13:22
**fast** [1] - 49:19
**February** [7] - 52:21, 52:22, 53:5, 53:6, 53:10, 53:20
**federal** [1] - 23:12
**felt** [1] - 11:14
**few** [6] - 20:24, 28:1, 28:22, 32:13, 35:4, 36:1
**figure** [3] - 34:17, 34:20, 53:12
**file** [1] - 24:7
**filed** [4] - 8:11, 10:15, 25:9, 42:9
**files** [2] - 19:4, 19:12
**filing** [4] - 49:25, 52:12, 52:25, 53:6
**filter** [3] - 40:19, 40:20, 40:22
**final** [3] - 44:1, 44:4, 44:7
**finally** [2] - 10:24, 16:24
**financial** [2] - 15:2, 35:5
**fine** [10] - 10:10, 29:13, 36:13, 41:23, 46:18, 47:22, 49:6, 49:23, 51:20, 51:22
**finish** [1] - 39:3
**finished** [1] - 39:16
**firms** [1] - 18:5
**first** [11] - 8:11, 25:22, 29:6, 41:25, 52:8, 53:6, 53:23, 54:5, 54:6
**five** [11] - 26:16, 29:8, 29:12, 29:13, 30:8, 30:10, 30:11, 30:20, 30:23, 32:6, 32:10
**flexibility** [1] - 45:4
**focus** [5] - 17:25, 35:1, 35:3, 36:3, 55:15
**focused** [1] - 43:15
**folks** [4] - 13:1, 18:25, 28:4, 31:3
**follow** [1] - 12:14
**following** [2] - 54:17, 54:18
**force** [1] - 23:12
**form** [1] - 17:21
**former** [2] - 27:15, 28:2
**forth** [2] - 18:16, 30:3
**forward** [6] - 24:4, 24:14, 24:25, 25:1, 36:19, 39:1

**founder** [2] - 11:16, 12:16
**foundry** [1] - 48:19
**four** [10] - 11:13, 29:8, 30:20, 30:23, 32:6, 32:10, 37:14, 38:3, 39:11, 39:20
**frame** [3] - 36:21, 40:2, 44:20
**frankly** [4] - 12:10, 23:8, 37:20, 38:10
**Friday** [4] - 45:21, 46:6, 50:11, 54:19
**front** [1] - 28:18
**full** [2] - 21:13, 23:11
**functions** [1] - 31:1
**fundamentally** [1] - 18:13
**future** [2] - 19:10

## G

**gate** [1] - 25:24
**general** [19] - 10:13, 10:14, 12:12, 13:10, 15:2, 15:13, 16:1, 18:3, 20:15, 21:13, 22:6, 22:7, 22:14, 22:19, 23:19, 24:17, 24:20, 24:21, 48:7
**generally** [2] - 29:23, 45:5
**generate** [1] - 45:10
**given** [4] - 10:20, 19:7, 33:12, 38:14
**great** [6] - 9:17, 18:13, 25:15, 32:12, 56:14
**groups** [5] - 17:13, 36:4, 36:7, 36:8, 36:11
**guess** [1] - 35:2
**guessing** [1] - 30:22

## H

**half** [3] - 37:7, 37:13, 39:19
**Halloween** [1] - 49:13
**hand** [1] - 14:24
**handful** [3] - 14:12, 20:8, 20:12
**handle** [2] - 33:14, 50:2
**hands** [1] - 40:12
**happy** [1] - 57:7
**hard** [6] - 14:13, 34:11, 34:12, 50:15, 55:23
**harm** [4] - 19:9, 19:10, 19:15
**head** [1] - 48:20
**hear** [4] - 25:20, 43:16, 48:25, 57:2
**hearing** [5] - 37:2, 53:25, 54:2, 54:3, 54:22
**help** [5] - 22:20, 36:3,

44:10, 50:13
**helpful** [2] - 21:5, 57:4
**helping** [3] - 56:4, 56:6, 56:7
**helps** [1] - 31:12
**high** [1] - 31:8
**highly** [2] - 21:3, 41:3
**hint** [1] - 31:20
**historical** [1] - 18:23
**history** [1] - 12:9
**hit** [1] - 36:21
**Honor** [44] - 8:18, 9:11, 11:7, 13:16, 14:5, 14:9, 16:6, 16:15, 17:22, 21:23, 22:5, 22:18, 26:6, 26:15, 26:23, 28:11, 29:12, 30:22, 31:21, 32:1, 35:15, 35:24, 36:23, 41:25, 42:18, 44:25, 45:7, 45:25, 46:7, 47:9, 47:15, 47:22, 48:1, 48:22, 49:5, 49:11, 51:8, 51:21, 52:5, 54:23, 56:10, 56:25, 57:17, 58:2
**honorable** [1] - 58:2
**hope** [5] - 30:22, 40:11, 41:1, 41:4, 45:12
**hopefully** [6] - 32:25, 39:6, 51:12, 52:17, 53:7, 55:1
**host** [2] - 31:1, 38:7
**house** [2] - 24:16, 24:17
**hundred** [1] - 11:10

