Public Version

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:21-cv-01417-RGA |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | **FILED UNDER SEAL – CONTAINS** |
| AKOUSTIS, INC. | ) | **ATTORNEYS EYES ONLY** |
| | ) | **INFORMATION - SUBJECT TO** |
| Defendants. | ) | **PROTECTIVE ORDER** |
| | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RESPONSIVE TO
DOCUMENT REQUEST NOS. 76-79**

OF COUNSEL:
PILLSBURY WINTHROP SHAW
PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Robert M. Fuhrer
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

[Additional Counsel on Signature Page]

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and
Akoustis, Inc.*

Public Version

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................... 1

II.   AKOUSTIS' GOOD FAITH EFFORTS TO MEET-AND-CONFER ............................ 3

III.  QORVO SHOULD BE COMPELLED TO PRODUCE DOCUMENTS IT HAS
      WITHHELD BASED ON UNSUBSTANTIATED BOILERPLATE OBJECTIONS ... 6

      A.    The RFPs Seek Relevant Documents .................................................... 6

      B.    The RFPs Are Proportional to the Needs of the Case ......................... 9

      C.    Qorvo Waived its Objections Because Generic Boilerplate Objections are
            Invalid ................................................................................................. 12

IV.   CONCLUSION ..................................................................................................... 13

i

Public Version

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Arrow Enter. Computing Sols., Inc. v. BlueAlly, LLC*,
  No. 5:15-CV-00037-FL, 2016 WL 4287929 (E.D.N.C. Aug. 15, 2016)............................ 10

*Cratty v. City of Wyandotte*,
  No. 17-10377, 2017 WL 5589583 (E.D. Mich. Nov. 8, 2017)............................................ 12

*In re Diisocyanates Antitrust Litig.*,
  No. MC 18-1001, 2023 WL 424186 (W.D. Pa. Jan. 26, 2023) .......................................... 11

*Finch v. Hercules Inc.*,
  149 F.R.D. 60 (D. Del. 1993) .............................................................................................. 8

*Green v. Cosby*,
  314 F.R.D. 164 (E.D. Pa. 2016)........................................................................................... 6

*Hamblin v. Wilson Cnty.*,
  No. 3:21-0816, 2022 WL 18635844 (M.D. Tenn. Nov. 30, 2022)..................................... 10

*Harrington Mfg. Co. v. Powell Mfg. Co.*,
  38 N.C. App. 393 (N.C. Ct. App. 1978) .............................................................................. 8

*Josephs v. Harris Corp.*,
  677 F.2d 985 (3d Cir.1982)................................................................................................. 13

*Mann v. City of Chicago*,
  No. 15 CV 9197, 2017 WL 3970592 (N.D. Ill. Sept. 8, 2017)........................................... 12

*Martinez v. City of New York*,
  No. 16 CV 79 (AMD) (CLP), 2017 WL 6403512 (E.D.N.Y. Dec. 14, 2017)..................... 12

*McDonald v. Scarboro*,
  91 N.C. App. 13 (N.C. Ct. App. 1988) ................................................................................ 8

*Michelo* v. *Nat'l Collegiate Student Loan Tr. 2007-2*,
  No. 18-CV-1781 (PGG) (BCM), 2020 WL 9423921 (S.D.N.Y. Aug. 31, 2020)................ 12

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)............................................................................................................. 6

*Osagie v. Borough of State Coll.*,
  586 F. Supp. 3d 314 (M.D. Pa. 2022) .................................................................................. 6

Public Version

*Owens v. Minor*,
   No. 07-365-JJF, 2009 WL 2030938 (D. Del., July 10, 2009) ............................................. 13

*Pacitti v. Macy's*,
   193 F.3d 766 (3d Cir. 1999).................................................................................................. 6

*Parisi v. State Farm Mut. Auto. Ins. Co.*,
   No. 3:16-179, 2017 WL 4403326 (W.D. Pa. Oct. 2, 2017).................................................. 13

*Pearson v. Miller*,
   211 F.3d 57 (3d Cir. 2000)..................................................................................................... 6

*St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
   No. 3:18-CV-00988, 2022 WL 4095387 (M.D. Tenn. Sept. 7, 2022)................................. 13

