**PUBLIC VERSION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) | |
| | ) | ███████████████ |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO RE-DESIGNATE THE
SECOND AMENDED COMPLAINT MARKED
ATTORNEYS' EYES ONLY TO CONFIDENTIAL**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
(202) 747-1900

*Attorneys for Plaintiff Qorvo, Inc.*

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130-4092
(858) 720-8900

PUBLIC VERSION

James C. Wald
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

May 19, 2023

**PUBLIC VERSION**

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 3

     A.     Qorvo Files Lawsuit to Stop Akoustis's Anticompetitive Practices...................... 3

     B.     The Parties Stipulate to a Protective Order ............................................................ 3

     C.     Akoustis Produces Documents Showing Theft of Qorvo's Trade
          Secrets ................................................................................................................... 4

     D.     Qorvo Amends the Complaint and Designates Exhibits Containing
          Trade Secrets as "Attorneys Eyes Only" ................................................................ 5

     E.     Qorvo Agrees to Allow Limited Access to Exhibits Containing
          Trade Secrets ......................................................................................................... 6

     F.     The Court Identifies Areas of Agreement at the Status Conference...................... 7

     G.     The Parties Are Unable to Reach Agreement After the Status
          Conference ............................................................................................................. 7

III.     LEGAL STANDARDS .......................................................................................... 8

IV.     ARGUMENT.......................................................................................................... 9

     A.     Qorvo Properly Designated the Exhibits as Attorneys Eyes Only
          under the Protective Order ..................................................................................... 9

          1.     The exhibits contain trade secrets and other highly
                  sensitive business information ......................................................... 9

          2.     Further disclosure of the exhibits is likely to cause
                  significant harm to Qorvo's business and
                  competitive position........................................................................ 12

     B.     "Good Cause" Exists to Limit Access to the Exhibits ......................................... 13

          1.     Qorvo will suffer a clearly defined, specific, and
                  serious injury from further disclosure of the exhibits................... 14

          2.     Akoustis has no compelling need to share the
                  exhibits beyond the access Qorvo has already
                  granted............................................................................................. 15

V.     CONCLUSION..................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*In re Adobe Sys., Inc. Sec. Litig.*
141 F.R.D. 155 (N.D. Cal. 1992) ........................................................................13

*Alchem USA Inc. v. Cage*
No. 21-2994, 2022 WL 3043153 (3d Cir. Aug. 2, 2022) ....................................11

*Am. Infrastructure, Inc. v. Zachry Constr. Corp.*
No. 08-2701, 2009 U.S. Dist. LEXIS 14919 (E.D. Pa. Feb. 23, 2009) ...........12, 13

*Campbell Soup Co. v. ConAgra, Inc.*
977 F.2d 86 (3d Cir. 1992) .................................................................................11

*Cipollone v. Liggett Group, Inc.*
785 F.2d 1108 (3d Cir. 1986) ...............................................................................8

*In re City of New York*
607 F.3d 923 (2d Cir. 2010) ...............................................................................11

*Jamsport Ent., LLC v. Paradama Prods., Inc.*
No. 02 C 2298, 2005 WL 14917 (N.D. Ill. Jan. 3, 2005) ...................................14

*Liveware Publ'g, Inc. v. Best Software, Inc.*
252 F. Supp. 2d 74 (D. Del. 2003) .....................................................................16

*McAirlaids, Inc. v. Kimberly-Clark Corp.*
299 F.R.D. 498 (W.D. Va. 2014) ........................................................................16

*Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*
No. 19-cv-0637, 2021 WL 1599247 (D. Utah Apr. 23, 2021) ............................11

*Monolithic Power Sys., Inc. v. Intersil Corp.*
No. CV 16-1125, 2018 WL 6113465 (D. Del. Nov. 19, 2018) ...........................15

*Pansy v. Borough of Stroudsburg*
23 F.3d 772 (3d Cir. 1994) ...................................................................................8

*R.R. Donnelley & Sons Co. v. Quark, Inc.*
No. CIVA 06-032, 2007 WL 61885 (D. Del. Jan. 4, 2007) .................................14

*Royal Indem. Co. v. Pepper Hamilton LLP*
No. 05-cv-0165, 2006 WL 3827452 (D. Del. Dec. 27, 2006) .............................7, 8

*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*
    682 F. Supp. 20 (D. Del. 1988) ...................................................................................14, 16

*Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*
    190 F. Supp. 3d 419 (M.D. Pa. 2016) ...............................................................................8, 12

