1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

QORVO, INC.,                    |
                                |
            Plaintiff,          |
                                |
vs.                             |  NO. 21-CV-01417
                                |
AKOUSTIS TECHNOLOGIES,          |
INC., AND AKOUSTIS, INC.,       |
                                |
            Defendants.         |
_____


TRANSCRIPT OF THE MOTION CONFERENCE

BEFORE THE

HONORABLE JON P. MCCALLA


THURSDAY

MAY 25, 2023


TINA DuBOSE GIBSON, RPR
OFFICIAL REPORTER
FOURTH FLOOR FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103

**UNREDACTED TRANSCRIPT**

1                A P P E A R A N C E S

2

3        Appearing on behalf of the Plaintiff:

4             ROBERT M. MASTERS
              ROY JUNG
5             Sheppard, Mullin, Richter & Hampton, LLP
              2099 Pennsylvania Avenue, NW, Suite 100
              Washington, DC  20006-6801
6             (202) 747-1900

7             JONATHAN DEFOSSE
              Sheppard, Mullin, Richter & Hampton, LLP
8             1540 El Camino Real
              Menlo Park, California  94025
9             (650) 815-2600

10            JEREMY A. TIGAN
              Morris, Nichols, Arsht & Tunnell LLP
11            1201 North Market Street, 16th Floor
              Wilmington, Delaware 19899-1347
12            (302) 351-9106

13

14       Appearing on behalf of the Defendants:

15            DAVID A. JAKOPIN
              DIANNE L. SWEENEY
16            THERESA A. ROOZEN
              DAVID L. STANTON
17            RYAN SELNESS
              Pillsbury, Winthrop, Shaw, Pittman, LLP
18            2550 Hanover Street
              Palo Alto, California 94304-1115
19            (650) 233-4500

20            RONALD P. GOLDEN, III
              STEPHEN BRAUERMAN
21            Bayard, PA
              600 North King Street, Suite 400
22            Wilmington, Delaware 19801
              (302) 655-5000

23

24

25

1              THURSDAY

2            MAY 25, 2023

3        ----------------------

4

5         THE COURT:  We're here for a fairly short

6  discussion relative to the motion, which is at 208, which is

7  the defendants' motion to compel production of documents in

8  connection with 76, 77, 78 and 79 with the assertion by the

9  defense that these would fall under -- or would be close

10  enough to allow possible use under Rule 401.  And so we're

11  going to start with Mr. Stanton if I can find him there.

12         MR. STANTON:  Here I am, Your Honor.

13         THE COURT:  There he is.  There he is.  And let

14  you tell me -- I understand generally what you want, and

15  we're aware of the complaint or amended complaint as to

16  Count 5.  I think there's a real question on relevance here,

17  so I know you want to address that.

18         MR. STANTON:  Absolutely, Your Honor.  Qorvo has

19  alleged -- and thank you for taking the time to do this

20  hearing.  We appreciate you weighing in.

21         THE COURT:  Sure.

22         MR. STANTON:  Qorvo has alleged unfair hiring

23  practices by Akoustis of persons with BAW filter expertise in

24  engineering, marketing, logistics, supply chain, product

25  development, testing, or manufacturing of BAW filters.  They

**UNREDACTED TRANSCRIPT**

1  contend that we recruited and hired from Qorvo employees that

2  Akoustis needed to fill the roles it needed to fill

3  consistent with their training and experience.

4        Those accusations are made in paragraph 55 of the

5  second amended complaint, which says that Akoustis focused on

6  Qorvo employees with business development and BAW filter

7  design experience when it was initially designing its

8  products and then focused on Qorvo employees with quality,

9  manufacturing and management expertise as it moved from

10  product design to manufacturing and sales.

11        RFP 76 through 79 track the allegations there.

12  As we said in all of our meet and confer correspondence, we

13  seek the documents called for here to show that what Akoustis

14  is accused of doing is a common business practice and not

15  unfair competition.  So the documents --

16        THE COURT:  Now, how would that have anything to

17  do -- if everybody decided that they were going to bribe

18  officials in order to obtain business and that became a

19  common practice, what difference would it make?  It would

20  still be a bribe.  It would still be wrong.

21        MR. STANTON:  Sure.  I don't know that we're

22  looking for anything that's wrong.  I think an important

23  aspect here is that -- because the BAW filter technology is

24  so sophisticated and technical, it's not obvious where to

25  draw the line between an employee's personal knowledge,

**UNREDACTED TRANSCRIPT**

1    expertise, technical know-how, and the experience that she

2    can reasonably draw upon when working for a subsequent

3    employer and which of those things -- how much of her

4    knowledge and experience can her former employer prevent her

5    from practicing.

6            In other words, information about the particular

7    skills, knowledge, and experience that Qorvo recruited for

8    was going to provide a baseline for what cannot be a trade

9    secret or what cannot be information that Akoustis had

10   properly obtained or used to unfairly compete.

11           Without this kind of context about the kinds of

12   information, skills and experience that are important to

13   Qorvo when hiring its BAW filter employees as a backdrop, it

14   leaves everything --

15           THE COURT:  Let's go to counsel opposite on this

16   issue.  I'm not sure this is disproportionate in terms of

17   what we might learn, but I don't want to say that for sure.

18   I'm going to go to you on that particular point.  I mean,

19   they have a background.  That's a baseline.  What about that

20   argument?

21           MR. DEFOSSE:  Thank you, Your Honor.  So I think

22   there's two problems with these requests, and it may not be

23   apparent to Your Honor what they're actually asking for

24   because the requests aren't reproduced in the motion that

25   they filed.

**UNREDACTED TRANSCRIPT**

1          THE COURT:  We've got a copy of them, though.

2          MR. DEFOSSE:  Okay.  So the four requests --

3          THE COURT:  Let me make sure.  I mean, it's all

4   documents and communications concerning or reflecting Qorvo's

5   efforts to identify, recruit, or hire personnel with precise

6   -- or prior expertise or experience in BAW filter technology,

7   engineering, et cetera.  It's right here.  I've got 76, 77,

8   78 and 79.

9          MR. DEFOSSE:  Okay.  Perfect.  So collectively,

10  the request essentially asks Qorvo for all documents related

11  to its recruitment or hiring of any employee who has prior

12  experience with the technology at issue, and there's two

13  problems from our perspective with that request.  The first

14  is relevance, as Your Honor started with.

15          Contrary to what Mr. Stanton said, Akoustis is

16  not accused of unfair competition because it hired employees

17  with prior experience in the relevant technology.  We're, of

18  course, not arguing that hiring employees with experience is

19  unfair competition.  We've said that before in the meet and

20  confers.  I'm saying that now on the record.  That's not our

21  allegation here.

22          The allegation is that they've targeted Qorvo

23  employees to obtain confidential information from Qorvo.

24  That's the allegation that's at issue.  We've agreed to

25  produce documents in response to literally dozens of requests

**UNREDACTED TRANSCRIPT**

1   about that actual allegation that's at issue.  We feel that

2   asking for documents concerning Qorvo's general hiring

3   practices or hiring people with experience is just not

4   relevant.

5          Of course, Qorvo hires employees who have prior

6   experience, as does any business, and that's not, again, what

7   Akoustis is accused of committing unfair competition with

8   respect to.

9          The second problem, as Your Honor intuited, is

10   proportionality.  We don't even know where we'd begin to

11   start responding to these requests.  Qorvo is a worldwide

12   company.  It has 51 locations in 19 countries.  It has 8,000

13   employees currently.  So in order to produce all documents

14   relevant to the hiring of any employee with prior technical

15   experience would just be -- I mean, it would likely double

16   the size of the documents we've produced in this case

17   already, which is substantial.  So, you know, we have those

18   two problems:  relevance and proportionality.

19          THE COURT:  All right.  Well, does it, however,

20   provide some baseline for understanding the recruiting

21   process that would be a legitimate recruiting process for the

22   defendant, for Akoustis?

23          MR. DEFOSSE:  I honestly don't believe so, Your

24   Honor.  I think, again, it's not in dispute that Qorvo hires

25   employees with prior technical experience.  So if that's what

**UNREDACTED TRANSCRIPT**

1   they want to show through the documents, then that's not

2   really a matter that's in dispute.  We can have a stipulation

3   on that fact.

4          THE COURT:  Okay.  Tell me exactly what the

5   stipulation would say, or as close as you can.

6          MR. DEFOSSE:  Qorvo stipulates that it hires

7   personnel with prior experience with BAW filter technology.

8          THE COURT:  Okay.

9          Well, I'm sure, Mr. Stanton, you don't have a

10   problem with that, at least starting there?

11          MR. STANTON:  No, it's a good start, Your Honor,

12   for sure.  I do think that this gets into sort of the

13   technical nuances of this case.  Right?  Without the

14   specifics around the kinds of information and skills and

15   experience that Qorvo hires for, it leaves everything that

16   Akoustis sought at issue in the case.

17          The jury will have to decide whether experience

18   with a Rohde and Schwarz RF spectrum analyzer is specialized

19   knowledge to which Qorvo has a proprietary interest or common

20   knowledge that anyone involved in testing BAW filters needs

21   to have.  That kind of specificity of what Qorvo sought with

22   these and other technical qualifications would allow a jury

23   to compare the two companies' respective practices and make

24   informed assessments of this.

