Public Version

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 21-1417-JPM |
| v. | ) | |
| | ) | **FILED UNDER SEAL** |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

---

**DECLARATION OF DIANNE L. SWEENEY IN SUPPORT OF REPLY IN
SUPPORT OF OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO RE-DESIGNATE THE SECOND AMENDED COMPLAINT MARKED
ATTORNEYS' EYES ONLY TO CONFIDENTIAL**

Public Version

I, Dianne L. Sweeney, declare:

1.      I am a Partner at the law firm of Pillsbury Winthrop Shaw Pittman LLP and serve as counsel of record for the Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis") in the above-captioned matter.  I have personal knowledge of the facts stated herein, except those stated on information and belief, and if called upon, could and would testify competently to them.  I submit this declaration in support of Defendants' Reply in support of the Motion to Re-Designate the Second Amended Complaint Marked Attorneys' Eyes Only to Confidential.

2.      During the discussion held during the May 10, 2023 hearing and continuing thereafter, Qorvo, Inc. ("Qorvo") and Akoustis continued discussing a proposal for a path forward which included access to the AEO materials in dispute by both three members of Akoustis' Board and three members of Akoustis' management team.  On May 15, 2023, I sent an email to Mr. DeFosse wherein I stated "in light of the Court's comments last week about Qorvo's AEO proposal, it seems to us that there is a path forward to resolving the AEO issue so we can focus on the merits.  We are currently working to identify the three board members and three managers further to Qorvo's proposal." *See* Exhibit A at pp. 8-9. A true and accurate copy of the email string, with page numbers added for reference purposes, is attached hereto as **Exhibit A**.

3.      As the parties continued to work through to find a resolution of this motion, Akoustis agreed to Qorvo's request for additional time to file its Answering Brief until May 19. (D.I. 201).

4.      After the filing of the Opening Brief, Qorvo designated additional Akoustis produced materials as AEO, including various documents referenced in Qorvo's Trade Secret Identification filed on May 1, 2023 (D.E. 188), and a Qorvo May 3, 2023 designation of more than

Public Version

450+ Akoustis-produced documents as AEO.  The meet and confer discussions, in turn, began discussing a global proposal regarding access to the documents produced by Akoustis but identified as AEO by Qorvo.  On May 17, 2023, I sent Qorvo to following proposal regarding allowing access of the Second Amended Complaint ("SAC") to three board members and three managers:

> Jon – Further to our discussion with the Court, and in an effort to resolve the issues as to Akoustis' ability to review AEO designated documents in connection with preparation of its defense and settlement, we have identified three Board members whom we propose to review the SAC, Qorvo's trade secret identification and any documents produced by Akoustis that Qorvo subsequently designates AEO.  Those three Board members are Suzanne Rudy, Steve Denbaars and Art Geiss.  We will have each Board member sign the Protective Order as discussed.
>
> As to the management personnel who would have access to these AEO materials, in an effort to resolve this we have specifically excluded Jeff Shealy given Qorvo's prior comments/concerns.  It is admittedly a significant challenge as we are losing both his breadth of knowledge and history with the Company.  Nonetheless, we are amenable to excluding Jeff to move this forward and, to that end, we have identified the following persons:  David Aichele, Kamran Cheema and Mary Wright [reference corrected to Mary Winters at Ex. A at p. 6].  They too would sign the Protective Order.

See **Exhibit A** at p. 7.  I also confirmed that access would be given Akoustis' in-house counsel (Drew Wright) and Akoustis' outside corporate counsel.  *Id.* at pp. 7-8; *see id.* at p. 5.

5.      Later that same day, Mr. DeFosse asked for clarification regarding the individuals on the management team that were requesting access included David Aichele, Kamran Cheema, Mary Winters, and Drew Wright.  *Id.* at pp. 6-7.  My partner, David Stanton confirmed the same.  *Id.* at p. 6.

6.      On Thursday, May 18, 2023, Mr. Stanton and I conferred again with Mr. DeFosse by phone to discuss whether an agreement could be reached.  Following the call, Mr. DeFosse sent

4878-9265-8024.v1

Public Version

an email explaining that no agreement could be reached as to the proposal offered by Akoustis. He explained that Qorvo would continue to refuse access to Mr. Shealy, Mr. Aichele, Ms. Winters and Mr. Cheema since they make "competitive decisions" with respect to Qorvo.  *See* Ex. A at p. 4-5.  Qorvo, however, did consent to allowing these managers see the SAC but not the AEO exhibits (*Id.* at p. 5) which as explained in our Opening Brief has limited utility standing alone as the SAC often simply refers to the AEO exhibits or provides generic descriptions (Opening Brief at p. 9, ft. 6).  He further responded that three members of the board, Suzanne Rudy, Steve Denbaars and Art Geiss may also access those same "materials upon confirmation that they are not involved in the day-to-day activities of Akoustis or any product development activities." *Id.* After this correspondence, my colleague David Stanton and myself conferred again with Mr. DeFosse on May 19, 2023 by phone and discuss various ways to resolve the impasse including only allowing one manager (David Aichele) to access the full scope of the AEO information and providing lesser access to the other two managers (i.e., the AEO SAC paired with the AEO Trade Secret Identification Pleading but without exhibits).  No resolution was reached and Mr. DeFosse advised that he would consult with his client further but did not expect Qorvo's position to change.

7.      On May 24, 2023, I provided another proposal to Mr. DeFosse consistent with the tiered access we discussed on May 19th as a final effort to revisit the issue,  I specifically advised Mr. DeFosse that we would seek this access structure in our reply brief:

> Qorvo objects to all of our business managers – i.e., Jeff Shealy, David Aichele, Kamran Cheema and Mary Winters.  We had hoped that removing Jeff Shealy from the AEO-access team would resolve the issue, but we understand that Qorvo objects to all of Akoustis' managers.  We appreciate that our General Counsel can see these materials but, as discussed, these are technical issues that our General Counsel looks to the business managers to address.
>
> In an effort to resolve this impasse and further to the Court's comments at the May 10 hearing, we mentioned last week a potential proposal that would further limit access by the AEO-approved management team to a single manager at

Public Version

Akoustis. We have now confirmed the following proposal would be acceptable to Akoustis and, as you can see, it continues to limit our CEO's access to the most limited information:

| | Second Amended Complaint—*Pleading Only* | May 1 Trade Secret Identification—*Pleading Only* | Akoustis-produced documents that Qorvo has designated as AEO to date (as well as any future designations) | Akoustis-produced documents that Qorvo has referenced in the SAC or Trade Secret Identification |
|---|---|---|---|---|
| | | | | |
| Jeff Shealy | X | | | |
| David Aichele | X | X | X | X |
| Kamran Cheema | X | X | | |
| Mary Winters | X | X | | |

We also confirmed that the access of the three board members would include the broader set of AEO information (the same as Mr. Aichele). *Id.* at p. 4.

8.     While the Board member issue appeared resolved, later that day Mr. DeFosse responded that Qorvo would not agree to grant access to Mr. Aichele given both his position at the company and Qorvo's concerns that Mr. Aichele had used Qorvo's confidential information. *Id.* at p. 2.

