Public Version

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 21-1417-JPM ) |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC., | ) ) ) |
| Defendants. | ) ) |

**<u>DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.'S OPENING BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND ITS ANSWER TO ADD COUNTERCLAIM BASED ON NEWLY PRODUCED DOCUMENTS BY QORVO</u>**

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | FACTUAL BACKGROUND | 3 |
| | A. Qorvo Produced 780,064 Pages of Discovery Responses Since April 3, 2023 | 3 |
| | B. The Information for the Counterclaim Arises from the Recently Produced Information. | 5 |
| III. | LEGAL STANDARD | 8 |
| IV. | ARGUMENT | 10 |
| | A. Akoustis Acted Diligently When it Uncovered New Evidence Among Qorvo's Late-Produced Documents. | 10 |
| | B. There is No Prejudice to Qorvo. | 12 |
| V. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. Gould Inc.*,
    739 F.2d 858 (3d Cir.1984)...................................................................................................12

*Arthur v. Maersk, Inc.*,
    434 F.3d 196 (3d Cir. 2006)..........................................................................................8, 9, 12

*Bechtel v. Robinson*,
    886 F.2d 644 (3d Cir. 1989)...................................................................................................13

*Blasband v. Atl. City Showboat, Inc.*,
    CV 07-5556 (JHR/JS), 2009 WL 10688038 (D.N.J. July 29, 2009) .......................................12

*United States ex rel. Customs Fraud Investigations, LLC. V. Victaulic Co.*,
    839 F.3d 242 (3d Cir. 2016)......................................................................................................9

*Dasso Int'l, Inc. v. MOSO N. Am., Inc.*,
    C.A. No. 17-CV-1574-RGA, 2020 WL 6287673 (D. Del. Oct. 27, 2020)........................10, 11

*Enzo Life Scis., Inc. v. Digene Corp.*,
    270 F. Supp. 2d 484 (D. Del. 2003)..................................................................................10, 11

*Home Semiconductor Corp. v. Samsung Elecs. Co., Ltd.*,
    C.A. No. 13-CV-2033-RGA, 2019 WL 2135858 (D. Del. May 16, 2019) ............................11

*ICU Med., Inc. v. RyMed Techs., Inc.*,
    674 F. Supp. 2d 574 (D. Del. 2009).........................................................................................9

*Int'l Constr. Products LLC v. Caterpillar Inc.*,
    C.A. No. 15-108-CV-RGA, 2018 WL 4611216 (D. Del. Sept. 26, 2018) ..................10, 11, 14

*Johnson v. ACE Cash Express, Inc.*,
    C.A. No. 13-CV-1186-LPS, 2014 WL 3721947 (D. Del. July 24, 2014) ..............................13

*Lipocine Inc. v. Clarus Therapeutics, Inc.*,
    C.A. No. 19-CV-622 (WCB), 2020 WL 4794576 (D. Del. Aug. 18, 2020).............................9

*Long v. Wilson*,
    393 F.3d 390 (3d Cir. 2004).................................................................................................9, 13

*Persawvere, Inc. v. Milwaukee Elec. Tool Corp.*,
    C.A. No. 21-CV-400-GBW, 2023 WL 3750812 (D. Del. June 1, 2023) ...............................10

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
 614 F.3d 57 (3d Cir. 2010)..................................................................................................9

*Roquette Freres v. SPI Pharma, Inc.*,
 C.A. No. 06-CV-540, 2009 WL 1444835 (D. Del. May 21, 2009) ...........................................9

*Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*,
 335 F.R.D. 54 (M.D. Pa. 2020), *aff'd*, 12 F.4th 337 (3d Cir. 2021) .......................................13

*Third Red Clay Consol. Sch. Dist. v. T.S.*,
 C.A. No. 10-00784-LPS, 2011 WL 4498964 (D. Del. Sept. 27, 2011)....................................9

*U.S. Fire Ins. Co. v. Kelman Bottles*,
 538 F. App'x 175 (3d Cir. 2013) .........................................................................................13

