# EXHIBIT B



Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, 36th Floor | Los Angeles, CA 90017-5524 | tel 213.488.7100 | fax 213.629.1033

David Stanton
tel: +1.213.488.7271
david.stanton@pillsburylaw.com

August 9, 2023

VIA E-MAIL

James C. Wald
Sheppard, Mullin, Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055

Jonathan DeFosse
Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801

Re: **Qorvo, Inc. v. Akoustis Technologies, Inc. et al., No. 1:21-01417-JPM-Akoustis's Objections and Responses to Plaintiff's Request for Inspection**

Dear James and Jon:

I write to follow up on our August 3 discussion regarding Qorvo's Request for Inspection to Akoustis. In particular, and as you requested, I write to provide the case law upon which Akoustis relies in maintaining its objections to the unbridled, expansive, unilateral inspection of Akoustis proposed by Qorvo. Akoustis remains willing to meet and confer, but the applicable precedent strongly supports the view that any forensic inspection of Akoustis devices would be most appropriately conducted by a third-party neutral, pursuant to a mutually agreeable protocol that is proportional in scope. As previously addressed in Akoustis' June 5, 2023 Objections and Responses to the Request for Inspection and in my June 28, 2023 letter, Qorvo's Request for Inspection is unwarranted by the circumstances of this case, the Rules of Civil Procedure, or applicable case law, and is unreasonable in scope and intrusiveness.

Federal courts have said many times that a request to inspect and image a party's computers, servers, and the like is considered an "extraordinary remedy" that is only allowed when the demanding party can show actual evidence that the responding party failed to comply with its discovery obligations. *See, e.g., IHS Global Limited v.*

James C. Wald
Jonathan DeFosse
August 9, 2023
Page 2

*Trade Data Monitor LLC*, No. 2:18-cv-01025-DCN, 2019 WL 7049687 (D.S.C. Dec. 23, 2019) (citing *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) among others); *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, No. 20 CV 7404, 2022 WL 2316228 (N.D. Ill. June 28, 2022); *Calyon v. Mizuho Securities USA Inc.*, No. 07CIV02241RODF, 2007 WL 1468889 (S.D. N.Y. May 18, 2007); *Source One Direct, Inc. v. Digitas, Inc.*, No. 1:11-CV-01262-JEC-AJB, 2011 WL 13319641 (N.D. Ga. June 29, 2011); *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006).  This is true even in trade secret cases.  The mere fact that a trade secret claim has been asserted "does not give [requesting party] free reign to examine all of [responding party's] electronic devices." *FCA US LLC v. Bullock,* 329 F.R.D. 563, 568 (E.D. Mich. Jan. 18, 2019).

Qorvo cannot meet this standard at all.  It cannot show that Akoustis has failed to comply with its discovery obligations.  It has not exhausted other less intrusive means of discovery to obtain the ESI.  There is no evidence that Akoustis does not have the expertise, ability, or willingness to produce the ESI sought.  On the contrary, Akoustis has offered and continues to offer in good faith and the spirit of cooperation to work with Qorvo to identify mutually acceptable parameters to conduct a reasonable inspection of Akoustis' sources of relevant ESI.  When faced with such circumstances, federal courts have overwhelmingly denied a party's request to inspect and image.

The astounding scope of Qorvo's Request for Inspection is further ground for Akoustis' objections.  The right to inspect under the Federal Rules of Civil Procedure "is not meant to create a routine right of direct access to a party's electronic information system… Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."  Fed. R. Civ. P. 34 Advisory Committee note to 2006 amendment.  Courts will deny a request that "casts too wide a net" like Qorvo's does here: Qorvo seeks unfettered access to all personal and company computers, network servers, and all other storage media used, owned, leased or operated by no fewer than 31 current and former Akoustis employees over an eight-year period, from 2015 to 2023.  *See, e.g., Tireboots by Universal Canvas, Inc.,* 2022 WL 2316228 at *1-3 ("Plaintiff's request is not proportional to the needs of the case because a forensic examination would necessarily involve the examination and collection of more information than is required to support Plaintiff's claims.  Simply put, '[t]he discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest.'").

Courts have also rejected requests to image and inspect to the extent they put at risk the responding party's confidentiality and privacy interests.  Where a request seeks to

James C. Wald
Jonathan DeFosse
August 9, 2023
Page 3

image sources that contain individuals' personal information and documents—as would certainly be the case here given the demand to access all personal computers and devices in addition to the company's—the court's interest in preserving confidentiality and privacy rights outweighs the requesting party's desire for broad access. *List Industries, Inc. v. Umina*, Case No. 3:18-cv-199, 2019 WL 1933970 (S.D. Ohio May 1, 2019); *see also FCA US LLC v. Bullock*, 329 F.R.D. at 569 ("the Court finds that [responding party's] privacy concerns also weigh against permitting imaging of [her] devices"; also citing that imaging is not "proportional to the needs of the case").

At a minimum, procedures need to be put in place to safeguard against undue intrusiveness and protect confidentiality, privacy, and privilege interests of the responding party. *See, e.g., Ameriwood Indus., Inc.*, 2006 WL 3825291 at *5 (establishing a "three-step imaging, recovery, and disclosure process [which] provides the requesting party sufficient access to information that is not reasonably accessible and ensures the process does not place an undue burden on the responding party").

