Public Version

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 21-1417-JPM |
| | ) | |
| v. | ) | [ Public Version ] |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.'S FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) NOTICE DEPOSITION TO QORVO, INC.**

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Akoustis" or "Defendants"), by and through their attorneys, will take the deposition of Plaintiff Qorvo, Inc. ("Qorvo") at the offices of Pillsbury Winthrop Shaw Pittman LLP, 1650 Tysons Boulevard, McLean, Virginia 22102, commencing at 9:00 a.m. on October 2, 2023[1] or such other time and place as the parties may agree (including, for example, via remote technology or with other appropriate accommodations consistent with public health guidance). The deposition will be taken before an officer authorized to administer oaths. Akoustis intends to cause the proceedings to be recorded through the instant visual display of testimony and by videotape pursuant to Fed. R. Civ. P. 30(b)(2), and reserves the right to use said videotapes at the trial of this action. The depositions will continue from day to day (excluding Saturdays, Sundays, and holidays) until completed.

Pursuant to Rule 30(b)(6), Qorvo shall designate one or more of its officers, directors, managing agents, or other persons who consent and are knowledgeable to testify on its behalf with respect to the topics set forth in Exhibit A.  Qorvo shall provide Akoustis' counsel with written notice at least ten (10) days prior to the date of the deposition which shall include the name(s) and title(s) of the designees and identify the topic for which designee will testify.

---

[1] The proposed date of deposition presumes that Qorvo will substantially complete its production of documents at least 14 days prior to the deposition date.  It is also based on the current case deadlines.  Should the case deadlines be extended or should Qorvo's document production not be produced in sufficient time to allow Akoustis' counsel time to review the production prior to the deposition, Akoustis reserves the right to amend the deposition date to a new mutually agreeable date.

Public Version

Dated: August 7, 2023

| | |
|---|---|
| PILLSBURY WINTHROP<br>SHAW PITTMAN LLP | BAYARD, P.A. |
| David A. Jakopin<br>Dianne L. Sweeney<br>2550 Hanover Street<br>Palo Alto, CA 94304-1115<br>(650) 233-4500<br>david.jakopin@pillsburylaw.com<br>dianne@pillsburylaw.com | */s/ Ronald P. Golden III*<br>Stephen B. Brauerman (#4952)<br>Ronald P. Golden III (#6254)<br>600 N. King Street, Suite 400<br>Wilmington, Delaware 19801<br>(302) 655-5000<br>sbrauerman@bayardlaw.com |
| David L. Stanton<br>725 S. Figueroa St., 36th Floor<br>Los Angeles, CA 90017<br>(213) 488-7100<br>david.stanton@pillsburylaw.com | rgolden@bayardlaw.com<br><br>*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.* |
| Theresa A. Roozen<br>1200 Seventeenth Street NW<br>Washington, DC 20036<br>(202) 663-8000<br>theresa.roozen@pillsburylaw.com | |
| *Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.* | |

Public Version

# EXHIBIT A
# DEFINITIONS AND INSTRUCTIONS

1. The term "Defendant," "Defendants," and "Akoustis" means one or more of the defendants in this action, including Akoustis Technologies, Inc. and Akoustis, Inc.

2. The term "you," "your," and "Qorvo" means Plaintiff Qorvo, Inc.

3. The term "entity" means any corporation, company, firm, partnership, joint venture, association, governmental body or agency, or person other than a natural person.

4. The term "Action" means this litigation, captioned *Qorvo, Inc. v. Akoustis Technologies, Inc. and Akoustis, Inc.*, No. 21-1417-JPM (D. Del.).

5. The term "SAC" means the operative pleading in this Action.

6. The term "Akoustis BAW Filter" means each and every Akoustis BAW filter that Qorvo alleges infringes the Asserted Patents.

7. The term "Akoustis' Purported False Advertising" means each and every Akoustis advertising that Qorvo alleges is false.

8. The term "Asserted Patents" means any one or all of the patents asserted against Defendants in this action, and includes without limitation U.S. Patent Nos. 7,522,018 and 9,735,755, as asserted, and their respective patent applications, and all predecessor patent applications from which these patents or patent applications claim priority, including all continuations, divisionals, and continuations-in-part.

9. "BAW filters" refers to Bulk Acoustic Wave filters and Bulk Acoustic Wave filter products.

