PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QORVO, INC.

               Plaintiff,

v.

AKOUSTIS TECHNOLOGIES, INC. and
AKOUSTIS, INC.

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:21-01417-JPM

**DEMAND FOR JURY TRIAL**

PUBLIC VERSION

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR LEAVE TO AMEND ITS ANSWER

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
(202) 747-1900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)|
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

**Confidential Version Filed: August 8, 2023**
**Public Version Filed: August 16, 2023**

PUBLIC VERSION

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 2

       A.    Qorvo Files Case to Halt Akoustis's Widespread Misconduct............................ 2

       B.    Qorvo Files the Second Amended Complaint ...................................................... 2

       C.    Qorvo Responds to Akoustis's Expansive Documents Requests .......................... 2

       D.    The Court Holds a Scheduling Conference on April 3 ......................................... 3

       E.    The Court Amends the Scheduling Order Following a Conference on May 10..... 4

       F.    Akoustis Seeks to Advance a Meritless Counterclaim to Delay the Case ............. 5

III.   LEGAL STANDARDS ...................................................................................... 6

IV.    ARGUMENT ...................................................................................................... 7

       A.    Akoustis Is Advancing Its Counterclaim for an Improper Purpose ...................... 7

             1.    Akoustis is using the counterclaim as a basis for delay............................. 7

             2.    Akoustis asserts the counterclaim in bad faith.......................................... 8

       B.    The Counterclaim Will Unfairly Prejudice Qorvo............................................... 9

       C.    Akoustis Unduly Delayed Seeking Leave to File Its Counterclaim .................... 12

       D.    Akoustis' Counterclaim Is Futile ..................................................................... 13

             1.    Akoustis fails to plausibly allege that Qorvo solicited confidential
                   information from former Akoustis employees........................................... 14

                   a.    A "plan" to disclose information "regarding infrastructure"........ 14

                   b.    Information concerning Akoustis's manufacturing facility.......... 14

                   c.    Competitive assessments of Akoustis.......................................... 16

                   d.    "Process technology," benefits of single crystal products, and
                         patent portfolio strategy .............................................................. 16

                   e.    Speculation on possible Akoustis customers ............................... 18

                   f.    Defense industry customer referenced in Akoustis press release . 18

             2.    Akoustis fails to adequately allege proximate cause ............................... 18

       E.    If the Court Grants Akoustis Leave to File Its Counterclaim, the Claim Should be
             Bifurcated and Stayed until Qorvo's Claims Are Tried...................................... 19

PUBLIC VERSION

## TABLE OF AUTHORITIES

Page(s)

Cases

*3G Licensing, v. HTC Corp.*
   No. 17-cv-0083, 2023 WL 34553 (D. Del. Jan. 4, 2023) .........................................19

*Bechtel v. Robinson*
   886 F.2d 644 (3d Cir. 1989)...................................................................10, 11

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)...........................................................................14

*Birtha v. Stonemor, N.C., LLC*
   727 S.E.2d 1 (N.C. Ct. App. 2012)..............................................................13

*In re Burlington Coat Factory Secs. Litig.*
   114 F.3d 1410 (3d Cir. 1997)....................................................................7

*Carolina ChiroCare & Rehab., Inc. v. Nationwide Prop. & Cas. Ins. Co.*
   862 S.E.2d 436 (N.C. Ct. App. 2021).............................................................14

*Ciena Corp. v. Corvis Corp.*
   210 F.R.D. 519 (D. Del. 2002) ..................................................................19

*CNC/Access, Inc. v. Scruggs*
   No. 04-CVS-1490, 2006 WL 3350854 (N.C. Super. Ct. Nov. 17, 2006)...............................14

*Cornell & Co. v. Occupational Safety and Health Review Comm'n*
   573 F.2d 820 (3d Cir. 1978).....................................................................11

*Cureton v. Nat' l Athletic Ass'n*
   252 F.3d 267 (3d Cir. 2001).....................................................................11

*E. Minerals & Chems. Co. v. Mahan*
   225 F.3d 330 (3d Cir. 2000).....................................................................7

*Enzo Life Sciences, Inc. v. Digene Corp.*
   No. 02-cv-212, 2003 WL 21402512 (D. Del. June 10, 2003) ......................................19

*Eurand Inc. v. Mylan Pharms. Inc.*
   C.A. No.08-889, 2009 WL 3172197 (D. Del. Oct. 1, 2009) .......................................19

*Ferguson v. Roberts*
   11 F.3d 696 (7th Cir. 1993) .....................................................................8

*Foman v. Davis*
   371 U.S. 178 (1962)..............................................................................7

PUBLIC VERSION

*Hughes Aircraft Co. v. National Semiconductor Corp.*
  857 F. Supp. 691 (N.D. Cal. 1994) .................................................................9

*Intellectual Ventures I LLC v. Toshiba Corp.*
  No. 13-cv-0453, 2016 WL 4690384 (D. Del. Sept. 7, 2016).................................20

*Long v. Wilson*
  393 F.3d 390 (3d Cir. 2004)..........................................................................10

