Public Version

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 21-1417-JPM |
| ) | |
| AKOUSTIS TECHNOLOGIES, INC. and ) | [ Public Version ] |
| AKOUSTIS, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS ANSWER TO ADD COUNTERCLAIM BASED ON NEWLY PRODUCED DOCUMENTS BY QORVO**

August 15, 2023

OF COUNSEL:

PILLSBURY WINTHROP SHAW PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Theresa A. Roozen
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*

(786) 913-4900
shani.rivaux@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*

**Public Version**

**Table of Contents**

Page

I. Overview ........................................................................................................................... 1

II. Argument ........................................................................................................................... 2

    A. Akoustis Demonstrated Good Cause to Amend its Answer. ........................................ 2

    B. Qorvo Failed to Demonstrate Futility. ........................................................................... 3

        (1) Qorvo Ignored Numerous Allegations in the Counterclaim. ................................ 4

        (2) Qorvo Relies on the Wrong Legal Standard. ........................................................ 4

        (3) Akoustis' Unfair Competition Claim includes Qorvo's "Fudd" Campaign............. 6

        (4) Akoustis was Harmed By Qorvo's Unfair Competition. ....................................... 7

    C. Qorvo Failed to Show the Counterclaim is Made for any Improper Purpose. ................ 7

        (1) Any Delay is Caused by Qorvo's Own Actions. ................................................... 8

        (2) Qorvo's Allegations of "Bad Faith" Are Meritless. ............................................... 8

    D. Qorvo Has Failed to Demonstrate Any Prejudice and Seeks to Apply a Different Standard to Akoustis Than it Applies to its Own Conduct. ............................................ 9

    E. There is No Basis to Bifurcate the Claims here. .......................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Bowles v. Reade*
  198 F.3d 752 (9th Cir. 1999) ..................................................................................................7

*CNC/Access, Inc. v. Scruggs*
  No. 04-CVS-1490, 2006 WL 3350854 (N.C. Super. Ct. Nov. 17, 2006)..................................4

*Cornell Univ. v. Illumina, Inc.*
  2016 WL 3046258 (D. Del. May 27, 2016)............................................................................2

*First Atl. Mgmt. Corp. v. Dunlea Realty Co.*
  131 N.C. App. 242 (1998) ...........................................................................................4, 6, 7

*Foman v. Davis*
  371 U.S. 178 (1962)................................................................................................................7

*Griggs v. Pace Am. Grp., Inc.*
  170 F.3d 877 (9th Cir. 1999) ..................................................................................................7

*Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*
  293 F.3d 912 (5th Cir. 2002) ..................................................................................................8

*L'ORÉAL S.A. v. MSD Consumer Care, Inc.*
  No. CV 12-99-GMS, 2014 WL 12929551 (D. Del. Sept. 18, 2014) ....................................4, 9

*Lehman Bros. Commercial Corp. v. Minmetals Int'l NonFerrous Metals Trading Co.*
  No. 94 CIV. 8301 (JFK), 1996 WL 346426 (S.D.N.Y. June 25, 1996) ..................................8

*Roquette Freres v. SPI Pharma, Inc.*
  No. C.A. 06-540GMS, 2009 WL 1444835 (D. Del. May 21, 2009) ..............................4, 8, 9

*SunPower Corp. v. PaneClaw, Inc.*
  No. CV 12-1633-MPT, 2016 WL 5107029 (D. Del. Sept. 19, 2016).......................................3

*Velocity Sols., Inc. v. BSG Fin.*
  LLC, No. 15-CVS-1059, 2016 WL 698506 (N.C. Super. Ct. Feb. 22, 2016) ..........................4

Statutes and Codes

North Carolina General Statutes
    Section 75–1.1....................................................................................................................6

Rules and Regulations

Federal Rules of Civil Procedure
    Rule 12(b)(6)......................................................................................................................3
    Rule 15(a)..........................................................................................................................9

**I.      Overview**

Qorvo's Answering Brief does not, and cannot, provide this Court with any reason to deny Akoustis' motion for leave.  Akoustis' proposed claim is grounded on Qorvo's CEO-approved "fudd" campaign – fear, uncertainty, doubt, and disinformation – and repeated efforts to obtain the "inside scoop" on Akoustis from its former employees.  To distract from the supporting evidence, Qorvo resorts to unsupported futility arguments and name-calling.  But those arguments fail because they ignore large swaths of the counterclaim and improperly rely on the wrong legal standard in an attempt to dispute the accuracy of the allegations (which is contradicted by the documents themselves).

