1

1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF DELAWARE

3    _____

4    QORVO, INC.,

5                Plaintiff,

6    vs.                              NO. 1:21-cv-01417

7    AKOUSTIS TECHNOLOGIES, INC.,

8                Defendant.

9    _____

10

11

12                  DISCOVERY CONFERENCE

13

14

15      BEFORE THE HONORABLE JON P. McCALLA, JUDGE

16

17                      TUESDAY

18              22ND OF AUGUST, 2023

19

20

21

22           LISA J. MAYO, RDR, CRR
                OFFICIAL REPORTER
23       FOURTH FLOOR FEDERAL BUILDING
           MEMPHIS, TENNESSEE 38103

24

25

**UNREDACTED TRANSCRIPT**

```
 1              A P P E A R A N C E S

 2

 3

 4

 5        Appearing on behalf of the Plaintiff:

 6            Robert M. Masters
              Jonathan R. DeFosse
 7            2099 Pennsylvania Avenue, N.W.
              Washington, DC 20006-6801
 8            Phone: (202) 747-1935

 9

10
          Appearing on behalf of the Defendant:
11
              Diane L. Sweeney
12            David Jakopin
              Pillsbury Winthrop Shaw Pittman LLP
13            2550 Hanover Street
              Palo Alto, CA 94304-1115
14            Phone: (650) 233-4790

15

16

17

18

19

20

21

22

23

24

25
```

**UNREDACTED TRANSCRIPT**

1                          Tuesday

2                      August 22, 2023

3

4                  ----------------------

5

6          **THE COURT:**  All right.  This is the resumption of

7   the hearing that started on August the 18th, and we have

8   resolved some issues in the case.  We have a couple of

9   things -- we have several things to go over and discuss.

10             And one is the re-designation of the Second

11   Amended Complaint from Attorneys' Eyes Only to confidential

12   or at least some form of that.  The Court certainly wants to

13   do something along that line.  We may need to have some

14   discussion about whether there might be some minor

15   redactions.  I'm not sure there, so you need to think about

16   that.

17             The motion to add the counter -- to add a

18   counterclaim, that is, to amend the complaint.  I think we --

19   answer, we've already discussed that a little bit.  I do want

20   to hear some more discussion on that.  Typically, though, the

21   time has run, so we really have to have a good showing.  We

22   talked about that already.  I know you want to tell me a

23   little bit more about that.

24             Motion to strike late filed trade secrets, there

25   is a preference, obviously, to allow the party to file them

**UNREDACTED TRANSCRIPT**

```
 1    even if they're late filed probably, but we have already
 2    talked about the fact that there will be a reduction in the
 3    number of trade secrets that are asserted.  And you may want
 4    to propose a schedule in that regard because we -- I'm not
 5    trying to tell the plaintiff exactly how they should handle
 6    that, but that is something we all understand is going to
 7    have to occur.
 8              And then there is the question, perhaps, of
 9    deposing the CEO of Qorvo, and that is an issue we can talk
10    about if you want to.  That's not necessarily critical, but
11    it might be helpful.
12              And then the scheduling issue and, of course,
13    everybody understands, and I'm not saying we're not going to
14    do some adjustments there; I'm not saying we are, but
15    everybody understands that we have a trial setting of May 6th
16    of 2024, and we do try to adhere to those, and everybody
17    knows that.  So that's not new but, of course, there's a
18    discussion about it, so we're not -- we're not there yet.
19    But those -- that's my summary of four things -- or five
20    things that we may want to discuss.
21              We're also going to try to move through this very
22    efficiently.  We obviously have things that we all need to
23    do, and the Court does.  And so I actually noted that there
24    are a number of topics, but that we wanted to finish
25    certainly in 45 minutes, if we could, because we understand
```

**UNREDACTED TRANSCRIPT**

1  the issues pretty well, but we certainly don't have

2  everything because of not everything has been filed in

3  complete format.

4          So that's where we are.  Sometimes, in this case,

5  I know that we have sometimes started with Mr. DeFosse simply

6  because he's there, and he's on plaintiff's side even though

7  sometimes it's not really his issue, but we were trying to

8  make it very, very simple.

9          And, obviously, Ms. Sweeney, if you want to start

10 every time, that's okay with me.  Seems she's got a smile

11 there.  Oh, she did.

12         **MS. SWEENEY:**  Yes, Your Honor.  If I could

13 propose actually that we start with Mr. Jakopin and the

14 motion for leave to add the counterclaim, I think that would

15 make sense, and then we can handle the balance of the issues.

16         **THE COURT:**  No, that's perfectly fine, and so

17 that's who we'll start with.  I know that we're going fairly

18 quickly through this.

19         Yes, sir, we are ready for the first presenter.

20         Yes, sir, Mr. Jakopin?

21         **MR. JAKOPIN:**  If it please the Court.  Thank you,

22 Your Honor.

23         **THE COURT:**  Okay.  We're going to get you to get

24 either a little closer to your mike.  Turn your mike up.  I

25 can hear you fine, but I've got to the watch Ms. Mayo.

**UNREDACTED TRANSCRIPT**

1          **MR. JAKOPIN:**  Is that better?

2          **THE COURT:**  Yes.  And when I see a grimace there,

3     that means you need to speak up.

4          **MR. JAKOPIN:**  Okay.  Very good.  How is that?

5          **THE COURT:**  That is perfect.  Perfect.

6          **MR. JAKOPIN:**  Very good.

7          Well, Your Honor, we've submitted our motion for

8     leave, which we believe is soundly based on the facts and the

9     law.  As to the facts, at the April 3rd hearing, Mr. Masters

10    told this Court that document discovery is nearly complete.

11         He said the idea that Qorvo was the plaintiff is

12    going to be producing 50, 60, 70,000 documents is just not

13    accurate.  That is just not the case here and, in fact, that

14    was then what happened.  They produced 95 percent of their

15    production in June of 2023.

16         **THE COURT:**  Right.  I've got that part.

17         **MR. JAKOPIN:**  Great.

18         **THE COURT:**  And they shouldn't have done it that

19    way, and I'm not happy about that, but I am worried about my

20    schedule.

21         **MR. JAKOPIN:**  Understood.

22         **THE COURT:**  And the progress of the case.

23         **MR. JAKOPIN:**  And our motion for leave --

24         **THE COURT:**  Right.

25         **MR. JAKOPIN:**  Our motion for leave as -- is

**UNREDACTED TRANSCRIPT**

1    separate from the schedule.  We believe that given the status

2    of the case, where there have not been any fact -- no

3    depositions of any of the parties that have been taken yet,

4    where we're still in fact discovery, where these issues are

5    actually intertwined with issues in the main case, that for

6    those reasons, it should be entered here.

7            It's very clear that if the discovery is open,

8    and on top of that, there isn't going to be prejudice, and

9    prejudice cannot be that -- well, there has to be discovery.

10   And, in fact, just last Friday, Qorvo was asking for ten more

11   depositions.  And so as a result, our view is that we should

12   be able to put into the case this counterclaim.

13           The cases that Qorvo cites in its briefs are

14   essentially cases where a plaintiff caused -- was saying

15   prejudice, where it was the plaintiff that then ended up

16   wanting to add more pleadings.  That is not the case here.

17   We've ended up putting this pleading in very quickly, in July

18   of this year, only after getting documents from Qorvo, and we

19   could not have done that earlier.

20           And so as a result, the other thing is that

21   because of -- as you noted, you weren't pleased with Qorvo

22   having done that.  Well, this schedule was set based upon

23   that representation of Qorvo.  If we're sort of stuck with

24   that, well, that's a different issue, but we should still be

25   able to enter the counterclaim and on the merits then have a

**UNREDACTED TRANSCRIPT**

1   go.

2          I'll lastly say that Qorvo argues futility.  If,

3   in fact, that's the case, they can file a motion to dismiss,

4   but that we should be able to enter the counterclaim and that

5   should be able to proceed.

6          **THE COURT:**  Sure.  And I understand that.  Let me

7   ask, I think an obvious question, which is:  You could still

8   assert the claims independent -- in an independent

9   proceeding.  I'm not saying you need to.  I'm just --

10  procedurally, that could happen, right?

11         **MR. JAKOPIN:**  That would be, in our view, very

12  wasteful because there's a lot of different people who were

13  the same as the people that are in the main case here.

14         **THE COURT:**  Sure.  And that would be -- that

15  might be more efficient and I -- absolutely.

16         Well, let's go to counsel opposite and, you know,

17  things are never perfect.  It's a pretty good argument there.

18  What about it?

19         **MR. DeFOSSE:**  Thank you, Your Honor.  So I'll --

20  this is Mr. DeFosse.  I'll address this one.

21         I'll start with the statements about our

22  production and the timing.  I know Your Honor said you're not

23  happy with that.  I would like to hopefully correct the

24  record a little bit on this.

25         We did not produce 95 percent of our documents in

**UNREDACTED TRANSCRIPT**

1    June.  We produced about one-third of the most recent

2    documents in June.  We -- and at the point when we had our

3    first status conference after the filing of the trade secret

4    claims, that was at the beginning of April.  That was less

5    than two months after those claims had been filed.  That was

6    less than two months after we had received document requests

7    and those claims.

8              I think the Court made at that hearing pretty

9    clear that it wanted Qorvo to speed up its production of

10   materials, and we did just that.  I mean, we really moved

11   mountains to get materials out.  We produced more than half

12   of our materials in April and early May.  And if Your Honor

13   remembers, what happened was when we came in early April, we

14   said, we think we can get this done.  We don't think it's --

15   we think we're nearly at the end of document production here.

16   Akoustis said that was not the case, that they had a lot of

17   requests outstanding.  And we got the Court's message that we

18   needed to move forward, and rather than raising a lot of

19   discovery disputes, we decided to basically capitulate in a

20   very number of broad requests and just to get this case

21   moving, and so we produced materials.

22             And then we came back to the court in May, on

23   May 10th, and that's when the schedule in this case was set.

24   And we admitted to the Court, in advance of that hearing,

25   there was a lot of documents produced.  We do need to change

**UNREDACTED TRANSCRIPT**

1   the discovery schedule here.  We said it was more than a half

2   million pages already at that point, and we said that we

3   believe that we would be substantially complete with our ESI

4   production in July.

5          The Court took that into account, and pushed the

6   schedule back.  Originally, we were talking about closing

7   fact discovery in July.  We pushed it back to October 16th,

8   and we actually substantially completed our ESI production

9   more than a month before we told the Court that we thought it

10  would be done.

11         So it was not 95 percent in June.  It was much

12  less than that.  And all of this information was before the

13  Court when we set the schedule before.  So I think that's the

14  first point.  Just I know Your Honor was not happy about

15  that, and I felt like I needed to address that.

16         The prejudice here really comes from the

17  schedule.  What's, I think, unspoken and what Mr. Jakopin

18  said is there's no way that we can add this counterclaim to

19  this case and proceed on the schedule we're in.  Mr. Jakopin

20  said a lot of the witnesses are overlapping.  I frankly don't

21  know that.  I don't -- I would stand here today and say, I

22  don't believe that is the case, but we don't know because we

23  haven't taken any discovery on these claims.

24         Akoustis has been able to get very, very broad

25  discovery from our files, which they essentially used as a

**UNREDACTED TRANSCRIPT**

1   fishing expedition to try to find some claim to assert

2   against us, but we haven't taken any discovery on these

3   claims.  We don't know what witnesses are going to be

4   relevant.  It's certainly not going to be within the 90 hours

5   that we discussed last week for depositions.  We haven't

6   served a single written discovery request on these, a single

7   interrogatory.  We haven't asked for any documents.

8           And so this is really a vehicle to extend the

9   schedule in this case, which does work prejudice on Qorvo

10  because our claims have been filed for nearly two years now.

11  The Second Amended Complaint was in February.  This is a

12  competitor case where we have a competitor out in the market

13  who is accused of engaging in the misconduct in this case.

14  And so it's really essential to us to get to trial.  There's

15  no reason this claim needs to be kind of added at the end of

16  this case.  It's going to extend the discovery schedule.

17          And then also there's a serious juror confusion

18  issue that goes along here because I think one of the

19  reasons, one of the attractive things for Akoustis here is,

20  well, let's throw this in, and then we can argue to the jury,

21  well, it's essentially equivalent conduct.  And that's

22  exactly the kind of thing that leads to juror confusion when

23  you have the same cause of action with different facts, and

24  the jury's got to try to sort all these things out.

25          So I think there is a very strong case for

**UNREDACTED TRANSCRIPT**

1   prejudice here, and as Your Honor said, there's denying the

2   motion here to add the counterclaim is not denying their

3   ability to bring it.  It's just saying you can't boot strap

4   it on to this case.

5          **THE COURT:**  Well, okay.

6          And let's go back to counsel opposite on this.

7   We're going to issue something short on this.  We hadn't

8   decided.  Let's hear a final statement from counsel on this

9   issue.

10         **MR. JAKOPIN:**  Well, Your Honor, the last point

11  that he raised of juror confusion, these are technical facts

12  for -- going both ways, but the issue is truly out of the

13  same course of conduct.  The reality is that there was an

14  Akoustis product that came out before a Qorvo product.  It's

15  intertwined with the facts of the allegations of whether we

16  could have actually even taken the trade secrets of Qorvo

17  having had a device first.  So a jury is going to be able to

18  understand that clearly, on this isn't juror confusion.

