**Public Version**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 21-1417-JPM |
| | ) | |
| v. | ) | [ **Public Version** ] |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.'S OPENING BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER ON QORVO INC'S REQUEST FOR INSPECTION

Dated: August 16, 2023

OF COUNSEL:

PILLSBURY WINTHROP SHAW
PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

BAYARD, P.A.

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc. and Akoustis, Inc.*

Public Version

Theresa A. Roozen
Robert C.F. Pérez
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
shani.rivaux@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*

Public Version

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND .................................................................................................. 4

III. ARGUMENT ....................................................................................................... 7

    A.   Good Cause Exists for the Court to Issue a Protective Order. ................................. 7

        1.   The Extremely Broad Scope of Qorvo's Request Infringes on Akoustis' and Its Employees' Confidentiality and Privacy Interests. ......................... 8

        2.   Qorvo's Unilaterally-Set Protocol is Bereft of Safeguards for Akoustis' Valid Interests. ......................................................................... 10

        3.   Good Cause for a Protective Order Further Exists as Qorvo Cannot Meet the Standard for Even Allowing a Forensic Inspection Under the Circumstances. ......................................................................... 15

        4.   Qorvo's Request Imposes Undue Burden and Expense Given that Akoustis Is Already Undertaking a Comprehensive Inspection. .............. 19

    B.   The Court May Order the Parties to Meet and Confer on A Mutually Acceptable Inspection Protocol. ..................................................................... 20

IV.  CONCLUSION .................................................................................................. 20

i

Public Version

# TABLE OF AUTHORITIES

Page(s)

Cases

*Advante Intern. Corp. v. Mintel Learning Technology*,
 No. C 05-01022 JW (RS), 2006 WL 3371576 (N.D. Cal. Nov. 21, 2006)......................12, 13

*Ameriwood Indus., Inc. v. Liberman*,
 No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006).........................10, 11, 15

*Audio Visual Innovations, Inc. v. Burgdolf*,
 NO. 13-10372, 2014 WL 505565 (E.D. Mich. Feb. 3, 2014)...........................................10, 13

*Brocade Communications Systems, Inc. v. A10 Networks, Inc.*,
 No. 10-CV-03428-LHK, 2012 WL 70428 (N.D. Cal. Jan. 9, 2012) ...............................12, 13

*Calyon v. Mizuho Securities USA Inc.*,
 No. 07CIV02241RODF, 2007 WL 1468889 (S.D. N.Y. May 18, 2007)...................13, 15, 17

*Cenveo Corp. v. Slater*,
 No. 06-CV-2632, 2007 WL 442387 (E.D. Pa. Jan. 31, 2007)..........................................10, 11

*Extended Stay Am., Inc. v. Woodspring Hotels, LLC*,
 No. 16-cv-2744, 2017 WL 116871 (D. Kan. Jan. 12, 2017) ...........................................11, 12

*FCA US LLC v. Bullock*,
 329 F.R.D. 563 (E.D. Mich. Jan. 18, 2019).....................................................................9, 15

*Ford Motor Co. v. Edgewood Prop., Inc.*,
 257 F.R.D. 418 (D.N.J. 2009)...............................................................................................18

*Genworth Financial Wealth Management, Inc. v. McMullan, et al.*,
 267 F.R.D. 443 (D. Conn. 2010)..........................................................................................13

*IHS Global Limited v. Trade Data Monitor LLC*,
 No. 2:18-cv-01025-DCN, 2019 WL 7049687 (D.S.C. Dec. 23, 2019) ...........................10, 15

*IsoNova Techs. LLC v. OvaInnovatons, LLC*,
 No. 20-cv-0071, 2021 WL 7185227 (N.D. Iowa Jul. 28, 2021)......................................14, 15

*List Industries, Inc. v. Umina*,
 Case No. 3:18-cv-199, 2019 WL 1933970 (S.D. Ohio May 1, 2019)..........................9, 10, 14

*M-I L.L.C. v. Stelly*,
 Civil Action No. H-09-1552, 2011 WL 12896025 (S.D. Tex. Nov. 21, 2011) .................9, 13

Public Version

*Pearson v. Miller*,
   211 F.3d 57 (3d Cir. 2000)........................................................................................7

*Safelite Group, Inc. v. Lockridge*,
   No. 21-cv-4558, 2023 WL 4747987 (S.D. Ohio July 25, 2023)...............................15

*Source One Direct, Inc. v. Digitas, Inc.*,
   No. 1:11-CV-01262-JEC-AJB, 2011 WL 13319641 (N.D. Ga. June 29, 2011) ..............13, 15

*Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*,
   No. 20 CV 7404, 2022 WL 2316228 (N.D. Ill. June 28, 2022).........................8, 14, 15, 16, 17

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure,
   Rule 26(b)(1)...................................................................................................6, 12
   Rule 26(b)(2)........................................................................................................8
   Rule 26(c)...........................................................................................................8
   Rule 26(c)(1)...............................................................................................2, 6, 19
   Rule 34............................................................................................................8, 10
   Rule 34(a)............................................................................................................8

Public Version

## I.     INTRODUCTION

Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis") respectfully move this Court for a protective order to deny Plaintiff Qorvo, Inc. ("Qorvo") the ability to proceed with its unilaterally set, extraordinarily broad, and unduly burdensome Request for Inspection ("Request") and instead allow Akoustis' forensic expert to proceed with the examination for Qorvo-related content that Akoustis commissioned months ago, or, in the alternative,  appoint a neutral, third-party forensic expert to work with the parties to determine and implement an appropriate inspection.

