Public Version

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) ) C.A. No. 1:21-cv-01417-RGA |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC. | ) ) ) ) |
|     Defendants. | ) ) ) |

### DECLARATION OF DAVID L. STANTON IN SUPPORT OF DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.'S MOTION FOR PROTECTIVE ORDER ON QORVO INC'S REQUEST FOR INSPECTION

I, David L. Stanton, declare:

1. I am a Partner at the law firm of Pillsbury Winthrop Shaw Pittman LLP and serve as counsel of record for the Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis") in the above-captioned matter. I have personal knowledge of the facts stated herein, except those stated on information and belief, and if called upon, could and would testify competently to them. I submit this declaration in support of Akoustis' Motion for Protective Order on the Request for Inspection ("Request") served by Qorvo, Inc. ("Qorvo").

2. On Friday, May 5, 2023, Qorvo served its Request, a true and correct copy of which is attached hereto as Exhibit A. The Request attaches, as Exhibit A thereto, a proposed protocol for a forensic "inspection" that is extraordinarily broad in scope. In particular, Qorvo's protocol seeks access to and forensic images of every electronic storage device used since 2015 by over 30 current and former Akoustis employees, including their personal devices, email accounts and online storage accounts, as well as the production databases and file servers used by Akoustis to run its business,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

3. On Monday, June 5, 2023, Akoustis served its Objections and Responses ("Objections") to Qorvo's Request, a true and correct copy of which is attached hereto as Exhibit B. In its Objections, Akoustis proposed that a third-party neutral be engaged to conduct the inspection.

4. On Tuesday, June 13, 2023, counsel for Qorvo sent a one-page meet and confer letter about the Request, stating, among other things, that "Akoustis cannot unilaterally require that the parties retain the same forensic expert, even as a neutral third party." Qorvo cited only one case for this assertion, *Cenveo Corp. v. Slater*, No. CIV.A.06-CV-2632, 2007 WL 442387, at *2 (E.D. Pa. Jan. 31, 2007). A true and correct copy of this letter is attached hereto as Exhibit C.

5. Later that day, counsel for the parties held a video-conference to meet and confer about the Request and Objections at which I was present. The parties were unable to resolve their differences over the use of a third-party neutral to conduct the examination versus Qorvo conducting its own unilateral inspection. Akoustis agreed to provide a draft protocol that it would agree to if Qorvo persisted in its demand to conduct a unilateral inspection.

6. On Thursday, June 29, 2023, I sent a seven-page letter to Qorvo's counsel, further elaborating on Akoustis' objections, reiterating the reasons for a third-party neutral, and providing a protocol pursuant to which Akoustis would agree to the unilateral approach advocated by Qorvo. My letter addresses the extraordinary breadth of the Request and Qorvo's protocol and discussed the *Cenveo Corp. v. Slater* case on which Qorvo relied. My letter concluded by offering to further meet and confer on Monday, July 3 or Wednesday July 5. A true and correct copy of my June 29, 2023 letter is attached hereto as Exhibit D.

7. More than two-weeks later, on Thursday, July 13, 2023, I received an email from Qorvo's counsel seeking to schedule a meet and confer about Akoustis' letter. Before I sent a response, Qorvo's counsel sent a follow up email on Monday, July 17, 2023 again requesting times to meet and confer. A true and correct copy of the email thread containing the July 13 and July 17 email messages is attached hereto as Exhibit E.

