IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 21-1417 (JPM) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC., | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF QORVO INC.'S AMENDED NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6) TO DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS INC.**

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6) and the applicable Local Rules of the District of Delaware, Plaintiff Qorvo, Inc. ("Qorvo" or "Plaintiff") will take the deposition by oral testimony of Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis" or "Defendants"). The deposition will commence on November 10, 2023 at 9:00 A.M. Eastern Time at 301 McCullough Drive, Suite 400, Charlotte, North Carolina and will continue on November 15, 2023 at 9:00 A.M. at a location agreed upon by the parties. The deposition will be recorded by stenographic means before an officer authorized to administer oaths and record depositions, and may also be recorded by audio and audio/visual means. The deposition shall proceed from day to day until completed or adjourned by the attorney taking the deposition.

Pursuant to Rule 30(b)(6), Akoustis shall designate one or more of its officers, directors, managing agents, or other persons who consent and are knowledgeable to testify on its behalf with respect to the topics set forth in Attachment A. Akoustis shall provide Qorvo's counsel with written notice at least ten (10) days before the date of the deposition of the name(s) and title(s) of

the designee(s) who will testify on Akoustis' behalf and shall identify the matters to which each designee will testify.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | /s/ Jeremy A. Tigan |
| OF COUNSEL: | _____ |
|  | Jack B. Blumenfeld (#1014) |
| Robert M. Masters | Jeremy A. Tigan (#5239) |
| Jonathan R. DeFosse | 1201 North Market Street |
| Timothy P. Cremen | P.O. Box 1347 |
| Roy D. Jung | Wilmington, DE 19899-1347 |
| SHEPPARD, MULLIN, RICHTER | (302) 658-9200 |
|    & HAMPTON LLP | jblumenfeld@morrisnichols.com |
| 2099 Pennsylvania Avenue, NW, Suite 100 | jtigan@morrisnichols.com |
| Washington, DC 20006-6801 |  |
| (202) 747-1900 | *Attorneys for Plaintiff Qorvo, Inc.* |

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
(310) 228-3700

November 8, 2023

## ATTACHMENT A
## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in these Topics is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. In these Topics, the following terms are to be given their ascribed definitions:

1. The term "Action" means the legal action referenced in the caption to this Notice.

2. The term "Plaintiff" or "Qorvo" means Qorvo, Inc., and any of its present or former affiliates, predecessors, successors, partners, subsidiaries, corporate parents, divisions, joint ventures, officers, directors, agents, employees, consultants, accountants, attorneys, representatives, or any other person or entity acting on behalf of any of the foregoing.

3. The terms "Defendants," "Akoustis," "You," and "Your" mean, individually and collectively, defendants Akoustis Technologies, Inc., Akoustis, Inc., and any present or former affiliates, predecessors, successors, partners, subsidiaries, corporate parents, divisions, joint ventures, officers, directors, agents, employees, consultants, accountants, attorneys, representatives, or any other person or entity acting on behalf of any of the foregoing.

4. The term "'018 Patent" means U.S. Patent No. 7,522,018.

5. The term "'755 Patent" means U.S. Patent No. 9,735,755.

6. The term "Patents-in-Suit" means any patent asserted by Qorvo in any Complaint (including any amended complaints) in this matter, including one or all of the '018 Patent and the '755 Patent.

7. The term "Related Patents" means all United States and foreign patents and patent applications (including all published and unpublished, pending, and abandoned applications) relating to any Patent-in-Suit, including patents or patent applications:

      a.      from or through which any Patent-in-Suit directly or indirectly claims priority;

      b.      that claim priority to any Patent-in-Suit; or

      c.      that are otherwise identified in any Patent-in-Suit as related to that patent.

8.      The term "Plaintiff's Interrogatory No. 1" means Interrogatory No. 1 in Plaintiff's First Set of Interrogatories served on February 23, 2022.

9.      The term "BAW Filter" means any bulk acoustic wave filter.

10.      The term "Akoustis BAW Filter" means any BAW Filter product Akoustis has identified (or later identifies) in response to Plaintiff's Interrogatory No. 1, including the following products: AKF-1252, A10252, AKF-1256, A10256, AKF-1938, A10149, A10235, AKF-1336, A10335, A10155, A10165, A10154, A10158, A10160, A10166, A10156, A10266, A10238, A10249, A10130-4, AKF-1335, AKF-1950, AKF-1435, AKF-1125D, AKF-1125U.

11.      The term "Asserted Claims" means any claim of any Patent-in-Suit, including the '018 Patent and the '755 Patent, which Qorvo has asserted Akoustis to be infringing in any Complaint (including any amended complaint), infringement contention, or other disclosure identifying infringed claims. The term "Asserted Claim" means one of the Asserted Claims.

