Public Version

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| | ) | C.A. No. 21-1417-JPM |
| Plaintiff, | ) | |
| | ) | [ Public Version ] |
| v. | ) | |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.'S AMENDED FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) NOTICE OF DEPOSITION TO QORVO, INC.

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Akoustis" or "Defendants"), by and through their attorneys, will take the deposition of Plaintiff Qorvo, Inc. ("Qorvo") at the offices of Pillsbury Winthrop Shaw Pittman LLP, 1650 Tysons Boulevard, McLean, Virginia 22102, commencing at 9:00 a.m. on October 31, 2023[1] or such other time and place as the parties may agree (including, for example, via remote technology or with other appropriate accommodations consistent with public health guidance). The deposition will be taken before an officer authorized to administer oaths. Akoustis intends to cause the proceedings to be recorded through the instant visual display of testimony and by videotape pursuant to Fed. R. Civ. P. 30(b)(2), and reserves the right to use said videotapes at the trial of this action. The depositions will continue from day to day (excluding Saturdays, Sundays, and holidays) until completed.

Pursuant to Rule 30(b)(6), and further to the parties' meet-and-confer concerning Akoustis' August 7, 2023 Federal Rule of Civil Procedure 30(b)(6) Notice of Deposition to Qorvo, Inc. and Qorvo's response thereto, Qorvo shall designate one or more of its officers, directors, managing agents, or other persons who consent and are knowledgeable to testify on its behalf with respect to the topics set forth in Exhibit A. Qorvo shall provide Akoustis' counsel with written notice at least ten (10) days prior to the date of the deposition which shall include the name(s) and title(s) of the designees and identify the topic for which designee will testify.

---

[1] The proposed date of deposition presumes that Qorvo will substantially complete its production of documents at least 14 days prior to the deposition date.  It is also based on the current case deadlines.  Should the case deadlines be extended or should Qorvo's document production not be produced in sufficient time to allow Akoustis' counsel time to review the production prior to the deposition, Akoustis reserves the right to amend the deposition date to a new mutually agreeable date.

**Public Version**

Dated: November 7, 2023

OF COUNSEL:

PILLSBURY WINTHROP SHAW
PITTMAN LLP

David A. Jakopin
Dianne L. Sweeney
Ryan Selness
2550 Hanover Street
Palo Alto, CA 94304-1115
(650) 233-4500
david.jakopin@pillsburylaw.com
dianne@pillsburylaw.com
ryan.selness@pillsburylaw.com

David L. Stanton
725 S. Figueroa St., 36th Floor
Los Angeles, CA 90017
(213) 488-7100
david.stanton@pillsburylaw.com

Theresa A. Roozen
1200 17th St NW
Washington, DC 20036
(202) 663-8000
theresa.roozen@pillsburylaw.com

Shani Rivaux
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
shani.rivaux@pillsburylaw.com

Riccardo Macchiaroli
Robert C. F. Pérez
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd., Ste. 1400
McLean, VA 22102
(703) 770-7900
ric.macchiaroli@pillsburylaw.com
robert.perez@pillsburylaw.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Akoustis Technologies, Inc.
and Akoustis, Inc.*

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1941 Page Mill Road, Suite 150
Palo Alto, CA 94304
Ronald.Lemieux@squirepb.com
David.Elkins@squirepb.com
Victoria.Smith@squirepb.com

*Attorneys for Akoustis Technologies, Inc. and
Akoustis, Inc.*

2

Public Version

## EXHIBIT A
## DEFINITIONS AND INSTRUCTIONS

1.      The term "Defendant," "Defendants," and "Akoustis" means one or more of the defendants in this action, including Akoustis Technologies, Inc. and Akoustis, Inc.

2.      The term "you," "your," and "Qorvo" means Plaintiff Qorvo, Inc.

3.      The term "entity" means any corporation, company, firm, partnership, joint venture, association, governmental body or agency, or person other than a natural person.

4.      The term "Action" means this litigation, captioned *Qorvo, Inc. v. Akoustis Technologies, Inc. and Akoustis, Inc.*, No. 21-1417-JPM (D. Del.).

5.      The term "SAC" means the operative pleading in this Action.

6.      The term "Akoustis BAW Filter" means each and every Akoustis BAW filter that Qorvo alleges infringes the Asserted Patents.

