IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT OF THE VALIDITY OF U.S. PATENT NOS. 7,522,018 AND 9,735,755**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

*Attorneys for Plaintiff Qorvo, Inc.*

February 1, 2024

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     NATURE AND STATE OF THE PROCEEDINGS ....................................... 1

III.    THE '018 AND '755 PATENTS .................................................................... 2

IV.     LEGAL STANDARDS ................................................................................. 2

V.      AKOUSTIS CANNOT SHOW INVALIDITY BASED ON NON-ENABLEMENT ....... 3

        A.      An "Undue Experimentation" Analysis Is Required to Show Lack of Enablement 3

        B.      Summary Judgment Should Be Granted Because Akoustis Has Not Provided
                Evidence of "Undue Experimentation" for '018 Patent Claims 1 and 12 .............. 3

        C.      Summary Judgment Should Be Granted Because Akoustis Has Not Provided
                Evidence of "Undue Experimentation" for '755 Patent Claims 9 and 10 ............. 4

        D.      Conclusion ........................................................................................ 5

VI.     AKOUSTIS CANNOT SHOW THE CLAIMS ARE INDEFINITE ................................ 5

VII.    AKOUSTIS CANNOT SHOW THE CLAIMS FAIL THE WRITTEN DESCRIPTION
        REQUIREMENT ........................................................................................ 7

VIII.   AKOUSTIS CANNOT SHOW THE CLAIMS ARE ANTICIPATED .......................... 8

        A.      Anticipation ....................................................................................... 8

        B.      Summary Judgment Should Be Granted That Claims 1 and 12 of the '018 Patent
                Are Not Invalid As Anticipated ............................................................. 8

        C.      Summary Judgment Should Be Granted That Claims 9 and 10 of the '755 Patent
                Are Not Invalid As Anticipated ............................................................ 10

        D.      Conclusion ...................................................................................... 12

IX.     AKOUSTIS CANNOT SHOW THE CLAIMS ARE OBVIOUS .................................. 12

        A.      Obviousness ..................................................................................... 12

        B.      Summary Judgment Should Be Granted That Claims 1 and 12 of the '018 Patent
                Are Not Invalid As Obvious ................................................................ 13

        C.      Summary Judgment Should Be Granted That Claims 9 and 10 of the '755 Patent
                Are Not Invalid As Obvious ................................................................ 13

        D.      Conclusion ...................................................................................... 14

X.      CONCLUSION ......................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Sanofi*,
   987 F.3d 1080 (Fed. Cir. 2021)........................................................................3, 4, 5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................................2

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal. Inc.*,
   853 F.2d 1557 (Fed. Cir. 1988)................................................................................2

*Callaway Golf Co. v. Acushnet Co.*,
   576 F.3d 1331 (Fed. Cir. 2009).................................................................................8

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
   725 F.3d 1341 (Fed. Cir. 2013).................................................................................8

*Crown Operations Int'l, Ltd. v. Solutia Inc.*,
   289 F.3d 1367 (Fed. Cir. 2002).................................................................................2

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
   845 F.3d 1357 (Fed. Cir. 2017).................................................................................6

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008)...............................................................................12

*Invista N. Am. S.À.R.L. v. M&G USA Corp.*,
   951 F. Supp. 2d 626 (D. Del. 2013).................................................................6, 8, 12

*Invitrogen Corp. v. Clontech Labs., Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005).................................................................................7

*Kahn v. Gen. Motors Corp.*,
   135 F.3d 1472 (Fed. Cir. 1998)...............................................................................12

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007).................................................................................................12

*Microsoft Corp. v. i4i Ltd.*,
   564 U.S. 91 (2011).....................................................................................................2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)...................................................................................................5

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
    424 F.3d 1161 (Fed. Cir. 2005)................................................................................7

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001)................................................................................7

*Richardson-Vicks Inc. v. Upjohn Co.*,
    122 F.3d 1476 (Fed. Cir. 1997)..............................................................................12

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed. Cir. 2005)................................................................................8

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988)..........................................................................3, 4, 5

*In re Warsaw Orthopedic, Inc.*,
    832 F.3d 1327 (Fed. Cir. 2016)..............................................................................12

**Statutes**

35 U.S.C. § 102.................................................................................................................1, 12

35 U.S.C. § 103...........................................................................................................1, 12, 14

35 U.S.C. § 112...............................................................................................................1, 5

35 U.S.C. § 282....................................................................................................................2

**Rules**

Fed. R. Civ. P. 56(a) ...........................................................................................................2

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 56 and the Court's May 10, 2023 Scheduling Order (D.I. 198), Plaintiff Qorvo, Inc. ("Qorvo") moves for summary judgment that claims 1 and 12 of U.S. Patent No. 7,522,018 ("the '018 Patent") and claims 9 and 10 of U.S. Patent No. 9,735,755 ("the '755 Patent") have not been, and cannot be, shown to be invalid by Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis").

