**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | |
| Plaintiff, | C.A. No. 21-1417 (JPM) |
| v. | |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF THE AKOUSTIS DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]**

Dated:  February 1, 2024

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

I.    **INTRODUCTION**

Plaintiff Qorvo, Inc. ("Qorvo") has taken twenty depositions, forced defendants' review and production of over one million pages of documents, and spent (and compelled defendants to spend) millions of dollars in scorched earth discovery.  Despite all that – and promising this Court that it would reduce the scope of its trade secret claims to twenty or fewer – Qorvo still strategically refuses to identify the alleged trade secrets it intends to pursue at trial with the required particularity.  Even Qorvo's designated trade secrets expert, Dr. Stanley Shanfield, admitted at his deposition that he would have to "speculate what trade secrets are being referred to" in Qorvo's "Identification of Trade Secrets It Currently Expects to Present at Trial."  The trial of this matter starts in three months.  Allowing Qorvo to pursue this trial by ambush will create a trial management nightmare and will severely prejudice Defendants.  And it is contrary to this District's well-established requirement that any alleged secrets be identified with reasonable particularity.

Qorvo is a $4 billion player in the market for electronic radio frequency ("RF") and power devices.  It was formed through the 2015 merger of RF Micro Devices, Inc. ("RFMD") and Triquint Semiconductor, Inc.  Among other things, Qorvo currently designs and manufactures bulk acoustic wave ("BAW") filters that utilize a solidly mounted resonator ("SMR") on top of a series of reflectors to trap unwanted frequencies from a target spectrum.  Multiple BAW filters are typically incorporated into a larger RF module (also made and sold by Qorvo) for this purpose.

The Akoustis defendants (collectively "Akoustis"), on the other hand, are a collective David to Qorvo's Goliath.  Akoustis is an emerging growth enterprise formed in 2014 by a former RFMD executive to design and develop high frequency BAW filters for various governmental and commercial applications.  Akoustis' BAW filters, however, do not use the SMR technology employed by Qorvo.  Akoustis' BAW filters instead utilize a different resonator technology called "FBAR" (film bulk acoustic resonator).  As noted by Qorvo's expert, Dr. John Bravman, FBAR

and SMR filters are different technologies "that use different manufacturing techniques and different process flows."

Qorvo commenced this action after "upstart" Akoustis' higher frequency BAW filters – a key to 5G data transmissions, higher rate WiFi, and other advanced technologies – beat Qorvo's to market. The case started as a patent infringement action intended to slow down Akoustis and force it to divert its limited resources to defend itself against a soon-to-expire patent and another that is easily designed around. The dispute has now expanded into a trade secret mystery tour along with a kitchen sink of specious state and federal claims. Despite its scorched earth discovery tactics and the 27 months since it commenced the case, Qorvo still lacks legal and evidentiary support for virtually all of its claims. Akoustis therefore moves for summary judgment on all but one of Qorvo's counts. If the Court grants the Motion in its entirety, trial would be limited to whether Akoustis' accused BAW filters infringe the patents-in-suit.

## II.    SUMMARY OF ARGUMENTS AND RELIEF SOUGHT

1.      Qorvo's February 8, 2023, sealed Second Amended Complaint ("SAC") (D.I. 125) shifted the focus of this case, making trade secret claims the centerpiece of this action. Yet despite serving *four* versions of the trade secret disclosure, Qorvo has failed to identify its trade secrets with reasonable particularity. Qorvo served its final "Identification of Trade Secrets It Currently Expects to Present at Trial" on November 17, 2023 ("Trial Disclosure"), in response to the Court's instruction that Qorvo "significantly reduce its trade secret claims by the close of fact discovery." (D.I. 313 at 3.) The Trial Disclosure includes ten categories of purported trade secrets; each category contains from 2 to 32 bullet points with a short statement and non-exhaustive citations to documents that are claimed to somehow relate to the statement. The bullet points – 104 of them in total – are supposed to comply with Qorvo's trade secret disclosure obligations. They do not.

████████████████████████████

Qorvo's Trial Disclosure is fatally flawed for two reasons.  First, it fails to identify the asserted trade secrets with the sufficient particularity required by this Court and other district courts in this Circuit.  Even Qorvo's trade secrets expert, Dr. Stanley Shanfield, could not explain what the bullet points mean at his January 26, 2024 deposition.  Second, the Trial Disclosure defies the Court's intent that Qorvo limit its asserted trade secrets to a number that can be reasonably tried to a jury – along with the patent claims and any other claims surviving this motion – given the time set aside for trial.  Because trial by ambush should not be permitted, the Court should grant summary judgment for Akoustis on <u>Counts VI, VIII, and IX</u>.

2.      Summary judgment should also be granted to Akoustis on <u>Count III</u>.  That claim alleges that Akoustis' statements regarding its "single crystal technology" constitute false advertising under the Lanham Act.  But the undisputed evidence demonstrates that (1) Akoustis has developed, made, and offered to sell filters using single crystal technology; and (2) the record is devoid of any evidence that actual or potential customers were or would likely be confused.

3.      Qorvo alleges in <u>Count V</u> that Akoustis engaged in unfair competition under North Carolina law by misappropriating trade secrets, false advertising, and "poaching" former Qorvo employees.  The first two bases for the claim fail as summarized above.  The undisputed evidence negates Qorvo's bare allegation that Akoustis engaged in unfair competition by "poaching" 19 Qorvo employees over the past nine years.  No poaching occurred; Akoustis hired the best people for the job, 19 of whom came from Qorvo – like Akoustis, one of the few electronics companies in the Charlotte metropolitan area.  Routine employment practice in a small field is not actionable.

4.      The Court should also grant summary judgment on <u>Count VII</u>, alleging violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Alleging racketeering in a

competitor dispute is classic over-pleading.  Qorvo has not shown viable predicate acts or the existence of a distinct RICO enterprise, nor can it prove any damages for the claim.

5.    Akoustis moves for partial summary judgment of noninfringement on <u>Count II</u> to the extent that Qorvo believes it is directed to Akoustis' alternative design products intended to avoid U.S. Patent No. 9,735,755 ("the '755 Patent").  Akoustis produced physical samples of the alternative design filters to Qorvo.  Qorvo's experts did not test the alternative design products provided for infringement, and Qorvo did not include them in its later Final Infringement Contentions.  The alternative design products are therefore not accused products.

6.    Akoustis also moves for summary judgment on Qorvo's patent marking claim in <u>Count IV</u> in light of Qorvo's discovery response dropping that claim.

## III.    **STATEMENT OF UNDISPUTED FACTS**

### A.    **QORVO'S CLAIMS**

Qorvo attempts to plead nine different counts in its SAC, including:  Counts I-II for patent infringement; Count III for Lanham Act false advertising; Count IV for false patent marking; Count V for unfair competition under N.C. Gen Stat. § 75-1; Count VI for violation of the Defense of Trade Secrets Act ("DTSA"); Count VII for violation of RICO; Count VIII for trade secret misappropriation under North Carolina law; and Count IX for civil conspiracy under North Carolina law.  In its July 21, 2023 First Supplemental Response to Interrogatory No. 9, Qorvo stated that "[p]ursuant to the Court's order on claim construction (D.I. 152), Qorvo is no longer pursuing its claim for false patent marking."  Decl. of David S. Elkins in Support of Akoustis' Motion for Partial Summary Judgment ("Elkins Decl.") Ex. 1 at 24.

