# EXHIBIT 6

# REDACTED PUBLIC VERSION

```
1            IN THE UNITED STATES DISTRICT COURT
2               FOR THE DISTRICT OF DELAWARE
3
4    - - - - - - - - - - - - - -+
5    QORVO, INC.,                |
6            Plaintiff,          | Case Number:
7       vs.                      | 1:21-cv-01417-JPM
8    AKOUSTIS TECHNOLOGIES,      |
9    INC., and AKOUSTIS, INC.,   |
10           Defendants.         |
11   - - - - - - - - - - - - - -+
12
13
14
15              Videotaped Deposition of
16              STANLEY SHANFIELD, Ph.D.
17              Friday, January 26, 2024
18                     9:15 a.m.
19
20
21   Reported by:
22   Laurie Donovan, RPR, CRR, CLR
23   Veritext Job No. 6391961
24
25   PAGES 1 - 256
```

Page 1

## Page 2

January 26, 2024
9:15 a.m.

video deposition of STANLEY SHANFIELD, Ph.D., held fully in person, with the witness and all parties participating in person, pursuant to the Rules of the United States District Court for the District of Delaware, subject to such stipulations as may be recited herein or attached hereto, before Laurie Donovan, a Registered Professional Reporter and notary public of the District of Columbia, who officiated in administering the oath to the witness.

## Page 3

APPEARANCES

ON BEHALF OF THE PLAINTIFF:
   Sheppard Mullin Richter & Hampton LLP
   2099 Pennsylvania Avenue, NW
   Suite 100
   Washington, D.C. 20006
   (202)747-1900
   By: Jonathan R. DeFosse, Esq.
      jdefosse@sheppardmullin.com
      Roy Jung, Esq.

ON BEHALF OF THE DEFENDANTS:
   Squire Patton Boggs (US)LLP
   2550 M Street, NW
   Washington, D.C. 20037
   (202)457-7520
   By: Ronald Lemieux, Esq.
      ronald.lemieux@squirepb.com
      Matthew A. Stanford, Esq.
      matthew.stanford@squirepb.com

ALSO PRESENT:
   Gordon Thomas, videographer
   Xiaomei Cai (remote)

## Page 4

EXAMINATION INDEX
                                          PAGE
EXAMINATION BY MR. LEMIEUX .........   8
EXAMINATION BY MR. DEFOSSE ......... 250
FURTHER EXAM BY MR. LEMIEUX ......... 252

E X H I B I T S
EXHIBIT    DESCRIPTION              PAGE

Exhibit 1   Plaintiff's document entitled
            "Identification of Trade Secrets
            it Currently Expects to Present
            at Trial" ............ 135

Exhibit 2   Email from James Nelson to Shawn
            Gibb and others, June 12, 2020,
            Bates QORVO-00062161 ...... 209

Exhibit 3   Expert Report and Disclosure of
            Melissa A. Bennis, November 21,
            2023.............. 222

Exhibit 4   U.S. Patent Number 7,522,018 .. 40

## Page 5

EXHIBITS CONTINUED
EXHIBIT    DESCRIPTION              PAGE

Exhibit 5   U.S. Patent Number 9,735,755 .. 118

Exhibit 6   Expert Report of Stanley
            Shanfield, Ph.D. regarding
            infringement, November 21, 2023 . 115

Exhibit 7   Supplemental Expert Report of
            Stanley Shanfield, Ph.D.,
            January 22, 2024 ........ 215

Exhibit 8   Expert Report of Stanley
            Shanfield, Ph.D. - Misappropriation
            of Trade Secrets, November 21,
            2023 ............. 158

2 (Pages 2 - 5)

## Page 110

1  deposition.
2  Q   Was that this week?
3  A   Oh, I think there was certainly that
4  this, this week, but I may have done some in prior
5  weeks as well.
6  Q   And you reviewed the references that you
7  thought were particularly important or relevant?
8  A   As I read my report and saw references,
9  I -- in some cases, I would look at the reference
10 to recall what it was that made me want to
11 reference it.
12 Q   And, but sitting here now, you can't
13 recall which references those were?
14 A   There's dozens of them.  I can't
15 remember every one of them.
16 Q   Can you remember any of them?
17 A   Probably.  I mean if you want me to, I
18 can start looking and seeing what references
19 caught my attention.
20 Q   Well, I'm just trying to understand.
21 You said you reviewed some references that you
22 thought were particularly important, and you did
23 this either within the last couple of weeks,
24 getting ready, or at some point in time, but you
25 don't remember -- you can't identify any specific

