# EXHIBIT 12

# REDACTED PUBLIC VERSION

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF DELAWARE
 3
 4     QORVO, INC.                           )
                                             )
 5                  Plaintiff,               )
                                             )
 6     vs.                                   ) No. 21-1417 (JPM)
                                             )
 7     AKOUSTIS TECHNOLOGIES, INC.           )
       And AKOUSTIC, INC.,                   )
 8                                           )
                    Defendants.              )
 9
10                 REMOTE VIDEOTAPED DEPOSITION
11                         Via ZOOM of
12                       MELISSA BENNIS
13                      January 23, 2024
14                         9:00 A.M.
15
16
17
18
19
20
21
22
23   STENOGRAPHICALLY REPORTED BY:
     JO ANN LOSOYA, CSR, RPR, CRR
24   LICENSE #:  084-002437
25
```

Page 1

```
 1         APPEARANCES
      (All participants appearing remotely)
 2
 3    SHEPPARD MULLIN LLP
      ROBERT MASTERS
 4    2099 Pennsylvania Ave NW
      Suite 100
 5    Washington DC 20006
      (202) 747-2312
 6    rmasters@sheppardmullen.com
          Appeared on behalf of Plaintiffs.
 7
 8    SQUIRE PATTON BOGGS
      DAVID S. ELKINS
 9    CHANEL O'NEILL
      1841 Page Mill Road
10    Suite 150
      Palo Alto, California 94304
11    (650) 843-3378
      david.elkins@squirepb.com
12
          Appeared on behalf of Defendants.
13
14
15
16
      VIDEOGRAPHER: Kevin Duncan
17
      CONCIERGE TECH: Mitch Reisbord
18
19
20
21
22
23
24
25
                                        Page 2
```

```
 1              EXAMINATION
 2  Witness                    Page   Line
 3  MELISSA BENNIS
 4    By Mr. Elkins              5    10
 5
 6            ***************
 7          INDEX OF EXHIBITS
 8  EXHIBIT       DESCRIPTION         PAGE
 9  Exhibit 1   Expert Report of Melissa A.   8
10              Bennis
11  Exhibit 2   Expert Rebuttal Report of    11
12              Carlyn Irwin
13  Exhibit 3   Expert Report of Dr.         30
14              Stanley Shanfield
15  Exhibit 4   Sedona Commentary on         65
16              Monetary Remedies in Trade
17              Secret Litigation
18  Exhibit 5   Sedona Disputed Issues in    65
19              Awarding Unjust Enrichment
20              Damages in Trade Secret
21              Cases
22
23
24
25
                                        Page 3
```

```
 1        THE VIDEOGRAPHER:  Good morning.  We are
 2  going on the video record at 9:02 a.m. on
 3  January 23, 2024.
 4        Here begins the virtual
 5  video-recorded deposition of Ms. Melissa Bennis
 6  taken on behalf of defendant in the case matter of
 7  Qorvo, Inc. versus Akoustis Technologies, Inc., et
 8  al., filed in the U.S. District Court for the
 9  District of Delaware, bearing Case
10  No. 21-1417 (JPM).
11        My name is Kevin Duncan, and I am a
12  legal videographer representing Veritext Legal
13  Solutions.  The court reporter today is Ms. JoAnn
14  Losoya.
15        Counsel, will you please identify
16  yourselves and affiliations, starting with the
17  noticing party.
18        MR. ELKINS:  David Elkins of Squire
19  Patton Boggs, and I represent the Akoustis
20  defendants.
21        MR. MASTERS:  Robert Masters of Sheppard
22  Mullin, on behalf of the plaintiff, Qorvo, Inc., and
23  the witness.
24        THE VIDEOGRAPHER:  Thank you, Counsel.
25        Will the court reporter please
                                        Page 4
```

