# EXHIBIT 20

# REDACTED PUBLIC VERSION



# Transcript of Holly Johnson, Corporate Designee & Individually

**Date:** November 9, 2023
**Case:** Qorvo, Inc. -v- Akoustis Technologies, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

## Page 1

```
        IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE
- - - - - - - - - - - - - -x
QORVO, INC.,                   :
        Plaintiff,             :
   v.                          :  Civil Action No.
AKOUSTIS TECHNOLOGIES, INC.    :  21-1417-JPM
AND AKOUSTIS, INC.,            :
        Defendants.            :
- - - - - - - - - - - - - -x

              ** CONFIDENTIAL **

            Videotaped Deposition of
   AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.,
     By and through its Designated Representative,
               HOLLY H. JOHNSON
          and in her Individual Capacity
             Charlotte, North Carolina
             Thursday, November 9, 2023
                   9:00 a.m.

Job No.: 512854
Pages: 1 - 121
Reported By: Cindy A. Hayden, RMR, CRR
```

## Page 2

```
      Videotaped Deposition of HOLLY H. JOHNSON,
held at the offices of:

      Regus - Charlotte/University Executive Park
      301 McCullough Drive, Suite 400
      Charlotte, North Carolina  28262




      Pursuant to notice, before Cindy A. Hayden,
Notary Public in and for the State of North
Carolina.
```

## Page 3

```
                A P P E A R A N C E S
ON BEHALF OF PLAINTIFF:
      JONATHAN R. DeFOSSE, ESQUIRE
      SHEPPARD MULLIN RICHTER & HAMPTON LLP
      2099 Pennsylvania Avenue, NW, Suite 100
      Washington, D.C.  20006-6801
      202.747.1900
      jdefosse@sheppardmullin.com
         ~ And ~
      ZACHARY ALPER, ESQUIRE
      SHEPPARD MULLIN RICHTER & HAMPTON LLP
      12275 El Camino Real, Suite 100
      San Diego, California  92130-4092
      858.720.7462
      zalper@sheppardmullin.com

ON BEHALF OF DEFENDANTS:
      DAVID S. ELKINS, ESQUIRE
      SQUIRE PATTON BOGGS (US) LLP
      1841 Page Mill Road, Suite 150
      Palo Alto, California  94304
      650.843.3378
      david.elkins@squirepb.com
ALSO PRESENT:  Melody Adair, Videographer
               Drew Wright, General Counsel, Akoustis
```

## Page 4

```
                      I N D E X
                                              PAGE
EXAMINATION BY MR. ALPER .................   8


             PREVIOUSLY MARKED EXHIBITS

NUMBER            DESCRIPTION             PAGE
EXHIBIT 181  Meeting invite for 9/20/17,   89
             Subject: Touch base, Bates
             AKTS_00014828
EXHIBIT 182  Excel spreadsheet with green, 92
             yellow and red highlighting,
             Native documents, Bates
             AKTS_00370379


             NEWLY MARKED EXHIBITS

NUMBER            DESCRIPTION             PAGE
EXHIBIT 663  Plaintiff's Notice of         11
             Deposition of Holly Johnson
             Pursuant to Fed. R. Civ. P.
             30(B)(1)
EXHIBIT 664  Plaintiff Qorvo Inc.'s        12
             Amended Notice of Deposition
             Pursuant to Fed. R. Civ. P.
             30(B)(6) to Defendants
             Akoustis Technologies, Inc.
             and Akoustis Inc.
EXHIBIT 665  Akoustis Technologies, Inc.,  19
             Code of Ethics and Conduct,
             Bates AKTS_00434227-231
```

