# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC.<br><br>　　　　Plaintiff,<br><br>v.<br><br>AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC.<br><br>　　　　Defendants. | C.A. No. 21-1417 (JPM)<br><br>**JURY TRIAL DEMANDED** |

### THE AKOUSTIS DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY OF U.S. PATENT NOS. 7,522,018 AND 9,735,755

Dated:  February 20, 2024

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

**TABLE OF CONTENTS**

                                                                                                                   **Page**

I. INTRODUCTION .................................................................................................................. 1

II. THE STANDARD FOR SUMMARY JUDGMENT OF OBVIOUSNESS ....................... 1

III. SUMMARY JUDGMENT ON THE VALIDITY OF CLAIMS 1 AND 12 OF THE 018 PATENT SHOULD BE DENIED ................................................................... 2

    A. WHETHER WO '740 COMBINED WITH THE BACKGROUND KNOWLEDGE OF A POSITA INVALIDATES CLAIMS 1 AND 12 IS A DISPUTED MATERIAL FACT AND A QUESTION RESERVED FOR THE JURY. ............................................... 2

    B. AKOUSTIS' FINAL INVALIDITY CONTENTIONS DISCLOSED AND DR. NGUYEN'S INVALIDITY REPORT ADVANCED OBVIOUSNESS ASSERTIONS AGAINST CLAIMS 1 AND 12 OF THE '018 PATENT BASED UPON WO '740 IN VIEW OF A POSITA'S GENERAL KNOWLEDGE IN THE FIELD. ................................. 3

    C. COVERAGE OF '018 PATENT CLAIM ELEMENT 1[C] DOES NOT REQUIRE DISCLOSURE OF A SPECIFIC "APPLES-TO-APPLES" COMPARISON HOLDING ALL PARAMETERS CONSTANT EXCEPT RELATIVE THICKNESS BETWEEN TOP AND BOTTOM ELECTRODES. ...................................................................................... 5

IV. QORVO'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY OF CLAIMS 9 AND 10 OF THE '755 PATENT SHOULD BE DENIED ............................. 6

    A. AKOUSTIS' FINAL INVALIDITY CONTENTIONS PRESENT GENUINE DISPUTES OF MATERIAL FACT REGARDING WHETHER CLAIMS 9 AND 10 OF THE '755 PATENT ARE OBVIOUS BASED ON DE '425 IN VIEW OF HASHIMOTO. .................... 6

    B. DR. NGUYEN DEMONSTRATES WHY A POSITA WOULD HAVE COMBINED DE '425 AND HASHIMOTO. ........................................................................................ 6

    C. DR. NGUYEN EXPLAINS HOW DE '425 COMBINED WITH HASHIMOTO RENDERS OBVIOUS '755 PATENT ELEMENTS 9[H] & 10[H]. .................................. 7

V. CONCLUSION ...................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alza Corp. v. Mylan Lab'ys, Inc.*,
    464 F.3d 1286 (Fed. Cir. 2006).................................................................................................7

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017).................................................................................................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................................1

*Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005).................................................................................................7

*In re Dance*,
    160 F.3d 1339 (Fed. Cir. 1998)............................................................................................7, 9

*Koninklijke Philips N.V. v. Google LLC*,
    948 F.3d 1330 (Fed. Cir. 2020).................................................................................................2

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)...................................................................................................................7

*Lemelson v. TRW, Inc.*,
    760 F.2d 1254 (Fed. Cir. 1985).................................................................................................1

*Spigen Korea Co., Ltd. v. Ultraproof, Inc.*,
    955 F.3d 1379 (Fed. Cir. 2020)............................................................................................1, 3

*TriMed, Inc. v. Stryker Corp.*,
    608 F.3d 1333 (Fed. Cir. 2010).................................................................................................2

**Statutes**

35 U.S.C. § 103...............................................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 56(a) .......................................................................................................................1

**I.      INTRODUCTION**

Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Akoustis") oppose plaintiff Qorvo, Inc.'s ("Qorvo's") Motion for Summary Judgment on Validity of U.S. Patent Nos. 7,522,018 ("the '018 patent") and 9,735,755 ("the '755 patent"). D.I. 453 ("Motion").[1]

