IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | ) C.A. No. 21-1417 (JPM) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) |
| | ) **PUBLIC VERSION** |
|        Defendants. | ) |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE
<u>EXPERT TESTIMONY OF CARLYN IRWIN</u>**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

*Attorneys for Plaintiff Qorvo, Inc.*

**Confidential Version Filed: February 9, 2024**
**Public Version Filed: February 23, 2024**

██████████████████████████████

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................................. 1

III.   LEGAL STANDARD ......................................................................................................... 6

IV.   ARGUMENT ....................................................................................................................... 7

      A.   Ms. Irwin's "Avoided Costs" Opinions Are Not Relevant or Reliable. ................... 7

      B.   Ms. Irwin's "Avoided Costs" Opinions Are Not Helpful to the Jury. ...................... 9

V.   CONCLUSION .................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apex Financial Options, LLC v. Gilbertson*,
 No. 19-046, 2022 WL 605692 (D. Del. Jan. 31, 2022) ....................................................... 9, 10

*Babcock Power, Inc. v. Kapsalis*,
 854 Fed. App'x 1 (6th Cir. Mar. 25, 2021) ................................................................................ 7

*Bayer Healthcare LLC v. Baxalta Inc.*,
 No. 16-1122, 2019 WL 330149 (D. Del. Jan. 25, 2019) ........................................................ 6, 8

*Daubert v. Merrell Dow Pharms. Inc.*,
 509 U.S. 579 (1993) ........................................................................................................... 1, 6, 8

*Edwards Lifesciences Corp. v. Meril Life Sciences PVT. Ltd.*,
 2021 WL 5407316 (N.D. Cal. Nov. 18, 2021) ........................................................................ 8, 9

*FieldTurf USA Inc. v. Tencate Thiolon Middle East, LLC*,
 No. 4:11-cv-50, 2013 WL 12290896 (N.D. Ga. Dec. 5, 2013) .................................................. 7

*Globeranger Corp. v. Software AG United States of America, Inc.*,
 836 F. 3d 477 (5th Cir. 2016) ..................................................................................................... 2

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Litig.*,
 509 F. Supp. 3d 116 (D.N.J. 2020) ............................................................................................ 7

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig.*,
 341 F. Supp. 3d 213 (S.D.N.Y. 2018) ........................................................................................ 7

*In re Paoli R.R. Yard PCB Litig.*,
 35 F.3d 717 (3d Cir. 1994) ............................................................................................... 6, 8, 9

*In re TMI Litigation*,
 193 F.3d 613 (3d Cir. 1999) ....................................................................................................... 8

*Insight Equity v. Transitions Optical, Inc.*,
 252 F. Supp. 3d 382 (D. Del. 2017) ........................................................................................... 6

*Nimely v. City of New York*,
 414 F.3d 381 (2d Cir. 2005) ....................................................................................................... 7

*Schneider v. Fried*,
 320 F.3d 396 (3d Cir. 2003) ....................................................................................................... 6

**Statutes**

18 U.S.C. § 1836, et seq...................................................................................................2, 4

18 U.S.C. § 1839(3) ...............................................................................................................5

**Rules**

Fed. R. Evid. 403 ...................................................................................................................7

Fed. R. Evid. Rule 702......................................................................................................6, 7

## I.  INTRODUCTION

To be admissible, an expert's opinions must be relevant (*e.g.*, based upon a methodology that is properly applied to the facts of the case), reliable, and useful to the trier of fact. Defendants' damages expert, Carlyn Irwin, offered opinions regarding the so-called "costs" Akoustis avoided when it misappropriated Qorvo's trade secrets. Her opinions on these "avoided costs" fail each of these requirements under *Daubert*.

