IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) | |
| | ) | **PUBLIC VERSION** |
| Defendants. | ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE
EXPERT TESTIMONY OF DR. MICHAEL LEBBY**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

*Attorneys for Plaintiff Qorvo, Inc.*

**Confidential Version Filed: February 9, 2024**
**Public Version Filed: February 23, 2024**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     Relevant Background ......................................................................................... 2

        A.      Qorvo Serves Expert Report of Dr. Shanfield Regarding Trade Secrets ................ 2

        B.      Qorvo Serves Expert Report of Mr. Robinson Regarding Security Measures ....... 3

        C.      Akoustis Serves Expert Reports from Drs. Nguyen and Darveaux Regarding
                Trade Secrets in Groups 2-7 ................................................................ 4

        D.      Akoustis Serves Expert Report of Dr. Lebby ......................................................... 4

                1.      Dr. Lebby opines on trade secret groups 1 and 8 ....................................... 4

                2.      Dr. Lebby parrots the opinions of Drs. Nguyen and Darveaux on trade
                        secret groups 2-7 ........................................................................ 6

                3.      Dr. Lebby opines that Qorvo was "behind" Akoustis in the development of
                        5 GHz filters .............................................................................. 8

                4.      Dr. Lebby opines that Qorvo did not have reasonable information security
                        measures ................................................................................... 8

III.    LEGAL STANDARD ....................................................................................... 10

IV.     ARGUMENT ..................................................................................................... 11

        A.      Dr. Lebby's Opinions on Information Security Should Be Excluded ................... 11

                1.      Dr. Lebby is not qualified to opine on information security .................... 11

                2.      Dr. Lebby's information security opinions are not reliable ..................... 12

        B.      Dr. Lebby's Opinions on Trade Secret Groups 2-7 Should Be Excluded ............. 14

                1.      Dr. Lebby did not provide any analysis of trade secret groups 2-7 .......... 14

                2.      Dr. Lebby's applied the wrong legal test .................................................. 15

                3.      Dr. Lebby cannot parrot the opinions of Drs. Nguyen and Darveaux ...... 15

        C.      Dr. Lebby's Opinions on Akoustis Being "Ahead" of Qorvo Should Be Excluded
                .............................................................................................................................. 17

        D.      Dr. Lebby's Opinions on Trade Secret Groups 1 and 8 Should Be Excluded ....... 17

V.      CONCLUSION .................................................................................................. 18

**Cases**

Alcoa, Inc. v. Alcan Rolled Prod.-Ravenswood LLC,
   No. 06-cv-451, 2020 WL 433856 (D. Del. Jan. 28, 2020) ....................................................14

Bayer Healthcare LLC v. Baxalta Inc.,
   Case No. 16-cv-1122, 2019 WL 330149 (D. Del. Jan. 25, 2019)....................................10, 11

Calhoun v. Yamaha Motor Corp.,
   U.S.A., 350 F.3d 316 (3d Cir. 2003).......................................................................................13

Cirba Inc. v. VMware, Inc.,
   No. 19-cv-742, 2020 WL 70968 (D. Del. Jan. 7, 2020) ..........................................................14

Daubert v. Merrell Dow Pharms. Inc.,
   509 U.S. 579 (1993)................................................................................................................10

Elcock v. Kmart Corp.,
   233 F.3d 734 (3d Cir. 2000)....................................................................................................13

General Electric Co. v. Joiner,
   522 U.S. 136 (1997)................................................................................................................18

In re M/V MSC FLAMINIA,
   No 12-cv-8892, 2017 WL 3208598 (S.D.N.Y., Jul. 28, 2017)................................................15

In re Paoli R.R. Yard PCB Litig.,
   35 F.3d 717 (3d Cir. 1994)......................................................................................................11

In re TMI Litigation,
   193 F.3d 613 (3d. Cir. Nov. 2, 1999)......................................................................................16

Insight Equity v. Transitions Optical, Inc.,
   252 F. Supp. 3d 382 (D. Del. 2017)........................................................................................11

Intellectual Ventures I LLC v. Xilinx, Inc.,
   No. 10-cv-1065, 2014 WL 1814384 (D. Del. Apr. 14, 2014) .................................................15

La Gorce Palace Condominium Association, Inc. v. Blackboard Specialty
   Insurance Company,
   586 F.Supp.3d 1300 (S.D. Fla. Feb. 16, 2022) ......................................................................16

LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.,
   209 F. Supp. 3d 612 (S.D.N.Y. 2016).....................................................................................12

Meadows v. Anchor Longwall,
   306 F. App'x 781 (3d Cir. 2009) .............................................................................................17

*Mhl Custom, Inc. v. Waydoo USA, Inc.*,
    No. 21-cv-0091, 2023 WL 1765553 (D. Del. Feb. 3, 2023)....................................................12

*Minerva Surgical, Inc. v. Hologic, Inc.*,
    No. 18-cv-00217, 2021 WL 3048447 (D. Del. July 20, 2021) .................................................15

*Schneider v. Fried*,
    320 F.3d 396 (3d Cir. 2003)....................................................................................................10

