███████████████████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC. <br><br> Plaintiff, <br><br> v. <br><br> AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC. <br> Defendants. | ) <br> ) <br> ) <br> ) Case No. 21-1417-JPM <br> ) <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) ███████████████ <br> ) <br> ) <br> ) **REDACTED - PUBLIC VERSION** <br> ) **Original Filing Date: February 26, 2024** <br> ) **Redacted Filing Date: March 4, 2024** <br> ) |

**DECLARATION OF MELISSA BENNIS IN SUPPORT OF QORVO'S OPPOSITION TO AKOUSTIS'S MOTION TO EXCLUDE CERTAIN DAMAGES OPINIONS OF MELISSA BENNIS**

I, Melissa A. Bennis, declare as follows:

1.      I am a Managing Director at Stout Risius Ross, LLC ("Stout"). I have been retained by Plaintiff Qorvo, Inc. ("Qorvo") as an independent expert in this matter to assess and provide opinions on Qorvo's damages claims and determine the appropriate amount of damages that may be recoverable by Qorvo should Akoustis, Inc. and Akoustis Technologies, Inc. (collectively, "Akoustis") be found liable for one or more of the claims filed against it.

2.      I make this Declaration based on my personal knowledge, experience, and my professional judgment. I am over 18 years of age and, if called to do so, would testify competently to the matters herein.

3.      I have prepared an expert report setting forth my opinions in this matter, which is dated November 21, 2023. I have attached a true and correct copy of excerpts of that expert report as **Exhibit A** to this Declaration.

4. I expect to testify at trial in this matter regarding the statements and opinions set forth in my expert report (Exhibit A). Those statements and opinions are true and accurate based on my personal knowledge and professional experience. If called to testify, I could and would competently testify to the statements and opinions set forth in my expert report.

5. I do not offer and have not offered opinions relating to the liability elements in this matter. To form my opinions, I have assumed that Akoustis will be found liable for the trade secret misappropriation, false advertising, and unfair competition claims filed against it, and that at least one claim of the Qorvo patents-in-suit will be found valid, enforceable and infringed by Akoustis.

## I.      BACKGROUND AND QUALIFICATIONS

6. A true and correct copy of my curriculum vitae, which details my education and professional experience, is attached as **Exhibit B** to this Declaration. The following provides a brief overview of some of my experience that is relevant to the matters set forth in this Declaration.

7. I am a Certified Public Accountant. Ex. B at 1. I received a B.S. in Finance from the University of Illinois at Urbana-Champaign, and a Master of Business Administration with majors in Accounting, Marketing, and Management and Strategy from the Kellogg Graduate School of Management at Northwestern University. *Id.*

8. After receiving my undergraduate degree, I worked at Arthur Anderson LLP, where I served as a consultant in the Value Solutions Practice Group. Ex. B at 2.

9. From 2002-2003, I worked at KPMG LLP, where I served as a manager in the Forensics Accounting Practice Group. Ex. B at 2.

████████████████████████

10.      From 2003-2022, I worked at Davis & Hosfield Consulting LLC, first as a manager, and later, as a principal. Ex. B at 2.

11.      Since 2022, I have served at Stout as a Managing Director. Ex. B at 2.

12.      I have provided financial consulting services on matters involving intellectual property, including misappropriation of trade secrets, and have performed numerous complex studies and analyses involving economic loss and valuation. Ex. B at 2-23. I have also opined and testified on topics relating to damages involving misappropriation of trade secrets in at least ten matters. *Id.* at 2-14.

## II.      HEAD START DAMAGES

13.      As part of my assignment in this matter, Qorvo asked me to review documents produced in this matter and assess what economic benefit Akoustis received from use of trade secrets obtained from Qorvo. Ex. A at 2-5, 35-36. I determined disgorging profits (or revenues) did not fit the facts of this matter because: (i) Akoustis was a start-up company, (ii) Akoustis did not earn a profit, (iii) "trade secrets Akoustis is alleged to have misappropriated related to virtually every aspect of its business[,]" and (iv) "trade secrets Akoustis is alleged to have misappropriated related to . . . [Akoustis's] ability to get to market in the timeframe that it did." *Id.* at 39-40. As such, I concluded that a determination based on a head start advantage was more appropriate. *Id.* at 39.

14.      One way to measure the economic benefit to Akoustis "was to consider the benefit that Akoustis received by prematurely having access to [] cash flows." Ex. A at 39.

