# Exhibits QQQ-SSS
# (Redacted in Their Entirety)

# Exhibit TTT



# Transcript of Ya Annia Shen

**Date:** July 12, 2023
**Case:** Qorvo, Inc. -v- Akoustis Technologies, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

Transcript of Ya Annia Shen
Conducted on July 12, 2023

1 (1 to 4)

### Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                       For the
 3                 DISTRICT OF DELAWARE
 4
 5   QORVO, INC.,
 6        Plaintiff,            Case No.
 7   V.                         1:21-cv-01417-JPM
 8   AKOUSTIS TECHNOLOGIES, INC.
 9   And AKOUSTIS,
10        Defendants.
11   _____/
12
13
14
15          The deposition of YA ANNIA SHEN, taken
16   at the instance of the Defendants pursuant to
17   stipulations contained herein; the reading and
18   signing of the deposition reserved before Tamika
19   Burnette, Certified Court Reporter, at 9:00 a.m., on
20   July 12, 2023, at 10130 Perimeter Parkway, Suite 200,
21   Charlotte, North Carolina  28216.
22
23
24
25
```

### Page 2

```
 1                     APPEARANCE PAGE
 2
 3   ON BEHALF OF THE PLAINTIFF:
 4   SHEPPARD MULLIN RICHTER & HAMPTON, LLP
 5   BY:  Mr. Jonathan DeFosse, Esquire
 6        2099 Pennsylvania Avenue, Northwest
 7        Suite 100
 8        Washington, DC  20006
 9        (202) 747-1900
10        Jdefosse@sheppardmullin.com
11
12   SHEPPARD MULLIN RICHTER & HAMPTON, LLP
13   BY:  Mr. Eric K. Gill, Esquire
14        12275 El Camino Real
15        Suite 200
16        San Diego, California  92130
17        (858) 720-8900
18        Egill@sheppardmullin.com
19
```

### Page 3

```
 1               APPEARANCE PAGE CONTINUED
 2
 3   ON BEHALF OF THE DEFENDANT:
 4   PILLSBURY WINTHROP SHAW PITTMAN, LLP
 5   BY:  Mr. David A. Jakopin, Esquire
 6        Mr. Brian Cordova, Esquire
 7        2550 Hanover Street
 8        Palo Alto, California  94304
 9        (650) 233-4790
10        David.jakopin@pillsburylaw.com
11
12   PILLSBURY WINTHROP SHAW PITTMAN, LLP
13   BY:  Ms. Theresa A. Roozen, Esquire
14        1200 Seventeenth Street, Northwest
15        Washington, DC  20036
16        (202) 663-8185
17        Theresa.roozen@pillsburylaw.com
18
19   ON BEHALF OF THE WITNESS:
20   BY:  Mr. Joshua R. Van Kampen, Esquire
21        315 East Worthington Avenue
22        Charlotte, NC  28203
23        (704) 749-2638
24        josh@vankampenlaw.com
     ALSO PRESENT:
25   Melody Adair, Videographer
```

### Page 4

```
 1
 2                      INDEX PAGE
 3
 4   WITNESS                                PAGE
 5   YA ANNIA SHEN
 6
 7           EXAMINATION BY MR. GILL          7
 8           EXAMINATION BY MR. JAKOPIN       93
 9           EXAMINATION BY MR. GILL          148
10           EXAMINATION BY MY. JAKOPIN       152
11
12                       EXHIBITS
13
14   EXHIBIT           DESCRIPTION          PAGE
15   EXHIBIT NO. 53    SUBPOENA             10
16   EXHIBIT NO. 54    COMPLAINT            15
17   EXHIBIT NO. 55    AMENDED COMPLAINT    18
18   EXHIBIT NO. 56    E-MAIL CHAIN         65
19   EXHIBIT NO. 57    E-MAIL CHAIN         72
20   EXHIBIT NO. 58    E-MAIL CHAIN         79
21   EXHIBIT NO. 59    E-MAIL CHAIN         81
22   EXHIBIT NO. 60    E-MAIL CHAIN         91
23   EXHIBIT NO. 61    DISSERTATION         94
24   EXHIBIT NO. 62    CONFIDENTIAL INQUIRY 95
25   EXHIBIT NO. 63    RESUME               96
```

**Page 5**

```
            INDEX PAGE CONTINUED:

