IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC.<br><br>      Plaintiff,<br><br>      v.<br><br>AKOUSTIS TECHNOLOGIES, INC. and<br>AKOUSTIS, INC.<br>      Defendants. | Case No. 21-1417-JPM<br><br>**DEMAND FOR JURY TRIAL**<br><br>**REDACTED - PUBLIC VERSION**<br>Original Filing Date: February 20, 2024<br>Redacted Filing Date: March 8, 2024 |

**DECLARATION OF DR. STANLEY SHANFIELD IN SUPPORT OF QORVO'S OPPOSITION TO AKOUSTIS'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Stanley Shanfield, declare as follows:

1. I am a Distinguished Member of Technical Staff and a Technical Director at Draper Laboratory in Cambridge, Massachusetts. I have been retained by Plaintiff Qorvo, Inc. ("Qorvo") as an independent expert in this matter to assess and provide opinions on certain issues related to the alleged misappropriation of Qorvo's trade secrets and other confidential information by Akoustis, Inc. and Akoustis Technologies, Inc. (collectively, "Akoustis").

2. I make this Declaration based on my personal knowledge, experience, and my professional judgment. I am over 18 years of age and, if called to do so, would testify competently to the matters herein.

3. I have prepared an expert report setting forth my opinions in this matter, which is dated November 21, 2023. I have attached a true and correct copy of that expert report as **Exhibit A** to this declaration. I also prepared a supplemental expert report dated January 22, 2024 that responded to assertions and issues raised in two expert reports that Akoustis served in this matter—the Rebuttal Report of Dr. Robert Darveaux and the Rebuttal Report of Dr. Clark

Nguyen. I have attached a true and correct copy of that supplement to my expert report as **Exhibit B** to this declaration.

4. I expect to testify at trial in this matter regarding the statements and opinions set forth in my expert report (Exhibit A) and the supplement to my expert report (Exhibit B). Those statements and opinions are true and accurate based on my personal knowledge and professional experience. Further, my expert report and supplement accurately reflect the facts and circumstances described therein. If called to testify, I could and would competently testify to the statements and opinions set forth in my expert report and the supplement to that report.

5. As part of my assignment in this matter, Qorvo asked me to review documents located within Akoustis's files and assess whether: (i) those documents contained financial, business, scientific, technical, economic, and/or engineering information that was not generally known or readily ascertainable by persons in the industry; (ii) the information had economic value to Qorvo and its competitors, including Akoustis; and (iii) whether Akoustis knew or should have known, based on standard industry practices, that the information was subject to agreements governing the confidentiality and secrecy of the information. *See* Ex. A, ¶79.

6. Based on the information I reviewed and my discussions with Qorvo's forensic expert (Kevin Faulkner), I determined that Akoustis obtained a very large volume of Qorvo files. I identified 1,523 documents containing Qorvo confidential information, which I listed in Appendix 4 to my expert report. I also understand that Mr. Faulkner identified nearly 500,000 additional Qorvo documents within Akoustis's files, plus 279 GB of data from Qorvo computers that Akoustis obtained. *See* Ex. A, ¶77.

7. Given the vast volume of Qorvo confidential information found at Akoustis, it was not practical for me to review and analyze every individual document that Akoustis

obtained. Instead, I viewed a subset of the Qorvo documents found at Akoustis. I divided and addressed those documents into eight groups of trade secrets:

  (1)  Qorvo business plans for WiFi products;

  (2)  Qorvo BAW filter and resonator designs;

  (3)  Qorvo's trimming methods and procedures;

  (4)  Qorvo's evaluation board design rules and schematics;

  (5)  Qorvo's product development process and testing procedures;

  (6)  Qorvo's systems, processes, and procedures for testing reliability and mean-time-to-failure of parts;

  (7)  Qorvo manufacturing, assembly, and change procedures; and

  (8)  Qorvo product roadmaps and product prototypes.

*See* Ex. A, ¶78.

8. I understand that the above groups of trade secrets correspond to the groups of trade secrets that Qorvo previously identified to Akoustis as part of this litigation.

9. My analysis of the confidential Qorvo documents found at Akoustis can be found in Part V of my expert report. See Ex. A, pp. 27-479. In performing that analysis, I followed the four basic steps:

- First, I identified the confidential documents that were at issue for each group of trade secrets.

- Second, I reviewed the confidential documents and identified the specific information in those documents that was not generally known or readily ascertainable. In identifying this information, I either reproduced images of the information and/or cited to the specific page of a document where the information was disclosed.

- Third, I explained why the information was valuable to Qorvo and its competitors, including Akoustis.

- Forth, I reviewed evidence showing that Akoustis had obtained and used the information that I identified. In reviewing the evidence that Akoustis used the

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

information, I specifically cited to documents and witness testimony supporting my analysis.

10. Following my analysis of the confidential documents found at Akoustis, I analyzed how Akoustis used the information obtained from Qorvo to accelerate its ability to compete in the market. I concluded, based on the eight groups of trade secrets that I analyzed, that Akoustis obtained a 55-month head start advantage. My head start analysis is set forth in Part VI of my report and illustrated graphically by the chart included as Appendix 5. *See* Ex. A, pp. 481-500.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 19, 2024.

*[signature: Stanley Shanfield]*

Stanley Shanfield, Ph.D.

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2024, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                    *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                                       *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

                                                  */s/ Jeremy A. Tigan*

                                                  Jeremy A. Tigan (#5239)