■

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF DELAWARE**

| | |
|---|---|
| QORVO, INC.<br><br>　　　　Plaintiff,<br><br>v.<br><br>AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC.<br><br>　　　　Defendants. | C.A. No. 21-1417 (JPM)<br><br>**JURY TRIAL DEMANDED**<br><br>■ |

## THE AKOUSTIS DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Dated:  February 27, 2024

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

I. **INTRODUCTION AND SUMMARY OF ARGUMENTS**

After a 20-page descriptive recitation that reads more like a closing argument than an opposition to a summary judgment motion, Qorvo still has not and cannot dispute the facts set forth in Akoustis' Motion that are relevant to the arguments Akoustis actually raises. Qorvo's Opposition is most notable not for the arguments it makes, but for the facts it concedes and those that remain undisputed.

As to the trade secret misappropriation claim, Qorvo concedes that:

- Qorvo continues to pursue 104 alleged trade secrets, even after the Court admonished Qorvo "to significantly reduce its trade secret claims," and that Qorvo "is going to have to be more tailored" in its trade secret disclosure.

- Those purported 104 trade secrets are listed in Qorvo's "Identification of Trade Secrets It Currently Expects to Present at Trial"("Trial Disclosure") that (1) was served after the close of discovery, (2) fails to identify the precise contours of the alleged secret, (3) merely points to documents as "examples" of the purported trade secrets, and (4) fails to distinguish each purported trade secret from matters of general knowledge in the trade or of special knowledge to persons skilled in the trade.

- Dr. Shanfield, Qorvo's expert, could not explain how the alleged trade secrets discussed in his expert report "corresponds with this [Trial Disclosure] list."

These undisputed facts demonstrate that Qorvo's Trial Disclosure does not identify the purported trade secrets with the requisite specificity. Qorvo cannot remedy that deficiency by asking the Court and Akoustis to hunt through the 680-page Shanfield Report and hundreds of pages of "example" documents to ferret out those purported secrets – that's what its Trial Disclosure was supposed to do. Simply put, Qorvo "can't identify its trade secrets with specificity,

so it can't get to a jury." *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.,* No. 1:17-cv-8829, 2020 WL 2836778, at *1 (N.D. Ill. May 31, 2020).

Qorvo's advertising claim fairs no better. Qorvo cannot and does not dispute that (1) Akoustis developed, made, and offered to sell filters using single crystal technology; (2) no evidence shows any customer was actually deceived by Akoustis' statements; and (3) Qorvo failed to provide any evidence that the statements influenced any customer decisions to buy Akoustis' products. This is fatal to Count III.

Qorvo's Unfair and Deceptive Trade Practices Act claim also fails. The underlying trade secret misappropriation and false advertising claims are deficient, and Qorvo fails to cite any case law suggesting that the unfair competition count may proceed after the Court grants summary judgment on the underlying claims. Qorvo also fails to proffer any evidence showing extraordinary circumstances related to Akoustis' hiring practices, as Qorvo concedes it must, that could morph an ordinary business dispute into the realm of an unfair or deceptive practice.

Finally, Akoustis is entitled to summary judgment on Count II as to the non-infringing alternatives. Qorvo admits that it received the samples of Akoustis' non-infringing alternatives long *before* the close of discovery. By intentionally omitting those products from its Final Infringement Contentions, they cannot be accused now or in some other proceeding.

## II. IT IS UNDISPUTED THAT QORVO'S TRIAL DISCLOSURE DOES NOT IDENTIFY TRADE SECRETS WITH THE REQUISITE SPECIFICITY

Akoustis' motion concerns Qorvo's deficient Trial Disclosure. Yet, Qorvo's Response Brief commences with a lengthy discussion of Dr. Shanfield's 680-page report. Doing so underscores that its Trial Disclosure fails to include two key pieces of information for each asserted trade secret mandated by this Court and long-established case law: (i) a description of each trade secret's contours with requisite specificity, and (ii) what distinguishes each trade secret from

matters of general knowledge in the trade or of special knowledge to persons skilled in the trade. Qorvo does not dispute that the Trial Disclosure itself does not list out the precise nature of the purported trade secrets. And the Response never even mentions the requirement to distinguish each trade secret from matters of general knowledge. Qorvo instead attempts to combine its Response, the Shanfield Report, and hundreds of pages of exhibits to cure the Trial Disclosure's failings – as if the Trial Disclosure itself does not matter. Qorvo's gambit fails.

