# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT COURT OF DELAWARE

| | |
|---|---|
| QORVO, INC.<br><br>　　　　Plaintiff,<br><br>v.<br><br>AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC.<br><br>　　　　Defendants. | C.A. No. 21-1417 (JPM)<br><br>**JURY TRIAL DEMANDED** |

### REPLY BRIEF IN SUPPORT OF THE AKOUSTIS DEFENDANTS' MOTION TO EXCLUDE CERTAIN DAMAGES OPINIONS OF MELISSA A. BENNIS

Dated:　March 4, 2024

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

I.     **SUMMARY OF ARGUMENTS**

Akoustis' Opening Brief (D.I. 457) demonstrates that Ms. Bennis' "head start" unjust enrichment methodology for trade secret misappropriation damages theory is unreliable and the wrong fit here. Revenue is not a cognizable basis for calculating head start unjust enrichment. Because revenue is not a cognizable basis for head start damages, simply adjusting the revenue by taking into account the time value of money does not make it cognizable. Qorvo's Response Brief (D.I. 482) fails to sustain its burden of proving by a preponderance of evidence that Ms. Bennis' opinion based on her revenue methodology meets the admissibility requirements set forth in the Federal Rule of Evidence ("Rule") 702.

Qorvo also fails to sustain its reliability burden regarding Ms. Bennis' head start damages opinion to the extent that it includes all Akoustis revenue. Qorvo's Response merely repeats Ms. Bennis' Expert Report where she states her "understanding" that "the trade secrets Akoustis is alleged to have misappropriated related to virtually every aspect of its business and ability to get to market in the timeframe that it did." While that understanding is supposedly based on Dr. Shanfield's opinion, he never expressed it in his Expert Report, and Qorvo does not show otherwise. Dr. Shanfield and Ms. Bennis never tie revenue from government grants, RFMi, or contract manufacturing for third parties to the purported trade secrets at issue. The only basis is Ms. Bennis' *ipse dixit* – an unreliable basis for an expert opinion that should be excluded.

Separately, Qorvo's Response papers fail to rescue Ms. Bennis' employee poaching damages opinion. Ms. Bennis never analyzed Qorvo's costs of replacing purportedly poached employees. Therefore, she cannot say whether the ▓▓▓ analysis is a reliable proxy for that analysis.. In addition, Qorvo has a bigger problem never addressed in its Response Brief: because Ms. Bennis never asked whether Qorvo actually replaced the "poached" employees, she has not

established loss causation for her poaching damages opinion. Her opinion remains unreliable and should be excluded.

Finally, as with its opposition to Akoustis' Motion for Partial Summary Judgment, Qorvo commits many pages to repeating its closing argument narrative about the nature and scope of Akoustis' purported misappropriation of trade secrets and unfair competition. That narrative is a preview of Qorvo's evident trial strategy: inflame the jury for the purpose of obscuring that Qorvo has no direct damages and no admissible expert opinion evidence of unjust enrichment damages.

**II.   MS. BENNIS' OPINION REGARDING HEAD START UNJUST ENRICHMENT DAMAGES REMAINS UNRELIABLE AND THE WRONG FIT HERE**

Qorvo argues that Ms. Bennis' methodology is not based on Akoustis' revenue, but on the "economic benefit," or the time value of such revenue, that Akoustis supposedly enjoyed at Qorvo's expense through alleged trade secret misappropriation. The claimed distinction is a false one. Interest is an economic benefit based on the time value of money. Revenue discounted to net present value using an interest rate remains revenue; it is simply adjusted to take the time value of money into account. That is essentially what Ms. Bennis did, except she used Akoustis' weighted average cost of capital ("WACC") instead of a naked interest rate.

The question presented in Akoustis' Opening Brief thus remains the same: has Qorvo shown by a preponderance of the evidence that Ms. Bennis' head start unjust enrichment damages theory, based on Akoustis' *revenue* adjusted to consider its WACC, meets the admissibility requirements of Rule 702? The answer remains an emphatic "*no*."

**A.   THE TIMING OF A DEFENDANT'S REVENUE IS NOT AN ACCEPTABLE, RELIABLE MEASURE OF UNJUST ENRICHMENT DAMAGES UNDER A HEAD START THEORY**

In a failed attempt to satisfy its burden of showing use of an acceptable and widely recognized methodology, Qorvo repeatedly claims that Akoustis' Opening Brief provides "no case [to] support[] excluding Ms. Bennis because she identified the time value of money as an

economic benefit that Akoustis received." (D.I. 482 (Response Brief) at 14.) The contention is a red herring – Qorvo has the burden of proof here. Rule 702 now emphasizes that "expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 Committee Notes on Rules – 2023 Amendment. Qorvo fails to sustain its burden of making that demonstration regarding Ms. Bennis' challenged opinions.

