IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
|           Plaintiff, | ) ) ) C.A. No. 21-1417 (JPM) |
| v. | ) ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC., | ) **REDACTED - PUBLIC VERSION** ) **Original Filing Date: March 4, 2024** ) **Redacted Filing Date: March 12, 2024** |
|           Defendants. | ) |

**PLAINTIFF QORVO, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN DAMAGES OPINIONS OF CARLYN IRWIN**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

March 4, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

*Attorneys for Plaintiff Qorvo, Inc.*

██████████████████████████████████████

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. MS. IRWIN'S "AVOIDED COSTS" OPINIONS ARE NOT RELEVANT OR
RELIABLE ....................................................................................................................... 1

    A. Akoustis mischaracterizes Drs. Darveaux's and Lebby's opinions .........................2

    B. None of the authority Akoustis cites supports admitting Ms. Irwin's opinions ......5

III. MS. IRWIN'S "AVOIDED COSTS" OPINIONS ARE NOT HELPFUL TO THE
JURY ................................................................................................................................. 8

IV. CONCLUSION ................................................................................................................. 9

██████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M v. Pribyl*,
  259 F.3d 587 (7th Cir. 2001) ...................................................................................................7

*Apex Financial Options, LLC v. Gilbertson*,
  No. 19-046, 2022 WL 605692 (D. Del. Jan. 31, 2022) ............................................................8

*Life Spine, Inc. v. Aegis Spine, Inc.*,
  8 F.4th 531 (7th Cir. 2021) ..........................................................................................2, 5, 6, 7

*Mallet & Co. Inc. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) ......................................................................................................2

**Statutes**

18 U.S.C. § 1839(6) ........................................................................................................................2

**Other Authorities**

Restatement (Third) of Unfair Competition § 39 (1995) ................................................................7

## I. INTRODUCTION

The foundation upon which Ms. Irwin bases her damages calculation for misappropriation of trade secrets is predicated upon Drs. Darveaux's and Lebby's opinions that none of the information Akoustis took from Qorvo are trade secrets. Akoustis's Response to Qorvo's Motion to exclude Ms. Irwin's opinions attempts to sidestep this reality by arguing that Drs. Darveaux and Lebby estimated how long Akoustis would have taken to independently develop Qorvo's trade secrets. Drs. Darveaux and Lebby did nothing of the sort—a fact that is obvious upon review of their opinions. Because Ms. Irwin has already conceded that her opinions do not calculate the harm to Qorvo if the jury determines that the information Akoustis took was, in fact, trade secret information, and not publicly available, her opinion should be excluded.[1]

## II. MS. IRWIN'S "AVOIDED COSTS" OPINIONS ARE NOT RELEVANT OR RELIABLE

Akoustis argues in its Response that Ms. Irwin's avoided costs testimony is admissible because Drs. Darveaux and Lebby estimated how long it would have taken Akoustis to independently develop Qorvo's trade secrets. D.I. 485, p. 5. Akoustis further accuses Qorvo of failing to understand the "secrecy" part of the definition of "trade secret." *Id.* In fact, it is Akoustis that mischaracterizes Drs. Darveaux's and Lebby's opinions (upon which Ms. Irwin must admittedly rely), and it is Akoustis that fails to understand the law.

---

[1] Akoustis conflates Ms. Irwin's criticisms of Ms. Bennis's methodology with her opinions relating to Akoustis's so-called "avoided costs." Qorvo did not move to exclude Ms. Irwin's opinions criticizing Ms. Bennis's methodology. As expressly stated in Qorvo's Motion, Qorvo moves to preclude Ms. Irwin from offering opinions regarding the alleged "costs" Akoustis "avoided" because it misappropriated Qorvo's trade secrets, which are set forth in Paragraphs 30.d. and 76-85 of her expert report. D.I., 452, p. 9.

### A. Akoustis mischaracterizes Drs. Darveaux's and Lebby's opinions

Akoustis argues that Drs. Darveaux and Lebby estimate "how long Akoustis would have taken to independently develop Qorvo's trade secrets" and thus provide sufficient foundation for Ms. Irwin's avoided costs calculations. D.I. 485, p. 5. Drs. Darveaux and Lebby do nothing of the sort. As a threshold matter, Akoustis also misunderstands the defense of "independent development." As the Third Circuit recently explained, "[t]he DTSA expressly addresses the relationship between reverse engineering [i.e., independent development] and trade secret misappropriation. And it excludes reverse engineering from the type of conduct it defines as misappropriation." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 388, n.31 (3d Cir. 2021) (citing 18 U.S.C. § 1839(6)). In other words, if a defendant can reverse engineer the information, then it is not a trade secret because "information that is public knowledge or that is generally known in an industry cannot be a trade secret." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540-41 (7th Cir. 2021); *Mallet & Co. Inc.*, 16 F.4th at 388, n.31. This is precisely why Ms. Irwin cannot rely upon Drs. Darveaux's and Lebby's hours estimates without running afoul of her obligation to assume liability—Drs. Darveaux and Lebby **exclusively opine** that Qorvo did not identify any trade secret information and that all the information is publicly available. D.I. 455, Ex. C, ¶¶ 3, 115; *id.*, Ex. G, ¶¶ 7, 68, 70. For example, Dr. Darveaux opines:

