IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| Plaintiff, | ) ) ) ) C.A. No. 21-1417 (JPM) |
| v. | ) ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC., | ) ) **REDACTED - PUBLIC VERSION** ) Original Filing Date: March 4, 2024 ) Redacted Filing Date: March 12, 2024 |
| Defendants. | ) |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE
EXPERT TESTIMONY OF DR. MICHAEL LEBBY**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

March 4, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

*Attorneys for Plaintiff Qorvo, Inc.*

## **TABLE OF CONTENTS**

                                                                                **Page**

I.    THE INFORMATION SECURITY OPINIONS SHOULD BE EXCLUDED .................. 1

      A.    Dr. Lebby Is Not Qualified to Offer Opinions on Information Security ................. 1

      B.    Dr. Lebby's Opinion Is Unreliable ....................................................................... 3

           1.    Dr. Lebby's opinions are untethered to any methodology .......................... 3

           2.    Dr. Lebby's opinions are *ipse dixit* ............................................................ 5

                a.    Dr. Lebby did not identify "over-designated" documents .............. 5

                b.    Dr. Lebby admitted he has no evidence of employee confusion .... 7

                c.    Dr. Lebby provided no explanation of how employee "confusion" nullifies Qorvo's security measures ............................................... 7

II.    DR. LEBBY'S OPINION THAT AKOUSTIS WAS "AHEAD" OF QORVO SHOULD BE EXCLUDED .............................................................................................. 8

III.    DR. LEBBY'S OPINIONS CONCERNING TRADE SECRET GROUPS 1 AND 8 SHOULD BE EXCLUDED .............................................................................................. 9

IV.    CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allscripts Healthcare LLC v. Andor Health LLC*,
  No. 21-cv-0704, 2022 WL 3021560 (D. Del. Jul. 29, 2022) ..................................................4, 5

*APEX Fin. Options v. Gilbertson*,
  No. 19-046-WCB-SRF, 2022 WL 605692 (D. Del. Jan. 31, 2022).........................................5

*In re Asbestos Products Liability Litigation*,
  289 F.R.D. 424 (E.D. Pa. 2013) ...............................................................................................6

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F. 3d 195 (3rd Cir. 2006) ...................................................................................................3

*Better Holdco Inc. v. Beeline Loans, Inc.*,
  666 F. Supp. 3d 328 (S.D.N.Y. 2023).................................................................................2, 3

*Burke v. Transam Trucking, Inc.*,
  617 F. Supp. 2d 327 (M.D. Pa. 2009) ......................................................................................9

*Calhoun v. Yamaha Motor Corp., U.S.A*,
  350 F.3d 316 (3d Cir. 2003).....................................................................................................1

*Companhia Energetica Potiguar v. Caterpillar Inc.*,
  2016 WL 3102225 (S.D. Fla. June 2, 2016) ............................................................................6

*Diaz v. Johnson Matthey, Inc.*,
  893 F. Supp. 358 (D.N.J. 1995) ...............................................................................................1

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000).....................................................................................................9

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997)...............................................................................................................10

*Higginbotham v. Volkswagenwerk Aktiengesellschaft*,
  551 F. Supp. 977 (M.D. Pa. 1982) ...........................................................................................1

*Integra Lifesciences Corp. v. HyperBranch Medical Tech., Inc.*,
  No. 15-cv-0819, 2018 WL 1785033 (D. Del. Apr. 4, 2018) ................................................4, 5

*Meadows v. Anchor Longwall*,
  306 F. App'x 781 (3d Cir. 2009) ..............................................................................................5

*Solaia Tech. LLC v. ArvinMeritor, Inc.*,
  361 F. Supp. 2d 797 (N.D. Ill. 2005) .......................................................................................6

███████████████████████████

*U.S. v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000) .......................................................................................4, 5

*Waldorf v. Shuta*,
   142 F.3d 601 (3rd Cir. 1998) ..............................................................................................1

**Rules**

Fed. R. Evid. 702 ...............................................................................................................1, 5, 9

Akoustis's opposition fails to address the critical flaws Qorvo identified in the expert opinions of Dr. Michael Lebby.

