# Exhibit A



# Transcript of Rohan Houlden

**Date:** August 29, 2023
**Case:** Qorvo, Inc. -v- Akoustis Technologies, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

## Page 1

```
 1  IN THE UNITED STATES DISTRICT COURT
 2  FOR THE DISTRICT OF DELAWARE
 3  C.A. No. 21-1417 (JPM)
 4  QORVO, INC.,
 5     Plaintiff,
 6  v.
 7  AKOUSTIS TECHNOLOGIES, INC. and
    AKOUSTIS, INC.,
 8
 9     Defendants.
10  ---------------------------------X
11
12
13           Tuesday, August 29, 2023
14           VIDEOTAPED DEPOSITION
15               OF ROHAN HOULDEN
16
17
18  Reported By:
19  Randi J. Garcia, RPR
20  Job No.:  502525
```

## Page 2

```
      Transcript of the deposition of
ROHAN HOULDEN, called for Oral Examination in
the above-captioned matter, said Deposition
being taken pursuant to Federal Rules of
Civil Procedure by and before RANDI J.
GARCIA, Registered Professional Reporter, and
Notary Public, held at Regus Charlotte,
University Executive Park, 301 McCullough
Drive, Suite 400, Charlotte, North Carolina,
held on Tuesday, August 29, 2023, commencing
at approximately 9:18 a.m.
```

## Page 3

```
A P P E A R A N C E S:

For Plaintiff Qorvo, Inc.
BY:  JONATHAN DEFOSSE, ESQ.
     ROBERT MASTERS, ESQ.
     Sheppard, Mullin, Richter & Hampton LLP
     2099 Pennsylvania Ave., NW,
     Suite 100
     Washington, DC 20006-6801


For Defendant Akoustis Technologies, Inc.
BY: DAVID A. JAKOPIN, ESQ.
    DIANNE L. SWEENEY,  ESQ.
    Pillsbury Winthrop Shaw Pittman
    2550 Hanover Street
    Palo Alto, CA 94304-1115 USA

and....

Pillsbury Winthrop Shaw Pittman
BY: THERESA ROOZEN, ESQ
    1200 Seventeenth Street, NW
    Washington, DC 20036 USA

Also Present:

Melody Adair, Videographer
```

## Page 4

```
                I N D E X

           WITNESS: ROHAN HOULDEN

     EXAMINATION                         PAGE

By Mr. DeFosse ..................................13
By Mr. Jakopin: ...............................345
By Mr. DeFosse: ...............................351

                    * * *
```

**Page 13**

1 Park.
2    Would counsel please voice identify
3 themselves and state whom they represent.
4    MR. DeFOSSE: Jonathan DeFosse on
5 behalf of Qorvo, Inc. Along with me is my
6 partner Robert Masters.
7    MR. JAKOPIN: David Jakopin from
8 Pillsbury Winthrop Shaw Pittman
9 representing Akoustis here with my
10 colleagues Dianne Sweeney and Theresa
11 Roozen.
12    THE VIDEOGRAPHER: The court reporter
13 today is Randi Garcia representing Planet
14 Depos.
15    The witness will now be sworn.
16 R O H A N  H O U L D E N, after having been
17 first duly sworn, was examined and testified
18 as follows: sworn
19    THE WITNESS: Yes.
20         EXAMINATION
21 BY MR. DeFOSSE:
22    Q. Good morning, Mr. Houlden. As you
23 heard, my name's Jonathan DeFosse. I'm one of
24 the attorneys representing Qorvo in this
25 matter.

**Page 14**

1    You understand that you're testifying
2 under oath today?
3    A. Yes.
4    Q. And it's the same oath that you would
5 take if you were testifying in court live in
6 front of a jury?
7    A. Yes.
8    Q. You understand that you're here today
9 to testify in a lawsuit that Qorvo has brought
10 against Akoustis Technologies, Inc. and
11 Akoustis, Inc.?
12    A. Yes.
13    Q. In response to a subpoena that you
14 received; is that right?
15    A. Yes.
16    Q. Okay.
17    (Thereupon, Exhibit 76 was marked for
18    identification.)
19 BY MR. DeFOSSE:
20    Q. I'm handing you what I marked as
21 Exhibit 76.
22    A. Okay.
23    Q. Do you recognize this as the subpoena
24 pursuant to which you're here to testify today?
25    A. Yes.

**Page 15**

1    Q. Have you been deposed before?
2    A. Yes.
3    Q. On how many occasions?
4    A. Two.
5    Q. Okay. And in what matters were
6 those?
7    A. One was 24 years ago. I used to own
8 a small escrow company. And then one about a
9 year ago on a -- on a lawsuit with respect to
10 discrimination of an employee at Akoustis.
11    Q. Okay. Today the -- we have a court
12 reporter who is going to be writing down
13 everything you say, so I'd ask you to please
14 provide audible answers to my questions.
15    A. Okay.
16    Q. Okay.
17    If I ask you a question that you
18 don't understand, I'd like you to please tell
19 me that you don't understand and I'll attempt
20 to rephrase the question, okay?
21    A. Okay.
22    Q. If you answer a question I ask
23 without asking me to clarify the question, I'm
24 going to assume that you understood the
25 question; is that fair?

