# Exhibit B



# Transcript of Dr. Michael Lebby

**Date:** January 31, 2024
**Case:** Qorvo, Inc. -v- Akoustis Technologies, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

**Page 1**

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE

QORVO, INC.,              )
                          )
     Plaintiff,           )
                          )
  VS.                     ) NO. 21-1417 JPM
                          )
AKOUSTIS TECHNOLOGIES, INC., )
AKOUSTIS, INC.,           )
                          )
     Defendants.          )
--------------------------)




              FOR ATTORNEYS' EYES ONLY

              IN-PERSON DEPOSITION OF
                  DR. MICHAEL LEBBY
              WEDNESDAY, JANUARY 31, 2024








  STENOGRAPHIC REPORTER:  CHRISTA YAN, CSR NO. 14316, RPR
                          ------
```

**Page 2**

```
IN-PERSON APPEARANCES:

FOR PLAINTIFF:
   SHEPPARD MULLIN RICHTER & HAMPTON LLP
   BY:  JONATHAN DEFOSSE, ATTORNEY-AT-LAW
   2099 Pennsylvania Avenue, NW, Suite 100
   Washington, D.C. 20006
   (202) 747-1932
   tcremen@sheppardmullin.com

FOR DEFENDANT:
   SQUIRE PATTON BOGGS, LLP
   BY:  VICTORIA SMITH, ATTORNEY-AT-LAW
   1841 Page Mill Road, Suite 150
   Palo Alto, California 94304
   (650) 843-3237
   ronald.lemieux@squirepb.com
   victoria.smith@squirepb.com




This in-person deposition was not videotaped.





                    --oOo--
```

**Page 3**

```
                 INDEX OF EXAMINATIONS

                                               PAGE
MR. DEFOSSE                                      5
MS. SMITH                                      240






                    --oOo--






Witness's Changes or Corrections               245
Reporter's Certificate                         247





                    --oOo--
```

**Page 4**

```
                      E X H I B I T S

EXHIBIT        FOR IDENTIFICATION              PAGE
Exhibit 965 - Rebuttal Report of Dr. Michael    12
              Lebby Regarding Trade Secrets
              December 20, 2023, Binder
Exhibit 966 - Reverse Costing Analysis         123
              Qorvo TQF6405 High Band FEM
              SMR-BAW Filter iPhone 6s Plus
              AKTS_01210570
Exhibit 967 - System Plus Consulting Reverse   126
              Costing, Structural, Process
              and Cost Report AKTS_01039458
Exhibit 968 - Expert Report of R. Cuyler       215
              Robinson November 21, 2023




