

600 N. King Street • Suite 400    Writer's Direct Access:
P.O. Box 25130 • Wilmington, DE 19801    (302) 429-4232
Zip Code For Deliveries 19801    Email: sbrauerman@bayardlaw.com

April 5, 2024

**VIA CM/ECF**

Honorable Jon Phipps McCalla
Odell Horton Federal Building
167 North Main Street
Chambers Room 942
Memphis, TN 38103

RE:   *Qoorvo, Inc. v. Akoustis Technologies, Inc., et al.*, C.A. No. 21-1417-JPM

Dear Judge McCalla:

On behalf of defendants Akoustis, Inc, and Akoustis Technologies, Inc. (collectively "Akoustis"), we write in response to Mr. Tigan's letter from yesterday, April 4, 2024, for plaintiff Qorvo, Inc. ("Qorvo"). Qorvo's letter was submitted in response to the Court's invitation at the end of oral argument during the April 2 hearing on the parties' *Daubert* motions. The Court provided Qorvo's counsel with one last opportunity to submit secondary authority endorsing the head start unjust enrichment methodology of Qorvo's damages expert, Melissa Bennis, for Qorvo's alleged damages for trade secret misappropriation. The methodology underlying her opinion is based on the differential in Akoustis' bare revenue in the "real" and "but-for worlds," with each adjusted to net present value as of June 30, 2024 using Akoustis' weighted average cost of capital as the discount factor.

Qorvo's April 4 letter identifies no secondary authority endorsing Ms. Bennis' head start unjust enrichment methodology. Instead, Qorvo's letter largely repeats the argument made in its opposition brief and at oral argument – trying to keep the focus on Ms. Bennis' use of the time value of money and not her use of bare revenue without attendant costs for generating the revenue.

As argued in Akoustis' opening and reply briefs, no dispute exists that the time value of money is a recognized economic principle for viewing the present value of an existing and future stream of profits, revenue, or expenses. The calculation used to obtain that present value is the formula displayed in Qorvo's letter brief at the top of page 2.

As explained in Akoustis' briefs and at oral argument – and as the Court's comments at argument made clear – while Ms. Bennis used a present value calculation, the fundamental basis of her challenged methodology is the use of bare revenue without attendant costs for generating



the revenue to which the present value calculation is applied.  Because gross *revenue* is not a cognizable basis for head start unjust enrichment damages, simply adjusting that revenue to present value does not make it cognizable.

Instead of supporting Qorvo's argument, close examination of its letter brief underscores the fatal flaw in Ms. Bennis' methodology.  Near the top of page 2 beneath the present value formula, Qorvo argues that "[t]here are numerous other secondary sources recognizing both the economic benefit of the time value of money and the methodology that Ms. Bennis used to calculate that economic benefit."  The secondary sources cited do recognize the present value *principle*.  None of them, however, recognize Ms. Bennis' underlying methodology other than her adjustment of revenue into present value.

Qorvo argues in the next paragraph on page 2:

> As reflected in the secondary sources cited above, the time value of money methodology is based on *cash flows*. In this case, the cash flows are the revenues Akoustis received 55 months earlier in time. Importantly, *the references submitted by Qorvo confirm that costs are irrelevant to determining the economic benefit* of the time value of money. [Emphasis added.]

The second italicized portion of the excerpt from Qorvo's letter – that the secondary sources "confirm costs are irrelevant to determining the economic benefit" – is nowhere found in any of the sources Qorvo provides.  Moreover, the examples discussed in Exhibits A-D are generally investments that inherently do not involve attendant costs for generating such revenue.

Both Qorvo's letter and its cited sources refer to "cash flows."  Qorvo's letter assumes "cash flows" means "revenue."  That assumption is wrong.  In the accounting text *Principles of Accounting*, for example, accountants are taught that cash flows are the sum of cash inflows and cash outflows: "A positive NPV implies that the present value of the cash inflows from the project are greater than the present value of the cash outflows, which represent the expenses and costs associated with the project." Exhibit A, Chapter 11 at 2; *see also id.* at 11 ("When the NPV is determined to be $0, the present value of the cash inflows and the present value of the cash outflows are equal.").  The Harvard Business Review's "A Refresher on Net Present Value" (attached as Exhibit A)[1] similarly discusses how to calculate present value.  After expressing the net present value formula, the review states that "[t]his is the sum of the present value of cash flows (*positive and negative*) for each year associated with the investment, discounted so that it's expressed in today's dollars."  Ex. B at 5 (emphasis added).  Needless to say, one cannot have a negative cash flow unless expenses are included.

