IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] FINAL JURY INSTRUCTIONS**

# TABLE OF CONTENTS

1. **General Instructions** ............................................................................................. **1**

    1.1    Introduction ............................................................................................. 1

    1.2    Jurors' Duties ............................................................................................. 2

    1.3    Evidence Defined ............................................................................................. 3

    1.4    Direct and Circumstantial Evidence ............................................................. 4

    1.5    Consideration of Evidence ............................................................................ 5

    1.6    Statements of Counsel ................................................................................... 6

    1.7    Credibility of Witnesses ................................................................................ 7

    1.8    Number of Witnesses ..................................................................................... 8

    1.9    Expert Witnesses .......................................................................................... 9

    1.10    Deposition Testimony .................................................................................. 10

    1.11    Use of Notes ................................................................................................ 11

    1.12    Burdens of Proof ......................................................................................... 12

2. **Misappropriation of Trade Secrets** ...................................................................... **14**

    2.1    Introduction ............................................................................................... 14

    2.2    Definition of "Trade Secret" [Disputed] .................................................... 15

    2.3    Secrecy ........................................................................................................ 17

    2.4    "Independent Economic Value" Requirement ............................................. 18

    2.5    "Reasonable Measures" Requirement .......................................................... 19

    2.6    Definition of Misappropriation .................................................................... 20

    2.7    Definition of "Improper Means" .................................................................. 21

    2.8    "Use" of a Trade Secret [Disputed] ............................................................ 23

    2.9    Trade Secret Damages Generally ................................................................ 25

    2.10    Trade Secret Damages – Unjust Enrichment .............................................. 26

    2.11    Trade Secret Damages – Theories of Unjust Enrichment [Disputed] .................. 27

    2.12    Trade Secret Damages – Willfulness / Exemplary Damages ................................ 28

3. **Unfair and Deceptive Trade Practices** .................................................................. **29**

    3.1    Unfair and Deceptive Trade Practices Allegation Generally [Disputed] .............. 29

    3.2    Elements of Claim for Unfair and Deceptive Trade Practices ............................. 30

    3.3    In Commerce ............................................................................................... 31

    3.4    Proximate Cause ......................................................................................... 32

|  | 3.5 | Unfair and Deceptive Trade Practices – Compensatory Damages | 33 |

| **4.** | **Civil Conspiracy** | | **35** |
|  | 4.1 | Civil Conspiracy Allegation Generally | 35 |
|  | 4.2 | Elements of Claim for Civil Conspiracy | 36 |
|  | 4.3 | Civil Conspiracy – Elements Continued | 37 |

| **5.** | **Claim Limitations** | | **38** |
|  | 5.1 | Statute of Limitations [Disputed] | 38 |

| **6.** | **False Advertising** | | **40** |
|  | 6.1 | False Advertising Allegation Generally [Disputed] | 40 |
|  | 6.2 | Element of Claim for False Advertising [Disputed] | 41 |
|  | 6.3 | False [*or Misleading*] Statements [Disputed] | 43 |
|  | 6.4 | Deception [*or Tendency to Deceive*] [Disputed] | 46 |
|  | 6.5 | Materiality [Disputed] | 48 |
|  | 6.6 | Interstate Commerce | 50 |
|  | 6.7 | Entitlement to Damages | 51 |
|  | 6.8 | False Advertising Damages [Disputed] | 52 |

| **7.** | **Patent Infringement** | | **54** |
|  | 7.1 | Summary of Patent Issues | 54 |
|  | 7.2 | Patent Claims Generally | 56 |
|  | 7.3 | Claim Construction | 57 |
|  | 7.4 | Claim Construction – Independent and Dependent Claims | 58 |
|  | 7.5 | Infringement Generally | 59 |
|  | 7.6 | Direct Infringement – Literal Infringement | 60 |
|  | 7.7 | Direct Infringement – Doctrine of Equivalents | 61 |
|  | 7.8 | Willful Infringement | 62 |
|  | 7.9 | Validity—Burden Of Proof | 63 |
|  | 7.10 | Validity—Person of Ordinary Skill in the Art | 64 |
|  | 7.12 | Validity—Prior Art | 65 |
|  | 7.13 | Validity—Obviousness | 66 |
|  | 7.14 | Compensatory Damages – Patent Infringement | 69 |
|  | 7.15 | Reasonable Royalty | 71 |
|  | 7.16 | Reasonable Royalty – Factors | 72 |
|  | 7.17 | Reasonable Royalty – Apportionment | 74 |

7.18   Patent Glossary ......................................................................................75

**8.**   **Deliberations and Verdict** .............................................................. **78**

8.1   Introduction.............................................................................................78

8.2   Unanimous Verdict ...............................................................................79

8.3   Duty to Deliberate ................................................................................80

8.4   Social Media ...........................................................................................81

8.5   Court Has No Opinion .........................................................................82

# 1. <u>General Instructions</u>

## 1.1    Introduction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating testimony and evidence. Then I will explain the positions of the parties and the law you will apply in this case. Then we will hear the closing arguments. After that, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

**1.2     Jurors' Duties**

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue. It is my job to instruct you about the law. You are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3    Evidence Defined

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed. Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.

Their questions and objections are not evidence. My legal rulings are not evidence. You should not be influenced by a lawyer's objection or by my ruling on that objection. None of my comments and questions are evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And, sometimes, I may have ordered you to disregard things that you saw or heard, or that I struck from the record. You must ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way. Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.4**     **Direct and Circumstantial Evidence**

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.

The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.5    Consideration of Evidence**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**1.6**     **Statements of Counsel**

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

## 1.7    Credibility of Witnesses

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all of the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand.

Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from or inconsistent with the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**1.8     Number of Witnesses**

One more point about witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were and how much weight you think their testimony deserves. Concentrate on that, not the number of witnesses.

**1.9**    **Expert Witnesses**

During the trial, you heard testimony from expert witnesses. When knowledge or special skill in a technical or business subject matter might be helpful to the jury, a person who has that special training or experience in that technical or business field—called an expert witness—is permitted to state his or her opinion on those technical or business matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon their testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

**1.10     Deposition Testimony**

During the trial, certain testimony was presented to you through the excerpts from depositions. The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence. You should not attribute any significance to the fact that the depositions may appear to have been edited. Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

**1.11    Use of Notes**

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is generally a tendency, I think, to attach undue importance to matters that one has written down. Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory. You should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.

Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

## 1.12    Burdens of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." Here, there are two different burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you. I will now remind you what they mean.

As you know, the Plaintiff in this case is Qorvo, Inc., which I will refer to in these instructions as "Plaintiff" or "Qorvo." The defendants are Akoustis Technologies, Inc. and Akoustis, Inc., which I will refer to as "Defendants" or collectively as "Akoustis."

Qorvo asserts claims against Akoustis for patent infringement, false advertising, misappropriation of trade secrets, unfair and deceptive trade practices, and civil conspiracy. Akoustis denies these assertions.

Qorvo has the burden of proving its case by a preponderance of the evidence. This means Qorvo has to produce evidence which, when considered in light of all the facts, leads you to believe that what Qorvo claims is more likely true than not. To put it differently, if you were to put Akoustis's evidence on the opposite sides of the scale, the evidence supporting Qorvo's claims would have to make the scales tip to its side. If the scale reflects that the two sides are equal or tips in favor of Akoustis, you must find for Akoustis.

Akoustis contends that Qorvo did not file its trade secret misappropriation and unfair and deceptive trade practices claims in this case within the time required by the law. Qorvo denies this assertion. Akoustis must prove this defense by a preponderance of the evidence. Akoustis also contends that all of the asserted patent claims are invalid. Akoustis has the burden of proving that the asserted claims are invalid by clear and convincing evidence. Proof by clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is

-12-

highly probable. Proof by clear and convincing evidence is a higher burden of proof than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the highest burden of proof in our judicial system. It applies in criminal cases, but does not apply to civil cases, like this one, and, therefore, you should put it out of your mind.

## 2.  <u>Misappropriation of Trade Secrets</u>

**2.1   Introduction**

Qorvo alleges that Akoustis misappropriated its trade secrets in violation of the federal Defend Trade Secrets Act and the North Carolina Trade Secrets Protection Act.

Under both claims, for each trade secret that Qorvo identifies, Qorvo has to prove by a preponderance of the evidence the following elements: (1) the existence of a trade secret; and (2) misappropriation of that trade secret.

Under the federal Defend Trade Secrets Act, Qorvo also has to prove by a preponderance of the evidence that each trade secret at issue is related to a product or service used in, or intended for use in, interstate or foreign commerce.

