1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____

| QORVO, INC.,                     |
|        Plaintiff,                |
| vs.                              | NO. 21-CV-01417
| AKOUSTIS TECHNOLOGIES,           |
| INC., AND AKOUSTIS, INC.,        |
|        Defendants.               |

_____


TRANSCRIPT OF THE PRETRIAL CONFERENCE

BEFORE THE

HONORABLE JON P. MCCALLA


FRIDAY

APRIL 19, 2024


TINA DuBOSE GIBSON, RPR
OFFICIAL REPORTER
FOURTH FLOOR FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103


UNREDACTED TRANSCRIPT

1           A P P E A R A N C E S

2


3


        Appearing on behalf of the Plaintiff:

4


5           JONATHAN R. DEFOSSE
            ROBERT M. MASTERS
6           ROY D. JUNG
            Sheppard, Mullin, Richter & Hampton, LLP
7           2099 Pennsylvania Avenue, NW
            Suite 100
8           Washington, DC  20006-6801
            (202) 747-1900
9           jdefosse@sheppardmullin.com
            rmasters@sheppardmullin.com
10          rjung@sheppardmullin.com


11


            JENNIFER KLEIN AYERS
12          Sheppard, Mullin, Richter & Hampton, LLP
            2200 Ross Avenue
13          20th Floor
            Dallas, Texas  75201
14          (469) 391-7414
            jayers@sheppartmullin.com


15


16          A. DAVID RAUCCI
            JEREMY A TIGAN
17          Morris, Nichols, Arsht & Tunnell LLP
            1201 North Market Street, 16th Floor
18          Wilmington, Delaware 19899-1347
            (302) 351-9106
19          araucci@morrisnichols.com
            jtigan@morrisnichols.com


20


21


22


23


24


25


                    UNREDACTED TRANSCRIPT

1            Appearing on behalf of the Defendants:

2                RONALD S. LEMIEUX
                 VICTORIA Q. SMITH
3                DAVID S. ELKINS
                 XIAOMEI CAI
4                MATTHEW STANFORD
                 RACHAEL A. HARRIS
5                Squire Patton Boggs
                 1841 Page Mill Road
6                Suite 150
                 Palo Alto, California 94304
7                (650) 843-3330
                 ronald.lemieux@squirepb.com
8                victoria.smith@squirepb.com
                 david.elkins@squirepb.com
9                xiaomei.cai@squirepb.com
                 matthew.stanford@squirepb.com
10               rachel.harris@squirepb.com

11
                 RONALD P. GOLDEN, III
12               Bayard, PA
                 600 North King Street, Suite 400
13               Wilmington, Delaware 19801
                 (302) 655-5000
14               rgolden@bayardlaw.com

15
       Also Present:   Drew Wright
16

17

18

19

20

21

22

23

24

25

                     UNREDACTED TRANSCRIPT

4

```
 1                          FRIDAY

 2                       APRIL 19, 2024

 3                   ----------------------

 4

 5              THE COURT:  All right.  We're here on the

 6    pretrial conference, and we need to go over a number of

 7    things.  An administerial thing to go over -- and I'm going

 8    to make sure we've got the right folks.

 9              I think it's -- is it Ms. Ayers?  I'm looking.

10    I've got to find everybody there.

11              MS. AYERS:  I'm here, Your Honor.  It's good to

12    see you this morning.

13              THE COURT:  Okay.  Good to have you here.  We

14    kind of need you here, right?  There she is.

15              Okay.  And we've got Mr. DeFosse.  Is he still

16    here?

17              MR. DEFOSSE:  I'm here, Your Honor.  Good

18    morning.

19              THE COURT:  Good morning.  Good morning.

20              Okay.  And you're the two in charge today for

21    Qorvo.

22              And then we have Mr. Elkins?

23              MR. ELKINS:  Good morning, Your Honor.

24              THE COURT:  Okay.  Good.  Absolutely.

25              And Mr. Lemieux?
```

UNREDACTED TRANSCRIPT

1          MR. LEMIEUX:  Good morning, Your Honor.

2          THE COURT:  Good morning.  How are you?

3          MR. DEFOSSE:  And, Your Honor --

4          THE COURT:  Have you had a chance to visit your

5    relatives?

6          MR. LEMIEUX:  That would be nice.

7          THE COURT:  Yeah.  Where is the family from?

8          MR. LEMIEUX:  Most of my family is actually in

9    Minnesota and Wisconsin.

10          THE COURT:  Okay.  The last name's confusing a

11   little bit.  No, no, I didn't think you were recently from

12   France.  Originally from France or part of Germany?

13          MR. LEMIEUX:  My last name -- it's French, and

14   then my family is French Canadian.

15          THE COURT:  French Canadian.  Absolutely.

16          Okay.  Well, I think we know who the main

17   speakers are, and we see everybody else on the screen.

18          MR. DEFOSSE:  Your Honor, if I may -- just --

19   sorry.  Quickly, this is Mr. DeFosse.  Rob Masters will be

20   taking the lead for the plaintiff, Qorvo, today.

21          MR. MASTERS:  Good morning, Your Honor.

22          THE COURT:  Hello, Mr. Masters.  I wondered what

23   had happened because we got different information earlier.

24   Okay.

25          All right.  Well, first of all, it is very much

UNREDACTED TRANSCRIPT

1    to everyone's advantage for lunches to be brought in, and I

2    think everybody who practices in Delaware knows that.  It

3    will save us a lot of time, and -- it's for the jury.  At the

4    same time, I don't do that unless you all agree, but it will

5    be the best money you will probably ever spend in terms of

6    efficiency.  And jurors actually appreciate it in the sense

7    that they don't have to leave the building and so forth, so

8    that's a plus.

9              And so I will need to enter an order on that.  Is

10   there any --

11             Mr. Masters, is there any problem with that?  I

12   know that you're probably used to doing that.

13             MR. MASTERS:  We anticipated that, Your Honor,

14   and we agree with it.

15             THE COURT:  Okay.  And the same thing, I suppose,

16   is Mr. Elkins?

17             MR. ELKINS:  Yes, Your Honor.

18             THE COURT:  Yes.  So I'll go ahead and enter that

19   order.  I'm going to set that up here, but we'll enter it.

20             Now, I'm anticipating that we will have, I think

21   you know, we will have 14 jurors with two alternates.  That's

22   sort of standard where we can do that.  I know that some of

23   you are used to having eight or ten, but there are many

24   reasons to have the larger number.  And it doesn't take that

25   much more time.  So I'm going to anticipate that there will

UNREDACTED TRANSCRIPT

1  be 14 jurors.

2          And we will designate the alternates at the

3  outset.  But in deliberation, we will need to consider

4  whether we want to have the alternates sit in the jury room,

5  not participate, but sit in, so that if someone becomes ill

6  or something happens, there's an accident when someone is

7  traveling and they're already in deliberation, that the next

8  numbered -- first alternate would take that person's place.

9  And, certainly, that is just a cautious way to proceed so

10  that we can bring the case to a conclusion.

11          Now, I understand that in a civil case, we could

12  just dismiss the alternate -- we could just dismiss the --

13  someone and just have -- if we only had 12, we go to 11 or 10

14  or so forth, but I think this is not an unreasonable way to

15  proceed.  And at least we'll contemplate doing that unless

16  the clerk's office says that we need to do something else.

17  So that's how we'll proceed.  So I'm signing on the lunches,

18  and that's how we will proceed.  That's done.

19          Now, there are matters, such as the motions in

20  limine, which we will go over.  And, of course, there's also

21  other -- there's summary judgment.  Orders are going to be

22  entered in connection with all of those.

23          I did receive the materials on voir dire, and

24  they are useful.  A lot of times I get things that are not

25  useful, and I do appreciate that.  We won't ask about

UNREDACTED TRANSCRIPT

1    everybody under the sun who is listed on your long list of do

2    you know because they will look out there, and they will know

3    if they know you.  And so we will just say, is there somebody

4    that -- is there someone that you're familiar with.  I know

5    Delaware is small, but it's not that small, and so I don't

6    think that will be a problem.  But there will be some -- just

7    some things that we'll shorten -- we'll shorten a little bit.

8         And, of course, we start out with the prejudice

9    voir dire, which is really just an educational process, and

10   I've gone through -- I go through this so often that

11   sometimes I fear that I have -- you may already be familiar

12   with it and not want me to even talk about it, and there is

13   some reference to it on the website.

14        But, of course, I'm going to repeat a couple of

15   things here because they will not know who you are or what

16   kind of case it is when the jurors come in initially.  They

17   won't know it.  And I know a lot of people are used to being

18   introduced and I always think that's kind of odd.  That

19   doesn't really matter.  I mean, we do care about who you are,

20   but in terms of ferreting out bias and prejudice, it's not

21   relevant, and it also serves as a very good illustration of

22   how that can impact people when we ask the exercise that we

23   always go through.

24        So we start out with the first question very

25   quickly:  What's the most important characteristic for

UNREDACTED TRANSCRIPT

1   someone who is going to serve on a jury?

2           And this is really, as I think all of you know,

3   to do two things.  One is we're going to get to the question

4   of impartial and not bias and prejudice, and they've probably

5   all been watching television, and they hopefully know that by

6   now.  But they -- we will go through a list of important

7   characteristics, like being on time, being honest, being

8   thoughtful, not deciding too early, many things that they

9   will list, but they will also say that you should not be

10  biased or prejudiced or have any preconceived notions.  So we

11  will build that list.

12          And then, of course, we ask them:  What's an

13  example of bias or prejudice?

14          Now, we don't have that issue in a case like

15  this.  We do have some potential issue, but not the same as

16  we might have in an employment case or something else.  And

17  so they will then say things as to which people may have bias

18  and prejudice.  It's really very important.

19          In fact, it's so interesting because you never

20  know how this is going to come up.  Usually, the most

21  important thing that causes people to have bias and prejudice

22  is actually appearance, but they'll go through -- they'll

23  build a list of that.

24          And then we'll ask the jury the question, which

25  you should remember already that:  Can you decide the case

UNREDACTED TRANSCRIPT

1  without being influenced by any of these illegal or

2  unconstitutional factors?

3           And then we'll have jurors in Seats 1, 2 and 3,

4  and 4 go through the exercise, which is why they won't know

5  who you are to start with.

6           The first juror will be asked:  What is the --

7  who do you think is the person who is the attorney for the

8  party bringing the claim?

9           Now, obviously, I'm talking about lead counsel

10 because we've got a thousand attorneys.  Not a thousand.

11 We've got a good many.  And, therefore, they will pick out

12 someone, and sometimes they get it right.  Sometimes they

13 don't.  It doesn't matter really.

14          And then we will ask:  Who is the attorney for

15 the party defending the claim?

16          And I'll say something like it could be like a

17 big truck case.  It could -- because you've got to start

18 thinking in different ways.  Or it could be a criminal case.

19 I may say that, may not.  And they'll pick out someone.

20          And then I'll ask:  Who is the defendant in the

21 case, and who are the defendant's representative?

22          And that's important because they'll look out

23 there, and they'll -- with this number of people, it's going

24 to be very difficult for them to get it, quote, right.  There

25 is no right or wrong, and so that makes them uncomfortable.

UNREDACTED TRANSCRIPT

1 And at that point I've told them this is a civil case, and

2 this is -- and I'll say one or two tiny things about the

3 case, but it's a civil case.

4             And then I'll ask the fourth person:  Who is

5 the -- is the individual representing the defendant -- the

6 plaintiff in the case, the party bringing the claim?

7             And the odds are not very good that they'll get

8 them, quote, right.  But then we'll say to Juror No. 5:  What

9 did we just do that was wrong?  Right?

10            And they will say -- they'll eventually say that

11 we were making determinations either -- they'll either say

12 without sufficient information, which is true, or on

13 appearance or factors that we really can't consider.  And

14 that helps people remember the idea of appearance.

15            And that may not matter to you right now, but you

16 think about your array of witnesses that are going to appear

17 in the case and people who, for many reasons, they may find

18 someone physically more appealing than someone else -- many

19 things.  We don't want them to think about those things.

20 They want to listen to the testimony.

21            So there's a whole -- the rest of the inquiry

22 that I make goes through a number of other questions but not

23 too many, including what makes a jury different, and we talk

24 about four or five things that make a jury different.

25            Now, I'll just go over this with you because I

UNREDACTED TRANSCRIPT

1   don't know if I've had everybody on the screen where I've

2   gone through any of this.  Probably had local counsel on the

3   screen on this before, so I'm trying to see who is there.

4   But that's just an idea of how we're going to do that.

5           This is to let the jury, through its own Socratic

6   process, buy into the idea of what they've got to do and that

7   they can do it.  All right.  And that's important in a case

8   like this.

9           So I mention that only because you did do a good

10  job on getting me some background information.  I will ask

11  some of these questions.  I will let you have a chance to ask

12  a few of them.  Somebody the other day said -- I guess a

13  lawyer in a case, several times, but do you want me to ask

14  any more questions?  Do you want to ask more questions?

15  Well, Judge, I don't think so.  And then they came back on

16  their motion for a new trial saying, well, you cut off the

17  number of questions that we could ask.  I said, well, I don't

18  know about that.

19          So you will have an opportunity to, but we don't

20  get to embed predisposition, and that's really important.

21          And in many, many cases or in some circumstances

22  in state court occasionally -- I'm sure it never happens in

23  federal court -- there is a tendency for attorneys to want to

24  embed a predisposition one way or the other, and we don't

25  want to do that.  I think all of you can think of in this

UNREDACTED TRANSCRIPT

 1   case a way that that might be a temptation.

 2            So, Mr. DeFosse, you can say, you know, how

 3   somebody might want to say something really bad about your

 4   client.  Now, if you find this about them, you know, you will

 5   surely rule against them, won't you?  They won't quite say it

 6   that way.  And I'm sure that --

 7            Who is going to do voir dire here, Mr. Elkins?

 8   Let me find him again.

 9            MR. ELKINS:  I think Mr. Lemieux and I will flip

10   a coin on that.

11            THE COURT:  Okay.  And, usually, a lot of times

12   when we finish the questions, because you've given me some

13   good questions to use, some good questions to use, there's

14   just really not much to add, and I understand.  So that

15   covers your voir dire situation, generally.

16            I do have a question -- I'm going to just check

17   on it.  Do you have any strong positive or negative opinions

18   about companies with foreign branches, affiliates, or

19   operations that might make it difficult for you to be fair

20   and impartial during this case?

21            I don't know if -- I'm just curious.  You know,

22   tell me whether it might -- it may be a great question.  I

23   circled it.  I just want to check with you or whoever needs

24   to respond to that because sometimes it highlights something

25   we don't want to highlight.  So I wasn't quite sure where to

UNREDACTED TRANSCRIPT

1   go with that, that idea.

2           Who wants to respond on that?  I can see it's

3   Mr. Elkins.  He's anxious to respond.  I don't know the

4   answer.

5           MR. ELKINS:  I was going to defer to Mr. DeFosse.

6           THE COURT:  Oh, okay.  That's fine.

7           Mr. DeFosse, do you see what I'm saying?

8           MR. DEFOSSE:  Yes.

9           THE COURT:  Sometimes by saying it, I'm not

10  helping.  I'm actually not making it better.

11          MR. DEFOSSE:  Yeah.  So, we, actually -- Qorvo

12  actually proposed that originally between the parties, which

13  may be counterintuitive, and I think we would be fine either

14  way.  You can see how it might embed some prejudice as far as

15  asking about foreign companies and things like that.  So if,

16  you know, Your Honor wanted to remove that question, I don't

17  think we would oppose it.

18          THE COURT:  And I'm going to probably just strike

19  through it.  But I'm just sensitive about causing somebody

20  early in the case to be looking for something that we don't

21  want them to look for.  And you'll see I'm going to skip

22  quite a bit of material because I think that two things will

23  happen.

24          I will finish really what I need to do, and you

25  will have an opportunity to ask a follow-up question, or you

UNREDACTED TRANSCRIPT

1    can come to side-bar and say, Judge, you really need to ask

2    this question.  Well, that's okay.  I'll -- we'll get some of

3    their background but, of course, the main thing is to make

4    sure that they understand what their role is, and they have

5    to be fair and impartial.

6              I've got your preliminary instructions.  I've got

7    the special verdict forms.  We will work on that a little

8    bit.  We've still got some work to do with that, so we will

9    be giving that some additional thought.  And I've got final

10   jury instructions, so I've got those materials, and I only --

11   so we're in great shape in that regard.

12             Now, we could talk about various motions, but it

13   might be more useful for me to run through our situation on

14   those.  I hate to be the one who talks all the time.  After

15   we get the jury selected and we get started and you do

16   opening statement, I don't have to say too much, so I end

17   up -- just the way it is.

18             There are a couple of -- there are three *Daubert*

19   matters that we have to resolve.  And it does appear that --

20   and if I say the name incorrectly, you'll maybe correct me,

21   which is Lebby.  It looks like that that's not going to be

22   situation inquiry.  That person will be testifying.  And we

23   will enter a more -- an order with a little more information

24   there, but that motion will need to be granted.

25             And then as to Irwin -- I've got several ways to

UNREDACTED TRANSCRIPT

1    look at this -- that one will be denied, it appears.

2           And then Bennis, there's an interesting question

3    on Bennis, and we have been working on that and giving it a

4    lot of thought.  I wasn't thrilled with the response.  I'm

5    just checking with everybody else if somebody else here was,

6    in terms of what I had asked about.  I do see the logic, but

7    that's not exactly how expert information works.  A theory

8    that is created for the purpose of specific litigation is

9    typically not admissible and cannot be used.

10          However, I'm going to continue to keep that as an

11   open matter, and I also see the merit of allowing this

12   particular individual, which is at Docket No. 456, to

13   testify.  And I think everybody who has an economics

14   background, or something akin to this, can see that.  So

15   there will need to be a little more discussion on that.  We

16   will write up some material on that.  It may be that this is

17   something where cross-examination would be sufficient, but

18   that is where we are.

19          I hope everybody understands the Court has made

20   inquiry in this area before, and there is some material that

21   I think is probably out there, but it is for the party

22   advocating this testimony to produce that.  I made that clear

23   before and did not get a completely satisfactory response.

24          And I'm making it clear again, and I don't always

25   give somebody a third chance, but from an economics point of

UNREDACTED TRANSCRIPT

1   view, from a practical application point of view, this is

2   something I want to give a little more thought to, so I think

3   you know where we are on that.  And I'm sure everybody is

4   just thrilled with that comment.  That's all I can -- you

5   know.

6          Okay.  Now, let's go through our situation on in

7   limines.  And let's go through Plaintiff's No. 1 limine,

8   which was to preclude defendants from offering any reference,

9   or to introduce any evidence regarding Qorvo's alleged unfair

10  and deceptive trade practices.

11         Obviously, that's going to be a grant.  That

12  is -- there are problems under several categories of the

13  rules and certainly a 403 objection is -- would be --

14         MR. LEMIEUX:  Your Honor --

15         THE COURT:  Excuse me.

16         MR. LEMIEUX:  I'm sorry, Your Honor, I wonder if

17  I could be heard on that before you make a final ruling on --

18         THE COURT:  You presented everything in your

19  papers, didn't you?

20         MR. LEMIEUX:  Well, the fundamental problem with

21  their motion, Your Honor, is that it makes the wrong

22  assumption.  We have no intention of bringing up this

23  conduct, which for, number one, regards the acquisition of

24  competitive information regarding my client.

25         We intend to show that, as our expert has already

UNREDACTED TRANSCRIPT

1   testified to, that's just normal conduct.  We're not going to

2   say it's bad conduct.  We have no intention of saying that's

3   wrongful conduct that's unrelated somehow to this.  In fact,

4   just the opposite.  We intend to show that that type of

5   activity is engaged in by all companies in this industry --

6          THE COURT:  Absolutely inappropriate situation.

7   If everybody jumps off a bridge, and you jump off the bridge

8   and you break your neck, was it -- you know, that's -- it

9   doesn't matter that everybody jumped off the bridge.

10          MR. LEMIEUX:  Well, I guess what's important,

11   Your Honor, here is that it goes to the unfair competition

12   claims that this is not something that's considered unfair

13   competition.  It's just competition.

14          THE COURT:  Can you show me something in the

15   literature that says that that's absolutely correct, that

16   this is appropriate ethical conduct within the industry?

17          MR. LEMIEUX:  That gathering information about

18   your competitors and what they're doing, absolutely, Your

19   Honor.  I mean, that's American capitalism.

20          THE COURT:  Well, but unfair and deceptive --

21   asserting that these are unfair and deceptive trade

22   practices.

23          MR. LEMIEUX:  That's how the plaintiff wants to

24   characterize it.  We're not characterizing them that way.

25   We're not going to go into court and say, look, they're going

UNREDACTED TRANSCRIPT

```
 1    to be engaged in bad activities too, so what's good for the

 2    goose is good for the gander.  Quite the opposite, Your

 3    Honor.  We're saying that this type of -- this is just normal

 4    intelligence gathering regarding your competitors.  We did

 5    it.  They do it.  So does everyone else.

 6              THE COURT:  Excuse me.  Excuse me.  You know, I

 7    understand, and I will give this some more consideration.

 8    That's not a problem.  I do understand what you're saying,

 9    and we do understand that -- but there are problems with it.

10    And there are problems whether they relate to the application

11    of Rule 403 or whether it's just confusing to the jury.  And

12    it is not going directly, I believe, to an issue that the

13    jury will be deciding.

14              But I will look at it a little bit more, and I

15    hear what you're saying.  I -- and we'll write up something.

16    We're always willing to consider some more.

17              But the problem is this both confusion and the

18    application of 403 and whether it's simply more prejudicial

19    than probative, whether it's confusing to the panel, whether

20    it's confusing to the jury.  And so -- but I know what you're

21    saying.  I mean, I don't question everybody knows that

22    companies engage in analyzing opponents' or competitors'

23    information.  Everybody knows that.  That's simply not

24    something that anybody -- well, I hope -- I don't know any

25    companies that don't really do that.
```

UNREDACTED TRANSCRIPT

1      So -- we'll look at it a little bit more.  But I

2 don't -- I know we've got some time constraints because I

3 have some lawyers that have a problem that we have to address

4 at 11:30 and --

5      MR. LEMIEUX:  I appreciate that, Your Honor, but

6 like I said, I just wanted to make it clear that the

7 plaintiffs here assume that we're going to try to use this

8 evidence in some sort of negative way, and that is absolutely

9 wrong.  We don't intend to introduce it for that reason at

10 all.  It's just simply to show what is the custom and

11 practice in this industry in terms of what people do and they

12 do it, we do it, we don't think it's wrong.  And I think that

13 is directly relevant and not more prejudicial than probative

14 with regards to the unfair competition claims.

