IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **PUBLIC VERSION** |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | ███████████████ |
| AKOUSTIS, INC., | ) | |
| | ) | **Confidential Version Filed: April 8, 2024** |
| Defendants. | ) | **Public Version Filed: April 22, 2024** |

## [PROPOSED] FINAL PRETRIAL ORDER

On April 19, 2024, the Court will hold a pretrial conference pursuant to Federal Rule of

Civil Procedure 16 in C.A. No. 21-1417 (JPM).  Trial will begin May 6, 2024.  The parties submit

for the Court's approval this proposed Final Pretrial Order governing the trial pursuant to District

of Delaware Local Rule 16.3 and the Court's Scheduling Orders.

Plaintiff Qorvo, Inc. ("Qorvo") is represented by:

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Zachary Alper
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

Kazim A. Naqvi
Sheppard, Mullin, Richter
    & Hampton LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Roy D. Jung
Sheppard, Mullin, Richter
    & Hampton LLP
30 Rockefeller Plaza
New York,  NY 10112-0015
(212) 653-8700

Defendants Akoustis Technologies, Inc. and Akoustis, Inc. ("Akoustis") are represented by:

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
Bayard, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayard.com

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
(650) 856-6500

Rachael A. Harris
Matthew A. Stanford
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

I.      NATURE OF THE CASE

Qorvo asserts the following claims against Akoustis: (1) infringement of U.S. Patent No. 7,522,018 (the "'018 patent") (Count I); (2) infringement of U.S. Patent No. 9,735,755 (the "'755 patent") (Count II); (3) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count III); (4) unfair and deceptive trade practices in violation of North Carolina General Statute § 75-1 (Count V); (5) misappropriation of trade secrets in violation of the Defense of Trade Secrets Act, 18 U.S.C. § 1832 *et seq.* (Count VI); (6) misappropriation of trade secrets in violation of the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152 *et seq.* (Count VIII); and (7) civil conspiracy in violation of North Carolina law (Count IX).[1] The operative pleadings are Qorvo's Second Amended Complaint (D.I. 125) and Akoustis' Answer to Qorvo's Second Amended Complaint (D.I. 158).

A.      Qorvo's Claims

1.      Patent Infringement (Counts I and II)

Qorvo alleges that Akoustis has directly and indirectly infringed claims 1 and 12 of the '018 patent and claims 9 and 10 of the '755 patent by making, using, selling, or offering for sale the following bulk acoustic wave ("BAW") filter products: A10149, A10154, A10155, A10156, A10158, A10160, A10165, A10166, A10235, A10238, A10249, A101252, A10256, A10266, A10335, AKF-1252, AKF-1256, AKF-1336, and AKF-1938 (collectively, "the Accused Products").

---

[1] Qorvo also pled claims for false patent marking (Count IV) and violation of the Racketeer Influenced Corrupt Organizations Act (Count VII). Qorvo has stated that it will not pursue those claims at trial. Akoustis' motion for summary judgment on those claims remains pending.

### 2.      False Advertising (Count III)

Qorvo alleges Akoustis has engaged in False Advertising under 15 U.S.C. § 1125(a) in its descriptions of its BAW filters.  More specifically, Qorvo alleges that Akoustis falsely advertised its BAW filters as using "single crystal" technology that has superior performance compared to polycrystalline BAW filters, such as those that Qorvo sells.

### 3.      Unfair and Deceptive Trade Practices (Count V)

Qorvo further alleges that Akoustis engaged in unfair and deceptive trade practices prohibited by NC. Gen. Stat. § 75-1 by (1) making false statements that Akoustis's BAW filters use "single crystal" technology that has superior performance compared to polycrystalline BAW filters; (2) systematically recruiting large numbers of current and former Qorvo employees as part of a scheme to obtain Qorvo's confidential information; (3) misusing Qorvo's confidential information; and (4) misappropriating Qorvo's trade secrets.

### 4.      Misappropriation of Trade Secrets (Counts VI and VIII)

Qorvo further alleges that Akoustis has engaged in the misappropriation of trade secrets in violation of the Defense of Trade Secrets Act ("DTSA," 18 U.S.C. § 1832 *et seq.*) and the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat. § 66-152 *et seq.*) by acquiring Qorvo's trade secrets through improper means and using those trade secrets without consent to accelerate Akoustis's business and gain a head start in entering the market.

### 5.      Civil Conspiracy (Count IX)

Qorvo further alleges Akoustis has engaged in civil conspiracy under North Carolina law to violate the North Carolina Trade Secrets Protection Act.

