# Exhibit A.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-01417-JPM |
| v. | ) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) |
| AKOUSTIS, INC. | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**<u>EXHIBIT A.1 TO PRETRIAL ORDER</u>**

**<u>QORVO, INC.'S STATEMENT OF DISPUTED FACTS TO BE LITIGATED</u>**

Pursuant to Local Rule 16.3(c)(4), Plaintiff Qorvo, Inc. ("Qorvo") respectfully submits the following issues of fact that remain to be litigated. Qorvo incorporates by reference any issues of fact that are set forth in its response to any comparable statement submitted or filed by Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis" or "Defendants").

Qorvo bases this statement on the parties' pleadings, the parties' documentary and testimonial evidence, Qorvo's current understanding of Defendants defenses, and the Court's rulings to date. Although Qorvo has tried to anticipate issues to the extent possible, Defendants may not raise certain of these issues at trial and/or may seek to modify these issues or raise additional issues. Accordingly, Qorvo may not raise all of the issues set forth herein at trial and/or may seek to modify these issues or raise additional issues. In addition, some of Defendants' arguments or evidence may be objectionable and the subject of pending motions or motions to be filed at a later date.

Qorvo also intends to offer evidence to rebut evidence offered by Defendants. Qorvo reserves the right to amend or supplement this statement to respond to any new positions or evidence offered by Defendants, or to any future ruling of this Court, and/or to amend or supplement this statement consistent with the pretrial order, the parties' agreements, or as otherwise permitted by the Court. Qorvo also reserves the right to amend or supplement this statement in response to Defendants' pretrial order submissions, pretrial proceedings, trial proceedings, or post-trial briefing.

Qorvo reserves the right to affirmatively use, elaborate on, or dispute any fact cited by Defendants, including the scientific bases for such fact, or Defendants' application of such fact to this case. The following statements are not exhaustive, and Qorvo reserves the right to rely upon

and prove any matters identified in the pleadings, contentions, discovery responses, experts' reports, and experts' depositions. Qorvo incorporates by reference the reports of Qorvo's expert witnesses with respect to matters to be proved in part or entirely by expert testimony.

By including a fact herein, Qorvo does not assume the burden of proof, persuasion, or production with regard to that fact, unless required to do so by law. For instance, Defendants bear the burden of proof with respect to invalidity. As a result, Qorvo reserves the right to object to and/or contest those alleged facts and present any rebuttal evidence in response to those alleged facts when identified by Defendants. Any fact not specifically admitted in the parties' Statement of Uncontested Facts should be considered contested, even if not specifically identified herein.

To the extent this statement contains issues of law, they are incorporated by reference into Qorvo's Statement of Issues of Law That Remain to Be Litigated. To the extent Qorvo's Statement of Issues of Law That Remain to Be Litigated contains issues of fact, they are hereby incorporated herein by reference. To the extent that a fact or issue of fact in one section applies to another section, claim, or theory, it is incorporated therein as well without separate identification.

## I.      ISSUES OF FACTS UPON WHICH QORVO BEARS THE BURDEN OF PROOF

### A.      Count I – Infringement of U.S. Patent No. 7,522,018 (the '018 Patent)

1.      Whether Qorvo has proven by a preponderance of the evidence that Defendants directly infringe, either literally or under the doctrine of equivalents, claims 1 and 12 of the '018 Patent by making, using, offering to sell, and/or selling the following Akoustis products: A10149, A10154, A10155, A10156, A10158, A10160, A10165, A10166, A10235, A10238, A10249, A10252, A10256, A10266, A10335, AKF-1252, AKF-1256, AKF-1336, AKF-1938 products (collectively, "Accused Products").

2.      Whether Qorvo has proven by a preponderance of the evidence that Defendants have willfully infringed claims 1 and 12 of the '018 Patent.

3.      In the event one or more of the asserted claims is found infringed and not invalid, whether Qorvo has shown that it is entitled to a permanent injunction enjoining the Defendants from infringing claims 1 and 12 of the '018.

4.      Whether Qorvo has shown that it is entitled to damages for Defendants' infringement.

5.      If Defendants' Accused Products are found to have infringed a valid asserted claim of the '018 patent, the reasonable royalty to compensate Qorvo for that infringement.

6.      If Defendants' Accused Products are found to have infringed a valid, asserted claim(s) of the '018 Patent, whether Qorvo has shown that it is entitled to an accounting of damages for any post-verdict infringement.

7.      If Defendants' Accused Products are found to have infringed a valid, asserted claim of the '018 Patent, whether Qorvo has shown that it is entitled to an award of prejudgment and post-judgment interest.

8.      If Defendants' Accused Products are found to have infringed a valid, asserted claim of the '018 Patent, whether Qorvo has shown it is entitled to enhanced damages under 35 U.S.C. § 284 for any willful infringement of the asserted claims of the '018 patent.

9.      If Defendants' Accused Products are found to have infringed a valid, asserted claim of the '018 Patent, whether Qorvo has shown  that the case against Defendants' is exceptional and whether Qorvo is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

10.      Whether Qorvo has shown that it is entitled to any other relief as this Court deems just and proper.

**B.     Count II - Infringement of U.S. Patent No. 9,735,755 (the '755 Patent)**

11.     Whether Qorvo has proven by a preponderance of the evidence that Defendants directly infringe claims 9 and 10 of the '755 Patent by making, using, offering to sell, and/or selling Accused Products.

12.     Whether Qorvo has proven by a preponderance of the evidence that Defendants have willfully infringed claims 9 and 10 of the '755 Patent.

13.     In the event one or more of the asserted claims of the '755 Patent is found infringed and not invalid, whether Qorvo has shown that it is entitled to a permanent injunction enjoining the Defendants from infringing the asserted claims.

14.     Whether Qorvo has shown that it is entitled to damages for any infringement by Defendants of the asserted claims.

15.     If Defendants' Accused Products are found to have infringed a valid asserted claim of the '755 Patent, the reasonable royalty to compensate Qorvo for that infringement.

16.     If Defendants' Accused Products are found to have infringed a valid, asserted claim(s) of the '755 Patent, whether Qorvo has shown that it is entitled to an accounting of damages for any post-verdict infringement.

17.     If Defendants' Accused Products are found to have infringed a valid, asserted claim of the '755 Patent, whether Qorvo has shown that it is entitled to an award of prejudgment and post-judgment interest.

18.     If Defendants' Accused Products are found to have infringed a valid, asserted claim of the '755 Patent, whether Qorvo has shown it is entitled to enhanced damages under 35 U.S.C. § 284 for any willful infringement of the asserted claims of the '755 Patent.

19.     If Defendants' Accused Products are found to have infringed a valid, asserted claim of the '755 Patent, whether Qorvo has shown that the case against Defendants' is exceptional and whether Qorvo is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

20.     Whether Qorvo has shown that it is entitled to any other relief as this Court deems just and proper.

**C.      Count III - Lanham Act False Advertising Under 15 U.S.C. § 1125(a)**

21.     Whether Qorvo has proven by a preponderance of the evidence that Defendants made a false or misleading description or representation of fact in connection with alleged "single crystal" products.

22.     Whether Qorvo has proven by a preponderance of the evidence that the specific statements identified by Qorvo as alleged false advertising constitute "commercial advertising" within the meaning of 15 U.S.C. § 1125(a)(1)(B).

23.     Whether Qorvo has proven by a preponderance of the evidence that the specific challenged statements by Defendants regarding alleged "single crystal" products actually deceive or at least have a tendency to deceive a substantial portion of the intended audience.

24.     Whether Qorvo has proven by a preponderance of the evidence that any alleged deception by Defendants is material in that it is likely to influence purchasing decisions.

25.     Whether Qorvo has proven by a preponderance of the evidence that it suffered economic or reputational injury flowing directly from the specific misrepresentations by Defendants it alleges.

26.     If Defendants' statements regarding the alleged "single crystal" products are found to constitute false advertising under 15 U.S.C. § 1125(a), what is the amount of damages to compensate Qorvo for its economic or reputational injury.

27.     If Defendants' statements regarding the alleged "single crystal" products are found to constitute false advertising under 15 U.S.C. § 1125(a), whether Qorvo has shown that it is entitled to a permanent injunction enjoining Defendants from engaging in false advertising.

28.     If Defendants' statements regarding the alleged "single crystal" products are found to constitute false advertising under 15 U.S.C. § 1125(a), whether Qorvo has shown that it is entitled to an award of attorneys' fees and costs under 15 U.S.C. § 1117.

29.     Whether Qorvo has shown that it is entitled to any other relief as this Court deems just and proper.

**D.      Count V - Unfair and Deceptive Trade Practices Prohibited by NC. Gen. Stat. § 75-1**

30.     Whether Qorvo has proven by a preponderance of the evidence that Akoustis committed an unfair or deceptive act or practice by making false statements that Akoustis's BAW filters use "single crystal" technology that has superior performance compared to polycrystalline BAW filters.

31.     Whether Qorvo has proven by a preponderance of the evidence that Akoustis committed an unfair or deceptive act or practice by systematically recruiting large numbers of current and former Qorvo employees as part of a scheme to obtain Qorvo's confidential information.

32.     Whether Qorvo has proven by a preponderance of the evidence that Akoustis committed an unfair or deceptive act or practice by stealing and misusing Qorvo's confidential information.

33.     Whether Qorvo has proven by a preponderance of the evidence that Akoustis committed an unfair or deceptive act or practice by misappropriating Qorvo's trade secrets.

34.     Whether Qorvo has proven by a preponderance of the evidence that Defendants' unfair or deceptive acts were in or affecting commerce.

35.     Whether Qorvo has proven by a preponderance of the evidence that Defendants' unfair or deceptive acts have caused injury to Qorvo.

36.     If Defendants' conduct is found to constitute unfair and deceptive trade practices, what is the amount of damages to compensate Qorvo for its economic injury.

37.     Whether Qorvo has shown that it is entitled to any other relief as this Court deems just and proper.

**E.     Count VI - Misappropriation of Trade Secrets Under the Defense of Trade Secrets Act (18 U.S.C. § 1832 et seq.) and Count VIII – Misappropriation of Trade Secrets Under the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat § 66-152 et seq.)**

38.     Whether Qorvo has proven by a preponderance of the evidence that it owns one or more trade secrets.

39.     Whether Qorvo has proven by a preponderance of the evidence that it took reasonable measures to keep secret one or more of the identified trade secrets.

40.     Whether Qorvo has proven by a preponderance of the evidence that one or more of the identified trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

41.     [For the Defend Trade Secrets Act ("DTSA")], whether Qorvo has proven by a preponderance of the evidence that it uses or intends to use one or more of the identified trade secrets in interstate or foreign commerce.

42.     Whether Qorvo has proven by a preponderance of the evidence that Akoustis misappropriated one or more trade secrets.

43.     Whether Akoustis can be held vicariously liable for the trade secret misappropriation committed by its employees.

44.     Whether Qorvo has proven by a preponderance of the evidence that it is entitled to damages as a result of Defendants' misappropriation of trade secret information.

45.     Whether Qorvo has proven by a preponderance of the evidence the amount of damages it is entitled to receive to compensate Qorvo for its economic injury or for Defendants' unjust enrichment.

46.     Whether Qorvo has proven that it is entitled to injunctive relief prohibiting Defendants and their parents, subsidiaries, affiliates, officers, directors, agents, employees, successors, assigns, and attorneys, and any and all others acting in privity or concert with them from using any of Qorvo's trade secret information.

47.     Whether Qorvo has proven that Akoustis willfully and maliciously misappropriated trade secrets such that Qorvo would be entitled to an award of exemplary damages.

48.     Whether Qorvo has proven that it is entitled to attorneys' fees and costs as a result Defendants' use of Qorvo's trade secret information.

49.     Whether Qorvo has proven that it is entitled to pre-judgment and post-judgment interest on the damages awarded, costs, expenses, and attorneys' fees.

50.     Whether Qorvo has shown that it is entitled to any other relief as this Court deems just and proper.

**F.      Count IX – Civil Conspiracy Under North Carolina Law**

51.     Whether Qorvo has proven by a preponderance of the evidence that there was an agreement between two or more individuals.

52.     Whether Qorvo has proven by a preponderance of the evidence that there was an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way.

53.     Whether Qorvo has proven by a preponderance of the evidence that there was resulting injury to Qorvo inflicted by one or more of the conspirators.

54.     Whether Qorvo has proven by a preponderance of the evidence that there was resulting injury to Qorvo inflicted by one or more of the conspirators pursuant to a common scheme.

55.     Whether Qorvo has proven by a preponderance of the evidence that it is entitled to compensatory damages based on Akoustis's civil conspiracy.

56.     Whether Qorvo has proven by a preponderance of the evidence the amount of damages it is entitled to receive based on Akoustis's civil conspiracy.

57.     Whether Qorvo has proven by a preponderance of the evidence that it is entitled to punitive damages based on Akoustis's civil conspiracy.

58.     Whether Qorvo has shown that it is entitled to any other relief as this Court deems just and proper.

## II.     ISSUES OF FACTS UPON WHICH DEFENDANTS BEAR THE BURDEN OF PROOF

59.     Whether Defendants have proven by clear and convincing evidence that claims 1 and 12 of the '018 Patent are invalid for obviousness.

60.     Whether Defendants have proven by clear and convincing evidence that claims 9 and 10 of the '755 Patent are invalid for obviousness.

61.     Whether there were any acceptable non-infringing alternatives to the alleged inventions available at the time of the hypothetical negotiation.

62.     Whether Defendants have proven by a preponderance of the evidence that Qorvo

failed to file its claims within the applicable statute of limitations.

# Exhibit A.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-01417-JPM |
| v. | ) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) |
| AKOUSTIS, INC. | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**EXHIBIT A.2 TO PRETRIAL ORDER**

**QORVO, INC.'S STATEMENT OF INTENDED PROOF AND DETAILS OF DAMAGES
CLAIMED AND OTHER RELIEF SOUGHT**

Pursuant to Local Rule 16.3(c)(8), Plaintiff Qorvo, Inc. ("Qorvo") submits the following statement of intended proofs. This statement is not intended to be exhaustive, and Qorvo reserves the right to prove any matters identified in pleadings, fact and expert discovery, and any of the accompanying Statement of Issues of Facts to be Litigated at Trial and Statement of Issues of Law to be Litigated at Trial. Qorvo further reserves the right to modify or amend its statement of intended proofs in light of rulings by the Court, any narrowed or modified issues, to respond to issues raised by Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis"), and to rebut any alleged proof(s) offered by Akoustis before and during trial. Qorvo further incorporates by reference its expert reports in support of any proof to be presented by expert testimony.

## I.      BACKGROUND

### A.      Qorvo

1.      Qorvo, Inc. was formed on January 1, 2015 from the merger of TriQuint Semiconductor (formed in 1985) and RF Micro Devices (formed in 1991). Qorvo manufactures semiconductor devices, including bulk acoustic wave (BAW) filters. Qorvo's predecessor companies began developing BAW filter technology in the 1990s. By 2017, Qorvo had shipped more than 10 billion BAW filters.

2.      BAW resonator filters, or BAW filters, are a vital component in advanced radio frequency filtering solutions for wireless devices, as well as the world's most advanced radar and communications systems. This is because wireless devices communicate in particularized frequency bands in the electromagnetic spectrum that are assigned by government entities to prevent interference between different devices and service providers. Thus, because devices using nearby frequencies could create interference, it is important to filter out signals, through BAW filters, from those frequencies that are irrelevant to a particular device (i.e.,

communications in frequency bands above or below that assigned to the device) to improve communications efficacy.

3.     Qorvo's current BAW filter offerings are the result of many years of intensive, dedicated, and expensive research, design, development, testing, and refinement. Qorvo's BAW filters are industry leading. Qorvo's BAW filters have been instrumental in awards received by Qorvo.

4.     Qorvo protects its investments in its technology and products, including its BAW filter products, by, among other things, maintaining information regarding its products as confidential and proprietary information and filing patent applications.

5.     Qorvo takes a number of commercially reasonable steps to maintain the confidentiality of documents containing Qorvo Proprietary Information, including through the use of employee/third-party confidentiality agreements and non-disclosure agreements, restricting access to confidential documents (both internally and externally), marking documents as confidential, employee training regarding confidentiality, and IT/technical measures to ensure confidentiality.

6.     To protect its valuable intellectual property, Qorvo has also applied for and has been awarded patents. Two of these patents—U.S. Patent Nos. 7,522,018 (the "'018 Patent") and 9,735,755 (the "'755 Patent")—describe important structural features of BAW filters that enable the performance required by today's wireless devices.

7.     The '018 Patent, entitled "Electro-Acoustic Resonator With A Top Electrode Layer Thinner Than A Bottom Electrode Layer," was duly and legally issued on April 21, 2009 from an application filed on December 4, 2003, naming Robert Milsom and Hans-Peter Löbl as the inventors. The '018 Patent claims priority to European Application No. 02258613, filed

December 13, 2002. Qorvo owns, by assignment, all substantial right, title, and interest in and to the '018 Patent.

8.      The '755 Patent, entitled "BAW Resonator Having Lateral Energy Confinement And Methods of Fabrication Thereof," was duly and legally issued on August 15, 2017 from an application filed on October 6, 2015, naming Gernot Fattinger and Alireza Tajic as the inventors. The '755 Patent claims priority to provisional application No. 62/207,702, filed August 20, 2015. Qorvo owns, by assignment, all substantial right, title, and interest in and to the '755 Patent.

**B.      Akoustis**

9.      Defendant Akoustis, Inc. is a publicly traded company that was formed in 2014 by Jeffrey Shealy, Steven P. Denbaars, and Richard T. Ogawa.  Mr. Shealy was, from October 2001 through February 2014, a vice-president of RFMD which, together with TriQuint, merged to become Qorvo in 2015.

10.      At the time of its formation, Akoustis claimed to have developed "a new class" of BAW filters using "proprietary, single crystal materials."

11.      While Qorvo's design and development of BAW filters has taken many years and great expense, Akoustis was able to design and qualify its 3-7 GHz BAW RF filter portfolio from scratch in just a few years and with just a fraction of the number of Qorvo's employees and a fraction of the amount of Qorvo's research and development investment. To do so, Akoustis improperly leveraged Qorvo's intellectual property, including the Patents-in-Suit and the Qorvo Proprietary Information, as obtained by its systematic poaching of Qorvo's employees.

**II.      PATENT INFRINGEMENT**

12.      Qorvo intends to prove that Akoustis infringes the '018 and '755 Patents in violation of the Patent Act.

13.     The following Akoustis products infringe the '018 Patent and the '755 Patent: A10149, A10154, A10155, A10156, A10158, A10160, A10165, A10166, A10235, A10238, A10249, A10252, A10256, A10266, A10335, AKF-1252, AKF-1256, AKF-1336, AKF-1938 (collectively, the "Accused Products").

14.     Akoustis has been aware of the '018 and '755 Patents since at least October 4, 2021 when Qorvo filed the complaint in this case.

15.     Akoustis directly infringes claims 1 and 12 the '018 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, or offering for sale the Accused Products, each of which utilizes the inventions disclosed and claimed in the '018 Patent. Each of the Accused Products is of similar design and construction as it pertains to the '018 Patent.

16.     Since obtaining knowledge of the '018 Patent, Akoustis's infringement has been willful, deliberate, and intentional, and Akoustis is acting in reckless disregard of Qorvo's patent rights, entitling Qorvo to treble damages.

17.     Akoustis also directly infringes claims 9 and 10 of the '755 Patent under 35 U.S.C. § 271(a) by making, using, selling, or offering for sale the Accused Products, which utilize the inventions disclosed and claimed in the '755 Patent.

18.     Since obtaining knowledge of the '755 Patent, Akoustis's infringement has been willful, deliberate, and intentional, and Akoustis is acting in reckless disregard of Qorvo's patent rights, entitling Qorvo to treble damages.

19.     Qorvo is owed damages of $279,808 for Akoustis' infringement of the '755 and '018 Patents for the period of October 5, 2021 through June 30, 2024. Qorvo is further entitled to an accounting of damages and/or supplemental damages occurring after any discovery cutoff and

through the Court's decision regarding the imposition of a permanent injunction and for post-verdict infringement at a rate of 1% applies to Akoustis's accused product revenues.

## III.   MISAPPROPRIATION OF QORVO'S TRADE SECRETS

20.     Qorvo intends to prove that Akoustis misappropriated Qorvo's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*. ("DTSA") and the North Carolina Trade Secrets Protection Act ("NCTSPA"), N.C. Gen. Stat. §66-152, *et seq*., and used those trade secrets to shortcut the time necessary to compete with Qorvo in the market.

21.     Akoustis has engaged in a concerted campaign to hire former Qorvo employees as part of a scheme to obtain Qorvo's confidential information.

22.     As of November 2023, Akoustis had hired at least 43 former Qorvo employees. Collectively, those employees have stolen more than 500,000 Qorvo documents, plus 279 GB of additional Qorvo data, and transferred that information to Akoustis.  The stolen Qorvo materials have been found in the files of at least 40 different Akoustis employees.

23.     The information that Akoustis stole from Qorvo includes many trade secrets. Qorvo identified a subset of those trade secrets—104 trade secrets—to present to the jury (the "Asserted Trade Secrets"). The Asserted Trade Secrets can be organized into ten groups:

Trade Secret Group 1: Qorvo business plans for WiFi products;

Trade Secret Group 2: Qorvo filter and resonator designs;

Trade Secret Group 3: Qorvo's trimming methods and procedures;

Trade Secret Group 4: Qorvo's evaluation board design rules and schematics;

Trade Secret Group 5: Qorvo's product development process and testing procedures;

Trade Secret Group 6: Qorvo's systems, processes, and procedures for testing reliability and mean-time-to-failure of parts;

Trade Secret Group 7: Qorvo manufacturing, assembly, and change procedures;

Trade Secret Group 8: Qorvo product roadmaps and product prototypes;

Trade Secret Group 9: trade secrets relating to job structures and employee compensation; and

Trade Secret Group 10: Qorvo's tax and corporate compliance structure and know-how.

24.     The Asserted Trade Secrets are technical and/or business information that qualify for protection under both the DTSA and the NCTSPA.

25.     The Asserted Trade Secrets are related to the design, development, testing, production, marketing, and sale of radio frequency ("RF") products, including BAW filter products. Those products are used in interstate and foreign commerce.

26.     Qorvo made reasonable efforts to maintain the secrecy of the Asserted Trade Secrets.  For example, Qorvo marked the Asserted Trade Secrets as confidential, imposed confidentiality restrictions on employees, required non-disclosure agreements with third parties, and implemented numerous technical controls designed to protect the secrecy of the information and detect unauthorized access.

27.     The Asserted Trade Secrets also derive economic value from not being generally known to and not being readily ascertainable through proper means by persons in the relevant industry. In particular, maintaining the secrecy of the Asserted Trade Secrets gave Qorvo a competitive advantage. Similarly, Akoustis was about to more quickly, effectively, and efficiently compete with Qorvo as a result of obtaining and using the Asserted Trade Secrets.

28.     Akoustis knowingly acquired the Asserted Trade Secrets by improper means. For example, Akoustis obtained Asserted Trade Secrets by theft, including by imaging a Qorvo computer, copying archives of Qorvo emails, and copying files from Qorvo computers onto external hard drives. Akoustis also obtained Asserted Trade Secrets by bribery, encouraging employees to use their expense accounts to obtain "key confidential information" about Qorvo.

Akoustis employees also obtained Asserted Trade Secrets by breaching confidentiality agreements with Qorvo or inducing others to breach confidentiality agreements with Qorvo.

29.     Having acquired the Asserted Trade Secrets by improper means, Akoustis used the Asserted Trade Secrets as a shortcut to competing in the market. In particular, the Asserted Trade Secrets resulted in a 55-month head start benefit for Akoustis.

30.     The egregious and widespread nature of Akoustis's misappropriation scheme is reflected throughout the discovery record in this case. Qorvo's expert, Dr. Stanley Shanfield has analyzed that evidence in his expert report and will provide testimony at trial regarding the same, including testimony that, in his opinion, Akoustis's misappropriation resulted in Akoustis entering the market 55 months earlier than it otherwise would have been able.

31.     Akoustis has been unjustly enriched by at least $66.1 million as a result of its 55-month head start.

32.     The misappropriation in that case was willful and malicious. Akoustis has undertaken intentional acts to steal Qorvo's trade secrets and use those trade secrets with reckless indifference to Qorvo's rights. As a result, Qorvo is entitled to enhanced damages under both the DTSA and the NCTSPA.

33.     Qorvo intends to refute any defense that Akoustis asserts that the trade secret claims are barred by the statute of limitations.

## IV.     FALSE ADVERTISING

34.     Qorvo intends to prove that Akoustis falsely advertised its BAW filters as using "single crystal" technology the results in better performance that Qorvo's polycrystalline technology.

35.     Akoustis asserts in promotional materials that its BAW filters use "single crystal" piezoelectric layers, which Akoustis refers to as "XBAW™ technology."

36.     Akoustis made "single crystal" technology the centerpiece of its marketing strategy. In particular, Akoustis used the purported performance benefits of "single crystal" as a way to differentiate itself from its competitors.

37.     Following its formation in 2014, Akoustis performed experiments with single crystal technology. Akoustis discovered, however, that the technology was not commercially viable and did not result in better performance than polycrystalline technology. As a result, Akoustis switched to developing polycrystalline BAW filters.

38.     All of the Akoustis products that have reached commercial production have used polycrystalline technology. None of those products used "single crystal" technology.

39.     Despite making the decision to switch to polycrystalline products, Akoustis continued to promote its products as using purportedly superior "single crystal" technology.

40.     Akoustis's advertising caused confusion in the marketplace. Indeed, reports indicate that participants in the market broadly believed Akoustis's claims that it had developed superior "single crystal" technology.

41.     An injunction is warranted to enjoin Akoustis from falsely promoting polycrystalline products as "single crystal."

42.     Qorvo is also owed damages of $1,146,604 for corrective advertising that addresses Akoustis's false claims.

## V.     UNFAIR AND DECEPTIVE TRADE PRACTICES

43.     Qorvo intends to prove that Akoustis engaged in unfair and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1.

44.     Misappropriating Qorvo's trade secrets in violation of the DTSA and NCTSPA qualifies and an unfair and deceptive trade practice under North Carolina law.

45.     Falsely advertising Akoustis BAW filters as using superior "single crystal" technology is also an unfair and deceptive trade practice under North Carolina law.

46.     Akoustis also engaged in unfair and deceptive trade practices by (i) systematically recruiting large numbers of current and former Qorvo employees as part of a scheme to obtain Qorvo's confidential information; (ii) stealing nearly 500,000 Qorvo documents; and (iii) misusing confidential Qorvo information to shortcut the time needed to enter the market. Each of these acts qualifies as immoral, unethical, oppressive, and unscrupulous.

47.     Akoustis's unfair and deceptive acts affected commerce in the market for BAW filters and other RF devices.

48.     The unfair and deceptive acts also caused Qorvo actual injury, including the loss of its confidential information and the cost to Qorvo to recruit and re-train employees to take the place of the employees that Akoustis recruited for improper purposes.

49.     Qorvo is owed damages of $809,772 for the cost to recruit, hire, and train additional employees.

50.     Qorvo is owed $66.1 million, representing the amount by which Akoustis has been unjustly enriched by its unfair and deceptive trade practices.

51.     Qorvo intends to refute any defense that Akoustis asserts that the unfair competition claims are barred by the statute of limitations.

## VI.    CIVIL CONSPIRACY

52.     Qorvo also intends to prove that Akoustis engaged in a civil conspiracy in violation of North Carolina law.

53.     Akoustis conspired with one or more Qorvo employees, including former Qorvo employees who later joined Akoustis (but prior to their employment by Akoustis), to violate their legal obligations to Qorvo and misappropriate Qorvo's trade secrets for Akoustis's benefit.

54.     Members of this civil conspiracy include, but are not limited to, Jeff Shealy (Akoustis's CEO), Rohan Houlden (Akoustis's former Chief Product Officer), Robert Dry (Akoustis's Vice President of Operations), SJ Kim (Akoustis's Country Manager in Korea), Steven Li (Akoustis's Country Manager in China), and Colin Hunt (Akoustis's Vice President of Global Sales).

55.     The civil conspiracy proximately caused injury to Qorvo in the form of the loss of its trade secrets.

56.     Qorvo is owed damages of $66.1 million for Akoustis's conspiracy to misappropriate Qorvo's trade secrets for Akoustis's benefit.

57.     Qorvo is also entitled to punitive damages based upon Akoustis's civil conspiracy.

58.     Qorvo intends to refute any defense that Akoustis asserts that the civil conspiracy claims are barred by the statute of limitations.

## VII.   SUMMARY OF QORVO'S INTENDED PROOFS

59.     Based on the facts summarized above and others, Qorvo intends to prove at trial facts fully supporting each element of each of the Counts in the Second Amended Complaint, except for Count IV for False Patent Marking Under 35 U.S.C. § 292 and Count VII for Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 *et seq*.). Qorvo will not pursue these two counts at trial.

60.     Qorvo also intends to prove that all of the issues of law and fact identified by either party in this pretrial order should be decided in Qorvo's favor.

61.     Akoustis's actions have caused immense harm and damages to Qorvo. At trial, Qorvo intends to present fact and expert testimony to establish its entitlement to compensatory damages, punitive damages, treble damages, exemplary damages, reasonably royalty damages,

and unjust enrichment damages. The details of these damages have been disclosed to Akoustis during discovery.

62.     In addition to damages, Qorvo seeks permanent injunctive relief, its costs, pre- and post-judgment interest, attorneys' fees, disgorgement of any ill-gotten gains (including unjust enrichment damages), and all other just and proper relief.

# Exhibit A.3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QORVO, INC.,                                )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )        C.A. No. 21-1417 (JPM)
                                            )
AKOUSTIS TECHNOLOGIES, INC. and             )
AKOUSTIS, INC.,                             )
                                            )
                Defendants.                 )

## **EXHIBIT ___ TO PRETRIAL ORDER**

## **THE AKOUSTIS DEFENDANTS' STATEMENT OF FACTS TO BE LITIGATED**

Akoustis provides the following statement of the issues of fact that remain to be litigated at trial. This statement is based on the pleadings and discovery in this action to date and on the current understanding of Qorvo's claims. Akoustis reserves the right to revise or supplement the issues of fact if necessitated by the Court's rulings, additional information provided by Qorvo, or Qorvo's introduction of further or different claims, issues of law, or remaining issues of fact. In addition, by providing this statement, Akoustis does not concede that all of the recited issues are appropriate for trial. To the extent that Akoustis' Statement Of Issues Of Law To Be Litigated contains issues of fact that remain to be litigated, Akoustis incorporates them here by reference.[1]

---

[1] Akoustis submits this Statement of Facts to be litigated for the remaining claims in this litigation. It does not address issues related to Count IV (False Patent Marking) and Count VII (RICO), which Qorvo is no longer pursuing. *See* D.I. 501 at 30.

- 1 -

## I.      Alleged Infringement of the '018 and '755 Patents

### A.      Non-Infringement

1.      Whether any of the Accused Products literally and directly infringe[2] all limitations of claims 1 and/or 12 of the '018 Patent.

2.      Whether any of the Accused Products directly infringe all limitations of claims 1 and/or 12 of the '018 Patent under the doctrine of equivalents.

3.      Whether the Accused Products literally and directly infringe all limitations of claims 9 and/or 10 of the '755 Patent.

### B.      Willfulness

4.      Whether Akoustis willfully infringed claims 1 and/or 12 of the '018 Patent.

5.      Whether Akoustis willfully infringed claims 9 and/or 10 of the '755 Patent.

### C.      Invalidity – Level of Ordinary Skill in the Art

6.      Whether a person of ordinary skill the art would have undergraduate degree in electrical engineering, materials science, physics, or a related field, and 2-4 years of experience in the research, design, or development of thin film devices, or equivalent experience (person with more education and less experience may also meet this standard).

### D.      Invalidity – Obviousness

7.      Whether Anatol I. Zverev, *Handbook of Filter Synthesis* (1967), bearing the copyright date of 1967 is prior art to the '018 and '755 patents.

---

[2] Because Qorvo's technical experts do not opine regarding indirect infringement, Akoustis understands that Qorvo has abandoned its allegations of induced and contributory patent infringement.

8.      Whether *Precision Frequency Control, vol. 1: Acoustic Resonators and Filters* (Eduard A. Gerber & Arthur Ballato eds.,1985) bearing a copyright date of 1985 is prior art to the '018 and '755 patents.

9.      Whether a claim element or combination of claim elements from claims 1 and 12 of the '018 Patent is well-understood, routine, and conventional to a person of ordinary skill in the art.

10.     Whether claims 1 and 12 of the '018 Patent are invalid under 35 U.S.C. § 103 as obvious.

11.     The facts underlying the Court's ultimate determination concerning the obviousness of the alleged inventions recited in claims 1 and 12 of the '018 Patent as set forth in *Graham v. John Deere Co.,* 383 U.S. 1 (1966).

12.     Whether a claim element or combination of claim elements from claims 9 and 10 of the '755 Patent is well-understood, routine, and conventional to a person of ordinary skill in the art.

13.     Whether claims 9 and 10 of the '755 Patent are invalid under 35 U.S.C. § 103 as obvious.

14.     The facts underlying the Court's ultimate determination concerning the obviousness of the alleged inventions recited in claims 9 and 10 of the '755 Patent as set forth in *Graham v. John Deere Co.,* 383 U.S. 1 (1966).

**E.      Damages and Relief**

15.     Whether Akoustis' purported patent infringement damaged Qorvo at all, let alone in the amount Qorvo claims.

16.     In the event one or more of the Asserted Claims is found infringed and not invalid, whether Qorvo is entitled to a reasonable royalty based on a hypothetical negotiation and, if so, the amount.

17.     Has Qorvo proved that the infringement of either Asserted Patent was willful.

18.     In the event one or more of the Asserted Claims is found infringed and not invalid, whether Qorvo is entitled to, and the amount of, any pre-judgment or post-judgment interest.

19.     In the event one or more of the Asserted Claims is found infringed and not invalid, whether Qorvo is entitled to injunctive relief prohibiting Akoustis from further infringing the Asserted Claims.

20.     In the event one or more of the Asserted Claims is found infringed and not invalid, whether Qorvo is entitled to an accounting of damages for any post-verdict infringement.

21.     In the event one or more of the Asserted Claims is found infringed and not invalid, whether Qorvo is entitled to enhanced damages, attorneys' fees, or any other relief Qorvo seeks.

## II.    Alleged False Advertising Under the Lanham Act

22.     Whether Akoustis' statements concerning its single crystal technology violate 15 U.S.C. § 1125(a).

23.     Whether Akoustis' statements concerning its single crystal technology were literally false.

24.     Whether Akoustis' statements concerning its single crystal technology were misleading.

25.     Whether Akoustis' statements concerning its single crystal technology deceived the intended customer base.

26.     Whether Akoustis' statements concerning its single crystal technology had a tendency to deceive the intended customer base.

27.     Whether Akoustis' statements concerning its single crystal technology influenced the purchasing decisions of the intended customer base.

28.     Whether Akoustis' statements traveled in interstate commerce.

29.     If Akoustis is found to have violated the Lanham Act, whether Qorvo suffered any injury as a proximate result.

30.     If Akoustis is found to have violated the Lanham Act, whether Qorvo is entitled to damages as a proximate result of Akoustis' violation(s).

31.     If Akoustis is found to have violated the Lanham Act, whether Qorvo can establish facts meeting the standard for issuing permanent injunctive relief, including without limitation whether Akoustis has continued to make the challenged single crystal statements.

32.     If Akoustis is found to have violated the Lanham Act, whether Qorvo is entitled to attorneys' fees or any other relief.

**III.    Alleged Trade Secret Misappropriation Under Federal and North Carolina Law**

33.     Whether Qorvo owned or possessed all 104 categories of alleged trade secret information to be asserted at trial.

34.     Whether Qorvo has properly identified its 104 categories of trade secrets with the required specificity.

35.     Whether each of Qorvo's alleged 104 categories of trade secrets is different from both (a) matters of general knowledge in the trade and (b) matters of special knowledge of persons skilled in the trade.

36. Whether each of Qorvo's alleged 104 categories of trade secrets has independent economic value from the fact that it is not generally known or not readily ascertainable by proper means.

37. Whether Qorvo took reasonable measures to maintain the confidentiality of each of its alleged 104 categories of trade secrets.

38. For all purportedly misappropriated information that Qorvo identifies as among its trade secrets, whether Akoustis knew or should have known that it was improperly acquired.

39. Whether Akoustis disclosed any of the information that Qorvo identifies as its trade secrets without Qorvo's consent.

40. Whether and to what extent Akoustis used any of the information that Qorvo identifies as its trade secrets without Qorvo's consent.

41. Whether Qorvo suffered any damages as a result of Akoustis' purported acquisition, disclosure, or possession of the information Qorvo identifies as its trade secrets.

42. Whether Qorvo is barred from recovering on its claims for trade secret misappropriation because of the three-year statute of limitations governing these claims.

43. If Akoustis is found to have misappropriated trade secrets, whether Qorvo is entitled to any damages for the alleged trade secret misappropriation and, if so, the amount.

44. If Akoustis is found to have misappropriated trade secrets, whether Akoustis' alleged misappropriation of trade secrets was willful and malicious

45. If Akoustis is found to have misappropriated any trade secrets, whether Qorvo is entitled to injunctive relief.

IV.    If Akoustis is found to have misappropriated any trade secrets, whether Qorvo is entitled to attorneys' fees, costs, pre-judgment interest, or post-judgment interest, or any other relief.**Alleged Conspiracy Under North Carolina Law**

46.    Whether Qorvo can prove by a preponderance of the evidence that Akoustis and others acted with a common purpose to misappropriate Qorvo's trade secrets.

47.    Whether Qorvo can prove by a preponderance of the evidence that Akoustis performed an overt act in pursuance of the common purpose to misappropriate Qorvo's trade secrets.

48.    Whether Qorvo can prove by a preponderance of the evidence that Akoustis caused Qorvo injury by performing an overt act in pursuance of the common purpose to misappropriate Qorvo's trade secrets.

49.    Whether Qorvo is barred from recovering on its claims for trade secret misappropriation because of the three year statute of limitations governing these claims.

50.    Whether Qorvo can prove by a preponderance of the evidence that it suffered damages caused by the conspiracy.

51.    Whether Qorvo can proven that it is entitled to punitive damages or any other relief.

## V.    Alleged Unfair and Deceptive Trade Practices Under North Carolina Law

52.    Whether Akoustis' statements about its BAW filters' "single crystal" technology were literally false, and if so, whether that was an unfair or deceptive practice.

