IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:21-cv-01417-JPM ) ) |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC., | ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Akoustis Technologies, Inc.'s and Defendant Akoustis, Inc.'s (collectively "Akoustis'" or "Defendants'") Motion for Summary Judgment, Plaintiff Qorvo, Inc.'s ("Qorvo's" or "Plaintiff's") Response, and Akoustis' Reply. (ECF Nos. 442-43, 465, 488.) Parties appeared for oral argument on these Motions on March 18, 2024.

For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

I. **BACKGROUND**

This is a civil action related to alleged patent infringement, false advertising, unfair and deceptive trade practices, and other related claims. Qorvo filed a complaint in this action on October 4, 2021. (ECF No. 1.) A First Amended Complaint ("FAC") and Second Amended Complaint ("SAC") were filed on February 18, 2022 and February 8, 2023 respectively. (ECF Nos. 28, 125.) Akoustis filed their Answer to the SAC on March 15, 2023. (ECF No. 158.)

Qorvo alleges patent infringement of one or more claims of U.S. Patent No 7,522,018 (the "'018 Patent'") and U.S. Patent No. 9,735,755 (the "'755 Patent") by Akoustis. (ECF No. 125.) Qorvo also alleges that Akoustis engaged in unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1, misappropriation of trade secret under 18 U.S.C. § 1832 and N.C. Gen. Stat. § 66-152, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1961, and civil conspiracy under state law. (Id.) Qorvo also brings false advertising claims under 15 U.S.C. § 1125(a) and false patent marking claims under 35 U.S.C. § 292 relating to U.S. Patent No. 10,256,786 (the "'786 Patent"). (Id.)

II. **LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party has demonstrated that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(1)(A); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 327 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. A fact is material if a dispute over it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could decide the dispute in favor of the party opposing summary judgment, and is not so one-sided that one party must prevail as a matter of law. Id. at 251.

III.    **ANALYSIS**

   a. *Summary Judgment on Counts VI, VIII, and IX*

Defendants move for partial summary judgment on Counts VI, VIII, and IX of the Second Amended Complaint ("SAC"), arguing that because Qorvo has "failed to identify the asserted trade secrets with sufficient particularity," and because the use of one hundred and four (104) asserted trade secrets "defies the Court's intent that Qorvo limit its asserted trade secrets to a number that can reasonably be tried by a jury[,]" Qorvo's trade secret claims necessarily fail as a matter of law. (ECF No. 442 at PageID 17867.) Defendants argue that the scope of the trade secret claims renders the trial a "trial by ambush," a "trial management nightmare" and "severely prejudic[ial.]" (ECF No. 443 at PageID 17871.) Defendants argue that Qorvo's four trade secret disclosures have not sufficiently narrowed the scope of their claims, and do not comply with Qorvo's trade secret disclosure obligations, emphasizing that the "bullet points" used to disclose alleged trade secrets do not include "any statements distinguishing each purported trade secret from matters of general knowledge in the trade or of special knowledge to persons skilled in the trade." (ECF No. 445 at PageID 17873, 13976.)

Plaintiff counters that Defendants argument on inadequate disclosure is raised late because Akoustis' prior counsel did not object to the broad scope of disclosure. (ECF No. 465 at PageID 20379.) They then argue that "grouping" the alleged trade secrets will assist in juror comprehension, and that granting Akoustis' claims on this issue amount to an argument that Defendants should be granted summary judgment because they took too much information to be found liable. (ECF No. 465 at PageID 20380.) Plaintiff argues that in response to this Court's requirement that Qorvo significantly reduce its trade secret claims by the close of fact discovery, they have narrowed the scope of trade secret claims from a high of eighty-five (85)

categories of trade secrets to ten (10). (ECF No. 203 at PageID 465; see also ECF No. 313; but see ECF No. 443 at PageID 17875 (citing prior representations to further narrowing by Plaintiff's counsel).)

