IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:21-cv-01417-JPM |
| v. ) | |
| ) | |
| AKOUSTIS TECHNOLOGIES, INC. and ) | |
| AKOUSTIS, INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. MICHAEL LEBBY**

Before the Court are Plaintiff's Motions to Exclude Expert Testimony of Dr. Michael Lebby; Defendant Akoustis Technologies, Inc.'s and Defendant Akoustis, Inc.'s (collectively "Akoustis'" or "Defendants'") Reply; and Plaintiff's Response. (ECF Nos. 453-54, 479, 492.) Parties appeared for oral argument on these issues on April 2, 2024. For the reasons discussed below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART.**

I. **BACKGROUND**

This is a civil action for alleged patent infringement, false advertising, unfair and deceptive trade practices, and other related claims. Qorvo filed a complaint in this action on October 4, 2021. (ECF No. 1.) A First Amended Complaint ("FAC") and Second Amended Complaint ("SAC") were filed on February 18, 2022 and February 8, 2023 respectively. (ECF Nos. 28, 125.) Akoustis filed their Answer to the SAC on March 15, 2023. (ECF No. 158.)

Qorvo alleges patent infringement of one or more claims of U.S. Patent No 7,522,018 (the "'018 Patent'") and U.S. Patent No. 9,735,755 (the "'755 Patent") by Akoustis. (ECF No.

125.) Qorvo also alleges that Akoustis engaged in unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1, misappropriation of trade secret under 18 U.S.C. § 1832 and N.C. Gen. Stat. § 66-152, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1961, and civil conspiracy under state law.  (Id.)  Qorvo also brings false advertising claims under 15 U.S.C. § 1125(a) and false patent marking claims under 35 U.S.C. § 292 relating to U.S. Patent No. 10,256,786 (the "'786 Patent").  (Id.)  Qorvo's RICO and false patent marking claims were dismissed at the summary judgment stage.  (ECF No. 545.)

II.    **LEGAL STANDARD**

In general, witnesses may only testify in the form of an opinion if the opinion is "rationally based on the witness's perception; [h]elpful to clearly understanding the witness's testimony or to determining a fact in issue; and [i]s not based on scientific, technical or other specialized knowledge within the scope of Federal Rule of Evidence 702."  Fed. R. Evid. 701. Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise[,]" so long as the proponent of that testimony demonstrates to the court that it is more likely than not that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; []the testimony is based on sufficient facts or data; []the testimony is the product of reliable principles and methods; and []the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  FED. R. EVID. 702.

The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 594, 597 (1993).  The Court "ensur[es] that an expert's testimony both rests on a

reliable foundation and is relevant to the task at hand." Bayer Healthcare LLC v. Baltaxa Inc., Case No. 16-cv-1122, 2019 WL 330149, *1 (D. Del. Jan. 25, 2019) (quoting Daubert, 509 U.S. at 597.) The Third Circuit has framed Rule 702 as "embod[ying] a trilogy of restrictions on expert testimony: qualification, reliability, and fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 749 (3d Cir. 1994) (citing Daubert, 509 U.S. at 579)). "[A] broad range of knowledge, skills, and training qualify an expert[,]" so long as the witness possess specialized expertise. (Id.) For testimony to be reliable, it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds for his or her belief." Paoli, 35 F.3d at 742. When determining whether proposed expert testimony is reliable, a district court may consider:

> (1) Whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses.

Schneider, 320 F.3d at 405 (citing Paoli, 35 F.3d at 742 n.8 (internal citations omitted)). "Fit" determines whether "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case" is sufficiently strong. Paoli, 35 F.3d at 743. "Fit" requires more than bare logical relevance. Id. at 386. Rather, "fit asks whether the proffered testimony is sufficiently helpful." Insight Equity v. Transitions Optical, Inc., 252 F. Supp. 3d 382, 386 (D. Del. 2017).

### III. ANALYSIS

Plaintiff moves to exclude certain opinions of Dr. Michael Lebby. (ECF Nos. 453-54.)

    a. *Information Security Opinions (Paragraphs 6, 125-151, 154)*

3

Plaintiff moves to exclude Dr. Michael Lebby's ("Lebby's") opinions on information security. (ECF No. 453.) They argue that he is not qualified to render these opinions, "admit[ted] he did not apply any methodology in assessing Qorvo's information security practices;" and "could not identify even a single document that he relied upon in forming his opinions." (ECF No. 454 at PageID 18882.) Defendants argue that Dr. Lebby's practical experience as a CEO in handling information security policies and managing employee use of confidential information qualifies him to opine on information security policies. (ECF No. 479 at PageID 22642.)

