IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>AKOUSTIS TECHNOLOGIES, INC. and<br>AKOUSTIS, INC.,<br><br>    Defendants. | Case No. 1:21-cv-01417-JPM |

**ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE POACHING OPINIONS OF MELISSA BENNIS**

Before the Court are Defendants' Motion to Exclude Expert Testimony of Melissa Bennis, Plaintiff's Reply, and Defendants' Response. (ECF Nos. 456-57, 482, 491.) Parties appeared for oral argument on these issues on April 2, 2024, and filed supplemental letters on the exclusion of Ms. Bennis' head-start opinions. (ECF Nos. 522-23, 525.) The Court ordered supplemental briefing on Ms. Bennis' poaching opinions, and parties filed supplemental briefs. (ECF Nos. 553, 559-60, 561.) For the reasons discussed below, Defendants' Motion to Exclude the Expert Testimony of Melissa Bennis on poaching is **DENIED**.

## I.    LEGAL STANDARD

In general, witnesses may only testify in the form of an opinion if the opinion is "rationally based on the witness's perception; [h]elpful to clearly understanding the witness's testimony or to determining a fact in issue; and [i]s not based on scientific, technical or other specialized knowledge within the scope of Federal Rule of Evidence 702." FED. R. EVID. 701. Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by

knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise[,]" so long as the proponent of that testimony demonstrates to the court that it is more likely than not that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; []the testimony is based on sufficient facts or data; []the testimony is the product of reliable principles and methods; and []the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  FED. R. EVID. 702.

The trial court "ensur[es] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Bayer Healthcare LLC v. Baltaxa Inc., Case No. 16-cv-1122, 2019 WL 330149, *1 (D. Del. Jan. 25, 2019) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 597, 594 (1993)).  The Third Circuit has framed Rule 702 as "embod[ying] a trilogy of restrictions on expert testimony: qualification, reliability, and fit."  Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 749 (3d Cir. 1994) (citing Daubert, 509 U.S. at 579)).  "[A] broad range of knowledge, skills, and training qualify an expert[,]" so long as the witness possesses specialized expertise.  (Id.) For testimony to be reliable, it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds for his or her belief."  Paoli, 35 F.3d at 742.  When determining whether proposed expert testimony is reliable, a district court may consider:

> (1) Whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses.

Schneider, 320 F.3d at 405 (citing Paoli, 35 F.3d at 742 n.8 (internal citations omitted)). "Fit" determines whether "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case" is sufficiently strong. Paoli, 35 F.3d at 743. "Fit" requires more than bare logical relevance. Id. at 386. Rather, "fit asks whether the proffered testimony is sufficiently helpful." Insight Equity v. Transitions Optical, Inc., 252 F. Supp. 3d 382, 386 (D. Del. 2017).

## II. ANALYSIS

Defendants argue that Ms. Bennis' opinions on damages for employee poaching are unreliable because Ms. Bennis claims to calculate actual damages Qorvo suffered in replacing employees lost to Akoustis' "poaching[,]" but did not use Qorvo data on 1) whether employees were actually replaced and 2) the cost of replacement, instead relying on a report generated by a third-party assessing, in 2021, the replacement cost of employees in a company Akoustis was acquiring. (ECF No. 457 at PageID 20010.)

The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. "Fit" determines whether "the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case" is sufficiently strong. Paoli, 35 F.3d at 743. This duty, however, does not require the Court to ensure a *perfect* fit, but rather to ensure that the party proffering the expert has shown that it is more likely than not that the expert meets the standards set by Federal Rule of Evidence 702. See FED. R. EVID. 702; In re TMI Litigation, 193 F.3d 613, 665 (3d Cir. 1999) (quoting Kannankeril v. Terminix International Inc., 128 F.3d 802, 806 (3d Cir. 1997); In re Paoli, 35 F.3d at 745.

3

Defendants do not challenge the methodology that Ms. Bennis employs, but rather assert that the bases of that methodology are so far removed from the case as to render it unreliable. (ECF No. 457 at PageID 20010.)  They argue that better data was available, and Ms. Bennis declined to seek it out.  Rule 702, however, does not require an expert to use the best data, so long as there are "good grounds" for using the data on which they base their opinion.  See Apotex, Inc. v. Cephalon, Inc., 321 F.R.D. 220, 233 (E.D. Pa. 2017); Main Street Mort. v. Main Street Bancorp., 158 F.Supp. 2d 510, 516 (E.D. Pa. 2001).  Here, the majority of the employees at issue were allegedly poached between 2019 and 2023 (thirteen of nineteen).  Ms. Bennis also submits, and Defendants' attorneys argue, that the KPMG report on RFMi opines on data for the industry, rather than for an individual company. (See ECF No. 491.)  Had Ms. Bennis merely based her testimony on an undated and generalized source, or on data without a reasonable relation to the time period in question, it would have insufficient "fit" with the facts of the case.  Here, however, Ms. Bennis' opinions are based on data developed by a third-party assessing, in part, an industry field, and are timely given the range of alleged acts at issue.  As such, whether she relied on the "best" data is a question for the jury, and challenges to her foundation are properly raised on cross.  Allscripts Healthcare, LLC v. Andor Health, LLC, No. 21-704, 2022 WL 3021560, at *17 (D. Del. July 29, 2022); Intellectual Ventures I LLC v. Check Point Software Tecs. Ltd., 215 F. Supp. 3d 314, 323-324 (D. Del. 2014).  Defendants' Motion to Exclude is therefore **DENIED**.

**IT IS SO ORDERED**, this 3rd day of May, 2024.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE