IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) C.A. No. 21-1417 (JPM) |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC., | ) ) **DEMAND FOR JURY TRIAL** ) ) |
| Defendants. | ) ) |

**PLAINTIFF QORVO, INC.'S RULE 50(a) MOTION REGARDING MISAPPROPRIATION OF TRADE SECRETS FOR TRADE SECRET GROUPS 1 AND 8 AND REASONABLE MEASURES TO MAINTAIN SECRECY FOR TRADE SECRET GROUPS 1 THROUGH 8**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Zachary Alper
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

Pursuant to Rule 50(a), Qorvo moves for judgment as a matter of law that Qorvo has: 1) established trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and North Carolina Trade Secret Protections Act ("NCTSPA") as to Qorvo's Trade Secret Groups 1 and 8; and 2) established reasonable measures to protect each of the trade secrets in Qorvo's Trade Secret Groups 1 through 8.

## I. Trade Secret Misappropriation – Qorvo's Trade Secret Groups 1 and 8

### A. Legal Standards

The DTSA requires a plaintiff to demonstrate: "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that 'is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]'; and (3) the misappropriation of that trade secret." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). A "trade secret" under the DTSA "means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if— (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(A)(B).

To state a claim for misappropriation of trade secrets under the NCTSPA, a plaintiff must show "(1) the existence of a trade secret, and (2) misappropriation of that trade secret."

*Channeltivity, LLC v. Allbound, Inc.*, No. 20-CV-0611, 2021 WL 4484576 (W.D.N.C. Sept. 2, 2021); N.C. Gen. Stat. §66-155. The NCTSPA defines a trade secret as "business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that: a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value for its disclosure or use; and b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.C.G.S. § 66-152(3).

   **B.**  **Qorvo Established the Existence of and Misappropriation of Qorvo's Trade Secret Groups 1 and 8**

  Qorvo General Manager Tony Testa testified in detail regarding the following trade secrets in Qorvo's Trade Secret Group 1:

  1.1 - Qorvo's internal assessment of the attractiveness of the Wi-Fi market

  1.2 - Qorvo's R&D priorities, investments, and forecasts

  1.3 - Qorvo's target customers and projected serviceable market size

  1.4 - Product roadmaps and expected gaps in Qorvo's product offerings

  1.5 - Projected cost and revenue for Qorvo's Wi Fi BAW filters

  1.6 - Qorvo's target product features and performance specifications

For each of these trade secrets, Mr. Testa explained why such information is secret, valuable, and not generally known in the industry. 5/7/24 Trial Tr. at 467:2-494:16. Mr. Testa also testified regarding each of the documents which reflect Qorvo's trade secrets in Group 1. *See* TX-20 (PTX-127); TX-21 (PTX-128); TX-22 (PTX-718). Based on Mr. Testa's testimony, Qorvo met its burden of establishing the existence of each of the trade secrets in Qorvo's Trade Secret Group 1.

Similarly, Mr. Testa testified in detail regarding the following trade secrets in Qorvo's Trade Secrets Group 8:

8.1 - Timelines and anticipated features of Qorvo's 5.2 and 5.6 GHz products

8.2 - Confidential prototypes of Qorvo's products QPQ1903 and QPQ1904 and measured data from those prototypes

8.3 - Details regarding Qorvo's analysis of the Wi Fi market

8.4 - Anticipated features and performance of prototypes

8.5 - Details regarding Qorvo's analysis of the automotive market

For each of these trade secrets, Mr. Testa explained why such information is secret, valuable, and not generally known in the industry. 5/7/24 Trial Tr. at 496:23-517:8. Mr. Testa also testified regarding each of the documents which reflect Qorvo's trade secrets in Group 8. *See* TX-23 (PTX-528); TX-24 (PTX-529); TX-25 (PTX-566); TX-26 (PTX-638); TX-27 (PTX-569); TX-28 (PTX-509. Based on Mr. Testa's testimony, Qorvo met its burden of establishing the existence of each of the trade secrets in Qorvo's Trade Secret Group 8.

In addition, Qorvo's expert Dr. Stanley Shanfield opined on Qorvo's Trade Secret Groups 1 and 8. Dr. Shanfield was accepted by the Court as an expert in "the semiconductor industry and RF Technology including filters." 5/9/24 Trial Tr. at 245:9-16. Dr. Shanfield opined that all of the trade secrets in Qorvo's Trade Secret Group 1 constitute trade secrets, and that Akoustis misappropriated each of those trade secrets. 5/9/24 Trial Tr. at 251:18-271:21. Dr. Shanfield also opined that all of the trade secrets in Qorvo's Trade Secret Group 8 constitute trade secrets, and that Akoustis misappropriated each of those trade secrets. Based on Dr. Shanfield's testimony, Qorvo met its burden of establishing the existence of each of the trade secrets in Qorvo's Trade Secret Groups 1 and 8, and that Akoustis misappropriated each of those trade secrets.

