# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT COURT OF DELAWARE

| | |
|---|---|
| QORVO, INC. <br><br> Plaintiff, <br><br> v. <br><br> AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC. <br><br> Defendants. | C.A. No. 21-1417 (JPM) <br><br><br> **JURY TRIAL DEMANDED** |

### THE AKOUSTIS' DEFENDANTS' OPPOSITION TO PLAINTIFF QORVO'S RULE 50(a) MOTION REGARDING MISAPPROPRIATION OF TRADE SECRETS (TRADE SECRET GROUPS 1 AND 8) AND REASONABLE MEASURES TO MAINTAIN SECRECY FOR TRADE SECRET GROUPS 1 THROUGH 8

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road, Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

Qorvo's Rule 50(a) Motion seeks to take two issues of fact away from the jury after trial: (1) whether Akoustis misappropriated Qorvo's Trade Secret Groups 1 and 8 under federal and state law; and (2) whether Qorvo implemented reasonable measures to protect all of the alleged trade secrets in Qorvo's Trade Secret Groups 1 through 8. For the reasons set forth below, the Court should deny the Motion.

## I.  THE STANDARD GOVERNING THIS MOTION

The Court may enter judgment as a matter of law against a non-moving party only if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." Fed. R. Civ. P. 50(a)(1).  A reasonable jury could not find for a party on an issue only if "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief."  *Addie v. Kjaer,* 737 F.3d 854, 866 (3d. Cir. 2013). "Entry of a judgment as a matter of law is a 'sparingly' invoked remedy…" *Amgen Inc. v. Hospira*, 336 F.Supp.3d 333 (D. Del. 2018) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted)).

## II.  THE JURY HAS A LEGALLY SUFFICIENT EVIDENTIARY BASIS TO FIND FOR AKOUSTIS ON BOTH ISSUES

Qorvo bears the burden of proving both the existence of a trade secret and its misappropriation for DTSA and state law claims.  *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal citations and quotations omitted); N.C.G.S. § 66-152(3).

For its Motion here, Qorvo must first demonstrate the existence of a trade secret, including showing that the information is in fact confidential or a secret, and that the record is "critically deficient" of evidence otherwise.  Here, Qorvo contends that its witnesses established the existence of these alleged secrets in Groups 1 and 8, and that Dr. Shanfield testified regarding

misappropriation of each of these trade secrets. Qorvo fails to credit, however, the contrary record evidence cutting in Akoustis' favor on these issues.

First, trial testimony confirms that the jury must decide whether the information related to Groups 1 and 8 actually qualifies as a trade secret. Qorvo relies at least in part on repeated testimony of its own witness, Mr. Tony Testa, that the presentations at issue were "secret" or "confidential" because there was a "confidential and proprietary" label on them. *See e.g.*, May 7, 2024 Trial Tr. at 477:3-6 ("Q. Is there anything on this report that indicates it contains Qorvo's confidential and trade secret information? A. Yes. On the footer of the document we state clearly that it is confidential and proprietary information."); *see also id.* at 483:18-21; 513:11-14; 516:12-16 (relying on the label "confidential and proprietary" as evidence that the information at issue is confidential).

But Mr. Testa also testified that such a label is merely a default that appears on virtually **all** Qorvo PowerPoint presentations. *See* May 7, 2024 Trial Tr. at 536:10-17; *see also* May 10, 2024 Trial Tr. 1529:25-1530:20 (Boyd testimony). Mr. Boyd, Qorvo's Chief Information Security Officer, further testified that he was aware that presentations labeled with the phrase "Confidential and Proprietary" appear on Qorvo's public facing website. *See id*. at 1495:13-16 ("Q. Mr. Boyd, are you aware that there have been presentations labeled "Qorvo confidential and proprietary" on Qorvo's public website? A. Yes, I'm aware that there are."). At a minimum, this combined testimony from Qorvo's own witnesses casts doubt on whether these documents were secret at all, or whether they were merely labeled like every other presentation at Qorvo, including ones available to (and written for) the public. May 10, 2024 Trial Tr. 1238:14-1539:11. This evidence creates fact issues for the jury to decide as to whether the asserted trade secrets in Groups 1 and 8 qualify for that status under the DTSA and North Carolina trade secrets law.

Second, Mr. Aichele testified repeatedly that Akoustis did not use and did not find useful the information related to Groups 1 and 8, further negating Qorvo's suggestion that this issue should be decided by the Court  For example, Mr. Aichele testified that Akoustis did *not* use information and documents related to Group 1.  *See, e.g.*, May 8, 2024 Trial Tr. 921:18-23 ("Q. And did having the specifications [in TX-22], or at least the proposed specifications for a proposed Qorvo product at that stage influence any decision making at Akoustis regarding whether or not to kick off or hold on a five-gigahertz product from Akoustis? A. Absolutely not.…"); *id*. at 922:19-24. Mr. Aichele also testified that Akoustis did not use information falling into Group 8, such as the WiFi product roadmap.  *See id*. at 924:3-20.

