FINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| V. ) | 2:21-cv-1417 (JPM) |
| ) | |
| AKOUSTIS TECHNOLOGIES, INC and ) | |
| AKOUSTIS, INC, ) | |
| ) | |
| ) | |
|     Defendants. ) | |

**FINAL JURY INSTRUCTIONS**

Ladies and gentlemen of the jury, we have now come to the point in our case when it is my duty to instruct you on the rules of law that you must follow and apply in deciding this case.

As jurors it is your exclusive duty to decide all questions of fact submitted to you and for that purpose to determine the effect and value of the evidence.

You must not be influenced by sympathy, bias, prejudice, or passion. You must follow the law as I explain it to you whether you agree with it or not. You are not to single out any particular part of these instructions and ignore the rest, but you are to consider all the instructions as a whole and regard

1

each in light of the others.

I will start by explaining the general rules that apply in every civil case. Then I will explain some rules that you must use in evaluating testimony and evidence. Next, I will explain the law you will apply in this case. After that, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the verdict questions you must answer to decide this case.

FINAL

## Corporations as Parties

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

Organization Not to Be Prejudiced

In this case, the Plaintiff and Defendants are business organizations. The fact that the parties in this case are organizations must not influence you in your deliberations or in your verdict.

You may not discriminate between businesses and natural individuals. Each is a person in the eyes of the law, and each is entitled to the same fair and impartial consideration and to justice by the same legal standards.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. An organization is entitled to the same fair trial at your hands as a private individual. All persons, including corporations, governments, and government entities, stand equal before the law, and are to be dealt with as equals in a court of justice.

It is your duty to decide this case with the same impartiality you would use in deciding a case between individuals.

FINAL

Organizations/Corporations Act Through Their Authorized
Employees or Agents

While Qorvo and Akoustis are the parties in this case, that does not mean that only the actions of each business organization as one body are to be considered by you in determining its claims or defenses. A corporation or business organization acts not only through the policies and decisions it makes, but also through its designated supervisory employees, such as its managers, officers, and others designated by the corporation to act on its behalf.

Pay close attention to the remainder of these instructions, As you apply subsequent portions of these instructions, you will have to determine whether or not employees, managers, or agents were authorized to act on behalf of the party you are considering.

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and the stipulations to which the parties agreed.  Nothing else is evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. The lawyers' statements and arguments are not evidence.

Their questions and objections are not evidence.  My legal rulings are not evidence.  You should not be influenced by a lawyer's objection or by my ruling on that objection.  None of my comments and questions are evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And, sometimes, I may have ordered you to disregard things that you saw or heard, or that I struck from the record something that was said.  You must ignore all of

FINAL

these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Make your decisions based only on the evidence, as I have defined it here, and nothing else.

FINAL
### Direct and Circumstantial Evidence

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence."  I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he or she saw it raining outside, and you believe him or her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.

The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

FINAL

Consideration of Evidence

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

FINAL
Court Has No Opinion

Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented. The Court has no opinion on the outcome of the case.

If I have read any of these instructions inconsistently with the written text, or if they are inconsistent with other instructions you received during the case, you are to rely on the written instructions in your deliberations.

FINAL

Statements of Counsel

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorney or attorneys, you should rely on your own recollection of the evidence.

Consideration of Evidence

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight of their testimony.

You should carefully scrutinize all of the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. You should consider the reasonableness or unreasonableness of the testimony of the witness; the opportunity or lack of opportunity of the witness to know the facts about which he or she testified; the intelligence or lack of intelligence of the witness; the interest of the witness in the result of the lawsuit, if any; the relationship of the witness to any of the parties to the lawsuit, if any; and whether the witness testified inconsistently while on the stand or if the witness said or did something or failed to say or do something at any other time that is inconsistent with what the witness said while testifying.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there

12

FINAL

was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from or inconsistent with the testimony that he or she gave before you during this trial.   It is the province of the jury to determine whether a false statement or prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or only an unimportant detail.

FINAL

Impeachment – Inconsistent Statements or Conduct

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.

If you believe that any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you think it deserves; you may, of course, accept any part you decide is true. That is all for you, the jury, to decide.

An act or omission is done "knowingly" if committed voluntarily and intentionally, and not because of mistake or accident, or some other innocent reason.

FINAL
Number of Witnesses

One more point about witnesses.  Sometimes jurors wonder if the number of witnesses who testified on a particular point makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were and how much weight you, the jury, think their testimony deserves.  Concentrate on that, not the number of witnesses.