## I

**icing** [1] - 53:7
**idea** [2] - 30:15, 38:17
**identification** [4] - 8:3, 8:8, 17:10, 37:22
**identified** [7] - 14:21, 14:25, 18:11, 23:5, 26:3, 32:5, 36:9
**identify** [3] - 17:5, 34:25, 37:23
**impacts** [1] - 57:8
**important** [6] - 15:23, 21:4, 22:13, 32:7, 38:5, 49:18
**in-house** [2] - 24:16, 24:17
**inappropriate** [1] - 10:4
**inception** [1] - 18:20
**include** [4] - 21:11, 26:10, 30:11, 41:21
**included** [1] - 42:4
**includes** [1] - 42:8
**including** [4] - 10:13, 13:5, 13:10, 29:14
**inclusive** [1] - 41:23
**incorrect** [1] - 41:19
**individual** [4] - 19:20,

19:21, 19:22
**individuals** [14] - 12:15, 13:12, 14:4, 16:3, 16:14, 18:10, 21:9, 24:18, 26:8, 26:10, 27:2, 27:3, 27:18, 28:10
**industry** [2] - 40:20, 40:22
**information** [26] - 8:3, 8:15, 9:1, 10:4, 10:20, 12:2, 13:5, 13:8, 13:15, 18:9, 19:5, 19:24, 20:11, 20:13, 20:18, 21:3, 21:25, 23:3, 32:8, 35:5, 38:9, 39:8, 40:10, 40:18, 41:22, 43:3
**infringement** [1] - 44:1
**initial** [10] - 37:20, 38:2, 38:15, 39:11, 39:23, 41:21, 42:2, 42:11, 50:17, 51:10
**input** [1] - 14:23
**intend** [1] - 34:22
**interface** [1] - 22:22
**interpret** [1] - 28:7
**interview** [1] - 28:3
**involved** [5] - 10:19, 13:4, 13:7, 13:13, 22:10
**irrelevant** [1] - 43:3
**issue** [8] - 11:4, 13:1, 33:21, 38:20, 39:12, 43:22, 44:11, 47:16
**issues** [17] - 8:10, 8:12, 11:6, 11:19, 18:7, 22:19, 23:4, 23:6, 24:20, 31:4, 38:7, 43:15, 51:1, 53:24, 55:9, 55:10, 56:4

## J

**January** [4] - 39:17, 52:3, 52:6, 52:8
**Jeff** [1] - 12:16
**job** [1] - 22:9
**Judge** [1] - 49:21
**July** [2] - 44:8, 47:9
**June** [2] - 44:3, 44:5
**jury** [1] - 35:18
**justice** [1] - 43:7
**justify** [1] - 42:18

## K

**keep** [3] - 34:10, 45:5, 50:7
**keeps** [1] - 36:10
**key** [6] - 11:13, 12:24, 21:18, 24:21, 48:11, 48:13
**kind** [4] - 31:10, 31:23, 45:11, 55:19
**knowledge** [1] - 12:9
**knowledgeable** [2] - 17:5,

22:15

## L

**laid** [1] - 9:12
**large** [3] - 19:25, 20:11, 39:15
**larger** [1] - 39:22
**last** [17] - 8:15, 8:19, 9:12, 9:19, 24:8, 34:13, 35:16, 37:2, 37:6, 38:11, 38:21, 39:18, 41:3, 41:15, 47:10, 52:7, 55:1
**law** [3] - 18:1, 18:5, 20:14
**lawyers** [5] - 23:2, 29:2, 33:6, 33:9, 37:18
**lean** [1] - 11:22
**learning** [1] - 43:14
**least** [5] - 18:5, 24:4, 47:1, 48:11, 50:10
**leave** [3] - 46:3, 46:19, 53:1
**left** [3] - 28:22, 36:1, 45:3
**letter** [3] - 8:16, 9:12, 25:21
**level** [3] - 11:21, 13:10, 23:9
**liberal** [1] - 30:4
**life** [1] - 37:10
**light** [1] - 41:20
**likelihood** [1] - 31:12
**limit** [1] - 36:21
**limitations** [5] - 16:19, 25:25, 31:14, 35:11, 43:20
**limiting** [1] - 55:25
**limits** [1] - 12:4
**line** [3] - 23:20, 39:4, 57:24
**list** [3] - 15:21, 26:4, 26:8
**listen** [1] - 33:9
**listing** [1] - 55:12
**literally** [2] - 11:9, 38:21
**litigation** [4] - 12:5, 16:22, 17:21, 25:15
**live** [1] - 52:18
**living** [1] - 18:22
**look** [10] - 12:15, 15:10, 15:11, 20:10, 21:14, 24:24, 43:12, 43:13, 44:12, 56:15
**looked** [1] - 14:17
**looking** [17] - 9:13, 18:25, 19:9, 23:12, 23:23, 30:19, 32:15, 37:10, 39:4, 39:10, 41:6, 44:13, 47:17, 49:8, 50:8
**looks** [2] - 8:3, 11:18