*Thompson-El v. Greater Dover Boys & Girls Club*,
   No. 18-1426-RGA, 2022 WL 606700 (D. Del. Jan. 28, 2022)............................................ 13

*United Lab'ys, Inc. v. Kuykendall*,
   403 S.E.2d 104 (N.C. Ct. App. 1991), *aff'd*, 437 S.E.2d 374 (1993) ............................... 8, 9

## Statutes and Codes

N.C. General Statutes
   Section 75-1.1 .................................................................................................................. 8-9

## Rules and Regulations

Federal Rules of Civil Procedure
   Rule 26 ...................................................................................................... 6, 10, 11, 13
   Rule 34 .................................................................................................................. 12
   Rule 37 .................................................................................................................. 1, 6

Federal Rules of Evidence
   Rule 401 ...................................................................................................................... 6

Public Version

Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis") respectfully move this Court for an order compelling Plaintiff Qorvo, Inc. ("Qorvo") pursuant to Fed. R. Civ. P. 37(a)(3)(B) to provide further responses and to produce documents responsive to Akoustis' Requests for Production of Documents ("RFP"), Set 2, Nos. 76-79.

## I.  **INTRODUCTION**

Akoustis seeks to compel certain discovery responses that are relevant to the unfair competition claims alleged in Qorvo's Second Amended Complaint ("SAC") (D.I. 125).  Qorvo claims that Akoustis has engaged in "unfair and deceptive trade practices" in part by its so-called "systematic poaching of Qorvo's employees," for technical and business experience relating to BAW filter technology.  (*Id.* at ¶¶51, 55 and 210-211.)  To challenge these allegations and support its defenses that Akoustis acted fairly and that its hiring practices were commonplace and lawful, Akoustis served discovery seeking information about (1) Qorvo's hiring practices relating to former Akoustis personnel (RFP No. 76); (2) Qorvo's hiring practices relating to those already specialized in BAW filters (RFP Nos. 77, 79); and (3) Qorvo's use of recruiters to hire personnel specialized in BAW filters (RFP No. 78).  Qorvo has refused to produce *any* documents in response to these RFPs, standing instead on invalid boilerplate objections. This discovery will test the allegations in Qorvo's SAC and develop Akoustis' defenses.  It is relevant and proportional to the needs of the case and Qorvo should be compelled to withdraw its boilerplate objections and to produce responsive documents.

This motion follows months of meet-and-confer efforts addressing Akoustis' RFPs and Qorvo's responses, during which other disputed requests were resolved.  Then, on April 5, 2023, Qorvo served a "supplemental" objection to these four RFPs, dropping boilerplate objection as to overbreadth, burden and proportionality, but repeating its original boilerplate objection as to

Public Version

relevance with a slight variation by quoting a phrase from each respective RFP without explaining how it allegedly supports the objections. Thus, the "Supplemental Response" to these four RFPs states: "In addition to the General and Specific Objections set forth above, Qorvo objects that this Request seeks documents that are not relevant to any claim or defense to the extent the Request seeks, without restriction, 'all documents' concerning [the substance of the RFP]." The "Supplemental Response" then goes on to say that the requested material "has no bearing on any claim or defense asserted in this case." For example, the Supplemental Response to RFP No. 77 states:

> In addition to the General and Specific Objections set forth above, Qorvo objects that this Request seeks documents that are not relevant to any claim or defense to the extent the Request seeks, without restriction, "all documents" concerning Qorvo's efforts to identify, recruit or hire personnel with prior expertise or experience in BAW filter technology engineering, marketing, logistics, supply chain, product development, testing or manufacturing. Qorvo's recruiting and hiring practices have no bearing on any claim or defense asserted in this case.

Based only on this boilerplate, Qorvo refused to run any searches or to produce a single document responsive to RFP Nos. 76-79. For the reasons further discussed below, these RFPs are directed at documents that will rebut Qorvo's allegations of improper employee "poaching," by Akoustis. Moreover, Qorvo's objection to the use of the term "all" does not relieve it of the obligation to produce "any" documents, particularly because the parties already stipulated to, and the Court ordered, a protocol for developing proportional searches in response to every document request. (D.I. 61) ("ESI Protocol"). Therefore, Akoustis asks the Court to overrule Qorvo's objections and to compel Qorvo to provide updated written responses and to produce documents responsive to RFP Nos. 76-79, in a manner consistent with the stipulated ESI Protocol.