*Tailored Lighting, Inc. v. Osram Sylvania Prods.*
    236 F.R.D. 146 (W.D.N.Y. 2006) .....................................................................................15, 16

*Water Tree Ventures, LLC v. Giles*
    No. 18-cv-1421, 2019 WL 13162408 (N.D. Fla. Apr. 26, 2019) ........................................16

<u>Statutes</u>

18 U.S.C.
    § 1839 .................................................................................................................................10

<u>Other Authorities</u>

Federal Rules of Civil Procedure
    Rule 26(c) ............................................................................................................................3
    Rule 30(b)(6) .......................................................................................................................6

Plaintiff Qorvo, Inc. ("Qorvo") respectfully submits this answering brief in opposition to the Motion to Re-Designate the Second Amended Complaint Marked Attorneys' Eyes Only to Confidential (the "Motion") (D.I. 183, 184) filed by Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis").

## I.    INTRODUCTION

The Motion is based on an erroneous premise—that "Akoustis" is "blind" to the trade secret allegations in this case because it cannot access the exhibits to the Second Amended Complaint ("SAC") that Qorvo designated as "Attorneys' Eyes Only" (the "AEO Exhibits"). But "Akoustis" has access to those exhibits in several ways. First, Akoustis's litigation counsel has access to all of the AEO Exhibits. Second, the Akoustis employees involved in the alleged misappropriation has access to the AEO Exhibits that they previously sent or received and may consult with Akoustis's litigation counsel about those exhibits. *See* Protective Order (D.I. 57), § 8(b)(5). Third, Qorvo has agreed that the AEO Exhibits can be shared with three members of Akoustis's management team, including Akoustis's General Counsel, but excluding mangers who are in a position to make competitive decisions with respect to Qorvo. *See* D.I. 185, Ex. F. Fourth, Qorvo has agreed that three members of Akoustis's Board of Directors may access the AEO Exhibits. *See id.* Fifth, Qorvo agreed that Akoustis's outside corporate counsel may access the AEO Exhibits. *See id.* Sixth, the AEO Exhibits may be shared with the outside technical, industry, and damages experts Akoustis has hired to advise on this case. *See* Protective Order (D.I. 57), § 8(b)(7), (c). In short, "Akoustis" has been granted far greater access to the AEO Exhibits than is typical or required in a trade secret case between competitors.

The Motion nonetheless seeks authorization to share the AEO Exhibits with any person at Akoustis that litigation counsel unilaterally deems "relevant" to this case, thus eviscerating the entire purpose of the AEO designation and permitting further circulation of Qorvo's sensitive

**PUBLIC VERSION**

information to employees of a direct competitor. Granting such broad access to AEO materials is contrary to a long line of authority.

Perhaps sensing its overreach, Akoustis narrowed the focus of its arguments during the status conference on May 10, 2023. Rather than demanding access for any employee deemed "relevant," Akoustis argued that three specific members of its management team—Jeffrey Shealy, David Aichele, and Mary Winters—should be granted access to the AEO Exhibits. Akoustis argued these executives need access because they are the managers most knowledgeable about technical and business issues underlying this case. But Akoustis's arguments only emphasize why Mr. Shealy, Mr. Aichele, and Ms. Winters must not be granted access to Qorvo's trade secrets—because they are key strategic decisionmakers of a direct competitor. Courts have repeatedly recognized that it is improper to grant such employees access to a competitor's sensitive information. Indeed, Akoustis is asking the Court to enter an order that is directly opposite to governing law.

Akoustis argues that denying Mr. Shealy, Mr. Aichele, and Ms. Winters access to the AEO Exhibits will impede Akoustis in responding to Qorvo's allegations. Again, courts have repeatedly rejected this very argument. To the extent Akoustis's litigation counsel needs guidance concerning technical or industry issues, it has at least two choices: (i) counsel can seek that information from Akoustis without disclosing the AEO Exhibits; or (ii) counsel can consult with the experts Akoustis has engaged in this case for the very purpose of advising on such technical and industry issues. Following such procedures to limit access to sensitive business information is entirely normal in cases between competitors. Conversely, Akoustis's assertion that it is entitled to rely on its own employees to analyze technical and business information from

2

a competitor is highly unusual and improper. There is no "Due Process" right for a party to have its own employees analyze discovery materials.