25          THE COURT:  You're not comparing practices,

**UNREDACTED TRANSCRIPT**

 1    though, I don't think.  We're looking at what was actually

 2    done --

 3              Mr. DeFosse, go through that again.

 4              MR. STANTON:  Myself, Mr. Stanton?  Yes, I'm

 5    saying that --

 6              THE COURT:  I'm sorry.  I'm switching to

 7    Mr. DeFosse.

 8              MR. STANTON:  Oh, sorry.

 9              THE COURT:  You probably pronounce it

10    differently.  How do you pronounce it?

11              MR. DEFOSSE:  It's DeFosse, Your Honor, but

12    common mistake there.

13              THE COURT:  DeFosse, okay.

14              MR. DEFOSSE:  So, I'm sorry, Your Honor.  What

15    would you like me to address?  I apologize.

16              THE COURT:  Well, you were going to go back

17    and -- we're trying to see where both sides are in agreement.

18              MR. DEFOSSE:  Yes.

19              THE COURT:  It sounds like there's a lot of

20    nondispute here as to what is routine in the hiring of

21    employees to engage in this particular kind of work.  And so

22    I think we're saying, well, sure, we expect it's not unusual

23    that we're going to hire people who have certain types of

24    technical backgrounds, sure, absolutely, and you're going to

25    hire people who have some experience in the industry.  Is

**UNREDACTED TRANSCRIPT**

1   that correct?

2          MR. DEFOSSE:  Yes, I think as a general matter,

3   that's correct, Your Honor.  And, again, I don't see the real

4   dispute on that issue.  What Mr. Stanton seemed to be

5   suggesting was that they would need to have discovery on all

6   of Qorvo's recruiting practices in order to identify what

7   information may or may not be confidential or trade secret

8   information, and it seems to me that's -- I mean, I don't see

9   the direct line between those things.  To the extent that

10  they're looking for discovery of information that we consider

11  trade secret or confidential, there are, again, literally

12  dozens of requests where they've asked for that information

13  and we've agreed to produce the information.

14         All that's at issue here is they're asking for

15  all documents, all communications reflecting Qorvo's

16  recruitment and hiring of any employee who had prior

17  experience.  So, I mean, if that is -- I mean, if the goal is

18  to get information about information we consider to be trade

19  secret or confidential, we're already doing that.  We don't

20  need these requests to address that issue.

21         THE COURT:  Okay.  Let's go back to Mr. Stanton.

22  I think there are some things you are going to agree on, but

23  go ahead and tell me.  I've got these very specific 76, 77,

24  78, and 79.  And starting with 76, why is that going to help

25  us with an issue in this case?

**UNREDACTED TRANSCRIPT**

1          And you can start.  It says, I think it's all

2  documents and communications concerning or reflecting Qorvo's

3  plan or actual evaluation, recruiting or hiring of any

4  current or former Akoustis employee.  I'll just ask:  How

5  many former Akoustis employees have they hired that you're

6  aware of?

7          MR. STANTON:  I don't have the exact number, Your

8  Honor.  I think it's a dozen or so that we've identified so

9  far.

10          THE COURT:  Okay.  And let me make sure.  We're

11  going to be back to the other side to check that out.  So how

12  many former Akoustis employees, how many former defendants'

13  employees has the plaintiff hired?

14          MR. DEFOSSE:  I'm sorry, Your Honor, I do not

15  have the exact number.  It's a very small number.  I would

16  not have said a dozen, but I have not gone through and

17  created the list.

18          THE COURT:  Okay.  Okay.  And so it's a small

19  number.

20          And, Mr. Stanton, do you know exactly?  I know

21  you were kind of looking for that.

22          MR. STANTON:  I think it's only two, actually,

23  Your Honor.

24          THE COURT:  Okay.  Two employees.  Okay.  So

25  there's not a question that they've hired two former Akoustis

**UNREDACTED TRANSCRIPT**

1  employees.

2            Were those employees previously Qorvo employees,

3  then, Mr. Stanton?

4            MR. STANTON:  I don't know if those employees had

5  come from Qorvo before they went to Akoustis.  I just don't

6  have that.

7            THE COURT:  Okay.

8            MR. STANTON:  But they were definitely Akoustis

9  employees who went to Qorvo.  I think one of them might have

10  been.

11            THE COURT:  And I'm going to ask:  Were they

12  engineers?

13            MR. STANTON:  Yes.  One is a very senior engineer

14  at Akoustis.

15            THE COURT:  Okay.  Okay.  All right.  And so you

16  want all documents and communications concerning or

17  reflecting Qorvo's plan.  Now, that's probably not

18  appropriate -- or actual evaluation, recruitment, or hiring

19  of those two employees.

20            MR. STANTON:  With respect to those two, if

21  they're currently planning or planned in the past to target

22  Akoustis's employees, we'd want that information as well.

23            THE COURT:  How will that help us again with

24  anything in the case?

25            MR. STANTON:  Again, I think that the background

**UNREDACTED TRANSCRIPT**

1    for evaluating sort of what is a baseline skill set and

2    what's the level of ordinary skill for these areas that they

3    claim are trade secrets or were somehow improperly targeted

4    by Akoustis, that's what we're trying to get at here.

5              And let me just briefly address the idea of all

6    documents.  I get that that's broad.

7              THE COURT:  Sure, it is broad.

8              MR. STANTON:  Yes.  And we've had a process

9    throughout this case, and both parties have served requests

10   to say all documents and communications as it often happens.

11   Typically, there's a back and forth during meet and confer

12   when that happens about narrowing the scope of those kinds of

13   requests in a way that's appropriate for the receiving

14   parties, you know, the context in which it's being directed,

15   you know, what's at issue here, our USA employees.  We're

16   welcoming a conversation with them around developing a set of

17   reasonable and proportional searches to identify these

18   documents pursuant to the parties' ESI protocol.

19             That's what we've done with all of the other many

20   requests for productions that we've met and conferred about.

21   We talked about them, we came up with appropriate search

22   terms.  And we would be amenable to, you know, an appropriate

23   scope on dealing with this.  But things like, you know, their

24   job listings, resumes that they're getting, interview scripts

25   and transcripts, their new hire evaluations, the things that

**UNREDACTED TRANSCRIPT**

1   they're looking to get, I really do think provides an

2   important background for what the jury doesn't need to

3   consider really.  Really, the jury doesn't need to

4   consider the -- as being possibly an unfair method of

5   competition.

6           THE COURT:  Sure, sure.

7           Now, your next one is 77, all documents and

8   communications concerning or reflecting Qorvo's efforts to

9   identify, recruit, or hire personnel with prior experience or

10  filter experience, technology, engineering, marketing, et

11  cetera.  I mean, again, it's extraordinarily broad.

12          MR. STANTON:  Sure.  You know, but each of these

13  are specific areas wherein, in, you know, paragraph 55 of the

14  second amended complaint and elsewhere, Qorvo alleges that

15  Akoustis unfairly competed by seeking out Qorvo's employees

16  with this specific kind of expertise.  That's their

17  allegation.  By targeting people with these specific skills

18  and background at the time that Akoustis needed those skills

19  and backgrounds to grow as an organization that that amounted

20  to unfair competition.  That's part of their case.  That's

21  the way they framed the case.

22          THE COURT:  What if they say, well, that's not a

23  focus of their case?  Is that -- doesn't that help some?

24          MR. STANTON:  I mean, it is the focus of their

25  case if they want to amend their complaint.

**UNREDACTED TRANSCRIPT**

1          THE COURT:  I'm sorry.  You don't get to tell

2     them what their focus is, so I'm going to ask them what their

3     focus is.

4          MR. DEFOSSE:  Thank you, Your Honor.  I

5     appreciate that.  And I feel like I'm sounding like a broken

6     record here, but I will say it as clearly as I can.  It is

7     not a focus of our case.  We do not allege that hiring an

8     employee with prior experience is unfair competition.  All

9     stop.  That's not the allegation.

10          What they've done, Mr. Stanton keeps referring to

11     paragraph 55 of the complaint, they've kind of cherry picked

12     one sentence out of one paragraph in the middle of the

13     complaint and said this -- you're accusing us of committing

14     unfair competition because of this one sentence.  It's kind

15     of like a background sentence building up to explaining the

16     scheme that we allege that Akoustis was involved in to target

17     employees from Qorvo in order to obtain confidential

18     information.

19          So, yes, in order to make that allegation, we

20     have to point out that they're recruiting employees from

21     Qorvo to obtain confidential information from them, but the

22     act that's unfair competition is not recruiting someone with

23     prior experience.  It's recruiting someone to obtain

24     confidential information.  I think we've been pretty clear

25     about that.

**UNREDACTED TRANSCRIPT**

1         THE COURT:  Are there particular Akoustis

2   employees that were recruited from Qorvo that you say were

3   not -- would not be the subject of any unfair competition or

4   the taking of any trade secret, et cetera?

5         MR. DEFOSSE:  At this -- there may be.  At this

6   point, we're not willing to exclude anyone given the breadth

7   of the evidence we found in Akoustis's files, which

8   implicates very large numbers of employees, but it is

9   certainly theoretically possible that you can recruit someone

10  that Akoustis has recruited someone, has not sought to get

11  confidential information from them, and then that would not

12  be part of this case.