9.     On May 26, 2023, I wrote back to Mr. DeFosse and told him that I learned that board member, Mr. Steve Denbaars, at times, "provides hands-on technical assistance and guidance to Akoustis relating to MOCVD (metal organic chemical vapor deposition) processes and materials (epi/single crystal), and this periodic technical assistance and guidance ultimately helps development of products using these epi/single crystal materials." *Id.* at pp. 1-2. I further explained that Mr. Denbaars work on single crystal materials should not be problematic because

4

Public Version

that technology was not at issue in the trade secrets or confidential material claims. *Id.* I further offered to meet and confer about any concerns about Mr. Denbaars single crystal work so that the parties could find a resolution.

10.     On May 31, 2023, I asked Mr. DeFosse for a response regarding Mr. Denbaars and my email of May 26.  Mr. DeFosse responded that Qorvo would *not* consent to Mr. Denbaars access to the AEO materials.  The only reason he gave was "[g]iven his involvement in product development activities." *Id.* at p. 1.  Mr. DeFosse did not accept my meet and confer offer to further discuss Mr. Denbaars.

11.      On May 10, 2023, this Court held a hearing where the Court discussed with the Parties the pending proposal regarding the AEO designations for the SAC and its exhibits.  At the hearing the Court worked with the Parties to attempt to resolve the impasse and ultimately suggested that "we need to at least allow consultation with one of the two key people that they've been working with in terms of the case…." Hearing Transcript at 48:10-14.  As explained at the hearing, Pillsbury's primary sources at the Company in terms of the issues raised in the AEO materials in dispute are Mr. Shealy and Mr. Aichele.  A true and accurate copy of the relevant excepts from the May 10, 2023 Hearing Transcript discussing Qorvo's AEO designation position are attached hereto as **Exhibit B**.

12.     As noted in the Reply and to the extent the exhibit referenced in or attached to the SAC has a date on the face of the document, most exhibits have a date in 2019 or earlier.

4878-9265-8024.v1

Public Version

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of June, 2023.

_/s/ Dianne L. Sweeney_
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304
(650) 233-4046
_dianne@pillsburylaw.com_

4878-9265-8024.v1

Public Version

# EXHIBIT A

Public Version

| | |
|---|---|
| **From:** | Jonathan DeFosse |
| **To:** | Sweeney, Dianne L. |
| **Cc:** | Robert Masters; Roy Jung; James Wald; LegalTm-Qorvo-Akoustis; JTigan@morrisnichols.com; Jakopin, David A.; Roozen, Theresa A.; Selness, Ryan; Rivaux, Shani; Steve B. Brauerman; Ronald P. Golden III; Stanton, David; Rose, Meri L. |
| **Subject:** | RE: Qorvo v. Akoustis: AEO Designations |
| **Date:** | Wednesday, May 31, 2023 4:11:44 PM |

Hi Dianne-

Thank you for circling back on this.

Given his involvement in product development activities, we do not consent to providing Dr. Denbaars access to the AEO materials we have been discussing.

Best Regards,
Jon

---

**From:** Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Sent:** Wednesday, May 31, 2023 4:06 PM
**To:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Hi Jon – Checking back on this. Could you provide a response today as we are working to finalize our filing. Thanks, Dianne

---

**From:** Sweeney, Dianne L.
**Sent:** Friday, May 26, 2023 3:42 PM
**To:** 'Jonathan DeFosse' <JDeFosse@sheppardmullin.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Public Version

Jon -- We are in the process of having the Board sign-off on the Protective Order and I learned that at times Steve Denbaars provides hands-on technical assistance and guidance to Akoustis relating to MOCVD (metal organic chemical vapor deposition) processes and materials (epi/single crystal), and this periodic technical assistance and guidance ultimately helps development of products using these epi/single crystal materials.  While we don't see an issue in terms of our AEO Access agreement since that technology is not at issue in any of the alleged trade secrets or Qorvo confidential materials, your May 19 email said "any" product development so we wanted to circle-back and clarify that he is not involved in any relevant product development.  Otherwise, Mr. Denbaars (like Mr. Geiss) serves as a Board representative on the Company's technology committee (as you have already seen in our productions and that committee generally meets quarterly) and we again confirm that neither Mr. Denbaars nor the other board members receiving AEO Access have a non-Board product development role except as described above.  To the extent Qorvo has any reasonable concern around the MOCVD work, please let us know so that we can work to close this issue.  Absent such a concern, we will report to the Court that this matter, as to the Board, is resolved which will no doubt be well received.

Thanks and have a good holiday weekend,

Dianne

---

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Wednesday, May 24, 2023 1:21 PM
**To:** Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Hi Dianne,

Thank you for your email.

We will stand by the proposed compromise in our email of May 19.  As you note, we cannot agree to granting Mr. Aichele access to the AEO materials (other than those he has already received) given his position at the company.  The concerns about Mr. Aichele are also heighted given the evidence of his prior use of Qorvo's confidential information.

Best Regards,
Jon

**From:** Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Sent:** Wednesday, May 24, 2023 11:42 AM
**To:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>;
James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-
Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A.
<david.jakopin@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>;
Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>;
Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III
<rgolden@bayardlaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Rose, Meri L.
<meri@pillsburylaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Jon –

Sorry for the slight delay in sending this over, I had a trial early this week so I've been out-of-pocket.
Further to our discussion on Friday, we understand that Qorvo will not agree to allow any of
Akoustis' business managers to see Akoustis-produced documents that Qorvo has now designated as
AEO.

Specifically, Qorvo objects to all of our business managers – i.e., Jeff Shealy, David Aichele, Kamran
Cheema and Mary Winters.  We had hoped that removing Jeff Shealy from the AEO-access team
would resolve the issue, but we understand that Qorvo objects to all of Akoustis' managers.  We
appreciate that our General Counsel can see these materials but, as discussed, these are technical
issues that our General Counsel looks to the business managers to address.

In an effort to resolve this impasse and further to the Court's comments at the May 10 hearing, we
mentioned last week a potential proposal that would further limit access by the AEO-approved
management team to a single manager at Akoustis.  We have now confirmed the following proposal
would be acceptable to Akoustis and, as you can see, it continues to limit our CEO's access to the
most limited information:

|  | Second Amended Complaint—*Pleading Only* | May 1 Trade Secret Identification —*Pleading Only* | Akoustis-produced documents that Qorvo has designated as AEO to date (as well as any future designations) | Akoustis-produced documents that Qorvo has referenced in the SAC or Trade Secret Identification |
|---|---|---|---|---|
|  |  |  |  |  |
| Jeff Shealy | X |  |  |  |
| David Aichele | X | X | X | X |
| Kamran | X | X |  |  |

**Public Version**

| | | | | |
|---|---|---|---|---|
| Cheema | | | | |
| Mary Winters | **X** | **X** | | |

While it is our understanding that Qorvo will not agree to this proposal, as Mr. Aichele is involved in competitive decision-making, we plan to submit this to the Court as part of our reply papers so we wanted to raise the proposal again in the event that Qorvo will revisit the issue.

Separately, this confirms that the parties have resolved the access issue as to the Board.  The parties have agreed that Suzanne Rudy, Steve Denbaars and Art Geiss can see all the above materials (the same access as proposed for David Aichele above) ("AEO Information").  This further confirms that none of these Board members have a day-to-day role at Akoustis including in management or product development activities.  They do, of course, receive management and product development information, like other Board members, to the extent such information is presented to the Board by management for consideration in the ordinary course of Company activities and meetings.