*Valentin v. Wysock*,
 C.A. No. 21-CV-00399-SB, 2023 WL 2018787 (D. Del. Feb. 15, 2023) ..............................14

*WebXchange Inc. v. Dell Inc.*,
 C.A. No. 08-CV-132, 2010 WL 256547 (D. Del. Jan. 20, 2010) ...........................................9

Rules and Regulations

Federal Rules of Civil Procedure
 Rule 15 ............................................................................................................... *passim*
 Rule 15(a)....................................................................................................................9, 10
 Rule 15(a)(2)...................................................................................................................1, 8
 Rule 16 ..................................................................................................................2, 9, 10, 11
 Rule 16(b) ............................................................................................................................9
 Rule 16(b)(4).................................................................................................................9, 10

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Defendants/Counter-Plaintiffs Akoustis Technologies, Inc. and Akoustis, Inc.'s (collectively, "Akoustis"), by and through their undersigned attorneys, submit this Motion for Leave to Amend Its Answer to Add Counterclaim[1] (the "Motion") and in support thereof state as follows:

## I.  PRELIMINARY STATEMENT

On April 3, 2023, this Court held a hearing to discuss the trial schedule and Akoustis' serious concerns about the nascent stage of discovery on Qorvo's newly filed non-patent claims. Qorvo pressed for an early trial date and trivialized Akoustis' discovery concerns by assuring the Court that its document production was nearly complete—noting that it only had about 1,000 documents left to produce and that it would complete its production by the end of April. When Akoustis raised the small size of Qorvo's production to date (which was only 3,124 documents), Qorvo further assured the Court that Qorvo would be producing nowhere near the 50, 60 or 70 thousand documents that Akoustis produced in this matter. Despite these representations, Qorvo has produced a staggering number of documents since the hearing. Qorvo's production was nowhere near complete as of the April hearing. Between April 7, 2023 and June 9, 2023, Qorvo produced *70,000 more documents (780,000+ pages). Accordingly, at the time Qorvo assured the Court that its document production was nearly complete and pressed the Court for a trial date, Qorvo had produced less than 5% of its production to Akoustis.* Buried amongst that spate of documents is newly discovered evidence demonstrating Qorvo's unfair and deceptive trade practices that damaged Akoustis and Qorvo's internal struggles to develop its own 5 GHz Bulk Acoustic Wave filter ("BAW filter") technology—technology that Akoustis already had. These

---

[1] A copy of Akoustis' proposed Counterclaim is attached as Exhibit B to the Declaration of Dianne L. Sweeney in Support of Defendants Akoustis Technologies, Inc. and Akoustis Inc.'s Motion for Leave to Amend Its Answer to Add Counterclaim ("Sweeney Decl."), which is being filed contemporaneously herewith.

documents further expose Qorvo's internal struggles to enter the 5 GHz BAW filter market and Qorvo's specific concern that Akoustis already had its own 5 GHz BAW filters in the market.

Also among these documents is Qorvo's assessment of Akoustis as a significant "threat" and Qorvo's widespread efforts to "exclude" Akoustis from the market and "steal" back any business that Akoustis had won. The goal was clear—to drive Akoustis out of the market by any means necessary. This directive came from the highest levels at Qorvo—CEO, Robert Bruggeworth. When one executive reported to Mr. Bruggeworth that he was working to damage Akoustis by "spreading fudd"—an acronym for fear, uncertainty, doubt, and disinformation—Mr. Bruggeworth approved of the tactic, responding "Perfect." Mr. Bruggeworth's endorsement in and of itself is significant in that the head of a $10.5 billion company was personally involved with and sanctioning a "fudd" campaign against a start-up competitor like Akoustis. Qorvo's strategy to harm Akoustis did not end there. The documents Qorvo only recently produced further establish that Qorvo has been improperly seeking out confidential and proprietary information about Akoustis' BAW filters and Akoustis' manufacturing facilities. In the words of one Qorvo employee, they were looking to get the "inside scoop" on Akoustis from former Akoustis employees that Qorvo hired.