Further, the protocol for forensic inspection must be mutually acceptable to both parties; the requesting party is not entitled to unilaterally set the conditions of the inspection. *See, e.g., Advante Intern. Corp. v. Mintel Learning Technology*, No. C 05-01022 JW (RS), 2006 WL 3371576, at *1 (N.D. Cal. Nov. 21, 2006); *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428, at *3 (N.D. Cal. Jan. 9, 2012). In the absence of an agreement, the court will impose a protocol. *Id*. This extends to selecting the expert who will conduct the inspection and imaging. *Id*.

Numerous courts have rejected a party's request to use its own expert to conduct the inspection it demanded and instead ordered that the inspection and imaging be conducted by a neutral, third-party expert. *See, e.g., Advante Intern. Corp.*, 2006 WL 3371576, at *1*; *Brocade Communications Systems, Inc.*, 2012 WL 70428, at *3; *Source One Direct, Inc. v. Digitas,* 2011 WL 13319641 at *6; *Calyon v. Mizuho Securities,* 2007 WL 1468889; *Genworth Financial Wealth Management,* 267 F.R.D. 443; *M-I L.L.C. v. Stelly*, Civil Action No. H-09-1552, 2011 WL 12896025 (S.D. Tex. Nov. 21, 2011). In some cases, courts have even ordered that the inspection and imaging be performed by the <u>responding party's own expert before</u> the data is turned over to the requesting party's expert. *See, e.g., Audio Visual Innovations, Inc. v. Burgdolf*, NO. 13-10372, 2014 WL 505565 (E.D. Mich. Feb. 3, 2014); *List Industries, Inc. v. Umina*, 2019 WL 1933970.

James C. Wald
Jonathan DeFosse
August 9, 2023
Page 4

With that background, Akoustis maintains its objections to the expansive unilateral inspection by Qorvo's expert, but we are willing to further meet and confer. First, we appreciate Qorvo's agreement to allow Akoustis to review for privilege any materials identified by Qorvo's forensic expert prior to them being disclosed to or discussed with Qorvo's counsel. This is an important and essential aspect of any inspection protocol, but so is a pre-disclosure opportunity for Akoustis to review any such materials for relevance. *See, e.g., Ameriwood Indus., Inc.*, 2006 WL 3825291 at \*5; *Genworth Financial Wealth Management, Inc.*, 267 F.R.D. at 449; *Cenveo Corp. v. Slater*, 2007 WL 442387 at \*3. Akoustis maintains its position that a responsiveness review should be part of the pre-disclosure evaluation of any materials the expert identifies before they are shared with or discussed with Qorvo's counsel.

Akoustis also remains concerned with the breadth and unbridled scope of Qorvo's demand, particularly (a) the number of custodians identified in the inspection demand, (b) the demand that imaging and inspection include personal devices and accounts of Akoustis employees, (c) the demand that Akoustis create and turn over a forensic image of its 24-terabyte engineering server, which would be hugely burdensome and disruptive; and (d) the attempt to bring other non-probative systems within the scope of the inspection. These were all considerations in Akoustis' counterproposal, but Qorvo has not explicitly responded to them. Please let us know whether Qorvo will agree to limit its proposed inspection to company-owned devices of a more limited number of Akoustis employees, and whether Qorvo will agree to use StoredIQ to run keywords on the Engineering Server in lieu of forensic imaging. Akoustis objects to the forensic examination of other systems, but we are willing to meet and confer about them if the information uncovered by the forensic examination of the devices demonstrates their relevance.

Further, we asked that Qorvo identify the forensic inspection techniques that its expert wants to apply to the device images, so we can evaluate those measures for appropriateness to determine whether they are agreeable. So far, Qorvo has not specified the steps that it wants to apply during the proposed inspection. These specifics are important, because the precision of those techniques will directly impact proportionality and determine the number of resulting documents that would require pre-disclosure review. Relatedly, merely indexing documents and applying search terms is already a protocol covered by the parties' ESI Protocol and should not be part of the proposed forensic inspection, and it would also not be appropriate to require Akoustis to undertake a wholesale review of search term hits that it has already reviewed. Please let us know the particular steps your expert plans to undertake, so Akoustis can respond to them.

James C. Wald
Jonathan DeFosse
August 9, 2023
Page 5

As for the use of Qorvo's forensic expert rather than a third-party neutral, the case law does not support this, and Akoustis reserves the right to right to so argue with the Court. Nevertheless, as an accommodation and in an effort to resolve the matter amicably, Akoustis is willing to agree to this, provided the parties have agreed upon a detailed inspection protocol and Akoustis' own expert is able to observe the work of Qorvo's expert in order to ensure the requirements of the agreed-upon inspection protocol are followed. Please let us know if this would be agreeable.

We are available to further meet and confer about this on Friday, August 11 if Qorvo would like to continue the discussion and craft a mutually agreeable and well-defined protocol.


Regards,

David L. Stanton