10. The term "Qorvo's Purportedly Confidential Information" means all of the purportedly confidential information that Qorvo alleges Akoustis has improperly obtained, used, misappropriated, or otherwise accessed including, without limitation, each and every trade secret that Qorvo alleges Akoustis misappropriated, including purported trade secret nos. 1-86 and the purported "Additional Trade Secrets" alleged in Qorvo's Second Amended Complaint, the purported trade secrets identified in Qorvo's Identification of Trade Secrets (dated May 1, 2023), the purported trade secrets identified in Qorvo's Supplemental Identification of Trade Secrets (dated July 25, 2023), and any purported trade secret later asserted by Qorvo, as well as any

document produced by Akoustis that Qorvo has designated as "Attorneys' Eyes Only" pursuant to the April 14, 2022 Stipulated Protective Order in this case.[2]

11. The term "Marketing Specifications" means documents containing, reflecting, or discussing market research and analysis, including what customers want or need in a product, intended users of a product, countries where a product may be sold, key product performance criteria, anticipated commercial acceptance and success of a product, pricing strategy, sales forecasts, plans to launch a product, and other related business and technological intelligence.

12. The term "Product Development" means the cycle of product development including research and development, internal marketing requirements, Marketing Specifications, early prototype development, testing and compliance, product manufacturing, testing and compliance during manufacturing, marketing, distribution, and sales.

13. The term "WiFi Access Point Market" means the market for BAW filters (including Qorvo's QPQ1903 and QPQ1904 BAW filters) which are typically used in access points, wireless routers, residential gateways, and customer premise equipment, and which are used or designed for any of the following standards: Wi-Fi 5 (also known as 802.11ac), Wi-Fi 6 (also known as 802.11ax), and/or the extension of Wi-Fi 6 to Wi-Fi 6E to include 6 GHz or Wi-Fi 7 (also known as 802.11be).

14. The term "communication" or "communications" means any communication regardless of the manner in which such communications took place, including all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, telephone calls, social media posts, facsimile communications, meetings, letters, notes, voicemail, text messages or instant messages, and all documents evidencing such interactions between one or more persons or entities.

15. The term "document" or "documents" means any original and every non-identical copy or reproduction of any type of document, writing, or record within the broad context of Federal Rule of Civil Procedure 34, in your possession, custody, or control, including, for example, but not limited to: any written, printed, typed, or other graphic matter of any kind of nature; any physical object or thing, animate or inanimate; all mechanical, magnetic, digital, or electronic sound or video recordings or transcripts thereof; any retrievable data, email, communication, information, or statistics contained on any memory device or other information storage and retrieval systems (whether stored, encoded, taped, or coded electrostatically, electromagnetically, optically, digitally, or otherwise); and also without limitation, agreements,

---

[2] Qorvo alleges that the reason for its Supplemental Identification of Trade Secrets (dated July 25, 2023) is that documents were produced right before or after the May 1, 2023 deadline set by the Court's April 5, 2023 Amended Scheduling Order. (D.I. 178.) While Akoustis is still reviewing this new identification, it appears that the documents cited by Qorvo were largely produced by Akoustis last year (specifically in November 2022). Qorvo's supplementation is untimely and at odds with Qorvo's representations that it would limit the scope of the trade secrets it put at issue in May. Akoustis reserves all rights with respect to Qorvo's Supplemental Identification of Trade Secrets, including to seek an appropriate extension of the discovery cutoff to address Qorvo's newly added trade secret allegations.

blueprints, books, catalogs, charts, compilations, conversations, correspondence, descriptions, diagrams, diaries, directives, drawings, datasheets, electronic recordings, facsimile transmissions, files, films, graphs, inspection reports, interoffice memoranda, instructions, letters, maps, manuals, measurements, memoranda, minutes, motion pictures, notes, notebooks, notices, pamphlets, periodical, photocopies, photographs, plans, plats, proposals, publications and published or unpublished speeches or articles, recordings, records, sampling results, laboratory reports, reports, reproductions, samples, schedules, sketches, specifications, statements, studies, summaries, surveys, telecopies, telegrams, telephone call slips and recordings or transcripts of telephone conversations, test results, transcripts, videotapes, worksheets, and working papers that are in your possession, custody, or control, wherever located. "Document" shall also mean all copies of documents, by whatever means made (including, but not limited to, carbon handwritten, microfilmed, telecommunicated, photostatic, or xerographic copies), and including all non-identical copies (whether different from the original because of any alterations, notes, comments, or other material contained thereon or attached thereto, or otherwise). "Document" shall also include any and all data compilations from which information can be obtained.