*Massarsky v. General Motors Corp.*
  706 F.2d 111 (3d Cir. 1983)..........................................................................13

*NRT Tech.*
  *Corp.*, No. 19-804, 2022 WL 354291 (D. Del. Jan. 11, 2022) ..................................7

*RetailMeNot, Inc. v. Honey Sci. Corp.*
  No. 18-937, 2019 WL 2537565 (D. Del. June 20, 2019), *adopted*, 2019 WL 6615321
  (D. Del. Dec. 5, 2019)..................................................................................11

*Rolo v. City Investing Co. Liquidating Trust*
  155 F.3d 644 (3d Cir. 1998)..........................................................................11

*Velocity Sols., Inc. v. BSG Fin., LLC*
  No. 15-CVS-1059, 2016 WL 698506 (N.C. Super. Ct. Feb. 22, 2016)....................14

*Venetec Int'l v. Nexus Med.*
  541 F. Supp. 2d 612 (D. Del. 2010)..................................................................7

*WebXchange Inc. v. Dell Inc.*
  No. 08-132, 2010 WL 256547 (D. Del. Jan. 20, 2010) .........................................7

Other Authorities

Fed. R. Civ. P.
  Rule 15(a)...................................................................................................7
  Rule 15(a)(2)...............................................................................................6
  Rule 16......................................................................................................7
  Rule 16(b)...................................................................................................7
  16(b)(4) .....................................................................................................7
  Rule 42(b) .................................................................................................19

## I.      INTRODUCTION

Akoustis's motion for leave should be denied because Akoustis seeks to assert its last-minute counterclaim for an improper purposes—to delay this litigation, harass Qorvo, and increase Qorvo's litigation expenses. As discussed below, Akoustis's counterclaim is exceptionally meritless. Akoustis alleges that Qorvo solicited confidential information from two former Akoustis employees, but Akoustis fails to identify even a single Akoustis document in Qorvo's files (despite having had the benefit of an expansive discovery record). Instead, Akoustis bases its claim on a handful of Qorvo emails and instant messages that mention Akoustis. But none of those high-level communications reflects Akoustis's confidential information. To the contrary, the communications reference information that Akoustis routinely discloses in public, competitive assessments of Akoustis's capabilities, and other deductions that Qorvo has made about Akoustis's business based on information properly available to Qorvo.

Akoustis makes no secret of the goal of its counterclaim—to obtain a scheduling "adjustment" that will delay adjudication of Qorvo's claims. This is improper and highly prejudicial. Qorvo filed this lawsuit nearly two years ago based on allegations of very serious misconduct against Akoustis, including patent infringement, false advertising, and the poaching of dozens of Qorvo employees as part of a scheme to steal Qorvo's confidential information. Then, earlier this year, Akoustis was caught red-handed misappropriating trade secrets when Qorvo located **hundreds** of its confidential documents in Akoustis's files.

Adjudication of Qorvo's serious claims against Akoustis should not be delayed to allow Akoustis to inject a last-minute counterclaim into this case. Qorvo respectfully requests that the motion for leave be denied. Alternatively, to the extent the Court determines that the motion should be granted, Qorvo asks that the counterclaim be bifurcated from Qorvo's claims and proceed on its own schedule to ameliorate the prejudice to Qorvo and potential juror confusion.

## II.     BACKGROUND

### A.     Qorvo Files Case to Halt Akoustis's Widespread Misconduct

Qorvo filed this lawsuit on October 4, 2021 in the face of Akoustis's widespread misconduct, which included (i) infringing two of Qorvo's patents; (ii) poaching dozens of Qorvo's employees in an effort to obtain Qorvo's confidential information; and (iii) making false statements that Akoustis was selling superior "single crystal" products when, in fact, Akoustis's products were polycrystalline. *See* D.I. 1.

### B.     Qorvo Files the Second Amended Complaint

In late 2022 and January 2023, Akoustis produced a substantial volume of electronically stored information ("ESI") in response to discovery requests that Qorvo served on April 19, 2022. Declaration of Jonathan DeFosse ("DeFosse Decl."), ¶3. The materials Akoustis produced included evidence of a widespread scheme of misappropriating and using Qorvo's trade secrets in nearly every aspect of Akoustis's business. *See* D.I. 125, ¶¶61-153. The materials revealed, among other things, that Akoustis had possession of hundreds of Qorvo's confidential documents and that executives at Akoustis were actively circulating and using those materials. *Id*., ¶¶66-67, 75-77, 79-153. On February 8, 2023—within weeks of discovering the misappropriated trade secrets—Qorvo filed the Second Amended Complaint ("SAC"). *See generally id.*

### C.     Qorvo Responds to Akoustis's Expansive Documents Requests

On February 15, 2023, Akoustis served requests for production ("RFPs") related to Qorvo's trade secret claims. DeFosse Decl., ¶5. These RFPs were in addition to requests that Akoustis served on December 9, 2022 directed to Qorvo's unfair competition claim. *Id*., ¶4. Collectively, the RFPs sought broad swaths of information, including every document that mentions Akoustis. *Id*., ¶6. Qorvo attempted to limit the scope of the requests. *Id*., ¶¶7-8, Ex. A (proposing to limit search parameter "Akoustis" with relevant topic terms). But Akoustis

consistently insisted that Qorvo collect and produce vast amounts of information. *Id.*, ¶9-10, Ex. B at 8-10 (asking to run the term "Akoustis" and additional search parameters). For example, Akoustis asserted at one point that Qorvo should produce 10-15 documents for every one document that Akoustis produced. D.I. 177 at 17-18.