Qorvo does not dispute that it produced 95% of its documents for this litigation in April-June 2023, or that the counterclaim is based on those documents.  Qorvo also does not deny producing 70,000 documents (more than 780,000 pages) after the April 3, 2023 hearing when it sought a truncated schedule by representing to the Court that its remaining production volume would be minimal.  In hindsight, it appears the schedule was intended to prevent Akoustis from defending itself against Qorvo's new and voluminous trade secret claims while shielding Qorvo from liability from the evidence of Qorvo's unfair competition that was buried in these productions.  Akoustis nonetheless worked diligently to review the productions which led to this claim in a very short period of time.  Akoustis' diligence demonstrates its good cause to bring this counterclaim.

Qorvo cannot hide from its own words and actions.  The proposed counterclaim depends entirely on newly produced Qorvo documents and (primarily internal) communications, showing Qorvo's frequent concern about falling behind the growing Akoustis "threat" and efforts to improperly "exclude" Akoustis from the market.  Their internal documents also demonstrate their sheer glee when they are able to "steal" business from Akoustis.  These internal communications support a claim against Qorvo for unfair competition by revealing the inner workings of Qorvo's

1

efforts to unfairly and deceptively take business away from Akoustis. Akoustis has established the requisite good cause to add its counterclaim given that Qorvo first produced documents in April-June 2023 that show Qorvo specifically sought to harm Akoustis in the marketplace. Qorvo cannot now be allowed to hide from the consequence of its own actions.

## II.     Argument

### A.     Akoustis Demonstrated Good Cause to Amend its Answer.

The requirements for "good cause" to amend an answer are met when the proposed amendment is based on new facts obtained during discovery after the amendment deadline *or* when the deadline could not have been reasonably met despite its diligence. *See Cornell Univ. v. Illumina, Inc.*, 2016 WL 3046258, at *5 (D. Del. May 27, 2016) (finding good cause met where new allegations were based on "a new set of facts obtained and confirmed during discovery which took place after the Scheduling Order's deadline for amending pleadings"). Although only one ground is required to establish good cause, Akoustis meets both.

As detailed in the Motion, the documents that support the counterclaim were only recently produced and it is undisputed that such productions were not made until long after the deadline to amend pleadings. That is because Qorvo did not produce 95% of its documents in this case until the second quarter of 2023. To distract from the fact it was impossible for Akoustis to bring its counterclaim before the deadline, Qorvo argues without support that it was only producing documents responsive to February 2023 requests. (Answering Brief at 3:12.) That is false.[1] Qorvo's recent productions – which are essentially its entire production – included documents

---

[1] As can be seen in the documents cited in Akoustis' proposed counterclaim, Qorvo's recent productions included documents responsive to various RFPs from RFP Sets 2 and 3. (Decl. at ¶ 8.) In contrast, Akoustis' fourth set of requests for production, i.e., the set served in February 2023 – related almost exclusively to the alleged confidentiality and economic value of Qorvo's alleged trade secrets, topics that have no bearing on the documents forming the basis of Akoustis' counterclaim. (*See id.* ¶ 5, Ex G.)