19         As to the schedule, we've also been operating

20  under the assumption that the schedule is going to be

21  remaining tight.  And so to the extent that these are our

22  claims, we're going to be in a position to take what

23  depositions are needed by whatever The Honor states is going

24  to be the close of discovery in this case.

25         **THE COURT:**  All right.  I think we've got that

**UNREDACTED TRANSCRIPT**

1   down.  That's very helpful, and we're going to go to the next

2   issue.

3            And, Mr. DeFosse, I think I said you were going

4   to lead even though it was maybe a little awkward just to

5   keep it kind of easy to follow format.

6            **MR. DeFOSSE:**  I will be the traffic cop, Your

7   Honor.

8            **THE COURT:**  Thank you.

9            **MR. DeFOSSE:**  So the next issue, I think, was we

10  can start with the first issue Your Honor raised, which is

11  the AEO designation.

12           **THE COURT:**  Correct.

13           **MR. DeFOSSE:**  Yeah.  And that's also an issue

14  I'll be addressing, Your Honor.

15           So I think, as we said, and I don't want to

16  repeat us -- repeat a lot from last conference.  The issue

17  here is whether we're going to change the designation on a

18  subset of documents, which reflect Qorvo's trade secrets to a

19  level at which internal folks at Akoustis can review these

20  documents.  So we're not talking about public available.

21  We're talking about changing things from AEO to confidential.

22           Our position is that we've already made

23  substantial concessions to allow Akoustis to see these

24  materials well beyond what you would see in a normal case.

25  Three members of management, three members of the board.  The

**UNREDACTED TRANSCRIPT**

1   management includes their general counsel, their outside

2   counsel, their outside corporate counsel, their outside

3   experts, so there's a lot of folks who have this.  And as I

4   understand what Ms. Sweeney had said last week, what they

5   really want is someone who knows the technical issues and the

6   business issues at their client who can kind of dig into

7   these trade secrets and say, how is it that Akoustis may or

8   may not have been using these things, for example.

9            And that's exactly our point.  That is precisely

10  what you should not be allowed to do.  And we've cited a

11  number of cases for this point that sharing a competitor's

12  trade secret with the internal decision-makers who know the

13  technical and business features is not proper.  And that's

14  why in a case like this, you have outside experts who can

15  advise on the technical issues.  You have the people who

16  receive the trade secret information who can still review

17  those things and talk about them.  And counsel's perfectly

18  free to ask anyone at Akoustis, generally:  How does Akoustis

19  do this?  Do you do it this way?  Do you do it that way?

20           And there's just no reason why they need to take

21  a Qorvo trade secret document that that person has not seen

22  and put it in front of them because at that point, the person

23  can't unlearn it.  And that's what the cases say is, you

24  know, a real problem, and we have a problem with that.

25           **THE COURT:**  I understand that.

**UNREDACTED TRANSCRIPT**

1          Let's hear counsel opposite on that.  I think,

2     Ms. Sweeney, you may be taking this.  Is that -- that's

3     correct?

4          **MS. SWEENEY:**  Yes, Your Honor.  I'm happy to.

5          I think it's important that we understand what

6     set of documents we're talking about.  We're talking about

7     materials that were in Akoustis' files, and many cases have

8     been there for many, many years.  These are -- I think these

9     documents at least date back several years.  These are

10    documents that Akoustis produced.  We're not asking for

11    access to a single Qorvo AEO document.  And, in fact, we're

12    happy to have these documents remain at an AEO level.  We

13    simply want an exception to allow one of our managers to look

14    at this.

15         So Mr. DeFosse said, well, we have offered three

16    managers at Akoustis to look at this, but as we have spoken

17    to the Court about in the past, Akoustis is a very small

18    company.  The managers that we've proposed, all of them as

19    outlined in our reply brief, have been rejected Qorvo.  So we

20    don't have a single person who has management much less

21    communications with the board and can help the board

22    understand these claims and isn't any of the people working

23    with us on a day-to-day basis.

24         And when we originally talked with the Court

25    about this, I explained that Mr. Shealy, our CEO, Mr.

**UNREDACTED TRANSCRIPT**

1  Aichele, who is our chief business development person, were

2  the two people that we dealt with on a day-to-day basis.  And

3  the Court, at that point, noted that it seemed that we should

4  have at least one of those folks.

5          And so after the hearing in May, we retooled what

6  our original request was.  We, in our reply brief, outlined

7  some options, and one was simply let us have Mr. Aichele

8  under the terms of the protective order to help us understand

9  the documents.  And a critical factual issue that experts and

10  lawyers can address is usage, to understand what is this

11  document.  Is this something that Akoustis used?  Did we do

12  this?

13          A lot of the documents that we've looked at are

14  things that Akoustis don't appear to us to be in the business

15  that Akoustis has.  And so we need that factual input, and it

16  would all be done under the protective order.  And these are

17  only the documents that Akoustis already had in its

18  possession, and we voluntarily produced in this case.

19          So we think that we laid out in the reply brief

20  we really need access.  We've skinnied it down.  We've worked

21  really hard.  We made various proposals.  All were rejected

22  by Qorvo.

23          Qorvo also offered three different board members.

24  We were only able to come up with two that were acceptable,

25  so we have those two board members, but those board members

**UNREDACTED TRANSCRIPT**

1  don't help us on a day-to-day front.  So there isn't any

2  broad group of people at Akoustis who would see these

3  materials.  We proposed just Mr. Aichele.

4          **THE COURT:**  Sure.  I understand that.

5          Let's go back to counsel opposite on this.  It is

6  difficult to move a case along without a very senior

7  executive being able to look at materials, and I think you

8  agree that these are materials that they had -- they produced

9  to you; is that correct?

10         **MR. DeFOSSE:**  That is correct, Your Honor.  These

11 are Qorvo trade secret documents.

12         **THE COURT:**  Exactly.  I understand that, but if

13 they already have them, I understand that that's still not

14 good, and there can be some problems.  It seems like this may

15 be necessary to have proper executive supervision on a case.

16         **MR. DeFOSSE:**  Sure.  Just a few quick points,

17 Your Honor.

18         First, the general counsel is a member of

19 management, who presumably does have access to the board and

20 who is allowed to see these materials.  That's the person we

21 normally expect to see.

22         **THE COURT:**  And general counsel is important.  I

23 don't disagree with that.  In fact, that's often the person

24 that you can most rely on.  I'm not saying it's true here

25 because I don't know, but often the person that's most

**UNREDACTED TRANSCRIPT**

1   reliable.

2          **MR. DeFOSSE:**  Second point, Your Honor, is

3   they're able to see the documents they've already received.

4   And the real point here is that we don't want to have the

5   litigation be an excuse to have people learn things that they

6   weren't previously exposed to, or learn trade secrets they

7   weren't previously exposed to.

8          So Mr. Aichele, for example, he has, I think,

9   been implicated in at least two or three dozen of these trade

10  secret documents.  He could view those two or three dozen,

11  and they can ask him questions about those:  Did you use

12  this?  Is Akoustis -- those, he can.

13         And then for any other witness who has received

14  those materials, they can ask them:  Were you using this,

15  right?  So they have access to ask those questions, and then

16  they could also ask Mr. Aichele questions generally:  Like,

17  well, I can't show you a Qorvo trade secret document, but

18  tell me how does Akoustis do this?  And they can get the

19  information that way.

20         And I would submit, Your Honor, that is a hundred

21  percent the normal course.  And what they are asking the

22  Court to do here is 180 degrees the opposite of what you're

23  normally allowed to do.  It's allowing a person like

24  Mr. Aichele, who is a key competitive decision-maker.  He's

25  the person who is out there deciding what products they're

**UNREDACTED TRANSCRIPT**

1   going to launch, how they're going to compete with Qorvo on a

2   daily basis.  To allow a person like that to see Qorvo trade

3   secrets is, I think, frankly, unheard of.  None of the cases

4   they've cited allow that.

5        **THE COURT:**  I understand the problem there.

6        I'm going to go back to Ms. Sweeney.  I do think

7   it's important that we really -- the preference is to go as

8   far as we can in terms of allowing the senior executive to

9   look at it.  But, Ms. Sweeney, not sure here.

10       **MS. SWEENEY:**  Your Honor, a couple points.  One

11  is the general counsel.  We previously discussed this at an

12  earlier hearing.  This is incredibly technical detailed

13  stuff.  This -- from the beginning of the case, we have

14  worked with Mr. Aichele and Mr. Shealy to try and understand

15  these issues, and our general counsel is wonderful.  He's a

16  part of our team, certainly, but he's not in a position to

17  help us, which is why we've been seeking relief on this issue

18  since, frankly, this was filed back in February, and we're in

19  the blind.

20       Also the general counsel can't testify.  We need

21  30(b)(6) witnesses who can be prepared, who can understand

22  what's happened, who can talk with the board about the facts

23  of the case in a way that's allowable under the protective

24  order, but with the information of what the company's

25  actually doing.  And Mr. Aichele has that senior executive

**UNREDACTED TRANSCRIPT**

1  insight.

2          And we have various people that have left the

3  company.  We don't have access to sit down and talk to

4  everyone who has generated these documents.  We've got some

5  key people who are now former employees.  So, again, having

6  that senior manager really makes a difference.

7          And we are not looking at anything that Qorvo

8  designated originally in this case as AEO.  These were all

9  materials from our files, and we've outlined in our papers

10 that these are -- these documents are all at least several

11 years old, which in and of themselves raise questions about

12 whether they should be AEO.  But we're fine with them staying

13 AEO, but we need management participation in order to help us

14 move this forward.

15         **THE COURT:**  I think we've covered that, and we've

16 got about 20 minutes left.  We've got a couple more subjects

17 to go through.  Let's talk briefly about the basic motion to

18 strike late filed material.  We could do that, obviously.

19         So, Mr. DeFosse, let's talk about that just a

20 little bit, and we're really -- this is helping us move

21 through the process.  Go ahead, please.

22         **MR. DeFOSSE:**  Thank you, Your Honor.  If it's

23 okay, I'll defer to Mr. Masters on this one.

24         **THE COURT:**  Sure, Mr. Masters, let me find you on

25 the screen.  There he is.  I see him.  Yes, sir.

**UNREDACTED TRANSCRIPT**

1          **MR. MASTERS:**  Good morning, Your Honor.  Thank

2     you.

3          On July 25th, Qorvo supplemented its disclosures

4     consistent with Rule 26 that requires supplementation.  As

5     you may recall, back in May 1, you ordered the initial -- or

6     the disclosures of the trade secrets.  And back then, we've

7     added, I think it was around 204 documents or so.  In July,

8     we supplemented, and we added 29 documents.  This includes

9     information that we obtained July 11th and 12th when we took

10    the deposition of two former Akoustis employees pursuant to a

11    subpoena.

12         And in response to that subpoena, one of those

13    third parties, Mr. Hodge, provided to us a set of documents,

14    and then he testified about how he received those Qorvo

15    documents.  And so the supplementation with respect to some

16    of these trade secrets was recent as July 11th and 12th when

17    those depositions were taken.

18         The other documents -- I said there were 29 --

19    and also around 25 or less were produced a day before we were

20    required to make our May 1 disclosures, so it's not as if we

21    are sitting on all of this information and just trying to add

22    at the time.  There's a rule to require us to supplement our

23    interrogatory responses, which we would include to be the

24    trade secrets and the trade secret disclosures and the

25    documents that goes with that.  And consistent with that

**UNREDACTED TRANSCRIPT**

1    requirement to supplement, we did.

2            This information is also solely within the

3    possession of Akoustis or, apparently, former Akoustis

4    employees.  It was three months before the close of fact

5    discovery, and Akoustis has not taken the deposition of any

6    Qorvo employees such that they can argue there's any

7    prejudice here.

8            Now, having said all of that, Judge, following up

9    on what we discussed Friday and even before, we, as the

10   plaintiff, realize we need to trim our trade secrets for the

11   purposes of trial and make this presentation to the jury, and

12   we will do that.  But at this time, we believe, you know, we

13   had an obligation to supplement, and that's what we did.

14           **THE COURT:**  Okay.  Can you describe, in terms of

15   importance of the newly filed information, why we should

16   proceed in the way in which you're suggesting, that is,

17   essentially adding additional trade secrets?  Again, in terms

18   of importance, I mean, is there something hugely significant

19   that you think is out there?

20           **MR. MASTERS:**  Well, I mean, in some respects,

21   Your Honor, it relates -- there is overlap to what we have

22   previously disclosed in terms of defining the trade secrets.

23   There are more documents to support our prior positions.  It

24   does also cover the design and development of Akoustis

25   products, their strategy, specific models used for BAW

**UNREDACTED TRANSCRIPT**

1   filters and BAW resonators, and other technical issues such

2   as that.  It's also in the sense that --

3          **THE COURT:**  How much is cumulative?  That's sort

4   of the question.

5          **MR. MASTERS:**  I'm sorry, I missed that question.

6          **THE COURT:**  How much is cumulative?

7          **MR. MASTERS:**  I would -- in terms of --

8          **THE COURT:**  Maybe I should let other counsel

9   respond to what you said and let you look at that a little

10  more.  Are you ready on that?

11         **MR. MASTERS:**  Well, I would say that in the sense

12  of there are -- it's cumulative in the sense that it goes to

13  the Akoustis and their use of it for their business product

14  development, testing, manufacturing, things of that sort.