What Qorvo proposes is akin to execution of a search warrant, not discovery in civil litigation, and Qorvo's proposed search would amount to giving an opposing party and competitor free rein access to nearly all of Akoustis' information systems with no specificity as to what particular documents need to be identified, for them to conduct a sweeping assessment for legal relevance far beyond the scope of a typical forensic examination. There is no basis for this broad inquisition, particularly because Qorvo cannot show that Akoustis has failed to meet its discovery obligations or that Qorvo sought the requested information through less intrusive means.

Unlike the typical forensic inspection, Qorvo's Request demands that Akoustis simply provide Qorvo's examiner with unfettered access to all personal and company computers, network servers, and all other storage media in Qorvo's possession, custody or control that have been used, owned, leased or operated by no fewer than 31 current and former Akoustis employees over an eight-year period, from 2015 to 2023. Qorvo seeks this unilateral access, without any consideration of proportionality, without suitable protection for confidential, privileged, and private information of Akoustis and its employees, and without giving Akoustis the opportunity to review any documents resulting from the examination for relevance. Instead, the Request anticipates that

Public Version

Qorvo's examiner will be permitted to evaluate Akoustis documents exclusively to determine their relevance to Qorvo's claims. This far exceeds what the Federal Rules of Civil Procedure ("FRCP") authorize and, if allowed, would work undue burden, expense, and oppression on Akoustis and infringe on the confidentiality, privacy, and privilege interests of the company and its individual former and current employees. (*See also* Declaration of Jerry Bui in Support of Akoustis' Motion for Protective Order ("Bui Dec."), filed concurrently herewith, ¶¶ 14-19 (discussing typical forensic inspections) and ¶¶ 20-28 (discussing why Qorvo's Request is atypical).) Qorvo's Request is the exact type of discovery demand against which this Court may grant a protective order under FRCP Rule 26(c)(1).



(Declaration of David L. Stanton in Support of Akoustis' Motion for Protective Order ("Stanton Dec."), filed concurrently herewith, ¶ 16 and Exh. L.)

Akoustis stands ready and willing to work with Qorvo to determine an appropriate protocol for the inspection, including proportional systems for imaging and defined parameters for the inspection, and Akoustis has repeatedly offered to agree upon a third-party neutral forensic expert to conduct the examination. (Stanton Dec. at ¶¶ 3-12 and Exhs. B through I.) Qorvo, however, rejected that proposal, terminated the parties' meet and confer, and, on August 11, 2023, lodged

Public Version

an *ex parte* letter with the Court (Dkt. 270) seeking authorization for its unilateral inspection.[1] Qorvo seeks extraordinarily relief here, insofar as, in cases where the responding party has not failed or refused to perform its discovery obligations, and where alternative and less burdensome discovery procedures remain available to obtain the requested information, courts have refused to enforce a request for inspection, particularly one as overbroad as Qorvo's. Even where inspections are allowed to proceed, courts have regularly denied one party's attempt to unilaterally set the procedures for an inspection and instead ordered the parties to meet and confer on a mutually agreed upon inspection protocol to be conducted by either the responding party's expert or a neutral, third-party forensic expert.

Alternatively, Akoustis is willing to stipulate to a Court-appointed third-party neutral to conduct an inspection upon which both parties can rely, and who can help the parties negotiate the appropriate scope and parameters of the inspection. (Stanton Dec. at ¶ 17.) What Akoustis is not willing to agree to is a unilateral and unbounded inspection by Qorvo that contains no specific parameters to ensure proportionality or to minimize business disruptions or disclosures of non-relevant private, confidential, and privileged information. Qorvo's expansive Request amounts to unprecedented violation of Akoustis interests. Therefore, Akoustis asks the Court for a protective order against the Request.

---

[1] In its letter, Qorvo provided case law authority that had never previously been shared with Akoustis, and asked that the Court, "compel Akoustis to comply with the inspection protocol attached as Exhibit A." Exhibit A was a new version of the proposed inspection protocol not previously seen by Akoustis. (Stanton Dec. at ¶ 15.)