8. On July 21, 2023, counsel for the parties held a video conference to continue their meet and confer about the Request and Objections at which I was present. During that meet and confer, the parties discussed the single case, *Cenveo Corp. v. Slater*, which Qorvo argued gave it the right to conduct the sweeping, unilateral inspection it had proposed. I noted that the case did not come anywhere near to allowing the kind of sweeping inspection demanded by Qorvo on a unilateral basis; however, I told Qorvo's counsel that Akoustis was amenable to something along the lines proposed by Qorvo, provided it followed an agreed protocol and was conducted by a third-party neutral. I further noted that Qorvo's inspection protocol would allow its agent, in collaboration with Qorvo's counsel, broad access to read and review all of Akoustis' documents and the personal documents of its employees. I noted that this would be violative of the attorney-client privilege and result in a broad waiver, as well as impinging the confidentiality interests of Akoustis employees. I mentioned the large database systems at Akoustis, which would be unwieldy and very disruptive for anyone to image. I specifically asked Qorvo's counsel to send any authority they had that shows a unilateral inspection like the one Qorvo was describing. Up until it filed its letter with the Court (Dkt. 270), Qorvo never provided any additional authority to justify the extraordinary, unilateral approach set forth in its Request. At the end of the July 21, 2023 meeting, counsel for the parties agreed that we were at an impasse and that the matter would need to be submitted to the Court.

4895-7846-4375

9. On July 26, 2023, counsel for Qorvo sent a slightly revised protocol, limiting the proposed inspection to computers, servers and devices "in Akoustis' possession, custody or control," and providing that Akoustis would produce documents requested by Qorvo's forensic examiner, unless they were asserted to be privileged. A true and correct copy of the revised protocol I received is attached hereto as Exhibit F. Importantly, the revised protocol did not limit *ex parte* communications between Qorvo and its examiner during the course of the examination, and it did not alter the broad relevance assessment that Qorvo demanded its examiner be permitted to undertake. The protocol contained the same parameters set forth in Qorvo's original Request (Exhibit A), specifically that:

> Qorvo's expert shall analyze, review and search data on the images for the purpose of locating and subsequently reporting on the following:
>
> a. Proprietary, trade secret, intellectual property or other property belonging to, owned by, entrusted to, created in whole or in part by Qorvo including, but not limited to, the Confidential Information described in Qorvo's Second Amended Complaint and the trade secret disclosure statement of May 1, 2023.
>
> b. Items derivative of proprietary, trade secret, intellectual property or other property belonging to, owned by, entrusted to, created in whole or in part by Qorvo including, but not limited to, the Confidential Information described in Qorvo's Second Amended Complaint and the trade secret disclosure statement of May 1, 2023.
>
> c. Any and all electronic communications between January 1, 2015 and the present including but not limited to emails, items attached to emails, chats, instant messaging and postings involving the individual Akoustis personnel identified in the Second Amended Complaint and involving Qorvo's Confidential Information.
>
> d. Any and all computer generated activity and artifacts (including but not limited to operating system and/or application generated logs, trace data, control structures, file or data fragments) as may be deemed relevant to the matter between January 1, 2015, and the present.

Items (a) and (b) require extensive, highly technical relevance assessment to identify documents "belonging to, entrusted to, created in whole or in party by Qorvo," and to identify "[i]tems

derivative" of such materials. Likewise, Item (c) requires an interpretation of what is and is not "Qorvo's Confidential Information." This type of interpretation necessarily entails the review and analysis of document contents, not a typical forensic analysis. Item (d) mentions the type of information that would be forensically determined, i.e., "computer generated activity and artifacts," but it also requires a broad determination of what "may be deemed relevant to the matter," which a forensic examiner is not qualified to make. What is missing from Qorvo's proposed protocol is any specificity as to the particular documents the Qorvo's examiner is to locate and trace, or steps that will be undertaken to conduct the examination.

10.     On August 2, 2023, I sent a reply to Qorvo's proposal, noting that the proposal was still extremely prejudicial to Akoustis, and that it seemed the parties remained at impasse; however Akoustis remained willing to meet and confer. A true and correct copy of my email is attached hereto as Exhibit G.