12.      The term "'786 Patent" means U.S. Patent No. 10,256,786.

13.      The term "'786 Related Patents" means all United States and foreign patents and patent applications (including all published and unpublished, pending, and abandoned applications) relating to the '786 Patent, including patents or patent applications:

      a.      from or through which the '786 Patent directly or indirectly claims priority;

      b.      that claim priority to the '786 Patent; or

      c.      that are otherwise identified in the '786 Patent as related to that patent.

14. The term "Confidential Information" shall mean means commercial information relating to Qorvo's business that is not or was not intended to become publicly available.

15. The term "Communication" means transmittal of information—in the form of facts, ideas, inquiries, or otherwise—regardless of the manner in which communications took place including, but not limited to, personal conversations, correspondences, electronic mails, physical mails, telephone calls, telephone text messages, facsimile communications, voicemail, electronic messenger messages, or telegrams.

16. The term "Complaint" means the complaint initiating the above-captioned action filed on or about October 4, 2021, by Plaintiff in the United States District Court for the District of Delaware, along with any amended complaints.

17. The term "concerning" means referring to, relating to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter identified in a request.

18. The term "Document" is used in the broadest sense consistent with the definition in Fed. R. Civ. P. 34(a) including, but not limited to, hard copies, electronically stored information, or physical objects (e.g., research and development samples, prototype devices, production samples).  A draft, translation, or non-identical copy is treated as a separate Document from the original within the meaning of this term.

19. The term "Thing" is used in the broadest sense consistent with the definition in Fed. R. Civ. P. 34 including, but not limited to, physical specimens, or tangible items.

20. The term "person" means any natural person, business entity, legal entity, governmental entity, or association.

21. The term "Prior Art" is used in the broadest sense consistent with the use in 35 U.S.C. §§ 102, 103 including, but not limited to, patents, printed publications, prior knowledges,

prior uses or implementations, prior sales, offers for sale, or other acts or events consistent with the use in 35 U.S.C. § 102, taken singly or in combination, and shall include Documents and Things.

22. The terms "refer," "relate," and "respecting" are used in the broadest sense and include, but not limited to, directly or indirectly mentioning, discussing, representing, requesting, reflecting, demanding, analyzing, referencing, summarizing, noting, supporting, memorializing, commenting upon, describing, demonstrating, proving, disproving, supporting, contradicting, or evidencing the stated subject matter of the discovery request in any way.

23. The terms "sale" and "sales" mean any public or private efforts in connection with the commercialization of a product—e.g., experimental, non-experimental, confidential, non-confidential, in the United States, outside the United States, offers for sale or license, actual sales or licenses, any advertising of the Akoustis BAW Filters—by or on behalf of Akoustis.

24. The term "third party" means any Person other than Plaintiff or Akoustis.

25. The terms "and," and "or" shall be understood as either conjunctive or disjunctive, whichever is more inclusive in context.

26. The terms "including," and "includes" mean "including, but not limited to."

27. The terms "any," and "all" shall include the other.

28. The use of singular form of a noun or pronoun shall include, within its meaning, plural form of a noun or pronoun so used, and vice versa.

29. The use of present tense shall include past tenses, unless otherwise specifically indicated in this discovery request.

30. The use of masculine gender pronoun shall include, within its meaning, feminine gender pronoun, gender neutral pronoun, or gender inclusive pronoun, and vice versa.

31.     When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

32.     When referring to Documents, "to identify" means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s), addressee(s), and recipient(s).

**INSTRUCTIONS**

1.      If you object to the scope or time period of a Topic and refuse to provide testimony for that scope or time period, You shall state Your objection and the scope or time period You believe is appropriate.

2.      If any of the following Topics cannot be responded to in full after exercising due diligence to secure the information, please so state and respond to the extent possible, specifying Your inability to answer the remainder and stating whatever testimony You have concerning the unanswered portion. If Your response is qualified in any way, set forth the details of such qualification.

3.      If You have no information in response to a particular Topic, You are to state that no responsive information exists.

4.      If You do not testify concerning a Topic, or any part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which You rely to support the claim or privilege, and furnish a list identifying each item of information for which privilege is claimed, including:

      a.      a brief description of the nature and subject matter;

      b.      the date the information was acquired or came into existence; and

      c.      the name and title of the individual(s) who generated, provided, and received the information.

## TOPICS FOR EXAMINATION

1. Akoustis' advertising, marketing, and promotion of any Akoustis BAW Filters.

2. Akoustis' statements concerning the crystal structure of any Akoustis BAW Filters (including each resonator within such Akoustis BAW Filters).