7.      The term "Akoustis' Purported False Advertising" means each and every Akoustis advertising that Qorvo alleges is false.

8.      The term "Asserted Patents" means any one or all of the patents asserted against Defendants in this action, and includes without limitation U.S. Patent Nos. 7,522,018 and 9,735,755, as asserted, and their respective patent applications, and all predecessor patent applications from which these patents or patent applications claim priority, including all continuations, divisionals, and continuations-in-part.

9.      "BAW filters" refers to Bulk Acoustic Wave filters and Bulk Acoustic Wave filter products.

10.     The term "Qorvo's Purportedly Confidential Information" means all of the purportedly confidential information that Qorvo alleges Akoustis has improperly obtained, used, misappropriated, or otherwise accessed including, without limitation, each and every trade secret that Qorvo alleges Akoustis misappropriated, including purported trade secret nos. 1-86 and the purported "Additional Trade Secrets" alleged in Qorvo's Second Amended Complaint, the purported trade secrets identified in Qorvo's Identification of Trade Secrets (dated May 1, 2023), the purported trade secrets identified in Qorvo's Supplemental Identification of Trade Secrets (dated July 25, 2023), the purported trade secrets identified in Qorvo's Second Supplemental Identification of Trade Secrets (dated October 12, 2023), and any purported trade secret later asserted by Qorvo, as well as any document produced by Akoustis that Qorvo has designated as "Attorneys' Eyes Only" pursuant to the April 14, 2022 Stipulated Protective Order in this case,

Public Version

and any purportedly confidential documents and/or information specified in Qorvo's interrogatory responses.[2]

11.     The term "Marketing Specifications" means documents containing, reflecting, or discussing market research and analysis, including what customers want or need in a product, intended users of a product, countries where a product may be sold, key product performance criteria, anticipated commercial acceptance and success of a product, pricing strategy, sales forecasts, plans to launch a product, and other related business and technological intelligence.

12.     The term "Product Development" means the cycle of product development including research and development, internal marketing requirements, Marketing Specifications, early prototype development, testing and compliance, product manufacturing, testing and compliance during manufacturing, marketing, distribution, and sales.

13.     The term "WiFi Access Point Market" means the market for BAW filters (including Qorvo's QPQ1903 and QPQ1904 BAW filters) which are typically used in access points, wireless routers, residential gateways, and customer premise equipment, and which are used or designed for any of the following standards: Wi-Fi 5 (also known as 802.11ac), Wi-Fi 6 (also known as 802.11ax), and/or the extension of Wi-Fi 6 to Wi-Fi 6E to include 6 GHz or Wi-Fi 7 (also known as 802.11be).

14.     The term "communication" or "communications" means any communication regardless of the manner in which such communications took place, including all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, telephone calls, social media posts, facsimile communications, meetings, letters, notes, voicemail, text messages or instant messages, and all documents evidencing such interactions between one or more persons or entities.

15.     The term "document" or "documents" means any original and every non-identical copy or reproduction of any type of document, writing, or record within the broad context of Federal Rule of Civil Procedure 34, in your possession, custody, or control, including, for example, but not limited to: any written, printed, typed, or other graphic matter of any kind of nature; any physical object or thing, animate or inanimate; all mechanical, magnetic, digital, or electronic sound or video recordings or transcripts thereof; any retrievable data, email, communication, information, or statistics contained on any memory device or other information storage and retrieval systems (whether stored, encoded, taped, or coded electrostatically, electromagnetically, optically, digitally, or otherwise); and also without limitation, agreements, blueprints, books, catalogs, charts, compilations, conversations, correspondence, descriptions, diagrams, diaries, directives, drawings, datasheets, electronic recordings, facsimile

---

[2] Qorvo's Supplemental Identification of Trade Secrets (dated July 25, 2023) and Second Supplemental Identification of Trade Secrets (dated October 12, 2023) are untimely and at odds with Qorvo's representations that it would limit the scope of the trade secrets it put at issue in May.  Akoustis reserves all rights with respect to Qorvo's Supplemental Identification of Trade Secrets and Second Supplemental Identification of Trade Secrets, including to seek an appropriate extension of the discovery cutoff to address Qorvo's newly added trade secret allegations.