Summary judgment is warranted because Akoustis fails to provide any basis to prove by clear and convincing evidence that the claims are invalid under 35 U.S.C. §§ 112, 102, or 103. In particular, Akoustis fails to show invalidity: (i) for lack of enablement because it has provided no evidence that "undue experimentation" would be required to make and use the invention (*see* §V); (ii) for indefiniteness because it has provided no evidence that any claim element would not be understood with "reasonable certainty" (*see* §VI); (iii) for lack of written description because it has provided no evidence that the inventors were not in "possession" of the claimed inventions (*see* §VII); (iv) by anticipation because it has provided no evidence that any cited reference discloses element [1c] of claim 1 of the '018 Patent or elements [9h]/[10h] of the '755 Patent (*see* §VIII); and (v) by obviousness because it has not applied the *Graham* factors or provided any evidence of any motivation to modify or combine the cited references (*see* §IX).

## II.   NATURE AND STATE OF THE PROCEEDINGS

This case has been pending for over two years. Fact discovery closed on November 15, 2023, expert discovery closed on January 26, 2024, and trial is scheduled for May 6, 2024. D.I. 198; 313. The Court issued a *Claim Construction Order* on March 15, 2023 construing terms in the '755 Patent. D.I. 152 (no terms in the '018 Patent were construed). Akoustis served its *Final Invalidity and Unenforceability Contentions* on June 15, 2023. Ex. A. Akoustis served the *Opening Expert Report of Dr. Clark Nguyen Regarding the Invalidity of U.S. Patent Nos. 7,522,018 B2 and*

*9,735,755 B2* on November 21, 2023. Ex. B.[1] Qorvo served the *Expert Report of John C. Bravman, Ph.D., Regarding Validity* on December 20, 2023. Ex. C-1.

## III.    THE '018 AND '755 PATENTS

As set forth in Qorvo's *Opening Claim Construction Brief* (D.I. 100 at 1-2), the '018 and '755 Patents relate to structural features of Bulk Acoustic Wave ("BAW") resonators used in RF filters found in wireless devices (*e.g.*, smartphones). *See also* Ex. C-1, ¶¶50-56. Reproductions of the asserted claims with element labels are included in Appendix A.[2]

## IV.    LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Federal Circuit "has repeatedly emphasized that 'summary judgment is as appropriate in a patent case as in any other.'" *Avia Grp. Int'l, Inc. v. L.A. Gear Cal. Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988) (affirming summary judgment of no invalidity). "[When] ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Because each patent claim is presumed valid (35 U.S.C. §282) a party must demonstrate invalidity by clear and convincing evidence. *See, e.g.*, *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 112-13 (2011).  Therefore, to obtain summary judgment that the asserted claims are not invalid, Qorvo need only "point[] out to the district court" the absence of evidence supporting Akoustis' assertions of invalidity. *Avia Grp.*, 853 F.2d at 1560; *see also Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377-78 (Fed. Cir. 2002).

---

[1] All exhibit citations to lettered exhibits are to the exhibits to the Declaration of Timothy P. Cremen ("Cremen Decl."), unless otherwise indicated.

[2] All element citations to element labels are to Appendix A, unless otherwise indicated.

## V.    AKOUSTIS CANNOT SHOW INVALIDITY BASED ON NON-ENABLEMENT

### A.    An "Undue Experimentation" Analysis Is Required to Show Lack of Enablement

Enablement is a "question of law" based on underlying factual inquiries. *In re Wands*, 858 F.2d 731, 735-37 (Fed. Cir. 1988). To prove non-enablement "a challenger must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue experimentation.'" *Amgen Inc. v. Sanofi*, 987 F.3d 1080, 1084 (Fed. Cir. 2021). Factors to be considered in determining undue experimentation include: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d at 737.