### B.    **QORVO'S TRADE SECRET DISCLOSURES**

Qorvo has had multiple opportunities to identify its purported trade secrets with the required particularity.  After filing its SAC with its operative trade secret allegations, Qorvo served

its initial Identification of Trade Secret Disclosures on May 1, 2023.  Elkins Decl. Ex. 2.  Then Qorvo served its Supplemental Identification of Trade Secret Disclosures on July 25, 2023.  *Id.* Ex. 3.  Qorvo served its Second Supplemental Trade Secret Disclosures on October 12, 2023.  *Id.* Ex. 4.

Qorvo has long recognized its need to identify the alleged trade secrets at issue and pare down their number.  Even before serving its initial Trade Secret Disclosure, Qorvo's counsel admitted that "we will have to pare our list to what's manageable for the jury."  (D.I. 177 (Tr. Apr. 3, 2023) at 14.)  After serving its Supplemental Trade Secret Disclosure, Qorvo's counsel told the Court that "I believe we've -- our goal is [to narrow the trade secrets to] no more than 20, and we would be hopeful that it would be less than that as well.  You know, part of that goes into obviously how are you identifying -- defining the individual trade secret.  A lot of these trade secrets are related to each other, so we're trying to group those."  (D.I. 288 (Tr. Aug. 18, 2023) at 11; *see also id.* (Tr. Aug. 18, 2023) at 9-10) ("So, Your Honor, we have addressed this previously, and we agree that the number of trade secrets needs to be reduced for the purposes of trial and for jury comprehension at the very least.").  The Court ordered that it "expects Qorvo to significantly reduce its trade secret claims."  (D.I. 313 (Order Sept. 1, 2023) at 2-3.)

Expressly pursuant to the Court's September 1, 2023 Order, Qorvo served its final "Identification of Trade Secrets It Currently Expects to Present at Trial" ("Trial Disclosure") on November 17, 2023, the day after fact discovery closed.  Elkins Decl. Ex. 5 at 1.  Stating that "[t]o the extent document citations are provided, these are explanatory citations" (*id.* at 2), the Trial Disclosure identifies ten categories of purported trade secrets.  *Id.* at 2-13.  Beneath each category are bullet points with a short statement and non-exhaustive "exemplary citations" to documents

that purport to relate to the statement.  *Id.* at 2-14.  The categories are as follows (the number in brackets after the category is the number of bullet points for that category) (*id.*):

(1)     Qorvo's Business Plans for Wi-Fi Products [6];

(2)     Qorvo's BAW Filter and Resonator Designs [25];

(3)     Qorvo's Trimming Method and Procedures [4];

(4)     Qorvo Evaluation Board Design Rules and Schematics [5];

(5)     Qorvo Product Development Process and Testing Procedures [9];

(6)     Qorvo Systems, Processes, and Procedures for Testing Reliability and Mean-Time-to-Failure [32];

(7)     Qorvo Manufacturing, Assembly, and Change Procedures [7];

(8)     Qorvo Product Roadmaps and Prototypes [6];

(9)     Trade Secrets Relating to Job Structures and Employee Compensation [2];

(10)    Qorvo's Tax and Corporate Compliance Structure and Know-How [8].

Each of the 104 bullet points is evidently intended to "disclose" a purported trade secret that Qorvo intends to assert at trial.  Missing from the Trial Disclosure are any statements distinguishing each purported trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.  *Id.*

Dr. Shanfield, Qorvo's expert witness regarding trade secrets, submitted a 680-page expert report.  Elkins Decl. Ex. 6 at 106:19-24.  Shown the Trial Disclosure at his deposition, he was asked, "of the trade secrets that [Qorvo] currently expects to present at trial, are those trade secrets represented by the bullet points that are underneath each numerical heading?"  *Id.* at 141:4-13.  Dr. Shanfield protested that "[y]ou are asking me to, from this list, try and speculate what trade secrets are being referred to."  *Id.* at 141:16-23.  He added, "Again you're asking me to speculate about

████████████████████████████

the meaning of each of these lines [or bullet points] . . . I'll be happy to go through my report to describe dozens of them.  How it corresponds with this list is, that would be speculation on my part."  *Id.* at 142:6-16.

### C.    AKOUSTIS' ALTERNATIVE BAW FILTER DESIGNS

Over 19 months ago, Akoustis disclosed to Qorvo the existence of two non-infringing alternative designs and related configurations for products accused of patent infringement.  Elkins Decl. Ex. 7 at 20 (Akoustis' First Supp. Response to Interrog. No. 8 (June 28, 2022) (citing AKTS_00022006)).  Akoustis specifically disclosed that these non-infringing alternative designs

████████████████████████████

████████    *Id.*  On January 6 and March 29, 2023, Akoustis produced samples of the non-infringing alternative designs for its AKF-1252, AKF-1256, A10655, and A10155 BAW filters to Qorvo.  *Id.* Ex. 7 at 20-21 (Akoustis' Second Supp. Response to Interrog. No. 8).

Qorvo's served its Final Patent Infringement Contentions on June 15, 2023.  *Id.* Ex. 8. Qorvo opted not to include in its Final Patent Infringement Contentions any of the non-infringing alternative designs made available by Akoustis, but purported to "reserve[] the right to supplement, amend, or alter these contentions to address any such new designs."  *Id.* at 8 & n.1.

On July 21, 2023, Akoustis notified Qorvo that the non-infringing alternative designs provided to Qorvo were "sold in commerce."  *Id.* at 20-21 (Akoustis' Second Supp. Response to Interrog. No. 8).  On September 28, 2023, Akoustis produced a sample of its A10161 alternative design, and on October 10, 2023 produced a sample of its A10156 alternative design.  *Id.* at 21-22 (Akoustis's Third Supp. Response to Interrog. No. 8).  Akoustis continued to supplement its discovery responses to provide Qorvo with information regarding Akoustis's non-infringing alternative designs.  *See id.* at 22 (Akoustis's Fourth Supp. Response to Interrog. No. 8).  Qorvo never sought "to supplement, amend, or alter [its] contentions to address any such new designs."

████████████████████████

Qorvo tasked expert Dr. Helge Heinrich with testing the accused Akoustis products.  But he did not know about the existence of Akoustis' alternative designs, and did not test any: "Q.  . . . Were -- are you aware that some alternative designs of the products were provided by Akoustis to Qorvo? A.  No.  Q.  Okay.  So you did not perform any tests on any products outside of those listed in that chart in your report?  A.  Correct."  Elkins Decl. Ex. 10 (Heinrich Depo.) at 115:10-18.