## Page 111

1  reference that you reviewed?
2  A   I told you I could.  It's just going to
3  take me some time to look through my report.
4  Q   No, I'm just asking as you sit here now,
5  because you -- without reviewing your report.  I
6  understand that if you read the report, you can
7  probably read every reference that's contained
8  there, but sitting here now, can you identify any
9  references for me --
10 A   I would need to --
11 Q   -- without looking at your report?
12 A   -- look at my report.  I mean I would
13 need to look at my report.
14 Q   You would have to look at your report to
15 see the names of the references?
16 A   Yes.
17 Q   Other than plaintiff's counsel, did you
18 speak with anyone else in preparation for your
19 testimony here today?  Did you speak to any of the
20 other experts?
21 A   No.
22 Q   Did you speak to anyone at Qorvo?
23 A   No.
24 Q   To the best of your recollection, is
25 plaintiff's counsel the only parties you actually

## Page 112

1  spoke to with regard to your preparation for this
2  deposition?
3  A   Yes.
4  Q   I believe you told me that before you
5  submitted your final patent infringement report on
6  November 21, 2023, you reviewed it for errors; is
7  that right?
8  A   Yes.  I did more than that.  I probably
9  made changes.
10 Q   Okay, and that you were confident that
11 the report that you submitted and signed on
12 November 21, 2023 then was accurate, right?
13 A   Yes.
14 Q   Now, at some point subsequent to
15 submitting your report, you submitted a
16 supplemental report; is that right?
17 A   That's right.
18 Q   And in that supplemental report, did you
19 attempt to correct what you termed to be
20 "administrative errors" in some of the plots that
21 you had submitted in your initial report?
22 A   In one plot -- I had placed the wrong
23 plots in position.
24 Q   And how did you determine that you had
25 placed the wrong plots in position?  Did you --

## Page 113

1  A   By looking at them.
2  Q   So you made that determination on your
3  own?
4  A   I don't know that it was me.  I mean as
5  I was reviewing it, I saw, I saw it myself, too.
6  I don't know.
7  Q   Well, isn't it true it was Dr. Bravman
8  who pointed out to you that there was an error in
9  your plots?
10 A   He didn't point that out.  He asked
11 questions about it, and I then, after looking at
12 it, became aware that I put the wrong plot in
13 position.
14 Q   When you say you put the wrong plot
15 down, were your -- the axis of the plots you used
16 incorrect, or what was, what was wrong about your
17 prior -- what was the "administrative error," as
18 you, as you phrased it, with regard to your prior
19 plots?
20 A   I was finishing up a 600-page report
21 that I have before me here, and correcting any
22 mistakes that I could find, and that one I didn't
23 catch, but the way it occurred was very simple.  I
24 had a very, you know, well-organized set of data
25 that had come out of the modeling, and then plots

29 (Pages 110 - 113)

**Page 114**

1 from that data labeled and correctly, and then a,
2 a file that I sent to counsel to include in my
3 report, and when I went from the labeling I had
4 done internal in my computer to what I sent
5 counsel, I just mixed one up and got the wrong
6 plot in there.
7   Q   And you didn't notice that until very
8 recently?
9   A   Right.
10   Q   You didn't notice it when you reviewed
11 your report prior to the original report
12 submission?
13   A   Like I said, I noticed the error.  I
14 thought I had caught everything, but in 600 pages,
15 it's possible to miss something.
16   Q   Sure.  Did you prepare -- did you write
17 that report yourself, Dr. Shanfield?
18   A   I either wrote it myself or I directed
19 counsel what to write, meaning they might have
20 taken a draft, showed it to me, and I would revise
21 it.
22   Q   So the first draft of this report was
23 something you prepared yourself; is that right?
24   A   No, that's not what I said.  I said
25 there's sections of this that I wrote myself and