```
 1  administer the oath.
 2        (Witness sworn at 9:03 a.m.)
 3        THE VIDEOGRAPHER:  Thank you.
 4        You may proceed.
 5  WHEREUPON:
 6        MELISSA BENNIS,
 7  called as a witness herein, having been first duly
 8  sworn, was examined and testified as follows:
 9        E X A M I N A T I O N
10  BY MR. ELKINS:
11   Q.  Good morning, Ms. Bennis, again.
12   A.  Good morning.
13   Q.  So I'm -- you've had your deposition
14  taken before, correct?
15   A.  Correct.
16   Q.  Do you feel comfortable dispensing with
17  the list of all the things that we're supposed to do
18  during the deposition?
19   A.  I do if you do.
20   Q.  Okay.  I do too.
21        The only two things I will say is, as
22  you probably already know, if you need to take a
23  break before I suggest one, feel free to raise your
24  hand; we'll do it.
25        And the other is just wanted to
                                        Page 5
```

**Page 102**

1  other employees over time.  I mean, there's a
2  variety of scenarios.
3    Q.  Okay.  You didn't delve into that area in
4  your analysis, correct?
5    A.  That's correct.
6    Q.  So now we're moving on to another topic,
7  patent damages.  You have not -- you have not
8  prepared any corrections or supplemental analyses so
9  I presume that the opinions stated in your report
10  regarding patent damages are the same opinions that
11  you have today, that they have not been changed at
12  all by what you have seen or what you haven't seen
13  for that matter in the technical expert reports that
14  Qorvo served on November 21 or afterward?
15    A.  I don't have any different or additional
16  opinions beyond what is included in my report with
17  respect to the patent claims.
18    Q.  Your report does not reflect any opinion
19  whether Akoustis' reasonable royalty payments on the
20  patents would continue after June 30, 2024; is that
21  right?
22    A.  That's correct.
23    Q.  Do you anticipate testifying as to any
24  opinions about Qorvo's entitlement to a reasonable
25  royalty for allegedly infringing sales that may

**Page 103**

1  occur after June 30, 2024?
2        MR. MASTERS:  Object to form.
3          You may answer.
4  BY THE WITNESS:
5    A.  I can think of a scenario where the trial
6  date gets pushed into the future and it might make
7  sense to supplement the calculations for additional
8  months leading up to the date of trial, for example.
9  But I suppose that remains to be seen.
10    Q.  One of the Patents-in-Suit expires I
11  think at the end of June of 2024.  I think it's the
12  '018 patent.  You're nodding your head.  So I assume
13  you're aware of that.
14    A.  Yes, you're right.
15    Q.  Does the or would the expiration of that
16  patent have any impact on your opinion regarding the
17  reasonable royalty for patent infringement with
18  respect to any infringement taking place after
19  June 30, 2024?
20    A.  I have not commented on that within my
21  report and so I have not formulated any opinions in
22  that respect.
23    Q.  On Page 3 of your report, you stated that
24  your current hourly billing rate is $608 per hour?
25    A.  Yes.

**Page 104**

1    Q.  Has that changed since the new year
2  began?
3    A.  No.
4    Q.  I have to ask.  Why 608?
5    A.  My memory is we agreed to a blanket maybe
6  5 percent discount off of standard fees or something
7  of the like.
8    Q.  Okay.  Being in the professional services
9  industry for a long time, we're in love with round
10  numbers.  So I just wondered about that.
11        Page 27 of your report, you describe
12  in this section numbered 10 Qorvo's tax and
13  corporate compliance structure and know-how.  That
14  Qorvo alleges Akoustis has misappropriated trade
15  secrets relating to tax and corporate compliance
16  structures and know-how.  It did not appear that you
17  had gone on to estimate damages for that particular
18  alleged misappropriation unless it's subsumed within
19  your overall head start calculation; is that
20  correct?
21        I guess the question is it subsumed
22  in your head start calculation or have you just left
23  out of your damages calculation any calculation
24  regarding damages for the alleged misappropriation
25  of tax and corporate compliance info.

**Page 105**

1    A.  I'm not recalling that exactly sitting
2  here.  I believe the answer is it is not accounted
3  for separately, but I would probably need to check.
4    Q.  I have a similar question with respect to
5  No. 9 above, trade secrets relating to job
6  structures and employee compensation?
7    A.  I would have the same answer.
8    Q.  Okay.  So to ensure I understand so when
9  you say that it's not accounted for separately, does
10  that mean it is subsumed within your head start?
11    A.  That's the part I'm not remembering.
12  Since I -- I can't remember if my conversations with
13  Dr. Shanfield on this topic included his development
14  of the timeline with respect to all ten categories
15  or only certain of the categories.  That's the part
16  I probably need to follow-up on.
17    Q.  How would you propose to follow-up on
18  that?
19    A.  Probably a conversation with
20  Dr. Shanfield or a conversation with my team who
21  just may have better recollection than I'm having at
22  the moment.
23    Q.  You probably never heard this next
24  question before.
25        Do you have any opinions that you