101

1  determine whether they had been at Qorvo?
2    A. No.
3    Q. Just the résumés?
4    A. Or their application, yes, uh-huh.
5    Q. Or their application.
6         (EXHIBIT 682, Spreadsheet of census of
7  all employees who have worked at Akoustis,
8  AKTS_01200287-303, was marked for identification.)
9  BY MR. ALPER:
10   Q. Ms. Johnson, you've just been handed
11 what's been marked as Exhibit 682. This is a
12 multi-page document with production number
13 AKTS_01200287 through AKTS_01200303. Is that
14 correct?
15   A. Yes.
16   Q. Do you recognize this document?
17   A. Yes.
18   Q. What is it?
19   A. This is -- basically, it's
20 
21 .
22   Q. 
23 
24   Q. In the 11th column of the document, the
25 heading is 

102

1 ; is that correct?
2    A. Yes.
3    Q. I know this is a big ask, but will you
4  go through and count how many of the people listed
5  on this spreadsheet worked at Qorvo, RFMD or
6  TriQuint?
7    A. Sure. I count 43.
8    Q. 43. Did you help prepare this
9  document?
10   A. Yes.
11   Q. Did anyone help you prepare this
12 document?
13   A. Yes. Our lawyers helped prepare the
14 document.
15   Q. The document was prepared specifically
16 for this litigation?
17   A. Yes.
18   Q. The 11th column says: 
19 
20 
21     What are the similar documents?
22   A. Application.
23   Q. The same as we discussed before?
24   A. Yes.
25   Q. Did you use LinkedIn?

103

1    A. No.
2    Q. Did you use anything else to determine
3  whether these employees had worked at Qorvo or RFMD
4  or TriQuint?
5    A. No.
6    Q. Why are there 43 names listed in
7  Exhibit 682 that formerly worked for Qorvo, RFMD or
8  TriQuint but only 23 that are listed in 681?
9    A. I believe that -- that these names were
10 pulled from the list of names that are in the --
11 the document that was -- that Qorvo gave us.
12   Q. So to create Exhibit 681, you've looked
13 at the names in a document that Qorvo gave you and
14 determined whether they were former Qorvo
15 employees; is that correct?
16   A. My understanding is that we were asked
17 to produce this information specifically by Qorvo,
18 and that's why we produced that.
19   Q. And so the names in 682 represent all
20 of the current Akoustis employees who formerly
21 worked for Qorvo, RFMD or TriQuint; is that right?
22   A. No. 682?
23   Q. 682, correct.
24   A. They're not current. I mean, there's
25 just --

104

1    Q. They're not --
2    A. --
3  
4  
5  
6  
7         MR. ELKINS: And just -- just for
8  purposes of the record, my understanding is that
9  Exhibit 681 was prepared in connection with
10 30(b)(6) Notice Topic 34 regarding employee
11 contributions and -- and ultimately the roles and
12 responsibilities for the identified people in that
13 notice.
14        MR. ALPER: Understood.
15 BY MR. ALPER:
16   Q. Why did Akoustis hire so many Qorvo,
17 RFMD and TriQuint employees?
18        MR. ELKINS: Object to form.
19        THE WITNESS: I'm not sure how to
20 answer your question.
21 BY MR. ALPER:
22   Q. You were involved with the hiring
23 decisions made for at least some of these
24 individuals, correct?
25   A. At least some, yes.

**105**

1  Q.  Do you know why Akoustis valued Qorvo
2  employees?
3        MR. ELKINS:  Object to form.
4        THE WITNESS:  It's hard to answer your
5  question the way you're asking it.  I would say
6  that we hire -- when we're hiring someone, we're
7  hiring someone because they're the best person for
8  the job.
9        So I wouldn't answer it that -- that
10 because they were from Qorvo.  If we hired someone
11 from Qorvo, it was because they were the best
12 person for that job.
13       They could have been -- the same thing
14 if they were from Qualcomm or if they were from
15 Bank of America because they were an accountant or
16 whatever.  I mean, we're looking for the best
17 person for the job that we are -- you know, that we
18 have.
19 BY MR. ALPER:
20  Q.  So Akoustis valued the knowledge and
21 experience that the former Qorvo employees brought
22 to Akoustis; is that correct?
23  A.  No.  That's not what I said.
24  Q.  What did you mean when you said they
25 were the best person for the job?