Qorvo asserts that claims 1 and 12 of the '018 patent and claims 9 and 10 of the '755 patent are not obvious because Akoustis' Final Invalidity and Unenforceability Contentions and Dr. Nguyen's Invalidity Report allegedly fail to set forth an obviousness analyses of these claims. Qorvo attempts to distract the Court from the substance of Akoustis' contentions and Dr. Nguyen's expert analyses by focusing on the form of phrases traditionally associated with obviousness. The absence of "buzz words," however, does not negate the substance of Akoustis' obviousness contentions supported by Dr. Nguyen's expert analysis. An issue of material fact clearly exists as to at least '018 patent claims 1 and 12 and '755 patent claims 9 and 10, rendering summary judgment improper in this instance.

**II.     THE STANDARD FOR SUMMARY JUDGMENT OF OBVIOUSNESS**

The party moving for summary judgment bears the burden of showing the absence of genuine disputes as to *any* material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986). "[A] trial court is not free to [determine disputed] facts at the summary judgment phase." *Spigen Korea Co., Ltd. v. Ultraproof, Inc.*, 955 F.3d 1379, 1384 (Fed. Cir. 2020); *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260 (Fed. Cir. 1985) ("For summary judgment, fact-finding is an inappropriate

---

[1] Qorvo's Motion was accompanied by its Opening Brief (D.I. 454 ("Opening Br.")) and the Declaration of Timothy P. Cremen (D.I. 455 ("Cremen Decl.")). All lettered exhibits cited below are attached to the Cremen Declaration.

exercise, at either the appellate or the district court level. If a dispute requiring a finding exists as to any material fact, summary judgment is improper.").

Obviousness is a question of law based on underlying facts, one of which is the general knowledge in the relevant field. *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1337 (Fed. Cir. 2020) ("the inquiry into whether any 'differences' between the invention and the prior art would have rendered the invention obvious to a skilled artisan necessarily depends on such artisan's knowledge"). "What a reference teaches…[and] the background knowledge of one of skill in the art—these are all questions reserved for the finder of fact." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010).

## III. SUMMARY JUDGMENT ON THE VALIDITY OF CLAIMS 1 AND 12 OF THE 018 PATENT SHOULD BE DENIED

### A. WHETHER WO '740 COMBINED WITH THE BACKGROUND KNOWLEDGE OF A POSITA INVALIDATES CLAIMS 1 AND 12 IS A DISPUTED MATERIAL FACT AND A QUESTION RESERVED FOR THE JURY.

Element 1[c] of the '018 patent[2] recites "the top electrode layer (T1, T3, T5) is thinner than the bottom (T2, T4, T6) electrode layer to increase a filter bandwidth of the electro-acoustic resonator." WO 02/093740 ("WO '740"), combined with the background knowledge of a POSITA, renders Element 1[c] obvious. As explained in Akoustis' Final Invalidity and Unenforceability Contentions (Ex. A, "FIC"), WO '740 teaches "[n]umerous Example resonators [] having different top and bottom electrode thicknesses and different bandwidths, different Q factors, and different central frequencies." (Ex. A at A-2.) "Thus, the skilled artisan would appreciate from [WO '740] that altering the electrode thicknesses can alter Q factor, bandwidth, and central frequency." (*Id.* at A-2 and A-3.)

---

[2] In its Opening Brief, Qorvo does not dispute that WO '740 teaches all of the elements of claims 1 and 12 of the '018 patent, except for Element 1[c]. Akoustis thus limits its Opposition to Qorvo's arguments relating to Element 1[c].

- 2 -

Qorvo contends that WO '740 cannot teach Element 1[c] because it allegedly does not provide a sufficient teaching that a differential electrode thickness, as claimed, leads to an increased bandwidth, e.g., a comparison of bandwidths in resonators in which all parameters are held constant except relative thickness between top and bottom electrodes. This factual dispute is material and alone forecloses summary judgment: whether a POSITA with general knowledge of the field of acoustic filters would have understood WO '740 to teach increasing bandwidth by using a top electrode that is thinner than the bottom electrode is an issue of material fact for the jury. *See Spigen*, 955 F.3d at 1384.