Ms. Irwin's "avoided costs" opinions are not relevant to Qorvo's misappropriation of trade secrets claim because her opinions are based upon an assumption that Akoustis did not misappropriate any trade secret. Moreover, because the methodology Ms. Irwin applies to calculate avoided costs necessarily requires her to assume liability, her opinions likewise fail to apply accepted principles and methods for calculating such damages. This ultimately renders Ms. Irwin's opinion unhelpful to the jury. In fact, Ms. Irwin readily admits that if the jury determines Qorvo's information was trade secret (and not publicly available), then her analysis cannot aide the jury in calculating Qorvo's damages. Declaration of J. DeFosse ("DeFosse Decl."), ¶ 7, Ex. F, 61:12-24. Accordingly, Qorvo respectfully requests the Court preclude Ms. Irwin from testifying regarding any costs Akoustis avoided as a result of its misappropriation of Qorvo's trade secrets.

## II.  STATEMENT OF FACTS

On December 20, 2023, Defendants served the Expert Rebuttal Report of Carlyn Irwin ("Irwin Report"). In her report, Ms. Irwin criticizes the methodology that Qorvo's damages expert, Melissa Bennis, uses to calculate the head start benefit Akoustis received when it misappropriated Qorvo's trade secrets.[1] *E.g.*, DeFosse Decl., ¶ 6, Ex. E at ¶ 30. Ms. Irwin further opines that "a

---

[1] Head start damages are a form of unjust enrichment damages awarded to a plaintiff when a defendant develops a competing business or product faster than would have been possible absent the misappropriation. *See e.g.*, Ex. F, 51:23-52:16 (Irwin admitting that "unjust enrichment

more appropriate method to estimate trade secret unjust enrichment [in this case] is avoided costs." *Id.*, ¶ 30.d.[2]

Ms. Irwin defines avoided costs as "the development costs [Akoustis] avoided because it misappropriated [Qorvo's] trade secrets." Ex. F, 53:2-53:6.[3] Described generically, "if it costs $100 to develop a widget, but a defendant who was found liable for misappropriating a plaintiff's trade secret was able to develop the widget for $10 using the trade secret information, the costs the defendant avoided incurring was $90." *Id.*, 53:7-15. Similarly, "if it takes 100 hours to develop a widget[,] but a defendant who was found liable for misappropriating a plaintiff's trade secret was able to develop a widget in 10 hours, the cost the defendant avoided incurring was the monetary amount associated with those 90 hours." *Id.*, 53:16-25. Purporting to use this avoided costs methodology, Ms. Irwin opines that "estimated damages **associated with [Akoustis'] alleged misappropriation** of trade secrets are less than ▮▮▮▮." Ex. E, ¶ 30.d., 76-85 (Irwin Rpt.) (emphasis added).

To reach this conclusion, Ms. Irwin expressly relies upon the expert opinions of Akoustis' technical experts, Drs. Darveaux and Lebby. *Id.*[4] As explained in Paragraph 77 and Figure 4 of Ms. Irwin's Report, Drs. Darveaux and Lebby analyzed each of the groups of trade secret information that Qorvo's expert, Dr. Shanfield, identifies in his opening report. Ex. E, ¶ 77, Fig. 4

---

damages [] include a defendant's profits, avoided development costs, and/or the commercial advantage or head start that a defendant received" and defining head start damages).

[2] Avoided costs are just one type of unjust enrichment damages a plaintiff may recover under the Defend Trade Secrets Act. Ex. F, 51:23-52:16, 52:23-53:1 (Irwin Dep.); *e.g., Globeranger Corp. v. Software AG United States of America, Inc.*, 836 F. 3d 477, 499-500 (5th Cir. 2016).

[3] *E.g. Globeranger Corp.*, 836 F. 3d at 499-500.

[4] Ms. Irwin's report indicates that she "understands" Drs. Darveaux's and Lebby's methodology and opinions from "discussions" with them. *E.g.*, Ex. E, ¶ 77. At her deposition, Ms. Irwin admitted that she did not have any discussions with Drs. Darveaux and Lebby until after she issued her report. Ex. F, 42:17-45:18.