*Shire Viropharma Inc. v. CSL Behring LLC*,
    No. 17-cv-414, 2021 WL 1227097 (D. Del. Mar. 31, 2021) ............................................11, 15

*Smith v. Central Admixture Pharmacy Services, Inc.*,
    No. 07-cv-3196, 2010 WL 1137507 (D. Md. Mar. 19, 2010) .................................................12

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008).................................................................................................12

*TASER Int'l, Inc. v. Karbon Arms, LLC*,
    No. 11-cv-426, 2013 WL 6773663 (D. Del. Dec. 19, 2013) ...................................................14

*TQ Delta, LLC v. ADTRAN, Inc.*,
    No. 14-cv-954, 2019 WL 5677539 (D. Del. Oct. 31, 2019).....................................................11

*Wirtgen Am. v. Caterpillar, Inc.*,
    No. 1:17-cv-00770-JDW-MPT, 2024 WL 166833 (D. Del. Jan. 16, 2024) ......................14, 18

**Statutes**

18 U.S.C. § 1839(3) ..........................................................................................................................15

N.C. Gen. Stat. § 66-152 ..................................................................................................................15

**Rules**

Fed. R. Evid. 403 ..............................................................................................................................11

Fed. R. Evid. 702 ...................................................................................................................10, 11, 14

Fed. R. Evid. 703 ..............................................................................................................................16

## I.      INTRODUCTION

Plaintiff Qorvo Inc. respectfully moves to exclude certain opinions set forth in of the expert report of Dr. Michael Lebby.

First, Dr. Lebby opined that Qorvo failed to implement reasonable information security measures. But Dr. Lebby has **no expertise** in the field of information security—he does not hold any qualifications in information security, he has never acted as an information security officer, and, despite testifying as an expert in at least 60 cases, Dr. Lebby could not recall offering an opinion on information security in any of those cases. Dr. Lebby's complete lack of information security expertise shows. He admitted that he did not apply any methodology in assessing Qorvo's information security practices; he did not cite or analyze any of the information security documents Qorvo produced in this case; and he could not identify even a single document that he relied upon in forming his opinions.

Second, without any providing **any analysis**, Dr. Lebby purported to "incorporate" and "agree with" opinions of two other expert witnesses—Dr. Clark Nguyen and Dr. Robert Darveaux. Dr. Lebby admitted that he expects to offer testimony at trial confirming the correctness of these opinions. But it is well-established that such efforts to aggregate and "parrot" the opinions of other experts are improper.

Third, large swaths of Dr. Lebby's report are comprised of conclusory and unsupported *ipse dixit* assertions. For example, Dr. Lebby opined that Akoustis was "ahead" of Qorvo in the development of 5GHz filter products. Dr. Lebby, however, made no attempt to determine when Akoustis began its product development compared to Qorvo. Dr. Lebby testified that he relied on Dr. Darveaux for that analysis, but Dr. Darveaux testified that he also never performed the analysis. Similarly, Dr. Lebby opined throughout his report that all of Qorvo's trade secrets were disclosed publicly in market reports, conference presentations, and datasheets. But Dr. Lebby did not identify

even a single of these alleged public disclosures and ultimately admitted that he conducted no search for the purported "public" information.

Given the fundamental deficiencies in Dr. Lebby's report, Qorvo respectfully requests that the Court exclude the opinions disclosed in paragraphs 3, 4, 6, 72-116, 125-151 and 154.

## II.    RELEVANT BACKGROUND

### A.    Qorvo Serves Expert Report of Dr. Shanfield Regarding Trade Secrets

On November 21, 2023, Qorvo served an expert report from Dr. Stanley Shanfield. Ex. B.[1] Dr. Shanfield has worked for more than 30 years on the research, design, manufacturing, and commercialization of semiconductor devices. *Id.*, ¶9. In his report, Dr. Shanfield assessed several issues related to Qorvo's trade secret claims, including (1) whether Qorvo's asserted trade secrets were generally known or readily ascertainable in the industry; (2) whether Qorvo derives value from the asserted trade secrets not being generally known; (3) whether Akoustis acquired and used the asserted trade secrets; and (4) whether Akoustis was able to compete in the market more rapidly due to its acquisition and use of the asserted trade secrets. *Id.*, ¶5.

In performing his analysis, Dr. Shanfield determined that Akoustis had obtained hundreds of thousands of Qorvo's documents, including images of an entire Qorvo laptop computer and multiple archives of Qorvo email accounts. Ex. B, ¶77. Dr. Shanfield identified confidential information in the possession of at least 40 Akoustis employees, including numerous executives. *Id.*, ¶508. Dr. Shanfield explained that, "[g]iven the vast volume of Qorvo confidential information found in Akoustis' files, it would not be practical to address every individual confidential document." *Id.*, ¶78. As such, Dr. Shanfield focused his analysis on a subset of the information,

---

[1] All citations to "Ex." refer to the exhibits to the concurrently filed Declaration of Jonathan DeFosse.