15.      Based on my discussions with Qorvo's technical expert (Dr. Stanley Shanfield), I understand and assumed Akoustis obtained a 55-month head start advantage. Ex. A at 38. Based on this assumption, I determined the economic benefit to Akoustis relying upon a well-known

████████████████████████

and widely accepted economic methodology—calculating the time value of money to Akoustis.

*Id.* at 37-41.

16.     In application, I calculated the time value of money benefit that Akoustis received

when it stole Qorvo's trade secrets and entered the market 55-months early. Ex. A at 37-41. In

other words, "I measured the difference in the time value of money between what revenue

Akoustis actually achieved by virtue of its trade secret misappropriation as compared to an

alternative scenario which assumes that Akoustis would have received the same amount of

revenue, but with a 55-month delay." *Id.* at 38.

17.     The time value of money is premised on the macroeconomic principle that a

dollar you receive today is worth more than a dollar you may receive a year from today. This

principle is commonly taught to students in accounting and business administration across the

country.

18.     Attached to this Declaration as **Exhibit C** is a true and correct copy of excerpt of

a student resource manual entitled "Advanced Placement Economics: Macroeconomics." Exhibit

C is an exemplary material used to teach students the macroeconomic principle that a dollar you

receive today is worth more than a dollar you may receive a year from today. Ex. C at 129-130.

19.     Exhibit C also includes the general mathematical formula used to calculate the

time value of money.

20.     Further, I considered, as a result of receiving revenues early, whether Akoustis

also avoided expenses. Ex. A at 41. Based on my discussions with Qorvo's technical expert (Dr.

Stanley Shanfield), I concluded that: "while Akoustis has incurred significant expenses to date,

had it not misappropriated Qorvo's trade secrets this development process would have not only

taken a longer period of time, but Akoustis also would have incurred significantly more

expenses. For instance, [my conclusion] does not account for the considerable actual expenses

that would have been incurred in research and development in order to bring a product such as

this one to market." *Id.* Accordingly, my time value of money analysis is a conservative estimate

because I did not consider actual expenses that Akoustis would have incurred in, for example,

research and development had it not misappropriated Qorvo's trade secrets.

### III.    SYSTEMATIC EMPLOYEE POACHING DAMAGES

21.    Additionally, Qorvo asked me to review documents produced in this matter to

assess the costs to Qorvo from Akoustis's "systematic poaching of [Qorvo] employees and

confidential information." Ex. A at 41. I understand "Akoustis recruited Ex-Qorvo employees for

positions with largely overlapping responsibilities to their positions at Qorvo, focusing on

employees with the specialized knowledge of Qorvo's confidential and proprietary

information . . . that Akoustis needed at that particular stage of its development." *Id.* at 46.

22.    To determine costs to Qorvo, I identified Ex-Qorvo employees poached by

Akoustis. Ex. A at 49. More specifically, "I reviewed historical employee directory information

produced by Akoustis" and determined that "Akoustis has hired at least 43 employees that

formerly worked at Qorvo" or one of its predecessor companies. *Id.*

23.    I ultimately narrowed the list to 19 employees based on my further analysis of

Akoustis' historical employee directory and my discussions with Qorvo's Human Resources

Connect Analysts (Leslie Stoddard). Ex. A at 49-50. These employees are: (i) employees who

"appear to have gone directly from positions at Qorvo to positions at Akoustis with no gaps in

their employment history" and (ii) employees who have not been "either terminated from their

positions at Qorvo or are otherwise not applicable for this analysis." *Id.*

███████████████████████████████████████████

24.      Last, to assess damages for Akoustis's "systematic poaching of [Qorvo] employees and confidential information[,]" I compared the positions of each of these 19 "employees at Qorvo to the positions identified in the ██████ valuation." Ex. A at 41, 50. The ██████ valuation determined values of "RFMi's [(now Akoustis)] 'assembled workforce using the replacement cost method under the cost approach'" to estimate the "'cost to recreate the workforce.'" *Id.* at 48. In particular, this workforce consisted of five categories of employees in the RF industry: general managers, project managers, sales managers, senior product engineers, and coordinators. *Id.* at 48-49. This study was particularly relevant given the purpose of it *was to value employees acquired by Akoustis*. After the comparison, I concluded total estimated damages from systematic employee poaching to Qorvo as ██████. *Id.* at 50.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 26, 2024.

_____
Melissa A. Bennis

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2024, I caused the foregoing to be electronically filed

with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on

February 26, 2024, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                              *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                                 *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*


*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)