EXHIBIT           DESCRIPTION              PAGE
EXHIBIT NO. 64    QORVO583-586             103
EXHIBIT NO. 65    ARTICLE                  107
EXHIBIT NO. 66    QORVO24031-24034         105
EXHIBIT NO. 67    BATES27688-27689         105
EXHIBIT NO. 68    PATENT APPLICATION       108
EXHIBIT NO. 69    U.S. PATENT 11689186     108
EXHIBIT NO. 70    E-MAIL CHAIN             109
EXHIBIT NO. 71    AKOUSTIS439096           132
EXHIBIT NO. 72    AKOUSTIS439118           132
EXHIBIT NO. 73    AKOUSTIS439085           133
EXHIBIT NO. 74    AKOUSTIS137448           139
EXHIBIT NO. 75    E-MAIL CHAIN             143
```

**Page 6**

Wednesday, July 12, 2023
9:00 a.m.

* * *

THE VIDEOGRAPHER: Stand by for the videographer read on.

This begins Media One in the videotaped deposition of Ya Annia Shen, in the Matter of Qorvo, Incorporated versus Akoustis Technologies, Incorporated, and Akoustis, Incorporated, in the United States District Court District of Delaware. Case Number 1:21-CV-01417-JPM.

Today's date is July 12, 2023. The exact time on the video monitor is 9:09 a.m. The videographer is Melody Adair, representing Planet Depos. This deposition is taking place at Regus Business Solutions.

Will counsel please voice-identify themselves and state whom they represent.

MR. VAN KAMPEN: I'm Joshua Van Kampen. I'm representing a Annia Shen.

MR. GILL: Eric Gill with Sheppard Mullin, representing Qorvo and with me is Jonathan DeFosse and with Sheppard Mullin.

MR. JAKOPIN: And David Jakopin

**Page 7**

representing Akoustis and with me is Theresa Roozen, one of my colleagues.

THE VIDEOGRAPHER: The court reporter today is Tamika Burnette, representing Planet Depos.

I will swear in the witness and then we may proceed.

(Witness sworn.)

YA ANNIA SHEN,
After having been first duly sworn to tell the truth, was examined and testified as follows:

EXAMINATION
BY MR. GILL:

Q. Good morning, Ms. Shen.
A. Good morning.
Q. My name is Eric Gill. I'm one of the attorneys representing Qorvo in the lawsuit against Akoustis, and I'm here to take your deposition today, okay?
A. Okay.
Q. Would you please state your full name for the record?
A. Annia Shen and my legal name is Ya Shen.
Q. Do you understand that you're under oath today?

**Page 8**

A. Yes I do.
Q. And that's the same oath you would take if you were testifying in court. Do you understand that?
A. Yes, I do.
Q. Have you had any drugs or the alcohol in the last 24 hours that will prevent you from recalling facts and testifying accurately today?
A. No.
Q. Any medication that would prevent you from recalling and testifying today?
A. No.
Q. Any other reason your deposition should not go forward today?
A. I cannot think of any.
Q. Have you been deposed before?
A. Yes.
Q. How many times?
A. One time.
Q. And was that in the case that you filed against Akoustis?
A. Yes, it was.
Q. What was the subject of that case?
A. It was a discrimination about gender, race, and national origin.

**17**

1   A.   I did not, for the past few weeks.  We did
2  do a prep session, maybe a couple months ago, because
3  original -- originally the deposition was scheduled a
4  little earlier.
5   Q.   When did you first learn about this
6  lawsuit?
7   A.   Probably -- maybe a year ago.  It's hard
8  to pinpoint when.  Like, I heard of it because my
9  husband, Dave, he told me about it.
10   Q.   That's Dave Hodge?
11   A.   Right.
12   Q.   Where were you working at the time?
13   A.   I should have started at Skyworks, where
14 is, like, I'm currently working.
15   Q.   Who -- who else have you talked to about
16 the lawsuit other than Mr. Hodge?
17   A.   You mean the Qorvo against Akoustis
18 lawsuit?
19   Q.   Yes.
20   A.   No. I can't think of anyone else.
21   Q.   What's your understanding of the Qorvo
22 versus Akoustis lawsuit, generally?
23   A.   Qorvo is trying to gain -- suing -- trying
24 to sue Akoustis about their poaching of employees,
25 stealing IP.  I think that's the main thing I

**18**

1  understand about the lawsuit.
2   Q.   Okay.  Have you reviewed any of the
3  filings in the case?
4   A.   No.
5   Q.   What was your reaction when you learned
6  about this lawsuit?
7       MR. JAKOPIN:  Objection.  Not relevant.
8       THE WITNESS:  Should I answer?
9       MR. VAN KAMPEN:  Yes, you can answer.  Any
10 time they object, it's just for the record, so then
11 you should just continue to focus on the question and
12 answer the question.
13       THE WITNESS:  Okay.  Can you ask that
14 question again?
15   Q.   BY MR. GILL:  Yes.  What was your reaction
16 when you learned about this lawsuit?
17   A.   Since that was the same time I still had a
18 case against Akoustis, I was thinking, wow, they are
19 going to be busy.
20       (Exhibit 55 marked for identification.)
21   Q.   BY MR. GILL:  I'm handing you what's been
22 marked as Exhibit 55, and this is the second amended
23 complaint of Qorvo against Akoustis?
24   A.   (Nodding yes.)
25   Q.   So you haven't seen this document before;

**19**

1  is that correct?
2   A.   I haven't personally seen this document.
3  It may have -- it may be in the stack that was sent
4  to my house, but I -- honestly, I didn't spend time
5  to read through.  That's why I can't tell if it is or
6  not the part of the stack I have in my house.
7   Q.   Could you turn to page 16, please?
8   A.   Okay.
9   Q.   And I'd like you to review paragraph 62,
10 and just let me know when you're done reading that.
11   A.   Okay.
12       (Witness examining document.)
13       I'm done.
14   Q.   So these are Qorvo's allegations against
15 Akoustis?
16   A.   Yes.
17   Q.   Are you aware of any information that
18 supports these allegations?
19   A.   Only the part that I was told by my
20 husband that -- like, when he was trying to clean up,
21 go through some of the old documents and he found
22 some -- a couple of -- maybe three of the