"A plaintiff must do more than identify a technology or document allegedly containing a potential trade secret and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]." *Source Prod. & Equip. Co., Inc. v. Schehr,* No. CV 16-17528, 2019 WL 4752058, at *7 (E.D. La. Sept. 30, 2019). Thus, courts routinely dismiss trade secret misappropriation claims when a plaintiff shirks its disclosure obligations and forces the defendant and the Court to hunt through numerus documents to ferret out the alleged trade secrets. *See e.g.*, *X6D Ltd. v. Li-Tek Corps. Co.,* No. CV 10-2327, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012) (Plaintiff does not meet its disclosure obligations when the trade secret disclosure merely "cites and incorporates by reference hundreds of documents that purportedly 'reference or reflect the trade secret information disclosed.'").

Qorvo's cited cases do not absolve it from satisfying that burden. (D.I. 465 at 22-23). *Oakwood* was decided on a motion to dismiss and does not address a plaintiff's disclosure burden after the completion of discovery. The court in *SMH* denied summary judgment when the plaintiff "[i]n its second amended TSI Statement . . . lists 14 purported trade secrets related to its employee-training software program." *SMH Enterprises, L.L.C. v. Krispy Krunchy Foods, L.L.C.,* 2021 WL 4460522, at * 3 (E.D. La. Sept. 29, 2021). The list spells out the precise trade secret at issue:

> "**Trade Secret #1: Layout for video player:** The Spectrum Engine contains "certain audio/video learning and entertainment software permitting end-users to

"play" audio/video content from their desktops and/or mobile devices and future updates or new versions of such software." This trade secret in the Spectrum Engine is comprised of **source code, user interface, user experience,** and an **architectural design** to accomplish such functionality. As shown in the figure below, the video player was designed so that the text panel on the right hand side matched the video being played. The video player is **scalable** across multiple industries (e.g., medical, oil/gas, public safety). In the specific implementation for KKF, it is used to train 17,000 food service workers located in over 2,000 restaurants. Included below are specific examples of the user interface and the enabling **source code** for this trade secret....").

Qorvo's Trial Disclosure comes nowhere close – it merely lists brief descriptions followed by citations to "example" documents. Qorvo therefore tries to refocus the discussion away from its Trial Disclosure, using almost a third of its Response trying to explain the asserted trade secrets with reference to the Shanfield Report and thousands of pages of exhibits. (D.I. 465 (Response Brief) at 7-16). Apart from its hand-waving insistence that the Trial Disclosure is sufficient, Qorvo never explains how or where its *Trial Disclosure* discloses the precise contours of each the alleged secret, distinguishes each purported trade secret from matters of general knowledge, or how the documents cited as "examples" do so, either. Pointing to Dr. Shanfield's report cannot help; he averred that he would have to "speculate about the meaning of each of these lines [or bullet points]" in the Trial Disclosure. (D.I. 447, Ex. 6 at 142:6-16).[1] Moreover, nowhere in the 680 pages of his report does Dr. Shanfield distinguish each purported trade secret from matters of general knowledge. The unsaid thrust of Qorvo's Response argument is that its series of Trade Secret Disclosures culminating in the Trial Disclosure do not really matter – and that Akoustis can glean the precise contours of the alleged trade secrets, and how each purported trade secret is

---

[1] Qorvo tries to counter the deficiency of its Trial Disclosure by arguing that Akoustis' expert opined that the information identified by Dr. Shanfield is "not useful to Akoustis." (D.I. 465. at 24). Akoustis' expert opinions on these matters makes sense because the information discussed in Dr. Shanfield's Report relates to the manufacture of SMR filter technology – a technology wholly distinct from the FBAR technology that Akoustis employs. (*See* D.I. 443 (Akoustis' Mot.) at 1-2).

distinguished from matters of general knowledge in the trade, from the thousands of pages of other material to which Qorvo points. The applicable case law, however, requires otherwise.