Akoustis' Opening Brief and Qorvo's Response are consistent in reciting Ms. Bennis' challenged head start unjust enrichment methodology. Using all of Akoustis' revenue regardless of source or character, she calculated its "time value" based on Akoustis' WACC as of June 30, 2024. She then shifted all of Akoustis' revenue from 2016 through June 30, 2024 – 55 months in the future – and used the WACC to calculate its time value as of June 30, 2024. Because doing so shifted most of Akoustis' revenue from the past into the future, the resulting difference is considerable: ███████████.

As noted in Akoustis' Opening Brief, the relevant literature and case law teach that unjust enrichment damages based on a head start theory are based either on the defendant's profits or its incremental increases in business value realized from alleged wrongdoing. (D.I. 457 at 9.) Qorvo fails to meet its burden of showing otherwise. It contends that "courts have recognized the time value of money is an economic benefit that can be recovered as damages."[1] (D.I. 482 at 14.) But that's not the right inquiry. The right inquiry is what the relevant literature and case law teach

---

[1] Akoustis does not dispute that, in the right circumstances, the time value of money can be an economic benefit that can be recovered by a harmed party. For example, assuming for the sake of damages analysis that Akoustis avoided costs through its purported use of Qorvo trade secrets, adding the time value of such avoided costs to the unjust enrichment calculation – as Akoustis' damages expert did in her Expert Report – would be appropriate.

regarding the acceptable methodologies for calculating *head start unjust enrichment* damages. Qorvo identifies *no* such relevant literature.

Nor does Qorvo cite *any* cases in which a court adopted Ms. Bennis' novel head start unjust enrichment methodology or anything close to it. The three cases that Qorvo cites for the proposition that "courts have recognized the time value of money is an economic benefit that can be recovered as damages" (*id.*) are inapposite. In *U.S. v. Allegheny Ludlum Corp.*, the defendant accused of violating the Clean Water Act was assessed a penalty based on amounts it should have spent to ensure compliance – in other words, avoided costs. 366 F.3d 164, 178 (3d Cir. 2004). The court recognized that such penalty was properly enhanced by the time value of retaining the avoided expenditures. *Id*. *U.S. v. Torlai* was a criminal case where the defendant submitted fraudulent claims in connection with the federal crop insurance program. 728 F.3d 932, 945 n.11 (9th Cir. 2013). The footnote discussion regarding the time value of money was for "pedagogical purposes" (*id.*), and stemmed from defendant's attempt to lower the penalty by "crediting" him for insurance premiums theoretically paid out of the fraudulent insurance claims. In *Rathborne Land Co. v. Ascent Energy, Inc.,* 610 F.3d 249, 257 (5th Cir. 2010), the court simply recognized the undisputed point that a plaintiff may be entitled to the time value of money damages – simple interest – that it should have received.

Attempting shift its burden under Rule 702 to Akoustis, Qorvo contends that "no case supports excluding Ms. Bennis because she identified the time value of money as an economic benefit that Akoustis received." (D.I. 482 at 14.) But Rule 702 squarely places the burden on Qorvo, as the proponent of Ms. Bennis' opinion, to "demonstrate[] to the court that it is more likely than not that" the rule's requirements are met. That no cases exclude an opinion like Ms. Bennis' is not surprising and is easily explained by its complete lack of fit for the type of damages sought.

Nothing in Qorvo's Response shows that any literature subject to peer review, or any court decision, even suggests that a defendant's revenue, without considering the attendant costs of producing such revenue, is a reliable indicator of economic benefit. (D.I. 457 at 9.) Akoustis respectfully urges the Court to employ its gatekeeping responsibility to exclude Ms. Bennis' unreliable head start unjust enrichment damages from the trial of this matter.

**B.     THE TIME VALUE OF MONEY IS A RECOGNIZED ECONOMIC PRINCIPLE BUT NOT THE RIGHT FIT FOR MEASURING AKOUSTIS' PURPORTED COMMERCIAL ADVANTAGE EMANATING FROM A HEAD START**

Qorvo's Response states that "the Third Circuit has recognized that head start damages are intended to measure the impact to a misappropriating defendant's development and operations." (D.I. 482 at 13-14 (citing *Sabre GLBL, Inc. v. Shan*, 779 F. App'x 843, 851 n.5 (3d Cir. 2019)). In that case, plaintiff Sabre based its unjust enrichment damages on the defendant's enhanced enterprise value from the head start it achieved through use of Sabre's trade secrets. *Id.* at 851. Nevertheless, focus on the economic benefit the defendant received is consistent with case law addressing the purpose of unjust enrichment damages. *See* Sedona Conference Commentary on Monetary Remedies in Trade Secrets Litigation, 24 Sedona Conf. J. 350, 385 (2023) ("the important considerations are that a judge or jury calculates *the benefit to the defendant*—not the loss to the plaintiff—and that this calculation is done with reasonable certainty.") (quoting *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1130 (7th Cir. 2020) (emphasis added)).