> 68. Further, all of the Information Categories in the Qorvo Documents that Dr. Shanfield opines are trade secrets were well known in the industry and available from public sources or obtainable by reverse engineering. . . .
>
> [***]
>
> 70. In this section, I will analyze Dr. Shanfield's report paragraph-by-paragraph and show that the Information Categories of the Qorvo documents are not trade secrets. . . . .

D.I. 455, Ex. G.

He reiterates this opinion for each group of trade secrets Dr. Shanfield identifies and which relates to Dr. Darveaux's alleged area of expertise. For example, with respect to Qorvo's BAW Filter and Resonator Designs, Dr. Darveaux opines:

> 72.    I disagree with Dr. Shanfield's opinion that Qorvo's BAW filter and resonator design information (i) was not generally known to or readily ascertainable by persons in the industry; and (ii) would have had substantial value of disclosed to Qorvo's competitors.
>
> [***]
>
> 75. . . . Hence, ▮▮▮ are not a Qorvo trade secret. . . .
>
> [***]
>
> 79. . . . Nothing in the roadmap slide discussed in [Shanfield] paragraph 144 is a trade secret.
>
> [***]
>
> 81. . . . It is not a trade secret, and Akoustis does not use a WLFO package format.
>
> [***]
>
> 84. . . . At paragraphs 148-149 of his Report, Dr. Shanfield discusses Sc doping in AlN piezoelectric layer. This is not a trade secret. It is well known in the industry.
>
> [***]
>
> 86. . . . These trends are not trade secrets[.]
>
> [***]
>
> 89. . . . Clearly, this concept is not a trade secret.
>
> [***]
>
> 91. . . . The ▮▮▮ is not a trade secret[.]
>
> [***]
>
> 92.    At paragraphs 152-154 of his Report, Dr. Shanfield discusses ▮▮▮ . . . . It is not useful for any engineering purpose.
>
> 93.    The ▮▮▮ . . . is not a trade secret[.]

> 94. . . . The proposal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not a trade secret.
>
> [***]
>
> 98. In my opinion, the documents related to Qorvo's BAW filter and resonator designs in the Shanfield Report at Section V.C. . . . were not trade secrets due to one or more of the following reasons: a) the information was known and available in the industry; b) the information could be determined through reverse engineering, and c) the information has no commercial value to anybody except Qorvo.

*Id.* Like Dr. Darveaux, Dr. Lebby also opines that all the information Qorvo identifies as trade secret is publicly available or has no commercial value to anyone except Qorvo. D.I. 455, Ex. C ¶¶ 72, 115-16.

Furthermore, Drs. Darveaux's and Lebby's hours estimates assume that none of the information in Qorvo's documents qualify as trade secrets. Using Qorvo's BAW Filter and Resonator Designs again as an example, Dr. Darveaux expressly opines "there are no Qorvo trade secrets in these documents[.]" *E.g.*, D.I. 455, Ex. G, ¶ 307. Dr. Darveaux then opines that that it would have taken an Akoustis engineer ten hours to search the Internet and retrieve from public documents the information Dr. Darveaux deems "useful." *Id.*, pp. 93-95 (opining that it would have taken an Akoustis engineer: (i) four hours to "[s]earch for and identify technical papers on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and (ii) six hours to "[s]earch for and review technical papers on scandium doping"); Ayers Decl., Ex. A, 167:3-16 ("What I'm saying is, the information in those documents that was useful or used by Akoustis, could have been gathered by 10 engineering hours of work. . . . That could have been obtained by searching for a few engineering documents and reading them.").

Drs. Darveaux and Lebby did not opine as to the "hours" of work that Akoustis "avoided" because it misappropriated Qorvo's trade secrets. D.I. 455, Ex. C, ¶ 3 ("it is my opinion that the categories of information that Dr. Shanfield claims are 'trade secrets' are not trade secrets"); *Id.*,

Ex. G, ¶ 7 ("the Information Categories, described by Dr. Shanfield as 'trade secrets.' were all generally known or readily ascertainable"). Accordingly, Ms. Irwin's avoided costs opinions fail to assume liability because they are predicated upon opinions that assume no misappropriation of trade secrets occurred.