## I. THE INFORMATION SECURITY OPINIONS SHOULD BE EXCLUDED

Dr. Lebby's opinions on information security should be excluded because: (1) he is not qualified to offer those opinions; and (2) his opinions are unreliable. D.I. 454 at 11-14.

### A. Dr. Lebby Is Not Qualified to Offer Opinions on Information Security

Akoustis argues that the motion to exclude Dr. Lebby's opinions is based on an "overly rigid" standard that contradicts the "liberal" qualification requirement under *Waldorf v. Shuta*, 142 F.3d 601 (3rd Cir. 1998). D.I. 479 at 1, 3-4. But, as the Third Circuit explained in *Waldorf*, "[e]ven though we apply Rule 702 liberally, we have not pursued a policy of qualifying *any* proffered witness as an expert." *Waldorf*, 142 F.3d at 625 (emphasis in original). For example, a witness must "possess skill or knowledge greater than the average layman." *Id*. Moreover, having only "limited" experience or "minimal" training is not sufficient to qualify a witness as an expert. *Id*. (citing *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 373 (D.N.J. 1995) and *Higginbotham v. Volkswagenwerk Aktiengesellschaft*, 551 F. Supp. 977, 982–83 (M.D. Pa. 1982)). Akoustis fails to meet its burden of establishing that Dr. Lebby is qualified to opine on information security procedures under the standard set forth in *Waldorf*.

Akoustis argues that Dr. Lebby is qualified to offer opinions on information secuirty due to his "extensive" and "multifaceted" experience in the "electronics industry." D.I. 479 at 1-2, 4-6. But it is well-established that general experience in a relevant industry does not qualify a witness to offer more specific opinions. *See, e.g.*, *Diaz*, 893 F. Supp. at 372-373 (broad experience in medical field does not qualify witness to opine on specific medical conditions); *Calhoun v. Yamaha Motor Corp., U.S.A*, 350 F.3d 316, 322 (3d Cir. 2003) ("While the background, education,

and training may provide an expert with general knowledge to testify about general matters, more specific knowledge is required to support more specific opinions.").

Akoustis next argues that Dr. Lebby has specific experience with information security because he has "adhered to, created, and implemented various security policies." D.I. 479 at 4. But Dr. Lebby's report—which was required to disclose his relevant qualifications—is devoid of any such experience. *See* Ex. C, ¶¶125-151.[1] Beyond attorney argument, Akoustis has not identified **any evidence** that Dr. Lebby ever "created" an information security policy. *See id*. Nor has Akoustis identified any security policy that Dr. Lebby ever "implemented." *See* D.I. 479. The only "policy" that Dr. Lebby references in his report is a "company policy" providing that employees should not label documents as "confidential" when they are presented publicly. *See* Ex. C, ¶128. Such a policy—concerning the use of **public** documents—is not an information **security** policy.[2] Finally, while it may be reasonable to infer that Dr. Lebby "adhered to" information security policies while working in the electronics industry, that experience does not separate Dr. Lebby from the average lay person. Indeed, "adhering to" information security policies is experience broadly shared by **millions** of people who work in the "electronics industry" and many other fields subject to information security requirements.

Akoustis next argues that Dr. Lebby is qualified to opine on information security because he has served as a CEO of a company in the "electronics industry." D.I. 479 at 4. Akoustis cites *Better Holdco Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328 (S.D.N.Y. 2023), for the proposition that "a company CEO in the relevant industry" is "particularly qualified" to opine on information security. D.I. 479 at 4. But *Better Holdco* stands for no such principle. In that case, an expert sought

---

[1] Unless otherwise stated, exhibits citations are to the exhibits to D.I. 455.
[2] Akoustis also refers to Dr. Lebby's awareness of Motorola's procedures for cataloging trade secrets. D.I. 479 at 5. Again, creating a record of trade secrets is not a security policy.

to opine on security measures used to protect Facebook Ad Data. 666 F. Supp. 3d at 476-477. The court held that the expert was "particularly qualified" to opine on such measures because he held a certification as a "'MetaCertified Media Buying Professional' which 'certif[ies] someone's understanding of Facebook marketing concepts.'" *Id*. at 476. While the court identified the expert as the CEO of a digital marketing company, that was **not** the basis for his qualification as an expert.[3] *See id*.