**Page 16**

1    A. That is fair.
2    Q. Throughout the day today, the counsel
3 will be interposing objections to my questions.
4 I'd ask you to please pause before you answer a
5 question to give counsel time to object. And
6 then unless you're instructed not to answer,
7 you can just go ahead and answer the questions.
8 Okay?
9    A. Okay.
10    Q. Because we're -- our conversation is
11 going to be written down today, I'd ask that
12 you please also give me a chance to finish my
13 question before you answer, and I'll try to
14 extend the same courtesy to you.
15    A. Yes.
16    Q. We'll take breaks about every hour
17 today. If you need a break before the hour is
18 up, please just let me know. If there's a
19 question pending, we'll finish the answer and
20 then we'll take a break, okay?
21    Is there any reason you can't testify
22 fully and accurately today?
23    A. No.
24    Q. What is your current job?
25    A. I work at Gallium Semiconductor.

169

1  AKS -- AKTS00196501.
2      Mr. Houlden, I'd ask you to take a
3  quick look at this document and tell me if you
4  recognize it.
5      A.  I do not recognize it.
6      Q.  This is a document that was produced
7  to us by Akoustis from your files.
8      A.  Okay.
9      Q.  Would you agree with me that this is
10 a confidential Qorvo document?
11     A.  Yes.  It has confidential written
12 here, yes.
13     Q.  And if you look at page 2, this is a
14 presentation concerning the ▇ System Board,
15 QCA9882.
16     A.  Right.
17     Q.  Plus RFPA5522.  You see that?
18     A.  Yes.
19     Q.  ▇ what is ▇?
20     A.  ▇ is a WiFi company, solution
21 system company.
22     Q.  Did Akoustis -- has Akoustis sold any
23 products to ▇ as far as you're aware of?
24     A.  Yes.
25     Q.  What products were those?

170

1      A.  I believe they sold 1252 and 1256.
2      Q.  Those are BAW filters for WiFi
3  applications?
4      A.  Yes.
5      Q.  Five gigahertz BAW filters?
6      A.  Yes.
7      Q.  You would agree with me that
8  Exhibit 126 is a confidential Qorvo document?
9      A.  Yes.
10     Q.  And you did not have authorization to
11 share this document with Akoustis?
12     A.  Did I?  I don't even know if I shared
13 it with Akoustis.  I don't recall sharing it
14 with Akoustis.
15     Q.  So again, I will just direct you to
16 the bottom right-hand corner of the first page.
17 Do you see that there is a number that is down
18 there?
19     A.  Yes.
20     Q.  And it starts with the prefix AKTS.
21 Do you see that?
22     A.  Yes.
23     Q.  That means this was produced to Qorvo
24 out of Akoustis' files?
25     A.  Out of Akoustis files.

171

1      Q.  Yes.  And particularly out of your
2  files at Akoustis.
3      A.  Right.  So if it was in my -- if it
4  was -- so if it was in my file, if it was in my
5  files, but did I share it?  Because it's a PA,
6  and we don't do PAs at Akoustis.  So I would be
7  a little surprised if I shared it with other
8  people at Akoustis, but I may have, if you said
9  that -- I know I may have had a record of it
10 somewhere.
11         We don't do power amplifiers at
12 Akoustis, so this would not really bring any
13 value to anyone at Akoustis.
14     Q.  So in your view, we should add
15 Exhibit 126 to the growing pile of irrelevant
16 documents from Qorvo?
17         MR. JAKOPIN:  Objection.
18 Mischaracterizes his testimony.
19         THE WITNESS:  Probably little-value
20 pile, yes.
21 BY MR. DeFOSSE:
22     Q.  Okay.  You don't have any idea why
23 you would have taken this document with you to
24 Akoustis?
25     A.  Right, because Akoustis doesn't do

172

1  power amplifiers.
2         (Thereupon, Exhibit 127 was marked for
3  identification.)
4  BY MR. DeFOSSE:
5      Q.  Mr. Houlden, I've marked as
6  Exhibit 127 a multipage document.  The first
7  page of this is -- got the production number
8  AKTS00197071.  I'd ask you, do you recognize
9  what has been marked as Exhibit 127?
10     A.  No, I do not.
11     Q.  On the first page of this
12 Exhibit 127, you can see that this is a Qorvo
13 presentation?
14     A.  Yes.
15     Q.  And it concerns the IDP market
16 segment analysis.
17         Do you see that?
18     A.  Yes.
19     Q.  What does IDP mean?
20     A.  Infrastructure and defense.
21     Q.  And the date on this is June 2015.
22     A.  Yes.
23     Q.  So this would have been during the
24 time frame when you were still a general
25 manager of wireless connectivity at Qorvo?