                    --oOo--
```

**Page 5**

1  BE IT REMEMBERED that on WEDNESDAY, the 31ST DAY OF
2  JANUARY, 2024, at the hour of 9:02 a.m., Pacific Standard
3  Time, of said day, at Four Embarcadero Center, 17th Floor,
4  San Francisco, California 94111, before me personally,
5  CHRISTA YAN, a Certified Shorthand Reporter, State of
6  California, personally appeared DR. MICHAEL LEBBY, who was
7  examined as a witness in said cause; that said transcript
8  format was prepared in accordance with California Code of
9         Regulations Section 2473.
10            --oOo--
11        DR. MICHAEL LEBBY,
12 the Witness, called on behalf of the Defendant, being duly
13 sworn to state the truth, the whole truth, and nothing but
14    the truth, testified on oath as follows:
15           EXAMINATION
16 BY MR. DEFOSSE:
17  Q  Good morning, Dr. Lebby. Thank you for being
18 here with us today. How many times have you testified in
19 any type of litigation previously?
20  A  When you mean testified are you looking for
21 testified at trial or just depositions or both?
22  Q  Let's start with depositions. How many times
23 have you been deposed?
24  A  At least 60 times.
25  Q  Okay. And how many times have you testified at

**Page 6**

1  trial?
2  A  Probably 20 times or more. I -- you have to
3  check to see.
4  Q  Okay. And when you say 20 times or more. Are
5  you including all types of litigation, trials including
6  arbitrations?
7  A  I don't believe there's any arbitrations, but
8  certainly I'm including PTAB, district court and ITC.
9  Q  Okay. So you understand you're testifying today
10 under oath?
11  A  I do.
12  Q  And it's the same oath that you'd take in a court
13 of law?
14  A  I believe it is.
15  Q  I'm sure you're familiar with deposition ground
16 rules, but I'm going to run through them just to have them
17 on the record here. If I ask you a question today you
18 don't understand, I'd ask you to please let me that you
19 don't understand it and I can try to rephrase it, okay?
20  A  I can do that.
21  Q  Is there anything that would prevent you from
22 hearing or understanding my questions today?
23  A  Not today.
24  Q  Anything that would prevent you from providing
25 full and accurate testimony?

**Page 7**

1  A  Not today.
2  Q  If you need a break, I'd like you to please let
3  me know and we'll take a break as long as there's not a
4  question pending.
5  A  I can do that.
6  Q  Your counsel throughout the day may be
7  interposing objections. You should go ahead and answer
8  the question unless she instructs you not to answer, okay?
9  A  I understand.
10  Q  What did you do to prepare for your deposition
11 today?
12  A  I went through at least my expert report and my
13 colleagues' expert reports and a number of the documents
14 over the last two or three days.
15  Q  And when you say your colleagues' expert reports,
16 who do you mean?
17  A  Robert Darveaux and Clark Nguyen, I think that's
18 how you pronounce his name. I also reviewed Shanfield's
19 expert report and some of the citations in those reports.
20  Q  And you said some of the citations. How did you
21 choose which citations to review?
22  A  Randomly. I reviewed all the information earlier
23 in this case. But I didn't have enough time to review all
24 citations or references in the last couple of days. So I
25 just chose randomly things that (indecipherable utterance)

**Page 8**

1  I thought were pertinent.
2  THE STENOGRAPHIC REPORTER: Like the what?
3  THE WITNESS: Randomly things that I thought were
4  pertinent.
5  THE STENOGRAPHIC REPORTER: Thank you.
6  BY MR. DEFOSSE:
7  Q  Other than reviewing materials, did you do
8  anything else to prepare for your deposition today?
9  A  I talked with counsel twice.
10  Q  Okay. And were those in-person meetings?
11  A  Yes, they were.
12  Q  Okay. And what days did you meet?
13  A  What day is today? Today is Wednesday. So it
14 was Sunday and Monday.
15  Q  And for how long did you speak with counsel on
16 Sunday?
17  A  Three to four hours.
18  Q  And how long was the meeting on Monday?
19  A  Similar time frame.
20  Q  Have you ever had any portion of your opinions
21 excluded in any case in which you've offered them?
22  A  I don't believe so. I've had two Daubert
23 challenges over 140 cases. One was definitely turned
24 down. The second one was partly accepted, but by the time
25 we came to trial, it was essentially diluted down to

125

1 would expect this to be public in 2016 or slightly
2 earlier.
3    Q   Okay. And you understand that the reverse
4 costing analysis performed by System Consulting Plus
5 represents their evaluation of publicly available data; is
6 that right?
7    MS. SMITH: Objection; calls for speculation.
8    THE WITNESS: So I don't know all the details of this
9 document and how System Plus did their teardown. But this
10 is certainly System Plus's perspective on their analysis
11 of doing a teardown on iPhone 6s Plus. I would expect
12 other companies to do the teardown for the same mobile
13 phone to maybe come up with slightly different results.
14 But certainly this is System Plus's perspective on the
15 data they generated from doing the teardown.
16 BY MR. DEFOSSE:
17    Q   And you understand that that analysis that
18 they've provided was based on publicly available data?
19    MS. SMITH: Objection; calls for speculation.
20    THE WITNESS: So I don't know how System Plus
21 Consulting sourced all its data. It certainly does not
22 list how it sourced its data. But I would expect as a