The three categories of unjust enrichment damages for trade secret misappropriation are defendant's profits, avoided development costs, and head start benefit.  D.I. 457 at 10.  By expressing Akoustis' head start "benefit" purely in terms of its bare revenue, Ms. Bennis' unjust enrichment methodology is no different than calculating a "defendant's profit" unburdened by the attendant costs of generating the revenue, such as costs of goods sold.  If her methodology

---

[1] Available at https://hbr.org/2014/11/a-refresher-on-net-present-value.



were accepted by courts[2] or respected secondary authorities, nobody would resort to a defendant's profits for an unjust enrichment calculation because calculating unjust enrichment using a defendant's revenue would always result in higher damages.

Finally, Qorvo's letter brief falsely attempts to portray Ms. Bennis has having considered Akoustis' costs:

> Here, Ms. Bennis determined (based on Dr. Shanfield's opinion) that Akoustis had **avoided costs** as a result of misappropriating Qorvo's trade secrets. *E.g.,* D.I. 484, Ex. A (Bennis Rpt.), p. 41. In other words, in addition to the benefit of receiving cash flows 55 months early, Akoustis also **lowered** its expenses by misappropriating Qorvo's trade secrets. Because Akoustis **avoided costs** by misappropriating Qorvo's trade secrets, the only impact of accounting for Akoustis' costs would be to **increase** the damages owing to Qorvo—i.e., the economic value of the avoided costs would be added to the economic value of the benefit of receiving cash flows early. *Id.*

Qorvo Letter Brief at 3 (original emphasis).  Having the cited passage from Ms. Bennis' Expert Report before us is revealing:

> I note that while Akoustis has incurred significant expenses to date, had it not misappropriated Qorvo's trade secrets this development process would have not only taken a longer period of time, but Akoustis also would have incurred significantly more expenses. For instance, this figure does not account for the considerable actual expenses that would have been incurred in research and development in order to bring a product such as this one to market. As such, this calculation of damages is conservative in that it does not include the impact that these additional expenses would have.

The passage is notable in two respects.  First, it is conclusory in the extreme – nowhere in her Expert Report does Ms. Bennis undertake any analysis of Akoustis' costs at all, including their amount and timing (in contrast to the analysis performed by Ms. Irwin in her Expert Rebuttal

---

[2] Qorvo's Letter Brief refers to *Children's Broad. Corp. v. Walt Disney Co.,* 357 F.3d 860, 866, 869 (8th Cir. 2004) as "upholding jury award based upon revenue in case for misappropriation of trade secrets where expert used discounted cash flow method to value revenue streams."  In that section of its opinion, the court of appeals was analyzing the district court's award of prejudgment interest.  Part of the discussion addressed whether the award of prejudgment interest improperly included future damages.  The court determined that was not the case because future damages had been discounted to present value.  In any event, the court of appeals did not analyze or discuss whether the methodology used in the district court was either proper or recognized.  *See id.* at 868 (stating, "The difference between the two values *allegedly* constitutes the amount ABC Radio and Disney were unjustly enriched.") (emphasis added).  The case did not involve a *Daubert* challenge, and in any event was before the recent amendment to Federal Rule of Evidence 702, precluding the practice of having the trier of fact "weigh" testimony that is not based on accepted methodologies.



Report).  Ms. Bennis' excerpt above is speculative *ipse dixit*.  Second, the excerpt does not cite Dr. Shanfield for anything, rendering the assertion in Qorvo's Letter Brief – that "Ms. Bennis determined (based on Dr. Shanfield's opinion) that Akoustis had **avoided costs** as a result of misappropriating Qorvo's trade secrets" – fanciful.

\* \* \*

Even with its one last opportunity to supplement the record, Qorvo fails to point to any court or peer reviewed authority for the concept that the timing of the receipt of revenue without consideration of the attendant costs is a reliable measure for head start unjust enrichment damages.  Akoustis respectfully urges that its *Daubert* challenge to Ms. Bennis' opinion be sustained.

Sincerely,

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)

cc:   counsel of record