**2.2      Definition of "Trade Secret" [Disputed]**

*[Akoustis proposes and Qorvo opposes the bracketed language in italics below]*

In deciding the misappropriation of trade secrets issue, you must first decide whether Qorvo owned an identifiable trade secret or trade secrets. The term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

(1) the information is secret;

(2) the owner of the information has taken reasonable measures to keep such information secret; and

(3) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

*[In articulating a trade secret, it is not enough for the Qorvo to point to a broad area of technology. Rather, Qorvo has the burden to identify concrete information that it contends constitutes its trade secrets. By its definition, a "trade secret" concerns information. By contrast, an employee's general knowledge, skills, experience, talents, or abilities cannot be trade secrets.]*

Qorvo Authority (for omitting disputed language): *Agrofresh, Inc. v. Essentive LLC et al.*, No. 1:16-cv-00662-MN, D.I. 575 (D. Del. Oct. 11, 2019) (jury instructions) (omitting disputed language); *HID Global Corporation v. Vector Flow, Inc. et al.*, No. 1:21-cv-01769-GBW, D.I. 497 (D. Del. Jan. 23, 2024) (jury instructions) (same); ABA Model Jury Instructions Business Torts Litigation 392 (same); N.C.G.S. § 66-152(3); 18 U.S.C. § 1839(3)(A)(B).

Akoustis Authority:  *Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), (D. Del.), D.I. 575 (Final Jury Instructions); *Oakwood Laboratories LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) (explaining that a plaintiff must describe the trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who

are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.").

**2.3**     **Secrecy**

To determine whether a trade secret exists, you must decide whether the information was indeed secret when Akoustis' allegedly wrongful conduct occurred. Matters that are generally known to the public at large or to people in a trade or business, are not trade secrets. Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information. In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

Absolute secrecy is not necessary for information to qualify as a trade secret. There is no requirement that no one else in the world possess the information. Rather, Qorvo must demonstrate that the information was known only to it or to a few others who have also treated the information as a trade secret.

**2.4     "Independent Economic Value" Requirement**

        To qualify as a trade secret, the information must derive independent economic value from the fact that it is not generally known or not readily ascertainable by proper means.  To derive independent economic value from not being generally known means that the information gives a business a competitive advantage over other businesses that do not know the information. Information that is generally known or understood within an industry, even if not known to the public at large, does not qualify as a trade secret. But information that requires considerable time, effort, and expense to duplicate, even if it is derived from public sources, can still qualify as a trade secret. Absolute secrecy, in the sense that no one else in the world possesses the information, is not required.

## 2.5    "Reasonable Measures" Requirement

Qorvo must prove by a preponderance of the evidence that it took reasonable measures to protect the secrecy of its trade secrets. There is no precise definition of what "reasonable measures" are; what is reasonable depends on the situation. Factors you may wish to consider in evaluating whether "reasonable measures" were taken could include the following:

1. Whether Qorvo made it a practice to inform its employees or others involved with its business that the information was a trade secret and/or was to be kept confidential;

2. Whether Qorvo required employees or others involved with its business to sign confidentiality agreements regarding the information or agreements not to compete in areas that could use the information;

3. Whether Qorvo restricted access to the information on a "need to know" basis; or

4. Whether Qorvo generally maintained reasonable security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

**2.6     Definition of Misappropriation**

If you find that Qorvo has proven by a preponderance of the evidence that a trade secret existed, then you must decide whether that trade secret information was misappropriated by Akoustis.

To prove that misappropriation occurred, Qorvo must prove by a preponderance of the evidence that:

(1)     Akoustis acquired Qorvo's trade secret knowing or having reason to know that the trade secret was acquired by improper means; or

(2)     Akoustis disclosed or used Qorvo's trade secret without Qorvo's express or implied consent, and Akoustis:

    (a)     Used improper means to acquire knowledge of the trade secret; or

    (b)     At the time of the disclosure or use of the trade secret, knew or had reason to know that knowledge of the trade secret was:

        (i)     Derived from or through a person who used improper means to acquire it; or

        (ii)     Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        (iii)     Derived from or through a person who owed a duty to Qorvo to maintain its secrecy or limit its use.

**2.7     Definition of "Improper Means"**

"Improper means" in acquiring a trade secret can arise in three types of circumstances:

(a) where Akoustis itself obtained the trade secret by its own improper conduct,

(b) where Akoustis obtained the trade secret from a third party who Akoustis knew or had reason to know acquired the trade secret by improper means, and

(c) where Akoustis induced another to obtain the trade secret by improper means.

It would be improper for Akoustis to acquire trade secret information by theft, bribery, trespass, misrepresentation, or corporate espionage, such as wiretapping. It would also be improper for Akoustis to acquire the information from a third party who Akoustis knew or had reason to know either used improper means to acquire the information or breached a duty of confidentiality in disclosing the information. Where Akoustis acquired the information from a third party in one of these circumstances, Akoustis' conduct is only improper if Akoustis knew or should have known that it was acquiring a trade secret belonging to another. Last, it would be improper for Akoustis to induce another to either use improper means to acquire the information or to breach a duty of confidentiality that person owed to Qorvo.

Because improper means can cover a wide variety of circumstances, it may be helpful to identify situations that the law would *not* consider "improper means." It is not improper to acquire information through independent development, research of public resources (such as, for example, trade directories, patent filings, or even the telephone book), or purchase of a product that contains trade secrets and then disassembling it to analyze those secrets (a process called "reverse engineering"). Similarly, a party who obtains information by mistake, or without knowledge or reason to know that the information is a trade secret, has not acquired the trade secret through improper means.

A defendant who has acquired trade secret information by improper means has no right to use or to disclose the information in any way whatsoever. Thus, any use or disclosure by a defendant who has acquired a trade secret by improper means is wrongful.

## 2.8    "Use" of a Trade Secret [Disputed]

*[The parties' alternative proposals are set forth below]*

**Qorvo proposal:**

To prove "use" of a trade secret, Qorvo must prove by a preponderance of the evidence that Akoustis used the alleged trade secrets without Qorvo's consent.

"Use" has a broad definition in trade secret law. As a general matter, any exploitation of a trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use."  Examples of "use" that fall within this definition include employing a trade secret in manufacturing or production or relying on the trade secret to assist or accelerate research and development.  The unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient to subject the actor to liability. Similarly, the actor need not use the trade secret in its original form. Thus, an actor is liable for using the trade secret with independently created improvements or modifications if the result is substantially derived from the trade secret. Use requires the productive use of the alleged trade secret. Merely Possessing a trade secret without utilizing the trade secret it is not "use." But you may find that possession of the trade secrets, or the circumstances surrounding the possession of the trade secrets, are circumstantial evidence of "use."

**Akoustis proposal:**

To prove "use" of a trade secret, Qorvo must prove by a preponderance of the evidence that Akoustis used the alleged trade secrets without Qorvo's consent. "Use" has a broad definition in trade secret law. As a general matter, any exploitation of a trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use."  Possessing the trade secrets without utilizing the trade secrets it is not "use."

-23-

<u>Qorvo authority</u>: *Oakwood Laboratories LLC v. Thanoo*, 999 F.23d 892, 909-910 (3d Cir. 2021) (defining "use" in trade secret claims); Restatement (Third) of Unfair Competition, § 40 (Appropriation of Trade Secrets) (1995).

<u>Akoustis Authority</u>: *TGAS Advisors, LLC v. Zensights, LLC*, No. CV 16-1870, 2016 WL 4094971, at \*3 (E.D. Pa. Aug. 1, 2016) ("Neither is the Court willing to rely on TGaS's mere possession of confidential information to conclude that TGaS used such information unlawfully.").

**2.9    Trade Secret Damages Generally**

I will now instruct you on the law you must follow in determining compensatory damages. The purpose of compensatory damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from a defendant's violation of a plaintiff's rights. Compensatory damages are not intended to punish the defendant.

You must not take these instructions as implying my view about which party is entitled to your verdict in this case. Instructions regarding the measure of damages are given for your guidance in the event you find in favor of Qorvo from a preponderance of evidence in the case in accordance with the other instructions.

If you find that Qorvo proved that Akoustis misappropriated Qorvo's trade secrets, then you must decide whether Qorvo is entitled to damages on its claim for misappropriation of trade secrets.

Qorvo has the burden of proving whether Akoustis caused the damage that Qorvo is claiming by a preponderance of the evidence.  Qorvo must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, Qorvo is not entitled to damages that are remote or speculative.

**2.10    Trade Secret Damages – Unjust Enrichment**

If you determine that Qorvo is entitled to damages, you may award Qorvo an amount that represents the benefit actually received by Akoustis. This is called unjust enrichment. Regardless of whether you find that Qorvo itself suffered losses, if you find that Akoustis benefited from using a trade secret belonging to Qorvo, then you may award the monetary value that you attribute to those benefits and that Qorvo has proven by a preponderance of the evidence.