15      THE COURT:  Well, let me hear extremely briefly

16 from counsel opposite.  We'll look at it some more.  I hear

17 what you're saying.  There's some merit there.  I'm not

18 disagreeing with you in the least.  It's really an

19 application of the 400 series of rules, primarily.  And also

20 we've looked at some of the case law in the area.  Of course,

21 we're familiar with it anyway.

22      Okay.  Who wants -- I see somebody trying to

23 speak.

24      MS. AYERS:  That's me, Your Honor, and I will

25 take 60 seconds to respond to Mr. Lemieux, and I appreciate

1     the opportunity.

2          I think our fundamental issue with what Akoustis

3     is attempting to do with this evidence in argument is that it

4     wants the jury to assume that the documents that Qorvo had,

5     and which are the subject of this motion in limine, it had

6     without the permission of another party.

7          And, sentimentally, our reply addresses that

8     issue directly on point, and there is case law that suggests

9     it's not permissible in order to use another party's

10    potentially wrongful conduct as a way to escape liability

11    when the matters that are at issue are not subject to some

12    type of unclean hands defense.

13         And I think our reply directly address that issue

14    on point, and our concern with the submission and admission

15    of this evidence is that they are attempting to try and get

16    the jury to assume that we did not have permission to have

17    the materials that we had in order to escape liability for

18    having our materials without our permission.

19         THE COURT:  We understand.  And, you know, I

20    think we've got it down, and we're going to apply the rules,

21    and I think we'll be okay here.  But I'm going to look at it

22    a little bit more because counsel asked me to, and we always

23    do that.  So we will do that.

24         But we do have a -- I'm not having -- I don't

25    want to push you too much, but I do have to get through some

UNREDACTED TRANSCRIPT

```
 1    things today.  And you're right.  Counsel is always right.

 2    Defense counsel is entirely right that the Court can

 3    reconsider at a later point in the proceedings if it becomes

 4    clear that we should allow that testimony.  So when you file

 5    a motion in limine, it's in limine.  And I'm not going to ask

 6    you to please bring this up again a dozen times because I'm

 7    not going to do that.  I'll probably be saying things like,

 8    we ruled on that, we've considered that.  But I can do that.

 9    And if I decide that I wasn't right, which sometimes we

10    decide that, then it will come right back up, and we will be

11    talking about it again.  Okay --

12              MR. LEMIEUX:  I would just simply also, Your

13    Honor, just point out in just a few seconds.  You can also

14    issue an instruction that prohibits us from using it in the

15    way that plaintiff is concerned here.  And that I agree with

16    that.  I agree that it would be a 402, 403 problem if I was

17    going to use the evidence that way, but that's not what our

18    intention is and that's not what we would use it for.

19              THE COURT:  And I understand that.  Sometimes as

20    you well know, both of you know, all of you know, the Court

21    will actually reserve the final ruling so we can hear some

22    information and then make a determination.  But I think in

23    terms of your being able to prepare for trial, I need to tell

24    you as much as I can about what things look like now, and

25    that's what we will -- that's what we're doing.
```

UNREDACTED TRANSCRIPT

1          And then there's a Plaintiff's No. 2, which was,

2    basically, this is the same motion as the one we just went

3    over partly, but applied to Qorvo's alleged acquisition of

4    third-party confidential information.  I think that's what we

5    were talking about in part also.  Obviously, that looks like

6    that's a grant, but we understand we're going to continue to

7    look.  We always do.

8          Okay.  Plaintiff's No. 3 is references to any

9    other lawsuits or introducing any evidence regarding the

10   claims asserted in the lawsuits.  And there's an argument

11   that this is insufficiently specific and argues about some

12   specific e-mails.  But, of course, that would simply be a

13   problem again in the 401, 402, 403 area.  It may be -- I

14   might add a couple of rules in there.  It, typically, is not

15   going to be admitted.  It's going -- the motion is going to

16   be granted.  There wasn't strenuous opposition here.  I don't

17   want to hurt anybody's feelings.  Maybe they felt like it

18   was.

19         And then No. 4 is the Qorvo seeks to exclude

20   arguments about negative comparison in size with revenue.  We

21   all know that we can't come in and say, that's a big company,

22   I'm a little company, you got to be nice to me.  Or you

23   should take the David and Goliath argument.  Nobody is going

24   to be saying David and Goliath here.  That's right.  I think

25   I just went over it.  I think I just ruled on that for sure,

UNREDACTED TRANSCRIPT

1   and so we need not do that.  You know, big, little, et

2   cetera, we're a country where every party appears before the

3   Court as a party of equal standing in the community and so

4   forth.  And we don't do that.

5          And I know that there may be -- and I'm aware

6   that there may be some language that we need to include, and

7   there could be some information at one point that might be

8   appropriate, but we will include some reference in the

9   language that we will include in the order on that.  And I

10  know you've got -- they've cited alarm.com.  We're aware of

11  that.  So -- and we talked some on what's on kind of refining

12  some of the language we may use.

13         The defendant has motions which include --

14  precluding the plaintiff from offering evidence about trade

15  secrets beyond the 104.  And really, you run into start --

16  you start running into issues that do relate to 403 and do

17  relate to -- well, it's just relevance.  It's going to be

18  helpful for the jury.  I know that there's an argument here

19  that this will show part of a scheme or plan or so forth and

20  so on, but you've got a lot of material.  You've got a whole

21  pound -- a whole lot of material.  And so we have to look at

22  cumulative effect.  We have to look at whether or not it will

23  go to an issue that is before the jury.

24         And I am aware of the -- of the position that it

25  should be admitted.  And there's been a forensic examination

1    and so forth by Faulkner and the assertion that this is

2    relevant and properly received in this case to show a scheme

3    to steal trade secrets.  Right now, it appears that we should

4    not contemplate that that will be useful in the case in the

5    sense that it simply does not appear to be appropriate under

6    the rules that we're going to review and cite.  So, again,

7    that covers that.

8            Now, there is a defense motion to preclude the

9    plaintiff's proposed certain trial exhibits in connection

10   with depositions.  And this is a little something we may want

11   a little clarification.  But these are two depositions.

12   Obviously, most of the time, depositions are not received,

13   and I assume that nobody contemplates that a deposition will

14   be received as an exhibit.  Actually, I'm not sure that's

15   correct.

16           And so I want to check with the plaintiff and

17   just make sure that you would never really want us to do

18   that?

19           MR. DEFOSSE:  Submitting as an exhibit, that's

20   correct, Your Honor.  I think the transcripts could be used

21   for two purposes.  One is to -- and there's two at issue.

22           There's one for -- is Exhibit 1 that's been

23   marked and --

24           THE COURT:  Right.

25           MR. DEFOSSE:  For Exhibit 1, I think that would

UNREDACTED TRANSCRIPT

1    be possibly the source of designations.  I will say at this

2    point, we haven't actually designated anything from that

3    transcript, so this may be a point that the Court can defer

4    on and wait to see.

5              On the Shealy transcript, that would be for

6    impeachment, Your Honor.  And I don't want to --

7              THE COURT:  And I understood that that would be

8    for impeachment and that you wouldn't be submitting the

9    transcript.  You would just be using it for impeachment.

10             MR. DEFOSSE:  That's correct, Your Honor.  And I

11   was going to say I don't want to move the Court backwards,

12   because I know you're moving forward, but if you would

13   entertain discussion on the first motion in limine, I would

14   also be the person addressing that.  And it sounded as if, if

15   I heard the Court right, that that was going to be granted

16   and, obviously, we were hoping --

17             THE COURT:  It's one of those where I write down

18   "grant," and then I put a question mark, make sure.  So okay,

19   convince me I'm wrong.

20             MR. DEFOSSE:  Sure.  So the first thing I would

21   say is that we have an unfair competition in this case, and I

22   think the most direct route to the scope of the theft here

23   goes to that claim.  If a party steals 279 gigabytes plus a

24   half million documents from a competitor, that's an unfair

25   trade practice in our view.  And we would argue to the jury

1   that that qualifies as immoral, unethical, oppressive, or

2   unscrupulous behavior under North Carolina law, and it gets

3   pretty directly relevant to that.

4           On -- we also have a trade secret claim here.

5   It's relevant to a number of the elements of a trade secret

6   claim.  Obviously, it's the context for how the opponent got

7   the documents, got the trade secrets, so we would like to be

8   able to explain to the jury that, you know, they were hiring

9   employees, taking large amounts of information, and they kind

10  of, you know, used that as a library for our trade secrets.

11          And if -- you know, what I always go back to here

12  is if this were not in the digital context, if this were in

13  the physical context, and what they did instead of copying

14  things digitally, they sent someone to our office and sent

15  them through the office at night with boxes, and said,

16  collect every piece of paper there, we would be allowed to

17  tell the jury that.  And just because some of the pieces of

18  paper collected were takeout menus or newspapers isn't a

19  reason that the scope of what they did is irrelevant.  So we

20  think it's relevant to that.  And the other issue is we have

21  a -- sorry.

22          THE COURT:  No, no, let me ask this question:

23  How long would it take -- because you have 104 trade secrets.

24  So how is this going to -- how long is it going to take to

25  present this -- and I think it may not take very long at all,

UNREDACTED TRANSCRIPT

1    but -- to present this piece of information, and then is it,

2    to some degree, cumulative.

3            MR. DEFOSSE:  I anticipate this to be very short,

4    Your Honor.  This is context for how they acquired the

5    materials, why Akoustis knew that these materials were

6    acquired in breach of confidentiality obligations if you're

7    taking that much stuff, and why their actions are willful and

8    malicious in this case.

9            I would expect that Kevin Faulkner, our forensic

10   expert, would be on the stand, we'll ask him about his

11   analysis, we'll ask him about his overall findings, and he

12   will report on the scope of what was taken.

13           Our other experts, Dr. Shanfield, on the trade

14   secret side, and Ms. Bennis, on the damages side, may mention

15   this or refer to this very briefly, but we're not intending

16   to go through the 500,000 documents or the 279 gigabytes of

17   data and talk about those specifically.  It's to provide

18   context for the claims.  So that's the way we expect to

19   present it.

20           THE COURT:  Is it partly summary-type

21   information?  I mean, obviously, the Court is concerned about

22   efficiency.  We want the information -- the right information

23   to come in, but we also don't want to confuse the jury by

24   referring to a bunch of material that is not the subject of

25   the claim -- of a trade secret claim.

UNREDACTED TRANSCRIPT

1          MR. DEFOSSE:  Yeah.  So I think it is -- it will

2    not take a lot of time, and I don't think there's going to be

3    jury confusion on this issue.  It's -- again, it's

4    explaining -- as I said, if someone went into the office with

5    boxes and picked up every piece of paper, we would say, they

6    got these pieces of paper because they sent someone to the

7    office, and they picked everything up.  And that's what we're

8    kind of saying here.

9          We're not saying we're not going to tell the

10   jury, and the other side is free to explore this on

11   cross-examination, that all 500,00 documents or all 279

12   gigabytes of data are confidential, but the jury is entitled,

13   I think, to make the inference that if you copy entire

14   laptops, you copy entire e-mail accounts, you were seeking to

15   obtain confidential information.  That's why you did it.  And

16   so that's the context of which --

17         THE COURT:  It goes to the method of the

18   appropriation of the material, but not an assertion.  Won't

19   we have a limiting instruction on this if we use it, if it's

20   allowed to come in.

21         MR. DEFOSSE:  My view, Your Honor, would be

22   that's what's covered in the jury instructions already.  When

23   we talk to the jury, we define what a trade secret is, and

24   we're going to be very clear in this case about what the 104

25   trade secrets are.  And this is how part of the story of how

UNREDACTED TRANSCRIPT

1    they acquired the 104 trade secrets, but we're not saying to

2    the jury, you know, there's 500,000 documents that are all

3    trade secrets.  And I think that that will come out in the

4    instructions, I would hope.

5              THE COURT:  It will.  It's pretty well -- but --

6    you -- and I'm not going -- I've got to be a little sensitive

7    about my time.  We've got a 404(b)-type question about, okay,

8    does it look like you're trying to prove something by other

9    conduct, like trying to prove trade secrets appropriation by

10   other conduct?

11             MR. DEFOSSE:  I don't think so, Your Honor.  I

12   have a hard time wrapping my head around that one in this

13   context because we're talking about the scheme that's at

14   issue here.  We're talking about, for example, the chief data

15   scientist who brought copies of his Qorvo computer and

16   uploaded it.  That's part of what's at issue in this claim,

17   so it's not prior conduct that's being used to show

18   conformity.  It's what we're alleging.

19             THE COURT:  Right.  I understand.  Do you

20   disagree with the Court that it might well be, however,

21   appropriate to give a rather clear image instruction at the

22   time this information is introduced so that there's not this

23   element of confusion about what it shows?  It's only on the

24   issue of, do you see what I'm saying?

25             MR. DEFOSSE:  Yes, Your Honor.  I think the devil

UNREDACTED TRANSCRIPT

1   is in the details there, but if that was the -- if that was

2   what the Court felt was necessary in order to allow this

3   information, we would obviously defer to Your Honor.

4           THE COURT:  Okay.  Well, I probably would also

5   get some input as we would also prepare something.  I had

6   this -- I mean, I had it down.  I think we understand where

7   we're coming from on that.  I think we've --

8           MR. ELKINS:  Your Honor, I know you're pressing

9   for time.

10          THE COURT:  I'm sorry, I am, but go ahead.

11          MR. ELKINS:  I would love to be heard here.

12          THE COURT:  Absolutely.

13          MR. ELKINS:  This is a giant 403 mess, as well as

14  it's also a 402 issue.  What Qorvo seeks to do is have

15  somebody testify that, hey, we got this ginormous pot,

16  five -- half a million documents and 279 gigabytes of data.

17  They're not going to tell anybody what's in it.  And they're

18  piling on to the 104 trade secrets and the 1,523 documents

19  that Mr. Shanfield actually reviewed, and they're asking the

20  jury to speculate that this must be the same, and that all of

21  this mass of documents, it must be really bad.

22          It's part of this shock and awe strategy that

23  Qorvo has to basically create a giant snowball because they

24  don't really have any evidence that Akoustis used any of this

25  stuff.  And so they're trying to shock the jury into granting

UNREDACTED TRANSCRIPT

1    them a huge award by piling on all of this evidence.  It

2    would be error to invite the jury to speculate as to the

3    contents of all this stuff.  It could have been personal

4    e-mails.  It could have been anything.

5              THE COURT:  I understand.

6              MR. ELKINS:  Obviously, yeah, there might be some

7    confidential documents in it, but by pushing this huge

8    mountain that nobody has analyzed, the contents of which are

9    never going to be revealed to the jury to supplement evidence

10   regarding motive is overkill and extremely prejudicial.  And

11   it's not relevant to any claim Mr. DeFosse eloquently speaks

12   about the unfair trade practices claim under North Carolina

13   law.

14              Their pleading does not rely on mountains of

15   documents that are not what they define as propriet- -- that

16   Qorvo BAW for proprietary information, which is confidential

17   information.  They don't have a conversion claim regarding

18   documents.  They didn't -- after Mr. Faulkner -- after Your

19   Honor ordered the forensic inspection and Mr. Faulkner did

20   his thing, they did not seek to amend their complaint to add

21   a conversion claim or to add that basis to the unfair and

22   deceptive Trade Practices Act claim.  It's not relevant to

23   the trade secret claim because Mr. Shanfield was their

24   liability expert.  He never reviewed any of this stuff.

25   Ms. Bennis did not review any of it, and she relies totally

1   on Mr. Shanfield, who didn't review it.

2            So it's a -- it's an effort to use this huge mass

3   of data.  The jury is never going to see it, is never going

4   to hear about the contents.  And as Your Honor inferred, it's

5   simply character evidence to prove, well, they took 104 trade

6   secrets.  They must have taken this mountain of other stuff.

7   We're going to punish them.  And that's why all of this is

8   leading and that's why, Your Honor, it should be granted.

9            THE COURT:  Well, I think everybody has had their

10  say on this.  The reason that we go through them at this time

11  is that the initial -- not initial, the -- you will receive

12  an order which will indicate that there are problems with

13  this material and that at this point, it appears that the

14  motion should be granted.

15           But on this one, I do understand the argument and

16  the position of the plaintiff.  And while something may have

17  some relevance in a case, then you look to 403.  And, of

18  course, you become concerned about 404(b) and everything else

19  in the rules.

20           So I'm going to keep going because we need to,

21  and I think everybody understands that what the order will

22  say.  And I will look at it a little bit more, which we

23  always do, and reserve the right to change my mind if I

24  decide I wasn't right.  So that's how we'll handle it.

25           Okay.  Now, I think we're on to Defendant's

UNREDACTED TRANSCRIPT

1    No. 3.  That becomes moot.  That is a matter which Michael

2    Lebby's material will be out, and that will be very clear.

3    So that's not something to be further discussed.  We've got

4    sufficient material on that.

5              Then No. 4, there -- this relates to the

6    computers that we had a lot of discussion about in this case,

7    and this is something where the -- of course, the defendant

8    seeks to preclude evidence or comment regarding the subject

9    matter of Qorvo's motion for sanctions, which we're not going

10   to do that, but that there's also -- there's an issue about

11   the two laptops and their reformatting.

12             And it appears that with a proper limiting

13   instruction and a limited inquiry, which is very important

14   because if it goes on very long, it becomes something that's

15   not appropriate, then this limited inquiry will be

16   appropriate.  Of course, as I understand it -- and I can go

17   back to plaintiff's counsel for a moment.  But I understand

18   that they do want to show a relevant -- make a relevant point

19   as to this, but we're not going to be indicating that there

20   was some nefarious activity that was involved.  We're not

21   going to be doing that.  But they're just going to show that

22   they made a complete investigation, et cetera, in this

23   matter.  So I think that takes care of that.  Sometimes we

24   need to go over a couple of more things.

25             The -- there are two problems here.  The

UNREDACTED TRANSCRIPT

1  defendant properly raises in 5 and 6 late submittals.  Late

2  submittals are a problem, and they have to be submitted on

3  time.  This is not like -- you're not at school, and somebody

4  is not getting after you.  It's just this is how the rules

5  are intended to work in order to make sure that matters can

6  go forward in an orderly way.

7         So the defendant seeks to preclude opinions

8  presented in paragraphs 22 and through 24 -- and 24 --

9  through 24 of the supplemental Shanfield report.  And it

10  appears that that will need to be granted because that was

11  simply too late.  And there's no -- for various reasons,

12  that's our situation there.  It was late.  There's no leave

13  of court granted.  There's just not a reason to do that at

14  this point in time.

15         And then also you have the defendant's motion to

16  preclude the -- and it's Michael Lysse?  I'm not sure how to

17  pronounce his name.

18         MR. DEFOSSE:  Lysse, Your Honor.

19         THE COURT:  Okay.

20         From offering testimony at trial, and this was,

21  again, a late disclosure.  You know, too late is just too

22  late.  We had somebody else today who is also trying to do

23  something too late at 11:30, and we'll have to deal with

24  that.

25         And it's, again, it's not punitive or anything

UNREDACTED TRANSCRIPT

1  else.  It's just that there's an orderly process that it's

2  going forward, and it contemplates certain things will be

3  done in a certain sequence.  And if they're not, we don't

4  consider those matters because, otherwise, things would tend

5  to drag on forever and not be in an efficient disposition of

6  claims.  So I think that that's going to take care of those

7  things.

8              MR. DEFOSSE:  Your Honor, could I just quickly

9  address those last two --

10             THE COURT:  Absolutely.  Absolutely.

11             MR. DEFOSSE:  Very quickly, on the Shanfield

12  supplemental report, I think the key issue here is that the

13  evidence that he was addressing was not disclosed by the

14  other side until after he served his initial report, and I

15  think that's the critical factor here.

16             We served them with interrogatories.  We asked

17  them to identify the evidence that they intend shows their

18  trimming process.  They identified a bunch of documents.  The

19  document that their expert relied on was not disclosed.

20             THE COURT:  Well, tell me when it was disclosed

21  because I think we know.

22             MR. DEFOSSE:  It was disclosed for the first time

23  in Dr. Darveaux's rebuttal report to Dr. Shanfield, so a

24  month after his initial report.  He didn't have an

25  opportunity to address it in his initial report.  I think

UNREDACTED TRANSCRIPT

1    they say, well, it was among the -- you know, hundreds of

2    thousands of documents that were produced in this case.

3    Sure.  But that's why we serve interrogatories.

4            They responded, they gave us a list of documents.

5    This wasn't on it.  First time we see it is in Dr. Darveaux's

6    report.  We deposed Dr. Darveaux, and we actually

7    supplemented Dr. Shanfield's report one business day after

8    Darveaux's deposition.  So I think we moved really quickly on

9    that.

10           They had the opportunity to depose Dr. Shanfield

11    on this at his deposition.  This was done four months before

12    trial.  They could have sought some other relief to address

13    this if that wasn't enough time.  They can still

14    cross-examine him at trial.  But this was not a mess of our

15    making is what I would say on that one, Your Honor.

16           THE COURT:  Okay.  Brief response because we have

17    to be even handed here.

18           MR. ELKINS:  Your Honor, may I introduce you to

19    Mr. Stanford, who is going to respond on our behalf

20    regarding --

21           THE COURT:  Absolutely.  I see him over there.

22           MR. STANFORD:  Good morning, Your Honor.  Thank

23    you for the opportunity.  I'll keep this very brief.