### 6.      Alleged Damages

Qorvo seeks damages to compensate for Akoustis's patent infringement, false advertising, misappropriation of trade secrets, unfair and deceptive trade practices, and civil conspiracy.  Qorvo

also seeks prejudgment and post-judgment interest and costs, attorneys' fees, and enhanced damages to the full extent permitted by the law applicable to each of Qorvo's claims. Qorvo also seeks an injunction preventing Akoustis from further infringing the patents-in-suit, from further falsely advertising the properties of its BAW filters, from further misuse of Qorvo's trade secrets, and from further use of unfair and deceptive trade practices. Qorvo also seeks punitive damages.

### B.   Akoustis' Defenses

While Akoustis asserts a number of defenses, its primary ones for purposes of trial are:

o   Qorvo's failure to state a claim;

o   The asserted claims of the patents-in-suit are not valid;

o   Akoustis' accused products do not infringe the two patents-in-suit;

o   Qorvo's trade secret claims under the DTSA and North Carolina law, and its unfair and deceptive trade practices claim under North Carolina law are barred by the applicable statutes of limitation;

o   Qorvo's alleged trade secrets do not satisfy the statutory requirements to be considered legally protectable trade secrets under either the DTSA or the North Carolina Trade Secrets Protection Act;

o   Akoustis' conduct has not caused Qorvo any legally cognizable damage under the DTSA or North Carolina law, including the North Carolina Trade Secret Protection Act and the North Carolina Unfair Competition Act at N.C. Gen. Stats. § 75-1; and

o   Akoustis has not made any false statements in violation of 15 U.S.C. §1125(a).

### C.   Claim Construction

The parties filed claim construction briefs (D.I. 100, 102, 108, 110) in August-September 2022, and a Joint Claim Construction Prehearing Statement on October 7, 2022 (D.I. 112). The Court held a *Markman* hearing on November 17, 2022. On March 15, 2023, the Court issued a

Claim Construction Order (D.I. 152), with the following terms and constructions related to the

'018 and '755 patents:[2]

| Patent | Claim Term | Court's Construction |
|--------|------------|----------------------|
| '755 | active region | the region of the resonator that is electrically driven, plus any portions of the resonator that are located above or below the electrically driven regions |
| '755 | outer region | the region of the resonator that is outside of the active region |
| '755 | a density of mechanical energy in the outer region | the density of mechanical energy over the full volume of the outer region |
| '755 | are not excited in the active region | plain and ordinary meaning |

The Claim Construction Order also recognized the parties' agreement to the following

term and construction:

| Patent | Claim Term | Agreed Construction |
|--------|------------|---------------------|
| '018 | reference numerals | the reference numerals in the asserted claims of the '018 patent are not limiting and are solely for exemplary purposes |

### D.   Summary Judgment and *Daubert* Motions

Qorvo filed the following summary judgement and *Daubert* motions:

1.     Plaintiff's Motion for Summary Judgment of the Validity of U.S. Patent

Nos. 7,522,018 and 9,753,755. D.I. 444, 445.

2.     Plaintiff's Motion to Exclude Portions of the Expert Testimony of Carlyn

Irwin. D.I. 451, 452.

3.     Plaintiff's Motion to Exclude Portions of the Expert Testimony of Dr.

Michael Lebby. D.I. 453, 454.

---

[2] Qorvo also pled a claim for false patent marking related to U.S. Patent No. 10,256,786 (the "'786 patent"). The Court also construed the term "piezoelectric layer" in the claims of the '786 patent to mean "a layer of piezoelectric material having single or multiple crystal structure." D.I. 152. Following issuance of the Court's claim construction, Qorvo agreed to drop its false patent marking claim concerning the '786 patent.

Akoustis filed the following summary judgment and *Daubert* motions:

1.      The Akoustis Defendants' Motion for Partial Summary Judgment Regarding Claims II, III, IV, V, VI, VII, VIII and IX.  D.I. 442, 443.

2.      The Akoustis Defendants' Motion to Exclude Certain Damages Opinions of Melissa A. Bennis. D.I. 456, 457.

Each of these motions is fully briefed, and the Court heard argument on the summary judgment and *Daubert* motions on March 18, 2024 and April 2, 2024, respectively.