53.    Whether Akoustis recruited Qorvo employees as part of a plan to obtain Qorvo's confidential information, and if so, whether that was an unfair or deceptive practice.

54.    Whether Akoustis misappropriated Qorvo's trade secrets, and if so, whether that was an unfair or deceptive practice.

55.     Whether Akoustis misused Qorvo's confidential information and if so, whether that was an unfair or deceptive practice.

56.     Whether any of the alleged predicates for liability – false advertising, employee poaching or trade secret misappropriation – proximately caused an injury to Qorvo.

57.     Whether Qorvo is barred from recovering on its claim for unfair and deceptive trade practices because it failed to file suit within three years of when Qorvo knew of should have known through reasonable inquiry of at least some of the acts giving rise to the claim.

58.     Whether Qorvo is entitled to damages from any unfair or deceptive practice committed by Akoustis.

59.     If Akoustis is found to have engaged in an unfair or deceptive trade practice, whether Qorvo can prove that it is entitled permanent injunctive relief.

60.     If Akoustis is found to have engaged in an unfair or deceptive trade practice, whether Qorvo can prove that it can recover its attorneys' fees and costs.

# Exhibit A.4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## EXHIBIT ___ TO PRETRIAL ORDER

## THE AKOUSTIS DEFENDANTS' INTENDED PROOFS

Akoustis intends to prove the following at the trial of this case. [1]

### I.   Alleged Infringement of the '018 and '755 Patents

1.      Akoustis intends to refute that it is liable for direct infringement, either literally or under the doctrine of equivalents, of any asserted claim of the '755 and '018 Patents.

2.      Akoustis intends to refute that Qorvo is entitled to any damages for direct infringement of any asserted claim of the '755 and '018 Patents.

3.      Akoustis intends to prove that claims 9 and 10 of the '755 Patent are invalid under 35 U.S.C. § 103 as obvious.

4.      Akoustis intends to prove that claims 1 and 12 of the '018 Patent are invalid under 35 U.S.C. § 103 as obvious.

---

[1] Akoustis submits this Statement of Intended Proofs for the remaining claims in this litigation. It does not address issues related to Count IV (False Patent Marking) and  Count VII (RICO), which Qorvo is no longer pursuing.  *See* D.I. 501 at 30.

5.      Akoustis intends to prove that Qorvo is not entitled to any monetary damages for the alleged infringement of the '018 and '755 Patents.

6.      Akoustis intends to prove that any alleged infringement of the '018 and '755 Patents was not willful and Qorvo is not entitled to any enhanced damages of any amount under 35 U.S.C. § 284.

7.      Akoustis intends to refute that this is an exceptional case entitling Qorvo to an award of attorney's fees under 35 U.S.C. § 285.

8.      Akoustis intends to refute that Qorvo is entitled to prejudgment and post-judgement interest and costs

9.      Akoustis intends to refute that Qorvo is entitled to permanent injunctive relief enjoining Akoustis from performing any acts that infringe any asserted claim of the '018 and '755 Patents.

10.     Akoustis intends to refute that Qorvo is entitled Qorvo is entitled to an accounting of damages for any post-verdict infringement, or any other relief Qorvo seeks.

**II.     <u>Alleged False Advertising Under the Lanham Act</u>**

11.     Akoustis intends to refute that it has made any false statements in violation of 15 U.S.C. § 1125(a).

12.     Akoustis intends to refute that its statement that it used single-crystal technology is literally false.

13.     Akoustis intends to refute that its statement that it used single-crystal technolo-gy is misleading.

14.     Akoustis intends to refute that any statement regarding its single-crystal technology deceived or had a tendency to deceive the intended customer base.

15.     Akoustis intends to refute that its statements concerning its single-crystal technology influenced the purchasing decisions of the intended customer base.

16.     Akoustis intends to refute that Qorvo suffered injury as a result of Akoustis' alleged Lanham Act violations.

17.     Akoustis intends to refute that Qorvo is entitled to damages as a result of any alleged Akoustis' violation of 15 U.S.C. § 1125(a).  More specifically, Akoustis intends to refute that Qorvo is entitled to any monetary damages for any alleged violations of 15 U.S.C. § 1125(a), that any alleged violations of 15 U.S.C. § 1125(a) were willful, or that Qorvo is entitled to any degree of enhanced damages or attorneys' fees. Akoustis further intends to refute that Qorvo is entitled to any prejudgment and post-judgment interest.

18.     Akoustis intends to refute that Qorvo is entitled to injunctive relief prohibiting Akoustis from engaging in false advertising.

III.    **Alleged Trade Secrets Misappropriation Under Federal and/or North Carolina Law.**

19.     Akoustis intends to refute that Qorvo possessed/possesses trade secret information.

20.     Akoustis intends to refute that Qorvo has articulated the trade secrets allegedly at issue with the required reasonable particularity or specificity.

21.     Akoustis intends to refute that each alleged trade secret proposed by Qorvo is different from both (a) matters of general knowledge in the trade and (b) the special knowledge of persons skilled in the trade.

22.     Akoustis intends to refute that each alleged trade secret has independent economic value from the fact that it is not generally known or not readily ascertainable by proper means.

23.     Akoustis intends to refute that Qorvo took reasonable measures to keep each alleged trade secret a secret.

24.     Akoustis intends to refute that information that Qorvo identifies as its trade secrets was information that Akoustis knew or should have known was improperly acquired.

25.     Akoustis intends to refute that it disclosed any of the information that Qorvo identifies as its trade secrets without Qorvo's consent.

26.     Akoustis intends to refute that it used any of the information that Qorvo identifies as its trade secrets without Qorvo's consent.

27.     Akoustis intends to refute that Qorvo has suffered any damages as a result of Akoustis' purported acquisition, disclosure, possession or use of the information Qorvo identifies as its trade secrets.

28.     Akoustis intends to prove that Qorvo is barred from recovering on its claims for trade secret misappropriation because of the three year statute of limitations governing these claims.

29.     Akoustis intends to refute that Qorvo entitled to any damages for the alleged trade secret misappropriation.

30.     Akoustis intends to refute that Akoustis' alleged misappropriation of trade secrets was willful and malicious.

31.     Akoustis intends to refute that Qorvo is entitled to any injunctive relief for the alleged trade secret misappropriation.

32.     Akoustis intends to refute that Qorvo is entitled to attorneys' fees, costs, pre-judgment interest, or post-judgment interest, or any relief.

IV.     **Alleged Civil Conspiracy Under North Carolina Law**

33.     Akoustis intends to refute that it and others acted with a common purpose to misappropriate Qorvo's trade secrets.

34.     Akoustis intends to refute that it caused Qorvo injury by performing an overt act in pursuance of the common purpose to misappropriate Qorvo's trade secrets.

35.     Akoustis intends to refute that Qorvo suffered damages caused by the conspiracy.

36.     Akoustis intends to refute that Qorvo is entitled to recover any damages caused by the alleged conspiracy.

37.     Akoustis intends to prove that Qorvo is barred from recovering on its claims for civil conspiracy because of the three year statute of limitations governing the claim.

38.     Akoustis intends to refute that Qorvo is entitled to punitive damages or any other relief.

V.     **Alleged Unfair or Deceptive Trade Practices Under North Carolina Law**

39.     Akoustis intends to refute that it engaged in any unfair or deceptive trade practice under North Carolina law.

40.     Akoustis intends to refute that it made false statements that all of Akoustis' BAW filters use "single crystal" technology and that such a statement was an unfair or deceptive practice under North Carolina law.

41.     Akoustis intends to refute that it recruited Qorvo employees as part of a plan to obtain Qorvo's confidential information and that such conduct was an unfair or deceptive practice under North Carolina law.

42.     Akoustis intends to refute that it misused Qorvo's confidential information and that such conduct was an unfair or deceptive practice under North Carolina law.

43.      Akoustis intends to refute that it misappropriated Qorvo's trade secrets and that such conduct was an unfair or deceptive practice under North Carolina law.

44.      Akoustis intends to refute that its statements that Akoustis' BAW filters use "single crystal" technology proximately caused an injury to Qorvo.

45.      Akoustis intends to refute that any recruitment of Qorvo employees caused an injury to Qorvo.

46.      Akoustis intends to refute that any alleged misuse of Qorvo's confidential information by Akoustis proximately caused an injury to Qorvo.

47.      Akoustis intends to refute that any alleged misappropriation of Qorvo's trade secrets proximately caused an injury to Qorvo.

48.      Akoustis intends to prove that Qorvo is barred from recovering on its claims for is its unfair and deceptive trade practices claim because of the three-year statute of limitations governing this claim.

49.      Akoustis intends to refute that Qorvo is entitled to damages from any unfair or deceptive practice.

50.      Akoustis intends to rebut that Qorvo is entitled to any attorney's fees or costs associated with the alleged violation of the Unfair and Deceptive Trade Practices Act

# Exhibit B.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-01417-JPM |
| v. | ) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) |
| AKOUSTIS, INC. | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**<u>EXHIBIT B.1 TO PRETRIAL ORDER</u>**

**<u>QORVO, INC.'S STATEMENT OF ISSUES OF LAW TO BE LITIGATED</u>**

Qorvo, Inc. ("Qorvo") respectfully submits this statement of issues of law. Qorvo's statement is based on Qorvo's current understanding of Defendants' claims and defenses. Qorvo reserves its right to change or supplement this statement to the extent Defendants are permitted to change or supplement their own submissions, including, but not limited to, adding specific new allegations for which Defendants' submissions did not fairly put Qorvo on notice.[1]

Qorvo does not include here the issues that have been the subject of a stipulation, or issues that may arise due to future acts by Defendants. Qorvo reserves the right to include these issues at a later time.

By including an issue of law here, Qorvo does not assume the burden of proof or production with regard to the legal issues that are Defendants' burden to prove. Qorvo reserves the right to revise this list for any reason, including in light of Defendants' list, as well as any pretrial rulings by the Court.

To the extent Qorvo's statement of issues of fact remaining to be litigated contains issues of law, those issues are incorporated herein by reference. Additionally, should the Court find that any issues identified in this Section as issues of law should be considered as issues of fact, Qorvo incorporates those issues into Exhibit A.1 of the Joint Pretrial Order. Qorvo also objects to Defendants including in the Pretrial Order any issues and facts not properly part of this case and/or untimely raised. Qorvo does not concede the relevance or propriety of these issues or facts merely by including in Qorvo's statements any responsive issues or facts.

---

[1] Qorvo objects to any new arguments that Defendants seek to raise for the first time after the close of discovery.

## I.     INFRINGEMENT OF U.S. PATENT NO. 7,522,018 (THE '018 PATENT)

### A.     Infringement of the '018 Patent

#### i.     Issues of Law to Be Litigated

1.     *Direct Infringement* - Whether Qorvo has proven by a preponderance of the evidence that Akoustis directly infringes claims 1 and 12 of the '018 Patent by either having made, making, using, offering for sale, selling, and/or importing the A10149, A10154, A10155, A10156, A10158, A10160, A10165, A10166, A10235, A10238, A10249, A10252, A10256, A10266, A10335, AKF-1252, AKF-1256, AKF-1336, AKF-1938 products (collectively, "Accused Products").

2.     *Infringement Under Doctrine of Equivalents* – Whether Qorvo has proven by a preponderance of the evidence that Akoustis infringes claims 1 and 12 of the '018 Patent under the Doctrine of Equivalents ("DOE").

3.     *Willful Infringement* - Whether Qorvo has proven by a preponderance of the evidence that Akoustis has willfully infringed claims 1 and 12 of the '018 Patent.

#### ii.     Legal Authority

##### a.     Direct Infringement

4.     "Direct infringement requires a party to perform each and every step or element of a claimed method or product." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009) (internal quotation marks omitted). However, "a finding of infringement can rest on as little as one instance of the claimed method being performed during the pertinent time period." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009); *see also Convolve, Inc. v. Compaq Computer Corp.*, 527 F. App'x 910, 929 (Fed. Cir. 2013); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 179 F. Supp. 3d 339, 365 (D. Del. 2016).

5.      35 U.S.C. § 271 provides: "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." To prevail on infringement, the patentee "must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).

6.      "A patent infringement analysis requires two steps. First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d. 1336, 1341 (Fed. Cir. 2001) (*citing Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476 (Fed. Cir. 1998)). The first step of the infringement analysis, claim construction, is a question of law. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451, 1454 (Fed. Cir. 1998) (en banc). "After claim construction, the next step in an infringement analysis is comparing the properly construed claims with the allegedly infringing [methods]. This comparison is a question of fact." *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1369 (Fed. Cir. 2001); *Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013) ("Infringement is a question of fact.").

7.      "Infringement . . . is determined by comparing an accused product not with a preferred embodiment described in the specifications . . . but with the properly and previously construed claims in suit." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985).

8.      "A patentee may prove infringement by 'any method of analysis that is probative of the face of infringement,' and circumstantial evidence may be sufficient." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (citations omitted); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006) ("A patentee may prove direct infringement . . . by either direct or circumstantial evidence."). The Federal Circuit has made clear that "[a] patentee is entitled to rely on circumstantial evidence to establish infringement." *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017) (accused product's instruction manual was "circumstantial evidence of infringement").

9.      "An accused device [or method] cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent." *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984) (citation omitted). Likewise, that an accused infringer has obtained patents on the accused product does not establish non-infringement. *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988) ("[I]t is elementary patent law that a patent may issue on an improvement which infringes another's patent.").

10.      "[I]ntent is not an element of direct infringement. . . . Infringement is, and should remain, a strict liability offense." *Hilton Davis Chem. Co. Warner-Kenkinson Co.*, 62 F.3d 1512, 1527 (Fed. Cir. 1995) (en banc), *rev'd on other grounds by Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).

### b.      Doctrine of Equivalents

11.      "The language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty. If patents were always interpreted by their literal terms, their value would be greatly diminished. Unimportant and insubstantial substitutes for certain elements could defeat the patent, and its value to inventors could be

destroyed by simple acts of copying." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002). Accordingly, "[t]he scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described." *Id*. at 732; *see also WarnerJenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (holding that "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention"). Accordingly, "[a]n accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Cybor*, 138 F.3d at 1459.

12.     "[T]here is no basis for treating an infringing equivalent any differently than a device [or method] that infringes the express terms of the patent. Application of the doctrine of equivalents, therefore, is akin to determining literal infringement, and neither requires proof of intent." *Warner-Jenkinson*, 520 U.S. at 35. "Infringement under the doctrine of equivalents is an equitable doctrine devised for 'situations where there is no literal infringement but [where] liability is nevertheless appropriate to prevent what is in essence a pirating of the patentee's invention.'" *Insta-Foam Prods. Inc. v. Universal Foam Sys. Inc.*, 906 F.2d 698, 702 (Fed. Cir. 1990) (*quoting Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 870 (Fed. Cir. 1985)). "The doctrine of equivalents is an equitable doctrine designed to prevent parties from realizing the benefits of another's patent by designing around the patent's literal language." *BOC Health Care, Inc. v. Nellcor Inc.*, 892 F. Supp. 598, 604 (D. Del. 1995). "Infringement under the doctrine of equivalents may be found where those limitations of a claim not found exactly in the

accused device are met equivalently." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1568 (Fed. Cir. 1996).

13.      Infringement under the doctrine of equivalents is a question of fact. *Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1258 (Fed. Cir. 2000).

14.      The "essential inquiry" in determining infringement under the doctrine of equivalents is: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 520 U.S. at 40. The doctrine of equivalents involves an element-by-element comparison of the accused method or product and the claim. *Id*. One test for whether a step of an accused method is equivalent to a claim element is whether that step performs substantially the same function in substantially the same way, to obtain substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950); *see also Abraxis Bioscience, Inc. v. Mayne Pharma (USA), Inc.*, 467 F.3d 1370, 1379 (Fed. Cir. 2006).

15.      Insubstantial differences may be found where the accused product or method performs substantially the same function in substantially the same way to achieve substantially the same result as the claim element. *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1270-71 (Fed. Cir. 1999). In other words, if one or more elements of the accused device performs the same function, in the same way, to achieve the same result as the corresponding element in the patent-in-suit, then that element is present under the doctrine of equivalents. *Warner-Jenkinson*, 520 U.S. at 40; *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1320 (Fed. Cir. 1998).

16.      The Federal Circuit has stated that technology developed after the date of invention is "the 'quintessential example of an enforceable equivalent.'" *Varco, L.P. v. Pason*

*Sys. USA Corp.*, 436 F.3d 1368, 1376 (Fed. Cir. 2006) (*quoting Smithkline Beecham Corp. v. Excel Pharm., Inc.*, 356 F.3d 1357, 1364 (Fed. Cir. 2004)). Plainly, "[t]he law does not require the impossible. Hence, it does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention." *SRI Int'l v. Matsushita*, 775 F.2d at 1121.

17.    "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016-17 (Fed. Cir. 2006) (*quoting WarnerJenkinson*, 520 U.S. at 29). In applying the "all elements rule" to determine infringement under the doctrine of equivalents, it is appropriate to identify "the role played by each element in the context of the specific patent claim." *Warner-Jenkinson*, 520 U.S. at 40. This analysis "will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id*.

18.    The accused method must contain every claim element, but "not necessarily in a corresponding component." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1259 (Fed. Cir. 1989). "A patentee is, for example, free to frame the issue of equivalency, if it chooses, as equivalency to a combination of limitations." *Id.* at 1259 n. 6 (citation omitted). Courts have held that "'[o]ne-to-one correspondence of components is not required, and elements or steps may be combined without ipso facto loss of equivalency.'" *Ethicon EndoSurgery*, 149 F.3d at 1320 (*quoting Sun Studs, Inc. v. ATA Equip. Leasing Inc.*, 872 F.2d 978, 989 (Fed. Cir. 1989), *overruled on other grounds A.C. Aukerman Co. v. R.L. Chaides Const.*

*Co.*, 960 F.2d 1020 (Fed. Cir. 1992)). A finding of infringement under the doctrine of equivalents is permissible unless "no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency." *Depuy Spine*, 469 F.3d at 1018- 19.

### c. Willful Infringement

19.     To state a claim for willful infringement, a patent owner must allege facts showing: (1) an objectively high likelihood that the defendant's actions constituted infringement, and (2) that the defendant either knew or should have known about the risk of infringement. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

20.     Under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), the jury must decide is whether it is more likely than not that Akoustis's infringement was egregious. *Id.* at 1934. Egregious conduct can be willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate. *Id.* at 1932. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. Thus, under Halo, the fact-finder must determine that the defendant's behavior was subjectively willful under a preponderance of the evidence standard. *Id.* at 1934.

21.     Subjective willfulness is found when "the risk of infringement 'was either known or so obvious that it should have been known to the accused infringer.'" *Id.* at 1930 (*quoting In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc)).

22.     Willfulness "is quintessentially a question of fact . . .." *Biotec Biologische*, 249 F.3d at 1356.

23.     There are several factors that a court and/or jury may use to assess whether the accused infringer's conduct was willful: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). These non-exhaustive Read factors underscore that "there are no hard and fast per se rules in respect of willfulness." *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1573 (Fed. Cir. 1988). Courts often use the same non-exhaustive list of factors to determine if damages should be enhanced. *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469 (Fed. Cir. 1997).

24.     "Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement." *nCube*, 436 F.3d at 1323-24 (*quoting Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005)). "In determining whether willfulness has been shown, [the court looks] to the totality of the circumstances, understanding that willfulness, 'as in life, is not an all-or-nothing trait, but one of degree. It recognizes that infringement may range from unknowing, or accidental, to deliberate, or reckless, disregard of the patentee's legal rights.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998) (*quoting Rite-Hite Corp. v. Kelley Co., Inc.*, 819 F.2d 1120, 1125-26 (Fed. Cir. 1987)). "The extent to which the infringer disregarded the property rights of the patentee, the deliberateness of the tortious acts, or other manifestations of

unethical or injurious commercial conduct, may provide grounds for a finding of willful

infringement." *Golden Blount*, 438 F.3d at 1367-68 (*quoting Hoechst Celanese Corp. v. BP*

*Chems. Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir. 1996)); *see also BMW of N. Am., Inc. v. Gore*, 517

U.S. 559, 575-76 (1996) ("[S]ome wrongs are more blameworthy than others. . . . '[T]rickery

and deceit' are more reprehensible than negligence.").

     25.    Likewise, conduct after becoming aware of the Patents-in-Suit and conduct after

the lawsuit is filed are relevant to willfulness. "[P]atent infringement is a continuing tort . . . .

The filing of a lawsuit does not stop the clock insofar as culpability may arise from continuing

disregard of the legal rights of the patentee." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d

1211, 1221-22 (Fed. Cir. 1995); *see also Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60

F.3d 770, 776 (Fed. Cir. 1995) ("Whether Infanti was justified in producing chairs prior to the

issuance of Gasser's patent is irrelevant to whether it was justified in doing so after being made

aware of it."); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 258 F. Supp. 3d 1013, 1024-29 (N.D. Cal.

2017) (pre-suit and pre-issuance copying "is evidence of willfulness" in light of continued sale of

accused product while refusing to switch to non-infringing alternative). A party that continues its

accused infringing activity after a patentee files suit can be guilty of willful infringement even if

that party presents a non-frivolous defense to infringement. *Crystal Semiconductor Corp. v.*

*TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351-52 (Fed. Cir. 2001).

    **B.**    **Requested Relief for Infringement of the '018 Patent**

       **i.**    **Issues of Law to be Litigated**

     26.    Whether Qorvo has proven that it is entitled to a judgment that Akoustis directly

infringes claims 1 and 12 of the '018 Patent.

     27.    Whether Qorvo has proven that it is entitled to a judgment that Akoustis willfully

infringes claims 1 and 12 of the '018 Patent.

28.     Whether Qorvo has proven that it is entitled to a permanent injunction enjoining Akoustis, its parents, subsidiaries, affiliates, officers, directors, agents, employees, successors, assigns, and attorneys, and any and all others acting in privity or concert with it from further infringement of claims 1 and 12 of the '018 Patent.

29.     Whether Qorvo has proven that it is owed damages for Akoustis's infringement of the '018 Patent and, if so, in what amount.

30.     Whether Qorvo has proven that it is entitled to an accounting of damages and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction and for post-verdict infringement and, if so, in what amount.

31.     Whether Qorvo has proven that it is entitled to an award of prejudgment and post-judgment interest and, if so, in what amounts.

32.     Whether Qorvo has proven that it is entitled to enhanced damages under 35 U.S.C. § 284 for Akoustis's willful infringement of the '018 Patent and, if so, in what amount.

33.     Whether Qorvo has proven that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285 and, if so, in what amount.

34.     Whether Qorvo has proven that it is entitled to any other relief as this Court deems just and proper.

  **ii. Legal Authority**

   **a. Damages**

35.     Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.

36.     The patent statute "imposes no limitation on the types of harm resulting from infringement that the statute will redress. The section's broad language awards damages for any injury as long as it resulted from the infringement." *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995). "The phrase 'damages adequate to compensate' means full compensation for 'any damages' [the patent owner] suffered as a result of the infringement." *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (*citing Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)). "Full compensation includes any foreseeable lost profits the patent owner can prove." *Id.* A damage award shall be "in no event less than a reasonable royalty," which sets the floor below which a damage award may not fall. *See Rite-Hite*, 56 F.3d at 1544. "[T]he Supreme Court has interpreted [35 U.S.C. § 284] to mean that 'adequate' damages should approximate those damages that will fully compensate the patentee for infringement." *Id.* at 1545.

37.     "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). The patentee, however, need not prove its damages with absolute certainty. *See W.R. Grace & Co.-Conn. v. Intercat, Inc.*, 60 F. Supp. 2d 316, 321 (D. Del. 1999). "[I]t will be enough if the evidence show [sic] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). Moreover, "any doubt about the correctness [of damages] is resolved against the infringer." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576 (Fed. Cir. 1989); *W.R. Grace*, 60 F. Supp. 2d at 321. "[F]undamental principles of justice require us to throw the risk of

any uncertainty upon the wrongdoer instead of upon the injured party." *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984).

### b.   Reasonable Royalty

38.    "A patentee is entitled to no less than a reasonable royalty on an infringer's sales for which the patentee has not established entitlement to lost profits." *Rite-Hite*, 56 F.3d at 1554.

39.    "A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms-length negotiation between the owners of the patent rights and the infringer, with both operating under the assumption that the negotiated patent is not invalid and is infringed." *Johns Hopkins Univ. v. CellPro*, 894 F. Supp. 819, 838 (D. Del. 1995). "[W]hat an infringer would prefer to pay is not the test for damages." *Rite-Hite*, 56 F.3d at 1555. "[T]hat the parties might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened; it would also make an election to infringe a handy means for competitors to impose a compulsory license policy upon every patent owner." *Id.* "There is no rule that a royalty be no higher than the infringer's net profit margin." *State Indus.*, 883 F.2d at 1580.

40.    The hypothetical negotiation is presumed to take place on the eve of first infringement. *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1079 (Fed. Cir. 1983). "The Court also must assume, for purposes of the hypothetical negotiation, that all parties would have known all relevant information." *Mobil Oil Corp. v. Amoco Chems. Co.*, 915 F. Supp. 1333, 1353 (D. Del. 1995). The hypothetical negotiation speaks of negotiations as of the time infringement began, yet a court may look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothetical negotiators. *Studiengesellschaft Kohle*, 862 F.2d at 1571-72. A jury may consider industry royalty rates in determining an

applicable royalty rate, but these "do not necessarily establish a ceiling for the royalty that may be assessed after an infringement trial. *Bio-Rad*, 739 F.2d at 617.

41.     The reasonable royalty may be based on the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012). "While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts rely upon the fifteen factors set forth in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, No. CIV.A. 03-241 JJF, 2004 WL 2213562, at *2 (D. Del. Sept. 28, 2004). These factors are:

A.      The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

B.      The rates paid by the patentee, the licensee, or others for the use of other patents comparable to the patent in suit.

C.      The nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

D.      The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

E.      The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

F.      The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his nonpatented items; and the extent of such derivative or convoyed sales.

G.      The duration of the patent and the term of the license.

H.      The established profitability of the product made under the patent; its commercial success; and its current popularity.

I.      The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

J.      The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

K.      The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

L.      The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

M.      The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

N.      The opinion testimony of qualified experts.

O.      The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia–Pacific Corp.*, 318 F. Supp. at 1120.

42.     "[I]n conducting the hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the infringement began." *Mobil Oil*, 915 F. Supp. at 1353.

43.     Even if evidence presented at trial falls short of supporting a party's specific royalty estimate, "the fact finder is still required to determine what royalty is supported by the record." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327-28 (Fed. Cir. 2014) (*citing cases*) (overruled on other grounds *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)). "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82

(Fed. Cir. 2003); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987) ("The requirement to determine actual damages is not diminished by difficulty of determination."). "Indeed, if the record evidence does not fully support either party's royalty estimate, the fact finder must still determine what constitutes a reasonable royalty from the record evidence." *Apple v. Motorola*, 757 F.3d at 1328. "[T]he factual determination of a reasonable royalty, however, need not be supported, and indeed, frequently is not supported by the specific figures advanced by either party. . .. [T]he district court may reject the extreme figures proffered by the litigants as incredible and substitute an intermediate figure as a matter of its judgment from all of the evidence." *SmithKline Diagnostics*, 926 F.2d at 1167-68.

### c.    Post-Verdict Accounting

44.    A patentee should also be entitled to an accounting of damages for pre-verdict and post-verdict sales of products found to infringe the patents-in-suit. *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No. 97 Civ 1383, 2001 WL 34778689, 2001 U.S. Dist. LEXIS 23416, at *52-65 (D. Nev. Aug. 1, 2001) (describing numerous instances of accountings in patent cases); *see also, e.g., Edwards Lifesciences AG v. CoreValve, Inc.*, No. 08–91–GMS, 2011 WL 446203, at *16 (D. Del. Feb. 7, 2011), aff'd in part, remanded in part, 699 F.3d 1305 (Fed. Cir. 2012) ("The court will grant . . . an accounting of the number of [infringing] devices made, used, sold . . . through the date of the order accompanying this memorandum."). Courts in this District have permitted additional discovery to properly complete an accounting of damages. *TruePosition Inc. v. Andrew Corp.*, No. CIV. 05–747–SLR, 2009 WL 1651042, at *1 n.2 (D. Del. June 10, 2009), aff'd, 389 F. App'x 1000 (Fed. Cir. 2010).

### d.    Pre-Judgment Interest

45.    The patent statute authorizes awards of prejudgment interest. 35 U.S.C. § 284. The Supreme Court has held that "prejudgment interest should ordinarily be awarded." *Gen. Motors*, 461 U.S. at 655. "An award of prejudgment interest serves to make the patentee whole because the patentee also lost the use of its money due to infringement." *Crystal Semiconductor*, 246 F.3d at 1361. In General Motors, the Supreme Court held that prejudgment interest is the rule, not the exception. *Id.* "Prejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citing Gen. Motors, 461 U.S. at 657). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Id.* (*citing Gen. Motors*, 461 U.S. at 656).

46.    "The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court. . .. In exercising that discretion, however, the district court must be guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (citation omitted).

### e.    Post-Judgment Interest

47.    Section 1961(a) of Title 28 of the United States Code states that "interest shall be allowed on any money judgment in a civil case recovered in a district court." "Postjudgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).

48.     Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest

begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Penn. Coal Co.*, 6

F.3d 88, 97 (3d Cir. 1993). Courts in this district routinely award post-judgment interest in patent

infringement cases. *See nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D.

Del. 2004), *aff'd*, 436 F.3d 1317 (Fed. Cir. 2006) (awarding post-judgment interest to patentee

for defendant's willful infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400,

414 (D. Del. 2009), *aff'd*, 389 F. App'x 1000 (Fed. Cir. 2010) (awarding post-judgment interest

for patent infringement).

### f.     Enhanced Damages

49.     35 U.S.C. § 284 provides in pertinent part that "the court may increase the

damages up to three times the amount found or assessed." The Court may enhance damages, up

to trebling the actual damages, upon a finding of willful infringement. *Johns Hopkins Univ. v.*

*CellPro, Inc.*, 152 F.3d 1342, 1364 (Fed. Cir. 1998).

50.     In determining whether to award enhanced damages, a Court should consider

"egregiousness of the defendant's conduct based on all the facts and circumstances." Read, 970

F.2d at 826-27. In exercising its discretion to enhance damages, the Court should consider the

weight of the evidence of the infringer's culpability in light of the following factors:

a)     whether the infringer copied the ideas or design of another,

b)     whether the infringer, when he knew of the other's patent protection,
investigated the scope of the patent and formed a good faith belief that it
was invalid or that it was not infringed,

c)     the infringer's behavior as a party to the litigation,

d)     the infringer's size and financial condition,

e)     the closeness of the case,

f)     the duration of the infringer's misconduct,

g)      any remedial action of the infringer,

h)      the infringer's motivation for harm, and

i)      whether the infringer attempted to conceal its misconduct.

*Johns Hopkins*, 152 F.3d at 1352 n.16, 1364-65; *see also Imonex*, 408 F.3d at 1377 ("[The Federal Circuit] has identified several criteria for assessing damages, including, inter alia, whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, and the duration of defendant's misconduct").

### g.      Permanent Injunctive Relief

51.      "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions. '[T]he encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'" *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) (*quoting Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)).

52.      Under 35 U.S.C. § 283, "[t]he several courts having jurisdiction of cases under th[e patent] title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Further, "the Patent Act also declares that 'patents shall have the attributes of personal property,' § 261, including 'the right to exclude others from making, using, offering for sale, or selling the invention,' § 154(a)(1)." *eBay, Inc. v. MercExchange L.L.C.*, 126 S. Ct. 1837, 1840 (2006).

53.      "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity . . . ." *Id.* at 1838. A plaintiff seeking a permanent injunction

"must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 1839.

54.     The loss of the right to exclude can constitute irreparable harm. *See Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 612 (D. Del. 2007). Another factor supporting a finding of irreparable harm is when the infringer will enter the patentee's market as a direct competitor. *See Sanofi-Aventis Deutschland GmbH v. Glemark Pharm. Inc.*, 821 F. Supp. 2d 681, 694 (D.N.J. 2011), aff'd, 748 F.3d 1354 (Fed. Cir. 2014); *Amgen Inc. v. F. Hoffman-LaRoche Ltd.*, 581 F. Supp. 2d 160, 212 (D. Mass. 2008), aff'd in relevant part, 580 F.3d 1340 (Fed. Cir. 2009); *Emory Univ. v. Nova Biogenetics, Inc.*, No. 1:06-CV-0141-TWT, 2008 WL 2945476, at *4-5 (N.D. Ga. July 25, 2008).

55.     "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). "Courts awarding permanent injunctions typically do so under circumstances in which the plaintiff practices its invention and is a direct market competitor." *Invista N. Am. S.A.R.L. v. M & G USA Corp.*, 35 F. Supp. 3d 583, 608 (D. Del. 2014). "Direct competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm without enforcement of the right to exclude." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012).

56.     Monetary damages may be inadequate to compensate for injury when "Plaintiffs have suffered a loss of market share, harm to reputation, and price erosion, all of which are facts that tend to establish the inadequacy of a legal remedy." *Sanofi-Aventis*, 821 F. Supp. 2d at 694. In addition, the patent holder's refusal to license the technology and to instead engage in extensive litigation demonstrates that monetary damages are inadequate. *Id.*

57.     The balance of the hardships does not favor the defendant when "[a]ny harms Defendants may suffer as a result of an injunction 'were almost entirely preventable and were the result of its own calculated risk.'" *Id.* at 695 (*quoting Sanofi-Synthelabo*, 470 F.3d at 1383).

### h.      Attorneys' Fees and Costs under 35 U.S.C. § 285

58.     35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Determining whether a case is exceptional and whether attorneys' fees should be granted under 35 U.S.C. § 285 is a two-step process. *Tate Access Floors*, 222 F.3d at 964. The first step is a factual determination whether the case is exceptional, and the second step, the Court exercises its discretion to determine whether attorneys' fees should be awarded. *Id.*

59.     To be a "prevailing party," a party "must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc.*, 70 Supp. 3d 585, 589 (D. Del. 2014).

60.     In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), the Supreme Court held that "an 'exceptional' case is simply one that stands out from others with respect to the substance strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.)" The Supreme Court added: "District courts may determine whether a case is

exceptional in the case-by-case exercise of their discretion." *Id.*; *see also id.* ("As in the comparable context of the Copyright Act, there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified."). The prevailing party must prove entitlement to attorney fees under § 285 by a preponderance of the evidence. *Id.* at 1758; *see also Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CV 11-1175-RGA, 2014 WL 4675002, at *2 (D. Del. Sept. 12, 2014).

61.     "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. There is "no precise rule or formula" for awarding attorneys' fees under § 285. *Id.* District courts should "consider[] the totality of the circumstances." *Id.* A district court's "discretion should be exercised in light of the considerations" underlying the grant of that discretion. *Id.* "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct," and such culpability can be found if an infringer "acts knowing or having reason to know of facts which would lead a reasonable man to realize his actions are unreasonably risky." *Halo*, 136 S. Ct. at 1933 (emphasis in original and internal quotation omitted).

62.     A district court may also invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute in cases involving bad faith that cannot be otherwise reached by rules or statutes. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (affirming the district court's award of expert fees under the court's inherent power based on the generic companies' bad faith and vexatious litigation conduct).

### i.     Other Permanent Injunctive Relief

63.     Under Delaware law, "[t]o succeed in a request for a permanent injunction, a party must show (i) actual success on the merits; (ii) that it would suffer irreparable harm if the injunction is not granted; and (iii) that the balance of the equities favors it." *N. River Ins. Co. v. Mine Safety Appliances Co.*, 105 A.3d 369, 380 n.47 (Del. 2014), as revised (Nov. 10, 2014).

### C.     Invalidity

#### i.     Issues of Law to be Litigated

64.     Whether Akoustis can show by clear and convincing evidence that claims 1 and 12 of the '018 Patent are invalid for obviousness.

#### ii.     Legal Authority

65.     Under 35 U.S.C. § 103: "A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made."

66.     "A determination of whether a patent claim is invalid as obvious under § 103 requires consideration of all four Graham factors, and it is error to reach a conclusion of obviousness until all those factors are considered." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 839 F.3d 1034, 1048 (Fed. Cir. 2016) (en banc; see also *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966). Thus, "[a]n obviousness determination[] is based on underlying factual inquiries including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *Eli Lilly and Co. v. Teva Pharmas. USA, Inc.*, 619 F.3d 1329, 1336 (Fed. Cir. 2010). "Objective indicia of nonobviousness must be considered in every case

where present." *Apple Inc.*, 839 F.3d at 1048 (emphasis added); *see also Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) ("We hold that the district court erred by failing to consider Transocean's objective evidence of nonobviousness. Our case law is clear that this type of evidence must be considered in evaluating the obviousness of a claimed invention."). Secondary considerations include among other things "unexpected results, expert skepticism, copying, commercial success, praise by others (even from the accused infringer []), failure by others, and long-felt need." *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2002).

67.     "A party seeking to invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *Bristol-Myers Squibb Co. v. Teva Pharmas. USA, Inc.*, 752 F.3d 967, 973 (Fed. Cir. 2014) (citation omitted).

## II.     INFRINGEMENT OF U.S. PATENT NO. 9,735,755 (THE '755 PATENT)

### A.     Infringement of the '755 Patent

#### i.     Issues of Law to Be Litigated

68.     *Direct Infringement* - Whether Qorvo has proven by a preponderance of the evidence that Akoustis directly infringes claims 9 and 10 of the '755 Patent by either having made, making, using, offering for sale, selling, and/or importing the Accused Products.

69.     *Willful Infringement* - Whether Qorvo has proven by a preponderance of the evidence that Akoustis has willfully infringed claims 9 and 10 of the '755 Patent.

#### ii.     Legal Authority

70.     *See supra* Section I.A.ii except for Section I.A.ii.b.

**B.      Requested Relief for Infringement of the '755 Patent**

      **i.      Issues of Law to be Litigated**

71.      Whether Qorvo has proven that it is entitled to a judgment that Akoustis directly infringes claims 9 and 10 of the '755 Patent.

72.      Whether Qorvo has proven that it is entitled to a judgment that Akoustis willfully infringes claims 9 and 10 of the '755 Patent.

73.      Whether Qorvo has proven that it is entitled to a permanent injunction enjoining Akoustis, its parents, subsidiaries, affiliates, officers, directors, agents, employees, successors, assigns, and attorneys, and any and all others acting in privity or concert with it from further infringement of claims 9 and 10 of the '755 Patent.