The Court has repeatedly warned Qorvo to reduce its number of trade secrets claims, and raised concerns on the practicability of proving its claims in the time allotted for trial. The Court will not revisit those concerns here. While Qorvo must establish the existence of each trade secrets claimed, including disclosing alleged trade secrets with a "reasonable degree of . . . specificity" such that a "jury could find that [they] established each statutory element of a trade secret," the burden is on Akoustis at summary judgment to show that Qorvo has not done so. See Oakwood Labs. LLC v. Thanoo, 999 F.3d 892, 905 (3d Cir. 2021); Dow Chemical Canada, Inc. v. HRD Corp., 909 F. Supp. 2d 340, 346 (D. Del. 2012); Celotex, 477 U.S. at 323. Akoustis has not met this burden, instead relying on two non-precedential cases which present very different factual and procedural contexts. In one case, Plaintiffs made generic disclosures of trade secrets without citations to specific documents. NEXT Payment Solutions, Inc. v. Clearesult Consulting, Inc., No. 17-cv-8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020). While the other case involved a series of dozens of reports and recommendations from a special master related to pre-discovery trade secret disclosures and clear bad faith conduct by the plaintiffs. Arconic Inc. v. Novelis Inc., No. 17-cv-1434, 2020 WL 7247112, *10 (M.D. Pa. Dec. 9, 2020). Neither case involved the number or diversity of trade secrets allegedly at issue here, which present unique challenges in both trial management and disclosure.

Defendants argue that "[e]stablishing admissible proof that each of the 104 asserted trade secrets is in fact a trade secret, let alone misappropriation, use and harm caused by that use—*on top* of the patent management and unfair competition cases for which Qorvo bears the

4

burden—is neither practical nor feasible." (ECF No. 488 at PageID 23426.) This may be the case, but is a question of trial strategy, not entitlement to summary judgment. Granting summary judgment at this stage would require Defendants to meet their burden to show that Plaintiffs disclosed their trade secrets with an inadequate degree of specificity such that a jury could not find they established the elements of a trade secret. They have not done so. The two examples cited as problematic by Defendants provide citations to specific documents which embody the trade secrets. Defendants are not subject to trial by ambush where these disclosures are coupled with detailed analysis in expert reports, and Defendants have had the opportunity to make further inquiry into each alleged trade secret through expert depositions. Defendants therefore have not met their burden on summary judgment, and their Motion is **DENIED**.

      b. *Summary Judgment on Count III*

Defendants move for partial summary judgment in favor of Akoustis on Count III, arguing that Akoustis failed to meet their burden in alleging a false advertising claim under the Lanham Act based on Akoustis' statements regarding "single crystal technology." (ECF No. 442.) Defendants argue that "the record is devoid of evidence that customers were or would likely be confused by any statements." (ECF No. 442 at PageID 17867.) Defendants also argue that Akoustis "has developed, made, or offered to sell filters using single crystal technology[,]" and their claims on single crystal technology are therefore not misleading or deceptive. (ECF No. 443 at PageID 17873.) Defendants represent that they produced samples of the non-infringing alternative designs for the AKF-1252, AKF-1256, A10655, and A10155 BAW filters to Qorvo on January 6 and March 29, 2023 and notified Qorvo that these designs were sold in commerce on July 21, 2023. (ECF No. 443 at PageID 17877.) They also argue that Qorvo has not proffered "survey opinion evidence" and therefore "has no evidence to

5

substantiate its allegations that Akoustis' representations" would confuse target customers, especially because their target customers are "highly sophisticated." (ECF No. 443 at PageID 17880.) Defendants argue that because Akoustis' claims are 1) true and 2) not shown to be deceptive to target customers by evidence in the record, Plaintiff cannot meet the Lanham Act's requirements to show deception and materiality for plaintiffs seeking monetary damages. (ECF No. 443 at PageID 17889 (citing CareDx, Inc. v. Natera, Inc., No. CV-19-662-CFC, 2023 WL 4561059, at *2 (D. Del. July 17, 2023).)

Plaintiff counters that Akoustis only shipped or sold pre-production protypes of single-crystal products to three customers, and were never able to produce a commercially viable single-crystal product. (ECF No. 465 at PageID 20405.) Plaintiff also argues that Akoustis nonetheless advertised its products as single crystal while instead making polycrystalline products, and that Akoustis made claims that their "single crystal" products had superior performance despite test results showing the opposite. (Id.) On materiality and deception, Plaintiff argues that the statements of Defendants' vice president and other staff show that their single-crystal marketing was meant to mislead target customers, and that incorporation of those statements into third-party market reports shows that the statement at least misled analysts. (ECF No. 465 at PageID 20406-07.)