Dr. Lebby is not qualified to give information security opinions he intends to proffer, did not provide any basis for his opinions in this area, and does not cite any materials on which he bases his opinions. "Qualification refers to the requirement that the witness possess specialized expertise." TQ Delta, LLC v. ADTRAN, Inc., No. 15-cv-954, 2019 WL 5677539, at *2 (D. Del. Oct. 31, 2019). It is axiomatic that that specialized expertise be relevant to the opinion offered: technical expertise is irrelevant to qualification to opine on economic modeling, for example. See Mhl Custom, Inc. v. Waydoo USA, Inc., No. 21-cv-0091, 2023 WL 1765553, at *1 (D. Del. Feb. 3, 2023). Dr. Lebby's CV does not list qualifications, publication, experience, or interest in information security policies. Dr. Lebby's report does not detail significant experience which would qualify him to opine on information security policies. While Defendants argue that his practical experience—not listed in his report or resume—includes being subject to confidentiality policies, and "assumed the responsibilities of implementing company information security policies and training employees on how to determine *whether* information is confidential . . . and *how* to handle such information[,]" his opinions only reference the general practices of other major companies where he was employed,

and generally reference what employees will do given certain policies. (See, e.g., ECF No. 455-1 at PageID 19828-33.)  The opinions do not reflect his experience leading or implementing policies, but rather the skill or knowledge of an average layman employed in a corporation that exercises data protection policies.  See Waldorf v. Shuta, 142 F.3d 601, 625 (3rd Cir. 1998).  As such, he is not qualified to opine on information security just because he has general experience in a relevant industry.

Even if Dr. Lebby's experience qualified him to render the opinions he offers in his report, his report provides no way to assess the Daubert factors in regards to his methods of formulating his opinion.  His information security agreements consist of a general pattern of disagreeing with the Plaintiff's expert's report and then providing a general *ipse dixit* statement about what works or does not work for information security in the technology field, without citation to specific examples or analysis under any analytical framework or method. Without giving the Court a way to assess his reliability, or indeed, pointing the Court to any specific experiences, policies, or incidents on which he based his opinion, Dr. Lebby has not been shown to meet the standards of Rule 702 by a preponderance of the evidence.  Because Dr. Lebby offers "almost no basis as to how he arrived" at his opinion, it is "quintessential *ipse dixit*" and therefore must be excluded under Federal Rule of Evidence 702.  Taser Int'l, Inc. v. Karbon Arms, LLC, No. 11-cv-426, 2013 WL 6773663, at *1 (D. Del. Dec. 19, 2013.)  Accordingly, Plaintiff's Motion is **GRANTED**.

      b.  *Trade Secrets Group 2-7 Opinions (Paragraphs 3, 4, 72-75, 113-116)*

Plaintiff moves to exclude Dr. Lebby's opinions on trade secret groups 2-7. (ECF No. 454.)  Plaintiff argues that Dr. Lebby merely parrots the opinions of other experts without analyzing "any of the alleged trade secrets in trade secret groups 2-7.  (ECF No. 454 at PageID

5

18888.)  Defendants do not dispute that Dr. Lebby should not opine on trade secret groups 2-7.  (ECF No. 479 at PageID 22644 n. 2.)  Because Parties agree, Plaintiff's Motion is **GRANTED**.

       c.  *"Ahead" Opinions (Paragraphs 76-80, 83, 85, 86, 89, 91)*

Plaintiff moves to exclude Dr. Lebby's opinions that Akoustis was "technologically and commercially ahead of Qorvo" on developing 5GHz range filters.  (ECF No. 454 at PageID 18889.)  Plaintiff argues that because Dr. Lebby did not determine when Akoustis began working on its 5GHz filters, and "incorporates" an analysis of another expert that has not been disclosed in an expert report, it is therefore without sufficient factual basis and inadmissible. Defendant counters that Qorvo's challenge to Dr. Lebby's testimony on this point is premature, and is more properly articulated on cross-examination.

Here, unlike in other sections of the Report, Dr. Lebby cites to facts and documents in the record to support his analysis, based on specific elements of his experience in the field.  See Allscripts Healthcare, LLC v. Andor Health, LLC, No. 21-704-MAK, 2022 WL 3021560, at *25 & n.202 (D. Del. July 29, 2022) (citing Better Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 329 (3d Cir. 2002) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999))). His qualifications leading product development and entrepreneurial teams bear directly on his opinions on the development process, and he articulates the ways in which his experience informs his interpretation of the facts in the record.  The factual bases, or lack thereof, for his opinions on Akoustis' progress may be attacked on cross. The crux of Dr. Lebby's analysis on this issue, however, concerns the ways in which Qorvo's technical documentation and planning documents reflect internal progress.  This analysis is therefore helpful to a trier of fact in light of his experience, and he reliably applies that experience to the facts at issue.