3

Akoustis presented no witness or evidence to rebut the testimony of Mr. Testa and Dr. Shanfield regarding Trade Secret Groups 1 and 8, including the documents they relied upon. Notably, Akoustis's expert Dr. Robert Darveaux testified that he only expressed opinions regarding Qorvo's Trade Secret Groups 2 through 7, and expressed no opinions regarding Qorvo's Trade Secret Groups 1 and 8. 5/14/24 Trial Tr. at 2144:4-9. The opinions of Akoustis expert Dr. Michael Lebby regarding Qorvo's Trade Secret Groups 1 and 8 were excluded by the Court. D.I. 546. Thus, No Akoustis witness presented any evidence regarding Qorvo's Trade Secret Groups 1 and 8. Qorvo is therefore entitled to judgment as a matter of law that it has established the existence of all its trade secrets listed under Qorvo's Trade Secret Groups 1 and 8, and Akoustis's misappropriation of each of those trade secrets.

## II. Reasonable Measures – Qorvo's Trade Secret Groups 1 through 8

Qorvo's Chief Information Security Officer Michael Boyd testified regarding Qorvo's information security policies, procedures, and practices related to its information security department, employee confidentiality agreements, Qorvo's code of business conduct and ethics with confidentiality obligations, separation agreement with confidentiality reminders, access control policies, physical security, labeling of confidential documents, use of non-disclosure agreements, information system security controls, and monitoring controls. 5/10/24 Trial Tr. at 1459:21-1483:19. Mr. Boyd also testified regarding various documents which reflect Qorvo's information security policies, procedures, and practices. *See* TX-214 (PTX-647); TX-204 (PTX-760); TX-230 (PTX-1218); TX-231 (JTX-20); TX-232 (PTX-1109); TX-233 (PTX-1770); TX-234 (PTX-1556).

In addition, Qorvo's expert witness Mr. R. Cuyler Robinson testified regarding Qorvo's information security policies, procedures and practices. The Court accepted Mr. Robinson as an

4

expert in the field of information security. 5/10/24 Trial Tr. at 1501:8-15. Mr. Robinson also testified regarding Qorvo's information security policies, procedures, and practices related to its information security department, audit and risk management functions, employee confidentiality agreements, Qorvo's code of business conduct and ethics with confidentiality obligations, separation agreement with confidentiality reminders, access control policies, physical security, labeling of confidential documents, use of non-disclosure agreements, information system security controls, and monitoring controls. 5/10/24 Trial Tr. at 1498:24-1524:15. Mr. Robinson also testified regarding various documents which reflect Qorvo's information security policies, procedures, and practices. *See* TX-214 (PTX-647); TX-204 (PTX-760); TX-230 (PTX-1218); TX-231 (JTX-20); TX-232 (PTX-1109); TX-233 (PTX-1770). Mr. Robinson concluded that "Qorvo took more than reasonable efforts under the circumstances to protect their trade secret information." 5/10/24 Trial Tr. at 1524:3-14.

Akoustis presented no witness or evidence to rebut the testimony of Mr. Boyd and Mr. Robinson regarding Qorvo's information security policies, procedures, and practices. The opinions of Akoustis expert Dr. Michael Lebby regarding Qorvo's information security practices were excluded by the Court. D.I. 546. Thus, no Akoustis witness presented any evidence regarding Qorvo's information security policies, practices, and procedures. Qorvo is therefore entitled to judgment as a matter of law that it has established that it took reasonable measures to protect its trade secrets as required under the DTSA and NCTSPA, for each of the trade secrets in Qorvo's Trade Secret Groups 1-8.

For these reasons, Qorvo respectfully requests that the Court grant judgment as a matter of law that Qorvo has: 1) established trade secret misappropriation under the DTSA and NCTSPA as to Qorvo's Trade Secret Groups 1 and 8; and 2) established reasonable measures to protect each

of the trade secrets set forth in Qorvo's Trade Secret Groups 1 through 8 under the DTSA and NCTSPA.

| | |
|---|---|
| OF COUNSEL:<br><br>Robert M. Masters<br>Jonathan R. DeFosse<br>Timothy P. Cremen<br>Roy D. Jung<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>2099 Pennsylvania Avenue, NW, Suite 100<br>Washington, DC  20006-6801<br>(202) 747-1900<br><br>Zachary Alper<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>12275 El Camino Real, Suite 100<br>San Diego, CA  92130-4092<br>(858) 720-8900<br><br>Kazim A. Naqvi<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>1901 Avenue of the Stars, 16th Floor<br>Los Angeles, CA  90067<br>(310) 228-3700<br><br>Jennifer Klein Ayers<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>2200 Ross Avenue, 20th Floor<br>Dallas, TX 75201<br>(469) 391-7400<br><br>May 14, 2024 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br>_____<br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>Anthony D. Raucci (#5948)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br>araucci@morrisnichols.com<br><br>*Attorneys for Plaintiff Qorvo, Inc.* |