In sum, the record is *not* "critically deficient" of evidence that would allow a jury to find for Akoustis on the issue of whether Akoustis misappropriated alleged trade secrets in Groups 1 and 8.  This is an issue for the jury to decide, and not for the Court under Rule 50(a) Motion.

### III. THE RECORD EVIDENCE DEMONSTRATES THAT A REASONABLE JUROR COULD FIND THAT QORVO DID NOT TAKE REASONABLE MEASURES TO PROTECT INFORMATION IN GROUPS 1 THROUGH 8

Qorvo once again presents only part of the story in arguing that it is entitled to judgment as a matter of law on the issue of whether it took reasonable measures to maintain the secrecy of information in Groups 1 through 8.  Qorvo's brief fails even to mention, let alone acknowledge, the salient admissions made by Messrs. Boyd and Robinson during cross-examination.  Of particular importance is a dearth of evidence regarding the specific Qorvo information security measures applicable *at the time the documents were first allegedly taken from Qorvo*—the times where Qorvo's information security measures would be relevant.

Mr. Boyd testified that he joined Qorvo in 2021 and has no information about historical information security policies and procedures to the extent those policies were no longer in existence in 2021.  *See* Trial Tr. (May 10, 2024) at 1485:16-1486:6.  Apart from Robert Dry, Qorvo

employees who allegedly brought over Qorvo confidential information to Akoustis were in place by 2019.  While Mr. Boyd testified regarding Qorvo's current Acceptable Use Policy, he has no knowledge of such a written policy before 2019 – when the vast majority of documents relevant to Groups 1 through 8 were prepared and purportedly brought over to Akoustis.  *See* May 10, 2024 Trial Tr. at 1488:14-23. Mr. Boyd could not and did not testify as to most of the Qorvo information security measures in place in 2015-2019.

Almost all Trade Secret Groups refer to at least some documents dated from 2015-2019. *See, e.g.*, TX-20 (PTX-0127, dated June 2015); TX-21 (PTX-0128, dated February 2016); TX-8 (PTX-0078, copyright 2015); TX-220 (PTX-721, dated October 26, 2017); TX-13 (PTX-1142, dated May 11, 2006); TX-76 (PTX-0012, dated October 5, 2017); (PTX-0099, dated September 25, 2015); TX-36 (PTX-0253, last revision September 1, 2015).

Likewise, Qorvo presented evidence that Mr. Houlden, who allegedly removed much of this material from Qorvo, left Qorvo in September 2016.  Dr. Shanfield's timelines, meanwhile, indicate that much of alleged misappropriations occurred in the first instance before 2020.  For example, Dr. Shanfield testified at length that Mr. Houlden sent individuals at Akoustis documents related to Trade Secret Group 1 in September 2016.  *See* Trial Tr. (May 9, 2024) at 1231:6-14.  He testified similarly regarding the other Trade Secret Groups.  *See id.* at 1254:19-23 (timeline alleging R. Houlden sending Akoustis documents related to Group 2); *id.* at 1269-1270 (discussing timeline related to JB Kwon documents related to Group 3, starting in 2017); *id.* at 1280:13-25 (discussing Houlden sending documents related to Trade Secret Group 4 starting in November 2016); *id.* at 1290:8-15 (discussing timeline for Trade Secret Group 5 starting in January 2017); May 10, 2024 Trial Tr. (May 10, 2024) at 1321:23-1322:10 (timeline for Trade Secret Group 6

starting in August 2018); *id*. 1335:5-8 (timeline for Trade Secret Group 7 starting in October 2019); *id*. at 1346:10-13 (timeline for portion of Trade Secret Group 8 starting in August 2019).

Cross-examination of Mr. Robinson made clear that not all measures taken by Qorvo were reasonable during the relevant time period. For example, while Qorvo physically blocks the transfer of data through USB drives, Mr. Robinson and Mr. Boyd each admitted that Qorvo did not do so before 2019. *Id.* at 1548:7-25; 1550:12-1553:13; *id.* at Trial Tr. 1484:2-17 (Boyd testimony on the same point). Mr. Robinson further admitted that Qorvo did not block all use of USB drives before 2019 because it was "accepting the risk" for business reasons. *Id*. at 1552:3-1553:1.

Mr. Robinson testified that for many of the "reasonable measures" at issue, individuals must understand the policies and procedures before they can be implemented. *Id*. at 1528:5-9. But he provided no evidence whether Qorvo employees understood the company's practices and procedures or received specific trainings about identifying and classifying protected information. *See id*. at 1544:6-19.

As with the part of the present Motion regarding misappropriation of Groups 1 and 8, Qorvo has not demonstrated that the "jury would not have a legally sufficient evidentiary basis to find for" Akoustis on this issue. Whether the security measures Qorvo took with respect to information related to Groups 1 through 8 were reasonable thus remains a question for the jury. *See* Fed. R. Civ. P. 50(a)(1).

## IV.   CONCLUSION

For the reasons stated above, Akoustis respectfully respects that the Court deny Qorvo's Rule 50(a) Motion in its entirety.

Dated: May 16, 2024

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

Respectfully submitted,

*/s/ Ronald P. Golden III*
   Stephen B. Brauerman (#4952)
   Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*