FINAL

Expert/Opinion Witnesses

During the trial, you heard testimony from expert witnesses.  When knowledge or special skill in a technical or business subject matter might be helpful to the jury, a person who has that special training or experience in that technical or business field—called an expert witness—is permitted to state his or her opinion on those technical or business matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon each witness's testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.  You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

FINAL
Deposition Testimony

During the trial, certain testimony was presented to you through the excerpts from depositions.  The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence.  You should not attribute any significance to the fact that the depositions may appear to have been edited. Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

FINAL
Use of Notes

You may have taken notes during trial to assist your memory.  As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There may be a tendency to attach undue importance to matters that one has written down.  Some testimony that is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory.  You should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.

Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

FINAL

Burdens of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." Here, the burden of proof is called "preponderance of the evidence."

As you know, the Plaintiff in this case is Qorvo, Inc., which I will refer to in these instructions as "Plaintiff" or "Qorvo." The defendants are Akoustis Technologies, Inc. and Akoustis, Inc., which I will refer to as "Defendants" or collectively as "Akoustis."

Qorvo asserts claims against Akoustis for patent infringement, misappropriation of trade secrets and unfair and deceptive trade practices. Akoustis denies these assertions.

Qorvo has the burden of proving its case by a preponderance of the evidence. This means Qorvo has to produce evidence which, when considered in light of all the facts, leads you to believe that what Qorvo claims are more likely true than not. To put it differently, if you were to put Akoustis's evidence on the opposite sides of the scale, the evidence supporting Qorvo's claims would have to make the scales tip to its side. If the scale reflects that the two sides are equal or tips in favor of Akoustis, you must find for Akoustis.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases. That requirement is the

FINAL

highest burden of proof in our judicial system.  It applies in

criminal cases, but does not apply to civil cases, like this

one, and, therefore, you should put it out of your mind.

Misappropriation of Trade Secrets - Introduction

Turning now to the legal theories in the case. Qorvo alleges that Akoustis misappropriated its trade secrets in violation of the federal Defend Trade Secrets Act and the North Carolina Trade Secrets Protection Act.

Under both claims, for each trade secret that Qorvo identifies, Qorvo has to prove by a preponderance of the evidence the following elements: (1) the existence of a trade secret; and (2) misappropriation of that trade secret.

Under the federal Defend Trade Secrets Act, Qorvo also has to prove by a preponderance of the evidence that each trade secret at issue is related to a product or service used in, or intended for use in, interstate or foreign commerce.

21

FINAL

Misappropriation of Trade Secrets – Definition of a Trade Secret

In deciding the misappropriation of trade secrets issue, you must first decide whether Qorvo owned an identifiable trade secret or trade secrets.  The term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

    (1)  the information is secret;

    (2)  the owner of the information has taken reasonable measures to keep such information secret; and

    (3)  the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

In articulating a trade secret, it is not enough for the Qorvo to point to a broad general class.  Rather, Qorvo has the burden to identify concrete information that it contends constitutes its trade secrets.  By its definition, a "trade secret" concerns information.  By contrast, an employee's general knowledge, skills, experience, talents, or abilities cannot be trade secrets.

Misappropriation of Trade Secrets – Secrecy

To determine whether a trade secret exists, you must decide whether the information was indeed secret when Akoustis' allegedly wrongful conduct occurred.  Matters that are generally known to the public at large or to people in a trade or business, are not trade secrets.  Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information.  In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

Absolute secrecy is not necessary for information to qualify as a trade secret.  There is no requirement that no one else in the world possess the information.  Rather, Qorvo must demonstrate that the information was known only to it or to a few others who have also treated the information as a trade secret.

Misappropriation of Trade Secrets – "Independent Economic Value"
Requirement

To qualify as a trade secret, the information must derive
independent economic value from the fact that it is not
generally known or not readily ascertainable by proper means.
To derive independent economic value from not being generally
known means that the information gives a business a competitive
advantage over other businesses that do not know the
information.  Information that is generally known or understood
within an industry, even if not known to the public at large,
does not qualify as a trade secret.  But information that
requires considerable time, effort, and expense to duplicate,
even if it is derived from public sources, can still qualify as
a trade secret.  Absolute secrecy, in the sense that no one else
in the world possesses the information, is not required.

FINAL

Misappropriation of Trade Secrets – "Reasonable Measures"
Requirement

Qorvo must prove by a preponderance of the evidence that it took reasonable measures to protect the secrecy of its trade secrets. There is no precise definition of what "reasonable measures" are; what is reasonable depends on the situation. Factors you may wish to consider in evaluating whether "reasonable measures" were taken could include the following:

1.  Whether Qorvo made it a practice to inform its employees or others involved with its business that the information was a trade secret and/or was to be kept confidential;

2.  Whether Qorvo required employees or others involved with its business to sign confidentiality agreements regarding the information or agreements not to compete in areas that could use the information;

3.  Whether Qorvo restricted access to the information on a "need to know" basis; or

4.  Whether Qorvo generally maintained reasonable security to protect the alleged trade secret, and did not voluntarily disclose it to others, except in confidence.