## M

**major** [1] - 33:13

**makers** [1] - 13:6
**management** [21] - 10:11, 10:12, 10:13, 10:17, 10:18, 11:10, 12:10, 16:2, 16:13, 18:1, 18:2, 21:15, 24:8, 25:7, 30:12, 36:15, 39:7, 48:3, 48:7, 48:18, 54:1
**MANAGER** [12] - 45:18, 45:21, 46:9, 46:11, 46:15, 54:8, 54:14, 54:17, 54:19, 55:2, 55:4, 58:2
**managers** [7] - 11:13, 11:21, 11:25, 12:24, 15:1, 16:20, 23:5
**March** [4] - 54:6, 54:8, 54:20, 54:21
**Mary** [1] - 12:21
**massive** [1] - 17:15
**Masters** [39] - 8:2, 8:17, 9:25, 10:2, 11:9, 13:2, 13:12, 14:11, 14:19, 15:1, 15:9, 16:4, 17:9, 19:13, 20:22, 23:2, 24:3, 26:5, 26:14, 28:9, 28:25, 30:13, 30:24, 31:18, 33:4, 34:13, 35:8, 41:22, 44:23, 46:5, 46:24, 48:10, 49:15, 50:20, 55:12, 55:24, 56:8, 57:11
**MASTERS** [76] - 8:18, 8:22, 8:24, 10:5, 10:8, 10:12, 13:3, 13:16, 13:20, 14:1, 14:5, 14:12, 15:5, 15:11, 15:13, 16:5, 16:9, 17:22, 17:25, 19:17, 20:23, 21:2, 24:7, 24:10, 24:15, 26:6, 26:15, 26:18, 26:23, 27:5, 27:8, 27:11, 28:11, 28:17, 28:22, 29:4, 29:7, 29:12, 29:14, 30:14, 31:21, 31:25, 32:3, 32:18, 32:22, 35:15, 35:18, 35:24, 36:6, 41:24, 42:7, 42:14, 43:1, 44:25, 46:6, 47:2, 47:5, 47:9, 47:14, 47:19, 47:22, 49:21, 49:24, 50:5, 50:7, 50:21, 50:23, 50:25, 51:8, 51:14, 54:22, 56:10, 56:12, 57:13, 57:16, 57:22
**material** [3] - 19:14, 19:16, 35:6
**materials** [7] - 18:17, 19:3, 21:20, 24:24, 25:19, 25:21, 52:15
**matter** [1] - 51:7
**matters** [1] - 58:1
**max** [2] - 30:6, 33:17
**mean** [17] - 17:3, 18:22, 20:24, 21:3, 23:8, 31:20, 31:25, 32:14, 32:19, 36:12,

42:20, 50:22, 52:2, 52:19, 53:19, 54:24, 57:20
**means** [2] - 43:7, 54:25
**meet** [3] - 8:11, 21:24, 34:4
**member** [1] - 16:7
**members** [18] - 9:1, 9:22, 10:6, 10:10, 10:13, 10:16, 10:18, 11:6, 13:9, 15:25, 16:1, 16:2, 16:6, 21:11, 21:14, 24:15
**mention** [1] - 36:24
**mentioned** [4] - 8:5, 17:13, 23:2, 39:14
**mess** [1] - 51:24
**midst** [1] - 40:5
**might** [10] - 10:1, 18:12, 26:10, 29:25, 30:11, 30:22, 31:3, 35:3, 35:4, 57:20
**mile** [1] - 16:23
**million** [3] - 37:7, 37:13, 39:19
**mindful** [1] - 43:20
**missed** [1] - 28:6
**misunderstood** [2] - 47:14, 47:19
**misuse** [2] - 10:19, 13:4
**mix** [1] - 30:6
**moderate** [1] - 31:16
**moment** [1] - 36:23
**month** [2] - 39:1, 40:2
**months** [9] - 37:14, 37:17, 38:3, 39:3, 39:10, 39:11, 39:20, 39:25, 41:11
**most** [10] - 15:9, 17:5, 18:18, 22:14, 32:5, 35:11, 36:9, 41:18, 44:8
**motion** [6] - 8:5, 8:11, 12:1, 16:16, 18:16, 40:8
**motions** [9] - 49:25, 50:2, 52:13, 52:19, 52:25, 53:16, 54:2, 57:14
**move** [9] - 21:19, 24:25, 44:15, 44:22, 49:11, 49:20, 50:18, 55:20, 56:19
**moved** [1] - 16:23
**moving** [1] - 25:1
**MR** [76] - 8:18, 8:22, 8:24, 10:5, 10:8, 10:12, 13:3, 13:16, 13:20, 14:1, 14:5, 14:12, 15:5, 15:11, 15:13, 16:5, 16:9, 17:22, 17:25, 19:17, 20:23, 21:2, 24:7, 24:10, 24:15, 26:6, 26:15, 26:18, 26:23, 27:5, 27:8, 27:11, 28:11, 28:17, 28:22, 29:4, 29:7, 29:12, 29:14, 30:14, 31:21, 31:25, 32:3, 32:18, 32:22, 35:15, 35:18, 35:24, 36:6, 41:24, 42:7,

42:14, 43:1, 44:25, 46:6, 47:2, 47:5, 47:9, 47:14, 47:19, 47:22, 49:21, 49:24, 50:5, 50:7, 50:21, 50:23, 50:25, 51:8, 51:14, 54:22, 56:10, 56:12, 57:13, 57:16, 57:22
**MS** [41] - 9:11, 9:15, 9:21, 11:7, 11:13, 12:16, 12:19, 14:9, 14:17, 15:6, 16:15, 18:15, 21:23, 22:5, 22:18, 23:1, 27:14, 27:21, 27:23, 28:1, 30:21, 31:7, 33:20, 33:23, 34:2, 34:7, 34:20, 36:23, 37:1, 38:25, 45:7, 45:25, 48:1, 48:16, 49:4, 49:7, 49:10, 51:20, 52:5, 52:11, 56:25
**mud** [1] - 41:1