Public Version

## II.   AKOUSTIS' GOOD FAITH EFFORTS TO MEET-AND-CONFER

Qorvo filed its original complaint on October 4, 2021, and has amended it twice, including the operative SAC filed on February 8, 2023.  (D.I. 125.)  The SAC contains 277 paragraphs and alleges nine counts, including five that were alleged when Akoustis served RFP Sets 1 and 2: (1) infringement of and inducement to infringe U.S. Patent No. 7,522,018; (2) infringement of and inducement to infringe U.S. Patent No. 9,735,755; (3) false advertising under 15 U.S.C. § 1125(a); (4) false patent marking under 35 U.S.C. § 292; and (5) unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.  (*Id.*)  The RFPs at issue here relate to Count V, *i.e.*, Qorvo's unfair trade practice allegations.  (*See, e.g.,* SAC at ¶¶51, 54-58, 63, 65, 206-228.)

Because this Motion only deals with four RFPs that were part of a long and complex series of meet-and-confers, Akoustis will not belabor that entire history but focus on the pertinent aspects of the parties' communications.  On October 10, 2022, Akoustis sent Qorvo a letter about its deficient RFP responses, requesting a written response by October 31, 2022.  (Declaration of Ryan Selness in Support of Defendants' Motion to Compel Production of Documents Responsive to Document Request Nos. 76-79 ("Selness Decl.") at ¶ 4 and Exh. E.)  The parties then held a meet-and-confer conference on November 16, 2022.  (*Id.* at ¶ 5.)  During that video conference, Qorvo offered to provide a written response to Akoustis' letter by November 23, to clarify Qorvo's positions to each RFP at issue.  (*Id.*)  Qorvo's response arrived on December 14.  (*Id.* at ¶ 5 and Exh. F.)  It provided no factual or legal support for its boilerplate objections and non-responses to the RFPs at issue in this Motion.  (*See Id.* at Exh. F.)  Indeed, for the RFPs at issue here (and many other RFPs), Qorvo wrote in full:

> Qorvo stands by its original objections to these RFPs as set forth in its June 6, 2022 Objections and Responses. Additionally, Qorvo has already produced many documents responsive to several of the foregoing requests.

Public Version

*Id.*

Thereafter, the parties continued to meet-and-confer, and held a video conference on December 21, 2022, which Akoustis summarized in emails sent on December 22, 2022 and January 4, 2023. (Selness Decl., ¶ 6 and Exhs. G, H.) Qorvo responded on January 25. (*Id.* at ¶ 6 and Exh. I.) The meet-and-confer continued in emails sent on February 7, 15, and 17, and March 2, 7, 14, 17, 20, and 21. (*Id.* at ¶ 7 and Exh. J.) The parties held a further video conference on March 28, 2023 and reached various agreements which were summarized in a March 30, 2023 letter from Akoustis. (*Id.* at ¶ 8 and Exh. K.) Among other things, the parties agreed that Qorvo "will serve amended written responses, and will promptly thereafter produce documents within the scope of its amended responses, to the following 18 RFPs," which included RFP Nos. 76-79. (*Id.* at ¶ 8 and Exh. K.)

On April 5, 2023, Qorvo served amended written responses to various RFPs, including RFP Nos. 76-79, on April 5, 2023. (Selness Decl., ¶ 9 and Exh. L.) The amended responses removed Qorvo's boilerplate objections for overbreadth and proportionality as to RFP Nos. 76-79, but repeated a boilerplate objection as to relevance, stating that the RFPs have "no bearing on any claim or defense asserted in this case."[1] On this basis, Qorvo maintained its refusal to produce any documents responsive to these four RFPs. (*See id.*) On April 17, 2023, Akoustis and Qorvo held a meet-and-confer video conference addressing Qorvo's amended written responses, including to RFP Nos. 76-79. (*Id.* at ¶ 10 and Exh. M.) During that conference, the parties reached agreement on various issues but were unable to reach agreement on RFP Nos. 76-79. (*See id.*) Thereafter, Akoustis provided a further articulation of the relevance of the RFPs and requested a final video

---

[1] Qorvo's amended responses also purport to incorporate its prior objections by reference, thereby keeping the original overbreadth and proportionality boilerplate in play.