## II.     FACTUAL BACKGROUND

### A.     Qorvo Files Lawsuit to Stop Akoustis's Anticompetitive Practices

Qorvo filed this case on October 4, 2021 to challenge widespread anticompetitive practices of Akoustis. In the original complaint, Qorvo alleged claims that (i) Akoustis willfully infringes two of Qorvo's patents (U.S. Patent No. 7,522,018 and U.S. Patent No. 9,735,755); (ii) Akoustis falsely advertises its products as "single crystal" when, in fact, those products are polycrystalline; (iii) Akoustis falsely marked its products as practicing U.S. Patent No. 10,256,786; and (iv) Akoustis engaged in unfair competition by recruiting large numbers of Qorvo employees to obtain Qorvo's confidential information.[1] *See* D.I. 1.

### B.     The Parties Stipulate to a Protective Order

Pursuant to Rule 26(c), the parties agreed that there is good cause for a protective order limiting the scope of disclosure of certain discovery materials. As a result, on April 12, 2022, the parties submitted a stipulated proposed protective order. D.I. 56. On April 14, 2022, the Court entered the Stipulated Protective Order. D.I. 57.

The Protective Order limits the scope of disclosure of two types of discovery materials—"Confidential" information and "Attorneys Eyes Only" ("AEO") information. For AEO materials, the Protective Order provides:

> Any Party may designate Documents as ATTORNEYS EYES ONLY upon making a good faith determination that the Documents contain information protected from disclosure by statute or that

---

[1] Qorvo alleged that Akoustis falsely marked its products because the '786 patent requires a single crystal piezoelectric structure. The Court disagreed, finding that the '786 patent does not require single crystal piezoelectric structure. *See* D.I. 152. As a result, Qorvo is no longer pursuing its claim for false patent marking.

3

> should be protected from disclosure as trade secrets or other highly
> sensitive business or personal information, the disclosure of which
> is likely to cause significant harm to an individual or to the business
> or competitive position of the designating Party.

D.I. 57, § 5.

AEO materials can only be shared with employees "who authored or recorded the designated Document and any person who has previously seen the designated Document." *Id.*, §§ 8(b)(5), 9. By contrast, "Confidential" materials may be disclosed to "[t]he officers, directors, and employees (including in-house counsel) of the Parties to whom it is reasonably necessary to disclose the information for the preparation and trial of the action." *Id.*, § 8(b)(2). The Protective Order permits each party to disclose materials designated AEO and Confidential to certain other prescribed categories of individuals, including outside experts. *Id.*, § 8(b)-(c).

Prior to the instant dispute, the parties generally agreed that sensitive technical and business information should be designated as AEO even when that information is relevant to claims or defenses asserted in this case. Indeed, Akoustis initially designated the very documents at issue in the Motion as AEO when Akoustis believed that those documents reflected Akoustis's own technical and business information. It was only when Akoustis discovered that the documents reflect information misappropriated from Qorvo that Akoustis changed course and argued that the information should not be treated as AEO.

### C.    Akoustis Produces Documents Showing Theft of Qorvo's Trade Secrets

In late 2022 and early 2023, Akoustis produced 296,431 pages of materials in response to discovery requests that Qorvo had served many months earlier (in April 2022 and June 2022). As Qorvo reviewed Akoustis's production, Qorvo discovered evidence of a widespread and sustained campaign to misappropriate Qorvo's trade secrets. The misappropriation encompassed large numbers of highly valuable trade secrets concerning, among other things, the design,

development, manufacturing, testing, and qualification of Qorvo's BAW filters, as well as Qorvo's confidential strategic business plans and product roadmaps. *See* D.I. 125, Exs. C-N. The documents Akoustis produced show that the misappropriation has been calculated and involved high-level executives from Akoustis, including the Chief Executive Officer (Jeffery Shealy), the former Chief Product Officer (Rohan Houlden), the Executive Vice President of Business Development (David Aichele), and the Vice President of Wafer Fab (Mary Winters). The documents also show that Akoustis employees took affirmative steps to obscure the theft of Qorvo's trade secrets, such as replacing Qorvo confidentiality legends with Akoustis logos and transmitting Qorvo's files from personal email accounts to avoid detection.

To date, Qorvo has identified more than **250 Qorvo documents containing trade secrets** in the materials that Akoustis has produced, but the number of misappropriated documents continues to grow as Akoustis produces additional materials.

### D. Qorvo Amends the Complaint and Designates Exhibits Containing Trade Secrets as "Attorneys Eyes Only"

Upon discovering Akoustis's misappropriation of trade secrets, Qorvo quickly turned to preparing the Second Amended Complaint (the "SAC"), which Qorvo filed on February 8, 2023. D.I. 125. Although not required to do so, Qorvo endeavored to identify specific misappropriated trade secrets in the SAC and attach exemplary exhibits reflecting the misappropriation. *See id.*, ¶¶79-153. On May 1, 2023, Qorvo served an extensive, 53-page identification of more than 70 categories of trade secrets that Akoustis has misappropriated from Qorvo.[2]

One of Qorvo's primary concerns upon discovering the theft of its trade secrets and filing the SAC was that Akoustis not be permitted to use the litigation process itself as a vehicle to

---

[2] This reflects the trade secrets identified so far. Qorvo believes there are additional trade secret materials in Akoustis's files that have yet to be produced.