13        THE COURT:  Sure.  Okay.  All right.  Number 78

14  is all doc- -- again, it's the all point, but all documents,

15  communications reflecting or concerning Qorvo's use of

16  third-party or in-house recruiters to identify, recruit, or

17  hire personnel with prior experience or expertise in the

18  filter technology that we're discussing, including personnel

19  with skills and engineering and so forth and so on.

20        So, Mr. Stanton, I mean, that's -- again, that's

21  very broad, and I think you're saying you would narrow that.

22        MR. STANTON:  We would certainly agree to engage

23  in a discussion around how to search for and identify a

24  reasonable scope of those documents.  You know, Qorvo has

25  already deposed two recruiters Akoustis used, and the subject

**UNREDACTED TRANSCRIPT**

1  matter of the depositions with largely about Akoustis's

2  efforts to recruit and hire people who have the kind of

3  expertise listed in the request.  And since Qorvo has already

4  sought this kind of information through discovery, we're just

5  asking to do the same thing.  It tracks specific allegations.

6            And, you know, those specific allegations, I

7  understand that their case is not about, you know, recruiting

8  people with ordinary skill in the industry, but we're looking

9  to find discovery on what ordinary skill in the industry is.

10  That's what these documents will show.

11            THE COURT:  Sure.

12            And what about that, Mr. DeFosse?  I mean, is

13  there a question about people of ordinary skill in the

14  industry and what they would just know as a matter of being

15  people in the industry?

16            MR. DEFOSSE:  I'm not sure.  That's the first

17  time I've heard that as a reason to pursue these requests.

18  I'm not sure there would be.  My kind of off-the-cuff

19  reaction to that is that's why you have industry experts who

20  can talk about those things or witnesses.  Asking Qorvo to

21  produce all of its documents related to recruiting people

22  with prior experience seems to me to be not the right way to

23  do that.

24            THE COURT:  Okay.  Well, this is not a recruiting

25  case, as I understand it, as it relates to the conduct of

**UNREDACTED TRANSCRIPT**

1   Qorvo.

2              Would you agree with that, Mr. Stanton?  You're

3   not saying they did something wrong in recruiting, right?

4              MR. STANTON:  No, that's right.  We want to show

5   that what we did was comparable to what they did because they

6   didn't do anything wrong in recruiting.

7              THE COURT:  Okay.  Now, wouldn't that be a 403

8   problem if you were presenting it to the jury?

9              MR. STANTON:  I don't see how their own

10  admissions of the kinds of skills that they are seeking would

11  give rise to those issues.  What would be more prejudicial

12  than that?  We're not talking about looking for evidence of

13  their wrongdoing.  We're talking for evidence of their common

14  practices to show what are industry standards that are

15  applicable here; and while certainly some of that can be

16  developed through expert discovery, we're not limited to

17  expert discovery, and we think that the jury would find it

18  more -- you know, more accessible to compare their recruiting

19  priorities and the kinds of skills that they're looking for

20  with Akoustis's recruiting priorities and the kinds of skills

21  that Akoustis is looking for.

22              And if they want to argue, you know, separately

23  from that, there's other Qorvo-specific information that was

24  improperly obtained or used.  That's another discussion.

25  What we're trying to do is to avoid the discussion of

**UNREDACTED TRANSCRIPT**

1   recruiting highly technically skilled people with lots of

2   relevant background from becoming what the jury has to

3   contest with -- has to sort of contend with in the case.  We

4   want to be able to draw those lines and say Akoustis was

5   fairly going after people who had very sophisticated and

6   technical background.

7            THE COURT:  Right, and I see where you're

8   getting.  I'm just trying to see can't the parties then

9   stipulate that it is not -- that everyone in the industry,

10  both of these parties, would be recruiting people with

11  similar qualifications and that that is not the issue in the

12  case?  Isn't that what we're trying to get to?

13           Mr. DeFosse, isn't that what they're trying to --

14  and I think that's not unfair because it could be, well, you

15  know, you've got all these technical people.  You're

16  recruiting all of these technical people, Akoustis is.  That,

17  in and of itself, is not wrong.

18           MR. DEFOSSE:  Yes, I think we could definitely

19  work on a stipulation like that, Your Honor.

20           THE COURT:  What do you think about that,

21  Mr. Stanton? because you're trying to deal with the problem

22  and maybe the problem can be addressed by simply something

23  similar to what both of you have said to me, what I just

24  repeated back to you.

25           MR. STANTON:  You know, narrowing the

**UNREDACTED TRANSCRIPT**

1   stipulation, we're amenable to.  We do think another approach

2   would be to limit this to the individuals they have listed in

3   their Rule 26 disclosures, but that gives us a more contained

4   universe of employees for whom we'd be looking for their

5   relevant background and the background with which they

6   arrived at Qorvo to show that having people with similar

7   backgrounds arrived at Akoustis is appropriate and, you know,

8   to put some color on these issues.

9           Because I really do think that this gets into

10  very nuanced technical questions that are going to be very

11  difficult for a fact finder to sort out.  Drawing the line

12  between, you know, expertise and a particular spectrum

13  analyzer and how to operate that analyzer and what kinds of

14  parameters are appropriate to use when using that analyzer

15  are going to be the kinds of questions that we have to deal

16  with in this case.  And drawing distinctions between Qorvo's

17  proprietary parameters and ordinary common parameters that a

18  recruited employee would be expected to have is going to be

19  important information, and I just don't know that those kinds

20  of details are going to be flushed out in a stipulation.

21          THE COURT:  I'm not disagreeing with you that we

22  may have to have an instruction so that the jury understands

23  there's nothing wrong with recruiting people who have

24  particular expertise and employing them in that capacity.

25          I'm sort of looking to Mr. DeFosse and seeing --

**UNREDACTED TRANSCRIPT**

1    because the jury could get confused about that and that's

2    more -- isn't that more readily addressed in the context of

3    an appropriate limiting instruction or instruction to the

4    jury that, for example, Akoustis is -- that Qorvo is not

5    asserting X?

6              I won't ask Mr. Stanton.  I'll ask Mr. DeFosse.

7    I mean, don't we need to -- it might be useful to give the

8    jury some guidance here without having the necessity of this

9    pretty, you know, difficult area of production and

10   examination and then confusion.

11             MR. DEFOSSE:  So to be honest, Your Honor, I

12   haven't even begun to consider jury instructions in this

13   case, so you'll have to forgive me on that.  But as a general

14   principle addressing this issue in that context, I think is

15   something we could do when that time comes.

16             I frankly don't think there's really going to be

17   confusion here as to what our allegations are.  But I think

18   we're open to discussing it at that time.  Our whole point

19   here is just the attempt -- these discovery requests, we

20   believe, were, you know, overbroad.

21             THE COURT:  Well, I mean, we could point out the

22   all, all, all.  I think everybody understands that is awfully

23   broad.  It's a problem, And that would have to be narrowed.

24             I'm going to go back to Mr. Stanton.  I think we

25   can probably address the concern in terms of just a jury

**UNREDACTED TRANSCRIPT**

 1    instruction.

 2         MR. STANTON:  Well, Your Honor, you know,

 3    candidly, you know, if we limit this to the Rule 26 witnesses

 4    whom they've already identified and get the background that

 5    they were recruited for, that gives us information about

 6    witnesses who are going to be relevant in this case.  It will

 7    provide some context for developing those jury instructions

 8    because, again, we're -- you know, a general jury instruction

 9    that says hiring people with ordinary skill in the industry

10    is not going to help the jury draw those lines between what

11    is ordinary skill and how to operate a radio frequency

12    analyzer and what is not.

13         What's going to help them to make that

14    distinction is going to be seeing Qorvo looking for specific

15    capabilities, you know, in these very technical areas and

16    being able to compare that with the kinds of information --

17    the kinds of sort of background and experience that Akoustis

18    was recruiting for.  And if we want to develop a stipulation,

19    that discovery will help us give it this sort of the

20    specifics that it needs.

21         THE COURT:  Right.  Well, the question at this

22    time is whether this is an appropriate area for further

23    inquiry in terms of discovery and whether or not we could --

24    we should compel what looked like some very broad -- some

25    very, very broad requests for production in an area that

```
 1   doesn't directly relate to an issue in the case.  So that's

 2   the problem.

 3            There is a problem, though, Mr. Stanton, that

 4   you're pointing out that we do need to get addressed somehow.

 5            Mr. DeFosse, other suggestions here?

 6            MR. DEFOSSE:  I think -- well, if I can ask for

 7   what I would like from the hearing, I would like that we not

 8   have to brief the motion and it be denied and that the

 9   parties agree that at the appropriate time, with respect to

10   either jury instructions or pretrial stipulations, they'll

11   negotiate on this issue and come to some resolution or bring

12   it to the Court then in the context of how the case has

13   actually been prepared.

14            THE COURT:  Right.  It certainly has -- that has

15   the appeal of efficiency, cost effectiveness, and so forth.

16            Mr. Stanton, that could save you a whole lot of

17   effort, time, and money.

18            MR. STANTON:  I don't agree with that, Your

19   Honor.  I mean, these are really important baseline facts for

20   us to understand and for the jury to understand.  We've

21   already said that we're willing to agree to appropriate

22   parameters in developing this.  You know, at a minimum, these

23   Akoustis employees they've recruited, we're talking about two

24   people, it's not that many more if we add in the Rule 26

25   witnesses.  You know, that would be satisfactory to us as a
```

**UNREDACTED TRANSCRIPT**

1  resolution to this to get their, you know, sort of specifics

2  of what they were recruited for and the communications about

3  their skills at the time of recruiting.