This also confirms that Mr. Drew Wright and K&L Gates (Company's corporate counsel) can also see the AEO Information.

All of the above access would be granted solely for purposes of this litigation in accordance with the Protective Order.

Please let us know today whether Qorvo will revisit the issue as to Akoustis' management team or if you need further time to consider.  Otherwise, our reply papers will, at least, advise that the parties did resolve the issue as to the Board and Legal team as set forth above.

Thanks,  Dianne

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Friday, May 19, 2023 11:47 AM
**To:** Stanton, David <david.stanton@pillsburylaw.com>; Sweeney, Dianne L. <dianne@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Dear Dianne and David,

Public Version

Thank you for taking the time to speak yesterday.

After speaking with our client, we cannot agree to allow further circulation of the AEO documents at issue to managers who are making competitive decisions with respect to Qorvo, which would include Mr. Shealy, Mr. Aichele, Ms. Winters, and Mr. Cheema. We remain willing to allow access to other managers (e.g., Mr. Wright) who are not making competitive decisions.

We understand that Akoustis asserts that needs employees with knowledge of the technical and business aspects of the case to analyze and advise on the trade secret claims. However, we disagree with that position. We believe the proper course here (as in any case between competitors) is to rely on the outside experts to perform the trade secret analysis and advise the attorneys and the Board.

While we continue to disagree on access to the AEO materials for Mr. Shealy, Mr. Aichele, Ms. Winters, and Mr. Cheema, please note that:

- We will consent to Mr. Shealy, Mr. Aichele, Ms. Winters, and Mr. Cheema having access to the SAC itself, but not the AEO exhibits.

- We agree the Mr. Wright may access the SAC and the materials produced from Akoustis's files that Qorvo has designated as AEO;

- We agree that Suzanne Rudy, Steve Denbaars and Art Geiss may also access those materials upon confirmation that they are not involved in the day-to-day activities of Akoustis or any product development activities.

If the above is sufficient, please let us know and we can coordinate on withdrawing the motion to re-designate. If the above is not sufficient, we can file our opposition to the motion today to keep this issue moving forward expeditiously.

Best Regards,
Jon

---

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Wednesday, May 17, 2023 6:16 PM
**To:** Stanton, David <david.stanton@pillsburylaw.com>; Sweeney, Dianne L. <dianne@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com>; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>

**Public Version**

**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Dear Dianne and David,

I am writing because you have requested a response by COB today.  We are still in the process of conferring with our client and, as such, cannot consent to the proposal in your email below.  At this point, I suggest we schedule a meet-and-confer for tomorrow at 2:00 pm PT/5:00 pm ET.

Best Regards,
Jon

---

**From:** Stanton, David <david.stanton@pillsburylaw.com>
**Sent:** Wednesday, May 17, 2023 3:02 PM
**To:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>; Sweeney, Dianne L. <dianne@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Hi Jon,

Dianne is in a meeting,  but yes, that is correct.

Thanks,

David

**David Stanton** | Partner
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, 36th Floor | Los Angeles, CA 90017-5524
t +1.213.488.7271 | m +1.310.480.9102
david.stanton@pillsburylaw.com | website bio

---

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Wednesday, May 17, 2023 11:59 AM
**To:** Sweeney, Dianne L. <dianne@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen,

Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Hi Dianne-

Thank you for this proposal, which we will discuss with our client.

As a point of clarification, for the management team access, is Akoustis seeking to share materials with David Aichele, Kamran Cheema, Mary Winters, and Drew Wright?

Best Regards,
Jon

---

**From:** Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Sent:** Wednesday, May 17, 2023 2:34 PM
**To:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Jon – Further to our discussion with the Court, and in an effort to resolve the issues as to Akoustis' ability to review AEO designated documents in connection with preparation of its defense and settlement, we have identified three Board members whom we propose to review the SAC, Qorvo's trade secret identification and any documents produced by Akoustis that Qorvo subsequently designates AEO.  Those three Board members are Suzanne Rudy, Steve Denbaars and Art Geiss.  We will have each Board member sign the Protective Order as discussed.

As to the management personnel who would have access to these AEO materials, in an effort to resolve this we have specifically excluded Jeff Shealy given Qorvo's prior comments/concerns.  It is admittedly a significant challenge as we are losing both his breadth of knowledge and history with the Company.  Nonetheless, we are amenable to excluding Jeff to move this forward and, to that end, we have identified the following persons:  David Aichele, Kamran Cheema and Mary Wright. They too would sign the Protective Order.

As to additional lawyers with access to these materials, under the terms of the Protective Order, that would be limited to Drew Wright and K&L Gates (Company's corporate counsel).

Please let us know by COB today whether Qorvo intends to object to any of those Board,

Management or Legal team members receiving access to the SAC, Qorvo's trade secret identification, and any Akoustis-produced document that Qorvo subsequently designates AEO, solely purposes of this litigation in accordance with the Protective Order in the case.

We hope this moves us to resolution on these issues but if not, please advise your availability for a call tomorrow between 10:00 a.m. to 1:00 p.m. or 2-3 p.m. PT.

Regards,

Dianne

---

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Monday, May 15, 2023 1:03 PM
**To:** Sweeney, Dianne L. <dianne@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Hi Dianne-

Thanks. That works on our end.

If there is a potential to reach a compromise in the near term, we would also like to extend the deadline for the filling of our opposition brief until Friday.  Does that work?

Best Regards,
Jon

---

**From:** Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Sent:** Monday, May 15, 2023 3:57 PM
**To:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Hi Jon, in light of the Court's comments last week about Qorvo's AEO proposal, it seems to us that there is a path forward to resolving the AEO issue so we can focus on the merits.  We are currently working to identify the three board members and three managers further to Qorvo's proposal.  We expect to have a list to you tomorrow or Wednesday.  As it seems central to have the persons identified first, we suggest we defer today's call and reset it for Thursday so that we can see if we have a resolution.

Thanks,  Dianne

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Tuesday, May 9, 2023 2:40 PM
**To:** Sweeney, Dianne L. <dianne@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Hi Dianne-

That works.  Thanks.

Best Regards,
Jon

**From:** Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Sent:** Tuesday, May 9, 2023 5:07 PM
**To:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Thanks Jon.  How about Monday at 1:30 PT?

Thanks,  Dianne

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Tuesday, May 9, 2023 7:34 AM
**To:** Sweeney, Dianne L. <dianne@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>;
James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-
Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A.
<david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen,
Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>;
Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman
<SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Hi Dianne-

Thank you.

At the risk of repeating myself, Qorvo has designated the materials as AEO, not Confidential.

We are generally available on Friday or Monday to discuss this issue if you would like to propose a
time that works for your side.

Best Regards,
Jon

---

**From:** Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Sent:** Tuesday, May 9, 2023 12:56 AM
**To:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>;
James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-
Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A.
<david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen,
Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>;
Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman
<SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Dear Jon –

Qorvo is the designating party as to the designations at issue.  However, you want to recast the issue
whether it is a designation v. a re-designation does not change the fact that many of these
documents were just designated Confidential.