Qorvo may have hoped these documents would be hidden within the documents Qorvo dumped on Akoustis since the April 2023 hearing, including nearly 38,000 documents produced just last month, but Akoustis has worked diligently and invested significant resources to review Qorvo's massive productions. While Akoustis is still reviewing Qorvo's voluminous productions, based on the significant new evidence found to date, Akoustis has discovered enough evidence to present its claims to this Court in compliance with FRCP Rules 15 and 16. In advance of bringing this Motion, Akoustis asked Qorvo to stipulate to this Motion just as Akoustis stipulated to Qorvo's filing of the Second Amended Complaint only a few months ago. Qorvo refused. According to

2

Qorvo, Akoustis' counterclaim comes too late in the "case schedule," but the Court ordered this schedule based in part on Qorvo's representations regarding its production and Qorvo's demand for an earlier trial. Qorvo has now produced 70 times more documents than it represented would be produced by the end of April and more than 50% of those documents were produced just last month. Having caused this delay, Qorvo has no basis to object. Qorvo should not be permitted to use the schedule it obtained, under at best incomplete pretenses, as a shield to protect it from liability for the information it failed to produce until after it demanded an expedited trial on the non-patent claims. Akoustis respectfully requests that the Court grant the Motion and allow Akoustis to file its Counterclaim against Qorvo.[2]

## II. FACTUAL BACKGROUND

### A. Qorvo Produced 780,064 Pages of Discovery Responses Since April 3, 2023.

As of the hearing with the Court on April 3, 2023, Qorvo had produced only 3,124 documents which were mostly relevant to the patent claims. In the two-plus months that followed the hearing, Qorvo produced 70,327 more documents, nearly 38,000 of which were produced on June 9, 2023. This recent production stands in stark contrast to Qorvo's repeated representation to the Court that its production was nearly complete on April 3, 2023. At the April 3, 2023 Scheduling Conference, in an attempt to convince the Court to limit the time for discovery and set the case for an earlier trial date, Qorvo's counsel stated that its production "will be substantially complete by the end of April." (Sweeney Decl., Ex. A (April 3, 2023 Hr'g Tr.) at 11:2-3; *see also id.* at 16:25-17:1 ("…like I said, by the end of April we will be done."), 28:18-19 ("As I said, by the end of April, we will have a substantial completion.").) Critically, Qorvo's counsel represented

---

[2] Akoustis does not believe any scheduling adjustment is necessitated by the amendment alone. Akoustis does, however, believe a scheduling adjustment is warranted in light of the fact that 95% of Qorvo's production (over 780,000 pages) was only produced in the last 3 months.

3

that the production would be minimal: "I anticipate about a thousand to be produced, trying to get out this week." (*Id.* at 17:6-8.) He went so far as to disclaim the notion that any sizable discovery was remaining: "[b]ut the idea that Qorvo as the plaintiff is going to be produced [sic], fifty, sixty, 70,000 documents is just not accurate. That is not the case here." (*Id.* at 19:25-20:2.)

But that is exactly the case: Qorvo has now produced more than 70,000 documents since the April 3 hearing in which Qorvo made these representations, which were key considerations in setting the schedule for this case. Worse yet, Qorvo waited until June 2023 to produce more than half of its documents—producing nearly 38,000 documents (totaling more than 220,000 pages) on June 9, 2023. And as shown in the table below, Qorvo's productions since April 7 amount to 70,327 additional documents (totaling more than 780,000 additional pages)—more than 95% of Qorvo's entire document production.