      16.     The term "thing" or "things" has the broadest meaning prescribed in Federal Rule of Civil Procedure 34, including every kind of physical specimen or tangible item, other than a document, in your possession, custody, or control.

      17.     The term "person" means any individual, natural person, or any business, governmental entity or agency, or association, including, but not limited to, any individual, company, corporation, division, joint venture, partnership, unincorporated association, or any other legal entities or units thereof.

      18.     Where an instruction or request names a corporation or other legal entity, the instruction or request includes within its scope any parent, predecessors in interest, subsidiaries, affiliates, directors, officers, employees, agents, and representatives thereof, including attorneys, consultants, accountants, and investment bankers.

      19.     The word "and" and the word "or" shall be understood as either conjunctive or disjunctive, whichever is more inclusive in content.

      20.     The words "any," "all," and "each" shall be construed to mean any, all, each, and every.

      21.     The term "refer," "relate," "respecting," or "concerning" shall mean referring to, relating to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter identified in a request.

      22.     The singular form of a word shall include the plural and vice versa, and terms in the present tense shall include terms in the past tense and vice versa.

      23.     The terms "including" and "includes" mean "including but not limited to."

## **INSTRUCTIONS**

1. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Qorvo shall designate one or more qualified or knowledgeable officers, directors, managing agents, or other persons to testify on its behalf regarding each of the subject matters for deposition listed below. Full and complete responses to the following topics shall be provided, after a diligent and thorough investigation into all information within Qorvo's possession, custody, or control has been conducted. If a full and complete response to any topic cannot be provided for any reason, respond to the topic to the extent possible, specifying the portion of the topic that cannot be answered, and provide whatever information can be provided regarding the unanswered portion.

2. If Qorvo believes that the meaning of any term used in the topics listed below to be unclear, you should assume a reasonable meaning, state what that assumed meaning is, and respond on the basis of the assumed meaning, subject to Akoustis' right to clarify the meaning in the same or a different manner.

3. Unless otherwise stated, the time period for each deposition topic stated below is from 2014 to the present.

## TOPICS FOR DEPOSITION

1. The organizational structure of Qorvo, from 2014 to the present, including the roles, positions, and management structure for each department involved with BAW filters.

2. The Product Development process for BAW filters at Qorvo from 2014 to the present.

3. Facts establishing Qorvo's ownership of Qorvo's Purportedly Confidential Information.

4. Qorvo's policies, procedures, and practices governing who has access to or is restricted from accessing Qorvo's Purportedly Confidential Information from 2014 to the present.

5. Qorvo's policies, procedures, and practices directed to identifying, branding, and safeguarding documents and information as confidential and/or proprietary to Qorvo, including those directed to the ▓▓▓▓▓▓▓▓ software, Data Loss Prevention software, and any steps taken or not taken in response to reports generated by Data Loss Prevention software.

6. The facts and circumstances pertaining to Qorvo's "implemented device-based password protection, workspace-based password protections, role-based password protections, folder-based password protections, [and] file-based password protections," that are allegedly applicable to Qorvo's Purportedly Confidential Information as set forth in the SAC. *See* SAC ¶ 24.

7. Qorvo's purported use and enforcement of non-disclosure agreements with its employees, customers, vendors, and third parties who are provided with access to Qorvo's Purportedly Confidential Information.

8. For each former Qorvo employee who was subsequently employed by Akoustis and that Qorvo asserts provided Akoustis with Qorvo's Purportedly Confidential Information, the titles held by the former employee, the department in which he or she worked, his or her job responsibilities, and the nature of each and every project that employee worked on, along with an

identification of Qorvo's Purportedly Confidential Information that such former Qorvo employee had access to in connection with the same.

9.      For each document that Qorvo has identified as Qorvo's Purportedly Confidential Information, all evidence demonstrating that such document has been kept confidential by Qorvo, is not publicly available or readily ascertainable from publicly available information, that such document was not shared with any unauthorized Qorvo employee who did not have a need to access the information, and that such document if shared with other individuals or entities was at all times subject to a confidentiality or non-disclosure agreement.

10.     All facts and circumstances surrounding the public and/or unauthorized disclosure of any of Qorvo's Purportedly Confidential Information, including any data breaches or other unauthorized intrusion, access, or disclosure of Qorvo's Purportedly Confidential Information.