While Qorvo objected to the expansive scope of Akoustis's RFPs, Qorvo was also focused on moving this case forward. As such, Qorvo largely acceded to Akoustis's expansive requests and began rapidly collecting and reviewing materials. Less than four months after receiving the trade secret RFPs, Qorvo had collected millions of documents for review and produced 780,000 pages of materials responsive to the expansive RFPs. *See* D.I. 245 at 4-5.

### D.     The Court Holds a Scheduling Conference on April 3

On April 3, 2023, the Court held a conference to discuss the case schedule in light of the SAC. In advance of the conference, the parties submitted competing schedules. *See* D.I. 173. Qorvo proposed closing fact discovery in July 2023, while Akoustis asked the Court to extend fact discovery to February 2024.

During the April 3, 2023 scheduling conference, Qorvo acknowledged that it still needed to produce documents in response to Akoustis's RFPs. Qorvo stated, however, that it could not say with certainty how many pages of documents it would need to produce. D.I. 177 at 17:6-9. The Court issued an interim Scheduling Order on April 5, 2023 setting the close of fact discovery as July 10, 2023. D.I. 178. Recognizing the uncertainty in the amount of discovery remaining, however, the Court also set another scheduling conference for May 10, 2023 for the purpose of making any adjustments necessary to the schedule. *See* D.I. 177 at 37-38.

Akoustis accuses Qorvo's counsel of making misrepresentations during the April 3 scheduling conference concerning the anticipated volume of Qorvo's production. Mot. 1, 3-4. According to Akoustis, Qorvo stated that it "only had about 1,000 document left to produce."

Mot. 1. As support for this assertion, Akoustis relies on a partial sentence from the transcript of the conference, where Qorvo stated that it expected to **start** by producing 1,000 documents within a week. Mot. 3-4 (quoting D.I. 177 at 17). Consistent with that statement, Qorvo produced 863 documents on April 7, 2023. *See* Mot. 5. Qorvo did not state that it "only" had a total of 1,000 documents left to produce. In fact, Qorvo stated the opposite—that "there will be more documents" to produce and Qorvo cannot "put a number on it right now." D.I. 177 at 17:6-9.

        E.        **The Court Amends the Scheduling Order Following a Conference on May 10**

Akoustis's motion is based, in part, on the narrative that Qorvo induced the Court to issue the governing Scheduling Order "under at best incomplete pretenses" by understating the volume of documents Qorvo planned to produce in response to the trade secret RFPs. *See* Mot. 2-3. This is incorrect.

Prior to the scheduling conference on May 10, 2023, the parties submitted a joint letter to the court. D.I. 197. In the letter, the parties informed the Court of the current status of discovery, including Qorvo's production of more than 500,000 pages of documents in April and May 2023 in response to Akoustis's expansive RFPs. *Id.* at 1-2. Based on the status of discovery, Qorvo recognized that an amendment to the Scheduling Order would be appropriate. *Id.* at 3-4. Qorvo thus asked the Court to postpone the close of fact discovery until August 10, 2023 based on the expectation that document production would be substantially complete by July 2023. *Id.* at 4. Akoustis again asked the Court to postpone the close of fact discovery to February 29, 2024. *Id.* The central premise of Akoustis's request was that Qorvo had produced a large volume of documents. *See* D.I. 199 at 37.

After hearing from both sides, the Court issued an Amended Scheduling Order setting October 16, 2023 as the close of fact discovery. D.I. 198. The Court observed that moving the end of fact discovery to October was "a big change." D.I. 199 at 49.

**F.      Akoustis Seeks to Advance a Meritless Counterclaim to Delay the Case**

On July 24, 2023, Akoustis filed the instant motion for leave to add a counterclaim to the case based on "recently produced information." The draft counterclaim alleges that Qorvo "solicited and obtained Akoustis BAW Confidential Information from former Akoustis employees in an attempt to gain an unfair advantage over Akoustis and Qorvo's other competitors" in violation of North Carolina's unfair competition statute. D.I. 246-2, ¶53. Qorvo identifies the "former Akoustis employees" as Shawn Gibb and Ali Bawangaonwala. *Id*. Mr. Gibb left Akoustis in November 2018. Mr. Bawangaonwala left Akoustis in April 2019.