2

responsive to Akoustis' RFP Sets 2 and 3, which Akoustis served in May 2022 and December 2022. These are documents that Qorvo refused to collect and produce until *after* Akoustis had produced its own documents so Qorvo knew the scope of the issues in dispute and could respond accordingly. The result of Qorvo's objection was a phasing of discovery in which Akoustis produced its documents first. (Declaration of Dianne L. Sweeney filed concurrently herewith ("Decl.") at ¶ 6.) Following this phased approach, Akoustis substantially completed its productions in January 2023 (and had produced more than 19,000 documents by September 2022 and more than 34,000 by November 2022). (Decl. at ¶ 7.) Due to the phasing, Qorvo had produced only 2,932 documents by January 2023 and subsequently produced more than 70,000 documents in April-June 2023 (translating to 780,000+ pages), more than half of which were produced in June. (*Id.*) The counterclaim arises from these very documents. (D.I. 246 at ¶ 8.) Accordingly, this argument is not credible, and the Court should find that Akoustis was diligent in bringing the Motion.

### B. Qorvo Failed to Demonstrate Futility.

In assessing futility, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)," and "cannot weigh the facts, nor determine whether a party will ultimately prevail. Only where it is clear to the court ... that a claim has *no* possibility of succeeding on the merits, will the court disallow it by denying leave to amend." *SunPower Corp. v. PaneClaw, Inc.*, No. 2016 WL 5107029, at *8 (D. Del. Sept. 19, 2016) (emphasis original); *see also* D.I. 67 at 3 (on a motion to dismiss "the Court must accept the complaint's factual allegations as true") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

Rather than addressing the futility legal standard, Qorvo improperly urges the Court to weigh the facts relating to cherry-picked allegations and ignore numerous allegations that alone support a claim for unfair competition.

### (1) Qorvo Ignored Numerous Allegations in the Counterclaim.

Qorvo asks the Court to ignore both the allegations (1) relating to its misappropriation of confidential information through two former high-ranking Akoustis employees (Shawn Gibb and Ali Bawangaonwala) hired by Qorvo in 2019, when it knew it was behind Akoustis in developing 5 GHz BAW filters (D.I. 246 at Ex. B, ¶¶ 19, 27, 35, 45); and (2) that Qorvo obtained confidential specifications regarding a new Akoustis BAW filter and confidential "intelligence" regarding Akoustis' fabrication plant and infrastructure (warning that the source of the intelligence was "not to be disclosed"). (D.I. 246 at Ex. B, ¶¶ 21, 40.) These factual allegations alone are sufficient to state a plausible claim for relief under North Carolina's unfair competition law. *See, e.g.*, *Velocity Sols., Inc. v. BSG Fin.*, LLC, 2016 WL 698506, at *3 (N.C. Super. Ct. Feb. 22, 2016); *CNC/Access, Inc. v. Scruggs*, 2006 WL 3350854, at *10-11 (N.C. Super. Ct. Nov. 17, 2006); *see also* D.I. 67 at 16. By not even addressing these allegations, Qorvo acknowledges that it has failed to show that Akoustis' counterclaim is futile.

### (2) Qorvo Relies on the Wrong Legal Standard.

Qorvo's efforts to discount the remaining allegations likewise fail to demonstrate futility. *First,* Qorvo relies on the wrong legal standard when it asks the Court to weigh the facts and determine – contrary to Akoustis' allegations – that certain confidential information obtained by Qorvo was not confidential. *See, e.g.*, *L'ORÉAL S.A. v. MSD Consumer Care, Inc.*, 2014 WL 12929551, at *1 n.1 (D. Del. Sept. 18, 2014) ("The plaintiffs' additional contention that the inequitable conduct allegations are meritless is untimely and more appropriate for the summary judgment stage."); *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *5 (D. Del. May 21, 2009) (arguing the merits of factual allegations is not "futility"). *Second,* even if the Court were to consider factual disputes on the merits at this stage – and it cannot – Qorvo's arguments

do not hold up to scrutiny. For example, Qorvo claims that information disclosed by Mr. Bawangaonwala in September 2019 was not confidential because other information related to (but still different than) a portion of what he shared was disclosed in investor presentations. (D.I. 267 at 14-15.) But that argument contradicts the actual document, which shows that Qorvo solicited this confidential information only *after* scouring publicly available sources and failing to find it. (D.I. 268 at Ex. L.) Mr. Bawangaonwala even cautioned that he acquired this information a few months earlier (while at Akoustis). (D.I. 246 at Ex. B, ¶ 41; *see also* D.I. 268 at Ex. L.) Indeed, the alleged public disclosures are different than what Qorvo improperly obtained from Mr. Bawangaonwala ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ .

Qorvo also inaptly disputes the confidentiality of Akoustis' intellectual property portfolio strategy by claiming that Akoustis shared the number and subject matter of its patents. (*See* D.I. 267 at 16-17.) But that is not the allegation. Akoustis faults Qorvo for improperly obtaining information about Akoustis' IP *strategy* – information that is certainly confidential – from Mr. Gibb who touted having spearheaded the strategy. (*See* D.I. 246 at Ex. B, ¶ 43.) Similarly, Qorvo argues that certain disclosures by Mr. Gibb were simply his "competitive analysis." (D.I. 267 at 16.) Again, this is incorrect. While any competing interpretation of Akoustis' factual allegations must be disregarded at this stage, the context of those emails once again contradicts Qorvo's effort to explain away these documents. As Akoustis' former Chief Materials Scientist, Mr. Gibb relied on his extensive knowledge of Akoustis' confidential information (*see* D.I. 246 at Ex. B, ¶ 29) when in the June 2020 email he revealed confidential information about Akoustis' capabilities and strategies, i.e., ████████████████████████████████████████

5

███████████████████████████████████████.." (D.I. 246 at Ex. B, ¶ 44; *see also* D.I. 268 at Ex. E.) Additionally, while Qorvo seeks to lump in another one of Mr. Gibb's emails, from November 2019, as "competitive analysis" (as though such information would be public), it fails to address what Mr. Gibb actually did: Mr. Gibb disclosed confidential information about Akoustis' plans for competing with different technologies, ████████████████████████████████████████████████████████████████████████████████████████████████████████████. (D.I. 246 at Ex. B, ¶ 41; *see also* D.I. 268 at Ex. F.) While none of these factual issues can be considered at this stage, Qorvo's opposition even fails under the wrong legal standard that Qorvo seeks to apply.

**(3)  Akoustis' Unfair Competition Claim includes Qorvo's "Fudd" Campaign.**

Qorvo also bizarrely attempts to discount quotes of its own words as "extraneous attacks" – including Qorvo's CEO's knowledge and approval of Qorvo's "spreading fudd" about Akoustis. (D.I. 246 at Ex. B, ¶¶ 47-48; Answering Brief at 9.) What is extraneous about the CEO of a multi-billion-dollar operation personally sanctioning a campaign of fear, uncertainty, doubt, and disinformation against a start-up like Akoustis? If Qorvo wants to distance itself from the words of its CEO and other employees, it can attempt to do so at trial. Qorvo's documents, however, show that its "fudd" campaign[2] included, among other things, Qorvo's "[p]oopoo-ing Akoustis' technology and telling customers that [Akoustis] will not be able [to] volume produce." (D.I. 246 at Ex. B, ¶ 48.) These allegations alone are sufficient to state a claim for unfair competition and

---

[2]  Qorvo contends that when its CEO, Mr. Bruggeworth, responded "Perfect" to a senior sales employee's statement that he had been "spreading fudd" (i.e., fear, uncertainty, doubt, and disinformation – a meaning that Qorvo does not dispute), he was responding to some other aspect of the sales employee's email. While Qorvo's competing interpretation is disregarded at this stage, the context of the email undermines Qorvo's view and, at minimum, shows that Qorvo's CEO tacitly approved a senior sales employee's "spreading fudd" about Akoustis.

therefore not "clearly futile." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 254 (1998) ("A misrepresentation may constitute an unfair and deceptive trade practice under G.S. § 75–1.1"). Qorvo does not argue that this aspect of Akoustis' claim is futile.