15         But the documents themselves may not be

16  duplicative of what was in the May 1.  They're new documents.

17  Plus the testimony that went with some of them was, I joined

18  Akoustis on day one, and I was given these documents to use.

19         So the testimony adds a little level of

20  importance to these documents.

21         **THE COURT:**  Okay.

22         Okay.  Let's go to counsel opposite.  I know that

23  we're going to stick to our time frame, and that's pretty

24  tight.

25         **MS. SWEENEY:**  I'll be quick, Your Honor.

**UNREDACTED TRANSCRIPT**

24

 1          So what Mr. Masters just explained in terms of

 2    Qorvo's rationale to bring these forward is really exactly

 3    what we heard Mr. Jakopin explain about the need for the

 4    counterclaim, but I want to point out there's two key

 5    differences.

 6          One is the purpose of the trade secret disclosure

 7    is not like a Rule 26 disclosure.  It is brought in order to

 8    set the boundary for discovery so that we understand the

 9    scope of what we're talking to.

10          And the second point is that there were 29

11    documents that were added to the trade secret disclosure.

12    All of those but six were produced by Akoustis in or before

13    January of 2023.  Most of them were 2022.

14          Now, what happened in terms of the documents that

15    were produced that Mr. Masters referred to that were produced

16    by Mr. Hodge, those same documents, those are duplicates of

17    materials that Akoustis already produced either in the

18    November 2022 to the January time frame.

19          So from our perspective, the difference here with

20    vis-a-vie the counterclaim is that Qorvo had vast majority of

21    these materials for six-plus months before it brought its

22    trade secret supplement.

23          And, two, the trade secret supplement isn't like

24    an interrogatory that you just supplement.  It's a disclosure

25    boundary that requires leave of the Court.  And we would be

**UNREDACTED TRANSCRIPT**

1   happy to put in a declaration that would explain the

2   underlying basis of that supplement and when those documents

3   were produced.  But what we're trying to avoid here, of

4   course, is a moving target.  And this narrowing of the field

5   that everyone seems to have agreed to since May is something

6   we really do need to address because months have gone by,

7   that hasn't happened.  I'm not suggesting that has to happen

8   tomorrow, but we need some room in the schedule in order to

9   allow that to happen.

10          Mr. DeFosse last time said the schedule doesn't

11  allow for that, but the schedule also shouldn't be used to

12  prevent reasonable disclosures.  It should ensure that we're

13  not having trial by ambush, and it should allow inquiry on

14  the merits.  So we think all of that is very important for

15  the Court to consider.

16          **THE COURT:**  Do you want to submit a declaration

17  as you indicated?  Because if you do, let's go ahead and get

18  that done very promptly.

19          **MS. SWEENEY:**  Happy to do it.

20          **THE COURT:**  What's the timeline on getting that

21  declaration in?  It should be very prompt.

22          **MS. SWEENEY:**  I think, Your Honor, let's see,

23  it's Tuesday.  I think we could have that to the Court by

24  Thursday.

25          **THE COURT:**  Okay.  By Thursday, we're going to

**UNREDACTED TRANSCRIPT**

1   make a note about that, and that will be in the minutes.  And

2   so we'll get that declaration by the end of the day on

3   Thursday, which to be clear as we always try to be, Thursday

4   the 24th.

5           **MR. MASTERS:**  Your Honor.

6           **THE COURT:**  Yes?

7           **MR. MASTERS:**  In response to the declaration,

8   would Qorvo have an opportunity to respond?  We don't believe

9   this is ambush that there's -- the bounds of discovery have

10  changed.

11          **THE COURT:**  No, I understand.  And if I'm going

12  allow one side, I just think I need to let them submit the

13  declaration, and I need you to submit yours by the following

14  Monday.  That seems like a lot of time, actually, in some

15  respects in terms of what we're trying to deal with.  So that

16  would be by the 28th, and that's the final, final on that.

17  Okay.  All right.  That takes care of that.

18          Let's go briefly -- I know we're kind of trying

19  to get this done promptly.  I know there's some discussion

20  about taking the deposition of Qorvo's CEO.

21          And the answer I suppose, Mr. DeFosse, is -- and

22  I'm not suggesting how we're coming out on this, but why not?

23          **MR. DeFOSSE:**  So this is also deferred to

24  Mr. Masters, if Your Honor is okay with that.

25          **THE COURT:**  Mr. Masters, that's fine.  And I'm

**UNREDACTED TRANSCRIPT**

1  not saying we're going to do it.  I just think you always

2  start with why not.

3          **MR. MASTERS:**  Well, Your Honor, I believe this

4  issue only comes to light if the motion to leave is amended

5  and counterclaim comes into the case; otherwise, I believe

6  this is -- Akoustis would not pursue his deposition.

7          **THE COURT:**  Right.  I think that's correct.

8          And I just want to confirm that with Ms. Sweeney.

9  That's right, isn't it?

10         **MS. SWEENEY:**  That is not correct, Your Honor.

11         **THE COURT:**  That's what I'm trying to make sure

12 is where we agree and don't agree.

13         Ms. Sweeney, why not?

14         **MS. SWEENEY:**  So several things.  I'm sorry, did

15 you ask Mr. Masters if --

16         **THE COURT:**  No, no, I was asking you.  Go ahead

17 because he's saying, well, don't need to do it if we're not

18 going to have that amendment, and you're saying, well, we

19 need to do it anyway.

20         **MS. SWEENEY:**  Yeah, absolutely, because what

21 we've learned in these new rounds of documents from Qorvo is

22 that Qorvo was substantially behind in developing the product

23 that the parties compete on.  Akoustis, as Mr. Jakopin

24 mentioned, came out with its product first.  So part of our

25 defense in this case is going to be, essentially, we can't

**UNREDACTED TRANSCRIPT**

1   misappropriate what they don't have.

2           And Mr. Bruggeworth, their CEO, was involved in

3   these very issues asking where is our product, what is our

4   status, why are we behind, what are we doing about this?  And

5   Mr. Bruggeworth was also involved when executives at the

6   company went out and started a FUDD campaign, which is both

7   part of our counterclaim but also would be relevant to the

8   damages case.

9           The FUDD campaign, fear, uncertainty, doubt, and

10  disinformation about Akoustis.  And Mr. Brugworth, in

11  response to an e-mail, saying, I'm spreading FUDD, wrote back

12  and said, quote/unquote, perfect.

13          He has relevant personal knowledge about the

14  competitive marketplace, about Akoustis's product

15  development, about Qorvo's product development.  Those are

16  all central on the damages side.  So this -- I know there's

17  been some discussion between the parties as to whether or not

18  this is an apex deposition.  It absolutely is not.  This is

19  based on personal knowledge.

20          Qorvo's also seeking to produce and we will

21  produce our CEO, who also has personal knowledge.  And so,

22  you know, we believe this is more than proper for discovery.

23  We've even asked for Mr. Bruggeworth's documents, simply make

24  him a custodian.  And the answer across the board has been

25  no, no documents, he can't be a custodian, we absolutely

**UNREDACTED TRANSCRIPT**

1  won't produce him for a deposition, when he clearly has

2  relevant personal knowledge.

3        **THE COURT:**  All right.  We had a case not too

4  long ago, not so much -- not in this district, in which there

5  was a long effort to obtain the testimony of a senior

6  executive in a very well-known company in Norway.  And

7  they -- it was -- it returned ultimately that that individual

8  likes to give a lot of personal knowledge about the

9  organization of this very competitive and well-known entity,

10 and we did ultimately allow the deposition.  It took a little

11 while to make sure that we should.

12       So let's go back on that.  It's not unusual, but

13 they're saying this is personal knowledge.

14       **MR. JAKOPIN:**  Your Honor, if I could, if there is

15 a way that we could at least make him a custodian so that we

16 can see if there's documents there in addition to the ones

17 that we already have, so that we're in a position to then

18 actually be able to make a further presentation of why we

19 believe that deposition is necessary, that would be helpful.

20       **THE COURT:**  I understand that.  I'm not -- you

21 know, a lot of times -- well, I'm --

22       Let's go back to counsel opposite on that.  Of

23 course, that was some more comment in connection with

24 Akoustis' position.

25       Yes, yes, go ahead.

**UNREDACTED TRANSCRIPT**

1          **MR. MASTERS:**  Thank you, Your Honor.

2          So it seems as Ms. Sweeney said that he had

3    information relevant to plaintiff's case-in-chief, but she

4    then rattled off everything that's in their counterclaim in

5    terms of the few e-mails that he is on.  Mr. Bruggeworth, you

6    know, is the CEO of Qorvo, director of a publicly traded

7    company with 8,000 employees.  He is --he is the apex

8    executive.

9          There is competition with Akoustis, but he

10   oversees a lot more than products that have nothing to do

11   with this case.  Courts will bar the deposition of an apex

12   executive if the deponent lacks firsthand knowledge of

13   relevant information or there are others that are equally

14   well or better situated to provide that information, and

15   that's from the *British Telecom* case.

16         **THE COURT:**  That is correct.  I mean, you're

17   right about that.  Of course, they're saying he does have a

18   lot of personal knowledge here.

19         **MR. MASTERS:**  Well, there's one e-mail where he's

20   involved with others on that e-mail string.  They're taking

21   the deposition of the other people on that e-mail string in

22   connection with Qorvo's case-in-chief.  So it's not that

23   Mr. Bruggeworth has the personal knowledge or is the only

24   person with that knowledge.  They were taking -- it's

25   already -- they already asked for that deposition.  I believe

**UNREDACTED TRANSCRIPT**

1   it's Mr. Testa who they are taking the deposition of that

2   could provide the information to the extent it's relevant at

3   all in this case.

4           **THE COURT:**  I think we've got this issue.

5   Anything else that anybody wants to us -- anything else

6   anyone wants us to look at on this issue?  Otherwise, we are

7   going to resolve it and do that fairly quickly.  Of course,

8   we have a little bit of delay because of some things we want

9   to see.

10          Ms. Sweeney, you look like you wanted to add

11  something there.  I'm not sure.

12          **MS. SWEENEY:**  Yes, Your Honor.  I think that it's

13  very telling that the head of a ten billion dollar company

14  was even thinking about Akoustis given the different size.

15  The fact that we have e-mails that are relevant both to our

16  counterclaim and to our damages with Mr. Bruggeworth talking

17  about Akoustis is incredibly material to both sides of the

18  case.  There's nothing that would suggest that something

19  relevant to a counterclaim can't be relevant for damages.

20  This is, in fact, central to our defense in this case.

21          **THE COURT:**  You do agree, though, that you would

22  be able to use certain communications in the case even if you

23  did not take his deposition, right?  And that might be really

24  important and might be the best way to do it.

25          **MS. SWEENEY:**  Your Honor, I need to understand

**UNREDACTED TRANSCRIPT**

1  when we were talking -- when there's a discussion about

2  spreading FUDD, and Mr. Bruggeworth wrote back and said,

3  perfect, he was the one sanctioning that FUDD campaign.  That

4  damage to Akoustis in the market, that understanding of the

5  market dynamic is central to our case.  We need to speak to

6  that issue.

7          **THE COURT:**  That's all very helpful, and we've

8  got just a few minutes left.  We are going to talk about the

9  scheduling question, and I think I basically need to hear

10  that from Ms. Sweeney, I think.  Well, don't want to say who

11  is going to respond on that.

12          But, Ms. Sweeney, you're probably it.

13          **MS. SWEENEY:**  Yes, Your Honor.  Thank you.  And I

14  know we've talked about a number of these issues, but the

15  scheduling issues are always, you know, they're difficult.

16  They're important, and we heard Your Honor say it needs to

17  show good cause.  And for good cause, we think about things

18  that are significant, unanticipated changes.

19          So let me talk first, briefly, about the document

20  production.  Just to clarify, 95 percent of the documents in

21  this case by Qorvo were produced between April and June.

22  Fifty percent of the documents, which is up to 70,000

23  documents they've produced, 50 percent came in June.  And

24  we're also happy to put that in a declaration and lay it out.

25  In fact, it's already in my declaration in support of the

**UNREDACTED TRANSCRIPT**

1    motion to amend our counterclaim.

2            So to set a schedule in this case, we need to

3    actually focus on the facts.  It's not about whether or not

4    Qorvo misunderstood what documents they would produce.  It's

5    the fact that no one intended to set a schedule in this case

6    so that Akoustis would receive these massive documents,

7    getting 50 percent in June, and then basically have 120 days

8    to do their entire -- our entire discovery case.

9            Obviously, as the Court knows, not only do we

10   have to physically ingest those materials in our system and

11   review them, we then need to understand them.  We need to

12   think about what they mean, what their legal significance is,

13   what is the appropriate discovery to do so we can have a

14   reasonable efficient process?  And we're working as fast as

15   we can.

16           But that fundamental point of Qorvo suggesting

17   we're never going to produce 50, 60, or 70,000 documents,

18   that was simply wrong.  And it's not about fault, but it was

19   a wrong assumption that's critical here.  So we then in

20   that -- those documents we found our counterclaim.  So we

21   were trying not to have the counterclaim extend the schedule.

22   We said that in our papers.  We issued discovery related to

23   that the week after we filed the motion to amend our answer,

24   and Qorvo has rejected our discovery.