**Public Version**

## II.    BACKGROUND

On May 5, 2023, Qorvo served the Request for Akoustis to "allow Qorvo's computer forensic expert to inspect, image, copy, test, or sample electronically stored information on any and all computers, network file servers and/or associated electronic or network file storage devices used by, owned by, or in the possession custody or control of the current and former Akoustis employees, officers, directors, agents, and/or representatives accused of misappropriating Qorvo's Confidential Information." (Stanton Dec. at ⁋ 2 and Exh. A.) The Request identified 31 current and former Akoustis employees, an 8 plus-year time range from January 1, 2015 to the present, and non-exclusive examples of the systems and devices requested to be imaged and inspected ranging from individuals' personal devices, email accounts and online storage accounts, along with production databases and file servers that Akoustis actively uses to run its business, including an engineering server that consists of over 24 terabytes of material in active use by Akoustis' employees, and a "ceph" storage server that is the repository for over 153 terabytes of raw monitoring data from Akoustis' production facility. (*Id*.) The Request did not address the complexity of imaging such large database systems, the broad disclosure of non-relevant information, or the disruption this would cause to Akoustis' business (and Qorvo would not agree during meet and confer to modify its Request to address these concerns). (Stanton Dec. at ⁋ 18.)

The Request attached a "protocol" for the inspection, which identified zero forensic measures. (Stanton Dec. at ⁋ 2 and Exh. A.) It proposed that Qorvo's examiner search, review and analyze Akoustis' data, but did not limit the search to particular documents or particular search results to be evaluated and traced. Instead, Qorvo's protocol demanded that its forensic examiner undertake an unbounded evaluation of Akoustis systems and make sweeping relevance assessments for whatever Qorvo wants to argue constitutes "[p]roprietary, trade secret, intellectual

4

property or other property belonging to, owned by, entrusted to, created in whole or in party by Qorvo…." (*Id.*) Next, the protocol demanded an even broader relevance assessment, for "[i]tems derivative of proprietary, trade secret, intellectual property or other property belonging to, owned by, entrusted to, created in whole or in part by Qorvo." (*Id.*) Then, the protocol demanded that Qorvo's forensic examiner be permitted to interpret what electronic communications "involv[e] Qorvo's Confidential Information," without specifying what that term means. (*Id.*) Finally, the protocol demanded that the examiner evaluate computer-generated activity and artifacts "deemed relevant to the matter between January 1, 2015 to the present." (*Id.*) Each of these provisions involve legal relevance assessments beyond the scope of a typical "forensic" examination. (Stanton Dec. at ¶ 9; Bui Dec. at ¶¶ 22-25.) This is especially true here, where legal relevance pertains to documents describing highly complex and technical BAW filter engineering, development, testing, and fabrication activities.

Qorvo later slightly revised this protocol, but importantly, no version limits the scope of the broad interpretations of legal relevance that the examiner was to undertake. In the revised protocol served July 26, 2023, Qorvo did finally agree to let Akoustis review documents identified by its expert for privilege, but only for privilege and only *after* Qorvo's expert reviewed those materials, which would affect a waiver. (Stanton Decl. ¶ 9 and Exh. F.) In the version of the protocol Qorvo submitted with the Court on August 11, 2023 (Dkt. 270), a new provision was added, requiring Qorvo's examiner to lodge a declaration with the Court agreeing not to communicate with Qorvo's counsel about "document like files … until Akoustis had the opportunity to review the files for privilege," but the protocol was also newly modified to give Akoustis just one week to conduct its privilege review, regardless of the number of documents

**Public Version**

identified by Qorvo's examiner.[2] (Dkt. 270, Exh. A.) Given the breadth and lack of any proportionality limits in Qorvo's inspection protocol, this could be extraordinarily burdensome. Qorvo did not specify any forensic steps that its examiner would undertake, did not place any time limits or other constraints on the scope of the examination, did not limit the number of devices for proportionality or address Akoustis' voluminous servers and databases, and refused to allow Akoustis to review documents for relevance and responsiveness before they were produced to Qorvo. (*Id.*)

In its objections to Qorvo's Request, served on June 5, 2023, Akoustis proposed that a third-party neutral be engaged to conduct the inspection. (Stanton Dec. at ¶ 3 and Exh. B.) Throughout the next weeks, the parties met and conferred several times, and Akoustis continued to propose the use of a third-party neutral, offered a draft protocol for the inspection if it were not to include a third-party neutral, and provided case law substantiating its position and responding to the one case that Qorvo cited. (*Id.* at ¶¶ 4-12.) Qorvo never provided any additional case law during the meet and confer. On August 10, 2023, Qorvo abandoned further meet and confer efforts, without responding to the case law authority Akoustis provided, indicated its intent to seek guidance from the Court, and sent a draft joint letter. (*Id.* at ¶ 13.) On August 11, 2023, unwilling to wait for Akoustis to provide a statement of its position in the joint letter, Qorvo submitted an *ex parte* letter citing to some authority Qorvo never previously raised with Akoustis, but which is distinguishable in important ways, as discussed below. The letter asked the Court to "compel Akoustis to comply with the inspection protocol attached as Exhibit A." Exhibit A was new version

---

[2] Qorvo's revised also protocol states, "[T]he parties agree that providing images to Qorvo's expert for inspection does not constitute a waiver of any applicable claims of privilege for communications captured in the images," but Akoustis never agreed that deliberate production of privileged documents to an opponent would not constitute a waiver.

of the protocol containing additional provisions not previously discussed with Akoustis. (*Id.* at ¶¶ 14-15.)