11.     On Thursday, August 3, 2023, counsel for the parties held a meet and confer to discuss Qorvo's revisions to the protocol. During that meeting, I informed counsel for Qorvo that I was on holiday with family for my father's 80th birthday, returning to Los Angeles on Tuesday, August 7, 2023. The parties were unable to reach agreement during the August 3 meeting, and I agreed to send a letter outlining Akoustis' positions. Qorvo's counsel asked that Akoustis provide case law support for its position that an inspection of this scope had to be under the auspices of a third-party neutral. I agreed to include that information. Later that day, counsel for Qorvo sent an email about the meeting, in which he stated that "We will check with our forensic expert to determine whether we can provide an overview of the forensic analysis/techniques he will use in inspecting the images." To date, Qorvo has not provided this information. A true and correct copy of the August 3, 2023 email I received while away on holiday is attached as Exhibit H.

12. Although I had planned to send a reply to Qorvo on August 8, I was tied up with family commitments and travel that day. Accordingly, on Wednesday, August 9, 2023, my first day back in the office after vacation, I sent a letter to Qorvo's counsel detailing Akoustis' positions and providing the requested case law authority. A true and correct copy of my August 9, 2023 letter is attached hereto as Exhibit I.

13. At 7:42 PM Pacific Time on Thursday, August 10, 2023, I received a draft letter from Qorvo's counsel intended as a joint submission to the Court to seek guidance on the subject of Qorvo's Request and Akoustis' Objections. A true and correct copy of Qorvo's counsel's email and draft letter is attached hereto as Exhibit J.

14. At 10:50 AM Pacific Time on Friday, August 11, 2023, I sent an email to Qorvo's counsel indicating that his letter was received and that Akoustis would provide its response by 10AM on Monday, August 14, 2023. Qorvo's counsel responded shortly thereafter that Qorvo was unwilling to wait until Monday and that it would submit its position to the Court without Akoustis' input. In reply, I reminded Qorvo's counsel that the Court was not in chambers and would not receive the submission, and again agreed to provide Akoustis' response on Monday. A true and correct copy of this email thread is attached hereto as Exhibit K.

15. At approximately 12:40 PM Pacific Time on Friday, August 11, 2023, Qorvo's counsel lodged a letter with the Court (Dkt. 270) providing additional authority that Qorvo had never shared with Akoustis (but which is distinguishable for reasons addressed in the accompanying brief). Qorvo asked that the Court, "compel Akoustis to comply with the inspection protocol attached as Exhibit A." Exhibit A to the letter included a new version of the proposed inspection protocol, with additional provisions related to attorney-client privilege that were never discussed with or disclosed to Akoustis.

Public Version

16. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

17. As I have stated numerous times to Qorvo's counsel during meet and confer, Qorvo and Akoustis have a mutual interest in identifying Qorvo documents on Akoustis' systems. Accordingly, the most efficient approach to this identification is to engage a third-party neutral to oversee it. Otherwise, both parties will need to pay to have essentially the same work done twice. Moreover, given the possibility of cost shifting under the claims in Qorvo's pleading, *there is a risk that Akoustis would end up paying for two forensic examinations*. Additionally, by using a Court-ordered, third-party neutral to oversee the process, the results of the examination will be conclusive, thus avoiding further controversy and legal expense, and both parties will be able to rely on them for discovery and for Akoustis' remediation needs.

18. There is a question of proportionality for any forensic examination. Among the functions that a third-party neutral can provide is to hear from Akoustis and Qorvo regarding the appropriate scope of the examination, including which systems are reasonable to image and inspect, and whether imaging is the appropriate or necessary step for larger data repositories, and to suggest the appropriate scope and process in light of the technical details and relevance of the systems and their contents. Qorvo would not agree during meet and confer to limit or define the inspection of Akoustis' large production servers and databases. A third-party neutral could evaluate the technical limitations and likely relevance of information on Akoustis' voluminous

data repositories and, if warranted, help the parties identify a suitable protocol for their inspection that would minimize business disruption to Akoustis.

    I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of August, 2023.

                                                                              _____

                                                                                 David L. Stanton

4895-7846-4375