3. The basis for any statements by Akoustis that it uses single crystal BAW technology.

4. Akoustis' Communications with actual and potential customers concerning the crystal structure of any Akoustis BAW Filters.

5. Akoustis' Communications with actual and potential investors concerning the crystal structure of any Akoustis BAW Filters, including statements in Akoustis investor presentations.

6. The crystal structure of each Akoustis BAW Filter.

7. Tests or analyses performed by or at the direction of Akoustis to determine the crystal structure of all BAW Filters.

8. The actual and potential customers of Akoustis BAW Filters sold or offered for sale (including as a sample) by or at the direction of Akoustis from 2015 to the present.

9. Akoustis' sales and offers for sale of its BAW Filters, including samples.

10. Akoustis' current and projected revenue, price, costs, and profitability resulting from sales of its BAW Filters, including samples.

11. Royalties Akoustis pays or receives for any patent license agreement.

12. Geographical locations where Qorvo and Akoustis compete to sell their BAW filters.

13. The average and forecasted technology lifecycle of each Akoustis BAW Filter.

14. Akoustis' market share and sales growth in BAW Filters resulting from advertising, promoting, and marketing Akoustis BAW Filters (including any resonators within such BAW Filters) as using single crystal technology.

15. Akoustis' market share and sales growth in BAW Filters resulting from advertising, promoting, and marketing based on the purported advantages of single crystal technology.

16. Akoustis' market share and sales growth in BAW Filters both domestically and worldwide, from 2015 to the present.

17. The significance of Akoustis's statements concerning its single crystal technology with respect to attracting investments in the company.

18. The significance of Akoustis's statements concerning its single crystal technology with respect to marketing the company's products to potential customers.

19. Sales of Akoustis BAW Filters resulting from advertising, promoting, and marketing (1) Akoustis BAW Filters and manufacturing process as using single crystal technology and/or (2) the purported advantages of such technology.

20. [INTENTIONALLY OMITTED]

21. The use of "single crystal" in Akoustis's marketing materials, including any decision to remove or omit references to "single crystal" technology from marketing materials generally. The meanings of "XB1," "Bulk One," "XBAW" and "high purity."

22. [INTENTIONALLY OMITTED]

23. [INTENTIONALLY OMITTED]

24. [INTENTIONALLY OMITTED]

25. All facts and circumstances related to Akoustis' recruitment and hiring practices, policies, and/or procedures.

26. The use of "single crystal" in Akoustis's marketing materials, including any decision to remove or omit references to "single crystal" technology from marketing materials generally. The meanings of "XB1," "Bulk One," "XBAW" and "high purity.

27. All facts and circumstances related to Akoustis' recruitment and/or hiring of Robert Dry, David Breton, Guillermo Moreno, William Schmid, Kindra Lane, Wendy Wright, Paul Makowenskyj, Tony Espinoza, Ali-Imran Bawangaonwala, Eric Chen, Todd Bender, Shawn Gibb, David Hodge, Rohan Houlden, Joonbum Kwon, John Myrick, Ya Shen, and Mitali Pathak.

28. Akoustis' employee agreements, including the confidentiality provisions of such agreements.

29. Akoustis' awareness and/or knowledge of current or former Qorvo employees' confidentiality obligations owed to Qorvo.

30. Akoustis' awareness and/or knowledge of dissemination of Confidential Information to Akoustis, including but not limited to such dissemination by former Qorvo employees then employed by Akoustis.

31. Akoustis' access to and use of Qorvo documents.

32. Akoustis' access to and use of Qorvo's trade secrets and confidential information.

33. Steps taken to avoid current or former Qorvo employees hired by Akoustis from disclosing Confidential Information to Akoustis after being hired by Akoustis; or the failure to take such steps.

34. The contributions of the following former Qorvo employees employed by Akoustis at any time, to Akoustis' business:

- Aichele, David
- Bawangaonwala, Ali-Imran
- Bender, Todd
- Breton, David
- Chen, Eric
- Dry, Robert
- Espinoza, Tony
- Gibb, Shawn
- Hodge, David
- Houlden, Rohan
- Kim, SJ
- Kwon, Joonbum
- Lane, Kindra
- Li, Steven
- Makowenskyj, Paul
- Moreno, Guillermo
- Morgan, Joel
- Myrick, John
- Patel, Pinal
- Schmid, William
- Shealy, Jeff
- Shen, Ya Annia
- Vetury, Rama
- Wright, Wendy

35. The job responsibilities of current and former Akoustis employees formerly employed by Qorvo.

36. The registration of Akoustis's "XBAW" trademark.

37. The design, development, structure, composition, function, and operation of each Akoustis BAW Filter, each component of each Akoustis BAW Filter, and each layer of material within each resonator of each Akoustis BAW Filter.