Public Version

transmissions, files, films, graphs, inspection reports, interoffice memoranda, instructions, letters, maps, manuals, measurements, memoranda, minutes, motion pictures, notes, notebooks, notices, pamphlets, periodical, photocopies, photographs, plans, plats, proposals, publications and published or unpublished speeches or articles, recordings, records, sampling results, laboratory reports, reports, reproductions, samples, schedules, sketches, specifications, statements, studies, summaries, surveys, telecopies, telegrams, telephone call slips and recordings or transcripts of telephone conversations, test results, transcripts, videotapes, worksheets, and working papers that are in your possession, custody, or control, wherever located. "Document" shall also mean all copies of documents, by whatever means made (including, but not limited to, carbon handwritten, microfilmed, telecommunicated, photostatic, or xerographic copies), and including all non-identical copies (whether different from the original because of any alterations, notes, comments, or other material contained thereon or attached thereto, or otherwise). "Document" shall also include any and all data compilations from which information can be obtained.

16.     The term "thing" or "things" has the broadest meaning prescribed in Federal Rule of Civil Procedure 34, including every kind of physical specimen or tangible item, other than a document, in your possession, custody, or control.

17.     The term "person" means any individual, natural person, or any business, governmental entity or agency, or association, including, but not limited to, any individual, company, corporation, division, joint venture, partnership, unincorporated association, or any other legal entities or units thereof.

18.     Where an instruction or request names a corporation or other legal entity, the instruction or request includes within its scope any parent, predecessors in interest, subsidiaries, affiliates, directors, officers, employees, agents, and representatives thereof, including attorneys, consultants, accountants, and investment bankers.

19.     The word "and" and the word "or" shall be understood as either conjunctive or disjunctive, whichever is more inclusive in content.

20.     The words "any," "all," and "each" shall be construed to mean any, all, each, and every.

21.     The term "refer," "relate," "respecting," or "concerning" shall mean referring to, relating to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter identified in a request.

22.     The singular form of a word shall include the plural and vice versa, and terms in the present tense shall include terms in the past tense and vice versa.

23.     The terms "including" and "includes" mean "including but not limited to."

## **<u>INSTRUCTIONS</u>**

1.     Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Qorvo shall designate one or more qualified or knowledgeable officers, directors, managing agents, or other

Public Version

persons to testify on its behalf regarding each of the subject matters for deposition listed below. Full and complete responses to the following topics shall be provided, after a diligent and thorough investigation into all information within Qorvo's possession, custody, or control has been conducted. If a full and complete response to any topic cannot be provided for any reason, respond to the topic to the extent possible, specifying the portion of the topic that cannot be answered, and provide whatever information can be provided regarding the unanswered portion.

2.      If Qorvo believes that the meaning of any term used in the topics listed below to be unclear, you should assume a reasonable meaning, state what that assumed meaning is, and respond on the basis of the assumed meaning, subject to Akoustis' right to clarify the meaning in the same or a different manner.

3.      Unless otherwise stated, the time period for each deposition topic stated below is from 2014 to the present.

## TOPICS FOR DEPOSITION

1.      The organizational structure of the Qorvo departments involved in the development, marketing, sale, manufacturing, and/or production of BAW filters.

2.      The Product Development process for BAW filters at Qorvo from 2014 to the present.

3.      Facts generally related to Qorvo's ownership of Qorvo's Purportedly Confidential Information.

4.      Qorvo's policies, procedures, and practices governing who has access to or is restricted from accessing Qorvo's Purportedly Confidential Information from 2014 to the present.

5.      Qorvo's policies, procedures, and practices directed to identifying, branding, and safeguarding documents and information as confidential and/or proprietary to Qorvo, including those directed to the Bolden James software, Data Loss Prevention software, and any steps taken or not taken in response to reports generated by Data Loss Prevention software.

6.      The facts and circumstances pertaining to Qorvo's "implemented device-based password protection, workspace-based password protections, role-based password protections, folder-based password protections, [and] file-based password protections," that are allegedly applicable to Qorvo's Purportedly Confidential Information as set forth in the SAC. *See* SAC ¶ 24.