### B.    Summary Judgment Should Be Granted Because Akoustis Has Not Provided Evidence of "Undue Experimentation" for '018 Patent Claims 1 and 12

Akoustis' *Final Invalidity Contentions* assert that the recitation that "the top electrode layer is thinner than the bottom electrode layer to increase a filter bandwidth of the electro-acoustic resonator" in claim 1 of the '018 Patent (*see* element [1c]) is not enabled because "[a]s shown in the tables included in the '018 Patent, the top electrode being thinner than the bottom electrode layer does not, in every case, result in an increase in filter bandwidth. The patentee is attempting to claim 'all successful combinations' while only providing an instruction to 'try a large set of combinations and then record the successful ones.'" Ex. A at 17.

These attorney arguments[3] do not explain, let alone show, by clear and convincing

---

[3] While not relevant here, it is worth noting that element [1c] does not cover *every* BAW resonator with a thinner top and thicker bottom electrode. It covers only BAW resonator configurations where (in conjunction with the other elements of the resonator) the difference in electrode thickness increases a filter bandwidth of the resonator *vis-à-vis* a configuration where the electrode

evidence, that a person of ordinary skill in the art ("POSITA") would not have been able to practice the claimed invention without "undue experimentation" (*Amgen*, 987 F.3d at 1084) or address any of the seven *Wands* factors (*In re Wands*, 858 F.2d at 736-37). Thus, the *Final Invalidity Contentions* do not themselves set forth a theory or provide any evidence that comes close to carrying Akoustis' burden to show non-enablement of claims 1 and 12.

Dr. Nguyen's *Expert Report* includes a section titled "Lack of Enablement" (Ex. B, ¶¶45-54) that advances various criticisms of the '018 Patent. But Dr. Nguyen fails to provide any analysis of "undue experimentation," let alone address the *Wands* factors. In fact, Dr. Nguyen fails to even **mention** "undue experimentation" in this section. Thus, like the *Final Invalidity Contentions*, Dr. Nguyen's *Expert Report* fails to provide evidence that comes close to carrying Akoustis' clear and convincing burden to show claims 1 and 12 are not enabled.

### C. Summary Judgment Should Be Granted Because Akoustis Has Not Provided Evidence of "Undue Experimentation" for '755 Patent Claims 9 and 10

Akoustis' *Final Invalidity Contentions* assert two bases of non-enablement for claims 9 and 10 of the '755 Patent. First, Akoustis asserts that, while SMR embodiments are disclosed, FBAR embodiments are not and therefore the claims, which are directed to FBAR, are not enabled. Ex. A, at 16. Second, Akoustis asserts that "acoustically matched in such a manner that one or more wavelengths that cause energy leakage into the outer region are not excited in the active region" in claims 9 and 10 is not enabled because "[t]he skilled artisan is not able to determine how to affect what wavelengths are created in the active region on the basis of acoustic matching between the active region and the outer region, nor on the ratio n." *Id.* at 18.

---

layers are of equal thickness. Ex. C-1, ¶¶71-72. FIGS. 4-7 of the '018 Patent demonstrate, as Akoustis concedes, examples of configurations that provide such bandwidth improvement, which is more than enough to enable the scope of element [1c].

Again, these attorney arguments[4] do not explain how, let alone show, by clear and convincing evidence, that the claimed invention could not be practiced without "undue experimentation" (*Amgen*, 987 F.3d at 1084), and do not address any of the *Wands* factors (*In re Wands*, 858 F.2d at 736-37). Thus, the *Final Invalidity Contentions* do not provide evidence that comes close to carrying Akoustis' burden to show non-enablement.

Dr. Nguyen's *Expert Report* includes a "Prior Art, Enablement, and Indefiniteness" section (Ex. B, ¶¶64-85) that criticizes the '755 Patent but which again fails to offer any analysis of undue experimentation or discuss any of the *Wands* factors. In fcat, Dr. Nguyen fails to even ***mention*** "undue experimentation" in this section. Thus, his *Expert Report* also fails to provide evidence that comes close to carrying Akoustis' burden to show non-enablement.

### D.    Conclusion

At least because neither the *Final Invalidity Contentions* nor Dr. Nguyen's *Expert Report* address undue experimentation or the *Wands* factors, Akoustis cannot prove, by clear and convincing evidence, that '018 Patent claims 1 and 12 or '755 Patent claims 9 and 10 are invalid under § 112 for lack of enablement. Summary judgment as to this issue should be granted.