Dr. John C. Bravman, Qorvo's expert witness regarding patent infringement, was asked about Akoustis's alternative BAW filter designs at his January 25, 2024, deposition.  *Id.* Ex. 9 (Bravman Depo.) at 97.  A key limitation of asserted independent claim 9 of the '755 Patent is that the passivation layer (silicon nitride, or SiN) does not have the same thickness in its active and outer regions.  D.I. 1-1 at PageID# 57.  At his deposition, Dr. Bravman admitted that he had not seen any evidence that the alternative designs' thickness was different.  *Id.* at 97:6-11 ("No, I don't -- I don't believe I have.").  He was asked, "[s]o would you agree with me, Dr. Bravman, that if Dr. Heinrich did not actually obtain cross-sections of the alternative designs that there is no evidence provided by Dr. Heinrich or Qorvo that these designs do not maintain the same thickness?  THE WITNESS:  Neither side has produced evidence that I've seen …"  *Id.* at 97:19-98:1.

### D.   THE ABSENCE OF FACTS REFLECTING FALSE ADVERTISING

Qorvo alleges that "Akoustis falsely or misleadingly represents to the consuming public, customers, potential customers (collectively, the 'target customers') and investors that Akoustis' BAW filters are of a 'single crystal' construction to support a claim of superior performance over the competition.  However, Akoustis' BAW filters are, in fact, polycrystalline."  (D.I. 125 ¶ 190.)

That Akoustis has developed, made, and offered to sell BAW filters using its single crystal technology is beyond dispute.  Up to 2018, Akoustis solely offered and promoted single crystal technology materials.  Elkins Decl. Ex. 13 (Aichele Depo.) at 266:1-3.  Akoustis was first able to provide polycrystalline materials in its BAW filters following the company's acquisition of its



fabrication facility in New York in or about 2018. *Id.* at 265:18-25. Since that time, Akoustis'
strategy has been ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

████████████████████████ *Id.* at 266:4-18, *see also* Elkins Decl. Ex. 7 (Akoustis Response to Qorvo
Interrog. No. 10); *see also id.* Ex. 13 (Aichele Depo.) at 51:9-59:17 (███████████████████████
████████████████████████████████████████████████████████████████), 269:15-
271:5 & 279:24-281:8 (████████████████████████████████████████████-
████████████████████████████████████████████████████████); 283:1-293:14
(█████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████);
*id.* Ex. 14 (Hodge Depo.) at 159:10-168:2 & 185:1-187:24 (testifying that Akoustis' AKT-1252
and AKT-1938 BAW filters were originally designed with single crystal materials and explaining
the reasons for transitioning to polycrystalline materials for commercial production).

Qorvo also contends that "Akoustis' false or misleading representations that its BAW
filters are 'single crystal' actually deceives a substantial portion of the target customers or has the
tendency to deceive the target customers." (D.I. 125 ¶ 191.) No record evidence supports Qorvo's
allegation that any target customers – or anyone else – has been deceived or confused by Akoustis'
single crystal representations. Indeed, Tony Testa, Qorvo's Rule 30(b)(6) witness regarding
marketing matters, testified that he unaware of any customer not purchasing Qorvo product
because of Akoustis' single crystal representations. Elkins Decl. Ex. 15 (Testa Depo.) at 124:11-
24. Mr. Testa also denied having any conversations about Qorvo's actual or potential customers
being confused about Akoustis' single crystal representations. *Id.* at 125:1-6.

███████████████████████████

Qorvo has not proffered survey opinion evidence of any kind, and thus has no evidence to substantiate its allegation that the Akoustis representations have "the tendency to deceive the target customers." The only record evidence demonstrates that "target customers" would not tend to be deceived or confused – because purchasers of the BAW filters at issue are highly sophisticated technology companies and governmental entities, not unsophisticated ordinary consumers. *See* Elkins Decl. Ex. 13 (Aichele Depo.) at 270:18-20 & 304:4-17; Ex. 16 (Expert Report of Dr. Robert Darveaux) ¶¶ 51-52; Ex. 17 (Expert Report of Dr. Michael Lebby) ¶ 68. BAW filter purchasers go through a lengthy process to determine which filters to purchase, including by conducting their own testing of samples and providing feedback. *Id.* Ex. 13 (Aichele Depo.) at 283:1-291:11; Ex. 14 (Hodge Depo.) at 215:14-216:10 (it is "normal" for potential customers to test samples and provide feedback to Akoustis). Customers' core concerns regarding which BAW filters to purchase rest on whether given products meet the customers' specifications. *See id.* Ex. 13 (Aichele Depo.) at 51:9-53:23; Ex. 18 (Hunt Depo.) at 105-106; Ex. 15 (Testa Depo.) at 124:11-125:6; Ex. 16 (Darveaux Expert Report) ¶¶ 77, 146, 203.

### E.   THE ABSENCE OF FACTS REFLECTING UNFAIR COMPETITION

Qorvo's unfair competition claim consists of three separate types of alleged unfair practices: (1) Akoustis's alleged misappropriation of trade secrets (mirroring the DTSA and state law trade secrets claims); (2) Akoustis's "false" statements that it uses single crystal technology (mirroring the Lanham Act false advertising claim); and (3) Akoustis's alleged "poaching" of former Qorvo employees. *See* Elkins Decl. Ex. 11 (Bennis Expert Report) at 90; Ex. 19 (Qorvo Response to Interrog. No. 10). Qorvo has admitted that Akoustis' mere hiring of employees who worked at Qorvo (or a predecessor company) or that have relevant experience alone cannot form the basis of the unfair competition claim. (D.I. 222 (Tr. May 25, 2023) at 6) ("we're, of course, not arguing that hiring employees with experience is unfair competition."). The poaching

████████████████████████████████████████

component of the claim thus requires that Akoustis specifically hired Qorvo employees for the purpose of unlawfully obtaining Qorvo trade secrets. Qorvo accordingly alleges (on information and belief) that Akoustis targeted specific Qorvo employees to obtain Qorvo's BAW filter trade secrets. (D.I. 125 ¶ 212.)

Qorvo's damages expert Melissa Bennis considered whether ex-Qorvo employees hired by Akoustis went directly there or were employed elsewhere in between. Elkins Decl. Ex. 11 (Bennis Report) at 49. She also considered the circumstances surrounding the termination of allegedly poached Qorvo employees. *Id.* at 49-50. Of 43 former Qorvo employees that Akoustis ultimately hired, therefore, Ms. Bennis concluded that Akoustis "directly poached" only 19 of them. *Id.* at 50.

The evidence that Akoustis sought to hire the "best person for [each particular] job" (Elkins Decl. Ex. 20 (Johnson Depo.) at 105:1-8) is undisputed. Doing so entails examining "what the job is, what the requirements are for the job, what's the education, experience." *Id.* at 106:1-8.

## F.   RICO

Qorvo asserts violations of RICO under sections 18 U.S.C. §§ 1962(c) and 1962(d). (D.I. 125 ¶¶ 248-255.) Qorvo has failed to provide or identify any factual evidence to support its contention that it is entitled to damages for alleged RICO violations. *See* Elkins Decl. Ex. 21 at 20-21 (Qorvo's First Supp. Response to Akoustis Interrog. No. 7 (relying on forthcoming damages report for damages calculation)). Qorvo has also failed to proffer any opinion evidence regarding RICO violations. *Id.* Ex. 11 at 90 (summarizing opinions and omitting any reference to RICO).