**Page 115**

1 other parts where counsel would prepare a draft of
2 that section or that, those few pages, and then
3 I'd review it, and typically I had changes.
4   Q   Which, which portions of your report
5 were you initially drafted by counsel?
6   A   I can't remember that.
7   Q   Is it limited to a particular section,
8 or is it throughout the report?
9   A   It's a mixture, so I can't remember
10 which was which.
11   Q   So I would expect normally -- for
12 example, there's a portion in your report that
13 deals with legal standards.  I suspect that was
14 probably drafted by your counsel?
15   A   I don't have a section on legal
16 standards.  I'm not an attorney, and I don't feel
17 qualified to report on legal standards and claim
18 that's my knowledge.
19         (Exhibit 6 was marked for
20          identification.)
21 BY MR. LEMIEUX:
22   Q   When you provided your infringement
23 analysis with regard to the '018 patent and the
24 '755 patent, were you told what factors to apply
25 to determine whether or not infringement occurred?

**Page 116**

1   A   So in paragraph 4 in my infringement
2 report, I talk about what I was asked to do, which
3 is to provide opinions related to the improvements
4 that were embodied in the '018 and '755 patents
5 and the effect of various layer structures in the
6 BAW resonators, and I was asked to do and report
7 on computerized simulations related to those
8 properties.
9   Q   If I look at page 7 of your report, this
10 heading C says "The Accused Products infringe
11 claim 1 of the '018 patent."
12       Did you write that?
13   A   I approved that.  I don't know that I
14 wrote it directly.
15   Q   Do you feel you have the skill set and
16 the ability to determine if a product actually
17 infringes claim 1 of the '018 patent?
18   A   I answered the question whether claim 1
19 was infringed, and I named the elements that it
20 needed to -- that I needed to identify in order to
21 have it infringe.
22   Q   So you believed you were in a position
23 and had the proper skill set for making a
24 determination of infringement?
25   A   No, because that wasn't what I was asked

**Page 117**

1 to do.  What I was asked to do is give opinions
2 that had to do with the improvements and to do
3 simulations.
4   Q   And so you're not in a position to
5 render a final conclusion; you just simply
6 answered the questions that were posed to you; is
7 that right?
8   A   That's correct.
9   Q   Okay.  So this, this heading is a bit
10 misleading, because it's not a conclusion you were
11 actually asked to reach or not, is it?
12   A   Well, I was asked to -- and that goes
13 for claim 1 and claim 9, whether there was
14 infringement or not.
15   Q   And in fact, the question you were asked
16 was just whether certain elements were present or
17 not, right?  You weren't asked to undertake an
18 infringement analysis?
19   A   That's right, yeah.
20   Q   Okay.  So a more accurate heading here
21 would have been "the following elements are
22 present in the accused devices."
23   A   Yes.
24       THE REPORTER:  Hold on.  "A more
25   accurate heading here" --

**Page 146**

1  So if that satisfies you, that may take
2  me a few minutes to find.
3    Q   No. I'm just asking you, do you
4  recall -- and you may not recall. It's quite
5  possible. Do you recall whether any information
6  that was presented to you as a protectable Qorvo
7  trade secret was, in fact, something that you
8  believed was of general knowledge to those of
9  ordinary skill in any of these applicable
10 industries?
11         MR. DEFOSSE: Objection; lacks
12     foundation.
13         THE WITNESS: First of all, nothing
14     was presented to me as a trade secret. I
15     looked at it and decided that it was. The --
16 BY MR. LEMIEUX:
17   Q   I'm talking about the information, sir,
18 that was presented to you. You then reached a
19 conclusion whether or not you believed this was
20 something that was protectable as a trade secret,
21 and I'm simply asking you: In terms of the
22 information that was presented to you, do you
23 recall making a determination that any of it that
24 was presented to you was actually something that
25 was generally known to those of ordinary skill in