```
 1  expect to express in this matter other than what's
 2  in your expert report and/or that we have discussed
 3  today?
 4      A.   Like I mentioned, with the exception of
 5  just any supplement that would become necessary for
 6  one reason or another, I can't think of any.
 7           MR. ELKINS:  Okay.  Give me a moment I
 8  think that's it for me.  I just want to review my
 9  notes quickly.
10           THE VIDEOGRAPHER:  Please stand by.  We
11  are going off record at 1:09 p.m.
12           (Whereupon, a break in the
13             proceedings was taken.)
14           THE VIDEOGRAPHER:  We are back on record
15  at 1:11 p.m.
16           You may proceed.
17  BY MR. ELKINS:
18      Q.   Ms. Bennis, I just want to ensure I
19  understood your prior testimony in a couple of
20  areas.
21           Regarding false advertising, are you
22  aware of any evidence of any actual or potential
23  customers of Qorvo being impacted by the false
24  advertising that Qorvo alleges in this case?
25      A.   I didn't separately endeavor to examine
```
Page 106

```
 1  that question.  Again, I'm aware of the acts that
 2  have been claimed to be examples of the false
 3  advertising.  And so, again, my task was to
 4  determine given those acts and the assumption of
 5  liability what's a reasonable damages computation in
 6  light of those claims.
 7      Q.   And then for purposes of the poaching
 8  costs or the poaching damages ▇▇▇ that's in
 9  connection with the unfair competition claim under
10  North Carolina law, correct?
11      A.   Correct.
12      Q.   And is that in addition to the trade
13  secret misappropriation, head start unjust
14  enrichment damages ▇▇▇ that you have
15  included for purposes of the unfair competition
16  claim also?
17      A.   So to be clear, should Akoustis be found
18  liable for the trade secret misappropriation claims
19  and the unfair competition claims, it's not intended
20  to suggest that ▇▇▇ would
21  double, but ▇▇▇ would be added to the
22  damages calculated for the claims of false
23  advertising and employee poaching.
24      Q.   So your opinion on unfair competition
25  damages is ▇▇▇ for -- that is
```
Page 107

```
 1  attributable to the trade secret misappropriation
 2  aspect of that claim, plus ▇▇▇ in
 3  corrective advertising for false advertising, plus
 4  ▇▇▇ as the damages to -- for having to
 5  replace the allegedly poached employees?
 6      A.   That's correct.
 7      Q.   And t▇▇▇ in the form of the
 8  cost of corrective advertising can also be pulled
 9  out of there -- in the event that unfair competition
10  claim falls, that t▇▇▇ in corrective
11  advertising costs could be applied in the event
12  Qorvo were to prevail on the Lanham Act claim for
13  false advertising?
14      A.   If I understood your question to be is --
15  is it awardable of a finding of false advertising
16  under the statute or the Lanham Act?  Yes, one time.
17      Q.   Correct.  Okay.  Okay.  I think I
18  understand.
19           I have no further questions.  Pass
20  the witness to you, Rob.
21           MR. MASTERS:  Thank you, counsel.  I have
22  no questions for the witness.  That will close this
23  deposition, and thank you Ms. Bennis for your time.
24           MR. ELKINS:  Thank you.
25           THE VIDEOGRAPHER:  Please stand by and
```
Page 108

```
 1  stay online.
 2           We are going off the video record at
 3  1:16 p.m. and concludes today's testimony.  Master
 4  media will be retained by Veritext Legal Solutions.
 5  Thank you all.
 6           (Off the record at 1:16 p.m.)
```
Page 109

28 (Pages 106 - 109)

```
 1            REPORTER CERTIFICATE
 2
 3       I, JO ANN LOSOYA, a Certified Shorthand
 4   Reporter within and for the State of Illinois, do
 5   hereby certify:
 6            That previous to the commencement
 7   of the examination of the witness, the witness was
 8   duly sworn to testify the whole truth concerning the
 9   matters herein; That the foregoing deposition
10   transcript was reported stenographically by me, and
11   the foregoing constitutes a true record of the
12   testimony given and the proceedings had; That the
13   said deposition was taken before me at the time and
14   place specified; That I am not a relative or
15   employee or attorney or counsel, nor a relative or
16   employee of such attorney or counsel for any of the
17   parties hereto, nor interested directly or
18   indirectly in the outcome of this action.
19            IN WITNESS WHEREOF, I do hereunto set my
20   hand this day, January 28, 2024.
21
22        [signature: Jo Ann Losoya]
          JO ANN LOSOYA, CSR, RPR, CRR
23        C.S.R. 84-002437
24
25
                                          Page 110
```

29 (Page 110)