**106**

1  A.  I'm saying that when we go and look to
2  hire for a position, that we need to determine
3  what -- what the job is, what the requirements are
4  for the job, what's the education, experience.  We
5  also look for the best fit for our culture, for our
6  company.  So there's a whole, you know, bundle of
7  things that we're looking for.  And then there's a
8  candidate pool at that time as well.
9        So, I mean, we go through a whole
10 series of things, and we have an interview process.
11 And that's how we determine what's the best fit
12 or -- you know -- all of those things.  So we hire
13 the best person for the job.
14  Q.  Did Akoustis believe that Qorvo
15 employees were a good source of employees that
16 could move to Akoustis?
17  A.  I mean, I think that -- I don't know
18 that -- I mean, I wouldn't say that -- I don't -- I
19 still don't know how to answer that.  I mean,
20 Akoustis is looking at any candidates.  We
21 looked -- we looked at candidates across the
22 country.  I don't think that we were looking at --
23       I don't really know how to answer that.
24 We were -- yes, I mean -- I don't really know how
25 to answer that question.

**107**

1  Q.  Okay.  Did Akoustis hire 43 former
2  Skyworks employees?
3  A.  I don't know.
4  Q.  Did Akoustis hire 43 former Qualcomm
5  employees?
6  A.  I don't know.  We certainly have
7  employees from both companies.
8  Q.  Did Akoustis's recruiting efforts with
9  respect to Qorvo mirror Akoustis's recruiting
10 efforts at any other company?
11       MR. ELKINS:  Object to form.
12       THE WITNESS:  Our -- we -- we aren't --
13 we are not -- we're just recruiting for the best
14 candidates.  We aren't recruiting from a company.
15 We're recruiting for candidates.
16 BY MR. ALPER:
17  Q.  Has Akoustis hired the same number of
18 employees from any competitor that they did from
19 Qorvo?
20  A.  I have not gone and looked at the
21 numbers of employees that came from other
22 companies.  I don't know.
23  Q.  In practice, did Akoustis prioritize
24 Qorvo employees for positions at Akoustis?
25  A.  I -- no, I don't believe so.

**108**

1  Q.  In your role as HR director, were you
2  involved with creating the job descriptions that
3  were posted to Akoustis's website to advertise open
4  positions?
5  A.  To some extent, yes.
6  Q.  Who else was involved with that
7  process?
8  A.  Hiring managers and other members of
9  the HR team.
10  Q.  What were their roles?
11  A.  Generally, the hiring manager creates a
12 job description, if it's new, or maybe we're
13 revising one.  Somebody in HR is reviewing the job
14 description with the manager.  So it's kind of --
15 it's a team effort, but the hiring manager is
16 really creating it.
17       (EXHIBIT 683, Email dated 5/3/19,
18 Subject:  Conversation with Meghan Allen, Bates
19 AKTS_00803993, was marked for identification.)
20 BY MR. ALPER:
21  Q.  Ms. Johnson, you've just been marked --
22 you've just been handed what's been marked as
23 Exhibit 683 bearing Bates Number AKTS_00803998; is
24 that correct?
25  A.  Yes.

121

1  CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC
2
3         I, CINDY A. HAYDEN, RMR-CRR, the
4  officer before whom the foregoing deposition was
5  taken, do hereby certify that the foregoing
6  transcript is a true and correct record of the
7  testimony given; that said testimony was taken by
8  me stenographically and thereafter reduced to
9  typewriting under my direction; that reading and
10 signing was requested; and that I am neither
11 counsel for, related to, nor employed by any of the
12 parties to this case and have no interest,
13 financial or otherwise, in its outcome.
14         IN WITNESS WHEREOF, I have hereunto set
15 my hand this 13th day of November 2023.
16 My commission expires April 7, 2027.
17
18
19
20
21 _____
22         NOTARY PUBLIC IN AND FOR
23         THE STATE OF NORTH CAROLINA
24
25