### B. AKOUSTIS' FINAL INVALIDITY CONTENTIONS DISCLOSED AND DR. NGUYEN'S INVALIDITY REPORT ADVANCED OBVIOUSNESS ASSERTIONS AGAINST CLAIMS 1 AND 12 OF THE '018 PATENT BASED UPON WO '740 IN VIEW OF A POSITA'S GENERAL KNOWLEDGE IN THE FIELD.

Qorvo falsely dismisses obviousness by asserting that "[n]either Akoustis' [FIC] nor Dr. Nguyen's Invalidity Report advances obviousness assertions against claim 1 of the '018 Patent." Not true. Both Akoustis' FIC and Dr. Nguyen's Invalidity Report address the obviousness of claim 1 based on WO '740 and the knowledge of a POSITA. Qorvo's contention fails.

Akoustis' FIC asserts that claims 1 and 12 of the '018 patent are obvious based on WO '740 combined with a POSITA's general knowledge.[3] For example, the FIC states "[t]he prior art listed below[, including WO '740,]…renders obvious the Asserted Claims of the Asserted Patents[, including claims 1 and 12 of the '018 patent] as understood by a POSITA alone or in combination with other prior art." (Ex. A at 7.) The FIC further states, "[w]ith respect to obviousness, each of the above prior art references [including WO '740] render[s] the Asserted

---

[3] Claim 12 of the '018 patent depends upon claim 1. Qorvo's dispute as to the sufficiency of Akoustis' obviousness assertions against claim 12 relates to only Element 1[c]. Thus, Akoustis' arguments here in support of its obviousness assertions against claim 1 of the '018 apply equally to claim 12, and vice-versa.

Claims [including claims 1 and 12 of the '018 patent] obvious: (1) alone in view of the understanding and skill of one [of] ordinary skill [] in the art." (*Id.* at 10*.*) Further, "[n]umerous Example resonators are described, having different top and bottom electrode thicknesses and different bandwidths, different Q factors, and different central frequencies. Thus, the skilled artisan would appreciate from [WO '740] that altering the electrode thicknesses can alter Q factor, bandwidth, and central frequency." (*Id.* at A-2.) Akoustis clearly disclosed this obviousness argument in its FIC.

Meanwhile, Dr. Nguyen's Invalidity Report shows that claims 1 and 12 of the '018 patent are obvious based upon WO '740 combined with the background knowledge of a POSITA. Dr. Nguyen opines that using electrode thickness to influence electromechanical coupling – that in turn influences BAW performance including bandwidth – was well-known and an age-old practice before the '018 patent's priority date. (Ex. B ¶ 55.) Dr. Nguyen supports his opinion with two textbooks long predating the '018 patent – Zverev (1967) and Gerber (1985) – to evidence what a POSITA would have known at that time. (Ex. B ¶ 55.) These textbooks provide clear evidence of what a POSITA would have understood when reading WO '740. For example, Dr. Nguyen's Invalidity Report describes electrode engineering to affect performance as an "age-old practice" and stating that it was "well-known" that electrode thickness influences electromechanical coupling, which in turn influences BAW performance. (*Id.*) It further describes that at least three prior art references, including WO '740, "invalidates claim 1 by anticipation" and "[t]o the extent that any element of any of the claims is not explicitly or inherently shown in a single reference, that element is well-known in the art, shown in other references, and therefore those claims are obvious in view of combinations of the art discussed herein." (*Id.* ¶ 58.) Dr. Nguyen opines in his Invalidity Report that WO '740 is "quite correct when it states that large electromechanical

coupling contributes to potentially large filter bandwidth," and explains that it was known in the art by the mid-1960s and well-understood by the mid-1980s that large electromechanical coupling is one of many contributions to bandwidth, citing again to Zverev (1967) and Gerber (1985). (*Id.* at C-1.)

### C. COVERAGE OF '018 PATENT CLAIM ELEMENT 1[C] DOES NOT REQUIRE DISCLOSURE OF A SPECIFIC "APPLES-TO-APPLES" COMPARISON HOLDING ALL PARAMETERS CONSTANT EXCEPT RELATIVE THICKNESS BETWEEN TOP AND BOTTOM ELECTRODES.