(Irwin Rpt.); Ex. F, 54:1-58:11 (Irwin explaining her methodology). For each of the eight groups that Dr. Shanfield identifies, Drs. Darveaux and Lebby purport to "identif[y] both the time it would take a typical Akoustis engineer **to find the information publicly and the cost to purchase such information**, if any." Ex. E, ¶ 77 (Irwin Rpt.) (emphasis added); *e.g.*, Ex. E, ¶ 76, 78-79, Fig. 4 (Irwin Rpt.); Ex. F, 54:21-61:24 (Irwin Dep.); DeFosse Decl., ¶ 4, Ex. C, ¶¶ 121-122 (Lebby Rpt.); DeFosse Decl., ¶ 8, Ex. G, ¶ 307 (pp. 93-95) (Darveaux Rpt.).

Irwin then uses the hours estimates Drs. Darveaux and Lebby supplied to calculate the "Engineer Cost" associated with each hour Akoustis saved. Ex. E, ¶ 76-79, Fig. 4 (Irwin Rpt.); Ex. F, 55:11-16, 56:25-57:3, 58:4-60:24 (Irwin Dep.). Similarly, she uses the "Cost to Obtain Public Information" that Drs. Darveaux and Lebby supplied to calculate the value of such costs as of the date of trial. *Id.*



3

Importantly, the hours and cost estimates Drs. Darveaux and Lebby provide to Ms. Irwin **assumes the information that Akoustis stole from Qorvo was not trade secret information.** Ex. E, ¶¶ 76-79, 81. For example, the first group of trade secrets identified in Ms. Irwin's Figure 4 is "Qorvo's BAW filter and resonator designs." Ex. E, Fig. 4 (Irwin Rpt.). Dr. Darveaux opines that "**there are no Qorvo trade secrets in these documents**." Ex. G, ¶ 307 (Darveaux Rpt.) (emphasis added). Dr. Darveaux opines that certain "publicly available" documents disclose all information in the documents Akoustis took from Qorvo. *Id.*, pp. 94-95. Dr. Darveaux opines on the cost to purchase those public documents. *Id.* Dr. Darveaux also estimates the number of engineering hours Akoustis allegedly saved because it did not have to search the Internet to obtain these public documents. *Id.* Ultimately, Dr. Darveaux concludes that Akoustis saved ▮ ▮ by having access to Qorvo's BAW filter and resonator designs. *Id.*, pp. 93-95. Ms. Irwin relies upon these numbers in her Figure 4 to opine that Akoustis avoided ▮ in costs for this group of information. *Id.*; Ex. E, Fig. 4 (pg. 33).

Ms. Irwin readily admits that a trade secret cannot be publicly available. She defined a trade secret as:

> **truly a secret and not something that can be necessarily reverse engineered, because it's not public.** The purpose is that it's not public, dissimilar to a patent, and that the owner is required to take sufficient steps to keep it confidential and keep it secret.

Ex. F, 51:9-22 (emphasis added).[5] Ms. Irwin also readily admits that the inputs she received from Drs. Darveaux and Lebby are predicated upon their conclusion that Akoustis stole no trade secret information from Qorvo. Ex. E, ¶ 76-77 (Irwin Rpt.).

---

[5] The Defend Trade Secrets Act defines a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing

4

> Q. Okay. And I want to make sure that I fully understand what information Dr. Darveaux and Dr. Lebby gave you and that you're relying upon for your opinions. If we look at Paragraph 76 of your Report, both Dr. Darveaux and Lebby conclude that none of the documents Qorvo's expert identified contain trade secrets because all of the information that might be useful to Akoustis was publicly available; correct?
>
> A. Correct.