which he divided into eight trade secret groups: (1) Qorvo business plans for WiFi products; (2) Qorvo BAW filter and resonator designs; (3) Qorvo's trimming methods and procedures; (4) Qorvo's evaluation board design rules and schematics; (5) Qorvo's product development process and testing procedures; (6) Qorvo's systems, processes, and procedures for testing reliability and mean-time-to-failure of parts; (7) Qorvo manufacturing, assembly, and change procedures; and (8) Qorvo product roadmaps and product prototypes. *Id.* For each of the eight groups, Dr. Shanfield identified (i) specific Qorvo documents that Akoustis obtained; (ii) the concrete information in each of the documents that was not publicly available or readily ascertainable; and (iii) the value of that information to Qorvo and its competitors. Dr. Shanfield also analyzed whether Akoustis used the confidential information. Dr. Shanfield opined that, as a result of obtaining and using Qorvo confidential information, Akoustis obtained a cumulative 55-month head start benefit. *Id.*, ¶510. The basis for Dr. Shanfield's opinions is set forth in his detailed 501-page written report.

### B.    Qorvo Serves Expert Report of Mr. Robinson Regarding Security Measures

On November 21, 2023, Qorvo also served the expert report of R. Cuyler Robinson addressing the reasonableness of Qorvo's information security practices. Ex. A. Mr. Robinson is a Vice President with CRA International ("CRA") and the Chief Information Security Officer for CRA's Forensic Services practice. *Id.*, ¶¶1, 8. Mr. Robinson has worked for more than two decades in the field of information security; he has investigated hundreds of data security incidents over that time; and he holds numerous professional certifications related to information security. *Id.*, ¶¶3, 5, Appx. A at 7-9.

Mr. Robinson analyzed Qorvo's information security practices based on two widely-consulted information security frameworks. Ex. A, ¶¶29-30. As part of his analysis, Mr. Robinson reviewed Qorvo's policies, practices, and procedures dating back to 2015 and assessed Qorvo's practices against 16 separate information security criteria. *Id.*, ¶¶47-148. Based on his analysis,

Mr. Robinson concluded that Qorvo's information security measures exceeded those that are reasonable in the industry. *Id.*, ¶¶149-153. Mr. Robinson set forth the basis for his opinions, with detailed citations to record evidence, in his written report. *See* Ex. A.

### C. Akoustis Serves Expert Reports from Drs. Nguyen and Darveaux Regarding Trade Secrets in Groups 2-7

On December 20, 2023, Akoustis served expert reports from Dr. Clark Nguyen and Dr. Robert Darveaux. *See* Ex. G, Ex. I.[2] Dr. Darveaux offered opinions concerning six of the eight trade secret groups addressed in Dr. Shanfield's report (groups 2-7).[3] Ex. G, ¶¶72-292. Dr. Nguyen offered opinions concerning two of the eight trade secret groups addressed in Dr. Shanfield's report (groups 2 and 3).[4] Ex. I, ¶¶101-145. In general, Drs. Darveaux and Nguyen opined that the alleged trade secrets addressed in Dr. Shanfield's report were either known in the industry, readily ascertainable, or not useful to Akoustis. Ex. G, ¶¶67-68; Ex. I, ¶144.

### D. Akoustis Serves Expert Report of Dr. Lebby

On December 20, 2023, Akoustis also served an expert report from Dr. Michael Lebby purporting to rebut the opinions of Dr. Shanfield and Mr. Robinson. Ex. C.[5]

#### 1. Dr. Lebby opines on trade secret groups 1 and 8

Dr. Lebby addressed two of the trade secret groups identified in Dr. Shanfield's report: Qorvo business plans for Wi-Fi Products (group 1) and Qorvo product roadmaps and product

---

[2] Exhibit G is the "corrected" version of Dr. Darveaux's report dated January 16, 2024.

[3] Dr. Darveaux opined on information in groups 2-7 from Dr. Shanfield's report: (2) Qorvo BAW filter and resonator designs; (3) Qorvo's trimming methods and procedures; (4) Qorvo's evaluation board design rules and schematics; (5) Qorvo's product development process and testing procedures; (6) Qorvo's systems, processes, and procedures for testing reliability and mean-time-to-failure of parts; (7) Qorvo manufacturing, assembly, and change procedures.

[4] Dr. Nguyen opined on information in groups 2 and 3: (2) Qorvo BAW filter and resonator designs; (3) Qorvo's trimming methods and procedures.

[5] Exhibit C is the "corrected" version of Dr. Lebby's report dated January 5, 2024.

prototypes (group 8). Ex. C, ¶¶81-112. Dr. Lebby opined that the alleged trade secrets in these groups were publicly available because they were disclosed in "reports" sold by "market analysis companies," presented at conferences, and published in public data sheets. *Id.*, ¶¶82-84, 86-88, 90, 92, 94, 96-99, 105, 106, 108-112. But Dr. Lebby did not specifically identify any of the purported public disclosures. *See id.* During his deposition, Dr. Lebby confirmed that he did not look for evidence of public availability. Ex. D, 161:12-22 ("I did not look for market research reports that relate to this litigation, outside of the documents that I was exposed to by counsel. So no, I did not look at other market research reports to find – to see if any of the information here was available publicly because I don't think that's appropriate.").