23 presentation printouts that's marked "Qorvo
24 proprietary," something like that, and I was told
25 that that was given out by Mr. Rowland Holden.

**20**

1   Q.   Anything else?
2   A.   I think when, like when we talked about
3  those documents, and he also mentioned Mr. David Dyer
4  also got some from Mr. Rowland Holden.  That's like
5  similar in nature.
6   Q.   Anything from your time working at
7  Akoustis?
8   A.   I personally did not get anything from Mr.
9  Rowland Holden or Jeff Shealy directly, but I do
10 remember this one instance that -- what's his name.
11 I think his name is JB, he was hired after me.  He
12 was -- his job was a trim or process engineer in
13 Rochester, the FAB, and one time he sent out a --
14 like a graph about Qorvo's process parameters, and I
15 specifically remember that instance, then I just,
16 like, tell him, "you should not be doing that" and
17 that we should all delete the e-mail and that was it.
18   Q.   Is that JB Kwan?
19   A.   I think so. I don't remember his last
20 name, although I worked with him when I was at Qorvo.
21 I know of him.  I never met him because he was
22 located in Texas FAB, back then.
23   Q.   And when you say you told him he should
24 not be doing that and to delete, et cetera, was that
25 via e-mail that you told him that?

21

1  A.  I think so. I don't remember a direct
2  conversation through Teams or whatever, the chat
3  messages from before, but I -- I just remember, like,
4  this is kind of like their secret sauce. Like, we
5  shouldn't be passing that around.
6  Q.  You mean Qorvo's secret sauce?
7  A.  Right.
8  Q.  Why did you think it was Qorvo's -- why do
9  you think that information was Qorvo's important,
10 confidential information?
11 A.  It may not be that extremely important,
12 but that is like someone's process that -- that
13 shows, like, what is your --
14 and they wouldn't put that on their
15 website and share it with competitors.
16     Basically, if we can repeat that, then the
17 process will be similar.
18 Q.  The process that Akoustis would use to
19 trim its filters?
20 A.  Yes. That -- that's a -- how can I
21 describe it? It's like if someone's doing something,
22 and if you want to copy someone's, that -- like, the
23 process and if you get exact same -- like, say
24 cooking, the flour and water ratio and all the
25 ingredients, and the timing of it, and even the

22

1  container you should be using, then you should be
2  able to bake the exact same bread like the other
3  person.
4      So if the other person doesn't want you to
5  bake the same bread, they just don't tell you, like,
6  the parameters. Does that make sense?
7  Q.  Yes. So the information that JB provided,
8  was something that Akoustis could use to do the same
9  thing that Qorvo was doing?
10 A.  Not exactly. So this is not a recipe, but
11 it signifies, like, when you do that, if you reach
12 these parameters, that that means you are using the
13 same recipe. Like -- like when you bake the bread
14 and at ten-minutes mark, 20-minutes mark, 30-minutes
15 mark, what that bread should look like. Then if you
16 can repeat a ten-minute mark, 20-minutes mark,
17 30-minutes mark, how the bread should look like, then
18 it'll guarantee, like, you can break the same bread.
19 Q.  So maybe we can talk about this in terms
20 of Akoustis's products instead of bread and flour and
21 also, what I want to understand is if Akoustis could
22 use that information to its benefit, in terms of
23 developing and producing bulk acoustic wave filters?
24     MR. JAKOPIN: Objection, speculation.
25 Vague and ambiguous question.

23

1  BY MR. GILL: Did you understand the question?
2  A.  I think it just signifies, like, if the
3  equipment Akoustis is using is producing the same
4  results as what a metro company is producing. It's
5  not to the extent that, like, so significant as a
6  product because a product involves a lot of things,
7  like, the process to the design, even the packaging.
8  Like, it's a lot of work in there. So whatever JB is
9  showing us is just, like, very, very small portion of
10 that. Just like one of the process if Akoustis is
11 doing it, the same as Qorvo or not. And maybe
12 Akoustis can find a different way of doing it, and it
13 can also make the product -- I mean the process a
14 success. But it's kind of like just trying to repeat
15 what Qorvo's process is and that is not the whole
16 process. That is like a one thing, which is
17 trimming.
18 Q.  So it could be part of the process that
19 Akoustis would use to develop a bulk acoustic wave
20 filter?
21     MR. JAKOPIN: Objection. Foundation.
22 Speculation. Vague and ambiguous.
23     THE WITNESS: I guess it's not like so
24 much the whole process. It's just like if the
25 process result is similar to what Qorvo has.

24

1  BY MR. GILL: Was it -- when did JB send this
2  information?
3  A.  Probably not too long after he started.
4  Maybe a few months after I started, then but for him,
5  maybe a few weeks after he started.
6  Q.  Did he join Akoustis from Qorvo?
7  A.  That was my understanding.
8  Q.  And then when he sent this information,
9  was it a document, was it an attachment to an e-mail?
10 A.  It's just a picture in the e-mail, if I
11 remember correctly. It can also be an attachment in
12 the e-mail, but I don't remember which one. But I do
13 see that picture, like a car-scale picture
14       in there because that is something when I
15 was working at Qorvo, designers would have to check
16 if something goes wrong, then when we're doing the
17 troubleshooting process, we would check
18         , like to see if everything looks
19 correct and just troubleshooting process.
20 Q.  Okay. Is that something you also did or
21 the designers also did at Akoustis?
22     MR. JAKOPIN: Objection.
23     THE WITNESS: Not really, because Akoustis
24 does not have a complete system like Qorvo. So, if