The Court should not allow Qorvo to continue this gamesmanship all the way to trial. Courts have granted summary judgment in similar circumstances. *E.g.*, *NEXT Payment Sols., Inc.*, 2020 WL 2836778 (granting summary judgment despite Plaintiff having a list of purported trade secrets accompanied by a brief, because "[i]nstead of offering something specific and concrete, NEXT offers broad descriptions and jargon-laden terminology."). Disposing of this claim on summary judgment is even more appropriate where, as here, the deficiencies have been brought to Plaintiff's attention and it failed to remedy them. *See Arconic Inc. v. Novelis Inc.,* No. CV 17-1434, 2020 WL 7247112, at *16 (W.D. Pa. Dec. 9, 2020) (granting summary judgement because Plaintiff's summary judgment briefing was a "submission[] about the overall merits of Arconic's claims on any other of the elements of the claims," but failed to "identify its claimed trade secrets with reasonable particularity and failed to establish that it disclosed any trade secret to Novelis," even after the Court had ordered plaintiff to do so).

This Court and Akoustis repeatedly expressed concern that proceeding to trial on hundreds of vague "trade secrets" will make the jury trial of this matter a logistical nightmare. Qorvo conceded that "we will have to pare our list to what's manageable for the jury." (D.I. 177 (Tr. Apr. 3, 2023) at 14.) Qorvo's counsel later represented to the Court that "our goal is [to narrow the trade secrets to] no more than 20, and we would be hopeful that it would be less than that as well." (D.I. 288 (Tr. Aug. 18, 2023) at 11.) Now Qorvo waves away any concern that proceeding to trial on 104 vaguely described "trade secrets" will make the jury trial of this matter logistically impossible. Qorvo congratulates itself on reducing the number of asserted trade secrets from 397

- 5 -

down to 104. But just because the first number was ridiculous does not make the new number reasonable.

Qorvo's attempt to shift the burden to Akoustis to "object" to prior trade secret disclosures simply seeks to district attention away from Qorvo's own failure. First, *Qorvo* has the burden of identifying trade secrets with specificity; Akoustis does not have the burden to compel Qorvo's compliance with its burden. *E.g.*, *X6D Ltd.,* 2012 WL 12952726, at *8–9 (rejecting plaintiff's argument that defendant "had ample opportunity to seek discovery of Plaintiffs' asserted trade secrets or file a motion to compel," and explaining that the "critical flaw in this argument is that it fails to recognize that it is Plaintiffs'—not Defendants'—burden to clearly identify their trade secret."). Second, Qorvo's complaint that Akoustis did not raise the issues related to the Trial Disclosure until after the close of discovery is disingenuous; Qorvo did not serve its Trial Disclosure until after the close of discovery (after Akoustis reminded Qorvo of its obligation to do so). (D.I. 447 ¶¶ 6-7.) Third, this Court has reminded Qorvo since at least May 2023 that Qorvo has the burden of identifying its trade secrets with specificity. The Court explicitly noted that if Qorvo "come[s] in with broad and amorphous -- I hope you won't try to do that -- trade secrets, then that's not going to work very well either, right? You're going to have to be more tailored than you are now." (D.I. 222 at 26:8-16.)