Focusing on the economic benefit to Akoustis from trade secret misappropriation – liability for which must be presumed for damages purposes – demonstrates why the "the time value of money as an economic benefit" (D.I. 482 at 14) is not the right fit under a head start theory. As shown in Akoustis' Opening Brief, revenue without consideration of the attendant costs does not reflect a defendant's benefit. When a defendant's costs to create such revenue in the actual and but-for worlds are the same or more than the revenue received, the defendant has received no

benefit or unjust enrichment from its use of the alleged secret. Qorvo argues that "Ms. Bennis adopted a damages theory that is specifically focused on the real-world economic benefit Akoustis received from the head start—the time value associated with obtaining actual funds 55 months early." (D.I. 482 at 15.) But the "benefits" of receiving revenue – whether or not adjusted by the time value of money – at one point versus another wholly *depend on the attendant costs of creating such revenue*. Put simply, unless attendant costs are considered, the time value of the revenue actually received, compared to what would have received in the but-for world, is not a reliable measure of Akoustis' purported benefit. And it demonstrates that Ms. Bennis' head start unjust enrichment damages methodology is not the right fit. That Qorvo's Response studiously avoids even addressing this truth underscores its importance.

Qorvo attempts to excuse Ms. Bennis' use of her novel methodology by implying that an expert opining about unjust enrichment damages for trade secret misappropriation has "flexibility." (*See id.* at 13 ("This variety of approaches demonstrates the 'flexible' approach used to calculate damages for claims of misappropriation of trade secrets.") (quoting *Wellogix, Inc. v. Accenture, L.L.P.,* 716 F.3d 867, 879 (5th Cir. 2013)). The quoted Fifth Circuit statement does not refer to flexibility possessed by the expert. Rather, it was characterizing the different unjust enrichment theories available: defendant's ill-gotten profits, avoided costs, and head start benefit. Qorvo doubles-down on that concept, contending that "the case law Akoustis does cite confirms the discretion a damages expert has in calculating the head start benefit that a defendant receives." (*Id.* at 15 (citing *Sabre GLBL, Inc.*, 779 F. App'x at 849-50.) That decision nowhere addresses a damages expert's "discretion." And no case stands for the proposition that an expert has the "discretion" to create novel damages methodologies.

Qorvo implores that "[w]hether Akoustis received an unfair temporal advantage over its competitors when it received money 55 months earlier than it otherwise would have is a question for the jury, not an issue under Daubert." (D.I. 482 at 15.) That Qorvo falls back on urging the Court to abandon its Rule 702 gatekeeping responsibilities to "let the jury decide" the reliability of Ms. Bennis' opinions signals the weakness of its position. Akoustis respectfully requests that the Court remain firm and exclude Ms. Bennis' head start unjust enrichment damages opinion.

### C. THE HEAD START UNJUST ENRICHMENT DAMAGES OPINION DOES NOT FIT BECAUSE IT INCLUDES SOURCES OF REVENUE UNRELATED TO ANY ALLEGED WRONGDOING

Ms. Bennis relies on Dr. Shanfield to "understand" that "the trade secrets Akoustis is alleged to have misappropriated relate[] to virtually every aspect of its business and ability to get to market [and generate revenue] in the time frame that it did." (D.I. 458 (Elkins Decl.) Ex. A at 39.) She relies on that understanding to include all of Akoustis' revenue – including revenue wholly unrelated to the purported trade secret technology at issue – in her head start unjust enrichment damages calculation. (D.I. 457 at 13.) As shown, however, Dr. Shanfield's report nowhere recites such an opinion. (*Id.*) Moreover, any such opinion would be conclusory, because neither Dr. Shanfield nor Ms. Bennis has made any attempt to tie any Qorvo trade secrets to the unrelated sources of substantial Akoustis revenue identified in the Opening Brief. (*Id.*)

Qorvo's Response argues evidence that it contends links grant money, RFMi revenue, and New York fab operations to purported trade secrets. (*See* D.I. 482 at 16.) The documents that Qorvo cites do not show what its Response claims. But even if they did, the point is irrelevant: Ms. Bennis' statement that "the trade secrets Akoustis is alleged to have misappropriated related to virtually every aspect of its business and ability to get to market [and generate revenue] in the time frame that it did" is pure conclusion without underlying analysis. Dr. Shanfield nowhere links Qorvo's purported trade secrets to government grants, RFMi products and revenue, New

York fab revenue for contract manufacturing products for third parties, and so on. Ms. Bennis squarely bases her understanding on conclusions that Dr. Shanfield never makes. As a damages expert without technical expertise, she does not purport to be qualified to render an opinion that Akoustis would not have had these revenue sources without its alleged use of Qorvo trade secrets.