> **B.    None of the authority Akoustis cites supports admitting Ms. Irwin's opinions**

Akoustis argues that Ms. Irwin may rely upon Drs. Darveaux's and Lebby's hours estimates and still assume liability (as she must) because trade secret protection can attach to "a combination of characteristics and components, each of which, by itself is in the public domain,' so long as their 'unique combination' has competitive value." D.I. 485, p. 6 (citing *Life Spine Inc.*, 8 F.4th at 540-41). This argument fails for two reasons.

First, as set forth above, Drs. Darveaux and Lebby did not estimate the hours of work Akoustis avoided because it had access to Qorvo's "unique combination" of purportedly public information which, in itself, had competitive value. Instead, Drs. Darveaux and Lebby opined that: (1) none of the information Akoustis took from Qorvo qualified as trade secrets or had competitive value; and (2) all of the information Akoustis took was readily ascertainable from public sources. *E.g.*, D.I. 455, Ex. G, ¶ 43 (defining a trade secret as information that "derives independent actual or potential commercial value from not being generally known or readily ascertainable"); *id.*, ¶ 72 ("I disagree with Dr. Shanfield's opinion that Qorvo's BAW filter and resonator design information (i) was not generally known to or readily ascertainable by persons in the industry; (ii) would have had substantial value if disclosed to Qorvo's competitors."); *id.*, ¶¶ 75-77 (detailing why Akoustis could not competitively use the information it took from Qorvo); *id.*, Ex. C, ¶¶ 70, 98, 125, 136, 172, 232, 292 (Dr. Lebby opining similarly).

Second, none of the legal authority Akoustis cites supports Ms. Irwin's reliance upon Drs. Darveaux's and Lebby's hours estimations. In *Life Spine, Inc.*, the 7th Circuit analyzed whether

information relating to a spinal cord implant device qualified as trade secret. 8 F.4th at 535-38. There, the Seventh Circuit characterized the defendant's argument as requiring trade secret protection to be an "all-or-nothing proposition for a given product—either it exists, or it does not." *Id.* at 541. Because certain information relating to the plaintiff's trade secrets was publicly disclosed, including in patents and through public sale of the product, the defendant argued it could not have misappropriated plaintiff's trade secrets. *Id.*

The Seventh Circuit rejected this argument, holding that the secret combination of both public and secret information qualifies for trade secret protection. *Id.* at 542. In doing so, the Seventh Circuit painstakingly identified the "secret" information and explained why other public information did not destroy the plaintiff's entitlement to trade secret protection. *Id.* at 541-42. Importantly, the Seventh Circuit expressly held "[t]o be sure, if it turns out that the precise information is known to the public, or is general knowledge in industry, then there is no trade secret." *Id.* at 541. Drs. Darveaux and Lebby repeatedly and exclusively opine that all of the information Qorvo identifies is known to the public, or is general knowledge in industry, and therefore is not trade secret. D.I. 455, Ex. C, ¶ 3; *Id.*, Ex. G, ¶ 7. That is why Ms. Irwin's reliance upon them renders her opinion inadmissible.

The Seventh Circuit's holding in *3M* also does not support Akoustis's argument that Ms. Irwin's opinion is admissible. There, the court's full quotation (which *Life Spine, Inc.* summarized) illustrates precisely how Drs. Darveaux's and Lebby's opinions fail to support Ms. Irwin's assumption of trade secret misappropriation: "A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, afford a competitive advantage and is a protectable secret." *Id.*, at 595-96. In other words, a plaintiff who uniquely combines

-6-

otherwise public information may protect that unique and secret combination if that unique and secret combination affords it a competitive advantage. *Id.* Notably, Drs. Darveaux and Lebby make no attempt to identify any secret combination of public information that Akoustis used, much less estimate the number of hours Akoustis saved in doing so.[2]

Finally, the Restatement (Third) of Unfair Competition § 39 cmt. f also does not support admitting Ms. Irwin's testimony. Akoustis omits a portion of the comment which provides, in relevant part:

> Information that is generally known or readily ascertainable through proper means (see § 43) by others to whom it has potential economic value is not protectable as a trade secret. Thus, information that is disclosed in a patent or contained **in published materials reasonably accessible to competitors** does not qualify for protection. . . . Similarly, information readily ascertainable from an examination of a product on public sale or display is not a trade secret. Self-evident variations or modifications of known processes, procedures, or methods also lack the secrecy necessary for protection as a trade secret. However, it is the secrecy of the claimed trade secret as a whole that is determinative. The fact that some or all of the components of the trade secret are well-known **does not preclude protection for a secret combination, compilation, or integration** of the individual elements.