### B. Dr. Lebby's Opinion Is Unreliable

Even if Dr. Lebby were qualified to opine on information security (he is not), the opinions he offered would still be inadmissible *ipse dixit*. *See* D.I. 454 at 12-14.

#### 1. Dr. Lebby's opinions are untethered to any methodology

Dr. Lebby admitted in his deposition that he did not apply any methodology in assessing the reasonableness of Qorvo's information security practices. Ex. D, 221:20-222:10. This is also apparent on the face of Dr. Lebby's report. *See* Ex. C, ¶¶125-151. He did not identify any framework for assessing the reasonableness of Qorvo's security measures, nor did he analyze the sufficiency of any of the security measures that Qorvo implemented. *See id*.

Akoustis argues that Dr. Lebby's opinions are based on a reliable methodology because he applied his "experience" in rendering the opinions. D.I. 479 at 6-9. But a witness relying on experience to offer an opinion must still "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is

---

[3] *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F. 3d 195 (3rd Cir. 2006), also does not support the admissibility of Dr. Lebby's opinions. In *Berckeley*, "a former counsel for the SEC with expertise in offshore securities transactions" was permitted to opine on whether it would have been apparent to someone in the industry that a particular offshore securities transaction was illegal. *Id*. at 218-219. As in *Better Holdco*, **but unlike Dr. Lebby**, the expert in *Berckeley* had specialized experience and knowledge with respect to the opinion she offered.

reliably applied to the facts." *Integra Lifesciences Corp. v. HyperBranch Medical Tech., Inc.*, No. 15-cv-0819, 2018 WL 1785033, at *6 (D. Del. Apr. 4, 2018). Dr. Lebby fails on all counts.

Dr. Lebby does not identify the information security experience he drew upon to reach his opinions, nor provide any explanation of how that experience "leads to the conclusion" that Qorvo's information security protocols were unreasonable. For example, Dr. Lebby does not discuss his experience with security measures in the electronic industry, nor identify any security measures at any of the companies where he worked. *See* Ex. C, ¶¶125-151. Nor does Dr. Lebby attempt to compare Qorvo's information security measures to those he would consider reasonable based on his "industry experience." *See id.* While Dr. Lebby claims to have experience with the (purportedly) widespread practice of designating public information as "confidential" (*see* Ex. C, ¶128), he provides no coherent explanation of how such an industry-standard practice would make Qorvo's information security policies unreasonable.

The cases Akoustis cites (*see* D.I. 479 at 6) show just how far afield Dr. Lebby's opinions are from those that have been found reliable based on an expert's experience. In each case, the expert's experience was tied directly to the conclusions the expert reached. In *U.S. v. Hankey*, 203 F.3d 1160 (9th Cir. 2000), a police officer was permitted to opine on indicia and norms of gang membership because the officer had experience working with thousands of gang members. *Id.* at 1169. In *Integra*, a witness was permitted to offer an expert opinion concerning the biocompatibility of barium sulfate because the expert had personally used barium sulfate and had experience with its characteristics. 2018 WL 1785033, at *6. In *Allscripts Healthcare LLC v. Andor Health LLC*, No. 21-cv-0704, 2022 WL 3021560 (D. Del. Jul. 29, 2022), the Court permitted an expert to opine on aspects of Microsoft Azure cloud computing because the expert had personally worked with Microsoft Azure for more than 12 years. *Id.* at *25. Unlike the experts

in *Hankey*, *Integra*, and *Allscripts*, Akoustis has not provided any identification of Dr. Lebby's relevant experience or how Dr. Lebby applied that experience to reach his conclusion that Qorvo's information security measures were unreasonable.

### 2. Dr. Lebby's opinions are *ipse dixit*

Dr. Lebby's opinions are also unreliable because they are *ipse dixit*. *See* D.I. 454, 13-14.