**173**

1  A. Yes.
2  Q. Did Akoustis develop products for the
3  IDP market?
4  A. Well, it definitely -- well, we had
5  one defense customer, but infrastructure and
6  defense was really GaN. They were really
7  working -- they were really focused in Texas
8  and really GaN focused. So yes, we had one
9  defense customer, Akoustis, and tried to get in
10 the infrastructure market, but really not -- no
11 really key infrastructure customers. So it
12 wasn't really a market that we focused on.
13  Q. Exhibit 127 is a confidential Qorvo
14 document?
15  A. Yes.
16  Q. You did not have authorization to
17 share this document with Akoustis?
18  A. Right. And I'm not sure I shared it.
19 But I did not have the -- can you rephrase the
20 question again?
21  Q. You did not --
22  A. Did not have the right to have it.
23  Q. Okay. This is a document that under
24 your obligations, pursuant to Exhibit 77, you
25 were required to return to Qorvo?

**174**

1  A. Right. I'm not sure how I obtained
2  this document, so I'm not saying that I did not
3  return all my documents. I'm not sure how -- I
4  do not recall -- I have never seen -- I cannot
5  recall this document. So I don't know when --
6  how I got this document, and if I failed to
7  return it when I terminated or left in
8  September 2016.
9   Q. You also don't know why you would
10 have brought this document to Akoustis?
11  A. I do not know why this document was
12 on my laptop, if that's where you said you
13 found it because it has no value to Akoustis.
14 (Thereupon, Exhibit 128 was marked for
15 identification.)
16 BY MR. DeFOSSE:
17  Q. Mr. Houlden, I've handed you what has
18 been marked as Exhibit 128. I will identify
19 this for the record as a multipage document
20 with a production number on the first page as
21 AKTS00203690.
22   First page of this document says, CPE
23 WiFi E-strategy Review, and has the date
24 February 2016.
25   Do you see that?

**175**

1  A. Yes.
2  Q. Do you recognize this document?
3  A. No.
4  Q. Okay. In February 2016 you were
5  still working as a general manager at Qorvo?
6  A. Yes.
7  Q. What does CPE mean?
8  A. Consumer premise equipment.
9  Q. What is a CPE WiFi E-strategy Review?
10  A. I don't know what the "E" stands for.
11  Q. This is another confidential Qorvo
12 document?
13  A. Yes.
14  Q. You did not have authorization to
15 share this document with Akoustis?
16  A. Correct.
17  Q. And do you know why this document
18 would have been found in your files at
19 Akoustis?
20  A. No, I do not.
21 (Thereupon, Exhibit 129 was marked for
22 identification.)
23  Q. Mr. Houlden, I've handed you what has
24 been marked as Exhibit 129. I will identify it
25 for the record as a multipage document with the

**176**

1  production number on the first page of
2  AKTS00205076.
3   On the first page of this document it
4  says "Qorvo" and then "grow IDP, CPE WiFi
5  revenue and fiscal year 2017." And identifies
6  the author as James Klein.
7   Do you see that?
8  A. Yes.
9  Q. And the date of this document says,
10 "last update: May 19, 2016."
11  A. Yes.
12  Q. Again, this was during the time you
13 were general manager of the wireless
14 connectivity business unit at Qorvo?
15  A. Yes.
16  Q. You would agree with me that this is
17 a Qorvo confidential document?
18  A. Yes. But this is probably my major
19 business objective for my compensation. I'm
20 thinking, you know, that these may have been my
21 goals. I believe I am sensing these are my
22 corporate goals for my 2017 compensation.
23  Q. These list the -- if you look on, for
24 example, page -- slide 3, which is
25 AKTS00205078.

353

```
 1              CERTIFICATE
 2              NORTH CAROLINA
 3
 4          I, the undersigned authority, hereby
 5   certify that the foregoing transcript, page 1
 6   through 352 is a true and correct transcription
 7   of the deposition of Rohan Houlden taken before
 8   me at the time and place set forth on the title
 9   page hereof.
10          I further certify that said witness
11   was duly sworn by me according to law.
12          I further certify that I am not of
13   counsel to any of the parties to said cause or
14   otherwise interested in the event thereof.
15          IN WITNESS WHEREOF I hereunto set my
16   hand and affix official seal this 10th day of
17   September, 2023.
18       _____
                    Randi Garcia
19       RANDI GARCIA, COURT REPORTER, RPR
20              NOTARY PUBLIC
21
22
23
24
25
```

354

```
 1   I have read the foregoing transcript of my
 2   deposition and find it to be true and
 3   accurate to the best of my knowledge and
 4   belief.
 5
 6
 7
 8
 9   ROHAN HOULDEN
10   Sworn and subscribed to before me on
11
12   this _____ day
13   of _____ 2023.
14
15
16
17   Notary_____
18   My Commission Expires_____
19
20
21
22
23
24
25
```