23 person who has the potential to purchase this type of
24 report, that the data is publicly available.
25

126

1 BY MR. DEFOSSE:
2    Q   Okay. And if you could turn to Slide 88 of
3 Exhibit 966, which has the production number
4 AKTS_01210657. Let me know if you're there.
5    A   Yeah, I assume you're referring to the Bates
6 number of page 88 of the Exhibit 966.
7    Q   Okay. And if you look at the top of Slide 88, it
8 says, Reverse costing analysis represents the best
9 cost/price evaluation given the publicly available data
10 and estimates completed by industry experts. Do you see
11 that?
12    A   I do see that.
13    Q   And I think that's consistent with the answer you
14 gave a moment ago that you would expect this report to be
15 based on publicly available data?
16    A   I would agree with you. I would expect this
17 report, Exhibit 966, to be based on publicly available
18 data. So that I can buy this or purchase this and
19 knowingly that I'm not intentionally seeing confidential
20 information.
21    (Whereupon Deposition Exhibit 967 was
22    marked for identification.)
23 BY MR. DEFOSSE:
24    Q   Okay. Dr. Lebby, I've handed you what's been
25 marked as Exhibit 967. This is a multipage document, the

127

1 first page of which has the production number
2 AKTS_01039458 on it.
3    Do you recognize Exhibit 967?
4    A   I recognize Exhibit 967, and I cited that in my
5 corrected expert report on page 31.
6    Q   Okay. And this is another example that you've
7 provided of the type of market analysis report that's
8 available for purchase; is that right?
9    A   That is correct. Yeah, this is an example of
10 what I would refer to as a teardown analysis. I believe
11 the report here by System Plus Consulting is entitled,
12 Reverse costing structural process and cost report.
13    Q   Okay. And this market analysis report looks at
14 an Akoustis product; is that right?
15    A   From the title page of Exhibit 967, it certainly
16 looks like it talks about the Akoustis filter product for
17 Wi-Fi market applications.
18    Q   And on the cover page, this report's dated July
19 of 2021?
20    A   I would agree, Exhibit 967 on the cover page does
21 indicate July 2021. This seems to be the second version.
22    Q   Okay. And if you look on the third page of the
23 document, the table of contents page, you see there's a
24 section on physical analysis?
25    A   I do see that.

128

1    Q   And it appears that a physical analysis has been
2 performed of three products, the A10155, the AKF-1256, and
3 the A10165; is that right?
4    A   I can confirm that those three products you just
5 listed, the A10155, AKF-1256, and A10165 are part of the
6 teardown analysis of this report in Exhibit 967.
7    Q   Okay. And you understand that each of those
8 products is an Akoustis product?
9    A   I believe these three products that are in
10 Exhibit 967, A10155, AKF-1256, and A10165 are Akoustis
11 products. Although I did look at each one of those
12 products, or the chips, or the photographic image of the
13 chip, and I didn't see the name Akoustis, so I have to
14 assume they are Akoustis products.
15    Q   What level of sophistication do you believe
16 System Plus Consulting brings to performing the type of
17 analysis you see in Exhibit 967?
18    MS. SMITH: Objection; vague.
19    THE WITNESS: So the question pertained to what sort
20 of information do these types of teardown reports bring
21 the customer of these reports, customers such as myself,
22 who probably would purchase a report of this type, what I
23 would see from this report. The report I'm talking about
24 is Exhibit 967.
25    I do actually put a list together in a

### 129

paragraph 23 of my corrected expert report, that lists a number of different things that can come from these, these reports. And these reports are fairly significant. In this particular case, in Exhibit 967 there's 170 pages of information that pertain to the teardown of three different products from Akoustis. So as a person who would purchase this report, I would get a really good idea of what these filters are looking like, how they perform.

As I look through the table of contents, there's a whole bunch of different sections that would give interesting information if I really wanted to know, for example, the costs of these chips, the comparison of the costing of these chips versus different companies, the packaging, some of the assembly, the manufacturing process, the cross section of the fabrication, and some of the company profiles that produce these types of chips.

So I believe there's a lot of information that can be gotten for under $10,000, and this is why these companies exist and seem to be reasonably successful.

BY MR. DEFOSSE:

Q   That wasn't quite my question. So I'm going to try it again.

My question is, do you have an understanding as to the level of sophistication of System Consulting Plus in order to perform this type of analysis?

### 130

MS. SMITH: Objection; vague.

THE WITNESS: Okay. I understand the question now.

I don't know all the techniques System Plus Consulting have implemented into doing the teardowns. However, through my experience as an expert witness and doing teardowns myself for different types of products, I typically will go to materials analysis companies to go analyze different materials to cut things open to do an understanding of different types of assembly and packaging processes.