**2.11    Trade Secret Damages – Theories of Unjust Enrichment [Disputed]**

*[Akoustis proposes and Qorvo opposes the bracketed language in italics below]*

There can be multiple forms of unjust enrichment.

One form of unjust enrichment can be measured by a "head start" theory. The head start theory measures the value of the temporal advantage a defendant obtains resulting from its use of the trade secrets. The "head start" period is the time it would have taken Akoustis to develop its pproducts and compete in the market absent any misappropriation (*e.g.,* not using the alleged trade secrets until they were generally known or acquired legitimately elsewhere). *[The measure of recovery is Akoustis' profits gained during this "head start" period.]*

A second form of unjust enrichment is called avoided costs. Avoided costs are the amount that Akoustis would have incurred to achieve the same result without the use of the appropriated trade secrets.

Qorvo Authority: 18 U.S.C. § 1836(b)(3)(B) (no limitation of damages to "profits" gained from misappropriation as opposed to other measures of benefits obtained).

Akoustis Authority:  *Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 1:17-cv-00014 (D. Del.) D.I. 1056 (Final Jury Instructions)*; Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN) (D. Del.) D.I.575 (Final Jury Instructions); Sedona Conference Commentary on Monetary Remedies in Trade Secrets Litigation, 24 Sedona Conf. J. (2023); Restatement (Third) of Unfair Competition § 45 Monetary Relief: Appropriation of Trade Secrets).

**2.12     Trade Secret Damages – Willfulness / Exemplary Damages**

If you find for Qorvo on its trade secret claims, you may, but are not required to, assess exemplary damages against Akoustis. The purposes of exemplary damages are to punish a defendant for its conduct and to deter it and others from engaging in similar conduct in the future.

For Qorvo to recover exemplary damages, you must first find that Qorvo has proved by a preponderance of the evidence that Akoustis's acts were willful and malicious. "Willful and malicious" means such intentional acts or gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the entity at fault is conscious of the consequences of its carelessness.

### 3.   Unfair and Deceptive Trade Practices

**3.1     Unfair and Deceptive Trade Practices Allegation Generally [Disputed]**

*[Qorvo proposes and Akoustis opposes the bracketed language in italics below]*

Qorvo contends that Akoustis engaged in unfair and deceptive trade practices in violation of North Carolina law. Qorvo alleges that Akoustis engaged in one or more of the following unfair or deceptive acts:

(1)     Akoustis misappropriated Qorvo's trade secrets;

(2)     Akoustis hired former Qorvo employees as part of a scheme to acquire Qorvo's confidential information;

(3)     *[Akoustis obtained or used Qorvo's confidential information unfairly or deceptively;]* and

(4)     Akoustis made false statements that its products used "single crystal" technology that resulted in superior performance.

Qorvo Authority (for disputed language): D.I. 125 (Second Amended Compl.), at ¶¶ 22, 54-60, 212-224 (Qorvo allegations concerning scheme to obtain and misuse Qorvo confidential information); *Velocity Sols., Inc. v. BSG Fin., LLC*, No. 15-CVS-1059, 2016 NCBC LEXIS 19, at *7-8 (N.C. Super. Ct. Feb. 22, 2016) (misuse of confidential information to achieve competitive gain can violate North Carolina unfair competition law); *CNC/Access, Inc. v. Scruggs*, No. 04-CVS1490, 2006 NCBC LEXIS 22, at *27-31 (N.C. Super. Ct. Nov. 17, 2006) (same).

Akoustis Authority (for disputed language):  Expert Report and Disclosure of Melissa A. Bennis, dated November 21, 2023 (omitting damages assessment on confidential, but not trade secret, information).

**3.2      Elements of Claim for Unfair and Deceptive Trade Practices**

To succeed on its claim for unfair and deceptive trade practices, Qorvo must prove each of the following by a preponderance of the evidence:

(1)      Akoustis committed an unfair or deceptive act or practice;

(2)      Akoustis' conduct was in or affecting commerce; and

(3)      Akoustis' conduct caused Qorvo injury.

A practice is unfair when it offends established public policy or when the act or practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." A party commits an unfair act or practice when it engages in conduct that amounts to an inequitable assertion of its power or position. For an act or practice to be deceptive, it must have "the capacity or tendency to deceive" but proof of actual deception is not required.

A violation of a statute or other law is not automatically an unfair or deceptive act. Qorvo must prove the conduct was unfair or deceptive. Deliberate acts of deceit or bad faith do not have to be shown, rather, the claimant must demonstrate that the act or practice possessed the tendency and capacity to mislead or created the likelihood of deception.

As a general matter, Akoustis has the freedom to compete, including to divert business not only from competitors generally, but also from Qorvo. You may only find Akoustis liable for unfair and deceptive trade practices if you determine that the harm to Qorvo resulted from particular methods of competition determined to be unlawful.

**3.3**     **In Commerce**

To succeed on the second element, the plaintiff must prove that the defendant's conduct was either "in commerce" or that it "affected commerce."

Conduct is "in commerce" when it involves a business activity.  Conduct "affects commerce" whenever a business activity is adversely and substantially affected.  A "business activity" is the way a business conducts its regular, day to-day activities or affairs (such as the purchase or sale of goods), or whatever other activities the business regularly engages in and for which it is organized.

**3.4**     **Proximate Cause**

The third element requires that Qorvo prove by a preponderance of the evidence that Akoustis's conduct proximately caused an injury to Qorvo. To prove this, Qorvo must prove:

(a) that Qorvo has suffered injury; and

(b) that Akoustis's conduct was the proximate cause of any injury to Qorvo.

Proximate cause is a cause that in a natural and continuous sequence produces the injury, and is a cause that a reasonable and prudent person could have foreseen would probably produce such injury or some similar injurious result.

**3.5      Unfair and Deceptive Trade Practices – Compensatory Damages**

*[Qorvo proposes and Akoustis opposes the bracketed language in italics below]*

[Akoustis proposes and Qorvo opposes the bracketed language in underline below]

In connection with its Unfair and Deceptive Trade Practices claim, Qorvo seeks the recovery of compensatory damages.  Qorvo seeks recovery of two types of compensatory damages—damages for actual loss and damages based on unjust enrichment.

In determining compensatory damages based on actual loss, you may consider whether Qorvo suffered any measurable loss as a result of Akoustis's conduct. In this case, Qorvo claims that its business was affected and that it suffered monetary loss due to the cost to recruit, hire, and train additional employees based on Akoustis's unlawful hiring of Qorvo employees. Qorvo also seeks recovery of the cost of advertising to correct Akoustis's false advertisements.  [*Qorvo also seeks recovery of the amount of Akoustis's unjust enrichment as a result of its unfair and deceptive trade practices—i.e., the value of the benefit that Akoustis obtained from copying and using Qorvo's confidential information unfairly or deceptively.*]

Qorvo's damages, if any, are to be reasonably determined from the evidence presented in the case. Qorvo is not required to prove with mathematical certainty the extent of its injury in order to recover damages. However, you may not award any damages based upon mere speculation or conjecture.

[Further, you must not award duplicative damages for the same conduct on multiple claims. You may award damages only if they do not constitute a double recovery for the same conduct.]

Qorvo Authority (for unjust enrichment instruction): Adapted from *Agrofresh, Inc. v. Essentive LLC et al.*, No. 1:16-cv-00662-MN, D.I. 575 (D. Del. Oct. 11, 2019) (jury instructions); *Sunbelt Rentals, Inc. v. Head Engquist Equip*, 174 N.C. App. 49 (N.C. Ct. App. 2005) (affirming award of damages under the UDTPA where "plaintiff was awarded lost profits and the value of benefit defendants received").

<u>Qorvo Authority</u> (for omitting double recovery instruction): *Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 1:17-cv-00014, D.I. 1056 at 34, 43 (D. Del.) D.I. 1056 (Final Jury Instructions) (instructing jury to award damages because "the Court will determine the total damages to be awarded to ensure that [Plaintiff] does not recover more than once for the same injury"); *Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 17-cv-0014, 2019 WL 6840353, at *9 (D. Del. Dec. 16, 2019) (rejecting challenge to jury instructions for omitting instruction on double recovery); *Bowers v. Baystate Technologies, Inc*, 320 F.3d 1317, 1327 (Fed. Cir. 2003) ("Following the district court's instructions, the jury considered and awarded damages on each separately. This was entirely appropriate. The law is clear that the jury may award separate damages for each claim, "leaving it to the judge to make appropriate adjustments to avoid double recovery.").