24           This -- as Mr. DeFosse says, this was included in

25    prior productions.  This document was available to

UNREDACTED TRANSCRIPT

```
 1   Dr. Shanfield when he wrote his initial report.  He could
 2   have included it in that report.  He simply chose not to, and
 3   now they're trying to sort of shoehorn it in five weeks after
 4   the deadline set forth by the scheduling order and by the
 5   local rules.  And this was served 24 hours before
 6   Dr. Shanfield's deposition.
 7            Now, yes, it was eventually -- due to some
 8   unforeseen travel delays, it was delayed a couple of days,
 9   but that's just simply not enough time for our experts to
10   really analyze this new evidence that was available to
11   Dr. Shanfield initially and could have been included in his
12   original report.
13            THE COURT:  Okay.  And I think we understand that
14   situation.  I think we've gone over really everything -- part
15   of -- well, not everything, but a good bit of what we needed
16   to.  Obviously, I think we're on -- I think our schedule is
17   pretty well set.
18            Now, I know I've -- I think I mentioned it with
19   this group before, that once we start -- actually, we're
20   going to have some things -- our schedule is always a little
21   bit moving around.  I think all of you are aware that that's
22   how things happen.  And so we will have -- we may have to
23   make a few adjustments, and I'm going to check with the staff
24   and I'm going to check with the clerk's office in, obviously,
25   Delaware on a few things.
```

UNREDACTED TRANSCRIPT

1      But we will -- we will be starting in --

2  sometimes I regret this, but we'll probably do it.  The jury

3  selection will hopefully start no later than nine o'clock on

4  our first day of trial.  I think it will go relatively

5  quickly.  I think everybody understands -- I'm going to get

6  out the proposed pretrial order -- that the limited number of

7  challenge for cause you have, so you have three each.  That's

8  not very much.  And, again, we will put 14 in the box to

9  start with.  I just want to help -- make sure everybody

10  understands.

11      And then I will make the inquiries, and there

12  will be an opportunity at the end of my inquiry for brief

13  inquiries from both sides.  And we've gone over that.

14      Anticipating that we can get the jury on the

15  first day, which we should.  There shouldn't be any problem

16  at all.  Then you need to be prepared -- the Court will be

17  prepared to do the preliminary instructions on that day, and

18  you've already provided lots of information.  I should be in

19  good shape on that.

20      I also have your stipulated facts here.  It's an

21  interesting question as to how much stipulated facts I need

22  to tell the jury.  They're good.  There's nothing wrong with

23  them.  And I will also tell them that they will have a copy

24  of all this material in their final instructions in the case.

25      So I would anticipate that we can conclude by the

UNREDACTED TRANSCRIPT

1   end of the first day, the jury selection, and this is not a

2   case -- you know, our car seat case, everybody had a car

3   seat, and that was much more complicated.  This is not that

4   kind of case, unless we find somebody with some unusual

5   expertise.  Does everybody agree with that?

6           Mr. DeFosse, do you agree?  We're just not likely

7   to find people with much knowledge that would put them in a

8   predisposed position here.

9           MR. DEFOSSE:  Agreed, Your Honor.

10          THE COURT:  Absolutely.

11          And, Mr. Elkins, that's right, isn't it?

12          MR. ELKINS:  Yes, it's not like it's in --

13          THE COURT:  Let's do talk about your

14  demonstratives, though, and how you plan to use them.

15          So let's start with Mr. DeFosse because are you

16  going to use things that are just like an animated material

17  that shows something or are you going to use something that

18  will ultimately -- would appropriately be received as an

19  exhibit in the case?

20          MR. DEFOSSE:  May I defer to Mr. Masters on this,

21  Your Honor?

22          THE COURT:  Sure.

23          Mr. Masters.

24          MR. MASTERS:  So, Your Honor, the short answer

25  is, yes, we do plan to have some demonstratives to explain

UNREDACTED TRANSCRIPT

1    the technology of the case, and whether it's animated or not

2    still remains to be seen.  We're working on some of those,

3    and other demonstratives, as well, to explain the testimony

4    especially from the experts.

5              THE COURT:  Okay.  Now, of course, I understand

6    that you're going to exchange materials, and that's not a

7    problem.  And then in connection with opening statement, when

8    will you be in a position to disclose whatever you will be --

9    I need to see it too, and I also want to check on length of

10   opening statement just to be sure.

11             So, Mr. Masters, you're in charge of that, right?

12             MR. MASTERS:  I am, Your Honor.  So in advance of

13   the opening statement, we'll be able to disclose our

14   demonstratives and even what we plan to use with the first

15   few witnesses on day one, I guess.

16             THE COURT:  Okay.  And do you anticipate that the

17   demonstratives will show material that would be more

18   appropriately characterized as evidence in the case?  What's

19   the situation here?

20             I know some of it is to show somebody how

21   something functions or works, but is it going to ultimately

22   be something that would probably become an exhibit?

23   Sometimes jurors, as you all know, would like to see them

24   again, but they won't be able to see them again if they're

25   not marked and received.

UNREDACTED TRANSCRIPT

1          MR. MASTERS:  Right.  So some of the

2   demonstratives will be general technology to explain the

3   technology, generally, and more specifically in some cases

4   that you don't glean from the evidence itself, but it will be

5   tremendously helpful to the jury to understand the

6   technology.

7          THE COURT:  Tell me -- again, just give me -- I'm

8   watching my time over there, but tell me what that's going to

9   be.  I know you're not completely there yet, so you don't

10  have to get everything.

11         MR. MASTERS:  That's an understatement, Your

12  Honor.  We're not there yet, but, for example, the BAW

13  filters that are at issue in this case, and there are --

14         THE COURT:  Right.

15         MR. MASTERS:  That would be one.  The patent

16  claims have some figures that would be nice to show in a

17  demonstrative to the jury.  They are in the patent figures

18  themselves, but a demonstrative would convey that information

19  more clearly.

20         And then some of the trade secret groups also

21  will be held to show a demonstrative, and that's going to be

22  closer to the evidence in that respect, and so I hope I'm

23  answering your question.

24         THE COURT:  You are.  And I need to check --

25  again, who is doing open for defense?

UNREDACTED TRANSCRIPT

1          MR. LEMIEUX:  It's undecided, Your Honor, but I

2    can address these questions.  I think what we're talking

3    about, Your Honor, is like when Mr. Masters mentioned an

4    example of a BAW filter.  For example, you know, a device

5    that the jury understands what we're talking about, I don't

6    have a problem with those types of demonstratives going back

7    to the jury.

8          But if we're speaking of pure demonstratives to

9    help illustrate testimony, et cetera, I think it's improper.

10   I mean, it's improper to send those back to the jury, and I

11   would be objecting to that type of demonstrative going to the

12   jury, but clearly physical, you know, devices, et cetera,

13   that are used in this industry, if that's going to be useful

14   to someone's testimony, that type of demonstrative I wouldn't

15   have any objection to.

16         THE COURT:  Right.  And I hear exactly what

17   you're saying, and you understand the dilemma we have a

18   little bit there, which is if something is going to be shown

19   to the jury, we need to have a record of what was shown to

20   the jury, right?

21         MR. LEMIEUX:  Uh-huh.

22         THE COURT:  And so how are we going to handle

23   that if they're not marked and received as exhibits?  You

24   still want them in the record, right?

25         MR. LEMIEUX:  I think that they get marked, Your

1   Honor, as demonstrative exhibit number whatever so that

2   there's a reference to that, and we know what it is in the

3   record; however, I would object to those types of materials

4   going back to the jury during deliberation.

5          THE COURT:  Okay.  And I know you can imagine

6   where we had a case where they wanted to see them, and the

7   answer would be, they're for demonstrative purposes only.  So

8   perhaps we will need to make sure that there's an adequate

9   clarification in the instructions or an instruction that says

10   that they're received only for demonstrative purposes.  And I

11   will need to see them to make sure they're not really -- that

12   they're really demonstratives.  So I think we're okay there.

13          What do you anticipate in terms of -- same sort

14   of thing in your open?

15          MR. LEMIEUX:  I'm not sure what we'll use

16   necessarily in the opening, Your Honor, but with some

17   witnesses, some animations, you know, illustrations to try to

18   make things easier to understand, et cetera, that type of

19   evidence I would expect would also come in through some of

20   our witnesses.

21          THE COURT:  Okay.  And, again, my general

22   preference because anything that's shown to the jury is

23   something they will undoubtedly consider or may consider,

24   unless we're very clear that they cannot, we need to probably

25   be marking most of those things as exhibits assuming that the

UNREDACTED TRANSCRIPT

1   person on the stand can adequately explain them and say how

2   it's relevant in the case.  So does that make sense?  It

3   certainly makes sense to me.

4          And I think it -- and I don't like to have a

5   situation where jurors have been shown information, they

6   understand that it's important, but then they don't receive

7   it as an exhibit.  So you don't expect there will be many

8   things that will fall in that category, right?

9          MR. LEMIEUX:  In my experience, Your Honor, in

10  trying, you know, patent cases and other technology cases,

11  there's quite often illustrative-type demonstratives that are

12  used with expert witnesses --

13          THE COURT:  Sure.

14          MR. LEMIEUX:  -- et cetera, and I think the

15  federal rules are very clear that type of evidence is not to

16  be considered by the jury as substantive evidence and,

17  therefore, does not go back to the jury room with them.

18          There are other types of demonstratives as we've

19  discussed that are -- you know, it's hardware, it's a device,

20  something they want to be able to look at, et cetera.  I see

21  a distinction there with that type of demonstrative and,

22  again, I have no problem in having the record reflect that

23  Demonstrative 7, you know, was discussed, and here's where it

24  shows up in the record, et cetera.

25          But to preserve our record, you know, any --

UNREDACTED TRANSCRIPT

1    there's a distinction between physical evidence being used as

2    a demonstrative and a true demonstrative, which is something

3    created by counsel, and that is not evidence.

4              THE COURT:  No.

5              MR. LEMIEUX:  And it's just like argument.

6              THE COURT:  You're a hundred percent -- well, we

7    may have to worry a little bit there, but I think that's all

8    right.  I want to have that discussion now.  I think we do

9    need to -- I think we're in agreement that we need to make

10   sure that they are referenced in the record and then that we

11   make sure that everybody understands what is considered --

12   what can be considered where.  So we will work on that and

13   make sure it's adequately covered.

14             I heard somebody, but maybe they were just --

15             MR. MASTERS:  I said we agree with that, that the

16   demonstratives would be marked as sequentially as a

17   demonstrative piece of evidence and --

18             THE COURT:  Okay.  Well, that's --

19             MR. MASTERS:  -- the record is at a minimum.

20             THE COURT:  We'll work through.  I don't think it

21   will be a problem.

22             Now, there are a lot of materials -- and I'm not

23   going to get out the whole stack, but there are a lot of

24   documents and things that will be received in the case.  I

25   think everybody understands that they will be marked

UNREDACTED TRANSCRIPT

1   sequentially as received in court.

2           And does anybody have a different view on that?

3   because there are lots of numbers you've got in here.  And I

4   want everybody to be comfortable why we're doing that, but

5   also I'm going to do it anyway.  But I want everybody to

6   understand that the reason we do that is for ease and the

7   jury following the evidence.  It's not because -- and I think

8   we may have covered this one time?

9           Mr. DeFosse, we may have covered this before

10  already.  Didn't we cover that one time?

11          MR. MASTERS:  Your Honor -- -

12          THE COURT:  Maybe not with you.  Maybe with

13  somebody else.

14          MR. MASTERS:  Your Honor, we understand this is

15  your practice.  I would ask you this, though.  Our exhibits

16  as are defendants, are already marked with PTX1 through

17  whatever.

18          THE COURT:  I saw that.

19          MR. MASTERS:  Do they -- when they come into

20  evidence, are they then slapped with a sequential number over

21  top of those?  And I'm concerned about flip flopping between

22  a PTX number and a sequential number and how you see that

23  handled.

24          THE COURT:  We don't flip flop.  I mean, I hear

25  what you're saying.  I'm always recognizing that our goal is

UNREDACTED TRANSCRIPT

1   to make sure something understandable to the jury as opposed

2   to convenient for the lawyers, and -- or even the Court.  And

3   so they will get a number, and we'll start with the first one

4   that's introduced.  It will be Exhibit No. 1.

5          There won't be defendant's exhibits and

6   plaintiff's exhibits.  It will just be sequential.  And it

7   can -- we don't -- going to have to cover up your previous

8   number.  But as they get a number, then you will begin to

9   refer to them -- well, we'll refer to them as Exhibit No. 1,

10  Exhibit No. 2, Exhibit 3.  And if you need to refer to both

11  numbers, you can do that.  You can say, Exhibit 1, which was

12  previously also a document X, Y, and Z, or, you know, 1552.

13  And that's okay.

14         But you don't talk exclusively about the number

15  that was previously assigned because, again, we're making it

16  convenient for the jury to follow and anybody reviewing

17  matters to follow as opposed to trying to sort back through a

18  lot of -- a lot of numbers.  I think it works fine.  I think

19  you'll find it works fine.

20         And then if you make -- when you make your

21  closing argument on both sides, you can refer to the trial

22  Exhibit X, you know, trial Exhibit No. 35, No. 82, and that

23  will be understandable to the jury.  And that's the key, is

24  that we want to make it understandable to the jury.

25         So we'll make it easy for you.  I mean, we're not

UNREDACTED TRANSCRIPT

```
 1    trying to make it hard.  I know you're saying some of my

 2    witnesses are going to be familiar with the others.

 3               Is that right, Mr. Masters?

 4               MR. MASTERS:  That's right, Your Honor.  It's

 5    that transition from the PTX numbers to your sequential

 6    numbers and whether there's reference to both numbers in the

 7    courtroom.  Trying to make it easy for us, but I know we want

 8    to make it easy for the jury.

 9               THE COURT:  Right.  And it's -- you know, the

10    first time you introduce it, you can say, you know, move the

11    admission of Exhibit Number -- or I can give you the number,

12    66, and it has been previously marked as this number, and

13    you'll keep that number.  That's fine too.  It's not very

14    difficult if you're just mentally prepared to do it.  It's

15    not a problem.

16               Okay.  We've got -- we've gone through

17    uncontested facts.

18               MR. LEMIEUX:  Your Honor, if I may ask a question

19    related to exhibits.

20               THE COURT:  Absolutely.

21               MR. LEMIEUX:  I apologize for interrupting you.

22               THE COURT:  No, no problem.

23               MR. LEMIEUX:  I also apologize, you know, as you

24    know, we were not counsel of record for Akoustis --

25               THE COURT:  Right.
```

UNREDACTED TRANSCRIPT

1        MR. LEMIEUX:  -- at the beginning.  What is your

2    preference in terms of moving evidence -- moving -- admitting

3    evidence into the record?

4        THE COURT:  Very fair question.  And the

5    preference is that the witness on the stand hopefully knows

6    something about this document or e-mail, hopefully.  And you

7    will say, do you recognize this and did you author this or

8    whatever the appropriate question is to show that connection?

9        Now, if you received a copy, that's always sort

10   of a notice issue and not exactly a substantive evidence

11   question, so a little different.  And the witness says, yes,

12   this is the memo, whatever it is, and without saying exactly

13   what it says and so forth.  And you say -- usually, it's that

14   there's no objection because there's no objection as to

15   authenticity.  It's agreed that this existed.  And if there

16   is an 802, 803, 804 either objection or exception, then that

17   can be mentioned.  And then you'll say then we move to -- the

18   Court to receive the next numbered exhibit.

19       And, typically, I can give you the number or --

20   which I will know.  Hopefully, I will know them all.  There

21   will just be the next sequential number, and then the

22   courtroom deputy clerk -- and last time our courtroom deputy

23   clerk actually moved -- after our case moved from Wilmington

24   to Baltimore, so I don't have her anymore.  She was really

25   good.  And so that person will also have a list.  We will

1    keep three lists, and that's how that works.  Does that make

2    sense?  That's pretty easy.  And so just make sure --

3              MR. LEMIEUX:  Maybe I'll move it into the record

4    while the witness -- after the witness recognizes it and --

5              THE COURT:  Right.  And you're a hundred percent

6    right, if the witness says I've never seen this before, I

7    don't know anything about it.  The answer is it's not coming

8    in.  So make sure that, you know, we've got the right piece

9    of paper or material or whatever.  Is that -- that's how

10   we'll handle it, and we'll work through it.

11             MR. LEMIEUX:  Thank you.

12             THE COURT:  Absolutely.  Absolutely.

13             Okay.  Now, we had a length of trial, and you

14   both proposed a lot of time.  And as you know, in Delaware, a

15   lot of time is a lot of time.  It's precious.  And we do need

16   to move the case along.

17             So I wanted to hear some discussion about the use

18   of -- I think it's 25 hours each.  Oh, my goodness.  That's

19   forever, you know.  So if we've got seven days of time used

20   up or seven hours of time used up -- I'm hoping for seven and

21   a half or two -- or eight hours per day.  It's still going to

22   take a while to present this case.

23             So -- well, first of all, let's just go to

24   plaintiff's counsel, and that is, you can get all this done

25   in the time you've asked for, right?

UNREDACTED TRANSCRIPT

1               MR. MASTERS:  Yes, Your Honor.  We can get it

2  done.

3               THE COURT:  And you've already timed it out to

4  some degree?

5               MR. MASTERS:  I'm sorry, I missed your question.

6               THE COURT:  You've already timed it out to some

7  degree?  Have you plotted it out?

8               MR. MASTERS:  We have plotted it out and, you

9  know, 25 hours, we can get it done, maybe a few hours less.

10  It sounds like opening will be on Tuesday morning, maybe

11  first thing?

12               THE COURT:  I would hope so.  If we don't -- yes.

13  It's possible that we might have opening on Monday afternoon

14  if I've got enough time.  So I need to check on how long your

15  opening is going to be, Mr. Masters?

16               MR. MASTERS:  Your Honor, I would estimate 30

17  minutes, 40 minutes max.  Probably closer to 30 minutes.

18               THE COURT:  Okay.  Well, let's hear from defense

19  counsel since they're still deciding who is doing open.

20               MR. ELKINS:  We're no different, Your Honor, in

21  terms of the time.

22               THE COURT:  Okay.  Okay.  That time goes against

23  you, as you know.  Voir dire does not.  And that's fine.  We

24  will put you down for -- you're saying 30 minutes, not more

25  than 40, I need to kind of nail that one down completely.

UNREDACTED TRANSCRIPT

1          Thirty minutes is a pretty long period of time to

2     have to do an open.  If you plan on doing argument in open

3     because they taught you that at that course in Florida that's

4     absolutely awful, then don't do it, because the other side is

5     going to say, Judge, objection, argument.

6          Now, there are no speaking objections, right,

7     guys?  That is a nongeneric term.  There's no speaking

8     objection.  And, of course, the person who raises the

9     objection is the person who is in charge for that period,

10    that -- whatever the objection that's being raised.  But no

11    argument.  It's really -- it really is a road map.  Tell them

12    it's a road map.  They will understand that, and we will tell

13    them that you're not to be arguing in that time span.

14         So I'm going to put you down each for something

15    not to exceed 35 minutes because that's in between.  That

16    sounded right.  And we will make a note that not to exceed 35

17    minutes on opening.

18         And then we'll move directly -- it depends on

19    what time of day it is -- move directly to the first witness.

20         I am going to ask the plaintiffs at this time --

21    and I've got your whole list of witnesses.  By the way, 26

22    witnesses all together?  Is that right?  I took the -- I took

23    the witnesses that are going to appear in the plaintiff's

24    case where the defense was going to call them and just

25    changed the numbers a little bit.

1              So does that sound right, Mr. Masters?

2              MR. MASTERS:  That sounds on the high side.  I

3    think we're going to be able to narrow that list down.

4              THE COURT:  Okay.  Well, that raises the issue,

5    though -- another issue I wanted to go over quickly, which is

6    that if a person is on the will call list, they must be

7    called, or you must get permission of counsel opposite and

8    the Court, only because I need to know about it, that that

9    person will not be called.

10             So on the plaintiff's side, you have -- you

11   had -- I'm not sure I counted the will call separately, but

12   you had a whole set of will calls in here.  Is there any will

13   call that you now know is not a will call?  I'm probably

14   being unfair to Mr. Masters.  I'm putting all of it on him.

15             So, Mr. DeFosse, are you aware of any?  Nobody is

16   volunteering on this.

17             MR. DEFOSSE:  I really feel like Mr. Masters

18   should answer this question, Your Honor.  Sorry.

19             THE COURT:  All right.

20             Mr. Masters.  That's fine.  My point is that if

21   they're on the will call list, the defense -- from the

22   plaintiff's point of view and from the defense point of view,

23   there's an absolute obligation to have that witness available

24   and present to testify if they're testifying in person.  And

25   you cannot -- and you've tried to reserve in your materials

UNREDACTED TRANSCRIPT

 1   that -- and we can make a change at any time we want to about

 2   this, and the answer is no, you cannot.  That's not how it

 3   works.

 4            And that's to allow counsel opposite, whichever

 5   side has got the will call down, to rely on that witness

 6   being there and being able to cross-examine that witness.  So

 7   that's not an optional thing.  So you really need to be

 8   careful in that regard.  Well, careful, that's just the way

 9   it is.  And if you have somebody who is not present, that

10   would not be good.  That would be a problem, and you would

11   have to get them there.  And we would have to make sure it

12   worked well.

13            So I'm sure that, Mr. Elkins, that makes sense,

14   and that's what you've done in many cases in the past.  If

15   they're on the will call list, they've got to be there,

16   right?

17            MR. ELKINS:  Yes, Your Honor.  Although we did --

18   I will say, in, you know, Mr. Masters' defense, that we did

19   call out witnesses that are Qorvo witnesses that we will need

20   in our case in chief and -- but I think that the parties,

21   given the working relationship we've had so far, I don't

22   anticipate any issues going forward with respect to

23   witnesses, but I appreciate your statements and I do agree

24   with that sentiment.