## II.      FEDERAL JURISDICTION AND VENUE

The Court has subject matter jurisdiction over Qorvo's patent infringement claims (Counts I and II) pursuant to 28 U.S.C. §§ 1331 and 1338(a) because they arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*  This Court has subject matter jurisdiction over Qorvo's Lanham Act claim (Count III) pursuant to 28 U.S.C. § 1331 because it arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  This Court has subject matter jurisdiction over Qorvo's Defense of Trade Secrets Act (Count VI) claim pursuant to 28 U.S.C. § 1331 because it arises under DTSA, 18 U.S.C. § 1832 *et seq.*

This Court has supplemental jurisdiction over Qorvo's state law claims (Counts V, VIII, and IX) pursuant to 28 U.S.C. § 1367 because they arise out of the same case or controversy as the federal claims over which this Court has original jurisdiction.

Personal jurisdiction and venue are not disputed.

## III.      UNCONTESTED FACTS

Pursuant to Local Rule 16.3(c)(3), Qorvo and Akoustis respectfully submit the following statement of issues of uncontested fact that are admitted and require no proof.

### A.  The Parties

1.      Qorvo, Inc. is a Delaware corporation with its principal place of business at 7628 Thorndike Road, Greensboro, North Carolina 27409.

2.      Qorvo, Inc. was formed on January 1, 2015 from the merger of TriQuint Semiconductor, Inc. and RF Micro Devices, Inc.

3.      TriQuint Semiconductor, Inc. was formed in 1985.

4.      RF Micro Devices, Inc. was formed in 1991.

5.      Akoustis Technologies, Inc. is a Delaware corporation with its principal place of business at 9805 Northcross Center Court, Suite A, Huntersville, North Carolina, 28078.

6.      Akoustis, Inc. is a Delaware corporation with its principal place of business located at 9805 Northcross Center Court, Suite A, Huntersville, North Carolina, 28078.

### B.  The Lawsuit

7.      Qorvo filed this lawsuit on October 4, 2021.

8.      The parties do not contest that the Court has personal jurisdiction over the parties solely for the limited purpose of this action only.

### C.  The Patents-in-Suit

9.      The '018 patent is titled "Electro-Acoustic Resonator With a Top Electrode Layer Thinner Than a Bottom Electrode Layer."

10.     The '018 patent was issued on April 21, 2009 from an application filed on December 4, 2003.

11.     The '018 patent names Robert Milsom and Hans-Peter Löbl as the inventors.

12.     The '018 patent claims priority to European Application No. 02258613, filed December 13, 2002.

13.     The '018 patent includes claims 1-14.

14.     The '018 patent was assigned to Qorvo on March 30, 2016.

15.     The '755 patent is titled "BAW Resonator Having Lateral Energy Confinement and Methods of Fabrication Thereof."

16.     The '755 patent was issued on August 15, 2017 from an application filed on October 6, 2015.

17.     The '755 patent names Gernot Fattinger and Alireza Tajic as the inventors.

18.     The '755 patent claims priority to provisional application No. 62/207,702, filed on August 20, 2015.

19.     The '755 patent includes claims 1-18.

20.     The '755 patent was assigned to Qorvo on March 30, 2016.

21.     A person of ordinary skill in the art at the times that the '018 and the '755 patents were applied for would have had at least an undergraduate degree in electrical engineering, materials science, physics, or a related field, and 2-4 years of experience in the research, design, or development of thin film devices, or equivalent experience.  A person with more education and less experience may also meet this standard.

**D.     Priority and Prior Art References**

22.     The '018 patent has a PCT filing date of December 4, 2003 and claims priority to European Application No. 02285613 filed December 13, 2002.

23.     The '755 patent has a U.S. filing date of October 6, 2015 and claims priority to U.S. Provisional Application No. 62/207,702 filed August 20, 2015.

24.     International Patent Application Publication No. WO 02/093740 A1, indicates on its face that it published on November 21, 2002 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '018 patent.

25.     German Patent No. DE 102 41 425 A1, indicates on its face that it published on March 18, 2004 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '755 patent.

26.     RF Bulk Acoustic Wave Filters for Communications (Ken-ya Hashimoto ed.) bears a copyright date of 2009 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '755 patent.

27.     U.S. Patent No. 5,760,663 indicates on its face that it issued on June 2, 1998 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '018 patent.

28.     U.S. Patent No. 5,873,154 indicates on its face that it issued on February 23, 1999 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '018 patent.

29.     U.S. Patent No. 6,081,171 indicates on its face that it issued on June 27, 2000 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '018 patent.