74.      Whether Qorvo has proven that it is owed damages for Akoustis's infringement of the '755 Patent and, if so, in what amount.

75.      Whether Qorvo has proven that it is entitled to an accounting of damages and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction and for post-verdict infringement and, if so, in what amount.

76.      Whether Qorvo has proven that it is entitled to an award of prejudgment and post-judgment interest and, if so, in what amounts.

77.      Whether Qorvo has proven that it is entitled to enhanced damages under 35 U.S.C. § 284 for Akoustis's willful infringement of the '755 Patent and, if so, in what amount.

78.      Whether Qorvo has proven that it is entitled to an award of attorneys' fees and costs under 35 U.S.C. § 285 and, if so, in what amount.

79.      Whether Qorvo has proven that it is entitled to any other relief as this Court deems just and proper.

  **ii.**  **Legal Authority**

80. *See supra* Section I.B.ii.

**C.**  **Invalidity**

  **i.**  **Issues of Law to be Litigated**

81. Whether Akoustis can show by clear and convincing evidence that 9 and 10 of the '755 Patent are invalid for obviousness.

  **ii.**  **Legal Authority**

82. *See supra* Section I.C.ii.

**III.** **LANHAM ACT FALSE ADVERTISING UNDER 15 U.S.C. § 1125(A)**

**A.**  **Liability for False Advertising**

  **i.**  **Issues of Law to be Litigated**

83. Whether Qorvo has proven by a preponderance of the evidence that Akoustis made a false or misleading description or representation of fact, which misrepresents the nature, characteristics, qualities, or geographic origin of its or Qorvo's goods or services.

84. Whether Qorvo has proven by a preponderance of the evidence that the specific statements identified by Qorvo as alleged false advertising constitute "commercial advertising" within the meaning of 15 U.S.C. § 1125(a)(1)(B).

85. Whether Qorvo has proven by a preponderance of the evidence that the specific challenged statements actually deceive or at least have a tendency to deceive a substantial portion of the intended audience.

86. Whether Qorvo has proven by a preponderance of the evidence that any alleged deception is material in that it is likely to influence purchasing decisions.

87. Whether Qorvo has proven by a preponderance of the evidence that it suffered economic or reputational injury flowing directly from the specific misrepresentations it alleges.

### ii.    Legal Authority

88.    The Lanham Act provides "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake . . . or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a).

89.    "To establish a prima facie claim of false advertising under the Lanham Act, Plaintiff must sufficiently allege: (1) that the defendant has made false or misleading statements as to the defendant's own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Reybold Grp. of Companies, Inc. v. Does 1-20*, 323 F.R.D. 205, 209–10 (D. Del. 2017).

90.    To show a qualifying false or misleading statement, a plaintiff must demonstrate that the defendant's statement was either (i) literally false or (ii) literally true or ambiguous but implicitly false, misleading in context, or likely to deceive. *See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005). Thus, the Lanham Act recognizes two different theories of recovery for false advertising under Section 43(a): "(1) an advertisement may be false on its face; or (2) the advertisement may be literally

true, but given the merchandising context, it nevertheless is likely to mislead and confuse consumers." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993).

91.     Liability can arise under the Lanham Act "if a website purporting to offer reviews are in reality stealth operations intended to disparage a competitor's product while posing as a neutral third party." *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 505 (E.D. Pa. 2018); *see also Ames Publ'g Co. v. Walker-Davis Publ'ns, Inc.*, 372 F. Supp. 1, 11 (E.D. Pa. 1974) (liability under the Lanham Act "extends to instances where the defendant creates a false impression").

92.     Proof of literal falsity relieves the plaintiff of its burden to prove actual consumer deception. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 171 (3d Cir. 2001) ("If an advertisement is literally false, the plaintiff does not have to prove actual consumer deception.") A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 -87 (3d Cir. 2002) (*quoting Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000)).

93.     Where a claim is not literally false, a plaintiff may assert a false advertising claim by proving: (1) that the defendant has made false or misleading statements as to his own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions . . . *Id.* at 590 (*quoting Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)).

94.     Plaintiffs must establish economic or reputational injury proximately caused by the unfair competition. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377,

1384 (2014). However, if the challenged statements were made with the intent to deceive consumers, then a party asserting a Lanham Act need not prove causation. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 481 (D.N.J. 2009) ("For example, a 'predicate finding of intentional [or willful] deception, as a major part of the defendant's marketing efforts, contained in comparative advertising[;]' will justify a rebuttable presumption of causation and injury in fact."); *McNeilab, Inc. v. Am. Home Prod. Corp.*, 501 F. Supp. 517, 530 (S.D.N.Y. 1980); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1337 (8th Cir. 1997) (holding that a party "need not have been required to present extrinsic evidence of confusion" because the defendant "violated the Lanham Act willfully and in bad faith").

## B.      Requested Relief for False Advertising

### i.      Issues of Law to be Litigated

95.      Whether Qorvo has proven that it is entitled to recover compensatory damages resulting from Akoustis's false advertising.

96.      Whether Qorvo has proven that it is entitled to injunctive relief prohibiting Akoustis from engaging in false advertising.

97.      Whether Qorvo has proven that it is entitled to attorneys' fees and costs for Akoustis's violations of the Lanham Act.

98.      Whether Qorvo has proven that it is entitled to any other relief as this Court deems just and proper.

### ii.      Legal Authority

99.      Section 1117 of the Lanham Act provides that, where there has been a violation of Section 1125(a), "the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."

100.    The Lanham Act vests district courts with the "power to grant injunctions, according to the principles of equity and upon terms as the court may deem reasonable, to . . . prevent a violation under subsection (a) . . . of Section 1125 of this title." 15 U.S.C. § 1116(a).

101.    "[A] permanent injunction may only issue where there is a likelihood of irreparable injury in the absence of the injunction." *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 204 (S.D.N.Y.), modified on reconsideration, 642 F. Supp. 2d 206 (S.D.N.Y. 2009). A presumption of injury is proper "when the defendant has explicitly compared its product to the plaintiff's or the plaintiff is an obvious competitor with respect to the misrepresented product." *Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000).

102.    The court in exceptional cases may award reasonable attorney fees to the prevailing party. Exceptional cases include cases where the defendant has acted willfully and/or showed a lack of accountability for false statements during litigation. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 315 (3d Cir. 2014) ("[A] district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'") (*quoting Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)); *G6 Hosp. Franchising LLC v. HI Hotel Grp., LLC*, 171 F. Supp. 3d 340, 349 (M.D. Pa. 2016) ("Although culpability is no longer a 'threshold requirement,' the Third Circuit in Fair Wind Sailing, Inc. stated that 'blameworthiness may well play a role in a district court's analysis of the 'exceptionality' of a case.'") (*quoting Fair Wind Sailing*, 764 F.3d at 315)); *see also Cosmetic Warriors Ltd. v. Nailush LLC*, No. 17-1475 (RBK/JS), 2017 U.S. Dist. LEXIS 183886, at *15-17 (D.N.J. Nov. 6, 2017) (awarding fees); *Renna v. Cty. of Union*, No. 11-3328 (KM), 2015 U.S. Dist. LEXIS 1370, at *15-22 (D.N.J. Jan. 6, 2015) (same).

103.    The Lanham Act also allows a prevailing party "to recover . . . the cost of the action." 15 U.S.C. § 1117(a)(3).

## IV.    UNFAIR AND DECEPTIVE TRADE PRACTICES PROHIBITED BY NC. GEN. STAT. § 75-1

### A.    Liability for Unfair and Deceptive Trade Practices

#### i.    Issues of Law to be Litigated

104.    Whether Qorvo has proven by a preponderance of the evidence that Akoustis committed an unfair or deceptive act or practice by making false statements that Akoustis's BAW filters use "single crystal" technology that has superior performance compared to polycrystalline BAW filters.

105.    Whether Qorvo has proven by a preponderance of the evidence that Akoustis committed an unfair or deceptive act or practice by systematically recruiting large numbers of current and former Qorvo employees as part of a scheme to obtain Qorvo's confidential information.

106.    Whether Qorvo has proven by a preponderance of the evidence that Akoustis committed an unfair or deceptive act or practice by stealing and misusing Qorvo's confidential information.

107.    Whether Qorvo has proven by a preponderance of the evidence that Akoustis committed an unfair or deceptive act or practice by misappropriating Qorvo's trade secrets.

108.    Whether Qorvo has proven by a preponderance of the evidence that Akoustis's unfair or deceptive acts were in or affecting commerce.

109.    Whether Qorvo has proven by a preponderance of the evidence that Akoustis's unfair or deceptive acts have caused injury to Qorvo.

110.     Whether Akoustis has proven by a preponderance of the evidence that Qorvo's unfair competition claim is barred under the statute of limitations.

### ii.     Legal Authority

111.     To establish a claim for unfair competition under North Carolina law, N.C.G.S. § 75-1.1, a plaintiff must prove "(1) the defendants committed an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiffs or to the plaintiffs' business." *Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012); Dalton v. Camp, 353 N.C. 647, 656 (N.C. 2001).

112.     "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and a practice is deceptive if it has the capacity or tendency to deceive." *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 228 (N.C. 2013).

113.     Under North Carolina law, raiding a competitor's employees to obtain confidential information is an unfair trade practice. *See, e.g., Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 620 S.E.2d 222, 230-31 (N.C. Ct. App. 2005) (By using [Plaintiff's] former BPS employees and confidential information, defendant … was able to tailor rental fleets at its branches without spending the time, money and effort necessary to develop such information" and "Defendants' acts were unfair and unscrupulous and caused injury to plaintiff."); *Glover Constr. Co. v. Sequoia Servs., LLC*, No. 18-cvs-1900, 2020 WL 3393065, at *17-18 (N.C. Super. Ct. June 18, 2020) (allegations of soliciting employees and misappropriating trade secrets state an unfair competition claim).

114.     Misuse of confidential information is an unfair trade practice under North Carolina law. *See, e.g., Velocity Sols., Inc. v. BSG Fin., LLC*, No. 15-CVS-1059, 2016 NCBC

LEXIS 19, at *7-8 (N.C. Super. Ct. Feb. 22, 2016) (denying the motion to dismiss where the plaintiff alleged the defendant had "specifically engaged and directed [the plaintiff's former employee] to utilize the [p]laintiff's confidential and proprietary information in order to achieve competitive gain"); *CNC/Access, Inc. v. Scruggs*, No. 04-CVS1490, 2006 NCBC LEXIS 22, at *27-31 (N.C. Super. Ct. Nov. 17, 2006) (denying summary judgment where defendant allegedly used plaintiff's confidential information).

115.    Misappropriating trade secrets is an unfair trade practice under North Carolina law. *Software Pricing Partners, LLC v. Geisman*, 19-cv-00195, 2022 WL 3971292 (W.D.N.C. Aug. 31, 2022) ("Misappropriation of trade secrets may form the basis of a claim under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq., if the misappropriation satisfies the three required elements form an unfair trade practices claim."); *Medical Staffing Network v. Ridgway*, 194 N.C. App. 649, 659 (N.C. Ct. App. 2009) ("A violation of the Trade Secrets Protection Act constitutes an unfair act or practice under N.C. Gen. Stat. § 75-1.1. N.C. Gen. Stat. § 66-146 (2007).").

116.    False advertising also constitutes unfair competition. *See LStar Dev. Grp., Inc. v. Vining*, No. 20-CV-184, 2021 U.S. Dist. LEXIS 181972, at *30-33 (E.D.N.C. Sept. 23, 2021) (denying defendant's motion to dismiss plaintiff's unfair and deceptive trade practices claim because "it c[ould] be reasonably inferred that an alleged false statement . . . [was] likely to harm plaintiff."); *Ellis v. N. Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990) ("We have concluded, for example, that both false advertising and fraud violate [N.C.G.S. § 75-1.1].").

117.    Whether an act or practice is unfair or deceptive is a question of law for the court. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681, *reh'g denied*, 352 N.C. 599, 544 S.E.2d 771 (2000).

118.    An civil action for unfair competition under the North Carolina's Unfair and Deceptive Trade Practices Act is barred unless commenced within four years after the cause of action accrues. *See* N.C. Gen. Stat. § 75–16.2; *J. Reynolds Tobacco Co. v. S K Everhart Inc.*, No. 00-cv-0260, 2003 WL 21788858, at *7 (M.D.N.C. July 31, 2003).

119.    When an action for unfair and deceptive trade practices is based on deceptive and/or fraudulent conduct, the action accrues at the time the fraud and/or deception is discovered or should have been discovered with the exercise of reasonable diligence. *Valencia v. Midnite Rodeo, LLC.*, No. 3:22-cv-665-RJC-DCK, 2023 WL 7031561, *5 (W.D.N.C. Sept. 13, 2023); Nash v. Motorola & Elecs., 96 N.C. App. 329, 331 (N.C. Ct. App. 1989).

### B.    Requested Relief for Unfair and Deceptive Trade Practices

#### i.    Issues of Law to be Litigated

120.    Whether Qorvo has proven that it is entitled to compensatory damages based on Akoustis's unfair and deceptive trade practices.

121.    Whether Qorvo has proven that it is entitled to treble damages based on Akoustis's unfair and deceptive trade practices.

122.    Whether Qorvo has proven that it is entitled to any other relief as this Court deems just and proper.

#### ii.    Legal Authority

123.    "[T]he fact finder in an unfair and deceptive trade practices claim has broad discretion in awarding damages to insure that the plaintiff is made whole and the wrongdoer does not profit from its conduct." *GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 239, 752 S.E.2d 634, 652 (2013); *Sunbelt Rentals, Inc. v. Head Engquist Equip*, 174 N.C. App. 49 (N.C. Ct. App. 2005) (affirming award of damages by noting that "[u]nder the UDTPA, plaintiff was awarded

lost profits and the value of benefit defendants received, two different types of damages permitted under the UDTPA.").

124.    "If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." N.C. Gen. Stat. Ann. § 75-16; *See Chase Manhattan Mortgage Co. v. Lane*, No. 3:09-cv-47 (W.D.N.C. July 9, 2010) ("Damages assessed for violation of N.C.G.S. § 75.1-1 are automatically trebled.").

## V.    MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFENSE OF TRADE SECRETS ACT (18 U.S.C. § 1832 ET SEQ.) AND UNDER THE NORTH CAROLINA TRADE SECRETS PROTECTION ACT (N.C. GEN. STAT § 66-152 ET SEQ.)

### A.    Ownership of Protectable Trade Secret

#### i.    Issues of Law to be Litigated

125.    Whether Qorvo has proven by a preponderance of the evidence that it owns one or more trade secrets.

126.    Whether Qorvo has proven by a preponderance of the evidence that it took reasonable measures to keep secret one or more of the identified trade secrets.

127.    Whether Qorvo has proven by a preponderance of the evidence that one or more of the identified trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

-34-

128.    (For the Defend Trade Secrets Act ("DTSA")) whether Qorvo has proven by a preponderance of the evidence that it uses or intends to use one or more of the identified trade secrets in interstate or foreign commerce.

### ii.    Legal Authority

129.    The federal DTSA creates a private cause of action for the owner of a trade secret "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(l).  The DTSA requires a plaintiff to demonstrate: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that 'is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]'; and (3) the misappropriation of that trade secret."  *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021).

130.    To state a claim for misappropriation of trade secrets under the North Carolina Trade Secrets Protection Act ("NCTSPA"), a plaintiff must show "(1) the existence of a trade secret, and (2) misappropriation of that trade secret*." Channeltivity, LLC v. Allbound, Inc*., No. 20-CV-0611, 2021 WL 4484576 (W.D.N.C. Sept. 2, 2021); N.C. Gen. Stat. §66-155.

131.    A "trade secret" under the DTSA "means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if— **(A)** the underlined owner thereof has taken reasonable measures to keep such information secret; and **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person

who can obtain economic value from the disclosure or use of the information." 18 U.S.C.

§ 1839(3)(A)(B).

132.    The North Carolina Trade Secrets Protection Act ("NCTSPA") defines a trade

secret as "business or technical information, including but not limited to a formula, pattern,

program, device, compilation of information, method, technique, or process that: a. Derives

independent actual or potential commercial value from not being generally known or readily

ascertainable through independent development or reverse engineering by persons who can

obtain economic value for its disclosure or use; and b. Is the subject of efforts that are reasonable

under the circumstances to maintain its secrecy." N.C.G.S. § 66-152(3).

133.    The District of Delaware and other courts in this Circuit have confirmed that the

DTSA defines "trade secret" broadly to include "all forms and types of financial, business,

scientific, technical, economic, or engineering information." *You Map, Inc. v. Snap Inc.*, No. 20

162-CFC, 2021 WL 3171838, at *8 (D. Del. July 27, 2021), report & recommendation adopted,

2022 WL 4377031 (D. Del. Sept. 22, 2022); *see also* Giorgi Glob. *Holdings, Inc. v. Prasad*, No.

20-1992, 2022 WL 1017617, at *5 (W.D. Pa. Apr. 4, 2022) (same). A wide variety of

information can constitute trade secrets.  *E.g., Oakwood Lab'ys LLC v. Thanoo,* 999 F.3d 892,

907 (3d Cir. 2021) (information related to "design, research and development, test methods and

results, manufacturing processes, quality assurance, marketing strategies, and regulatory

compliance" constituted actionable trade secrets); *Arconic Inc. v. Novelis Inc*., No. CV 17-1434,

2019 WL 6498876, at *3 (W.D. Pa. Oct. 26, 2019)*, report and recommendation adopted,* No.

CV 17-1434, 2019 WL 6496721 (W.D. Pa. Dec. 3, 2019) (Ford's "technical specifications, and

Ford's internal decision-making process—constitute Ford's trade secrets and/or proprietary,

confidential information."); *Corp. Synergies Grp., LLC v. Andrews*, No. 18-13381, 2019 WL

-36-

3780098, at *4 (D.N.J. Aug. 12, 2019) ("Customer lists, pricing information, and marketing techniques constitute trade secrets under New Jersey law and the DTSA."); *Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 522 (E.D. Pa. 2018) ("pricing information" and "regional business plan" are protected trade secrets); *Fin. Info. Techs., LLC v. iControl Sys., USA, LLC*, 21 F.4th 1267, 1273 (11th Cir. 2021) ("As a general matter, software source code is not readily ascertainable and, accordingly, qualifies for trade-secret protection."); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020) (holding a "reasonable jury could conclude that the uniquely designed [SQL] tables, columns, account number structures, methods of populating table data, and combination or interrelation thereof, are protectable trade secrets").

134.    "A trade secret can be the combination of steps into a process . . . even if all the component steps are known, so long as it is a unique process which is not known in the industry." *Elenza, Inc. v. Alcon Labs. Holding Corp.*, 183 A.3d 717, 721 (Del. 2018). *See also Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 740 (2d Cir. 1965); *Servo Corp. of Am. v. Gen. Elec. Co.*, 393 F.2d 551, 555 (4th Cir. 1968) ("We do not believe that . . . General Electric should be allowed to avoid the consequences of the breach of confidence by piecing together in retrospect bits of information which had been disclosed in a variety of places and which as a combination were not clearly a matter of public knowledge."); *Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 433 (3d Cir. 1982).

135.    "[U]se of non-disclosure agreements and appropriate facility security measures" constitute "reasonable steps to protect the secrecy of" a trade secret. *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019);  *Revzip, LLC v. McDonnell*, No. 3:19 cv 191, 2020 WL 1929523, at *8 (W.D. Pa. Apr. 21, 2020) ("One reasonable measure that a trade secret owner can take to keep its trade secrets secret is to have employees sign confidentiality

agreements. Restricting access to the trade secrets at issue is also a reasonable measure. Security measures for physical facilities also constitute reasonable measures. A reasonable extension of physical security measures is electronic or computer security measures such as password protection." (citations omitted)); *Progressive Sterilization, LLC v. Turbett Surgical LLC*, No. 19-627-CFC, 2020 WL 1849709, at *7-8 (D. Del. Apr. 13, 2020) (allegations that plaintiff maintained the trade secret in confidence, sought confidentiality agreements or otherwise made persons with access aware they must keep the material secret were sufficient to indicate plaintiff took reasonable measures) (*citing, inter alia, Brightstar Corp. v. PCS Wireless, LLC*, C.A. No. N18C-10-250 PRW CCLD, 2019 WL 3714917, at *7 (Del. Super. Ct. Aug. 7, 2019) (noting that in Delaware "[t]he reasonable efforts requirement is not a high bar")), report & recommendation adopted, 2020 WL 3071951 (D. Del. June 10, 2020).

136.    "A plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *Flexible Techs., Inc. v. SharkNinja Operating LLC*, Civil Action No. 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) (internal quotation marks and citation omitted); *Dow Chemical Canada, Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012). The reasonableness of the identification depends on the facts of the particular case. *MicroVention, Inc. v. Balt USA, LLC*, No. 20-cv-02400, 2023 WL 4316880, at *6 (C.D. Cal. May 3, 2023) (plaintiff identified trade secrets with reasonable particularity when it "identified thousands of documents by Bates numbers or other methods").

137.    Claims under the DTSA and NCTSPA are adjudicated together. *See Syngenta Seeds, LLC v. Warner*, 2021 U.S. Dist. LEXIS 32385, at *31–32, 2021 WL 679289 (D. Minn.

Feb. 22, 2021) (analyzing claims under the NCTSPA and the DTSA together because the parties'

arguments did not "implicate any differences between the DTSA and the NCTSPA" and the

parties did not argue or otherwise identify any difference between the respective statutes); *see*

*also Herrmann Int'l, Inc. v. Herrmann Int'l Eur.*, 2021 U.S. Dist. LEXIS 42277, at *34–38, 2021

WL 861712 (W.D.N.C. Mar. 6, 2021) (analyzing claims pursuant to the DTSA and the NCTSPA

together).

### B.    Misappropriation

#### i.    Issues of Law to be Litigated

138.    Whether Qorvo has proven by a preponderance of the evidence that Akoustis

misappropriated one or more trade secrets.

139.    Whether Akoustis can be held vicariously liable for the trade secret

misappropriation committed by its employees.

140.    Whether Akoustis has proven by a preponderance of the evidence that Qorvo's

trade secret claims are barred under the applicable statutes of limitations.

#### ii.    Legal Authority

141.    Under the DTSA, "misappropriation" means:

> (A) acquisition of a trade secret of another by a person who knows
> or has reason to know that the trade secret was acquired
> by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or
> implied consent by a person who—
>
>> (i) used improper means to acquire knowledge of the trade
>> secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to
>> know that the knowledge of the trade secret was—
>>
>>> (I) derived from or through a person who had
>>> used improper means to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that—

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. §1839(5).

142.    Under the NCTSPA, "misappropriation" is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. §66-152(1).

143.    The term "use" should be given an "expansive interpretation." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, at 909-910 (3d Cir. 2021). "Use" is broadly defined in the context of trade secret misappropriation as "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *Id*. (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450-51 (5th Cir. 2007))."Thus, marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret ... all constitute 'use.' " *Id.*

144.    The term "improper means" includes "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic

or other means." 18 U.S.C. § 1839(6)(A). "Rarely can a plaintiff demonstrate misappropriation through direct evidence. Instead, a plaintiff may rely on circumstantial evidence, such as proof that the defendants had access to its trade secret material and that there are similarities between its products and the defendants' products." *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. CV 21-704, 2022 WL 2177559, at *3 & n.21 (D. Del. June 16, 2022) (citing *Elmagin Cap., LLC v. Chen*, No. 20-2576, 2022 WL 1172970, at *7 (E.D. Pa. Apr. 20, 2022)). The "speed with which" a trade secret defendant supposedly independently discovered a trade secret supports an inference that the secret was misappropriated. *Dickerman Assocs., Inc. v. Tiverton Bottled Gas Co.*, 594 F. Supp. 30, 36 (D. Mass. 1984) ("Based upon the similarities of the two programs detailed earlier, DeYoung's notes, the availability of the JMS manual to Vaill and DeYoung, their use of it, and the speed with which they assembled their system, the conclusion that they copied substantial portions of JMS is inescapable.").

145. Under the NCTSPA, "misappropriation" is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. §66-152(1).

146. "Because trade secret misappropriation is an intentional tort, an employer may be vicariously liable for an employee's tort so long as it was committed within the scope of the employment." *Brain Inj. Ass'n of California v. Yari*, No. CV 19-5912-MWF (JCX), 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020) (vicarious liability sufficiently pled where employee used the plaintiff's confidential information to the benefit of her new employer); *Newport News Indus. v. Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 754 (E.D. Va. 2001) (holding "theory of vicarious liability would apply to trade secret torts committed by an agent in the course and the

scope of the agency" and "it is perfectly consistent to hold the employer liable for the infringing

acts of its employee committed within the employee's scope of employment because the

"employer reaps the benefit of the employee's misconduct and therefore should be liable for the

harm that conduct causes."); *SolarCity Corp. v. Pure Solar Co.*, No. 16-CV-01814, 2016 WL

11019989, at *5 (N.D. Cal. Dec. 27, 2016) (holding employee-defendant was acting within the

scope of his employment with defendant-company when he used plaintiff's confidential

information to the benefit of the defendant-company); *Pac. Aerospace & Elecs., Inc. v. Taylor*,

295 F. Supp. 2d 1188, 1192–1193 (E.D. Wash. 2003) (vicarious liability imposed where a

corporate defendant hired competitor's employees who misappropriated trade secrets and

confidential information); *Gates Rubber Co. v. Bando Chemical Indus.*, 9 F.3d 823, 847 (10th

Cir.1993) (misappropriation is attributed to the employing company if the company "knew or

should have known that the trade secret was acquired by improper means.").

147.    Under the DTSA, a civil action for trade secret misappropriation must be

commenced no later than "3 years after the date on which the misappropriation with respect to

which the action would relate is discovered or by exercise of reasonable diligence should have

been discovered. 18 U.S.C. § 1836(d). Under the DTSA, "a continuing misappropriation

constitutes a single claim of misappropriation." *Id.*

148.    Under the NCTSPA, an action for trade secret misappropriation must be

commenced within three years after the misappropriation complained of is or reasonably should

have been discovered. N.C. Gen. Stat. § 66-157.

149.    North Carolina applies the "continuing wrong" doctrine  as "part of the usual

rules governing the operation of statutes of limitations." *Azima v. Del Rosso*, No. 20-cv-0954,

2021 WL 5861282, at *8 (M.D.N.C. Dec. 10, 2021). Under that doctrine, the applicable

limitations period "starts anew in the event that an allegedly unlawful act is repeated." *Id.* As applied to claims under the NCTSPA, the continuing wrong doctrine operates to provide that each individual act of misappropriation "violates the law on its own" and "each act separately triggers its own limitations period." *Id.*

### C.     Relief for Misappropriation

#### i.     Issues of Law to be Litigated

150.    Whether Qorvo has proven by a preponderance of the evidence that it is entitled to damages as a result of Defendants' misappropriation of trade secrets.

151.    Whether Qorvo has proven by a preponderance of the evidence the amount of damages it is entitled to receive to compensate Qorvo for its economic injury or for Defendants' unjust enrichment.

152.    Whether Qorvo has proven that it is entitled to injunctive relief prohibiting Defendants and their parents, subsidiaries, affiliates, officers, directors, agents, employees, successors, assigns, and attorneys, and any and all others acting in privity or concert with them from using any of Qorvo's trade secret information.

153.    Whether Qorvo has proven that Akoustis willfully and maliciously misappropriated trade secrets such that Qorvo would be entitled to an award of exemplary damages.

154.    Whether Qorvo has proven that it is entitled to attorneys' fees and costs as a result Defendants' use of Qorvo's trade secret information.

155.    Whether Qorvo has proven that it is entitled to pre-judgment and post-judgment interest on the damages awarded, costs, expenses, and attorneys' fees.

156.    Whether Qorvo has proven that it is entitled to any other relief as this Court deems just and proper.

### ii.    Legal Authority

157.    Under 18 U.S.C. § 1836, the Court may grant Qorvo an injunction.  18 U.S.C. § 1836(b)(3)(A).  The Court may also award Qorvo monetary "damages for actual loss caused by the misappropriation of the trade secret" and "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss." 18 U.S.C. § 1836(b)(3)(B).

158.    Unjust enrichment is the amount Akoustis benefited as a result of its misappropriation of Qorvo's trade secrets. *HID Global Corp. v. Vector Flow, Inc.*, Case No. 21-1769-GWB, D.I. 498 at * 24 (D. Del. Jan. 23, 2024). Regardless of whether Qorvo itself suffered losses, if Akoustis benefited from using a trade secret belonging to Qorvo, then Qorvo is entitled to the monetary value attributed to those benefits. *Id.* Ultimately, "[a]n action for recovery seeking unjust enrichment damages is 'grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust.'" *Epic Sys. Corp. v. Tata Consultancy Servs.*, 980 F. 3d 1117, 1130 (7th Cir. 2020). "[T]here is no single way to measure the benefit conferred on a defendant; the measurement is context dependent. The important considerations are that a . . . jury calculates the benefit to the defendant—not the loss to the plaintiff—and that this calculation is done with reasonable certainty." *Id.*

159.    Unjust enrichment damages can include a defendant's profits, avoided development costs, and/or the commercial advantage the defendant received, including the benefit of any head start. *E.g.*, *Sabre GLBL, Inc. v. Shan*, 779 F. App'x 843, 851 (3d Cir. 2019) (identifying the differences between avoided development costs and head start damages). "This variety of approaches demonstrates the 'flexible' approach used to calculate damages for claims of misappropriation of trade secrets." *Wellogix, Inc.*, 716 F.3d at 879; *Univ. Computing Co. v.*

*Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974) ("The case law is thus plentiful, but the standard for measuring damages which emerges is very flexible.").

160.     Courts have recognized that the time value of money is an economic benefit that can be recovered as damages. *E.g. U.S. v. Allegheny Ludlum Corp.*, 366 F.3d 164, 178 (3d Cir. 2004) (identifying "return on capital" *e.g.*, the "time value of money" as "an appropriate calculation of economic benefit" that must be disgorged to prevent a defendant from being unjustly enriched by its environmental violations and acknowledging that weighted average cost of capital can be used to calculate this benefit); *U.S. v. Torlai*, 728 F.3d 932, 945, n.11 (9th Cir. 2013) (discussing the time value of money as an economic benefit that a fraudster received, such that the calculation applied by the district court "understates the true economic benefit" the defendant received as a result of its fraud); *Rathborne Land Co. v. Ascent Energy, Inc.*, 610 F.3d 249, 257 (5th Cir. 2010) (time value of money was a damage plaintiff recovered in a leasing dispute).

161.     Various "jurisdictions have recognized that avoided costs of developing a trade secret are recoverable for unjust enrichment under the DTSA and state law counterparts." *MedImpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No. 19cv1865, 2022 WL 5460971, at *5 (S.D. Cal. Oct. 7, 2022); *see, e.g., Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 809 (2d Cir. 2023) ("[U]njust enrichment can include 'avoided costs'— i.e., the costs a trade secret holder had to spend in research and development that a trade secret misappropriator saves by avoiding development of its own trade secret. . . . [A]voided costs are recoverable as damages for unjust enrichment under the DTSA.").

162.     The expenses that Qorvo incurred in research and development of its trade secrets are indicative of the costs that Akoustis avoided by misappropriating Qorvo's trade secrets.  *See*

*PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 163 (3d Cir. 2022) ("The
District Court did not look to PPG's R&D costs to reimburse PPG. Rather, it looked to those
costs as indicative of the costs PPG's competitor, TMG, avoided by misappropriating the fruits
of PPG's work. As other courts have agreed in similar circumstances, that inference is a perfectly
permissible way to find a damages amount . . . ." (footnote omitted)); *see also GlobeRanger
Corp. v. Software AG U.S.A., Inc.*, 836 F.3d 477, 499 (5th Cir. 2016) ("The costs a plaintiff spent
in development . . . can be a proxy for the costs that the defendant saved.").

163.    To the extent Defendants' conduct is found to have been willful, "if the trade
secret is willfully and maliciously misappropriated, [an] award [of] exemplary damages in an
amount not more than 2 times the amount of the damages awarded under subparagraph (B)" of
§ 1836 is appropriate.  18 U.S.C. § 1836(b)(3)(C).

164.    Under the DTSA, the Court determines whether exemplary damages are
appropriate. *See AgroFresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2020 WL 7024867 at *23
(D. Del. Nov. 30, 2020) ("[b]oth the DTSA and PUTSA provide that, in cases of willful and
malicious misappropriation, the Court may award additional exemplary damages in an amount
not to exceed double the damages award."). Under the NCTSPA, "[i]f willful and malicious
misappropriation exists, the trier of fact also may award punitive damages in its discretion."  *See*
N.C. Gen. Stat. § 66-154.

165.    To the extent Defendants are found to have been willfully and maliciously
misappropriated Qorvo's trade secret information, attorneys' fees and costs may also be awarded
under 18 U.S.C. § 1836(b)(3)(D).

166.    It is well established that "the loss of goodwill and reputation, if proven, can
constitute irreparable harm." *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 680 (7th

Cir. 2012); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.1

(3d ed. 2002 & April 2021 Supp.) ("Injury to reputation or goodwill is not easily measurable in

monetary terms, and so often is viewed as irreparable.").  Furthermore, it is well established that

the loss of market position can constitute irreparable harm.  *See, e.g., Comet Techs. v. Beuerman*,

No. 18-CV-01441-LHK, 2018 WL 1990226, at *5 (N.D. Cal., Mar. 15, 2018); *Waymo LLC v.*

*Uber Techs.*, No. C 17-00939 WHA, 2017 WL 2123560, at *11 (N.D. Cal. May 15, 2017).

167.    Pre-judgment interest may be awarded to "restore a plaintiff to the position it

would have been in had there been no wrongdoing." *Agrofresh Inc. v. Essentiv LLC*, No. 16-662

(MN), 2020 WL 7024867, at *26 (D. Del. Nov. 30, 2020) (*citing Taxman v. Bd. of Educ. of Twp.*

*of Piscataway*, 91 F.3d 1547, 1566 (3d Cir. 1996)) ("This broad discretion, of course, extends to

a determination of the appropriate interest rate to apply.").  Post-judgment interest is "mandatory

for damages awarded in civil cases." *Id.* at *28 (citing 28 U.S.C. § 1961(a)).

## VI.    CIVIL CONSPIRACY UNDER NORTH CAROLINA

### A.    Liability for Civil Conspiracy

#### i.    Issues of Law to be Litigated

168.    Whether Qorvo has proven by a preponderance of the evidence that there was an

agreement between two or more individuals.

169.    Whether Qorvo has proven by a preponderance of the evidence that there was an

agreement between two or more individuals to do an unlawful act or to do a lawful act in an

unlawful way.

170.    Whether Qorvo has proven by a preponderance of the evidence that there was

resulting injury to Qorvo inflicted by one or more of the conspirators.

171.    Whether Qorvo has proven by a preponderance of the evidence that there was resulting injury to Qorvo inflicted by one or more of the conspirators pursuant to a common scheme.

172.    Whether Akoustis has proven by a preponderance of the evidence that Qorvo's claim for civil conspiracy is barred under the applicable statute of limitations.

### ii.    Legal Authority

173.    The elements of a civil conspiracy are: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Bottom v. Bailey*, 238 N.C. App. 202, 212, 767 S.E.2d 883, 890 (2014) (*quoting Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008)).

174.    The agreement to form a conspiracy must be an intention by two or more persons to pursue a common objective, or "a meeting of the minds on the object or course of action [to be accomplished]. ..." *Dalton v. Camp*, 135 N.C. App. 32, 42, 519 S.E.2d 82, 89 (1999).

175.    "[S]ufficient evidence of the agreement must exist to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Boyd v. Drum*, 129 N.C. App. 586, 592, 501 S.E.2d 91, 96 (1998) (internal quotations omitted).

176.    "[C]ivil conspiracy is premised on the underlying act." *Harris v. Matthews*, 361 N.C. 265, 273, n. 2, 643 S.E.2d 566, 571, n. 2 (2007).

177.    A three-year statute of limitations applies to a civil conspiracy claim under North Carolina law. *C.G.C. v. Petteway*, 2022 WL 17985836, at *3 (N.C. Ct. App. 2022) (stating that N.C. Gen. Stat. §1-52(5) supplies limitations period for civil conspiracy claims). The statute of limitations for civil conspiracies "begins to run upon the last act in furtherance of the conspiracy." *Id.*

-48-

**B.     Requested Relief for Civil Conspiracy**

      **i.     Issues of Law to be Litigated**

178.     Whether Qorvo has proven by a preponderance of the evidence that it is entitled to compensatory damages based on Akoustis's civil conspiracy.

179.     Whether Qorvo has proven by a preponderance of the evidence the amount of damages it is entitled to receive based on Akoustis's civil conspiracy.

180.     Whether Qorvo has proven by a preponderance of the evidence that it is entitled to punitive damages based on Akoustis's civil conspiracy.

181.     Whether Qorvo has proven by a preponderance of the evidence that it is entitled to any other relief as this Court deems just and proper.

      **ii.     Legal Authority**

182.     A civil conspiracy is an action for "damages caused by acts committed pursuant to a formed conspiracy." *Henderson v. LeBauer*, 101 N.C. App. 255 (1991).

183.     "Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud. (2) Malice. (3) Willful or wanton conduct." N.C. Gen. Stat. § 1D-15.

184.     The trier of fact determines punitive damages. *See* N.C. Gen. Stat. § 1D-30 ("Evidence relating solely to punitive damages shall not be admissible until the trier of fact has determined that the defendant is liable for compensatory damages and has determined the amount of compensatory damages. The same trier of fact that tried the issues relating to compensatory damages shall try the issues relating to punitive damages.").