Defendants respond that Plaintiff must show be a preponderance of the evidence not how customers could react, but how customers actually reacted. (ECF No. 488 at PageID 23427 (citing Newborn Bros. Co. v. Albion Eng'g Co., 481 F.Supp. 3d 312, 353 (D.N.J. Aug. 5, 2020).) Defendants argue that market reports are not evidence of how customers actually reacted. (Id.)

To establish a false advertising claim under the Lanham Act, plaintiffs must prove:

6

> 1) that the defendant made false or misleading statements as to his own product; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241, 248 (3d Cir. 2011). Defendants challenge Plaintiffs' ability to satisfy the first, second, and third elements of this test.

"[T]he seminal Lanham Act case in the Third Circuit, Parkway Baking v. Freihofer Baking Co., 244 F.2d 641 (3d Cir. 1958), holds that, for cases involving monetary damages, 'there must be a showing of some customer reliance on the false advertisement.'" TRUSTID, Inc. v. Next Caller, Inc., 2023 WL 2298748, at *3 (Fed. Cir. Mar. 1, 2023) (quoting Parkway Baking Co., 244 F.2d at 648)). Intent to mislead "does not warrant a presumption of actual deception." CareDx, 2023 WL 4561059 at *4 (citing Johnson & Johnson-Merck Consumer Pharms. Co. v. Rone-Poulenc Rorer Pharms., Inc., 19 F.3d 125, 132 (3d Cir. 1994); TRUSTID, 2022 WL 318299, at *9 (D. Del. Jan. 5, 2022), aff'd, 2023 WL 2298748 (Fed. Cir. Mar. 1, 2023)). Rather, plaintiffs in the Third Circuit must show actual confusion on the part of the consumer. This inquiry, however, does not necessarily require the use of consumer surveys or other quantitative measures of customer confusion, and both direct and circumstantial evidence can be used to show confusion. See Newborn Bros., Inc. v. Albion Eng'g Co., 481 F.Supp.3d 312, 354-58 (D.N.J. 2020). Here, the product at issue is not sold to average retail consumers: Akoustis acknowledges that the universe of potential consumers is small and sophisticated. Given this environment, the market reports, and statements by at least one Akoustis consumer corporation provide enough direct and circumstantial evidence that consumers were actually deceived, and that Akoustis' deceit was material to their purchasing decisions, to create genuine issues of material fact for trial. See Newborn Bros., 481 F.Supp.3d at 355-7. While Akoustis

argues that the statements of its own employees are insufficient to show consumer confusion, their statements clearly show, as in Newbon Bros., that Qorvo and Akoustis compete in the same market and that single crystal technology would be a significant factor in their consumer's decisions. Id. at 357-8. While the parties have not yet put testimony in the record that any Akoustis employee "met and served customers . . . who would have pursued other brands . . . if not for [Defendants'] claims[,]" the statements before the Court create a genuine issue of material fact on materiality. See Id. at 357.

There are likewise genuine issues of material fact as to whether Defendants made false or misleading statements at all. While there is material in the record showing that Akoustis produced some single-crystal products, there is also material supporting the conclusion that Akoustis advertised products as single crystal when they were polycrystalline.[1] (See, e.g., ECF No. 465-6 (Ex. E).) While Akoustis' sale of polycrystalline filters alone does not necessarily make their statements regarding single crystal technology false, Akoustis' production of some products which may have conformed with its advertising claims does not insulate it from liability for other misleading statements.

Because Akoustis has not shown that there is no genuine dispute as to any material fact and that they are therefore entitled to summary judgment as a matter of law, their Motion for Summary Judgment on Count III is **DENIED**.

  c. *Summary Judgment on Count V*

---

[1] Akoustis argues that this example "shows no deception at all: the [potential] customer asked a question about the composition of the filter's piezoelectric layer, which Akoustis answered" and characterizes this as an "utter absence of proof." (ECF No. 488 at PageID 23427.) The Court disagrees: a reasonable juror could find the exhibit shows that the confusion exhibited in the market reports extended to Akoustis consumers. While the two exhibits taken alone may be insufficient to show consumer confusion, taken together they create at least a genuine issue of material fact.