As a result, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**. Dr. Lebby's opinions on the status of Akoustis' technological development are not barred by the application of Federal Rule of Evidence 702. Dr. Lebby's "bolstering" opinions which incorporate Dr. Darveaux's report without analysis or citation are not helpful to the jury because they merely reiterate an opinion already received. As a result, Dr. Lebby's opinion at paragraph 77-78 is excluded, but his analysis at 79-80 meet the standard articulated by Federal Rule of Evidence 702.

    d.  *Trade Secret Groups 1 & 8 (Paragraphs 81-112)*

Plaintiff moves to exclude Dr. Lebby's testimony on trade secrets in groups 1 and 8 because the testimony is not based on sufficient facts or data, and does not use reliable methods. (ECF No. 454.) Plaintiff argues that "Dr. Lebby did not specifically identify any of the purported public disclosures" he cited, did not "cite any evidence supporting [his] assertions" that Akoustis did not use the alleged trade secrets, and opined that Akoustis' "efforts to obtain Qorvo's information from sources in Korea and China was part of a "common" industry practice . . . [without] identify[ing] the intelligence gathering practices he considered to be "common" . . . [or] how those practices relate to Akoustis' alleged misappropriation of trade secrets."[1] (ECF No. 454 at PageID 18886.) Defendants counter that Dr. Lebby did provide citations to example documents, such as the Yole report, which support his assertions. (ECF No. 479 at PageID 22652.)

---

[1] When pressed at deposition to identify the types of confidential information commonly shared in Asia, Dr. Lebby stated that, *inter alia,* at dinners in Asia, businessmen "share information that is confidential . . . It could be which prostitute they' had sex with the night before. *That's key confidential information*. . . I don't know if [entertainment expenses are] that's a meal or that's taking them to a normal prostitute place which happens quite regularly in Asia." (ECF No. 454 at PageID 18887 (emphasis added).)

While Dr. Lebby's opinions on trade secrets in groups 1 and 8 provides only the barest connection to any purported experience, the critical problem is "fit." "Fit" determines whether "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case" is sufficiently strong. Paoli, 35 F.3d at 743. "Fit" requires more than bare logical relevance. Id. at 386. Rather, "fit asks whether the proffered testimony is sufficiently helpful." Insight Equity v. Transitions Optical, Inc., 252 F. Supp. 3d 382, 386 (D. Del. 2017). There is little to no "fit" between the theories he presents and the facts or data at issue in this case. An example is the Yole report, which Dr. Lebby cites as a key example of information that would have been available at the times in question, and therefore would show that information was publicly available. (See, e.g. ECF No. 455-1 at PageID 19703 ("these graphs are standard market report data that can be found in market analysis reports similar to the versions by Yole."); 19706 ("Market analysis reports for BAW filters were already available by companies such as Yole who offer their reports for purchase on the open market."); 19707 ("Market analysis companies such as Yole provide this type of data to paying customers. . .").) The report cited, however, is a 2022 report that describes information that may or may not have been a trade secret in 2016, six years earlier. Similarly, the general propositions—nearly all offered without citation or example—Dr. Lebby asserts as to the state of business in the field are undated.[2] This is especially important to "fit" in the rapidly evolving technology field. Dr. Lebby's testimony in this subject category, to the extent that it has any methodology and is not *ipse dixit* testimony, would therefore not be sufficiently helpful to a jury on the facts

---

[2] See, e.g. ECF No. 455-1 at 19709 ("It is well known that trade associations do roadmaps . . . [m]any roadmaps are public, especially for WiFi and RF markets as they are large markets."); 19709 ("The golden role is that when a document is handed to a customer, it is caveat emptor—beware."); 19711 ("Cultural norms in Asia permit a higher level of information than is permitted elsewhere."); 19715 ("Most companies can predict BOM and contribution margin profiles;" 19702 ("Market analysis reports detail technology leverage, market leverage as well as competitive leverage both for incumbent players, as well as new players to the market segment. . . ").

in this case. Because Defendants have therefore not shown by a preponderance of the evidence that the testimony of the expert will assist the trier of fact in determining facts in issue, Dr. Lebby's testimony on these opinions does not meet the standard set by Federal Rule of Evidence 702.

IV.     **CONCLUSION**

For the reasons discussed above, Plaintiff's Motion to Exclude certain opinions of Dr. Michael Lebby is **GRANTED IN PART AND DENIED IN PART.** The opinions proffered in Paragraphs 3, 4, 6, 72-78, 81-116, 125-151, and 154 are excluded.

**IT IS SO ORDERED**, this 25th day of April, 2024.

                                                      /s/ Jon P. McCalla
                                                      JON P. McCALLA
                                                      UNITED STATES DISTRICT JUDGE