FINAL

## Misappropriation of Trade Secrets – Definition of "Misappropriation"

If you find that Qorvo has proven by a preponderance of the evidence that a trade secret existed, then you must decide whether that trade secret information was misappropriated by Akoustis.

To prove that misappropriation occurred, Qorvo must prove by a preponderance of the evidence that:

(1) Akoustis acquired Qorvo's trade secret knowing or having reason to know that the trade secret was acquired by improper means; or

(2) Akoustis disclosed or used Qorvo's trade secret without Qorvo's express or implied consent, and Akoustis:

    (a) Used improper means to acquire knowledge of the trade secret; or

    (b) At the time of the disclosure or use of the trade secret, knew or had reason to know that knowledge of the trade secret was:

        (i) Derived from or through a person who used improper means to acquire it; or

        (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        (iii) Derived from or through a person who owed a duty to Qorvo to maintain its secrecy or limit its use.

26

FINAL

Misappropriation of Trade Secrets – Definition of "Improper Means"

"Improper means" in acquiring a trade secret can arise in three types of circumstances:

> (a) where Akoustis itself obtained the trade secret by its own improper conduct,
>
> (b) where Akoustis obtained the trade secret from a third party who Akoustis knew or had reason to know acquired the trade secret by improper means, and
>
> (c) where Akoustis induced another to obtain the trade secret by improper means.

It would be improper for Akoustis to acquire trade secret information by theft, bribery, trespass, misrepresentation, or corporate espionage, such as wiretapping. It would also be improper for Akoustis to acquire the information from a third party who Akoustis knew or had reason to know either used improper means to acquire the information or breached a duty of confidentiality in disclosing the information. Where Akoustis acquired the information from a third party in one of these circumstances, Akoustis' conduct is only improper if Akoustis knew or should have known that it was acquiring a trade secret belonging to another. Last, it would be improper for Akoustis to induce another to either use improper means to acquire the information or to breach a duty of confidentiality that person owed to Qorvo.

Because improper means can cover a wide variety of

27

FINAL

circumstances, it may be helpful to identify situations that the law would *not* consider "improper means." It is not improper to acquire information through independent development, research of public resources (such as, for example, trade directories, patent filings, or even the telephone book), or purchase of a product that contains trade secrets and then disassembling it to analyze those secrets (a process called "reverse engineering"). Similarly, a party who obtains information by mistake, or without knowledge or reason to know that the information is a trade secret, has not acquired the trade secret through improper means.

A defendant who has acquired trade secret information by improper means has no right to use or to disclose the information in any way whatsoever. Thus, any use or disclosure by a defendant who has acquired a trade secret by improper means is wrongful.

Misappropriation of Trade Secrets – "Use" of a Trade Secret

To prove "use" of a trade secret, Qorvo must prove by a preponderance of the evidence that Akoustis used the alleged trade secrets without Qorvo's consent.

"Use" has a broad definition in trade secret law.  As a general matter, any exploitation of a trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use." The unauthorized use need not extend to every aspect or feature of the trade secret; use of any substantial portion of the secret is sufficient to subject the actor to liability.  Use requires the productive use of the alleged trade secret.  Merely possessing a trade secret without utilizing the trade secret is not "use." But you may find that possession of the trade secrets, or the circumstances surrounding the possession of trade secrets, are circumstantial evidence of "use."

FINAL
Trade Secret Damages Generally

I will now instruct you on the law you must follow in determining compensatory damages. The purpose of compensatory damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from a defendant's violation of a plaintiff's rights. Compensatory damages are not intended to punish the defendant.

You must not take these instructions as implying my view about which party is entitled to your verdict in this case. Instructions regarding the measure of damages are given for your guidance in the event you find in favor of Qorvo from a preponderance of evidence in the case in accordance with the other instructions.

If you find that Qorvo proved that Akoustis misappropriated Qorvo's trade secrets, then you must decide whether Qorvo is entitled to damages on its claim for misappropriation of trade secrets.

Qorvo has the burden of proving whether Akoustis caused the damage that Qorvo is claiming by a preponderance of the evidence. Qorvo must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. However, Qorvo is not entitled to damages that are remote or speculative.

FINAL
Trade Secret Damages – Unjust Enrichment

If you determine that Qorvo is entitled to damages, you may award Qorvo an amount that represents the benefit actually received by Akoustis. This is called unjust enrichment. Regardless of whether you find that Qorvo itself suffered losses, if you find that Akoustis benefited from using a trade secret belonging to Qorvo, then you may award the monetary value that you attribute to those benefits and that Qorvo has proven by a preponderance of the evidence.