## N

**name** [2] - 22:3
**names** [2] - 12:14, 26:19
**narrow** [1] - 12:4
**narrowing** [1] - 56:3
**nature** [1] - 37:4
**NDA** [1] - 38:6
**necessary** [4] - 33:1, 36:15, 43:21, 57:19
**need** [42] - 9:5, 9:7, 9:8, 9:14, 12:7, 15:23, 17:19, 18:3, 20:4, 21:6, 24:5, 24:25, 25:7, 25:11, 28:2, 37:24, 37:25, 38:8, 38:16, 39:9, 40:3, 40:10, 43:12, 43:13, 43:23, 45:3, 45:16, 45:23, 46:16, 46:18, 46:22, 48:10, 49:16, 50:10, 55:17, 55:20, 56:17
**needed** [1] - 55:13
**needs** [2] - 25:10, 57:6
**never** [3] - 9:5, 14:2, 20:18
**new** [4] - 15:6, 38:13, 38:16, 53:14
**next** [1] - 38:2
**night** [1] - 9:12
**nine** [7] - 27:15, 27:16, 27:17, 28:4, 39:2, 40:2, 41:11
**nine-month** [1] - 40:2
**nobody** [2] - 33:11, 44:2
**nondefense** [1] - 30:7
**noninfringement** [1] - 44:4
**nonpatent** [2] - 42:3, 51:6
**norm** [1] - 40:23
**normal** [1] - 31:14
**note** [1] - 36:17

**notes** [1] - 38:21
**nothing** [1] - 34:4
**notice** [3] - 33:23, 33:24, 38:18
**November** [4] - 49:11, 51:11, 51:13, 51:17
**number** [15] - 8:14, 14:13, 28:9, 28:14, 29:8, 29:18, 31:14, 31:19, 32:1, 33:17, 34:3, 35:7, 35:8, 40:12, 42:12
**numbers** [2] - 28:17, 31:7

## O

**objection** [3] - 8:14, 9:18, 10:2
**obvious** [1] - 9:8
**obviously** [12] - 8:10, 16:17, 26:3, 28:12, 32:9, 36:8, 37:15, 39:12, 45:14, 46:12, 55:8, 57:6
**October** [6] - 49:13, 49:14, 49:24, 50:11, 50:12, 51:2
**officer** [2] - 15:2, 15:5
**often** [1] - 22:14
**old** [1] - 20:20
**oldest** [2] - 20:20, 20:21
**once** [2] - 17:11, 40:4
**one** [17] - 8:22, 8:24, 8:25, 16:9, 21:16, 22:10, 23:4, 27:16, 27:17, 33:21, 35:5, 41:9, 46:25, 48:11, 48:16, 49:21, 57:15
**ones** [1] - 24:18
**ongoing** [1] - 21:2
**open** [1] - 25:24
**operations** [4] - 11:18, 12:22, 20:2, 48:20
**opportunity** [4] - 20:3, 31:4, 34:4, 38:4
**opposed** [1] - 25:1
**opposition** [2] - 18:2, 24:7
**option** [1] - 23:25
**order** [16] - 10:9, 10:24, 11:2, 12:3, 13:17, 14:2, 16:21, 17:20, 19:8, 19:20, 23:11, 23:24, 25:8, 46:13, 47:10, 50:1
**ordered** [1] - 47:10
**orderly** [1] - 55:17
**originally** [2] - 16:17, 20:12
**otherwise** [1] - 57:16
**ourselves** [1] - 15:18
**outside** [10] - 10:20, 10:22, 15:16, 16:1, 18:4, 18:6, 23:1, 24:16, 31:13, 57:8
**overly** [1] - 41:23

**own** [6] - 19:4, 19:12, 26:19, 38:22, 39:12, 40:22

## P

**page** [2] - 8:16, 9:19
**pages** [6] - 17:11, 18:12, 37:7, 37:13, 39:19, 42:21
**painful** [1] - 56:18
**painfully** [2] - 38:25, 56:18
**paragraph** [2] - 8:15, 9:19
**parse** [1] - 15:3
**part** [6] - 30:24, 34:7, 42:17, 52:17, 54:5, 56:24
**partial** [3] - 24:4, 24:5, 24:13
**participate** [1] - 24:19
**participated** [1] - 13:25
**particular** [1] - 8:10
**parties** [1] - 35:22
**partly** [1] - 21:22
**parts** [1] - 44:3
**passed** [1] - 23:14
**passes** [1] - 41:13
**past** [1] - 28:16
**patent** [5] - 29:14, 50:19, 51:1, 51:2, 51:6
**pending** [2] - 8:6, 12:2
**people** [24] - 8:14, 10:1, 10:3, 11:15, 11:19, 12:8, 12:9, 12:11, 14:23, 15:3, 22:21, 26:2, 26:13, 28:2, 29:1, 36:18, 38:6, 40:19, 40:22, 43:12, 48:8, 48:11, 55:23, 57:24
**perfect** [1] - 52:7
**perhaps** [4] - 41:22, 42:23, 43:9, 44:12
**peril** [1] - 23:8
**permit** [1] - 20:14
**permitted** [1] - 13:8
**person** [7] - 15:9, 17:5, 21:17, 21:18, 21:20, 22:15, 24:21
**pieces** [1] - 33:14
**Pillsbury** [1] - 22:8
**pivotal** [1] - 18:16
**place** [4] - 33:14, 51:3, 51:10, 54:15
**plaintiff** [3] - 29:21, 30:2, 55:18
**plaintiff's** [1] - 30:16
**play** [1] - 41:5
**playing** [1] - 48:13
**plus** [1] - 15:16
**point** [13] - 8:4, 13:15, 14:19, 22:21, 34:16, 36:15, 37:3, 41:17, 42:20, 48:6,