Public Version

conference with Delaware counsel.  (*Id.* at ¶ 11 and Exh. N.)  In particular, Akoustis explained that

these RFPs are relevant to "Qorvo's poaching allegations" and pointed out paragraph 55 of the

SAC, which states:

> On information and belief, Akoustis recruited Ex-Qorvo employees
> for positions with largely overlapping responsibilities to their
> positions at Qorvo, focusing on employees with the specialized
> knowledge of Qorvo's confidential and proprietary information,
> including the Qorvo BAW Proprietary Information, that Akoustis
> needed at the particular stage of its development. For example,
> Qorvo [sic] focused on those Qorvo employees with business
> development and BAW filter design experience when it was initially
> defining and designing its products, and then focused on those
> Qorvo employees with quality, manufacturing, and management
> expertise as it moved from product design to manufacture and sales.

(*Id.* at 11 and Exh. N.)  As explained in the meet-and-confer email, "Akoustis seeks these

documents to show that the type of conduct described in paragraph 55 of the SAC (and other

similar allegations) is common business practice used by Qorvo and a fair method of competition."

(*Id*. at ¶ 11 and Exh. N.)

The parties held a final meet-and-confer video conference on May 2, 2023.  (*See* Selness

Decl., ¶ 12-13 and Exh. O.)  During that video conference, Qorvo asserted that the RFPs were not

relevant or proportional and said that paragraph 55 of the SAC was only one paragraph of Qorvo's

complaint and that Akoustis' articulation of the relevance of the RFPs was a "caricature" of

Qorvo's unfair competition claim.  (*See id.*)  Akoustis disagreed and asserted that while Qorvo's

hiring allegations do not comprise Qorvo's entire claim, they are nevertheless a component of the

unfair competition claim on which Akoustis is entitled to discovery.  (*Id.*)  The parties were unable

to reach agreement during the video conference.  On May 3, 2023, Akoustis confirmed that the

parties were at an impasse with regards to RFP Nos. 76-79.  (*Id.*)  Pursuant to the parties' mutual

agreement, Akoustis then had 21 days to bring this Motion, which is timely filed.

Public Version

### III.   QORVO SHOULD BE COMPELLED TO PRODUCE DOCUMENTS IT HAS WITHHELD BASED ON UNSUBSTANTIATED BOILERPLATE OBJECTIONS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Green v. Cosby*, 314 F.R.D. 164, 171 (E.D. Pa. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  A party receiving incomplete or evasive responses may move for an order to compel.  FED. R. CIV. P. 37(a)(1), (4).  At that point, "'[t]he moving party must demonstrate the relevance of the information sought to a particular claim or defense.  The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper."  *Osagie v. Borough of State Coll.*, 586 F. Supp. 3d 314, 321 (M.D. Pa. 2022) (internal citation omitted).  Evidence is relevant if it has the tendency to make a consequential fact more or less probable.  FED. R. EVID. 401.  Consequently, for the purposes of discovery, relevancy is broadly construed.  *See Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery."); *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

#### A.   The RFPs Seek Relevant Documents

RFP Nos. 76-79 seek documents concerning ***Qorvo's unfair competition claim***.  Specifically, the RFPs seek documents concerning Qorvo's hiring of employees with prior BAW filter technology experience (including former Akoustis employees), including Qorvo's use of

Public Version

third-party or in-house recruiters for such hiring, and the responsibilities such employees have been given at Qorvo. These documents are expected to show, among other things, that Akoustis' alleged conduct (*i.e.*, hiring employees with BAW filter experience and placing them in roles consistent with their experience) was not improper "poaching," but reflected typical, lawful hiring consistent with Qorvo's own way of targeting and selecting prospective employees with relevant technical backgrounds and capabilities.