**PUBLIC VERSION**

further disseminate those trade secrets to employees who did not previously review them. Thus, Qorvo designated certain exhibits to the SAC as AEO under the Protective Order.

### E. Qorvo Agrees to Allow Limited Access to Exhibits Containing Trade Secrets

Following the filing of the SAC, Akoustis objected to Qorvo's designation of the AEO Exhibits. In response, Qorvo proposed a compromise. In addition to the Akoustis employees allowed to review AEO materials under the Protective Order (e.g., those who had already received the AEO Exhibits), Qorvo agreed that Akoustis could share the AEO materials with: (i) three members of the Akoustis Board of Directors; (ii) three members of Akoustis's management team, excluding competitive decisionmakers such as Mr. Shealy, Mr. Aichele, and Ms. Winters;[3] and (iii) Akoustis's outside corporate counsel. D.I. 185, Ex. F. While Qorvo refused to grant Akoustis's counsel blanket authority to share the AEO exhibits with any witness designated to testify under Rule 30(b)(6), Qorvo also made clear that it would consider granting access to "additional persons (if any) on an as-needed basis." *Id.*

On April 1, 2023, Akoustis responded that the parties were "at an impasse" because "blocking our management team from seeing these allegations and related exhibits is not a workable solution."[4] Declaration of Jonathan R. DeFosse ("DeFosse Decl."), Ex. A. Akoustis never addressed the substance of Qorvo's proposal or explained why it would need to circulate AEO materials to every member of the "management team" (as opposed to three members, as Qorvo proposed).

---

[3] Under the Protective Order, Mr. Shealy, Mr. Aichele, and Ms. Winters would still be entitled to review the AEO document they previously sent or received.

[4] It is unclear why Akoustis omitted its response to Qorvo's proposed compromise from the exhibits to the Motion.

On April 25, 2023, Akoustis filed the Motion arguing (incorrectly) that Qorvo was seeking to prevent "Akoustis" from reviewing the AEO Exhibits in an effort to "ambush" Akoustis and used the Protective Order as a "shield and a sword." D.I. 183 at 1, 3. Again, Akoustis made no effort to explain its strident accusations in light of the compromise that Qorvo had proposed to allow access to the AEO Exhibits far beyond what the parties agreed was appropriate in the Protective Order. Nor did Akoustis explain why its management team should be uniquely permitted to review Qorvo's AEO materials when the same access to Akoustis's AEO materials is denied to Qorvo's management team.

### F.    The Court Identifies Areas of Agreement at the Status Conference

During the status conference on May 10, 2023, the Court identified areas of agreement between the parties. In particular, the Court noted that the parties agreed that Akoustis's general counsel and three members of the Akoustis Board of Directors can review the AEO materials. Akoustis, however, maintained its position that access to AEO Exhibits must be granted to Mr. Shealy, Mr. Aichele, and Ms. Winters. Given the focus on the three specific managers, it was unclear whether Akoustis was also maintaining its position that counsel should be free to show the AEO Exhibits to any other employee that counsel unilaterally deems "relevant" to its investigation.

### G.    The Parties Are Unable to Reach Agreement After the Status Conference

After the status conference, Akoustis proposed that the AEO Exhibits be shared with four members of its management team: Mr. Aichele, Ms. Winters, Drew Wright (Akoustis's General Counsel), and Karman Cheema (Akoustis's Chief Product Officer).[5] DeFosse Decl., Ex. B. In

---

[5] Akoustis also identified the three Board members it would like to have access to the AEO Exhibits and Qorvo has agreed to such access subject to confirmation that the three Board

7

response, Qorvo confirmed that Mr. Wright could access the AEO Exhibits. *Id.* Qorvo explained, however, that it continues to object to disclosing the AEO Exhibits to managers who make day-to-day competitive decisions with respect to Qorvo, including Mr. Aichele, Ms. Winters, Mr. Shealy, or Mr. Cheema. *Id.* Qorvo also responded that, to the extent Akoustis needs persons with technical or industry experience to analyze the AEO Exhibits and advise Akoustis on the case, the proper course in this case—as in any other case of this nature—would be to consult with the technical and industry experts that Akoustis has engaged, not to further disseminate Qorvo's materials to employees who make competitive decisions. *Id.*