4          THE COURT:  Well, of course, there's both a 401

5  and 403 problem, and that's what I'm worried about.  We

6  really haven't either addressed that directly, particularly,

7  but I want to go back to Mr. Stanton since he's got the

8  burden on this.  Let's hear the last best argument.

9          MR. STANTON:  Well, I mean, you know, the

10  discovery doesn't have to be admissible to be discoverable.

11  This is --

12          THE COURT:  That's true.  I already know that.  I

13  understand that, but we have to be going in a direction that

14  may lead to discoverable information and may ultimately be

15  admissible.  And if we're not doing that, then we might be

16  going down a rabbit trail.

17          MR. STANTON:  But, well, you know, I think

18  we've -- that the -- we're looking for efficiency, here,

19  right?  We're looking to --

20          THE COURT:  Right.

21          MR. STANTON:  -- ascertain where to draw these

22  lines between the types of skills and expertise that Qorvo

23  can control and claim are proprietary and those that are, you

24  know, common in the industry and what somebody is expected to

25  know, right?  These folks come.  You don't learn about BAW

**UNREDACTED TRANSCRIPT**

1    filter technology in school.  You learn about it from your

2    prior employers.  That's where you develop these

3    capabilities.  That's where you gain your experience and move

4    on.  And in this case, Qorvo is claiming that that

5    experience, that know-how of BAW technology is proprietary to

6    them.

7            And, you know, they've always started with very

8    vague definitions of what BAW proprietary technology is.  You

9    know, we're still in an effort of trying to unravel that to

10   figure out exactly what, you know, capabilities they're

11   claiming were improperly recruited for, and those are the

12   things that we're trying to determine candidly just to

13   understand ourselves.  So we understand the case, not just

14   move it forward, and understanding Qorvo's conduct is the

15   best way to do this.

16           THE COURT:  Mr. DeFosse, that's, you know, that's

17   reasonable, but are we -- we've got two ships passing in the

18   night here?  What's going on?

19           MR. DEFOSSE:  Yes.  Well, that was exactly my

20   reaction, Your Honor.  With respect to these requests, which

21   are seeking information about how Qorvo recruits and hires

22   employees, I don't see the connection to the trade secret

23   issues that Mr. Stanton is raising.  Obviously, we have the

24   burden of establishing trade secrets at trial.  We'll have to

25   do that.

**UNREDACTED TRANSCRIPT**

1        We've already, I think as Your Honor knows,

2   served a very detailed -- very, you know, 50-plus page

3   disclosure of those at the beginning of the month.  That's an

4   issue that will be litigated.  I don't see how -- how in

5   production of Qorvo's recruiting practices it's -- if it

6   relates to the trade secrets at all, it's so tangen- -- it's

7   so attenuated, excuse me.

8        THE COURT:  We'll go with tangential or

9   attenuated, either one.  No problem.  This is always helpful

10  to have some discussion.  Of course, this is -- you're right,

11  at trial, you're going to have the burden there.  And if you

12  come in with broad and amorphous -- I hope you won't try to

13  do that -- trade secrets, then that's not going to work very

14  well either, right?  You're going to have to be more tailored

15  than you are now.  You're aware of that?

16       MR. DEFOSSE:  We are, Your Honor.

17       THE COURT:  Okay.  And you'll also have a smaller

18  number.  Is that your thinking?  I mean, we're going to

19  narrow things down?

20       MR. DEFOSSE:  Yes, that's right, Your Honor.  I

21  think Mr. Masters addressed that at the last hearing.

22       THE COURT:  Yes, he did.

23       Mr. Stanton, your last word on this since you're

24  the moving party.  I do think that, you know, they've got --

25  we have different ways to approach it, perhaps.  It might be

**UNREDACTED TRANSCRIPT**

1    useful.  We're trying to explore those a little bit, but your

2    last pitch because I do -- I do understand that.  What

3    bothers me is it's so broad what you're asking for, and you

4    sort of narrowed that today constructively.

5            MR. STANTON:  Yes, and had Qorvo been willing to

6    engage us in an ordinary meet-and-confer discussion rather

7    than just standing by their objections, we would have come to

8    a reasonable way to narrow these things down.

9            This case is about recruiting.  Qorvo is not

10   agreeing to stipulate that recruiting is not a part of the

11   case.  Their contention is we were targeting people for

12   specific things.  There are, you know, documents that have

13   been identified that are on their trade secret disclosure.

14   You know, that's separate and apart from the discussion we're

15   having today.

16           What we're having today is about the core

17   allegation that's been in this complaint since -- you know,

18   you've heard two motions to dismiss on this where they

19   contended that the mere, you know, inevitability of going

20   after Qorvo people and bringing them into Akoustis, it was

21   inevitable that they were going to disclose trade secret

22   information.

23           You know, we're not talking about specific

24   documents.  We're really trying to get to the heart of what

25   is inside of an employee's head that Qorvo could claim is

**UNREDACTED TRANSCRIPT**

1    proprietary to it, and the best way to do that is to show

2    what is not proprietary to Qorvo.  And we can do that by

3    showing what Qorvo seeks out in the market when it's

4    recruiting either from Akoustis, those two employees, or if

5    we can limit it to these other 26 or whatever the number is

6    on their Rule 26 disclosures.  We think that would go a long

7    way to narrowing the issues here.

8              THE COURT:  It's always helpful to hear from

9    everybody, and I appreciate responses on this.  We're going

10   to think about it a little bit more, but we'll get an order

11   out quite quickly.  Thank you all very much.

12              (Adjournment.)

13

14

15

16

17

18

19

20

21

22

23

24

25

**C E R T I F I C A T E**

1

2

3

4          I, TINA DuBOSE GIBSON, do hereby certify that the

5     foregoing 28 pages are, to the best of my knowledge, skill

6     and abilities, a true and accurate transcript from my

7     stenotype notes of the MOTION CONFERENCE held on the 25th day

8     of May, 2023, in the matter of:

9

10    QORVO, INC.

11    vs.

12    AKOUSTIS TECHNOLOGIES, INC.,
      AND AKOUSTIS, INC.

13

14    Dated this 31st day of May, 2023.

15

16

17                    s/Tina DuBose Gibson

18                    _____
                      TINA DuBOSE GIBSON, RPR, RCR
                      Official Court Reporter
19                    United States District Court
                      Western District of Tennessee

20

21

22

23

24

25

**UNREDACTED TRANSCRIPT**

1

**1**

**19** [1] - 7:12

**2**

**2023** [1] - 3:2
**208** [1] - 3:6
**25** [1] - 3:2
**26** [5] - 20:3, 22:3, 23:24, 28:5, 28:6

**4**

**401** [2] - 3:10, 24:4
**403** [2] - 18:7, 24:5

**5**

**5** [1] - 3:16
**50-plus** [1] - 26:2
**51** [1] - 7:12
**55** [3] - 4:4, 14:13, 15:11

**7**

**76** [5] - 3:8, 4:11, 6:7, 10:23, 10:24
**77** [4] - 3:8, 6:7, 10:23, 14:7
**78** [4] - 3:8, 6:8, 10:24, 16:13
**79** [4] - 3:8, 4:11, 6:8, 10:24

**8**

**8,000** [1] - 7:12

**A**

**able** [2] - 19:4, 22:16
**absolutely** [2] - 3:18, 9:24
**accessible** [1] - 18:18
**accusations** [1] - 4:4
**accused** [3] - 4:14, 6:16, 7:7
**accusing** [1] - 15:13
**act** [1] - 15:22
**actual** [3] - 7:1, 11:3, 12:18
**add** [1] - 23:24
**address** [5] - 3:17, 9:15, 10:20, 13:5, 21:25
**addressed** [5] - 19:22, 21:2, 23:4, 24:6, 26:21
**addressing** [1] - 21:14
**Adjournment** [1] - 28:12