Our objections, as further explained in my letter, are certainly not frivolous and go to our client's due
process rights.

Public Version

Pursuant to Section 11 of the protective order, we are available for a meet and confer and ask that you provide times later this week or early next week.

Thanks,  Dianne

**Dianne L. Sweeney** | Managing Partner, Silicon Valley Office
Pillsbury Winthrop Shaw Pittman LLP
2550 Hanover Street | Palo Alto, CA 94304-1115
t +1.650.233.4046 | f +1.650.233.4545
dianne@pillsburylaw.com | website bio

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Friday, May 5, 2023 5:57 PM
**To:** Rose, Meri L. <meri@pillsburylaw.com>; Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>;
James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-
Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A.
<david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen,
Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>;
Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman
<SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Dear Dianne-

I received the below correspondence under your signature a few minutes ago.  I am responding immediately in an attempt to head-off any further abuse of Qorvo's trade secrets by your client.

We are not asking Akoustis to "re-designate" documents. Qorvo is itself designating confidential Qorvo materials found in Akoustis's files as AEO under the governing Protective Order. *See* Protective Order, Section 5.  Qorvo does not need Akoustis's agreement or consent to make this designation.  To the extent Akoustis wishes to challenge Qorvo's designations, the process for bringing such a challenge (and the consequences for a frivolous challenge) are set forth in Section 11 of the Protective Order. If you would like to trigger that process, please let me know.  But, for now, our AEO designations stand and must be respected.

Best Regards,
Jon

**From:** Rose, Meri L. <meri@pillsburylaw.com>
**Sent:** Friday, May 5, 2023 8:35 PM
**To:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>;
James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis <LegalTm-Qorvo-

Public Version

Akoustis@sheppardmullin.com>; JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Sweeney, Dianne L. <dianne@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>; Ronald P. Golden III <rgolden@bayardlaw.com>; Rose, Meri L. <meri@pillsburylaw.com>
**Subject:** RE: Qorvo v. Akoustis: AEO Designations

Dear Mr. DeFosse,

Please see the attached correspondence from Ms. Sweeney.

Regards,
Meri

**Meri L. Rose** | Pillsbury Winthrop Shaw Pittman LLP
Paralegal/Legal Secretary
2550 Hanover Street | Palo Alto, CA 94304-1115
t +1.650.233.4864 | f +1.650.233.4545
meri@pillsburylaw.com | pillsburylaw.com

---

**From:** Jonathan DeFosse <JDeFosse@sheppardmullin.com>
**Sent:** Wednesday, May 3, 2023 8:26 AM
**To:** Sweeney, Dianne L. <dianne@pillsburylaw.com>
**Cc:** Robert Masters <RMasters@sheppardmullin.com>; Roy Jung <rjung@sheppardmullin.com>; James Wald <JWald@sheppardmullin.com>; LegalTm-Qorvo-Akoustis@sheppardmullin.com, JTigan@morrisnichols.com; Jakopin, David A. <david.jakopin@pillsburylaw.com>; Stanton, David <david.stanton@pillsburylaw.com>; Roozen, Theresa A. <theresa.roozen@pillsburylaw.com>; Selness, Ryan <ryan.selness@pillsburylaw.com>; Rivaux, Shani <shani.rivaux@pillsburylaw.com>; Rose, Meri L. <meri@pillsburylaw.com>; Steve B. Brauerman <SBrauerman@bayardlaw.com>
**Subject:** Qorvo v. Akoustis: AEO Designations

Dear Dianne-

Please see the attached correspondence concerning AEO designations.

Best Regards,
Jon

**Jonathan DeFosse**
**Sheppard Mullin** | Washington
+1 202-747-1932 | ext. 21932

<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the

individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury

Public Version

Winthrop Shaw Pittman. Thank you.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.

Public Version

# EXHIBIT B

Case 1:21-cv-01417-JPM   Document 230   Filed 06/09/23   Page 25 of 49 PageID #: 13375
Public Version
Case 1:21-cv-01417-JPM   Document 199   Filed 05/15/23   Page 1 of 67 PageID #: 12325

1

1     IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF DELAWARE
2
3     _____
                                        |
4     QORVO, INC.,                      |
                                        |
5              Plaintiff,               |
                                        |
6     vs.                               |   NO. 21-CV-01417
                                        |
7     AKOUSTIS TECHNOLOGIES,            |
      INC., AND AKOUSTIS, INC.,         |
8                                       |
               Defendants.              |
9     _____

10

11

12        TRANSCRIPT OF THE STATUS VIDEOCONFERENCE

13                   BEFORE THE

14           HONORABLE JON P. MCCALLA

15

16

17                   WEDNESDAY

18                 MAY 10, 2023

19

20

21

22

23        TINA DuBOSE GIBSON, RPR
              OFFICIAL REPORTER
24      FOURTH FLOOR FEDERAL BUILDING
           MEMPHIS, TENNESSEE 38103

25

**UNREDACTED TRANSCRIPT**

Case 1:21-cv-01417-JPM   Document 230   Filed 06/09/23   Page 26 of 49 PageID #: 13376
Public Version
Case 1:21-cv-01417-JPM   Document 199   Filed 05/15/23   Page 2 of 67 PageID #: 12326

2

```
1              A P P E A R A N C E S

2

3          Appearing on behalf of the Plaintiff:

4              ROBERT M. MASTERS
               ROY JUNG
5              Sheppard, Mullin, Richter & Hampton, LLP
               2099 Pennsylvania Avenue, NW, Suite 100
6              Washington, DC  20006-6801
               (202) 747-1900

7
               JONATHAN DEFOSSE
8              Sheppard, Mullin, Richter & Hampton, LLP
               1540 El Camino Real
9              Menlo Park, California  94025
               (650) 815-2600

10             JEREMY A. TIGAN
               Morris, Nichols, Arsht & Tunnell LLP
11             1201 North Market Street, 16th Floor
               Wilmington, Delaware 19899-1347
12             (302) 351-9106

13

14         Appearing on behalf of the Defendants:

15             DAVID A. JAKOPIN
               DIANNE L. SWEENEY
16             ROBERT M. FUHRER
               THERESA A. ROOZEN
17             DAVID L. STANTON
               RYAN SELNESS
18             Pillsbury, Winthrop, Shaw, Pittman, LLP
               2550 Hanover Street
19             Palo Alto, California 94304-1115
               (650) 233-4500

20
               RONALD P. GOLDEN, III
21             Bayard, PA
               600 North King Street, Suite 400
22             Wilmington, Delaware 19801
               (302) 655-5000

23

24

25
```

**UNREDACTED TRANSCRIPT**

1              WEDNESDAY

2            MAY 10, 2023

3         ----------------------

4

5          THE COURT:  This is a follow-up status

6   conference, and I understand that the individuals speaking

7   for the plaintiff will be Mr. Masters, and the individual

8   leading for the defense will be Ms. Sweeney.  So I can see

9   both of you.  I think I can, yes.

10          There's only one outstanding motion at this time.

11   I did receive, actually, very recently -- it came in later

12   yesterday evening, and I had a meeting elsewhere -- the

13   May 9th position of the parties and a proposed schedule,

14   which is, of course, not agreed upon.  There's significant

15   differences in the schedule.