| QORVO'S PRODUCTIONS **BEFORE** THE HEARING ON APRIL 3, 2023 | | | |
|---|---|---|---|
| Production Date | Document Count | Page Count | Bates Range |
| 3/24/2022 | 21 | 671 | QORVO_00000001 - QORVO_00000671 |
| 4/1/2022 | 1094 | 23861 | QORVO_00000672 - QORVO_00024532 |
| 5/23/2022 | 24 | 121 | QORVO_00024533 - QORVO_00024653 |
| 6/22/2022 | 1 | 294 | QORVO_00024654 -QORVO_00024947 |
| 7/26/2022 | 119 | 1304 | QORVO_00024948 - QORVO_00026251 |
| 9/8/2022 | 7 | 144 | QORVO_00026252 - QORVO_00026395 |
| 9/22/2022 | 244 | 3603 | QORVO_00026396 - QORVO_00029998 |
| 9/1/2022 | 217 | 4715 | QORVO_00029999 - QORVO_00034713 |
| 1/14/2023 | 117 | 4968 | QORVO_00034714 - QORVO_00039681 |
| 1/24/2023 | 1088 | 18946 | QORVO_00039682 - QORVO_00058627 |
| 2/1/2023 | 60 | 790 | QORVO_00058628 - QORVO_00059417 |
| 2/3/2023 | 1 | 1 | QORVO_00059418 |
| 2/21/2023 | 131 | 847 | QORVO_00059419 - QORVO_00060265 |
| **TOTALS:** | **3,124** | **60,265** | |

4

| QORVO'S PRODUCTION AFTER THE HEARING ON APRIL 3, 2023 | | | |
|---|---|---|---|
| Production Date | Document Count | Page Count | Bates Range |
| 4/7/2023 | 803 | 11549 | QORVO_00060266 - QORVO_00071814 |
| 4/7/2023 | 60 | 1755 | QORVO_00071815 - QORVO_00073569 |
| 4/14/2023 | 3891 | 49721 | QORVO_00073570 - QORVO_00123290 |
| 4/25/2023 | 5785 | 181918 | QORVO_00123291 - QORVO_00305208 |
| 4/29/2023 | 82 | 478 | QORVO_00305209 - QORVO_00305686 |
| 5/3/2023 | 17107 | 297439 | QORVO_00305687 - QORVO_00603125 |
| 5/3/2023 | 4816 | 18053 | QORVO_00603126 - QORVO_00621178 |
| 6/9/2023 | 37,783 | 219651 | QORVO_00621179 - QORVO_00840829 |
| **TOTALS:** | **70,327** | **780,564** | |

(Sweeney Decl. at ¶ 3.)

**B.    The Information for the Counterclaim Arises from the Recently Produced Information.**

Notwithstanding the limited time remaining in the current discovery period, Akoustis diligently set out to review the 70,000-plus documents produced by Qorvo during the preceding three months and, in doing so, discovered that Qorvo has been unfairly and deceptively competing with Akoustis by, among other things, misappropriating Akoustis' confidential and proprietary business information—the same type of conduct Qorvo alleged against Akoustis in its Second Amended Complaint filed just a few months ago.

The documents Qorvo produced between April 7 and June 9 reveal that Qorvo realized it was falling behind in the 5GHz BAW filter marketplace and losing business because Qorvo's production and technology was behind—two years behind—according to some internal Qorvo assessments. For example, documents produced in April and May 2023 relate to Qorvo's internal discussions about how ███████████████████████████████████████████

███████████████████████████████████████████

---

[3] The date in the parentheses following each Bates number is the date the document was produced

Public Version

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

Recently produced documents also demonstrate that in light of Qorvo's own lag in research and development and failure to reach the 5G market, Qorvo saw Akoustis as a significant threat in this space. ███████████████████████████████████

████████████████████████████████  ██████████████

████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

██████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ Akoustis found these documents by diligently working its way through the 70,000-plus documents produced between April 7 and June 9. (*See* Sweeney Decl. ¶ 4 (between April 7, 2023 and July 14, 2023, counsel for Akoustis spent more than 1,800 attorney hours reviewing and analyzing the documents produced by Qorvo).)