11.     Any information that is not identified in Qorvo's Identification of Trade Secrets (dated May 1, 2023) and/or Qorvo's Supplemental Identification of Trade Secrets (dated July 25, 2023) that Qorvo contends is at issue in this case, including Qorvo's allegations concerning Wireless Watch (SAC at ¶ 77) and its corporate yield page (SAC at ¶ 64).

12.     Any analysis, review or consideration by Qorvo to build a BAW filter based on thin film bulk acoustic wave resonators ("FBARs") and the similarities and/or differences between surface mount resonators ("SMRs") and FBARs in connection with BAW filters.

13.     Qorvo's market share of BAW filters based on each of FBAR resonators and SMR resonators.

14.     Qorvo's market share of BAW filters based on each of 3-4GHz BAW filters, 5GHz BAW filters, and 6GHz+ BAW filters.

15.     The facts and circumstances, including documents and communications, pertaining to and/or surrounding any contemplated merger, acquisition, partnership, or other deal with Akoustis at any time, but specifically in and/or around October 2019.

16.     The facts and circumstances, including documents and communications, relating to Akoustis as a competitor of Qorvo or concerning Akoustis' BAW filters.

17.     The facts and circumstances, including documents and communications, regarding customer or potential customer purchasing decisions as they relate to BAW filters in the WiFi Access Point Market, including the type of customers and agents who purchase and evaluate BAW filters, the purchasing process and sales lifecycle for BAW filters, and the qualities and/or features that drive purchasing decisions concerning BAW filters.

18.     Documents and communications, internally or with third parties, regarding the use of epi or "single crystal" technology for BAW filter resonators, including any documents or communications related to Akoustis' marketing or use of epi or "single crystal" technology in connection with a Akoustis BAW filter.

19.     Qorvo's consideration or analysis of different crystal purities in connection with the research and/or development of its BAW filters.

20.     Each and every instance of customer confusion, whether by an actual or potential customer, that you claim resulted from Akoustis' marketing of its single crystal technology.

21.     The facts and circumstances, including documents and communications, related to the competitive marketplace for BAW filters in the WiFi Access Point Market, whether domestic or international, including the pricing, performance, manufacturing capacity/flexibility, sales and/or product ranges for BAW filters, as well as Qorvo's direct competitors for BAW filter products (e.g., Qualcomm, Broadcom, Skyworks, Avago, Murata, Akoustis, etc.).

22.     All sources from which Qorvo seeks and obtains information about the competitive marketplace for BAW filters and Qorvo's competitors in that marketplace, including internal data and analysis, third-party data and analysis, as well as Qorvo's formal and informal efforts to solicit and obtain information on its BAW filter competitors from its employees, distributors, fabricators, customers, or any other public or non-public source, whether in the United States or abroad.

23.     The facts and circumstances, including documents and communications, regarding Qorvo's quarterly intelligence reports for "WCON," including how Qorvo obtained the third-party information included in those reports and whether such information about third parties constitutes a Qorvo's trade secret.

24.     Qorvo's efforts to research, develop, manufacture and sell commercial BAW filters in the WiFi Access Point Market including why Qorvo's 5 GHz BAW filters were launched after Qorvo's competitors' 5 GHz BAW filters, the development and status of Qorvo's 6 GHz BAW filters, and any delays impacting Qorvo's research, development, manufacturing or sales of BAW filters in the WiFi Access Point Market.

25.     Qorvo's retention and attrition of employees whose work relates to BAW filters in the WiFi Access Point Market.

26.     The facts and circumstances, including documents and communications, relating to Qorvo's evaluation, targeting, recruitment and/or hiring of former Akoustis employees (including Shawn Gibb, Ali Bawangaonwala, Eric Chen, Ranjan Navaneeth, Runqi Zhang, and any other Akoustis employees that Qorvo has considered for employment), and the disclosure and/or use of any confidential information from Akoustis by those former employees.

27.     The facts and information relating to how Qorvo came into possession of the information relating to Akoustis that is reflected in the following documents produced by Qorvo:

   (a) QORVO_00093438, QORVO_00627966–QORVO_00627967, QORVO_00109228–
       QORVO_00109229, QORVO_00076871, QORVO_00076928–QORVO_00076935,
       QORVO_00065724–QORVO_00065732, QORVO_00076825–QORVO_00076834,
       QORVO_00126815–QORVO_00126816, QORVO_00064000–QORVO_00064003,
       QORVO_00062161–QORVO_00062162, QORVO_00028313–QORVO_00028316,
       QORVO_00062776–QORVO_00062777, QORVO_00652846–QORVO_00652847,

QORVO_00062689–QORVO_00062696, and QORVO_00752473–QORVO_00752476.