In contrast to Qorvo's trade secret and unfair competition claims, Akoustis does not identify any confidential Akoustis documents found in Qorvo's files. *Compare* D.I. 246-2, ¶¶38-44 (identifying Akoustis "confidential" information as references to Akoustis in a few emails and instant messages) *with* D.I. 79, ¶¶79-144 (identifying a large number of confidential Qorvo documents located in Akoustis files). Instead, Akoustis bases its unfair competition claim on eight communications that reference Akoustis. *See* Mot. 6-7. None of these communications reflects the disclosure of Akoustis confidential information:

1.      In November 2019, Mr. Gibb sent an email to a colleague stating that he would reach out for a discussion "regarding infrastructure" products at Akoustis. DeFosse Decl., Ex. C. Mr. Gibb did not refer to any Akoustis confidential information in the email, nor imply that the discussion regarding the infrastructure products would include any Akoustis confidential information.

2.      In September 2019, Mr. Bawangaonwala discussed high-level and publicly available information about Akoustis's manufacturing facility in New York. DeFosse Decl., Ex. D.

3.      In July 2020, Mr. Gibb provided his assessment of whether Akoustis would have the capability to compete for filters in the defense industry. DeFosse Decl., Ex. E.

4.      In November 2019, Mr. Gibb provided his assessment of whether Akoustis could compete in the market for low-band filters. DeFosse Decl., Ex. F.

5.      In June 2020, Mr. Gibb summarized "publicly available information" about Akoustis's technology and patent portfolio. DeFosse Decl., Ex. G.

6.      In August 2020, Mr. Gibb provided public information about Akoustis's patent portfolio. DeFosse Decl., Ex. H.

7.      In August 2019, Mr. Gibb and Mr. Bawangaonwala exchanged instant messages while listening to a public Akoustis investor call. DeFosse Decl., Ex. I. During their chat, Mr. Gibb and Mr. Bawangaonwala speculated about the possible identity of customers that Akoustis referenced during the call. *Id.*

8.      In December 2019, Mr. Gibb was able to deduce the identity of a defense industry customer referenced in an Akoustis press release ██████████████████ ████████████████████████. DeFosse Decl., Ex. J.

Beyond the eight documents referenced above, Akoustis cites various documents reflecting competition between the companies for sales, Qorvo's surprise that Akoustis had been able to enter the market so quickly, Qorvo's concerns about the comparative pace of its own development, and Qorvo's discussions of potentially purchasing BAW filters from Akoustis.[1] *See* D.I. 246-2, ¶¶12-25, 47-49. None of these documents reflect any confidential information solicited from former Akoustis employees.

## III.   LEGAL STANDARDS

Leave to amend a pleading is governed by Rule 15(a)(2), which provides that "a party may amend its pleading [] with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision of whether to grant a motion to amend is within the Court's discretion, but the Supreme Court has held that leave to amend should be freely granted if (1) there is no undue delay, bad faith, or dilatory motive on the part of the moving party, (2) granting leave is not unfairly prejudicial to the non-moving party,

---

[1] Qorvo's concern and surprise over Akoustis's rapid entry into the market turned out to be well-founded given the discovery that Akoustis had stolen hundreds of Qorvo's trade secrets and used those secrets to accelerate bringing a product to market.

and (3) the amendment would not be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

When leave to amend is sought after a court deadline for amendments, Rule 16 also applies. *WebXchange Inc. v. Dell Inc.*, No. 08-132, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010). Rule 16(b) requires (1) that the moving party show good cause; and (2) obtain the Court's consent for the amendment. Fed. R. Civ. P. 16(b)(4); *see also* D.I. 106 at 3. "Good cause [] requires the movant to demonstrate that, despite their diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612, 618 (D. Del. 2010). "[T]he movant[] . . . bear[s] the burden of showing that [it] exercised diligence in seeking the proposed amendment under Rule 16(b)(4)." *NRT Tech. Corp.*, No. 19-804, 2022 WL 354291, at *2 (D. Del. Jan. 11, 2022). If good cause is shown under Rule 16, the Court then considers whether the proposed amended pleading meets Rule 15(a)'s requirements. *See E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000).

## IV.    ARGUMENT

### A.    Akoustis Is Advancing Its Counterclaim for an Improper Purpose

Akoustis's motion for leave should be denied as a threshold matter because Akoustis seeks to assert the counterclaim for improper purposes—to delay the litigation and harass Qorvo in a desperate attempt to find leverage against the claims in the SAC.

#### 1.    Akoustis is using the counterclaim as a basis for delay

Akoustis does not even attempt to conceal the dilatory motive underlying the counterclaim. Indeed, Akoustis' motion is largely based on the argument that the current Scheduling Order should never have been entered. *See* Mot. 1-5, 11-12. Akoustis also admits that it plans to request an extension of the case schedule if the motion for leave is granted. *See* Mot. 3, n.2. Akoustis argues that this "adjustment" would not be based on "the amendment **alone**," but

also "the fact that 95% of Qorvo's production (over 780,000 pages) was only produced in the last 3 months." *Id*. The Court, however, **already considered** the volume of Qorvo's document production during the scheduling conference on May 10. In response, the Court postponed the close of fact discovery to October 2023 but refused Akoustis's demand for a further extension. As such, Akoustis's effort to further delay this case is based on "the amendment alone."