### (4) Akoustis was Harmed By Qorvo's Unfair Competition.

Qorvo argues that Akoustis' claim is futile because it "failed to allege that the disclosure of any of that information proximately caused any injury to Akoustis." (D.I. 267 at 18-19.) This argument fails for at least three reasons. *First*, Akoustis alleged that Qorvo benefitted and continues to benefit from its misappropriation of Akoustis' confidential information, "fudd" campaign about Akoustis, and efforts to exclude Akoustis from certain markets entirely. (*See* D.I. 246 at Ex. B, ¶¶ 46, 62, 65.) *Second*, Qorvo ignores the allegations that it misappropriated more than the select examples of Akoustis BAW Confidential Information that it chose to address. (*Id.* at ¶¶ 21, 40.) *Third*, even if only the specific examples were considered, the disclosure of Akoustis' confidential BAW filter specifications, for example, plausibly benefitted Qorvo to Akoustis' detriment; that disclosure indicated that it was provided to help Qorvo compete with Akoustis, as it concluded "Hopefully Qorvo has a good plan to counter this." (*Id.* at ¶ 21.)

### C. Qorvo Failed to Show the Counterclaim is Made for any Improper Purpose.

"Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment…'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). When weighing these factors to determine whether to grant leave to amend, a district court must draw "all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (*citing DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)). Qorvo relies on the same baseless futility arguments to suggest the counterclaim is made in bad

faith for the improper purpose of delay. Qorvo's attacks are meritless.

### (1) Any Delay is Caused by Qorvo's Own Actions.

"Undue delay by itself . . . is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). It is undisputed that the documents that support the counterclaim were identified amongst Qorvo's late-produced documents between April to June 2023. These counterclaim documents were buried in approximately 780,000 pages of materials. Akoustis' moving papers outlined in detail the timing of Qorvo's productions as well as Akoustis' diligence in reviewing and bringing this Motion. (D.I. 245 at 10-12.) To the extent there is any delay, it is of Qorvo's own making. Qorvo's revisionist history – that these documents were produced in response to requests for production served in February 2023 – belies the facts and is irrelevant. Moreover, this argument distracts from Qorvo's unjustified misrepresentations on April 3, 2023 – when Qorvo led Akoustis and the Court to believe it was close to completing its production and would not, under any circumstances, produce anything close to the 70,000 documents it then produced. Nor does it explain how 50% of Qorvo's entire document production in this case did not occur until June 2023.[3] Any blame for delay lays squarely at Qorvo's feet.

### (2) Qorvo's Allegations of "Bad Faith" Are Meritless.

The term "bad faith" means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives. *Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002). Courts routinely decline to find bad faith or dilatory motive when an amendment is based on the discovery of new

---

[3] Qorvo references the May 10, 2023 hearing to shield itself from its own misrepresentations. But nothing about this hearing absolves Qorvo of its misrepresentations on April 3 and Qorvo also leaves out that as of May 10, Qorvo had produced 35,668 documents, with more than 37,000 new documents to come a month later on June 9, 2023 – more than doubling its total production.

facts. *See, e.g., Lehman Bros. Commercial Corp. v. Minmetals Int'l NonFerrous Metals Trading Co.*, 1996 WL 346426, at *2 (S.D.N.Y. June 25, 1996). Similarly, courts have not found "bad faith" when there is a dispute over the merits. *See Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *5 (D. Del. May 21, 2009) ("Roquette disagrees with the merits of the inequitable conduct allegations, but that is not enough to show bad faith"). But Qorvo's bad-faith arguments depend entirely on its dispute over the merits of Akoustis' proposed counterclaim and a footnote reiterating Akoustis' prior position that issues *other than* the counterclaim necessitate an extension of the discovery schedule (e.g., Qorvo's production of 70,000+ documents after representing that its entire production would not even reach 50,000 documents). Akoustis' claim is meritorious and made in good faith based on recently produced evidence; Qorvo's bad-faith arguments are baseless.