25           They've refused to provide ESI terms.  They

**UNREDACTED TRANSCRIPT**

1    objected to filing of the counterclaim, which is very

2    different than when we -- when Qorvo brought its massive

3    Second Amended Complaint in February, we stipulated to that.

4    We participated in discovery immediately and, instead,

5    Akoustis has been blocked, the AEO issue with Mr. Aichele.

6            Since Qorvo designated Akoustis's own documents

7    as Qorvo's AEO in February, we have been blocked from having

8    discussions with our management about these very documents.

9    We're now down to the fact that we've got two months left of

10   discovery, and we still don't have a day-to-day manager for

11   all the reasons that we've already discussed.  That's just

12   central.

13           You know, we also have the fact that the playing

14   field is changing in terms of the scope of the case.  There

15   is the new trade secrets.  There is additional depositions

16   that are now going to be allowed.  None of these things were

17   contemplated at the time that the schedule was set.  So, you

18   know, and as we look at --

19           **THE COURT:**  Basically, you want to the extend the

20   time for completion of discovery by 90 to 120 days; is that

21   right?

22           **MS. SWEENEY:**  That's right.  We're just trying to

23   get those 90 days back where we had unanticipated document

24   productions and -- plus, you know, we need some more time for

25   more depositions.

**UNREDACTED TRANSCRIPT**

1          **THE COURT:**  I think the fact that --

2          **MS. SWEENEY:**  It's very complicated.

3          **THE COURT:**  Sure.  And I think the fact that the

4     Court was very clear about the need -- the need for the

5     plaintiff to be more forthcoming with its production.  They

6     have done that.  That's actually a good thing, but you're

7     saying you need some more time.  Ninety days, that would

8     basically -- you want to switch the whole schedule by about a

9     90-day period, but maybe not the whole schedule but at least

10    the discovery portion; is that right?

11         **MS. SWEENEY:**  Yes, Your Honor.  And we really,

12    really, really have looked at this hard and, you know, I

13    think we've tried to make the narrowest proposal possible

14    based on this, but we just have an enormous laundry list of

15    things to do.

16         And we also -- I want to mention the inspection

17    that the Court ordered yesterday.  That's going to require

18    the production of documents basically on the last day of

19    discovery.  That opens a new window.  I -- you know, Qorvo

20    may decide that it wants to waive all discovery on those new

21    documents, but Akoustis does not.

22         And I don't want to be in the position of either

23    reproducing our witnesses on new materials that are just

24    discovered on the close of discovery.  I want that to happen

25    in one swoop with Akoustis's witnesses, but Akoustis also

**UNREDACTED TRANSCRIPT**

1   needs the chance, if these are new documents, for Akoustis to

2   go and maybe take some of its own depositions.  If it's a

3   former employer who had these materials, we need some time to

4   do that.  So this allows us to get through the inspection and

5   then do that work.

6       **THE COURT:**  I hear what you're saying.  There is

7   some merit to particularly that last argument.  Let's hear

8   the response.  I'm going to have to add five minutes to what

9   we've got.  That will be our wrap-up.  We will make a

10  decision if we have to have any further oral input, we will

11  advise you, but I think we probably have everything we're

12  going to have.

13      **MR. MASTERS:**  Thank you, Your Honor.  I'll

14  address this point and keep it within your few minutes.

15          A large number of what Ms. Sweeney has just told

16  this Court is what the Court considered in the May 10th

17  conference when you did set the schedule.  In terms of the

18  representations, and this is me, so I kind of take this

19  personally.  We were talking about the disclosures that the

20  Court required that Qorvo made based on what was known at the

21  time of our trade secrets and the request for productions.

22          Now, Akoustis has served to date now 253 requests

23  for productions.  Qorvo has had to produce 844,000 pages in

24  response to those as Mr. DeFosse addressed earlier today.  In

25  contrast, Qorvo served 203 requests for productions, and

**UNREDACTED TRANSCRIPT**

1   Akoustis has produced 460,000 pages.  So 460 pages by the

2   defendant, 845,000 by the plaintiff.

3         But Akoustis can't keep serving document requests

4   and then turn around and ask this Court to extend the

5   schedule.  This case is no different than any other case.

6   The schedule is always what we work up against.  If you -- if

7   the Court delays this 90 days, 120 days, we're going to be in

8   the same position, and we'll be back here asking for another

9   extension.

10        **THE COURT:**  Let me ask one question, and I hear

11   what you're saying.  You know, we certainly guard the

12   schedule as much as we can.  I am going to ask:  Does it make

13   sense to extend that schedule by 30 days?

14        **MR. MASTERS:**  At this point in time, Your Honor,

15   I would say no.  I would at best wait and see what it looks

16   like maybe early October, see if we get all the depositions

17   done, and we -- we're trying to get these depositions done by

18   October 16th.

19        **THE COURT:**  Okay.  I mean, that's what I wanted

20   to -- that's just what I was checking with.  I'm not

21   encouraging.  I think adherence to a schedule is critical;

22   otherwise, cases tend to be far too expensive.  They go on

23   forever, and they don't focus enough.  So I've got you on

24   that.

25        Further response, Ms. Sweeney, of course, is

**UNREDACTED TRANSCRIPT**

1  always very persuasive.  You have two minutes left, and then
2  we're going to wrap it up.

3         **MS. SWEENEY:**  I'll take it, Your Honor, and I'll
4  do my best.

5             This is something that scheduling is important,
6  but it's not more important than the merits, and it's not
7  more important than having time to deal with a massive amount
8  of information.  This case fundamentally changed in February.
9  We have RICO claims, which the Court knows are incredibly
10 complicated.  We now have close to 400 trade secrets, and
11 there are generally new things that were absolutely not part
12 of the discussions in April or May around this.  Fifty
13 percent of those documents came in, in June.

14            The depositions, the new hours Qorvo requested,
15 which we said we can live with -- without them, but those new
16 hours came in about a week ago.  The inspection is new.
17 That's ending right on the close of discovery.  The document
18 production, I should just add --

19        **THE COURT:**  And, actually, that -- actually, that
20 is what has me somewhat concerned, that last point you made.
21 I'm actually going to go back very briefly because we've got
22 just a couple minutes left.

23            Mr. Masters, what about that?

24        **MR. MASTERS:**  The inspection, Your Honor, we're
25 moving as fast as possible.  We've already exchanged the

**UNREDACTED TRANSCRIPT**

1    draft order with Akoustis.  We got a response, expect to file

2    that later today or tomorrow with the Court, and this

3    inspection can start immediately.  Hopefully, we find things

4    on a rolling basis, and we can work whatever is found into

5    our depositions, but we'll see what happens on the 28th.

6              **THE COURT:**  Sure.  I've got that.

7              Ms. Sweeney, final word.

8              **MS. SWEENEY:**  I guess two points.  One is I don't

9    understand that because we won't even have a list from the

10   expert until the end of September.  We're starting

11   depositions, party depositions, next week, and so I think

12   it's critical that we have some understanding of this now.

13             And the document -- Akoustis and Qorvo have both

14   propounded lots of RFPs, but the documents that were produced

15   in the April to June time frame weren't based on new

16   requests, and I outlined that in my declaration in support of

17   the motion for leave.  These are based on things that were

18   propounded earlier.  It was because we had two phases of

19   discovery.

20             And you'll see in my declaration that I explain

21   that Qorvo refused to go forward with discovery on the

22   grounds that it didn't know what the trade secrets or what

23   the confidential information was until Akoustis produced it.

24   So that's what we did.  We did our production between

25   September of 2022 and January of this year.  That was phase

**UNREDACTED TRANSCRIPT**

40

1    one.  That was our mass production.  Then they did theirs

2    between April and June.  Now we just need a fair amount of

3    time to do this.

4              This schedule is not possible, and it's not fair

5    to Akoustis, and we're asking for it to be the most modest

6    adjustment of 90 days which, you know, if we look at the --

7    when we got 50 percent of their production in June to have a

8    case this size where they want millions and millions and

9    millions of dollars.

10             It's very clear this is very significant the way

11   they've positioned this.  We need time to marshal our

12   defense, to talk to our witnesses.  We need our manager that

13   we can talk to.  We've got a tremendous amount of work to do,

14   and Mr. Aichele right now has seen none of these documents.

15             **THE COURT:**  I understand.  We do have a sealed

16   matter that will come up in a couple of hours that we have to

17   work on, so we're going to have to let everybody go at this

18   time.  I thank y'all very much, and we'll look forward to

19   getting the final declarations in this matter to the degree

20   that we need them as they're applicable to certain issues,

21   and then we will issue an order.  Thank you all very much.

22

23             (Adjournment.)

24

25

**UNREDACTED TRANSCRIPT**

1                        **C E R T I F I C A T E**

2

3

4              I, LISA J. MAYO, do hereby certify that the

5      foregoing 83 pages are, to the best of my knowledge, skill

6      and abilities, a true and accurate transcript from my

7      stenotype notes of the DISCOVERY CONFERENCE on 22nd day of

8      August, 2023, in the matter of:

9

10

11     QORVO, INC.

12     vs.

13     AKOUSTIS TECHNOLOGIES, INC.

14

15     Dated this AUGUST 24, 2023

16

17

18

19                           _____S/Lisa J. Mayo_____

20                           LISA J. MAYO, RDR, CRR
                             Official Court Reporter
21                           United States District Court
                             Western District of Tennessee
22

23

24

25

                        **UNREDACTED TRANSCRIPT**

**1**

**1** [3] - 21:5, 21:20, 23:16
**10th** [2] - 9:23, 36:16
**11th** [2] - 21:9, 21:16
**120** [3] - 33:7, 34:20, 37:7
**12th** [2] - 21:9, 21:16
**16th** [2] - 10:7, 37:18
**180** [1] - 18:22
**18th** [1] - 3:7
**1:21-cv-01417** [1] - 1:6

**2**

**20** [1] - 20:16
**20006-6801** [1] - 2:7
**202** [1] - 2:8
**2022** [3] - 24:13, 24:18, 39:25
**2023** [6] - 1:18, 3:2, 6:15, 24:13, 41:8, 41:15
**2024** [1] - 4:16
**203** [1] - 36:25
**204** [1] - 21:7
**2099** [1] - 2:7
**22** [1] - 3:2
**22nd** [1] - 41:7
**22ND** [1] - 1:18
**233-4790** [1] - 2:14
**24** [1] - 41:15
**24th** [1] - 26:4
**25** [1] - 21:19
**253** [1] - 36:22
**2550** [1] - 2:13
**25th** [1] - 21:3
**26** [2] - 21:4, 24:7
**28th** [2] - 26:16, 39:5
**29** [3] - 21:8, 21:18, 24:10

**3**

**30** [1] - 37:13
**30(b)(6** [1] - 19:21
**38103** [1] - 1:23
**3rd** [1] - 6:9

**4**

**400** [1] - 38:10
**45** [1] - 4:25
**460** [1] - 37:1
**460,000** [1] - 37:1

**5**

**50** [5] - 6:12, 32:23,

33:7, 33:17, 40:7

**6**

**60** [2] - 6:12, 33:17
**650** [1] - 2:14
**6th** [1] - 4:15

**7**

**70,000** [3] - 6:12, 32:22, 33:17
**747-1935** [1] - 2:8

**8**

**8,000** [1] - 30:7
**83** [1] - 41:5
**844,000** [1] - 36:23
**845,000** [1] - 37:2

**9**

**90** [5] - 11:4, 34:20, 34:23, 37:7, 40:6
**90-day** [1] - 35:9
**94304-1115** [1] - 2:13
**95** [4] - 6:14, 8:25, 10:11, 32:20

**A**

**abilities** [1] - 41:6
**ability** [1] - 12:3
**able** [11] - 7:12, 7:25, 8:4, 8:5, 10:24, 12:17, 16:24, 17:7, 18:3, 29:18, 31:22
**absolutely** [5] - 8:15, 27:20, 28:18, 28:25, 38:11
**acceptable** [1] - 16:24
**access** [5] - 15:11, 16:20, 17:19, 18:15, 20:3
**account** [1] - 10:5
**accurate** [2] - 6:13, 41:6
**accused** [1] - 11:13
**action** [1] - 11:23
**add** [10] - 3:17, 5:14, 7:16, 10:18, 12:2, 21:21, 31:10, 36:8, 38:18
**added** [4] - 11:15, 21:7, 21:8, 24:11
**adding** [1] - 22:17
**addition** [1] - 29:16
**additional** [2] - 22:17, 34:15

**address** [5] - 8:20, 10:15, 16:10, 25:6, 36:14
**addressed** [1] - 36:24
**addressing** [1] - 13:14
**adds** [1] - 23:19
**adhere** [1] - 4:16
**adherence** [1] - 37:21
**Adjournment** [1] - 40:23
**adjustment** [1] - 40:6
**adjustments** [1] - 4:14
**admitted** [1] - 9:24
**advance** [1] - 9:24
**advise** [2] - 14:15, 36:11
**AEO** [9] - 13:11, 13:21, 15:11, 15:12, 20:8, 20:12, 20:13, 34:5, 34:7
**ago** [2] - 29:4, 38:16
**agree** [4] - 17:8, 27:12, 31:21
**agreed** [1] - 25:5
**ahead** [4] - 20:21, 25:17, 27:16, 29:25
**Aichele** [10] - 16:1, 16:7, 17:3, 18:8, 18:16, 18:24, 19:14, 19:25, 34:5, 40:14
**Akoustis** [47] - 9:16, 10:24, 11:19, 12:14, 13:19, 13:23, 14:7, 14:18, 15:10, 15:16, 15:17, 16:11, 16:14, 16:15, 16:17, 17:2, 18:12, 18:18, 21:10, 22:3, 22:5, 22:24, 23:13, 23:18, 24:12, 24:17, 27:6, 27:23, 28:10, 30:9, 31:14, 31:17, 32:4, 33:6, 34:5, 35:21, 35:25, 36:1, 36:22, 37:1, 37:3, 39:1, 39:13, 39:23, 40:5
**AKOUSTIS** [2] - 1:7, 41:13
**Akoustis'** [2] - 15:7, 29:24
**Akoustis's** [3] - 28:14, 34:6, 35:25
**allegations** [1] - 12:15
**allow** [10] - 3:25, 13:23, 15:13, 19:2, 19:4, 25:9, 25:11, 25:13, 26:12, 29:10
**allowable** [1] - 19:23
**allowed** [4] - 14:10, 17:20, 18:23, 34:16