## III. ARGUMENT

### A. Good Cause Exists for the Court to Issue a Protective Order.

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," but such discovery must also be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under FRCP Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" "The court, in its discretion, is authorized by this subsection to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests—that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

Here, there are several good cause grounds for a protective order: First, the Request will cause Akoustis and its current and former employees burden, oppression, annoyance, and embarrassment in that the extremely broad scope of the Request subjects to disclosure confidential and private information including employees' personal documents and Akoustis' confidential business information, without any determination of relevance before the information is accessed by Qorvo and its examiner. Second, the injury to Akoustis' and its employees' confidentiality and privacy interests is further compounded by the unbounded scope of Qorvo's proposed protocol,

**Public Version**

Qorvo's failure to define the particular documents of interest, the lack of specific parameters or forensic measures, and the failure to address the technical limitations and business disruption implicit in imaging voluminous network production servers and databases. Third, the Request imposes undue burden, expense, and oppression on Akoustis as courts consider the type of forensic inspection that Qorvo demands to be an extraordinary discovery procedure that is not yet permitted under applicable federal law given that Akoustis has not failed to comply with its discovery obligations and other less burdensome discovery procedures exist to obtain the sought-after information. Under such circumstances, many federal courts have denied a party the ability to conduct a forensic inspection entirely, much less one with as oppressive a scope and spare in protective measures as Qorvo's. Fourth, Qorvo's Request imposes undue burden, expense, and oppression on Akoustis, because it is in the best position to undertake a comprehensive effort to locate Qorvo-related documents within its systems, and a unilateral Qorvo inspection would cause unnecessary duplication of effort and cost.

> **1.    The Extremely Broad Scope of Qorvo's Request Infringes on Akoustis' and Its Employees' Confidentiality and Privacy Interests.**

As noted above, Qorvo's Request seeks unfettered access to all personal and company computers, network servers, and all other storage media in Akoustis' possession, custody or control that have been used, owned, leased or operated by no fewer than 31 current and former Akoustis employees over an eight-year period, from 2015 to 2023. It does not describe the specific documents or categories of documents being sought or how they are relevant to Qorvo's claims; it simply demands that Qorvo's examiner be granted full access so that it can hunt for and determine which documents constitute or are derivative of "Qorvo's Confidential Information," an entirely unbounded term. The extremely broad scope of this Request is therefore improper under FRCP Rule 34 and subjects to disclosure all kinds of irrelevant, unresponsive, confidential business, and

8

confidential personal information of Akoustis and its current and former employees. This is not allowed under the FRCP.

As stated by the Advisory Committee itself, the ability of a party to inspect under Rule 34 of the FRCP "is not meant to create a routine right of direct access to a party's electronic information system…. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems." Fed. R. Civ. P. 34 Advisory Committee Note to 2006 Amendment.[3] Courts will deny a request that "casts too wide a net," like Qorvo's does here. *See, e.g., Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, No. 20 CV 7404, 2022 WL 2316228, at *1-3 (N.D. Ill. June 28, 2022) ("Plaintiff's request is not proportional to the needs of the case because a forensic examination would necessarily involve the examination and collection of more information than is required to support Plaintiff's claims. Simply put, '[t]he discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest.'").

Courts have also rejected requests to image and inspect to the extent they put at risk the responding party's confidentiality and privacy interests. Where a request seeks to image sources that contain individuals' personal information and documents—as would certainly be the case here given the demand to access personal computers and devices, ***including mobile phones***, and the likely existence of personal documents on work devices—the court's interest in preserving confidentiality and privacy rights outweighs the requesting party's desire for broad access. *List*

---

[3] "As with any other form of discovery, issues of burden and intrusiveness raised by requests to test or sample can be addressed under Rules 26(b)(2) and 26(c). Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."

*Industries, Inc. v. Umina*, Case No. 3:18-cv-199, 2019 WL 1933970 (S.D. Ohio May 1, 2019); *see also FCA US LLC v. Bullock,* 329 F.R.D. 563, 569 (E.D. Mich. Jan. 18, 2019) ("the Court finds that [responding party's] privacy concerns also weigh against permitting imaging of [her] devices"; also citing that imaging is not "proportional to the needs of the case"). Similar deference is given to preserving the responding party's interest in protecting its confidential business information. *M-I L.L.C. v. Stelly*, Civil Action No. H-09-1552, 2011 WL 12896025, at *2-3 (S.D. Tex. Nov. 21, 2011) (holding that allowing plaintiff full access to defendant's electronic storage devices would unnecessarily jeopardize defendant's trade secrets; thus the court appointed an independent expert to examine the devices).