38. Simulations, models, test results, or experimental results related to any Akoustis BAW Filter, or to any one or more resonators within any such Akoustis BAW Filter, including but not limited to any simulations or models related to a density of mechanical energy, an acoustic matching, a frequency, a bandwidth, a coupling factor, a quality factor, energy leakage, lateral leakage, wavelength excitation, or any other quantity or attribute related to such Akoustis BAW Filter.

39. The differences between the design, development, structure, composition, function, and operation of each Akoustis BAW Filter, including but not limited to such differences between components of each Akoustis BAW Filter, layers of material of each resonator of each Akoustis BAW Filter and the structural dimensions (including individual layer dimensions) of each resonator of each Akoustis BAW Filter.

40. Akoustis' first awareness and/or knowledge of U.S. Patent Nos. 9,735,755 and 7,522,018, and U.S. Patent Application Nos. 62/207,702, 14/876,426 and 10/538,110.

41. All facts and circumstances related to the existence of alternatives to the technology described and/or claimed in the Patents-in-Suit, including all costs associated with the development and sale of such alternatives and any evidence of the commercial viability of such alternatives.

42. Akoustis' policies, procedures, strategies, and/or programs for the licensing of intellectual property, including inbound and outbound licensing.

43. The terms of all technology license agreements to which Akoustis is a party, including licenses relating to patents, intellectual property, trade secrets, and know-how, relating to BAW Filters, and the computation of any royalty rates paid by Akoustis in connection with such license agreements.

44. The commercial success or failure of each Akoustis BAW filter that does not include a single crystal structure, including but not limited to such Akoustis BAW filters that have been most and least profitable to Akoustis since sales of each began; and the factors that contributed to such success and/or failure, including but not limited to structural features of such Akoustis BAW filters that contributed to such success and/or failure.

45. The commercial success or failure of each Akoustis BAW filter that Akoustis contends includes a single crystal structure, including but not limited to such Akoustis BAW filters that have been most and least profitable to Akoustis since sales of each began; and the factors that contributed to such success and/or failure, including but not limited to structural features of such Akoustis BAW filters that contributed to such success and/or failure.

46. Akoustis' efforts to search for, collect, and produce Qorvo Documents stored locally on its employees computer workstations, laptops, external hard drives, or other non-volatile storage devices (e.g., USB drives).

47. Akoustis' efforts to search for, collect, and produce Qorvo Documents stored on its servers or other non-volatile storage media.

48. Akoustis' policies and practices for retaining, backing up, filing, organizing, managing, returning and/or destroying Documents (including Documents originating from third party sources), and for employees' use of work and home computers, including laptops, and Akoustis' recordkeeping policies and practices in connection with the same.

49. All efforts by or on behalf of Akoustis to preserve, and/or collect, Documents potentially implicated by this Action (e.g., Documents and information sought in any of Qorvo's written discovery served upon Akoustis), including, but not limited to, Akoustis' efforts to ensure adherence with its litigation hold notice (if any), the identity of all persons instructed to preserve and collect Documents, the dates on which such persons were so instructed, the manner in which such persons were so instructed, and the steps each person took to preserve and collect documents.

50. The origin, maintenance, and current physical and/or virtual location at Akoustis of the Documents relevant to this Action, the identity of persons having custody of such Documents, and details of all efforts made by Akoustis to retain, identify, collect, and produce Documents responsive to Qorvo's requests.

51. Akoustis' file storage conventions related to the storage of all paper documents that would fall within the scope of any deposition topic in this deposition notice or any request for production served by Qorvo in this Action.

52. Actions taken, if any, in violation of any document retention and destruction policy concerning any Document described in your responses to any deposition topic in this deposition notice.

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 8, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| David A. Jakopin, Esquire<br>Dianne L. Sweeney, Esquire<br>Ryan Selness, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>2550 Hanover Street<br>Palo Alto, CA  94304-1115<br>*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Robert C.F. Pérez, Esquire<br>Riccardo Macchiaroli, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>1650 Tysons Boulevard, 14th Floor<br>McLean, VA  22102-4856<br>*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| David L. Stanton, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>725 South Figueroa Street, 36th Floor<br>Los Angeles, CA  90017-5524<br>*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

Theresa A. Roozen, Esquire  *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC  20036-3006
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Shani Rivaux, Esquire  *VIA ELECTRONIC MAIL*
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL  33131
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire  *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

2