7.      Qorvo's purported use and enforcement of non-disclosure agreements with its employees, customers, vendors, and third parties who are provided with access to Qorvo's Purportedly Confidential Information.

8.      For each former Qorvo employee who was subsequently employed by Akoustis and that Qorvo asserts provided Akoustis with Qorvo's Purportedly Confidential Information: the former employee's job title, general job functions and responsibilities, and access to the trade secrets.

9.      For each document that Akoustis specifies in advance of the deposition and that Qorvo has identified as Qorvo's Purportedly Confidential Information, all evidence demonstrating that

Public Version

such document has been kept confidential by Qorvo, is not publicly available or readily ascertainable from publicly available information, that such document was not shared with any unauthorized Qorvo employee who did not have a need to access the information, and that such document if shared with other individuals or entities was at all times subject to a confidentiality or non-disclosure agreement.

10.    The public and/or unauthorized disclosure of any of Qorvo's Purportedly Confidential Information, including any data breaches or other unauthorized intrusion, access, or disclosure of Qorvo's Purportedly Confidential Information.

11.    Facts supporting Qorvo's allegations regarding alleged misappropriation of Qorvo's Purportedly Confidential Information that is not identified in Qorvo's Identification of Trade Secrets (dated May 1, 2023), Qorvo's Supplemental Identification of Trade Secrets (dated July 25, 2023), and/or Qorvo's Second Supplemental Identification of Trade Secrets (dated October 12, 2023), including any of Qorvo's Purportedly Confidential Information referenced in paragraphs 64 and/or 77 of Qorvo's SAC.

12.    Any analysis, review or consideration by Qorvo to build a BAW filter based on thin film bulk acoustic wave resonators ("FBARs") and the similarities and/or differences between surface mount resonators ("SMRs") and FBARs in connection with BAW filters.

13.    Qorvo's market share of BAW filters based on each of FBAR resonators and SMR resonators.

14.    Qorvo's market share of BAW filters based on each of 3-4GHz BAW filters, 5GHz BAW filters, and 6GHz+ BAW filters.

15.    The facts and circumstances, including documents and communications, pertaining to and/or surrounding any contemplated merger, acquisition, partnership, or other deal with Akoustis at any time, but specifically in and/or around October 2019.

16.    General facts and circumstances relating to Akoustis as a competitor of Qorvo or concerning Akoustis' BAW filters.

17.    Features that customers consider important when purchasing BAW filters, including any confusion in the market concerning Akoustis or its products; and sales lost to Akoustis, including customers, the reason for the loss, and feedback concerning the lost sale.

18.    Documents and communications, internally or with third parties, regarding the use of epi or "single crystal" technology for BAW filter resonators, including any documents or communications related to Akoustis' marketing or use of epi or "single crystal" technology in connection with an Akoustis BAW filter.

19.    Qorvo's consideration or analysis of different crystal purities in connection with the research and/or development of its BAW filters.

20.    Each and every instance of customer confusion of which Qorvo is aware and claims to have resulted from Akoustis' marketing of its single crystal technology.

Public Version

21.     The BAW filter marketplace, Qorvo's market share of the BAW filter market and in the WiFi access market, and Qorvo's competitors in the BAW filter market and in the WiFi access market.

22.     The sources from which and actions that Qorvo takes to seek or obtain information about the competitive marketplace for BAW filters and Qorvo's competitors in the marketplace.

23.     The origin of third-party information reported in the "WCON" quarterly intelligence reports.

24.     Qorvo's efforts to research, develop, manufacture and sell commercial BAW filters in the WiFi Access Point Market including why Qorvo's 5 GHz BAW filters were launched after Qorvo's competitors' 5 GHz BAW filters, the development and status of Qorvo's 6 GHz BAW filters, and any delays impacting Qorvo's research, development, manufacturing or sales of BAW filters in the WiFi Access Point Market.

25.     General information about the retention and attrition of employees whose work relates to BAW filters in the WiFi Access Point Market.

26.     Qorvo's evaluation, targeting, recruitment and/or hiring of former Akoustis employees, and any disclosure and/or use of any confidential information from Akoustis by those former employees.

27.     RESERVED.

28.     RESERVED.

29.     Steps taken, if any, to avoid current or former Akoustis employees hired by Qorvo from disclosing Akoustis Confidential Information to Qorvo.