## VI.    AKOUSTIS CANNOT SHOW THE CLAIMS ARE INDEFINITE

A patent is invalid for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572

---

[4] While not relevant here, it is worth noting the only practical difference (while serving the same purpose) between SMR and FBAR configurations is the reflective structures on the **bottom** of the resonator (*e.g.*, an SMR's Bragg reflector and an FBAR's air gap, *see* D.I. 100 at 2). The inventive configuration, on the other hand, deals with layers on the **top** of resonator, and the '755 Patent confirms it is applicable to SMR and FBAR. Ex. E, 2:4-26; 7:54-57. A POSITA would understand the same. Ex. C-1, ¶184. Further, the '755 Patent provides a detailed description of what layers to adjust to achieve the n≠1 configuration and that simulations can be run to determine the effect of layer adjustments on leakage and wavelength creation. Ex. E, 5:5-7:57.

U.S. 898, 898-99 (2014). "Indefiniteness is a question of law" that can be resolved on summary judgment. *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1370 (Fed. Cir. 2017).

Regarding the '018 Patent, Akoustis' *Final Invalidity Contentions* include attorney argument that "to increase a filter bandwidth" in claim 1 is indefinite, (Ex. A at 18), but fail to provide any explanation, let alone clear and convincing evidence, why claim 1 would not be understood with "reasonable certainty."[5] Thus, the *Final Invalidity Contentions* do not set forth evidence that comes close to carrying Akoustis' burden to show indefiniteness. Dr. Nguyen's *Expert Report* does not cure these deficiencies because he does not advance ***any*** indefiniteness assertions for the '018 Patent. *See* Ex. B, ¶¶43-60.

Regarding the '755 Patent, Akoustis' *Final Invalidity Contentions* do not assert any bases of indefiniteness for claims 9 or 10. Ex. A at 18-19. And, despite providing a section titled "Prior Art, Enablement and Indefiniteness" for the '755 Patent, Dr. Nguyen does not either. Ex. B, ¶¶61-89. Thus, there are no indefiniteness contentions for these claims.

Thus, Akoustis cannot prove, by clear and convincing evidence, that '018 Patent claims 1 and 12 or '755 Patent claims 9 and 10 are invalid for indefiniteness because it has provided no evidence they would not be understood with "reasonable certainty." Indeed, there is no expert testimony supporting any indefiniteness position, which alone should result in summary judgment. *Invista N. Am. S.À.R.L. v. M&G USA Corp.*, 951 F. Supp. 2d 626, 652 (D. Del. 2013). Summary judgment as to this issue should be granted to Qorvo.

---

[5] That is because Akoustis cannot. A POSITA would understand element [1c] according to its plain meaning—*e.g.*, the top electrode is thinner than the bottom electrode, and that the effect of that difference is to increase a filter bandwidth of the resonator *vis-à-vis* a configuration where the electrode thicknesses (of a comparative resonator) are equal. Ex. C-1, ¶¶71-72.

## VII.   AKOUSTIS CANNOT SHOW THE CLAIMS FAIL THE WRITTEN DESCRIPTION REQUIREMENT

To invalidate a claim for lack of written description, a patent challenger must "show[] by clear and convincing evidence that the written description requirement has not been satisfied." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed. Cir. 2005). As long as the specification demonstrates that the inventor "possessed" the invention at the time of filing, the written description requirement is satisfied. *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005) (affirming summary judgment of no invalidity). "The possession test requires assessment from the viewpoint of one of skill in the art." *Id*. The applicant need not, however, "describe in the specification every conceivable embodiment of his invention." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001).

Regarding the '018 Patent, the *Final Invalidity Contentions* vaguely assert a written description invalidity basis in parallel to the enablement basis discussed above (Ex. A at 16), yet the contentions do not provide any particular analysis as to whether the inventors "possessed" the claimed invention at the time of filing the '018 Patent. Thus, the *Final Invalidity Contentions* do not themselves set forth a theory or provide any evidence that comes close to carrying Akoustis' burden to show a lack of written description. Dr. Nguyen's *Expert Report* also does not advance any written description assertions for the '018 Patent. *See* Ex. B, ¶¶43-60.

Regarding the '755 Patent, neither the *Final Invalidity Contentions* nor Dr. Nguyen's *Expert Report* advances any contentions of lack of written description as to claims 9 and 10.

Accordingly, Akoustis cannot prove, by clear and convincing evidence, that '018 Patent claims 1 and 12 or '755 Patent claims 9 and 10 are invalid as lacking written description because it has provided no evidence that the inventors were not in "possession" of the claimed inventions at the time of filing of the patents. Indeed, there is no expert testimony supporting any

indefiniteness position, which alone should result in summary judgment. *Invista*, 951 F. Supp. 2d at 652. Summary judgment as to this issue should be granted to Qorvo.