## G.   QORVO'S PURPORTED DAMAGES

Through its damages expert, Melissa Bennis, Qorvo asserts the following damages:

- o   Unjust enrichment for trade secret misappropriation under a "head-start" theory in the amount of ████████ ;

- o   Unjust enrichment and damages for unfair competition under North Carolina law in the amount of ████████ for trade secret misappropriation, false advertising

████████████████████████████████████████████

damages of ██████████ for corrective advertising; and ██████████ in damages for employee poaching; and

o   Patent damages in the form of a reasonable royalty through June 30, 2024 in the amount of ██████████.

Elkins Decl. Ex. 11 (Bennis Report) at 90.  The Bennis Report omits any discussion of damages for RICO violations, the state law claim for civil conspiracy violations, or false patent marking. *Id.*  Ms. Bennis does not have any opinions except those expressed in her expert report.  *Id.* Ex. 12 (Bennis Depo.) at 105:25-106:6.

## IV.   THE STANDARDS GOVERNING THIS MOTION

Summary judgment is appropriate if the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986).  A fact is material only when it affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact and can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of a claim.  *Id.* at 322-23.  Once this burden is met, the nonmoving party cannot rest on mere allegations or denials, but must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quotation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

## V.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE DTSA CLAIM BECAUSE QORVO REFUSES TO IDENTIFY THE ALLEGED TRADE SECRETS WITH THE REQUISITE PARTICULARITY

Qorvo acknowledged last April that "we will have to pare our list to what's manageable for the jury."  Last August, Qorvo represented to the Court that it was endeavoring to winnow its

asserted trade secrets to twenty or fewer.  Qorvo's Trial Disclosure demonstrates, however, that it has had something far different in mind all along:  its strategy is trial by ambush through 104 purported trade secrets, "disclosed" in a document served after the close of discovery, and articulated in a manner so vague that Qorvo's own trade secrets expert cannot decipher them without speculating about their meaning.

Trial is three months away.  The time for Qorvo to disclose a manageable number of alleged trade secrets with the requisite particularity passed long ago.  The Court should grant summary judgment in favor of Akoustis on Count VI.

### A.     QORVO'S BURDENS IN PROVING ITS DTSA CLAIM

For its DTSA claim, Qorvo must prove: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3); (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]"; and (3) the misappropriation of that trade secret[.]"  *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal citations and quotations omitted); *Peloton Interactive, Inc. v. iFIT Inc.*, No. CV 20-1535-RGA, 2022 WL 1523112, at *2 (D. Del. May 13, 2022).

"A plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur."  *Flexible Techs., Inc. v. SharkNinja Operating LLC*, Civil Action No. 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) (internal quotation marks and citation omitted).  The identification must "separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." *Advanced Fluid Sys., Inc. v. Huber*, 381 F. Supp. 3d 362, 386 (M.D. Pa. 2019) (citing *Synygy, Inc.*

*v. ZS Assocs.*, No. 07-3536, 2013 WL 3716518, at *2 (E.D. Pa. July 15, 2013); *Dow Chem. Can., Inc. v. HRD Corp.*, 909 F. Supp. 2d 340 (D. Del. 2012)).[1]

A plaintiff may not satisfy its burden of trade secret identification by listing "general concepts or categories" of information. *Calendar Rsch. LLC v. StubHub, Inc.,* No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391, at *7 (C.D. Cal. May 13, 2020) ("Plaintiff's technique of listing general concepts or categories of information is plainly insufficient").   Such general categories fail to put a defendant on notice of the allegations against it because it provides no concrete information or parameters as to the alleged "secrets." *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222 (S.D.N.Y. 2021) (granting partial summary judgment as to all alleged trade secrets which were too vague and indefinite, and which merely encompassed a broad range of allegedly protectable information.).   Similarly, a plaintiff may not rely on a host of documents for the alleged secrets and then simply "invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]'" *Source Prod. & Equip. Co., Inc. v. Schehr*, No. CV 16-17528, 2019 WL 4752058 (E.D. La. Sept. 30, 2019).

### B. QORVO HAS REPEATEDLY FAILED TO IDENTIFY THE ASSERTED TRADE SECRETS WITH THE REQUIRED PARTICULARITY OR LIMIT ITS ASSERTED TRADE SECRETS TO A NUMBER THAT CAN BE REASONABLY TRIED TO A JURY

As noted above, Qorvo's counsel acknowledged their need to "pare our list [of trade secrets] to what's manageable for the jury."   Qorvo later represented to the Court and counsel that it intended to limit its trade secret disclosure to "no more than 20."   Its deeds show otherwise.

---

[1] The specific disclosure of trade secret is critical for the parties to properly litigate, and for the Court and jury to adjudicate, the issues.   Other intellectual property, such as a patent, is publicly disclosed and precisely defined before litigation even begins.   The USPTO's issuance of a patent necessarily means the contours of the intellectual property are disclosed to the public and that it is worthy of some protection.   By contrast, in trade secret cases, only the plaintiff knows what alleged "secret" was taken or used.   A defendant only receives notice of the precise wrongdoing through a plaintiff's disclosure of the alleged bad acts, including an explanation of the specific trade secret allegedly misappropriated.

Qorvo has never complied with the requirement that it identify its purported trade secrets with particularity.  Nor has Qorvo ever limited its asserted trade secrets to a reasonable number.  Its first disclosure included *71 categories* of trade secrets, with *hundreds* of subcategories.  Elkins Decl. Ex. 2.  Its first supplemental identification included 83 categories.  *Id.* Ex. 3.  Qorvo's second supplemental disclosure had 85 categories, with at least *397* subcategories or references to documents.  *Id.* Ex. 4.  These categories and subcategories, however, described nothing more than broad general categories of information, and not specific algorithms, formulas or discrete facts.

At the August 18, 2023 hearing, Qorvo represented, "Your Honor, we have addressed this previously, and we agree that the number of trade secrets needs to be reduced for the purposes of trial and for jury comprehension at the very least."  (D.I. 288 at 9-10.)  The Court thus ordered that it "expects Qorvo to significantly reduce its trade secret claims by the close of fact discovery."  (D.I. 313 at 2.)

Qorvo's resulting Trial Disclosure makes a mockery of its obligations as a plaintiff asserting trade secret claims, it representations to the Court, and of the Court's September 1, 2023 Order.  The undisputed facts recited above reflect that the Trial Disclosure purports to identify at least *104* trade secrets across ten categories.  Elkins Decl. Ex. 5.  But the Trial Disclosure provides no way to "separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade."  *Advanced Fluid Sys., Inc.*, 381 F. Supp. 3d at 386.  And the descriptions of the purported individual trade secrets are so vague that even Qorvo's trade secret expert Dr. Shanfield testified that he would have to speculate as to their meaning.  Elkins Decl. Ex. 6 at 141:16-23 & 142:6-16.

Read together, neither the Trial Disclosure's broad categories nor any of its bullet points identifies the supposed trade secrets with reasonable particularity.  For example, Category Two –



."  Elkins Decl. Ex. 5 at 3.  As recited above, however, "[t]o the extent document citations are provided, those are exemplary citations."  *Id.* at 2.  Similarly, Category 4

."  *Id*. at 6.  Small wonder Dr. Shanfield protested at his deposition about the need to speculate as to the meaning of these supposed trade secrets.