**Page 147**

1  the applicable industries, or with those who have
2  some reason to be able to make commercial use of
3  it?
4    A   In that list of 1,500 or so documents,
5  no.
6    Q   You believe that everything that was
7  presented to you for evaluation did ultimately
8  meet the requirements as something that could be a
9  protectable trade secret?
10   A   There were a total of about 9,000
11 documents. The immensity of the task required me
12 to narrow it down to something I could manage,
13 which turned out to be about 1,500 documents.
14        All of those documents that I picked out
15 were, in themselves, Qorvo trade secrets, and may
16 have contained a sentence or a drawing that was --
17 or a table that would be known to a person of
18 skill, of ordinary skill, but the document itself
19 represented a Qorvo trade secret and confidential
20 information not readily known.
21   Q   In looking at what's been marked as
22 Shanfield Exhibit 1, is it -- am I correct in
23 saying that this document is broken down into ten
24 numerical categories, each of which is followed by
25 a number of bullet points that has information

**Page 148**

1  listed after the bullet point?
2    A   Yes, that's a good representation.
3    Q   And do you have an understanding as to
4  what are the numbered statements to be considered
5  the trade secrets, or are the bullet items
6  intended to be the trade secrets?
7         MR. DEFOSSE: Objection;
8     foundation.
9         THE WITNESS: This document
10    identifies groups of trade secrets, like I
11    described earlier, of which the first eight
12    were the ones I considered. The -- it's not
13    a complete list of trade secrets. It's a
14    description of these groups.
15 BY MR. LEMIEUX:
16   Q   Well, this document is titled the
17 "identification of trade secrets it" -- it
18 referring to plaintiff, Qorvo -- "currently
19 expects to present at trial."
20        Is the trade secret that it intends to
21 present at trial the bullet or the numerical
22 grouping?
23        MR. DEFOSSE: Objection;
24    foundation.
25        THE WITNESS: As I explained, this

**Page 149**

1     is a list and description of the groups that
2     have been identified, and it provides
3     information that makes it clear what's being
4     discussed.
5         It doesn't identify every trade
6     secret, since there were so many of them.
7     That would have been impractical to list
8     here.
9  BY MR. LEMIEUX:
10   Q   But does it identify every trade secret
11 that Qorvo intends to pursue at trial?
12        MR. DEFOSSE: Objection; lacks
13    foundation.
14        THE WITNESS: It's -- I think what
15    it is is what it's labeled. It's an
16    identification of trade secrets, and it
17    identifies them. It doesn't list every
18    single trade secret. It identifies what
19    groups they belong to.
20        There's a large number of
21    individual trade secrets that were taken from
22    Qorvo by Akoustis, and that's not what this
23    list is. This is --
24 BY MR. LEMIEUX:
25   Q   This list is, as its title suggests, is

```
 1   a list of the trade secrets that Qorvo intends to
 2   present at trial, correct?
 3           MR. DEFOSSE:  Objection; lacks
 4       foundation.
 5   BY MR. LEMIEUX:
 6       Q   Expects to present at trial.
 7           MR. DEFOSSE:  Objection; lacks
 8       foundation, calls for speculation.
 9           THE WITNESS:  I think it -- you're
10       asking me to speculate on --
11   BY MR. LEMIEUX:
12       Q   You don't think --
13       A   -- other than what I've seen.
14       Q   You don't believe the title of this
15   document is accurate?
16       A   No.  I do.
17           MR. DEFOSSE:  Objection.
18   BY MR. LEMIEUX:
19       Q   Okay.  You do?  Okay, and so of the
20   trade secrets it currently expects to present at
21   trial, are those trade secrets represented by the
22   bullet points that are underneath each numerical
23   heading?
24           MR. DEFOSSE:  Objection; lacks
25       foundation, calls for speculation.
                                              Page 150
```

```
 1           THE WITNESS:  You are asking me to,
 2       from this list, try and speculate what trade
 3       secrets are being referred to.  I identified
 4       trade secrets in detail in my report, and I
 5       would be happy to talk about those.
 6           These are groups, and the first
 7       eight groups in this document are the groups
 8       that I gave an opinion about.
 9   BY MR. LEMIEUX:
10       Q   Do you have any understanding as to
11   whether or not this document is intended to
12   actually disclose and list the trade secrets that
13   plaintiff intends to pursue at trial?
14           MR. DEFOSSE:  Objection; lacks
15       foundation, calls for speculation.
16           THE WITNESS:  Again, you're asking
17       me to  speculate about the meaning of each of
18       these lines in description of this group, of
19       each group, and I, I can tell you what
20       specific trade secrets I believe that
21       Akoustis illicitly obtained, and I'll be
22       happy to go through my report to describe
23       dozens of them.  How it corresponds with this
24       list is -- that would be speculation on my
25       part.
                                              Page 151
```

```
 1   BY MR. LEMIEUX:
 2       Q   Let's, let's take a look at Exhibit 1,
 3   and look at, on page 3 of Exhibit 1, the numerical
 4   heading 2, which states, ████████████████████████
 5   ████████████
 6       A   Yes.
 7       Q   Do you believe that the trade secrets
 8   that Qorvo intends to present as misappropriated
 9   by Akoustis at trial include the items that are
10   listed in the bullet points following numerical
11   heading 2?
12           MR. DEFOSSE:  Objection; lacks
13       foundation, calls for speculation.
14           THE WITNESS:  I -- as I've said now
15       twice, you're asking me to speculate on the
16       meaning of this list, and what I can tell you
17       is the groups that are identified here match
18       the first eight of these, and that's the
19       groups that I gave opinions about.
20           I have detailed descriptions of
21       specific trade secrets that I believe were
22       taken from Qorvo, and I can easily go into a
23       description of that.  I'm not going to
24       speculate on what -- which ones, of the ones
25       I've identified, apply to which statement in
                                              Page 152
```

```
 1   this document.
 2   BY MR. LEMIEUX:
 3   [redacted]
                                              Page 153
```