Qorvo next attempts to dismiss Akoustis' obviousness contentions with a conclusory statement that misapplies the anticipation arguments against claims 1 and 12 of the '018 patent. In its anticipation arguments, Qorvo assesses only whether Dr. Nguyen found all elements of claims 1 and 12 explicitly within WO '740. But by simply referring back to its anticipation argument, Qorvo fails to address Dr. Nguyen's alternative argument that a POSITA would have found it obvious, based on general knowledge in the art, to vary the relative electrode thickness to affect BAW performance, including bandwidth. This failure dooms Qorvo's Motion because Qorvo does not even address Akoustis' and Dr. Nguyen's obviousness arguments, let alone meet its burden of showing that no issue of material fact exists with respect to the obviousness of claims 1 and 12 of the '018 patent.

Qorvo's primary argument against anticipation of the '018 patent focuses on a purported "apples-to-apples" comparison requirement, where the difference in electrode thickness must be the sole factor resulting in an increased bandwidth. (Opening Br. [D.I. 453] at 9.) Such a limitation is nowhere claimed or disclosed in the '018 patent. Further, Qorvo's "apples-to-apples" comparison requirement directly contradicts the position of its own expert, Dr. Shanfield, that the '018 claims cover a resonator with a thinner top electrode as compared to a thicker bottom electrode as long as it was used "in a filter design that ends up with larger bandwidth." (Ex. 1

("Shanfield Tr.") at 58:9-21.)[4]  Dr. Shanfield further admitted that many factors can affect filter bandwidth.  *Id.* at 60:4-24.  Qorvo cannot now insist for purposes of contesting invalidity that WO '740 must teach that an unequal electrode thickness is the ***only*** driving factor for improved filter bandwidth.

Summary judgment should be denied because genuine issues of material fact exist with respect to whether claims 1 and 12 of the '018 patent are obvious.

### IV. QORVO'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY OF CLAIMS 9 AND 10 OF THE '755 PATENT SHOULD BE DENIED

#### A. AKOUSTIS' FINAL INVALIDITY CONTENTIONS PRESENT GENUINE DISPUTES OF MATERIAL FACT REGARDING WHETHER CLAIMS 9 AND 10 OF THE '755 PATENT ARE OBVIOUS BASED ON DE '425 IN VIEW OF HASHIMOTO.

Akoustis asserts obviousness in its FIC based on the combination of DE 10241425 ("DE '425") in view of Hashimoto, K. "*RF Bulk Acoustic Wave Filters for Communications*" (2009) ("Hashimoto").  For example, Akoustis' FIC discloses that "[t]he specific combinations of references provided below [including DE '425 and Hashimoto] to establish obviousness under 35 U.S.C. § 103 are merely examples and are not intended to be exhaustive." (Ex. A at 5.)  In addition, the FIC makes clear that DE '425 discloses all but the last element – Element 9[h]/10[h] – of claims 9 and 10 of the '755 patent, and that the teachings of Hashimoto combined with DE '425 render obvious element 9[h]/10[h].  (*Id.* at B-7 to B-10*.*)

#### B. DR. NGUYEN DEMONSTRATES WHY A POSITA WOULD HAVE COMBINED DE '425 AND HASHIMOTO.

Qorvo asserts that:

> Dr. Nguyen has failed to undertake a proper obvious analysis of the purported combination of DE '425 and Hashimoto utilizing the Graham factors, including how or why a POSITA would have combined DE '425 and Hashimoto and why a POSITA would have had a reasonable expectation of success in doing so. Dr.

---

[4] All numbered exhibits are attached to the concurrently filed Declaration of Victoria Q. Smith.

> Nguyen's charts simply identify disclosures of DE '425 and Hashimoto without further substantive obviousness analysis.

(Opening Br. [D.I. 453] at 13.) Qorvo, however, improperly attempts to restrict the obviousness analysis to an application of the *Graham* factors. Doing so violates well-established precedent.