Ex. F, 58:12-20. Recognizing that the inputs for her avoided costs methodology fail to assume Akoustis misappropriated Qorvo's trade secret information, Ms. Irwin circularly claims that her analysis is assuming trade secret misappropriation, even though Drs. Darveaux's and Lebby's opinions depend upon their conclusion that no trade secrets existed:

> Q: If the jury disagrees with Drs. Darveaux and Lebby and concludes that the information contained in Qorvo's documents are trade secrets and are not publicly available, then your analysis of Akoustis' avoided costs does not apply, correct?
>
> A. If the jury finds that they are not – that they could not be replicated in a manner in which Drs. Darveaux and Lebby described…they would disagree with the premise of my …. analysis. One thing I should clarify, though. **The end of paragraph 76 both Drs. Darveaux and Lebby have the opinions that they're not trade secrets, but I'm assuming they're trade secrets. I'm not operating under an assumption that these are not trade secrets**….I'm setting aside their ultimate opinion of trade secrets as a legal issue and then proceeding with the estimate of avoided costs.

*Id.*, 59:8-60:5. Because the avoided cost methodology requires an assumption that trade secrets were stolen and because the inputs Ms. Irwin received from Drs. Darveaux and Lebby assume no misappropriation of trade secrets occurred, Qorvo respectfully moves the Court to preclude Ms. Irwin from testifying regarding the so-called "costs" Akoustis avoided when it misappropriated Qorvo's trade secrets.

---

if— (A)the owner thereof has taken reasonable measures to keep such information secret; and (B)the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3).

5

**III.    LEGAL STANDARD**

"Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Bayer Healthcare LLC v. Baxalta Inc.*, No. 16-1122, 2019 WL 330149, *1 (D. Del. Jan. 25, 2019).

The court "acts as a gatekeeper" to ensure the reliability of expert testimony. *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Bayer Healthcare,* 2019 WL 330149, *1 (quoting *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong…requires the proponent [of the expert testimony] to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Id*. (internal quotations omitted). "'The reliability prong…mandates that the expert opinion "be grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief." *Id.*

Additionally, if an expert's testimony is not helpful to the jury (the "fit" test) then it must also be excluded. The "fit" criteria under Rule 702 speaks to "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994). "[F]it asks whether the proffered testimony is sufficiently helpful." *Insight Equity v. Transitions Optical, Inc.*, 252 F. Supp. 3d 382, 386 (D. Del. 2017). "[H]elpfulness requires more than bare logical relevance." *Paoli*, 35 F.3d at 745. Moreover, even if the Court determines that an expert's opinion is "helpful" it may still be excluded if its probative value is substantially outweighed by a danger of: unfair

6

prejudice, confusing the issues, misleading the jury, or wasting time, among other things. Fed. R. Evid. 403.

## IV.    ARGUMENT

### A.    Ms. Irwin's "Avoided Costs" Opinions Are Not Relevant or Reliable.

Ms. Irwin's "avoided costs" opinions are not relevant to Qorvo's misappropriation of trade secrets claim because her opinion fundamentally relies upon an assumption that Akoustis **did not misappropriate** any Qorvo trade secret. This further makes Ms. Irwin's "avoided costs" opinions unreliable because Ms. Irwin admits that avoided costs are supposed to "reflect the development costs [Akoustis] avoided **because it misappropriated [Qorvo's] trade secrets**." Ex. F, 53:2-53:6 (Irwin defining avoided costs) (emphasis added).

Damages experts must assume both that the asset was a trade secret and that the defendant is liable for misappropriation. *See FieldTurf USA Inc. v. Tencate Thiolon Middle East, LLC*, No. 4:11-cv-50, 2013 WL 12290896 (N.D. Ga. Dec. 5, 2013) (refusing to exclude expert that assumed liability in breach of contract case because "[e]very economic damages expert must assume that."); *see also Babcock Power, Inc. v. Kapsalis*, 854 Fed. App'x 1, 8 (6th Cir. Mar. 25, 2021) (affirming denial of motion to disqualify expert that assumed liability for misappropriation of trade secrets). Furthermore, "[i]t is axiomatic that '[w]here an expert ignores evidence that is highly relevant to [her] conclusion, contrary to [her] own stated methodology, exclusion of the expert's testimony is warranted'" *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Litig.*, 509 F. Supp. 3d 116, 194 (D.N.J. 2020) (citing *In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig.*, 341 F. Supp. 3d 213, 241 (S.D.N.Y. 2018)).