Dr. Lebby also opined that Akoustis did not use the alleged trade secrets. Ex. C, ¶¶85, 86, 89, 91, 95, 102, 104, 107, 108. Again, Dr. Lebby did not cite any evidence supporting these assertions. *See id.* For example, Dr. Lebby did not cite or analyze the documents that Dr. Shanfield identified in his report as reflecting use of the alleged trade secrets. *See id.* Nor did Dr. Lebby speak with any Akoustis employees about the alleged trade secrets. *See* Ex. D, 25:3-26:3 (Lebby only spoke with two Akoustis employees and did not rely on that information in his report).

Dr. Lebby further opined that Akoustis' efforts to obtain Qorvo's information from sources in Korea and China was part of a "common" industry practice of "competitive intelligence gathering in Asia." Ex. C, ¶¶100-101. Dr. Lebby did not identify the intelligence gathering practices he considered to be "common" in Asia, nor how those practices relate to Akoustis' alleged misappropriation of trade secrets. *See id.* Instead, Dr. Lebby made the conclusory and blanket assertion that Dr. Shanfield's 80-paragraph analysis of "how Akoustis came to be in possession of documents" was "naïve." *Id.*, ¶100. During his deposition, Dr. Lebby resisted explaining how his opinion applies to the evidence related to Akoustis' alleged misappropriation.

For example, Dr. Lebby refused to say whether it was common in the industry to solicit confidential information from sources in China or Korea. Ex. D, 190:17-191:11 ("Well, it's not common for me because I don't do that."). Dr. Lebby then evaded questions on whether it was "common intelligence gathering in Asia" for Akoustis to use an expense account to obtain "key confidential information" about Qorvo. *Id.*, 191:13-196:19; *see also* Ex. J (Akoustis Country Manager in Korea stating he uses expense account to obtain "key confidential information"). For example, Dr. Lebby sought to avoid answering questions with long, meandering discussions of the purportedly "normal" practice of prostitution in Asia:

> I have no idea what this key confidential information could be. What I do know is when you go out to dinners in Asia, you know, and there's a bunch of men talking about stuff, they share information that is confidential that has nothing whatever to do with the business they're in. It could be which prostitute they had sex with the night before. That's key confidential information. You don't want that information going through other employees in companies. So I don't know. It doesn't say what the confidential information is in Exhibit 530. And so how can I make a categorical answer to your question when I have no idea what it is in the first place, number one. Number two, I have no idea what the discussion was taking place between these people from the companies he had entertainment with, has no idea what the entertainment is. I don't know if that's a meal or that's taking them to a normal prostitute place which happens quite regularly in Asia.

Ex. D, 195:15-196:11; *see also id.*, 197:23-199:1 (Dr. Lebby refusing to explain opinion because employee "could be doing elicit activities in terms of, you know, going to prostitution houses for all I know.").

### 2.    Dr. Lebby parrots the opinions of Drs. Nguyen and Darveaux on trade secret groups 2-7

In addition to his opinions concerning trade secret groups 1 and 8, Dr. Lebby also purported to opine that **all of the information** addressed in the Shanfield report—i.e., the trade secrets in all eight trade secret groups—was "generally known, readily ascertainable in the industry." Ex. C, ¶3 ("[I]t is my opinion that the categories of information that Dr. Shanfield claims are 'trade secrets'

are not trade secrets."). Dr. Lebby's report does not analyze **any** of the alleged trade secrets in trade secret groups 2-7. *See generally* Ex. C; Ex. D, 72:14-79:8 (admitting no "detail[ed]" analysis of groups 2-7). Instead, Dr. Lebby provided an "overview" of his general opinions (*see* Ex. C, ¶¶71-75) and then "incorporate[d]" and "agree[d] with" the opinions of Dr. Nguyen and Dr. Darveaux (*see id.*, ¶¶113-114).

In the "overview" of his opinions, Dr. Lebby opined that Qorvo does not have any trade secrets because (i) "there is nothing in Dr. Shanfield's report that even remotely looks or feels like a trade secret" (*id.*, ¶72); and (ii) trade secret protection is only available for "information that is so important to the financial success and well-being of the company that a company will not risk potential exposure through the filing of a patent application" (*id.*, ¶73). Dr. Lebby did not identify any legal basis or methodology for the "looks-or-feels" test or the "important to financial success" criteria he applied. *See id.*, ¶¶72-73.

Dr. Lebby stated that he was "incorporat[ing] by reference" sections IV and V of Dr. Nguyen's report (Ex. C, ¶113) and sections I and IV-IX of Dr. Darveaux's report (*id.*, ¶114). In both cases, Dr. Lebby stated he "agree[s] with the opinions" Drs. Nguyen and Darveaux expressed in those sections. *Id.*; Ex. D, 89:10-20 (Dr. Lebby confirming that he intends to opine at trial that the opinions of Drs. Nguyen and Darveaux are correct). Despite stating that he agreed with the opinions of Dr. Nguyen and Dr. Darveaux, Dr. Lebby testified that he (i) never received any drafts of the Nguyen or Darveaux reports; and (ii) only reviewed the Nguyen and Darveaux reports after finalizing his own report. Ex. D, 29:5-30:1. Dr. Lebby initially testified that he only attended two calls with Dr. Nguyen or Dr. Darveaux, both in the Summer of 2023 (months before Dr. Shanfield's report). *Id.*, 27:1-13. When asked how he had determined that he agreed with the opinions of Dr. Darveaux and Dr. Nguyen, Dr. Lebby recanted his prior testimony. *Id.*, 86:8-23.