25 there's no direct access to that data, designers

### 153

1  we showed today?
2      A.  Correct.
3      Q.  Which one was that?
4      A.  That was the IEDM paper.  Exhibit 67 and
5  Exhibit 65.
6      Q.  And so on Exhibit 65, you'll see in
7  Figure 2, is that a picture of the actual filter on
8  the board?
9      A.  (Witness examining document.)  Correct.
10         MR. JAKOPIN:  Thank you.  I have no
11 further questions.
12         MR. GILL:  No further questions.
13         THE VIDEOGRAPHER:  Stand by.  This marks
14 the end of the deposition of Ya Annia Shen.  We are
15 going off the record at 3:25 p.m.
16         THE COURT REPORTER:  Mr. Gill, do you need
17 the transcript?
18         MR. GILL:  Do I, yes.
19         THE COURT REPORTER:  Okay.  And how about
20 you, Mr. Jakopin?
21         MR. JAKOPIN:  Yes, please.
22         THE COURT REPORTER:  And how about you,
23 Mr. Cordova?
24         MR. CORDOVA:  No.  We're good.
25         (Off the record.)

### 154

1         (Whereupon, proceedings were concluded at
2  3:25 p.m.)
3            -   -   -
4
5         CERTIFICATE OF NOTARY PUBLIC
6      I, Melody Adair, Notary Public,
7  do hereby certify that the aforementioned witness
8  was sworn before me at the aforemention location,
9  and that I am neither counsel for, related to, nor
10 employed by any of the parties to this case and
11 have no interest, financial or otherwise, in its
12 outcome.
13        IN WITNESS WHEREOF, I have hereunto set
14 my hand and affixed my notarial seal this 26th day,
15 of July, 2023.
16
17
18 My Commission Expires: May 16, 2028
19
20
21 _____
22 Melody Adair, Notary Public
23 for the State of North Carolina
24
25

### 155

1         CERTIFICATE OF REPORTER
2
3         STATE OF CALIFORNIA )
4                             )
5         COUNTY OF LOS ANGELES)
6
7         I, TAMIKA M. BURNETTE, hereby certify
8  that the foregoing proceedings were taken before me
9  at the time and place therein designated; that a
10 review of the transcript was requested, and that the
11 foregoing pages numbered 1 through 153 are a true and
12 correct record of the aforesaid proceedings.
13        I further certify that I am not a
14 relative, employee, attorney or counsel of any of the
15 parties, nor am I a relative or employee of any of
16 the parties' attorneys or counsel connected with the
17 action, nor am I financially interested in the
18 action.           *Tamika Burnette*
19
20         DATED this 26th day of July, 2023
21         _____
22         TAMIKA M. BURNETTE.
23         CERTIFIED COURT REPORTER, RPR, CSR
24
25

### 156

1         COURT REPORTER DISCLOSURE
2         Pursuant to Article 10.B of the Rules
3  and Regulations of the Board of Court Reporting of
4  the Judicial Council of California which states:
5  "Each court reporter shall tender a disclosure form
6  at the time of the taking of the deposition stating
7  the arrangements made for the reporting services of
8  the certified court reporter, by the court reporter's
9  employer, or the referral source for the deposition,
10 with any party to the litigation, counsel to the
11 parties or other entity.  Such form shall be attached
12 to the deposition transcript."  I make the following
13 disclosure:
14        I am a California Certified Court
15 Reporter.  I am here as a representative of Planet
16 Depos.  Planet Depos contacted to provide court
17 reporting services for the deposition.  Planet Depos
18 will not be taking this deposition under any contract
19 that is prohibited by O.C.G.A. 91128(c).
20        Planet Depos has no contract/agreement
21 to provide court reporting services with any party to
22 the case, any counsel in the case, or any reporter or
23 reporting agency from whom a referral might have been
24 made to cover this deposition.  Planet Depos will
25 charge its usual and customary rates to all parties

**157**

1  in the case, and a financial discount will not be
2  given to any party to this litigation.
3         Tamika M. Burnette, RPR, CSR14502

**158**

              INSTRUCTIONS TO WITNESS

3         Please read your deposition over
4  carefully and make any necessary corrections. You
5  should state the reason the in the appropriate space
6  on the errata sheet for any corrections that are
7  made.
8         After doing so, please sign the
9  errata sheet and date it. You are signing same
10 subject to the changes you have noted on the errata
11 sheet, which will be attached to your deposition.
12        It is imperative that you return the
13 original errata sheet to the deposing attorney within
14 thirty (30) days receipt of the deposition transcript
15 by you. If you fail to do so, the deposition
16 transcript may be deemed to be accurate and may be
17 used in court.

**159**

                    E R R A T A

     PAGE    LINE        CHANGE
     _____   _____    _____
     Reason for
     Change:_____
     _____
     Reason for
     Change:_____
     _____
     Reason for
     Change:_____
     _____
     Reason for
     Change:_____
     _____
     Reason for
     Change:_____
     _____

**160**

           ACKNOWLEDGEMENT OF DEPONENT

       I, _____, do hereby
certify that I have read the foregoing pages
_____ to _____ and that the same is a correct
transcript of the answers given by me to the
questions therein propounded, except for corrections
or changes in form or substances, if any, noted in
the attached Errata Sheet.

         _____
     Date           Signature

     Subscribed and sworn before me this
     _____ day of_____, 2023.

     My Commission
Expires:_____
_____Notary Public.

# Exhibit UUU
# (Redacted in Its Entirety)

# Exhibit VVV





# Transcript of Robert Charles Dry

**Date:** August 30, 2023
**Case:** Qorvo, Inc. -v- Akoustis Technologies, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of Robert Charles Dry
Conducted on August 30, 2023

1 (1 to 4)