The undisputed facts show that Qorvo's Trial Disclosure fails to disclose the asserted trade secrets with the required specificity, including how each is distinguished from matters of general knowledge in the trade. Nor has Qorvo made the hard decisions that any plaintiff faces in choosing how to narrow its case for trial. Establishing admissible proof that each of 104 asserted trade secrets is in fact a trade secret, let alone misappropriation, use and harm caused by that use – *on top* of the patent infringement and unfair competition cases for which Qorvo bears the burden – is

neither practical nor feasible.  The time for compliance with this obligation has passed.  The Court should grant summary judgment in favor of Akoustis on Counts VI, VIII, and IX.[2]

### III. THE UNDISPUTED FACTS DEMONSTRATE THAT QORVO CANNOT PREVAIL ON ITS FALSE ADVERTISING CLAIM

Qorvo contends that its Lanham Act false advertising claim withstands Akoustis' summary judgment motion because "genuine disputes of material fact exist" as to the elements of the claim. (D.I. 465 at 27.)  Qorvo provides no admissible evidence of such disputes.

Qorvo does not dispute that to withstand the motion for summary judgment, it must show genuine disputes of material fact that, among other things, (1) Akoustis' statements were literally false; (2) the statements deceived the relevant customer base; and (3) the allegedly deceptive statements influenced customers' purchasing decisions.  (*See* D.I. 443 (Opening Brief) at 18-19.)

First, it is literally true that Akoustis' single crystal filter technology exists, has been and is offered for sale, and has shipped to customers.  (*See id.* at 8-10, 19.)  Akoustis' Opening Brief adduces undisputed evidence that it has been developing single crystal filter technology since its formation; offered polycrystalline materials in its BAW filters only after acquiring its New York fabrication facility in or about 2018; proposes polycrystalline and single crystal materials where appropriate for that specific product; and shipped and/or sold pre-production prototypes of certain BAW filters with a single-crystal piezoelectric layers for ▮▮▮▮▮▮▮▮▮.  (*Id*. at 19.)  That Akoustis *also* sold polycrystalline filters does not make Akoustis' statements regarding single crystal technology false.  Where, as here, the statements are literally true, no genuine dispute of material facts exists as to this element.  See *Allen v. Howmedica Leibinger, Inc.,* 197 F. Supp. 2d

---

[2] Qorvo does not dispute that its civil conspiracy claim must be dismissed if the Court grants summary judgment on the misappropriation of trade secret claims.

101 (D. Del. 2002) (granting summary judgment in favor of defendant when statements were found to be literally true).

Second, Qorvo proffers no evidence that any customer was deceived by such statements. Evidence of deception requires that the false or misleading statement actually deceive a portion of the buying public. "A plaintiff who merely argues how customers *could* react has not met his or her burden to prove actual deception. . . . Instead, plaintiffs must show by a preponderance of evidence "how consumers *actually do* react." *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 353 (D.N.J. Aug. 5, 2020) (internal citations and quotation marks omitted). Qorvo provided no such evidence. The two market reports that Qorvo proffers (D.I. 465 at 27) are not evidence of how actual BAW filter customers reacted to the allegedly false statements. The email thread with a potential ▓▓▓▓ customer shows no deception at all: the customer asked a question about the composition of the filter's piezoelectric layer, which Akoustis answered. The utter absence of proof as to actual deception is likewise fatal to Qorvo's claim.

Finally, Qorvo proffers no evidence that any Akoustis statement is material to customers. It does not attempt to challenge the critical nature of the materiality prong. (*See* D.I. 443 20-22.) Instead, Qorvo points to evidence of *Akoustis*' own statements, rather than evidence from customers. This is insufficient. *See Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648-49 (3d Cir. 1958) (holding that plaintiff failed to show materiality when it failed to introduce "evidence that anyone who purchased 'Hollywood' bread with the false designation on the wrapper did so because of the false wrapper").

### IV. QORVO CANNOT REVIVE ITS DEFICIENT SUBSTANTIVE CLAIMS THROUGH ITS UNFAIR COMPETITION CLAIMS

The evidence proffered by Qorvo fails to create a genuine dispute of material fact for its meritless North Carolina Unfair and Deceptive Trade Practices Act claim.

First, Qorvo does not dispute that if its Lanham Act false advertising claim fails, so must the unfair competition claim based on the same theory. (*See* D.I. 443 at 23; D.I. 465 at 29.)