In sum, neither expert provides any basis for loss causation. By including these unrelated, irrelevant sources of revenue in her damages methodology, Ms. Bennis' head start unjust enrichment opinion is neither reliable nor fitting with the facts of the case and should be excluded.

### D. QORVO MUST LIVE WITH THE CONSEQUENCES OF ITS AND MS. BENNIS' CHOICE TO BASE THEIR TRADE SECRET DAMAGES ON A METHODOLOGY THAT IS UNRELIABLE AND DOES NOT FIT THE CASE

As Akoustis' Opening Brief concludes, Ms. Bennis and Qorvo could have chosen a different – and recognized and reliable – damages methodology for trade secret misappropriation. They could have advanced an unjust enrichment damages opinion based on avoided costs. Or they could have tried to base a head start theory on Akoustis' enterprise value. Or they could have advanced reasonable royalty damages if no unjust enrichment theory fit.

Qorvo and Ms. Bennis disregarded each of those available options. Driven by the apparent desire to score a lottery-like damages award, or to exert undue leverage, they instead chose to base their trade secret damages on an unreliable methodology that does not fit the case. The Court should exercise its gatekeeping responsibility to preclude that from infecting the jury trial of this case.

### III. QORVO FAILS TO RESCUE MS. BENNIS' UNRELIABLE EMPLOYEE POACHING DAMAGES OPINION

While Ms. Bennis is justified in assuming liability for employee poaching, she cannot assume the fact of damages. Yet, that is what she does in her Expert Report: "Qorvo lost employees as a result of Akoustis' employee poaching. In order to replace poached employees,

███████████████████████████████████████

Qorvo must find suitable replacements, as well as get the replacements fully trained." (D.I. 458 (Elkins Decl.) Ex. A at 47.)  The Opening Brief confirms that when Ms. Bennis spoke to a Qorvo human resources employee in connection with the employee poaching claim, she did not bother to ask whether Qorvo even replaced the 19 allegedly poached employees.  (D.I. 457 at 14.)  By neglecting to consider, let alone analyze, the *fact* of damages, Ms. Bennis' employee poaching opinion is wholly unreliable in calculating an amount of purported damages.

Qorvo attempts to wave off this oversight by relying on the well-worn "fodder for cross-examination" mantra.  But this fundamental failing infects Ms. Bennis' entire opinion regarding employee poaching damages.  At this juncture, she has provided no opinion regarding the fact of poaching damages.  Cross-examination at trial would simply provide Ms. Bennis the opportunity on the stand to conjure an opinion regarding the fact of damages that she never rendered in her Expert Report.

Qorvo's Response only confirms that Ms. Bennis undertook no analysis or comparison regarding the comparative employee replacement costs of Qorvo and RFMi to determine whether the ███ valuation of RFMi is a reliable proxy for Qorvo's own employee replacement costs. Qorvo argues that "Damages experts, however, routinely rely upon third party valuations in their analyses of damages, and courts routinely refuse to exclude them for doing so." (D.I. 482 at 18.) But the ███ valuation is not a third party valuation of Qorvo or its employee replacement costs. It relates to RFMi, a vastly different company.  While "damages experts opinions need not be precise, only reliable" (*id.* at 19 (citation omitted), Ms. Bennis failed to do the bare minimum to ensure reliability.  Akoustis respectfully requests that the Court exclude this part of Ms. Bennis' opinion.

## IV.  CONCLUSION

For the reasons chronicled in its Opening Brief and above, Akoustis respectfully requests that the Court enter an order excluding Ms. Bennis' opinions regarding head start unjust enrichment damages (regarding the trade secret and unfair competition claims) and employee poaching damages (regarding the unfair competition claim).


Dated:  March 4, 2024

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Respectfully submitted,

*/s/ Ronald P. Golden III*
   Stephen B. Brauerman (#4952)
   Ronald P. Golden III (#6254)
   BAYARD, P.A.
   600 N. King Street, Suite 400
   Wilmington, Delaware
   (302) 655-5000
   sbrauerman@bayardlaw.com
   rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

## CERTIFICATE OF SERVICE

I, Stephen B. Brauerman, hereby certify that on March 4, 2024, a true and correct copy of the foregoing was served on all counsel of record.

Date: March 4, 2024

*/s/ Ronald P. Golden III*
Ronald P. Golden III (#6254)