Restatement (Third) of Unfair Competition § 39 cmt. f (emphasis added).

All of the authority that Akoustis cites explains how Qorvo might prove the existence of a trade secret. None of it supports admitting Ms. Irwin's opinions, which depend upon hours estimates that assume Akoustis stole only information that was publicly available and well-known in the industry.

---

[2] Like its opinion in *Life Spine, Inc.*, the Seventh Circuit also took pains to clarify that publicly available information "generally known in industry" cannot be protected: "[w]ere 3M to bring [defendant] to court, claiming misappropriation on the basis that [defendant] was assembling ordinary cardboard boxes in a similar manner to 3M, we would not look favorably on such a claim." *3M v. Pribyl*, 259 F.3d 587, 596 (7th Cir. 2001).

### III.   MS. IRWIN'S "AVOIDED COSTS" OPINIONS ARE NOT HELPFUL TO THE JURY

Because Drs. Darveaux's and Lebby's hours estimates necessarily depend upon their opinions that no trade secrets exist, Ms. Irwin's "avoided costs" damages calculations do not "fit" the facts of this case. *Apex Financial Options, LLC v. Gilbertson*, No. 19-046, 2022 WL 605692, *4-5 (D. Del. Jan. 31, 2022) ("The Third Circuit has emphasized that an expert's analysis must 'fit' his or her conclusions in the case at hand."). Despite her proclamations otherwise, her opinions do not assume liability—as Akoustis admits all damages experts must.[3] In a last-ditch effort to save Ms. Irwin's opinions from exclusion, Akoustis argues that "Ms. Irwin's avoided costs unjust enrichment opinion is directly relevant to her opinion that Ms. Bennis erred in using a fundamentally flawed and unreliable head-start methodology for unjust enrichment." D.I. 485, p. 8. It is not. Ms. Irwin's rebuttal opinions that Ms. Bennis used an improper methodology are separate from her alternative damages calculation.

Moreover, Ms. Irwin's avoided costs opinions are not inadmissible because they "stark[ly] contrast" with Ms. Bennis's head-start damages opinions. They are inadmissible because the hours and cost estimates Drs. Darveaux and Lebby provide to Ms. Irwin depend upon the public availability of all the information Akoustis took from Qorvo. Akoustis cannot have its cake and eat it. It cannot tell the jury that (i) all of the information it took was publicly available and not a trade secret and (ii) Irwin's avoided costs opinions assume liability for misappropriation of trade secrets.

---

[3] D.I. 485, p. 5-6 (noting that "every economic damages expert must assume [liability]").

## IV. CONCLUSION

For the reasons set forth in Qorvo's Motion (D.I. 452) and this Reply, Qorvo respectfully requests that the Court strike Paragraphs 30.d. and 76-85 of Ms. Irwin's Report, and preclude Ms. Irwin from offering opinions regarding the alleged "costs" Akoustis "avoided" because it misappropriated Qorvo's trade secrets.

| | |
|---|---|
| OF COUNSEL:<br><br>Robert M. Masters<br>Jonathan R. DeFosse<br>Timothy P. Cremen<br>Roy D. Jung<br>SHEPPARD, MULLIN, RICHTER<br>   & HAMPTON LLP<br>2099 Pennsylvania Avenue, NW, Suite 100<br>Washington, DC  20006-6801<br>(202) 747-1900<br><br>Eric K. Gill<br>Zachary Alper<br>Theodore Mayer<br>SHEPPARD, MULLIN, RICHTER<br>   & HAMPTON LLP<br>12275 El Camino Real, Suite 100<br>San Diego, CA  92130-4092<br>(858) 720-8900<br><br>James C. Wald<br>Kazim A. Naqvi<br>SHEPPARD, MULLIN, RICHTER<br>   & HAMPTON LLP<br>1901 Avenue of the Stars, 16th Floor<br>Los Angeles, CA  90067<br>(310) 228-3700<br><br>Jennifer Klein Ayers<br>SHEPPARD, MULLIN, RICHTER<br>   & HAMPTON LLP<br>2200 Ross Avenue, 20th Floor<br>Dallas, TX 75201<br>(469) 391-7400<br><br>March 4, 2024 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br><br>_____<br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>Anthony D. Raucci (#5948)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br>araucci@morrisnichols.com<br><br>*Attorneys for Plaintiff Qorvo, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 4, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE 19801<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Ronald S. Lemieux, Esquire<br>David S. Elkins, Esquire<br>Victoria Q. Smith, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>1841 Page Mill Road, Suite 150<br>Palo Alto, CA 94304-1216<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

/s/ *Jeremy A. Tigan*

Jeremy A. Tigan (#5239)