#### a. Dr. Lebby did not identify "over-designated" documents

The foundation for Dr. Lebby's opinions is that Qorvo engaged in "a habitual and indiscriminate labeling of public information as 'confidential.'" Ex. C, ¶128. But Dr. Lebby's report failed to identify **any** public information that Qorvo labeled as confidential. *See id.* Dr. Lebby was also unable to identify any such information during his deposition. *See* Ex. D, 234:1-16. It is well-established that such evidence-free opinions are inadmissible under Rule 702. *See, e.g.*, *Meadows v. Anchor Longwall*, 306 F. App'x 781, 789 (3d Cir. 2009) (affirming exclusion of expert testimony because "the analytical gap between the data and the opinion proffered is too great and is connected only by the *ipse dixit* of the expert, not by any evidence"); *APEX Fin. Options v. Gilbertson*, No. 19-046-WCB-SRF, 2022 WL 605692, at *6 (D. Del. Jan. 31, 2022) ("This is not an expert opinion of any sort. It is *ipse dixit* without any foundation and is nothing more than a recitation of Defendants' damages argument.").

In hopes of salvaging Dr. Lebby's *ipse dixit*, Akoustis argues that he identified the "types of information" that Qorvo "over-designated" as confidential. D.I. 479 at 7. Tellingly, Akoustis does not cite Dr. Lebby's report to support this argument. *See id.* Instead, Akoustis cites to "section IV" of its opposition brief, which addresses Dr. Lebby's opinions on trade secret groups 1 and 8, not information security. *See* D.I. 479 at 13-15. In that section, Akoustis references two presentations concerning Qorvo's strategy for the Wi-Fi market. *Id.*; *see also* D.I. 480, Exs. 6, 7. Akoustis thus appears to imply that Dr. Lebby's opinion concerning Qorvo's "habitual"

-5-

designation of public information as confidential was based on these two presentations. D.I. 479 at 7. But Dr. Lebby never identified those presentations as examples of "over-designation" in his report (*see* Ex. C, ¶¶125-151), nor during his deposition (*see* Ex. D, 234:1-16). Moreover, Akoustis has not presented any basis to now argue that the two presentations were "public" documents that Qorvo mislabeled as confidential. *See* Ex. C, ¶¶125-151. Indeed, the Akoustis employee who stole the presentations testified that they were confidential Qorvo documents. Masters Decl., Ex. A, 172:5-175:20. As such, these presentations cannot retroactively provide a basis for Dr. Lebby's *ipse dixit*.

Akoustis also attempts to back-fill Dr. Lebby's report with other new evidence. D.I. 479 at 7-8. Akoustis now cites its interrogatory responses and four new exhibits attached to Dr. Lebby's declaration (D.I. 481) as supporting Dr Lebby's *ipse dixit*. But Dr. Lebby did not rely on any of these materials in his report, nor explain how they reflect Qorvo's "habitual" over-designation of documents as confidential. It is improper to offer such new evidence to bolster Dr. Lebby's opinions in response to the motion to exclude. *See Solaia Tech. LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005) ("It would appear that [the expert]'s much expanded opinion was prompted solely by ArvinMeritor's summary judgment motion. . . . This is not the proper role for supplementation of a report by an expert."); *In re Asbestos Products Liability Litigation*, 289 F.R.D. 424, 425 (E.D. Pa. 2013) (improper to supplement an expert report to deepen or strengthen opinions in response to a summary judgment motion); *Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 3102225, at *9 (S.D. Fla. June 2, 2016) ("It is hardly surprising that a party would seek to bolster its expert's opinions after a *Daubert* motion points out significant flaws.").