So I would assume that these types of companies have access to these different types of analysis labs, which are available all over the country, just like I would have access to these labs as an expert witness being asked to do a teardown on a product, sometimes for an infringement purpose. Whether System Plus Consulting have their own lab, I don't know.

But it's quite easy to access a lab to do all this work.

BY MR. DEFOSSE:

Q   Do you know whether the Akoustis products that were the subject of the teardown analysis in Exhibit 967 were available for purchase on the market?

A   I don't know the detailed answer of this question. Although, if I was going to make an assumption,

### 131

I would assume that they would be available at some level and certainly, open for customer purchase. And I would point you to Exhibit 966 on page 88 where System Plus Consulting have called out a line on the top part of the back page, quote, Reverse costing analysis represents the best cost/price evaluation given the publicly available data and estimates completed by industry experts, end quote.

I would presume that line is somewhere in Exhibit 967, but I'm not sure where it is. But I would fully expect Exhibit 967 and System Plus Consulting to have being able to purchase these Akoustis products legitimately and I'm not looking at confidential information.

Q   Can I ask you to turn to page 42, and you can put those aside, page 42 of your expert report starting with paragraph 76.

A   Okay. I'm at paragraph 76.

Q   Okay. And as I understand it in Section B, 4B of your report starting at paragraph 76 and running through paragraph 80, you are describing your opinion that Akoustis was ahead of Qorvo in the 5 gigahertz technology and products; is that right?

A   So in the section of my corrected expert report in chapter Roman numeral IV, Section B, paragraph 76 to

### 132

80, I do entitle the section, quote, All those internal emails corroborate the fact that Akoustis was ahead of Qorvo in 5 gigahertz technology and product, end quote. And I support that with my opinions in paragraph 76 to 80.

Q   Okay. And if you look at the paragraph 76, on the bottom of 42 carrying over to page 43, you say, Akoustis was technologically and commercially ahead of Qorvo, not only -- with not only the development of 5 gigahertz range filters, but especially with FBAR filters for applications in wireless RF bandwidth markets, do you see that?

A   I do see that.

Q   What did you do to in order to reach your opinion that Akoustis was technologically and commercially ahead of Qorvo with respect to 5 gigahertz range filters?

A   So the opinions I've put in my corrected expert report, chapter Roman numeral IV, Subsection B, in paragraph 76 to 80, I made that opinion after looking through a number of documents. I've cited a few documents. I've also cited Dr. Darveaux's analysis in paragraph 77. I believe that was Section 8 of his expert reports.

And it was clear to me through my analysis of the documents I reviewed in this case that Qorvo was really struggling to come up with a 5 gigahertz filter for its

## 245

1  Please be advised I have read the
   foregoing deposition, pages 1 through
2  247, inclusive.
3  I hereby state there are:
4
5
6
7  (Check one)   ____ no corrections

              ____ corrections per attached
8
9
10
11       DR. MICHAEL LEBBY
12
13
14
15
16
17
18
19
          --oOo--
20
21
22
23
24
25

## 246

1       WITNESS'S CHANGES OR CORRECTIONS
2
3  NOTE:   If you are adding to your testimony, print
          the exact words you want to add.  If you are
4  deleting from your testimony, print the exact
          words you want to delete.  Specify with "Add"
5  or "Delete" and sign this form.
6
     Deposition of:    DR. MICHAEL LEBBY
7    Case Title:       QORVO V. AKOUSTIS
     Date of Deposition: JANUARY 31, 2024
8
9  I,_____have
10 the following corrections to make to my deposition:
11 PageLine Change/Add/Delete
12
13 ___ ___ _____
14 ___ ___ _____
15 ___ ___ _____
16 ___ ___ _____
17 ___ ___ _____
18 ___ ___ _____
19 ___ ___ _____
20 ___ ___ _____
21 ___ ___ _____
22 ___ ___ _____
23 ___ ___ _____
24 ___ ___ _____
25 ___ ___ _____

## 247

1              REPORTER'S CERTIFICATE
2
3       I, Christa Yan, CSR No. 14316, do hereby declare:
4       That, prior to being examined, the witness named in
   the foregoing proceeding was by me duly sworn pursuant to
5  Section 30(f)(1) of the Federal Rules of Civil Procedure,
   and the proceeding is a true record of the testimony given
6  by the witness as accurately as possible.  That said
   proceeding was taken down by me stenographically at the
7  time therein named and thereafter reduced to text under my
   direction.
8
       ___ That said witness was requested to review the
9  transcript and make any changes to the transcript as a
   result of that review pursuant to Section 30(e) of the
10 Federal Rules of Civil Procedure.
       ___ No changes have been provided by the witness
11 during the period allowed.
       ___ The changes made by the witness are appended to
12 the transcript.
       ___ No request was made that the transcript be
13 reviewed pursuant to Section 30(e) of the Federal Rules of
   Civil Procedure.
14
       I further declare that I have no interest in the event
15 of the action.  I declare under penalty of perjury under
   the laws of the United States of America that the
16 foregoing is true and correct.
17      WITNESS my hand this 5th day of February 2024
18
19
20
21     _____
       Christa Yan, CSR NO. 14316
22
23
24
25