<u>Akoustis Authority</u>: North Carolina Pattern Instruction – Civil 813.80; *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.,* 174 N.C. App. 49, 62 (2005); *Olivetti v. Ames Business Systems,* 319 N.C. 534, 547-48 (1987) ("[T]he party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty."); Holland v. Southern Public Utilities Co., 208 N.C. 289, 290, 180 S.E. 592, 593 (1935) ("[T]here can be but one recovery for the same injury or damage.").

## 4.  Civil Conspiracy

**4.1     Civil Conspiracy Allegation Generally**

Qorvo contends that Akoustis engaged in a civil conspiracy by conspiring with one or more of the following persons to misappropriate Qorvo's trade secrets:

- Rohan Houlden, formerly the General Manager of Qorvo's Wireless Connectivity Group, prior to Mr. Houlden's employment at Akoustis;

- Robert Dry, formerly Director of Infrastructure and Defense Packaging at Qorvo, prior to Mr. Dry's employment at Akoustis;

- Todd Bender, formerly a Senior Tax Manager at Qorvo, prior to Mr. Bender's employment at Akoustis;

- Rama Vetury, formerly a Technical Manager at Qorvo's predecessor company, RFMD, prior to Dr. Vetury's employment at Akoustis;

- Ahmad Abdelmajid, formerly a Director of Wireless Connectivity Application Engineering at Qorvo;

- Alan Nicol, formerly a Staff Product Engineer at Qorvo.

I instruct you, members of the jury, that if you have found that Akoustis misappropriated Qorvo's trade secrets, you must then consider whether Qorvo has proven by a preponderance of evidence that Akoustis conspired with one or more of the alleged co-conspirators I identified above to violate the trade secret laws.

**4.2    Elements of Claim for Civil Conspiracy**

To prove its claim for civil conspiracy, Qorvo must prove each of the following elements

by a preponderance of the evidence that:

(1)    One or more of the alleged co-conspirators agreed with Akoustis to misappropriate
Qorvo's trade secrets;

(2)    one or more of the parties to that agreement committed an overt act in furtherance of
the aims of their agreement; and

(3)    the acts committed in furtherance of the aims of the agreement proximately cause
damages to Qorvo.

You cannot find that any defendant conspired with itself (including with its own

employees) or that employees or agents of a single defendant conspired among themselves.

### 4.3     Civil Conspiracy – Elements Continued

I will now explain each element of the civil conspiracy claim.

First, Qorvo must prove that one of more of the alleged co-conspirators agreed with Akoustis to do an unlawful act or to do a lawful act in an unlawful way. Such an agreement is called a conspiracy. A conspiracy is a combination of two or more persons to accomplish some unlawful purpose or to accomplish some lawful purpose by unlawful means. In other words, a conspiracy is a kind of partnership or joint enterprise in which each member becomes the agent of every other member with respect to the common plan, and each member is held responsible for the acts of or statements made by any other member made or done in furtherance of the common plan. The essence of a conspiracy is an unlawful combination to violate or to disregard the law.

Second, Qorvo must prove that one or more of the parties to the agreement committed an overt act in furtherance of the aims of the agreement. An overt act is one that could be neutral in its character, but that is evidence of affirmative action showing an intent to accomplish or further the objects of the alleged conspiracy. It is not necessary for Qorvo to prove that all or any one of the aims of the agreement was accomplished. Qorvo must show, however, that one or more of the parties to the agreement performed at least one act in furthering or trying to effect the agreement.

Third, Qorvo must prove that the overt act(s) committed in furtherance of the conspiracy proximately caused damage to Qorvo. Proximate cause is a real cause—a cause without which any would not have occurred, and one which a reasonably careful and prudent person could foresee would probably produce such injurious result. There may be more than one proximate cause. Therefore, the party seeking damages need not prove that the overt act(s) were the sole proximate cause of the injury.  Qorvo must prove, by the greater weight of the evidence, only that the overt act(s) were one of the proximate causes.

## 5.  Claim Limitations

### 5.1     Statute of Limitations [Disputed]

*[Qorvo proposes and Akoustis opposes the bracketed language in italics below]*

Qorvo filed the lawsuit in this case on October 4, 2021. Akoustis contends as a defense that Qorvo failed to file certain claims within the time required by the law to do so. This defense is referred to as a "statute of limitations" defense and the time period to file a lawsuit is referred to as a "limitations period." Akoustis must prove this defense by a preponderance of the evidence.

The limitations period starts when the injured party discovers, or reasonably should discover, that it has been injured and that the injury is caused by another party's conduct. [*There are occasions where an aggrieved party discovers, or should have discovered, that it has been injured on the date of the unlawful conduct. There are also occasions when an aggrieved party reasonably does not discover the occurrence of the alleged unlawful conduct until sometime after it occurred. In determining when Qorvo discovered, or should have discovered by the exercise of reasonable diligence, its claims against Akoustis, concerns or suspicions about Akoustis's activities alone do not start the clock for the limitations periods.*]

I will now instruct you on the limitations periods that apply to Qorvo's claims.

First, Qorvo was required to bring its trade secret claim under the Defend Trade Secrets Act within three years after the alleged misappropriation was discovered or should have been discovered by the exercise of reasonable diligence. Under the Defend Trade Secrets Act, the continuing misappropriation of a trade secret is considered to be a single act of misappropriation. For example, if a defendant were to acquire a trade secret by improper means and, subsequently, use that trade secret without consent, that would be considered a single, continuing act of misappropriation. For any continuing act of misappropriation of a trade secret, Qorvo was required to bring its claim under the Defend Trade Secrets Act within three years after it discovered, or

should have discovered by the exercise of reasonable diligence, the initial misappropriation of that trade secret.

Second, Qorvo was required to bring its trade secret claim under the North Carolina Trade Secret Protection Act within three years after each act of alleged misappropriation was discovered or should have been discovered by the exercise of reasonable diligence. Under the North Carolina trade secrets law, each time a trade secret is misappropriated, that act of misappropriation separately triggers a new three-year limitations period for that trade secret. For example, if a defendant were to acquire a trade secret by improper means and, subsequently, use that trade secret without consent, each act of misappropriation would trigger a new three-year limitations period for the trade secret.

Third, Qorvo was required to bring its unfair competition claim under the North Carolina law within four years after acts of alleged unfair competition were discovered or should have been discovered by the exercise of reasonable diligence. Under North Carolina unfair competition law, each act of unfair competition triggers a new four-year limitations period for that act.

Fourth, Qorvo was required to bring its civil conspiracy claim under the North Carolina law within three years after Qorvo discovered, or should have discovered by the exercise of reasonable diligence, the last act taken in furtherance of the conspiracy.


Qorvo Authority (for disputed language): *Motorola Solutions, Inc. et al. v. Hytera Comms. Corp. Ltd.*, et al., No. 1:17-cv-01973 D.I. 895 (N.D. Ill Feb. 14, 2020) (jury instructions) (instruction that concerns or suspicions not enough to trigger statute of limitations); *Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp.*, 15 F.3d 1427, 1430 (7th Cir. 1994) ("concerns and suspicions rather than knowledge" of trade-secrets misuse "do not start the clock of the statute of limitations").

Akoustis Authority: 11th Circuit Pattern Jury Instructions 11.2 (Modified); See 18 U.S.C.A. § 1836(d); N.C.G.S.A. § 66-157.

### 6. **False Advertising**

**6.1** **False Advertising Allegation Generally [Disputed]**

*[Qorvo proposes and Akoustis opposes the bracketed language in italics below]*

Qorvo contends that Akoustis made false [*or misleading*] representations that its BAW

filters use "single crystal" technology and, as a result, obtain superior performance compared to

polycrystalline BAW filters.


Qorvo Authority (for disputed language): D.I. 125 (Second Amended Compl.), at ¶¶ 154, 190-196, 198, 225 (Qorvo contentions that Akoustis made false or misleading statements in its advertisements); 15 U.S.C. § 1125 (allowing civil actions for "false or misleading" statements); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, 18-cv-00462-MN, D.I. 141 at 40 (D. Del.) (Final Jury Instructions) ("To be considered false advertising under the Lanham Act, there must be a false or misleading misrepresentation. . .").

Akoustis Authority (for disputed language):  Qorvo's Objections and Responses to Akoustis' Interrogatory No. 8 (responding to interrogatory regarding Lanham Act claim with reference to specific allegedly false, not misleading, statements); Qorvo's Objections and Responses to Akoustis' Interrogatory No. 10 (responding to interrogatory regarding theories of liability under Unfair and Deceptive Trade Practices act with reference to specific allegedly false, not misleading, statements).