25            THE COURT:  Right.  And the main thing is that if

UNREDACTED TRANSCRIPT

```
1    you want to take somebody off the will call list, please tell

2    us and tell us right away, and tell counsel opposite because

3    if they had to issue a subpoena or whatever they had to do,

4    they would need to do it.  But right now, they're on the will

5    call list and you can't take them off, and you can't just say

6    I'm going to change it.

7              So everybody understands that?  And they must be

8    available, and we all understand that.  So there won't be any

9    confusion at the last minute.  Well, I've changed my mind,

10   I've decided not to call them.  You've got the language in

11   there that sort of suggested that.  That is not allowed.

12   That is not the way we can proceed.

13             Now, I am going to now ask Mr. Masters, he's

14   going to -- is who is your first witness in this case?  Who

15   is going to be our first witness?

16             MR. MASTERS:  Your Honor, we anticipate calling

17   Eric Creviston, as our first witness.  His first name is

18   Steven.  He goes by Eric.

19             THE COURT:  Okay.  I've got it right here.

20             THE REPORTER:  Can you state his last name for me

21   again, please?

22             MR. MASTERS:  Creviston, C-R-E-V-I-S-T-O-N.

23             THE COURT:  Okay.  And he's on your list.  He's a

24   live witness, obviously.  And I am going to ask, then, who do

25   you think your second witness will be?  We're going to do
```

UNREDACTED TRANSCRIPT

1   this every time.  And so that nobody is caught unprepared --

2   I don't mean that in a -- I know you're going to be prepared,

3   but not completely ready for that witness.  So it saves me

4   time, saves everybody else time, more efficient.

5                Who do you think your second witness is going to

6   be?

7                MR. MASTERS:  Your Honor, on Mr. Creviston, he's

8   also the company representative as well.  And then our second

9   witness will be Robert Agner.

10                THE COURT:  I've got it.

11                MR. MASTERS:  He would be our second witness.

12                THE COURT:  Okay.  Well, this is sort of an

13   illustration of what we will do.  So more than likely at the

14   end of the first day, even though you've told me already, I

15   will ask you again:  Who is your -- who is your next witness

16   going to be?  Or who is your first witness going to be?  Who

17   is your second witness is going to be and enough witnesses to

18   complete the day?  And we'll do the same thing for the

19   defense.

20                And also for the defense, we will make sure the

21   jury understands that you're presenting your case, part of

22   your case in chief, and these witnesses will be called by the

23   plaintiff.  And so you understand, they're only going to

24   appear one time.  That's a little complicated when you get

25   down to rebuttal questions, but they are only going to appear

UNREDACTED TRANSCRIPT

1   one time.  And this is that one opportunity in order to be

2   more efficient and save time and I put things back in

3   context, that person will be asked all of those questions at

4   that time.

5            There's an interesting switchover when we go to

6   the direct testimony and then, of course, obviously,

7   defense -- I'm just using defense example.  It could go

8   either way.  The defense then examines on everything that was

9   covered on direct, and then you do your case in chief.  So

10  it's kind of interesting to switch.

11           I can actually determine that at that switching

12  point or at the point when you start asking questions that

13  were not covered in direct, that you then can no longer use

14  leading questions.  That's one of those things we always keep

15  in mind is you can use those leading questions when you're on

16  cross-examination, and also you can use -- even if it's your

17  witness.

18           That's the penalty -- not a penalty, but that's

19  the process that a party calling witnesses -- an example

20  here -- for the plaintiff has to think about is, am I then

21  going to let defense counsel cross, quote, their own witness?

22  And the answer is, yes, if it's on the direct material.  So

23  always think about that.  You may want to switch something

24  around.  You may say, well, they don't do that in Utah.  And

25  I could say, well, okay, that's great.  But we usually follow

UNREDACTED TRANSCRIPT

 1  Rule 611, and it will work out.

 2              MR. MASTERS:  Your Honor, can I ask --

 3              THE COURT:  Sure.

 4              MR. MASTERS:  -- a question on that?  So in our

 5  case in chief, if we call an Akoustis employee, like

 6  Ms. Winters, as an example.

 7              THE COURT:  Right.

 8              MR. MASTERS:  And then Akoustis can make --

 9  question her beyond the scope of my direct or is it

10  limited --

11              THE COURT:  Yes.

12              MR. MASTERS:  -- to that they're going to call

13  her in their case in chief?

14              THE COURT:  No -- yes, and that's what we're

15  trying to go over very carefully.  Yes.  And the reason --

16  and we can tell the jury this.  We can say rather than have

17  Akoustis call them back later on, they're going to cover

18  everything now so that it is more efficient, and it is a more

19  efficient methodology.  Now, there could be a situation where

20  we didn't allow that.

21              For example, if Ms. Winters only answered four

22  questions about something very routine, not very -- you know,

23  just something they were trying to authenticate or whatever

24  it was.  And then there was -- I might say, well, okay, on

25  this witness, we will wait and let them recall that witness.

UNREDACTED TRANSCRIPT

1    But usually that's not the case.  Usually, they've testified.

2            Mr. Masters, do you have somebody who is going to

3    answer just a few questions on your direct even though it's

4    an Akoustis employee or do you have -- you need to tell me

5    about that in advance if you do.

6            MR. MASTERS:  Well, Ms. Winters may be one that

7    would be maybe a few questions.  Mr. Shealy would probably be

8    more questions, which is also the Akoustis CEO.

9            THE COURT:  Sure.  Right.

10           MR. MASTERS:  With the issues that we have in

11   this case of trying to present this issue in a clear fashion

12   to the jury, it seems, at least to me, to us, that if we

13   present our case and limit Akoustis's cross of, say,

14   Ms. Winters or Shealy to my direct, then they can call those

15   witnesses in their case after we rest.

16           THE COURT:  I'm not disagreeing with you that

17   there are exceptions to the general rule, the process we try

18   to follow.  But if a witness is put on the stand for an

19   extensive period of time, then it is usually much more

20   efficient to have that witness complete their testimony while

21   on the stand.  That's the reason.  Now, you're right, when

22   you call somebody's chief operating officer or chief

23   executive officer, when you call them in your case in chief,

24   I will say this, if it's, you know, ten minutes of

25   questioning and it's very routine, that's not -- then, yes,

UNREDACTED TRANSCRIPT

1    they can step down and they can get called back.  That's not

2    a big deal.

3              But if they're on the stand for three hours, then

4    to have them come back and start -- in the defense case, it's

5    sometimes just contextually difficult and less understandable

6    to the panel in terms of keeping things in order.  So that's

7    why I encourage people to think about what you want to do.

8              Now, you know that there are other ways to

9    present some testimony from Mr. Shealy.  You can make those

10   decisions, right?  You see what I'm saying?

11             MR. MASTERS:  Yes.  Yes, Your Honor.  That's

12   helpful.

13             THE COURT:  And I'm not saying we're not going

14   to -- I'm listening to you, and I've got to listen and be

15   efficient here.  I'm going to run out of time in about a few

16   minutes.  We can talk about this more at a later time.  But

17   generally speaking -- and I think that is what you

18   anticipated in your pretrial order, when the witness is on

19   the stand, and if they're providing substantive testimony,

20   then all of their testimony will be presented at that time,

21   and we will tell the jury that that's what we're doing to be

22   more efficient.  And that's how that would work.

23             Okay.  Well, everybody has some things to think

24   about.  And if you're going to take somebody off your will

25   call list, you will probably want to let us know very

UNREDACTED TRANSCRIPT

1   promptly because we will enter the pretrial order, and it

2   will become the binding order in the case.

3          And you can't just come in and say, I want to

4   change it, or even if you say, well, I want to change it by

5   agreement -- of course, I'm going to listen to that -- it's

6   not readily changed.  So if it has to be corrected because of

7   an error or a typographical error or mistake, then we will

8   fix that.

9          Okay.  I've gone over witnesses.  We've gone over

10  cross-examination, and the desire to complete all the

11  testimony at one time, which I think all of you anticipated

12  anyway.  Let me check.  Stipulated facts have been reviewed.

13         Length, now, we said 25 hours each.  All right.

14  Does anybody -- if you think that's excessive and it can be

15  reduced to 20, that's fine.  I'm giving you guys more leeway

16  than some of my colleagues do.

17         Is that right, Mr. Elkins?

18         MR. ELKINS:  I -- you know, I -- we agreed to 25.

19  I think we could do it in 20 hours.  And, certainly, you

20  know, as the party that does not bear the burden of proof

21  most of the time, we're happier with a shorter limit.

22         THE COURT:  And yes, sir?

23         MR. MASTERS:  I was going to say 20 might be too

24  much shaving.  Of course, we will try to be as efficient as

25  possible and get this case tried, but 20 may just be too

UNREDACTED TRANSCRIPT

1    ambitious.  If I can at least have a minimum of 23, 24, that

2    would be --

3         THE COURT:  And you're saying -- and I understand

4    because this came up -- this has come up before.  And the

5    plaintiff often, because they have the burden of proof,

6    logically, might get some more time.  And I think that's what

7    Mr. Elkins was saying.  But not a lot more time.

8         MR. MASTERS:  And I'm not advocating that we get

9    more time than the defendants.  But just in terms of getting

10   our case presented in an efficient manner to address the

11   claims that we have, the amount of evidence that is at issue

12   in this case --

13        THE COURT:  What we're going to do is leave both

14   of you at 25 because I don't like to have one party have less

15   time than the other.  But I really appreciate Mr. Elkins'

16   comment that more than -- and this has happened, it usually

17   happens -- is that more than likely, the party that does not

18   have the burden of proof will take less time unless they ask

19   some really meaningless questions that they may regret later

20   on they asked.

21        I'm watching for a smile there from somebody, but

22   I didn't get much.  But you understand what I'm saying, if

23   you're efficient in presentation, normally, the party that

24   does not have the burden of proof, you'll make less inquiry

25   and make their points very succinctly.

UNREDACTED TRANSCRIPT

1          Okay.  We're still going to say 25, 25, but I've

2     got the note here that it might be less.

3          Okay.  Again, we start in court no later than

4     nine o'clock.  Now, let me tell you how that works, and I'm

5     going to run out of time here.

6          We'll start in court no later than nine, but what

7     has happened in the past is as we've progressed through the

8     trial -- first of all, I'm going to check with the jury a

9     little bit.  If my jurors are individuals who are accustomed

10    to coming to court -- to go to their job at eight o'clock --

11    I'm not saying we're going to start at eight -- but we will

12    start earlier, and so you should be prepared to be in the

13    building -- I don't think that you can get into the building

14    until eight.  I'm trying to --

15         Mr. Elkins, you know too.  I think it's about

16    eight when they will open the doors on the front.

17         MR. ELKINS:  That's correct, Your Honor.

18         THE COURT:  Right.  Exactly.  So the best we can

19    do is start sometime after eight.  I will be in the building

20    when the building opens, typically.  I will come out a little

21    early to check if there are problems or issues that we need

22    to address.  If there are some things that we need to address

23    that I don't have any way to know to come out that much

24    earlier, you will just let the staff know, and we'll see if

25    we can start early.

UNREDACTED TRANSCRIPT

1           The jury is typically going to be working from at

2   least nine o'clock until at least five or 5:15, but they have

3   to be able to drive back and forth, and I'll be sensitive and

4   I'll check about how far people have to drive.

5           We will be available before that for all of you,

6   certainly beginning no later than 8:30 and maybe a little

7   earlier.  You'll be expected to be in place and in position

8   ready to go certainly before 8:30 or earlier but, typically,

9   you'll want to have some people -- you will want to be there

10  a little earlier because you don't want to try to start at

11  8:30 if you haven't been there for five or ten minutes, at

12  least.  And that's how it works.

13          We will take a lunch break that is usually fairly

14  abbreviated.  I think you all know this, but I'll check.  The

15  jury, thanks to all of you, have their own lunch brought in,

16  and we will eventually reduce that time period.  The first

17  day is a little different because you've got a lot of

18  potential jurors there, so the lunch period will be longer,

19  but then it will probably get reduced to 45 minutes or so.

20  It might be 50 minutes, but it's going to be in that general

21  range.

22          You need to make plans and I think you know this

23  too, to be able to have food for you, if you want to eat

24  anything.  And it will have to typically be brought in the

25  building.  So we don't have a long break.  We'll have a

1   morning break of about 15 minutes, once we have the jury, and

2   an afternoon break at 15 minutes.  And then if somebody needs

3   restroom breaks, we will obviously do that.

4           That is the time schedule in the matter.  After

5   five -- I have to check with the court reporter because it

6   depends on then who our court reporter is, but we cannot stay

7   unusually late unless we have a team, and I haven't found out

8   yet that we do, unless we have a team of court reporters.  We

9   won't stay typically past six or 6:15.  And if we have just

10  one court reporter, we really have to think about leaving

11  just a little earlier than that, which makes our morning time

12  really important in terms of resolving issues that might come

13  up during that day.

14          Sometimes we take a portion of the lunch period

15  that the jury has and try to address something at that time.

16  I've already said that there will not be speaking motions,

17  which means that you will not be standing up and saying,

18  hello, you know, this is what it is and this is -- and a

19  whole long speech about it because that's inappropriate in

20  front of the jury.

21          But you will need to make reference to the rules,

22  whether it is 802 or 611 or 403 or 402 or 700 series of rules

23  on experts, whatever it is.  You will need to make reference

24  to the rules.  You can say, objection, objection 403.  Well,

25  I know what it is.  Everybody else knows what it is.  We'll

UNREDACTED TRANSCRIPT

1   just tell the jury that that's a shortcut to help us be more

2   efficient to understand exactly what the objection is.

3          You are obligated to state your full objection

4   rather than -- I mean, if you need to at side-bar, and so

5   we'll do that.  I think that covers a lot of things.  I

6   probably have -- I have a lot of things here I suppose I

7   could have gone over in a little more detail.  I think we're

8   all set, though.

9          Mr. Masters, you're all set now, all ready to go?

10          MR. MASTERS:  Yes.  May I ask one question that

11   perhaps you want to defer until later, but your guidance

12   would be appreciated, and that is your practice in sealing

13   the courtroom since we're dealing with a lot of trade secret

14   issues here?

15          THE COURT:  Absolutely.  And that's a great

16   question.  I just was trying to go a little too fast there.

17          You must raise -- you must say at that time that

18   this document is a sealed document, it's a trade secret

19   document, however you want to categorize it, or this material

20   will be in that category, the testimony.  And you must do it

21   at that time.  And then we will seal the courtroom.

22          We will exclude the representatives of the

23   entities, anybody who's not -- well, of course, attorneys can

24   stay, but most everybody else will be excluded.  We must do

25   that.  If it's not done, I know you very well know this, it

UNREDACTED TRANSCRIPT

1   can be waived, and so we don't want to do that.  I know in

2   this case, we're going to have a number of situations.  You

3   just have to be prepared to do that, I mean, parties in the

4   gallery and staff is helping, it's probably not our problem,

5   but corporate representatives, often it is.

6           MR. MASTERS:  Okay.  Thank you.

7           THE COURT:  Absolutely.  Absolutely.  I think we

8   have -- do we have two minutes?  Oh, wait a second.  Let me

9   check on something.  They're trying to let me know about how

10  we're doing on this next one.

11          Okay.  Deposition copies.  Now, we can send a

12  short order out if we need, but we will on any place -- any

13  deposition that you're going to use -- and there are several

14  that are designated here -- if you decide you're not going to

15  use it, you don't have to do this.  But, of course, you need

16  to tell her it's may call, some of them are may calls.  But

17  you've got will call like on Kwon.

18          If you're going to use the deposition, in order

19  for us to -- we're not going to go through your material --

20  we would, if we had to, but we need you to help us in that

21  regard.  So we need a full copy of the deposition, printed

22  copy of the deposition, probably two.  It has to be marked in

23  a particular way so that the designated portions -- let's

24  start with the plaintiff -- are typically marked in yellow in

25  some way so that we can quickly see them so we don't have to

UNREDACTED TRANSCRIPT

1   go back and try to compare things.  It's just -- you know,

2   that's very, very helpful to us.

3           Defense would also indicate what they designated

4   probably in blue.  You can -- you've got orange, you've got

5   all sorts of colors there -- put a little key at the front.

6   Both of you agree on what the codes are going to mean so we

7   don't get confusing codes on those things.

8           And then, of course, in this case, plaintiff will

9   have -- because they're submitting a good bit of deposition

10  material, will need to submit theirs first.  And I will need

11  to know who will be the first deposition that will be

12  presented in the case?

13          MR. DEFOSSE:  Your Honor, are you asking for that

14  information now?

15          THE COURT:  Right.  Right.

16          MR. MASTERS:  I think, Your Honor, it could be

17  Mr. Houlden, H-O-U-L-D-E-N.

18          THE COURT:  Okay.  Okay.

19          MR. MASTERS:  Which would probably be one of the

20  more lengthy depositions that we would be using in the case.

21          THE COURT:  Okay.  Now, let me go through that

22  again because it may not have been clear.  And if you're not

23  quite sure what to do, you can contact us or we'll send you a

24  brief note on it maybe, maybe not.  And that is, you will

25  want -- that deposition will be copied in full.  We have to

UNREDACTED TRANSCRIPT

1    get the exhibits too, obviously, if you're going to introduce

2    the exhibit through that witness.

3            And then you will -- plaintiff will go through

4    and say, these are our designations, and mark them all in

5    yellow so we can readily follow them.  The computers will do

6    most of all this.

7            And then, the defense, of course, you'll have to

8    mark -- the party that is submitting the deposition has the

9    burden of also showing the other party's material.  Y'all can

10   work together on that.  I'm just saying blue, whatever color.

11   It could be orange, I don't care.

12           And then we'll have objections and your

13   objections will be in the right-hand column or the left-hand

14   column, whichever works best on the page, and you will say,

15   objection.  But you will not just say objection, and you will

16   not say something extensive that's some sort of -- just cite

17   the rule and point out what your objection is.  If it's a

18   more complicated objection, you can add the material, but it

19   needs to be reflected so we can go through the material

20   relatively quickly.

21           So we're going to assume that we will be getting,

22   then, the Houlden deposition fairly soon.  Those are all sent

23   to me here, and we have to have them.  And that sounds --

24   we'll work with you on this, but we really would need them

25   very promptly and that means by Thursday.  Absolutely.  I'm

UNREDACTED TRANSCRIPT

1    giving you a lot of time.  I was going to say Wednesday.

2            It's just a good project for somebody to go

3    through and do this, make sure they're all marked, and, you

4    know, there may be four or five color codes on there.  It's

5    not too hard.  With the kind of equipment we have nowadays,

6    it should work pretty fast.  And I'm getting the whole

7    document because I never know if somebody is going to then --

8    it's just it's a tiny piece of a deposition.  I never quite

9    know if something might come up, and I need to know a little

10   more about.  So that's -- that needs to be submitted.

11           MR. LEMIEUX:  Your Honor, if I could ask a

12   clarification?

13           THE COURT:  Sure.

14           MR. LEMIEUX:  Under your kind of this one witness

15   philosophy, I assume, then, in a deposition like Mr. Houlden,

16   all of his designated testimony will be played

17   chronologically as it came out in the deposition as it's

18   marked by the parties; is that right?

19           THE COURT:  Absolutely.  It's just -- we'll need

20   to do it that way.  And we'll handle it that way.

21           MR. MASTERS:  So April 25th is -- you'd like us

22   to have it.

23           THE COURT:  Right, because I have to go somewhere

24   else on the 26th, and so I will have some reading material.

25   If you decide you're not going to call somebody about the

UNREDACTED TRANSCRIPT

 1   deposition, please let us know and we won't worry about that.

 2   But I need to read over it, so it should be fine.

 3            That's depositions.  I'm looking to staff to make

 4   sure we -- how many late -- minutes late are we on our next

 5   one?

 6            CASE MANAGER:  Four minutes late.

 7            THE COURT:  Oh, four minutes late.

 8            CASE MANAGER:  I've notified the parties.

 9            THE COURT:  Okay.  We're looking forward to this.

10   This is going to be a fun case, I know you don't want to hear

11   that point, but it's very important.  All these cases are

12   really important to both sides, and we count on everybody

13   working really hard to make sure that we meet all the

14   constitutional requirements of a fair and impartial

15   presentation -- not presentation so much, but you have to get

16   a fair and impartial jury and also being efficient and fair

17   in the process.

18            You seem to be getting along very well,

19   Mr. Masters.  This is a nice situation now.  Is that good?

20   Are we getting along well?

21            MR. MASTERS:  We are, Your Honor.  We are working

22   in a very professional manner and, actually, Mr. Lemieux and

23   I go back as we were partners at a prior, prior firm.

24            THE COURT:  Okay.  Well, Mr. Lemieux, I'm looking

25   forward to it.  We'll get it taken care of.  Thank you all

UNREDACTED TRANSCRIPT

 1   very much, and we will have some time adjustments as we go

 2   through the trial, so I don't want anybody to get confused.

 3   It will probably extend our day a little bit probably in the

 4   mornings.

 5           Okay.  Any --

 6           MR. LEMIEUX:  Your Honor, do you have an estimate

 7   as to when you think the Court might be issuing its orders on

 8   the summary judgment motions and the *Daubert* motions?

 9           THE COURT:  Wednesday, for sure, if not -- we've

10   already worked on them.  We've got them pretty close, but I

11   did listen to what you said, so I'm going to go back and look

12   a little more.  It may be a little earlier, but I don't want

13   to promise -- I'm not promising.  I don't want to project

14   something that we can't meet.  Good deal.  Thank you all very

15   much.  I do need to be excused, so I look forward to seeing

16   you in Wilmington.  Thank you.

17           (Adjournment.)

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

**C E R T I F I C A T E**

1

2

3

4        I, TINA DuBOSE GIBSON, do hereby certify that the

5  foregoing 73 pages are, to the best of my knowledge, skill

6  and abilities, a true and accurate transcript from my

7  stenotype notes of the pretrial conference held on the

8  2nd day of April, 2024, in the matter of:

9

10  QORVO, INC.

11  vs.