30.     U.S. Patent No. 7,709,999 B2 indicates on its face that it published on May 4, 2010 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '755 patent.

31.     U.S. Patent Application Publication No. US 2014/0159548 A1, indicates on its face that it published on June 12, 2014 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '755 patent.

32.     International Patent Application Publication No. WO 99/10938 indicates on its face that it published on March 4, 1999 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '018 patent.

33.     International Patent Application Publication No. WO 02/23720 A1 indicates on its face that it published on March 21, 2002 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '018 patent.

34.     W. Shockley et al., *Trapped-Energy Modes in Quartz Filter Crystals*, 41 J. Acoustical Soc. Am. 981 bears an indication on its face that it was part of a 1967 publication and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '755 patent.

35.     U.S. Patent No. 6,874,211 indicates on its face that it issued on April 5, 2005 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '018 patent.

36.     P. Osbond et al., *Influence of ZnO and Electrode Thickness on the Performance of Thin Film Bulk Acoustic Wave Resonators*, vol. 2, 1999 IEEE Ultrasonics Symposium 911, bears a copyright date of 1999 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '018 patent.

37.     F. Shen et al., *Energy Trapping in Mesa-Shaped Quartz Crystal Microbalance*, Sensors 2002 IEEE 1154 bears a copyright date of 2002 and Qorvo does not contest, for purposes of this matter, that it qualifies as prior art to the '755 patent.

38.     Before commencing this lawsuit, Qorvo did not notify Akoustis of Qorvo's patent infringement claims regarding the '018 patent or the '755 patent.

### E.     The Accused Products

39.     Akoustis has made, used, sold, and offered for sale in the United States the following products: A10149; A10154; A10155; A10156; A10158; A10160; A10165; A10166; A10235; A10238; A10249; A10252; A10256; A10266; A10335; AKF-1252; AKF-1256; AKF-1336; and AKF-1938 (collectively "the Accused Products").

40.     Each of the Accused Products is a bulk acoustic wave ("BAW") filter that includes multiple BAW resonators.

41.     Each of the BAW resonators used in the Accused Products is a film bulk acoustic resonator, also called an FBAR type resonator.

### F.     The Asserted Claims

42.     Qorvo asserts that each Accused Product infringes claims 1 and 12 of the '018 patent.

43.     Qorvo asserts that each Accused Product infringes claim 9 of the '755 patent.

44.     Qorvo asserts that the method of making each Accused Product infringes claim 10 of the '755 patent.

45.     Claims 1 and 12 of the '018 patent and claims 9 and 10 of the '755 patent are collectively the "Asserted Claims."

### G.     Qorvo Employees Hired by Akoustis

46.     As of November 16, 2023, Akoustis had hired 43 employees who previously worked at one time at Qorvo or its predecessor companies.

47.     As of November 16, 2023, of those 43 employees that at one time worked for Qorvo and/or its predecessors, 19 accepted an offer of employment from Akoustis while employed at Qorvo; the remaining 24 accepted an offer of employment from Akoustis after leaving Qorvo or its predecessor companies.

### H.     Akoustis Trademark Filings

48.     On October 15, 2018, Akoustis filed an application (Serial No. 88156063) with the U.S. Patent and Trademark Office ("USPTO") to register XBAW as a trademark. The application identified the goods or services associated with the XBAW trademark as: "Custom manufacture of active electronic components and passive electronic components, namely, single-crystal piezoelectric resonators for mobile and other wireless markets." The USPTO registered the trademark as U.S. Reg. No. 6,768,409.

49.     On October 30, 2018, Akoustis filed an application with the USPTO (Serial No. 88175495) to register the following word + design as a trademark:



The application identified the goods or services associated with the XBAW trademark as: "Custom manufacture of active electronic components and passive electronic components, namely, single-crystal piezoelectric resonators for mobile and other wireless markets." The USPTO registered the trademark as U.S. Reg. No. 6,768,427.

### IV.    CONTESTED FACTS AND INTENDED PROOFS

Qorvo's Statement of Contested Facts that remain to be litigated is attached as **Exhibit A.1**.

Qorvo's Statement of Intended Proofs is attached as **Exhibit A.2**.

Akoustis' Statement of Contested Facts that remain to be litigated is attached as **Exhibit A.3**.

Akoustis' Statement of Intended Proofs is attached as **Exhibit A.4**.