# Exhibit B.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT ___ TO PRETRIAL ORDER**

**THE AKOUSTIS DEFENDANTS'
STATEMENT OF ISSUES OF LAW TO BE LITIGATED**

Akoustis identifies the following issues of law that remain to be litigated, with citations to authorities relied upon. This statement is based on the arguments Akoustis expects to make as well as its understanding of the arguments that Qorvo is likely to make. Akoustis reserves the right to supplement this statement based on Qorvo's arguments and statements. If an issue identified herein is more properly considered an issue of fact, it should be so considered. If an issue of fact is more properly considered an issue of law, that issue is incorporated into this statement. The authorities cited herein are not exhaustive; Akoustis may rely on authority not cited in this statement. Further, the issues of law identified herein do not include any outstanding issues of law with respect to the parties' proposed jury instructions. Akoustis will present those legal issues in its proposed instructions to the Court and will address any outstanding issues with respect to jury instructions at the Pretrial Conference or the charging conference. Further, the following list of issues of law

- 1 -

to be litigated is not intended to encompass legal arguments Akoustis may make in support of or in opposition to a motion for judgment as a matter of law. [1]

## I.    Alleged Infringement of the '018 and '755 Patents

### A.    Direct Infringement of Claims 1 and 12 of the '018 Patent and Claims 9 and 10 of the '755 Patent.

1.      The jury must decide whether Qorvo has proven by a preponderance of evidence that Akoustis has directly infringed any of Claims 1 and 12 of the '018 Patent and/or Claims 9 and 10 of the '755 Patent, either literally or through the doctrine of equivalents, by making, using, offering to sell, and/or selling the accused products. 35 U.S.C. § 271(a); *Wartner-Jenkinson Corp. v. Hilton Davis Corp.,* 520 U.S. 17, 29 (1997); *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1161 (Fed. Cir. 1997) ("The patentee bears the burden of proving infringement by a preponderance of the evidence.").

2.      The infringement analysis involves two steps. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). The first step is to define disputed terms of the patent consistent with how those terms would be understood to one of ordinary skill in the art. *Id.; Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The second step is to determine whether the accused product infringes the patent, which is done by comparing the accused product with the properly construed claims. *Markman,* 52 F.3d at 976.

3.      To literally infringe a patent claim, an accused product or process must have or perform every limitation of the claim exactly as recited in the claim—i.e., the "properly construed

---

[1]  Akoustis submits this Statement of Issues of Law for the remaining claims in this litigation.  It does not address issues related to Count IV (False Patent Marking) and  Count VII (RICO), which Qorvo is no longer pursuing.  *See* D.I. 501 at 30.

claim reads on the device exactly." *Engel Indus., Inc. v. Lockformer Co.,* 96 F.3d 1398, 1405 (Fed. Cir. 1996). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Res. Corp.,* 212 F.3d 1241, 1247 (Fed. Cir. 2000); *see also Johnson v. IVAC Corp.,* 885 F.2d 1574, 1577-78 (Fed. Cir 1989) (the patentee must prove that "every limitations set forth in a claim must be found in an accused product or process exactly.").

4.     An accused device or process that does not literally infringe may still infringe under the doctrine of equivalents "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.*

5.     To prove infringement under the doctrine of equivalents, the patentee must prove by a preponderance of evidence "the accused device contains an equivalent for each limitation not literally satisfied." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 812 (Fed. Cir. 2002). To prove equivalence, a patentee generally must "show[] that the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.,* 508 F.3d 1358, 1364 (Fed. Cir. 2007).

**B.     Willfulness**

6.     The jury must decide whether Qorvo has proven by a preponderance of evidence that Akoustis' infringement has been willful.

7.     Knowledge of the asserted patent is a prerequisite to any finding of willful infringement. Conduct that is "willful, wanton, malicious, bad faith, deliberate, consciously wrong,

or flagrant" may constitute willful infringement and justify the award of enhanced damages. *E.g.,* *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1932 (2016). "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. "Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement." *nCube Corp. v. Seachange Int'l, Inc.,* 436 F.3d 1317, 1324 (Fed. Cir. 2006).

8.      Mere awareness of an asserted patent does not constitute willful misconduct. *See* *Intellectual Ventures 1, LLC v. Symantec Corp.,* 234 F. Supp. 3d 601, 611-12 (D. Del. 2017) (granting summary judgment of no willful infringement where plaintiff "indentifie[d] no evidence of behavior beyond typical infringement"); *Vehicle IP LLC v. AT&T Mobility LLC,* 227 F. Supp. 3d 319, 331 (D. Del. 2016) (granting summary judgment of no willfulness where the patentee "[did] not identify other evidence, beyond pre-suit knowledge of the patent, that could show that [the accused infringer's] infringement was 'egregious,' 'deliberate,' [or] 'wanton'"). Moreover, willful infringement requires more than mere pre-suit knowledge of the patents. *Greatbatch Ltd. v. AVX Corp.,* 2016 WL 7217625, at *3 (D. Del. Dec. 13, 2016) ("The key inquiry . . . is whether there is evidence in addition to [defendant's] pre-suit knowledge of the patents.").

**C.      Invalidity**

9.      The jury must decide whether Akoustis has proven by clear and convincing evidence whether each of the asserted claims of the '018 and '755 Patents is invalid under the theory of obviousness. 35 U.S.C. § 282.

10.      "The presumption of a patent's validity under 35 U.S.C. § 282 can be rebutted by clear and convincing evidence." *Allergan, Inc. v. Apotex Inc.,* 754 F.3d 952, 958 (Fed. Cir. 2014). Once an accused infringer has come "forward with invalidating prior art[,]" the burden shifts to

the patent holder to "show that the prior art does not actually invalidate the patent or that it is not prior art because the asserted claim is entitled to the benefit of an earlier filing date." *Research Corp. Techs., Inc. v. Microsoft Corp.,* 627 F.3d 859, 870 (Fed. Cir. 2010).

11.     To be considered prior art, a reference must have been "accessible to the public interested in the prior art" before the critical date. *In re Omeprazole Patent Litig. v. Apotex Corp.,* 536 F.3d 1361, 1381 (Fed. Cir. 2008). "[A] document may be deemed a printed publication upon a satisfactory showing that it has been disseminated or otherwise made available to the extent that persons interested and of ordinary skill in the subject matter or art, exercising reasonable diligence can locate it and recognize and comprehend therefrom the essentials of the claimed invention without need of further research or experimentation." *Mass. Inst. of Tech. v. AB Fortia,* 774 F.2d 1104, 1109 (Fed. Cir. 1985).

12.     Akoustis bears the burden of proving by clear and convincing evidence that any of the asserted claims of the '018 and '755 Patents are obvious. 35 U.S.C. § 103; 35 U.S.C. § 282.

13.     Patent claims are invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." *See also KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 405, 421 (2007).

14.     "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416. The issue is whether the "improvement is more than the predictable use of prior art elements according to their established functions." *Id.* at 417. "Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the

teachings of multiple patents together like pieces of a puzzle." *Id.* at 420; *see also Leapfrog Enters.* v. *Fisher-Price, Inc.,* 485 F.3d 1157, 1161-1162 (Fed. Cir. 2007).

15.     The question of obviousness requires consideration of objective indicia of nonobviousness. *See KSR,* 550 U.S. at 406 (quoting *Graham,* 383 U.S. at 17-18). "Objective evidence of nonobviousness can include copying, long felt but unsolved need, failure of others, commercial success, unexpected results created by the claimed invention, unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skilled artisans before the invention." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 711 F.3d 1348, 1368 (Fed. Cir. 2013). Objective evidence of non-obviousness requires proof of a "nexus" with the claims and must be commensurate in scope with the claims. *Wyers v. Master Lock,* 616 F.3d 1231, 1246 (Fed. Cir. 2010); *Asyst Techs. Inc. v. Emtrak Inc.,* 544 F.3d 1310, 1316 (Fed. Cir. 2008). The patentee has the burden of production to show the required nexus between the objective indicia and the claimed invention. *Prometheus Laboratories, Inc. v. Roxane Laboratories, Inc.,* 805 F.3d 1092, 1101-02 (Fed. Cir. 2015). For commercial success, the proponent must offer proof "[that] sales were a direct result of the unique characteristics of the claimed invention." *In re Huang,* 100 F.3d 135, 140 (Fed. Cir. 1996). Where "the inventions represented no more than 'the predictable use of prior art elements according to their established functions' . . . the secondary considerations are inadequate to establish nonobviousness as a matter of law." *Wyers,* 616 F.3d at 1246 (quoting *KSR,* 550 U.S. at 417). "[S]econdary considerations of non-obviousness . . . simply cannot overcome a strong prima facie case of obviousness." *Id.; see also Leapfrog,* 485 F.3d at 1162 ("[G]iven the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion [of obviousness].")

### D.       Damages and Other Relief

16.       The jury must decide if the asserted claims of the '018 and '755 Patents are found valid and infringed, and whether Qorvo has proven by a preponderance of the evidence that it is entitled to damages.

17.       "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *Smithkline Diagnostics, Inc. v. Helena Labs., Corp.,* 926 F.2d 1161, 1164 (Fed. Cir. 1991).

18.       **Reasonable Royalty.** A "reasonable royalty damages are deemed the minimum amount of infringement damages 'adequate to compensate for the infringement.' Such damages must be awarded 'for the use made of the invention by the infringer.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 66-67 (Fed. Cir. 2012) (citing 35 U.S.C. § 284). "A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began. A comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation appears in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 116, 1120 (S.D.N.Y. 1970)." *ResQNet.com, Inc. v. Lanza, Inc.,* 594 F.3d 860, 869 (Fed. Cir. 2010) (internal citation omitted). "[A] reasonable royalty analysis requires a court to hypothesize, not to speculate." *Id.* "To prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing,*

185 F.3d at 1350. "[T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com,* 594 F.3d at 869.

19.     Although "[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty," it is well-established that "a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics,* 694 F.3d at 79. Rather, "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue." *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1317 (Fed. Cir. 2011). "[C]omparisons of past patent licenses to the infringement must account for the technological and economic differences between them." *Worldtech Sys., Inc. v. Integrated Network Solutions, Inc.,* 609 F.3d 1308, 1320 (Fed. Cir. 2010); *ResQNet.com,* 594 F.3d at 873 (need "factual findings that accounted for the technological and economic differences between those licenses and the [patent-in-suit]."). Vague comparability is not enough to show technical or economic comparability. *See, e.g., LaserDynamics,* 694 F.3d at 79; *M2M Solutions, LLC v. Enfora, Inc.,* 167 F. Supp. 3d 665, 677 (D. Del. 2016) ("ambiguous conclusions of technological comparability" are not enough); *id.* at 678 ("These unsubstantiated conclusions about economic comparability, lacking in analysis, again provide nothing more than ipse dixit.").

20.     **Apportionment.**  "[A]pportionment is an important component of damages law generally, and we believe it is necessary in both reasonable royalty and lost profits analysis." *Mentor,* 851 F.3d at 1287. Indeed, it is well-established that patent damages "'must reflect the value attributable to the infringing features of the product, and no more.'" *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.,* 809 F.3d 1295, 1301 (Fed. Cir. 2015) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.,* 773 F.3d 1201, 1226 (Fed. Cir. 2014)); *see also Garretson v. Clark,* 111 U.S. 120, 121 (1884). Further, "the patent owner must apportion or separate the damages between

- 8 -

the patented improvement and the conventional components of the multicomponent product." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods.,* 879 F.3d 1332, 1348 (Fed. Cir. 2018).

21.     **Enhanced Damages.** The Court must determine whether Qorvo is entitled to any enhanced damages for Akoustis' alleged infringement of the asserted claims of the '018 and/or '755 Patents.

22.     "Section 284 [of the Patent Act] gives district courts discretion in meting out enhanced damages." *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1934 (2016). However, "they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Id.* at 1932. "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate." *Id.*

23.     **Attorneys' Fees.** The Court must determine whether Qorvo has shown this is an exceptional case justifying an award of attorney fees.

24.     The court in exceptional cases may award reasonable attorney fees to the prevailing party. Exceptional cases include cases where the defendant has acted willfully and/or showed a lack of accountability for false statements during litigation. *See Fair Wind Sailing, Inc. v. Dempster,* 764 F.3d 303, 315 (3d Cir. 2014) ("[A] district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'") (quoting *Octane Fitness, LLC v. Icon Health & Fitness, Inc.,* 134 S. Ct. 1749, 1756 (2014)); *G6 Hosp. Franchising LLC v. HI Hotel Grp., LLC,* 171 F. Supp. 3d 340, 349 (M.D. Pa. 2016) ("Although culpability is no longer a 'threshold requirement,' the Third Circuit in *Fair Wind*

- 9 -

*Sailing, Inc.* stated that 'blameworthiness may well play a role in a district court's analysis of the 'exceptionality' of a case.'") (quoting *Fair Wind Sailing,* 764 F.3d at 315)); *see also Cosmetic Warriors Ltd. v. Nailush LLC,* No. 17-1475 (RBK/JS), 2017 U.S. Dist. LEXIS 183886, at *15-17 (D.N.J. Nov. 6, 2017) (awarding fees); *Renna v. Cty. of Union,* No. 11-3328 (KM), 2015 U.S. Dist. LEXIS 1370, at *15-22 (D.N.J. Jan. 6, 2015) (same).

25.     **Injunctive Relief:** The Court must determine whether Qorvo is entitled to a permanent injunction based Akoustis' alleged infringement of the of the asserted claims of the '018 and/or '755 Patents.

26.     "A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). Specifically, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* However, "an injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms,* 130 S. Ct. 2743, 2748 (2010). If "a less drastic remedy . . . [is] sufficient to redress [a plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Id.* Moreover, a plaintiff must show a causal nexus between the alleged infringement and the alleged harm. *Apple Inc. v. Samsung Elecs. Co.,* 735 F.3d 1352, 1360 (Fed. Cir. 2013).

27.     **Additional Relief**:  The Court must determine whether Qorvo is entitled to accounting of damages, prejudgment or post-judgment interest, or other relief.

28.     Upon a finding of infringement, a patentee may be entitled to an accounting for any infringing sales that occurred before the verdict but that were not reflected in the last financial discovery produced. See, E.I. DuPont de Nemours and Co. v. Unifrax I LLC, No. 14-1250-RGA, 2017 WL 4004419, *7-*8 (D. Del. 2017).

29.     A plaintiff may seek to recover prejudgment interest under 35 U.S.C. § 184.  Courts have discretion to decline to award prejudgment interest in specific circumstances, such as when the liability amount was not liquidated or reasonably capable of determination prior to trial or if "the requesting party "has been responsible for undue delay in prosecuting the lawsuit." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). Post-judgment interest is governed by 28 U.S.C. § 1961, which states: "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Id; *MHL Custom, Inc. v. Waydoo USA*, Inc., No. CV 21-0091-RGA, 2023 WL 5805889, at *8 (D. Del. Sept. 7, 2023)

## II.     Alleged False Advertising Under the Lanham Act

30.     The jury must determine whether Qorvo has proven that Akoustis made a literally false or misleading description or representation of fact, which misrepresents the nature, characteristics, qualities, or geographic origin of the good at issue.

31.     Under 15 U.S.C. § 1125(a): "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . shall be liable in a civil action by

- 11 -

any person who believes that he or she is or is likely to be damaged by such act." The Lanham Act requires "false or misleading representation[s] of fact." 15 U.S.C. § 1125(a)(1). Thus, "only statements of fact capable of being proven false are actionable," whereas opinions and statements marked by "broad, vague and commendatory language" are not. *Robert Bosch LLC v. Pylon Mfg. Corp.,* 632 F. Supp. 2d 362, 365 (D. Del. 2009).

32.     To be literally false a statement must either be unambiguous in context, or its equally plausible meanings must all be literally false. *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 945-48 (3d Cir. 1993); *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmas. Co.,* 290 F.3d 578, 586 (3d Cir. 2002). A statement which is virtually or substantially true is not literally false. *QVC, Inc. v. Your Vitamins, Inc.,* 714 F. Supp. 2d 291 (D. Del. 2010). Literally false statements are both explicit and false. *Novartis,* 290 F.3d at 586. A "literal" falsehood is bald-faced, egregious, undeniable, over the top; it is a patently false statement that means what it says to any linguistically competent person. *Avis Rent A Car System, Inc. v. Hertz Corp.,* 782 F.2d 381, 385-86 (2d Cir. 1986); *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.,* 586 F.3d 500, 512-13 (7th Cir. 2009). A statement is not false on its face (literally false) merely because it is less specific than possible. *Cicle Francesco Moser, S.R.L. v. Cannondale USA, Inc.,* 12 F. Supp. 2d 320 (S.D.N.Y. 1998).  A literally true statement may only be misleading where the plaintiff also proves: (1) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (2) [and] that the deception is material in that it is likely to influence purchasing decisions. *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharms., Inc.,* 19 F.3d 125, 129 (3d Cir. 1994)).

33.     The jury must determine whether Qorvo has proven that the specific challenged statements actually deceive or had a tendency to deceive the intended audience.

- 12 -

34.     A plaintiff seeking monetary rather than injunctive relief must show "actual damages rather than a mere tendency to be damaged."  "The plaintiff must link the deception with actual harm to its business. Actual damages cannot exist without a nexus between a false advertisement and an adverse purchasing decision." *Bracco Diagnostics, Inc. v. Amersham Health, Inc.,* 627 F Supp. 2d 384, 481 (D.N.J. 2009). When a plaintiff seeks monetary damages, as Qorvo does here, it must prove actual deception of the intended customer base. *CaredDx, Inc. v. Natera, Inc.,* No. CV 19-662-CFC, 2023 WL 4561059, at *2 (D. Del. July 17, 2023) ("Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false advertisement.").  Whether a statement has a tendency to deceive "depends upon the message that is conveyed to consumers,"and "the success of the claim usually turns on the persuasiveness of a consumer survey." *Parks, LLC v. Tyson Foods, Inc.*, 186 F. 3d 405, 417 (E.D. Pa. 2016), *aff'd sub nom. Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220 (3d Cir. 2017).

35.     The jury must determine whether any alleged deception is material in that it is likely to influence purchasing decisions of the relevant customer base.

36.     When a plaintiff seeks monetary damages, as Qorvo does here, it must prove materiality. *Newborn Bros. Co., Inc. v. Albion Eng'g Co.,* 481 F. Supp. 3d 312, 356 (D.N.J. 2020) (materiality must be proven to collect false advertising damages).  "Materiality" requires that a plaintiff "prove that the defendant's deception is 'likely to influence the purchasing decision.'" *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.,* 284 F.3d 302, 311 (1st Cir. 2002). Materiality critically provides the requisite "nexus between the false statement and a third party's decision not to do business with the plaintiff." *McNulty v. Citadel Broad. Co.,* 58 F. Appx 556 (3d Cir. 2003).  In evaluating materiality, courts consider the sophistication of the buyer and the

decision-making processes for purchasing the product. See *Allen Organ Co. v. Galanti Organ Builders, Inc.,* 798 F. Supp. 1162 (E.D. Pa. 1992), *aff'd* 995 F.2d 215 (3d Cir. 1993)).

37.     The jury must determine if Qorvo has proven by a preponderance of the evidence whether Akoustis' advertised products traveled in interstate commerce.  See 15 U.S.C. § 1125(a).

38.     The jury must determine whether Qorvo has proven that its injury flows directly from the specific misrepresentations it alleges.

39.     15 U.S.C. § 1117 provides: "When . . . a violation under section 1125(a) or (d) of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction."

40.     The causation standard for an award of damages is higher than the general standard for injunctive relief under the Lanham Act: "[C]ases involving injunctive relief and those seeking monetary damages under the Lanham Act  have different standards of proof. A plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage. In contrast, courts require a heightened level of proof of injury in order to recover money damages." *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1335 (8th Cir. 1997); *see also Parkway Baking v. Freihofer Baking,* 255 F.2d 641, 648–49 (3d Cir. 1958).

41.     When a plaintiff seeks monetary damages, it must prove deception and materiality. *CaredDx, Inc. v. Natera, Inc.,* No. CV 19-662-CFC, 2023 WL 4561059, at *2 (D. Del. July 17, 2023) ("Actual deception, however, must still be proven to establish damages for a Lanham Act violation, even if based on an unambiguous and literally false advertisement."); *Newborn Bros.*

*Co., Inc. v. Albion Eng'g Co.,* 481 F. Supp. 3d 312, 356 (D.N.J. 2020) (materiality must be proven to collect false advertising damages).

42.      The jury must determine whether Qorvo has proven that it is entitled to corrective advertising damages, and the amount if any, of such damages.

43.      In order to receive corrective advertising damages, a plaintiff must show some public confusion caused by the conduct that injures the plaintiff, the public confusion caused lost sales, and remedial advertising is most cost-effective way to remedy the public confusion. *Larry Pitt & Assocs. v. Lundy Law LLP*, 294 F. Supp. 3d 329, 342-42 (E.D. Pa. 2018);

44.      The Court must determine whether Qorvo has proven that it is entitled to injunctive relief prohibiting Akoustis from engaging in false advertising, or other any other relief (such as attorneys fees) sought by Qorvo.

45.      15 U.S.C. § 1116 authorizes courts to grant injunctive relief for violations of the Lanham Act, including false advertising cases.  There is no presumption of irreparable harm for injunctive relief for false advertising claims under the Lanham Act. *Ferring Pharms., Inc. v. Watson Pharms., Inc*., 765 F.3d 205, 216, 219 (3d Cir. 2014) (upholding the district court's denial of a preliminary injunction because the plaintiff failed to demonstrate that it would likely suffer irreparable harm). Therefore, a plaintiff must demonstrate that "that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Newborn Bros. Co. v. Albion Eng'g Co*., 481 F. Supp. 3d 312, 359 (D.N.J. 2020). In considering an injunction the court "consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of a permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Id.* "[W]here there has been a cessation of the conduct complained of, at any time prior

to the judgment, it is a matter for the exercise of the discretion of the court, as to whether an injunction should issue." *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648-49 (3d Cir. 1958).

      46.    The Court must determine whether Qorvo has proven it is entitled to attorneys' fees and costs under the Lanham Act.  The Lanham Act provides that the Court may award reasonable attorneys' fees in exceptional cases. 15 U.S.C. § 1117(a) A district court may find a case exceptional, when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Gavrieli Brands LLC v. Soto Massini (USA) Corp.*, No. CV 18-462 (MN), 2020 WL 1443215, at \*10 (D. Del. Mar. 24, 2020).

### III.    <ins>Alleged Trade Secret Misappropriation Under Federal and North Carolina Law</ins>

      47.    A jury must decide whether Qorvo proved it possessed/possesses trade secret information.

      48.    To succeed on a trade secret misappropriation claim under the DTSA or North Carolina law, a plaintiff must prove: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3); (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]"; and (3) the misappropriation of that trade secret[.]"*Oakwood Lab'ys LLC v. Thanoo,* 999 F.3d 892, 905 (3d Cir. 2021) (internal citations and quotations omitted); *Peloton Interactive, Inc. v. iFIT Inc.,* No. CV 20-1535-RGA, 2022 WL 1523112, at \*2 (D. Del. May 13, 2022). Federal courts "analyze parallel state and federal claims of trade secret misappropriation together."*Agrofresh Inc. v. Essentiv LLC,* No. CV 16-662 (MN), 2020 WL 7024867, at \*3 n.7 (D. Del. Nov. 30, 2020). See also *Thee Dollhouse Prods. N.C., Inc.*

- 16 -

*v. Fairchild,* No. 5:08-CV-282-FL, 2009 WL 9112422, at *10 (E.D.N.C. Mar. 30, 2009) (elements of the misappropriation claim under North Carolina law).

49.   A jury must decide whether Qorvo articulated and sufficiently identified the specific trade secrets at issue with reasonable specificity and particularity.

50.   A plaintiff may not satisfy its burden of trade secret identification by listing "general concepts or categories" of information. *Calendar Rsch. LLC v. StubHub, Inc.,* No. 2:17-CV-04062-SVW-SS, 2020 WL 4390391, at *7 (C.D. Cal. May 13, 2020) ("Plaintiff's technique of listing general concepts or categories of information is plainly insufficient"). Such general categories fail to put a defendant on notice of the allegations against it because it provides no concrete information or parameters as to the alleged "secrets." *Town & Country Linen Corp. v. Ingenious Designs LLC,* 556 F. Supp. 3d 222 (S.D.N.Y. 2021) (granting partial summary judgment as to all alleged trade secrets which were too vague and indefinite, and which merely encompassed a broad range of allegedly protectable information.).

51.   "A plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has or is threatened to occur." *Flexible Techs., Inc. v. SharkNinja Operating LLC,* Civil Action No. 18-348-CFC, 2019 WL 1417465, at *2 (D. Del. Mar. 29, 2019) (internal quotation marks and citation omitted). Like the DTSA, the North Carolina Trade Secrets Protection Act requires a plaintiff to identify the alleged trade secrets with specificity and not merely by listing broad categories of information. *Thee Dollhouse Prods. N.C., Inc. v. Fairchild,* No. 5:08-CV-282-FL, 2009 WL 9112422, at *10 (E.D.N.C. Mar. 30, 2009).

52.    A jury must decide whether Qorvo proved each alleged trade secret is different from both (a) matters of general knowledge in the trade and (b) special knowledge of persons skilled in the trade.

53.    To qualify as a trade secret the information must be separate "from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." *Advanced Fluid Sys., Inc. v. Huber,* 381 F. Supp. 3d 362, 386 (M.D. Pa. 2019) (citing *Synygy, Inc. v. ZS Assocs.,* No. 07-3536, 2013 WL 3716518, at *2 (E.D. Pa. July 15, 2013); *Dow Chem. Can., Inc. v. HRD Corp.,* 909 F. Supp. 2d 340 (D. Del. 2012)). *See also Mattern & Assocs., L.L.C. v. Seidel,* 678 F. Supp. 2d 256, 269 (D. Del. 2010); see also 18 U.S.C. § 1839(3).

54.    A jury must decide whether Qorvo proved that each alleged trade secret has independent economic value from the fact that it is not generally known or not readily ascertainable by proper means.  *See* 18 U.S.C. §§ 1836, 1839.

55.    A jury must decide whether Qorvo proved that it took reasonable measures to keep each alleged trade secret a secret.

56.    Whether a party took reasonable measures requires a review of all the relevant facts. However, "[o]nce a trade secret is posted on the Internet, it is effectively part of the public domain, impossible to retrieve." *Religious Tech. Ctr. v. Lerma,* 908 F. Supp. 1362, 1368 (E.D. Va. 1995). Information that is widely known also cannot be a trade secret. *See Adtile Techs. Inc. v. Perion Network Ltd.,* No. 15-1193-SLR, 2016 WL 3457152, at *3 (D. Del. June 23, 2016) ("Well-known and common-sense methods throughout [an] industry may not properly be considered proprietary information."); *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 484 (1974) (A trade secret cannot be something that has been "placed in the public domain."); *Nova Chems., Inc. v. Sekisui Plastics*

*Co.,* 579 F.3d 319, 327 (3d Cir. 2009) ("'[T]he most important characteristic of a trade secret is that it is in fact secret.'").

57.    A jury must decide whether Akoustis misappropriated each alleged trade secret.

58.    Misappropriation requires a showing that the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means, or alternatively, the disclosure or use of a trade secret of another without express or implied consent by a person who either: (1) acquired the secret by improper means; (2) knew or had reason to know that their knowledge of the trade secret was (A) derived by another who acquired it by improper means, (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (C) acquired by accident or mistake.  *Mattern & Assocs., L.L.C. v. Seidel,* 678 F. Supp. 2d 256, 269 (D. Del. 2010).

59.    The phase "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means. The phrase "improper means" does not include acquiring information through independent development, research of public resources (such as, for example, trade directories, patent filings, or even the telephone book), or purchase of a product that contains trade secrets and then disassembling it to analyze those secrets (a process called "reverse engineering"). *See* 18 U.S.C. § 1839(6).

60.    A defendant's independent development of similar technology cannot support a trade secret claim. *See CVD, Inc. v. Raytheon Co.,* 769 F.2d 842, 850 (1st Cir. 1985) ("unlike a patent, a trade secret affords no rights against the independent development of the same technology or knowledge by others." *See also Kewanee Oil Co.,* 416 U.S. at 476 (trade secret law "does not

- 19 -

offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure, or by so-called reverse engineering . . . ."); *accord* 18 U.S.C. § 1839(6)(b);

61.     Misappropriation by "use" requires the unauthorized use of an alleged trade secret. Use requires the productive use of the trade secret, and merely possessing the alleged trade secret without utilizing it is not "use." *TGAS Advisors, LLC v. Zensights, LLC*, No. CV 16-1870, 2016 WL 4094971, at *3 (E.D. Pa. Aug. 1, 2016) ("Neither is the Court willing to rely on TGaS's mere possession of confidential information to conclude that TGaS used such information unlawfully.")

62.     A jury must decide whether Qorvo proved that it has suffered any damages as a result of Akoustis's purported misappropriation of information Qorvo identifies as its trade secrets.

63.     To recover for trade secret misappropriation, a plaintiff must show injury. *See Accenture Global Servs.* GMBH, 581 F. Supp. 2d at 662; *see also* 18 U.S.C. § 1836(b)(3). To recover monetary damages for the misappropriation of trade secrets, "the plaintiff must show either unjust enrichment of the defendant or economic harm to himself." *Agilent Techs. v. Kirkland,* 2010 Del. Ch. LEXIS (Feb. 8, 2010); 6 Del. C. § 2003(a); *see also* 18 U.S.C. § 1836(b)(3).; 18 U.S.C. § 1839(5)(A), (B)(i).

64.     Unjust enrichment damages are measured by the amount the defendant benefited as a result of any misappropriation. 18 U.S.C. § 1836(b)(3)(B) (plaintiff may recover "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss."); *HID Global Corp. v. Vector Flow, Inc.*, Case No. 21-1769-GWB, D.I. 498 at * 24 (D. Del. Jan. 23, 2024).

65.     One form of unjust enrichment can be measured by a "head start" theory. The head start theory measures the unfair temporal advantage given to a defendant over its competitors resulting from its use of the trade secrets. The "head start" period is the time it would have taken

a defendant  to develop and bring its products to market absent any misappropriation (*e.g.,* not using the alleged trade secrets until they were generally known or acquired legitimately elsewhere). The measure of damages is the defendant's profits gained during this "head start" period. A second form of unjust enrichment is called avoided costs. Avoided costs are the amount that a defendant would have incurred to achieve the same result without the use of the appropriated trade secrets. Sedona Conference Commentary on Monetary Remedies in Trade Secrets Litigation, 24 Sedona Conf. J. (2023); Restatement (Third) of Unfair Competition § 45 Monetary Relief: Appropriation of Trade Secrets).

66.     A jury must decide whether Qorvo is barred from recovering on its claims for trade secret misappropriation because of the three year statute of limitations governing these claims.

67.     The statute of limitations for misappropriation of trade secrets is three years.  A plaintiff has three years after the claimed misappropriation occurred or through the exercise of reasonable diligence should have been discovered to have occurred, to file its claims. *See* 18 U.S.C.A. § 1836(d); N.C.G.S.A. § 66-157.

68.     The jury must determine whether Qorvo has proven by a preponderance that any misappropriation was willful, and it whether Qorvo is entitled to exemplary damages.

69.     To enter an award of punitive damages, the jury must find the existence of willful and wanton conduct relating to an injury to the plaintiff. *Legacy Data Access, LLC v. MediQuant, Inc.*, 2017 WL 6001637, at *19 (W.D.N.C. Dec. 4, 2017). Willful and wonton conduct's definition is for all substantive purposes the same as a willful and malicious. *Id.* Specifically, willful and wanton conduct is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D–5(7). Under the DTSA, the Court

determines whether exemplary damages are appropriate and merited upon a showing that the misappropriation was willful and malicious. *See AgroFresh Inc. v. Essentiv LLC,* No. 16-662 (MN), 2020 WL 7024867 at \*23 (D. Del. Nov. 30, 2020)

70.     The Court must determine whether Qorvo has proven by a preponderance of the evidence that any misappropriation entitles Qorvo to a permanent injunction.

71.     There is a four-factor test that a plaintiff must satisfy before a court may grant permanent injunctive relief. Specifically, a plaintiff must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Bridgetree, Inc. v. Red F Mktg. LLC,* No. 3:10-CV-00228-FDW, 2013 WL 443698, at \*22 (W.D.N.C. Feb. 5, 2013) *(citing eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). The decision to grant or deny permanent injunctive relief is a matter within the Court's discretion.  Id.

72.     The Court must also determine whether Qorvo has proven by a preponderance of the evidence that Qorvo is entitled to attorneys' fees and costs, and prejudgment and post-judgment interest. Under North Carolina law, "[i]f a claim of misappropriation is made in bad faith or if willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party." N.C. Gen. Stat. § 66–154(d) (2014). The Court then examines whether the claim of misappropriation was made in bad faith or with malice. *Velocity Sols., Inc. v. BSG, LLC*, 2015 WL 3385399, at \*8 (N.C. Super. May 26, 2015); see also 18 U.S.C. § 1836(b)(3)(D) (fees and costs under the DTSA)  "The matter of prejudgment interest is left to the discretion of the district court." *Taxman v. Bd. of Educ. of Twp. of Piscataway*, 91 F.3d 1547, 1566 (3d Cir. 1996);

*Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2020 WL 7024867, at *26 (D. Del. Nov. 30, 2020)

**IV.**   **Alleged Civil Conspiracy Under North Carolina Law**

73.   A jury must decide if Qorvo has proven that it can succeed in its underlying claim for trade secret misappropriation under North Carolina law.

74.   Civil conspiracy is not an independent cause of action in North Carolina.  Liability for civil conspiracy must be alleged in conjunction with an underlying claim for unlawful conduct. *Am. Air Filter Co., Inc. v. Price*, No. 16 CVS 13610, 2018 WL 3466952, at *12 (N.C. Super. July 10, 2018); *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002).

75.   The jury must decide whether Qorvo has proven that there was an agreement between Akoustis and others to misappropriate trade secrets.

76.   "[S]ufficient evidence of the agreement must exist to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Boyd v. Drum*, 129 N.C. App. 586, 592, 501 S.E.2d 91, 96 (1998) (internal quotations omitted).  A "corporation cannot successfully conspire with its own officers, employees, or agents." Sproul v. Tchrs. Ins. & Annunity Ass'n of Am., No. 323CV00075FDWDSC, 2023 WL 3212345, at *3 (W.D.N.C. May 2, 2023) (quoting *Tate v. Sallie Mae, Inc.*, No. 3:10-CV-386, 2011 WL 3651813, at *3 (W.D.N.C. Aug. 19, 2011)).

77.   The jury must decide whether Qorvo has proven that Akoustis committed an overt act in furtherance of the agreement.

78.   "The common law action for civil conspiracy is for damages caused by acts committed pursuant to a conspiracy rather than for the conspiracy, i.e., the agreement, itself."

Dickens v. Puryear, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981) (citation and internal alteration omitted)).

79.     The jury must decide whether Qorvo has proven that the overt act(s) proximately caused damages to Qorvo.

80.     The final element of the claim is whether injury was proximately caused by the specific overt or wrongful acts done "as a part of and in furtherance of the common object." *See Muse v. Morrison*, 234 N.C. 195, 66 S.E.2d 785 (1951)) (damages must be those resulting from "acts so done").

81.     A jury must decide whether Qorvo is barred from recovering on its claim for civil conspiracy based on trade secret misappropriation because of the three year statute of limitations governing these claims.

82.     The statute of limitations is three years.  A plaintiff has three years after the claimed misappropriation occurred or through the exercise of reasonable diligence should have been discovered to have occurred, to file its claims. *See* N.C.G.S.A. § 66-157.

83.     The jury must decide is Qorvo has proven it is entitled to damages that are non-duplicative of any of the damages awarded for misappropriation.  The damages must be caused by acts committed in furtherance of the conspiracy.  *Henderson v. LeBauer,* 101 N.C. App. 255 (1991). Punitive damages may be awarded only if the jury finds there to be fraud, malice, or willful/wanton conduct by clear and convincing evidence.  *See* N.C. Gen. Stat. § 1D-15.

**V.     <u>Alleged Unfair and Deceptive Trade Practices Under North Carolina Law</u>**

84.     A jury must determine whether Qovo has proven that Akoustis engaged in an unfair or deceptive trade practice in violation of N.C. Stat. 75-1.

85.     A practice is unfair under North Carolina law when it offends established public policy or when the act or practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." For an act or practice to be deceptive it must have "the capacity or tendency to deceive" but proof of actual deception is not required.  A violation of a statute or other federal law does not automatically constitute an unfair deceptive or act.  As a general matter, a defendant has the freedom to compete, including to divert business not only from competitors, but generally.  See  N.C.G.S. § 75-1.1; *Birtha v. Stonemor, N.C., LLC*, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012) (describing elements of unfair and deceptive trade practices act claim); *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 584 (E.D.N.C. 2020) ( "While "a violation of a regulatory statute which governs business activities may also be a violation of N.C. Gen. Stat. § 75–1.1 ... such a regulatory violation ... does not automatically result in an unfair or deceptive trade practice.")

86.     A jury must determine whether Qorvo has proven that any of the alleged unfair or deceptive trade practices proximately caused an injury to Qorvo.

87.     "Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed."  *Clemmons Farming, Inc. v. Silveus Se., LLC*, No. 7:21-CV-126-FL, 2024 WL 314983, at *4 (E.D.N.C. Jan. 26, 2024)

88.     A jury must decide whether Qorvo is barred from recovering on its claims for violation of the North Carolina Unfair and Deceptive Trade Practices act because of the three year statute of limitations governing these claims.

89.     The statute of limitations is three years.  A plaintiff has three years after the claimed misappropriation occurred or through the exercise of reasonable diligence should have been discovered to have occurred, to file its claims. *See* N.C.G.S.A. § 66-157.

90.     If Akoustis is found to committed a violation of the North Carolina Unfair and Deceptive Trade Practices Act, a jury must determine whether Qorvo has proven that it is entitled to damages from any unfair or deceptive practice, which damages were not previously awarded to Qorvo under any other legal theory.

91.     An award of damages must be based on evidence which shows the amount of damages with reasonable certainty. A plaintiff, however, is not entitled to duplicative damages for the same conduct on multiple claims. Thus, an award of damages may be recovered only if they do not constitute a double recovery for the same conduct. See *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C., 174 N.C. App. 49, 62 (2005); Olivetti v. Ames Business Systems,* 319 N.C. 534, 547-48 (1987) ("[T]he party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty."); *Holland v. Southern Public Utilities Co.*, 208 N.C. 289, 290, 180 S.E. 592, 593 (1935) ("[T]here can be but one recovery for the same injury or damage.").

92.     If Akoustis is found to have violated the North Carolina Unfair and Deceptive Trade Practices Act, the Court must determine whether to award attorney's fees and costs.

93.     North Carolina law permits an award of attorneys' fees upon a finding that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." N.C. Gen. Stat. § 75-16.1.

94.     If Akoustis is found to have violated the North Carolina Unfair and Deceptive Trade
Practices Act, the Court must determine whether Qorvo is entitled to a permanent injunction.