Defendants move for partial summary judgment on Count V, arguing that Plaintiff cannot prove that Akoustis engaged in unfair competition by misappropriating trade secrets, engaging in false advertising, and "poaching" former Qorvo employees. (ECF No. 442 at PageID 17867-68.) Defendants argue that "the record makes plain that no 'poaching' occurred; rather, Akoustis hired the best people for the job[,]" given what they characterize as a small electronics market in the Charlotte area. (ECF Nos. 442 at PageID 17867-68; 443 at PageID 17873.) Defendants further argue that "Qorvo has admitted that Akoustis' mere hiring of employees who work for Qorvo . . . or that have relevant experience alone cannot form the basis of an unfair competition claim." (ECF No. 443 at PageID 17881.) They argue that "the poaching component of the claim requires that Akoustis specifically hired Qorvo employees for the purpose of unlawfully obtaining trade secrets." (Id. at PageID 17881.) Defendants argue that the nineteen (19) employees hired directly from Qorvo during a ten-year period could not qualify as "systematic raiding" and thus illegal poaching under North Carolina law because those nineteen employees constitute only 0.22% of Qorvo's workforce. (Id.)

Plaintiff counters that their false advertising and trade secret claims survive under North Carolina law even if they do not under prior claims, because Akoustis' hiring of Qorvo's employees constituted "systematic target[ing]" of Qorvo employees "with the intention of harming Qorvo" and stealing trade secrets, and that the poaching claims are appropriate. (ECF No. 465 at PageID 20408.)

Because Defendants' arguments on unfair trade practices related to false advertising and trade secrets are based on the same premises rejected by the Court in Sections III.a-b *supra*, the Court need not reanalyze them here.

Under North Carolina law, plaintiffs alleging unfair or deceptive trade practices must prove that "defendant committed an unfair or deceptive act or practice, []the action in question was in or affecting commerce, and [] the act proximately caused injury to the Plaintiff." Dalton v. Camp, 343 N.C. 647, 658 (2001); N.C. Gen. Stat. §75-1.1 (203). "A practice is unfair if it is unethical or unscrupulous, or if it has the tendency to deceive." Sunbelt Rentals, Inc. v. Head & Enquist Equipment, LLC, 174 N.C. App. 49, 59 (2005) (citing Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145 (4th Cir. 1987) (citing Marshall v. Miller, 302 N.C. 539, 548 (1981))). The mere hiring of a competitor's employees is not by itself unfair or deceptive, but use of surreptitious methods to "raid" a rival can qualify. See Austin Maint. & Constr. Inc. v. Crowder Const. Co., 224 N.C. App. 401, 420 (2012); Performance Sales & Mktg. LLC v. Lowe's Cos., Inc., No. 5:07-CV-00140-RLV, 2013 WL 4494687, at *4 (W.D.N.C. Aug. 20, 2013).

Akoustis asserts that only 19 individuals came to work for them directly from Qorvo, and therefore they could not be held liable for unfair competition under Plaintiff's asserted theory. Qorvo points to two statements that it alleges provide evidence that Akoustis "systematically targeted Qorvo employees with the intention of harming Qorvo." (ECF No. 465 at PageID 20408.) These statements are:

- "Lora and I have Mike hitting Qorvo very hard right now, calling nearly every baw DE [Device Engineer;]"
- "must be time to bend Qorvo over the barrel again, LOL[;]" and
- "It seemed like Rowland [Houlden] when he came onboard, was only recruiting Qorvo folks is what it seemed like . . . and when you lose an engineer at a company, it hurts the company, right . . . It obviously doesn't look good for Qorvo if he's constantly taking employees."

10

(Id.)