FINAL

Trade Secret Damages – Theories of Unjust Enrichment

There can be multiple forms of unjust enrichment.

One form of unjust enrichment can be measured by a "head start" theory. The head start theory measures the value of the temporal advantage a defendant obtains from its use of the trade secrets. The "head start" period is the time it would have taken Akoustis to develop its products and compete in the market absent any misappropriation (e.g. not using the alleged trade secrets until they were generally known or legitimately acquired elsewhere.)

A second form of unjust enrichment is called avoided costs. Avoided costs are the amount that Akoustis would have incurred to achieve the same result without the use of the appropriated trade secrets.

32

FINAL
Trade Secret Damages – Willfulness/Exemplary Damages

If you find for Qorvo on its trade secret claims, you may, but are not required to, assess exemplary damages against Akoustis.  The purposes of exemplary damages are to punish a defendant for its conduct and to deter it and others from engaging in similar conduct in the future.

For Qorvo to recover exemplary damages, you must first find that Qorvo has proved by a preponderance of the evidence that Akoustis's acts were willful and malicious.  "Willful and malicious" means such intentional acts or gross neglect of duty as to exhibit a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the entity at fault is conscious of the consequences of its carelessness.

FINAL

Unfair and Deceptive Trade Practices

Qorvo contends that Akoustis engaged in unfair and deceptive trade practices in violation of North Carolina law. Qorvo alleges that Akoustis engaged in one or more of the following unfair or deceptive acts:

1. Akoustis misappropriated Qorvo's trade secrets;

2. Akoustis hired former Qorvo employees as part of a scheme to acquire Qorvo's confidential information;

3. Akoustis obtained or used Qorvo's confidential information unfairly or deceptively;

FINAL

Unfair and Deceptive Trade Practices – Elements of Claim

To succeed on its claim for unfair and deceptive trade practices, Qorvo must prove each of the following by a preponderance of the evidence:

(1) Akoustis committed an unfair or deceptive act or practice;

(2) Akoustis' conduct was in or affecting commerce; and

(3) Akoustis' conduct caused Qorvo injury.

A practice is unfair when it offends established public policy or when the act or practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." A party commits an unfair act or practice when it engages in conduct that amounts to an inequitable assertion of its power or position. For an act or practice to be deceptive, it must have "the capacity or tendency to deceive" but proof of actual deception is not required.

A violation of a statute or other law is not automatically an unfair or deceptive act. Qorvo must prove the conduct was unfair or deceptive. Deliberate acts of deceit or bad faith do not have to be shown, rather, Qorvo must demonstrate that the act or practice possessed the tendency and capacity to mislead or created the likelihood of deception.

As a general matter, Akoustis has the freedom to compete, including to divert business not only from competitors

35

FINAL

generally, but also from Qorvo.   You may only find Akoustis liable for unfair and deceptive trade practices if you determine that the harm to Qorvo resulted from particular methods of competition determined to be unlawful.

### Unfair and Deceptive Trade Practices – "In Commerce"

To succeed on the second element, Plaintiff must prove that the Defendant's conduct was either "in commerce" or that it "affected commerce."

Conduct is "in commerce" when it involves a business activity. Conduct "affects commerce" whenever a business activity is adversely and substantially affected. A "business activity" is the way a business conducts its regular, day to-day activities or affairs (such as the purchase or sale of goods), or whatever other activities the business regularly engages in and for which it is organized.

FINAL

Unfair and Deceptive Trade Practices – Proximate Cause

The third element requires that Qorvo prove by a preponderance of the evidence that Akoustis' conduct proximately caused an injury to Qorvo.  To prove this, Qorvo must prove:

(a) that Qorvo has suffered injury; and

(b) that Akoustis' conduct was the proximate cause of any injury to Qorvo.

Proximate cause is a cause that in a natural and continuous sequence produces the injury, and is a cause that a reasonable and prudent person could have foreseen would probably produce such injury or some similar injurious result.

FINAL

Unfair and Deceptive Trade Practices – Compensatory Damages

In connection with its Unfair and Deceptive Trade Practices claim, Qorvo seeks the recovery of compensatory damages. Qorvo seeks recovery of damages for actual loss.

In determining compensatory damages based on actual loss, you may consider whether Qorvo suffered any measurable loss as a result of Akoustis' conduct. In this case, Qorvo claims that its business was affected and that it suffered monetary loss due to the cost to recruit, hire, and train additional employees based on Akoustis' unlawful hiring of Qorvo employees.