49:22, 56:12, 56:13
**points** [1] - 36:24
**poison** [1] - 46:25
**position** [2] - 11:15, 25:17
**possible** [3] - 32:15, 32:19, 52:5
**possibly** [2] - 20:25, 30:9
**practical** [5] - 25:8, 35:10, 36:15, 52:20, 52:22
**practicalities** [1] - 17:2
**practically** [1] - 37:11
**practice** [2] - 12:7, 25:25
**precise** [1] - 49:2
**predominantly** [1] - 48:20
**prefer** [1] - 51:8
**preparation** [1] - 52:16
**prepare** [1] - 16:25
**preparing** [1] - 20:16
**prepped** [1] - 33:12
**prescription** [1] - 44:18
**present** [4] - 29:23, 29:24, 37:23, 38:20
**presentation** [1] - 36:12
**presented** [1] - 30:16
**presenting** [2] - 29:1, 29:3
**president** [5] - 11:17, 12:20, 12:22, 20:1, 20:2
**pretrial** [3] - 45:13, 46:13, 50:1
**pretty** [11] - 16:13, 26:4, 26:10, 29:2, 30:13, 31:17, 42:25, 45:5, 53:8, 55:25, 58:1
**prevent** [1] - 43:21
**previously** [2] - 11:1, 15:22
**primarily** [1] - 48:17
**primary** [1] - 22:21
**priorities** [1] - 36:16
**prioritization** [1] - 35:22
**privy** [1] - 20:12
**problem** [9] - 9:9, 11:6, 15:8, 25:16, 34:1, 34:25, 41:21, 44:22, 44:23
**proceed** [2] - 24:5, 55:17
**process** [14] - 12:8, 21:24, 22:2, 22:4, 22:11, 23:10, 24:19, 29:20, 38:20, 40:9, 41:2, 41:3, 43:6, 56:5
**produce** [3] - 22:10, 40:16, 40:17
**produced** [12] - 18:23, 19:1, 19:2, 19:3, 19:15, 21:21, 40:16, 40:18, 42:3, 42:4, 42:20, 42:21
**producing** [1] - 39:15
**product** [1] - 15:5
**production** [7] - 36:9, 37:9, 39:8, 39:17, 42:1, 42:8,

42:10
**productions** [3] - 39:21, 39:22, 39:23
**profited** [1] - 18:19
**profound** [1] - 38:20
**progress** [2] - 9:18, 24:22
**prompt** [1] - 56:7
**proposal** [4] - 9:11, 9:13, 9:16, 16:16
**propose** [1] - 46:24
**proposed** [2] - 47:13, 47:18
**proposing** [1] - 49:3
**protective** [12] - 10:9, 10:24, 11:2, 12:3, 13:17, 14:1, 16:21, 17:20, 19:8, 19:19, 23:11, 23:24
**protracted** [2] - 25:15, 38:23
**provide** [2] - 26:11, 40:24
**provided** [2] - 8:2, 25:19
**public** [1] - 38:5
**pull** [3] - 23:21, 48:25, 49:12
**pulling** [1] - 49:5
**purge** [1] - 23:14
**purpose** [3] - 16:22, 42:18, 43:6
**purposes** [2] - 12:5, 17:20
**pursue** [1] - 34:22
**push** [5] - 46:19, 50:9, 52:2, 52:6, 55:6
**pushing** [1] - 42:18
**put** [8] - 14:13, 21:17, 21:20, 32:20, 47:7, 52:25, 53:18, 57:25
**puts** [1] - 18:14

## Q

**Qorvo** [37] - 8:12, 11:1, 11:23, 17:3, 18:10, 18:13, 19:1, 19:2, 19:4, 19:12, 21:24, 26:16, 26:18, 27:12, 27:13, 27:15, 28:4, 28:10, 28:23, 29:8, 32:6, 34:5, 34:21, 37:2, 37:21, 37:24, 38:3, 38:11, 39:5, 39:9, 39:21, 39:25, 40:7, 40:16, 40:21, 57:9
**Qorvo's** [11] - 10:19, 13:4, 13:22, 18:8, 19:23, 20:4, 20:10, 20:17, 21:4, 30:25, 33:24
**Qorvo-produced** [1] - 19:2
**questions** [4] - 15:24, 17:21, 44:2, 55:1
**quickly** [1] - 39:7
**quite** [5] - 28:1, 34:17,

35:12, 35:13, 41:8

## R

**raise** [2] - 33:21, 49:21
**range** [2] - 30:24, 36:12, 42:16
**rapid** [1] - 55:14
**rapidly** [2] - 50:18, 55:25
**rather** [3] - 41:13, 50:18, 53:16
**reading** [1] - 37:3
**ready** [2] - 50:19, 51:3
**real** [1] - 49:17
**realistic** [1] - 44:20
**reality** [2] - 39:4, 40:14
**realize** [1] - 57:8
**realized** [1] - 14:22
**really** [17] - 25:20, 28:20, 31:15, 33:6, 35:22, 36:2, 36:10, 37:10, 37:22, 37:25, 38:1, 38:9, 41:7, 41:16, 52:23, 55:13, 56:17
**realm** [1] - 17:12
**reason** [2] - 31:9, 43:21
**reasonably** [1] - 26:20
**reasons** [2] - 25:6, 55:16
**rebuttal** [2] - 37:24, 51:22
**receive** [3] - 10:4, 24:19, 38:3
**received** [3] - 15:22, 27:16, 37:7
**recent** [2] - 28:16, 36:9
**recently** [2] - 28:16, 48:19
**recess** [2] - 57:25, 58:3
**recognize** [1] - 43:23
**recollection** [1] - 14:18
**record** [1] - 10:22
**records** [1] - 18:23
**recruit** [2] - 40:19, 40:21
**recruiting** [1] - 40:20
**reducing** [1] - 25:7
**referenced** [1] - 17:11
**referring** [1] - 42:10
**refused** [1] - 40:24
**regard** [1] - 44:10
**regardless** [1] - 12:24
**relate** [1] - 13:14
**related** [1] - 12:23
**relevancy** [1] - 40:15
**relevant** [1] - 51:1
**relief** [1] - 47:24
**relooking** [1] - 41:6
**rely** [1] - 37:21
**remaining** [1] - 55:10
**remains** [1] - 21:3
**remove** [1] - 23:18
**replies** [1] - 57:19