Take for example, RFP No. 76, which seeks documents concerning or reflecting "Qorvo's planned or actual evaluation, recruitment or hiring of any current or former Akoustis employee." Akoustis is aware that Qorvo has hired Akoustis employees in the past – the same practice Qorvo has claimed was an "unfair and deceptive trade practice" when done by Akoustis. Certainly, then it is relevant to see if Qorvo's attempt to recruit employees away from Akoustis was substantially similar to Akoustis' efforts to hire personnel away from Qorvo. Indeed, it cannot be disputed that BAW filter technology is highly specialized and that employment opportunities for individuals with this skillset and training are likewise niche. Moreover, Qorvo and Akoustis were each competing for BAW filter talent in North Carolina, and they are both recruiting and seeking to retain from a small pool of qualified candidates. Employee mobility from one company to another is permitted, and if Qorvo and Akoustis similarly recruited and hired from each other, it cannot be an unlawful or actionable practice under North Carolina law.

Similarly, RFP Nos. 77-79 seek documents to support, among other things, Akoustis' defense that it was engaged in lawful business activity in making hiring decisions. (D.I. 158 (Answer to SAC) at Twelfth Affirmative Defense.) Qorvo's own patterns and practices in hiring BAW filter talent are relevant to show similarities and differences with Akoustis' practices, as this will establish that Akoustis' hiring of BAW talent was not unique, but a commonplace and lawful

Public Version

business practice.  This is akin to an employee in a discrimination case being entitled to take discovery about the employer's business practices in order to show a pattern of discrimination. *See Finch v. Hercules Inc.*, 149 F.R.D. 60, 63 (D. Del. 1993) ("With respect to the substance of discovery requests in discrimination cases, wide latitude has been granted.  As courts have recognized, 'claims of disparate treatment of necessity require discovery of how others have been treated....'" (internal citations omitted)).

Further, since Qorvo has alleged that Akoustis acted "unfairly" in its hiring practices, those practices must be measured against "the background of actual human experience" in competitors' recruiting and hiring practices, which can be shown by evidence of how Qorvo (and other businesses) went about their own hiring of comparable talent in the small pool of qualified individuals with BAW filter experience.  *McDonald v. Scarboro*, 91 N.C. App. 13, 18 (N.C. Ct. App. 1988) (quoting *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 400 (N.C. Ct. App. 1978)).  Indeed, in an unfair competition claim, "unfair" is the operative word, yet it is not defined in the statute.  *See* N.C. Gen. Stat. § 75-1.1; *United Lab'ys, Inc. v. Kuykendall*, 403 S.E.2d 104, 109 (N.C. Ct. App. 1991), *aff'd*, 437 S.E.2d 374 (1993) ("No precise definition of "unfair methods of competition" as used in this section exists.").  That is because it is a highly fact specific inquiry, and whether an action is "unfair" requires looking at the particular industry in question. Does the practice violate industry standards?  Is it immoral or unethical?  How does it impact the marketplace?  These questions are all relevant to the fact-specific analysis of whether an action is "unfair" or otherwise violates North Carolina, General Statutes § 75-1.1.  As it has been explained:

> Unfair competition has been referred to in terms of conduct which a court of equity would consider unfair. Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human

Public Version

> experience and by determining its intended and actual effects upon others.

*United Lab'ys,* 403 S.E.2d at 109 (internal citations omitted).  Therefore, whether an action is "unfair" under North Carolina law, requires looking towards "maintaining ethical standards in dealings between persons engaged in business and to promote good faith at all levels of commerce."  *Id.*  Accordingly, a determination of the fairness of Akoustis' conduct cannot be viewed in the abstract; it must be construed "against the background of actual human experience." *Id.*  As such, examining the facts of certain hiring practices at Qorvo will provide relevant background, which is essential for determining whether Akoustis' hiring practices were "unfair."

Furthermore, whether discovery is relevant relates to what is framed by the pleadings. Here, Qorvo drafted the complaint with three iterations.  In each one, Qorvo expanded its unfair competition claims.  In turn, Akoustis has the right to raise defenses, and the parties' claims and defenses establish the framework for determining the scope of relevance for discovery in this case. Akoustis surely has the right to establish that what it is accused of doing in hiring is a common business practice, and perhaps the best way of showing this is to demonstrate that Qorvo did the same types of thing.