## III.   LEGAL STANDARDS

Under the governing Protective Order, a party may oppose the designation of documents as AEO. *See* D.I. 57, § 11(b); *see also Royal Indem. Co. v. Pepper Hamilton LLP*, No. 05-cv-0165, 2006 WL 3827452, at *1 (D. Del. Dec. 27, 2006) ("Where a broad umbrella protective order is in place, a part may oppose the designation of a document as confidential."). "The party asserting the confidentiality designation then bears the burden of proof to justify the protective order's application to the challenged document." *Royal Indem.*, 2006 WL 3827552, at *1 (*citing Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986)). In particular, a party seeking to limit the disclosure of discovery materials must demonstrate "good cause" for the limitation. *Id.* at *2.

"In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). In particular, the court "must balance the requesting party's need for information

---

members are not involved in the day-to-day management of Akoustis or product development activities. *See* DeFosse Decl., Ex. B.

against the injury that might result if uncontrolled disclosure is compelled." *Id.* In connection

with this balancing process, courts are permitted to place conditions on the disclosure of

documents when the designating party identifies a "clearly defined, specific, and serious" injury

that would result from uncontrolled disclosure. *Scranton Prods., Inc. v. Bobrick Washroom*

*Equip., Inc.*, 190 F. Supp. 3d 419, 439 (M.D. Pa. 2016). The Third Circuit has recognized that

"[t]he most common kind of order allowing discovery on conditions is an order limiting the

persons who are to have access to the information disclosed and the use to which these persons

may put the information." *Pansy*, 23 F.3d at 787.

## IV.    ARGUMENT

### A.    Qorvo Properly Designated the Exhibits as Attorneys Eyes Only under the Protective Order

Akoustis argues, as a threshold matter, that Qorvo improperly designated materials as

AEO under the Protective Order. D.I. 184 at 14-17. This argument lacks merit.

Under the Protective Order, a party is entitled to designate discovery materials as AEO if

the designating party makes a good faith determination that (i) the documents include "trade

secrets or other highly sensitive business . . . information"; and (ii) the disclosure of the

documents "is likely to cause significant harm . . . to the business or competitive position of the

designating Party." D.I. 57, § 5. The materials Qorvo designated as AEO easily satisfy these

requirements.

#### 1.    The exhibits contain trade secrets and other highly sensitive business information

Akoustis argues that that AEO Exhibits do not include "trade secrets or other highly

sensitive business . . . information" that would justify an AEO designation. D.I. 184 at 14-16.

But Akoustis does not offer any analysis of any of the AEO Exhibits to support its argument. *See*

*id.* As addressed in the declaration of Dr. Stanley Shanfield, each of the AEO exhibits contains

trade secrets and highly sensitive business information that is not generally available to Qorvo's competitors. *See* Declaration of Dr. Stanley Shanfield ("Shanfield Decl."), ¶¶ 13-42. By way of summary, the AEO Exhibits reflect trade secrets and/or highly sensitive information concerning:

- **Exhibits C-2, K-2**: Qorvo's procedures for inspecting manufactured products (Shanfield Decl., ¶¶ 15-17);

- **Exhibits D-2, D-3**: Qorvo's procedures for testing products (*id.*, ¶¶ 18-20);

- **Exhibits E-2, I-2, K-2**: Qorvo's procedures for branding and embedding product codes in semiconductor products (*id.*, ¶¶ 21-23);

- **Exhibits F-2, G-2**: Qorvo's reflow soldering process (*id.*, ¶¶ 24-25);

- **Exhibits H-2, H-3**: Qorvo's product development process (*id.*, ¶¶ 26-28);

- **Exhibits J-2, J-3**: Qorvo's employment and compensation structure (*id.*, ¶¶ 29-31);

- **Exhibits L-2, L-3, L-4**: Qorvo's line of automotive products (*id.*, ¶¶ 32-34);

- **Exhibit M-2**: Qorvo's methods for measuring insertion loss (*id.*, ¶¶ 35-37); and

- **Exhibit N-1**: Qorvo's anticipated product timelines, line of automotive products, and market strategy (*id.*, ¶¶ 38-41).[6]

The information found in the above documents falls within the statutory categories of trade secret information—e.g., "financial, business, scientific, technical, economic, or engineering information." *See* 18 U.S.C. § 1839(3). As Dr. Shanfield explains, the information found in these documents has independent economic value—e.g., the information was not generally known to BAW filter competitors and provided Qorvo with a competitive edge.