**admissible** [2] - 24:10, 24:15
**admissions** [1] - 18:10
**agree** [6] - 10:22, 16:22, 18:2, 23:9, 23:18, 23:21
**agreed** [2] - 6:24, 10:13
**agreeing** [1] - 27:10
**agreement** [1] - 9:17
**ahead** [1] - 10:23
**Akoustis** [32] - 3:23, 4:2, 4:5, 4:13, 5:9, 6:15, 7:7, 7:22, 8:16, 11:4, 11:5, 11:12, 11:25, 12:5, 12:8, 12:14, 13:4, 14:15, 14:18, 15:16, 16:1, 16:10, 16:25, 18:21, 19:4, 19:16, 20:7, 21:4, 22:17, 23:23, 27:20, 28:4
**Akoustis's** [4] - 12:22, 16:7, 17:1, 18:20
**allegation** [8] - 6:21, 6:22, 6:24, 7:1, 14:17, 15:9, 15:19, 27:17
**allegations** [4] - 4:11, 17:5, 17:6, 21:17
**allege** [2] - 15:7, 15:16
**alleged** [2] - 3:19, 3:22
**alleges** [1] - 14:14
**allow** [2] - 3:10, 8:22
**amenable** [2] - 13:22, 20:1
**amend** [1] - 14:25
**amended** [3] - 3:15, 4:5, 14:14
**amorphous** [1] - 26:12
**amounted** [1] - 14:19
**analyzer** [5] - 8:18, 20:13, 20:14, 22:12
**apart** [1] - 27:14
**apologize** [1] - 9:15
**apparent** [1] - 5:23
**appeal** [1] - 23:15
**applicable** [1] - 18:15
**appreciate** [3] - 3:20, 15:5, 28:9
**approach** [2] - 20:1, 26:25
**appropriate** [10] - 12:18, 13:13, 13:21, 13:22, 20:7, 20:14, 21:3, 22:22, 23:9, 23:21
**area** [3] - 21:9, 22:22, 22:25
**areas** [3] - 13:2, 14:13, 22:15
**argue** [1] - 18:22
**arguing** [1] - 6:18
**argument** [2] - 5:20, 24:8
**arrived** [2] - 20:6, 20:7
**ascertain** [1] - 24:21
**aspect** [1] - 4:23
**asserting** [1] - 21:5

**assertion** [1] - 3:8
**assessments** [1] - 8:24
**attempt** [1] - 21:19
**attenuated** [2] - 26:7, 26:9
**avoid** [1] - 18:25
**aware** [3] - 3:15, 11:6, 26:15
**awfully** [1] - 21:22

**B**

**backdrop** [1] - 5:13
**background** [11] - 5:19, 12:25, 14:2, 14:18, 15:15, 19:2, 19:6, 20:5, 22:4, 22:17
**backgrounds** [3] - 9:24, 14:19, 20:7
**baseline** [5] - 5:8, 5:19, 7:20, 13:1, 23:19
**BAW** [11] - 3:23, 3:25, 4:6, 4:23, 5:13, 6:6, 8:7, 8:20, 24:25, 25:5, 25:8
**became** [1] - 4:18
**becoming** [1] - 19:2
**begin** [1] - 7:10
**beginning** [1] - 26:3
**begun** [1] - 21:12
**best** [3] - 24:8, 25:15, 28:1
**between** [6] - 4:25, 10:9, 20:12, 20:16, 22:10, 24:22
**bit** [2] - 27:1, 28:10
**bothers** [1] - 27:3
**breadth** [1] - 16:6
**bribe** [2] - 4:17, 4:20
**brief** [1] - 23:8
**briefly** [1] - 13:5
**bring** [1] - 23:11
**bringing** [1] - 27:20
**broad** [9] - 13:6, 13:7, 14:11, 16:21, 21:23, 22:24, 22:25, 26:12, 27:3
**broken** [1] - 15:5
**building** [1] - 15:15
**burden** [3] - 24:8, 25:24, 26:11
**business** [4] - 4:6, 4:14, 4:18, 7:6

**C**

**candidly** [2] - 22:3, 25:12
**cannot** [2] - 5:8, 5:9
**capabilities** [3] - 22:15, 25:3, 25:10
**capacity** [1] - 20:24
**case** [7] - 7:16, 8:13, 8:16, 10:25, 12:24, 13:9, 14:20,

14:21, 14:23, 14:25, 15:7, 16:12, 17:7, 17:25, 19:3, 19:12, 20:16, 21:13, 22:6, 23:1, 23:12, 25:4, 25:13, 27:9, 27:11
**certain** [1] - 9:23
**certainly** [4] - 16:9, 16:22, 18:15, 23:14
**cetera** [3] - 6:7, 14:11, 16:4
**chain** [1] - 3:24
**check** [1] - 11:11
**cherry** [1] - 15:11
**claim** [3] - 13:3, 24:23, 27:25
**claiming** [2] - 25:4, 25:11
**clear** [1] - 15:24
**clearly** [1] - 15:6
**close** [2] - 3:9, 8:5
**collectively** [1] - 6:9
**color** [1] - 20:8
**committing** [2] - 7:7, 15:13
**common** [7] - 4:14, 4:19, 8:19, 9:12, 18:13, 20:17, 24:24
**communications** [8] - 6:4, 10:15, 11:2, 12:16, 13:10, 14:8, 16:15, 24:2
**companies'** [1] - 8:23
**company** [1] - 7:12
**comparable** [1] - 18:5
**compare** [3] - 8:23, 18:18, 22:16
**comparing** [1] - 8:25
**compel** [2] - 3:7, 22:24
**compete** [1] - 5:10
**competed** [1] - 14:15
**competition** [10] - 4:15, 6:16, 6:19, 7:7, 14:5, 14:20, 15:8, 15:14, 15:22, 16:3
**complaint** [8] - 3:15, 4:5, 14:14, 14:25, 15:11, 15:13, 17:17
**concern** [1] - 21:25
**concerning** [6] - 6:4, 7:2, 11:2, 12:16, 14:8, 16:15
**conduct** [2] - 17:25, 25:14
**confer** [3] - 4:12, 13:11, 27:6
**conferred** [1] - 13:20
**confers** [1] - 6:20
**confidential** [8] - 6:23, 10:7, 10:11, 10:19, 15:17, 15:21, 15:24, 16:11
**confused** [1] - 21:1
**confusion** [2] - 21:10, 21:17
**connection** [2] - 3:8, 25:22
**consider** [5] - 10:10, 10:18,

14:3, 14:4, 21:12
**consistent** [1] - 4:3
**constructively** [1] - 27:4
**contained** [1] - 20:3
**contend** [2] - 4:1, 19:3
**contended** [1] - 27:19
**contention** [1] - 27:11
**contest** [1] - 19:3
**context** [6] - 5:11, 13:14, 21:2, 21:14, 22:7, 23:12
**contrary** [1] - 6:15
**control** [1] - 24:23
**conversation** [1] - 13:16
**copy** [1] - 6:1
**core** [1] - 27:16
**correct** [2] - 10:1, 10:3
**correspondence** [1] - 4:12
**cost** [1] - 23:15
**counsel** [1] - 5:11
**Count** [1] - 3:16
**countries** [1] - 7:12
**course** [4] - 6:18, 7:5, 24:4, 26:10
**COURT** [47] - 3:5, 3:13, 3:21, 4:16, 5:15, 6:1, 6:3, 7:19, 8:4, 8:8, 8:25, 9:6, 9:9, 9:13, 9:16, 9:19, 10:21, 11:10, 11:18, 11:24, 12:7, 12:11, 12:15, 12:23, 13:7, 14:6, 14:22, 15:1, 16:1, 16:13, 17:11, 17:24, 18:7, 19:7, 19:20, 20:21, 21:21, 22:21, 23:14, 24:4, 24:12, 24:20, 25:16, 26:8, 26:17, 26:22, 28:8
**Court** [1] - 23:12
**created** [1] - 11:17
**cuff** [1] - 17:18
**current** [1] - 11:4

## D

**deal** [2] - 19:21, 20:15
**dealing** [1] - 13:23
**decide** [1] - 8:17
**decided** [1] - 4:17
**defendant** [1] - 7:22
**defendants'** [2] - 3:7, 11:12
**defense** [1] - 3:9
**definitely** [2] - 12:8, 19:18
**definitions** [1] - 25:8
**DEFOSSE** [19] - 5:21, 6:2, 6:9, 7:23, 8:6, 9:11, 9:14, 9:18, 10:2, 11:14, 15:4, 16:5, 17:16, 19:18, 21:11, 23:6, 25:19, 26:16, 26:20
**DeFosse** [10] - 9:3, 9:7, 9:11, 9:13, 17:12, 19:13,

20:25, 21:6, 23:5, 25:16
**denied** [1] - 23:8
**deposed** [1] - 16:25
**depositions** [1] - 17:1
**design** [2] - 4:7, 4:10
**designing** [1] - 4:7
**detailed** [1] - 26:2
**details** [1] - 20:20
**determine** [1] - 25:12
**develop** [2] - 22:18, 25:2
**developed** [1] - 18:16
**developing** [3] - 13:16, 22:7, 23:22
**development** [2] - 3:25, 4:6
**difference** [1] - 4:19
**different** [1] - 26:25
**differently** [1] - 9:10
**difficult** [2] - 20:11, 21:9
**direct** [1] - 10:9
**directed** [1] - 13:14
**direction** [1] - 24:13
**directly** [2] - 23:1, 24:6
**disagreeing** [1] - 20:21
**disclose** [1] - 27:21
**disclosure** [2] - 26:3, 27:13
**disclosures** [2] - 20:3, 28:6
**discoverable** [2] - 24:10, 24:14
**discovery** [10] - 10:5, 10:10, 17:4, 17:9, 18:16, 18:17, 21:19, 22:19, 22:23, 24:10
**discussing** [2] - 16:18, 21:18
**discussion** [7] - 3:6, 16:23, 18:24, 18:25, 26:10, 27:6, 27:14
**dismiss** [1] - 27:18
**disproportionate** [1] - 5:16
**dispute** [3] - 7:24, 8:2, 10:4
**distinction** [1] - 22:14
**distinctions** [1] - 20:16
**doc** [1] - 16:14
**documents** [23] - 3:7, 4:13, 4:15, 6:4, 6:10, 6:25, 7:2, 7:13, 7:16, 8:1, 10:15, 11:2, 12:16, 13:6, 13:10, 13:18, 14:7, 16:14, 16:24, 17:10, 17:21, 27:12, 27:24
**done** [3] - 9:2, 13:19, 15:10
**double** [1] - 7:15
**down** [3] - 24:16, 26:19, 27:8
**dozen** [2] - 11:8, 11:16
**dozens** [2] - 6:25, 10:12
**draw** [5] - 4:25, 5:2, 19:4, 22:10, 24:21
**drawing** [2] - 20:11, 20:16