16          On the issue of the disclosure -- well, let me

17   check on one thing to start with.  To what degree has there

18   been a relatively detailed disclosure of the trade secrets in

19   the case?

20          And we'll start with -- we'll start with

21   plaintiff's counsel.

22          MR. MASTERS:  Good morning, Your Honor.  Robert

23   Masters for the plaintiff.  So to answer your question and

24   pursuant to your order from the April 3rd status conference,

25   we produced an extremely detailed trade secret disclosure on

**UNREDACTED TRANSCRIPT**

1   May 1.  That disclosure consisted of 52 pages and identified

2   71 trade secret groups with a very detailed explanation of

3   each trade secret, including specific references to documents

4   by production numbers.

5          For example, when I say production numbers, it's

6   either an Akoustis -- it's either a document that has an

7   Akoustis Bates number on it or, in some cases, a Qorvo Bates

8   number on it.  There's also specific references to products

9   as well with both Qorvo and Akoustis.  So in our view, it's

10  an extremely detailed disclosure that satisfied your order.

11         THE COURT:  Let me ask a question about the

12  general nature of the trade secrets by category, and you may

13  already have them broken down that way.  I, obviously, have

14  not seen them.

15         I assume that there are, what we might refer to

16  as, financial trade secrets.  There may or may not be, but

17  I'm guessing there might be.  There'll also be -- there'll

18  also be lists of data that's of interest to any competitor in

19  terms of vendors, sources, and various materials, and so

20  forth.  I don't know about that.

21         And then, of course, there would be things that

22  relate to the process for manufacturing.  I don't know if

23  that's right at all.  And I'd like some guidance,

24  Mr. Masters, from you.

25         MR. MASTERS:  Okay.  Well, you're fairly close,

**UNREDACTED TRANSCRIPT**

**Public Version**

5

1   Your Honor.  There are trade secrets relating essentially to

2   the entirety of the business, from the product design and

3   development process to specific products under development

4   and their design, the fabrication, the manufacturing, device

5   inspection processes, and statistical data that reveals the

6   cost of manufacturing.  There's tests, qualification and

7   characterization systems, conditions and procedures, data,

8   and major performance relating to Qorvo products, which is

9   extremely valuable to a competitor trying to match the

10  performance in that respect.

11          There's market intelligence, proposed solutions,

12  product road maps, for example, where Qorvo is headed and

13  strategically in this competitive field.  For example, is it

14  in one industry or another?  Is it headed to the automotive

15  industry; and, if so, what products is the automotive

16  industry demanding, and timing in order to capture that

17  market?

18          And then there's also internal business processes

19  related to tax and finance and also organizational structure,

20  worldwide compensation models and specific ranges each role

21  of a category within the company and what range of salary

22  somebody would pay, and then a customer list as well.

23          So that's a fairly broad spectrum, if you will,

24  of a comprehensive of the business that we have found in

25  these trade secrets.

**UNREDACTED TRANSCRIPT**

6

1           THE COURT:  All right.  And you are going to have

2    a forensic examination of certain things, is that right,

3    certain computer information?

4           MR. MASTERS:  Yes, Your Honor.  We have served a

5    request for inspection last week or maybe earlier this week.

6    I can't think of the dates right now.

7           THE COURT:  I think everybody would understand

8    that that is not unusual, but we can check on that.

9           So let me go to Ms. Sweeney.  You agree that a

10   forensic examination is not unusual?

11          MS. SWEENEY:  I agree that you do see forensic

12   examinations in these types of cases.  Frequently, you see

13   that done with a third-party neutral being involved.  It's

14   typically a process that we've seen that takes months of

15   time.  It's obviously very sensitive when you have two

16   competitors involved.

17          We just got this request earlier and over the

18   last couple of days, so we're still looking at it, but I

19   certainly agree with the Court that it is not unusual.

20          THE COURT:  Why don't we go back to Mr. Masters

21   and make sure I understand.

22          I assume that this is by a third-party neutral

23   who specializes in forensic examinations?

24          MR. MASTERS:  That's correct, Your Honor.  It is

25   a third party that has experience doing these types of

**UNREDACTED TRANSCRIPT**

7

1   forensic analysis, and we have suggested in our request for

2   admission a protocol to carry out this because we recognize

3   we are competitors.

4          The information, all that is obtained, will be

5   under the protective order.  And I just want to clarify one

6   thing, Judge.  The forensic expert is not a neutral if you

7   mean in the sense of neutral to both sides.  He is an expert

8   who has experience doing this that has been retained by Qorvo

9   for the purposes of carrying out this forensic inspection.

10         Now, again, we're going to work on the protocols

11  with Akoustis; and if they want an expert to see what images

12  we gather, I mean, that's fair enough.  But . . .

13         MS. SWEENEY:  Yes, if I could just speak to that.

14  Our understanding of what was proposed was what Mr. Masters

15  just said.  It's a retained expert by Qorvo, not a neutral.

16  What we're used to seeing in other cases is that there is a

17  neutral discovery referee given the significance of the

18  information that is being examined in this type of

19  inspection.

20         THE COURT:  Well, I take it, though, that this

21  third party -- and usually -- it's not unusual for them to be

22  retained, but it can be that both parties agree on the

23  neutral for the examination.

24         MS. SWEENEY:  We just got this on Friday, Your

25  Honor, so we haven't gotten that far.  And I have to say on

**UNREDACTED TRANSCRIPT**

Public Version

8

1    the -- just turning back slightly on the trade secrets, the

2    definition that Mr. Masters provided and described of what

3    this identification looks like is more information than our

4    client even has about these trade secrets at this point.

5            We have -- the motion, as the Court mentioned,

6    that's pending is for Akoustis to get access to the second

7    amended complaint so we can understand the allegations and

8    work with the client.  The trade secret identification is

9    also AEO, so we are blinded in terms of working with our

10   client on these particular issues but, obviously, we've now

11   filed the first motion.  We have meet and confers on other

12   AEO issues that are coming up with Qorvo.

13           THE COURT:  I understand, Ms. Sweeney, that they

14   don't have an objection to a number of people having access

15   to this information, and that's set out in the last paragraph

16   on page 3 of the letter.

17           Mr. Masters, is that right?

18           MR. MASTERS:  That is correct, Your Honor.  And

19   that is something that we agreed to shortly before the last

20   status conference, I believe.

21           THE COURT:  So you --

22           MR. MASTERS:  And one --

23           THE COURT:  I'm sorry.  Go ahead.

24           MR. MASTERS:  I was going to say, as one example,

25   they asked for every one of their seven or eight board

**UNREDACTED TRANSCRIPT**

1    members to have access to our trade secret information; and

2    we said, well, what about the auditing committee of the

3    board.  They said they don't have an audit committee.

4               Fair enough.  So we said, how about three?  And

5    they never came back to demand why they need all eight to see

6    it.  Why can three not have access?

7               THE COURT:  They don't need all eight.  That's

8    obvious.  But I do think that they do need access.  I think

9    that they probably don't have a problem with that.