To solve its internal failings, Qorvo began mining former Akoustis employees and customers (all subject to Non-Disclosure Agreements) for Akoustis' confidential information. These recently produced documents further show that Qorvo solicited and obtained confidential

---

by Qorvo. (*See* Sweeney Decl. at ¶¶ 3 and 8 (table identifying the documents in the Counterclaim that were produced *after* the April 3, 2023 hearing).)

6

Public Version

Akoustis information from former Akoustis employees that Qorvo subsequently hired—Shawn Gibb and Ali Bawangaonwala. For example:

- Mr. Gibb █████████████████████████████████████

- Mr. Bawangaonwala █████████████████████████████ ████████. (QORVO_00109228 (April 14, 2023).)

- Mr. Gibb revealed information about Akoustis' BAW filter and development capabilities. ████████████████████

- Mr. Gibb shared Akoustis' proprietary information regarding its choice ████████████████████████████ from those decisions.

- Mr. Gibb shared confidential information about Akoustis' process technology, the benefits of █████ ███████████ and Akoustis' ███████████ strategy.

- Mr. Gibb again revealed Akoustis' █████████████████████████████████████████

- Mr. Bawangaonwala and Mr. Gibb discussed information about Akoustis' customer based on information they obtained while at Akoustis. ██████████████████

- Mr. Gibb revealed that a confidential defense industry customer that was not disclosed in a press release, ████████████ ██████████

Qorvo's recent productions further reveal the end game: to take away Akoustis' business and eliminate Akoustis from the market entirely. To that end, Mr. Gibb stated regarding one sales opportunity that his goal was to █████████████████████████████████████████████████████

7

Qorvo's methods of unfair and deceptive competition did not stop there.  In a scheme directed and approved by Qorvo's CEO, Qorvo knowingly spread disinformation about Akoustis and its products. **When one of Qorvo's high-ranking sales employees stated that he had been "spreading fudd"—an acronym for fear, uncertainty, doubt, and disinformation—about Akoustis, Mr. Bruggeworth responded: "Perfect."** (QORVO_00133852 – QORVO_00133854 (Apr. 25, 2023) (emphasis added).)  This is consistent with other recently produced documents showing that Qorvo employees were touting the fact that they were "***aggressively attacking*** [Akoustis'] 5Ghz early wins…," (QORVO_00652846 – QORVO_00652847 (June 9, 2023) (emphasis added).), and that "*[p]oopoo-ing Akoustis' technology* and ***telling customers that [Akoustis] will not be able [to] volume produce*** is not going to hack it…." (QORVO_00122459 – QORVO_00122464 (Apr. 14, 2023) (emphasis added).)  But apparently Qorvo's unfair competition helped them to "hack it," as Qorvo boasted in the ensuing months that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As many of these documents expressly refer to Akoustis, Qorvo could have identified them long ago with a simple keyword search for the term "Akoustis".

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the Court's leave.  The Court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust."  *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *United States ex rel. Customs Fraud Investigations, LLC. V. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016) ("[g]enerally, Rule 15 motions should be

8

granted."). This language has been interpreted by Courts "as establishing a liberal policy in favor of allowing amendments." *Lipocine Inc. v. Clarus Therapeutics, Inc.,* C.A. No. 19-CV-622 (WCB), 2020 WL 4794576, at *2 (D. Del. Aug. 18, 2020) (collecting cases); s*ee also Third Red Clay Consol. Sch. Dist. v. T.S.*, C.A. No. 10-00784-LPS, 2011 WL 4498964, at *1 (D. Del. Sept. 27, 2011) ("The Third Circuit has adopted a liberal approach to the amendment of pleadings.").

As the Third Circuit has explained, "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citation omitted); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 206 (3d Cir. 2006) ("The liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case."). None of those reasons are present here.