(b) Documents and communications containing information about Akoustis (including its business or products) that you do not know was publicly available, that you have in your possession, custody, or control that you received or otherwise obtained from a third-party, including but not limited to a former employee of, or former consultant to, Akoustis (e.g., Shawn Gibb, Ali Bawangaonwala, Eric Chen, Ranjan Navaneeth, Runqi Zhang).

(c) Documents with a legend including the phrases: Akoustis, Inc. Confidential Information; Akoustis, Inc. Confidential; Akoustis Confidential; Akoustis, Inc. Proprietary Information; Akoustis Proprietary; or Akoustis Proprietary & Confidential

(d) Documents with a footer or legend of any kind that includes the words "Akoustis" and "confidential" or "proprietary".

(e) Any other Akoustis documents that you do not know to have been obtained from public sources.

28. Qorvo's disclosure and/or use of any of the documents and/or information identified in Topic 27 for any purpose including, planning, research, development, design, manufacturing, testing, analysis, sales, marketing, discussions with third parties (e.g., prospects or customers) and including use in the creation of documents related to the foregoing.

29. Steps taken, if any, to avoid current or former Akoustis employees hired by Qorvo from disclosing Akoustis Confidential Information to Qorvo.

30. Qorvo's oral and written communications internally or with any third parties discussing Akoustis, including any criticism or praise for Akoustis, and any effort to spread fear, uncertainty, doubt or disinformation about Akoustis and/or its products.

31. Qorvo's efforts to target, approach, evaluate, solicit, or steal Akoustis' customers.

32. Qorvo's efforts to exclude Akoustis from the marketplace for BAW filters or to create any type of barriers or challenges for Akoustis to enter or remain in that market.

33. The facts and circumstances that Qorvo relies on to support its allegation that Akoustis was involved in a conspiracy.

34. The facts and circumstances that Qorvo relies on to support its allegation that Akoustis was involved in racketeering activities or an alleged pattern of racketeering.

35. The facts and circumstances that Qorvo relies on to support its allegations that customers and/or investors are being misled by Akoustis through its advertising and the identities of those customers and/or investors that Qorvo claims have been misled.

36. Qorvo's answers to Akoustis' interrogatories in this Action.

37. Qorvo's hiring practices for employees with BAW filter experience.

38. The factual basis for any belief by Qorvo that it has lost market share, lost sales or suffered any other economic harm as a result of Akoustis' alleged misconduct, including the extent of any harm.

39. Qorvo's lost market share, lost sales or any other economic harm resulting from competition in the marketplace for BAW filters.

40. Qorvo's lost market share, lost sales, or any other economic harm resulting from Qorvo's inability to meet customer demands in the marketplace for BAW filters.

41. The economic value of Qorvo's BAW filters in the WiFi Access Point Market, including the fixed and variable costs, the sales volumes, and the profit margins associated with each filter on a monthly basis.

42. Facts and circumstances, including documents and communications, related to Qorvo's licensing or attempts to license the Asserted Patents or any of Qorvo's Purportedly Confidential Information to or from a third-party and/or affiliate, including any associated royalties or renumeration that Qorvo has requested, paid, and/or received in connection with any such license.

43. Facts and circumstances, including documents and communications, related to Qorvo's licensing or attempts to license from a third party any BAW filter technology, or any information or patent used in connection with a Qorvo BAW Filter.

44. Facts and information regarding the value of Qorvo's Purportedly Confidential Information on a document-by-document basis.

45. Facts and information pertaining to any written valuations of Qorvo's Purportedly Confidential Information.

46. Any and all Qorvo intercompany agreements or arrangements related to Qorvo's BAW filters, including any financial allocations or internal charges attributable to their use or integration in other products.

47. Qorvo's current and/or projected revenue, price, costs, and profitability resulting from sales of its BAW filters in the WiFi Access Point Market as well as products identified in response to Defendant's Interrogatory No. 1.

48. The average and forecasted technology lifecycle of each Qorvo BAW filter in the WiFi Access Point Market.

49. The report produced with Bates number QORVO_00063152 and any other versions of this report that Qorvo has generated or maintained.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 7, 2023, copies of the attached document were served via electronic mail on all counsel of record.

                                                                                  */s/ Ronald P. Golden III*
                                                                                  Ronald P. Golden III