A "dilatory motive on the part of the moving party" is a well-established basis for denying a motion for leave to amend. *See Ferguson v. Roberts*, 11 F.3d 696, 706-07 (7th Cir. 1993) (affirming denial of motion for leave to amend "particularly in light of the concern that the amendment was a tactic to postpone the trial date").

### 2.    Akoustis asserts the counterclaim in bad faith

It is also apparent that Akoustis seeks to assert the counterclaim for the bad faith purpose of harassing Qorvo and increasing its litigation expenses. As noted above and discussed further below, the allegation that Qorvo solicited Akoustis confidential information is exceptionally meritless. Akoustis has not identified **a single Akoustis confidential document** in Qorvo's files (compared to hundreds of Qorvo confidential documents found in Akoustis's files). Moreover, the eight documents that Akoustis cites as purportedly reflecting the disclosure of Akoustis confidential information do not even remotely support that claim. Instead, those documents reflect: (i) information that Akoustis routinely discloses **to the public** (e.g., benefits of "single crystal" products, target products under development, manufacturing capacity, patent portfolio strategy); (ii) information that Qorvo deduced based on its own business dealings (███ ████████████████████████████████████████████████████████ ████████████████); and (iii) competitive assessments made by Qorvo employees concerning Akoustis's capabilities (e.g., whether Akoustis would have the capability to compete in certain markets). Akoustis cannot claim any of this information is "confidential" to Akoustis.

In addition to lacking any plausible basis for the unfair competition claim, Akoustis also litters the counterclaim with extraneous attacks on Qorvo that have no connection to soliciting Akoustis's confidential information. Akoustis argues, for example, that Qorvo (i) was slow in entering the market for 5 GHz products; (ii) "stole" sales from Akoustis; and (iii) "approved" spreading disinformation about Akoustis.[2] *See* Mot. 5-8. Rather than supporting legitimate claim for relief, these irrelevant aspects of the counterclaim appear to be part of a public relations-style campaign designed to smear Qorvo and aggrandize Akoustis's purported achievements.

Under these circumstances—where Akoustis has no good faith basis to accuse Qorvo of stealing confidential information and the counterclaim incorporates numerous attacks on Qorvo unrelated to the asserted cause of action—it is apparent that Akoustis is acting for an improper purpose. As such, the motion for leave should be denied. *See Hughes Aircraft Co. v. National Semiconductor Corp.*, 857 F. Supp. 691, 701-02 (N.D. Cal. 1994) (denying leave to amend where there were questions regarding the substantive merits of the additional proposed claims and resulting bad faith on the part of the movant).

### B.     The Counterclaim Will Unfairly Prejudice Qorvo

Allowing a new claim at this stage of the litigation will also unfairly prejudice Qorvo because (i) there is not enough time to allow Qorvo to investigate and defend the claim; and (ii) the counterclaim would require Qorvo to expend significant additional resources to conduct

---

[2] The last extraneous attack reflects the liberties that Akoustis is willing to take in characterizing documents. Akoustis's repeatedly asserts that Qorvo's CEO "approved" of "knowingly spreading disinformation about Akoustis and its products." Mot. 2, 8. In reality, Qorvo's CEO stated that it was "perfect" that Qorvo's sales team was "staying real close" to a customer Qorvo lost to Akoustis and would "be there to attack should a window open." DeFosse Decl., Ex. K. While it is convenient for Akoustis to cherry-pick a phrase from the middle of an email ("spreading fudd") and pretend as if Qorvo's CEO was responding to only those two words in isolation, that is not a fair reading of the exchange. *Id.*

discovery and prepare for trial. *See, e.g.*, *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (prejudice exists where the amended pleading would require the non-moving party to "expend significant additional resources to conduct discovery and prepare for trial"); *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (prejudice exists where non-moving party will be "deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely").

The original complaint was filed October 2021. Discovery closes in this case on October 16, 2023. *See* D.I. 198. During the scheduling conference on May 10, 2023, the Court made clear that this is a "real deadline" that cannot be extended without also postponing the trial scheduled for May 2024.[3] Over the next two months, the parties are already fully occupied with completing discovery on the existing claims. Indeed, Akoustis itself has repeatedly stressed the substantial amount of work and limited time the parties face in addressing Qorvo's claims.

Allowing Akoustis to add a new claim to the case would trigger a substantial amount of new discovery that cannot be completed before October 16, 2023. For example, Qorvo has not taken any written discovery on Akoustis's new claim. As such, Qorvo would need to serve interrogatories and RFPs concerning, at a minimum, (i) the confidential nature of the information that Qorvo allegedly solicited from former Akoustis employees; (ii) occasions where Akoustis has disclosed that information to third parties; (iii) Akoustis's efforts to maintain the confidentiality of the information; (iv) the harm that Akoustis has allegedly suffered as a resulted of the disclosure of its information; and (v) the circumstances of the employment and departures of Mr. Gibb and Mr. Bawangaonwala. Qorvo would also need to schedule additional depositions

---

[3] Postponing the close of discovery and trial would also result in unfair prejudice to Qorvo because that would "significantly delay the resolution of the dispute." *Long*, 393 F.3d at 400.

concerning Akoustis's claim, including depositions of investors and stock analysts to whom Akoustis routinely disclosed information it now claims to have been "confidential." Further, Qorvo would either need to engage new experts (both technical and damages) to address Akoustis claim or, at a minimum, substantially extend the scope of existing expert engagements.