### D. Qorvo Has Failed to Demonstrate Any Prejudice and Seeks to Apply a Different Standard to Akoustis Than it Applies to its Own Conduct.

A party seeking to avoid a motion for leave to amend must demonstrate "substantial prejudice." *See* Fed. R. Civ. P. 15(a). Third Circuit courts repeatedly find no prejudice when, like here, the amendment is made *before* the close of discovery. (D.I. 245 at 13); *see also L'ORÉAL S.A. v. MSD Consumer Care, Inc.*, 2014 WL 12929551, at *1 (D. Del. Sept. 18, 2014) (granting leave to amend to state a counterclaim relating to a motion filed ***six days after the close of discovery***). Moreover, the only prejudice identified by Qorvo is the cost of litigating Akoustis' counterclaim, but that cost is inherent in all litigation and cannot show prejudice. *See Roquette Freres v. SPI Pharma, Inc.,* 2009 WL 1444835, at *5 (D. Del. May 21, 2009) (Roquette's alleged prejudice is that it would have to address a new issue and rework its case, thereby incurring additional costs. Such concerns are not sufficient to show prejudice.) Here, the documents were recently produced, discovery remains open, and trial is not until May 2024. Accordingly, Qorvo faces no prejudice, let alone substantial prejudice. (D.I. 245 at 12-15.)

It is also noteworthy that Qorvo applies drastically different standards to its own amended pleadings. In February 2023, Qorvo amended its complaint to add 300 new claims. This was long after the deadline to amend and Akoustis stipulated to the amendment. Here, Qorvo refused to stipulate to the amendment even though Qorvo caused that timing with its recent productions. Similarly, on July 25, 2023, Qorvo sought to unilaterally amend its trade secret identification, which was due on May 1, 2023 further to this Court's order.[4] Qorvo's justification was its purportedly "diligent" review of fewer than 5,000 documents produced in April-June 2023. Decl. at ¶ 9. Yet Qorvo claims that Akoustis was not "diligent" when it was left to review more than 70,000 documents (800,000 pages) during roughly the same period.

### E.  There is No Basis to Bifurcate the Claims here.

Qorvo cannot demonstrate any need or basis for bifurcation and offers little more than the standard on bifurcation. Akoustis' counterclaim is straightforward and will rely on many of the same witnesses and documents already at issue in Qorvo's case and Akoustis' defenses, including Mr. Gibb and Mr. Bawangaonwala. Qorvo's bifurcation proposal would unnecessarily require twice the work – two openings, two closings, educating two juries on many of the identical facts at issue and even require the recall of many of the same fact and expert witnesses. With the presentation of similar witnesses and overlapping facts, there can hardly be any claim of juror confusion. Rather, bifurcation would only unnecessarily burden the parties and the Court, increasing time and expense. As a result, bifurcation is not justified.

---

[4] This is the subject of a separate dispute because Qorvo did not obtain leave to amend and copies of all of the documents that Qorvo relies on were produced before the Court-ordered May 1, 2023 deadline, and nearly all of them were produced in November 2022. Decl. at ¶ 9.

Dated: August 15, 2023

| | |
|---|---|
| OF COUNSEL: | BAYARD, P.A. |
| PILLSBURY WINTHROP SHAW PITTMAN LLP | */s/ Ronald P. Golden III* <br> Stephen B. Brauerman (#4952) <br> Ronald P. Golden III (#6254) |
| David A. Jakopin <br> Dianne L. Sweeney <br> 2550 Hanover Street <br> Palo Alto, CA 94304-1115 <br> (650) 233-4500 <br> david.jakopin@pillsburylaw.com <br> dianne@pillsburylaw.com | 600 N. King Street, Suite 400 <br> Wilmington, Delaware 19801 <br> (302) 655-5000 <br> sbrauerman@bayardlaw.com <br> rgolden@bayardlaw.com <br><br> *Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.* |

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Theresa A. Roozen
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
shani.rivaux@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*