**allowing** [2] - 18:23, 19:8
**allows** [1] - 36:4
**Alto** [1] - 2:13
**ambush** [2] - 25:13, 26:9
**amend** [3] - 3:18, 33:1, 33:23
**amended** [1] - 27:4
**Amended** [3] - 3:11, 11:11, 34:3
**amendment** [1] - 27:18
**amount** [3] - 38:7, 40:2, 40:13
**answer** [4] - 3:19, 26:21, 28:24, 33:23
**anyway** [1] - 27:19
**apex** [3] - 28:18, 30:7, 30:11
**appear** [1] - 16:14
**Appearing** [2] - 2:5, 2:10
**applicable** [1] - 40:20
**appropriate** [1] - 33:13
**April** [8] - 6:9, 9:4, 9:12, 9:13, 32:21, 38:12, 39:15, 40:2
**argue** [2] - 11:20, 22:6
**argues** [1] - 8:2
**argument** [2] - 8:17, 36:7
**assert** [2] - 8:8, 11:1
**asserted** [1] - 4:3
**assumption** [2] - 12:20, 33:19
**Attorneys'** [1] - 3:11
**attractive** [1] - 11:19
**AUGUST** [2] - 1:18, 41:15
**August** [3] - 3:2, 3:7, 41:8
**available** [1] - 13:20
**Avenue** [1] - 2:7
**avoid** [1] - 25:3
**awkward** [1] - 13:4

**B**

**balance** [1] - 5:15
**bar** [1] - 30:11
**based** [7] - 6:8, 7:22, 28:19, 35:14, 36:20, 39:15, 39:17
**basic** [1] - 20:17
**basis** [5] - 15:23, 16:2, 19:2, 25:3, 39:4
**BAW** [2] - 22:25, 23:1
**BEFORE** [1] - 1:15

**beginning** [2] - 9:4, 19:13
**behalf** [2] - 2:5, 2:10
**behind** [2] - 27:22, 28:4
**best** [4] - 31:24, 37:15, 38:4, 41:5
**better** [2] - 6:1, 30:14
**between** [4] - 28:17, 32:21, 39:24, 40:2
**beyond** [1] - 13:24
**billion** [1] - 31:13
**bit** [5] - 3:19, 3:23, 8:24, 20:20, 31:8
**blind** [1] - 19:19
**blocked** [2] - 34:5, 34:7
**board** [9] - 13:25, 15:21, 16:23, 16:25, 17:19, 19:22, 28:24
**boot** [1] - 12:3
**boundary** [2] - 24:8, 24:25
**bounds** [1] - 26:9
**brief** [3] - 15:19, 16:6, 16:19
**briefly** [4] - 20:17, 26:18, 32:19, 38:21
**briefs** [1] - 7:13
**bring** [2] - 12:3, 24:2
**British** [1] - 30:15
**broad** [3] - 9:20, 10:24, 17:2
**brought** [3] - 24:7, 24:21, 34:2
**Bruggeworth** [6] - 28:2, 28:5, 30:5, 30:23, 31:16, 32:2
**Bruggeworth's** [1] - 28:23
**Brugworth** [1] - 28:10
**BUILDING** [1] - 1:22
**business** [5] - 14:6, 14:13, 16:1, 16:14, 23:13

**C**

**CA** [1] - 2:13
**campaign** [3] - 28:6, 28:9, 32:3
**cannot** [1] - 7:9
**capitulate** [1] - 9:19
**care** [1] - 26:17
**case** [52] - 3:8, 5:4, 6:13, 6:22, 7:2, 7:5, 7:12, 7:16, 8:3, 8:13, 9:16, 9:20, 9:23, 10:19, 10:22, 11:9, 11:12, 11:13, 11:16,

11:25, 12:4, 12:24, 13:24, 14:14, 16:18, 17:6, 17:15, 19:13, 19:23, 20:8, 27:5, 27:25, 28:8, 29:3, 30:3, 30:11, 30:15, 30:22, 31:3, 31:18, 31:20, 31:22, 32:5, 32:21, 33:2, 33:5, 33:8, 34:14, 37:5, 38:8, 40:8

**case-in-chief** [2] - 30:3, 30:22

**cases** [7] - 7:13, 7:14, 14:11, 14:23, 15:7, 19:3, 37:22

**caused** [1] - 7:14

**central** [4] - 28:16, 31:20, 32:5, 34:12

**CEO** [6] - 4:9, 15:25, 26:20, 28:2, 28:21, 30:6

**certain** [2] - 31:22, 40:20

**certainly** [6] - 3:12, 4:25, 5:1, 11:4, 19:16, 37:11

**certify** [1] - 41:4

**chance** [1] - 36:1

**change** [2] - 9:25, 13:17

**changed** [2] - 26:10, 38:8

**changes** [1] - 32:18

**changing** [2] - 13:21, 34:14

**checking** [1] - 37:20

**chief** [3] - 16:1, 30:3, 30:22

**cited** [2] - 14:10, 19:4

**cites** [1] - 7:13

**claim** [2] - 11:1, 11:15

**claims** [10] - 8:8, 9:4, 9:5, 9:7, 10:23, 11:3, 11:10, 12:22, 15:22, 38:9

**clarify** [1] - 32:20

**clear** [5] - 7:7, 9:9, 26:3, 35:4, 40:10

**clearly** [2] - 12:18, 29:1

**client** [1] - 14:6

**close** [5] - 12:24, 22:4, 35:24, 38:10, 38:17

**closer** [1] - 5:24

**closing** [1] - 10:6

**coming** [1] - 26:22

**comment** [1] - 29:23

**communications** [2] - 15:21, 31:22

**company** [6] - 15:18, 20:3, 28:6, 29:6, 30:7, 31:13

**company's** [1] - 19:24

**compete** [2] - 19:1, 27:23

**competition** [1] - 30:9

**competitive** [3] - 18:24, 28:14, 29:9

**competitor** [1] - 11:12

**competitor's** [1] - 14:11

**Complaint** [3] - 3:11, 11:11, 34:3

**complaint** [1] - 3:18

**complete** [3] - 5:3, 6:10, 10:3

**completed** [1] - 10:8

**completion** [1] - 34:20

**complicated** [2] - 35:2, 38:10

**concerned** [1] - 38:20

**concessions** [1] - 13:23

**conduct** [2] - 11:21, 12:13

**conference** [3] - 9:3, 13:16, 36:17

**CONFERENCE** [2] - 1:12, 41:7

**confidential** [3] - 3:11, 13:21, 39:23

**confirm** [1] - 27:8

**confusion** [4] - 11:17, 11:22, 12:11, 12:18

**connection** [2] - 29:23, 30:22

**consider** [1] - 25:15

**considered** [1] - 36:16

**consistent** [2] - 21:4, 21:25

**contemplated** [1] - 34:17

**contrast** [1] - 36:25

**cop** [1] - 13:6

**corporate** [1] - 14:2

**correct** [8] - 8:23, 13:12, 15:3, 17:9, 17:10, 27:7, 27:10, 30:16

**counsel** [16] - 8:16, 12:6, 12:8, 14:1, 14:2, 15:1, 17:5, 17:18, 17:22, 19:11, 19:15, 19:20, 23:8, 23:22, 29:22

**counsel's** [1] - 14:17

**counter** [1] - 3:17

**counterclaim** [18] - 3:18, 5:14, 7:12,

7:25, 8:4, 10:18, 12:2, 24:4, 24:20, 27:5, 28:7, 30:4, 31:16, 31:19, 33:1, 33:20, 33:21, 34:1

**couple** [5] - 3:8, 19:10, 20:16, 38:22, 40:16

**course** [9] - 4:12, 4:17, 12:13, 18:21, 25:4, 29:23, 30:17, 31:7, 37:25

**court** [1] - 9:22

**COURT** [52] - 1:1, 3:6, 5:16, 5:23, 6:2, 6:5, 6:16, 6:18, 6:22, 6:24, 8:6, 8:14, 12:5, 12:25, 13:8, 13:12, 14:25, 17:4, 17:12, 17:22, 19:5, 20:15, 20:24, 22:14, 23:3, 23:6, 23:8, 23:21, 25:16, 25:20, 25:25, 26:6, 26:11, 26:25, 27:7, 27:11, 27:16, 29:3, 29:20, 30:16, 31:4, 31:21, 32:7, 34:19, 35:1, 35:3, 36:6, 37:10, 37:19, 38:19, 39:6, 40:15

**Court** [28] - 3:12, 4:23, 5:21, 6:10, 9:8, 9:24, 10:5, 10:9, 10:13, 15:17, 15:24, 16:3, 18:22, 24:25, 25:15, 25:23, 33:9, 35:4, 35:17, 36:16, 36:20, 37:4, 37:7, 38:9, 39:2, 41:20, 41:21

**Court's** [1] - 9:17

**courts** [1] - 30:11

**cover** [1] - 22:24

**covered** [1] - 20:15

**critical** [5] - 4:10, 16:9, 33:19, 37:21, 39:12

**CRR** [1] - 1:21, 41:20

**cumulative** [3] - 23:3, 23:6, 23:12

**custodian** [3] - 28:24, 28:25, 29:15

---

## D

**daily** [1] - 19:2

**damage** [1] - 32:4

**damages** [4] - 28:8, 28:16, 31:16, 31:19

**date** [2] - 15:9, 36:22

**Dated** [1] - 41:15

**David** [1] - 2:12

**day-to-day** [4] - 15:23, 16:2, 17:1, 34:10

**days** [8] - 33:7, 34:20, 34:23, 35:7, 37:7, 37:13, 40:6

**DC** [1] - 2:7

**deal** [2] - 26:15, 38:7

**dealt** [1] - 16:2

**decide** [1] - 35:20

**decided** [2] - 9:19, 12:8

**deciding** [1] - 18:25

**decision** [3] - 14:12, 18:24, 36:10

**decision-maker** [1] - 18:24

**decision-makers** [1] - 14:12

**declaration** [10] - 25:1, 25:16, 25:21, 26:2, 26:7, 26:13, 32:24, 32:25, 39:16, 39:20

**declarations** [1] - 40:19

**defendant** [1] - 37:2

**Defendant** [2] - 1:8, 2:10

**defense** [3] - 27:25, 31:20, 40:12

**defer** [1] - 20:23

**deferred** [1] - 26:23

**defining** [1] - 22:22

**DeFosse** [18] - 2:6, 5:5, 8:19, 8:20, 13:3, 13:6, 13:9, 13:13, 15:15, 17:10, 17:16, 18:2, 20:19, 20:22, 25:10, 26:21, 26:23, 36:24

**degree** [1] - 40:19

**degrees** [1] - 18:22

**DELAWARE** [1] - 1:2

**delay** [1] - 31:8

**delays** [1] - 37:7

**denying** [2] - 12:1, 12:2

**deponent** [1] - 30:12

**deposing** [1] - 4:9

**deposition** [13] - 21:10, 22:5, 26:20, 27:6, 28:18, 29:1, 29:10, 29:19, 30:11, 30:21, 30:25, 31:1, 31:23

**depositions** [14] - 7:3, 7:11, 11:5, 12:23, 21:17, 34:15, 34:25, 36:2, 37:16, 37:17,

38:14, 39:5, 39:11

**describe** [1] - 22:14

**design** [1] - 22:24

**designated** [2] - 20:8, 34:6

**designation** [3] - 3:10, 13:11, 13:17

**detailed** [1] - 19:12

**developing** [1] - 27:22

**development** [5] - 16:1, 22:24, 23:14, 28:15

**device** [1] - 12:17

**Diane** [1] - 2:11

**difference** [2] - 20:6, 24:19

**differences** [1] - 24:5

**different** [7] - 7:24, 8:12, 11:23, 16:23, 31:14, 34:2, 37:5

**difficult** [2] - 17:6, 32:15

**dig** [1] - 14:6

**director** [1] - 30:6

**disagree** [1] - 17:23

**disclosed** [1] - 22:22

**disclosure** [4] - 24:6, 24:7, 24:11, 24:24

**disclosures** [6] - 21:3, 21:6, 21:20, 21:24, 25:12, 36:19

**discovered** [1] - 35:24

**discovery** [31] - 6:10, 7:4, 7:7, 7:9, 9:19, 10:1, 10:7, 10:23, 10:25, 11:2, 11:6, 11:16, 12:24, 22:5, 24:8, 26:9, 28:22, 33:8, 33:13, 33:22, 33:24, 34:4, 34:10, 34:20, 35:10, 35:19, 35:20, 35:24, 38:17, 39:19, 39:21