Qorvo's Request casts such a wide net that it will indisputably capture confidential business and personal information. Since Qorvo's proposed protocol does not give Akoustis the opportunity to review for relevance before information is turned over to Qorvo and provides no clear parameters for what is and is not within scope of the investigation, the Request makes no meaningful distinction between legally relevant and irrelevant information. It would subject to disclosure all of Akoustis' and its employees' confidential and private documents whether they are relevant or not. As such, the Request fails to comply with the requirements of FRCP Rule 34 and will result in definite injury to Akoustis' and its employees' confidentiality and privacy interests. It should not be allowed to proceed.

> **2.      Qorvo's Unilaterally-Set Protocol is Bereft of Safeguards for Akoustis' Valid Interests.**

Good cause for a protective order further exists because Qorvo's Request and attendant protocol is unilaterally set and lacks any protection for Akoustis' valid interests. Even when a forensic inspection is otherwise allowed, courts have consistently ordered that procedures be put in place to safeguard against undue intrusiveness and protect confidentiality, privacy, and privilege

interests of the responding party. *See, e.g., Audio Visual Innovations, Inc. v. Burgdolf*, NO. 13-10372, 2014 WL 505565, at *3-4 (E.D. Mich. Feb. 3, 2014) (ordering extensive protocol for inspection by responding party's examiner and a process for sequestering information on the basis of relevance, privilege or confidentiality); *List Industries, Inc. v. Umina*, 2019 WL 1933970, at *6 (ordering responding party's own expert to image hard drives, remove confidential information, and then provide information to requesting party's expert); *IHS Global Limited v. Trade Data Monitor LLC*, No. 2:18-cv-01025-DCN, 2019 WL 7049687, at *5-6 (D.S.C. Dec. 23, 2019) (after appointing a third-party neutral to conduct the inspection, ordering parties to meet and confer on a protocol "taking particular care to prevent the disclosure of any privileged or personal, unresponsive information within the forensic image of the laptop"); *see also* Bui Dec. at ¶ 19 (noting that typical forensic inspections involve detailed protocols negotiated by the parties) and ¶¶ 20-21 (discussing how the lack of detailed protocol in Qorvo's Request is highly unusual).

In the sole case Qorvo previously cited during its meet and confer with Akoustis—*Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 442387 (E.D. Pa. Jan. 31, 2007)—a protocol that protected the responding party's interests and reduced its burden was key to the court's rationale in allowing the inspection to proceed. The *Cenveo* court found an earlier case—*Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006)—instructive and borrowed from its opinion at length in ruling on the plaintiff's request to image the defendants' hard drives. 2007 WL 442387 at *2. In *Ameriwood*, involving another request to image computers, the court recognized the defendants' privacy concerns over the information contained on their computers, but allowed the inspection to proceed because the protocol for the inspection "sufficiently addresse[d] these interests." 2006 WL 3825291 at *5. The court established a "three-step imaging, recovery, and disclosure process [which] provides the requesting party sufficient

**Public Version**

access to information that is not reasonably accessible and ensures the process does not place an undue burden on the responding party." *Id.* The parties were ordered to meet and confer on logistics of the inspection, "keeping in mind the Court's directive to minimize the burden and inconvenience caused to defendants [the responding party]." *Id.* at *6. The *Cenveo* court adopted this same three-step process in its decision which included allowing responding party's expert to be present during the inspection and responding party to review the documents first for privilege and responsiveness before producing to requesting party. 2007 WL 442387 at *2-3. By contrast, Qorvo's proposed protocol has no protections for Akoustis' and its employees' confidentiality and privacy concerns and contains no procedures to reduce the burden on Akoustis to respond to the Request. Thus, Qorvo's Request would not even be authorized under *Cenveo*.

In its August 11, 2023 *ex parte* letter to the Court, Qorvo cites to an additional case, *Extended Stay Am., Inc. v. Woodspring Hotels, LLC*, No. 16-cv-2744, 2017 WL 116871 (D. Kan. Jan. 12, 2017), in attempt to argue that the procedure it included in its latest revised protocol to allow Akoustis to review and segregate privileged materials is sufficient to ameliorate all of Akoustis' objections and concerns. But Qorvo fails to mention that the protocol in *Extended Stay* not only contained procedures that protected the responding party's privilege interest but also safeguards against disclosure of irrelevant, confidential, and private information by limiting searches to data responsive to certain key words, date ranges, or other search criteria and also ordering the parties to confer in good faith to "attempt to craft searches that are reasonably designed to primarily capture information that is likely to be discoverable within the scope of Fed. R. Civ. P. 26(b)(1)." *Id.* at *2. Qorvo's protocol, even with the newest additions allowing Akoustis the opportunity to review for privilege, does not address Akoustis' relevance, confidentiality, and privacy concerns at all.