30.     Qorvo's oral and written communications internally or with any third parties discussing Akoustis, including any criticism or praise for Akoustis, and any effort to spread fear, uncertainty, doubt or disinformation about Akoustis and/or its products.

31.     Qorvo's efforts to target, approach, evaluate, solicit, or steal Akoustis' customers.

32.     Qorvo's efforts to exclude Akoustis from the marketplace for BAW filters or to create any type of barriers or challenges for Akoustis to enter or remain in that market.

33.     The facts and circumstances pertaining to the following categories supporting Qorvo's allegations regarding Akoustis' alleged involvement in a conspiracy: (a) Akoustis' recruitment of Qorvo's employees for the alleged purpose of acquiring Qorvo's Purportedly Confidential Information; (b) any value given to an employee or third-party agent of Qorvo to obtain Qorvo's Purportedly Confidential Information; (c) any use by Akoustis of Qorvo information to target and/or recruit a Qorvo employee; (d) any agreement between any individual identified in Qorvo's response to Interrogatory No. 15 and Akoustis; (e) any role played by an individual identified in Qorvo's response to Interrogatory No. 15 in allegedly helping Akoustis while

Public Version

employed by Qorvo; (f) any communications between or among the individuals identified in Qorvo's response to Interrogatory No. 15 about helping Akoustis.

34.     The facts and circumstances pertaining to the following categories supporting Qorvo's allegations regarding Akoustis' alleged involvement in racketeering activities or an alleged pattern of racketeering: (a) Akoustis' recruitment of Qorvo's employees for the alleged purpose of acquiring Qorvo's Purportedly Confidential Information; (b) any value given to an employee or third-party agent of Qorvo to obtain Qorvo's Purportedly Confidential Information; (c) any use by Akoustis of Qorvo information to target and/or recruit a Qorvo employee; (d) any agreement between any individual identified in Qorvo's response to Interrogatory No. 15 and Akoustis; (e) any role played by an individual identified in Qorvo's response to Interrogatory No. 15 in allegedly helping Akoustis while employed by Qorvo; (f) any communications between or among the individuals identified in Qorvo's response to Interrogatory No. 15 about helping Akoustis.

35.     RESERVED.

36.     Qorvo's answers to Akoustis' interrogatories in this Action to the extent they relate to any Topic in this Notice of Deposition, or as to any other interrogatory that Akoustis requests that a witness be prepared to address.

37.     Qorvo's hiring practices for employees with BAW filter experience.

38.     The factual basis for any belief by Qorvo that it has lost market share, lost sales or suffered any other economic harm as a result of Akoustis' alleged misconduct, including the extent of any harm.

39.     Qorvo's lost market share, lost sales or any other economic harm resulting from competition in the marketplace for BAW filters.

40.     Qorvo's lost market share, lost sales, or any other economic harm resulting from Qorvo's inability to meet customer demands in the marketplace for BAW filters.

41.     The economic value of Qorvo's BAW filters in the WiFi Access Point Market, including the fixed and variable costs, the sales volumes, and the profit margins associated with each filter on a monthly basis.

42.     Qorvo's licensing or attempts to license the Asserted Patents or any of Qorvo's Purportedly Confidential Information.

43.     Facts and circumstances, including documents and communications, related to Qorvo's licensing or attempts to license from a third party any BAW filter technology, or any information or patent used in connection with a Qorvo BAW Filter.

44.     The value of Qorvo's Purportedly Confidential Information.

45.     Facts and information pertaining to any written valuations of Qorvo's Purportedly Confidential Information.

**Public Version**

46.     Any and all Qorvo intercompany agreements or arrangements related to Qorvo's BAW filters, including any financial allocations or internal charges attributable to their use or integration in other products.

47.     Qorvo's current and/or projected revenue, price, costs, and profitability resulting from sales of its BAW filters in the WiFi Access Point Market as well as products identified in response to Defendant's Interrogatory No. 1.

48.     The average and forecasted technology lifecycle of each Qorvo BAW filter in the WiFi Access Point Market.

49.     The report produced with Bates number QORVO_00063152 and any other versions of this report, including QORVO_00843994, QORVO_00843354, and QORVO_00843772, that Qorvo has generated or maintained.