## VIII.   AKOUSTIS CANNOT SHOW THE CLAIMS ARE ANTICIPATED

### A.   Anticipation

"Anticipation requires clear and convincing proof that a single prior art reference not only discloses all of the elements of the claim within the four corners of the document, but [] also discloses those elements arranged as in the claim." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013). A patent claim is anticipated only if "within the four corners of a single, prior art document [] every element of the claimed invention is described[.]" *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009). Anticipation is a question of fact, but "without genuine factual disputes underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005).

### B.   Summary Judgment Should Be Granted That Claims 1 and 12 of the '018 Patent Are Not Invalid As Anticipated

Element [1c] does not cover ***all*** BAW resonators with a thinner top and thicker bottom electrode. FIGS. 4-7 of the '018 Patent shows that not all arrangements of a thinner top and thicker bottom electrode will result in increased bandwidth. Indeed, element [1c] has two requirements: (i) that the resonator's top electrode layer is thinner than its bottom electrode layer; and (ii) that the effect of that thickness difference is to increase a filter bandwidth of the resonator *vis-à-vis* a comparative configuration where the electrode layers are of equal thickness. Ex. C-1, ¶71. Thus, to demonstrate anticipation, Akoustis cannot simply point to the disclosure of a resonator with a thinner top and thicker bottom electrode in a prior art reference. It must show either: (i) that the reference also specifically discloses that a differential electrode thickness will provide increased

bandwidth as compared to using equal electrode thicknesses; or (ii) that the identified resonator provides increased bandwidth *vis-à-vis* a comparative resonator with the same configuration but with equal electrode thicknesses. None of the references cited by Akoustis and Dr. Nguyen provide either disclosure.

Dr. Nguyen asserts that WO 02/093740 A1 ("*WO '740*") anticipates claims 1 and 12 (Ex. B, ¶¶26, 60) and provides a claim chart (Exhibit C to Ex. B, at 1-4). For element [1c], Dr. Nguyen does not identify any direct disclosure in *WO '740* that providing a BAW resonator with a thinner top and thicker bottom electrode will increase bandwidth *vis-à-vis* a BAW resonator with equal thickness electrodes. Exhibit C to Ex. B, at 1-2. Dr. Nguyen instead identifies various examples of *WO '740* and argues that comparing one example to the other demonstrates that providing a thinner top and thicker bottom electrode results in increased bandwidth. Exhibit C to Ex. B, at 1-2. But the examples identified by Dr. Nguyen differ from each other in many physical aspects beyond electrode thicknesses and therefore cannot be directly compared to show any (purported) increased bandwidth is related to electrode thickness differential. In other words, Dr. Nguyen is not performing an apples-to-apples comparison between examples to show *WO '740* discloses the claimed increased bandwidth. Dr. Nguyen has therefore not demonstrated that any *WO '740* example provides an increased bandwidth over a comparative version of that example using equal electrode thicknesses, and cannot show that *WO '740* anticipates claims 1 or 12.

Dr. Nguyen also asserts that U.S. Patent No. 6,081,171 ("*US '171*") anticipates claims 1 and 12 (Ex. B, ¶¶26, 60) and provides a claim chart (Exhibit C to Ex. B, at 4-7). Again, for element [1c], Dr. Nguyen does not identify any direct disclosure in *US '171* that providing a resonator with a thinner top and thicker bottom electrode will increase bandwidth *vis-à-vis* a resonator with equal thickness electrodes. Exhibit C to Ex. B, at 5. In fact, Dr. Nguyen **concedes** *US '171* "does not

explicitly describe ratioing the top and bottom metal electrode thicknesses" to impact bandwidth. *Id.* This alone is fatal to any argument that *US '171* anticipates claims 1 or 12. Moreover, while Dr. Nguyen identifies FIG. 4a as relevant to claim 1, he provides no analysis that its bandwidth is improved *vis-à-vis* a comparative resonator with equal thickness electrodes. *Id.* Thus, Dr. Nguyen cannot show that *US '171* anticipates claims 1 or 12.