Akoustis brought these problems with the Trial Disclosure to Qorvo's attention during a meet and confer conference on November 28, 2023, attended by both lead and local counsel. Elkins Decl. ¶ 7.  Qorvo's counsel doubled-down and simply repeated their position that the Trial Disclosure was sufficient.  *Id.*

The Trial Disclosure is a paradigm of the type of trade secret disclosure that courts repeatedly reject at the summary judgment stage.  *See e.g.*, *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 1:17-cv-8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020) ("The Court has given NEXT multiple opportunities to identify its trade secrets, and each time, NEXT has come up short. Instead of offering something specific and concrete, NEXT offers broad descriptions and jargon-laden terminology."); *Arconic Inc. v. Novelis Inc.*, No. CV 17-1434, 2020 WL 7247112, at *16 (W.D. Pa. Dec. 9, 2020) (granting summary judgement because "Arconic did not identify its claimed trade secrets with reasonable particularity and failed to establish that it disclosed any trade secret to Novelis"); *cf. IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F. 3d 581, 584

(7th Cir. 2002) (dismissing trade secret misappropriation claims as a matter of law because even a 43-page description of software processes was insufficient to identify trade secrets).

Qorvo "can't identify its trade secrets with specificity, so it can't get to a jury." *NEXT Payment Sols., Inc.,* 2020 WL 2836778, at *1. The Court should accordingly grant summary judgment for Akoustis on Count VI.

## VI. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE STATE LAW TRADE SECRET MISAPPROPRIATION AND RELATED CONSPIRACY CLAIM BECAUSE QORVO FAILED TO IDENTIFY THE ALLEGED TRADE SECRETS WITH THE REQUIRED PARTICULARITY

Federal courts "analyze parallel state and federal claims of trade secret misappropriation together." *Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2020 WL 7024867, at *3 n.7 (D. Del. Nov. 30, 2020). Like the DTSA, the North Carolina Trade Secrets Protection Act requires a plaintiff to identify the alleged trade secrets with specificity and not merely by listing broad categories of information. *Thee Dollhouse Prods. N.C., Inc. v. Fairchild*, No. 5:08-CV-282-FL, 2009 WL 9112422, at *10 (E.D.N.C. Mar. 30, 2009). Courts will therefore grant summary judgment on state law misappropriation claims when a plaintiff "failed to identify them [the alleged trade secrets] with sufficient particularity." *Id.*; *see also Panos v. Timco Engine Ctr., Inc.*, 197 N.C.App. 510 (N.C. Ct. App. 2009) ("Summary judgment should be granted upon the nonmovant's failure to identify that information which it claims to be a trade secret that was misappropriated."). For the same reasons set forth above, the Court should also grant summary judgment in favor of Akoustis on Count VIII.

The Court should also grant summary judgment for Akoustis on Qorvo's state law conspiracy claim (Count IX). Qorvo predicates the claim solely on the underlying state law trade secret misappropriation claim. *See* D.I. 125 ¶ 274. When a court grants summary judgment on the underlying substantive claim, the related conspiracy claim must also be dismissed. *Am. Air*

███████████████████████████████

*Filter Co., Inc. v. Price*, No. 16 CVS 13610, 2018 WL 3466952 (N.C. Super. July 10, 2018) (granting defendant's motion for summary judgment in part because "liability for civil conspiracy must be alleged in conjunction with an underlying claim for unlawful conduct.")

## VII.   THE UNDISPUTED RECORD EVIDENCE DOOMS QORVO'S LANHAM ACT FALSE ADVERTISING CLAIM, MERITING SUMMARY JUDGMENT IN AKOUSTIS' FAVOR

Qorvo's Count III accuses Akoustis of making false statements about its single crystal filter technology.  The claim is doomed by the undisputed record evidence.  That evidence demonstrates that Akoustis' single crystal filter technology exists, has been and is offered for sale, and has shipped to customers.  The claim is also doomed by the absence of evidence, namely the absence of any evidence that any actual or potential customers were deceived or confused by the statements, or that any such statement was material to any purchasing decision.  Also absent is any survey opinion evidence capable of establishing that Akoustis' single crystal statements had or have the tendency to deceive customers.  These deficiencies are fatal to Count III.

### A.   THE LAW GOVERNING THE LANHAM ACT CLAIM OF FALSE ADVERTING

To withstand a motion for summary judgment, Qorvo must demonstrate genuine issues of material fact as to whether: (1) the advertising claims are false or misleading; (2) "there is actual deception or at least a tendency to deceive a substantial portion of the intended audience"; (3) the deception is material in that it influences purchasing decision; (4) "the advertised goods traveled in interstate commerce"; and (5) "there is a likelihood of injury to [Qorvo] in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011).  When a plaintiff seeks monetary damages, as Qorvo does here, it must prove deception and materiality.  *CaredDx, Inc. v. Natera, Inc.*, No. CV 19-662-CFC, 2023 WL 4561059, at *2 (D. Del. July 17, 2023) ("Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false

advertisement.")"; *Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 356 (D.N.J. 2020) (materiality must be proven to collect false advertising damages).

> ## B.    AKOUSTIS' SINGLE CRYSTAL TECHNOLOGY STATEMENTS WERE AND ARE TRUE

The undisputed facts section above chronicles that until 2018, Akoustis solely offered and promoted single crystal technology materials.  Elkins Decl. 13 (Aichele Depo.) at 266:1-3. Akoustis offered polycrystalline materials in its BAW filters only after acquiring its New York fabrication facility in or about 2018.  *Id.* at 265:18-25.  Since then, Akoustis' strategy has been to use polycrystalline material when appropriate, and to use single crystal when appropriate.  *Id.* at 266:4-18.  The undisputed facts further establish that Akoustis shipped and/or sold pre-production prototypes of certain BAW filters with a single-crystal piezoelectric layers for ███████████ ███████.  Nothing in the record shows otherwise.  Because these undisputed facts show that Akoustis' statements are true, they cannot be false or misleading, and Qorvo's claim fails.  *See TRUSTID, Inc. v. Next Caller Inc.*, No. CV 18-172 (MN), 2020 WL 5016936 (D. Del. Apr. 30, 2020) (granting summary judgment when all evidence showed that the statements at issue were not false); *Allen v. Howmedica Leibinger, Inc.*, 197 F. Supp. 2d 101 (D. Del. 2002) (granting summary judgment in favor of defendant when statements were found to be literally true).

> ## C.    THE ABSENCE OF EVIDENCE THAT AKOUSTIS'S STATEMENTS DECEIVED OR CONFUSED ACTUAL OR POTENTIAL CUSTOMERS

The undisputed facts above also establish the absence of evidence that any customers or potential customers were deceived or confused by Akoustis' statements about its single crystal technology.  Also missing is any evidence showing that Akoustis's statements had or have a tendency to deceive actual or potential customers.  Whether a statement has a tendency to deceive "depends upon the message that is conveyed to consumers," and "the success of the claim usually turns on the persuasiveness of a consumer survey."  *Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp.

3d 405, 417 (E.D. Pa. 2016), *aff'd sub nom. Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220 (3d Cir.

2017).  Qorvo has not proffered survey evidence or adduced any other potential evidence that the

single crystal technology statements tended to deceive.  Just the opposite:  Qorvo's Anthony Testa,

marketing director and product line director both at RFMD and then at Qorvo, admitted he had no

conversations where customers expressed confusion regarding Akoustis's technology.   Elkins

Decl. Ex. 15 (Testa Depo.) at 125:2-6.