39 (Pages 150 - 153)

```
 1       ACKNOWLEDGEMENT OF WITNESS
 2
 3       I, Stanley Shanfield, Ph.D., do
 4   hereby acknowledge that I have read and
 5   examined the foregoing testimony, and the
 6   same is a true, correct and complete
 7   transcription of the testimony given by me,
 8   and any corrections appear on the attached
 9   Errata sheet signed by me.
10
11
12  _____  _____
13  (DATE)          STANLEY SHANFIELD, Ph.D.
```

Page 254

```
 1  CERTIFICATE OF SHORTHAND REPORTER -- NOTARY PUBLIC
 2
 3       I, Laurie Donovan, Registered
 4   Professional Reporter, Certified Realtime
 5   Reporter, and notary public for the District
 6   of Columbia, the officer before whom the
 7   foregoing deposition was taken, do hereby
 8   certify that the foregoing transcript is a
 9   true and correct record of the testimony
10   given; that said testimony was taken by me
11   stenographically and thereafter reduced to
12   typewriting under my supervision; and that I
13   am neither counsel for, related to, nor
14   employed by any of the parties to this case
15   and have no interest, financial or otherwise,
16   in its outcome.
17       IN WITNESS WHEREOF, I have hereunto
18   set my hand and affixed my notarial seal this
19   2nd day of February 2024.
20
21
22       LAURIE DONOVAN, RPR, CRR
23       NOTARY PUBLIC IN AND FOR THE
24       DISTRICT OF COLUMBIA
25       My commission expires:  July 14, 2027
```

Page 256

```
 1           E R R A T A  S H E E T
 2  IN RE:  QORVO, INC. vs. AKOUSTIS TECHNOLOGIES
 3  RETURN BY:
 4  PAGE    LINE            CORRECTION AND REASON
 5  ____   ____ _____
 6  ____   ____ _____
 7  ____   ____ _____
 8  ____   ____ _____
 9  ____   ____ _____
10  ____   ____ _____
11  ____   ____ _____
12  ____   ____ _____
13  ____   ____ _____
14  ____   ____ _____
15  ____   ____ _____
16  ____   ____ _____
17  ____   ____ _____
18  ____   ____ _____
19  ____   ____ _____
20  ____   ____ _____
21  ____   ____ _____
22  ____   ____ _____
23  ____   ____ _____
24
    _____  _____
25  STANLEY SHANFIELD, Ph.D.           DATE
```

Page 255