The *Graham* factors are not the only way to show why a POSITA would have combined two prior art references. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007). Motivation to combine may be implicit in the prior art and based on the general knowledge of a POSITA. *See Alza Corp. v. Mylan Lab'ys, Inc.*, 464 F.3d 1286, 1290–91 (Fed. Cir. 2006); *Cross Med. Prod., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1322 (Fed. Cir. 2005). "When the references are in the same narrow field as the applicant's invention, knowledge thereof may be presumed." *In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998) (affirming a determination of obviousness based upon both prior art references being in the same narrow field as the invention and rejecting challenger's argument that one prior art reference taught away from the other prior art reference). Whether a sufficient motivation to combine has been provided is a question of fact for the jury to decide. *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1359 (Fed. Cir. 2017). The motivation to combine may be provided by the implicit teachings of DE '425 and Hashimoto and/or the general knowledge of a POSITA. Dr. Nguyen's Invalidity Report explains that DE '425 and Hashimoto both teach the well-known technique of adjusting stack layer thicknesses to modify the real and imaginary parts of a region's propagation constant. (Ex. B ¶ 65.) A genuine dispute of material fact thus exists as to the combination of DE '425 and Hashimoto, precluding summary judgment in this instance.

### C. DR. NGUYEN EXPLAINS HOW DE '425 COMBINED WITH HASHIMOTO RENDERS OBVIOUS '755 PATENT ELEMENTS 9[H] & 10[H].

Qorvo argues that "Dr. Nguyen's analysis of elements [9h]/[10h] in his charts does not explain how the cited portion of *DE '425* or *Hashimoto*—neither of which recognizes the impact

of layer thickness selection on the excitation of wavelengths in the active region—shows all the requirements of these elements." (D.I. 453 at 13-14 (italics in original).) But the case law cited above holds that the motivation to combine may be implicit in the prior art and based on the general knowledge of a POSITA. Dr. Nguyen explains the general knowledge of a POSITA and how such a POSITA would understand the teachings of DE '425 and Hashimoto, which themselves provide an implicit motivation to combine.

Element 9[h]/10[h] recites "n is such that the outer region of the BAW resonator and the active region of the BAW resonator are acoustically matched in such a manner that one or more wavelengths that cause energy leakage into the outer region are not excited in the active region." Dr. Nguyen's Invalidity Report explains that a POSITA would know that, for determining a lateral profile, an acoustic bulge may be created at the transition between the active and transition zones which requires an acoustic match at the interface. (Ex. B at D-7.) Dr. Nguyen also explains that a POSITA would understand that DE '425's acoustic bulge will transition to a node (i.e., no amplitude and no energy) a quarter wavelength away. (Ex. B at D-7.)

Dr. Nguyen relies on Hashimoto as evidence that it was known in the art that the boundary for lateral waves disappears, i.e., the lateral length effectively becomes infinite, when the active region is matched to the outer region at their interface, since a matched condition allows lateral waves to propagate from one region to the other without reflection. (*Id.*) Hashimoto thus discloses, as Dr. Nguyen explained, that acoustic matching at the interface removes the boundary that reflects waves to form a lateral mode, thereby removing the ability to generate or excite the lateral mode in the active region. (*Id.*) DE '425 and Hashimoto therefore both disclose that acoustic matching at a transition between different regions to eliminate a boundary and to not excite waves in the active region. DE '425 and Hashimoto are in the same narrow technical field

of acoustic resonators such that the teachings of Hashimoto itself suggests to a POSITA to combine its matching condition with the acoustic matching of DE '425. *See In re Dance*, 160 F.3d 1339, 1343 (Fed. Cir. 1998).

Qorvo has failed to meet its burden of showing the absence of a genuine dispute of material fact because the resulting combination of DE '425 and Hashimoto renders obvious element 9[h]/10[h] such that the outer and active regions of a BAW resonator are acoustically matched in such a manner that one or more wavelengths that cause energy leakage into the outer region are not excited in the active region. Whether the resulting combination renders obvious claims 9 and 10 of the '755 patent is an issue of fact which should be left to the jury. Summary judgment should be denied as to claims 9 and 10 of the '755 patent.

## V.   CONCLUSION

For the foregoing reasons, Akoustis respectfully requests that the Court deny Qorvo's Motion for Summary Judgment on the Validity of U.S. Patent Nos. 7,522,018 and 9,735,755.

Dated:   February 20, 2024

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Respectfully submitted,

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*