Ultimately, "reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). "*Daubert*'s requirement that the expert testify to

7

scientific knowledge—conclusions supported by good grounds for each step in the analysis—means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Paoli*, 35 F.3d at 745; *In re TMI Litigation*, 193 F.3d 613, 694-95 (3d Cir. 1999) (affirming exclusion because expert's methodology lacked a key factual input (the coefficient of accordance)).

Fundamentally, Ms. Irwin's opinions are inconsistent with the assumption that misappropriation occurred. *Bayer Healthcare LLC*, 2019 WL 330149, at *3 (excluding damages opinion based upon erroneous assumption of non-infringement). Ms. Irwin attempts to absolve this mistake by claiming she "assumed" the information Akoustis took were trade secrets—even though her expert report expressly relies on both Drs. Darveaux and Lebby who opine otherwise. Ex. F, 59:8-60:5. Ms. Irwin readily admits, however, that she lacks the technical expertise to opine as to the engineering hours and/or costs that Akoustis saved through its alleged misappropriation. Ex. F, 35:14-36:14; 60:17-24. Furthermore, Drs. Darveaux's and Lebby's hours and costs estimates expressly depend upon their opinion that the information taken was publicly available. *E.g.*, Ex. G, ¶ 307, pp. 93-95. (Darveaux Rpt.). Ms. Irwin repeatedly acknowledges this: "**I further understand that Dr. Darveaux and Dr. Lebby conclude that none of the documents identified by Dr. Shanfield as related to Qorvo's alleged trade secrets actually contained trade secrets, as all of the information was publicly available.**" *E.g.*, Ex. E, ¶ 76 (emphasis added); Ex. F, 58:12-59:7 (Irwin Dep.).

Fundamentally, Akoustis' experts are speaking out of both sides of their mouths. *Edwards Lifesciences Corp. v. Meril Life Sciences PVT. Ltd.*, 2021 WL 5407316, * 3 (N.D. Cal. Nov. 18, 2021). Drs. Darveaux and Lebby claim no trade secret misappropriation occurred. *E.g.*, Ex. G,

¶ 307, pp. 93-95 ("My analysis in section IX.C above indicates that there are no Qorvo trade secrets in these documents and Akoustis achieved zero time-to-market head start by having access to these documents.") (Darveaux Rpt..). Furthermore, the hours and cost estimates they provide to Irwin depend upon their opinions that Akoustis could obtain the information contained in Qorvo's documents from public sources. *E.g.*, *id.*, pp. 93-95. Ms. Irwin relies upon these opinions, but claims she is assuming the information Akoustis stole was not publicly available. Ex. F, 59:8-60:5. In *Edwards Lifesciences Corp.*, the Court excluded portions of a damages expert's opinions that functionally disputed liability.

> The Court does not understand how Dr. Vigil can at the same time assume that Plaintiffs have met their burden of proving that Defendants' statements were 'literally false' or 'literally true but likely to mislead consumers' and testify, on the other hand, that Defendants' statements were unlikely to confuse consumers because they were correct when made.

*Id.* The same result follows here. Ms. Irwin's methodology necessarily requires the jury to conclude that no misappropriation of trade secrets occurred. Accordingly, she fails to apply a reliable methodology to her calculation of damages for misappropriation of trade secrets. Her opinion is not relevant to the facts of this case, nor is it based upon a reliable methodology for calculating damages. The Court should exclude her opinions on the costs Akoustis avoided due to its misappropriation of Qorvo's trade secrets.