Dr. Lebby stated that "there may have been one or two calls" and "there may have been an overview of some of their opinions." *Id.*; *see also id.*, 88:20-89:9 (Dr. Lebby agreed to incorporate opinions of Drs. Darveaux and Nguyen after one or two calls where there were "high level reviews of their opinions").

### 3.    Dr. Lebby opines that Qorvo was "behind" Akoustis in the development of 5 GHz filters

Dr. Lebby also opined that Akoustis was "technologically and commercially ahead of Qorvo" with respect to developing 5GHz range filters. Ex. C, ¶¶76-80. In reaching this opinion, Dr. Lebby did not determine when Akoustis began working on its 5 GHz filters. Ex. D, 136:12-137:2 ("I don't believe I have the detailed dates written in my expert report"). Instead, Dr. Lebby purported to "incorporate" Dr. Darveaux's analysis of Akoustis' filter development. *Id.*, ("I do incorporate Dr. Darveaux's analysis and his expert report that went into greater detail."). But Dr. Darveaux's report does not analyze when Akoustis began developing its 5GHz filter (*see* Ex. G, ¶58) and Dr. Darveaux testified that he does not know when Akoustis started developing those filters (Ex. H, 209:25-210:3).

### 4.    Dr. Lebby opines that Qorvo did not have reasonable information security measures

Dr. Lebby also offered opinions concerning Qorvo's information security measures. *See* Ex. C, ¶¶125-151. Dr. Lebby did not identify any specialized knowledge or expertise that would qualify him to offer expert opinions on information security measures. *See generally* Ex. C. During his deposition, Dr. Lebby admitted that he does not have any information security qualifications. Ex. D, 218:15-219:1 ("I do not have any qualifications as far as I'm aware in information security."). Dr. Lebby has never been an information security officer (*id.*, 217:3-6) and it is "mostly unlikely" that he has ever offered an expert opinion on information security (*id.*, 219:2-7) despite having been deposed "[a]t least 60 times" and testifying at trial "20 times or more" (*id.*, 5:22-6:3).

Dr. Lebby stated that he has worked as a CEO at "small companies" where he had ultimate responsibility for "making sure" information security policies were adopted. *Id.*, 217:11-16. Dr. Lebby did not explain how his general experience as a CEO qualified him to assess Qorvo's information security policies. *See id.*

Dr. Lebby opined that Qorvo "did not take reasonable measures to maintain the confidentiality of its trade secret information." Ex. C., ¶126. Dr. Lebby's information security opinion relies on the premise that the alleged trade secrets identified in Dr. Shanfield's report were, in fact, publicly available. Ex. C, ¶127 ("my review of the relevant documents revealed no legitimately confidential information belonging to Qorvo"). Based on that premise, Dr. Lebby opined that Qorvo engaged in the "habitual over-designation" of materials as confidential. *Id.*, ¶¶130, 140-142. According to Dr. Lebby, this "over-designation" resulted in "employee confusion" that negated all of the security measures addressed in Mr. Robinson's report. *Id.*, ¶134. Dr. Lebby did not offer any coherent explanation tying the "over-designation" of documents with the nullification of a company's information security measures. For example, Mr. Lebby opined that Qorvo's physical security measures—e.g., physical access restrictions at Qorvo's offices— were (somehow) unreasonable due to the purported over-designation of confidential information: "While physical security is something that corporations implement, it can be and usually is confusing for employees especially when there is an over-designation of marking confidential in documents and emails. This dilutes what is truly confidential and what is not." *Id.*, ¶148.

Dr. Lebby admitted that he did not follow any known methodology in assessing the reasonableness of Qorvo's information security measures. Ex. D, 221:20-222:10 ("I don't recall implementing any methodology in assessing Qorvo's information security policies."). Dr. Lebby stated that he "considered Qorvo's business, its historical operations, the types of confidential and

alleged trade secret information that is at issue in this lawsuit, and the alleged methods of trade secret misappropriation to determine whether the assessment and opinions brought forward by Mr. Robinson are warranted." Ex. C, ¶126. But Dr. Lebby's report does not analyze (or even cite) any such materials. *See id.*, ¶¶125-151. Dr. Lebby stated during his deposition that he could not identify **any documents** that he relied on in forming his opinions because he did "not cite any documents that [he] reviewed in this litigation" as part of his analysis. Ex. D, 223:19-224:1.