```
                                    1
 1      IN THE UNITED STATES DISTRICT COURT
 2          FOR THE DISTRICT OF DELAWARE
 3
 4   - - - - - - - - - - - - - - - - - -x
 5   QORVO, INC.,                        :
 6              Plaintiff,               :
 7      vs.                              : C.A. No.
 8   AKOUSTIS TECHNOLOGIES, INC., and    : 21-1417 JPM
 9   AKOUSTIS, INC.,                     :
10              Defendants.              :
11   - - - - - - - - - - - - - - - - - -x
12
13
14
15
16
17      VIDEOTAPED DEPOSITION OF ROBERT CHARLES DRY
18              Charlotte, North Carolina
19            Wednesday, August 30th, 2023
20                    9:06 a.m.
21
22
23   Job No.: 504313
24   Pages: 1 - 248
25   Reported by:  Amy A. Brauser, RPR, RMR, CRR
```

```
                                    2
 1      Deposition of ROBERT CHARLES DRY, held at the
 2   office of:
 3
 4
 5
 6        At Regus/Charlotte - University Executive Park
 7        301 McCullough Drive, Suite 400
 8        Charlotte, North Carolina 28262
 9        704-090-2700
10
11
12
13      Pursuant to agreement, before Amy A. Brauser, RPR
14   RMR CRR, Notary Public in and for the State of North
15   Carolina.
```