Second, Qorvo's second theory of unfair competition claim rises and falls on the same set of facts as its trade secret misappropriation claim. Reliance on *Bridgetree, Inc. v. Red F Mktg. LLC,* No.10-cv-00228, 2013 WL 443698, at *9-11 (W.D.N.C. Feb. 5, 2013) is misplaced. There, the court made clear that it was *upholding* the trade secrets misappropriation claim. Addressing whether copying confidential information could be unfair competition, the court noted that, "the jury could only find Defendants liable for misappropriation of "proprietary data compilations" if the jury *first* found such information to be a trade secret in Count One." *Id*. at *10. Thus, *Bridgetree* further elucidates that unfair competition claims related to the misappropriation of confidential information must still be tied to the requirements of a trade secret misappropriation claim. Qorvo cannot be permitted to circumvent the requirements of a trade secret misappropriation, just to recast those same deficiencies as an unfair competition claim.

Finally, Qorvo does not even attempt to address the undisputed facts set forth regarding Akoustis hiring practices. (D.I. 443 at 23-25.) Qorvo merely doubles down on its naked contention that Akoustis "targeted Qorvo employees with the intention of harming Qorvo." The evidence actually cited by Qorvo suggests no such thing. In fact, Qorvo's own evidence shows Akoustis doing exactly what Akoustis claimed to be doing when it hired employees – looking for the best people for the job. (*See e.g.*, D.I. 465 at 29 citing Ex. K ("Lora and I have Mike hitting Qorvo very hard right now, calling nearly every BAW [design engineer], ***looking for the best 2 people willing to move to [Charlotte]***.") (emphasis added)). Even so, off the cuff remarks by Akoustis employees is not evidence of the "extraordinary circumstances" needed to withstand Akoustis' Motion. (*See* D.I. 443 at 23-24.) What remains undisputed is that:

- From 2014 through 2023 Akoustis hired 19 individuals who came directly from Qorvo – meaning fact that over a ten-year period, Akoustis hired less than one quarter of 1% of Qorvo's workforce.
- Akoustis' company designee testified that it sought to hire the "best person for that job," which entails examining "what the job is, what the requirements are for the job, what's the education, experience."

The routine hiring of employees with relevant expertise is not actionable, and Qorvo has failed to show any extraordinary circumstances (such as those in the *Sunbelt* case) that turn this routine employment and business dispute in an unfair or deceptive practice. The Court should grant summary judgment for Akoustis on Count V.

## V. NON-INFRINGING ALTERNATIVES

Qorvo admits that "those new designs are not included in the products currently accused of infringement." (D.I. 465 at 30.) Qorvo has had ample opportunity to include the alternative designs into the products accused of infringement. While Akoustis has no problem with Qorvo's choice to not include the alternative designs, Qorvo should not be permitted to re-litigate infringement of the alternative designs in a future lawsuit under the equitable doctrine of claim preclusion. *See In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1374 (Fed. Cir. 2020) (explaining that claim preclusion bars both those claims that were brought as well as those that could have been brought in the earlier lawsuit and an adjudged non-infringer has the right to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action.)

## VI. CONCLUSION

For the foregoing reasons and those set forth in its Opening Brief, Akoustis respectfully requests that the Court grant summary judgment on Counts II-IX in favor of Akoustis.

Dated:   February 27, 2024

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Respectfully submitted,

*/s/ Ronald P. Golden III*
   Stephen B. Brauerman (#4952)
   Ronald P. Golden III (#6254)
   BAYARD, P.A.
   600 N. King Street, Suite 400
   Wilmington, Delaware
   (302) 655-5000
   sbrauerman@bayardlaw.com
   rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

## CERTIFICATE OF SERVICE

      I, Ronald P. Golden III, hereby certify that on February 27, 2024, a true and correct copy of the foregoing was served on all counsel of record.

Date: February 27, 2024

                                                  */s/ Ronald P. Golden III*
                                                  Ronald P. Golden III (#6254)