### b. Dr. Lebby admitted he has no evidence of employee confusion

Dr. Lebby's information security opinions also rest on the assertion that Qorvo employees were "confused" as a result of the "over-designation" of public documents as confidential. Ex. C, ¶134. Again, Dr. Lebby did not identify any basis for this opinion in his report (*see id.*) and admitted that he did not have any evidence supporting this assertion during his deposition (*see* Ex. D, 236:18-237:6). Akoustis's argues that Dr. Lebby identified the "over-designated documents that reflected employee confusion" during his deposition. D.I. 479 at 7, n.5 (citing D.I. 480, Ex. 1 at 236:22-237:1). Not so. While Dr. Lebby offered conclusory testimony that there was "a huge level of over designation," he was unable to identify any public information that was wrongly designated as "confidential." *See* Ex. D, 236:18-237:6. Nor did he identify **any evidence** that Qorvo employees were "confused" by the designations. *See id.* Dr. Lebby's assertion that Qorvo employees were "confused" is thus prototypical *ipse dixit*.[4]

### c. Dr. Lebby provided no explanation of how employee "confusion" nullifies Qorvo's security measures

Dr. Lebby's opinion also fails to explain how designating public information as "confidential" nullified Qorvo's information security policies (as opposed to resulting in greater protection for non-confidential information). D.I. 454 at 13-14. Akoustis argues that the explanation can be found in paragraphs 129-130 of Dr. Lebby's report. *See* D.I. 479 at 9. But those paragraphs only highlight the *ipse dixit* nature of the Dr. Lebby's opinions. Dr. Lebby states—without citing any evidence—that Qorvo employees found confidentiality designations "unreliable." Ex. C, ¶130. Dr. Lebby then makes a huge and unexplained inferential leap, asserting

---

[4] Akoustis also claims that Dr. Lebby opined that "Qorvo's website management team was insufficiently trained." D.I. 479 at 7, n. 5 (citing Lebby Dep. at 112:16-113:16). **Dr. Lebby offered no such opinion**. In the deposition testimony Akoustis cites, Dr. Lebby referred to his **own** website management team, not Qorvo's team. *See* D.I. 480, Ex. 1 at 112:16-113:16.

that the "result is that Qorvo's confidential information falls outside the protection of its security policies simply because it is seen as not qualifying for protection." *Id*. Again, Dr. Lebby does not cite **any evidence** supporting this assertion. *See id.* For example, he does not identify any occasion where a Qorvo confidential document "fell outside" of Qorvo's security policies because employees believed a "confidentiality" designation was unreliable. Further, the nonsensical nature of Dr. Lebby's opinion is apparent from his "analysis." For example, Dr. Lebby opined that Qorvo's physical security measures—i.e., measures restricting access to Qorvo's offices—were unreasonable because physical security "can be and usually is confusing for employees especially when there is an over-designation of marking confidential in documents and emails." Ex. C, ¶148. Dr. Lebby did not identify any evidence that employees are confused by physical security (at Qorvo or elsewhere) and provided no explanation as to how marking "documents and emails" as confidential creates confusion over the physical security measures. Akoustis ignores the incoherence of Dr. Lebby's assertions in its opposition. *See* D.I. 479.

## II. DR. LEBBY'S OPINION THAT AKOUSTIS WAS "AHEAD" OF QORVO SHOULD BE EXCLUDED

Dr. Lebby repeatedly opines that Akoustis was "ahead" of Qorvo in developing 5GHz BAW filters. *See* Ex. C, ¶¶76-80, 83, 85, 86, 89, 91. For example, Dr. Lebby opines that "Akoustis was already ahead of Qorvo in the 2016 timeframe" when Akoustis stole several Qorvo presentations concerning 5GHz BAW filters. Ex. C, ¶85. When asked to identify the basis for his opinions, Dr. Lebby stated that he relied on Dr. Darveaux's analysis of Akoustis's product development timeline. Ex, D, 135:10-21. But Dr. Darveaux testified that he **never performed** any such analysis and did not determine when Akoustis began developing its 5GHz BAW filters. As such, Dr. Lebby's opinion that Akoustis was ahead of Qorvo in the 2016 has no basis.

Akoustis's responds that "[i]t would have made sense from an engineering standpoint" for Akoustis to have begun developing 5GHz filters before 2016 and that Qorvo should simply cross-examine Dr. Lebby on the factual basis for his opinion. D.I. 479 at 10. These arguments miss the point. Dr. Lebby based his opinion on a factual assumption that is not present in the case. Such an opinion does not "assist the trier of fact" and must be excluded under Rule 702. *See, e.g.*, *Burke v. Transam Trucking, Inc.*, 617 F. Supp. 2d 327, 331-32 (M.D. Pa. 2009) ("An expert who renders an opinion based on factual assumptions not present in the case 'cannot be said to assist the trier of fact, as rule 702 requires.") (citing *Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000)).