**6.2     Element of Claim for False Advertising [Disputed]**

*[Qorvo proposes and Akoustis opposes the bracketed language in italics below]*

To succeed on its claim for false advertising, Qorvo must prove each of the following by a preponderance of the evidence:

(1)     Akoustis made a false [*or misleading*] representation of fact in connection with any goods in a commercial advertisement or promotion;

(2)     The use of the false [*or misleading*] representation misrepresented the nature, characteristics, or qualities of Akoustis' goods;

(3)     The misrepresentation actually deceived [*or had a tendency to deceive a substantial segment of*] the intended audience;

(4)     The deception was material, in that it was likely to influence purchasing decisions;

(5)     Akoustis caused the misrepresentation to enter interstate commerce; and

(6)     Qorvo was damaged by the misrepresentation, either by direct loss of sales or a lessening of the goodwill associated with its products.

You must evaluate the elements for each allegedly false statement.  If Qorvo meets its burden of proving all elements as to any one allegedly false statement by a preponderance of the evidence, then you may find that Akoustis engaged in false advertising as to that particular statement.

Qorvo authority (for disputed language): 15 U.S.C. § 1125 (allowing civil actions for "false or misleading" statements); *Gavrieli Brands LLC v. Soto Massini (USA) Corp*., 18-cv-00462-MN, D.I. 141 at 41 (D. Del.) (Final Jury Instructions) (reciting elements of false advertising claim, including "false or misleading statements" and "a tendency to deceive a substantial portion of the intended audience"); *Reybold Grp. Of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 209-210 (D. Del. 2017) (describing elements of false advertising claim, including "false or misleading statements" and "a tendency to deceive a substantial portion of the intended audience").

Akoustis Authority: 15 U.S.C. § 1125(a); *Trustid, Inc. v. Next Caller Inc.*, No. 18-172 (MN), (D. Del), D.I. 295 at 41-42 (Final Jury Instructions) *10x Genomics, Inc. v. Celsee, Inc.*, 1-19-cv-00862 (D. Del) D.I. 371 (Proposed Joint Final Instructions); 15 U.S.C. § 1125(a)(1)(B); *CaredDx, Inc. v. Natera, Inc.,* No. CV 19-662-CFC, 2023 WL 4561059, at *2 (D. Del. July 17, 2023) ("Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false advertisement."); *Newborn Bros. Co., Inc. v. Albion Eng'g Co.,* 481 F. Supp. 3d 312, 356 (D.N.J. 2020) (materiality must be proven to collect false advertising damages); *Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp. 3d 405, 417 (E.D. Pa. 2016)

(explaining that whether a statement has a tendency to deceive "depends upon the message that is conveyed to consumers," and "the success of the claim usually turns on the persuasiveness of a consumer survey.") , aff'd sub nom. Parks LLC v. Tyson Foods, Inc, 863 F.3d 220 (3d Cir. 2017); Qorvo's Objections and Responses to Akoustis' Interrogatory No. 8 (responding to interrogatory regarding Lanham Act claim with reference to specific allegedly false, not misleading, statements); Qorvo's Objections and Responses to Akoustis' Interrogatory No. 10 (responding to interrogatory regarding theories of liability under Unfair and Deceptive Trade Practices act with reference to specific allegedly false, not misleading, statements).

**6.3     False [*or Misleading*] Statements [Disputed]**

*[Qorvo proposes and Akoustis opposes the bracketed language in italics above; the parties' alternative proposals for this instruction are set forth below]*

<u>**Qorvo's proposal:**</u>

To prevail on its false advertising claim, Qorvo must prove by a preponderance of the evidence that an Akoustis advertising statement is either: (1) false on its face or literally false; or (2) literally true or ambiguous, but is still likely to mislead and confuse consumers. There need not be a direct comparison to a competitor for a statement to be actionable.

In deciding whether an advertising claim is literally false, you must decide, first, whether the claim conveys an unambiguous message and, second, whether that unambiguous message is false. Only an unambiguous message can be literally false.

In other cases, a statement is false because it necessarily implies other messages that are literally false. A message conveyed by necessary implication is one where the audience would consider the advertisement in its entirety and would recognize the message as being made as readily as if it had been explicitly stated. If an advertising claim is untrue, it must be deemed literally false.

Although a plaintiff, such as Qorvo, normally has the burden to demonstrate that the Akoustis advertising claims are false, you may find that a completely unsubstantiated advertising claim or claims by Akoustis is per se false without additional evidence from Qorvo to that effect. The message conveyed by an advertising claim must be substantiated by sufficiently reliable tests.

If Qorvo proves literal falsity of an advertising claim, you may presume that all other aspects or elements of liability for a false advertising claim have been established and you may find Akoustis liable for false advertising without considering the advertising claim's impact on the purchases. But for purposes of establishing any amount of damages, you must find that the false

advertising caused harm to Qorvo. The foregoing does not prevent Akoustis from offering evidence to rebut literal falsity.

If Qorvo fails to prove that Akoustis' advertising claims are literally false, Qorvo can still prevail on its false advertising claim by proving that the statement is misleading or impliedly false. A statement is misleading if it is true or ambiguous but has the tendency to deceive a substantial portion of consumers.

**Akoustis' proposal:**

Qorvo must prove by a preponderance of the evidence that Akoustis falsely stated in advertising that it used single-crystal technology in its BAW filters.

In this case, Qorvo must prove this element by showing that Akoustis' statements are literally false.

In deciding whether an advertising claim is literally false, you must decide, first, whether the claim conveys an unambiguous message and, second, whether that unambiguous message is false. Qorvo alleges that Akoustis' statements are literally false, and Akoustis counters that they are literally true. Only an unambiguous message can be literally false.

If Qorvo proves literal falsity of an advertising claim, you may presume that all other aspects or elements of liability for a false advertising claim have been established and you may find Akoustis liable for false advertising without considering the advertising claim's impact on the purchases. But for purposes of establishing any amount of damages, you must find that the false advertising caused harm to Qorvo. The foregoing does not prevent Akoustis from offering evidence to rebut falsity or materiality.

Qorvo Authority: 15 U.S.C. § 1125 (allowing civil actions for "false or misleading" statements); *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, 18-cv-00462-MN, D.I. 141 at 42-43 (D. Del.)

(Final Jury Instructions); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993) ("Thus, there are two different theories of recovery for false advertising under section 43(a) of the Lanham Act: (1) an advertisement may be false on its face; or (2) the advertisement may be literally true, but given the merchandising context, it nevertheless is likely to mislead and confuse consumers."); *id*. at 952 ("[T]he district court correctly determined that Pennzoil had, by necessary implication, made literally false claims."); *Reybold Grp. Of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 209-210 (D. Del. 2017) (describing elements of false advertising claim, including "false or misleading statements").

Akoustis Authority: *Trustid, Inc. v. Next Caller Inc.*, No. 18-172 (MN), (D. Del), D.I. 295 at 41-42 (Final Jury Instructions) *10x Genomics, Inc. v. Celsee, Inc.*, 1-19-cv-00862 (D. Del) D.I. 371 (Proposed Joint Final Instructions); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer*, 19 F.3d 125, 129 (3d Cir. 1994); *Castrol, Inc. v. Pennzoil Co*., 987 F.2d 939, 943 (3d Cir.1993);  Qorvo's Objections and Responses to Akoustis' Interrogatory No. 8 (responding to interrogatory regarding Lanham Act claim with reference to specific allegedly false, not misleading, statements); Qorvo's Objections and Responses to Akoustis' Interrogatory No. 10 (responding to interrogatory regarding theories of liability under Unfair and Deceptive Trade Practices act with reference to specific allegedly false, not misleading, statements).

**6.4     Deception [*or Tendency to Deceive*] [Disputed]**

*[Qorvo proposes and Akoustis opposes the bracketed language in italics above; the parties'*
*alternative proposals for this instruction are set forth below]*

<u>Qorvo proposal:</u>

If Qorvo proves an advertising claim about its single-crystal technology to be literally false,
you may presume that the statement actually deceived consumers in determining liability.

If Qorvo does not prove an advertising claim to be literally false, it must prove that it is
deceptive or misleading. Whether an advertising statement is deceptive or misleading depends on
the message that is conveyed to consumers. For you to find that a statement is true but misleading,
Qorvo must show that the statement actually deceived or had the tendency to deceive a substantial
segment of the audience.

Whether a challenged advertising statement is misleading may be proven by evidence of
the diversion of sales, customer deception, publications, articles, salesperson deception, which
may be probative to establish customer or purchasing deception or other evidence. You must
determine whether the purchasing public was in fact misled. Evidence of actual confusion is
difficult to find and even a few incidents may therefore be probative.

If Qorvo demonstrates that Akoustis intentionally set out to deceive the public and its
conduct in this regard is of an egregious nature, a presumption arises that consumers are, in fact,
being deceived.