12  AKOUSTIS TECHNOLOGIES, INC., AND AKOUSTIS, INC.

13

14

15

16  Dated this 22nd day of April, 2024.

17

18

19

20                          S/Tina DuBose Gibson
                            _____
21                          TINA DuBOSE GIBSON, RPR, RCR
                            Official Court Reporter
22                          United States District Court
                            Western District of Tennessee
23

24

25


UNREDACTED TRANSCRIPT

**1**

**1** [7] - 10:3, 17:7, 25:22, 25:25, 48:4, 48:9, 48:11
**1,523** [1] - 31:18
**10** [1] - 7:13
**104** [6] - 24:15, 27:23, 29:24, 30:1, 31:18, 33:5
**11** [1] - 7:13
**11:30** [2] - 20:4, 35:23
**12** [1] - 7:13
**14** [4] - 6:21, 7:1, 39:8
**15** [2] - 66:1, 66:2
**150** [1] - 3:6
**1552** [1] - 48:12
**1841** [1] - 3:5
**19** [1] - 4:2
**19801** [1] - 3:13

**2**

**2** [3] - 10:3, 23:1, 48:10
**20** [4] - 62:15, 62:19, 62:23, 62:25
**2024** [1] - 4:2
**22** [1] - 35:8
**23** [1] - 63:1
**24** [5] - 35:8, 35:9, 38:5, 63:1
**25** [7] - 51:18, 52:9, 62:13, 62:18, 63:14, 64:1
**25th** [1] - 71:21
**26** [1] - 53:21
**26th** [1] - 71:24
**279** [4] - 26:23, 28:16, 29:11, 31:16

**3**

**3** [4] - 10:3, 23:8, 34:1, 48:10
**30** [3] - 52:16, 52:17, 52:24
**302** [1] - 3:13
**35** [3] - 48:22, 53:15, 53:16

**4**

**4** [3] - 10:4, 23:19, 34:5
**40** [2] - 52:17, 52:25
**400** [2] - 3:12, 20:19
**401** [1] - 23:13
**402** [4] - 22:16, 23:13, 31:14, 66:22
**403** [10] - 17:13, 19:11, 19:18, 22:16, 23:13, 24:16, 31:13, 33:17, 66:22, 66:24

**404(b** [1] - 33:18
**404(b)-type** [1] - 30:7
**45** [1] - 65:19
**456** [1] - 16:12

**5**

**5** [2] - 11:8, 35:1
**50** [1] - 65:20
**500,00** [1] - 29:11
**500,000** [2] - 28:16, 30:2
**5:15** [1] - 65:2

**6**

**6** [1] - 35:1
**60** [1] - 20:25
**600** [1] - 3:12
**611** [2] - 59:1, 66:22
**650** [1] - 3:7
**655-5000** [1] - 3:13
**66** [1] - 49:12
**6:15** [1] - 66:9

**7**

**7** [1] - 45:23
**700** [1] - 66:22

**8**

**802** [2] - 50:16, 66:22
**803** [1] - 50:16
**804** [1] - 50:16
**82** [1] - 48:22
**843-3330** [1] - 3:7
**8:30** [3] - 65:6, 65:8, 65:11

**9**

**94304** [1] - 3:6

**A**

**abbreviated** [1] - 65:14
**able** [9] - 22:23, 27:8, 41:13, 41:24, 45:20, 54:3, 55:6, 65:3, 65:23
**absolute** [1] - 54:23
**Absolutely** [7] - 18:6, 36:10, 37:21, 49:20, 51:12, 68:7, 70:25
**absolutely** [13] - 4:24, 5:15, 18:15, 18:18, 20:8, 31:12, 36:10, 40:10, 51:12, 53:4, 67:15, 68:7, 71:19

**accident** [1] - 7:6
**accounts** [1] - 29:14
**accustomed** [1] - 64:9
**acquired** [3] - 28:4, 28:6, 30:1
**acquisition** [2] - 17:23, 23:3
**Act** [1] - 32:22
**actions** [1] - 28:7
**activities** [1] - 19:1
**activity** [2] - 18:5, 34:20
**add** [5] - 13:14, 23:14, 32:20, 32:21, 70:18
**additional** [1] - 15:9
**address** [10] - 20:3, 21:13, 36:9, 36:25, 37:12, 43:2, 63:10, 64:22, 66:15
**addresses** [1] - 21:7
**addressing** [2] - 26:14, 36:13
**adequate** [1] - 44:8
**adequately** [2] - 45:1, 46:13
**Adjournment** [1] - 73:17
**adjustments** [2] - 38:23, 73:1
**administerial** [1] - 4:7
**admissible** [1] - 16:9
**admission** [2] - 21:14, 49:11
**admitted** [2] - 23:15, 24:25
**admitting** [1] - 50:2
**advance** [2] - 41:12, 60:5
**advantage** [1] - 6:1
**advocating** [2] - 16:22, 63:8
**affiliates** [1] - 13:18
**afternoon** [2] - 52:13, 66:2
**Agner** [1] - 57:9
**agree** [9] - 6:4, 6:14, 22:15, 22:16, 40:5, 40:6, 46:15, 55:23, 69:6
**agreed** [3] - 40:9, 50:15, 62:18
**agreement** [2] - 46:9, 62:5
**ahead** [2] - 6:18, 31:10
**akin** [1] - 16:14
**Akoustis** [9] - 21:2, 28:5, 31:24, 49:24, 59:5, 59:8, 59:17, 60:4, 60:8
**Akoustis's** [1] - 60:13
**alarm.com** [1] - 24:10
**alleged** [2] - 17:9, 23:3
**alleging** [1] - 30:18
**allow** [4] - 22:4, 31:2, 55:4, 59:20
**allowed** [3] - 27:16, 29:20, 56:11
**allowing** [1] - 16:11

**alternate** [2] - 7:8, 7:12
**alternates** [3] - 6:21, 7:2, 7:4
**Alto** [1] - 3:6
**ambitious** [1] - 63:1
**amend** [1] - 32:20
**American** [1] - 18:19
**amount** [1] - 63:11
**amounts** [1] - 27:9
**analysis** [1] - 28:11
**analyze** [1] - 38:10
**analyzed** [1] - 32:8
**analyzing** [1] - 19:22
**animated** [2] - 40:16, 41:1
**animations** [1] - 44:17
**answer** [8] - 14:4, 40:24, 44:7, 51:7, 54:18, 55:2, 58:22, 60:3
**answered** [1] - 59:21
**answering** [1] - 42:23
**anticipate** [7] - 6:25, 28:3, 39:25, 41:16, 44:13, 55:22, 56:16
**anticipated** [3] - 6:13, 61:18, 62:11
**anticipating** [2] - 6:20, 39:14
**anxious** [1] - 14:3
**anyway** [3] - 20:21, 47:5, 62:12
**apologize** [2] - 49:21, 49:23
**appealing** [1] - 11:18
**appear** [6] - 11:16, 15:19, 25:5, 53:23, 57:24, 57:25
**appearance** [2] - 9:22, 11:13, 11:14
**Appearing** [1] - 3:1
**application** [4] - 17:1, 19:10, 19:18, 20:19
**applied** [1] - 23:3
**apply** [1] - 21:20
**appreciate** [6] - 6:6, 7:25, 20:5, 20:25, 55:23, 63:15
**appreciated** [1] - 67:12
**appropriate** [7] - 18:16, 24:8, 25:5, 30:21, 34:15, 34:16, 50:8
**appropriately** [2] - 40:18, 41:18
**appropriation** [2] - 29:18, 30:9
**April** [1] - 71:21
**APRIL** [1] - 4:2
**area** [3] - 16:20, 20:20, 23:13
**argue** [1] - 26:25
**argues** [1] - 23:11
**arguing** [1] - 53:13

**argument** [10] - 21:3, 23:10, 23:23, 24:18, 33:15, 46:5, 48:21, 53:2, 53:5, 53:11
**arguments** [1] - 23:20
**array** [1] - 11:16
**asserted** [1] - 23:10
**asserting** [1] - 18:21
**assertion** [2] - 25:1, 29:18
**assigned** [1] - 48:15
**assume** [6] - 20:7, 21:4, 21:16, 25:13, 70:21, 71:15
**assuming** [1] - 44:25
**assumption** [1] - 17:22
**attempting** [2] - 21:3, 21:15
**attorney** [2] - 10:7, 10:14
**attorneys** [3] - 10:10, 12:23, 67:23
**authenticate** [1] - 59:23
**authenticity** [1] - 50:15
**author** [1] - 50:7
**available** [5] - 37:25, 38:10, 54:23, 56:8, 65:5
**award** [1] - 32:1
**aware** [5] - 24:5, 24:10, 24:24, 38:21, 54:15
**awe** [1] - 31:22
**awful** [1] - 53:4
**Ayers** [1] - 4:9
**AYERS** [2] - 4:11, 20:24

**B**

**background** [3] - 12:10, 15:3, 16:14
**backwards** [1] - 26:11
**bad** [4] - 13:3, 18:2, 19:1, 31:21
**Baltimore** [1] - 50:24
**bar** [2] - 15:1, 67:4
**basis** [1] - 32:21
**BAW** [3] - 32:16, 42:12, 43:4
**Bayard** [1] - 3:12
**bear** [1] - 62:20
**become** [3] - 33:18, 41:22, 62:2
**becomes** [4] - 7:5, 22:3, 34:1, 34:14
**begin** [1] - 48:8
**beginning** [2] - 50:1, 65:6
**behalf** [2] - 3:1, 37:19
**behavior** [1] - 27:2
**Bennis** [4] - 16:2, 16:3, 28:14, 32:25
**best** [3] - 6:5, 64:18, 70:14
**better** [1] - 14:10
**between** [4] - 14:12, 46:1,

47:21, 53:15
**beyond** [2] - 24:15, 59:9
**bias** [5] - 8:20, 9:4, 9:13, 9:17, 9:21
**biased** [1] - 9:10
**big** [4] - 10:17, 23:21, 24:1, 61:2
**binding** [1] - 62:2
**bit** [16] - 5:11, 8:7, 14:22, 15:8, 19:14, 20:1, 21:22, 33:22, 38:15, 38:21, 43:18, 46:7, 53:25, 64:9, 69:9, 73:3
**blue** [2] - 69:4, 70:10
**Boggs** [1] - 3:5
**box** [1] - 39:8
**boxes** [2] - 27:15, 29:5
**branches** [1] - 13:18
**breach** [1] - 28:6
**break** [5] - 18:8, 65:13, 65:25, 66:1, 66:2
**breaks** [1] - 66:3
**bridge** [3] - 18:7, 18:9
**brief** [4] - 37:16, 37:23, 39:12, 69:24
**briefly** [2] - 20:15, 28:15
**bring** [2] - 7:10, 22:6
**bringing** [3] - 10:8, 11:6, 17:22
**brought** [4] - 6:1, 30:15, 65:15, 65:24
**build** [2] - 9:11, 9:23
**building** [5] - 6:7, 64:13, 64:19, 64:20, 65:25
**bunch** [2] - 28:24, 36:18
**burden** [5] - 62:20, 63:5, 63:18, 63:24, 70:9
**business** [1] - 37:7
**buy** [1] - 12:6

**C**

**C-R-E-V-I-S-T-O-N** [1] - 56:22
**CAI** [1] - 3:3
**California** [1] - 3:6
**Canadian** [2] - 5:14, 5:15
**cannot** [5] - 16:9, 44:24, 54:25, 55:2, 66:6
**capitalism** [1] - 18:19
**car** [1] - 40:2
**care** [5] - 8:19, 34:23, 36:6, 70:11, 72:25
**careful** [2] - 55:8
**carefully** [1] - 59:15
**Carolina** [2] - 27:2, 32:12
**CASE** [2] - 72:6, 72:8
**case** [66] - 7:10, 7:11, 8:16, 9:14, 9:16, 9:25, 10:17,

10:18, 10:21, 11:1, 11:3, 11:6, 11:17, 12:7, 12:13, 13:1, 13:20, 14:20, 20:20, 21:8, 25:2, 25:4, 26:21, 28:8, 29:24, 33:17, 34:6, 37:2, 39:24, 40:2, 40:4, 40:19, 41:1, 41:18, 42:13, 44:6, 45:2, 46:24, 50:23, 51:16, 51:22, 53:24, 55:20, 56:14, 57:21, 57:22, 58:9, 59:5, 59:13, 60:1, 60:11, 60:13, 60:15, 60:23, 61:4, 62:2, 62:25, 63:10, 63:12, 68:2, 69:8, 69:12, 69:20, 72:10
**cases** [6] - 12:21, 42:3, 45:10, 55:14, 72:11
**categories** [1] - 17:12
**categorize** [1] - 67:19
**category** [2] - 45:8, 67:20
**caught** [1] - 57:1
**causes** [1] - 9:21
**causing** [1] - 14:19
**cautious** [1] - 7:9
**CEO** [1] - 60:8
**certain** [3] - 25:9, 36:2, 36:3
**certainly** [6] - 7:9, 17:13, 45:3, 62:19, 65:6, 65:8
**cetera** [8] - 24:2, 34:22, 43:9, 43:12, 44:18, 45:14, 45:20, 45:24
**challenge** [1] - 39:7
**chance** [5] - 5:4, 12:11, 16:25
**change** [5] - 33:23, 55:1, 56:6, 62:4
**changed** [3] - 53:25, 56:9, 62:6
**character** [1] - 33:5
**characteristic** [1] - 8:25
**characteristics** [1] - 9:7
**characterize** [1] - 18:24
**characterized** [1] - 41:18
**characterizing** [1] - 18:24
**charge** [3] - 4:20, 41:11, 53:9
**check** [15] - 13:16, 13:23, 25:16, 38:23, 38:24, 41:9, 42:24, 52:14, 62:12, 64:8, 64:21, 65:4, 65:14, 66:5, 68:9
**checking** [1] - 16:5
**chief** [9] - 30:14, 55:20, 57:22, 58:9, 59:5, 59:13, 60:22, 60:23
**chose** [1] - 38:2
**chronologically** [1] - 71:17
**circled** [1] - 13:23
**circumstances** [1] - 12:21

**cite** [2] - 25:6, 70:16
**cited** [1] - 24:10
**civil** [3] - 7:11, 11:1, 11:3
**claim** [15] - 10:8, 10:15, 11:6, 26:23, 27:4, 27:6, 28:25, 30:16, 32:11, 32:12, 32:17, 32:21, 32:22, 32:23
**claims** [7] - 18:12, 20:14, 23:10, 28:18, 36:6, 42:16, 63:11
**clarification** [3] - 25:11, 44:9, 71:12
**clear** [11] - 16:22, 16:24, 20:6, 22:4, 29:24, 30:21, 34:2, 44:24, 45:15, 60:11, 69:22
**clearly** [2] - 42:19, 43:12
**clerk** [2] - 50:22, 50:23
**clerk's** [2] - 7:16, 38:24
**client** [2] - 13:4, 17:24
**close** [1] - 73:10
**closer** [2] - 42:22, 52:17
**closing** [1] - 48:21
**codes** [3] - 69:6, 69:7, 71:4
**coin** [1] - 13:10
**colleagues** [1] - 62:16
**collect** [1] - 27:16
**collected** [1] - 27:18
**color** [2] - 70:10, 71:4
**colors** [1] - 69:5
**column** [2] - 70:13, 70:14
**comfortable** [1] - 47:4
**coming** [1] - 31:7, 51:7, 64:10
**comment** [3] - 17:4, 34:8, 63:16
**community** [1] - 24:3
**companies** [5] - 13:18, 14:15, 18:5, 19:22, 19:25
**company** [3] - 23:21, 23:22, 57:8
**compare** [1] - 69:1
**comparison** [1] - 23:20
**competition** [5] - 18:11, 18:13, 20:14, 26:21
**competitive** [1] - 17:24
**competitor** [1] - 26:24
**competitors** [2] - 18:18, 19:4
**competitors'** [1] - 19:22
**complaint** [1] - 32:20
**complete** [4] - 34:22, 57:18, 60:20, 62:10
**completely** [4] - 16:23, 42:9, 52:25, 57:3
**complicated** [3] - 40:3, 57:24, 70:18
**computer** [1] - 30:15

**computers** [2] - 34:6, 70:5
**concern** [1] - 21:14
**concerned** [4] - 22:15, 28:21, 33:18, 47:21
**conclude** [1] - 39:25
**conclusion** [1] - 7:10
**conduct** [9] - 17:23, 18:1, 18:2, 18:3, 18:16, 21:10, 30:9, 30:10, 30:17
**conference** [1] - 4:6
**confidential** [5] - 23:4, 29:12, 29:15, 32:7, 32:16
**confidentiality** [1] - 28:6
**conformity** [1] - 30:18
**confuse** [1] - 28:23
**confused** [1] - 73:2
**confusing** [5] - 5:10, 19:11, 19:19, 19:20, 69:7
**confusion** [4] - 19:17, 29:3, 30:23, 56:9
**connection** [4] - 7:22, 25:9, 41:7, 50:8
**consider** [6] - 7:3, 11:13, 19:16, 36:4, 44:23
**consideration** [1] - 19:7
**considered** [5] - 18:12, 22:8, 45:16, 46:11, 46:12
**constitutional** [1] - 72:14
**constraints** [1] - 20:2
**contact** [1] - 69:23
**contemplate** [2] - 7:15, 25:4
**contemplates** [2] - 25:13, 36:2
**contents** [3] - 32:3, 32:8, 33:4
**context** [8] - 27:6, 27:12, 27:13, 28:4, 28:18, 29:16, 30:13, 58:3
**contextually** [1] - 61:5
**continue** [2] - 16:10, 23:6
**convenient** [2] - 48:2, 48:16
**conversion** [2] - 32:17, 32:21
**convey** [1] - 42:18
**convince** [1] - 26:19
**copied** [1] - 69:25
**copies** [2] - 30:15, 68:11
**copy** [6] - 29:13, 29:14, 39:23, 50:9, 68:21, 68:22
**copying** [1] - 27:13
**corporate** [1] - 68:5
**correct** [6] - 15:20, 18:15, 25:15, 25:20, 26:10, 64:17
**corrected** [1] - 62:6
**counsel** [15] - 10:9, 12:2, 20:16, 21:22, 22:1, 22:2,

34:17, 46:3, 49:24, 51:24, 52:19, 54:7, 55:4, 56:2, 58:21
**count** [1] - 72:12
**counted** [1] - 54:11
**counterintuitive** [1] - 14:13
**country** [1] - 24:2
**couple** [5] - 8:14, 15:18, 23:14, 34:24, 38:8
**course** [20] - 7:20, 8:8, 8:14, 9:12, 15:3, 20:20, 23:12, 33:18, 34:7, 34:16, 41:5, 53:3, 53:8, 58:6, 62:5, 62:24, 67:23, 68:15, 69:8, 70:7
**COURT** [106] - 4:5, 4:13, 4:19, 4:24, 5:2, 5:4, 5:7, 5:10, 5:15, 5:22, 6:15, 6:18, 13:11, 14:6, 14:9, 14:18, 17:15, 17:18, 18:6, 18:14, 18:20, 19:6, 20:15, 21:19, 22:19, 25:24, 26:7, 26:17, 27:22, 28:20, 29:17, 30:5, 36:20, 37:16, 37:21, 38:13, 40:10, 40:13, 40:22, 41:5, 41:16, 42:7, 42:14, 42:24, 43:16, 43:22, 44:5, 44:21, 45:13, 46:4, 46:6, 46:18, 46:20, 47:12, 47:18, 47:24, 49:9, 49:20, 49:22, 49:25, 50:4, 51:5, 51:12, 52:3, 52:6, 52:12, 52:18, 52:22, 54:4, 54:19, 55:25, 56:19, 56:23, 57:10, 57:12, 59:3, 59:7, 59:11, 59:14, 60:9, 60:16, 61:13, 62:22, 63:3, 63:13, 64:18, 67:15, 68:7, 69:15, 69:18, 69:21, 71:13, 71:19, 71:23, 72:7, 72:9, 72:24, 73:9
**court** [12] - 12:22, 12:23, 18:25, 35:13, 47:1, 64:3, 64:6, 64:10, 66:5, 66:6, 66:8, 66:10
**Court** [15] - 16:19, 22:2, 22:20, 24:3, 26:3, 26:11, 26:15, 28:21, 30:20, 31:2, 39:16, 48:2, 50:18, 54:8, 73:7
**courtroom** [5] - 49:7, 50:22, 67:13, 67:21
**cover** [3] - 47:10, 48:7, 59:17
**covered** [6] - 29:22, 46:13, 47:8, 47:9, 58:9, 58:13
**covers** [3] - 13:15, 25:7, 67:5

**create** [1] - 31:23
**created** [2] - 16:8, 46:3
**Creviston** [3] - 56:17, 56:22, 57:7
**criminal** [1] - 10:18
**critical** [1] - 36:15
**cross** [8] - 16:17, 29:11, 37:14, 55:6, 58:16, 58:21, 60:13, 62:10
**cross-examination** [4] - 16:17, 29:11, 58:16, 62:10
**cross-examine** [2] - 37:14, 55:6
**cumulative** [2] - 24:22, 28:2
**curious** [1] - 13:21
**custom** [1] - 20:10
**cut** [1] - 12:16

**D**

**damages** [1] - 28:14
**Darveaux** [1] - 37:6
**Darveaux's** [3] - 36:23, 37:5, 37:8
**data** [5] - 28:17, 29:12, 30:14, 31:16, 33:3
**Daubert** [2] - 15:18, 73:8
**DAVID** [1] - 3:3
**David** [2] - 23:23, 23:24
**david.elkins@squirepb. com** [1] - 3:8
**days** [2] - 38:8, 51:19
**deadline** [1] - 38:4
**deal** [3] - 35:23, 61:2, 73:14
**dealing** [1] - 67:13
**deceptive** [4] - 17:10, 18:20, 18:21, 32:22
**decide** [6] - 9:25, 22:9, 22:10, 33:24, 68:14, 71:25
**decided** [1] - 56:10
**deciding** [3] - 9:8, 19:13, 52:19
**decisions** [1] - 61:10
**defendant** [6] - 10:20, 11:5, 24:13, 34:7, 35:1, 35:7
**Defendant's** [1] - 33:25
**defendant's** [3] - 10:21, 35:15, 48:5
**Defendants** [1] - 3:1
**defendants** [3] - 17:8, 47:16, 63:9
**defending** [1] - 10:15
**defense** [18] - 21:12, 22:2, 25:8, 42:25, 52:18, 53:24, 54:21, 54:22, 55:18, 57:19, 57:20, 58:7, 58:8, 58:21, 61:4, 69:3, 70:7
**defer** [5] - 14:5, 26:3, 31:3,