Should the Court find that any of the issues of law listed in **Exhibits B.1** or **B.2** of the Final Pretrial Order should be considered as issues of fact, they shall be incorporated as issues in **Exhibits A.1** or **A.2**, respectively.  The parties reserve the right to modify or supplement their statements of facts that remain to be litigated and statements of intended proofs to the extent necessary to reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

### V.    ISSUES OF LAW

Qorvo's Statement of Issues of Law that remain to be litigated is attached as **Exhibit B.1**.

Akoustis' Statement of Issues of Law that remain to be litigated is attached as **Exhibit B.2**.

Should the Court find that any of the issues identified in **Exhibits A.1** or **A.2** of the Final Pretrial Order should be considered as issues of law, they shall be incorporated as issues in **Exhibits B.1** or **B.2**, respectively.  The parties reserve the right to modify or supplement their statement of issues of law that remain to be litigated to the extent necessary to reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

### VI.     WITNESSES

Any witness not listed in this Final Pretrial Order will be precluded from testifying at trial absent good cause.  In the absence of an alternative agreement among the parties, fact witnesses will be sequestered, including for opening statements, unless a fact witness is also a party's corporate representative at trial.  The parties agree that expert witnesses need not be sequestered.

Except as provided under Civil Local Rule 43.1 or by express permission of the Court, once tendered for cross examination, no witness shall communicate with counsel offering the witness on direct regarding the substance of the witness's testimony until such time as the witness is excused by the Court from that examination.

### A.     Witnesses That Each Party Expects to Call

Qorvo and Akoustis identify the trial witnesses that each expects to call in **Exhibits C.1** and **C.2**, respectively, indicating those witnesses who will appear live and those who will appear by deposition, and identifying those who will be called and those who may be called.  Qorvo's objections to Akoustis's Identification of Trial Witnesses is attached as **Exhibit C.3**.  Each party reserves the right to call witnesses on the other's party's witness list (either live or by deposition designation).  Each party reserves the right to amend or supplement its trial witness list as part of the meet and confer process leading up to trial, in response to other party's pretrial disclosures and objections, in response to any pretrial rulings or orders from the Court, and in the event any of the individuals listed below become unable to attend the trial or otherwise unable to provide testimony.

Inclusion of any witnesses on a party's list does not imply or establish that the other party may compel the live testimony of that witness and does not waive any objections that the other party may have to testimony from that witness.

### B.   Deposition Designations

Qorvo's Deposition Designations are attached as **Exhibit D.1**.

Akoustis' Deposition Designations are attached as **Exhibit D.2**.

Each set of Deposition Designations reflects the opposing party's objections to any designated testimony.  The parties will work to resolve their respective objections to ensure that as few objections as possible are tendered to the Court for resolution during trial. Both parties respectfully request the opportunity to respond to the opposing party's objections prior to the Court issuing a ruling on those objections.

Should a fact witness previously identified as testifying live no longer be presented live at trial, the parties may designate specific pages and lines of deposition transcript that they intend to read or play in lieu of the witness's appearance upon reasonable notice.  The parties shall immediately notify each other in the event they decide not to call a witness to testify live at trial.

Each party is entitled to offer deposition testimony designated by any other party (whether by designation or counter-designation), even if not separately listed on its own deposition designation list, unless that testimony was designated solely to rebut testimony the Court later holds is inadmissible.

When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.  The parties agree to use deposition videos to the extent such videos exist for the depositions the parties wish to read or play at trial.  The parties will be

charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

Designated deposition testimony will be offered to the Court as designated testimony that the parties may read into the record or play by video, and such testimony will count against the party's trial presentation time.  Specifically, any affirmative designations offered by a party will count against that party's trial presentation time whereas any counter-designations by the other party will count against the party who made the counter-designation.

### C.      Impeachment

Pursuant to Federal Rule of Evidence 613, deposition or other testimony or statements not specifically identified on a party's deposition designation list or documents not on any party's exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose.  The Court will rule at trial on any objections based on lack of completeness and/or lack of consistency.

### VII.   EVIDENTIARY EXHIBITS

Qorvo's exhibit list is attached as **Exhibit E.1**.  Qorvo identified its exhibits with PTX numbers, starting with PTX-0001.

Akoustis' exhibit list is attached as **Exhibit E.2**.  Akoustis identified its exhibits with DX numbers, starting with DX-0001.

A joint exhibit list is attached as **Exhibit E.3**.  Any joint trial exhibits will be identified with JTX numbers, starting with JTX-0001.

On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

Each party may use a subset of an exhibit as a standalone exhibit, subject to evidentiary objections (e.g., Fed. R. Evid. 106). Such subset exhibit shall be marked with the entire exhibit's number followed by a letter (e.g., PTX-0001-A).