# Exhibit C.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-01417-JPM |
| v. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS TECHNOLOGIES, INC. and | ) |
| AKOUSTIS, INC. | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**<u>EXHIBIT C.1 – QORVO'S LIST OF WITNESSES</u>**

Plaintiff Qorvo, Inc. hereby identifies its witnesses for trial in this matter:

| Witness | Form of Testimony | Will Call/May Call |
|---|---|---|
| David Aichele | Live | Will Call |
| Robert Aigner | Live | Will Call |
| Shannon Beach | Live | May Call |
| Todd Bender | Deposition | May Call |
| Melissa Bennis (expert) | Live | Will Call |
| Michael Boyd | Live | Will Call |
| John Bravman (expert) | Live | Will Call |
| Adam Cowan | Deposition | May Call |
| Steven "Eric" Creviston | Live | Will Call |
| Robert Dry | Deposition | Will Call |
| Gernot Fattinger | Live | Will Call |
| Kevin Faulkner (expert) | Live | Will Call |
| Helge Heinrich (expert) | Live | Will Call |
| Michael "David" Hodge | Deposition | Will Call |
| Rohan Houlden | Deposition | Will Call |
| Colin Hunt | Deposition | Will Call |
| Holly Johnson | Live | May Call |
| Daeho Kim | Live | May Call |
| Joonbum Kwon | Deposition | Will Call |
| Michael Lysse | Live | May Call |
| Todd Martin | Live | May Call |
| Scott Morris | Live | May Call |
| Anthony Nixon | Live | May Call |
| Michael Ortiz | Deposition | May Call |
| R. Cuyler Robinson (expert) | Live | Will Call |
| Stanley Shanfield (expert) | Live | Will Call |
| Kevin Schoenrock | Live | May Call |
| Jeff Shealy | Live | Will Call |
| Ya "Annia" Shen | Deposition | Will Call |
| Gayle Talaby | Live | May Call |
| Tony Testa | Live | Will Call |
| Rama Vetury | Live | May Call |
| Mary Winters | Live | May Call |

To the extent witnesses are identified as providing live testimony, Qorvo reserves the right to call those witnesses to testify by deposition instead. Qorvo reserves the right not to call one or more trial witnesses identified above or to object on any grounds to the admissibility of

-2-

the testimony of trial witnesses on either Akoustis' or Qorvo's witness lists.  Qorvo further

reserves the right to move for exclusion of such testimony.

# Exhibit C.2

**EXHIBIT C.2**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF DELAWARE

|  |  |
|---|---|
| QORVO, INC.<br><br>    Plaintiff,<br><br>v.<br><br>AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC.<br><br>    Defendants. | C.A. No. 21-1417 (JPM)<br><br><br>**JURY TRIAL DEMANDED** |

## THE AKOUSTIS DEFENDANTS'
## IDENTIFICATION OF TRIAL WITNESSES

OF COUNSEL:

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
Squire Patton Boggs (US) LLP
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Akoustis") hereby identify their witnesses for trial of this matter:

| Witness | Form of Testimony | Will Call/May Call |
|---|---|---|
| David Aichele | Live | Will Call |
| Michael Boyd | Deposition* | May Call |
| Robert Darveaux (expert) | Live | Will Call |
| Leah Giovan | Deposition* | May Call |
| Carlyn Irwin (expert) | Live | Will Call |
| Holly Johnson | Live | Will Call |
| Daeho Kim | Live | Will Call |
| Michael Lebby (expert) | Live | Will Call |
| Clark T.-C. Nguyen (expert) | Live | Will Call |
| Anthony Nixon | Live | May Call |
| Jeffrey Shealey | Live | Will Call |
| Anthony Testa | Deposition* | May Call |
| Mary Winters | Live | Will Call |

In the event that plaintiff Qorvo, Inc. calls the asterisked witnesses live during its case-in-chief, Akoustis' trial examination of those witnesses will take place during cross-examination (for the elimination of doubt, Akoustis' examination of those witnesses may exceed the scope of their direct examination to avoid the need to recall those witnesses).

Akoustis also reserves the right not to call one or more trial witnesses identified above or to object on any grounds to the admissibility of the testimony of trial witnesses on either Akoustis' or Qorvo's witness lists. Akoustis further reserves the right to move for exclusion of such testimony.

Dated:   March 6, 2024                          Respectfully submitted,

OF COUNSEL:                                     /s/  *David S. Elkins*
                                                   Stephen B. Brauerman (#4952)
Ronald S. Lemieux                                  Ronald P. Golden III (#6254)
David S. Elkins                                    BAYARD, P.A.
Victoria Q. Smith                                  600 N. King Street, Suite 400
Squire Patton Boggs (US) LLP                       Wilmington, Delaware
1841 Page Mill Road                                (302) 655-5000
Suite 150                                          sbrauerman@bayardlaw.com
Palo Alto, California 94304                         rgolden@bayardlaw.com
(650) 856-6500
ronald.lemieux@squirepb.com                     *Attorneys for Defendants Akoustis*
david.elkins@squirepb.com                       *Technologies, Inc. and Akoustis, Inc.*
victoria.smith@squirepb.com

# Exhibit C.3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-01417-JPM |
| v. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS TECHNOLOGIES, INC. and | ) |
| AKOUSTIS, INC. | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**PLAINTIFF QORVO, INC.'S OBJECTIONS TO DEFENDANTS'**
**<u>IDENTIFICATION OF TRIAL WITNESSES</u>**

Plaintiff Qorvo, Inc. ("Qorvo") submits the following objections to the Akoustis Defendants' Identification of Trial Witnesses, dated March 6, 2024:

1.      Qorvo objects to Akoustis' assertion that "[i]n the event plaintiff Qorvo, Inc. calls the asterisked witnesses live during its case-in-chief, Akoustis' trial examination of those witnesses will take place during cross-examination."  Qorvo's position is that scope of any cross-examination of live witnesses should be limited to the scope of the direct examination.

2.      Qorvo objects to the testimony of Michael Lebby to the extent it is duplicative of the testimony of either Robert Darveaux and/or Clark Nguyen.

3.      Qorvo objects to the testimony of Michael Lebby on the grounds set forth in Qorvo's Motion to Exclude Testimony of Dr. Michael Lebby. *See* D.I. 453, 454.

4.      Qorvo objects to the testimony of Carlyn Irwin on the grounds set forth in Qorvo's Motion to Exclude Expert Testimony of Carly Irwin. *See* D.I. 451, 452.


Dated:  March 15, 2024

                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                */s/ Jonathan DeFosse*
                                Jack B. Blumenfeld (#1014)
                                Jeremy A. Tigan (#5239)
                                1201 North Market Street
                                P.O. Box 1347
                                Wilmington, DE 19899
                                (302) 658-9200
                                jblumenfeld@morrisnichols.com
                                jtigan@morrisnichols.com

                                *Attorneys for Plaintiff*

**OF COUNSEL:**

Robert M. Masters
Jonathan R. DeFosse
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
(202) 747-1900

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201

# Exhibit D.1

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Cowan, Adam | 9 | 8 | 9 | 16 | | | | | | |
| Cowan, Adam | 12 | 4 | 12 | 8 | | | | | | |
| Cowan, Adam | 12 | 18 | 12 | 22 | | 21:18-22:12 | FRE 402 | | | |
| Cowan, Adam | 39 | 15 | 39 | 20 | FRE 402/403 | 40:7-40:23 | | | | |
| Cowan, Adam | 40 | 24 | 41 | 11 | | 41:19-43:8 | | | | |
| Cowan, Adam | 43 | 21 | 44 | 1 | | 46:10-46:17 | FRE 106 | 46:18-22 | | |
| Cowan, Adam | 48 | 19 | 48 | 24 | FRE 402/403 | | | | | |
| Cowan, Adam | 48 | 25 | 49 | 5 | FRE 402/403 | | | | | |
| Cowan, Adam | 49 | 6 | 49 | 13 | FRE 402/403; FRE 602; FRE 801/802 | | | | | |
| Cowan, Adam | 50 | 12 | 50 | 22 | FRE 402/403; FRE 801/802 | | | | | |
| Cowan, Adam | 52 | 3 | 53 | 25 | FRE 402/403; FRE 602; FRE 801/802 | 55:22-56:2; 56:3-57:23; 58:5-58:20; 69:25-70:23; 71:11-72:2 | | | | |
| Cowan, Adam | 91 | 22 | 92 | 4 | No objection | | | | | |
| Cowan, Adam | 92 | 11 | 93 | 9 | FRE 402/403; FRE 701 | | | | | |
| Cowan, Adam | 96 | 16 | 98 | 6 | FRE 402/403; FRE 602; FRE 611; FRE 701; FRE 801/802; FRE 901 | | | | | |
| Cowan, Adam | 98 | 7 | 98 | 21 | FRE 402/403; FRE 602; FRE 611; FRE 801/802 | 100:12-100:18; 106:24-107:8; 107-9:107:21; 109:13-109-25 | FRE 402; [109:19-22]: includes attorney objection/commentary | | | |
| Bender, Todd | 13 | 1 | 13 | 12 | | | | | | |
| Bender, Todd | 21 | 17 | 23 | 6 | Incomplete | 23:7-11 | | 23:12-23 | | |
| Bender, Todd | 24 | 17 | 25 | 10 | | | | | | |
| Bender, Todd | 25 | 16 | 25 | 18 | Vague/Ambiguous /Overbroad; Foundation | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Bender, Todd | 25 | 22 | 27 | 6 | Lack of Personal Knowledge; Assumes Facts Not in Evidence; Speculation; FRE 403 | | | | | |
| Bender, Todd | 27 | 17 | 28 | 4 | Incomplete | 28:5-6 | | | | |
| Bender, Todd | 28 | 9 | 28 | 11 | | | | | | |
| Bender, Todd | 28 | 18 | 28 | 19 | Foundation; Vague/Ambiguous /Overbroad | | | | | |
| Bender, Todd | 28 | 22 | 29 | 2 | Foundation; Vague/Ambiguous /Overbroad | 29:10-30:13 | | | | |
| Bender, Todd | 35 | 7 | 37 | 9 | 35:7-36:17: Lack of Personal Knowledge | | | | | |
| Bender, Todd | 37 | 11 | 38 | 20 | 38:4-20: Lack of Personal Knowledge; Speculation; Assumes Facts Not in Evidence; FRE 403 | | | | | |
| Bender, Todd | 38 | 22 | 39 | 2 | Vague/Ambiguous /Overbroad; Lack of Personal Knowledge; Speculation; Compound; Relevance | | | | | |
| Bender, Todd | 39 | 7 | 40 | 21 | FRE 402/403 | | | | | |
| Bender, Todd | 40 | 23 | 41 | 7 | FRE 402/403 | | | | | |
| Bender, Todd | 51 | 4 | 52 | 6 | Lack of Personal Knowledge; Speculation | | | | | |
| Bender, Todd | 52 | 8 | 53 | 2 | Lack of Personal Knowledge; Speculation | | | | | |
| Bender, Todd | 53 | 21 | 54 | 9 | | | | | | |

2

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Bender, Todd | 57 | 5 | 58 | 21 | Lack of Personal Knowledge; Speculation; Assumes Facts Not in Evidence; FRE 403 | | | 54:10-19, 58:22 | | |
| Bender, Todd | 62 | 10 | 62 | 21 | | | | | | |
| Bender, Todd | 63 | 10 | 64 | 4 | | | | | | |
| Bender, Todd | 65 | 22 | 66 | 22 | FRE 402/403 | | | | | |
| Bender, Todd | 67 | 2 | 68 | 15 | FRE 402/403 | | | | | |
| Bender, Todd | 73 | 16 | 75 | 6 | | | | | | |
| Bender, Todd | 75 | 11 | 76 | 19 | FRE 402/403 | | | | | |
| Bender, Todd | 79 | 11 | 79 | 14 | Calls for Legal Conclusion; Misleading/Prejudice/FRE 403; Vague/Ambiguous/Overbroad | | | | | |
| Bender, Todd | 79 | 16 | 80 | 2 | Calls for Legal Conclusion; Misleading/Prejudice/FRE 403; Vague/Ambiguous/Overbroad | | | | | |
| Bender, Todd | 81 | 2 | 82 | 21 | Assumes Facts Not in Evidence; FRE 403 | 83:4-16 | FRE 106 | 83:17-19 | | |
| Bender, Todd | 83 | 23 | 85 | 4 | Assumes Facts Not in Evidence; FRE 403 | | | | | |
| Bender, Todd | 87 | 15 | 88 | 18 | | | | | | |
| Bender, Todd | 89 | 3 | 91 | 17 | | | | | | |
| Bender, Todd | 91 | 21 | 92 | 16 | | | | | | |
| Bender, Todd | 92 | 20 | 94 | 16 | | | | | | |
| Bender, Todd | 95 | 14 | 96 | 10 | Foundation; Relevance; FRE 403 | | | 94:21-95:10 | | |
| Bender, Todd | 96 | 12 | 97 | 11 | | 97:18-98:3 | | | | |
| Bender, Todd | 98 | 8 | 98 | 22 | | | | | | |

3

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Bender, Todd | 99 | 18 | 100 | 8 | Foundation; Relevance; FRE 403 | 100:9-13 | FRE 106 | 100:14-18 | | |
| Bender, Todd | 101 | 10 | 103 | 6 | Relevance; FRE 403; Assume Facts in Evidence | | | | | |
| Bender, Todd | 105 | 8 | 106 | 14 | Relevance; FRE 403; Assume Facts in Evidence | | | | | |
| Bender, Todd | 106 | 18 | 108 | 1 | Lack of Personal Knowledge | | | | | |
| Bender, Todd | 110 | 2 | 110 | 18 | Relevance; FRE 403; Assume Facts in Evidence | | | | | |
| Bender, Todd | 111 | 12 | 115 | 8 | Foundation; Relevance; FRE; Assume Facts in Evidence | 115:9-18 | | | | |
| Bender, Todd | 119 | 8 | 120 | 9 | Relevance; FRE 403 | | | | | |
| Bender, Todd | 126 | 3 | 128 | 12 | | | | | | |
| Bender, Todd | 128 | 15 | 129 | 12 | | | | | | |
| Bender, Todd | 129 | 15 | 130 | 8 | | | | | | |
| Bender, Todd | 130 | 10 | 130 | 15 | Mischaracterizes Testimony or Exhibits; Prejudice | | | | | |
| Bender, Todd | 130 | 17 | 131 | 10 | Mischaracterizes Testimony or Exhibits / Misleading; Prejudice | | | | | |
| Bender, Todd | 131 | 12 | 131 | 15 | | | | | | |
| Bender, Todd | 133 | 14 | 135 | 25 | Relevance; FRE 403; Assume Facts in Evidence | | | | | |
| Dry, Robert Charles | 11 | 23 | 11 | 25 | | | | | | |
| Dry, Robert Charles | 13 | 16 | 13 | 22 | Incomplete | 13:23 to 13:23 | | | | |
| Dry, Robert Charles | 14 | 2 | 14 | 7 | Incomplete | 14:8 to 14:12 | | | | |

4

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Dry, Robert Charles | 14 | 15 | 14 | 21 | | | | | | |
| Dry, Robert Charles | 15 | 14 | 15 | 24 | | | | | | |
| Dry, Robert Charles | 16 | 3 | 16 | 3 | Incomplete | 16:4 to 16:5 | | | | |
| Dry, Robert Charles | 16 | 3 | 16 | 5 | | | | | | |
| Dry, Robert Charles | 16 | 23 | 17 | 2 | | | | | | |
| Dry, Robert Charles | 17 | 12 | 18 | 4 | | | | | | |
| Dry, Robert Charles | 19 | 6 | 19 | 16 | | | | | | |
| Dry, Robert Charles | 27 | 22 | 28 | 7 | | | | | | |
| Dry, Robert Charles | 30 | 14 | 30 | 18 | Incomplete | 30:19 to 30:20 | | | | |
| Dry, Robert Charles | 30 | 19 | 30 | 20 | Incomplete | 30:14 to 30:18 | | | | |
| Dry, Robert Charles | 47 | 6 | 48 | 24 | | | | | | |
| Dry, Robert Charles | 54 | 3 | 54 | 17 | | | | | | |
| Dry, Robert Charles | 75 | 16 | 75 | 17 | | | | | | |
| Dry, Robert Charles | 75 | 19 | 75 | 19 | | | | | | |
| Dry, Robert Charles | 75 | 21 | 75 | 24 | | | | | | |
| Dry, Robert Charles | 76 | 8 | 76 | 9 | | | | | | |
| Dry, Robert Charles | 76 | 15 | 77 | 19 | Incomplete | 79:11 to 79:14 | | | | |
| Dry, Robert Charles | 77 | 20 | 77 | 21 | | | | | | |
| Dry, Robert Charles | 77 | 23 | 77 | 23 | | | | | | |
| Dry, Robert Charles | 77 | 24 | 78 | 3 | | | | | | |
| Dry, Robert Charles | 78 | 17 | 79 | 6 | Incomplete | 79:11 to 79:14 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Dry, Robert Charles | 79 | 7 | 79 | 10 | Incomplete | 79:11 to 79:14 | | | | |
| Dry, Robert Charles | 79 | 19 | 79 | 25 | | | | | | |
| Dry, Robert Charles | 80 | 12 | 81 | 9 | Speculation; Lack of Personal Knowledge; Assumes Facts Not in Evidence; Calls for Legal Conclusion; Foundation; FRE 403 | | | | | |
| Dry, Robert Charles | 81 | 10 | 82 | 1 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | | | |
| Dry, Robert Charles | 82 | 2 | 83 | 24 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | | | |
| Dry, Robert Charles | 84 | 8 | 85 | 23 | Incomplete; Speculation; Lack of Personal Knowledge; Vague/Ambiguous; Foundation; FRE 403 | 86:1 to 86:2, 87:1 to 87:6, 88:23 to 88:25, 89:12 to 89:17 | Akoustis's counter-designation of 87:1-6 is incomplete. | 87:7-20 | | |
| Dry, Robert Charles | 86 | 1 | 86 | 2 | Incomplete; Speculation; Lack of Personal Knowledge; Vague/Ambiguous; Foundation; FRE 403 | 85:16 to 85:23, 87:1 to 87:6, 88:23 to 88:25, 89:12 to 89:17 | Akoustis's counter-designation of 87:1-6 is incomplete. | 87:7-20 | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Dry, Robert Charles | 86 | 10 | 86 | 16 | Speculation; Lack of Personal Knowledge; Vague/Ambiguous; Foundation; FRE 403 | 86:17 to 86:22, 87:1 to 87:6, 88:23 to 88:25, 89:12 to 89:17 | Akoustis's counter-designation of 87:1-6 is incomplete. | 87:7-20 | | |
| Dry, Robert Charles | 86 | 17 | 86 | 22 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 86:10-86:16, 87:1 to 87:6, 88:23 to 88:25, 89:12 to 89:17 | Akoustis's counter-designation of 87:1-6 is incomplete. | 87:7-20 | | |
| Dry, Robert Charles | 88 | 10 | 88 | 22 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 87:1 to 87:6, 88:23 to 88:25, 89:12 to 89:17 | | 87:24-88:2, 88:7-9 | | |
| Dry, Robert Charles | 90 | 2 | 90 | 23 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | | | |
| Dry, Robert Charles | 91 | 2 | 91 | 5 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 91:6 to 91:7 | | | | |
| Dry, Robert Charles | 91 | 13 | 91 | 21 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 91:6 to 91:7 | | | | |
| Dry, Robert Charles | 91 | 24 | 92 | 2 | Incomplete | 92:4 to 92:5 | | | | |
| Dry, Robert Charles | 92 | 6 | 92 | 12 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 92:4 to 92:5 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Dry, Robert Charles | 93 | 2 | 93 | 17 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 92:4 to 92:5 | | | | |
| Dry, Robert Charles | 93 | 19 | 93 | 21 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 92:4 to 92:5, 93:15 to 93:17 | | | | |
| Dry, Robert Charles | 93 | 23 | 94 | 1 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 92:4 to 92:5 | | | | |
| Dry, Robert Charles | 94 | 4 | 94 | 7 | Incomplete | 94:8 to 94:9 | | | | |
| Dry, Robert Charles | 94 | 10 | 95 | 8 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 94:8 to 94:9 | | | | |
| Dry, Robert Charles | 95 | 12 | 95 | 15 | Incomplete | 95:16 to 95:17 | | | | |
| Dry, Robert Charles | 95 | 18 | 96 | 23 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 95:16 to 95:17 | | | | |
| Dry, Robert Charles | 107 | 20 | 107 | 23 | Incomplete | 107:24 to 107:25 | | | | |
| Dry, Robert Charles | 108 | 1 | 108 | 19 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 107:24 to 107:25, 108:22 to 108:23 | | | | |
| Dry, Robert Charles | 108 | 22 | 111 | 25 | Incomplete; Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 107:24 to 107:25, 108:18 to 108:19 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Dry, Robert Charles | 112 | 6 | 113 | 23 | | | | | | |
| Dry, Robert Charles | 115 | 9 | 115 | 11 | | | | | | |
| Dry, Robert Charles | 115 | 13 | 115 | 14 | | | | | | |
| Dry, Robert Charles | 115 | 18 | 115 | 20 | | | | | | |
| Dry, Robert Charles | 116 | 8 | 118 | 9 | | | | | | |
| Dry, Robert Charles | 118 | 10 | 120 | 19 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | 115:15-17, 115:21-116:7 | | |
| Dry, Robert Charles | 120 | 20 | 122 | 5 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | 115:15-17, 115:21-116:7 | | |
| Dry, Robert Charles | 122 | 6 | 123 | 21 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | 115:15-17, 115:21-116:7 | | |
| Dry, Robert Charles | 124 | 1 | 125 | 11 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | 115:15-17, 115:21-116:7 | | |
| Dry, Robert Charles | 125 | 16 | 126 | 5 | | | | | | |
| Dry, Robert Charles | 126 | 6 | 126 | 8 | | | | | | |
| Dry, Robert Charles | 126 | 10 | 127 | 7 | Incomplete | 127:8 to 127:10, 130:4 to 130:16, 135:9 to 136:18 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Dry, Robert Charles | 127 | 11 | 130 | 3 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 127:8 to 127:10, 130:4 to 130:16, 135:9 to 136:18 | | | | |
| Dry, Robert Charles | 133 | 4 | 134 | 20 | Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | 127:8 to 127:10, 130:4 to 130:16, 135:9 to 136:18 | | | | |
| Dry, Robert Charles | 134 | 21 | 135 | 8 | Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | 127:8 to 127:10, 130:4 to 130:16, 135:9 to 136:18 | | | | |
| Dry, Robert Charles | 136 | 24 | 137 | 12 | | | | | | |
| Dry, Robert Charles | 139 | 12 | 143 | 12 | Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | | | | | |
| Dry, Robert Charles | 143 | 20 | 145 | 2 | Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | | | | | |
| Dry, Robert Charles | 145 | 17 | 146 | 17 | Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | | | | | |
| Dry, Robert Charles | 146 | 21 | 149 | 23 | | | | | | |
| Dry, Robert Charles | 151 | 7 | 151 | 13 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Dry, Robert Charles | 151 | 17 | 153 | 14 | | | | | | |
| Dry, Robert Charles | 153 | 24 | 156 | 11 | Incomplete; Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | 164:22 to 165:9 | | | | |
| Dry, Robert Charles | 157 | 16 | 158 | 3 | Incomplete; FRE 403 | 164:22 to 165:9 | | | | |
| Dry, Robert Charles | 158 | 8 | 164 | 21 | Incomplete; FRE 403 | 164:22 to 165:9 | | | | |
| Dry, Robert Charles | 207 | 13 | 207 | 20 | Incomplete | 207:22 to 207:23 | | | | |
| Dry, Robert Charles | 207 | 24 | 209 | 5 | Speculation; FRE 403 | 209:10 to 209:21 | | | | |
| Dry, Robert Charles | 209 | 7 | 209 | 8 | Speculation; FRE 403 | 209:10 to 209:21 | | | | |
| Dry, Robert Charles | 209 | 22 | 210 | 9 | Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | | | | | |
| Dry, Robert Charles | 211 | 6 | 211 | 14 | Incomplete | 211:15 to 211:16 | | | | |
| Dry, Robert Charles | 211 | 17 | 213 | 13 | Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | | | | | |
| Dry, Robert Charles | 218 | 12 | 220 | 1 | Speculation; Lack of Personal Knowledge; Foundation; Vague/Ambiguous; FRE 403 | | | | | |
| Ortiz, Michael | 7 | 10 | 7 | 22 | | | | | | |
| Ortiz, Michael | 13 | 9 | 13 | 16 | | | | | | |
| Ortiz, Michael | 32 | 11 | 32 | 17 | | | | | | |

11

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Ortiz, Michael | 33 | 19 | 34 | 12 | | | | | | |
| Ortiz, Michael | 34 | 14 | 34 | 15 | | | | | | |
| Ortiz, Michael | 35 | 12 | 36 | 6 | FRE 402/403 | | | | | |
| Ortiz, Michael | 37 | 19 | 37 | 24 | | | | | | |
| Ortiz, Michael | 38 | 1 | 38 | 12 | | | | | | |
| Ortiz, Michael | 38 | 21 | 39 | 17 | FRE 402/403 | 39:25-40-18 | [40:6]: includes attorney objection. | | | |
| Ortiz, Michael | 40 | 19 | 40 | 23 | FRE 402/403 | | | | | |
| Ortiz, Michael | 41 | 1 | 42 | 1 | FRE 402/403; FRE 801/802 | 43:10-44:12; 44:13-45:23 | [44:19]: includes attorney objection. | | | |
| Ortiz, Michael | 46 | 20 | 46 | 25 | FRE 402/403; FRE 701 | | | | | |
| Ortiz, Michael | 47 | 2 | 47 | 10 | FRE 402/403; FRE 701 | | | | | |
| Ortiz, Michael | 47 | 25 | 48 | 7 | FRE 402/403; FRE 801/802 | | | | | |
| Ortiz, Michael | 57 | 21 | 58 | 3 | FRE 402/403; FRE 801/802 | | | | | |
| Ortiz, Michael | 58 | 6 | 58 | 6 | FRE 402/403 | | | | | |
| Ortiz, Michael | 59 | 2 | 59 | 11 | FRE 402/403 | | | | | |
| Ortiz, Michael | 59 | 13 | 59 | 14 | FRE 402/403; FRE 801/802 | 59:16-59:19; 67:5-67:15 | | | | |
| Ortiz, Michael | 73 | 7 | 73 | 21 | | | | | | |
| Ortiz, Michael | 74 | 22 | 75 | 5 | FRE 402/403 | | | | | |
| Ortiz, Michael | 75 | 8 | 75 | 25 | FRE 402/403; FRE 701 | | | | | |
| Ortiz, Michael | 76 | 2 | 76 | 4 | FRE 701 | | | | | |
| Ortiz, Michael | 77 | 25 | 78 | 10 | | | | | | |
| Ortiz, Michael | 78 | 15 | 78 | 25 | FRE 402/403 | | | | | |
| Ortiz, Michael | 79 | 10 | 79 | 24 | | | | | | |
| Ortiz, Michael | 80 | 1 | 80 | 14 | FRE 402/403 | | | | | |
| Ortiz, Michael | 80 | 16 | 83 | 8 | FRE 402/403; FRE 602; FRE 801/802 | | | | | |
| Ortiz, Michael | 88 | 1 | 89 | 25 | FRE 402/403 | | | | | |
| Ortiz, Michael | 90 | 2 | 90 | 20 | FRE 402/403; FRE 611 | | | | | |
| Ortiz, Michael | 90 | 23 | 91 | 25 | FRE 402/403 | | | | | |
| Ortiz, Michael | 92 | 3 | 92 | 4 | FRE 402/403 | 103:25-104:15 | FRE 402/403, 602 | | | |
| Ortiz, Michael | 105 | 19 | 108 | 1 | | | | | | |
| Ortiz, Michael | 108 | 4 | 109 | 1 | | | | | | |

12

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Ortiz, Michael | 109 | 4 | 109 | 24 | FRE 402/403; FRE 611 | | | | | |
| Ortiz, Michael | 110 | 1 | 110 | 21 | FRE 402/403; FRE 602; FRE 611 | | | | | |
| Ortiz, Michael | 110 | 24 | 111 | 8 | FRE 402/403 | | | | | |
| Ortiz, Michael | 116 | 18 | 117 | 3 | FRE 402/403 | 117:7-118:9 | FRE 402/403, 602; [117:11]: includes attorney objection. | | | |
| Ortiz, Michael | 121 | 10 | 121 | 15 | FRE 402/403; FRE 611 | | | | | |
| Ortiz, Michael | 121 | 18 | 121 | 23 | FRE 402/403; FRE 611 | | | | | |
| Ortiz, Michael | 122 | 1 | 122 | 11 | FRE 402/403; FRE 602; FRE 611 | | | | | |
| Ortiz, Michael | 122 | 14 | 122 | 15 | FRE 402/403; FRE 602 | | | | | |
| Ortiz, Michael | 135 | 3 | 137 | 9 | FRE 402/403; FRE 602; FRE 611; FRE 701 | | | | | |
| Hodge, Michael | 8 | 11 | 8 | 25 | | 18:7-8; 18:14-24 | Relevance; FRE 403; FRE 701 | 18:10-12 | | |
| Hodge, Michael | 21 | 21 | 22 | 7 | | | | | | |
| Hodge, Michael | 24 | 19 | 25 | 4 | | | | | | |
| Hodge, Michael | 25 | 20 | 27 | 7 | | | | | | |
| Hodge, Michael | 29 | 3 | 29 | 10 | Incomplete | 30:9-18; 31:5-6; 171:21-25 | | | | |
| Hodge, Michael | 31 | 11 | 31 | 25 | | | | | | |
| Hodge, Michael | 32 | 7 | 32 | 8 | Vague/Ambiguous /Overbroad | | | | | |
| Hodge, Michael | 32 | 10 | 33 | 2 | Vague/Ambiguous /Overbroad | | | | | |
| Hodge, Michael | 33 | 3 | 33 | 9 | Incomplete | 33:10-34:2; 34:7-9; 34:12-22 | Lack of Personal Knowledge; Hearsay | | | |
| Hodge, Michael | 34 | 23 | 35 | 4 | | | | | | |
| Hodge, Michael | 35 | 9 | 35 | 22 | Vague/Ambiguous /Overbroad; Incomplete | 35:23-37:6; 38:5-16; 39:6-14; 44:11-45:3 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hodge, Michael | 52 | 23 | 53 | 2 | Incomplete | 52:4-11; 59:10-11; 59:14-60:10 | | | | |
| Hodge, Michael | 56 | 9 | 56 | 25 | Vague/Ambiguous /Overbroad; Speculation; Foundation; Incomplete | 173:10-174:22; 183:13-184:9 | | | | |
| Hodge, Michael | 57 | 1 | 57 | 16 | | | | | | |
| Hodge, Michael | 58 | 8 | 58 | 23 | | | | | | |
| Hodge, Michael | 60 | 24 | 65 | 2 | Hearsay; FRE 403; Lack of Personal Knowledge; Speculation | | | | | |
| Hodge, Michael | 65 | 14 | 66 | 12 | Lack of Personal Knowledge; Speculation | | | | | |
| Hodge, Michael | 66 | 13 | 66 | 15 | Leading; Lack of Personal Knowledge; Speculation; Assumes Facts Not in Evidence | | | | | |
| Hodge, Michael | 66 | 18 | 67 | 15 | Lack of Personal Knowledge; Speculation | | | | | |
| Hodge, Michael | 71 | 2 | 71 | 23 | Relevance; FRE 403 | | | | | |
| Hodge, Michael | 72 | 23 | 72 | 24 | Relevance; FRE 403; Vague/Ambiguous /Overbroad | | | | | |
| Hodge, Michael | 73 | 2 | 73 | 8 | Leading; Hearsay; Relevance; FRE 403 | | | | | |
| Hodge, Michael | 73 | 10 | 74 | 7 | Hearsay; Relevance; FRE 403 | | | | | |
| Hodge, Michael | 79 | 25 | 80 | 3 | | | | | | |
| Hodge, Michael | 80 | 8 | 83 | 19 | Hearsay; Relevance; FRE 403 | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hodge, Michael | 85 | 24 | 86 | 13 | Lack of Personal Knowledge; Speculation | | | | | |
| Hodge, Michael | 86 | 17 | 88 | 9 | Lack of Personal Knowledge; Speculation; FRE 403 | | | | | |
| Hodge, Michael | 90 | 8 | 90 | 18 | | | | | | |
| Hodge, Michael | 90 | 20 | 91 | 6 | Incomplete | 91:7-8; 91:11-25; 173:10-174:22; 183:13-184:9 | | | | |
| Hodge, Michael | 92 | 2 | 94 | 19 | Incomplete; Lack of Personal Knowledge | 106:25-107:6 | | | | |
| Hodge, Michael | 108 | 21 | 109 | 17 | Lack of Personal Knowledge; Speculation; FRE 403 | | | | | |
| Hodge, Michael | 109 | 18 | 110 | 6 | Speculation; Foundation | | | | | |
| Hodge, Michael | 110 | 9 | 110 | 21 | Speculation | | | | | |
| Hodge, Michael | 110 | 24 | 111 | 10 | Vague/Ambiguous /Overbroad | | | | | |
| Hodge, Michael | 111 | 13 | 113 | 22 | Speculation; Lack of Personal Knowledge; Vague/Ambiguous /Overbroad | | | | | |
| Hodge, Michael | 113 | 24 | 115 | 2 | Lack of Personal Knowledge; Incomplete | 115:3-13; 141:18-142:1; 146:21-147:9; 177:20-178:2; 198:9-18; 200:13-16 | For 141:18-142:1; 146:21-147:9: Beyond scope of designation; FRE 701; Lacks Personal Knowledge | 142:2-8 | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hodge, Michael | 116 | 19 | 117 | 4 | Foundation; Lack of Personal Knowledge; Speculation; Incomplete | 118:25-121:16; 209:23-211:22 | | 117:7-118:10 | Speculation; Lack of Personal Knowledge | 117:7-118:10 |
| Hodge, Michael | 127 | 2 | 127 | 10 | | | | | | |
| Hodge, Michael | 128 | 6 | 130 | 7 | Incomplete | 124:1-14; 124:17-125:6; 130:8-132:9; 178:18-179:25; 209:23-211:22 | | | | |
| Houlden, Rohan | 13 | 22 | 14 | 7 | | | | | | |
| Houlden, Rohan | 17 | 19 | 18 | 12 | | | | | | |
| Houlden, Rohan | 19 | 7 | 19 | 20 | | | | | | |
| Houlden, Rohan | 20 | 20 | 21 | 17 | | 22:16-23:15; 23:16-24:22; 24:23-25:9 | | | | |
| Houlden, Rohan | 25 | 20 | 26 | 11 | | 25:13-25:19 | | | | |
| Houlden, Rohan | 27 | 8 | 27 | 20 | | 27:21-32:10; 34:3-34:23; 34:24-35:13; 35:14-36:4; 36:4-36:24 | | | | |
| Houlden, Rohan | 37 | 2 | 37 | 19 | | | | | | |
| Houlden, Rohan | 38 | 3 | 38 | 11 | | | | | | |
| Houlden, Rohan | 39 | 11 | 39 | 23 | | | | | | |
| Houlden, Rohan | 43 | 1 | 43 | 16 | | 44:20-45:8 | | | | |
| Houlden, Rohan | 45 | 20 | 48 | 23 | | | | | | |
| Houlden, Rohan | 48 | 25 | 49 | 15 | | | | | | |
| Houlden, Rohan | 49 | 19 | 50 | 23 | 50:11-50:14 and 50:17-50:23 Lack of Foundation and Hearsay | 50:24-51:8 | | | | |
| Houlden, Rohan | 51 | 9 | 52 | 23 | 52:20-53:08 Lack of Foundation and Hearsay | 51:20-51:23 | | | | |
| Houlden, Rohan | 53 | 2 | 53 | 10 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Houlden, Rohan | 53 | 15 | 53 | 20 | 53:17-53:19 Lack of Foundation | | | | | |
| Houlden, Rohan | 53 | 24 | 56 | 9 | | 56:15-56:25; 57:1-58:2 | | | | |
| Houlden, Rohan | 58 | 3 | 58 | 24 | | 58:25-60:16; 61:10-62:15 | | 60:20-22; 61:5-9 | Hearsay, foundation, authentication | 61:1-9 |
| Houlden, Rohan | 63 | 22 | 64 | 2 | | | | | | |
| Houlden, Rohan | 64 | 11 | 64 | 22 | | | | | | |
| Houlden, Rohan | 65 | 8 | 66 | 3 | | 66:1-67:16 | 66:15-16, 67:5-6: includes attorney objection/commentary | | | |
| Houlden, Rohan | 68 | 10 | 68 | 22 | | | | | | |
| Houlden, Rohan | 68 | 24 | 69 | 23 | | | | | | |
| Houlden, Rohan | 70 | 23 | 72 | 2 | | | | | | |
| Houlden, Rohan | 72 | 11 | 72 | 13 | | 72:11-72:19 | 72:14-15: includes attorney objection | | | |
| Houlden, Rohan | 72 | 16 | 72 | 23 | | 72:21-72:23 | | | | |
| Houlden, Rohan | 73 | 2 | 73 | 19 | | 73:20-73:25; 74:10-75:2 | 73:23: includes attorney objection | 74:2-5; 74:7-8; 75:10-12 | Speculation, foundation | 74:2-8 |
| Houlden, Rohan | 75 | 12 | 75 | 17 | | | | | | |
| Houlden, Rohan | 75 | 18 | 75 | 20 | Lack of Foundation and Hearsay | | | | | |
| Houlden, Rohan | 75 | 23 | 75 | 24 | | | | | | |
| Houlden, Rohan | 76 | 2 | 76 | 9 | 76:11-76:22 Lack of Foundation and Hearsay | | | | | |
| Houlden, Rohan | 76 | 16 | 77 | 7 | | | | | | |
| Houlden, Rohan | 77 | 15 | 77 | 20 | 77:18-77:22 Lack of Foundation and Hearsay | | | | | |
| Houlden, Rohan | 77 | 22 | 77 | 22 | | 77:24-78:1 | | | | |
| Houlden, Rohan | 78 | 14 | 79 | 22 | 79:20-79:24 Lack of Foundation | 78:3-78:10 | | | | |
| Houlden, Rohan | 79 | 24 | 79 | 24 | | | | | | |
| Houlden, Rohan | 80 | 2 | 80 | 7 | | | | | | |
| Houlden, Rohan | 80 | 11 | 80 | 20 | | | | | | |

EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Houlden, Rohan | 81 | 11 | 81 | 14 | | 81:2-81:20 | | | | |
| Houlden, Rohan | 82 | 2 | 83 | 22 | | | | | | |
| Houlden, Rohan | 84 | 6 | 84 | 21 | | 84:22-85:15 | | | | |
| Houlden, Rohan | 85 | 21 | 86 | 5 | | | | | | |
| Houlden, Rohan | 86 | 9 | 87 | 14 | | 87:11-88:17 | | | | |
| Houlden, Rohan | 88 | 18 | 88 | 21 | | 88:22-89:3; 90:15-91:12 | | | | |
| Houlden, Rohan | 92 | 25 | 93 | 12 | | 96:2-96:12; 96:12-97:9 | | | | |
| Houlden, Rohan | 97 | 13 | 97 | 23 | | | | | | |
| Houlden, Rohan | 98 | 5 | 98 | 6 | | | | | | |
| Houlden, Rohan | 98 | 14 | 99 | 5 | | | | | | |
| Houlden, Rohan | 99 | 6 | 100 | 17 | | 99:6-100:5 | | | | |
| Houlden, Rohan | 100 | 21 | 101 | 25 | | 100:6-100:10 | | | | |
| Houlden, Rohan | 102 | 18 | 105 | 6 | | 102:1-102:17; 104:22-105:16 | 105:7: includes attorney objection | | | |
| Houlden, Rohan | 105 | 8 | 105 | 16 | | 105:18-105:25 | | | | |
| Houlden, Rohan | 106 | 1 | 106 | 5 | | | | | | |
| Houlden, Rohan | 106 | 11 | 106 | 13 | | | | | | |
| Houlden, Rohan | 106 | 21 | 107 | 16 | | 107:3-107:16; 107:17-108:1 | | | | |
| Houlden, Rohan | 108 | 2 | 108 | 25 | | 108:6-108:19 | | | | |
| Houlden, Rohan | 109 | 17 | 109 | 20 | | | | | | |
| Houlden, Rohan | 110 | 2 | 110 | 3 | | 110:11-111:22 | | | | |
| Houlden, Rohan | 110 | 11 | 112 | 8 | | 111:23-112:21 | 112:9-10: includes attorney objection | | | |
| Houlden, Rohan | 112 | 11 | 112 | 21 | | | | | | |
| Houlden, Rohan | 113 | 4 | 113 | 5 | | | | | | |
| Houlden, Rohan | 113 | 11 | 114 | 23 | | | | | | |
| Houlden, Rohan | 114 | 24 | 115 | 23 | | 114:10-115:15; 115:16-116:2 | | | | |
| Houlden, Rohan | 116 | 8 | 116 | 9 | | 116:8-118:4 | 117:10-11: includes attorney objection | | | |
| Houlden, Rohan | 116 | 15 | 117 | 7 | | | | | | |
| Houlden, Rohan | 118 | 10 | 118 | 12 | | | | | | |

18

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Houlden, Rohan | 118 | 17 | 119 | 15 | | | | | | |
| Houlden, Rohan | 119 | 19 | 120 | 4 | | 119:7-120:4 | | | | |
| Houlden, Rohan | 120 | 6 | 120 | 9 | | 120:20-121:5; 122:22-123:23 | 122:22-123:23: Beyond scope of designation; relevance; FRE 403 (juror confusion concerning document not addressed in prior designated testimony; intended to mislead jury to believe other documents were "captured . . . From Google") | 121:11-21; 122:11-21 | Hearsay, foundation, authentication | 121:11-21 |
| Houlden, Rohan | 124 | 25 | 127 | 20 | | | | | | |
| Houlden, Rohan | 128 | 2 | 128 | 19 | | | | | | |
| Houlden, Rohan | 129 | 14 | 130 | 24 | | 131:20-122:14 | | | | |
| Houlden, Rohan | 132 | 1 | 132 | 8 | | | | | | |
| Houlden, Rohan | 132 | 24 | 133 | 6 | | 132:15-133:14 | | | | |
| Houlden, Rohan | 133 | 21 | 135 | 12 | | | | | | |
| Houlden, Rohan | 135 | 16 | 136 | 21 | | 136:22-137:16; 137:22-138:4; 138:19-139:4 | | 137:17-21; 138:5-18; 139:5-17 | | |
| Houlden, Rohan | 139 | 23 | 139 | 24 | | | | | Hearsay, speculation | 139:5-17 |
| Houlden, Rohan | 140 | 4 | 142 | 23 | | | | | | |
| Houlden, Rohan | 143 | 1 | 143 | 2 | | | | | | |
| Houlden, Rohan | 143 | 4 | 143 | 18 | | | | | | |
| Houlden, Rohan | 145 | 14 | 148 | 20 | | 145:14-146:14 | | | | |
| Houlden, Rohan | 148 | 24 | 149 | 25 | 149:2-149:7 Lack of Foundation and Hearsay | | | | | |
| Houlden, Rohan | 150 | 18 | 150 | 23 | | 150:6-150:16 | | | | |
| Houlden, Rohan | 151 | 2 | 153 | 5 | | 153:6-154:1 | | | | |
| Houlden, Rohan | 154 | 5 | 154 | 22 | | 155:19-157:5; 157:10-157:25 | 156:1-18: Relevance; FRE 403; Qorvo Motion in Limine No. 2 | | | |
| Houlden, Rohan | 158 | 12 | 158 | 14 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Houlden, Rohan | 159 | 7 | 159 | 25 | | 159:21-160:13; 160:414-161:3; 161:14-162:8 | | | | |
| Houlden, Rohan | 166 | 25 | 167 | 20 | | | | | | |
| Houlden, Rohan | 168 | 15 | 168 | 18 | | | | | | |
| Houlden, Rohan | 168 | 22 | 169 | 12 | | 170:7-170:14; 171:1-171:13; 171:14-171:20; 171:22-172:1 | 171:17-18: includes attorney objection | | | |
| Houlden, Rohan | 172 | 5 | 173 | 20 | | | | | | |
| Houlden, Rohan | 173 | 23 | 174 | 13 | | 173:13-174:13 | | | | |
| Houlden, Rohan | 174 | 17 | 175 | 20 | | | | | | |
| Houlden, Rohan | 175 | 23 | 176 | 15 | | | | | | |
| Houlden, Rohan | 177 | 13 | 178 | 4 | | | | | | |
| Houlden, Rohan | 178 | 8 | 179 | 18 | | | | | | |
| Houlden, Rohan | 179 | 21 | 181 | 12 | | 180:19-181:12 | | | | |
| Houlden, Rohan | 181 | 16 | 182 | 16 | | 183:24-185:24; 186:24-188:4 | Beyond scope/unrelated to designation; Relevance; FRE 403 (juror confusion concerning documents not addressed in prior designated testimony; testimony intended to mislead jury to believe other documents were publicly available) | 182:22-183:7; 186:3-12 | Hearsay, foundation, authentication | 182:22-183:7; 186:3-12 |
| Houlden, Rohan | 189 | 15 | 190 | 16 | | | | | | |
| Houlden, Rohan | 190 | 20 | 191 | 1 | | 190:20-191:13 | | | | |
| Houlden, Rohan | 191 | 25 | 192 | 14 | | 191:14-191:24 | | | | |
| Houlden, Rohan | 192 | 22 | 192 | 23 | | | | | | |
| Houlden, Rohan | 193 | 8 | 193 | 25 | | 193:11-194:14; 194:22-195:13 | | 194:15-21 | Speculation | 194:15-21 |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Houlden, Rohan | 197 | 18 | 198 | 9 | | 198:10-198:18; 203:6-204:1; 209:9-204:21; 205:14-205:22; 205:23-206:12; 207:16-208:18; 209:13-209:22; 210:5-210:25; 211:1; 211:25 | Beyond scope/unrelated to designation; Relevance; FRE 403; Qorvo Motion in Limine No. 2 ( 203:6-204:1; 209:9-204:21; 205:14-205:22; 205:23-206:12; 207:16-208:18; 209:13-209:22; 210:5-210:25; 211:1; 211:25) | | | |
| Houlden, Rohan | 216 | 14 | 216 | 23 | | 216:14-217.20; 217:24-218:9 | | | | |
| Houlden, Rohan | 219 | 17 | 220 | 2 | | | | | | |
| Houlden, Rohan | 220 | 6 | 220 | 18 | | | | | | |
| Houlden, Rohan | 221 | 3 | 221 | 9 | | | | | | |
| Houlden, Rohan | 221 | 13 | 222 | 2 | | | | | | |
| Houlden, Rohan | 223 | 12 | 223 | 17 | | | | | | |
| Houlden, Rohan | 225 | 17 | 226 | 1 | | | | | | |
| Houlden, Rohan | 226 | 5 | 226 | 14 | | | | | | |
| Houlden, Rohan | 227 | 9 | 227 | 13 | | | | | | |
| Houlden, Rohan | 227 | 16 | 227 | 22 | | | | | | |
| Houlden, Rohan | 228 | 2 | 229 | 25 | | 229:23-230:7 | 230:1-2: includes attorney objection | | | |
| Houlden, Rohan | 230 | 3 | 230 | 7 | | | | | | |
| Houlden, Rohan | 230 | 9 | 230 | 14 | | | | | | |
| Houlden, Rohan | 230 | 20 | 230 | 20 | | | | | | |
| Houlden, Rohan | 231 | 12 | 232 | 8 | | | | | | |
| Houlden, Rohan | 232 | 11 | 232 | 18 | | 233:20-234:3 | | 232:19-233:19; 234:4-15 | Speculation, misstates witness's prior testimony; Foundation, speculation | 233:12-19; 234:4-15 |
| Houlden, Rohan | 235 | 4 | 236 | 7 | | | | | | |
| Houlden, Rohan | 236 | 16 | 237 | 3 | | 237:4-238:1 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Houlden, Rohan | 238 | 2 | 238 | 13 | | | | | | |
| Houlden, Rohan | 239 | 4 | 239 | 21 | | | | | | |
| Houlden, Rohan | 240 | 7 | 240 | 13 | | | | | | |
| Houlden, Rohan | 240 | 19 | 241 | 11 | | | | | | |
| Houlden, Rohan | 241 | 24 | 242 | 22 | | 242:23-243:14 | | | | |
| Houlden, Rohan | 243 | 15 | 244 | 1 | | | | | | |
| Houlden, Rohan | 245 | 5 | 245 | 12 | | | | | | |
| Houlden, Rohan | 245 | 16 | 246 | 2 | | | | | | |
| Houlden, Rohan | 246 | 23 | 247 | 1 | | 247:2; 247:17 | | | | |
| Houlden, Rohan | 249 | 2 | 249 | 5 | | 249:6-249:12 | | | | |
| Houlden, Rohan | 249 | 16 | 249 | 25 | | | | | | |
| Houlden, Rohan | 250 | 17 | 251 | 7 | | | | | | |
| Houlden, Rohan | 251 | 25 | 252 | 17 | | | | | | |
| Houlden, Rohan | 254 | 13 | 255 | 9 | | | | | | |
| Houlden, Rohan | 256 | 1 | 258 | 21 | | 257:23-257:25 | | | | |
| Houlden, Rohan | 258 | 24 | 259 | 13 | | 258:14-259:13 | 258:22-23: includes attorney objection | | | |
| Houlden, Rohan | 259 | 24 | 260 | 3 | | 260:7-261:10 | Beyond scope of designations | | | |
| Houlden, Rohan | 264 | 24 | 267 | 12 | | 267:13-268:13; 269:10-269:16 | | 269:17-20; 270:2-15; 270:25-271:4 | Foundation, speculation, hearsay; Hearsay | 270:2-15; 270:25-271:4 |
| Houlden, Rohan | 274 | 2 | 274 | 5 | | | | | | |
| Houlden, Rohan | 274 | 21 | 275 | 10 | | | | | | |
| Houlden, Rohan | 275 | 14 | 275 | 20 | | | | | | |
| Houlden, Rohan | 286 | 14 | 286 | 17 | | | | | | |
| Houlden, Rohan | 287 | 13 | 288 | 7 | | | | | | |
| Houlden, Rohan | 288 | 11 | 297 | 2 | | | | | | |
| Houlden, Rohan | 297 | 15 | 298 | 4 | 297:15-297:21 Calling for a legal conclusion from a lay witness (improper opinion testimony) | 297:15-297:21; 298:15-300:2 | | | | |
| Houlden, Rohan | 300 | 7 | 300 | 16 | | | | | | |
| Houlden, Rohan | 303 | 23 | 305 | 6 | | | | | | |
| Houlden, Rohan | 305 | 18 | 305 | 20 | | 305:7-305:20 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Houlden, Rohan | 306 | 8 | 306 | 12 | | 306:8-306:14 | 306:13: includes attorney objection | | | |
| Houlden, Rohan | 306 | 14 | 306 | 14 | | | | | | |
| Houlden, Rohan | 306 | 16 | 307 | 8 | | | | | | |
| Houlden, Rohan | 307 | 12 | 308 | 3 | | | | | | |
| Houlden, Rohan | 309 | 13 | 309 | 21 | | 310:23-311:17 | Beyond the scope of designations; Relevance; FRE 403 (juror confusion concerning document to subject to prior designations) | 309:25-310:11 | Hearsay, foundation, authentication | 309:25-310:11 |
| Houlden, Rohan | 311 | 21 | 313 | 17 | | 314:4-316:10; 318:25-321:10; 321:11-321:24 | Beyond scope of designations | | | |
| Houlden, Rohan | 324 | 11 | 326 | 2 | | | | | | |
| Houlden, Rohan | 326 | 6 | 327 | 3 | | | | | | |
| Houlden, Rohan | 329 | 6 | 330 | 3 | | 329:22-330:9 | | | | |
| Houlden, Rohan | 330 | 22 | 332 | 1 | | 331:15-332:16 | | | | |
| Houlden, Rohan | 334 | 9 | 334 | 19 | | | | | | |
| Houlden, Rohan | 334 | 23 | 336 | 7 | 334:25 Typo in transcript: Should be "acoustic wave devices," not "Akoustis wave devices," and Hearsay | | | | | |
| Houlden, Rohan | 338 | 4 | 338 | 18 | | | | | | |
| Houlden, Rohan | 338 | 22 | 339 | 14 | | | | | | |
| Houlden, Rohan | 339 | 18 | 340 | 22 | | | | | | |
| Houlden, Rohan | 341 | 2 | 341 | 17 | | | | | | |
| Houlden, Rohan | 341 | 21 | 342 | 8 | | | | | | |
| Houlden, Rohan | 342 | 12 | 343 | 8 | | 348:4-350:4; 350:6-350:12; 350:11-351:9 | Beyond the scope of designations; Relevance; FRE 403; Qorvo Motion in Limine No. 2 | 351:14-352:5 | | |
| Hunt, Colin | 12 | 16 | 12 | 18 | | | | | | |
| Hunt, Colin | 19 | 6 | 19 | 17 | | | | | | |
| Hunt, Colin | 20 | 21 | 21 | 2 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 23 | 18 | 23 | 22 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 22:19 to 23:15, 24:2 to 24:10 | Counter-designation improperly includes attorney objection. | 23:23-24:1 | | |
| Hunt, Colin | 24 | 23 | 25 | 1 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | | | |
| Hunt, Colin | 25 | 11 | 25 | 18 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 33:13-15 | | |
| Hunt, Colin | 25 | 19 | 26 | 1 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 33:13-15 | | |
| Hunt, Colin | 26 | 4 | 26 | 9 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 33:13-15 | | |
| Hunt, Colin | 26 | 15 | 26 | 16 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 33:13-15 | | |
| Hunt, Colin | 27 | 1 | 27 | 2 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 33:13-15 | | |
| Hunt, Colin | 27 | 13 | 27 | 13 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 33:13-15 | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 27 | 14 | 27 | 22 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 28:24 to 29:18 | Counter-designation improperly includes attorney objection. | | | |
| Hunt, Colin | 29 | 20 | 30 | 10 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 24:2 to 24:10, 30:19 to 30:24, 33:10 to 33:11 | Counter-designation improperly includes attorney objection. | 33:13-15 | | |
| Hunt, Colin | 30 | 11 | 30 | 15 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 24:2 to 24:10, 30:19 to 30:24, 33:10 to 33:11 | Counter-designation improperly includes attorney objection. | 33:13-15 | | |
| Hunt, Colin | 31 | 5 | 31 | 16 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 24:2 to 24:10, 30:19 to 30:24, 33:10 to 33:11 | Counter-designation improperly includes attorney objection. | 33:13-15 | | |
| Hunt, Colin | 31 | 20 | 33 | 6 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 24:2 to 24:10, 30:19 to 30:24, 33:10 to 33:11 | Counter-designation improperly includes attorney objection. | 33:13-15 | | |
| Hunt, Colin | 33 | 17 | 34 | 21 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 24:2 to 24:10, 30:19 to 30:24, 33:10 to 33:11 | Counter-designation improperly includes attorney objection. | 33:13-15 | | |
| Hunt, Colin | 35 | 8 | 35 | 12 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 40:14 to 40:18 | | | | |
| Hunt, Colin | 35 | 15 | 35 | 16 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 40:14 to 40:18 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 35 | 19 | 35 | 21 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 40:14 to 40:18 | | | | |
| Hunt, Colin | 35 | 22 | 36 | 2 | | | | | | |
| Hunt, Colin | 36 | 5 | 36 | 6 | | | | | | |
| Hunt, Colin | 36 | 12 | 37 | 4 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 37:11 to 37:23 | | | | |
| Hunt, Colin | 37 | 7 | 37 | 15 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 36:21 to 37:4, 37:11 to 37:23 | | | | |
| Hunt, Colin | 37 | 16 | 38 | 6 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | | | | | |
| Hunt, Colin | 38 | 7 | 38 | 18 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 40:14 to 40:18 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 38 | 22 | 39 | 5 | | | | | | |
| Hunt, Colin | 39 | 12 | 39 | 16 | | | | | | |
| Hunt, Colin | 40 | 14 | 40 | 16 | Incomplete; Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 40:17 to 40:18 | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 40 | 17 | 40 | 18 | Incomplete; Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 40:14 to 40:16 | | | | |
| Hunt, Colin | 40 | 24 | 41 | 15 | | | | | | |
| Hunt, Colin | 41 | 25 | 42 | 12 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 42:13 to 42:18, 44:25 to 45:3 | | 23:23-24:1, 33:13-15, 44:17-22 | | |
| Hunt, Colin | 42 | 19 | 43 | 20 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11; 44:25 to 45:3 | | 23:23-24:1, 33:13-15, 44:17-22 | | |
| Hunt, Colin | 43 | 22 | 44 | 3 | Speculation; Lack of Personal Knowledge; Foundation; FRE 403 | 44:4 to 44:8, 44:25 to 45:3 | | 44:17-22 | | |
| Hunt, Colin | 45 | 11 | 45 | 14 | | | | | | |
| Hunt, Colin | 45 | 17 | 45 | 18 | | | | | | |
| Hunt, Colin | 45 | 21 | 46 | 2 | | | | | | |
| Hunt, Colin | 46 | 3 | 46 | 13 | | | | | | |
| Hunt, Colin | 46 | 17 | 47 | 6 | | | | | | |
| Hunt, Colin | 47 | 9 | 47 | 14 | | | | | | |
| Hunt, Colin | 47 | 25 | 48 | 2 | | 48:3 to 48:7 | | | | |
| Hunt, Colin | 48 | 8 | 49 | 1 | | | | | | |
| Hunt, Colin | 49 | 6 | 49 | 10 | | | | | | |
| Hunt, Colin | 49 | 16 | 50 | 14 | Speculation; Lack of Personal Knowledge; Foundation; | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 50 | 15 | 50 | 17 | Speculation; Lack of Personal Knowledge; Foundation; | | | | | |
| Hunt, Colin | 50 | 19 | 50 | 19 | Speculation; Lack of Personal Knowledge; Foundation; | | | | | |
| Hunt, Colin | 50 | 21 | 51 | 14 | Speculation; Lack of Personal Knowledge; Foundation; | | | | | |
| Hunt, Colin | 51 | 15 | 51 | 24 | Speculation; Lack of Personal Knowledge; Foundation; | | | | | |
| Hunt, Colin | 51 | 25 | 52 | 6 | Speculation; Lack of Personal Knowledge; Foundation; | | | | | |
| Hunt, Colin | 53 | 25 | 54 | 19 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 52:7 to 52:10, 53:1 to 53:19 | Counter-designation improperly includes attorney objection. | 23:23-24:1, 33:13-15, 53:20-22 | | |
| Hunt, Colin | 54 | 20 | 55 | 13 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 23:23-24:1, 33:13-15, 53:20-22 | | |
| Hunt, Colin | 56 | 5 | 56 | 19 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 44:25 to 45:3 | | 23:23-24:1, 33:13-15, 53:20-22 | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 56 | 20 | 56 | 23 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 44:25 to 45:3 | | | | |
| Hunt, Colin | 56 | 24 | 57 | 1 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 44:25 to 45:3 | | | | |
| Hunt, Colin | 57 | 2 | 57 | 5 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 58 | 8 | 58 | 10 | | | | | | |
| Hunt, Colin | 58 | 16 | 59 | 2 | | | | | | |
| Hunt, Colin | 59 | 5 | 60 | 16 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | | | | | |
| Hunt, Colin | 61 | 20 | 61 | 22 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 62:10 to 62:12 | | | | |
| Hunt, Colin | 61 | 24 | 62 | 5 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 62:10 to 62:12 | | | | |
| Hunt, Colin | 62 | 7 | 62 | 8 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 62:10 to 62:12 | | | | |
| Hunt, Colin | 63 | 1 | 63 | 3 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 63 | 20 | 64 | 3 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | | | | | |
| Hunt, Colin | 65 | 13 | 65 | 21 | | | | | | |
| Hunt, Colin | 65 | 24 | 66 | 14 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 67:4 to 67:13, 67:21 to 68:3 | Counter-designation improperly includes attorney objection. | 23:23-24:1, 33:13-15, 68:5-8, 68:10-11; 68:13-18; 68:21-24 | | |
| Hunt, Colin | 66 | 18 | 67 | 3 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 67:4 to 67:13, 67:21 to 68:3 | Counter-designation improperly includes attorney objection. | 23:23-24:1, 33:13-15, 68:5-8, 68:10-11; 68:13-18; 68:21-24 | | |
| Hunt, Colin | 69 | 4 | 70 | 11 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11, 70:13 to 70:14 | | 23:23-24:1, 33:13-15, 70:15-20 | | |
| Hunt, Colin | 71 | 1 | 71 | 17 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 71 | 18 | 72 | 9 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 72 | 11 | 73 | 8 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 31:20 to 32:2, 33:10 to 33:11 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 73 | 9 | 73 | 15 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 74 | 4 | 74 | 13 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 74:14 to 74:16 | | | | |
| Hunt, Colin | 74 | 19 | 75 | 19 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 76 | 7 | 76 | 24 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 77 | 7 | 77 | 9 | | | | | | |
| Hunt, Colin | 77 | 11 | 77 | 23 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 78:22 to 78:24 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 78 | 3 | 78 | 6 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 78:22 to 78:24 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 78 | 10 | 78 | 21 | Relevance; Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 78:22 to 78:24 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 79 | 5 | 79 | 10 | Incomplete | 22:19 to 23:15, 80:10 to 80:11 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 80 | 12 | 81 | 20 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 80:10 to 80:11 | | 23:23-24:1, 33:13-15 | | |
| Hunt, Colin | 82 | 2 | 82 | 21 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 82 | 24 | 83 | 17 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 83:18 to 83:22 | | 23:23-24:1, 33:13-15, 84:1-5 | | |
| Hunt, Colin | 83 | 23 | 83 | 25 | | | | | | |
| Hunt, Colin | 84 | 10 | 84 | 25 | | | | | | |
| Hunt, Colin | 85 | 1 | 85 | 2 | | | | | | |
| Hunt, Colin | 85 | 5 | 85 | 13 | | | | | | |
| Hunt, Colin | 85 | 16 | 85 | 22 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15 | | 23:23-24:1 | | |
| Hunt, Colin | 85 | 23 | 86 | 4 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15 | | 23:23-24:1 | | |
| Hunt, Colin | 86 | 11 | 86 | 16 | | | | | | |
| Hunt, Colin | 87 | 6 | 87 | 7 | | | | | | |
| Hunt, Colin | 87 | 12 | 87 | 12 | | | | | | |
| Hunt, Colin | 87 | 15 | 88 | 6 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15 | | 23:23-24:1 | | |
| Hunt, Colin | 88 | 7 | 88 | 11 | | 22:19 to 23:15 | | 23:23-24:1 | | |
| Hunt, Colin | 89 | 10 | 89 | 11 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; Vague/Ambiguous; FRE 403 | 22:19 to 23:15, 88:3 to 88:6 | | 23:23-24:1 | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 89 | 13 | 89 | 16 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; Vague/Ambiguous; FRE 403 | 22:19 to 23:15, 88:3 to 88:6 | | 23:23-24:1 | | |
| Hunt, Colin | 93 | 11 | 93 | 14 | | | | | | |
| Hunt, Colin | 93 | 17 | 93 | 19 | | | | | | |
| Hunt, Colin | 93 | 22 | 94 | 1 | | | | | | |
| Hunt, Colin | 94 | 2 | 94 | 16 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 94:20 to 94:23, 96:3 to 96:8 | | | | |
| Hunt, Colin | 95 | 1 | 95 | 4 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 94:20 to 94:23, 96:3 to 96:8 | | | | |
| Hunt, Colin | 95 | 8 | 95 | 15 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 94:20 to 94:23, 96:3 to 96:8 | | 23:23-24:1 | | |
| Hunt, Colin | 95 | 24 | 96 | 2 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 94:20 to 94:23, 96:3 to 96:8 | | | | |
| Hunt, Colin | 96 | 13 | 96 | 25 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 94:20 to 94:23, 96:3 to 96:8 | | 23:23-24:1 | | |
| Hunt, Colin | 97 | 6 | 98 | 2 | | | | | | |
| Hunt, Colin | 98 | 5 | 98 | 9 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Hunt, Colin | 99 | 4 | 99 | 15 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 22:19 to 23:15, 99:16 to 99:23 | | 23:23-24:1 | | |
| Hunt, Colin | 99 | 24 | 99 | 24 | Incomplete; Speculation | 22:19 to 23:15, 100:1 to 100:3 | | 23:23-24:1 | | |
| Hunt, Colin | 100 | 5 | 100 | 11 | Incomplete; Speculation | 100:1 to 100:3 | | | | |
| Hunt, Colin | 100 | 12 | 100 | 16 | | | | | | |
| Hunt, Colin | 100 | 20 | 100 | 25 | | | | | | |
| Hunt, Colin | 103 | 3 | 103 | 6 | | | | | | |
| Hunt, Colin | 103 | 16 | 104 | 7 | | | | | | |
| Hunt, Colin | 104 | 10 | 104 | 23 | Speculation; Lack of Personal Knowledge; Foundation; Hearsay; FRE 403 | 104:24 to 105:5 | | | | |
| Hunt, Colin | 105 | 7 | 106 | 1 | | 106:4 to 106:11 | | | | |
| Hunt, Colin | 106 | 23 | 107 | 11 | | 106:4 to 106:11 | | | | |
| Hunt, Colin | 107 | 16 | 108 | 1 | Relevance; FRE 403 | | | | | |
| Hunt, Colin | 108 | 4 | 108 | 7 | Relevance; FRE 403 | | | | | |
| Kwon, Joonbum | 9 | 20 | 9 | 24 | | 9:25-10:1 | | | | |
| Kwon, Joonbum | 19 | 10 | 19 | 12 | | 19:13-19:17 | FRE 402 | | | |
| Kwon, Joonbum | 20 | 4 | 20 | 14 | | | | | | |
| Kwon, Joonbum | 20 | 18 | 21 | 9 | | | | | | |
| Kwon, Joonbum | 21 | 11 | 21 | 25 | | | | | | |
| Kwon, Joonbum | 22 | 2 | 22 | 11 | | | | | | |
| Kwon, Joonbum | 23 | 17 | 24 | 3 | | | | | | |
| Kwon, Joonbum | 24 | 18 | 26 | 10 | | | | | | |
| Kwon, Joonbum | 27 | 5 | 27 | 7 | | | | | | |
| Kwon, Joonbum | 27 | 17 | 27 | 22 | | | | | | |
| Kwon, Joonbum | 28 | 2 | 28 | 8 | | | | | | |
| Kwon, Joonbum | 29 | 12 | 29 | 20 | | | | | | |
| Kwon, Joonbum | 29 | 25 | 30 | 24 | | 31:2-31:5 | | | | |
| Kwon, Joonbum | 31 | 6 | 31 | 8 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Kwon, Joonbum | 31 | 16 | 32 | 5 | | | | | | |
| Kwon, Joonbum | 32 | 11 | 32 | 22 | | | | | | |
| Kwon, Joonbum | 32 | 23 | 33 | 4 | | 33:5-33:21; 34:14-34:20 | [34:14-34:20] FRE 402 | 34:1-7 | | |
| Kwon, Joonbum | 34 | 21 | 34 | 25 | | | | | | |
| Kwon, Joonbum | 35 | 8 | 36 | 1 | | | | | | |
| Kwon, Joonbum | 36 | 4 | 36 | 9 | | | | | | |
| Kwon, Joonbum | 36 | 11 | 38 | 1 | | | | | | |
| Kwon, Joonbum | 38 | 3 | 38 | 19 | | | | | | |
| Kwon, Joonbum | 38 | 20 | 38 | 20 | | | | | | |
| Kwon, Joonbum | 38 | 23 | 38 | 23 | | | | | | |
| Kwon, Joonbum | 38 | 24 | 38 | 24 | | | | | | |
| Kwon, Joonbum | 39 | 1 | 39 | 19 | | | | | | |
| Kwon, Joonbum | 39 | 20 | 39 | 23 | | | | | | |
| Kwon, Joonbum | 39 | 25 | 40 | 11 | | | | | | |
| Kwon, Joonbum | 40 | 14 | 40 | 23 | | | | | | |
| Kwon, Joonbum | 40 | 25 | 41 | 5 | | | | | | |
| Kwon, Joonbum | 41 | 23 | 42 | 14 | | | | | | |
| Kwon, Joonbum | 42 | 19 | 43 | 2 | | | | | | |
| Kwon, Joonbum | 43 | 3 | 43 | 15 | | 43:16-43:21 | | 43:22-23; 43:25 | Vague and ambiguous | 43:22-25 |
| Kwon, Joonbum | 45 | 8 | 45 | 16 | | 45:22-45:24 | | | | |
| Kwon, Joonbum | 45 | 25 | 46 | 22 | | | | | | |
| Kwon, Joonbum | 56 | 16 | 56 | 19 | | | | | | |
| Kwon, Joonbum | 56 | 20 | 56 | 23 | | 56:24-57:1 | | | | |
| Kwon, Joonbum | 57 | 2 | 57 | 16 | | | | | | |
| Kwon, Joonbum | 59 | 7 | 60 | 1 | | | | | | |
| Kwon, Joonbum | 62 | 19 | 64 | 17 | | | | | | |
| Kwon, Joonbum | 64 | 18 | 64 | 20 | | | | | | |
| Kwon, Joonbum | 64 | 24 | 65 | 11 | | 65:12-65:20 | | | | |
| Kwon, Joonbum | 65 | 21 | 66 | 20 | | | | | | |
| Kwon, Joonbum | 66 | 21 | 67 | 4 | | | | | | |
| Kwon, Joonbum | 68 | 8 | 68 | 14 | | | | | | |
| Kwon, Joonbum | 69 | 11 | 69 | 21 | | | | | | |
| Kwon, Joonbum | 69 | 22 | 70 | 1 | | | | | | |
| Kwon, Joonbum | 70 | 20 | 72 | 24 | | | | | | |
| Kwon, Joonbum | 72 | 25 | 73 | 2 | | | | | | |
| Kwon, Joonbum | 73 | 5 | 74 | 7 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Kwon, Joonbum | 74 | 12 | 75 | 23 | | | | | | |
| Kwon, Joonbum | 76 | 2 | 76 | 6 | | | | | | |
| Kwon, Joonbum | 76 | 22 | 79 | 18 | | | | | | |
| Kwon, Joonbum | 79 | 24 | 80 | 23 | | | | | | |
| Kwon, Joonbum | 81 | 1 | 81 | 6 | | | | | | |
| Kwon, Joonbum | 81 | 7 | 81 | 22 | | | | | | |
| Kwon, Joonbum | 82 | 17 | 82 | 24 | | | | | | |
| Kwon, Joonbum | 83 | 2 | 83 | 13 | | | | | | |
| Kwon, Joonbum | 84 | 21 | 86 | 5 | | | | | | |
| Kwon, Joonbum | 86 | 8 | 86 | 19 | | | | | | |
| Kwon, Joonbum | 86 | 21 | 87 | 4 | | | | | | |
| Kwon, Joonbum | 87 | 5 | 87 | 6 | | | | | | |
| Kwon, Joonbum | 87 | 7 | 87 | 12 | | | | | | |
| Kwon, Joonbum | 87 | 20 | 88 | 4 | | | | | | |
| Kwon, Joonbum | 88 | 22 | 89 | 6 | | 89:7-89:10 | | | | |
| Kwon, Joonbum | 89 | 11 | 90 | 18 | | | | | | |
| Kwon, Joonbum | 91 | 10 | 91 | 18 | | 91:19-91:21 | | 91:22-92:3 | Foundation (assumes facts not in evidence) | 91:22-24 |
| Kwon, Joonbum | 92 | 4 | 92 | 22 | | 93:17-93:19 | | | | |
| Kwon, Joonbum | 95 | 4 | 95 | 6 | | | | | | |
| Kwon, Joonbum | 96 | 23 | 97 | 14 | | | | | | |
| Kwon, Joonbum | 97 | 17 | 97 | 17 | | | | | | |
| Kwon, Joonbum | 98 | 21 | 99 | 18 | | | | | | |
| Kwon, Joonbum | 102 | 5 | 102 | 8 | | | | | | |
| Kwon, Joonbum | 102 | 10 | 103 | 16 | | | | | | |
| Kwon, Joonbum | 105 | 7 | 105 | 9 | | | | | | |
| Kwon, Joonbum | 105 | 19 | 106 | 3 | | | | | | |
| Kwon, Joonbum | 106 | 6 | 106 | 8 | | | | | | |
| Kwon, Joonbum | 106 | 10 | 106 | 17 | | | | | | |
| Kwon, Joonbum | 106 | 20 | 106 | 20 | | | | | | |
| Kwon, Joonbum | 107 | 6 | 107 | 17 | | | | | | |
| Kwon, Joonbum | 107 | 20 | 107 | 22 | | | | | | |
| Kwon, Joonbum | 107 | 24 | 108 | 1 | | | | | | |
| Kwon, Joonbum | 108 | 3 | 108 | 6 | | | | | | |
| Kwon, Joonbum | 108 | 8 | 108 | 9 | | | | | | |
| Kwon, Joonbum | 108 | 11 | 108 | 13 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Kwon, Joonbum | 108 | 15 | 108 | 21 | | 111:7-111:8; 111:10-111:16; 111:18-111:22 | | 111:1-2, 111:5-6 | | |
| Kwon, Joonbum | 112 | 6 | 112 | 14 | | | | | | |
| Kwon, Joonbum | 112 | 19 | 114 | 5 | | | | | | |
| Kwon, Joonbum | 114 | 8 | 114 | 14 | | | | | | |
| Kwon, Joonbum | 114 | 17 | 114 | 19 | Lacks foundation – assumes facts not in evidence, misstates document | | | | | |
| Kwon, Joonbum | 114 | 23 | 115 | 5 | | | | | | |
| Kwon, Joonbum | 115 | 7 | 115 | 7 | | | | | | |
| Kwon, Joonbum | 115 | 10 | 115 | 12 | | | | | | |
| Kwon, Joonbum | 115 | 14 | 115 | 16 | | | | | | |
| Kwon, Joonbum | 115 | 18 | 115 | 18 | | | | | | |
| Kwon, Joonbum | 116 | 9 | 116 | 16 | | | | | | |
| Kwon, Joonbum | 116 | 16 | 116 | 18 | | | | | | |
| Kwon, Joonbum | 116 | 21 | 117 | 6 | | | | | | |
| Kwon, Joonbum | 117 | 9 | 117 | 12 | | | | | | |
| Kwon, Joonbum | 117 | 14 | 118 | 6 | 117:11-12, 117:14 Calls for speculation | | | | | |
| Kwon, Joonbum | 118 | 9 | 118 | 18 | | | | | | |
| Kwon, Joonbum | 120 | 10 | 120 | 17 | | | | | | |
| Kwon, Joonbum | 120 | 18 | 121 | 5 | | | | | | |
| Kwon, Joonbum | 122 | 14 | 123 | 12 | | | | | | |
| Kwon, Joonbum | 123 | 17 | 123 | 18 | | | | | | |
| Kwon, Joonbum | 124 | 6 | 126 | 21 | 126:11-13 Lacks foundation – assumes facts not in evidence, misstates document | | | | | |
| Kwon, Joonbum | 127 | 7 | 127 | 9 | | | | | | |
| Kwon, Joonbum | 127 | 10 | 127 | 15 | | | | | | |
| Kwon, Joonbum | 136 | 22 | 136 | 22 | | | | | | |
| Kwon, Joonbum | 136 | 24 | 136 | 24 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Kwon, Joonbum | 137 | 1 | 137 | 12 | | | | | | |
| Kwon, Joonbum | 139 | 22 | 140 | 10 | | | | | | |
| Kwon, Joonbum | 140 | 12 | 140 | 15 | | | | | | |
| Kwon, Joonbum | 140 | 16 | 141 | 22 | 141:14-16 Lacks foundation – assumes facts not in evidence, misleading | | | | | |
| Kwon, Joonbum | 141 | 25 | 142 | 2 | | | | | | |
| Kwon, Joonbum | 142 | 4 | 142 | 19 | 142:5-7 Lacks foundation – assumes facts not in evidence, misleading | | | | | |
| Kwon, Joonbum | 142 | 24 | 143 | 4 | | | | | | |
| Kwon, Joonbum | 143 | 7 | 144 | 1 | | | | | | |
| Kwon, Joonbum | 144 | 7 | 144 | 9 | | | | | | |
| Kwon, Joonbum | 144 | 17 | 145 | 11 | | | | | | |
| Kwon, Joonbum | 145 | 23 | 146 | 9 | | | | | | |
| Kwon, Joonbum | 146 | 11 | 146 | 13 | | | | | | |
| Kwon, Joonbum | 146 | 15 | 146 | 18 | 146:16-18 Lacks foundation – assumes facts not in evidence, misleading | | | | | |
| Kwon, Joonbum | 146 | 19 | 146 | 24 | | | | | | |
| Kwon, Joonbum | 146 | 25 | 147 | 10 | | | | | | |
| Kwon, Joonbum | 147 | 16 | 149 | 10 | | | | | | |
| Kwon, Joonbum | 149 | 16 | 150 | 11 | 149:16-18 Lacks foundation – assumes facts not in evidence, misleading | | | | | |
| Kwon, Joonbum | 150 | 13 | 151 | 8 | | | | | | |
| Kwon, Joonbum | 151 | 20 | 152 | 11 | | | | | | |
| Kwon, Joonbum | 152 | 13 | 152 | 13 | | | | | | |
| Kwon, Joonbum | 153 | 10 | 153 | 16 | 153:13-16 Lacks foundation – assumes facts not in evidence, misleading | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Kwon, Joonbum | 153 | 17 | 153 | 19 | | | | | | |
| Kwon, Joonbum | 154 | 6 | 154 | 21 | | | | | | |
| Kwon, Joonbum | 154 | 23 | 155 | 9 | | | | | | |
| Kwon, Joonbum | 155 | 24 | 156 | 8 | 156:7-8 Lacks foundation – assumes facts not in evidence, misleading, mischaracterizes prior testimony and exhibit | | | | | |
| Kwon, Joonbum | 156 | 12 | 156 | 22 | 156:12 Lacks foundation – assumes facts not in evidence, misleading, mischaracterizes prior testimony and exhibit | | | | | |
| Kwon, Joonbum | 156 | 24 | 157 | 12 | 157:10-12 Lacks foundation – assumes facts not in evidence, misleading | | | | | |
| Kwon, Joonbum | 160 | 12 | 160 | 19 | | | | | | |
| Kwon, Joonbum | 160 | 20 | 160 | 20 | | | | | | |
| Kwon, Joonbum | 161 | 4 | 161 | 19 | | | | | | |
| Kwon, Joonbum | 161 | 22 | 162 | 14 | | | | | | |
| Kwon, Joonbum | 163 | 23 | 164 | 14 | | | | | | |
| Kwon, Joonbum | 164 | 21 | 165 | 1 | | | | | | |
| Kwon, Joonbum | 165 | 5 | 165 | 8 | | | | | | |
| Kwon, Joonbum | 165 | 17 | 166 | 11 | | | | | | |
| Kwon, Joonbum | 166 | 15 | 167 | 11 | | | | | | |
| Kwon, Joonbum | 167 | 19 | 168 | 9 | | | | | | |
| Kwon, Joonbum | 168 | 14 | 168 | 16 | | | | | | |
| Kwon, Joonbum | 168 | 19 | 168 | 19 | | | | | | |
| Kwon, Joonbum | 168 | 20 | 168 | 22 | | | | | | |
| Kwon, Joonbum | 168 | 25 | 169 | 6 | | | | | | |
| Kwon, Joonbum | 170 | 17 | 170 | 20 | | | | | | |
| Kwon, Joonbum | 170 | 23 | 171 | 2 | | | | | | |
| Kwon, Joonbum | 171 | 4 | 171 | 7 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Kwon, Joonbum | 171 | 9 | 171 | 12 | | | | | | |
| Kwon, Joonbum | 171 | 14 | 171 | 16 | | | | | | |
| Shen, Ya Annia | 7 | 14 | 7 | 23 | | | | | | |
| Shen, Ya Annia | 19 | 14 | 21 | 7 | 19:17-21:7 Hearsay | | | | | |
| Shen, Ya Annia | 21 | 18 | 22 | 6 | Hearsay | | | | | |
| Shen, Ya Annia | 22 | 7 | 22 | 18 | Hearsay, Speculative | | | | | |
| Shen, Ya Annia | 24 | 1 | 24 | 19 | Hearsay | | | | | |
| Shen, Ya Annia | 31 | 4 | 33 | 14 | | | | | | |
| Shen, Ya Annia | 34 | 17 | 35 | 6 | 35:6 Speculative | | | | | |
| Shen, Ya Annia | 35 | 9 | 35 | 19 | Speculative | | | | | |
| Shen, Ya Annia | 35 | 22 | 36 | 11 | 35:22-36:10 Speculative | | | | | |
| Shen, Ya Annia | 36 | 20 | 36 | 25 | | | | | | |
| Shen, Ya Annia | 37 | 3 | 37 | 14 | | | | | | |
| Shen, Ya Annia | 38 | 8 | 39 | 11 | 38:8-39:10 Hearsay, Speculative, Lack of foundation | | | | | |
| Shen, Ya Annia | 53 | 3 | 53 | 4 | Speculative, Improper character evidence, Improper opinion, overbroad | | | | | |
| Shen, Ya Annia | 53 | 7 | 53 | 14 | Speculative, Improper character evidence, Improper opinion, overbroad | | | | | |
| Shen, Ya Annia | 53 | 17 | 53 | 21 | Speculative, Improper character evidence, Improper opinion, overbroad | | | | | |
| Shen, Ya Annia | 53 | 24 | 54 | 6 | Speculative, Improper character evidence, Improper opinion, overbroad | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Shen, Ya Annia | 54 | 10 | 54 | 14 | Speculative | 54:15-55:7 | [55:4-6]: FRE 802 [55:1-2]: includes attorney objection. | 56:5-12; 56:15-20 | | |
| Shen, Ya Annia | 55 | 8 | 55 | 10 | | | | | | |
| Shen, Ya Annia | 60 | 6 | 60 | 19 | Hearsay | | | | | |
| Shen, Ya Annia | 62 | 22 | 63 | 3 | | | | | | |
| Shen, Ya Annia | 65 | 2 | 66 | 4 | 65:18-66:4 Speculative, Lack of foundation | | | | | |
| Shen, Ya Annia | 66 | 7 | 66 | 13 | Speculative, Lack of foundation | | | | | |
| Shen, Ya Annia | 66 | 14 | 66 | 15 | Speculative, Lack of foundation | | | | | |
| Shen, Ya Annia | 66 | 16 | 68 | 18 | Speculative, Lack of foundation | | | | | |
| Shen, Ya Annia | 70 | 5 | 70 | 21 | Speculative, Lack of foundation | | | | | |
| Shen, Ya Annia | 70 | 25 | 71 | 3 | | | | | | |
| Shen, Ya Annia | 86 | 10 | 86 | 22 | | 86:5-86:9 | | | | |
| Shen, Ya Annia | 87 | 21 | 91 | 5 | 87:21-91:3 Speculative | | | | | |
| Shen, Ya Annia | 91 | 8 | 91 | 10 | | | | | | |
| Shen, Ya Annia | 91 | 11 | 92 | 1 | | | | | | |
| Shen, Ya Annia | 92 | 12 | 92 | 14 | | 92:15-92:25 | | | | |
| Shen, Ya Annia | 148 | 9 | 149 | 5 | | | | | | |
| Vetury, Ramakrishna | 13 | 24 | 14 | 4 | | 13:17-13:23 | | | | |
| Vetury, Ramakrishna | 18 | 3 | 19 | 20 | | 17:1-17:22 | | 14:5-16:5 | | |
| Vetury, Ramakrishna | 20 | 9 | 20 | 16 | | | | | | |
| Vetury, Ramakrishna | 23 | 9 | 23 | 15 | | 22:7-23:1 | | | | |
| Vetury, Ramakrishna | 23 | 16 | 24 | 11 | | | | | | |
| Vetury, Ramakrishna | 24 | 12 | 24 | 16 | | | | | | |
| Vetury, Ramakrishna | 24 | 17 | 25 | 4 | | | | | | |