Akoustis contends that one of these quotes was taken out of context, writing that it actually shows that Akoustis was merely looking for the best employees for the job. (ECF No. 488 at PageID 23429.) But in the context Akoustis provides, the quote undermines Akoustis' own arguments. Akoustis writes that the statement was "Lora and I have Mike hitting Qorvo hard right now, calling nearly every BAW [design engineer], *looking for the best 2 people willing to move to [Charlotte]*." (Id. (emphasis added.)) But, if the hiring managers were looking for people to move to Charlotte, they were not looking only for the best employees in a small market, but rather targeting a national market for employees. As such, a disproportionate focus on hiring from Qorvo, especially taken in the context of the other alleged acts, creates a genuine dispute of material fact as to whether Akoustis engaged in illegal hiring practices. If Akoustis intended and attempted to systematically raid Qorvo, it is immaterial that they only succeeded nineteen times. Therefore, the fact that only 19 individuals were allegedly "poached" is not enough, given the record as a whole, to require summary judgment on this issue. As a result, Akoustis' Motion for Partial Summary Judgment on Count V is **DENIED**.

  d. *Summary Judgment on Count VII*

Defendants move the Court to grant partial summary judgment on Count VII, which alleges violations of RICO. Defendants argue that, *inter alia*, "Qorvo cannot show viable predicate acts, the existence of a distinct RICO enterprise, or any damages from the claim." (ECF No. 442 at PageID 18768.)

Qorvo voluntarily relinquishes this claim. (ECF No. 465 at PageID 20408.) Defendant's Motion for Partial Summary Judgment on Count VII is therefore **GRANTED**.

  e. *Summary Judgment on Count II*

Defendants move for partial summary judgment on Count II, arguing that "to the extent this claim is directed to Akoustis' alternative design products, Qorvo did not amend its Infringement Contentions to include the alternative design products." (ECF No. 442 at PageID 18768.)  Akoustis argues that they have produced physical samples of the alternative design filters, but "Qorvo's experts did not test the alternative design products provided for infringement, and Qorvo did not include them in its later Final Infringement Contentions." (ECF No. 443 at PageID 17874.)

Plaintiff counters that Akoustis' claimed sales were of samples, and that Defendants have failed to cite "any authority" in support of its motion for summary judgment on this claim. (ECF No. 465 at PageID 20408.)  Plaintiff also argues that "the new/redesigned sample products are outside of the scope of this case" because they were not on sale when the case was filed or when the final infringement contentions were served.  (ECF No. 465 at PageID 20408.)

Defendants reply that Qorvo "has had ample opportunity to include the alternative designs into the products accused of infringement . . . [and] should not be permitted to re-litigate infringement of the alternative designs in a future lawsuit under the equitable doctrine of claim preclusion." (ECF No. 488 at PageID 23429.)  Defendants note, however, that "Akoustis has no problem with Qorvo's choice to not include the alternative designs."

Defendants attempt to use this Motion to litigate a potential future claim preclusion argument on an alternative design product issue that parties agree is beyond the scope of the current suit.  Their single citation on claim preclusion is to a Federal Circuit case which analyzes a district courts' decision to apply claim preclusion to cases subsequent to a dismissal with prejudice, and does not state or even imply that it would be appropriate for this Court to make determinations as to whether the alternative designs are subject to claim preclusion in future

cases. See In re PersonalWeb Techs. LLC, 961 F.3d 1365, 1374 (Fed. Cir. 2020). Because this claim is not directed at the alternate design products for which Defendants seek partial summary judgment, and because Defendants have not shown that claim preclusion in future cases is within the power of this court, their Motion is **DENIED**.

    *f.  Summary Judgment on Count IV*

Defendants move for partial summary judgment on Count IV (false patent marking). Qorvo informed Akoustis that Qorvo would not pursue patent marking claims after the entry of the Court's claim construction. (ECF No. 465 at PageID 20408.) Qorvo does not oppose Defendants' Motion. (Id.) Therefore, Defendants' Motion for Partial Summary Judgment on Count IV (false patent marking) is **GRANTED**.

### IV.  CONCLUSION

For the reasons discussed above, Defendants' Motion for Partial Summary Judgment on Counts II, III, V, VI, VIII, and IX is **DENIED**. Defendants' Motion for Partial Summary Judgment on Count IV and VII are **GRANTED**.

**IT IS SO ORDERED**, this 25th day of April, 2024.

                                                  /s/ Jon P. McCalla
                                                  JON P. McCALLA
                                                  UNITED STATES DISTRICT JUDGE