Qorvo's damages, if any, are to be reasonably determined from the evidence presented in the case. Qorvo is not required to prove with mathematical certainty the extent of its injury in order to recover damages. You may not award, however, any damages based upon mere speculation or conjecture.

Patent Infringement – Summary of Patent Issues

Turning now to Qorvo's patent infringement theory. Qorvo has alleged that Akoustis has directly infringed claims 1 and 12 of the '018 Patent and claims 9 and 10 of the '755 Patent. I will refer to those as the "Asserted Claims." Infringement is assessed on a claim-by-claim basis. To prove infringement, Qorvo must prove that the requirements for direct infringement are met by a preponderance of the evidence, *i.e.*, that it is more likely than not that all of the requirements of direct infringement have been proved. Akoustis denies that it has infringed the Asserted Claims. Your job is to decide whether Akoustis has infringed the Asserted Claims.

The specific questions you must answer relate to patent infringement and listed on the verdict form that I will give to you. Here are the issues you must decide:

- Whether Qorvo has proven by a preponderance of the evidence that Akoustis infringes claims 1 and/or 12 of the '018 Patent.

- If you decide that Qorvo has proven that Akoustis infringes claims 1 and/or 12 of the '018 Patent, whether Qorvo has proven by a preponderance of the evidence that Akoustis willfully infringes.

- If you decide that Qorvo has proven that Akoustis infringes claims 1 and/or 12 of the '018 Patent, what amount of monetary damages Qorvo has proven by a preponderance of the evidence.

FINAL

- Whether Qorvo has proven by a preponderance of the evidence that Akoustis infringes claims 9 and/or 10 of the '755 Patent.

- If you decide that Qorvo has proven that Akoustis infringes claims 9 and/or 10 of the '755 Patent, whether Qorvo has proven by a preponderance of the evidence that Akoustis willfully infringes.

- If you decide that Qorvo has proven that Akoustis infringes claims 9 and/or 10 of the '755 Patent, what amount of monetary damages Qorvo has proven by a preponderance of the evidence.

I will now provide you with further instructions regarding patent infringement.

Patent Infringement – Patent Claims Generally

Before you decide many of the issues in the patent portion of this case, you will need to understand the role of patent "claims." Patent claims are the numbered sentences at the end of a patent. The claims are important because the words of a claim define the scope of the patent right. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but the claims define the extent of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

FINAL

Patent Infringement – Claim Construction

To decide whether or not a claim is infringed, you will first need to understand what the claims of the '018 and '755 Patents cover.  To do so, you will need to understand the meaning of the words used in the claims.

The law says that it is my role to, where necessary, define the terms of the claims and it is your role to apply my definitions of those terms to the issues that you are asked to decide in this case.  As I explained to you at the start of the case, I have determined that the following claim terms have the following definitions.

| Patent | Claim Term | Definition |
|--------|-----------|------------|
| '018 | reference numerals | the reference numerals in the asserted claims of the '018 patent are not limiting and are solely for exemplary purposes |
| '755 | active region | the region of the resonator that is electrically driven, plus any portions of the resonator that are located above or below the electrically driven regions |
| '755 | outer region | the region of the resonator that is outside of the active region |
| '755 | are not excited in the active region | plain and ordinary meaning |

You must accept my definitions of these terms as being correct.  It is your job to take these definitions and apply

FINAL

them to the issues that you are deciding, including the issues of infringement.

If I have not provided a specific definition for a term in the claims of the '018 and '755 Patents, you are to use the plain and ordinary meaning to a person of ordinary skill in the art of that term.

You should not take my definition of the language of the patent claim as an indication that I have a view regarding how you should decide the issues that you are being asked to decide. The issues in this case are yours to decide.

FINAL

Patent Infringement – Claim Construction – Independent and
Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims.

Claim 1 of the '018 Patent and claims 9 and 10 of the '755 Patent are "independent claims." An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

Claim 12 of the '018 Patent is a "dependent claim." A "dependent claim" does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

Patent Infringement – Infringement Generally

I will now instruct you as to the rules you must follow when deciding whether Qorvo has proven that Akoustis has infringed the Asserted Claims.

The United States' patent law gives the owner of a patent the right to exclude others from importing, making, using, selling, or offering to sell patented products and services or performing a patented method within the United States during the term of the patent. Any person or company that has engaged in any of those acts without the patent owner's permission infringes the patent.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, Qorvo has alleged that Akoustis has "directly" infringed claims 1 and 12 of the '018 Patent and claims 9 and 10 of the '755 Patent. As I will explain to you, this case addresses "literal infringement." To prove infringement, Qorvo must prove that the requirements for direct infringement are met by a preponderance of the evidence.