**reply** [3] - 53:19, 54:4, 57:13
**reports** [1] - 52:15
**request** [2] - 23:7, 25:5, 48:24
**requests** [5] - 42:7, 42:9, 42:16, 42:17, 43:4
**require** [2] - 17:15, 39:8
**required** [1] - 56:6
**resolution** [1] - 23:14
**respect** [1] - 13:3
**respond** [1] - 17:22
**responding** [2] - 42:11, 43:4
**response** [5] - 42:7, 53:16, 53:17, 53:19
**responsibilities** [1] - 56:3
**responsive** [1] - 22:8
**rest** [2] - 24:6, 48:9
**result** [1] - 43:19
**results** [1] - 44:19
**review** [8] - 15:17, 16:20, 22:9, 37:13, 38:4, 39:11, 39:25, 40:2
**reviewing** [1] - 37:18
**RFPs** [1] - 42:12
**rights** [1] - 38:19
**road** [1] - 16:23
**role** [2] - 48:14, 48:19
**rolling** [1] - 39:21
**rough** [1] - 30:23
**roughly** [1] - 29:7
**routine** [1] - 30:13
**rowing** [1] - 49:19
**Rule** [1] - 38:10
**run** [1] - 11:19
**running** [1] - 16:14
**runs** [1] - 48:18

## S

**sample** [2] - 45:15, 57:25
**sand** [1] - 23:21
**scale** [1] - 11:23
**schedule** [17] - 25:6, 37:25, 38:23, 39:2, 44:12, 45:5, 50:9, 50:15, 52:23, 52:24, 53:10, 55:14, 56:2, 56:21, 56:23, 57:2, 57:6
**scheduling** [1] - 25:8
**scope** [3] - 37:4, 38:11, 41:20
**sea** [1] - 40:25
**search** [2] - 21:24, 42:14
**SEC** [2] - 23:2, 23:4
**second** [8] - 8:6, 10:15, 11:21, 14:20, 21:8, 21:19, 34:15, 42:9

**secret** [14] - 8:8, 9:1, 10:19, 12:8, 13:5, 13:8, 17:10, 18:8, 18:12, 19:24, 20:11, 20:17, 35:1, 37:22
**secrets** [22] - 8:1, 8:4, 13:13, 13:23, 17:6, 17:7, 17:13, 20:4, 20:22, 23:16, 30:25, 32:4, 32:5, 34:8, 34:14, 34:16, 34:21, 36:4, 36:8, 37:7, 41:15, 48:2
**see** [20] - 9:5, 12:4, 13:18, 13:20, 13:24, 14:15, 15:14, 15:15, 17:16, 18:25, 20:3, 22:5, 24:12, 24:25, 33:6, 40:22, 46:19, 47:23, 49:4, 52:9
**seeing** [2] - 11:24, 40:10
**seem** [1] - 56:18
**senior** [2] - 15:9, 30:11
**sense** [2] - 53:7, 56:5
**sent** [2] - 17:4, 19:25
**separate** [1] - 34:9
**September** [1] - 39:16, 47:8, 47:20
**served** [1] - 42:8
**set** [10] - 8:15, 9:19, 18:16, 20:20, 29:24, 41:10, 43:8, 44:8, 45:18, 55:1
**Seven** [1] - 27:13
**seven** [7] - 8:25, 27:12, 30:24, 31:3, 35:3, 36:4, 36:13
**several** [2] - 39:10, 58:1
**share** [2] - 12:2, 15:21
**shared** [1] - 38:6
**shealy** [1] - 14:7
**Shealy** [17] - 12:16, 13:5, 13:24, 14:7, 14:19, 14:20, 14:22, 15:15, 16:6, 20:6, 20:18, 21:12, 21:17, 22:22, 23:9, 48:17, 48:20
**shooting** [1] - 34:18
**shortly** [1] - 8:19
**show** [1] - 19:21
**side** [5] - 22:9, 28:20, 33:2, 44:19, 56:6
**sides** [3] - 35:20, 43:24, 44:8
**sign** [2] - 10:9, 50:12
**significant** [4] - 25:16, 39:5, 42:12, 58:1
**significantly** [1] - 35:12
**simplify** [1] - 23:21
**simply** [7] - 10:4, 11:25, 23:4, 23:18, 39:11, 43:21, 44:18
**single** [1] - 40:8
**sit** [1] - 13:9