### B.      The RFPs Are Proportional to the Needs of the Case

Qorvo removed its express burden and proportionality objections from the "Supplemental Responses," but purported to incorporate its earlier objections by reference, and if these are raised in opposition to this Motion, the Court should note that Qorvo has not substantiated any burden or shown that searching for or producing the requested documents would be disproportionate to the needs of this case.  Qorvo also never suggested that the RFPs be somehow narrowed, nor has Qorvo shown how the scope was too broad.  Qorvo simply refused to produce *any* documents or to run *any* searches relating to these four RFPs, notwithstanding the ESI Protocol which sets forth

9

Public Version

an orderly procedure for developing proportional searches. (D.I. 67.)   Moreover, Qorvo had months to assemble information to substantiate its supposed burden; instead, when it supplemented its responses, Qorvo withdrew the express mention of its proportionality and burden objections and offered no facts to support any implication that the discovery was overly broad, unduly burdensome or excessive.   Therefore, any such objections to proportionality have been waived and Qorvo should not be allowed to present any evidence in support of them.   *Arrow Enter. Computing Sols., Inc. v. BlueAlly, LLC*, No. 5:15-CV-00037-FL, 2016 WL 4287929, at \*3 (E.D.N.C. Aug. 15, 2016) ("Courts have regularly held that, '[o]bjections to Rule 34 requests ... must be stated specifically, and boilerplate objections simply regurgitating words and phrases from Rule 26 are unacceptable." (internal citations omitted)); *Hamblin v. Wilson Cnty.*, No. 3:21-0816, 2022 WL 18635844, at \*2 (M.D. Tenn. Nov. 30, 2022) ("Boilerplate objections, such as the discovery requests are 'overly broad,' are 'vague,' are 'not proportional to the needs of the case,' or are 'unduly and substantially burdensome,' are 'legally meaningless and amount to a waiver of an objection.'" (internal citations omitted)).

Even if Qorvo's proportionality and burden objections had not been waived, these four RFPs are in fact proportional to Akoustis' need to defend itself against Qorvo's unfair competition claim.   Courts look to five factors in determining whether discovery is proportional: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the importance of the discovery in resolving the issues; (4) the parties' relative access to relevant information; and (5) whether the burden or expense of the proposed discovery outweighs its likely benefit.   *See* FED. R. CIV. P. 26(b)(1).   The determination of proportionality and scope of discovery is case-specific and is within the Court's discretion.   *In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2023

WL 424186, at *4 (W.D. Pa. Jan. 26, 2023).  Here, each of the factors supports the proportionality

of the RFPs at issue.

*First,* the RFPs address a key allegation at the heart of Count V of the SAC – the claim of

unfair hiring practices.  (*See* SAC ¶¶54-55, 210-211.)  Thus, information regarding Qorvo's

actions that are akin to Akoustis' actions will demonstrate that these are not "unfair" or "immoral"

actions, which is one of the elements Qorvo needs to demonstrate to prove unfair competition

under North Carolina law.  *Second,* the amount in controversy is substantial because Qorvo has

indicated that it is seeking millions in damages.  *Third,* the discovery is critical to establishing "the

background of actual human experience" regarding competitors' recruiting and hiring practices

against which Akoustis' alleged recruiting and hiring practices must be viewed.  Akoustis expects

that this background will demonstrate that its recruiting and hiring practices are not "unfair" at all,

but a common and fair method of competition in the industry.  *Fourth,* the parties do not have

similar access to this information, as documents related to Qorvo's recruiting and hiring practices

are entirely within Qorvo's possession, custody, and control.  *Fifth,* when it comes to weighing the

burden or expense with the likely benefit, Qorvo has failed to demonstrate any undue burden or

expense whatsoever.

To be clear, Qorvo did not provide during meet-and-confer any estimate of cost or burden,

and it proffered no information about the volume of likely responsive documents or how much

time would be required to review and produce them.  Instead, Qorvo simply said it was standing

on its objections.  Courts routinely hold objecting parties to a higher standard, disfavor conclusory

and unsupported statements about why requested discovery would be disproportionately

expensive, and typically reject these arguments outright.  *See*, *e.g., Michelo v. Nat'l Collegiate*

*Student Loan Tr. 2007-2*, No. 18-CV-1781 (PGG) (BCM), 2020 WL 9423921, at *5 (S.D.N.Y.