---

[6] Exhibit N-1 also includes several emails showing, among other things, Akoustis's use and circulation of Qorvo's trade secrets (AKTS_00156270, AKTS_00117498, AKTS_00138229, AKTS_00138271, AKTS_00141631, AKTS_00151319, AKTS_00145340, AKTS_00146974, AKTS_00167236). Akoustis originally designated these emails as AEO, but Qorvo has no objection to re-designating the emails themselves as "Confidential" so long as the attachments reflecting Qorvo's trade secrets remain AEO.

PUBLIC VERSION

Shanfield Decl., ¶¶ 13, 15-41; *see also* 18 U.S.C. § 1839(3)(B) (a trade secret must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means"). Qorvo also took reasonable measures to keep the above documents secret, including requiring password protection, using confidentiality legends, training employees on handling procedures for confidential information, and employing systems to detect unauthorized downloads of information. *See* Declaration of Michael Boyd ("Boyd Decl."), ¶¶ 4-13; *see also* 18 U.S.C. § 1839(3)(A) ("the owner [of the trade secret] has taken reasonable measures to keep such information secret").

Akoustis argues that Qorvo cannot rely on "confidentiality legends" alone to justify its AEO designations. D.I. 184 at 15, n.8. But Qorvo did not rely on the confidentiality legends alone. To the contrary, Qorvo worked with experts to understand the importance and confidentiality of the information. While the confidentiality legends certainly support Qorvo's designations, the designations are not based on those legends alone.

Akoustis also argues that the documents cannot be designated as AEO because Qorvo "has not yet established" its trade secret claims. D.I. 184 at 14. But, if Akoustis's circular argument were correct, no plaintiff in a trade secret case could ever designate its trade secrets as AEO during discovery. That is not the law. In fact, just the opposite is true—"[t]he disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *In re City of New York*, 607 F.3d 923, 935 (2d Cir. 2010); *see also Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, No. 19-cv-0637, 2021 WL 1599247, at *2 (D. Utah Apr. 23, 2021) ("Courts routinely allow documents containing confidential information and trade secrets to be designated as 'attorneys' eyes only' in litigation between competitors.").

11

Finally, even if the Court were reluctant at this stage of the litigation to find that the AEO

Exhibits contain trade secrets, those documents would still qualify for AEO designations because

they contain "other highly sensitive business . . . information." *See* Shanfield Decl., ¶¶ 15-41.

### 2. Further disclosure of the exhibits is likely to cause significant harm to Qorvo's business and competitive position

Further disclosure of the AEO Exhibits is also "likely to cause significant harm" to

Qorvo's "business or competitive position." D.I. 57, § 5. It is undisputed that Qorvo and

Akoustis are direct competitors in the market for BAW filters. As the Third Circuit has

repeatedly held, an intention to "continue[] use of a trade secret or to disclose it to a competitor

will almost certainly show immediate irreparable harm." *Alchem USA Inc. v. Cage*, No. 21-2994,

2022 WL 3043153, at *4 n. 7 (3d Cir. Aug. 2, 2022) (citing *Campbell Soup Co. v. ConAgra, Inc.*,

977 F.2d 86, 92-93 (3d Cir. 1992)). Thus, "[c]ourts routinely allow documents containing

confidential information and trade secrets to be designated as 'attorneys' eyes only' in litigation

between competitors." *Mitchell Int'l*, 2021 WL 1599247, at *2.

Akoustis argues that Qorvo would not suffer any "new" harm because "Akoustis" has

already misappropriated the documents and any further harm to Qorvo would be "at worst,

incremental." D.I. 184 at 16. Akoustis's argument has at least two fundamental problems. First,

while Akoustis's use of Qorvo's trade secrets has been widespread and substantial, that does not

mean that every employee at Akoustis has received and reviewed the trade secrets. As such,

rescinding the AEO designations would permit further dissemination of the trade secrets to

employees who have not yet reviewed those trade secrets. Second, the impact of such further

dissemination cannot be dismissed as "incremental" given the **massive scale** of the

misappropriation at issue in this case. As noted above, Akoustis has stolen more than 250

confidential Qorvo documents. While the instant Motion concerns only the AEO Exhibits (i.e.,

19 exhibits to the SAC identified in the Motion), Akoustis's arguments would apply equally to remaining misappropriated Qorvo documents found in Akoustis's files, which Qorvo has also designated as AEO. The cumulative impact of further dissemination of those documents to additional employees who could use the information to compete with Qorvo is significant.