**during** [1] - 13:11

## E

**effectiveness** [1] - 23:15
**efficiency** [2] - 23:15, 24:18
**effort** [2] - 23:17, 25:9
**efforts** [3] - 6:5, 14:8, 17:2
**either** [5] - 23:10, 24:6, 26:9, 26:14, 28:4
**elsewhere** [1] - 14:14
**employee** [6] - 6:11, 7:14, 10:16, 11:4, 15:8, 20:18
**employee's** [2] - 4:25, 27:25
**employees** [32] - 4:1, 4:6, 4:8, 5:13, 6:16, 6:18, 6:23, 7:5, 7:13, 7:25, 9:21, 11:5, 11:12, 11:13, 11:24, 12:1, 12:2, 12:4, 12:9, 12:19, 12:22, 13:15, 14:15, 15:17, 15:20, 16:2, 16:8, 20:4, 23:23, 25:22, 28:4
**employer** [2] - 5:3, 5:4
**employers** [1] - 25:2
**employing** [1] - 20:24
**engage** [3] - 9:21, 16:22, 27:6
**engineer** [1] - 12:13
**engineering** [4] - 3:24, 6:7, 14:10, 16:19
**engineers** [1] - 12:12
**ESI** [1] - 13:18
**essentially** [1] - 6:10
**establishing** [1] - 25:24
**et** [3] - 6:7, 14:10, 16:4
**evaluating** [1] - 13:1
**evaluation** [2] - 11:3, 12:18
**evaluations** [1] - 13:25
**evidence** [3] - 16:7, 18:12, 18:13
**exact** [2] - 11:7, 11:15
**exactly** [4] - 8:4, 11:20, 25:10, 25:19
**examination** [1] - 21:10
**example** [1] - 21:4
**exclude** [1] - 16:6
**excuse** [1] - 26:7
**expect** [1] - 9:22
**expected** [2] - 20:18, 24:24
**experience** [28] - 4:3, 4:7, 5:1, 5:4, 5:7, 5:12, 6:6, 6:12, 6:17, 6:18, 7:3, 7:6, 7:15, 7:25, 8:7, 8:15, 8:17, 9:25, 10:17, 14:9, 14:10, 15:8, 15:23, 16:17, 17:22, 22:17, 25:3, 25:5
**expert** [2] - 18:16, 18:17

**expertise** [10] - 3:23, 4:9, 5:1, 6:6, 14:16, 16:17, 17:3, 20:12, 20:24, 24:22
**experts** [1] - 17:19
**explaining** [1] - 15:15
**explore** [1] - 27:1
**extent** [1] - 10:9
**extraordinarily** [1] - 14:11

## F

**fact** [2] - 8:3, 20:11
**facts** [1] - 23:19
**fairly** [2] - 3:5, 19:5
**fall** [1] - 3:9
**far** [1] - 11:9
**figure** [1] - 25:10
**filed** [1] - 5:25
**files** [1] - 16:7
**fill** [1] - 4:2
**filter** [9] - 3:23, 4:6, 4:23, 5:13, 6:6, 8:7, 14:10, 16:18, 25:1
**filters** [2] - 3:25, 8:20
**finder** [1] - 20:11
**first** [2] - 6:13, 17:16
**flushed** [1] - 20:20
**focus** [5] - 14:23, 14:24, 15:2, 15:3, 15:7
**focused** [2] - 4:5, 4:8
**folks** [1] - 24:25
**forgive** [1] - 21:13
**former** [6] - 5:4, 11:4, 11:5, 11:12, 11:25
**forth** [3] - 13:11, 16:19, 23:15
**forward** [1] - 25:14
**four** [1] - 6:2
**framed** [1] - 14:21
**frankly** [1] - 21:16
**frequency** [1] - 22:11

## G

**gain** [1] - 25:3
**general** [4] - 7:2, 10:2, 21:13, 22:8
**generally** [1] - 3:14
**given** [1] - 16:6
**goal** [1] - 10:17
**grow** [1] - 14:19
**guidance** [1] - 21:8

## H

**head** [1] - 27:25
**hear** [2] - 24:8, 28:8

—3—

**heard** [2] - 17:17, 27:18
**hearing** [3] - 3:20, 23:7, 26:21
**heart** [1] - 27:24
**help** [6] - 10:24, 12:23, 14:23, 22:10, 22:13, 22:19
**helpful** [2] - 26:9, 28:8
**highly** [1] - 19:1
**hire** [7] - 6:5, 9:23, 9:25, 13:25, 14:9, 16:17, 17:2
**hired** [5] - 4:1, 6:16, 11:5, 11:13, 11:25
**hires** [2] - 7:5, 7:24, 8:6, 8:15, 25:21
**hiring** [13] - 3:22, 5:13, 6:11, 6:18, 7:2, 7:3, 7:14, 9:20, 10:16, 11:3, 12:18, 15:7, 22:9
**honest** [1] - 21:11
**honestly** [1] - 7:23
**Honor** [23] - 3:12, 3:18, 5:21, 5:23, 6:14, 7:9, 7:24, 8:11, 9:11, 9:14, 10:3, 11:8, 11:14, 11:23, 15:4, 19:19, 21:11, 22:2, 23:19, 25:20, 26:1, 26:16, 26:20
**hope** [1] - 26:12
**house** [1] - 16:16

## I

**idea** [1] - 13:5
**identified** [3] - 11:8, 22:4, 27:13
**identify** [6] - 6:5, 10:6, 13:17, 14:9, 16:16, 16:23
**implicates** [1] - 16:8
**important** [5] - 4:22, 5:12, 14:2, 20:19, 23:19
**improperly** [3] - 13:3, 18:24, 25:11
**in-house** [1] - 16:16
**including** [1] - 16:18
**individuals** [1] - 20:2
**industry** [10] - 9:25, 17:8, 17:9, 17:14, 17:15, 17:19, 18:14, 19:9, 22:9, 24:24
**inevitability** [1] - 27:19
**inevitable** [1] - 27:21
**information** [25] - 5:6, 5:9, 5:12, 6:23, 8:14, 10:7, 10:8, 10:10, 10:12, 10:13, 10:18, 12:22, 15:18, 15:21, 15:24, 16:11, 17:4, 18:23, 20:19, 22:5, 22:16, 24:14, 25:21, 27:22
**informed** [1] - 8:24
**inquiry** [1] - 22:23

**inside** [1] - 27:25
**instruction** [5] - 20:22, 21:3, 22:1, 22:8
**instructions** [3] - 21:12, 22:7, 23:10
**interest** [1] - 8:19
**interview** [1] - 13:24
**intuited** [1] - 7:9
**involved** [2] - 8:20, 15:16
**issue** [15] - 5:16, 6:12, 6:24, 7:1, 8:16, 10:4, 10:14, 10:20, 10:25, 13:15, 19:11, 21:14, 23:1, 23:11, 26:4
**issues** [4] - 18:11, 20:8, 25:23, 28:7
**itself** [1] - 19:17

## J

**job** [1] - 13:24
**jury** [18] - 8:17, 8:22, 14:2, 14:3, 18:8, 18:17, 19:2, 20:22, 21:1, 21:4, 21:8, 21:12, 21:25, 22:7, 22:8, 22:10, 23:10, 23:20

## K

**keeps** [1] - 15:10
**kind** [10] - 5:11, 8:21, 9:21, 11:21, 14:16, 15:11, 15:14, 17:2, 17:4, 17:18
**kinds** [11] - 5:11, 8:14, 13:12, 18:10, 18:19, 18:20, 20:13, 20:15, 20:19, 22:16, 22:17
**know-how** [2] - 5:1, 25:5
**knowledge** [5] - 4:25, 5:4, 5:7, 8:19, 8:20
**knows** [1] - 26:1

## L

**large** [1] - 16:8
**largely** [1] - 17:1
**last** [4] - 24:8, 26:21, 26:23, 27:2
**lead** [1] - 24:14
**learn** [3] - 5:17, 24:25, 25:1
**least** [1] - 8:10
**leaves** [2] - 5:14, 8:15
**legitimate** [1] - 7:21
**level** [1] - 13:2
**likely** [1] - 7:15
**limit** [3] - 20:2, 22:3, 28:5
**limited** [1] - 18:16
**limiting** [1] - 21:3