10              Right, Ms. Sweeney?

11              MS. SWEENEY:  Your Honor, if the proposal is as

12   was laid out in the letter last night, Akoustis would have

13   accepted that proposal, but I am looking at --

14              THE COURT:  Well, I think we need not go further.

15              MS. SWEENEY:  Okay.  Well --

16              THE COURT:  You're accepting that proposal.  And

17   we don't -- and that's great.  That's great.  That's

18   progress.  You don't have an objection to basically what's

19   set out on page 3, the last paragraph.  Is that -- that is

20   correct, right?

21              MS. SWEENEY:  That's correct, as long as there

22   are not conditions on who those members are.  I will just --

23              THE COURT:  Well, there can be conditions on who

24   they are.

25              And what -- are there conditions, Mr. Masters?  I

**UNREDACTED TRANSCRIPT**

Case 1:21-cv-01417-JPM   Document 230   Filed 06/09/23   Page 34 of 49 PageID #: 13384
Public Version
Case 1:21-cv-01417-JPM   Document 199   Filed 05/15/23   Page 10 of 67 PageID #: 12334

10

1   can understand there might be some people that could be

2   excluded.  Mr. Masters, do you not have an objection as to

3   who they are?  Are there some people that you think are

4   simply inappropriate to receive the information?

5              MR. MASTERS:  Are we talking about the board

6   members?  The board members, we said any three.

7              THE COURT:  Right.

8              MR. MASTERS:  They were going to tell us who the

9   three were.  Those three would sign the protective order and

10  we were fine with that, on board members.

11             THE COURT:  Right.  You said the management team?

12             MR. MASTERS:  The management team, we also said

13  three members of the management team, including their general

14  counsel, which was agreed to long ago.  General counsel has

15  had access from right after we filed the second amended

16  complaint.  But we also said they could have three members of

17  their management team.

18             We excluded those management members who have

19  been involved in the misuse of Qorvo's trade secret

20  information.  We have given access to Akoustis's outside

21  corporate counsel.  So it's not counsel here on the call

22  today that's of record.  It's their outside corporate

23  counsel.

24             And, finally, the protective order allows -- and

25  we've agreed to this -- that if an Akoustis employee had

**UNREDACTED TRANSCRIPT**

1    previously seen the Qorvo document, they can confer with that

2    employee under the protective order.

3            THE COURT:  Absolutely.  Well, I think that may

4    have a little bit of an issue there.

5            Ms. Sweeney, it seems like we're okay on board

6    members.  That's not a problem.  What are the other issues?

7            MS. SWEENEY:  So, Your Honor, as you know,

8    Akoustis is a very small company.  In my discussion with

9    Mr. Masters and his colleague on this, I literally brought up

10   the Akoustis website.  We don't have management of a hundred

11   or, you know, even 20.  We --

12           THE COURT:  I'm aware of the size.  I know that.

13           MS. SWEENEY:  We have four key managers, and

14   they're excluding three.  So we felt that we were just in an

15   untenable position because the people that they are

16   excluding, which is our CEO and founder, our executive vice

17   president of business development, and our executive VP of

18   fab and corporate operations is who the board looks to on all

19   of these issues.  They are the technical people.  They run

20   the day-to-day.

21           We don't have a second level of managers to turn

22   to.  It is a very lean startup company; and if we had a

23   company, you know, at a Qorvo scale, this would be -- this is

24   something we're used to seeing in trying to find a different

25   subset of managers.  We simply don't have that.

**UNREDACTED TRANSCRIPT**

Case 1:21-cv-01417-JPM   Document 230   Filed 06/09/23   Page 36 of 49 PageID #: 13386
Public Version
Case 1:21-cv-01417-JPM   Document 199   Filed 05/15/23   Page 12 of 67 PageID #: 12336

12

1          And I think what we're asking for in the motion

2     that's pending is not to be able to share this information

3     across the company far and wide.  That protective order is

4     actually more narrow.  It limits who can see it.  And it's

5     also solely for purposes of this litigation.

6          We have no desire to expose anyone at Akoustis to

7     documents when we don't need to.  That's standard practice in

8     a trade secret process.  But these three people are the

9     critical people with the history, the technical knowledge,

10    and the management at the company.  And, frankly, they have

11    been our day-to-day people that we work with, in addition, of

12    course, to the general counsel.

13          THE COURT:  Sure.  Just so it's easier for me to

14    follow, will you give me the names of each of the three

15    individuals?  The CEO, I'm sure I can look it up.

16          MS. SWEENEY:  It's Jeff Shealy is our founder and

17    CEO.  He's also a director.

18          THE COURT:  Sure.

19          MS. SWEENEY:  Dave Aichele, which is

20    A-I-C-H-E-L-E.  He's our executive vice president of business

21    development, and Mary Winters, who is the executive vice

22    president of fabrication and corporate operations.  I'm

23    actually not aware of any allegations related to Ms. Winters.

24    But, regardless, these are our key managers.

25          THE COURT:  Sure.  Okay.

**UNREDACTED TRANSCRIPT**

Public Version

13

1          And what's the issue as to these three folks,

2    Mr. Masters, just so I'll understand?

3          MR. MASTERS:  Yes.  So with respect to each of

4    them, they have been involved in the misuse of Qorvo's trade

5    secret information, including Mr. Shealy, Mr. Aichele, and

6    Ms. Winters.  They are competitive decision-makers within the

7    company; and as I said, they've been involved in the trade

8    secret information.  Therefore, we permitted counsel to

9    disclose to the other executive members of Akoustis that sit

10   at the same level, including the general counsel.

11         THE COURT:  Now, let me ask this, just so I'll

12   understand, Mr. Masters:  If these individuals have been

13   involved in the disclosure of the trade secrets and these

14   documents relate to what they have been utilizing, aren't

15   they -- what's the point?  They already know the information.

16         MR. MASTERS:  Well, Your Honor, under the

17   protective order, if they have already seen the document,

18   they would be entitled to see it, that's true.

19         THE COURT:  Okay.

20         MR. MASTERS:  What counsel wants is them to see

21   the entirety of what we just disclosed, which is in a 52-page

22   disclosure, and so they get access to far more of Qorvo's

23   trade secrets.

24         THE COURT:  So Mr. Shealy can see anything that

25   he's already participated in or seen?

**UNREDACTED TRANSCRIPT**

Case 1:21-cv-01417-JPM   Document 199   Filed 05/15/23   Page 14 of 67 PageID #: 12338

14

```
 1              MR. MASTERS:  Absolutely.  Under the protective
 2   order, they have that, and we've never denied that.
 3              THE COURT:  And that would be true of the other
 4   two individuals also?
 5              MR. MASTERS:  That's correct, Your Honor.
 6              THE COURT:  And I want to make sure I understand
 7   this.  Is Mr. Shealy -- as to Mr. Shealy, are there many,
 8   many documents that he would have seen already?
 9              MS. SWEENEY:  No, Your Honor.
10              THE COURT:  I didn't ask Ms. Sweeney.  I asked
11   Mr. Masters.  I'm sorry.
12              MR. MASTERS:  There's a lot more than a handful.
13   Many, many, it's hard for me to put a number on many, many.
14              THE COURT:  Sure, sure, sure.
15              Okay.  Well, let's go to Ms. Sweeney and see what
16   she thinks about that.
17              MS. SWEENEY:  Sure.  So we looked and counted,
18   and this was a while ago.  My recollection is that
19   Mr. Shealy -- we were talking with Mr. Masters at this point
20   on the second amended complaint.  Mr. Shealy, I think, was
21   identified on two or three of those documents; and, you know,
22   what we realized is that without Mr. Shealy and Mr. Aichele's
23   input as our day-to-day people who understand this
24   technology, we couldn't just hand them the couple of
25   documents that they were identified on.
```

**UNREDACTED TRANSCRIPT**

15

1          The other managers that Mr. Masters speaks of is

2     our chief financial officer and our general counsel.  These

3     aren't people who can understand and parse these types of

4     documents.