A motion that is filed after the date set for amendments under a scheduling order also requires compliance with Rule 16(b)(4). *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009). Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). ("In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *see also WebXchange Inc. v. Dell Inc.*, C.A. No. 08-CV-132, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010) ); *Roquette Freres v. SPI Pharma, Inc.*, C.A. No. 06-CV-540, 2009 WL 1444835, at *4 (D. Del. May 21, 2009) ("The good cause element requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner.").) Good cause is established in the absence of undue delay or if the movant showing it acted diligently to file its motion to amend." *Persawvere, Inc. v. Milwaukee Elec. Tool*

9

*Corp.*, C.A. No. 21-CV-400-GBW, 2023 WL 3750812, at *1 (D. Del. June 1, 2023) (citations omitted). If the movant satisfies that requirement of Rule 16, leave to amend should be granted unless there is a reason to deny leave, such as bad faith, prejudice to the non-moving party, or futility of the claims. (*Id.*) The deadline to file a motion to amend the pleadings was April 8, 2022, but discovery had only just begun at that time and these documents were not even produced until April-June 2023. Moreover, Qorvo's own trade secret claims that raised many of these topics were not even filed until February 2023. As described further below, because Qorvo delayed its document productions and Akoustis was diligent in reviewing those late productions, Akoustis meets the requirements of Rules 15(a) and 16(b)(4) and as such, the Motion should be granted.

## IV. ARGUMENT

### A. Akoustis Acted Diligently When it Uncovered New Evidence Among Qorvo's Late-Produced Documents.

Whether reviewed under the standards of Rule 15 or 16,[4] this Motion should be granted because Akoustis' proposed Counterclaim is founded on new information discovered in Qorvo's internal documents that were not even produced until the last the few months—with the majority of the documents (nearly 38,000) provided just last month. Production, however, is just the beginning of the intake process. Akoustis was then required to, and promptly did, undertake an extensive review of these documents which required more than half a dozen lawyers and has taken more than 1,800 hours between April 7, 2023 and July 14, 2023. (Sweeney Decl. at ¶ 4.) Akoustis'

---

[4] Where no undue delay or prejudice is found under Rule 15(a), good cause should be found under Rule 16. *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003) ("Given that the Court has already determined that there was no undue delay or a likelihood of prejudice to Enzo, the Court concludes that Digene has satisfied the 'good cause' requirement of Rule 16"); *Int'l Constr. Products LLC v. Caterpillar Inc.*, C.A. No. 15-108-CV-RGA, 2018 WL 4611216, at *4 (D. Del. Sept. 26, 2018) ("the Plaintiff has shown diligence, which means its amendment has not been unduly delayed."); *Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, C.A. No. 17-CV-1574-RGA, 2020 WL 6287673, at *2 (D. Del. Oct. 27, 2020) ("As Defendants have demonstrated due diligence and reasonable timeliness, as noted above, I will not further address the claim of undue delay.").

10

counsel also did further diligence and investigation of the materials including a technical review of the sensitivity of these materials. (*Id.*) Such a diligent and timely effort more than meets the standards under Rules 15 and 16. *Int'l Constr. Products LLC v. Caterpillar Inc.*, C.A. No. 15-CV-108-RGA, 2018 WL 4611216, at *2 (D. Del. Sept. 26, 2018) (finding that party showed diligence and "good cause" to modify the deadline to amend where the moving party only discovered the evidence motivating its motion for leave to amend after the deadline for moving to amend had passed); *Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, C.A. No. 17-CV-1574-RGA, 2020 WL 6287673, at *2 (D. Del. Oct. 27, 2020) (finding that Defendants acted diligently even when proposed amendments were based on new information that was discovered over a year after the deadline to amend); *see Enzo Life Scis. v. Digene Corp.*, 270 F. Supp. 2d 484, 489-90 (D. Del. 2003) (granting leave to amend where the motion was filed approximately a month and half after the relevant depositions revealed new facts). Courts "in the Third Circuit have found diligence when a party has sought leave to amend within three months of learning new information…." *Home Semiconductor Corp. v. Samsung Elecs. Co., Ltd.*, C.A. No. 13-CV-2033-RGA, 2019 WL 2135858, at *5 (D. Del. May 16, 2019) (citation omitted); *see also*, *Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, C.A. No. 17-CV-1574-RGA, 2020 WL 6287673, at *2 (D. Del. Oct. 27, 2020) (finding no undue delay because the Defendants demonstrated due diligence and reasonable timeliness even where the motion was filed more than 4 months after discovering new information).