Given the limited time remaining for discovery and the amount of additional work necessary to address Akoustis's claim, allowing Akoustis to assert that claim at this late stage of the proceeding would deprive Qorvo of the opportunity to take discovery and present facts that Qorvo would have offered had Akoustis timely filed its claim. *See Bechtel*, 886 F.2d at 652. Qorvo will also suffer undue prejudice because allowing the new claim will "result in additional discovery, cost, and preparation to defend against new facts and theories." *Cureton v. Nat' l Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see also RetailMeNot, Inc. v. Honey Sci. Corp.*, No. 18-937, 2019 WL 2537565, at *2 (D. Del. June 20, 2019), *adopted*, 2019 WL 6615321 (D. Del. Dec. 5, 2019) (finding undue prejudice in an amendment that would shift back claim-construction deadlines because it "would create a truncated time-period between the court's ultimate determination on claim construction and the remainder of the deadlines set through trial"); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 655 (3d Cir. 1998) (finding that duration of case and substantial effort and expense in resolving underlying motion to dismiss could constitute delay or prejudice); *Cornell & Co. v. Occupational Safety and Health Review Comm'n*, 573 F.2d 820, 823-24 (3d Cir. 1978) (finding significant prejudice because proposed amendment would have changed the legal and factual basis of the claim, and would have prevented the defendant from presenting a defense).

Akoustis is aware of the significant undue prejudice concerns surrounding its claim and seeks to circumvent the analysis by equating its effort to add a new claim with Qorvo's filing of

the SAC in February 2023. *See* Mot. 14. But the two events are not remotely similar. The trade secret claims asserted in the SAC were an extension of the unfair competition claim that Qorvo had already filed in October 2021. Discovery had been open on the unfair competition claim for **ten months** before Qorvo filed the SAC. Moreover, the Court had not yet set a date for the close of fact discovery when the SAC was filed. Akoustis was ultimately permitted more than **eight months** of additional discovery after the SAC. By contrast, Akoustis seeks to inject an entirely new claim into this case two months before the close of fact discovery.

Akoustis also argues that Qorvo cannot complain of unfair prejudice because "Qorvo's own delays" and "conduct during discovery" caused the prejudice. Mot. 12-13. This argument is meritless. Akoustis served its trade secret RFPs on February 15, 2023. DeFosse Decl., ¶5. Qorvo collected **millions** of documents in response to those requests and produced over 500,000 pages of materials in **less than three months**. D.I. 197 at 1-2. Qorvo did not "delay," nor engage in any other type of "conduct" that would justify ignoring the undue prejudice that would result from bootstrapping a new claim onto this case two months before the close of fact discovery.

### C.     Akoustis Unduly Delayed Seeking Leave to File Its Counterclaim

The Court should also deny Akoustis's motion because Akoustis unduly delayed in seeking to file its claim. As Akoustis admits, the vast majority of the documents underlying Akoustis's counterclaim were produced in **early April**. *See* Mot. 7. But Akoustis waited nearly four months to assert its new claim.

Akoustis boasts that it acted "diligently" because "more than half a dozen lawyers" worked "1,800 hours" over 14 weeks to review documents. Mot. 10, 11. But this boast only highlights Akoustis's **lack** of diligence. According to Akoustis's own numbers, six lawyers were working part-time—about 20 hours a week—to review Qorvo's documents (1,800 hours ÷ 14 weeks ÷ 6 lawyers ≈ 21 hours/week/lawyer). Stated differently, Akoustis had the equivalent of

**three** full-time lawyers working to review a production of nearly 800,000 pages. That is not a reasonable or "diligent" effort in a case of this size or with these deadlines. Indeed, at the May 2023 scheduling conference, Akoustis recognized that a team of 15-20 lawyers would be needed to review the documents. D.I. 199 at 37.

Akoustis also claims that it acted diligently because time was needed to perform a "technical review of the sensitivity of the materials." Mot. 10-11. That assertion is also meritless. As discussed above (*see* Part II.E), Akoustis's claim is not based on the discovery of any Akoustis "technical" documents in Qorvo's files. Rather, Akoustis relies on a handful of email and instant messaging discussions that mention Akoustis. Those documents do not contain any "technical" details and any high-level (and public) technical information referenced in the communications could have been reviewed in a matter of minutes. As such, the purported delay for "technical review" cannot justify Akoustis's delay in asserting its claim.