**DISCOVERY** [2] - 1:12, 41:7

**discuss** [2] - 3:9, 4:20

**discussed** [5] - 3:19, 11:5, 19:11, 22:9, 34:11

**discussion** [6] - 3:14, 3:20, 4:18, 26:19, 28:17, 32:1

**discussions** [2] - 34:8, 38:12

**disinformation** [1] - 28:10

**dismiss** [1] - 8:3

**disputes** [1] - 9:19

**District** [2] - 41:21, 41:21

**DISTRICT** [2] - 1:1, 1:2
**district** [1] - 29:4
**document** [7] - 6:10, 9:6, 9:15, 14:21, 15:11, 16:11, 18:17, 32:19, 34:23, 37:3, 38:17, 39:13
**documents** [54] - 6:12, 7:18, 8:25, 9:2, 9:25, 11:7, 13:18, 13:20, 15:6, 15:9, 15:10, 15:12, 16:9, 16:13, 16:17, 17:11, 18:3, 18:10, 20:4, 20:10, 21:7, 21:8, 21:13, 21:15, 21:18, 21:25, 22:23, 23:15, 23:16, 23:18, 23:20, 24:11, 24:14, 24:16, 25:2, 27:21, 28:23, 28:25, 29:16, 32:20, 32:22, 32:23, 33:4, 33:6, 33:17, 33:20, 34:6, 34:8, 35:18, 35:21, 36:1, 38:13, 39:14, 40:14
**dollar** [1] - 31:13
**dollars** [1] - 40:9
**done** [11] - 6:18, 7:19, 7:22, 9:14, 10:10, 16:16, 25:18, 26:19, 35:6, 37:17
**doubt** [1] - 28:9
**down** [4] - 13:1, 16:20, 20:3, 34:9
**dozen** [2] - 18:9, 18:10
**draft** [1] - 39:1
**duplicates** [1] - 24:16
**duplicative** [1] - 23:16
**dynamic** [1] - 32:5

## E

**e-mail** [4] - 28:11, 30:19, 30:20, 30:21
**e-mails** [2] - 30:5, 31:15
**early** [3] - 9:12, 9:13, 37:16
**easy** [1] - 13:5
**efficient** [2] - 8:15, 33:14
**efficiently** [1] - 4:22
**effort** [1] - 29:5
**either** [3] - 5:24, 24:17, 35:22
**employees** [5] - 20:5, 21:10, 22:4, 22:6, 30:7
**employer** [1] - 36:3

**encouraging** [1] - 37:21
**end** [4] - 9:15, 11:15, 26:2, 39:10
**ended** [2] - 7:15, 7:17
**ending** [1] - 38:17
**engaging** [1] - 11:13
**enormous** [1] - 35:14
**ensure** [1] - 25:12
**enter** [2] - 7:25, 8:4
**entered** [1] - 7:6
**entire** [2] - 33:8
**entity** [1] - 29:9
**equally** [1] - 30:13
**equivalent** [1] - 11:21
**ESI** [3] - 10:3, 10:8, 33:25
**essential** [1] - 11:14
**essentially** [5] - 7:14, 10:25, 11:21, 22:17, 27:25
**exactly** [5] - 4:5, 11:22, 14:9, 17:12, 24:2
**example** [2] - 14:8, 18:8
**exception** [1] - 15:13
**exchanged** [1] - 38:25
**excuse** [1] - 18:5
**executive** [7] - 17:7, 17:15, 19:8, 19:25, 29:6, 30:8, 30:12
**executives** [1] - 28:5
**expect** [2] - 17:21, 39:1
**expedition** [1] - 11:1
**expensive** [1] - 37:22
**expert** [1] - 39:10
**experts** [3] - 14:3, 14:14, 16:9
**explain** [3] - 24:3, 25:1, 39:20
**explained** [2] - 15:25, 24:1
**exposed** [2] - 18:6, 18:7
**extend** [6] - 11:8, 11:16, 33:21, 34:19, 37:4, 37:13
**extension** [1] - 37:9
**extent** [2] - 12:21, 31:2
**Eyes** [1] - 3:11

## F

**fact** [18] - 4:2, 6:13, 7:2, 7:4, 7:10, 8:3, 10:7, 15:11, 17:23, 22:4, 31:15, 31:20,

32:25, 33:5, 34:9, 34:13, 35:1, 35:3
**facts** [7] - 6:8, 6:9, 11:23, 12:11, 12:15, 19:22, 33:3
**factual** [2] - 16:9, 16:15
**fair** [2] - 40:2, 40:4
**fairly** [2] - 5:17, 31:7
**far** [2] - 19:8, 37:22
**fast** [2] - 33:14, 38:25
**fault** [1] - 33:18
**fear** [1] - 28:9
**features** [1] - 14:13
**February** [5] - 11:11, 19:18, 34:3, 34:7, 38:8
**FEDERAL** [1] - 1:22
**felt** [1] - 10:15
**few** [4] - 17:16, 30:5, 32:9, 36:14
**field** [2] - 25:4, 34:14
**fifty** [1] - 38:12
**Fifty** [1] - 32:22
**file** [3] - 3:25, 8:3, 39:1
**filed** [9] - 3:24, 4:1, 5:2, 9:5, 11:10, 19:18, 20:18, 22:15, 33:23
**files** [3] - 10:25, 15:7, 20:9
**filing** [2] - 9:3, 34:1
**filters** [1] - 23:1
**final** [5] - 12:8, 26:16, 39:7, 40:19
**fine** [4] - 5:16, 5:25, 20:12, 26:25
**finish** [1] - 4:24
**first** [8] - 5:19, 9:3, 10:14, 12:17, 13:10, 17:18, 27:24, 32:19
**firsthand** [1] - 30:12
**fishing** [1] - 11:1
**five** [2] - 4:19, 36:8
**FLOOR** [1] - 1:22
**focus** [2] - 33:3, 37:23
**folks** [3] - 13:19, 14:3, 16:4
**follow** [1] - 13:5
**following** [2] - 22:8, 26:13
**FOR** [1] - 1:2
**foregoing** [1] - 41:5
**forever** [1] - 37:23
**form** [1] - 3:12
**format** [2] - 5:3, 13:5
**former** [4] - 20:5, 21:10, 22:3, 36:3
**forthcoming** [1] - 35:5

**forward** [5] - 9:18, 20:14, 24:2, 39:21, 40:18
**four** [1] - 4:19
**FOURTH** [1] - 1:22
**frame** [3] - 23:23, 24:18, 39:15
**frankly** [3] - 10:20, 19:3, 19:18
**free** [1] - 14:18
**Friday** [2] - 7:10, 22:9
**front** [2] - 14:22, 17:1
**FUDD** [5] - 28:6, 28:9, 28:11, 32:2, 32:3
**fundamental** [1] - 33:16
**fundamentally** [1] - 38:8
**futility** [1] - 8:2

## G

**general** [6] - 14:1, 17:18, 17:22, 19:11, 19:15, 19:20
**generally** [3] - 14:18, 18:16, 38:11
**generated** [1] - 20:4
**given** [3] - 7:1, 23:18, 31:14
**Great** [1] - 6:17
**grimace** [1] - 6:2
**grounds** [1] - 39:22
**group** [1] - 17:2
**guard** [1] - 37:11
**guess** [1] - 39:8

## H

**half** [2] - 9:11, 10:1
**handle** [2] - 4:5, 5:15
**Hanover** [1] - 2:13
**happy** [8] - 6:19, 8:23, 10:14, 15:4, 15:12, 25:1, 25:19, 32:24
**hard** [2] - 16:21, 35:12
**head** [1] - 31:13
**hear** [8] - 3:20, 5:25, 12:8, 15:1, 32:9, 36:6, 36:7, 37:10
**heard** [2] - 24:3, 32:16
**hearing** [6] - 3:7, 6:9, 9:8, 9:24, 16:5, 19:12
**help** [5] - 15:21, 16:8, 17:1, 19:17, 20:13
**helpful** [4] - 4:11, 13:1, 29:19, 32:7
**helping** [1] - 20:20
**hereby** [1] - 41:4

**Hodge** [2] - 21:13, 24:16
**Honor** [39] - 5:12, 5:22, 6:7, 8:19, 8:22, 9:12, 10:14, 12:1, 12:10, 12:23, 13:7, 13:10, 13:14, 15:4, 17:10, 17:17, 18:2, 18:20, 19:10, 20:22, 21:1, 22:21, 23:25, 25:22, 26:5, 26:24, 27:3, 27:10, 29:14, 30:1, 31:12, 31:25, 32:13, 32:16, 35:11, 36:13, 37:14, 38:3, 38:24
**HONORABLE** [1] - 1:15
**hopefully** [2] - 8:23, 39:3
**hours** [4] - 11:4, 38:14, 38:16, 40:16
**hugely** [1] - 22:18
**hundred** [1] - 18:20

## I

**idea** [1] - 6:11
**immediately** [2] - 34:4, 39:3
**implicated** [1] - 18:9
**importance** [3] - 22:15, 22:18, 23:20
**important** [9] - 15:5, 17:22, 19:7, 25:14, 31:24, 32:16, 38:5, 38:6, 38:7
**IN** [1] - 1:1
**INC** [4] - 1:4, 1:7, 41:11, 41:13
**include** [1] - 21:23
**includes** [2] - 14:1, 21:8
**incredibly** [3] - 19:12, 31:17, 38:9
**independent** [2] - 8:8
**indicated** [1] - 25:17
**individual** [1] - 29:7
**information** [14] - 10:12, 14:16, 18:19, 19:24, 21:9, 21:21, 22:2, 22:15, 30:3, 30:13, 30:14, 31:2, 38:8, 39:23
**ingest** [1] - 33:10
**initial** [1] - 21:5
**input** [2] - 16:15, 36:10
**inquiry** [1] - 25:13
**insight** [1] - 20:1

inspection [5] - 35:16, 36:4, 38:16, 38:24, 39:3
instead [1] - 34:4
intended [1] - 33:5
internal [2] - 13:19, 14:12
interrogatory [3] - 11:7, 21:23, 24:24
intertwined [1] - 7:5, 12:15
involved [3] - 28:2, 28:5, 30:20
issue [21] - 4:9, 4:12, 5:7, 7:24, 11:18, 12:7, 12:9, 12:12, 13:2, 13:9, 13:10, 13:13, 13:16, 16:9, 19:17, 27:4, 31:4, 31:6, 32:6, 34:5, 40:21
issued [1] - 33:22
issues [14] - 3:8, 5:1, 5:15, 7:4, 7:5, 14:5, 14:6, 14:15, 19:15, 23:1, 28:3, 32:14, 32:15, 40:20

**J**

Jakopin [7] - 2:12, 5:13, 5:20, 10:17, 10:19, 24:3, 27:23
JAKOPIN [11] - 5:21, 6:1, 6:4, 6:6, 6:17, 6:21, 6:23, 6:25, 8:11, 12:10, 29:14
January [3] - 24:13, 24:18, 39:25
joined [1] - 23:17
JON [1] - 1:15
Jonathan [1] - 2:6
Judge [1] - 22:8
JUDGE [1] - 1:15
July [7] - 7:17, 10:4, 10:7, 21:3, 21:7, 21:9, 21:16
June [11] - 6:15, 9:1, 9:2, 10:11, 32:21, 32:23, 33:7, 38:13, 39:15, 40:2, 40:7
juror [4] - 11:17, 11:22, 12:11, 12:18
jury [3] - 11:20, 12:17, 22:11
jury's [1] - 11:24

**K**

keep [3] - 13:5, 36:14,

37:3
key [3] - 18:24, 20:5, 24:4
kind [6] - 11:15, 11:22, 13:5, 14:6, 26:18, 36:18
knowledge [11] - 28:13, 28:19, 28:21, 29:2, 29:8, 29:13, 30:12, 30:18, 30:23, 30:24, 41:5
known [3] - 29:6, 29:9, 36:20
knows [4] - 4:17, 14:5, 33:9, 38:9

**L**

lacks [1] - 30:12
laid [1] - 16:19
large [1] - 36:15
last [9] - 7:10, 11:5, 12:10, 13:16, 14:4, 25:10, 35:18, 36:7, 38:20
lastly [1] - 8:2
late [3] - 3:24, 4:1, 20:18
launch [1] - 19:1
laundry [1] - 35:14
law [1] - 6:9
lawyers [1] - 16:10
lay [1] - 32:24
lead [1] - 13:4
leads [1] - 11:22
learn [2] - 18:5, 18:6
learned [1] - 27:21
least [7] - 3:12, 15:9, 16:4, 18:9, 20:10, 29:15, 35:9
leave [7] - 5:14, 6:8, 6:23, 6:25, 24:25, 27:4, 39:17
left [6] - 20:2, 20:16, 32:8, 34:9, 38:1, 38:22
legal [1] - 33:12
less [5] - 9:4, 9:6, 10:12, 15:20, 21:19
level [3] - 13:19, 15:12, 23:19
light [1] - 27:4
line [1] - 13:3
LISA [3] - 1:21, 41:4, 41:20
list [2] - 35:14, 39:9
litigation [1] - 18:5
live [1] - 18:15
LLP [1] - 2:12
look [10] - 15:13,

15:16, 17:7, 19:9, 23:9, 31:6, 31:10, 34:18, 40:6, 40:18
looked [2] - 16:13, 35:12
looking [1] - 20:7
looks [1] - 37:15