12

Public Version

The protocol for the inspection must be mutually acceptable to both parties; the requesting party is not entitled to unilaterally set the conditions of the inspection. *See, e.g., Advante Intern. Corp. v. Mintel Learning Technology*, No. C 05-01022 JW (RS), 2006 WL 3371576, at *1 (N.D. Cal. Nov. 21, 2006); *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2012 WL 70428, at *3 (N.D. Cal. Jan. 9, 2012). In both *Advante* and *Brocade Communications,* the district courts considered a party's request to image another party's hard drives. In decisions that employ identical language, the district courts held that the party requesting inspection of hard drives had not shown "that it would be appropriate to allow its retained expert to conduct such an examination, ***until and unless*** the parties reach a stipulation as to the examination protocol." 2006 WL 3371576 at *1; 2012 WL 70428 at *3 (emphasis added). Even though the requesting party had in those cases suggested a "double blind procedure" to protect confidentiality and privilege and also allowed the responding party to have its own expert present at the inspection—neither procedure was offered in the present case by Qorvo despite Akoustis' request—the courts still held that requesting party "is not entitled to set the conditions of the inspection unilaterally nor to select the person who will perform it." *Id.* The courts continued: "If the parties cannot agree that the inspection can be carried out by [requesting party's] expert under observation by an expert retained by [responding party], then the parties shall attempt to agree on a procedure for selecting a neutral third party to conduct the inspection." *Id.* "Additionally, whatever documents or data may be recovered in the inspection, whether existing documents, recovered deleted documents, or other information, should all be produced first to counsel for [responding party] for its review ***as to relevance, responsiveness, and privilege***, prior to any disclosure to [requesting party] or its counsel." *Id.* (emphasis added).

The *Advante* and *Brocade* courts are not the only federal courts that have determined that

the proper protocol for an inspection should employ a neutral, third-party forensic expert. Numerous courts have rejected a party's request to use its own expert to conduct the inspection it demanded and instead ordered that the inspection and imaging be conducted by a neutral, third-party expert or even by the responding party's own expert. *See, e.g., Source One Direct, Inc. v. Digitas, Inc.*, No. 1:11-CV-01262-JEC-AJB, 2011 WL 13319641, at *6 (N.D. Ga. June 29, 2011) (rejecting requesting party's argument that allowing responding party's own expert or a neutral to perform the search could "hide or color, rather than expose, direct evidence"); *Calyon v. Mizuho Securities USA Inc.*, No. 07CIV02241RODF, 2007 WL 1468889, at *5 (S.D. N.Y. May 18, 2007) (denying plaintiff's motion to use its own expert to conduct an inspection of defendants' personal computers and instead allowing defendants to use their own expert, explaining: "Calyon's argument about proper incentives is simply too generalized a basis for granting it *carte blanch* access to individual Defendants' personal hard drives…"); *Genworth Financial Wealth Management, Inc. v. McMullan, et al.*, 267 F.R.D. 443 (D. Conn. 2010) (appointing third-party neutral with costs to be split by the parties); *M-I L.L.C. v. Stelly*, 2011 WL 12896025 (appointing independent expert to guard against undue intrusiveness); *Audio Visual Innovations, Inc. v. Burgdolf*, 2014 WL 505565 (ordering imaging to be performed by responding party's own expert); *List Industries, Inc. v. Umina*, 2019 WL 1933970 (ordering imaging to be performed by responding party's own expert).[4]

---

[4] In its August 11, 2023 *ex parte* letter to the Court, Qorvo cites to *IsoNova Techs. LLC v. OvaInnovatons, LLC,* No. 20-cv-0071, 2021 WL 7185227 (N.D. Iowa Jul. 28, 2021) to support its argument that its own expert should be allowed to perform the inspection. The specific circumstances in which the *IsoNova* court held that the requesting party's expert should be allowed to conduct the inspection do not apply in the present case. In *IsoNova*, the expert explicitly wanted to run a set of tests to determine whether and when certain files were accessed or modified. 2021 WL 7185227 at *1. The responding party proposed that the requesting party's expert can direct a third-party neutral to run the tests it wanted. *Id.* Given that the requesting party's expert would be testifying on the tests at trial, the court found that it would be unfair to "hamstring" the testifying expert by having him direct a neutral expert to run the tests. *Id.* at *3. Those circumstances do not exist here: Qorvo has persistently **refused to** identify any tests or analytics that its examiner will run, despite requests by Akoustis that it provide that information (and it never

Public Version

The appropriate procedure in this case should thus be to order the parties to meet and confer to agree on a mutually acceptable protocol for the inspection, to be conducted by either Akoustis' own expert or a Court-appointed third-party neutral.

> ### 3. Good Cause for a Protective Order Further Exists as Qorvo Cannot Meet the Standard for Even Allowing a Forensic Inspection Under the Circumstances.