Finally, Dr. Nguyen identifies U.S. Patent No. 5,873,154 ("*US '154*") as relevant to the '018 Patent (Ex. B, ¶57) and provides a claim chart. Exhibit C to Ex. B, at 7-11.. However, Dr. Nguyen does not specifically opine that *US '154* anticipates claims 1 and 12 of the '018 Patent. Ex. B, ¶60. To the extent his report is considered to provide an anticipation position as to claims 1 and 12, again, for element [1c], Dr. Nguyen does not identify any direct disclosure in *US '154* that providing a BAW resonator with a thinner top and thicker bottom electrode will increase bandwidth *vis-à-vis* a BAW resonator with equal thickness electrodes. Exhibit C to Ex. B, at 8. Dr. Nguyen identifies only a single embodiment, and provides no analysis that its bandwidth is improved *vis-à-vis* a comparative resonator with equal thickness electrodes. *Id.* Thus, Dr. Nguyen cannot show that *US '154* anticipates claims 1 or 12.

### C.   Summary Judgment Should Be Granted That Claims 9 and 10 of the '755 Patent Are Not Invalid As Anticipated

Elements [9h]/[10h] require that the selected value of "n" results in the outer and active regions being acoustically matched such that at least one wavelength that would otherwise cause energy leakage into the outer region is not excited in the active region, as compared to an alternative configuration of the inventive resonator that is identical in structure except that "n" is set to equal 1. Ex. C-1, ¶¶154-155. This is shown in the context of FIGS. 2A/3A and FIGS. 2B/3B of the '755 Patent. *Id.*, ¶156.

Dr. Nguyen asserts that U.S. Patent Application Publication No. 2014/0159548 A1 ("*US*

'548") anticipates claims 9 and 10 (Ex. B, ¶¶26, 90) and provides a claim chart as Exhibit D to his report (Exhibit D to Ex. B, at 17-21). But, beyond conclusory statements, Dr. Nguyen's analysis of elements [9h]/[10h] in his charts does not explain how the cited portion of *US '548*—which does not mention layer thickness selection or its impact on the excitation of wavelengths in the active region—shows all the requirements of these elements. Exhibit D to Ex. B, at 19, 21. Nor does Dr. Nguyen provide any comparative analysis showing the cited embodiment of *US '548* (which he asserts to provide the n≠1 configuration required by the claims) results in non-excitation of wavelengths that cause leakage *vis-à-vis* an alternative configuration that is identical in structure except that n=1. Even worse, Dr. Nguyen's analysis also includes citations to *Hashimoto*. This is improper in an anticipation analysis, which must be based on a single reference. Thus, Dr. Nguyen cannot show that *US '548* anticipates claims 9 or 10.

Dr. Nguyen also asserts that U.S. Patent No. 7,709,999 B2 ("*US '999*") anticipates claims 9 and 10 (Ex. B, ¶¶26, 90) and provides a claim chart as Exhibit D to his report. Exhibit D to Ex. B, at 29-34. Again, beyond conclusory statements, Dr. Nguyen's analysis of elements [9h]/[10h] in his charts does not explain how the cited portion of *US '999*—which does not mention layer thickness selection or its impact on the excitation of wavelengths in the active region—shows all the requirements of these elements. Exhibit D to Ex. B, at 32, 34. Nor, again, does Dr. Nguyen provide any comparative analysis showing the cited embodiment of *US '999* (which he asserts to provide the n≠1 configuration required by the claims) results in non-excitation of wavelengths that cause leakage as *vis-à-vis* an alternative configuration that is identical in structure except that n=1. Thus, Dr. Nguyen cannot show that *US '999* anticipates claims 9 or 10.

Akoustis' *Final Invalidity Contentions* also assert that claims 9 and 10 of the '755 Patent are anticipated by DE 102 41 425 A1 ("*DE '425*"), but this position is not repeated by Dr. Nguyen.

Ex. B, ¶¶26, 90. Because there is no expert testimony supporting this anticipation position, summary judgment should be granted. *Invista*, 951 F. Supp. 2d at 652.

### D.      Conclusion

Akoustis cannot prove by clear and convincing evidence that '018 Patent claims 1 and 12 or '755 Patent claims 9 and 10 are anticipated under § 102, at least because no cited reference can be understood to disclose element [1c] of claim 1 of the '018 Patent and elements [9h]/[10h] of the '755 Patent. Summary judgment as to this issue should be granted to Qorvo.