The absence of deception evidence is fatal to Qorvo's Lanham Act claim.  *See Malaco*

*Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp.2d 355 (S.D.N.Y. 2003) (no deception where

"Malaco fails to present this Court with any survey or other evidence showing how consumers

perceive the terms 'Famous' and 'New' together on defendants' Famous Sqwish Candy Fish

packaging."); *Alpha Pro Tech, Inc. v. VWR Int'l, LLC*, No. CV 12-1615, 2017 WL 3671264, at

*15 (E.D. Pa. Aug. 23, 2017) ("APT has not pointed to any non-hearsay customer testimony on

the record that the allegedly false statements misled customers or influenced their purchasing

decisions, and it rejects the need for a survey.").

### D.     STATEMENTS ABOUT SINGLE CRYSTAL TECHNOLOGY ARE NOT MATERIAL TO CUSTOMERS' PURCHASING DECISIONS

The record is also devoid of evidence that statements about single crystal technology were

material to customers' purchasing decisions.  "Materiality" requires that a plaintiff "prove that the

defendant's deception is 'likely to influence the purchasing decision.'"  *Cashmere & Camel Hair*

*Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002).  Materiality critically provides the

requisite "nexus between the false statement and a third party's decision not to do business with

the plaintiff."  *McNulty v. Citadel Broad. Co.*, 58 F. Appx 556 (3d Cir. 2003).

In evaluating materiality, courts consider the sophistication of the buyer and the decision-

making processes for purchasing the product.  Simple statements or advertisements are unlikely to

be material to customers of more expensive products or those with extensive purchasing processes.

For example, in *Allen Organ Co. v. Galanti Organ Builders, Inc.*, 798 F. Supp. 1162 (E.D. Pa. 1992), *aff'd* 995 F.2d 215 (3d Cir. 1993)), the district court concluded that the materiality element was unsatisfied because, "unlike that of a mass market for a consumer item purchased off the shelf," the advertisement at issue alone did not sell church organs. The purchase price for church organs ranged from $10,000 up to hundreds of thousands of dollars. Thus, church-organ dealers "must deal closely with [churches] through phone calls, meetings and demonstrations," and "the sale process may take weeks or months." In such a case, the court explained that any false statement in a brochure regarding the specific technology used to create the church organ's sound was not a material consideration for customers. *Id.* at 1169; *see also* 5 McCarthy on Trademarks and Unfair Competition § 27:35 ("Where an expensive product is sold by personal contacts, misleading claims in a sales brochure may not have a tendency to deceive or influence purchasing decisions and hence not be a violation of § 43(a)."); *TRUSTID, Inc. v. Next Caller, Inc.*, No. 2022-1433, 2023 WL 2298748, at *5 (Fed. Cir. Mar. 1, 2023) (affirming district court's decision finding no Lanham Act violation under Third Circuit law based on a lack of evidence of materiality).

Nothing in the record suggests that Akoustis' statements regarding its single crystal technology were material to purchasing decisions. Qorvo's corporate witness on this topic testified that he did not know of any customer who was influenced by these statements. Elkins Decl. Ex. 15 (Testa Depo.) at 124:11-24. The only record evidence regarding the issue is that purchasers of BAW filters are sophisticated buyers at large companies such as ████████. *Id.* Ex. 13 (Aichele Depo.) at 270:18-20 & 304:4-17; *see also id.* Ex. 16 (Darveaux Expert Report) ¶¶ 51-52; Ex. 17 (Lebby Expert Report) ¶ 68. Determining which filters to buy is a lengthy process, with customers performing their own testing of samples. *Id.* Ex. 13 (Aichele Depo.) at 283:1-291:11;

*id.* Ex. 14 (Hodge Depo.) at 215:14-216:10 (it is "normal" for potential customers to test samples and provide feedback).  Ultimately, customers do not focus on the specific crystal technology at issue; rather the customers' core concern is whether the product itself meets the customers' specifications.  The absence of any evidence supporting a claim that the statements are material is likewise fatal to Count III.

## VIII.   THE UNDISPUTED EVIDENCE DEMONSTRATES THAT AKOUSTIS DID NOT ENGAGE IN UNFAIR OR DECEPTIVE PRACTICES

The Court should also grant summary judgment as to Count V for alleged violations of the North Carolina Unfair and Deceptive Trade Practices Act (N.C.G.S. Section 75-1).  To succeed on its claim, Qorvo must demonstrate that (i) Akoustis committed an unfair or deceptive act or practice, (ii) the action in was in or affecting commerce, and (iii) the act proximately caused injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656 (2001); N.C.G.S. § 75-1.1  Here, Qorvo's claim is based on (1) the alleged misappropriation of trade secrets; (2) Akoustis's statements related to its use of single crystal technology; and (3) Akoustis's hiring practices.  *See* Elkins Decl. Ex. 19 (Qorvo Response to Interrog. No. 10).  This claim fails as shown below.

### A.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE EXTENT THE CLAIM IS BASED ON MISAPPROPRIATION OF TRADE SECRETS

To the extent this claim is based on purported misappropriation of trade secrets, this claim fails for the same reasons that the DTSA and state law misappropriation claims fail.  Courts routinely dismiss state law unfair competition claims based on alleged trade secret misappropriation where the underlying substantive misappropriation claim fails.  *See e.g.*, *Williamson v. Prime Sports Mktg.*, LLC, No. 1:19CV593, 2022 WL 2802611, at *8 (M.D.N.C. July 18, 2022) (granting summary judgment on unfair competition claim because conduct that claim was premised on, including alleged misappropriation of trade secrets, was dismissed); *Durham Coca-Cola Bottling Co. v. Coca-Cola Bottling Co. Consol.*, No. 99 CVS 2459, 2003 WL

21017350 (N.C. Super. Apr. 28, 2003) (affirming summary judgment in favor of defendant on unfair competition claim, where the unfair competition claim rested on underlying claims of trade secret misappropriation and other torts, all of which were dismissed at summary judgment.).

**B.**   **THE COURT SHOULD GRANT SUMMARY JUDGMENT TO THE EXTENT THE CLAIM IS BASED ON AKOUSTIS'S SINGLE CRYSTAL TECHNOLOGY STATEMENTS**

To the extent this claim is based on Akoustis's statements regarding the use of single crystal technology, this claim fails for the same reasons that the Lanham Act claim fails.  *See  Harrington Mfg. Co. v. Powell Mfg. Co.,* 38 N.C. App. 393, 400, 248 S.E.2d 739, 744 N.C. Ct. App. (1978) (noting that an advertisement that is neither false nor misleading is not unfair competition or an unfair or deceptive trade practice within the meaning of N.C. GEN. STAT. § 75–1.1; *Design Res., Inc. v. Leather Indus. of Am.*, No. 1:10CV157, 2014 WL 4159991, at *14 (M.D.N.C. Aug. 19, 2014), aff'd, 789 F.3d 495 (4th Cir. 2015) ("This court finds that neither of the statements constitutes an unfair or deceptive trade practice for the reasons detailed above. . . .The statements DRI has cited are neither false nor misleading.").