### B. Ms. Irwin's "Avoided Costs" Opinions Are Not Helpful to the Jury.

The Court should exclude Ms. Irwin's avoided costs opinions for the additional reason that her testimony is not helpful to the jury. *Apex Financial Options, LLC v. Gilbertson*, No. 19-046, 2022 WL 605692, *4-5 (D. Del. Jan. 31, 2022). "The Third Circuit has emphasized that an expert's analysis must 'fit' his or her conclusions in the case at hand." *Id.*, *4 (citing *In re Paoli*, 35 F.3d at 745). This requirement "requires a valid scientific connection to the pertinent inquiry as a

9

precondition to admissibility." *Id.* When an expert fails to connect her methodology "to the facts of the case," the helpfulness standard is not met. *Id.*, *4-5.

Here, Ms. Irwin fails to connect her methodology "to the facts." Accordingly, her opinions lack scientific connection to the pertinent inquiry—what costs did Akoustis avoid because it misappropriated Qorvo's trade secrets? Ms. Irwin readily admits her opinion is irrelevant if the jury find that Akoustis stole Qorvo's trade secret information:

> Q: if the jury disagrees[6] with Dr[s]. Darveaux[] and Lebby[] and determines that the Qorvo documents Akoustis took are in fact secret and not publicly available, then you have not performed a calculation as to the unjust enrichment that Akoustis [received].?
>
> A: If they disagreed with [Drs.] Darveaux and Lebby regarding the ability to independently identify and obtain the information, then yes. That's correct.

Ex. F, 61:12-24. Ultimately, if the jury finds Akoustis liable for misappropriation of trade secrets, Ms. Irwin's testimony will not assist in calculating damages. Accordingly, her opinions should be excluded because her analysis does not "fit" Qorvo's misappropriation of trade secret claim.

Even if Ms. Irwin's testimony could help the jury determine the appropriate amount of damages for misappropriation of trade secrets (it does not), Ms. Irwin's testimony should still be excluded because her testimony will confuse and mislead the jury, resulting in unfair prejudice to Qorvo. Ultimately, Ms. Irwin's "avoided costs" methodology relates to Qorvo's unfair competition claim, *not* Qorvo's misappropriation of trade secrets claim. Ms. Irwin should not be permitted to tell the jury that she assumed misappropriation occurred when the inputs she received from Drs. Darveaux and Lebby depend upon their opinions that all of the information Akoustis took from Qorvo was publicly available (and not trade secrets). Allowing Akoustis' experts to offer competing testimony will mislead the jury, resulting in confusion and unfair prejudice to Qorvo.

---

[6] There is a reporter's error in the transcript, which uses the word "degrees."

## V. CONCLUSION

Qorvo respectfully requests that the Court strike Paragraphs 30.d. and 76-85 of Ms. Irwin's Report, and preclude Ms. Irwin from offering opinions regarding the alleged "costs" Akoustis "avoided" because it misappropriated Qorvo's trade secrets.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | */s/ Jeremy A. Tigan* |
| Robert M. Masters<br>Jonathan R. DeFosse<br>Timothy P. Cremen<br>Roy D. Jung<br>SHEPPARD, MULLIN, RICHTER<br>    & HAMPTON LLP<br>2099 Pennsylvania Avenue, NW, Suite 100<br>Washington, DC  20006-6801<br>(202) 747-1900 | Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>Anthony D. Raucci (#5948)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br>araucci@morrisnichols.com<br><br>*Attorneys for Plaintiff Qorvo, Inc.* |

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

February 9, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 9, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Ronald S. Lemieux, Esquire<br>David S. Elkins, Esquire<br>Victoria Q. Smith, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>1841 Page Mill Road, Suite 150<br>Palo Alto, CA  94304-1216<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

/s/ *Jeremy A. Tigan*

Jeremy A. Tigan (#5239)