Dr. Lebby did not identify any evidence to support the assertion that Qorvo "over-designated" information as "confidential." For example, Dr. Lebby's analysis did not identify a single public document that Qorvo "over-designated" as confidential. Ex. D, 233:22-234:16 ("I don't cite to any particular document."). Nor did Dr. Lebby identify evidence to support the assertion that Qorvo employees are confused about confidentiality designations. Ex. D, 236:18-237: ("I don't have any evidence I can point to. . . . I haven't seen any evidence from employees and I certainly haven't interviewed any employees from Qorvo about the certain situation.").

## III.    LEGAL STANDARD

"Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *Bayer Healthcare LLC v. Baxalta Inc.*, Case No. 16-cv-1122, 2019 WL 330149, *1 (D. Del. Jan. 25, 2019).

The court "acts as a gatekeeper" to ensure the reliability of expert testimony. *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Bayer Healthcare,* 2019 WL 330149, *1 (quoting *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579,

594, 597 (1993). "The relevance prong…requires the proponent [of the expert testimony] to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Id.* (internal quotations omitted). "'The reliability prong…mandates that the expert opinion "be grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief." *Id.*

Additionally, if an expert's testimony is not helpful to the jury (the "fit" test) then it must also be excluded. The "fit" criteria under Rule 702 speaks to "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994). "[F]it asks whether the proffered testimony is sufficiently helpful." *Insight Equity v. Transitions Optical, Inc.*, 252 F. Supp. 3d 382, 386 (D. Del. 2017). "[H]elpfulness requires more than bare logical relevance." *Paoli*, 35 F.3d at 745. Moreover, even if the Court determines that an expert's opinion is "helpful" it may still be excluded if its probative value is substantially outweighed by a danger of: unfair prejudice, confusing the issues, misleading the jury, or wasting time, among other things. Fed. R. Evid. 403.

## IV.    ARGUMENT

### A.    Dr. Lebby's Opinions on Information Security Should Be Excluded

In paragraphs 6, 125-151 and 154 of his report, Dr. Lebby offers opinions concerning Qorvo's information security measures.  These opinions should be excluded.

#### 1.    Dr. Lebby is not qualified to opine on information security

"Qualification refers to the requirement that the witness possess specialized expertise." *TQ Delta, LLC v. ADTRAN, Inc.*, No. 14-cv-954, 2019 WL 5677539, at *2 (D. Del. Oct. 31, 2019). An expert's qualifications must "provide a foundation for the witness to testify meaningfully on a given matter." *Shire Viropharma Inc. v. CSL Behring LLC*, No. 17-cv-414, 2021 WL 1227097, at

*3 (D. Del. Mar. 31, 2021). Where a witness is not "qualified as an expert by knowledge, skill, experience, training, or education" in the pertinent art, the expert cannot "assist the trier of fact to understand the evidence or to determine a fact in issue." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008).

Dr. Lebby is not qualified to offer opinions on information security measures. Dr. Lebby has no specialized knowledge related to information security (including any certifications); he has never worked as an information security officer; and he cannot recall ever offering an expert opinion on information security issues. *See* Part II.D.4. The general knowledge that Dr. Lebby gained as the CEO of "small" technology companies does not give him specialized knowledge to opine on the reasonableness of information security practices. *Smith v. Central Admixture Pharmacy Services, Inc.*, No. 07-cv-3196, 2010 WL 1137507 at *3 (D. Md. Mar. 19, 2010) ("It is well established that 'general expertise is not sufficient to qualify [an expert] to testify on a matter that requires particularized knowledge, training, education, or experience.'"). Akoustis' effort to shoehorn Dr. Lebby—a technical expert—into the role of an information security expert should be rejected. *See, e.g., Mhl Custom, Inc. v. Waydoo USA, Inc.*, No. 21-cv-0091, 2023 WL 1765553, at *1 (D. Del. Feb. 3, 2023) ("Mr. Barry, who is a technical expert, has no qualifications to testify about economic issues. Mr. Barry's opinions about commercial success are excluded."); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016) ("It is well established that even if a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields.").

## 2.    Dr. Lebby's information security opinions are not reliable

The reliability restriction requires that the testimony be based upon "the methods and procedures of science rather than on subjective belief or unsupported speculation" and that the

expert have "good grounds for his or her belief." *Calhoun v. Yamaha Motor Corp.*, U.S.A., 350 F.3d 316, 321 (3d Cir. 2003). The Third Circuit identifies the following non-exhaustive factors when evaluating reliability: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Elcock v. Kmart Corp.*, 233 F.3d 734, 745–46 (3d Cir. 2000).

Dr. Lebby's information security opinions are the epitome of "subjective beliefs" that are unsupported by any facts, data, or reliable methodology. Dr. Lebby opines that Qorvo did not take reasonable security measures because the company "over-designates" materials as confidential, resulting in employee "confusion." Ex. C, ¶134 Dr. Lebby does not identify any documents that Qorvo improperly designated as "confidential," much less a basis for the assertion that Qorvo "habitually" over-designates information. Ex. D, 233:22-234:16 ("I don't cite to any particular document."). Nor does Dr. Lebby identify any evidence that Qorvo employees were confused. *Id.*, 236:18-237: ("I don't have any evidence I can point to."). Indeed, Dr. Lebby could not identify **any documents** that he relied upon in forming his opinions. *Id.*, 223:19-224:1. Perhaps most importantly, Dr. Lebby admitted that he did not apply any methodology in assessing Qorvo's information security measures. *Id.*, 221:20-222:10 ("I don't recall implementing any methodology."). Not surprisingly, Dr. Lebby fails to offer any coherent analysis the link between over-designating information as "confidential" and the purported nullification of the information security measures that Qorvo has implemented (e.g., physical access restrictions, password

protection, data loss prevention software). *See, e.g.*, Ex. C, ¶148 (asserting that "confusion" over confidentiality designations somehow negates physical access controls).