```
                                    3
 1              A P P E A R A N C E S
 2   ON BEHALF OF THE PLAINTIFF QORVO, INC.:
 3        JONATHAN R. DEFOSSE, Esquire
 4        ROBERT M. MASTERS, Esquire
 5        Sheppard, Mullin, Richter & Hampton LLP
 6        2099 Pennsylvania Avenue, NW, Suite 100
 7        Washington, D.C. 20006
 8        (202) 747-1900
 9        jdefosse@sheppardmullin.com
10        rmasters@sheppardmullin.com
```

```
                                    4
 1   ON BEHALF OF THE DEFENDANT AKOUSTIS TECHNOLOGIES,
 2   INC. and AKOUSTIS, INC.:
 3        DIANNE L. SWEENEY, Esquire
 4        DAVID A. JAKOPIN, Esquire
 5        Pillsbury Winthrop Shaw Pittman, LLP
 6        2550 Hanover Street
 7        Palo Alto, California 94304
 8        (650) 233-4046
 9        dianne@pillsburylaw.com
10        david.jakopin@pillsburylaw.com
11          (and)
12        THERESA ROOZEN, Esquire
13        Pillsbury Winthrop Shaw Pittman, LLP
14        1200 Seventeenth Street, NW
15        Washington, D.C. 20036
16        (202) 663-8185
17        theresa.roozen@pillsburylaw.com
18
19
20   ALSO PRESENT:
21        Melody Adair, Video Technician
```

**Page 9**