### III. DR. LEBBY'S OPINIONS CONCERNING TRADE SECRET GROUPS 1 AND 8 SHOULD BE EXCLUDED[5]

Dr. Lebby opined that the trade secrets identified in trade secret groups 1 and 8 were disclosed in public reports from "market analysis firms." *See* Ex. C., ¶¶82-84, 86-88, 92, 94, 96, 97, 106, 108-111. But Dr. Lebby did not cite a single public report disclosing any of those trade secrets. As such, his opinions are, again, pure *ipse dixit*. D.I. 454 at 17-18.

In response, Akoustis accuses Qorvo of making "false" statements to the Court. *See* D.I. 479 at 11. According to Akoustis, Dr. Lebby cited a "Yole report" that discloses Qorvo's confidential information. *Id*. Akoustis's claim is meritless. Dr. Lebby cited the Yole report as an example of the type of market analysis reports that are available for purchase. *See, e.g.*, Ex. C, ¶59. Dr. Lebby did not (and could not) cite the "Yole report" as evidence that Qorvo's trade secrets were publicly available. *See* Ex. C, ¶¶82-112. Indeed, the Yole report is dated 2022—six years after Akoustis stole Qorvo's WiFi business plans. *See* D.I. 408, Ex. 7 at 1. Moreover, the Yole report is based on "tear downs" of publicly available parts. *See id.* at 8. It does not report any aspect

---

[5] Akoustis states that Dr. Lebby was not "retained" to opine on trade secret groups 2-7. D.I. 479 at 3, n.2. As such, the opinions in paragraphs 3, 4, 72-75, and 113-116 of Dr. Lebby's report should be excluded.

of Qorvo's confidential business plans from 2015-2016. Indeed, Dr. Lebby stated during his deposition that he would expect such reports to be based on "publicly available data." Masters Decl., Ex. B, 126:2-20, 130:21-131:14.

In hopes of bolstering Dr. Lebby's analysis, Akoustis provides "examples" of Dr. Lebby's opinions. D.I. 479 at 13-15. Akoustis's argument only highlights the *ipse dixit* nature of the opinions. For example, Akoustis cites paragraph 84 of Dr. Lebby's report, which states that the "**type of information**" found in a June 2015 Qorvo presentation "is commonly found in publicly available reports" such as the Yole report. Ex. C, ¶84. But Dr. Lebby does not cite any public report that **actually discloses** the trade secret information from the Qorvo presentation. Adopting Dr. Lebby's slight of hand, Akoustis invites the Court to compare pages 4 and 6 of the Qorvo presentation (D.I. 480, Ex. 6 at 4, 6) with pages 11 through 15 of the Yole report (*id.*, Ex. 7 at 11-15). Like Dr. Lebby, Akoustis claims that the two documents contain the same "type" of information—i.e., both documents, at a high level of abstraction, relate to market analysis. But Akoustis does not (and cannot) argue that 2022 Yole report supports Dr. Lebby's opinion that Qorvo's trade secrets were publicly available in market reports in 2016.

At bottom, Dr. Lebby seeks to opine that Qorvo's trade secrets were available to the public because, when abstracted to a high level of generality, the same "type" information can be found in a market analysis report. This is a textbook example of "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Dr. Lebby should not be permitted to opine that Qorvo's trade secrets were publicly available without identifying the public documents purportedly disclosing those trade secrets.

## IV.    CONCLUSION

Qorvo respectfully requests that the Court grant the motion to exclude expert testimony of Dr. Michael Lebby.

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 4, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 4, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Ronald S. Lemieux, Esquire<br>David S. Elkins, Esquire<br>Victoria Q. Smith, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>1841 Page Mill Road, Suite 150<br>Palo Alto, CA  94304-1216<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

/s/ *Jeremy A. Tigan*

Jeremy A. Tigan (#5239)