<u>Akoustis proposal:</u>

If Qorvo proves that Akoustis' statements in advertising about its single-crystal technology
were literally false, you may presume that the statement actually deceived consumers in
determining liability. But for purposes of establishing any entitlement to or any amount of
monetary damages, which Qorvo seeks in this case, you must find that the false advertising actually

-46-

caused harm to Qorvo. Thus, to obtain damages, Qorvo must show that the consumer base was actually deceived.

<u>Qorvo Authority</u>: *Gavrieli Brands LLC v. Soto Massini (USA) Corp*., 18-cv-00462-MN, D.I. 141 at 44 (D. Del.) (Final Jury Instructions); *Reybold Grp. Of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 209-210 (D. Del. 2017) (describing elements of false advertising claim, including "false or misleading statements" and "a tendency to deceive a substantial portion of the intended audience").

<u>Akoustis Authority</u>: *Trustid, Inc. v. Next Caller Inc.*, No. 18-172 (MN), (D. Del), D.I. 295 at 41-42 (Final Jury Instructions) *10x Genomics, Inc. v. Celsee, Inc.*, 1-19-cv-00862 (D. Del) D.I. 371 at__ (Proposed Joint Final Instructions); *Parkway Baking Co. v. Freihofer Baking Co*., 255 F.2d 641 (3d Cir. 1958);*Warner-Lambert Co. v. Breathasure, Inc*., 204 F.3d 87, 92 (3d Cir. 2000); Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993); *CaredDx, Inc. v. Natera, Inc.,* No. CV 19-662-CFC, 2023 WL 4561059, at *2 (D. Del. July 17, 2023) ("Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false advertisement."); Qorvo's Objections and Responses to Akoustis' Interrogatory No. 8 (responding to interrogatory regarding Lanham Act claim with reference to specific allegedly false, not misleading, statements); Qorvo's Objections and Responses to Akoustis' Interrogatory No. 10 (responding to interrogatory regarding theories of liability under Unfair and Deceptive Trade Practices act with reference to specific allegedly false, not misleading, statements).

## 6.5     Materiality [Disputed]

[*Qorvo proposes and Akoustis opposes the bracketed language in italics below*]

[Akoustis proposes and Qorvo opposes the bracketed language in underline below]

Qorvo must also show that any deception in making any false statements was material, which means that it made a difference in influencing customers' purchasing decisions. If a defendant's advertising statement is determined to be false, it is presumed to be material in determining liability for a false advertising claim. However, the defendant may rebut this presumption of materiality by providing sufficient evidence to show, by a preponderance of the evidence, that the false statement is immaterial to purchasing decisions.

[*If an Akoustis advertising statement is true but misleading, then Qorvo must show that the deceptive statement is material and that it is likely to influence purchasing decisions. Whether a claim or statement is material can also be shown by demonstrating that the statement concerns an inherent quality or characteristic of the product, or because it involves health, safety, or any other area influential to reasonable consumers.*]

[But for purposes of establishing any entitlement to or any amount of damages, which Qorvo seeks in this case, you must find that the false advertising actually caused harm to Qorvo, which includes finding that the statements were material to purchasing decisions of the target audience. In other words, Qorvo must show that the statements influenced the purchasing decisions of the intended audience of BAW filter customers through proof of customer reliance on the statements.]

Qorvo Authority: *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, 18-cv-00462-MN, D.I. 141 at 45 (D. Del.) (Final Jury Instructions).

Akoustis Authority: *Trustid, Inc. v. Next Caller Inc.*, No. 18-172 (MN), (D. Del), D.I. 295 at 41-42 (Final Jury Instructions) *10x Genomics, Inc. v. Celsee, Inc.*, 1-19-cv-00862 (D. Del) D.I. 371

at__ (Proposed Joint Final Instructions); 15 U.S.C. § 1125(a)(1)(B); *Novartis Consumer Health Inc. Johnson & Johnson-Merck Consumer Pharm. Co*., 290 F.3d 578, 590 (3d Cir. 2002); *Parkway Baking Co. v. Freihofer Baking Co*., 255 F.2d 641, 648 (3d Cir. 1958); Labware, Inc. v. Thermos Labsystems, Inc., No. Civ. A. 04-2545, 2005 WL 1541028, at *11 (E.D. Pa. June 29, 2005), Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 478 (D.N.J. 2009); *Newborn Bros. Co. v. Albion Eng'g Co*., 481 F. Supp. 3d 312, 356 (D.N.J. 2020) (materiality must be proven to collect false advertising damages); Qorvo's Objections and Responses to Akoustis' Interrogatory No. 8 (responding to interrogatory regarding Lanham Act claim with reference to specific allegedly false, not misleading, statements); Qorvo's Objections and Responses to Akoustis' Interrogatory No. 10 (responding to interrogatory regarding theories of liability under Unfair and Deceptive Trade Practices act with reference to specific allegedly false, not misleading, statements).

## 6.6    Interstate Commerce

Qorvo must also show that the advertised products traveled in interstate commerce. This element is met if Akoustis' products, for example, traveled across state lines or were advertised on a website accessible via the Internet.

**6.7      Entitlement to Damages**

Qorvo seeks monetary damages for false advertising. To obtain those damages, Qorvo must prove by a preponderance of the evidence that it suffered injury as a result of Akoustis' single crystal technology statements.  Qorvo has the burden to prove by a preponderance of evidence actual customer reliance and actual injury. In other words, Qorvo must link the alleged deception to its business. To do so, Qorvo must prove that:

1. purchasers of BAW filters were actually deceived by Akoustis' single crystal statements;

2. those purchasers' purchasing decisions were influenced by and relied on those single crystal statements; and

3. Qorvo was actually injured as a result of the deception and it influenced purchasers of BAW filters.

Qorvo's subjective belief that it is likely to be injured is insufficient to satisfy this element. If you determine that Qorvo has not been injured as a result of Akoustis' statements, you must find in favor of Akoustis on Qorvo's false advertising claim.

## 6.8     False Advertising Damages [Disputed]

[*Akoustis proposes and Qorvo opposes the bracketed language in italics below*]

In connection with its False Advertising claim, Qorvo seeks the recovery of compensatory damages based on actual loss. In determining compensatory damages, you may consider whether Qorvo has proven by a preponderance of the evidence that it suffered any measurable loss as a result of Akoustis's conduct. In this case, Qorvo claims that its business was affected and it suffered monetary loss due to the cost of corrective advertising in connection with its False Advertising claim. *[To receive corrective advertising damages, Qorvo must show public confusion caused by Akoustis' conduct injured Qorvo by losing sales, and that remedial advertising is the most cost-effective way to remedy the public confusion.*]

If Qorvo has proven that Akoustis has engaged in false advertising, you may award the costs of corrective advertising that Qorvo has proven by a preponderance of the evidence. The costs of corrective advertising include reasonable expenditures made or to be made by Qorvo in order to prevent, correct, or mitigate the confusion or deception of prospective purchasers resulting from Akoustis' false advertising.

The difficulty or uncertainty in ascertaining or measuring the precise amount of any damages does not preclude recovery. You, the jury, should use your best judgment in determining the amount of such damages, if any, based upon the evidence. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require Qorvo to prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

That Akoustis did not actually anticipate or contemplate that these losses would occur is not a relevant factor for you to consider.

If you find that Qorvo is entitled to a verdict in accordance with these instructions, but you do not find that the evidence before you is sufficient to show that Qorvo has sustained any substantial damages, then you may return a verdict for Qorvo on one or more of the theories of liability and fix the amount of the compensatory damages in a nominal sum such as one dollar. Such a verdict would determine the rights of the parties, and the court can then issue orders directing their future conduct.

Qorvo Authority: Adapted from *Agrofresh, Inc. v. Essentive LLC et al.*, No. 1:16-cv-00662-MN, D.I. 575 (D. Del. Oct. 11, 2019) (jury instructions); 15 U.S.C. § 1117.

Akoustis Authority: *Larry Pitt & Assocs. v. Lundy Law LLP*, 294 F. Supp. 3d 329, 342-42 (E.D. Pa. 2018); *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 740-41 (D. Del. 2005):

> Although corrective advertising damages are usually for costs incurred prior to trial, damages may be awarded to allow an aggrieved party to conduct corrective advertising after trial. To grant such damages, however, there must be an economic rationale. *See Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506, 509 (7th Cir.1992) ("To justify damages to pay for corrective advertising a plaintiff must show that the confusion caused by the defendant's mark injured the plaintiff and that repair of the old mark ... is the least expensive way to proceed."). Furthermore, an award of money for post-trial corrective advertising must be justifiable as "a surrogate for plaintiff's damages or defendant's profit." *PBM Products, Inc. v. Mead Johnson & Co.*, 174 F.Supp.2d 417, 420 (E.D.Va.2001) (internal citations omitted).