40:20, 67:11
**define** [2] - 29:23, 32:15
**DeFosse** [11] - 4:15, 5:19, 13:2, 14:5, 14:7, 32:11, 37:24, 40:6, 40:15, 47:9, 54:15
**DEFOSSE** [22] - 4:17, 5:3, 5:18, 14:8, 14:11, 25:19, 25:25, 26:10, 26:20, 28:3, 29:1, 29:21, 30:11, 30:25, 35:18, 36:8, 36:11, 36:22, 40:9, 40:20, 54:17, 69:13
**degree** [3] - 28:2, 52:4, 52:7
**Delaware** [5] - 3:13, 6:2, 8:5, 38:25, 51:14
**delayed** [1] - 38:8
**delays** [1] - 38:8
**deliberation** [3] - 7:3, 7:7, 44:4
**Demonstrative** [1] - 45:23
**demonstrative** [12] - 42:17, 42:18, 42:21, 43:11, 43:14, 44:1, 44:7, 44:10, 45:21, 46:2, 46:17
**demonstratives** [12] - 40:14, 40:25, 41:3, 41:14, 41:17, 42:2, 43:6, 43:8, 44:12, 45:11, 45:18, 46:16
**denied** [1] - 16:1
**depose** [1] - 37:10
**deposed** [1] - 37:6
**deposition** [18] - 25:13, 37:8, 37:11, 38:6, 68:11, 68:13, 68:18, 68:21, 68:22, 69:9, 69:11, 69:25, 70:8, 70:22, 71:8, 71:15, 71:17, 72:1
**depositions** [5] - 25:10, 25:11, 25:12, 69:20, 72:3
**deputy** [2] - 50:22
**designate** [1] - 7:2
**designated** [5] - 26:2, 68:14, 68:23, 69:3, 71:16
**designations** [2] - 26:1, 70:4
**desire** [1] - 62:10
**detail** [1] - 67:7
**details** [1] - 31:1
**determination** [1] - 22:22
**determinations** [1] - 11:11
**determine** [1] - 58:11
**device** [2] - 43:4, 45:19
**devices** [1] - 43:12
**devil** [1] - 30:25
**different** [8] - 5:23, 10:18, 11:23, 11:24, 47:2, 50:11, 52:20, 65:17
**difficult** [4] - 10:24, 13:19,

4

49:14, 61:5
**digital** [1] - 27:12
**digitally** [1] - 27:14
**dilemma** [1] - 43:17
**dire** [5] - 7:23, 8:9, 13:7, 13:15, 52:23
**direct** [8] - 26:22, 58:6, 58:9, 58:13, 58:22, 59:9, 60:3, 60:14
**directly** [7] - 19:12, 20:13, 21:8, 21:13, 27:3, 53:18, 53:19
**disagree** [1] - 30:20
**disagreeing** [2] - 20:18, 60:16
**disclose** [2] - 41:8, 41:13
**disclosed** [4] - 36:13, 36:19, 36:20, 36:22
**disclosure** [1] - 35:21
**discussed** [3] - 34:3, 45:19, 45:23
**discussion** [5] - 16:15, 26:13, 34:6, 46:8, 51:17
**dismiss** [2] - 7:12
**disposition** [1] - 36:5
**distinction** [2] - 45:21, 46:1
**Docket** [1] - 16:12
**document** [8] - 36:19, 37:25, 48:12, 50:6, 67:18, 67:19, 71:7
**documents** [16] - 21:4, 26:24, 27:7, 28:16, 29:11, 30:2, 31:16, 31:18, 31:21, 32:7, 32:15, 32:18, 36:18, 37:2, 37:4, 46:24
**done** [8] - 7:18, 36:3, 37:11, 51:24, 52:2, 52:9, 55:14, 67:25
**doors** [1] - 64:16
**down** [10] - 21:20, 26:17, 31:6, 52:24, 52:25, 53:14, 54:3, 55:5, 57:25, 61:1
**dozen** [1] - 22:6
**Dr** [10] - 28:13, 36:23, 37:5, 37:6, 37:7, 37:10, 38:1, 38:6, 38:11
**drag** [1] - 36:5
**Drew** [1] - 3:15
**drive** [2] - 65:3, 65:4
**due** [1] - 38:7
**during** [3] - 13:20, 44:4, 66:13

## E

**e-mail** [2] - 29:14, 50:6
**e-mails** [2] - 23:12, 32:4
**early** [4] - 9:8, 14:20, 64:21,
64:25
**ease** [1] - 47:6
**easier** [1] - 44:18
**easy** [4] - 48:25, 49:7, 49:8, 51:2
**eat** [1] - 65:23
**economics** [2] - 16:13, 16:25
**educational** [1] - 8:9
**effect** [1] - 24:22
**efficiency** [2] - 6:6, 28:22
**efficient** [13] - 36:5, 57:4, 58:2, 59:18, 59:19, 60:20, 61:15, 61:22, 62:24, 63:10, 63:23, 67:2, 72:16
**effort** [1] - 33:2
**eight** [7] - 6:23, 51:21, 64:10, 64:11, 64:14, 64:16, 64:19
**either** [5] - 11:11, 14:13, 50:16, 58:8
**element** [1] - 30:23
**elements** [1] - 27:5
**Elkins** [9] - 4:22, 6:16, 13:7, 14:3, 40:11, 55:13, 62:17, 63:7, 64:15
**ELKINS** [15] - 3:3, 4:23, 6:17, 13:9, 14:5, 31:8, 31:11, 31:13, 32:6, 37:18, 40:12, 52:20, 55:17, 62:18, 64:17
**Elkins'** [1] - 63:15
**eloquently** [1] - 32:11
**embed** [3] - 12:20, 12:24, 14:14
**employee** [2] - 59:5, 60:4
**employees** [1] - 27:9
**employment** [1] - 9:16
**encourage** [1] - 61:7
**end** [4] - 15:16, 39:12, 40:1, 57:14
**engage** [1] - 19:22
**engaged** [2] - 18:5, 19:1
**enter** [5] - 6:9, 6:18, 6:19, 15:23, 62:1
**entered** [1] - 7:22
**entertain** [1] - 26:13
**entire** [2] - 29:13, 29:14
**entirely** [1] - 22:2
**entities** [1] - 67:23
**entitled** [1] - 29:12
**equal** [1] - 24:3
**equipment** [1] - 71:5
**Eric** [2] - 56:17, 56:18
**error** [3] - 32:2, 62:7
**escape** [2] - 21:10, 21:17
**especially** [1] - 41:4
**estimate** [2] - 52:16, 73:6
**et** [8] - 24:1, 34:22, 43:9,
43:12, 44:18, 45:14, 45:20, 45:24
**ethical** [1] - 18:16
**eventually** [3] - 11:10, 38:7, 65:16
**evidence** [30] - 17:9, 20:8, 21:3, 21:15, 22:17, 23:9, 24:14, 31:24, 32:1, 32:9, 33:5, 34:8, 36:13, 36:17, 38:10, 41:18, 42:4, 42:22, 44:19, 45:15, 45:16, 46:1, 46:3, 46:17, 47:7, 47:20, 50:2, 50:3, 50:10, 63:11
**exactly** [6] - 16:7, 43:16, 50:10, 50:12, 64:18, 67:2
**examination** [2] - 16:17, 24:25, 29:11, 58:16, 62:10
**examine** [2] - 37:14, 55:6
**examines** [1] - 58:8
**example** [9] - 9:13, 30:14, 42:12, 43:4, 58:7, 58:19, 59:6, 59:21
**exceed** [2] - 53:15, 53:16
**exception** [1] - 50:16
**exceptions** [1] - 60:17
**excessive** [1] - 62:14
**exchange** [1] - 41:6
**exclude** [2] - 23:19, 67:22
**excluded** [1] - 67:24
**exclusively** [1] - 48:14
**Excuse** [2] - 17:15, 19:6
**excuse** [1] - 19:6
**excused** [1] - 73:15
**executive** [1] - 60:23
**exercise** [2] - 8:22, 10:4
**exhibit** [8] - 25:14, 25:19, 40:19, 41:22, 44:1, 45:7, 50:18, 70:2
**Exhibit** [10] - 25:22, 25:25, 48:4, 48:9, 48:10, 48:11, 48:22, 49:11
**exhibits** [6] - 25:9, 43:23, 44:25, 47:15, 48:5, 48:6, 49:19, 70:1
**existed** [1] - 50:15
**expect** [4] - 28:9, 28:18, 44:19, 45:7
**expected** [1] - 65:7
**experience** [1] - 45:9
**expert** [6] - 16:7, 17:25, 28:10, 32:24, 36:19, 45:12
**expertise** [1] - 40:5
**experts** [4] - 28:13, 38:9, 41:4, 66:23
**explain** [5] - 27:8, 40:25, 41:3, 42:2, 45:1
**explaining** [1] - 29:4
**explore** [1] - 29:10

**extend** [1] - 73:3
**extensive** [2] - 60:19, 70:16
**extremely** [2] - 20:15, 32:10

## F

**fact** [2] - 9:19, 18:3
**factor** [1] - 36:15
**factors** [2] - 10:2, 11:13
**facts** [4] - 39:20, 39:21, 49:17, 62:12
**fair** [6] - 13:19, 15:5, 50:4, 72:14, 72:16
**fairly** [2] - 65:13, 70:22
**fall** [1] - 45:8
**familiar** [4] - 8:4, 8:11, 20:21, 49:2
**family** [3] - 5:7, 5:8, 5:14
**far** [3] - 14:14, 55:21, 65:4
**fashion** [1] - 60:11
**fast** [2] - 67:16, 71:6
**Faulkner** [4] - 25:1, 28:9, 32:18, 32:19
**fear** [1] - 8:11
**federal** [2] - 12:23, 45:15
**feelings** [1] - 23:17
**felt** [2] - 23:17, 31:2
**ferreting** [1] - 8:20
**few** [9] - 12:12, 22:13, 38:23, 38:25, 41:15, 52:9, 60:3, 60:7, 61:15
**figures** [2] - 42:16, 42:17
**file** [1] - 22:4
**filter** [1] - 43:4
**filters** [1] - 42:13
**final** [4] - 15:9, 17:17, 22:21, 39:24
**findings** [1] - 28:11
**fine** [9] - 14:6, 14:13, 48:18, 48:19, 49:13, 52:23, 54:20, 62:15, 72:2
**finish** [2] - 13:12, 14:24
**firm** [1] - 72:23
**first** [27] - 5:25, 7:8, 8:24, 10:6, 26:13, 26:20, 36:22, 37:5, 39:4, 39:15, 40:1, 41:14, 48:3, 49:10, 51:23, 52:11, 53:19, 56:14, 56:15, 56:17, 57:14, 57:16, 64:8, 65:16, 69:10, 69:11
**five** [7] - 11:24, 31:16, 38:3, 65:2, 65:11, 66:5, 71:4
**fix** [1] - 62:8
**flip** [3] - 13:9, 47:21, 47:24
**flop** [1] - 47:24
**flopping** [1] - 47:21
**Florida** [1] - 53:3
**folks** [1] - 4:8

**follow** [6] - 14:25, 48:16, 48:17, 58:25, 60:18, 70:5
**follow-up** [1] - 14:25
**following** [1] - 47:7
**food** [1] - 65:23
**foreign** [2] - 13:18, 14:15
**forensic** [3] - 24:25, 28:9, 32:19
**forever** [2] - 36:5, 51:19
**forms** [1] - 15:7
**forth** [8] - 6:7, 7:14, 24:4, 24:19, 25:1, 38:4, 50:13, 65:3
**forward** [7] - 26:12, 35:6, 36:2, 55:22, 72:9, 72:25, 73:15
**four** [6] - 11:24, 37:11, 59:21, 71:4, 72:6, 72:7
**fourth** [1] - 11:4
**France** [2] - 5:12
**free** [1] - 29:10
**French** [3] - 5:13, 5:14, 5:15
**FRIDAY** [1] - 4:1
**front** [3] - 64:16, 66:20, 69:5
**full** [3] - 67:3, 68:21, 69:25
**fun** [1] - 72:10
**functions** [1] - 41:21
**fundamental** [2] - 17:20, 21:2

## G

**gallery** [1] - 68:4
**gander** [1] - 19:2
**gathering** [2] - 18:17, 19:4
**general** [4] - 42:2, 44:21, 60:17, 65:20
**generally** [3] - 13:15, 42:3, 61:17
**Germany** [1] - 5:12
**giant** [2] - 31:13, 31:23
**gigabytes** [4] - 26:23, 28:16, 29:12, 31:16
**ginormous** [1] - 31:15
**given** [2] - 13:12, 55:21
**glean** [1] - 42:4
**goal** [1] - 47:25
**GOLDEN** [1] - 3:11
**Goliath** [2] - 23:23, 23:24
**goodness** [1] - 51:18
**goose** [1] - 19:2
**grant** [3] - 17:11, 23:6, 26:18
**granted** [7] - 15:24, 23:16, 26:15, 33:8, 33:14, 35:10, 35:13

**granting** [1] - 31:25
**great** [4] - 13:22, 15:11, 58:25, 67:15
**group** [1] - 38:19
**groups** [1] - 42:20
**guess** [3] - 12:12, 18:10, 41:15
**guidance** [1] - 67:11
**guys** [2] - 53:7, 62:15

## H

**H-O-U-L-D-E-N** [1] - 69:17
**half** [3] - 26:24, 31:16, 51:21
**hand** [2] - 70:13
**handed** [1] - 37:17
**handle** [4] - 33:24, 43:22, 51:10, 71:20
**handled** [1] - 47:23
**hands** [1] - 21:12
**happier** [1] - 62:21
**hard** [4] - 30:12, 49:1, 71:5, 72:13
**hardware** [1] - 45:19
**HARRIS** [1] - 3:4
**hate** [1] - 15:14
**head** [1] - 30:12
**hear** [10] - 19:15, 20:15, 20:16, 22:21, 33:4, 43:16, 47:24, 51:17, 52:18, 72:10
**heard** [4] - 17:17, 26:15, 31:11, 46:14
**held** [1] - 42:21
**Hello** [1] - 5:22
**hello** [1] - 66:18
**help** [4] - 39:9, 43:9, 67:1, 68:20
**helpful** [4] - 24:18, 42:5, 61:12, 69:2
**helping** [2] - 14:10, 68:4
**helps** [1] - 11:14
**high** [1] - 54:2
**highlight** [1] - 13:25
**highlights** [1] - 13:24
**hiring** [1] - 27:8
**honest** [1] - 9:7
**Honor** [65] - 4:11, 4:17, 4:23, 5:1, 5:3, 5:18, 5:21, 6:13, 6:17, 14:16, 17:14, 17:16, 17:21, 18:11, 18:19, 19:3, 20:5, 20:24, 22:13, 25:20, 26:6, 26:10, 28:4, 29:21, 30:11, 30:25, 31:3, 31:8, 32:19, 33:4, 33:8, 35:18, 36:8, 37:15, 37:18, 37:22, 40:9, 40:21, 40:24, 41:12, 42:12, 43:1, 43:3,

44:1, 44:16, 45:9, 47:11, 47:14, 49:4, 49:18, 52:1, 52:16, 52:20, 54:18, 55:17, 56:16, 57:7, 59:2, 61:11, 64:17, 69:13, 69:16, 71:11, 72:21, 73:6
**hope** [5] - 16:19, 19:24, 30:4, 42:22, 52:12
**hopefully** [5] - 9:5, 39:3, 50:5, 50:6, 50:20
**hoping** [2] - 26:16, 51:20
**houlden** [1] - 69:17
**Houlden** [2] - 70:22, 71:15
**hours** [9] - 38:5, 51:18, 51:20, 51:21, 52:9, 61:3, 62:13, 62:19
**huge** [3] - 32:1, 32:7, 33:2
**hundred** [2] - 46:6, 51:5
**hundreds** [1] - 37:1
**hurt** [1] - 23:17

## I

**idea** [4] - 11:14, 12:4, 12:6, 14:1
**identified** [1] - 36:18
**identify** [1] - 36:17
**lll** [1] - 3:11
**ill** [1] - 7:5
**illegal** [1] - 10:1
**illustrate** [1] - 43:9
**illustration** [2] - 8:21, 57:13
**illustrations** [1] - 44:17
**illustrative** [1] - 45:11
**illustrative-type** [1] - 45:11
**image** [1] - 30:21
**imagine** [1] - 44:5
**immoral** [1] - 27:1
**impact** [1] - 8:22
**impartial** [5] - 9:4, 13:20, 15:5, 72:14, 72:16
**impeachment** [3] - 26:6, 26:8, 26:9
**important** [13] - 8:25, 9:6, 9:18, 9:21, 10:22, 12:7, 12:20, 18:10, 34:13, 45:6, 66:12, 72:11, 72:12
**improper** [2] - 43:9, 43:10
**inappropriate** [2] - 18:6, 66:19
**include** [4] - 24:6, 24:8, 24:9, 24:13
**included** [3] - 37:24, 38:2, 38:11
**including** [1] - 11:23
**incorrectly** [1] - 15:20
**indicate** [2] - 33:12, 69:3
**indicating** [1] - 34:19

**individual** [2] - 11:5, 16:12
**individuals** [1] - 64:9
**industry** [4] - 18:5, 18:16, 20:11, 43:13
**inference** [1] - 29:13
**inferred** [1] - 33:4
**influenced** [1] - 10:1
**information** [25] - 5:23, 11:12, 12:10, 15:23, 16:7, 17:24, 18:17, 19:23, 22:22, 23:4, 24:7, 27:9, 28:1, 28:21, 28:22, 29:15, 30:22, 31:3, 32:16, 32:17, 39:18, 42:18, 45:5, 69:14
**initial** [6] - 33:11, 36:14, 36:24, 36:25, 38:1
**input** [1] - 31:5
**inquiries** [2] - 39:11, 39:13
**inquiry** [7] - 11:21, 15:22, 16:20, 34:13, 34:15, 39:12, 63:24
**inspection** [1] - 32:19
**instead** [1] - 27:13
**instruction** [5] - 22:14, 29:19, 30:21, 34:13, 44:9
**instructions** [7] - 15:6, 15:10, 29:22, 30:4, 39:17, 39:24, 44:9
**insufficiently** [1] - 23:11
**intelligence** [1] - 19:4
**intend** [4] - 17:25, 18:4, 20:9, 36:17
**intended** [1] - 35:5
**intending** [1] - 28:15
**intention** [3] - 17:22, 18:2, 22:18
**interesting** [5] - 9:19, 16:2, 39:21, 58:5, 58:10
**interrogatories** [2] - 36:16, 37:3
**interrupting** [1] - 49:21
**introduce** [5] - 17:9, 20:9, 37:18, 49:10, 70:1
**introduced** [3] - 8:18, 30:22, 48:4
**introducing** [1] - 23:9
**investigation** [1] - 34:22
**invite** [1] - 32:2
**involved** [1] - 34:20
**irrelevant** [1] - 27:19
**Irwin** [1] - 15:25
**issue** [25] - 9:14, 9:15, 19:12, 21:2, 21:8, 21:11, 21:13, 22:14, 24:23, 25:21, 27:20, 29:3, 30:14, 30:16, 30:24, 31:14, 34:10, 36:12, 42:13, 50:10, 54:4, 54:5, 56:3, 60:11, 63:11

**issues** [6] - 24:16, 55:22, 60:10, 64:21, 66:12, 67:14
**issuing** [1] - 73:7
**itself** [1] - 42:4

**J**

**job** [2] - 12:10, 64:10
**Judge** [3] - 12:15, 15:1, 53:5
**judgment** [2] - 7:21, 73:8
**jump** [1] - 18:7
**jumped** [1] - 18:9
**jumps** [1] - 18:7
**juror** [1] - 10:6
**Juror** [1] - 11:8
**jurors** [9] - 6:6, 6:21, 7:1, 8:16, 10:3, 41:23, 45:5, 64:9, 65:18
**jury** [65] - 6:3, 7:4, 9:1, 9:24, 11:23, 11:24, 12:5, 15:10, 15:15, 19:11, 19:13, 19:20, 21:4, 21:16, 24:18, 24:23, 26:25, 27:8, 27:17, 28:23, 29:3, 29:10, 29:12, 29:22, 29:23, 30:2, 31:20, 31:25, 32:2, 32:9, 33:3, 39:2, 39:14, 39:22, 40:1, 42:5, 42:17, 43:5, 43:7, 43:10, 43:12, 43:19, 43:20, 44:4, 44:22, 45:16, 45:17, 47:7, 48:1, 48:16, 48:23, 48:24, 49:8, 57:21, 59:16, 60:12, 61:21, 64:8, 65:1, 65:15, 66:1, 66:15, 66:20, 67:1, 72:16

**K**

**keep** [6] - 16:10, 33:20, 37:23, 49:13, 51:1, 58:14
**keeping** [1] - 61:6
**Kevin** [1] - 28:9
**key** [3] - 36:12, 48:23, 69:5
**kind** [11] - 4:14, 8:16, 8:18, 24:11, 27:9, 29:8, 40:4, 52:25, 58:10, 71:5, 71:14
**King** [1] - 3:12
**knowledge** [1] - 40:7
**knows** [5] - 6:2, 19:21, 19:23, 50:5, 66:25
**Kwon** [1] - 68:17