A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to objections. Any exhibit, once admitted, may be used equally by each party. The listing of an exhibit by a party on its exhibit list does not waive any objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence. In other words, a party does not waive its objections to an exhibit by including that exhibit on its own exhibit list.

The parties agree that any date listed on an exhibit list is provided for convenience only and is neither evidence nor an admission of the date of the document, and that failing to list a date on an exhibit list is neither evidence nor an admission of whether the document is dated.

The parties agree that any description of a document listed on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document.

Legible photocopies of United States patents may be offered and received into evidence in lieu of certified copies, subject to all other objections that might be made to the admissibility of certified copies. Likewise, legible photocopies of United States patent applications may be offered and received into evidence in lieu of certified copies, subject to all other objections which might be made to the admissibility of certified copies.

Legible photocopies of documents may be offered and received in evidence in lieu of originals, subject to all foundational requirements and other objections that might be made to the admissibility of originals, and subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy.

To the extent any exhibit(s) requires special software for viewing or accessing the exhibit(s), the parties will first meet and confer in good faith on any third-party software tools that may be used by the parties to demonstrate or otherwise publish such exhibits to the jury.

Four days before the first day of trial, the parties shall make available for inspection physical exhibits to be used at trial (e.g., BAW filters at issue), labeled with an exhibit number. Physical exhibits include non-document trial exhibits but exclude demonstrative exhibits, which are addressed in Section XI, below.

### VIII.   MOTIONS *IN LIMINE*

The parties have filed and fully briefed their motions in limine ("MILs").  For the Court's convenience, the parties' MILs are as follows:

#### A.      Qorvo's MILs

Plaintiff's Motion in Limine #1: Motion to Exclude Evidence and Argument Regarding Plaintiff's Alleged Unfair and Deceptive Trade Practices.

Plaintiff's Motion in Limine #2: Motion to Exclude Evidence or Argument Regarding Plaintiff's Alleged Acquisition or Use of Third-Party Confidential Information.

Plaintiff's Motion in Limine #3: Motion to Exclude Evidence or Argument Regarding Other Lawsuits.

Plaintiff's Motion in Limine #4: Motion to Exclude Certain Argument Regarding the Parties' Size, Wealth, and/or Revenues.

Qorvo's MILs, the Akoustis Opposition to those MILs, and Qorvo's reply in further support of its MILs are attached hereto as **Exhibits F.1, F.2, and F.3**, respectively. The declaration and exhibits supporting Qorvo's MILs are attached hereto as **Exhibit F.4**.  The declaration and exhibits in opposition to Qorvo's MILs are attached hereto as **Exhibit F.5**.

### B. Akoustis' MILs

Akoustis Motion in Limine #1: To Preclude Qorvo from Offering Any Evidence on or Commenting About Any Trade Secrets Beyond Those in Its Final Trade Secret Disclosure or "Confidential Information" Beyond that Discussed in the Shanfield Report.

Akoustis Motion in Limine #2: To Exclude Plaintiff's Proposed Trial Exhibits PTX-0001 and PTX-0758.

Akoustis Motion in Limine #3: Qorvo Should Be Precluded from Using the Deposition Testimony of Dr. Michael Lebby Referencing or Relating to Illicit Activities.

Akoustis Motion in Limine #4: To Preclude Evidence or Comment Regarding the Subject Matter of Qorvo's Motion for Sanctions for Contempt and Spoliation.

Akoustis Motion in Limine #5: To Preclude the Opinions Presented in Paragraphs 22 Through 24 of the Supplemental Shanfield Report.

Akoustis Motion in Limine #6: To Preclude Michael Lysse from Offering Testimony at Trial.

Akoustis' MILs, the Qorvo Opposition to those MILs, and Akoustis' reply in further support of its MILs are attached hereto as **Exhibits F.6, F.7**, and **F.8**, respectively. The declaration and exhibits supporting Akoustis' MILs are attached hereto as **Exhibit F.9**.  The declaration and exhibits in opposition to Akoustis' MILs are attached hereto as **Exhibit F.10**.  The declaration and exhibits supporting Akoustis's reply in further support of its MILs are attached hereto as **Exhibit F.11**.

## IX.     DISCOVERY

Discovery is complete and there are no outstanding issues.