41

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Vetury, Ramakrishna | 25 | 5 | 25 | 9 | | | | | | |
| Vetury, Ramakrishna | 25 | 10 | 25 | 25 | | | | | | |
| Vetury, Ramakrishna | 26 | 1 | 26 | 24 | | | | | | |
| Vetury, Ramakrishna | 29 | 21 | 30 | 3 | | 29:8-29:20 | | 28:3-29:3 | | |
| Vetury, Ramakrishna | 30 | 4 | 31 | 1 | | | | | | |
| Vetury, Ramakrishna | 31 | 2 | 31 | 8 | | | | | | |
| Vetury, Ramakrishna | 31 | 9 | 32 | 5 | | | | | | |
| Vetury, Ramakrishna | 33 | 7 | 35 | 22 | | 42:21-43:2; 43:18-43:21 | | 44:12-45:1 | | |
| Vetury, Ramakrishna | 45 | 19 | 50 | 1 | | | | | | |
| Vetury, Ramakrishna | 54 | 25 | 56 | 5 | | | | | | |
| Vetury, Ramakrishna | 56 | 8 | 56 | 10 | | | | | | |
| Vetury, Ramakrishna | 56 | 12 | 56 | 13 | | | | | | |
| Vetury, Ramakrishna | 57 | 10 | 59 | 24 | | | | | | |
| Vetury, Ramakrishna | 60 | 8 | 65 | 15 | | | | | | |
| Vetury, Ramakrishna | 66 | 7 | 66 | 17 | | | | | | |
| Vetury, Ramakrishna | 67 | 4 | 67 | 10 | | 67:11-67:20 | | | | |
| Vetury, Ramakrishna | 67 | 21 | 69 | 24 | | | | | | |
| Vetury, Ramakrishna | 71 | 8 | 72 | 25 | | | | | | |
| Vetury, Ramakrishna | 74 | 19 | 76 | 3 | | | | | | |
| Vetury, Ramakrishna | 76 | 20 | 79 | 20 | | | | | | |
| Vetury, Ramakrishna | 80 | 2 | 80 | 4 | | | | | | |

**EXHIBIT D.1 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Tr. Page From | Tr. Line To | Tr. Page From | Tr. Line To | Defendants' Objections to Qorvo's Designations | Defendants' Counter-Designations | Plaintiff's Objections to Defendants' Counter-Designations | Plaintiff's Counter-Counter-Designations | Defendants' Objections to Counter-Counter-Designations | Defendants' Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|---|---|---|
| Vetury, Ramakrishna | 80 | 5 | 85 | 20 | | | | | | |
| Vetury, Ramakrishna | 89 | 10 | 91 | 8 | | | | | | |
| Vetury, Ramakrishna | 91 | 10 | 91 | 14 | | | | | | |
| Vetury, Ramakrishna | 91 | 15 | 91 | 21 | | | | | | |
| Vetury, Ramakrishna | 93 | 10 | 96 | 14 | | | | | | |
| Vetury, Ramakrishna | 96 | 17 | 97 | 4 | | | | | | |
| Vetury, Ramakrishna | 97 | 12 | 97 | 15 | | | | | | |
| Vetury, Ramakrishna | 98 | 10 | 98 | 17 | Lack of foundation for personal knowledge | | | 98:22-24 | | |
| Vetury, Ramakrishna | 98 | 25 | 99 | 18 | Lack of foundation for personal knowledge | | | 98:22-24 | | |
| Vetury, Ramakrishna | 99 | 21 | 100 | 1 | | | | | | |
| Vetury, Ramakrishna | 100 | 6 | 100 | 8 | | | | | | |
| Vetury, Ramakrishna | 100 | 9 | 103 | 1 | | 103:16-104:23 | | | | |
| Vetury, Ramakrishna | 104 | 24 | 105 | 9 | | 105:10-106:6 | | | | |

# Exhibit D.2

**EXHIBIT D.2 – DEFENDANTS' DEPOSITION DESIGNATIONS**

| Witness | Defendants' Designation | Plaintiff's Objection | Plaintiff's Counter Designation | Defendants' Counter-Counter Designation | Defendants' Counter-Counter Objections | Plaintiff's Objections to Counter-Counter-Designations | Plaintiff's Counter-Counter-Counter-Designations |
|---------|-------------------------|-----------------------|----------------------------------|------------------------------------------|------------------------------------------|--------------------------------------------------------|--------------------------------------------------|
| Giovan, Leah | 14:2-14:9 | | | | | | |
| Giovan, Leah | 15:15-16:21 | | | | | | |
| Giovan, Leah | 17:4-17:17 | | 18:10-18:25 | | | | |
| Giovan, Leah | 19:1-19:25 | | 18:10-18:25 | | | | |
| Giovan, Leah | 20:11-22:13 | [21:18-22:2] 402, 403 | 18:10-18:25 | | | | |
| Giovan, Leah | 22:18-22:21 | | 23:4-24:21 | | | | |
| Giovan, Leah | 26:24-28:1 | | 28:2-28:14; 28:18-29:4; 29:13-30:11 | | Hearsay, speculation | | |
| Giovan, Leah | 28:15-28:17 | | 28:2-28:14; 28:18-29:4; 29:13-30:11 | | Foundation, speculation and hearsay | | |
| Giovan, Leah | 30:25-32:3 | 106, 402, 403 | 28:18-29:4; 29:13-30:11 | 32:9-39:16 | Hearsay, speculation | | |
| Giovan, Leah | 33:3-33:16 | | | | | | |
| Giovan, Leah | 34:2-34:6 | | | | | | |
| Giovan, Leah | 35:14-35:25 | | | | | | |
| Giovan, Leah | 36:4-36:21 | | 36:22-36:24 | | | | |
| Giovan, Leah | 37:2-38:10 | | | | | | |
| Giovan, Leah | 39:8-39:23 | | | | | | |
| Giovan, Leah | 40:7-41:8 | | | | | | |
| Giovan, Leah | 43:2-45:21 | | | | | | |
| Giovan, Leah | 46:3-46:23 | 106, 403 | | | | | |
| Giovan, Leah | 47:2-49:3 | | | | | | |
| Giovan, Leah | 49:5-50:2 | | | | | | |
| Giovan, Leah | 51:16-53:1 | | | | | | |

**EXHIBIT D.2 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Defendants' Designation | Plaintiff's Objection | Plaintiff's Counter Designation | Defendants' Counter-Counter Designation | Defendants' Counter-Counter Objections | Plaintiff's Objections to Counter-Counter-Designations | Plaintiff's Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|
| Giovan, Leah | 53:5-53:24 | | | | | | |
| Giovan, Leah | 54:4-54:25 | | | | | | |
| Giovan, Leah | 55:8-55:18 | | | | | | |
| Giovan, Leah | 55:25-56:16 | | | | | | |
| Giovan, Leah | 56:22-57:13 | | 57:19-58:2 | | | | |
| Giovan, Leah | 58:9-58:23 | | | | | | |
| Giovan, Leah | 59:2-59:8 | | | | | | |
| Giovan, Leah | 59:16-60:25 | | | | | | |
| Giovan, Leah | 61:22-62:25 | | | | | | |
| Giovan, Leah | 63:9-64:22 | | | | | | |
| Giovan, Leah | 65:17-69:25 | | | | | | |
| Giovan, Leah | 71:1-71:15 | | 71:24-72:3; 72:6-72:7 | | Hearsay, speculation | | |
| Giovan, Leah | 72:15-72:24 | | | 72:25-74:1 | | | |
| Giovan, Leah | 79:7-79:19 | | 79:20-79:24 | | Hearsay | | |
| Giovan, Leah | 79:25-80:23 | | 79:20-79:24 | | Hearsay | | |
| Giovan, Leah | 81:21-82:12 | | | | | | |
| Giovan, Leah | 83:4-85:3 | | | | | | |
| Giovan, Leah | 86:19-88:5 | | 85:22-86:14; 90:17-91:13 | | Foundation, speculation and hearsay | | |
| Giovan, Leah | 88:13-88:25 | | 85:22-86:14; 90:17-91:13 | | Foundation, speculation and hearsay | | |
| Giovan, Leah | 89:14-89:24 | | 85:22-86:14; 90:6-90:7; 90:17-91:13 | | Foundation, speculation and hearsay | | |
| Giovan, Leah | 94:2-96:6 | | 85:22-86:14; 90:6-90:7; 90:17-91:13 | | Foundation, speculation and hearsay | | |
| Giovan, Leah | 96:14-96:21 | | | | | | |
| Giovan, Leah | 100:4-102:3 | | 85:22-86:14; 90:17-91:13; 92:13-93:24; 98:4-99:5; 111:3-111:25 | | Foundation, speculation and hearsay | | |

**EXHIBIT D.2 – PLAINTIFF'S DEPOSITION DESIGNATIONS**

| Witness | Defendants' Designation | Plaintiff's Objection | Plaintiff's Counter Designation | Defendants' Counter-Counter Designation | Defendants' Counter-Counter Objections | Plaintiff's Objections to Counter-Counter-Designations | Plaintiff's Counter-Counter-Counter-Designations |
|---|---|---|---|---|---|---|---|
| Giovan, Leah | 102:6-102:8 | | | | | | |
| Giovan, Leah | 103:19-105:18 | | 92:13-93:24; 98:4-99:5; 111:3-111:25 | | Foundation, speculation and hearsay | | |
| Giovan, Leah | 105:23-107:10 | | 85:22-86:14; 90:17-91:13 | | Foundation, speculation and hearsay | | |
| Giovan, Leah | 113:6-115:3 | [114:20-115:3] 602 | | | | | |

# Exhibit E.1
# (Redacted in Its Entirety)

# Exhibit E.2
# (Redacted in Its Entirety)

# Exhibit E.3
# (Redacted in Its Entirety)

# Exhibit F.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QORVO, INC.,                                   )
                                               )
                    Plaintiff,                 )
                                               )  C.A. No. 21-1417 (JPM)
          v.                                   )
                                               )  **DEMAND FOR JURY TRIAL**
AKOUSTIS TECHNOLOGIES, INC. and                )
AKOUSTIS, INC.,                                )  ████████████████████████
                                               )  ████████████████████████████
                    Defendants.                )

**PLAINTIFF'S MOTION *IN LIMINE* #1: MOTION TO EXCLUDE EVIDENCE
AND ARGUMENT REGARDING PLAINTIFF'S ALLEGED UNFAIR
AND DECEPTIVE TRADE PRACTICES**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 22, 2024

*Attorneys for Plaintiff Qorvo, Inc.*

Pursuant to Fed. R. Evid. 402 and 403, Plaintiff Qorvo, Inc. ("Qorvo") hereby moves this Court to preclude Defendants Akoustis Technologies, Inc. and Akoustis Inc. (collectively, "Akoustis") from making any reference to, or introducing any evidence regarding, Qorvo's alleged unfair and deceptive trade practices concerning Akoustis, including but not limited to the information contained in QORVO_00062776; QORVO_00076928; QORVO_00062161; QORVO_00062689; QORVO_00627966; QORVO_00076825; QORVO_00060990 QORVO_00133852; QORVO_00652846; QORVO_00122459; QORVO_00105416; and QORVO_00063831 (the "Alleged Qorvo Unfair Trade Practices Evidence").

## I.      RELEVANT BACKGROUND

On July 24, 2023, Akoustis filed a motion for leave to amend to add a counterclaim for unfair and deceptive trade practices against Qorvo (the "Motion for Leave"). D.I. 245. Akoustis alleged that Qorvo engaged in unfair and deceptive trade practices to "drive Akoustis out of the market by any means necessary," including making false statements about Akoustis and hiring Akoustis employees for the purpose of obtaining Akoustis's confidential information. *Id*., pp. 5-8; D.I. 246, Ex. B. Akoustis cited in its Motion for Leave several internal Qorvo e-mails listed above by bates number. Qorvo opposed the Motion for Leave, arguing, *inter alia*, that there was not sufficient time left in the discovery period to address the new allegations. D.I. 267. On September 1, 2023, the Court denied Akoustis's Motion for Leave. D.I. 313. As a result, the parties did not pursue discovery concerning Akoustis' allegations of unfair competition.

## II.      ARGUMENT

The Alleged Qorvo Unfair Trade Practices Evidence should be excluded as irrelevant under Rule 402. The Court considered and denied Akoustis's attempt to inject its unfair competition claim into this case. As such, arguments and evidence that Qorvo allegedly engaged in unfair competition are outside the scope of the case. Courts in this circuit routinely exclude such

evidence. *See, e.g., Corning Inc. v. SRU Biosystems*, No. CIV.A. 03-633 JJF, 2005 WL 2465900, at *3 (D. Del. Oct. 5, 2005) (granting motion *in limine* because "the dismissed counterclaims are irrelevant to this action"); *Cooper v. Pennsylvania Hum. Rels. Comm'n*, No. 1:19-CV-2230, 2022 WL 3372048, at *2 (M.D. Pa. Aug. 16, 2022) (granting motion *in limine* regarding dismissed claim because "presentation of this evidence concerning these unrelated matters is potentially prejudicial, confuses the issues at trial, and would result in undue delay"); *Kimes v. Univ. of Scranton*, No. 3:14-CV-00091, 2016 WL 1274134, at *2 (M.D. Pa. Apr. 1, 2016) ("the dismissed claims are irrelevant to the jury's disposition of the surviving claims under Federal Rule of Evidence 402 and also because discussion of the dismissed claims is apt to confuse the jury under Federal Rule of Evidence 403.").

The Alleged Qorvo Unfair Trade Practices Evidence also should be excluded as unduly prejudicial under Rule 403. The parties did not take discovery nor develop evidence related to the unfair competition claim because the Court denied Akoustis's request to add the claim to the case. Allowing Akoustis to now present evidence or arguments to the jury concerning Qorvo's alleged unfair competition would invite the jury to speculate about matters that were outside the scope of discovery. Again, courts routinely exclude such evidence. *See Chiesi USA, Inc. v. Aurobindo Pharma USA, Inc.*, No. CV1918756ZNQLHG, 2022 WL 304574, at *3 (D.N.J. Jan. 9, 2022) (excluding theories outside the scope of the pleadings because the "parties are on the verge of trial and Chiesi was denied the opportunity to engage in fact or expert discovery on these theories"); *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 147 (D. Del. 2013) (granting motion *in limine* because "Intel was denied any opportunity to seek discovery into Tran's damages theory or develop its own response and, therefore, would be prejudiced by Tran's proposed expert and hypothetical testimony").

The Alleged Qorvo Unfair Trade Practices Evidence should also be excluded under Rule 403 because that evidence will result in undue delay and juror confusion. In particular, allowing Akoustis to submit evidence and argument on Qorvo's alleged unfair trade practices will divert these proceedings into a mini-trial on the propriety of Qorvo's conduct, which will distract the jurors from the issues that must be resolved in this case. Again, courts routinely exclude such evidence. *See ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493 (D. Del. 2010) (precluding evidence of prior alleged copying of non-accused products because such evidence "would cause substantial delay, wasted time, and confusion because it would require mini-trials to determine whether Mr. Ryan actually copied the unrelated ICU devices nearly twenty years ago"); *Zimmer v. Stryker*, No. 16-679, 2019 WL 9244877, at *1 (D. Del. Mar. 15, 2019) (allowing introduction of the defendant's patent "would invoke many of the Rule 403 concerns, including having a mini-trial on the meaning and validity of the [defendant's patent"); *Youssef v. Lynch*, No. 11-cv-1362, 2016 WL 2771803, at *3 (D.D.C. May 12, 2016) ("The parties would be well on their way to an unnecessary mini-trial that the Court has repeatedly stressed a desire to avoid. Such a mini-trial would consume significant time and resources and would distract the jury from the relevant issue in this case").

<br/>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 22, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2024, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                    *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                                        *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Xiaomei Cai, Esquire                                              *VIA ELECTRONIC MAIL*
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ  85016
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Rachael A. Harris, Esquire                                        *VIA ELECTRONIC MAIL*
Matthew A. Stanford, Esquire
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 21-1417 (JPM) |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | ████████████████ |
| | ) | ████████████████ |
| Defendants. | ) | |

**PLAINTIFF'S MOTION *IN LIMINE* #2: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PLAINTIFF'S ALLEGED ACQUISITION OR USE OF THIRD-PARTY CONFIDENTIAL INFORMATION**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 22, 2024

*Attorneys for Plaintiff Qorvo, Inc.*

Pursuant to Fed. R. Evid. 402 and 403, Plaintiff Qorvo, Inc. ("Qorvo") hereby moves this Court to preclude Defendants Akoustis Technologies, Inc. and Akoustis Inc. (collectively, "Akoustis") from making any reference to, or introducing any evidence or argument regarding, Qorvo's alleged acquisition or use of third-party confidential information, including but not limited to the information set forth in QORVO_00070764, QORVO_00070776, QORVO_00070791, QORVO_00070812, QORVO_00070824, QORVO_00070839, QORVO_00070874, QORVO_00070895, QORVO_00651152, QORVO_00651169, QORVO_00651192, QORVO_00664991, QORVO_00690086, QORVO_00752044, QORVO_00753641, QORVO_00811723, QORVO_00838069, AKTS_00157836, and AKTS_00494323. (the "Alleged Third Party Confidential Information"). Exs. 1-19.

Statements, evidence or argument regarding Qorvo's alleged acquisition or use of third-party confidential information, including the Alleged Third Party Confidential Information, should be excluded as irrelevant under Rule 402. There is no relevant fact that is made more or less probable by the admission of this information, and courts routinely exclude references to and evidence of "separate alleged wrongful conduct" as outside the scope of the case. *E.g.*, *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19-CV-7092, 2023 WL 8360796, at *2 (N.D. Ill. Dec. 1, 2023) (excluding evidence regarding separate alleged wrongful conduct because such evidence is "not relevant" and "its probative value outweighs a danger of unfair prejudice or juror confusion"); *Sabre Int'l Sec. v. Torres Advanced Enter. Sols.*, LLC, 72 F. Supp. 3d 131, 147 (D.D.C. 2014) (excluding evidence of alleged wrongdoing outside scope of claims remaining in case because they are "not relevant and would create a danger of unfair prejudice and jury confusion"); *Al Copeland Enterprises, Inc. v. C.T.V. Sys., Inc.*, No. CIV. A. 92-2264, 1993 WL 191152, at *7 (E.D. La. May

21, 1993) (excluding evidence regarding alleged breaches of franchise agreement because they are "not relevant to whether the plaintiffs' franchise agreements can be validly terminated").

Statements, evidence, or argument regarding Qorvo's alleged acquisition or use of third-party confidential information should also be excluded as unduly prejudicial under Rule 403. Indeed, the entire purpose of such evidence is to use unrelated allegations of misconduct against Qorvo to improperly arouse hostility from a jury in hopes of nullifying Akoustis's liability for its illegal conduct. Courts routinely exclude such evidence as unduly prejudicial. *See, e.g.*, *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."); *Delker v. Blaker*, Civil Action No. 09-710, 2012 WL 726415, at *2 (W.D. Pa. Mar. 1, 2012) (excluding evidence of Plaintiff's prior criminal conviction because such evidence "would unfairly prejudice his case by arousing outright hostility from a jury"); *Williams v. City of Philadelphia*, No. CIV.A. 13-207, 2014 WL 1632218, at *3 (E.D. Pa. Apr. 23, 2014) (excluding evidence related to prior complaints against police officer because they are "unrelated to his actions here and could only inflame the jury"); *McGreevy v. Stroup*, No. 1:CV-01-1461, 2003 WL 27374140, at *4 (M.D. Pa. June 17, 2003) (excluding evidence related to prior alleged wrongful conduct because it is "irrelevant and would serve no purpose other than to inflame the passions of the jury").

Statements, evidence, or argument regarding Qorvo's alleged acquisition or use of third-party confidential information should also be excluded under Rule 403 because that evidence will result in undue delay and juror confusion. In particular, a "mini-trial" would have to be conducted on every such piece of information, which will distract the jurors from the issues that must be

resolved in the case. Again, courts routinely exclude such evidence. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 783 (3d Cir. 1994) ("Moreover, allowing in evidence regarding chemicals other than PCBs would create the need to have mini-trials on plaintiffs' exposure to each of these chemicals and the harm they cause; this would cause 'undue delay' given the minimal relevance of the evidence"); *ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493 (D. Del. 2010) (precluding evidence of prior alleged copying of non-accused products because such evidence "would cause substantial delay, wasted time, and confusion because it would require mini-trials to determine whether Mr. Ryan actually copied the unrelated ICU devices nearly twenty years ago"); *Zimmer v. Stryker*, No. 16-679, 2019 WL 9244877, at *1 (D. Del. Mar. 15, 2019) (allowing introduction of the defendant's patent "would invoke many of the Rule 403 concerns, including having a mini-trial on the meaning and validity of the [defendant's] patent").

Qorvo's limited time to present its case should not be wasted defending against spurious allegations intended to inflame the passions of the jury and prejudice it against Qorvo. Qorvo respectfully requests that the court exclude statements, evidence or argument regarding Qorvo's alleged acquisition or use of third-party confidential information, including the Alleged Third Party Confidential Information.

████████████████████████

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
    & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 22, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2024, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                           *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                                             *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Xiaomei Cai, Esquire                                                   *VIA ELECTRONIC MAIL*
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ  85016
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Rachael A. Harris, Esquire                                             *VIA ELECTRONIC MAIL*
Matthew A. Stanford, Esquire
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QORVO, INC.,                                    )
                                               )
                    Plaintiff,                 )
                                               )   C.A. No. 21-1417 (JPM)
          v.                                   )
                                               )   **DEMAND FOR JURY TRIAL**
AKOUSTIS TECHNOLOGIES, INC. and                )
AKOUSTIS, INC.,                                )
                                               )   ██████████████████████
                    Defendants.                )   ██████████████████████

## PLAINTIFF'S MOTION *IN LIMINE* #3: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING OTHER LAWSUITS

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 22, 2024                                 *Attorneys for Plaintiff Qorvo, Inc.*

Pursuant to Fed. R. Evid. 402 and 403, Plaintiff Qorvo, Inc. ("Qorvo") hereby moves this Court to preclude Defendants Akoustis Technologies, Inc. and Akoustis Inc. (collectively, "Akoustis") from making any reference to other lawsuits or introducing any evidence regarding the claims asserted in such lawsuits, including but not limited to: 1) *Akoustis Technologies Inc. et al. v. Qorvo, Inc.*, Case No. 2:23-CV-180 (E.D. Tex.) (the "EDTX Lawsuit"); and 2) *TriQuint Semiconductor, Inc. v. Avago Technologies Limited et al.*, Case No. 2:09-CV-01531 (D. Ariz.) (the "Avago Lawsuit").[1]

The existence of other lawsuits, including the EDTX and Avago Lawsuits, is not relevant to the claims and defenses in this matter. The EDTX Lawsuit was filed on April 20, 2023, more than eighteen months after Qorvo initiated this lawsuit and in response to Qorvo adding the trade secret claims in this Action. The operative complaint generally alleges that Qorvo infringes U.S. Patent No. 7,250,360. EDTX Lawsuit, D.I. 1. The case is in its early stages and remains pending. The Avago Lawsuit was filed on July 23, 2009 by Qorvo's predecessor, TriQuint Semiconductor, Inc. ("TriQuint"). In its complaint, TriQuint sought declaratory judgment of invalidity and non-infringement regarding U.S. Patent Nos. 6,879,224; 6,472,954; 6,262,637; 6,262,637; and 6,384,697. Avago Lawsuit, D.I. 1. TriQuint also alleged that several defendants, including Avago, infringed U.S. Patent Nos. 6,114,635; 5,231,327; and 5,894,647. *Id.* The case was dismissed by joint stipulation on May 17, 2012, before trial. *Id.*, D.I. 601.

---

[1] Qorvo notes that former Akoustis employee and witness Ya Annia Shen sued Akoustis on March 11, 2022 alleging wage, race and sex discrimination under state (North Carolina) and federal laws. *Ya "Annia" Shen v. Akoustis Technologies, Inc.*, No. 3:22-CV-103 (W.D.N.C. Mar. 11, 2022). Qorvo anticipates that any Court order on this motion would apply equally to this lawsuit.

The patents-in-suit in this case are U.S. Patent Nos. 7,255,018 and 9,735,755 (the "Patents-In-Suit"), and do not have any familial relationship to the patents at issue in the EDTX and Avago Lawsuits.

Courts routinely exclude references to other lawsuits and/or otherwise exclude evidence regarding the claims asserted in such lawsuits as irrelevant. *E.g.*, *Nwegbo v. Borough*, No. 12-CV-05063, 2013 WL 3463504, at *3 (E.D. Pa. July 10, 2013) ("these [other] cases are all in their preliminary stages and have not been decided on their merits. This court will not waste the jury's time conducting mini-trials regarding the allegations in the other cases."); *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19-CV-7092, 2023 WL 8360796, at *2 (N.D. Ill. Dec. 1, 2023) (excluding evidence regarding separate lawsuit because such evidence is "not relevant" and "its probative value outweighs a danger of unfair prejudice or juror confusion"); *see also Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1309 (Fed. Cir. 2001) ("The fact that Medtronic's '556 patent might read on the Falcon catheter is totally irrelevant to the question of whether Medtronic willfully infringed another patent.").

Furthermore, statements, evidence, and arguments that refer to other lawsuits and/or the claims asserted in such lawsuits are prejudicial. The Avago Lawsuit was settled before trial nearly twelve years ago, and the EDTX Lawsuit remains pending. There has been no adjudication of facts on their merits, and any reference to unproven allegations in those lawsuits would amount to nothing more than prejudicial speculation and conjecture. *See Nwegbo*, 2013 WL 3463504 at *3. Additionally, referencing other lawsuits or introducing any evidence regarding the claims asserted in them would necessitate "mini-trials" to educate the jury on the allegations involved, causing undue delay, confusion, and distraction. Fed. R. Evid. 403. For this reason, courts frequently exclude evidence related to other lawsuits and the claims asserted in them. *E.g.*, *id.*; *BNJ Leasing,*

*Inc. v. Portabull Fuel Serv., LLC*, No. 2:19-CV-156, 2022 WL 892747, at *9 (S.D. Miss. Mar. 25, 2022) (evidence of other patents "will only confuse the issues before the jury"); *Oil-Dri Corp. of Am. V. Nestle Purina PetCare Co.*, No. 15-CV-1067, 2019 WL 1098925, at *6 (N.D. Ill. Mar. 8, 2019) (excluding reference to another pending patent infringement lawsuit between the same two parties involving a different patent-in-suit because "it is difficult to imagine any situation in which the probative value of this evidence would not be substantially outweighed by the danger for confusing the issues, wasting time on a sidetrack that would require explanation of the other lawsuit, and unfair prejudice"); *see also Advanced Respiratory, Inc. v. Electromed, Inc.*, No. 00-2646, 2003 WL 25674810, at *1 (D. Minn. June 27, 2003) (granting motion to preclude evidence of non-infringement based on patent not at issue in case where introduction of other patent "would result in a mini-trial on that [other] patent's claim construction" that would cause "great confusion" and "misdirect the jury's attention from the real issue of the case—specifically, whether [defendant's] device infringes [the asserted] patent").

For the forgoing reasons, Qorvo respectfully moves the Court to exclude any statements, evidence, and arguments that refer to other lawsuits and/or the claims asserted in such lawsuits.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

-3-

**ATTORNEYS' EYES ONLY – SUBJECT TO PROTECTIVE ORDER**

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 22, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2024, copies of the foregoing were caused to be served upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Ronald S. Lemieux, Esquire<br>David S. Elkins, Esquire<br>Victoria Q. Smith, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>1841 Page Mill Road, Suite 150<br>Palo Alto, CA  94304-1216<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Xiaomei Cai, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>2325 E. Camelback Road, Suite 700<br>Phoenix, AZ  85016<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Rachael A. Harris, Esquire<br>Matthew A. Stanford, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>2550 M Street, NW<br>Washington, DC  20037<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

_____

Jeremy A. Tigan (#5239)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

QORVO, INC.,                                )
                                            )
                    Plaintiff,              )
                                            )    C.A. No. 21-1417 (JPM)
        v.                                  )
                                            )    **DEMAND FOR JURY TRIAL**
AKOUSTIS TECHNOLOGIES, INC. and             )
AKOUSTIS, INC.,                             )    ███████████████████████
                                            )    ███████████████████████
                    Defendants.             )

## PLAINTIFF'S MOTION *IN LIMINE* #4: MOTION TO EXCLUDE CERTAIN ARGUMENT REGARDING THE PARTIES' SIZE, WEALTH, AND/OR REVENUES

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 22, 2024

*Attorneys for Plaintiff Qorvo, Inc.*

Based on Akoustis's case filings, Akoustis intends to cast itself as the underdog in a "David v. Goliath" dispute to arouse juror sympathy and distract from relevant evidence. *E.g.*, D.I. 449, p. 2 ("Qorvo is a $4 billion player in the market for electronic radio frequency and power device," while "[t]he Akoustis defendants … **are a collective David to Qorvo's Goliath**.") (emphasis added). Such arguments should be excluded under Federal Rules of Evidence 402 and 403. In particular, Qorvo requests that the Court exclude arguments that: (1) negatively compare the parties' size, wealth, or revenue; or (2) negatively characterize Qorvo or positively characterize Akoustis based on the parties' comparative size, wealth, and/or revenue.

Courts regularly find the probative value of arguments comparing the size, wealth, or revenue of the parties to be substantially outweighed by the risk of prejudice and misleading the jury. *E.g.*, *Alarm.com, Inc. v. SecureNet Techs. LLC*, No. 1:15-CV-00807, D.I. 242, *3 (D. Del. Jan. 23, 2019) (precluding defendant from "denigrating Plaintiffs by painting a 'David and Goliath' scenario or by referring to Plaintiffs as a leviathan, monopolist, or other inflammatory terms intended to characterize Plaintiffs' size"); *Nanometrics Inc. v. Optical Solutions Inc.*, No. 18-CV-00417, 2023 WL 7169549, *3-4 (N.D. Cal. Oct. 30, 2023) (precluding defendant in trade secret case from "engag[ing] in or invit[ing] a comparison of the two companies' sizes" because "[a]ny relevance of the difference in the parties' sizes is substantially outweighed by the risk of unfair prejudice to [plaintiff] of appearing as a 'Goliath' to [defendant's] 'David').

Similarly, courts routinely exclude derogatory, disparaging, and/or pejorative references relative to a party's comparative size, including positive references to a party that pejoratively categorizes the other party. *E.g.*, *Alarm.com, Inc.*, No. 1:15-cv-00807, D.I. 242, *3 (prohibiting "leviathan" and "monopolist" characterizations); *The Hillman Group, Inc. v. KeyMe, LLC*, No.

2:19-CV-00209, D.I. 284, *13 (E.D. Tex. Mar. 30, 2021) (prohibiting "bully," "underdog," or "little guy" characterizations).

Qorvo respectfully requests the Court grant its Motion *in Limine* #4 precluding such pejorative arguments.