Akoustis may infringe a patent unknowingly—that is, without knowledge that what one is doing infringes a patent. Akoustis

46

may also infringe while believing in good faith that a particular action does not infringe any patent.

I will now explain infringement in more detail.

FINAL

Patent Infringement – Direct Infringement – Literal Infringement

Claims 1 and 12 of the '018 Patent and claim 9 of the '755 Patent are apparatus claims. In other words, these claims cover a physical product. To prove literal infringement of these apparatus claims, Qorvo must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Akoustis made, used, sold, or offered for sale within the United States, or imported into the United States, a product that meets all of the requirements of a claim and did so without the permission of Qorvo during the time the patents were in force.

To determine literal infringement of these apparatus claims, you must compare the features of the accused products identified by Qorvo with each asserted claim to determine whether each and every one of the requirements of that claim is satisfied. If any of the accused products does not contain one or more elements recited in a claim, there is no literal infringement with respect to that claim. Each claim should be considered individually.

Claim 10 of the '755 Patent is a method claim. In other words, this claim covers a way to do something. To prove literal infringement of this method claim, Qorvo must prove by a preponderance of the evidence that Akoustis used in the United States a method that meets all of the requirements of the

48

FINAL

asserted claim and did so without the permission of Qorvo during the time the patent was in force.

To determine literal infringement of this method claim, you must compare the methods of making the accused products identified by Qorvo with the claim steps to determine whether each and every one of the requirements of the claim is satisfied.  If any of the methods of making the accused products does not contain one or more elements recited in the claim, there is no literal infringement with respect to the claim.

Qorvo need not always have direct evidence of infringement; infringement may be established by circumstantial evidence.

Patent Infringement – Willful Infringement

In this case, Qorvo argues that Akoustis willfully infringed the Asserted Claims. If you have decided that Akoustis has infringed the Asserted Claims, you must go on and address the additional issue of whether or not this infringement was willful. To show that Akoustis' infringement was willful, Qorvo must prove by a preponderance of the evidence that Akoustis knew of Qorvo's patents and intentionally infringed the asserted claims after October 4, 2021.

You may not determine that the infringement was willful just because Akoustis was aware of the Asserted Patents and infringed them. Instead, you must also find that Akoustis deliberately infringed the Asserted Claims.

To determine whether Akoustis acted willfully, you should consider all facts and assess Akoustis' knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

(1) Whether or not Akoustis acted consistently with the standards of behavior for its industry;

(2) Whether or not Akoustis intentionally copied a product of Qorvo that is covered by the asserted patent;

(3) Whether or not Akoustis reasonably believed it did not infringe or that the Asserted Claims were invalid;

50

FINAL

(4) Whether or not Akoustis made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Akoustis attempted to design around the Asserted Patents; and

(5) Whether or not Akoustis tried to cover up its infringement.

If you do decide that there was willful infringement, that decision should not affect any damages award you give in this case.

FINAL

Patent Infringement - Compensatory Damages

If you find that Akoustis infringed claims 1 and/or 12 of the '018 patent, and/or that Akoustis infringed claims 9 and/or 10 of the '755 patent, you must then consider what amount of damages to award to Qorvo.

I will now instruct you about the measure of patent infringement damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.  If you find that Akoustis has not infringed any claim of the '018 patent, or any claim of the '755 patent, then Qorvo is not entitled to any damages for patent infringement.

I will now instruct you about how to measure damages for patent infringement.

If you find that Akoustis has infringed any claims of the '018 patent, or any claims of the '755 patent, then the damages you award must be adequate to compensate Qorvo for the infringement.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Qorvo in approximately the same financial position that it would have been in had the infringement not occurred.

Qorvo has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should

FINAL

award only those damages that Qorvo establishes that it more likely than not suffered. While Qorvo is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In determining infringement damages, you must not consider Qorvo's allegations of willfulness, or consider any evidence relating to those allegations. The consideration of willfulness, if any, is entirely separate from the question of any infringement damages that you are asked to determine. Nor should you include any amount in your infringement damages award for interest, attorneys' fees or other expenses.

There are different types of compensatory damages that Qorvo may be entitled to recover in connection with its patent infringement claims. In this case, Qorvo seeks a "reasonable royalty" as a result of Akoustis' infringement of the patents-in-suit.

Patent Infringement – Reasonable Royalty

In connection with its patent infringement claims, Qorvo seeks to recover a reasonable royalty.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that Qorvo and Akoustis would have agreed to in a hypothetical negotiation taking place before the infringement first began.  The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.  When the infringing methods have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The royalty rate must reflect the value attributable to the infringing features of the method, and no more.