**situation** [1] - 46:5
**six** [1] - 39:24
**size** [4] - 11:12, 31:11, 37:9, 37:16
**slightly** [4] - 8:1, 27:14, 37:5, 38:12
**small** [7] - 11:8, 16:13, 25:14, 31:17, 31:19, 44:14
**smaller** [2] - 39:22, 56:16
**solely** [2] - 12:5, 16:22
**sometimes** [3] - 33:7, 36:11, 57:19
**somewhat** [3] - 43:10, 45:14, 52:2
**somewhere** [1] - 39:20
**soon** [2] - 32:15
**sooner** [1] - 51:4
**sorry** [8] - 8:23, 14:11, 20:22, 27:8, 47:16, 48:22, 49:5, 49:12
**sort** [4] - 30:10, 32:25, 35:22, 44:2
**sound** [1] - 24:20
**sounds** [3] - 31:10, 48:13, 48:14
**space** [2] - 40:19, 40:22
**speaks** [1] - 15:1
**spread** [1] - 20:3
**staff** [2] - 50:8, 57:1
**stand** [2] - 29:19, 29:22
**standard** [5] - 12:7, 19:8, 25:25, 40:15, 40:20
**stands** [1] - 58:3
**start** [5] - 16:25, 25:20, 51:15, 52:3, 55:24
**started** [1] - 39:14
**startup** [4] - 11:22, 25:14, 56:20
**startups** [1] - 56:16
**statement** [1] - 33:4
**status** [2] - 8:20, 41:14
**stay** [3] - 25:7, 25:11, 25:17
**stayed** [1] - 35:18
**still** [8] - 36:5, 36:6, 36:20, 36:21, 41:8, 46:2, 48:3, 54:12
**stood** [1] - 39:1
**stopped** [1] - 17:14
**stretch** [1] - 25:15
**strict** [1] - 45:5
**struggling** [1] - 38:1
**subgroups** [1] - 17:14
**submitted** [1] - 25:22
**subpoena** [2] - 28:3, 36:2
**subpoenaed** [1] - 28:24
**subset** [2] - 11:25, 34:14
**substance** [1] - 39:21
**substantial** [2] - 39:17,

52:17
  **sufficient** [1] - 50:2
  **suggesting** [1] - 31:22
  **suggestion** [1] - 43:8
  **suppose** [1] - 29:6
  **suspect** [1] - 41:19
  **Sweeney** [27] - 8:13, 9:10, 11:5, 14:10, 14:15, 16:12, 18:11, 21:16, 22:17, 27:20, 29:17, 30:18, 32:25, 33:15, 36:20, 43:16, 43:17, 45:1, 45:24, 47:17, 47:23, 48:15, 51:18, 55:22, 56:4, 56:15, 56:23
  **SWEENEY** [41] - 9:11, 9:15, 9:21, 11:7, 11:13, 12:16, 12:19, 14:9, 14:17, 15:6, 16:15, 18:15, 21:23, 22:5, 22:18, 23:1, 27:14, 27:21, 27:23, 28:1, 30:21, 31:7, 33:20, 33:23, 34:2, 34:7, 34:20, 36:23, 37:1, 38:25, 45:7, 45:25, 48:1, 48:16, 49:4, 49:7, 49:10, 51:20, 52:5, 52:11, 56:25

**T**

  **task** [1] - 23:18
  **team** [13] - 10:11, 10:12, 10:13, 10:17, 16:2, 16:13, 18:1, 21:15, 30:12, 37:12, 39:7, 56:5, 56:14
  **technical** [7] - 11:19, 12:9, 18:6, 20:16, 22:19, 22:22, 23:5
  **technology** [2] - 14:24, 22:20
  **ten** [5] - 30:6, 30:24, 31:3, 32:11, 46:16
  **terms** [25] - 8:9, 17:9, 19:8, 21:19, 21:24, 22:18, 23:10, 25:6, 25:25, 30:4, 32:23, 33:15, 34:2, 35:8, 35:10, 36:11, 41:23, 42:15, 43:22, 46:22, 48:12, 48:18, 48:22, 50:25, 56:3
  **terrible** [2] - 50:3, 52:23
  **testimony** [2] - 26:11, 29:23
  **THE** [125] - 8:13, 8:21, 8:23, 9:7, 9:14, 9:16, 9:23, 10:7, 10:11, 11:3, 11:12, 12:13, 12:18, 12:25, 13:11, 13:19, 13:24, 14:3, 14:6, 14:10, 14:14, 15:8, 15:12, 15:19, 16:8, 16:11, 17:24, 19:13, 20:20, 21:1, 21:5, 22:3,