Public Version

Aug. 31, 2020) (objecting party bears initial burden to demonstrate disproportionality); *Martinez v. City of New York*, No. 16 CV 79 (AMD) (CLP), 2017 WL 6403512, at *1 (E.D.N.Y. Dec. 14, 2017) ("The party resisting discovery … must 'show that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.'" (internal citations omitted)); *Cratty v. City of Wyandotte*, No. 17-10377, 2017 WL 5589583, at *3 (E.D. Mich. Nov. 8, 2017) ("A party objecting to a request for production of documents as burdensome must submit affidavits or other evidence to substantiate its objections"); *Mann v. City of Chicago*, No. 15 CV 9197, 2017 WL 3970592, at *5 (N.D. Ill. Sept. 8, 2017) ("[A] party must articulate and provide evidence of its burden….[and] specifically demonstrate how the request is burdensome." (internal citations omitted)).

For these reasons, the requests are proportional and the documents must be produced. Proportionality is further ensured by the parties' ESI Protocol. (D.I. 67.)

## C.      Qorvo Waived its Objections Because Generic Boilerplate Objections are Invalid

As noted, the Court need not even reach the merits of Qorvo's objections to RFP Nos. 76-79 because Qorvo waived them by failing to state those objections with specificity.  "For each item or category, the response [to an RFP] must either state that inspection and related activities will be permitted as requested or state ***with specificity*** the grounds for objecting to the request, including the reasons."  FED. R. CIV. P. 34(b)(2)(B) (emphasis added).  Qorvo failed to do either with respect to the RFPs at issue.  Its original and supplemental responses did nothing more than recite a familiar litany of objections (*i.e.*, overbroad, unduly burdensome, not relevant, and not proportional) without identifying any specific grounds or reasons to sustain them.  Courts repeatedly hold such boilerplate objections insufficient even to preserve an objection.  *See Owens v. Minor*, No. 07-365-JJF, 2009 WL 2030938, at *2 (D. Del. July 10, 2009) ("Mere recitation of

12

Public Version

the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice.'" (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir.1982))); *see also St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-CV-00988, 2022 WL 4095387, at *6 (M.D. Tenn. Sept. 7, 2022) ("boilerplate objections" that each request was overbroad, unduly burdensome, not proportional, and not relevant were "legally meaningless and amount to a waiver of an objection." (internal citations omitted)); *Thompson-El v. Greater Dover Boys & Girls Club,* No. 18-1426-RGA, 2022 WL 606700, at *3 (D. Del. Jan. 28, 2022) (finding plaintiff non-compliant with Rule 26 and granting a motion to compel because "His global objections are not well-taken and there are no specific objections to any particular interrogatory or request to produce documents."); *Parisi v. State Farm Mut. Auto. Ins. Co.*, No. 3:16-179, 2017 WL 4403326, at *1 (W.D. Pa. Oct. 2, 2017) ("The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient.").

Neither Qorvo's original nor "supplemental" objections offer any specificity to the relevance or proportionality objections, nor did Qorvo provide any evidence of its burden or establish the lack of relevance during meet and confer. Accordingly, Qorvo's boilerplate relevancy and proportionality objections are insufficient and invalid. Further, having failed to substantiate its relevance and proportionality objections in its written responses or during meet-and-confer, Qorvo should not be permitted to resuscitate them now.

## IV. CONCLUSION

Akoustis requests that the Court grant this Motion, compelling Qorvo to update its written responses and to produce the documents requested by RFP Nos. 76-79, in a manner consistent with the ESI Protocol.

Public Version

PILLSBURY WINTHROP
SHAW PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Robert M. Fuhrer
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

Theresa A. Roozen
1200 Seventeenth St. NW
Washington, DC 20036
(202) 663-8025
theresa.roozen@pillsburylaw.com

Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
shani.rivaux@pillsburylaw.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and
Akoustis, Inc.*

14