Courts have repeatedly held that disclosure of sensitive commercial information to employees of a competitor qualifies as particularized harm that justifies an AEO designation. For example, "[a] showing that materials are trade secrets or other confidential business information and would provide competitive advantage to third parties thereby resulting in particularized harm upon disclosure does demonstrate 'good cause'" for a protective order. *Am. Infrastructure, Inc. v. Zachry Constr. Corp.*, No. 08-2701, 2009 U.S. Dist. LEXIS 14919, at *1 (E.D. Pa. Feb. 23, 2009); *see also Scranton Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 190 F. Supp. 3d 419, 440 (M.D. Pa. 2016) (holding that AEO designations were warranted where "[d]e-designation of this information would enable all [of Defendant's] employees to determine . . . highly confidential pricing and business information which [Defendant] could use to gain a competitive advantage over [Plaintiff]."). As Dr. Shanfield sets forth in his declaration, the AEO exhibits contain sensitive business information that would provide an advantage to companies seeking to compete with Qorvo. Shanfield Decl., ¶¶ 13, 15-41.

### B.    "Good Cause" Exists to Limit Access to the Exhibits

Akoustis also argues that there is no good cause to restrict access to the AEO Exhibits because any harm to Qorvo from further circulation of the AEO Exhibits is outweighed by the prejudice Akoustis will suffer in preparing its defense. D.I. 184 at 17-19. Again, this argument lacks merit.

13

1.   **Qorvo will suffer a clearly defined, specific, and serious injury from further disclosure of the exhibits**

Akoustis first argues that Qorvo's claims of harm are merely "generic." Not so. Qorvo has set forth a specific claim of serious injury. As Dr. Shanfield has explained—on a document-by-document basis—the AEO Exhibits contain specific trade secrets and other specific (and highly sensitive) business information. Shanfield Decl., ¶¶ 13, 15-41. Dr. Shanfield has also explained how the further dissemination of this specific information threatens to harm Qorvo by eroding the competitive advantage that Qorvo has built in the market for BAW filters. *Id.* Thus, far from making "generic" claims of injury, Qorvo has identified specific injuries it would suffer from the further disclosure of the AEO Exhibits.

Under these circumstances—where disclosure of technical and other sensitive business information to a direct competitor is at issue—courts routinely hold that "good cause" exists to limit the disclosure of discovery materials. *See, e.g.*, *Am. Infrastructure*, 2009 U.S. Dist. LEXIS 14919, at *1 ("A showing that materials are trade secrets or other confidential business information and would provide competitive advantage to third parties thereby resulting in particularized harm upon disclosure does demonstrate 'good cause.'"); *In re Adobe Sys., Inc. Sec. Litig.*, 141 F.R.D. 155, 158 (N.D. Cal. 1992) ("Good cause may be that the protected information includes proprietary and technical information, financial information and business strategy or marketing information which, if revealed to a competitor, would put a company at a competitive disadvantage."); *JamSport Ent., LLC v. Paradama Prods., Inc.*, No. 02 C 2298, 2005 WL 14917, at *2 (N.D. Ill. Jan. 3, 2005) ("Good cause may be established by showing that particular information amounts to a trade secret such that disclosure would put the holder at a competitive disadvantage if made public.").

### 2. Akoustis has no compelling need to share the exhibits beyond the access Qorvo has already granted

Akoustis argues that it must be allowed to share the AEO exhibits with employees who have "history, knowledge, and decision-making authority" relevant to this case. D.I. 184 at 18. In particular, Akoustis envisions that Akoustis employees themselves will act as quasi-experts who analyze documents containing Qorvo's trade secrets to advise on (i) whether the information is confidential; (ii) whether the information could be obtained elsewhere; and (iii) whether the trade secrets "have any significance in the context of . . . Akoustis' business." *Id*.

Akoustis's approach is backwards. It is well-established that "competitive decision-making is the sort of disclosure risk that weighs heavily **against** granting access." *R.R. Donnelley & Sons Co. v. Quark, Inc.*, No. CIVA 06-032, 2007 WL 61885, at *1 (D. Del. Jan. 4, 2007) (denying access to executive involved in advising "on company-wide business initiatives and opportunities for growth" and "research and development and applications engineering and other strategic initiatives") (emphasis added). Courts have explained that executives with technical knowledge and decision-making authority should be **denied access** to a competitor's confidential information because the risk is too great that those executives will misuse the information, even if unintentionally. *See, e.g.*, *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (denying plaintiff's president access to defendant's AEO documents given his expertise in the avionics field, "accepting that Mr. Greene is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from Sundstrand's documents from those he develops from his own ideas."); *Tailored Lighting, Inc. v. Osram Sylvania Prods.*, 236 F.R.D. 146, 149 (W.D.N.Y. 2006) (denying plaintiff's president access Highly Confidential – Counsel Only documents: "this Court has no reason to question the integrity of plaintiff's