**line** [3] - 4:25, 10:9, 20:11
**lines** [3] - 19:4, 22:10, 24:22
**list** [1] - 11:17
**listed** [2] - 17:3, 20:2
**listings** [1] - 13:24
**literally** [2] - 6:25, 10:11
**litigated** [1] - 26:4
**locations** [1] - 7:12
**logistics** [1] - 3:24
**looked** [1] - 22:24
**looking** [14] - 4:22, 9:1, 10:10, 11:21, 14:1, 17:8, 18:12, 18:19, 18:21, 20:4, 20:25, 22:14, 24:18, 24:19

## M

**management** [1] - 4:9
**manufacturing** [3] - 3:25, 4:9, 4:10
**market** [1] - 28:3
**marketing** [2] - 3:24, 14:10
**Masters** [1] - 26:21
**matter** [4] - 8:2, 10:2, 17:1, 17:14
**MAY** [1] - 3:2
**mean** [15] - 5:18, 6:3, 7:15, 10:8, 10:17, 14:11, 14:24, 16:20, 17:12, 21:7, 21:21, 23:19, 24:9, 26:18
**meet** [4] - 4:12, 6:19, 13:11, 27:6
**meet-and-confer** [1] - 27:6
**mere** [1] - 27:19
**met** [1] - 13:20
**method** [1] - 14:4
**middle** [1] - 15:12
**might** [5] - 5:17, 12:9, 21:7, 24:15, 26:25
**minimum** [1] - 23:22
**mistake** [1] - 9:12
**money** [1] - 23:17
**month** [1] - 26:3
**motion** [4] - 3:6, 3:7, 5:24, 23:8
**motions** [1] - 27:18
**move** [2] - 25:3, 25:14
**moved** [1] - 4:9
**moving** [1] - 26:24
**MR** [46] - 3:12, 3:18, 3:22, 4:21, 5:21, 6:2, 6:9, 7:23, 8:6, 8:11, 9:4, 9:8, 9:11, 9:14, 9:18, 10:2, 11:7, 11:14, 11:22, 12:4, 12:8, 12:13, 12:20, 12:25, 13:8, 14:12, 14:24, 15:4, 16:5, 16:22, 17:16, 18:4, 18:9, 19:18,

19:25, 21:11, 22:2, 23:6, 23:18, 24:9, 24:17, 24:21, 25:19, 26:16, 26:20, 27:5

## N

**narrow** [3] - 16:21, 26:19, 27:8
**narrowed** [2] - 21:23, 27:4
**narrowing** [3] - 13:12, 19:25, 28:7
**necessity** [1] - 21:8
**need** [6] - 10:5, 10:20, 14:2, 14:3, 21:7, 23:4
**needed** [3] - 4:2, 14:18
**needs** [2] - 8:20, 22:20
**negotiate** [1] - 23:11
**new** [1] - 13:25
**next** [1] - 14:7
**night** [1] - 25:18
**nondispute** [1] - 9:20
**nothing** [1] - 20:23
**nuanced** [1] - 20:10
**nuances** [1] - 8:13
**number** [7] - 11:7, 11:15, 11:19, 16:13, 26:18, 28:5
**numbers** [1] - 16:8

## O

**objections** [1] - 27:7
**obtain** [5] - 4:18, 6:23, 15:17, 15:21, 15:23
**obtained** [2] - 5:10, 18:24
**obvious** [1] - 4:24
**obviously** [1] - 25:23
**off-the-cuff** [1] - 17:18
**officials** [1] - 4:18
**often** [1] - 13:10
**one** [7] - 12:9, 12:13, 14:7, 15:12, 15:14, 26:9
**open** [1] - 21:18
**operate** [2] - 20:13, 22:11
**opposite** [1] - 5:15
**order** [6] - 4:18, 7:13, 10:6, 15:17, 15:19, 28:10
**ordinary** [8] - 13:2, 17:8, 17:9, 17:13, 20:17, 22:9, 22:11, 27:6
**organization** [1] - 14:19
**ourselves** [1] - 25:13
**overbroad** [1] - 21:20
**own** [1] - 18:9

## P

**page** [1] - 26:2

**paragraph** [4] - 4:4, 14:13, 15:11, 15:12
**parameters** [4] - 20:14, 20:17, 23:22
**part** [3] - 14:20, 16:12, 27:10
**particular** [6] - 5:6, 5:18, 9:21, 16:1, 20:12, 20:24
**particularly** [1] - 24:6
**parties** [5] - 13:9, 13:14, 19:8, 19:10, 23:9
**parties'** [1] - 13:18
**party** [2] - 16:16, 26:24
**passing** [1] - 25:17
**past** [1] - 12:21
**people** [20] - 7:3, 9:23, 9:25, 14:17, 17:2, 17:8, 17:13, 17:15, 17:21, 19:1, 19:5, 19:10, 19:15, 19:16, 20:6, 20:23, 22:9, 23:24, 27:11, 27:20
**Perfect** [1] - 6:9
**perhaps** [1] - 26:25
**personal** [1] - 4:25
**personnel** [5] - 6:5, 8:7, 14:9, 16:17, 16:18
**persons** [1] - 3:23
**perspective** [1] - 6:13
**picked** [1] - 15:11
**pitch** [1] - 27:2
**plaintiff** [1] - 11:13
**plan** [2] - 11:3, 12:17
**planned** [1] - 12:21
**planning** [1] - 12:21
**point** [6] - 5:18, 15:20, 16:6, 16:14, 21:18, 21:21
**pointing** [1] - 23:4
**possible** [2] - 3:10, 16:9
**possibly** [1] - 14:4
**practice** [2] - 4:14, 4:19
**practices** [7] - 3:23, 7:3, 8:23, 8:25, 10:6, 18:14, 26:5
**practicing** [1] - 5:5
**precise** [1] - 6:5
**prejudicial** [1] - 18:11
**prepared** [1] - 23:13
**presenting** [1] - 18:8
**pretrial** [1] - 23:10
**pretty** [2] - 15:24, 21:9
**prevent** [1] - 5:4
**previously** [1] - 12:2
**principle** [1] - 21:14
**priorities** [2] - 18:19, 18:20
**problem** [10] - 7:9, 8:10, 18:8, 19:21, 19:22, 21:23, 23:2, 23:3, 24:5, 26:9
**problems** [3] - 5:22, 6:13, 7:18

**process** [3] - 7:21, 13:8
**produce** [4] - 6:25, 7:13, 10:13, 17:21
**produced** [1] - 7:16
**product** [2] - 3:24, 4:10
**production** [4] - 3:7, 21:9, 22:25, 26:5
**productions** [1] - 13:20
**products** [1] - 4:8
**pronounce** [2] - 9:9, 9:10
**properly** [1] - 5:10
**proportional** [1] - 13:17
**proportionality** [2] - 7:10, 7:18
**proprietary** [7] - 8:19, 20:17, 24:23, 25:5, 25:8, 28:1, 28:2
**protocol** [1] - 13:18
**provide** [3] - 5:8, 7:20, 22:7
**provides** [1] - 14:1
**pursuant** [1] - 13:18
**pursue** [1] - 17:17
**put** [1] - 20:8

**Q**

**Qorvo** [41] - 3:18, 3:22, 4:1, 4:6, 4:8, 5:7, 5:13, 6:10, 6:22, 6:23, 7:5, 7:11, 7:24, 8:6, 8:15, 8:19, 8:21, 12:2, 12:5, 12:9, 14:14, 15:7, 15:21, 16:2, 16:24, 17:3, 17:20, 18:1, 18:23, 20:6, 21:4, 22:14, 24:22, 25:4, 25:21, 27:5, 27:9, 27:20, 27:25, 28:2, 28:3
**Qorvo's** [12] - 6:4, 7:2, 10:6, 10:15, 11:2, 12:17, 14:8, 14:15, 16:15, 20:16, 25:14, 26:5
**Qorvo-specific** [1] - 18:23
**qualifications** [2] - 8:22, 19:11
**quality** [1] - 4:8
**questions** [2] - 20:10, 20:15
**quickly** [1] - 28:11
**quite** [1] - 28:11

**R**

**rabbit** [1] - 24:16
**radio** [1] - 22:11
**raising** [1] - 25:23
**rather** [1] - 27:6
**reaction** [2] - 17:19, 25:20
**readily** [1] - 21:2