5          MR. MASTERS:  And their chief product officer.

6          MS. SWEENEY:  Right, who is new to the company,

7     yes.

8          THE COURT:  There's not a problem -- who is the

9     senior most person, Mr. Masters, as you understand it, at the

10    defendant who can look at everything?

11         MR. MASTERS:  That can look at everything?

12         THE COURT:  Sure.

13         MR. MASTERS:  I believe it would be the general

14    counsel who can see everything; and then, of course, we just

15    talked about Shealy, Aichele, and Winters, who can see what

16    they've already had access to.  Plus Akoustis has outside

17    experts, of course, that can review these documents too, as

18    we've had to do ourselves.

19         THE COURT:  Sure.  Sure.

20         Okay.  Well, let me make sure we've gone back

21    through this list, then.  Entitled to share the documents

22    with any employee who has previously received the document.

23    That's good.  That's important, because you'll need to ask --

24    defense counsel will have to ask questions about that.

25         Employees and then the three members -- three

**UNREDACTED TRANSCRIPT**

1   board members, any three board members, the outside general

2   counsel, and then three members of the management team.   I

3   think you're saying excluding these three individuals.

4               Is that right, Mr. Masters?

5               MR. MASTERS:   That's right.   And just to clarify,

6   Your Honor, on the board, the board members, Mr. Shealy is

7   also a board member, so he --

8               THE COURT:   Right, he's a board --

9               MR. MASTERS:   So we would exclude him as one of

10  the three on the board.

11              THE COURT:   Okay.   All right.

12              Well, I think that, Ms. Sweeney, what you're

13  saying is that the management team is pretty small and that

14  these three individuals are running the company?

15              MS. SWEENEY:   That's exactly right, Your Honor,

16  and that's why we brought the motion and why the proposal

17  wasn't acceptable as originally made.   And, obviously, I said

18  we'd accept what's in here because it doesn't have all the

19  conditions and limitations; but, you know, certainly, if

20  those three managers are acceptable to review this with

21  counsel under the protective order, understanding it's

22  confidential, and solely for the purpose of litigation, we

23  would have moved this, you know, a mile down the road because

24  we can finally then talk to Akoustis about what this case is

25  about and start to prepare our defense, which we have just

**UNREDACTED TRANSCRIPT**

1    absolutely not been able to do.

2              And the practicalities of this is enormous.  I

3    mean, even for things that Qorvo wants us to do, like,

4    they've sent us a 30(b)(6) with 50 different topics.  How do

5    we identify a person who is most knowledgeable about trade

6    secrets when they can't know what it is?  How do we have

7    conversations about whether these trade secrets were used or

8    not?

9              And Mr. Masters is correct, in terms of the trade

10   secret identification, it's voluminous.  It's over 2,000

11   pages once you have all the referenced exhibits with it, and

12   we now are dealing with something in the realm of 300 trade

13   secrets.  He mentioned 71 groups, and when you break up the

14   subgroups, I stopped counting around 300.  So we have a

15   massive undertaking that will require our client to say, did

16   we see this document, did we use this document, what usage

17   did we have?

18             Those are things that only fact witnesses can

19   know.  Experts cannot know that.  So we need to be able to,

20   with counsel, under the protective order, just for purposes

21   of this litigation, ask those questions to form our defense.

22             MR. MASTERS:  Your Honor, if I may respond

23   briefly?

24             THE COURT:  Yes, you may.

25             MR. MASTERS:  So it seems like the focus of the

**UNREDACTED TRANSCRIPT**

1   discussion is on the management team, and the case law that

2   would have been in our opposition says that management does

3   not have -- need access if they have a general counsel, which

4   they do, and they have outside counsel.  And they have at

5   least two law firms.

6          They also have outside technical advisors to

7   address these issues.  And the concern is that competitors

8   should not get further access to Qorvo's top trade secret

9   information.  These are competitive decision-making

10  individuals, and to give them broad access to every Qorvo

11  document that's identified in -- as Ms. Sweeney just said, I

12  think 2,000 pages, it might be more, in our trade secret

13  disclosure is just a great concern to Qorvo, fundamentally

14  unfair, and puts them at a competitive disadvantage.

15         MS. SWEENEY:  If I can clarify, something that we

16  have always thought is pivotal and is set forth in our motion

17  is that the documents that we're talking about are materials

18  that Akoustis has had, in most cases has had for years.  The

19  complaint said we had them, we used them, we have profited

20  from them over -- since our inception, which was in 2014.  So

21  I don't know what more Akoustis can do with documents.  I

22  mean, a document isn't living and breathing and changing.

23  These are historical records of the company.  We produced

24  them all in discovery.

25         We're not looking to have any of these folks see

**UNREDACTED TRANSCRIPT**

19

1   a document that Qorvo produced.  We have always carved out

2   anything that is a Qorvo-produced document that is AEO.  What

3   we're talking about is materials that Akoustis produced from

4   its own files in its discovery that Qorvo is now saying is

5   our AEO information.

6          And, you know, and that's what the case is about,

7   of course.  But given that we've already seen these things

8   and the standard under the protective order, in terms of

9   designating something AEO and looking at harm, is looking at

10  future harm.  And what is the future harm by Akoustis having

11  access to the same documents it has had and, according to

12  Qorvo, used to its benefit for years, in its own files.

13         THE COURT:  And so the question, Mr. Masters, is:

14  Well, if they've already had it and it's material they

15  produced, it's no harm because they've already had the

16  material?

17         MR. MASTERS:  Well, with the use of the word

18  "they" for Akoustis is -- here is being as if everybody at

19  Akoustis had these documents.  That's why the protective

20  order says if an individual had the document, that

21  individual, you can discuss it with that individual, show

22  that individual the document.

23         But why should we now take this body of Qorvo's

24  trade secret information -- and I admit, it is abundant, a

25  large amount of it -- be now sent to the CEO and director,

**UNREDACTED TRANSCRIPT**

Case 1:21-cv-01417-JPM   Document 230   Filed 06/09/23   Page 44 of 49 PageID #: 13394
Public Version
Case 1:21-cv-01417-JPM   Document 199   Filed 05/15/23   Page 20 of 67 PageID #: 12344

20

1  the vice president of business development, the vice

2  president of fabrication and corporate operations, who has

3  the opportunity to see this, and eventually further spread

4  Qorvo's trade secrets.  They don't need it to make the

5  assessment.