Akoustis could not have reasonably sought to file its proposed Counterclaim any earlier. As described in detail above in Section II.A., the documents that revealed the existence of Akoustis' Counterclaim came to light only after Qorvo produced more than 70,000 documents during the last three months. (Sweeney Decl. at ¶¶ 4-5, 8.) Akoustis devoted more than 1,800 hours in a span of approximately 3 months to review these documents on a shortened timeframe. (*Id.* at ¶ 4.) This initial review and the diligence process that immediately followed is what resulted

11

in Akoustis' discovery that Qorvo has been misappropriating Akoustis' confidential and proprietary business information to unfairly compete with Akoustis. (*Id.* at ¶¶ 4-5, 8.) Once that process was complete, counsel for Akoustis promptly drafted the Counterclaim and presented a draft of it to Qorvo's counsel for the purposes of seeking a stipulation to file the Counterclaim. (*Id.* at ¶¶ 5-7.) Just as Qorvo asked Akoustis to stipulate to an amendment a few months ago when Qorvo heavily amended its claims to add extensive new facts and claims based on discovery that they said they had received from Akoustis between September 2022 and January 2023, Akoustis makes the same request. (*Id.* at ¶ 6.) But unlike Akoustis, Qorvo refuses to stipulate to the filing, claiming that the "case schedule" (which Qorvo demanded based on materially incorrect statements about the status of its productions) prevents Akoustis from bringing claims for documents it just received. (*Id.* at ¶¶ 6-7.) Nothing under the law allows this result, particularly where any delay in bringing these claims is of Qorvo's own making. Here, Akoustis' diligent efforts and recent discovery of evidence of Qorvo's unfair competition provide good cause to permit Akoustis to file its Counterclaim.

**B.**     **There is No Prejudice to Qorvo.**

"Denial of leave to amend on the ground of undue delay should only occur where the delay causes prejudice to the non-moving party." *Blasband v. Atl. City Showboat, Inc.*, CV 07-5556 (JHR/JS), 2009 WL 10688038, at *1 (D.N.J. July 29, 2009); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir.1984)). In light of its conduct during discovery, Qorvo cannot complain of the timing of the Motion or of any prejudice resulting from the timing. Since the April hearing, Qorvo has produced more than 70,000 documents (more than 95% of the documents it has produced in this case), including producing nearly 38,000 documents last month. (Sweeney Decl. at ¶ 3.) Given Akoustis' rapid review of those documents and filing of this Motion, Qorvo cannot now claim it would be prejudiced.

Putting aside Qorvo's own delays, given the current stage of the proceedings, Qorvo would not suffer any prejudice if the Court grants the proposed amendment. The Third Circuit has emphasized that "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (citation omitted). For purposes of Rule 15, prejudice to the non-moving party only occurs when allowing the amended pleading would (1) require the non-moving party to "expend significant additional resources to conduct discovery and prepare for trial;" (2) "significantly delay the resolution of the dispute;" or (3) "prevent [a party] from bringing a timely action in another jurisdiction." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir.2004). To show undue prejudice, the non-moving party must demonstrate that they will be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence" unless leave to amend is denied. *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). "Further, if prejudice to the nonmovant exists, the Court must balance the prejudice to the non-moving party against the harm to the movant if leave to amend is not granted, keeping in mind that the goal is to have cases decided on the merits." *Johnson v. ACE Cash Express, Inc.*, C.A. No. 13-CV-1186-LPS, 2014 WL 3721947, at *5 (D. Del. July 24, 2014) (citation omitted).