### D.   Akoustis' Counterclaim Is Futile

To state a claim for unfair competition under North Carolina law, Akoustis must plausibly allege that "(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012). Here, Akoustis fails to plausibly allege both (i) the existent of an unfair or deceptive act; and (ii) proximate cause. As such, the Court should deny Akoustis leave to amend because its claim is futile. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) ("The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

1.      **Akoustis fails to plausibly allege that Qorvo solicited confidential information from former Akoustis employees**

"A practice is unfair if it is unethical or unscrupulous." *Carolina ChiroCare & Rehab., Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 862 S.E.2d 436 (N.C. Ct. App. 2021). There is no dispute in this case that systematically soliciting confidential information from former employees of a competitor would qualify as an unfair trade practice. *See, e.g.*, *Velocity Sols., Inc. v. BSG Fin., LLC*, No. 15-CVS-1059, 2016 WL 698506, at *3 (N.C. Super. Ct. Feb. 22, 2016); *CNC/Access, Inc. v. Scruggs*, No. 04-CVS-1490, 2006 WL 3350854, at *10-11 (N.C. Super. Ct. Nov. 17, 2006). Akoustis, however, fails to plausibly allege that Qorvo engaged in any such practice. Indeed, none of the documents that Akoustis references as the basis for its counterclaim (*see* Mot. 6-7) plausibly supports an allegation that Qorvo solicited confidential information.

a.      **A "plan" to disclose information "regarding infrastructure"**

Akoustis first argues that a former Akoustis employee (Shawn Gibb) "revealed" his "plan" in a November 2019 email to discuss information "regarding infrastructure" products at Akoustis. Mot. 7 (citing DeFosse Decl., Ex. C). Akoustis does not identify any Akoustis confidential information in the email itself. Further, the assertion that Mr. Gibb intended to discuss **confidential** information—as opposed to public information about Akoustis infrastructure products—is pure speculation and insufficient to state a claim. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

b.      **Information concerning Akoustis's manufacturing facility**

Akoustis next asserts that Mr. Bawangaonwala shared "confidential information about [i] the size of Akoustis' BAW filters, [ii] Akoustis' manufacturing capacity, and [iii] their product roadmap" in a September 4, 2019 email. *See* Mot. 7 (citing DeFosse Decl., Ex. L). But Akoustis

publicly discloses all of this alleged "confidential" information. For example, the "size of

Akoustis' BAW filters" would be known to any person that purchases those filters or performs a

tear-down on any public product containing those filters. Moreover, Akoustis's December 2019

Investor Presentation included details on Akoustis's manufacturing facilities, including the size

of the Akoustis wafers ("150-mm SI wafer Process" and 6" wafers):



DeFosse Decl., Ex. M.

The same presentation also included information on Akoustis's "product focus,"

including the company's focus on 5G and WiFi bands:



DeFosse Decl., Ex. M.

Akoustis also routinely disclosed detailed information about its manufacturing capacity,

such as the information in a 2018 stock analyst report from Drexel Hamilton:

> The MEMS facility is 120,000 square feet, with Class 100/Class 1000 cleanroom space, capable of producing 50,000 six-inch wafers per year, which should support annual Akoustis revenue of about $150-$200 million. The facility is currently only running at about 15% utilization. The facility is currently only running a single shift, with capacity able to quickly increase simply by adding employees and a second shift.

DeFosse Decl., Ex. N.

### c.   Competitive assessments of Akoustis

Akoustis argues that Mr. Gibb also disclosed Akoustis confidential information in

separate emails from November 2019 and July 2020. Mot. 7 (citing DeFosse Decl., Exs. E, F). In

both emails, Mr. Gibb was asked for his competitive assessment of Akoustis's capabilities and he

offers his opinions in response. For example, Mr. Gibb stated in July 2020—nearly two years

after he left Akoustis— ████████████████████████████████████████████

████████████████████████████████████████████████████ Decl., Ex. E.

Akoustis cannot claim that Mr. Gibb's competitive analysis of Akoustis is Akoustis

"confidential" information.

### d.   "Process technology," benefits of single crystal products, and patent portfolio strategy

Akoustis argues that Mr. Gibb also "shared confidential information about [i] Akoustis'

process technology, [ii] the benefits of 'single crystal' and the impact on the piezoelectric

properties and thermal handling, and [iii] Akoustis' patent filing and portfolio strategy" in a June

2020 email. Mot. 7 (citing DeFosse Decl., Ex. G). In that email, however, Mr. Gibb makes clear

that he is sharing only "publicly available information." *See id.* Mr. Gibb's contemporaneous

assertion is confirmed by countless sources of public information. For example, Akoustis touts

the piezoelectric properties and thermal handling of its single crystal technology on its website:





*See* DeFosse Decl., Ex. O.

As Mr. Gibbs noted in his email, the Akoustis "process technology" is also described in

publicly available patents. *See* DeFosse Decl., Ex. P at 1:52-2:2. Akoustis also routinely

discloses its "patent filing and portfolio strategy" in public presentations:



DeFosse Decl., Ex. M.[4]

### e.  Speculation on possible Akoustis customers

Akoustis next argues that Mr. Gibb and Mr. Bawangaonwala disclosed confidential information about an Akoustis customer in an instant message chat. Mot. 7 (citing DeFosse Decl., Ex. I). But the communication is only between Mr. Gibb and Mr. Bawangaonwala, not a disclosure to Qorvo. *See* DeFosse Decl., Ex. I. Further, the discussion is simply speculation of which customers Akoustis was alluding to during a public investor call. *See id.*

### f.  Defense industry customer referenced in Akoustis press release

Finally, Akoustis argues that Mr. Gibb "revealed" the identity of a "confidential defense industry customer" referenced in an Akoustis press release in December 2019. Mot. 7 (quoting DeFosse Decl., Ex. J). But the email itself makes clear that Mr. Gibb ██████████████████ ███████████████████████████████████████████████████████████. *See* DeFosse Decl., Ex. J. As such, Mr. Gibb's email reflects his knowledge as a Qorvo employee and does not plausibly support an allegation that Mr. Gibb disclosed confidential information.