**M**

mail [4] - 28:11, 30:19, 30:20, 30:21
mails [2] - 30:5, 31:15
main [2] - 7:5, 8:13
majority [1] - 24:20
maker [1] - 18:24
makers [1] - 14:12
management [6] - 13:25, 14:1, 15:20, 17:19, 20:13, 34:8
manager [2] - 20:6, 34:10, 40:12
managers [3] - 15:13, 15:16, 15:18
manufacturing [1] - 23:14
market [3] - 11:12, 32:4, 32:5
marketplace [1] - 28:14
marshal [1] - 40:11
mass [1] - 40:1
massive [3] - 33:6, 34:2, 38:7
MASTERS [13] - 21:1, 22:20, 23:5, 23:7, 23:11, 26:5, 26:7, 27:3, 30:1, 30:19, 36:13, 37:14, 38:24
Masters [10] - 2:6, 6:9, 20:23, 20:24, 24:1, 24:15, 26:24, 26:25, 27:15, 38:23
material [2] - 20:18, 31:17
materials [17] - 9:10, 9:11, 9:12, 9:21, 13:24, 15:7, 17:3, 17:7, 17:8, 17:20, 18:14, 20:9, 24:17, 24:21, 33:10, 35:23, 36:3
matter [3] - 40:16, 40:19, 41:8
Mayo [2] - 5:25, 41:19
MAYO [3] - 1:21, 41:4, 41:20
McCALLA [1] - 1:15
mean [6] - 9:10, 22:18, 22:20, 30:16, 33:12,

37:19
means [1] - 6:3
member [1] - 17:18
members [3] - 13:25, 16:23, 16:25
MEMPHIS [1] - 1:23
mention [1] - 35:16
mentioned [1] - 27:24
merit [1] - 36:7
merits [3] - 7:25, 25:14, 38:6
message [1] - 9:17
might [5] - 3:14, 4:11, 8:15, 31:23, 31:24
mike [2] - 5:24
million [1] - 10:2
millions [2] - 40:8, 40:9
minor [1] - 3:14
minutes [8] - 4:25, 20:16, 26:1, 32:8, 36:8, 36:14, 38:1, 38:22
misappropriate [1] - 28:1
misconduct [1] - 11:13
missed [1] - 23:5
misunderstood [1] - 33:4
models [1] - 22:25
modest [1] - 40:5
Monday [1] - 26:14
month [1] - 10:9
months [6] - 9:5, 9:6, 22:4, 24:21, 25:6, 34:9
morning [1] - 21:1
most [5] - 9:1, 17:24, 17:25, 24:13, 40:5
motion [13] - 3:17, 3:24, 5:14, 6:7, 6:23, 6:25, 8:3, 12:2, 20:17, 27:4, 33:1, 33:23, 39:17
mountains [1] - 9:11
move [5] - 4:21, 9:18, 17:6, 20:14, 20:20
moved [1] - 9:10
moving [3] - 9:21, 25:4, 38:25
MR [33] - 5:21, 6:1, 6:4, 6:6, 6:17, 6:21, 6:23, 6:25, 8:11, 8:19, 12:10, 13:6, 13:9, 13:13, 17:10, 17:16, 18:2, 20:22, 21:1, 22:20, 23:5, 23:7, 23:11, 26:5, 26:7, 26:23, 27:3,

29:14, 30:1, 30:19, 36:13, 37:14, 38:24
MS [17] - 5:12, 15:4, 19:10, 23:25, 25:19, 25:22, 27:10, 27:14, 27:20, 31:12, 31:25, 32:13, 34:22, 35:2, 35:11, 38:3, 39:8

**N**

N.W [1] - 2:7
narrowest [1] - 35:13
narrowing [1] - 25:4
nearly [3] - 6:10, 9:15, 11:10
necessarily [1] - 4:10
necessary [2] - 17:15, 29:19
need [34] - 3:13, 3:15, 4:22, 6:3, 8:9, 9:25, 14:20, 16:15, 16:20, 19:20, 20:13, 22:10, 24:3, 25:6, 25:8, 26:12, 26:13, 27:17, 27:19, 31:25, 32:5, 32:9, 33:2, 33:11, 34:24, 35:4, 35:7, 36:3, 40:2, 40:11, 40:12, 40:20
needed [3] - 9:18, 10:15, 12:23
needs [3] - 11:15, 32:16, 36:1
never [2] - 8:17, 33:17
new [13] - 4:17, 23:16, 27:21, 34:15, 35:19, 35:20, 35:23, 36:1, 38:11, 38:14, 38:15, 38:16, 39:15
newly [1] - 22:15
next [3] - 13:1, 13:9, 39:11
Ninety [1] - 35:7
NO [1] - 1:6
none [3] - 19:3, 34:16, 40:14
normal [2] - 13:24, 18:21
normally [2] - 17:21, 18:23
Norway [1] - 29:6
note [1] - 26:1
noted [3] - 4:23, 7:21, 16:3
notes [1] - 41:7
nothing [2] - 30:10, 31:18
November [1] - 24:18
number [6] - 4:3, 4:24,

9:20, 14:11, 32:14, 36:15

## O

objected [1] - 34:1
obligation [1] - 22:13
obtain [1] - 29:5
obtained [1] - 21:9
obvious [1] - 8:7
obviously [5] - 3:25, 4:22, 5:9, 20:18, 33:9
occur [1] - 4:7
October [3] - 10:7, 37:16, 37:18
OF [2] - 1:2, 1:18
offered [2] - 15:15, 16:23
Official [1] - 41:20
OFFICIAL [1] - 1:22
often [2] - 17:23, 17:25
old [1] - 20:11
one [20] - 3:10, 8:20, 9:1, 11:18, 11:19, 15:13, 16:4, 16:7, 20:23, 21:12, 23:18, 24:6, 26:12, 30:19, 32:3, 33:5, 35:25, 37:10, 39:8, 40:1
One [1] - 19:10
one-third [1] - 9:1
ones [1] - 29:16
open [1] - 7:7
opens [1] - 35:19
operating [1] - 12:19
opportunity [1] - 26:8
opposite [7] - 8:16, 12:6, 15:1, 17:5, 18:22, 23:22, 29:22
options [1] - 16:7
oral [1] - 36:10
order [8] - 16:8, 16:16, 19:24, 20:13, 24:7, 25:8, 39:1, 40:21
ordered [2] - 21:5, 35:17
organization [1] - 29:9
original [1] - 16:6
originally [1] - 10:6, 15:24, 20:8
otherwise [3] - 27:5, 31:6, 37:22
outlined [4] - 15:19, 16:6, 20:9, 39:16
outside [4] - 14:1, 14:2, 14:14
outstanding [1] - 9:17
overlap [1] - 22:21

overlapping [1] - 10:20
oversees [1] - 30:10
own [2] - 34:6, 36:2

## P

pages [5] - 10:2, 36:23, 37:1, 41:5
Palo [1] - 2:13
papers [2] - 20:9, 33:22
part [5] - 6:16, 19:16, 27:24, 28:7, 38:11
participated [1] - 34:4
participation [1] - 20:13
particularly [1] - 36:7
parties [4] - 7:3, 21:13, 27:23, 28:17
party [2] - 3:25, 39:11
past [1] - 15:17
Pennsylvania [1] - 2:7
people [10] - 8:12, 8:13, 14:15, 15:22, 16:2, 17:2, 18:5, 20:2, 20:5, 30:21
percent [6] - 6:14, 8:25, 10:11, 18:21, 32:20, 32:22, 32:23, 33:7, 38:13, 40:7
perfect [5] - 6:5, 8:17, 28:12, 32:3
perfectly [2] - 5:16, 14:17
perhaps [1] - 4:8
period [1] - 35:9
person [14] - 14:21, 14:22, 15:20, 16:1, 17:20, 17:23, 17:25, 18:23, 18:25, 19:2, 30:24
personal [8] - 28:13, 28:19, 28:21, 29:2, 29:8, 29:13, 30:18, 30:23
personally [1] - 36:19
perspective [1] - 24:19
persuasive [1] - 38:1
phase [1] - 39:25
phases [1] - 39:18
Phone [2] - 2:8, 2:14
physically [1] - 33:10
Pillsbury [1] - 2:12
Pittman [1] - 2:12
Plaintiff [2] - 1:5, 2:5
plaintiff [7] - 4:5, 6:11, 7:14, 7:15, 22:10, 35:5, 37:2

plaintiff's [2] - 5:6, 30:3
playing [1] - 34:13
pleading [1] - 7:17
pleadings [1] - 7:16
pleased [1] - 7:21
plus [3] - 23:17, 24:21, 34:24
point [16] - 9:2, 10:2, 10:14, 12:10, 14:9, 14:11, 14:22, 16:3, 18:2, 18:4, 24:4, 24:10, 33:16, 36:14, 37:14, 38:20
points [3] - 17:16, 19:10, 39:8
portion [1] - 35:10
position [7] - 12:22, 13:22, 19:16, 29:17, 29:24, 35:22, 37:8
positioned [1] - 40:11
positions [1] - 22:23
possession [2] - 16:18, 22:3
possible [3] - 35:13, 38:25, 40:4
precisely [1] - 14:9
preference [2] - 3:25, 19:7
prejudice [7] - 7:8, 7:9, 7:15, 10:16, 11:9, 12:1, 22:7
prepared [1] - 19:21
presentation [2] - 22:11, 29:18
presenter [1] - 17:19
presumably [1] - 17:19
pretty [4] - 5:1, 8:17, 9:8, 23:23
prevent [1] - 25:12
previously [4] - 18:6, 18:7, 19:11, 22:22
problem [3] - 14:24, 19:5
problems [1] - 17:14
procedurally [1] - 8:10
proceed [3] - 8:5, 10:19, 22:16
proceeding [1] - 8:9
process [2] - 20:21, 33:14
produce [7] - 8:25, 28:20, 28:21, 29:1, 33:4, 33:17, 36:23
produced [19] - 6:14, 9:1, 9:11, 9:21, 9:25, 15:10, 16:18, 17:8, 21:19, 24:12, 24:15, 24:17, 25:3, 32:21,

32:23, 37:1, 39:14, 39:23
producing [1] - 6:12
product [8] - 12:14, 23:13, 27:22, 27:24, 28:3, 28:14, 28:15
production [13] - 6:15, 8:22, 9:9, 9:15, 10:4, 10:8, 32:20, 35:5, 35:18, 38:18, 39:24, 40:1, 40:7
productions [4] - 34:24, 36:21, 36:23, 36:25
products [2] - 18:25, 22:25, 30:10
progress [1] - 6:22
prompt [1] - 25:21
promptly [2] - 25:18, 26:19
proper [3] - 14:13, 17:15, 28:22
proposal [1] - 35:13
proposals [1] - 16:21
propose [2] - 4:4, 5:13
proposed [2] - 15:18, 17:3
propounded [2] - 39:14, 39:18
protective [3] - 16:8, 16:16, 19:23
provide [3] - 30:14, 31:2, 33:25
provided [1] - 21:13
public [1] - 13:20
publicly [1] - 30:6
purpose [1] - 24:6
purposes [1] - 22:11
pursuant [1] - 21:10
pursue [1] - 27:6
pushed [2] - 10:5, 10:7
put [4] - 7:12, 14:22, 25:1, 32:24
putting [1] - 7:17

## Q

Qorvo [43] - 4:9, 6:11, 7:10, 7:13, 7:18, 7:21, 7:23, 8:2, 9:9, 11:9, 12:14, 12:16, 14:21, 15:11, 15:19, 16:22, 16:23, 17:11, 18:17, 19:1, 19:2, 20:7, 21:3, 21:14, 22:6, 24:20, 26:8, 27:21, 27:22, 30:6, 32:21, 33:4, 33:16, 33:24, 34:2, 34:6,

35:19, 36:20, 36:23, 36:25, 38:14, 39:13, 39:21
QORVO [2] - 1:4, 41:11
Qorvo's [7] - 13:18, 24:2, 26:20, 28:15, 28:20, 30:22, 34:7
questions [4] - 18:11, 18:15, 18:16, 20:11
quick [2] - 17:16, 23:25
quickly [5] - 5:18, 7:17, 31:7
quote/unquote [1] - 28:12

## R

raise [1] - 20:11
raised [2] - 12:11, 13:10
raising [1] - 9:18
rather [1] - 9:18
rationale [1] - 24:2
rattled [1] - 30:4
RDR [2] - 1:21, 41:20
re [1] - 3:10
re-designation [1] - 3:10
ready [2] - 5:19, 23:10
real [2] - 14:24, 18:4
reality [1] - 12:13
realize [1] - 22:10
really [18] - 3:21, 5:7, 9:10, 10:16, 11:8, 11:14, 14:5, 16:20, 16:21, 19:7, 20:6, 20:20, 24:2, 25:6, 31:23, 35:11, 35:12
reason [2] - 11:15, 14:20
reasonable [2] - 25:12, 33:14
reasons [3] - 7:6, 11:19, 34:11
receive [2] - 14:16, 33:6
received [4] - 9:6, 18:3, 18:13, 21:14
recent [2] - 9:1, 21:16
record [1] - 8:24
redactions [1] - 3:15
reduction [1] - 4:2
referred [1] - 24:15
reflect [1] - 13:18
refused [2] - 33:25, 39:21
regard [1] - 4:4
rejected [3] - 15:19,