The need for a protective order against Qorvo's Request is underscored by the fact that under the circumstances, where Akoustis has not failed to comply with its discovery obligations and less burdensome alternative means of discovery have not yet been exhausted, a forensic inspection is not even appropriate. Federal courts have said many times that a request to inspect and image a party's computers, servers, and the like is considered an "extraordinary remedy" that is *only* allowed when the demanding party can show actual evidence that the responding party failed to comply with its discovery obligations. *See, e.g., Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, 2022 WL 2316228 at *2 ("forensic examinations are an extraordinary remedy"); *IHS Global Limited v. Trade Data Monitor LLC*, 2019 WL 7049687 at *3 (citing *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) among others); *Calyon v. Mizuho Securities USA Inc.*, 2007 WL 1468889; *Source One Direct, Inc. v. Digitas, Inc.*, 2011 WL 13319641 (as the record did not reflect that defendant had engaged in misconduct or submitted incomplete discovery, plaintiff is not entitled to direct access to the laptops sought); *Ameriwood Indus., Inc. v. Liberman*, 2006 WL 3825291. Because courts are "cautious" in granting forensic imaging and inspection given the

---

previously identified its examiner as a testifying expert). Based on the broad scope of the Request, what Qorvo seeks to have its examiner do is not run tests, but to perform a sweeping relevance assessment. *IsoNova* does not in any way support Qorvo's position that its examiner should be allowed free rein to make relevance determinations based on document contents (as opposed to a forensic analysis of metadata). Further, Akoustis is proposing that the parties stipulate to (or that the Court select) a qualified, third-party neutral forensic expert to perform the inspection at their own direction, based upon a reasonable protocol, not at the direction of Qorvo's expert. *See IsoNova*, 2021 WL 7185227 at *3 (recognizing that courts have ordered inspections to proceed with third-party neutrals who perform the inspection as the neutral deems necessary).

significant interests implicated by such a procedure, inspections are "typically only permitted where there has been a showing of noncompliance with discovery rules." *IHS Global*, 2019 WL 7049687 at \*3, citing *John B. v. Goetz*, 531 F.3d at 460; *Tireboots by Universal Canvas*, 2022 WL 2316228 at \*2. This is true even in trade secret cases. The mere fact that a trade secret claim has been asserted "does not give [requesting party] free reign to examine all of [responding party's] electronic devices." *FCA US LLC v. Bullock,* 329 F.R.D. at 568 (holding that even though the information sought on defendant's computer was "certainly important" to trade secret claim, plaintiff had not offered evidence that defendant was withholding information and thus plaintiff's request to image defendant's computer was denied).[5]

*Tireboots by Universal Canvas*, a recent decision by the District Court in the Northern District of Illinois, is instructive. Similar to the present case, in *Tireboots*, which involved deceptive trade practice, trademark and trade dress infringement claims under federal and Illinois law, the plaintiff had asked to perform a forensic inspection of "all digital data and analytical tools related to Defendants' business presence online." 2022 WL 2316228 at \*1. After reviewing relevant federal law from various jurisdictions and concluding that inspections are typically only permitted where there has been a showing of discovery non-compliance, the court held that it "must conduct a fact-intensive inquiry, considering the specific allegations and circumstances of the case, and taking into account: (1) the relevance of the requested information as it pertains to

---

[5] In its August 11, 2023 *ex parte* letter to the Court, Qorvo cites to *IsoNova Techs. LLC v. OvaInnovatons, LLC,* No. 20-cv-0071, 2021 WL 7185227 (N.D. Iowa Jul. 28, 2021) and *Safelite Group, Inc. v. Lockridge*, No. 21-cv-4558, 2023 WL 4747987 (S.D. Ohio July 25, 2023) as evidence that "courts routinely order forensic inspections in trade secret cases," a concept that Akoustis does not dispute. However, *IsoNova* and *Safelite* also discuss the importance of considering confidentiality and privacy interests in assessing the appropriateness of an inspection protocol and the cautious attitude that courts have taken when considering a request that is "extremely broad in nature"—as is Qorvo's Request. These cases are consistent with the body of cases Akoustis cites in this brief that make clear that a high standard must be met and suitable safeguards must be in place before a forensic inspection can be authorized.

**Public Version**

the heart of the case; (2) the invasiveness of the RFI, and in particular whether Plaintiff has exhausted other less intrusive means of collecting the same information; and (3) the burden the RFI places on Defendants." *Id.* at *2.

The *Tireboots* plaintiff failed on all three factors. On relevance, plaintiff argued that the forensic examination would "retrieve 'highly relevant' evidence of Defendants' infringement, false advertising, false designation or origin, and cybersquatting, as well as information needed to prove damages," but the court found that the wide breadth of plaintiff's RFI meant that the "connection between all of Defendant's electronic data and Plaintiff's claims is tenuous at best." *Id.* On invasiveness, the court held that plaintiff had not exhausted other methods of collecting the information it sought, such as serving requests for production. *Id.* at *3. Even though plaintiff contended that document requests would not capture the information sought, the court held the line and said: "without having attempted to obtain this information through less intrusive data platforms or discovery methods, Plaintiff's assertions are unsubstantiated." *Id.* On the burden aspect, the court found that despite plaintiff's assurance to protect defendants' confidential information, the discovery request was too broad and that there were other less burdensome discovery means that would better protect defendants' interests. *Id.* Finally, the *Tireboots* court denied plaintiff's assertion that it was entitled to a forensic examination because defendants lack the expertise to search and retrieve the relevant data. *Id.* Plaintiff had not pointed to any defect in defendants' proposed search protocol or any evidence that defendants' expert "manipulated search results," as it alleged. *Id.* at *4. "Plaintiff cannot claim that Defendants lack the expertise to produce responsive discovery materials when Plaintiff never even submitted a discovery request seeking such materials." *Id.*