## IX.    AKOUSTIS CANNOT SHOW THE CLAIMS ARE OBVIOUS

### A.      Obviousness

The "determination under § 103 [obviousness] is whether the claimed invention as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made." *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1479 (Fed. Cir. 1998). Invalidity over the prior art based on obviousness is ultimately a question of law, but the inquiry rests on factual determinations. *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed. Cir. 1997). These factual determinations, often called the "*Graham* factors, include: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) certain secondary considerations." *Id.* Further, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 401 (2007). The party asserting obviousness must identify some motivation for one of ordinary skill would have had to combine the prior art references to achieve the claimed invention. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) ("There must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness"); *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1333 (Fed. Cir. 2016) ("As part of the obviousness inquiry, we

consider whether a PHOSITA would have been motivated to combine the prior art to achieve the claimed invention and whether there would have been a reasonable expectation of success in doing so.").

**B.      Summary Judgment Should Be Granted That Claims 1 and 12 of the '018 Patent Are Not Invalid As Obvious**

Neither Akoustis' *Final Invalidity Contentions* nor Dr. Nguyen's *Expert Report* advances obviousness assertions against claim 1 of the '018 Patent. Ex. A at 7-8. Dr. Nguyen's *Expert Report* does argue that claim 12 is obvious in view of  *WO '740*, but claim 12 cannot be found obvious due to the failures of *WO '740*'s disclosure of element [1c] discussed above.

**C.      Summary Judgment Should Be Granted That Claims 9 and 10 of the '755 Patent Are Not Invalid As Obvious**

Dr. Nguyen asserts that *DE '425* in view of *Hashimoto* renders obvious claims 9 and 10 (Ex. B, ¶¶26, 90) and provides a claim chart (Exhibit D to Ex. B, at 5-9). Akoustis' *Final Invalidity Contentions* *fail* to assert this obviousness position. Ex. A at 9. It should therefore be excluded. To the extent Akoustis is allowed to proceed on this basis, Dr. Nguyen fails to explain how the combination of *DE '425* and *Hashimoto* teaches elements [9h]/[10h]. Exhibit D to Ex. B, at 7, 9. First, Dr. Nguyen has failed to undertake a proper obvious analysis of the purported combination of *DE '425* and *Hashimoto* utilizing the *Graham* factors, including how or why a POSITA would have combined *DE '425* and *Hashimoto* and why a POSITA would have had a reasonable expectation of success in doing so. Dr. Nguyen's charts simply identify disclosures of *DE '425* and *Hashimoto* without further substantive obviousness analysis. Dr. Nguyen has therefore failed to provide a proper obviousness analysis. Further, even if a proper obviousness assertion had been advanced, Dr. Nguyen's analysis of elements [9h]/[10h] in his charts does not explain how the cited portion of *DE '425* or *Hashimoto*—neither of which recognizes the impact of layer thickness selection on the excitation of wavelengths in the active region—shows all the requirements of

these elements. Exhibit D to Ex. B, at 7, 9. Nor, again, does Dr. Nguyen provide any comparative analysis showing the cited embodiment of *DE '425* (which he asserts to provide the n≠1 configuration required by the claims) results in non-excitation of wavelengths that cause leakage *vis-à-vis* an alternative configuration that is identical in structure except that n=1.

Dr. Nguyen also asserts that U.S. Patent Application Publication No. 2014/0159548 A1 ("*US '548*") renders obvious claims 9 and 10 in combination with *Hashimoto* (Ex. B, ¶¶26, 90) and provides a claim chart. Exhibit D to Ex. B, at 17-21. Akoustis' *Final Invalidity Contentions* ***fail*** to assert this obviousness position. Ex. A at 9. It should therefore be excluded. To the extent Akoustis is allowed to proceed on this basis, the additional teachings of *Hashimoto* cited by Dr. Nguyen fail to correct the deficiencies of *US '548* as to elements [9h]/[10h] discussed above. And, again, Dr. Nguyen has failed to undertake a proper obvious analysis for the purported combination, including failing to apply the Graham factors and failing to explain how or why a POSITA would have looked to combine *US '548* and *Hashimoto* would have had a reasonable expectation of success in doing so. Again, Dr. Nguyen's charts simply identify disclosures of *US '548* and *Hashimoto* without further substantive obviousness analysis. Dr. Nguyen has therefore failed to provide a proper obviousness analysis.