**C.**   **AKOUSTIS'S HIRING PRACTICES WERE NOT UNFAIR OR DECEPTIVE**

Qorvo's last unfair competition theory is that Akoustis wrongfully "poached" former Qorvo employees to work for Akoustis.  The only record evidence shows Akoustis did nothing more than hire the most qualified people for the job – actions that Qorvo admits are not actionable.

"[T]he Act does not normally extend to run-of-the-mill employment disputes" absent extraordinary circumstances.  *HAJMM Co. v. House of Raeford Farms, Inc*., 328 N.C. 578, 403 S.E.2d 483 (1991).  Qorvo's counsel conceded that the mere hiring of employees with relevant experience and who previously worked at Qorvo (or a predecessor company), cannot form the basis of the unfair competition claim because "we're, of course, not arguing that hiring employees with experience is unfair competition." (D.I. 222 (Tr. May 25, 2023) at 6.)

As Qorvo concedes, it must adduce evidence of extraordinary circumstances that rise to the level of unfair or deceptive practices. To that end, courts routinely grant summary judgment on unfair competition claims when extraordinary circumstances do not exist. For example, in *Austin Maint. & Const., Inc. v. Crowder Const. Co.*, 224 N.C. App. 401, 420, 742 S.E.2d 535, 548 (2012), the court explained that "the record fails to support Plaintiff's assertion that Defendants 'surreptitiously raided' Plaintiff's workforce …" *Id*. In so holding, the *Austin* court distinguished the circumstances from those in *Sunbelt Rentals, Inc. v. Head & Engquist Equip.*, L.L.C., 174 N.C. App. 49, 620 S.E.2d 222 (N.C. Ct. App. 2005). In *Sunbelt,* key executives of a corporation resigned to work for a competitor while secretly recruiting more than 70 key managerial employees from specific departments and within months to join them. *Id*. "The result of this series of activities was that the plaintiff's branches were severely impacted, or 'crippled,' to the point [that the plaintiff's] opportunity and ability to compete for key employees on a level playing field was completely eliminated." *Austin Maint.,* 224 N.C. App. At 421. Other courts draw similar conclusions. *See e.g.*, *Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-CV-00140-RLV, 2013 WL 4494687, at *4 (W.D.N.C. Aug. 20, 2013) ("Plaintiffs have presented no admissible evidence regarding Lowe's attempts to hire PSM employees en masse . . . the hiring of a competitor's employees is not itself unfair or deceptive"); *CNC/Access, Inc. v. Scruggs*, No. 04 CVS 1490, 2006 WL 3350854, at *11 (N.C. Super. Nov. 15, 2006) ("In comparison, the number of CNC employees who left for Universal is inconsequential. There was no mass exodus of key employees here as was the case in *Sunbelt,* and Universal was not able to quickly establish itself in multiple locations as H & E did. Nor was there any surreptitious recruitment of CNC employees.").

Qorvo no doubt wants to analogize this case to *Sunbelt*.  Any such comparison is belied by the undisputed facts in the record.  No "mass raiding" of Qorvo occurred here.  From 2014 through 2023 – almost a decade – Akoustis hired just 43 individuals who previously worked for Qorvo or one of its predecessor companies.  Elkins Decl. Ex. 20 (Johnson Depo.) at 103:6-11; Ex. 22 (Johnson Depo. Exhibit 682).  Qorvo's damages expert Melissa Bennis considered whether the ex-Qorvo employees hired by Akoustis went directly there or were employed elsewhere in between.  Elkins Decl. Ex. 11 (Bennis Report) at 49.  And she considered the circumstances surrounding the termination of allegedly poached Qorvo employees.  *Id.* at 49-50.  Of 43 former Qorvo employees that Akoustis ultimately hired, Ms. Bennis concluded that Akoustis "directly poached" only 19 of them.  *Id.* at 50.  As of April 1, 2023, Qorvo employed over 8,500 employees.  *See* https://ir.qorvo.com/static-files/b357d9ca-515b-4372-b356-232a80b33e74  (Qorvo Form 10-K filed May 19, 2023) at p.10.  Over a ten-year period Akoustis hired about 0.22% of Qorvo's workforce – a far cry from the type of systematic raiding addressed by *Sunbelt*.

Qorvo alleges "[o]n information and belief, the goal of the systematic raiding of Qorvo employees was to use this Qorvo BAW Proprietary information as a short-cut for Akoustis to enter the market for BAW filters."  D.I. 125 ¶ 212.  The discussion above dispels the occurrence of any "systematic raiding."   And no record evidence supports Qorvo's information and belief that Akoustis hired former Qorvo employees to misappropriate Qorvo trade secrets, "BAW Proprietary Information," or anything else.  The undisputed testimony is that Akoustis sought to hire the "best person for that job."  Elkins Decl. Ex. 20 (Johnson Depo.) at 105:11-12.  This entails examining "what the job is, what the requirements are for the job, what's the education, experience."  *Id.* at 106:3-4.  As Akoustis' company witness explained, Akoustis "go[es] through a whole series of

things, and we have an interview process. And that's how we determine what's the best fit or -- you know -- all of those things. So we hire the best person for the job." *Id.* at 106:9-13.

The undisputed facts show that over the span of almost decade, Akoustis hired 19 employees who came directly from Qorvo. The routine hiring of employees with relevant expertise is not actionable. The Court should grant Akoustis summary judgment on Count V.

## IX.   THE COURT SHOULD AWARD SUMMARY JUDGMENT ON QORVO'S RICO CLAIM

"The Third Circuit has resisted efforts to generate RICO claims from garden variety torts . . . and that seems to be precisely what plaintiff has attempted to do here." *Triffin v. 611 Mach. Sales, Inc.*, No. CIV. 91-7058, 1992 WL 229870, at *4 (E.D. Pa. Sept. 8, 1992). That admonition applies to Count VII: Qorvo seeks to parlay its other claims into a violation of RICO under 18 U.S.C. §§ 1962(c)-(d). Because this is not the kind of "racketeering" case that RICO was designed to cover, summary judgment should be granted on Count VII.

A civil RICO claim under Section 1962(c) requires Qorvo to demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus (5) an injury to business or property, and (6) the racketeering activity must have been the 'but for' cause as well as the proximate cause of the injury." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022). For a conspiracy claim under Section 1962(d), Qorvo must show (i) an agreement to commit the predicate acts, and (ii) knowledge that those acts were part of a pattern of racketeering activity conducted so as to violate § 1962(a), (b), or (c). *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

### A.   QORVO CAN SHOW NO VIABLE PREDICATE ACTS

A claim under Section 1962(c) requires that Qorvo show a pattern of racketeering activity under Section 1961(1). Count VII claim relies on the purported violation of the DTSA as the predicate acts. *See* 18 U.S.C. § 1961(1) (listing 18 U.S.C. § 1832, theft of trade secrets); *see also*

(D.I. 125 ¶¶ 251-52). Qorvo's DTSA claim fails, as shown above. Without actionable predicate acts, Qorvo's RICO claim also fails. *AMA Realty LLC v. 9440 Fairview Ave. LLC,* No. CV 13-457 (JMV) (MF), 2017 WL 6728641, at *6 (D.N.J. Dec. 28, 2017), *aff'd*, No. 20-1177, 2021 WL 3045363 (3d Cir. July 20, 2021) ("Because the predicate acts to the RICO claim, embodied in Counts 16, 17, and 18 have not been proven, the Court will also grant summary judgment on the RICO Count . . . Without predicate acts, the RICO allegation fails as a matter of law").