Dr. Lebby's information security opinions are quintessential *ipse dixit*. Such opinions are impermissible. *See TASER Int'l, Inc. v. Karbon Arms, LLC*, No. 11-cv-426, 2013 WL 6773663, at *1 (D. Del. Dec. 19, 2013) ("Mr. Gallagher offers almost no basis as to how he arrived at his royalty rate other than that he considered the above numbers and factors. This is the quintessential *ipse dixit* justification. Mr. Gallagher's reasonable royalty analysis is not based on any reliable methodology, and therefore fails Daubert and is excluded under Fed. R. Evid. 702."); *Alcoa, Inc. v. Alcan Rolled Prod.-Ravenswood LLC*, No. 06-cv-451, 2020 WL 433856, at *2 (D. Del. Jan. 28, 2020) ("The expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation."); *Cirba Inc. v. VMware, Inc.*, No. 19-cv-742, 2020 WL 70968, at *3 (D. Del. Jan. 7, 2020) ("a qualified expert must provide some reliable methodology or principles by which he formed his opinion").

## B.    Dr. Lebby's Opinions on Trade Secret Groups 2-7 Should Be Excluded

In paragraphs 3, 4, 72-75, and 113-116, Dr. Lebby opines that "the categories of information that Dr. Shanfield claims are 'trade secrets' are not trade secrets" (Ex. C, ¶3) and "Akoustis did not use the information that Dr. Shanfield described as 'trade secrets'" (*id.*, ¶4). These sweeping opinions, which cover trade secret groups 2-7, should be excluded.

### 1.    Dr. Lebby did not provide any analysis of trade secret groups 2-7

Dr. Lebby's opinions concerning trade secret groups 2-7 are improper as a threshold matter because they are merely a series of conclusory statements without any supporting analysis. *See Wirtgen Am. v. Caterpillar, Inc.*, No. 1:17-cv-00770-JDW-MPT, 2024 WL 166833, at *4 (D. Del. Jan. 16, 2024) ("Expert reports must not contain mere conclusory opinions, but must include 'how' and 'why' the expert reached those particular conclusions.").

-14-

### 2.      Dr. Lebby's applied the wrong legal test

Dr. Lebby's opinions concerning trade secret groups 2-7 should also be excluded because Dr. Lebby's conclusory assertions are based on an incorrect legal standard. Dr. Lebby applied a "looks-or-feels" test to identify trade secrets based on his "experience" that information is only a "trade secret" if it "is so important to the financial success and well-being of the company that a company will not risk its potential exposure through the filing of a patent application."  Ex. C, ¶¶72-73. Dr. Lebby's experiential "looks-or-feels" test is not the legal standard for trade secret protection under either federal or North Carolina law.  *See* 18 U.S.C. § 1839(3) (defining "trade secret" under federal law); N.C. Gen. Stat. § 66-152 (defining "trade secret" under North Carolina law).  As such, Dr. Lebby's opinions should be excluded. *See Minerva Surgical, Inc. v. Hologic, Inc.*, No. 18-cv-00217, 2021 WL 3048447, at *6 (D. Del. July 20, 2021) ("An expert's opinion that applies a legally erroneous or irrelevant analysis is inadmissible."); *Intellectual Ventures I LLC v. Xilinx, Inc.*, No. 10-cv-1065, 2014 WL 1814384, at *3-4 (D. Del. Apr. 14, 2014) (striking expert's opinion because expert's understanding of the law was incorrect and rendered opinion unreliable).

### 3.      Dr. Lebby cannot parrot the opinions of Drs. Nguyen and Darveaux

Dr. Lebby's opinions concerning trade secret groups 2-7 should also be excluded because he is merely repeating and agreeing with the opinions of Dr. Nguyen and Dr. Darveaux. *See* Ex. C, ¶¶113, 114; Ex. D, 89:10-20 (Dr. Lebby intends to testify that the opinions of Drs. Nguyen and Darveaux are correct). It is well-established that an expert cannot merely "parrot" the opinions of other experts.  *See Shire Viropharma Inc. v. CSL Behring LLC*, No. 17-cv-414, 2021 WL 1227097, at *25 (D. Del. Mar. 31, 2021) ("experts may not simply parrot ideas of other experts"). Stated differently, an expert may not act as an "aggregator" or mouthpiece for other experts.  *In re M/V MSC FLAMINIA*, No 12-cv-8892, 2017 WL 3208598, at *22 (S.D.N.Y., Jul. 28, 2017) ("There is a line between Robbins acting as a mouthpiece or 'aggregator' for other experts—neither of which

is allowed—and relying upon another expert to form his own conclusions. [A]n expert may not merely recite another expert's opinion as his own.").