```
                INDEX OF EXHIBITS  (con't)
Exhibit 258   E-mail, Bates AKTS_00144328                   235
Exhibit 259   E-mail string, Bates                          236
              AKTS_00399447 to 454
Exhibit 260   Record produced as native file,               236
              Bates AKTS_00399455
Exhibit 261   E-mail string, Bates                          238
              AKTS_00277908
Exhibit 262   Laminate Rules, Bates                         238
              AKTS_00277909 to 910
Exhibit 263   Laminate & Package Design                     238
              Guidelines, August 2018, Bates
              AKTS_00277911 to 915
Exhibit 264   E-mail string, Bates                          240
              AKTS_00362238 to 242
Exhibit 265   E-mail string, Bates                          241
              AKTS_00209708
Exhibit 266   Packaging Options, October 2015,              241
              Bates AKTS_00209709 to 30
Exhibit 267   E-mail string, Bates                          242
              AKTS_00269926 to 928
```

**Page 10**

P R O C E E D I N G S

THE VIDEOGRAPHER: Here begins Media Number 1 in the videotaped deposition of Robert Dry in the matter of Qorvo, Inc. versus Akoustis Technologies, Inc., et al., in the United States District Court for the District of Delaware, Case Number 1:21-cv-01417-JPM. Today's date is August 30th, 2023. The time on the video monitor is 9:06 a.m.

The videographer for today is Melody Adair representing Planet Depos.

Would counsel, please, voice identify themselves and state whom they represent.

MR. DeFOSSE: Jonathan DeFosse on behalf of Qorvo, Inc. Today with me is my colleague, Robert Masters.

MS. SWEENEY: Dianne Sweeney for Akoustis, and with me are colleagues David Jakopin and Theresa Roozen.

THE VIDEOGRAPHER: Court reporter today is Amy Brauser representing Planet Depos. The witness will now be sworn.

ROBERT CHARLES DRY, having been first duly sworn to tell the truth, was

**Page 11**

examined and testified as follows:

EXAMINATION

BY MR. DeFOSSE:

Q. Good morning, Mr. Dry.

A. Good morning.

Q. As you heard, my name is John DeFosse. I'm one of the attorneys representing Qorvo in this matter.

You understand that you are here to testify today in a litigation that was brought by Qorvo against Akoustis, Inc. and Akoustis Technologies, Inc.?

A. I do.

Q. You understand that your testimony today is going to be under oath?

A. I do.

Q. And that's the same oath that you would take if you were in a court of law testifying in front of a jury?

A. I do.

Q. Have you ever been deposed before?

A. No.

Q. Okay. Could you state your full name for the record?

A. Yes, Robert Charles Dry.

**Page 12**

Q. And what's your current address?

[REDACTED]

Q. Okay. As you can see, we have a court reporter with us today. She's going to be writing down everything we say. So there's a few rules that will help us --

A. Okay.

Q. -- make this go smooth.

The first is, if you could, please, wait for me to finish my questions before you answer.

A. Okay.

Q. And it would also be great if you could pause briefly after I ask the question to give your counsel a chance to interpose objections.

A. Okay.

Q. If -- if an objection is interposed, you can go ahead and answer the question unless Ms. Sweeney instructs you not to answer.

A. Okay.

Q. If I ask you a question today that you don't understand, I would ask you to, please, ask me to clarify that question. Okay?

A. Okay.

### 153

1 Qorvo Final Visual Quality Inspection document?
2   A. Correct.
3   Q. In your message to the group that you
4 e-mailed, you said: (Reading)
5       Attached is a doc that I have,
6    and for good reasons have edited out
7    former references.
8   A. Yeah.
9   Q. What did you mean by "edited out former
10 references"?
11  A. I've edited out references to Qorvo
12 because I didn't want to be showing a document
13 around that we would be discussing as an example
14 that had Qorvo written on it.
15  Q. And you started by saying, "This is a
16 document that I have."
17      Does that refresh you at all as to how
18 you obtained the Qorvo document that's been marked
19 as Exhibit 230?
20  A. No, it doesn't.
21 (Exhibit Number 231 was marked for identification.)
22 (Exhibit Number 232 was marked for identification.)
23 BY MR. DeFOSSE:
24  Q. Mr. Dry, I've handed you what's been
25 marked as Exhibits 231 and 232.

### 154

1      Exhibit 231 is an e-mail that was
2 produced with the production number AKTS_00144764
3 on the first page, and Exhibit 232 was produced to
4 us as an attachment to Exhibit 231. Exhibit 232
5 has the production number AKTS_00144766 on the
6 first page.
7      Do you recognize Exhibits 231 and 232?
8   A. I don't remember 231 is an e-mail, but
9 232 again appears to be the same as 230 and 228. I
10 can check through that unless you agree.
11  Q. Please do.
12      (Witness reviews document.)
13  A. Yes. So those documents are identical.
14 Document 232, 230, and 228 are all identical.
15  Q. Okay. And as result, you would agree
16 that Exhibit 232 is a Qorvo document?
17  A. Yes.
18  Q. And as with Exhibit 230 and 228, you
19 didn't have authorization to share this Qorvo
20 document on February 11th, 2020 with the folks who
21 you had e-mailed it to?
22  A. Correct, I did not.
23  Q. Okay. I'd like to start with your
24 e-mail which has been marked as Exhibit 231.
25      You e-mailed Jerry Gray, Brook Hosse,