## 7.   Patent Infringement

**7.1   Summary of Patent Issues**

Qorvo has alleged that Akoustis has directly infringed claims 1 and 12 of the '018 Patent and claims 9 and 10 of the '755 Patent. I will refer to those as the "Asserted Claims." Infringement is assessed on a claim-by-claim basis. To prove infringement, Qorvo must prove that the requirements for direct infringement are met by a preponderance of the evidence, *i.e.*, that it is more likely than not that all of the requirements of direct infringement have been proved. Akoustis denies that it has infringed the Asserted Claims and asserts that the Asserted Claims are invalid. Akoustis has the burden of proving its invalidity defense by clear and convincing evidence. Your job is to decide whether Akoustis has infringed the Asserted Claims and whether those claims are invalid.

The specific questions you must answer related to patent infringement are listed on the verdict form that I will give to you. Here are the issues you must decide:

- Whether Qorvo has proven by a preponderance of the evidence that Akoustis infringes claims 1 and/or 12 of the '018 Patent.

- If you decide that Qorvo has proven that Akoustis infringes claims 1 and/or 12 of the '018 Patent, whether Qorvo has proven by a preponderance of the evidence that Akoustis willfully infringes.

- If you decide that Qorvo has proven that Akoustis infringes claims 1 and/or 12 of the '018 Patent, what amount of monetary damages Qorvo has proven by a preponderance of the evidence.

- Whether Qorvo has proven by a preponderance of the evidence that Akoustis infringes claims 9 and/or 10 of the '755 Patent.

- If you decide that Qorvo has proven that Akoustis infringes claims 9 and/or 10 of the '755 Patent, whether Qorvo has proven by a preponderance of the evidence that Akoustis willfully infringes.

- If you decide that Qorvo has proven that Akoustis infringes claims 9 and/or 10 of the '755 Patent, what amount of monetary damages Qorvo has proven by a preponderance of the evidence.

The specific questions you must answer related to patent validity are listed on the verdict form you will be given. Here are the issues you must decide:

- Whether Akoustis has proven by clear and convincing evidence that claims 1 and/or 12 of the '018 Patent are invalid.

- Whether Akoustis has proven by clear and convincing evidence that claims 9 and/or 10 of the '755 Patent are invalid.

I will now provide you with further instructions to guide your deliberations.

**7.2**     **Patent Claims Generally**

Before you decide many of the issues in this case, you will need to understand the role of patent "claims." Patent claims are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

### 7.3    Claim Construction

To decide whether or not a claim is infringed, you will first need to understand what the claims of the '018 and '755 Patents cover. To do so, you will need to understand the meaning of the words used in the claims.

The law says that it is my role to, where necessary, define the terms of the claims and it is your role to apply my definitions of those terms to the issues that you are asked to decide in this case. As I explained to you at the start of the case, I have determined that the following claim terms have the following definitions.

| Patent | Claim Term | Definition |
|--------|-----------|------------|
| '018 | reference numerals | the reference numerals in the asserted claims of the '018 patent are not limiting and are solely for exemplary purposes |
| '755 | active region | the region of the resonator that is electrically driven, plus any portions of the resonator that are located above or below the electrically driven regions |
| '755 | outer region | the region of the resonator that is outside of the active region |
| '755 | are not excited in the active region | plain and ordinary meaning |

You must accept my definitions of these terms as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement.

If I have not provided a specific definition for a term in the claims of the '018 and '755 Patents, you are to use the plain and ordinary meaning to a person of ordinary skill in the art of that term.

You should not take my definition of the language of the patent claim as an indication that I have a view regarding how you should decide the issues that you are being asked to decide. The issues in this case are yours to decide.

**7.4     Claim Construction – Independent and Dependent Claims**

This case involves two types of patent claims: independent claims and dependent claims.

Claim 1 of the '018 Patent and claims 9 and 10 of the '755 Patent are "independent claims." An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

Claim 12 of the '018 Patent is a "dependent claim." A "dependent claim" does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

**7.5     Infringement Generally**

I will now instruct you as to the rules you must follow when deciding whether Qorvo has proven that Akoustis has infringed the Asserted Claims.

The United States' patent law gives the owner of a patent the right to exclude others from importing, making, using, selling, or offering to sell patented products and services or performing a patented method within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the patent owner's permission infringes the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, Qorvo has alleged that Akoustis has "directly" infringed claims 1 and 12 of the '018 Patent and claims 9 and 10 of the '755 Patent. As I will explain to you, there are two types of "direct infringement": (1) "literal infringement" and (2) "infringement under the doctrine of equivalents." To prove infringement under either type, Qorvo must prove that the requirements for direct infringement are met by a preponderance of the evidence.

Akoustis may infringe a patent unknowingly—that is, without knowledge that what one is doing infringes a patent. Akoustis may also infringe while believing in good faith that a particular action does not infringe any patent.

I will now explain infringement in more detail.

**7.6      Direct Infringement – Literal Infringement**

Claims 1 and 12 of the '018 Patent and claim 9 of the '755 Patent are apparatus claims. In other words, these claims cover a physical product. To prove literal infringement of these apparatus claims, Qorvo must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Akoustis made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim and did so without the permission of Qorvo during the time the patents were in force.

To determine literal infringement of these apparatus claims, you must compare the features of the accused products identified by Qorvo with each asserted claim to determine whether each and every one of the requirements of that claim is satisfied. If any of the accused products does not contain one or more elements recited in a claim, there is no literal infringement with respect to that claim. Each claim should be considered individually.

Claim 10 of the '755 Patent is a method claim. In other words, this claim covers a way to do something. To prove literal infringement of this method claim, Qorvo must prove by a preponderance of the evidence that Akoustis used in the United States a method that meets all of the requirements of the asserted claim and did so without the permission of Qorvo during the time the patents were in force.

To determine literal infringement of this method claim, you must compare the methods of making the accused products identified by Qorvo with the claim steps to determine whether each and every one of the requirements of the claim is satisfied. If any of the methods of making the accused products does not contain one or more elements recited in the claim, there is no literal infringement with respect to the claim.

Qorvo need not always have direct evidence of infringement; infringement may be established by circumstantial evidence.

-60-

**7.7      Direct Infringement – Doctrine of Equivalents**

If someone makes, uses, sells, offers to sell within, or imports into the United States a product or process that does not literally meet one or more of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or process satisfies that missing element under the "doctrine of equivalents." Here, Qorvo contends that Akoustis infringes claim 1 of the '018 Patent under the "doctrine of equivalents."

Under the doctrine of equivalents, a product or method can infringe an asserted claim if the product or method includes parts or steps that that either literally meet, or are equivalent to, each element of the claim. In other words, some of the elements of an asserted claim can be literally met by an accused product or method, and some elements can be met under the doctrine of equivalents. You may find that a part of an accused product or method is equivalent to a claim element that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure or action: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the literal requirement of the claim. To prove infringement by "equivalents," Qorvo must prove the equivalency of the features of the product or method to a claim element by a preponderance of the evidence. Each element of a claim must be met by the accused product or method either literally or under the doctrine of equivalents for you to find infringement.

Under the patent law, an infringing equivalent is not treated any differently than a product or method that literally infringes the claim of the patent.

**7.8     Willful Infringement**

In this case, Qorvo argues that Akoustis willfully infringed the Asserted Claims. If you have decided that Akoustis has infringed the Asserted Claims, you must go on and address the additional issue of whether or not this infringement was willful. To show that Akoustis's infringement was willful, Qorvo must prove by a preponderance of the evidence that Akoustis knew of Qorvo's patents and intentionally infringed the asserted claims.

You may not determine that the infringement was willful just because Akoustis was aware of the Asserted Patents and infringed them. Instead, you must also find that Akoustis deliberately infringed the Asserted Claims.

To determine whether Akoustis acted willfully, you should consider all facts and assess Akoustis's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

(1) Whether or not Akoustis acted consistently with the standards of behavior for its industry;

(2) Whether or not Akoustis intentionally copied a product of Qorvo that is covered by the asserted patent;

(3) Whether or not Akoustis reasonably believed it did not infringe or that the Asserted Claims were invalid;

(4) Whether or not Akoustis made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Akoustis attempted to design around the Asserted Patents; and

(5) Whether or not Akoustis tried to cover up its infringement.

If you do decide that there was willful infringement, that decision should not affect any damages award you give in this case.