**L**

**language** [4] - 24:6, 24:9, 24:12, 56:10

**laptops** [2] - 29:14, 34:11
**large** [1] - 27:9
**larger** [1] - 6:24
**last** [6] - 5:10, 5:13, 36:9, 50:22, 56:9, 56:20
**late** [13] - 35:1, 35:11, 35:12, 35:21, 35:22, 35:23, 66:7, 72:4, 72:6, 72:7
**law** [4] - 20:20, 21:8, 27:2, 32:13
**lawsuits** [2] - 23:9, 23:10
**lawyer** [1] - 12:13
**lawyers** [2] - 20:3, 48:2
**lead** [2] - 5:20, 10:9
**leading** [2] - 33:8, 58:14, 58:15
**least** [7] - 7:15, 20:18, 60:12, 63:1, 65:2, 65:12
**leave** [3] - 6:7, 35:12, 63:13
**leaving** [1] - 66:10
**Lebby** [1] - 15:21
**Lebby's** [1] - 34:2
**leeway** [1] - 62:15
**left** [1] - 70:13
**left-hand** [1] - 70:13
**LEMIEUX** [29] - 3:2, 5:1, 5:6, 5:8, 5:13, 17:14, 17:16, 17:20, 18:10, 18:17, 18:23, 20:5, 22:12, 43:1, 43:21, 43:25, 44:15, 45:9, 45:14, 46:5, 49:18, 49:21, 49:23, 50:1, 51:3, 51:11, 71:11, 71:14, 73:6
**Lemieux** [5] - 4:25, 13:9, 20:25, 72:22, 72:24
**length** [3] - 41:9, 51:13, 62:13
**lengthy** [1] - 69:20
**less** [6] - 52:9, 61:5, 63:14, 63:18, 63:24, 64:2
**liability** [3] - 21:10, 21:17, 32:24
**library** [1] - 27:10
**likely** [3] - 40:6, 57:13, 63:17
**limine** [6] - 7:20, 17:7, 21:5, 22:5, 26:13
**limines** [1] - 17:7
**limit** [2] - 60:13, 62:21
**limited** [4] - 34:13, 34:15, 39:6, 59:10
**limiting** [2] - 29:19, 34:12
**list** [16] - 8:1, 9:6, 9:9, 9:11, 9:23, 37:4, 50:25, 53:21, 54:3, 54:6, 54:21, 55:15, 56:1, 56:5, 56:23, 61:25
**listed** [1] - 8:1
**listen** [4] - 11:20, 61:14,

62:5, 73:11
**listening** [1] - 61:14
**lists** [1] - 51:1
**literature** [1] - 18:15
**litigation** [1] - 16:8
**live** [1] - 56:24
**local** [2] - 12:2, 38:5
**logic** [1] - 16:6
**logically** [1] - 63:6
**look** [19] - 8:2, 10:22, 14:21, 16:1, 18:25, 19:14, 20:1, 20:16, 21:21, 22:24, 23:7, 24:21, 24:22, 30:8, 33:17, 33:22, 45:20, 73:11, 73:15
**looked** [1] - 20:20
**looking** [5] - 4:9, 14:20, 72:3, 72:9, 72:24
**looks** [2] - 15:21, 23:5
**love** [1] - 31:11
**lunch** [4] - 65:13, 65:15, 65:18, 66:14
**lunches** [2] - 6:1, 7:17
**Lysse** [2] - 35:16, 35:18

**M**

**mail** [2] - 29:14, 50:6
**mails** [2] - 23:12, 32:4
**main** [3] - 5:16, 15:3, 55:25
**malicious** [1] - 28:8
**MANAGER** [2] - 72:6, 72:8
**manner** [2] - 63:10, 72:22
**map** [2] - 53:11, 53:12
**mark** [3] - 26:18, 70:4, 70:8
**marked** [12] - 25:23, 41:25, 43:23, 43:25, 46:16, 46:25, 47:16, 49:12, 68:22, 68:24, 71:3, 71:18
**marking** [1] - 44:25
**mass** [2] - 31:21, 33:2
**Masters** [17] - 5:19, 5:22, 6:11, 40:20, 40:23, 41:11, 43:3, 49:3, 52:15, 54:1, 54:14, 54:17, 54:20, 56:13, 60:2, 67:9, 72:19
**MASTERS** [37] - 5:21, 6:13, 40:24, 41:12, 42:1, 42:11, 42:15, 46:15, 46:19, 47:11, 47:14, 47:19, 49:4, 52:1, 52:5, 52:8, 52:16, 54:2, 56:16, 56:22, 57:7, 57:11, 59:2, 59:4, 59:8, 59:12, 60:6, 60:10, 61:11, 62:23, 63:8, 67:10, 68:6, 69:16, 69:19, 71:21, 72:21
**Masters'** [1] - 55:18
**material** [22] - 14:22, 16:16,

16:20, 24:20, 24:21, 28:24, 29:18, 33:13, 34:2, 34:4, 39:24, 40:16, 41:17, 51:9, 58:22, 67:19, 68:19, 69:10, 70:9, 70:18, 70:19, 71:24
**materials** [10] - 7:23, 15:10, 21:17, 21:18, 28:5, 41:6, 44:3, 46:22, 54:25
**matter** [9] - 8:19, 10:13, 11:15, 16:11, 18:9, 34:1, 34:9, 34:23, 66:4
**matters** [6] - 7:19, 15:19, 21:11, 35:5, 36:4, 48:17
**MATTHEW** [1] - 3:4
**matthew.stanford@ squirepb.com** [1] - 3:9
**max** [1] - 52:17
**mean** [12] - 8:19, 18:19, 19:21, 28:21, 31:6, 43:10, 47:24, 48:25, 57:2, 67:4, 68:3, 69:6
**meaningless** [1] - 63:19
**means** [2] - 66:17, 70:25
**meet** [2] - 72:13, 73:14
**memo** [1] - 50:12
**mentally** [1] - 49:14
**mention** [2] - 12:9, 28:14
**mentioned** [3] - 38:18, 43:3, 50:17
**menus** [1] - 27:18
**merit** [2] - 16:11, 20:17
**mess** [2] - 31:13, 37:14
**method** [1] - 29:17
**methodology** [1] - 59:19
**Michael** [2] - 34:1, 35:16
**might** [20] - 9:16, 13:1, 13:3, 13:19, 13:22, 14:14, 32:6, 52:13, 59:24, 62:23, 63:6, 64:2, 65:20, 66:12, 71:9, 73:7
**Mill** [1] - 3:5
**million** [2] - 26:24, 31:16
**mind** [3] - 33:23, 56:9, 58:15
**minimum** [2] - 46:19, 63:1
**Minnesota** [1] - 5:9
**minute** [1] - 56:9
**minutes** [18] - 52:17, 52:24, 53:1, 53:15, 53:17, 60:24, 61:16, 65:11, 65:19, 65:20, 66:1, 66:2, 68:8, 72:4, 72:6, 72:7
**missed** [1] - 52:5
**mistake** [1] - 62:7
**moment** [1] - 34:17
**Monday** [1] - 52:13
**money** [1] - 6:5

**month** [1] - 36:24
**months** [1] - 37:11
**moot** [1] - 34:1
**morning** [12] - 4:12, 4:18, 4:19, 4:23, 5:1, 5:2, 5:21, 37:22, 52:10, 66:1, 66:11
**mornings** [1] - 73:4
**most** [9] - 5:8, 8:25, 9:20, 25:12, 26:22, 44:25, 62:21, 67:24, 70:6
**motion** [12] - 12:16, 15:24, 17:21, 21:5, 22:5, 23:2, 23:15, 25:8, 26:13, 33:14, 34:9, 35:15
**motions** [6] - 7:19, 15:12, 24:13, 66:16, 73:8
**motive** [1] - 32:10
**mountain** [2] - 32:8, 33:6
**mountains** [1] - 32:14
**move** [7] - 26:11, 49:10, 50:17, 51:3, 51:16, 53:18, 53:19
**moved** [3] - 37:8, 50:23
**moving** [4] - 26:12, 38:21, 50:2
**MR** [102] - 4:17, 4:23, 5:1, 5:3, 5:6, 5:8, 5:13, 5:18, 5:21, 6:13, 6:17, 13:9, 14:5, 14:8, 14:11, 17:14, 17:16, 17:20, 18:10, 18:17, 18:23, 20:5, 22:12, 25:19, 25:25, 26:10, 26:20, 28:3, 29:1, 29:21, 30:11, 30:25, 31:8, 31:11, 31:13, 32:6, 35:18, 36:8, 36:11, 36:22, 37:18, 37:22, 40:9, 40:12, 40:20, 40:24, 41:12, 42:1, 42:11, 42:15, 43:1, 43:21, 43:25, 44:15, 45:9, 45:14, 46:5, 46:15, 46:19, 47:11, 47:14, 47:19, 49:4, 49:18, 49:21, 49:23, 50:1, 51:3, 51:11, 52:1, 52:5, 52:8, 52:16, 52:20, 54:2, 54:17, 55:17, 56:16, 56:22, 57:7, 57:11, 59:2, 59:4, 59:8, 59:12, 60:6, 60:10, 61:11, 62:18, 62:23, 63:8, 64:17, 67:10, 68:6, 69:13, 69:16, 69:19, 71:11, 71:14, 71:21, 72:21, 73:6
**MS** [2] - 4:11, 20:24
**must** [10] - 31:20, 31:21, 33:6, 54:6, 54:7, 56:7, 67:17, 67:20, 67:24

**N**

**nail** [1] - 52:25

**name** [5] - 5:13, 15:20, 35:17, 56:17, 56:20
**name's** [1] - 5:10
**narrow** [1] - 54:3
**necessarily** [1] - 44:16
**necessary** [1] - 31:2
**neck** [1] - 18:8
**need** [51] - 4:6, 4:14, 6:9, 7:3, 7:16, 14:24, 15:1, 15:24, 16:15, 22:23, 24:1, 24:6, 33:20, 34:24, 35:10, 39:16, 39:21, 41:9, 42:24, 43:19, 44:8, 44:11, 44:24, 46:9, 48:10, 51:15, 52:14, 52:25, 54:8, 55:7, 55:19, 56:4, 60:4, 64:21, 64:22, 65:22, 66:21, 66:23, 67:4, 68:12, 68:15, 68:20, 68:21, 69:10, 70:24, 71:9, 71:19, 72:2, 73:15
**needed** [1] - 38:15
**needs** [4] - 13:23, 66:2, 70:19, 71:10
**nefarious** [1] - 34:20
**negative** [3] - 13:17, 20:8, 23:20
**never** [10] - 9:19, 12:22, 25:17, 32:9, 32:24, 33:3, 51:6, 71:7, 71:8
**new** [2] - 12:16, 38:10
**newspapers** [1] - 27:18
**next** [6] - 7:7, 50:18, 50:21, 57:15, 68:10, 72:4
**nice** [4] - 5:6, 23:22, 42:16, 72:19
**night** [1] - 27:15
**nine** [4] - 39:3, 64:4, 64:6, 65:2
**Nobody** [2] - 23:23, 54:15
**nobody** [3] - 25:13, 32:8, 57:1
**nongeneric** [1] - 53:7
**normal** [2] - 18:1, 19:3
**normally** [1] - 63:23
**North** [3] - 3:12, 27:2, 32:12
**note** [3] - 53:16, 64:2, 69:24
**nothing** [1] - 39:22
**notice** [1] - 50:10
**notified** [1] - 72:8
**notions** [1] - 9:10
**nowadays** [1] - 71:5
**number** [22] - 4:6, 6:24, 10:23, 11:22, 12:17, 17:23, 27:5, 39:6, 44:1, 47:20, 47:22, 48:3, 48:8, 48:14, 49:11, 49:12, 49:13, 50:19, 50:21, 68:2
**Number** [1] - 49:11
**numbered** [2] - 7:8, 50:18

**numbers** [7] - 47:3, 48:11, 48:18, 49:5, 49:6, 53:25

**O**

**o'clock** [4] - 39:3, 64:4, 64:10, 65:2
**object** [1] - 44:3
**objecting** [1] - 43:11
**objection** [17] - 17:13, 43:15, 50:14, 50:16, 53:5, 53:8, 53:9, 53:10, 66:24, 67:2, 67:3, 70:15, 70:17, 70:18
**objections** [3] - 53:6, 70:12, 70:13
**obligated** [1] - 67:3
**obligation** [1] - 54:23
**obligations** [1] - 28:6
**obtain** [1] - 29:15
**obviously** [15] - 10:9, 17:11, 23:5, 25:12, 26:16, 27:6, 28:21, 31:3, 32:6, 38:16, 38:24, 56:24, 58:6, 66:3, 70:1
**occasionally** [1] - 12:22
**odd** [1] - 8:18
**odds** [1] - 11:7
**offering** [3] - 17:8, 24:14, 35:20
**office** [6] - 7:16, 27:14, 27:15, 29:4, 29:7, 38:24
**officer** [2] - 60:22, 60:23
**often** [4] - 8:10, 45:11, 63:5, 68:5
**once** [2] - 38:19, 66:1
**one** [33] - 11:2, 12:24, 15:14, 16:1, 17:23, 23:2, 24:7, 25:21, 25:22, 26:17, 30:12, 33:15, 37:7, 37:15, 41:15, 42:15, 47:8, 47:10, 48:3, 52:25, 57:24, 58:1, 58:14, 60:6, 62:11, 63:14, 66:10, 67:10, 68:10, 69:19, 71:14, 72:5
**One** [1] - 9:3
**open** [7] - 16:11, 42:25, 44:14, 52:19, 53:2, 64:16
**opening** [9] - 15:16, 41:7, 41:10, 41:13, 44:16, 52:10, 52:13, 52:15, 53:17
**opens** [1] - 64:20
**operating** [1] - 60:22
**operations** [1] - 13:19
**opinions** [2] - 13:17, 35:7
**opponent** [1] - 27:6
**opponents'** [1] - 19:22
**opportunity** [8] - 12:19,

14:25, 21:1, 36:25, 37:10, 37:23, 39:12, 58:1
**oppose** [1] - 14:17
**opposed** [2] - 48:1, 48:17
**opposite** [6] - 18:4, 19:2, 20:16, 54:7, 55:4, 56:2
**opposition** [1] - 23:16
**oppressive** [1] - 27:1
**optional** [1] - 55:7
**orange** [2] - 69:4, 70:11
**order** [19] - 6:9, 6:19, 15:23, 21:9, 21:17, 24:9, 31:2, 33:12, 33:21, 35:5, 38:4, 39:6, 58:1, 61:6, 61:18, 62:1, 62:2, 68:12, 68:18
**ordered** [1] - 32:19
**orderly** [2] - 35:6, 36:1
**orders** [2] - 7:21, 73:7
**original** [1] - 38:12
**originally** [1] - 14:12
**Originally** [1] - 5:12
**otherwise** [1] - 36:4
**outset** [1] - 7:3
**overall** [1] - 28:11
**overkill** [1] - 32:10
**own** [3] - 12:5, 58:21, 65:15

**P**

**PA** [1] - 3:12
**page** [1] - 70:14
**Page** [1] - 3:5
**Palo** [1] - 3:6
**panel** [2] - 19:19, 61:6
**paper** [5] - 27:16, 27:18, 29:5, 29:6, 51:9
**papers** [1] - 17:19
**paragraphs** [1] - 35:8
**part** [8] - 5:12, 23:5, 24:19, 29:25, 30:16, 31:22, 38:14, 57:21
**participate** [1] - 7:5
**particular** [2] - 16:12, 68:23
**parties** [5] - 14:12, 55:20, 68:3, 71:18, 72:8
**partly** [2] - 23:3, 28:20
**partners** [1] - 72:23
**party** [15] - 10:8, 10:15, 11:6, 16:21, 21:6, 23:4, 24:2, 24:3, 26:23, 58:19, 62:20, 63:14, 63:17, 63:23, 70:8
**party's** [2] - 21:9, 70:9
**past** [3] - 55:14, 64:7, 66:9
**patent** [3] - 42:15, 42:17, 45:10
**Patton** [1] - 3:5
**penalty** [2] - 58:18
**people** [12] - 8:17, 8:22,

9:17, 9:21, 10:23, 11:14, 11:17, 20:11, 40:7, 61:7, 65:4, 65:9

**per** [1] - 51:21

**percent** [2] - 46:6, 51:5

**perhaps** [2] - 44:8, 67:11

**period** [6] - 53:1, 53:9, 60:19, 65:16, 65:18, 66:14

**permissible** [1] - 21:9

**permission** [4] - 21:6, 21:16, 21:18, 54:7

**person** [12] - 10:7, 11:4, 15:22, 26:14, 45:1, 50:25, 53:8, 53:9, 54:6, 54:9, 54:24, 58:3

**person's** [1] - 7:8

**personal** [1] - 32:3

**philosophy** [1] - 71:15

**physical** [3] - 27:13, 43:12, 46:1

**physically** [1] - 11:18

**pick** [2] - 10:11, 10:19

**picked** [2] - 29:5, 29:7

**piece** [6] - 27:16, 28:1, 29:5, 46:17, 51:8, 71:8

**pieces** [2] - 27:17, 29:6

**piling** [2] - 31:18, 32:1

**place** [3] - 7:8, 65:7, 68:12

**plaintiff** [13] - 5:20, 11:6, 18:23, 22:15, 24:14, 25:16, 33:16, 57:23, 58:20, 63:5, 68:24, 69:8, 70:3

**plaintiff's** [7] - 25:9, 34:17, 48:6, 51:24, 53:23, 54:10, 54:22

**Plaintiff's** [3] - 17:7, 23:1, 23:8

**plaintiffs** [2] - 20:7, 53:20

**plan** [5] - 24:19, 40:14, 40:25, 41:14, 53:2

**plans** [1] - 65:22

**played** [1] - 71:16

**pleading** [1] - 32:14

**plotted** [2] - 52:7, 52:8

**plus** [2] - 6:8, 26:23

**point** [20] - 11:1, 16:25, 17:1, 21:8, 21:14, 22:3, 22:13, 24:7, 26:2, 26:3, 33:13, 34:18, 35:14, 54:20, 54:22, 58:12, 70:17, 72:11

**points** [1] - 63:25

**portion** [1] - 66:14

**portions** [1] - 68:23

**position** [5] - 24:24, 33:16, 40:8, 41:8, 65:7

**positive** [1] - 13:17

**possible** [2] - 52:13, 62:25

**possibly** [1] - 26:1

**pot** [1] - 31:15

**potential** [2] - 9:15, 65:18

**potentially** [1] - 21:10

**pound** [1] - 24:21

**practical** [1] - 17:1

**practice** [4] - 20:11, 26:25, 47:15, 67:12

**practices** [4] - 6:2, 17:10, 18:22, 32:12

**Practices** [1] - 32:22

**precious** [1] - 51:15

**preclude** [5] - 17:8, 25:8, 34:8, 35:7, 35:16

**precluding** [1] - 24:14

**preconceived** [1] - 9:10

**predisposed** [1] - 40:8

**predisposition** [2] - 12:20, 12:24

**preference** [3] - 44:22, 50:2, 50:5

**prejudice** [7] - 8:8, 8:20, 9:4, 9:13, 9:18, 9:21, 14:14

**prejudiced** [1] - 9:10

**prejudicial** [3] - 19:18, 20:13, 32:10

**preliminary** [2] - 15:6, 39:17

**prepare** [2] - 22:23, 31:5

**prepared** [6] - 39:16, 39:17, 49:14, 57:2, 64:12, 68:3

**Present** [1] - 3:15

**present** [9] - 27:25, 28:1, 28:19, 51:22, 54:24, 55:9, 60:11, 60:13, 61:9

**presentation** [2] - 63:23, 72:15

**presented** [5] - 17:18, 35:8, 61:20, 63:10, 69:12

**presenting** [1] - 57:21

**preserve** [1] - 45:25

**pressing** [1] - 31:8

**pretrial** [4] - 4:6, 39:6, 61:18, 62:1

**pretty** [7] - 27:3, 30:5, 38:17, 51:2, 53:1, 71:6, 73:10

**previous** [1] - 48:7

**previously** [3] - 48:12, 48:15, 49:12

**primarily** [1] - 20:19

**printed** [1] - 68:21

**probative** [2] - 19:19, 20:13

**problem** [18] - 6:11, 8:6, 17:20, 19:8, 19:17, 20:3, 22:16, 23:13, 35:2, 39:15, 41:7, 43:6, 45:22, 46:21, 49:15, 49:22, 55:10, 68:4

**problems** [6] - 17:12, 19:9,

19:10, 33:12, 34:25, 64:21

**proceed** [5] - 7:9, 7:15, 7:17, 7:18, 56:12

**proceedings** [1] - 22:3

**process** [7] - 8:9, 12:6, 36:1, 36:18, 58:19, 60:17, 72:17

**produce** [1] - 16:22

**produced** [1] - 37:2

**productions** [1] - 37:25

**professional** [1] - 72:22

**progressed** [1] - 64:7

**prohibits** [1] - 22:14

**project** [2] - 71:2, 73:13

**promise** [1] - 73:13

**promising** [1] - 73:13

**promptly** [2] - 62:1, 70:25

**pronounce** [1] - 35:17

**proof** [4] - 62:20, 63:5, 63:18, 63:24

**proper** [1] - 34:12

**properly** [2] - 25:2, 35:1

**proposed** [4] - 14:12, 25:9, 39:6, 51:14

**propriet** [1] - 32:15

**proprietary** [1] - 32:16

**prove** [3] - 30:8, 30:9, 33:5

**provide** [1] - 28:17

**provided** [1] - 39:18

**providing** [1] - 61:19

**PTX** [2] - 47:22, 49:5

**PTX1** [1] - 47:16

**punish** [1] - 33:7

**punitive** [1] - 35:25

**pure** [1] - 43:8

**purpose** [1] - 16:8

**purposes** [3] - 25:21, 44:7, 44:10

**push** [1] - 21:25

**pushing** [1] - 32:7

**put** [8] - 26:18, 39:8, 40:7, 52:24, 53:14, 58:2, 60:18, 69:5

**putting** [1] - 54:14

## Q

**Qorvo** [10] - 4:21, 5:20, 14:11, 21:4, 23:19, 30:15, 31:14, 31:23, 32:16, 55:19

**Qorvo's** [3] - 17:9, 23:3, 34:9

**qualifies** [1] - 27:1

**questioning** [1] - 60:25

**questions** [19] - 11:22, 12:11, 12:14, 12:17, 13:12, 13:13, 43:2, 57:25, 58:3, 58:12, 58:14, 58:15, 59:22,

60:3, 60:7, 60:8, 63:19

**quickly** [9] - 5:19, 8:25, 36:8, 36:11, 37:8, 39:5, 54:5, 68:25, 70:20

**quite** [7] - 13:5, 13:25, 14:22, 19:2, 45:11, 69:23, 71:8

**quote** [3] - 10:24, 11:8, 58:21

## R

**RACHAEL** [1] - 3:4

rachel.harris@squirepb.com [1] - 3:10

**raise** [1] - 67:17

**raised** [1] - 53:10

**raises** [3] - 35:1, 53:8, 54:4

**range** [1] - 65:21

**rather** [3] - 30:21, 59:16, 67:4

**read** [1] - 72:2

**readily** [2] - 62:6, 70:5

**reading** [1] - 71:24

**ready** [3] - 57:3, 65:8, 67:9

**really** [34] - 8:9, 8:19, 9:2, 9:18, 10:13, 11:13, 12:20, 13:3, 13:14, 14:24, 15:1, 19:25, 20:18, 24:15, 25:17, 31:21, 31:24, 37:8, 38:10, 38:14, 44:11, 44:12, 50:24, 53:11, 54:17, 55:7, 63:15, 63:19, 66:10, 66:12, 70:24, 72:12, 72:13