## X.     TRIAL

### A.     Length & Time

This matter is scheduled for a jury trial beginning at 9:30 a.m. ET on May 6, 2024.  Until the case is submitted to the jury for deliberations, the jury will be excused each day at a time decided by the Court.  The trial will be timed.  The Court will allocate to counsel for each party _____[3] hours in which to present their respective cases, inclusive of time for opening and closing argument but exclusive of time for *voir dire*.

### B.     Order of Presentation of Evidence

The order of presentation of evidence will be as follows: (1) Opening Statements (Qorvo first, followed by Akoustis); (2) Qorvo's presentation of evidence on issues for which it bears the burden of proof; (3) Akoustis' presentation of evidence rebutting Qorvo's presentation and Akoustis's presentation of evidence on issues for which it bears the burden of proof; (4) Qorvo's presentation of evidence rebutting Akoustis' presentation of evidence on issues for which Akoustis bears the burden of proof; and (5) Closing Arguments (Qorvo first, followed by Akoustis, followed by Qorvo's rebuttal).

### C.     Jury

The jury shall be composed of at least eight (8) members.  The Court will conduct jury selection through the Court's "prejudice" method.

---

[3] Subject to the Court's availability, the parties propose no more than 25 hours per side.

### D.     Jury Notes

The parties agree that the jurors will be permitted to write notes by hand during the presentations of the parties and that jurors will be permitted to bring these notes as well as the provided jury notebook(s) into the deliberation room. The parties further propose that the jurors be instructed not to exchange, share, or discuss the contents of their notes with each other. Notes may only be used by individual jurors to refresh that juror's recollections. The jurors' notes shall be collected by the clerk each evening and returned to the individual jurors each morning; at the end of the trial, after the final verdict is returned, the clerk will collect all juror notes, said notes to be destroyed after the jury's discharge and without review.

### E.     Party Set-Up

The Court will make reasonable efforts to grant parties access to the courtroom during the week before jury selection to allow them to set up and test counsel's tables, including electronic and computer devices to be used during the trial, although such access is not guaranteed and is dependent on courtroom availability.

## XI.    STIPULATED TRIAL MANAGEMENT PROCEDURES

The parties stipulate to the following trial management procedures.

### A.     Demonstratives

By 7:30 p.m. the night before their intended use, the parties will exchange copies of all documentary, graphic, slide (including builds), animation, diagram, chart, illustration, video, and any other form of demonstratives exhibit that they plan to use at trial. In other words, if a demonstrative is expected to be used on a Wednesday, it must be exchanged or made available by 7:30 p.m. on Tuesday. The parties shall exchange objections to these demonstratives by 9:00 p.m. on the day the demonstratives are received.  Demonstratives previously displayed in the course of the trial need not be disclosed again.   Reasonable non-substantive edits or corrections of

typographical and similar errors to demonstrative exhibits may be made to such exhibits prior to such use.

"Demonstratives" are exhibits specifically created for the purpose of the trial and for illustrative purposes only, and do not include (1) demonstratives created in the courtroom during testimony or opening at trial (except that the parties must disclose builds of slides pursuant paragraph 1 above); or (2) the enlargement, highlighting, ballooning, underlining, or the like, of trial exhibits or transcripts of trial testimony, or transcripts of deposition testimony for which objections have been cleared. Demonstrative exhibits need not be included in the parties' respective exhibit lists.

Demonstratives must be cleared of outstanding objections before being shown to the jury.

The parties will make available for inspection all non-documentary demonstratives or live demonstrations, such as physical exhibits, physical prior art or physical products, they plan to use at trial by 7:30 p.m. the night before their intended use. In other words, if a non-documentary demonstrative is expected to be used on a Wednesday, it must be exchanged or made available by 7:30 p.m. on Tuesday. The parties shall exchange objections to these demonstratives by 9:00 p.m. on the day the demonstratives are received. Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

The parties agree that they need not prepare a binder of evidence or demonstratives for a witness; however, if a party provides a binder to a witness, the party will provide one copy to the opposing side when the witness takes the stand.

When exchanging trial demonstratives, the party seeking to use a demonstrative exhibit will provide a color representation of the demonstrative materials intended for us in the exhibit to the other side in PDF form. For demonstrative exhibits that cannot be placed in PDF form (e.g.,

video or animations), the party seeking to use the demonstrative exhibit will provide it to the other side in its native form via a downloadable link or email attachment. For irregularly sized materials, the party seeking to use the demonstrative exhibit will provide a color representation as a PDF of 8.5" x 11" copies of the demonstrative exhibits. Qorvo's demonstrative exhibits will be identified by numbers prefixed with "PDX" and Akoustis' demonstrative exhibits will be identified by numbers prefixed with "DDX." If a party's demonstrative exhibit changes after being provided to the opposing party, the party intending to use the demonstrative exhibit must promptly notify the opposing party of the change(s).