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

March 22, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*
_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2024, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                          *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                             *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Xiaomei Cai, Esquire                                   *VIA ELECTRONIC MAIL*
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ  85016
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Rachael A. Harris, Esquire                             *VIA ELECTRONIC MAIL*
Matthew A. Stanford, Esquire
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

/s/ Jeremy A. Tigan
_____
Jeremy A. Tigan (#5239)

# Exhibit F.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF DELAWARE**

QORVO, INC.

          Plaintiff,

v.

AKOUSTIS TECHNOLOGIES, INC. and
AKOUSTIS, INC.

          Defendants.

C.A. No. 21-1417 (JPM)

**JURY TRIAL DEMANDED**

████████████

**THE AKOUSTIS DEFENDANTS' MEMORANDUM IN RESPONSE
TO PLAINTIFF'S MOTIONS IN LIMINE NOS. 1-4**

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road, Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis
Technologies, Inc. and Akoustis, Inc.*

## <u>TABLE OF CONTENTS</u>

I.      QORVO'S MOTION *IN LIMINE* # 1 TO EXCLUDE CERTAIN EVIDENCE OR
        ARGUMENT REGARDING PLAINTIFF'S ALLEGED UNFAIR AND DECEPTIVE
        TRADE PRACTICES SHOULD BE DENIED ............................................................. 1

II.     QORVO'S MIL # 2 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING
        PLAINTIFF'S ALLEGED ACQUISITION OR USE OF THIRD-PARTY
        CONFIDENTIAL INFORMATION SHOULD BE DENIED ........................................... 3

III.    QORVO'S MIL #3, BROADLY SEEKING TO EXCLUDE "ANY EVIDENCE
        REGARDING THE CLAIMS ASSERTED" IN OTHER LAWSUITS,  SHOULD BE
        DENIED ........................................................................................................... 6

        A.      QORVO'S REQUEST FOR A WHOLESALE EXCLUSION IS IMPROPER AND
                SHOULD BE DENIED ................................................................................... 7

        B.      DTX-32 AND DTX-34 ARE HIGHLY PROBATIVE AND SHOULD NOT BE
                EXCLUDED .................................................................................................. 8

        C.      CONCLUSION ......................................................................................... 10

IV.     THE COURT SHOULD DENY QORVO'S MIL #4 TO EXCLUDE  CERTAIN
        ARGUMENT REGARDING THE PARTIES' SIZE, WEALTH, AND/OR REVENUE10

V.      CONCLUSION ................................................................................................. 12

I.    **QORVO'S MOTION *IN LIMINE* # 1 TO EXCLUDE CERTAIN EVIDENCE OR ARGUMENT REGARDING PLAINTIFF'S ALLEGED UNFAIR AND DECEPTIVE TRADE PRACTICES SHOULD BE DENIED**

Qorvo seeks to preclude evidence or argument regarding its alleged unfair and deceptive trade practices, including without limitation, twelve emails among its employees (the "Qorvo Emails"). Qorvo contends that such evidence and argument could only be relevant to the counterclaim for which Akoustis unsuccessfully sought leave to file and is thus irrelevant to any claims, would cause unfair prejudice, undue delay and juror confusion by requiring a "mini-trial" on this issue.

Qorvo's MIL #1 should be denied for two principal reasons. First, Akoustis does not intend to inject evidence or argument that Qorvo engaged in unfair or deceptive trade practices. In denying Akoustis' motion for leave to file its proposed counterclaim, the Court ruled that in light of the case schedule, any such claims would need to be brought independently. Respectfully, Akoustis would never seek to undercut the Court's Order. Thus, the major premise of Qorvo's MIL #1 is incorrect and its motion should be denied on this basis alone.

Second, Qorvo's motion would exclude some evidence that is highly relevant to Akoustis' defense of Qorvo's claims for trade secret misappropriation and unfair and deceptive trade practices. Evidence regarding those claims is relevant and not subject to any legitimate assertions of prejudice.

Qorvo's production includes the twelve Qorvo Emails that it expressly seeks to exclude. But its production also includes other emails and attachments showing that Qorvo obtained product data sheets and other product information from Akoustis and other BAW filter competitors as part of its custom and practice to gather competitive intelligence. Such evidence is relevant to Akoustis' defense to Qorvo's trade secret misappropriation and unfair and deceptive trade practices claims – it shows that efforts to learn about competitors' product development, product

1

specifications, manufacturing capabilities, market share, and the like are commonplace in the industry and not considered unfair or deceptive trade practices.  As a result, Qorvo recognizes that such information is generally available in this industry and cannot be considered protected trade secrets.  Likewise, because such competitive intelligence gathering is the norm and expected, it also cannot give rise to claims of unfair and deceptive trade practices.

Simply because the Qorvo Emails and other evidence addressed by the present motion *might* have been used in connection with Akoustis' proposed counterclaim does not prevent them from being highly relevant to other claims or defenses – here Qorvo's trade secret and unfair and deceptive trade practices claims.  Because the evidence at issue in Qorvo's MIL #1 is relevant to those claims, the Rule 402 basis for Qorvo's motion fails.  *E.g., Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (noting that "[t]he movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground.").

Qorvo's arguments regarding prejudice and the required "mini-trial" also fail given Akoustis stated intent above – on which it expects the Court and Qorvo to rely – that Akoustis will not inject evidence or argument (express or implied) that Qorvo engaged in unfair or deceptive trade practices, but rather that these practices are common and even followed by Qorvo itself

The only prejudice that could result from excluding this evidence pursuant to Qorvo's MIL #1 would be suffered by Akoustis, not Qorvo.  Such an exclusion would deprive Akoustis of relevant, compelling evidence that certain types of documents fueling the trade secret and unfair and deceptive trade practices claims are, in fact, evidence of customary intelligence activities in this industry engaged in by both Qorvo and Akoustis.  *E.g., Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343–44 (3rd Cir. 2002) (reciting the "strong presumption that relevant evidence

should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it.").

Evidence and argument regarding customary competitive intelligence practices of the industry, including Qorvo's, are highly relevant under Rule 402, and do not result in the undue prejudice, undue delay, or juror confusion prohibited under Rule 403.  Akoustis respectfully submits that Qorvo's Motion *in Limine* #1 should be denied.

## II.  QORVO'S MIL # 2 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PLAINTIFF'S ALLEGED ACQUISITION OR USE OF THIRD-PARTY CONFIDENTIAL INFORMATION SHOULD BE DENIED

Qorvo provides three reasons in support of its request to exclude evidence or argument regarding its alleged acquisition or use of third-party confidential information.  But the common foundation for MIL #2—that Akoustis intends to use this evidence to show Qorvo's wrongdoing— is incorrect.  To the contrary, this evidence simply reflects the ordinary intelligence gathering from competitors or potential competitors that Akoustis's experts will testify is common practice within the industry.

First, Qorvo argues that the evidence is irrelevant under Rule 402 and that courts "routinely exclude references to and evidence of 'separate alleged wrongful conduct.'"  Qorvo MIL No. 2 at 1.  Akoustis, however,  does not intend to assert that Qorvo's possession and use of such third-party information is unfair, deceptive, or otherwise wrongful.  On the contrary, Akoustis expects its experts to testify at trial that its competitive intelligence activities and consideration of competitors' documents, like similar activities by Qorvo, does not constitute an unfair or deceptive trade practice and are in fact common practices in the industry.

For example, in his opinions related to Qorvo's product roadmaps and prototypes (the types of information found in the Alleged Third Party Confidential Information documents that Qorvo seeks to exclude), Akoustis expert Dr. Michael Lebby criticizes Qorvo's expert for "focusing on

competitive intelligence gathering techniques that are common in the industry, such as obtaining samples, RF modules, and parts." (Elkins Decl. Ex. 1 (Lebby Report) ¶ 100.) Dr. Lebby opines that in the electronics and semiconductor industries throughout Asia one should "be aware that anything and everything is subject to public release." (*Id.* ¶ 101.) Indeed, Qorvo's expert, Dr. Stanley Shanfield, states in his report that "[c]ompanies operating in the industry understand that product roadmaps, confidential data sheets, and presentations about products under development are sometimes 'leaked.'" (D.I. 469 Ex. A (Shanfield Report) ¶ 422). That such "leaked" information is commonly considered by competitors and other companies in the industry is supported by the Alleged Third Party Confidential Information. The information that Qorvo seeks to exclude is compelling evidence supporting Akoustis's defenses against at least the trade secret misappropriation and unfair and deceptive trade practices claims.

Unlike the cases cited by Qorvo – where courts excluded evidence because it related to the movant's wrongdoing or potential wrongdoing in unrelated matters or claims[1] – the evidence that Qorvo wants excluded would help the jury determine whether Qorvo truly regarded the "trade secret" and "confidential" allegedly taken by Akoustis as such. Likewise, the evidence at issue here is relevant to whether Akoustis's industry-common competitive intelligence activities are unfair or deceptive. The evidence at issue here is highly relevant both to whether purportedly misappropriated information qualifies as "trade secrets" or "confidential" and whether alleged conduct fits with industry custom and practice. It should not be excluded under Rule 402.

---

[1] *E.g., Life Spine Inc. v. Aegis Spine, Inc.*, No. 19-CV-8092, 2023 WL 8360796, at *2 (N.D. Ill. Dec. 1, 2023) (excluding evidence that implied movant's wrongdoing in an unrelated case); *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 131, 147 (D.D.C. 2014) (excluding evidence related to movant's alleged culpability pertaining to claims that were no longer pending); *Al Copeland Enters., Inc. v. C.T.V. Sys., Inc.*, No. CIV. A. 92-2264, 1993 WL 191152, at *7 (E.D. La. May 21, 1993) (excluding evidence related to antitrust violations as irrelevant to whether a franchise contract was legally terminated).

Second, Qorvo argues that "the entire purpose of such evidence is … to improperly arouse hostility from [the] jury" in violation of Rule 403.  Qorvo MIL #2 at 2.  Again, Qorvo's argument is based on its false premise  about how Akoustis intends to use the evidence at trial.  The cases on which Qorvo relies are inapposite because they involve evidence that showed the movant in an extremely negative light:  statements strongly implying intentional violation of labor laws, prior conviction of murdering an officer, complaints against a police officer's nonconsensual searches and threats of violence and imprisonment, and allegations against school officials' for child abuse.  *See Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 188 (3d Cir. 1990); *Delker v. Blaker*, Civil Action No. 09-710, 2012 WL 726415, at *2 (W.D. Pa. Mar. 1, 2012); *Williams v. City of Philadelphia, et al.*, Civil Action No. 13-207, 2014 WL 1632218, at *3 (E.D. Pa. April 23, 2014); *McGreevy v. Stroup*, No. 1:CV-01-1461, 2003 WL 27374140, at *4 (M.D. pa. June 17, 2003).  How such evidence could "arouse outright ***hostility***" from the jury against the movant in those cases is understandable.  But Akoustis' presentation of Qorvo's competitive intelligence as a commonplace practice in the industry would have the ***opposite*** effect of showing Qorvo in an at least neutral, if not positive, light.  This evidence should not be excluded as unduly prejudicial under Rule 403.  *Cf. Doe v. Clairborne County, Tenn.*, 103 F.3d 495, 515 (6th Cir. 1996) ("evidence [that] logically casts [a party] in an unfavorable light is not, ipso facto, a reason to exclude it"); *United States v. Mendez–Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (Rule 403 operates on "evidence which tends to suggest decision on an improper basis," not evidence with "legitimate probative force").

Third, Qorvo argues that the evidence at issue will cause "undue delay and juror confusion" by requiring a "mini-trial … on every such piece of information" and "distract[ing] the jurors from the issues that must be resolved in the case."  Qorvo MIL # 2 at 3.  But such evidence would be

part of establishing the use of such competitive intelligence as a common business practice—one of the issues on which Akoustis's experts will already be providing their opinions.  As such, no additional "mini-trial" will be needed.  Again, the cases which Qorvo cites in support of its argument are inapposite because they each relate to evidence supporting an issue that need not be addressed in adjudicating the then-existing claims.  *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 782-83 (3d Cir. 1994) (evidence on furans and dioxins in a PCB-exposure trial would require "mini-trials" on furan and dioxin exposure level and harm, separate from the core trial relating to PCBs); *ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 493 (D. Del. 2010) (evidence regarding alleged prior copying of products not currently accused would require "mini-trials" to establish that they were indeed copied); *Zimmer v. Stryker*, NO. 16-679, 2019 WL 9244877, at *1 (D. Del. Mar. 15, 2019) (evidence regarding a patent that had been severed from the case would require a "mini-trial" on the severed patent's meaning and validity before it could be used in support of a doctrine of equivalents argument related to the patent that remained in the case).

References to, evidence of, or argument regarding Qorvo's acquisition and/or use of third-party confidential information, including Allege Third Party Confidential Information as described on page 1 of Qorvo's MIL # 2, are relevant under Rule 402 and do not result in the undue prejudice, undue delay, or juror confusion prohibited under Rule 403.  For the above reasons, this evidence should not be excluded, and Qorvo's MIL # 2 should be denied.

### III.   QORVO'S MIL #3, BROADLY SEEKING TO EXCLUDE "ANY EVIDENCE REGARDING THE CLAIMS ASSERTED" IN OTHER LAWSUITS, SHOULD BE DENIED

Qorvo broadly seeks to exclude "any evidence regarding the claims asserted" in other lawsuits, including the pending lawsuit between Akoustis and Qorvo in the Eastern District of Texas and the earlier Avago Lawsuit identified in its Motion.  (Qorvo MIL #3 at 1-2 ("evidence related to other lawsuits and the claims asserted in them").)  Qorvo's Motion does not, however,

identify any specific evidence that would support this expansive prohibition.  Nor does it otherwise explain what constitutes evidence "regarding" or "related to" other lawsuits and their claims.

Four days after it served the present Motion, Qorvo identified, for the first time in its objections to Akoustis' Trial Exhibit List, Akoustis' trial exhibits DTX-32 and 34 as being subject to this Motion.[2]  DTX-32 and 34 are two publicly available declarations of Dr. Robert Aigner, Qorvo's Senior Director of Research & Development, filed in the Avago Lawsuit.  (Elkins Decl. Exs. 2 & 3).  For the reasons below, Akoustis respectfully requests the Court deny both Qorvo's request for a blanket exclusion of unspecified evidence regarding or relating to the claims asserted in other lawsuits and overrule Qorvo's specific objections to DTX-32 and 34 based on this Motion.

### A.    QORVO'S REQUEST FOR A WHOLESALE EXCLUSION IS IMPROPER AND SHOULD BE DENIED

Qorvo's vague and overbroad request risks excluding probative, admissible evidence simply because it originates from other lawsuits.  It is well-settled that evidence from other lawsuits can be relevant and admissible when it meets the requirements of the relevant federal rules.  *See MSKP Oak Grove, LLC v. Venuto*, No. 10-6465 (JBS/JS), 2017 WL 1807562, at *2 (D.N.J. May 5, 2017) ("some items of evidence of the other suits may be probative").  Qorvo's request to summarily exclude such evidence is improper, as it would eliminate the Court's ability to assess the probative value of such evidence.  This approach is rejected even in the cases cited in support of Qorvo's motion.  See *Life Spine, Inc. v. Aegis Spine, Inc.,* No. 19 CV 7092, 2023 WL 8360796, at *2 (N.D. Ill. Dec. 1, 2023) ("wholesale exclusion of the South Dakota Action at this stage is inappropriate").

---

[2] Qorvo also objects to Akoustis' proposed trial exhibits DTX-33 and DTX-37 based on this Motion.  Akoustis is withdrawing both documents from its trial exhibit list.

Further, such wholesale exclusion would be premature and unnecessary.  Courts have routinely declined to resolve admissibility issues as premature when "the context of trial may provide clarity on the relevance and potential prejudicial of each proffered piece of evidence." *See, e.g.*, *MSKP*, 2017 WL 1807562, at *2.  The Court should similarly refrain from entertaining Qorvo's request to broadly exclude unspecified evidence relating to claims of other lawsuits.

**B.      DTX-32 AND DTX-34 ARE HIGHLY PROBATIVE AND SHOULD NOT BE EXCLUDED**

DTX-32 and DTX-34 are highly relevant to issues in this case, and their probative values far outweigh any alleged prejudice resulting from the mere fact that they were filed in a different lawsuit.

As a preliminary matter, the Avago Lawsuit was a patent infringement action between TriQuint Semiconductor, Inc. ("TriQuint"), a Qorvo predecessor, and Avago Technologies Limited ("Avago") involving patents relating to bulk acoustic wave filters ("BAW")—the same field of technology and products as the present case—between July 2009 and May 2012.  Although different patents were involved, certain facts and evidence presented in the Avago Lawsuit are directly relevant to the present case.  In particular, the status and details of BAW technology in general and TriQuint's BAW technology in particular, as well as TriQuint's public disclosure of such information during the Avago litigation, are highly relevant.  Of particular relevance is that TriQuint (now Qorvo) publicly disclosed information in court filings of the type that it now contends is the subject of trade secrets.

For example, without referencing any claims of the Avago Lawsuit,[3] Dr. Aigner described the design of TriQuint's resonators in his August 2011 declaration (DTX-32), including the layer

---

[3] Akoustis agrees that mere reference to other lawsuits or claims asserted in such lawsuits by either party should be precluded.  Akoustis further proposes to redact any such references from otherwise admissible evidence.

materials and configuration, considerations for layer deposition, and the plasma etching of such layer materials.  (Elkins Decl. Ex. 2 (DTX-32) at 2.)  Such information is clearly relevant to Qorvo's current allegations that information relating to its BAW resonator designs and trimming method are trade secrets.  (*See, e.g.*, D.I. 469 Ex. A (Shanfield Report) at 76, 138-39.)

Similarly, Dr. Aigner's September 2011 declaration (DTX-34) presents the redacted public versions of three "TriQuint Internal Presentations on bulk acoustic wave technology at TriQuint." (Elkins Decl. Ex. 3 (DTX-34) at 2.)  It further identifies the basis for the proposed redactions as protecting from disclosure "the highly confidential information regarding TriQuint's ***manufacturing capacity and costs***." (*Id.* (emphasis added).)  Dr. Aigner's selective redaction of only this information, while revealing other technical data in these internal presentations, is pertinent in assessing whether Qorvo's alleged trade secrets in the current case truly have independent value from not being generally known.  Further, the content of these presentations is also relevant to other issues before this Court.  For example, slide 7 in the redacted "Exhibit 234" presentation,[4] entitled "BAW Resonator Types, FBAR v. SMR," shows TriQuint's perceived differences between FBAR and SMR, two different implementations of BAW technology.  (*Id.* at TRIQ2585246.)  This is relevant to and supports Akoustis' position that Qorvo's alleged trade secrets relating to its SMR technology are inapplicable and not useful to Akoustis' design and development of its FBAR products.  Additionally, slides 45 and 48 are cited and relied on by Akoustis' expert Dr. Robert Darveaux to show that Qorvo's alleged trade secrets concerning its trimming method were generally known and not in fact trade secrets.  (*See, e.g.*, *id.* at

---

[4] Akoustis has proposed "Exhibit 234" as independent trial exhibit DTX-663.  Qorvo does not object to DTX-663 as being subject to this Motion in Limine, which highlights the confusion and vagueness as to the scope of its requested blanket exclusion of all evidence regarding or relating to the claims in other lawsuits.

TRIQ2585282, TRIQ2585287; *see also id.* at TRIQ0018032, TRIQ0018037; Elkins Decl. Ex. 4 (Darveaux Report) at 31-32, 39-40.)

Finally, any alleged prejudice stemming from the origin of DTX-32 and DTX-34 is *de minimis*. The body of Dr. Aigner's declaration in DTX-32 does not even reference other lawsuits or claims. And any such reference in DTX-34 can be effectively eliminated through careful redaction. Therefore, the probative values of DTX-32 and DTX-34 greatly outweigh any alleged prejudice, further supporting their use at trial here.

### C.   CONCLUSION

Akoustis respectfully requests the Court deny both Qorvo's request for a blanket exclusion of unspecified evidence regarding the claims asserted in other lawsuits and overrule Qorvo's specific objections to DTX-32 and DTX-34 based on this Motion.

## IV.   THE COURT SHOULD DENY QORVO'S MIL #4 TO EXCLUDE CERTAIN ARGUMENT REGARDING THE PARTIES' SIZE, WEALTH, AND/OR REVENUE

Qorvo's Motion in Limine # 4 seeks to preclude Akoustis from "negatively" comparing the parties' relative size, wealth, or revenue, or characterizing the parties based on their comparative size, wealth, or revenue. Qorvo does not elucidate what it means by a "negative" characterization or comparison. In any event, the parties' respective sizes, wealth, and revenues are relevant to the claims and defenses at issue in this case. The Court should deny the motion.

Akoustis has no intention of using pejorative language, such as comparing the parties to "David and Goliath." Qorvo does not identify any other negative language it intends to exclude, nor the context in which Qorvo believes such a comparison would come into play. Courts routinely deny motions where, as here, the moving party fails to articulate the specific context in which the issue will arise. *See Miller v. Polaris Lab'ys, LLC*, No. 11-1004, 2016 WL 1639087, at *5 (S.D. Ind. Apr. 26, 2016) (denying motion in limine because "[w]ithout the context of specific questions

actually being asked during trial, the Court declines at this stage of the litigation to prohibit this evidence or argument on the basis of relevancy.").

Akoustis does intend, however – and should be allowed – to make such factual comparisons to the extent that the parties' relative size, wealth, and revenue are relevant to issues in this case. For example, the comparative size of Akoustis and Qorvo is relevant to at least Qorvo's claim that Akoustis committed unfair competition by engaging in a targeted recruiting of former Qorvo employees. As part of its defense, Akoustis intends to show that less than a half of one percent of Qorvo employees ever joined Akoustis.

Where the information sought to be introduced is relevant, courts have denied motions similar to this one. *See Scafidi v. B. Braun Med., Inc.*, No. 8:22-CV-2772-VMC-TGW, 2024 WL 382397, at *3 (M.D. Fla. Feb. 1, 2024) (denying motion to preclude plaintiff "from submitting evidence or making argument regarding [ ] Braun's wealth, size, finances, number of employees, or ability to pay," because "Braun's size and wealth are at least minimally relevant to its undue burden defense" and "the financial size and condition of [Braun] is relevant in proving punitive damages.") (internal quotation marks omitted); *Unicolors, Inc. v. H &M Hennes & Mauritz, L.P.*, No. 216CV02322ABSKX, 2017 WL 11489792, at *7–8 S(C.D. Cal. Nov. 15, 2017) (denying Defendant's motion as overbroad because while "the relative wealth of the parties should not be the focus of the trial, it has not shown the evidence to be inadmissible on all potential grounds.") (internal quotation marks omitted).

Even Qorvo's cases recognize that a party should not be precluded from discussing those facts. For example, in *Alarm.com, Inc. v. SecureNet Techs. LLC,* No. 1:15-CV-00807, D.I. 242, *3 (D. Del. Jan. 23, 2019) (Qorvo's MIL #4 at 1), the court stated that "SecureNet is not permitted to denigrate Plaintiffs by painting a 'David and Goliath' scenario or by referring to Plaintiffs as a

leviathan, monopolist, or other inflammatory terms intended to characterize Plaintiffs' size," but further explained that ***"relevant, factual statements regarding the parties' relative wealth, market shares, or number of employees are permitted***." *Id.* (emphasis added).

The Court should reach the same result here and deny the Motion.

## V.    <u>CONCLUSION</u>

For the reasons discussed above, the Court should deny each of Qorvo's motions in limine.

Dated:  April 1, 2024                                      Respectfully submitted,


OF COUNSEL:                                      <u>/s/ Ronald P. Golden III</u>
                                                           Stephen B. Brauerman (#4952)
Squire Patton Boggs (US) LLP                  Ronald P. Golden III (#6254)
                                                           BAYARD, P.A.
Ronald S. Lemieux                                 600 N. King Street, Suite 400
David S. Elkins                                     Wilmington, Delaware
Victoria Q. Smith                                   (302) 655-5000
1841 Page Mill Road                              sbrauerman@bayardlaw.com
Suite 150                                             rgolden@bayardlaw.com
Palo Alto, California 94304
(650) 856-6500                                     *Attorneys for Defendants Akoustis*
ronald.lemieux@squirepb.com              *Technologies, Inc. and Akoustis, Inc.*
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

# Exhibit F.3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-01417-JPM |
| v. | ) |
| | ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS TECHNOLOGIES, INC. and | ) |
| AKOUSTIS, INC. | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTIONS *IN LIMINE* NOS. 1-4**

███████████████████████

Plaintiff Qorvo, Inc. ("Qorvo") hereby submits its reply in support of four motions *in limine* filed against Defendants Akoustis Technologies, Inc. and Akoustis Inc. (collectively, "Akoustis").

## I.   QORVO'S REPLY IN SUPPORT OF MOTION *IN LIMINE* #1 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING QORVO'S ALLEGED UNFAIR AND DECEPTIVE TRADE PRACTICES

Akoustis argues that the Court should deny Qorvo's MIL #1 for two reasons. First, Akoustis argues that has no plans to "inject evidence or argument that Qorvo engaged in unfair or deceptive trade practices." Opp. to MIL #1 at 1. But the rest of Akoustis's brief says the exact opposite—that Akoustis plans to argue that it cannot be held liable for misappropriating Qorvo's trade secrets or engaging in unfair or deceptive trade practices because Qorvo has allegedly engaged in the same conduct vis-à-vis Akoustis. *See id.* at 1-3. Repackaging its proposed counterclaims against Qorvo as a "defense" does not change the nature of the arguments, nor lessen the prejudice to Qorvo of conducting a trial-within-a-trial on issues that were not the subject of discovery.

Second, Akoustis argues that the challenged evidence is relevant to show industry custom and practice—i.e., that "competitive intelligence gathering is the norm and expected." Opp. to MIL #1 at 2. Akoustis argues that it cannot be liable for trade secret misappropriation or unfair trade practices if its behavior was "commonplace in the industry." *Id.* Akoustis's arguments fail factually and legally.

As an initial matter, Akoustis's efforts to conflate the theft of nearly 500,000 Qorvo documents (plus 279 GB of Qorvo data) with customary "competitive intelligence gathering" highlight the unfair prejudice Akoustis hopes to sow with this argument. Akoustis should not be free to argue that it had carte blanche to steal Qorvo's trade secrets because Qorvo allegedly

obtained information about Akoustis's "product development, product specifications, manufacturing capabilities, [and] market share."[1]

More importantly, courts have squarely rejected the exact argument that Akoustis advances for the relevance of Qorvo's "competitive intelligence gathering." In *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, No. 09-cv-0058, 2011 WL 13079493 (E.D. Va. May 16, 2011), the court granted a motion *in limine* and excluded evidence or argument regarding the plaintiff's "competitive intelligence practices or methods" because "it is no defense to a claim of the use of improper methods to secure trade secrets that the other party, or indeed, an entire industry also used improper methods to secure trade secrets." *Id*. at *1. The court further held that evidence of the plaintiff's competitive intelligence practices is "not relevant as to the issue of whether the methods allegedly used by [the defendant] to secure trade secrets were or were not proper." *Id*. Finally, the court held that admission of such evidence "is prejudicial in that it would be confusing to the jury, would cause delay and would generate subsidiary trials on peripheral issues." *Id*. Other courts have similarly held that evidence concerning a trade secret plaintiff 's alleged misconduct toward the defendant is irrelevant. *See Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421, at *3 (D.N.J. July 26, 2018) (holding plaintiff's alleged hacking of the defendant's account that took place after the alleged trade secret misappropriation was not relevant); *loanDepot.com v. CrossCountry Mortg.*, 22 Civ. 5971 (LGS), 2023 WL 3884032, at *8 (S.D.N.Y. June 8, 2023) (holding that plaintiff's alleged conduct in encouraging "new hires to bring along client information" was irrelevant to claims that defendant engaged in similar conduct).

---

[1] Qorvo strongly denies that it obtained any confidential information about Akoustis.  But, again, Akoustis's allegations were not the subject of discovery in this case.

As in *E.I. Dupont*, Qorvo's "competitive intelligence gathering" practices have no bearing on whether Akoustis misappropriated trade secrets or engaged in unfair and deceptive trade practices. Either Qorvo gathered and analyzed Akoustis's public information (in which case Qorvo's practices are irrelevant and should be excluded) or Qorvo gathered and analyzed Akoustis' allegedly confidential information (in which case Qorvo's practices are both irrelevant and prejudicial and should be excluded). *E.I. Dupont de Nemours*, 2011 WL 13079493, at *1.

The cases that Akoustis cites do not support a different outcome. *Leonard v. Stemtech Health Scis., Inc.* involved motions *in limine* to exclude evidence related to the defendant's financial condition, the plaintiff's alleged copyright infringement after the filing of the complaint, and the exclusion certain expert opinions, none of which relate to the issues raised by Qorvo's MIL #1. 981 F. Supp. 2d 273, 276-279 (D. Del. 2013). The second case Akoustis cites in its response, *Coleman v. Home Depot, Inc.*, is similarly unrelated. In that case, the Third Circuit addressed whether a trial court's exclusion of an EEOC Letter of Determination regarding sex and race discrimination was proper in an employment discrimination lawsuit. 306 F.3d 1333 (3d Cir. 2002).

Finally, Akoustis also fails to address a key argument in Qorvo's motion—that Qorvo would be unduly prejudiced by the challenged evidence and argument because the parties did not take discovery nor develop evidence related to Akoustis's allegations. Courts routinely exclude evidence on this basis. *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 147 (D. Del. 2013) (granting motion *in limine* because "Intel was denied any opportunity to seek discovery into Tran's damages theory or develop its own response and, therefore, would be prejudiced by Tran's proposed expert and hypothetical testimony"). Akoustis does not address this argument and, as such, concedes it. *Lafferty v. Sherwin-Williams Co.*, No. CV11706321RBKAMD, 2018

WL 3993448, at *4 (D.N.J. Aug. 21, 2018) ("Plaintiffs have conceded these arguments, as their Opposition does not mention or dispute them.").

## II.     QORVO'S REPLY IN SUPPORT OF MOTION *IN LIMINE* #2 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PLAINTIFF'S ALLEGED ACQUISITION OR USE OF THIRD-PARTY CONFIDENTIAL INFORMATION

Akoustis argues that evidence or argument related to Qorvo's alleged acquisition or use of third-party confidential information should not be excluded at trial because such evidence 1) shows that "competitive intelligence activities . . . like similar activities by Qorvo . . . are in fact common practices in the industry"; and 2) no "mini-trial" will be needed regarding the alleged third-party confidential information. Opp. to MIL #2 at 5-6. Both arguments fail.

Akoustis's arguments concerning the custom and practice of "competitive intelligence gathering" in the industry fail for the same reasons set forth above in connection with MIL #1. As the court in *E.I. Dupont de Nemours* held, "it is no defense to a claim of the use of improper methods to secure trade secrets that the other party, or indeed, an entire industry also used improper methods to secure trade secrets." No. 09-cv-0058, 2011 WL 13079493, at *1 (E.D. Va. May 16, 2011).

Akoustis also argues that MIL #2 should be denied based on the opinion of its expert, Dr. Michael Lebby, that confidential information is sometimes "leaked." In addition to the irrelevance of this opinion (*see* above), Akoustis' argument has another significant flaw—Dr. Lebby never addressed or opined on **any** of the Alleged Third-Party Confidential Information that Akoustis seeks to submit in this case.[2] As such, Dr. Lebby's broad and vague opinions that

---

[2] QORVO_00070764, QORVO_00070776, QORVO_00070791, QORVO_00070812, QORVO_00070824, QORVO_00070839, QORVO_00070874, QORVO_00070895, QORVO_00651152, QORVO_00651169, QORVO_00651192, QORVO_00664991, QORVO_00690086, QORVO_00752044, QORVO_00753641, QORVO_00811723, QORVO_00838069, AKTS_00157836, and AKTS_00494323.

confidential information is sometimes "leaked" do not open the door to otherwise irrelevant and prejudicial evidence and argument.

Akoustis's statement that the Alleged Third-Party Confidential Information will show Qorvo in a "neutral, if not positive, light" also makes no sense. Akoustis cites no authority and provides no support for this argument. It is axiomatic that charging Qorvo with improperly acquiring third party confidential information will paint Qorvo in a negative and unfairly prejudicial light under Rule 403.

Finally, Akoustis concludes that "mini-trials" will not be required regarding each item of the Alleged Third-Party Confidential Information. However, Akoustis has not provided any evidence that Qorvo wrongfully acquired the Alleged Third-Party Confidential Information. There is no evidence refuting the notion that the Alleged Third-Party Confidential Information was disclosed voluntarily to Qorvo. Even if Qorvo's possession of third-party information were somehow relevant to this case (it is not), lengthy and wasteful "mini-trials" would need to be conducted on each item of Alleged Third-Party Confidential Information to determine under what circumstances Qorvo acquired such information. The unfair prejudice and juror confusion associated with such mini-trials substantially outweighs any probative value of such evidence. Fed. R. Evid. 403.

Akoustis cites just two cases in its entire opposition which were not relied upon by Qorvo, neither of which are congruent with the facts here. *Doe v. Clairborne County, Tenn.* involved a determination that a trial court's exclusion of "notice evidence" was abuse of discretion in a sexual abuse lawsuit because it "precluded plaintiff from establishing the elements of three of her causes of action." 103 F.3d 495, 515 (6th Cir. 1996). In *United States v. Mendez–Ortiz*, the court held that admission of testimony from a heroin dealer that the defendant

"threatened and attempted to bribe" the dealer was "highly probative of defendant's guilt" and "presented little danger of unfair prejudice." 810 F.2d 76, 79 (6th Cir. 1986). Akoustis does not cite a single case supporting the admission of evidence related to alleged third party confidential information that has no relation to the asserted patents and trade secrets.

## III.   QORVO'S REPLY IN SUPPORT OF MOTION *IN LIMINE* #3 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING OTHER LAWSUITS

Akoustis's opposition to Qorvo's MIL #3 confirms it does not oppose the exact relief Qorvo seeks. Qorvo's MIL #3 does not seek exclusion of relevant, admissible evidence that may have been presented in other lawsuits. Rather, Qorvo's motion makes clear that it seeks exclusion of "***any reference to other lawsuits*** or introducing any evidence regarding ***the claims asserted in such lawsuits***." Qorvo's MIL #3 at 1 (emphasis added). The Parties met and conferred as required in advance of Qorvo filing MIL #3 where counsel for Qorvo clarified the relief it sought, but Akoustis nonetheless stated it would oppose.

Yet, in Akoustis's opposition, it apparently "agrees that mere reference to other lawsuits or claims asserted in such lawsuits by either party should be precluded. Akoustis further proposes to redact any such references from otherwise admissible evidence." Opp. to MIL #3 at 7, fn. 3. Thus, Akoustis does not appear to oppose Qorvo's requested relief, and it is unclear why Akoustis has not stipulated to Qorvo's proposal. Because Qorvo seeks to exclude only the reference to the existence of other lawsuits, or the claims asserted therein, and because Akoustis's opposition concedes such relief is appropriate, Qorvo respectfully requests the Court grant Qorvo's MIL #3.

**IV.   QORVO'S REPLY IN SUPPORT OF MOTION *IN LIMINE* #4 TO EXCLUDE CERTAIN ARGUMENT REGARDING THE PARTIES' SIZE, WEALTH, AND/OR REVENUES**

Akoustis's opposition to Qorvo's MIL #4 likewise confirms it does not oppose the exact relief Qorvo seeks. Qorvo's MIL #4 does not seek exclusion of relevant, factual evidence regarding the Parties' size, such as their respective financial performance or number of employees.  Rather, Qorvo's one-page motion makes clear that it seeks exclusion of "arguments that: (1) *negatively* compare the parties' size, wealth, or revenue; or (2) *negatively* characterize Qorvo or positively characterize Akoustis based on the parties' comparative size, wealth, and/or revenue" and "*derogatory, disparaging, and/or pejorative references* relative to a party's comparative size." Qorvo's MIL #4 at 1 (emphasis added). The Parties met and conferred as required in advance of Qorvo filing MIL #4 where counsel for Qorvo clarified the relief it sought, specifically indicating that it sought to preclude *David v. Goliath* references and other pejorative commentary, but Akoustis nonetheless stated it would oppose Qorvo's motion.

Inexplicably, Akoustis's opposition now claims Akoustis "has no intention of using pejorative language, such as comparing the parties to 'David and Goliath.'" Opp. to MIL #4 at 10. Instead, Akoustis claims it should be permitted to reference the parties' "respective sizes, wealth, and revenues" because such evidence is relevant to claims and defenses at issue in the case." *Id.* Qorvo's motion clearly does not seek to preclude all references to the parties' "respective sizes, wealth, and revenues."

Akoustis criticizes Qorvo for not providing a thesaurus list of negative, pejorative language which would be excluded under its Motion (*id.*), but the cases Qorvo cites in its Motion clearly indicate the specific language Qorvo seeks to preclude, and further indicates that a laundry list of negative terms is unnecessary for purposes of granting relief. *E.g.*, *Alarm.com, Inc. v. SecureNet Techs. LLC*, No. 1:15-CV-00807, D.I. 242, *3 (D. Del. Jan. 23, 2019)

(precluding defendant from "denigrating Plaintiffs by painting a 'David and Goliath' scenario or by referring to Plaintiffs as a leviathan, monopolist, or other inflammatory terms intended to characterize Plaintiffs' size"); *The Hillman Group, Inc. v. KeyMe, LLC*, No. 2:19-CV-00209, D.I. 284, *13 (E.D. Tex. Mar. 30, 2021) (prohibiting "bully," "underdog," or "little guy" characterizations).

Thus, as with Qorvo's MIL #3, Akoustis does not appear oppose the relief Qorvo requests in its MIL #4, and it is unclear why Akoustis has not stipulated to Qorvo's motion. Because Qorvo seeks to exclude only "arguments that: (1) *negatively* compare the parties' size, wealth, or revenue; or (2) *negatively* characterize Qorvo or positively characterize Akoustis based on the parties' comparative size, wealth, and/or revenue" and "*derogatory, disparaging, and/or pejorative references* relative to a party's comparative size[,]" and because Akoustis's opposition concedes such relief is appropriate, Qorvo respectfully requests the Court grant Qorvo's MIL #4.

Dated:  April 8, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy Tigan*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiff*

████████████████████████████

**OF COUNSEL:**

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
(202) 747-1900

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

Zachary Alper
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130
(858) 720-8900

Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
(310) 228-3700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2024, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                  *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                                     *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Xiaomei Cai, Esquire                                           *VIA ELECTRONIC MAIL*
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ  85016
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Rachael A. Harris, Esquire                                     *VIA ELECTRONIC MAIL*
Matthew A. Stanford, Esquire
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)