In considering this hypothetical negotiation, you should focus on what the expectations of Qorvo and Akoustis would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.  In determining this, you must assume that the parties to the hypothetical negotiation believed Qorvo's Asserted Patents were valid and infringed and that the parties were willing to enter into an agreement just before the infringement began.  The reasonable royalty you determine must be a royalty that would have resulted

FINAL

from the hypothetical negotiation and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

FINAL
Patent Infringement – Reasonable Royalty Factors

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors in addition to any other evidence presented by the parties on the economic value of the patent:

(1) Any established policy by Qorvo to maintain its patent exclusivity and right to exclude others from using the patented inventions by not licensing others to use the inventions or by granting licenses under special conditions designed to preserve that exclusivity;

(2) The commercial relationship between Qorvo and Akoustis, such as whether or not they are competitors in the same territory in the same line of business;

(3) The effect of selling the patented products in promoting sales of other Akoustis products and services, the existing value of the inventions to Qorvo as a generator of sales of its non-patented items, and the extent of such collateral sales;

(4) The duration of Qorvo's asserted patents and term of the hypothetical license;

(5) The established profitability, commercial success, and popularity of the products made under Qorvo's asserted patents;

(6) The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for working out similar results;

(7) The nature of the patented inventions, the character of their commercial embodiments as owned and produced by Qorvo, and the benefits to those who have used the inventions;

(8) The extent to which Akoustis has made use of the inventions and any evidence probative of the value of that use;

FINAL

(9) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions;

(10) The portion of the realizable profit that should be credited to the patented inventions themselves as opposed to unpatented features, business risks, or significant features or improvements added by Akoustis;

(11) The opinion testimony of qualified experts;

(12) The amount that Qorvo and Akoustis would have agreed upon (at the time the infringement began) if the parties had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired as a business proposition to obtain a license to manufacture and sell particular articles embodying the patented inventions—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patent holder who was willing to grant a license;

(13) The royalties received by Qorvo for licensing of the patent-in-suit, proving or tending to prove an established royalty;

(14) The rates paid by Akoustis for the use of other patents comparable to the patent-in-suit; and

(15) Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive. You should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors that, in your mind, would have increased or decreased the royalty Akoustis would have been willing to pay and Qorvo would have

FINAL

been willing to accept, acting as normally prudent business

people.

FINAL
Patent Infringement – Reasonable Royalty Apportionment

If you award a reasonable royalty, for any damages you award, the amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product or method, or other factors such as marketing or advertising, or Akoustis' size or market position.  When damages must be apportioned, the amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Qorvo's size or market position.  When apportionment is required, a royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product or method, and no more.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products or methods have both patented and unpatented features or steps, your award must be apportioned so that it is based only on the value of the patented features, and no more.

Patent Infringement – Patent Glossary

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given.  The definitions in the instructions must be followed and must control your deliberations.

**Abstract:** A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment:** A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Assignment:** A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Claim:** Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from

FINAL

trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent.  An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

**Drawings:** The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements:** The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:** A product or method that contains the claimed invention.

**Examination:** Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:** Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:** Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission

FINAL

of the patent holder, within the United States during the term of the patent.  Direct infringement is making, using, or selling the patented invention without permission.  I

**Limitation**: A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or, in some cases, 17 years from the date the patent issued).  When the patent expires, the right to make, use, or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with

FINAL

overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prosecution History:** The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:** A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Requirement:** A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty:** A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

FINAL

Evidence Offered for a Limited Purpose

You have heard evidence that forensic analysis of certain Akoustis devices or systems and/or personal devices of Akoustis employees contained a large number of documents and additional data allegedly created at Qorvo.  The quantity of documents and data referred to by Qorvo does not establish that those documents contained confidential information or trade secrets, or that those documents were used by Akoustis or its employees.

FINAL
Verdict

Finally, ladies and gentlemen, we come to the point where we will discuss the form of your verdict and the process of your deliberations. You will be taking with you to the jury room a verdict form that will reflect your findings. The verdict form reads as follows:

[Read Verdict Form]

You will note that the Verdict Form uses the eight alleged trade secret groups that the Plaintiff proposed in the presentation of some of the Plaintiff's proof.  The Court is <u>not</u> making any factual determinations as to the alleged trade secrets, their organization, whether they are properly grouped together, or whether or not each is a trade secret. The Verdict Form's organization is only for your convenience. All questions of fact are for you, the jury, to decide.

You will be selecting a foreperson after you retire to the jury room. That person will preside over your deliberations and be your spokesperson here in court. When you have completed your deliberations, your foreperson will fill in, and all of you will sign, the verdict form.

Each of you should deliberate and vote on each issue to be

FINAL

decided.