22:12, 22:25, 24:2, 24:9, 24:11, 24:18, 26:7, 26:17, 26:22, 26:25, 27:6, 27:9, 27:13, 27:18, 27:22, 27:24, 28:5, 28:12, 28:19, 28:25, 29:5, 29:10, 29:13, 29:15, 30:15, 31:6, 31:9, 31:22, 32:2, 32:17, 32:21, 32:23, 33:22, 34:1, 34:6, 34:19, 34:24, 35:17, 35:20, 36:5, 36:14, 36:25, 38:24, 41:19, 42:6, 42:13, 42:22, 43:5, 45:1, 45:11, 45:20, 45:22, 46:1, 46:8, 46:10, 46:12, 46:17, 47:4, 47:7, 47:12, 47:16, 47:21, 47:23, 48:5, 49:2, 49:6, 49:8, 49:14, 49:23, 50:3, 50:6, 50:8, 50:22, 50:24, 51:5, 51:9, 51:15, 51:22, 52:9, 52:12, 54:10, 54:15, 54:18, 54:21, 54:24, 55:3, 55:5, 56:11, 56:14, 57:10, 57:15, 57:18, 57:23
  **therefore** [1] - 13:8
  **they've** [7] - 13:7, 15:16, 17:4, 19:14, 19:15, 37:9, 38:14, 40:23, 48:12
  **thinking** [7] - 29:17, 31:13, 31:19, 32:23, 32:24, 32:25, 33:15
  **thinks** [1] - 14:16
  **three** [28] - 9:4, 9:6, 10:6, 10:9, 10:13, 10:16, 11:14, 12:8, 12:14, 13:1, 14:21, 15:25, 16:1, 16:2, 16:3, 16:10, 16:14, 16:20, 23:5, 24:15, 29:11, 37:13, 37:17, 38:3, 39:10, 48:16
  **throughout** [2] - 31:2, 40:9
  **Thursday** [1] - 54:8
  **tight** [1] - 41:8
  **timeline** [1] - 41:5
  **timing** [1] - 48:22
  **today** [4] - 10:22, 21:10, 36:8, 42:20
  **together** [2] - 21:17, 21:20
  **tool** [1] - 54:2
  **top** [1] - 18:8
  **topics** [2] - 17:4, 33:25
  **total** [4] - 28:9, 28:14, 29:4, 29:5
  **tough** [2] - 50:9, 53:10
  **towards** [1] - 34:3
  **trade** [36] - 8:1, 8:4, 8:8, 9:1, 10:19, 12:8, 13:4, 13:7, 13:13, 13:23, 17:5, 17:7, 17:9, 17:12, 18:8, 18:12, 19:24, 20:4, 20:11, 20:17,

20:21, 23:16, 30:25, 32:4, 32:5, 34:8, 34:14, 34:16, 34:21, 34:25, 36:4, 36:8, 37:6, 37:22, 41:15, 48:2
  **transcript** [1] - 37:3
  **trial** [13] - 28:25, 31:11, 32:1, 32:15, 33:8, 34:13, 35:9, 36:12, 36:21, 42:18, 44:12, 50:7, 57:6
  **tried** [1] - 26:9
  **true** [2] - 13:18, 14:3
  **trust** [1] - 23:25
  **try** [7] - 23:21, 25:11, 37:17, 40:12, 42:15, 53:11, 53:13
  **trying** [11] - 11:24, 20:23, 24:12, 29:20, 32:3, 33:16, 34:9, 36:18, 40:1, 48:25, 56:20
  **turn** [1] - 11:21
  **turning** [1] - 8:1
  **two** [6] - 14:4, 14:21, 18:5, 28:7, 44:2, 48:11
  **type** [1] - 30:4
  **types** [2] - 15:3, 55:16

**U**

  **ultimate** [2] - 34:3, 57:6
  **ultimately** [1] - 23:7
  **under** [11] - 11:2, 13:16, 14:1, 16:21, 17:20, 19:8, 23:10, 23:24, 26:10, 36:2
  **understate** [1] - 37:19
  **undertaking** [1] - 17:15
  **unfair** [1] - 18:14
  **unfortunate** [1] - 44:19
  **unfortunately** [2] - 40:5, 40:10
  **unit** [1] - 53:18
  **unless** [1] - 44:22
  **untenable** [1] - 11:15
  **unusual** [1] - 35:3
  **up** [11] - 8:12, 11:9, 12:15, 17:13, 29:25, 34:16, 49:7, 51:16, 52:17, 57:20, 58:1
  **updated** [1] - 42:2
  **upfront** [1] - 32:12
  **usage** [1] - 17:16
  **useful** [1] - 24:13
  **utilizing** [1] - 13:14

**V**

  **validity** [1] - 44:7
  **valuable** [1] - 32:5
  **various** [1] - 21:25
  **versus** [1] - 40:16

  **viable** [1] - 39:8
  **vice** [5] - 11:16, 12:20, 12:21, 20:1
  **video** [2] - 46:3
  **view** [1] - 36:15
  **violate** [1] - 23:11
  **volleys** [1] - 37:22
  **volume** [1] - 38:14
  **voluminous** [1] - 17:10
  **VP** [1] - 11:17

**W**

  **wants** [3] - 13:20, 17:3, 37:21
  **ways** [2] - 22:10, 28:7
  **website** [1] - 11:10
  **Wednesday** [1] - 24:10
  **week** [7] - 37:6, 41:16, 52:7, 52:8, 54:6, 54:17, 54:18
  **weekend** [1] - 53:22
  **weeks** [1] - 45:17
  **whole** [1] - 43:6
  **wide** [2] - 12:3, 25:24
  **willing** [4] - 40:16, 41:12, 44:12, 53:12
  **window** [1] - 41:18
  **windows** [1] - 49:7
  **Winters** [3] - 12:21, 15:15, 20:18
  **winters** [7] - 12:23, 13:6, 20:7, 20:9, 20:10, 48:13
  **witness** [2] - 29:4, 50:17
  **witnesses** [8] - 17:18, 29:5, 30:9, 30:20, 32:4, 32:8, 33:5, 34:10
  **wonder** [1] - 45:8
  **word** [1] - 19:17
  **works** [3] - 46:6, 51:20, 52:9
  **wrapping** [2] - 51:16, 52:17
  **Wright** [3] - 22:23, 23:9, 48:18
  **write** [2] - 52:10, 52:21

**Y**

  **year** [1] - 41:3
  **years** [3] - 18:18, 19:12, 20:24
  **yesterday** [1] - 41:15