15

PUBLIC VERSION

president and patent inventor; nonetheless, it seems unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests."); *Monolithic Power Sys., Inc. v. Intersil Corp.*, No. CV 16-1125, 2018 WL 6113465, at *2 (D. Del. Nov. 19, 2018) ("[T]he risk of economic injury from even non-deliberate disclosure by an individual with scientific expertise of confidential scientific information belonging to a competitor warrants the entry of this more restrictive protective order.").

Akoustis argues that denying Akoustis employees access to the AEO Exhibits "triggers fundamental due process concerns" because "Akoustis" will be unable to "assist in its own defense." D.I. 184 at 18. This assertion is factually meritless. Under the governing protective order, any Akoustis employee who previously sent or received the AEO Exhibits is permitted to access those documents and consult with Akoustis's litigation counsel. D.I. 57, § 8(b)(5). Moreover, Akoustis can share the AEO Exhibits with its outside experts, its corporate counsel, its in-house counsel, three members of the management team (other than competitive decision makers), and three board members.[7]

Akoustis has far more latitude in this case than courts have required to satisfy Due Process considerations. For instance, in *Safe Flight*, where technical patent information and trade secrets were at issue, the Court found that disclosure only to trial counsel, in-house counsel and

---

[7] Akoustis cites *Water Tree Ventures, LLC v. Giles*, No. 18-cv-1421, 2019 WL 13162408, at *3 (N.D. Fla. Apr. 26, 2019) for the proposition that it is "unreasonable" to accuse a defendant of trade secret misappropriation and "then deny Defendants access to the information allegedly misappropriated." But *Water Tree* is inapposite here because "Akoustis" has not been denied access to the trade secrets. As noted elsewhere, the Akoustis employees involved in the alleged misappropriation are permitted to access the AEO Exhibits that they previously received, along with three members of Akoustis's management team and three members of Akoustis's Board of Directors.

to approved outside experts sufficiently allowed the plaintiff to participate in the case. 682 F. Supp. at 21-22. While Akoustis argues that AEO designations are a "drastic remedy" (D.I. 184 at 19), it is also well-established that, "[i]n cases involving the disclosure of trade secrets, courts often issue protective orders limiting access to the most sensitive information to counsel and their experts." *Tailored Lighting*, 236 F.R.D. at 148; *accord Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 85 (D. Del. 2003) ("When information, such as the customer list at issue here, is confidential and subject to misuse by a litigant, it is appropriate for the Court to order that the information be made subject to a protective order and be available only to trial counsel."); *McAirlaids, Inc. v. Kimberly-Clark Corp*., 299 F.R.D. 498, 500–01 (W.D. Va. 2014) ("Courts have routinely allowed disclosure of confidential information to in-house counsel and experts, upon the premise that those individuals are segregated from the competitive day-to-day business decisions of the company.").

Under these circumstances—where litigation counsel is free to investigate the trade secret claims with the employees involved in the alleged misappropriation, consult with industry experts, and provide assessments to Akoustis's General Counsel, three members of management, and three members of the Board of Directors—there is no colorable claim that Akoustis is prejudiced by preventing other employees from accessing the AEO Exhibits.  Moreover, any harm that Akoustis suffers from the access restrictions is far outweighed by the potential prejudice to Qorvo of allowing further dissemination of the AEO Exhibits.

V.    **CONCLUSION**

Qorvo respectfully requests that the Court deny the Motion to Re-Designate the Second Amended Complaint Marked Attorneys' Eyes Only to Confidential (the "Motion") (D.I. 183, 184).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900
James C. Wald
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

May 19, 2023

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 19, 2023, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                    *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

David A. Jakopin, Esquire                                        *VIA ELECTRONIC MAIL*
Dianne L. Sweeney, Esquire
Ryan Selness, Esquire
PILLSBURY WINTHROP SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA  94304-1115
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Robert M. Fuhrer, Esquire                                        *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA  22102-4856
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

David L. Stanton, Esquire                                        *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA  90017-5524
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

**PUBLIC VERSION**

Theresa A. Roozen, Esquire                          *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC  20036-3006
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Shani Rivaux, Esquire                              *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL  33131
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*
_____

Jeremy A. Tigan (#5239)