**real** [2] - 3:16, 10:3
**really** [8] - 8:2, 14:1, 14:3, 20:9, 21:16, 23:19, 24:6, 27:24
**Really** [1] - 14:3
**reason** [1] - 17:17
**reasonable** [4] - 13:17, 16:24, 25:17, 27:8
**reasonably** [1] - 5:2
**receiving** [1] - 13:13
**record** [2] - 6:20, 15:6
**recruit** [5] - 6:5, 14:9, 16:9, 16:16, 17:2
**recruited** [9] - 4:1, 5:7, 16:2, 16:10, 20:18, 22:5, 23:23, 24:2, 25:11
**recruiters** [2] - 16:16, 16:25
**recruiting** [24] - 7:20, 7:21, 10:6, 11:3, 15:20, 15:22, 15:23, 17:7, 17:21, 17:24, 18:3, 18:6, 18:18, 18:20, 19:1, 19:10, 19:16, 20:23, 22:18, 24:3, 26:5, 27:9, 27:10, 28:4
**recruitment** [3] - 6:11, 10:16, 12:18
**recruits** [1] - 25:21
**referring** [1] - 15:10
**reflecting** [6] - 6:4, 10:15, 11:2, 12:17, 14:8, 16:15
**relate** [1] - 23:1
**related** [2] - 6:10, 17:21
**relates** [2] - 17:25, 26:6
**relative** [1] - 3:6
**relevance** [3] - 3:16, 6:14, 7:18
**relevant** [6] - 6:17, 7:4, 7:14, 19:2, 20:5, 22:6
**repeated** [1] - 19:24
**reproduced** [1] - 5:24
**request** [3] - 6:10, 6:13, 17:3
**requests** [14] - 5:22, 5:24, 6:2, 6:25, 7:11, 10:12, 10:20, 13:9, 13:13, 13:20, 17:17, 21:19, 22:25, 25:20
**resolution** [2] - 23:11, 24:1
**respect** [4] - 7:8, 12:20, 23:9, 25:20
**respective** [1] - 8:23
**responding** [1] - 7:11
**response** [1] - 6:25
**responses** [1] - 28:9
**resumes** [1] - 13:24
**RF** [1] - 8:18
**RFP** [1] - 4:11
**rise** [1] - 18:11
**Rohde** [1] - 8:18

**roles** [1] - 4:2
**routine** [1] - 9:20
**Rule** [5] - 3:10, 20:3, 22:3, 23:24, 28:6

**S**

**sales** [1] - 4:10
**satisfactory** [1] - 23:25
**save** [1] - 23:16
**scheme** [1] - 15:16
**school** [1] - 25:1
**Schwarz** [1] - 8:18
**scope** [3] - 13:12, 13:23, 16:24
**scripts** [1] - 13:24
**search** [2] - 13:21, 16:23
**searches** [1] - 13:17
**second** [3] - 4:5, 7:9, 14:14
**secret** [8] - 5:9, 10:7, 10:11, 10:19, 16:4, 25:22, 27:13, 27:21
**secrets** [4] - 13:3, 25:24, 26:6, 26:13
**see** [8] - 9:17, 10:3, 10:8, 18:9, 19:7, 19:8, 25:22, 26:4
**seeing** [2] - 20:25, 22:14
**seek** [1] - 4:13
**seeking** [3] - 14:15, 18:10, 25:21
**seeks** [1] - 28:3
**senior** [1] - 12:13
**sentence** [3] - 15:12, 15:14, 15:15
**separate** [1] - 27:14
**separately** [1] - 18:22
**served** [2] - 13:9, 26:2
**set** [2] - 13:1, 13:16
**ships** [1] - 25:17
**short** [1] - 3:5
**show** [7] - 4:13, 8:1, 17:10, 18:4, 18:14, 20:6, 28:1
**showing** [1] - 28:3
**side** [1] - 11:11
**sides** [1] - 9:17
**similar** [3] - 19:11, 19:23, 20:6
**simply** [1] - 19:22
**size** [1] - 7:16
**skill** [7] - 13:1, 13:2, 17:8, 17:9, 17:13, 22:9, 22:11
**skilled** [1] - 19:1
**skills** [11] - 5:7, 5:12, 8:14, 14:17, 14:18, 16:19, 18:10, 18:19, 18:20, 24:3, 24:22
**small** [2] - 11:15, 11:18
**smaller** [1] - 26:17
**someone** [4] - 15:22, 15:23,

16:9, 16:10
**sophisticated** [2] - 4:24, 19:5
**sorry** [5] - 9:6, 9:8, 9:14, 11:14, 15:1
**sort** [9] - 8:12, 13:1, 19:3, 20:11, 20:25, 22:17, 22:19, 24:1, 27:4
**sought** [4] - 8:16, 8:21, 16:10, 17:4
**sounding** [1] - 15:5
**sounds** [1] - 9:19
**specialized** [1] - 8:18
**specific** [10] - 10:23, 14:13, 14:16, 14:17, 17:5, 17:6, 18:23, 22:14, 27:12, 27:23
**specificity** [1] - 8:21
**specifics** [3] - 8:14, 22:20, 24:1
**spectrum** [2] - 8:18, 20:12
**standards** [1] - 18:14
**standing** [1] - 27:7
**Stanton** [19] - 3:11, 6:15, 8:9, 9:4, 10:4, 10:21, 11:20, 12:3, 15:10, 16:20, 18:2, 19:21, 21:6, 21:24, 23:3, 23:16, 24:7, 25:23, 26:23
**STANTON** [27] - 3:12, 3:18, 3:22, 4:21, 8:11, 9:4, 9:8, 11:7, 11:22, 12:4, 12:8, 12:13, 12:20, 12:25, 13:8, 14:12, 14:24, 16:22, 18:4, 18:9, 19:25, 22:2, 23:18, 24:9, 24:17, 24:21, 27:5
**start** [4] - 3:11, 7:11, 8:11, 11:1
**started** [2] - 6:14, 25:7
**starting** [2] - 8:10, 10:24
**still** [3] - 4:20, 25:9
**stipulate** [2] - 19:9, 27:10
**stipulates** [1] - 8:6
**stipulation** [6] - 8:2, 8:5, 19:19, 20:1, 20:20, 22:18
**stipulations** [1] - 23:10
**stop** [1] - 15:9
**subject** [2] - 16:3, 16:25
**subsequent** [1] - 5:2
**substantial** [1] - 7:17
**suggesting** [1] - 10:5
**suggestions** [1] - 23:5
**supply** [1] - 3:24
**switching** [1] - 9:6

**T**

**tailored** [1] - 26:14
**tangen** [1] - 26:6
**tangential** [1] - 26:8

**target** [2] - 12:21, 15:16
**targeted** [2] - 6:22, 13:3
**targeting** [2] - 14:17, 27:11
**technical** [12] - 4:24, 5:1, 7:14, 7:25, 8:13, 8:22, 9:24, 19:6, 19:15, 19:16, 20:10, 22:15
**technically** [1] - 19:1
**technology** [10] - 4:23, 6:6, 6:12, 6:17, 8:7, 14:10, 16:18, 25:1, 25:5, 25:8
**terms** [4] - 5:16, 13:22, 21:25, 22:23
**testing** [2] - 3:25, 8:20
**THE** [47] - 3:5, 3:13, 3:21, 4:16, 5:15, 6:1, 6:3, 7:19, 8:4, 8:8, 8:25, 9:6, 9:9, 9:13, 9:16, 9:19, 10:21, 11:10, 11:18, 11:24, 12:7, 12:11, 12:15, 12:23, 13:7, 14:6, 14:22, 15:1, 16:1, 16:13, 17:11, 17:24, 18:7, 19:7, 19:20, 20:21, 21:21, 22:21, 23:14, 24:4, 24:12, 24:20, 25:16, 26:8, 26:17, 26:22, 28:8
**theoretically** [1] - 16:9
**they've** [6] - 6:22, 10:12, 11:25, 15:10, 15:11, 22:4, 23:23, 25:7, 26:24
**thinking** [1] - 26:18
**third** [1] - 16:16
**third-party** [1] - 16:16
**throughout** [1] - 13:9
**THURSDAY** [1] - 3:1
**today** [3] - 27:4, 27:15, 27:16
**track** [1] - 4:11
**tracks** [1] - 17:5
**trade** [12] - 5:8, 10:7, 10:11, 10:18, 13:3, 16:4, 25:22, 25:24, 26:6, 26:13, 27:13, 27:21
**trail** [1] - 24:16
**training** [1] - 4:3
**transcripts** [1] - 13:25
**trial** [2] - 25:24, 26:11
**true** [1] - 24:12
**try** [1] - 26:12
**trying** [11] - 9:17, 13:4, 18:25, 19:8, 19:12, 19:13, 19:21, 25:9, 25:12, 27:1, 27:24
**two** [14] - 5:22, 6:12, 7:18, 8:23, 11:22, 11:24, 11:25, 12:19, 12:20, 16:25, 23:23, 25:17, 27:18, 28:4
**types** [2] - 9:23, 24:22

**typically** [1] - 13:11

**U**

**ultimately** [1] - 24:14
**under** [2] - 3:9, 3:10
**unfair** [12] - 3:22, 4:15, 6:16, 6:19, 7:7, 14:4, 14:20, 15:8, 15:14, 15:22, 16:3, 19:14
**unfairly** [2] - 5:10, 14:15
**universe** [1] - 20:4
**unravel** [1] - 25:9
**unusual** [1] - 9:22
**up** [2] - 13:21, 15:15
**USA** [1] - 13:15
**useful** [2] - 21:7, 27:1

**V**

**vague** [1] - 25:8

**W**

**ways** [1] - 26:25
**weighing** [1] - 3:20
**welcoming** [1] - 13:16
**wherein** [1] - 14:13
**whole** [2] - 21:18, 23:16
**willing** [3] - 16:6, 23:21, 27:5
**witnesses** [4] - 17:20, 22:3, 22:6, 23:25
**word** [1] - 26:23
**words** [1] - 5:6
**worldwide** [1] - 7:11
**worried** [1] - 24:5
**wrongdoing** [1] - 18:13

—UNREDACTED  TRANSCRIPT—