6          And let me take Mr. Shealy, for example -- or

7  Ms. Winters, let's take Ms. Winters.  She has, let's say, a

8  handful of documents that she has already seen.  You can --

9  they can talk to Ms. Winters about those documents.  But now

10  do we have to let Ms. Winters look at the body of Qorvo's

11  trade secret information, which is a large amount more than

12  the handful of documents she originally had and become privy

13  to all of that competitive information?

14          Case law does not permit that broad access,

15  especially when they have a general counsel and they have

16  technical advisors that can assist them in preparing their

17  defense.  So it's taking documents, Qorvo's trade secret

18  information that had never been seen by Shealy, Winters, or

19  Aichele, and now exposing them to all of it.

20          THE COURT:  How old is the oldest set of

21  documents or oldest documents that are asserted as trade

22  secrets?  I'm sorry.  Mr. Masters?

23          MR. MASTERS:  Yes, I'm trying to make that

24  assessment.  I mean, some of it goes back a few years.  2015,

25  possibly, to more current.

**UNREDACTED TRANSCRIPT**

1              THE COURT:  Okay.

2              MR. MASTERS:  And its ongoing use, of course.  I

3  mean, some of the information remains highly confidential and

4  extremely important to Qorvo's business.

5              THE COURT:  Okay.  Well, this is all helpful to

6  have the discussion, and I think we probably need to talk

7  about some other things.

8              But the second amended complaint can certainly be

9  disclosed to those categories to individuals that have been

10  agreed upon today, and that's dealt with, and that will

11  include members of the board of directors, excluding the --

12  Mr. Shealy, who is in a different category right now.  And,

13  of course, the general counsel has full access to it.  They

14  can certainly look at it, and there will be other members of

15  the management team.

16              I'm going to ask one question, Ms. Sweeney.  I

17  don't think that Mr. Shealy was the person who put together

18  the disclosure of the documents.  Who was the key person in

19  terms of -- we're going to have to move on in a second.  But

20  who was the person who actually put together the materials

21  that defense has produced that we're having now this

22  discussion partly about?

23              MS. SWEENEY:  Your Honor, that was done through a

24  meet and confer process with Qorvo and applying search terms

25  to information that we collected at the company from various

**UNREDACTED TRANSCRIPT**

1      MS. SWEENEY:  I appreciate that, Your Honor.

2  That gives us 135 days to deal with 300 trade secrets that I

3  still can't talk to my management about.  So I -- and I

4  know --

5      THE COURT:  Excuse me.  I think you've made that

6  point, and I understand it.  And you can talk to your

7  management about it.  You have to talk to your general

8  counsel.  You have people you can talk to on the board of

9  directors, and we're going to work on the rest.  I think we

10  need to -- probably, Mr. Masters, we probably need to at

11  least allow consultation with one of the two key people that

12  they've been working with in terms of the case, and I think

13  it sounds like that Ms. Winters may actually be playing a key

14  role in the defense.  It sounds right.

15      Is that right, Ms. Sweeney?

16      MS. SWEENEY:  She is one of the three.  It's

17  primarily that I have to say Mr. Shealy and Mr. Aichele in

18  terms of our day-to-day management.  Ms. Wright runs the

19  foundry, has a different role.  She's recently taken over as

20  head of operations, but it's predominantly Mr. Shealy and

21  Mr. Aichele.

22      And, I'm sorry, Your Honor, in terms of timing,

23  if we could adjust that so that we had 75 days from

24  August 10, that's what we would request.  I wanted to request

25  90, but I'm trying to pull back.  I hear you.  So that would

**UNREDACTED TRANSCRIPT**

## **CERTIFICATE OF SERVICE**

I certify that counsel of record is being served on June 2, 2023, with a copy of this document via email.

/s/ *Stephen B. Brauerman*
Stephen B. Brauerman (#4952)

**Other Documents**

<u>1:21-cv-01417-JPM Qorvo, Inc. v.
Akoustis Technologies, Inc. et al</u>

PATENT

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered by Brauerman, Stephen on 6/2/2023 at 3:40 PM EDT and filed on 6/2/2023

| | |
|---|---|
| **Case Name:** | Qorvo, Inc. v. Akoustis Technologies, Inc. et al |
| **Case Number:** | <u>1:21-cv-01417-JPM</u> |
| **Filer:** | Akoustis Technologies, Inc. |
| | Akoustis, Inc. |
| **Document Number:** | <u>225</u> |

**Docket Text:**
**[SEALED] DECLARATION re [224] Reply Brief, */ Declaration of Dianne L. Sweeney* by Akoustis
Technologies, Inc., Akoustis, Inc.. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Certificate of
Service)(Brauerman, Stephen)**

**1:21-cv-01417-JPM Notice has been electronically mailed to:**

David A. Jakopin     david.jakopin@pillsburylaw.com, docket@pillsburylaw.com

David L. Stanton     david.stanton@pillsburylaw.com, irene.hooper@pillsburylaw.com

Dianne L. Sweeney     dianne@pillsburylaw.com, meri@pillsburylaw.com

Jack B. Blumenfeld     Jbbefiling@mnat.com, jblumenfeld@mnat.com

Jeremy A. Tigan     JTigan@morrisnichols.com, jatefiling@mnat.com

Jonathan R. DeFosse     jdefosse@sheppardmullin.com

Robert M. Fuhrer     robert.fuhrer@pillsburylaw.com, piyuli.jain@pillsburylaw.com

Robert M. Masters     rmasters@sheppardmullin.com, mrpatrick@sheppardmullin.com

Ronald P. Golden , III     rgolden@bayardlaw.com, dchase@bayardlaw.com, ntalarowski@bayardlaw.com

Ryan Selness     ryan.selness@pillsburylaw.com, meri@pillsburylaw.com

Shani Rivaux     shani.rivaux@pillsburylaw.com, soraya.garcia@pillsburylaw.com

Stephen B. Brauerman     sbrauerman@bayardlaw.com, dchase@bayardlaw.com, ntalarowski@bayardlaw.com,
tdevine@bayardlaw.com

Theresa A. Roozen     theresa.roozen@pillsburylaw.com

Timothy P. Cremen    tcremen@sheppardmullin.com

**1:21-cv-01417-JPM Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document des cription:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/2/2023] [FileNumber=5235669-0]
[c74d9f91f11c475de253cb0bb2c486df9e019168abdd60ca4334ea2c8a1d29b685fe
29caa7577b6e910e384d55e1b7cfb2492233e956e8dae06d76e3750655be]]
**Document description:**Exhibit A
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/2/2023] [FileNumber=5235669-1]
[b9b63a710e561e3cad487b9461bd2d287418a9dae80b2dc6bebb359b79624ab06c3c
fc2c172c346dfefb27b0c7ce852447ce9905b0fa2964f276c5394be0c8a1]]
**Document description:**Exhibit B
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/2/2023] [FileNumber=5235669-2]
[8b16d18e5cc137528a5697bb3340336dabb3f9116f09aa6c6c55a6805e4dc3832ab4
233bf1b559394008d946222e5cb4e9a3e52ee5aaff5e7c2604c960d76de4]]
**Document description:** Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/2/2023] [FileNumber=5235669-3]
[bc7da95a3d930733e72dfc5ecec774d9c499a00dc0e0db42be8eb496deb864782ee5
c15b4a832f46e274ad6da1180b5acbed64fff34b3fa6cf67718cef45f18a]]