"[A]s a general matter, the fact that discovery remains open weighs heavily against a finding of prejudice." *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 76 n.32 (M.D. Pa. 2020), *aff'd*, 12 F.4th 337 (3d Cir. 2021). Amendment is even appropriate after the close of discovery when the motion was diligent filed shortly after discovery of the fact that formed the basis of the new claim. *U.S. Fire Ins. Co. v. Kelman Bottles*, 538 F. App'x 175, 178, 183-84 (3d Cir. 2013) (district court's denial of leave to amend was abuse of discretion where movant did not unduly delay filing motion 11 days *after* close of discovery because motion was filed approximately three weeks after discovering the fact that formed the basis of the new claim). Here, discovery remains open until October 16, 2023. (D.I. 198.) Indeed,

the addition of the Unfair and Deceptive Trade Practices Counterclaim is being proposed before any party depositions have been taken and just months after Qorvo injected extensive new issues and claims into the case. (Sweeney Decl. at ¶ 9.) When Qorvo filed its Second Amended Complaint, significantly expanding the scope of litigation, it rejected the notion that Akoustis needed any significant additional time to conduct discovery and prepare its defenses. While Akoustis sought another 9.5 months for discovery for the numerous new claims Qorvo filed in February, Qorvo would only agree to two. (Sweeney Decl. at ¶ 2, Ex. C.) Given that Akoustis' claims are much more limited (a single unfair competition claim vs hundreds of trade secret claims), there is no reason to believe that Qorvo will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence. As the court in *Int'l Constr. Products LLC v. Caterpillar Inc.* recognized "[i]f requiring additional discovery (or, indeed, anything else that prolonged the litigation) were sufficient prejudice, most amendments would not be allowed." C.A. No. 15-CV-108-RGA, 2018 WL 4611216, at *4 (D. Del. Sept. 26, 2018). In rejecting the argument that the amendment should not be allowed because further discovery would be required, the court stated that this "argument runs contrary to 'the well-established rule that amendments should be liberally allowed.'" (*Id.*) This is not a situation where discovery has closed and Akoustis now seeks to bring its counterclaim—Akoustis has acted promptly on information it only recently received, and did so nearly three months before the close of discovery. *See Valentin v. Wysock*, C.A. No. 21-CV-00399-SB, 2023 WL 2018787, at *2 (D. Del. Feb. 15, 2023) (concluding that allowing party to "change theories" "after discovery has closed" would prejudice the opposing party). Nor would it be an "unfair" disadvantage to Qorvo. It was Qorvo that delayed its production and sought out this schedule. Qorvo is free to take discovery in this matter and plan its defense against Akoustis' Counterclaim.

Public Version

In light of the newly discovered facts and Akoustis' diligent efforts in bringing the related Counterclaim, it would be a manifest injustice to deny Akoustis the opportunity to assert its Counterclaim against Qorvo where there is no evidence of undue delay and it cannot be disputed that Qorvo only produced these documents in the last few months.

## V.     CONCLUSION

For the foregoing reasons, Akoustis respectfully request the Court grant this Motion and allow Akoustis to amend Its Answer to bring this Counterclaim here.

Public Version

Dated: July 24, 2024

| | |
|---|---|
| PILLSBURY WINTHROP<br>SHAW PITTMAN LLP | BAYARD, P.A. |
| David A. Jakopin<br>Dianne L. Sweeney<br>Ryan Selness<br>2550 Hanover Street<br>Palo Alto, CA 94304-1115<br>(650) 233-4500<br>david.jakopin@pillsburylaw.com<br>dianne@pillsburylaw.com<br>ryan.selness@pillsburylaw.com | */s/ Ronald P. Golden III*<br>Stephen B. Brauerman (#4952)<br>Ronald P. Golden III (#6254)<br>600 N. King Street, Suite 400<br>Wilmington, Delaware 19801<br>(302) 655-5000<br>sbrauerman@bayardlaw.com<br>rgolden@bayardlaw.com<br><br>*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.* |

Robert M. Fuhrer
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
(703) 770-7900
robert.fuhrer@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Theresa A. Roozen
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
shani.rivaux@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*