### 2.  Akoustis fails to adequately allege proximate cause

Even if the Court could plausibly infer that Qorvo solicited Akoustis's confidential information, Akoustis has still failed to allege that the disclosure of any of that information proximately caused any injury to Akoustis. Indeed, other than boilerplate allegations of harm and proximate cause (*see* D.I. 246-2, ¶66), the counterclaim contains only one allegation of injury:

> 49. Qorvo's efforts to unfairly and deceptively compete with Akoustis were successful and damaged Akoustis. ████████████ ████████████████████████████

---

[4] For the same reasons, Akoustis's assertion that Mr. Gibb shared confidential information about "Akoustis's intellectual property portfolio strategy" in an August 2020 email is meritless. *See* Mot. 7 (citing DeFosse Decl., Ex. H).



Akoustis makes no effort to tie these purported lost sales (in January and March 2021) to the confidential information that Mr. Gibb and Mr. Bawangaonwala allegedly disclosed between August 2019 and August 2020. Indeed, it is entirely **implausible** that any of the "confidential" information Akoustis identifies would have proximately caused Akoustis to lose sales.

### E.    If the Court Grants Akoustis Leave to File Its Counterclaim, the Claim Should be Bifurcated and Stayed until Qorvo's Claims Are Tried

To the extent the Court determines that Akoustis should be granted leave to file its claim as part of this case, Qorvo requests that the claim be bifurcated to avoid delaying Qorvo's claims, enhance juror comprehension, and avoid prejudice.

Under Rule 42(b), a Court may order separate trials with respect to a counterclaims "[f]or convenience, to avoid prejudice, or to expedite and economize[.]" Fed. R. Civ. P. 42(b); *see also Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) ("a district court has broad discretion in separating issues and claims for trial"). In assessing bifurcation, Courts "should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Enzo Life Sciences, Inc. v. Digene Corp.*, No. 02-cv-212, 2003 WL 21402512, at *4 (D. Del. June 10, 2003).

Here, Akoustis's proposed counterclaim is not a defense to any of Qorvo's claims. Moreover, Akoustis's claim is factually unconnected to Qorvo's claims and would therefore burden the jury with considering additional evidence. Further, Akoustis's effort to assert the same cause of action (unfair competition) against Qorvo based on different sets of facts entails a high risk of jury confusion. *See 3G Licensing, v. HTC Corp.*, No. 17-cv-0083, 2023 WL 34553, at *4 (D. Del. Jan. 4, 2023) ("the risk of jury confusion is substantial if totally unrelated claims

were presented in the same trial against HTC at the same time."). Delaware courts routinely bifurcate in these circumstances. *See, e.g.*, *Eurand Inc. v. Mylan Pharms. Inc.*, C.A. 08-889, 2009 WL 3172197 (D. Del. Oct. 1, 2009) (finding bifurcation "supported by the promotion of judicial economy and avoiding the injection of complex, unrelated and perhaps unnecessary issues into the patent infringement case"); DeFosse Decl., Ex. S at 6 ("The presumption is separate trials.").

In addition, bifurcation alleviates the prejudice that Qorvo would suffer from adding Akoustis's claims at this late stage. In order to properly investigate and defend Akoustis's new claim, Qorvo would need to take substantial new discovery. Rather than delaying adjudication of Qorvo's claims to accommodate discovery on Akoustis's late-filed claim, the proper course would be to bifurcate Akoustis's claim to proceed on its own schedule. *See Intellectual Ventures I LLC v. Toshiba Corp.*, No. 13-cv-0453, 2016 WL 4690384, at *2 (D. Del. Sept. 7, 2016) (bifurcating "to allow for additional discovery and a separate motion practice and trial"); DeFosse Decl., Ex. T at 1 ("Defendant is too late in adding these new counterclaims to include them in the trial of this case.").

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

August 8, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 8, 2023, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                    *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

David A. Jakopin, Esquire                        *VIA ELECTRONIC MAIL*
Dianne L. Sweeney, Esquire
Ryan Selness, Esquire
PILLSBURY WINTHROP SHAW PITTMAN LLP
2550 Hanover Street
Palo Alto, CA 94304-1115
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Robert M. Fuhrer, Esquire                        *VIA ELECTRONIC MAIL*
Robert C.F. Pérez, Esquire
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

David L. Stanton, Esquire                        *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Theresa A. Roozen, Esquire                          *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC  20036-3006
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Shani Rivaux, Esquire                               *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL  33131
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*

_____

Jeremy A. Tigan (#5239)