16:21, 33:24
**related** [1] - 33:22
**relates** [1] - 22:21
**relevant** [10] - 11:4, 28:7, 28:13, 29:2, 30:3, 30:13, 31:2, 31:15, 31:19
**reliable** [1] - 18:1
**relief** [1] - 19:17
**rely** [1] - 17:24
**remain** [1] - 15:12
**remaining** [1] - 12:21
**remembers** [1] - 9:13
**repeat** [2] - 13:16
**reply** [3] - 15:19, 16:6, 16:19
**REPORTER** [1] - 1:22
**Reporter** [1] - 41:20
**representation** [1] - 7:23
**representations** [1] - 36:18
**reproducing** [1] - 35:23
**request** [3] - 11:6, 16:6, 36:21
**requested** [1] - 38:14
**requests** [7] - 9:6, 9:17, 9:20, 36:22, 36:25, 37:3, 39:16
**require** [2] - 21:22, 35:17
**required** [2] - 21:20, 36:20
**requirement** [1] - 22:1
**requires** [2] - 21:4, 24:25
**resolve** [1] - 31:7
**resolved** [1] - 3:8
**resonators** [1] - 23:1
**respect** [1] - 21:15
**respects** [2] - 22:20, 26:15
**respond** [3] - 23:9, 26:8, 32:11
**response** [7] - 21:12, 26:7, 28:11, 36:8, 36:24, 37:25, 39:1
**responses** [1] - 21:23
**result** [2] - 7:11, 7:20
**resumption** [1] - 3:6
**retooled** [1] - 16:5
**returned** [1] - 29:7
**review** [3] - 13:19, 14:16, 33:11
**RFPs** [1] - 39:14
**RICO** [1] - 38:9
**Robert** [1] - 2:6
**rolling** [1] - 39:4

**room** [1] - 25:8
**rounds** [1] - 27:21
**Rule** [2] - 21:4, 24:7
**rule** [1] - 21:22
**run** [1] - 3:21

## S

**S/Lisa** [1] - 41:19
**sanctioning** [1] - 32:3
**schedule** [30] - 4:4, 6:20, 7:1, 7:22, 9:23, 10:1, 10:6, 10:13, 10:17, 10:19, 11:9, 11:16, 12:19, 12:20, 25:8, 25:10, 25:11, 33:2, 33:5, 33:21, 34:17, 35:8, 35:9, 36:17, 37:5, 37:6, 37:12, 37:13, 37:21, 40:4
**scheduling** [4] - 4:12, 32:9, 32:15, 38:5
**scope** [2] - 24:9, 34:14
**screen** [1] - 20:25
**sealed** [1] - 40:15
**second** [2] - 18:2, 24:10
**Second** [3] - 3:10, 11:11, 34:3
**secret** [12] - 9:3, 14:12, 14:16, 14:21, 17:11, 18:10, 18:17, 21:24, 24:6, 24:11, 24:22, 24:23
**secrets** [17] - 3:24, 4:3, 12:16, 13:18, 14:7, 18:6, 19:3, 21:6, 21:16, 21:24, 22:10, 22:17, 22:22, 34:15, 36:21, 38:10, 39:22
**see** [16] - 6:2, 13:23, 13:24, 17:2, 17:20, 17:21, 18:3, 19:2, 20:25, 25:22, 29:16, 31:9, 37:15, 37:16, 39:5, 39:20
**seeking** [2] - 19:17, 28:20
**senior** [5] - 17:6, 19:8, 19:25, 20:6, 29:5
**sense** [5] - 5:15, 23:2, 23:11, 23:12, 37:13
**separate** [1] - 7:1
**September** [2] - 39:10, 39:25
**serious** [1] - 11:17
**served** [3] - 11:6, 36:22, 36:25

**serving** [1] - 37:3
**set** [10] - 7:22, 9:23, 10:13, 15:6, 21:13, 24:8, 33:2, 33:5, 34:17, 36:17
**setting** [1] - 4:15
**several** [4] - 3:9, 15:9, 20:10, 27:14
**sharing** [1] - 14:11
**Shaw** [1] - 2:12
**Shealy** [2] - 15:25, 19:14
**short** [1] - 12:7
**show** [2] - 18:17, 32:17
**showing** [1] - 3:21
**side** [3] - 5:6, 26:12, 28:16
**sides** [1] - 31:17
**significance** [1] - 33:12
**significant** [3] - 22:18, 32:18, 40:10
**simple** [1] - 5:8
**simply** [5] - 5:5, 15:13, 16:7, 28:23, 33:18
**single** [4] - 11:6, 15:11, 15:20
**sit** [1] - 20:3
**sitting** [1] - 21:21
**situated** [1] - 30:14
**six** [2] - 24:12, 24:21
**six-plus** [1] - 24:21
**size** [2] - 31:14, 40:8
**skill** [1] - 41:5
**skinnied** [1] - 16:20
**small** [1] - 15:17
**smile** [1] - 5:10
**solely** [1] - 22:2
**someone** [1] - 14:5
**sometimes** [3] - 5:4, 5:5, 5:7
**somewhat** [1] - 38:20
**sorry** [2] - 23:5, 27:14
**sort** [4] - 7:23, 11:24, 23:3, 23:14
**soundly** [1] - 6:8
**specific** [1] - 22:25
**speed** [1] - 9:9
**spoken** [1] - 15:16
**spreading** [2] - 28:11, 32:2
**stand** [1] - 10:21
**start** [7] - 5:9, 5:13, 5:17, 8:21, 13:10, 27:2, 39:3
**started** [3] - 3:7, 5:5, 28:6
**starting** [1] - 39:10

**statement** [1] - 12:8
**statements** [1] - 8:21
**States** [1] - 41:21
**states** [1] - 12:23
**STATES** [1] - 1:1
**status** [3] - 7:1, 9:3, 28:4
**staying** [1] - 20:12
**stenotype** [1] - 41:7
**stick** [1] - 23:23
**still** [6] - 7:4, 7:24, 8:7, 14:16, 17:13, 34:10
**stipulated** [1] - 34:3
**strap** [1] - 12:3
**strategy** [1] - 22:25
**Street** [1] - 2:13
**strike** [2] - 3:24, 20:18
**string** [2] - 30:20, 30:21
**strong** [1] - 11:25
**stuck** [1] - 17:23
**stuff** [1] - 19:13
**subjects** [1] - 20:16
**submit** [4] - 18:20, 25:16, 26:12, 26:13
**submitted** [1] - 6:7
**subpoena** [2] - 21:11, 21:12
**subset** [1] - 13:18
**substantial** [1] - 13:23
**substantially** [3] - 10:3, 10:8, 27:22
**suggest** [1] - 31:18
**suggesting** [4] - 22:16, 25:7, 26:22, 33:16
**summary** [1] - 4:19
**supervision** [1] - 17:15
**supplement** [7] - 21:22, 22:1, 22:13, 24:22, 24:23, 24:24, 25:2
**supplementation** [2] - 21:4, 21:15
**supplemented** [1] - 21:3, 21:8
**support** [3] - 22:23, 32:25, 39:16
**suppose** [1] - 26:21
**Sweeney** [15] - 2:11, 5:9, 14:4, 15:2, 19:6, 19:9, 27:8, 27:13, 30:2, 31:10, 32:10, 32:12, 36:15, 37:25, 39:7
**SWEENEY** [17] - 5:12, 15:4, 19:10, 23:25, 25:19, 25:22, 27:10, 27:14, 27:20, 31:12,

31:25, 32:13, 34:22, 35:2, 35:11, 38:3, 39:8
**switch** [1] - 35:8
**swoop** [1] - 35:25
**system** [1] - 33:10

## T

**target** [1] - 25:4
**team** [1] - 19:16
**technical** [6] - 12:11, 14:5, 14:13, 14:15, 19:12, 23:1
**TECHNOLOGIES** [2] - 1:7, 41:13
**Telecom** [1] - 30:15
**ten** [2] - 7:10, 31:13
**tend** [1] - 37:22
**Tennessee** [1] - 41:21
**TENNESSEE** [1] - 1:23
**terms** [13] - 16:8, 19:8, 22:14, 22:17, 22:22, 23:7, 24:1, 24:14, 26:15, 30:5, 33:25, 34:14, 36:17
**Testa** [1] - 31:1
**testified** [1] - 21:14
**testify** [1] - 19:20
**testimony** [2] - 23:17, 23:19, 29:5
**testing** [1] - 23:14
**THE** [54] - 1:1, 1:2, 1:15, 3:6, 5:16, 5:23, 6:2, 6:5, 6:16, 6:18, 6:22, 6:24, 8:6, 8:14, 12:5, 12:25, 13:8, 13:12, 14:25, 17:4, 17:12, 17:22, 19:5, 20:15, 20:24, 22:14, 23:3, 23:6, 23:8, 23:21, 25:16, 25:20, 25:25, 26:6, 26:11, 26:25, 27:7, 27:11, 27:16, 29:3, 29:20, 30:16, 31:4, 31:21, 32:7, 34:19, 35:1, 35:3, 36:6, 37:10, 37:19, 38:19, 39:6, 40:15
**theirs** [1] - 40:1
**themselves** [2] - 20:11, 23:15
**they've** [5] - 18:3, 19:4, 32:23, 33:25, 40:11
**thinking** [1] - 31:14
**third** [2] - 9:1, 21:13
**three** [7] - 13:25,

15:15, 16:23, 18:9, 18:10, 22:4

**throw** [1] - 11:20

**Thursday** [4] - 25:24, 25:25, 26:3

**tight** [2] - 12:21, 23:24

**timeline** [1] - 25:20

**timing** [1] - 8:22

**today** [3] - 10:21, 36:24, 39:2

**tomorrow** [2] - 25:8, 39:2

**took** [3] - 10:5, 21:9, 29:10

**top** [1] - 7:8

**topics** [1] - 4:24

**trade** [29] - 3:24, 4:3, 9:3, 12:16, 13:18, 14:7, 14:12, 14:16, 14:21, 17:11, 18:6, 18:9, 18:17, 19:2, 21:6, 21:16, 21:24, 22:10, 22:17, 22:22, 24:6, 24:11, 24:22, 24:23, 34:15, 36:21, 38:10, 39:22

**traded** [1] - 30:6

**traffic** [1] - 13:6

**transcript** [1] - 41:6

**tremendous** [1] - 40:13

**trial** [4] - 4:15, 11:14, 22:11, 25:13

**tried** [1] - 35:13

**trim** [1] - 22:10

**true** [2] - 17:24, 41:6

**truly** [1] - 12:12

**try** [6] - 4:16, 4:21, 11:1, 11:24, 19:14, 26:3

**trying** [10] - 4:5, 5:7, 21:21, 25:3, 26:15, 26:18, 27:11, 33:21, 34:22, 37:17

**TUESDAY** [1] - 1:17

**Tuesday** [2] - 3:1, 25:23

**Turn** [1] - 5:24

**turn** [1] - 37:4

**two** [15] - 9:5, 9:6, 11:10, 16:2, 16:24, 16:25, 18:9, 18:10, 21:10, 24:4, 24:23, 34:9, 38:1, 39:8, 39:18

**typically** [1] - 3:20

## U

**ultimately** [2] - 29:7,

29:10

**unanticipated** [2] - 32:18, 34:23

**uncertainty** [1] - 28:9

**under** [4] - 12:20, 16:8, 16:16, 19:23

**underlying** [1] - 25:2

**understood** [1] - 6:21

**unheard** [1] - 19:3

**United** [1] - 41:21

**UNITED** [1] - 1:1

**unlearn** [1] - 14:23

**unspoken** [1] - 10:17

**unusual** [1] - 29:12

**up** [12] - 5:24, 6:3, 7:15, 7:17, 9:9, 16:24, 22:8, 32:22, 36:9, 37:6, 38:2, 40:16

**usage** [1] - 16:10

## V

**various** [2] - 16:21, 20:2

**vast** [1] - 24:20

**vehicle** [1] - 11:8

**vie** [1] - 24:20

**view** [3] - 7:11, 8:11, 18:10

**vis** [1] - 24:20

**vis-a-vie** [1] - 24:20

**voluntarily** [1] - 16:18

**vs** [2] - 1:6, 41:12

## W

**wait** [1] - 37:15

**waive** [1] - 35:20

**wants** [4] - 3:12, 31:5, 31:6, 35:20

**Washington** [1] - 2:7

**wasteful** [1] - 8:12

**watch** [1] - 5:25

**ways** [1] - 12:12

**week** [5] - 11:5, 14:4, 33:23, 38:16, 39:11

**well-known** [2] - 29:6, 29:9

**Western** [1] - 41:21

**whole** [2] - 35:8, 35:9

**window** [1] - 35:19

**Winthrop** [1] - 2:12

**witness** [1] - 18:13

**witnesses** [6] - 10:20, 11:3, 19:21, 35:23, 35:25, 40:12

**wonderful** [1] - 19:15

**word** [1] - 39:7

**worried** [1] - 6:19

**wrap** [2] - 36:9, 38:2

**wrap-up** [1] - 36:9

**written** [1] - 11:6

**wrote** [2] - 28:11, 32:2

## Y

**y'all** [1] - 40:18

**year** [2] - 7:18, 39:25

**years** [4] - 11:10, 15:8, 15:9, 20:11

**yesterday** [1] - 35:17