Just like the *Tireboots* plaintiff, Qorvo cannot meet the standard for permitting a forensic

17

inspection at all. In addition to the other factors discussed above, Qorvo cannot show that Akoustis has failed to comply with its discovery obligations and Qorvo has not exhausted other less intrusive means of discovery to obtain the information sought. There is no evidence that Akoustis lacks the expertise, ability, or willingness to produce the information sought. On the contrary, Akoustis has already made fulsome productions of its documents, and has already engaged its outside counsel and a nationally recognized forensic expert to undertake a comprehensive analysis of its system for Qorvo-related conduct. (Bui Dec. at ¶¶ 1-12.) Akoustis has also offered and continues to offer in good faith and the spirit of cooperation to work with Qorvo to identify mutually acceptable parameters to conduct this inspection.

Faced with such circumstances, Qorvo should not be allowed to proceed with a unilateral forensic inspection at all. *See, e.g., Calyon v. Mizuho Securities USA Inc.*, 2007 WL 1468889 at *5 (plaintiff Calyon's inspection request not justified as "the Court is not yet faced with any failure by the defendants to conduct a thorough forensic search of their computers, or to produce any and all relevant documents, files, metadata, and even hidden data fragments that Calyon may request. On the contrary, the Individual Defendants have represented that their expert can and will conduct an exhaustive search of the hard drives for the information Calyon seeks…"). Indeed, "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, 118 (2018); *Ford Motor Co. v. Edgewood Prop., Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009) (noting that "[a]bsen[t] agreement, a [responding] party ***has the presumption***, under Sedona Principle 6, that it is in the best position to choose an appropriate method of searching and culling data") (emphasis added).

Public Version

**4.     Qorvo's Request Imposes Undue Burden and Expense Given that Akoustis Is Already Undertaking a Comprehensive Inspection.**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████   Therefore, Akoustis must either conduct its own inspection using its own examiner or should have input in the selection and use of a qualified neutral, third-party inspector who can conduct an inspection pursuant to a suitable protocol the parties determine together. If Qorvo is allowed to proceed with its unilateral Request, Akoustis will have no choice but to conduct its own inspection as well, resulting in duplication of substantial cost and effort.

Qorvo may argue that Akoustis' burden of compliance with its Request is minimal as Qorvo will pay for its own inspector to conduct the inspection, but given the possibility of cost shifting under the claims in Qorvo's pleading, there is a risk that Akoustis would end up paying for *two* forensic examinations. Akoustis will also inevitably need to expend cost and efforts to try to protect its confidential, private, or privileged information from disclosure, as evidenced by the preparation and filing of this motion. █████████████████████████████████████████

███████████████████████████████████████████████████

As Akoustis stated numerous times during the parties' meet and confers, Qorvo and Akoustis have a mutual interest in identifying any Qorvo-related documents on Akoustis' systems. (Stanton Dec. at ¶ 17.) Accordingly, the most efficient approach to this identification is to engage a third-party neutral to oversee it. Additionally, by using a Court-ordered, third-party neutral to

**Public Version**

oversee the process, the results of the examination will be conclusive, thus avoiding further controversy and legal expense, and both parties will be able to rely on them for discovery and for Akoustis' remediation needs.

      **B.**     **The Court May Order the Parties to Meet and Confer on A Mutually Acceptable Inspection Protocol.**

The Court is authorized under FRCP Rule 26(c)(1) to issue a protective order that forbids disclosure or discovery; specifies terms, including time and place or the allocation of expenses for the disclosure or discovery; prescribes a discovery method other than the one selected by the party seeking discovery; forbids inquiry into certain matters, or limits the scope of disclosure or discovery to certain matters; designates the person who may be present while the discovery is conducted; and requires that a trade secret or other confidential commercial information not be revealed or be revealed only in a specified way. Fed. R. Civ. Proc. 26(c)(1). Akoustis requests that the Court exercise its authority in each of these respects in issuing this protective order.

## IV.    CONCLUSION

For the foregoing reasons, Akoustis respectfully asks the Court to issue a protective order to deny Qorvo the ability to proceed with its Request and instead order the parties to meet and confer on a mutually acceptable inspection protocol either by Akoustis' expert or by a Court-ordered third-party neutral, as specified in the accompanying Proposed Order.

**Public Version**

Dated: August 16, 2023

OF COUNSEL:

PILLSBURY WINTHROP SHAW
PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Theresa A. Roozen
Robert C.F. Pérez
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
shani.rivaux@pillsburylaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*

21