Finally, Dr. Nguyen asserts that U.S. Patent No. 7,709,999 B2 ("*US '999*") renders obvious claims 9 and 10 (Ex. B, ¶¶26, 90) and provides a claim chart. Exhibit D to Ex. B, at 31-32, 34. Akoustis' *Final Invalidity Contentions* ***fail*** to assert this obviousness position (Ex. A at 9), and it should therefore be excluded. Moreover, Dr. Nguyen provides no proper obvious analysis utilizing the *Graham* factors, and *US '999* fails to teach or suggest [9h]/[10h] for at least the reasons discussed above. Dr. Nguyen has failed to provide a proper obviousness analysis.

**D.      Conclusion**

Defendant Akoustis cannot prove by clear and convincing evidence, that '018 Patent claims

1 and 12 or '755 Patent claims 9 and 10 are obvious under § 103, at least because no cited reference or combination can be understood to teach or suggest element [1c] of the '018 Patent and elements [9h]/[10h] of the '755 Patent and because Dr. Nguyen has failed to provide proper analyses utilizing the *Graham* factors, including any explanation for why a POSITA would have been motivated to combine the references as he asserts. Summary judgment as to this issue should be granted to Qorvo.

## X.   CONCLUSION

For the reasons discussed above, Qorvo respectfully requests that the Court grant Qorvo's motion for summary judgment.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

February 1, 2024

**APPENDIX A**

As shown in Ex. D, claims 1 and 12 of the '018 Patent recite the following (with bolded claim element labels added):

**[1a]** 1. Electro-acoustic resonator (1, 8, 17) comprising:

**[1b]** a membrane structure FBAR (1) with a layer structure comprising a piezoelectric layer (5, 14, 24) and a top (6, 15, 25) and a bottom (4, 13, 23) electrode layer, with the thickness (T1, T2, . . . T6) of the two electrode layers being unequal,

**[1c]** characterised in that the top electrode layer (T1, T3, T5) is thinner than the bottom (T2, T4, T6) electrode layer to increase a filter bandwidth of the electro-acoustic resonator.

12. Use of an electro-acoustic resonator (1, 8, 17) as claimed in claim 1, as a component of a radio frequency (RF) filter, or as a component used in a sensor, or used in an ultrasonic transducer, or used in an array of ultrasonic transducers.

As shown in Ex. E, claims 9 and 10 of the '755 Patent recite the following (with bolded claim element labels added):

| Claim 9 | Claim 10 |
|---|---|
| **[9a]** 9. A BAW resonator comprising: | **[10a]** 10. A method of fabricating a BAW resonator, comprising: |
| **[9b]** a piezoelectric layer; <br> **[9c]** a first electrode on a first surface of the piezoelectric layer; | **[10b]** providing an initial structure comprising a piezoelectric layer and **[10c]** a first electrode on a first surface of the piezoelectric layer; |
| **[9d]** a second electrode on a second surface of the piezoelectric layer opposite the first electrode on the first surface of the piezoelectric layer; | **[10d]** providing a second electrode on a second surface of the piezoelectric layer opposite the first electrode on the first surface of the piezoelectric layer; |
| **[9e]** a passivation layer on a surface of the second electrode opposite the piezoelectric layer within an active region of the BAW resonator, the passivation layer having a thickness (TPA) within the active region of the BAW resonator; and | **[10e]** providing a passivation layer on a surface of the second electrode opposite the piezoelectric layer within an active region of the BAW resonator, the passivation layer having a thickness (TPA) within the active region of the BAW resonator; and |
| **[9f]** one or more material layers on the second surface of the piezoelectric layer adjacent to the second electrode in an outer region of the | **[10f]** providing one or more material layers on the second surface of the piezoelectric layer adjacent to the second electrode in an outer |

| Claim 9 | Claim 10 |
|---|---|
| BAW resonator, the outer region of the BAW resonator being a region outside of the active region of the BAW resonator and the one or more material layers having a thickness that is n times the thickness (TPA) of the passivation layer within the active region, wherein: | region of the BAW resonator, the outer region of the BAW resonator being a region outside of the active region of the BAW resonator and the one or more material layers having a thickness that is n times the thickness (TPA) of the passivation layer within the active region, wherein: |
| **[9g]** n is a value other than 1; and | **[10g]** n is a value other than 1; and |
| **[9h]** n is such that the outer region of the BAW resonator and the active region of the BAW resonator are acoustically matched in such a manner that one or more wavelengths that cause energy leakage into the outer region are not excited in the active region. | **[10h]** n is such that the outer region of the BAW resonator and the active region of the BAW resonator are acoustically matched in such a manner that one or more wavelengths that cause energy leakage into the outer region are not excited in the active region. |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 1, 2024, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                          *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                              *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)