### B.   THE ABSENCE OF EVIDENCE OF A DISTINCT RICO ENTERPRISE AND PERSON

Section 1962(c) requires Qorvo to plead and prove the existence of a RICO "person" distinct from the alleged RICO "enterprise." The person, not the enterprise, is the named defendant in a civil RICO claim, and that person must be distinct from the alleged enterprise. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001); *Genty v. Resol. Tr. Corp.*, 937 F.2d 899, 907 (3d Cir. 1991) ("Where, as here, a corporate 'person' is also the 'enterprise' through which the alleged racketeering activity occurred, liability can arise only under sections 1962(a) or (b)").

In the SAC, Akoustis is *both* the defendant and the enterprise. D.I. 125 ¶ 249. Qorvo alleges that "Akoustis[2] has misappropriated Qorvo's trade secrets in violation of the Defense of Trade Secrets Act." *Id*. ¶ 251. Qorvo has neither pleaded nor introduced evidence of any other enterprise aside from Akoustis. Because this is insufficient to meet the "distinctiveness" requirement for Section 1962(c), the Court should grant summary judgment on that part of this Count. *See Palak v. BJ's Wholesale Club, Inc.*, No. CV 23-00138, 2023 WL 3604647, at *6 (D.N.J. May 23, 2023) (dismissing RICO claim when plaintiff failed to plead a distinct person and enterprise); *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 563 (E.D.

---

[2] The first paragraph of the SAC defines "Akoustis" as collectively Akoustis Technologies, Inc. and Akoustis, Inc.

■■■■■■■■■■■■■■■■■■■■

Pa. 2019) (granting summary judgment for defendant on the RICO claim when Plaintiff failed to show a viable enterprise distinct from the person defendants).

### C.   BECAUSE QORVO CANNOT MAINTAIN A VIABLE CLAIM UNDER SECTION 1962(c), THE COURT SHOULD ALSO GRANT SUMMARY JUDGMENT AS TO SECTION 1962(d)

To state a conspiracy claim under Section 1962(d), a plaintiff must allege an agreement to commit the predicate acts in such a way that violates Sections 1962(a), (b), or (c). *See Rose*, 871 F.2d at 366.  Qorvo alleges a substantive RICO claim only under Section 1962(c).  D.I. 125 ¶¶ 248-52.  When a court grants summary judgment on the substantive RICO claim, the court must also grant summary judgment on the claim for RICO conspiracy under Section 1962(d).  *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993) (stating "any claim under section 1962(d) based on a conspiracy to violate the other subsections of [the RICO statute] necessarily must fail if the substantive claims are themselves deficient").  The court should therefore grant summary judgment for Akoustis on Count VII in its entirety.

### D.   QORVO HAS NO EVIDENCE THAT IT SUFFERED A RICO INJURY

A RICO plaintiff must show that it suffered actual injury, which courts have interpreted to mean "financial loss, to its business or property proximately caused by the defendant's violation of § 1962."  *Env't Constr. Servs., Inc. v. Menta*, No. CV 19-3477, 2022 WL 1103741, at *3–4 (E.D. Pa. Apr. 13, 2022); *Kolar v. Preferred Real Estate Inv., Inc.*, 361 F. App'x 354, 362 (3d Cir. 2010).  The requisite "showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Id*.

Here, Qorvo has failed to show any damages or financial loss stemming from the alleged RICO violations.  The Undisputed Facts section above demonstrates that during written fact discovery, Qorvo refused to articulate a damages theory for the RICO claim, instead advising that

it would rely on expert discovery to support any such damages.  But Qorvo's damages expert does not calculate damages for any RICO claim – or even mention the RICO claim in her report at all.

Nor can Qorvo prove any viable damages theory at this point.  Any claim to "damages" from Qorvo could only be tied to the predicate acts of alleged violations of the DTSA.  (*See* D.I. 125 ¶ 251.)  Ms. Bennis calculates damages associated with the DTSA and trade secrets claims solely through a theory of unjust enrichment.  Unjust enrichment "damages" are not "financial loss"; rather they are an equitable remedy not recoverable under RICO.  *See e.g.*, *U.S. v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1200, 1201 (D.C. Cir. 2005) ("[t]he remedies explicitly granted in § 1964(a) are all directed toward future conduct …. Disgorgement is a very different type of remedy" and "thus may not be properly inferred from § 1964(a)."; "Permitting disgorgement under § 1964(a) would therefore thwart Congress' intent in creating RICO's elaborate remedial scheme."); *Minnesota by Ellison v. Sanofi-Aventis U.S. LLC*, No. 3:18-cv-14999(BRM)(LHG), 2020 WL 2394155, at *11 (D.N.J. Mar. 31, 2020) ("the Court is not convinced that allowing Plaintiff to seek equitable monetary damages under § 1964(a) is appropriate in this case.  Critically, Plaintiff cites to no cases, in this circuit or otherwise, where a court has applied § 1964(a) in the manner Plaintiff seeks.").  The absence of financial loss stemming from the alleged RICO violation is an independent reason why the Court should grant summary judgment on Count VII.

## X.   AKOUSTIS IS ENTITLED TO SUMMARY JUDGMENT OF NONINFRINGEMENT ON COUNT II AS TO ITS ALTERNATIVE DESIGN PRODUCTS

Section III.C. chronicles how Akoustis devised a way to design around the claims of the '755 patent, notified Qorvo of the designs, and produced multiple samples of BAW filters with the alternative design.  The undisputed facts there also show that Qorvo technical experts Dr. John Bravman and Dr. Helge Heinrich did not even know about the alternative designs, much less examine and test them.  The undisputed facts further show that despite having received the samples

with plenty of time to test them, Qorvo served its Final Infringement Contentions on June 15, 2023 without any mention of the alternative designs.  Because Qorvo's experts did not even examine the alternative design samples, Qorvo cannot adduce evidence that they infringe the '755 patent. And because the alternative designs are omitted from the Final Infringement Contentions, Qorvo should not be permitted even to attempt to do so.  The Court should grant Akoustis summary judgment on Count II regarding the alternative design products.

## XI.   THE FALSE PATENT MARKING CLAIM IS RIPE FOR SUMMARY JUDGMENT

The Court should grant summary judgment for Akoustis on Count IV for an alleged false patent marking because Qorvo is no longer pursuing this claim.  Elkins Decl. Ex. 1 (Qorvo's Second Supplemental Objections and Responses to Akoustis's Interrogatory No. 9) at 24.

## XII.   CONCLUSION

For the foregoing reasons, Akoustis respectfully requests that the Court grant summary judgment on Counts II-IX in favor of Akoustis and against Qorvo as set forth above.

Dated:  February 1, 2024

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Respectfully submitted,

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen B. Brauerman, hereby certify that on February 1, 2024, a true and correct copy of the foregoing was served on all counsel of record.


Date: February 1, 2024

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