Dr. Lebby's opinion is also improper because he did not make any effort to assess the validity of the opinions of Dr. Nguyen and Dr. Darveaux. Despite claiming to "agree" with the opinions in the Nguyen and Darveaux reports (*see* Ex. C, ¶¶113, 114), Dr. Lebby admitted that he never actually reviewed those reports before offering his opinions. Ex. D, 29:5-30:1. Dr. Lebby also initially testified that he never spoke with Drs. Nguyen or Darveaux about their opinions. *Id*., 27:1-13. Dr. Lebby later recanted that testimony, stating instead that he "must have" spoken to Drs. Darveaux and Nguyen once or twice to receive a "high level" overview of their opinions. *Id*., 86:8-23, 88:20-89:9. Even assuming those "high level" conversations took place, they did not provide a basis for Dr. Lebby to adopt in wholesale manner the opinions expressed in two lengthy expert reports. Rather, to rely on the opinions of Dr. Darveaux and Dr. Nguyen, Dr. Lebby was required to assess the validity of those opinions. *See In re TMI Litigation*, 193 F.3d 613, 716 (3d. Cir. Nov. 2, 1999) ("Crawford–Brown's failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under Daubert as it was not calculated to produce reliable results."); *La Gorce Palace Condominium Association, Inc. v. Blackboard Specialty Insurance Company*, 586 F.Supp.3d 1300, 1306 (S.D. Fla. Feb. 16, 2022) ("Rule 703 . . . 'does not permit an expert to "simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon."'"). Dr. Lebby's report and testimony makes clear that he made no such assessment.  *See* Ex. C, ¶¶113, 114 (conclusory assertion of agreement without any analysis); Ex. D, 29:5-30:1.

### C.    Dr. Lebby's Opinions on Akoustis Being "Ahead" of Qorvo Should Be Excluded

In paragraphs 76-80, 83, 85, 86, 89, and 91 of his report, Dr. Lebby opines that Akoustis was ahead of Qorvo in 5GHz technology and products. In offering this opinion, however, Dr. Lebby did not determine when Akoustis began developing its 5GHz filters relative to Qorvo. Ex. D, 136:12-137:2. Instead, Dr. Lebby purported to "incorporate" and agree with Dr. Darveaux's opinions concerning the timeline for Akoustis' development of its 5GHz products. *See* Ex. C, ¶78; Ex. D, 136:12-137:2. Dr. Darveaux, however, did not assess when Akoustis began working on its 5GHz filters. *See* Ex. G, ¶58; Ex. H, 209:25-210:3. As such, Dr. Lebby's opinions that Akoustis was "ahead" of Qorvo in 5GHz development lack any basis and should be excluded. *See Meadows v. Anchor Longwall*, 306 F. App'x 781, 790 (3d Cir. 2009) ("expert testimony based on assumptions lacking factual foundation in the record is properly excluded").

### D.    Dr. Lebby's Opinions on Trade Secret Groups 1 and 8 Should Be Excluded

In paragraphs 81-112, Dr. Lebby opines that all of the trade secrets that Dr. Shanfield identified in trade secret groups 1 and 8 were (i) publicly available; and (ii) not used by Akoustis. Dr. Lebby, however, does not cite any evidence in support of these conclusory opinions.  For example, Dr. Lebby repeatedly states that Qorvo's alleged trade secrets were disclosed in reports available from "market analysis firms." *See* Ex. C, ¶¶82-84, 86-88, 92, 94, 96, 97, 106, 108-111. Dr. Lebby, however, does not identify **even one** of these purportedly public market analyst reports. *See id*. During his deposition, Dr. Lebby stated that he never even looked for the allegedly public reports. Ex. D, 161:12-22. Similarly, Dr. Lebby offers numerous opinions that Akoustis never used the alleged trade secrets. *See* Ex. C, ¶¶85, 86, 89, 91, 95, 102, 104, 107, 108. But again, those conclusory assertions are entirely unsupported by any underlying analysis or evidence.

-17-

Dr. Lebby's opinions are prototypical *ipse dixit*—a series of conclusory and evidence-free assertions that the asserted trade secrets were publicly available and not used. This is improper. See *Wirtgen,* 2024 WL 166833, at *4; *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

## V.    CONCLUSION

Qorvo respectfully requests that the Court strike: (1) Dr. Lebby's information security opinions (paragraphs 6, 125-151 and 154); (2) Dr. Lebby's opinions concerning trade secret groups 2-7 (paragraphs 3, 4, 72-75, and 113-116); (3) Dr. Lebby's opinions that Akoustis was "ahead" of Qorvo in developing 5GHz filters (paragraphs 76-80, 83, 85, 86, 89, and 91); and (4) Dr. Lebby's opinions on trade secret groups 1-8 (paragraphs 81-112).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
_____

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

February 9, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 9, 2024, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                          *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                             *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)