### 155

1 Joel Morgan, Mary Winters, and Ken Fallon. Do you
2 see that?
3   A. I do.
4   Q. Who is Jerry Gray?
5   A. Jerry is project manager.
6   Q. Why did you include Mr. Gray on this
7 e-mail?
8   A. He was heading up the project team at
9 the time, and related to wafer inspection, it was
10 important that I felt -- I assume I felt he was
11 involved. I mean, projects were the people
12 shipping wafers for NPI builds, and so it seemed
13 relevant to me that he was part of that.
14  Q. You said "NPI builds," could you --
15  A. Yeah, so as we talked about, before a
16 product is released, we'd have to do
17 production-level builds and NPI or development
18 builds, so we would be shipping wafers to the
19 assembly houses to build those products. And if
20 there was issues with those wafers, then there
21 would be delays, and the project manager is held
22 accountable for timelines. So Jerry would be --
23 have a vested interest in ensuring that the
24 materials that were being shipped were good.
25  Q. Okay. The subject of your e-mail in

### 156

1 Exhibit 231 was "Review of proto wafer inspection
2 and disposition needs"?
3   A. Yeah.
4   Q. What did you mean?
5   A. So as explained earlier, the review of
6 photo -- proto wafers is prototype wafers, which
7 the -- Jerry would have been working with and we
8 would have been working with. And inspection is
9 the inspection of those wafers, and the disposition
10 is how we approve to move forward when we find an
11 issue.
12  Q. Okay. And if you look at the body of
13 your e-mail --
14  A. Yeah.
15  Q. -- in Exhibit 231. First line, you
16 said: (Reading)
17      Unfortunately, we were not
18    able to meet last night to discuss and
19    so I've rescheduled the call for
20    tomorrow.
21      Do you know what meeting you're
22 referring to there?
23  A. I do not.
24  Q. Okay. Do you recall having a series of
25 meetings to discuss inspection protocols?

245

1   A. Yes, yeah.
2   Q. Do those three generations of products
3   have any correlation to the packaging road map?
4   A. Not in this, no.
5   Q. Not in this document, but maybe taking
6   a step back?
7   A. Yes, yes. So I mean, we got laminate
8   module air cavity, which was what was there when I
9   was -- it says "current."
10      Under development, wafer-level CSP,
11  which was under development before I came to the
12  company, which is the gen 3.
13      LTCC, which we've never developed.
14  Wafer cap and mold, which is part of wafer-level
15  CSP. Sheet molding is something we have used for
16  our GGI. And glass is something we haven't used.
17  Q. Apologies for my ignorance.
18  A. No.
19  Q. GGI, is that a form of packaging?
20  A. It's a generic term. Actually, it's
21  not -- GGI as a term is not packaging. GGI is just
22  gold-gold interconnect. It's a method of attaching
23  a dye to a base.
24  Q. And could you use different kinds of
25  packaging with GGI?

246

1   A. Yes.
2   Q. Okay. What kind of packaging is
3   Akoustis using with its second generation of GGI
4   product parts?
5   A. We're using laminate and ceramic with
6   sheet mold.
7   Q. Okay. And wafer-level CSP does refer
8   to a type of packaging?
9   A. It does, but there is many methods of
10  creating wafer-level CSP.
11  Q. Okay. And what method is Akoustis
12  using to create wafer-level CSP for its third
13  generation products?
14  A. I'm hesitant because it's intellectual
15  property here.
16
17
18
19  Q. The company that's            is
20
21  A. Yes. And we've also used a company in
22  the US when we were developing called
23
24  Q. Did you work on any wafer-level CSP
25  packaging while you were at Qorvo?

247

1   A. No.
2       MR. DeFOSSE: All right. Can we go off
3   the record?
4       THE VIDEOGRAPHER: Stand by. We are
5   going off the record. The time is 4:19 p.m.
6       (Recess taken.)
7       THE VIDEOGRAPHER: We are back on
8   record. The time is 4:21 p.m.
9       MR. DeFOSSE: Mr. Dry, thank you for
10  your time today. I don't have further
11  questions.
12      MS. SWEENEY: Thank you. Mr. Dry, we
13  appreciate your time.
14      THE WITNESS: Thank you very much,
15  indeed.
16      MS. SWEENEY: Your deposition is over.
17      THE WITNESS: Do I --
18      MS. SWEENEY: We'll allow him to go off
19  the record.
20      THE VIDEOGRAPHER: Stand by. This
21  marks the end of the deposition of
22  Robert Dry. We are going off the record at
23  4:22 p.m.
24      (Deposition concluded at 4:22 p.m.)
25

248

1   STATE OF NORTH CAROLINA
2   COUNTY OF DAVIDSON
3
4          C E R T I F I C A T E
5       I, Amy A. Brauser, RPR RMR CRR, the officer
6   before whom the foregoing deposition was taken, do
7   hereby certify that the witness was duly sworn by me
8   prior to the taking of the foregoing deposition; that
9   the testimony of said witness was taken by me to the
10  best of my ability and thereafter reduced to typewriting
11  under my direction; that I am neither counsel for,
12  related to, nor employed by any of the parties to the
13  action in which this deposition was taken, and further
14  that I am not a relative or employee of any attorney or
15  counsel employed by the parties thereto, nor financially
16  or otherwise interest in the outcome of the action.
17
18      This is the 13th day of September, 2023.
19
20      _____
21      Amy A. Brauser, RPR RMR CRR
        Notary Public # 20023030055
22
23
24
25