-62-

**7.9      Validity—Burden Of Proof**

I will now instruct you on the rules you must follow in deciding whether or not Akoustis has proven that claims 1 or 12 of the '018 Patent or claims 9 or 10 of the '755 Patent are invalid. To prove that any claim of a patent is invalid, Akoustis must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

**7.10     Validity—Person of Ordinary Skill in the Art**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made. The parties have agreed in this case that a person of ordinary skill in the art at the times that the '018 and the '755 Patents were applied for would have had at least an undergraduate degree in electrical engineering, materials science, physics, or a related field, and 2-4 years of experience in the research, design, or development of thin film devices, or equivalent experience. A person with more education and less experience may also meet this standard.

**7.12    Validity—Prior Art**

For someone to be granted a patent, the claimed invention must be "new" and not obvious over what came before, which is referred to as the "prior art." In this case, Akoustis has alleged that each of the Asserted Claims is invalid because the claimed inventions are obvious in view of certain prior art presented. Prior art includes references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

### 7.13    Validity—Obviousness

Even though an invention may not have been identically disclosed or described before it was made by an inventor (i.e., it is "new"), in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time of the invention.

Akoustis argues that claims 1 and 12 of the '018 Patent and claims 9 and 10 of the '755 Patent are obvious. To show obviousness, Akoustis must demonstrate, by clear and convincing evidence, that a particular patent claim would have been obvious, at the time of the invention, to persons having ordinary skill in the art in the field of BAW resonators.

In determining whether a claimed invention is obvious, you must consider: (1) the level of ordinary skill in the BAW resonator field that someone would have had at the time of the invention of claims 1 and 12 of the '018 Patent and claims 9 and 10 of the '755 Patent; (2) the scope and content of the prior art Akoustis has identified; (3) any differences between the prior art and the claimed inventions; and (4) if present, so-called objective evidence or secondary considerations, which I will describe shortly. It is important not to use hindsight; you must consider only what was known at the time of the invention of the asserted claims.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed inventions, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant

field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as: (1) whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or unclaimed features or market-pressure advertising or similar activities); (2) whether the claimed invention satisfied a long-felt need; (3) whether others had tried and failed to solve the problem solved by the claimed invention; (4) whether others invented the claimed invention at roughly the same time; (5) whether others copied the claimed invention; (6) whether there were changes or related technologies or market needs contemporaneous with the claimed invention; (7) whether the claimed invention achieved unexpected results; (8) whether others in the field praised the claimed invention; (9) whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; (10) whether others sought or obtained rights to the patent from the patent holder; and (11) whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

**7.14    Compensatory Damages – Patent Infringement**

If you find that Akoustis infringed claims 1 and/or 12 of the '018 patent and that those claims are also not invalid, and/or that Akoustis infringed claims 9 and/or 10 of the '755 patent and that those claims are also not invalid, you must then consider what amount of damages to award to Qorvo.

I will now instruct you about the measure of patent infringement damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Akoustis has not infringed any claim of the '018 patent, or any claim of the '755 patent, then Qorvo is not entitled to any damages for patent infringement.

I will now instruct you about how to measure damages for patent infringement.

The damages you award must be adequate to compensate Qorvo for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Qorvo in approximately the same financial position that it would have been in had the infringement not occurred.

Qorvo has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Qorvo establishes that it more likely than not suffered. While Qorvo is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In determining infringement damages, you must not consider Qorvo's allegations of willfulness, or consider any evidence relating to those allegations. The consideration of willfulness, if any, is entirely separate from the question of any infringement damages that you are asked to determine. Nor should you include any amount in your infringement damages award for interest, attorneys' fees or other expenses.

There are different types of compensatory damages that Qorvo may be entitled to recover in connection with its patent infringement claims. In this case, Qorvo seeks a "reasonable royalty" as a result of Akoustis' infringement of the patents-in-suit.

**7.15    Reasonable Royalty**

In connection with its patent infringement claims, Qorvo seeks to recover a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that Qorvo and Akoustis would have agreed to in a hypothetical negotiation taking place before the infringement first began. The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The royalty rate must reflect the value attributable to the infringing features of the method, and no more.

In considering this hypothetical negotiation, you should focus on what the expectations of Qorvo and Akoustis would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that the parties to the hypothetical negotiation believed Qorvo's Asserted Patents were valid and infringed and that the parties were willing to enter into an agreement just before the infringement began. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

**7.16    Reasonable Royalty – Factors**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors in addition to any other evidence presented by the parties on the economic value of the patent:

(1)    Any established policy by Qorvo to maintain its patent exclusivity and right to exclude others from using the patented inventions by not licensing others to use the inventions or by granting licenses under special conditions designed to preserve that exclusivity;

(2)    The commercial relationship between Qorvo and Akoustis, such as whether or not they are competitors in the same territory in the same line of business;

(3)    The effect of selling the patented products in promoting sales of other Akoustis products and services, the existing value of the inventions to Qorvo as a generator of sales of its non-patented items, and the extent of such collateral sales;

(4)    The duration of Qorvo's asserted patents and term of the hypothetical license;

(5)    The established profitability, commercial success, and popularity of the products made under Qorvo's asserted patents;

(6)    The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for working out similar results;

(7)    The nature of the patented inventions, the character of their commercial embodiments as owned and produced by Qorvo, and the benefits to those who have used the inventions;

(8)    The extent to which Akoustis has made use of the inventions and any evidence probative of the value of that use;

(9)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions;

(10)   The portion of the realizable profit that should be credited to the patented inventions themselves as opposed to unpatented features, business risks, significant features or improvements added by Akoustis;

(11)   The opinion testimony of qualified experts;

(12)   The amount that Qorvo and Akoustis would have agreed upon (at the time the infringement began) if the parties had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired as a

-72-

business proposition to obtain a license to manufacture and sell particular articles embodying the patented inventions—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patent holder who was willing to grant a license;

(13)   The royalties received by Qorvo for licensing of the patent-in-suit, proving or tending to prove an established royalty;

(14)   The rates paid by Akoustis for the use of other patents comparable to the patent-in-suit; and

(15)   Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive. You should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors that, in your mind, would have increased or decreased the royalty Akoustis would have been willing to pay and Qorvo would have been willing to accept, acting as normally prudent business people.

**7.17    Reasonable Royalty – Apportionment**

If you award a reasonable royalty, for any damages you award, the amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product or method, or other factors such as marketing or advertising, or Akoustis' size or market position. When damages must be apportioned, the amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Qorvo's size or market position. When apportionment is required, a royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product or method, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products or methods have both patented and unpatented features or steps, your award must be apportioned so that it is based only on the value of the patented features, and no more.

## 7.18    Patent Glossary

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract:** A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment:** A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Assignment:** A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim:** Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Drawings:** The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

-75-

**Elements:** The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:** A product or method that contains the claimed invention.

**Examination:** Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:** Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:** Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing, urging or encouraging another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer, one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for noninfringing uses.

**Limitation:** A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Office Action:** A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent:** A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years

from the date the patent application was filed (or, in some cases, 17 years from the date the patent issued). When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO):** An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prosecution History:** The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:** A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Requirement:** A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty:** A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

## 8. <u>Deliberations and Verdict</u>

**8.1     Introduction**

I have concluded my instructions on the law. All the instructions I gave you previously today—as well as at the beginning of this trial—still apply, and you will have a copy of the instructions with you in the jury room.

Now let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

Once you start deliberating, do not talk to me, the jury officer, or anyone else except each other about the case. If you have questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4–4 or 6–2 or whatever your vote happens to be. That should stay secret until you are finished.

**8.2    Unanimous Verdict**

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement if you can do so consistent with your individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in this case.

A verdict form has been prepared for you. I will review that document with you in a moment. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom, and my deputy will read aloud your verdict.

And I will remind you that nothing said in these instructions and nothing in the verdict form is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

**8.3**      **Duty to Deliberate**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not ever change your mind just because other jurors see things differently or just to get the case over with. In the end, your vote must be exactly that—your own vote. It is important for you to reach unanimous agreement but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not given any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say and then decide for yourself.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess. You may not read or listen to any news about the case in a newspaper, online, through any news apps, on the radio, through any social media, in blogs, or on television during the evening recess.

**8.4**     **Social Media**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device, such as a telephone, cell phone, smartphone, iPhone, iPad, blackberry, tablet, or computer. You also may not use any media, such as any internet service, text or instant messaging service, chat room, blog, or website such as Facebook, LinkedIn, YouTube, Instagram, Snapchat, or X (formerly known as Twitter) to communicate to anyone any information about this case or to conduct any research about this case until after I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

**8.5      Court Has No Opinion**

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.

Finally, if I have read any of these instructions inconsistently with the written text, you are to rely on the written instructions in your deliberations.