**reason** [7] - 20:9, 27:19, 33:10, 35:13, 47:6, 59:15, 60:21

**reasons** [3] - 6:24, 11:17, 35:11

**rebuttal** [2] - 36:23, 57:25

**receive** [4] - 7:23, 33:11, 45:6, 50:18

**received** [10] - 25:2, 25:12, 25:14, 40:18, 41:25, 43:23, 44:10, 46:24, 47:1, 50:9

**recently** [1] - 5:11

**recognize** [1] - 50:7

**recognizes** [1] - 51:4

**recognizing** [1] - 47:25

**reconsider** [1] - 22:3

**record** [11] - 43:19, 43:24, 44:3, 45:22, 45:24, 45:25, 46:10, 46:19, 49:24, 50:3, 51:3

**reduce** [1] - 65:16

**reduced** [2] - 62:15, 65:19

**refer** [5] - 28:15, 48:9, 48:10, 48:21

**reference** [7] - 8:13, 17:8, 24:8, 44:2, 49:6, 66:21, 66:23
**referenced** [1] - 46:10
**references** [1] - 23:8
**referring** [1] - 28:24
**refining** [1] - 24:11
**reflect** [1] - 45:22
**reflected** [1] - 70:19
**reformatting** [1] - 34:11
**regard** [3] - 15:11, 55:8, 68:21
**regarding** [8] - 17:9, 17:24, 19:4, 23:9, 32:10, 32:17, 34:8, 37:20
**regards** [2] - 17:23, 20:14
**regret** [2] - 39:2, 63:19
**relate** [3] - 19:10, 24:16, 24:17
**related** [1] - 49:19
**relates** [1] - 34:5
**relationship** [1] - 55:21
**relatively** [2] - 39:4, 70:20
**relatives** [1] - 5:5
**relevance** [2] - 24:17, 33:17
**relevant** [11] - 8:21, 20:13, 25:2, 27:3, 27:5, 27:20, 32:11, 32:22, 34:18, 45:2
**relied** [1] - 36:19
**relief** [1] - 37:12
**relies** [1] - 32:25
**rely** [2] - 32:14, 55:5
**remains** [1] - 41:2
**remember** [2] - 9:25, 11:14
**remove** [1] - 14:16
**repeat** [1] - 8:14
**reply** [2] - 21:7, 21:13
**report** [12] - 28:12, 35:9, 36:12, 36:14, 36:23, 36:24, 36:25, 37:6, 37:7, 38:1, 38:2, 38:12
**REPORTER** [1] - 56:20
**reporter** [3] - 66:5, 66:6, 66:10
**reporters** [1] - 66:8
**representative** [2] - 10:21, 57:8
**representatives** [2] - 67:22, 68:5
**representing** [1] - 11:5
**requirements** [1] - 72:14
**reserve** [3] - 22:21, 33:23, 54:25
**resolve** [1] - 15:19
**resolving** [1] - 66:12
**respect** [4] - 42:22, 55:22
**respond** [5] - 13:24, 14:2, 14:3, 20:25, 37:19

**responded** [1] - 37:4
**response** [3] - 16:4, 16:23, 37:16
**rest** [2] - 11:21, 60:15
**restroom** [1] - 66:3
**revealed** [1] - 32:9
**revenue** [1] - 23:20
**review** [3] - 25:6, 32:25, 33:1
**reviewed** [3] - 31:19, 32:24, 62:12
**reviewing** [1] - 48:16
**rgolden@bayardlaw.com** [1] - 3:14
**right-hand** [1] - 70:13
**road** [2] - 53:11, 53:12
**Road** [1] - 3:5
**rob** [1] - 5:19
**Robert** [1] - 57:9
**role** [1] - 15:4
**RONALD** [2] - 3:2, 3:11
**ronald.lemieux@ squirepb.com** [1] - 3:7
**room** [2] - 7:4, 45:17
**route** [1] - 26:22
**routine** [2] - 59:22, 60:25
**rule** [3] - 13:5, 60:17, 70:17
**Rule** [2] - 19:11, 59:1
**ruled** [2] - 22:8, 23:25
**rules** [12] - 17:13, 20:19, 21:20, 23:14, 25:6, 33:19, 35:4, 38:5, 45:15, 66:21, 66:22, 66:24
**ruling** [2] - 17:17, 22:21
**run** [4] - 15:13, 24:15, 61:15, 64:5
**running** [1] - 24:16

## S

**sanctions** [1] - 34:9
**satisfactory** [1] - 16:23
**save** [2] - 6:3, 58:2
**saves** [2] - 57:3, 57:4
**saw** [1] - 47:18
**schedule** [3] - 38:16, 38:20, 66:4
**scheduling** [1] - 38:4
**scheme** [3] - 24:19, 25:2, 30:13
**school** [1] - 35:3
**scientist** [1] - 30:15
**scope** [4] - 26:22, 27:19, 28:12, 59:9
**screen** [3] - 5:17, 12:1, 12:3
**seal** [1] - 67:21
**sealed** [1] - 67:18
**sealing** [1] - 67:12

**seat** [2] - 40:2, 40:3
**Seats** [1] - 10:3
**second** [6] - 56:25, 57:5, 57:8, 57:11, 57:17, 68:8
**seconds** [2] - 20:25, 22:13
**secret** [5] - 27:4, 27:5, 28:14, 28:25, 29:23, 32:23, 42:20, 67:13, 67:18
**secrets** [11] - 24:15, 25:3, 27:7, 27:10, 27:23, 29:25, 30:1, 30:3, 30:9, 31:18, 33:6
**see** [26] - 4:12, 5:17, 12:3, 14:2, 14:7, 14:14, 14:21, 16:6, 16:11, 16:14, 20:22, 26:4, 30:24, 33:3, 37:5, 37:21, 41:9, 41:23, 41:24, 44:6, 44:11, 45:20, 47:22, 61:10, 64:24, 68:25
**seeing** [1] - 73:15
**seek** [1] - 32:20
**seeking** [1] - 29:14
**seeks** [4] - 23:19, 31:14, 34:8, 35:7
**seem** [1] - 72:18
**selected** [1] - 15:15
**selection** [2] - 39:3, 40:1
**send** [3] - 43:10, 68:11, 69:23
**sense** [6] - 6:6, 25:5, 45:2, 45:3, 51:2, 55:13
**sensitive** [3] - 14:19, 30:6, 65:3
**sent** [4] - 27:14, 29:6, 70:22
**sentiment** [1] - 55:24
**sentimentally** [1] - 21:7
**separately** [1] - 54:11
**sequence** [1] - 36:3
**sequential** [5] - 47:20, 47:22, 48:6, 49:5, 50:21
**sequentially** [2] - 46:16, 47:1
**series** [2] - 20:19, 66:22
**serve** [2] - 9:1, 37:3
**served** [3] - 36:14, 36:16, 38:5
**serves** [1] - 8:21
**set** [6] - 6:19, 38:4, 38:17, 54:12, 67:8, 67:9
**seven** [3] - 51:19, 51:20
**several** [4] - 12:13, 15:25, 17:12, 68:13
**Shanfield** [10] - 28:13, 31:19, 32:23, 33:1, 35:9, 36:11, 36:23, 37:10, 38:1, 38:11
**Shanfield's** [2] - 37:7, 38:6
**shape** [2] - 15:11, 39:19
**shaving** [1] - 62:24

**Shealy** [4] - 26:5, 60:7, 60:14, 61:9
**shock** [2] - 31:22, 31:25
**shoehorn** [1] - 38:3
**short** [3] - 28:3, 40:24, 68:12
**shortcut** [1] - 67:1
**shorten** [1] - 8:7
**shorter** [1] - 62:21
**show** [14] - 17:25, 18:4, 18:14, 20:10, 24:19, 25:2, 30:17, 34:18, 34:21, 41:17, 41:20, 42:16, 42:21, 50:8
**showing** [1] - 50:5
**shown** [4] - 43:18, 43:19, 44:22, 45:5
**shows** [4] - 30:23, 36:17, 40:17, 45:24
**side** [10] - 15:1, 28:14, 29:10, 36:14, 53:4, 54:2, 54:10, 55:5, 67:4
**side-bar** [2] - 15:1, 67:4
**sides** [3] - 39:13, 48:21, 72:12
**signing** [1] - 7:17
**simply** [10] - 19:18, 19:23, 20:10, 22:12, 23:12, 25:5, 33:5, 35:11, 38:2, 38:9
**sit** [2] - 7:4, 7:5
**situation** [11] - 13:15, 15:13, 15:22, 17:6, 18:6, 35:12, 38:14, 41:19, 45:5, 59:19, 72:19
**situations** [1] - 68:2
**six** [1] - 66:9
**size** [1] - 23:20
**skip** [1] - 14:21
**slapped** [1] - 47:20
**small** [2] - 8:5
**smile** [1] - 63:21
**SMITH** [1] - 3:2
**snowball** [1] - 31:23
**Socratic** [1] - 12:5
**someone** [12] - 7:5, 7:6, 7:13, 8:4, 9:1, 10:12, 10:19, 11:18, 27:14, 29:4, 29:6
**sometime** [1] - 64:19
**Sometimes** [1] - 66:14
**sometimes** [11] - 8:11, 10:12, 13:24, 14:9, 22:9, 22:19, 34:23, 39:2, 41:23, 61:5
**somewhere** [1] - 71:23
**soon** [1] - 70:22
**Sorry** [1] - 54:18
**sorry** [5] - 5:19, 17:16, 27:21, 31:10, 52:5
**sort** [9] - 6:22, 20:8, 38:3,

44:13, 48:17, 50:9, 56:11, 57:12, 70:16
**sorts** [1] - 69:5
**sought** [1] - 37:12
**sound** [1] - 54:1
**sounded** [2] - 26:14, 53:16
**sounds** [3] - 52:10, 54:2, 70:23
**source** [1] - 26:1
**span** [1] - 53:13
**speakers** [1] - 5:17
**speaking** [5] - 43:8, 53:6, 53:7, 61:17, 66:16
**speaks** [1] - 32:11
**special** [1] - 15:7
**specific** [3] - 16:8, 23:11, 23:12
**specifically** [2] - 28:17, 42:3
**speculate** [2] - 31:20, 32:2
**speech** [1] - 66:19
**spend** [1] - 6:5
**Squire** [1] - 3:5
**stack** [1] - 46:23
**staff** [4] - 38:23, 64:24, 68:4, 72:3
**stand** [7] - 28:10, 45:1, 50:5, 60:18, 60:21, 61:3, 61:19
**standard** [1] - 6:22
**standing** [2] - 24:3, 66:17
**STANFORD** [2] - 3:4, 37:22
**Stanford** [1] - 37:19
**start** [21] - 8:8, 8:24, 10:5, 10:17, 24:15, 24:16, 38:19, 39:3, 39:9, 40:15, 48:3, 58:12, 61:4, 64:3, 64:6, 64:11, 64:12, 64:19, 64:25, 65:10, 68:24
**started** [1] - 15:15
**starting** [1] - 39:1
**state** [3] - 12:22, 56:20, 67:3
**statement** [4] - 15:16, 41:7, 41:10, 41:13
**statements** [1] - 55:23
**stay** [3] - 66:6, 66:9, 67:24
**steal** [1] - 25:3
**steals** [1] - 26:23
**step** [1] - 61:1
**Steven** [1] - 56:18
**still** [8] - 4:15, 15:8, 37:13, 41:2, 43:24, 51:21, 52:19, 64:1
**stipulated** [3] - 39:20, 39:21, 62:12
**story** [1] - 29:25
**strategy** [1] - 31:22

**Street** [1] - 3:12
**strenuous** [1] - 23:16
**strike** [1] - 14:18
**strong** [1] - 13:17
**stuff** [5] - 28:7, 31:25, 32:3, 32:24, 33:6
**subject** [4] - 21:5, 21:11, 28:24, 34:8
**submission** [1] - 21:14
**submit** [1] - 69:10
**submittals** [2] - 35:1, 35:2
**submitted** [2] - 35:2, 71:10
**submitting** [4] - 25:19, 26:8, 66:9, 70:8
**subpoena** [1] - 56:3
**substantive** [3] - 45:16, 50:10, 61:19
**succinctly** [1] - 63:25
**sufficient** [3] - 11:12, 16:17, 34:4
**suggested** [1] - 56:11
**suggests** [1] - 21:8
**Suite** [2] - 3:6, 3:12
**summary** [3] - 7:21, 28:20, 73:8
**summary-type** [1] - 28:20
**sun** [1] - 8:1
**supplement** [1] - 32:9
**supplemental** [2] - 35:9, 36:12
**supplemented** [1] - 37:7
**suppose** [2] - 6:15, 67:6
**surely** [1] - 13:5
**switch** [2] - 58:10, 58:23
**switching** [1] - 58:11
**switchover** [1] - 58:5

## T

**takeout** [1] - 27:18
**talks** [1] - 15:14
**taught** [1] - 53:3
**team** [2] - 66:7, 66:8
**technology** [5] - 41:1, 42:2, 42:3, 42:6, 45:10
**television** [1] - 9:5
**temptation** [1] - 13:1
**ten** [3] - 6:23, 60:24, 65:11
**tend** [1] - 36:4
**tendency** [1] - 12:23
**term** [1] - 53:7
**terms** [1] - 6:5, 8:20, 16:6, 20:11, 22:23, 44:13, 50:2, 52:21, 61:6, 63:9, 66:12
**testified** [2] - 18:1, 60:1
**testify** [3] - 16:13, 31:15, 54:24
**testifying** [2] - 15:22, 54:24

**testimony** [15] - 11:20, 16:22, 22:4, 35:20, 41:3, 43:9, 43:14, 58:6, 60:20, 61:9, 61:19, 61:20, 62:11, 67:20, 71:16
**THE** [107] - 4:5, 4:13, 4:19, 4:24, 5:2, 5:4, 5:7, 5:10, 5:15, 5:22, 6:15, 6:18, 13:11, 14:6, 14:9, 14:18, 17:15, 17:18, 18:6, 18:14, 18:20, 19:6, 20:15, 21:19, 22:19, 25:24, 26:7, 26:17, 27:22, 28:20, 29:17, 30:5, 30:19, 31:4, 31:10, 31:12, 32:5, 33:9, 35:19, 36:10, 36:20, 37:16, 37:21, 38:13, 40:10, 40:13, 40:22, 41:5, 41:16, 42:7, 42:14, 42:24, 43:16, 43:22, 44:5, 44:21, 45:13, 46:4, 46:6, 46:18, 46:20, 47:12, 47:18, 47:24, 49:9, 49:20, 49:22, 49:25, 50:4, 51:5, 51:12, 52:3, 52:6, 52:12, 52:18, 52:22, 54:4, 54:19, 55:25, 56:19, 56:20, 56:23, 57:10, 57:12, 59:3, 59:7, 59:11, 59:14, 60:9, 60:16, 61:13, 62:22, 63:3, 63:13, 64:18, 67:15, 68:7, 69:15, 69:18, 69:21, 71:13, 71:19, 71:23, 72:7, 72:9, 72:24, 73:9
**theft** [1] - 26:22
**theirs** [1] - 69:10
**themselves** [1] - 42:18
**theory** [1] - 16:7
**therefore** [2] - 10:11, 45:17
**they've** [5] - 9:4, 12:6, 24:10, 55:15, 60:1
**thinking** [1] - 10:18
**third** [2] - 16:25, 23:4
**third-party** [1] - 23:4
**Thirty** [1] - 53:1
**thoughtful** [1] - 9:8
**thousand** [1] - 10:10
**thousands** [1] - 37:2
**three** [4] - 15:18, 39:7, 51:1, 61:3
**thrilled** [2] - 16:4, 17:4
**Thursday** [1] - 70:25
**timed** [2] - 52:3, 52:6
**tiny** [2] - 11:2, 71:8
**today** [4] - 4:20, 5:20, 22:1, 35:22
**together** [2] - 53:22, 70:10
**took** [2] - 33:5, 53:22
**top** [1] - 47:21
**totally** [1] - 32:25
**trade** [4] - 17:10, 18:21,

24:14, 25:3, 26:25, 27:4, 27:5, 27:7, 27:10, 27:23, 28:13, 28:25, 29:23, 29:25, 30:1, 30:3, 30:9, 31:18, 32:12, 32:23, 33:5, 42:20, 67:13, 67:18
**Trade** [1] - 32:22
**transcript** [3] - 26:3, 26:5, 26:9
**transcripts** [1] - 25:20
**transition** [1] - 49:5
**travel** [1] - 38:8
**traveling** [1] - 7:7
**tremendously** [1] - 42:5
**trial** [12] - 12:16, 22:23, 25:9, 35:20, 37:12, 37:14, 39:4, 48:21, 48:22, 51:13, 64:8, 73:2
**tried** [2] - 54:25, 62:25
**trimming** [1] - 36:18
**truck** [1] - 10:17
**true** [2] - 11:12, 46:2
**try** [8] - 20:7, 21:15, 44:17, 60:17, 62:24, 65:10, 66:15, 69:1
**trying** [16] - 12:3, 20:22, 30:8, 30:9, 31:25, 35:22, 38:3, 45:10, 48:17, 49:1, 59:15, 59:23, 60:11, 64:14, 67:16, 68:9
**Trying** [1] - 49:7
**Tuesday** [1] - 52:10
**two** [14] - 4:20, 6:21, 9:3, 11:2, 14:22, 25:11, 25:21, 34:11, 34:25, 36:9, 51:21, 68:8, 68:22
**type** [10] - 18:4, 19:3, 21:12, 28:20, 43:11, 43:14, 44:18, 45:11, 45:15, 45:21
**types** [3] - 43:6, 44:3, 45:18
**typically** [6] - 16:9, 23:14, 50:19, 64:20, 65:1, 65:8, 65:24, 66:9, 68:24
**typographical** [1] - 62:7

## U

**ultimately** [2] - 40:18, 41:21
**unclean** [1] - 21:12
**uncomfortable** [1] - 10:25
**unconstitutional** [1] - 10:2
**uncontested** [1] - 49:17
**undecided** [1] - 43:1
**under** [6] - 8:1, 17:12, 25:5, 27:2, 32:12, 71:14
**understandable** [4] - 48:1, 48:23, 48:24, 61:5
**understatement** [1] - 42:11

**understood** [1] - 26:7
**undoubtedly** [1] - 44:23
**unethical** [1] - 27:1
**unfair** [11] - 17:9, 18:11, 18:12, 18:20, 18:21, 20:14, 26:21, 26:24, 32:12, 32:21, 54:14
**unforeseen** [1] - 38:8
**unless** [7] - 6:4, 7:15, 40:4, 44:24, 63:18, 66:7, 66:8
**unprepared** [1] - 57:1
**unreasonable** [1] - 7:14
**unrelated** [1] - 18:3
**unscrupulous** [1] - 27:2
**unusual** [1] - 40:4
**unusually** [1] - 66:7
**up** [20] - 6:19, 9:20, 14:25, 15:17, 16:16, 17:22, 19:15, 22:6, 22:10, 29:5, 29:7, 45:24, 48:7, 51:20, 63:4, 66:13, 66:17, 71:9
**uploaded** [1] - 30:16
**useful** [5] - 7:24, 7:25, 15:13, 25:4, 43:13
**Utah** [1] - 58:24

**V**

**various** [2] - 15:12, 35:11
**verdict** [1] - 15:7
**VICTORIA** [1] - 3:2
**victoria.smith@squirepb. com** [1] - 3:8
**view** [7] - 17:1, 26:25, 29:21, 47:2, 54:22
**visit** [1] - 5:4
**voir** [5] - 7:23, 8:9, 13:7, 13:15, 52:23
**volunteering** [1] - 54:16

**W**

**wait** [3] - 26:4, 59:25, 68:8
**waived** [1] - 68:1
**wants** [4] - 14:2, 18:23, 20:22, 21:4
**watching** [3] - 9:5, 42:8, 63:21
**ways** [3] - 10:18, 15:25, 61:8
**website** [1] - 8:13
**Wednesday** [2] - 71:1, 73:9
**weeks** [1] - 38:3
**whichever** [2] - 55:4, 70:14
**whole** [8] - 11:21, 24:20, 24:21, 46:23, 53:21, 54:12, 66:19, 71:6

**willful** [1] - 28:7
**willing** [1] - 19:16
**Wilmington** [3] - 3:13, 50:23, 73:16
**winters** [4] - 59:6, 59:21, 60:6, 60:14
**Wisconsin** [1] - 5:9
**witness** [30] - 50:5, 50:11, 51:4, 51:6, 53:19, 54:23, 55:5, 55:6, 56:14, 56:15, 56:17, 56:24, 56:25, 57:3, 57:5, 57:9, 57:11, 57:15, 57:16, 57:17, 58:17, 58:21, 59:25, 60:18, 60:20, 61:18, 70:2, 71:14
**witnesses** [17] - 11:16, 41:15, 44:17, 44:20, 45:12, 49:2, 53:21, 53:22, 53:23, 55:19, 55:23, 57:17, 57:22, 58:19, 60:15, 62:9
**wonder** [1] - 17:16
**wondered** [1] - 5:22
**works** [9] - 16:7, 41:21, 48:18, 48:19, 51:1, 55:3, 64:4, 65:12, 70:14
**worry** [2] - 46:7, 72:1
**wrapping** [1] - 30:12
**Wright** [1] - 3:15
**write** [3] - 16:16, 19:15, 26:17
**wrongful** [2] - 18:3, 21:10
**wrote** [1] - 38:1

**X**

**XIAOMEI** [1] - 3:3
**xiaomei.cai@squirepb. com** [1] - 3:9

**Y**

**y'all** [1] - 70:9
**yellow** [2] - 68:24, 70:5

UNREDACTED TRANSCRIPT