### B.    Witnesses

#### 1.    Live Witnesses

The parties will identify witnesses to be called live by 7:30 p.m. two nights before the day of trial during which the witnesses are expected to testify. In other words, if a party expects to call a witness live to testify on a Tuesday, the witness must be identified by 7:30 p.m. on Sunday.[4] The parties will also exchange lists of exhibits and demonstratives they intend to use during direct examination by 7:30 p.m. the night before their intended use, and an identification of the witnesses each such exhibit or demonstrative will be used with on direct examination. The parties shall exchange any objections by 9:00 p.m. on the day the lists are received.

#### 2.    Witnesses by Deposition

For video witnesses, the parties will provide a list of any deposition designations to be played by 7:00 p.m. two days before the designation is to be played. Counter-designations and objections are due by 8:30 p.m. Objections to the counter-designations and counter-counter

---

[4] As to witnesses being called to testify live, the parties shall meet and confer in advance of the Pre-Trial Conference about the availability of witnesses to testify on a particular date.

designations are due by 9:30 p.m.  Objections to counter-counter-designations are due at 10:30 p.m. that same evening.  Any unresolved objections will be raised with the Court the next morning (the day before the designations are to be read or played).  The sponsoring party shall prepare the designated portions of the depositions for presentation at trial.  The time available for each side's trial presentation shall be reduced by the length of its designations or counter-designations actually played or read at trial.  Time shall be measured by the amount of time of each party's designations.

If deposition testimony is to be presented by video, then the party playing the designated testimony shall also serve the other party with electronic video clips of all testimony to be played by 7 p.m. ET the calendar day before the witness is to be called at trial.

### C.   Exhibits Admitted During Trial

The parties agree to exchange lists of any exhibits used before the jury during trial that day (to be read into the record the next morning) by 7:30 pm.  The parties will exchange any objections to the other side's list by 9:00 pm.

### D.   Notice of Intent to Rest

A party will provide to the Court and the other parties a good-faith notice that it expects to rest by 5 p.m. (or prior to leaving court) the day before that party expects to rest and provide a good-faith estimate of how much additional trial time the party expects to use before resting.

### E.   Meet-and-Confer; Submitting Objections to Court

The parties will meet and confer regarding any objections at 10:00 p.m. the night the responding party provides its objections.  Any surviving disputes that cannot be resolved through the meet and confer process will be brought to the Court's attention in the manner and at the time directed by the Court.  Argument on remaining issues will be heard before the jury is brought in.

### F.      Closing Exhibits and Demonstratives

The parties agree that any exhibit that was used during the trial and moved into evidence, trial transcripts, deposition designations played at trial, or demonstratives previously used or disclosed and not subject to outstanding objection during the trial may be shown to the jury during closing statements without any additional disclosure.

### G.      Reservations of Rights

Each party reserves the right to use exhibits and deposition designations from the other party's trial exhibit list and designations, even if not separately listed on its own list. Each party also reserves the right to use deposition counter-designations as part of its affirmative designations, and any affirmative or rebuttal deposition designations as counter-designations.  The parties agree to edit out attorney objections from the deposition clips. The parties also agree that each deposition will be played in order of the witness's testimony at the deposition, rather than, e.g., playing all initial designations followed by all counter designations.   The parties also agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document.

## XII.   AMENDMENT TO THE PLEADINGS

Neither party seeks any amendment(s) to the pleadings.

## XIII.   ADDITIONAL MATTERS

Qorvo anticipates the need to seal the courtroom during testimony from certain witnesses.

## XIV.   SETTLEMENT

The parties have engaged in good faith efforts to explore resolution of this matter through settlement.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED: _____

_____

The Honorable Jon P. McCalla
United States District Judge

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jeremy A. Tigan

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Zachary Alper
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

BAYARD, P.A.

/s/ Ronald P. Golden III

_____

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 North King Street, Suite 400
Wilmington, DE  19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112-0015
(212) 653-8700

*Attorneys for Plaintiff Qorvo, Inc.*

April 8, 2024

Xiaomei Cai
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

*Attorneys for Defendants*
*Akoustis Technologies, Inc. and Akoustis, Inc.*