Before you return your verdict, however, each of you must agree on the answer to each question so that you will be able to state truthfully that the verdict is yours.

The verdict you return to the court must represent the reasoned judgement of each juror. In order to return a verdict, it is necessary that each juror agree to each answer. Your verdict must be unanimous.

It is your duty to consult with one another and to reach an agreement if you can do so without violence to your individual judgement. Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and to change your mind if you are convinced that you were wrong. But do not surrender your honest conviction as to the weight and effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

We will be sending you to the jury room with all of the exhibits that have been marked and received in the case. You may not have seen all these previously and they will be there for your review and your consideration. You may take a break before you begin deliberating, but do not begin to deliberate and do

FINAL

not discuss the case at any time unless all of you are present together in the jury room. Some of you have taken notes. I remind you that these are for your own individual use and are to be used only by you to refresh your recollection about the case. They are not to be shown to others or otherwise used as a basis for your discussion about the case.

If a question arises during deliberations and you need further instructions, please write your question on a sheet of paper, knock on the door of the jury room, and give the question to the court security officer.

I will review your question, and after consulting with all counsel in the case, will either respond to your question in writing or have you return to the courtroom for further oral instructions. Please understand that I may only answer questions of the law and I cannot answer questions about the evidence. I caution you, however, that with regard to any question or message you might send me, you should not tell me your numerical division at any time.

I remind you that you are to decide this case based only on the evidence you have heard in court and the law I have given you. You are prohibited from considering any other information and you are not to consult with outside sources for information. You may not communicate with or provide any information,

FINAL

photographs, or video to anyone by any means about this case or

your deliberations. You may not use any electronic device or

media, such as a telephone, cell phone, smart phone, or

computer; the Internet, any text or instant messaging service;

or any chat room, blog, website or social media platform such as

Facebook, Instagram, LinkedIn, YouTube, Twiiter/X, or TikTok to

communicate with anyone or to conduct any research about the

case.

You may now retire to begin your deliberations. Remember that

your first task is to select a foreperson.

FINAL

# Control Sheet

Corporations as Parties.........................................3

Organization Not to Be Prejudiced..............................4

Organizations/Corporations Act Through Their Authorized
Employees or Agents............................................5

Evidence Defined...............................................6

Direct and Circumstantial Evidence.............................8

Consideration of Evidence......................................9

Court Has No Opinion..........................................10

Statements of Counsel.........................................11

Consideration of Evidence.....................................12

Impeachment – Inconsistent Statements or Conduct..............14

Number of Witnesses...........................................15

Expert/Opinion Witnesses......................................16

Deposition Testimony..........................................17

Use of Notes..................................................18

Burdens of Proof..............................................19

Misappropriation of Trade Secrets - Introduction..............21

Misappropriation of Trade Secrets - Definition of a Trade Secret
..............................................................22

Misappropriation of Trade Secrets - Secrecy...................23

Misappropriation of Trade Secrets - "Independent Economic Value"
Requirement...................................................24

Misappropriation of Trade Secrets - "Reasonable Measures"
Requirement...................................................25

Misappropriation of Trade Secrets - Definition of
"Misappropriation"............................................26

Misappropriation of Trade Secrets - Definition of "Improper
Means"........................................................27

Misappropriation of Trade Secrets - "Use" of a Trade Secret...29

Trade Secret Damages Generally................................30

Trade Secret Damages – Unjust Enrichment......................31

FINAL

Trade Secret Damages – Theories of Unjust Enrichment.......... 32

Trade Secret Damages – Willfulness/Exemplary Damages.......... 33

Unfair and Deceptive Trade Practices......................... 34

Unfair and Deceptive Trade Practices – Elements of Claim...... 35

Unfair and Deceptive Trade Practices – "In Commerce".......... 37

Unfair and Deceptive Trade Practices – Proximate Cause........ 38

Unfair and Deceptive Trade Practices – Compensatory Damages... 39

Patent Infringement – Summary of Patent Issues................ 40

Patent Infringement – Patent Claims Generally................. 42

Patent Infringement – Claim Construction...................... 43

Patent Infringement – Claim Construction – Independent and
Dependent Claims............................................. 45

Patent Infringement – Infringement Generally.................. 46

Patent Infringement – Direct Infringement – Literal Infringement
............................................................ 48

Patent Infringement – Willful Infringement.................... 50

Patent Infringement – Compensatory Damages.................... 52

Patent Infringement – Reasonable Royalty...................... 54

Patent Infringement – Reasonable Royalty Factors.............. 56

Patent Infringement – Reasonable Royalty Apportionment........ 59

Patent Infringement – Patent Glossary......................... 60

Evidence Offered for a Limited Purpose........................ 64

Verdict...................................................... 65