IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | |
| AKOUSTIS, INC., | ) | |
| | ) | |
|       Defendants. | ) | |

## **[PROPOSED] PERMANENT INJUNCTION ORDER**

Based on the jury's findings that Defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively, "Akoustis") (i) willfully and maliciously misappropriated Plaintiff Qorvo's Inc.'s trade secrets; (ii) infringed claims 1 and 12 of U.S. Patent No. 7,522,018 (the "'018 Patent"); and (iii) infringed claims 9 and 10 of U.S. Patent No. 9,735,755 (the "'755 Patent"), this Court finds:

1. Qorvo has prevailed on the merits of its trade secret misappropriation and patent infringement claims.

2. Qorvo has suffered and will continue to suffer the following irreparable harms caused by Akoustis' ongoing trade secret misappropriation and patent infringement absent permanent injunctive relief:

    a. Harm to Qorvo's business through Akoustis' making, using, selling, or offering for sale within the United States, or importing into the United States products that practice the inventions of the '018 Patent and the '755 Patent and directly compete with Qorvo's products;

    b. Harm to Qorvo's business through Akoustis' ongoing use and dissemination of Qorvo's Trade Secret Information, as defined below;

    c. Harm to Qorvo's business through ongoing and future lost market share, lost customer relationships, and lost long-term sales arrangements;

    d. Harm to Qorvo's reputation as a technology leader and innovator in the market.

3. Akoustis will suffer no undue hardship or harm as a result of granting Qorvo's motion for permanent injunctive relief, as Akoustis will be able to continue with legitimate business activities.

4. The harm to Qorvo of allowing Akoustis to (i) infringe the '018 and '755 patent, and (ii) use or disseminate the Qorvo Trade Secret Information substantially outweighs any potential harm to Akoustis from ordering permanent injunctive relief.

5. The public interest weighs in favor of protecting trade secrets and patent right by enjoining Akoustis.

6. For the purposes of this injunction, the term "'018 Patent Enjoined Products" means the following Akoustis BAW filter products the jury found to infringe the '018 patent: A10149, A10154, A10155, A10156, A10158, A10160, A10165, A10166, A10235, A10238, A10249, A10252, A10256, A10266, A10335, AKF-1256, AKF-1336, AKF-1938.

7. For the purposes of this injunction, the term "'755 Patent Enjoined Products" means the following Akoustis BAW filter products the jury found to infringe the '755 Patent: A10149, A10154, A10155, A10156, A10158, A10160, A10165, A10166, A10235, A10238, A10249, A10252, A10256, A10266, A10335, AKF-1252, AKF-1256, AKF-1336, AKF-1938.

8. For the purpose of this injunction, the term "Qorvo Trade Secret Information" means any confidential information copied or derived from, in whole or in part, the following trade secrets that the jury found Akoustis to have misappropriated (identified here by trade secret number and citation to trial exhibit):

    **Group 2: Qorvo BAW filter and resonator designs**

    Trade Secret 2.1

    - Trial Ex. 8 (PTX-0078) at page 4
    - Trial Ex. 46 (PTX-0007) at page 2

    Trade Secret 2.2

    - Trial Ex. 9 (PTX-0149) at page 3
    - Trial Ex. 44 (PTX-0005) at page 3
    - Trial Ex. 45 (PTX-0006) at page 2

    Trade Secret 2.3

    - Trial Ex. 9 (PTX-0149) at pages 14-16
    - Trial Ex. 44 (PTX-0005) at pages 14-16
    - Trial Ex. 45 (PTX-0006) at pages 3-5

Trade Secret 2.4

- Trial Ex. 9 (PTX-0149) at page 17
- Trial Ex. 44 (PTX-0005) at page 17
- Trial Ex. 45 (PTX-0006) at page 6

Trade Secret 2.5

- Trial Ex. 9 (PTX-0149) at page 19
- Trial Ex. 44 (PTX-0005) at page 19

Trade Secret 2.6

- Trial Ex. 9 (PTX-0149) at page 24
- Trial Ex. 44 (PTX-0005) at page 24

Trade Secret 2.7

- Trial Ex. 9 (PTX-0149) at page 11
- Trial Ex. 44 (PTX-0005) at page 11
- Trial Ex. 45 (PTX-0006) at pages 12

Trade Secret 2.8

- Trial Ex. 10 (PTX-0720) at page 4

Trade Secret 2.9

- Trial Ex. 10 (PTX-0720) at page 8

Trade Secret 2.10

- Trial Ex. 10 (PTX-0720) at page 10

Trade Secret 2.11

- Trial Ex. 10 (PTX-0720) at page 15

Trade Secret 2.12

- Trial Ex. 10 (PTX-0720) at page 23

Trade Secret 2.13

- Trial Ex. 10 (PTX-0720) at page 24

Trade Secret 2.14

- Trial Ex. 10 (PTX-0720) at page 29

Trade Secret 2.15

- Trial Ex. 10 (PTX-0720) at page 36

Trade Secret 2.16

- Trial Ex. 10 (PTX-0720) at page 37

**Group 3: Qorvo's trimming method and procedures**

Trade Secret 3.1

- Trial Ex. 11 (PTX-1141) at page 16
- Trial Ex. 12 (PTX-0453) at page 2
- Trial Ex. 209 (PTX-0421) at page 2
- Trial Ex. 213 (PTX-0438) at page 11
- Trial Ex. 217 (PTX-0662) at pages 10
- Trial Ex. 220 (PTX-0721) at page 11

Trade Secret 3.2

- Trial Ex. 11 (PTX-1141) at page 17
- Trial Ex. 12 (PTX-0453) at page 3
- Trial Ex. 209 (PTX-0421) at page 3
- Trial Ex. 213 (PTX-0438) at pages 4 and 12
- Trial Ex. 217 (PTX-0662) at pages 8 and 11
- Trial Ex. 220 (PTX-0721) at pages 9 and 12

Trade Secret 3.3

- Trial Ex. 11 (PTX-1141) at page 18
- Trial Ex. 12 (PTX-0453) at page 4
- Trial Ex. 209 (PTX-0421) at page 4

**Group 4: Qorvo's evaluation board design rules and schematics**

Trade Secret 4.1

- Trial Ex. 13 (PTX-1142) at page 1

**Group 5: Qorvo's product development process and testing procedures**

Trade Secret 5.4

- Trial Ex. 33 (PTX-0111) at overview, specification, and production test tabs
- Trial Ex. 34 (PTX-0114) at overview and specification tabs
- Trial Ex. 76 (PTX-0112) at overview and specification tabs
- Trial Ex. 79 (PTX-0116) at overview and specification tabs
- Trial Ex. 80 (PTX-0117) at overview and specification tabs
- Trial Ex. 83 (PTX-0120) at overview and specification tabs

Trade Secret 5.5

- Trial Ex. 7 (PTX-1089) at pages 1-2
- Trial Ex. 33 (PTX-0111) at overview, specification, and production test tabs
- Trial Ex. 34 (PTX-0114) at overview and specification tabs
- Trial Ex. 35 (PTX-0088) at specification tab (with guard band file), test specification, and conditions tab
- Trial Ex. 61 (PTX-0089) at page 2
- Trial Ex. 76 (PTX-0112) at overview and specification tabs
- Trial Ex. 79 (PTX-0116) at overview and specification tabs
- Trial Ex. 80 (PTX-0117) at overview and specification tabs
- Trial Ex. 83 (PTX-0120) at overview and specification tabs

**Group 6: Qorvo's systems at processes, and procedures for testing reliability and mean-time-to-failure of parts**

Trade Secret 6.1

- Trial Ex. 14 (PTX-0099) at pages 6 and 24
- Trial Ex. 68 (PTX-0101) at pages 6 and 24
- Trial Ex. 70 (PTX-0103) at pages 6 and 24
- Trial Ex. 73 (PTX-0107) at pages 6 and 24
- Trial Ex. 110 (PTX-0105) at pages 6 and 24

Trade Secret 6.3

- Trial Ex. 14 (PTX-0099) at pages 15-17
- Trial Ex. 68 (PTX-0101) at pages 15-17
- Trial Ex. 70 (PTX-0103) at pages 15-17
- Trial Ex. 73 (PTX-0107) at pages 15-17
- Trial Ex. 110 (PTX-0105) at pages 15-17

Trade Secret 6.4

- Trial Ex. 14 (PTX-0099) at pages 15-17
- Trial Ex. 68 (PTX-0101) at pages 15-17
- Trial Ex. 70 (PTX-0103) at pages 15-17
- Trial Ex. 73 (PTX-0107) at pages 15-17
- Trial Ex. 110 (PTX-0105) at pages 15-17

Trade Secret 6.5

- Trial Ex. 14 (PTX-0099) at pages 15-17
- Trial Ex. 68 (PTX-0101) at pages 15-17
- Trial Ex. 70 (PTX-0103) at pages 15-17
- Trial Ex. 73 (PTX-0107) at pages 15-17
- Trial Ex. 110 (PTX-0105) at pages 15-17

Trade Secret 6.6

- Trial Ex. 14 (PTX-0099) at page 23
- Trial Ex. 68 (PTX-0101) at page 23
- Trial Ex. 70 (PTX-0103) at page 23
- Trial Ex. 73 (PTX-0107) at page 23
- Trial Ex. 110 (PTX-0105) at page 23

**Group 7: Qorvo's manufacturing and assembly procedures**

Trade Secret 7.2

- Trial Ex. 37 (PTX-0751) at pages 7 and 9

IT IS on this ____ day of _____, 2024 hereby ORDERED as follows:

## I. PERMANENT INJUNCTION ON USE OF QORVO TRADE SECRET INFORMATION

Akoustis, its officers, agents, servants, employees, distributors and resellers of any type, and all those persons in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise, are permanently enjoined from performing any of the following actions:

(1) possessing, accessing, reviewing, using, or disclosing Qorvo Trade Secret Information, in whole or in part, anywhere in the world;

(2) offering to sell, selling, or otherwise distributing anywhere in the world any product made using Qorvo Trade Secret Information;

(3) advertising, promoting, offering to sell, selling, or otherwise providing services anywhere in the world that use Qorvo Trade Secret Information.

## II.   REMOVAL AND QUARANTINE OF CONFIDENTIAL QORVO INFORMATION

Akoustis, its officers, agents, servants, employees, distributors and resellers of any type, and attorneys, and all those persons in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise, shall undertake the following steps to remove from their possession and quarantine any confidential Qorvo information (as set forth in Part II(3)), as follows:

(1) Akoustis will, at its own expense, engage an e-discovery vendor that is approved in advance in writing by Qorvo, to assist with the identification, collection, and removal of any Qorvo confidential information.

(2) Akoustis will inspect the following data sources in its possession:

   a. Any database, document management system, or other shared storage in use at Akoustis;

   b. The mailboxes contained in Akoustis' corporate email servers for all Akoustis employees and personal email accounts of Akoustis employees who have used his/her personal email accounts for business;

   c. Akoustis computers, laptops, hard drives, and other storage media (including USB drives, network-based storage drives) belonging to all Akoustis employees; and

   d. Paper files belonging to all Akoustis employees.

(3) Akoustis will remove from its possession and quarantine the following:

   a. Qorvo Trade Secret Information.

   b. All other documents that contain confidential Qorvo information (either indicated as Qorvo-confidential by the information itself or otherwise known to be Qorvo-confidential by Akoustis) obtained or received without Qorvo's authorization or in violation of any obligation to maintain the confidentiality or secrecy of that information.

      c.     All other information that is derived from Qorvo's Trade Secret Information and/or other documents that contain confidential Qorvo information.

(4) Akoustis shall complete the identification, collection, and removal of the materials identified in Part II(3) within sixty (60) days of the date of this Order. In the event Akoustis is unable to comply in that time frame and with good cause, Akoustis may make application to the Court for a modification of this Order, or for other relief.

## III. QORVO AUDIT RIGHTS

In order to monitor compliance with Parts I and II of this Permanent Injunction Order, Qorvo shall, for a period of five years from the issuance of this Order, have the right to conduct audits of Akoustis, its officers, agents, servants, employees, distributors and resellers of any type, and attorneys, and all those persons in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise, as follows:

(1) Qorvo may audit, through audits conducted by an independent third party chosen by Qorvo, and in compliance the Protective Order in this case, the following data sources in Akoustis' possession:

    a.     Any database, document management system, or other shared storage in use at Akoustis;

    b.     The mailboxes contained in Akoustis' corporate email servers for all Akoustis employees and personal email accounts of Akoustis employees who have used his/her personal email accounts for business;

    c.     Akoustis computers, laptops, hard drives, and other storage media (including USB drives, network-based storage drives) belonging to all Akoustis employees; and

    d.     Paper files belonging to all Akoustis employees.

(2) Upon request, the auditor shall be given access to any other data sources reasonably necessary to determine whether Akoustis is in compliance with Parts I and II of this Permanent Injunction, including data sources sufficient to show how Akoustis is performing trimming and reliability testing with respect to BAW filters.

(3) The findings of such audits will be available only to Qorvo's outside attorneys, the independent third-party auditor, the Court, and Akoustis and its attorneys. Notwithstanding the foregoing, Qorvo's outside attorneys may be permitted to provide a summary of the finding of such audits to Qorvo's in-house attorneys.

(4) If the auditor finds that Akoustis may not be in compliance with the terms of this Order, the auditor shall provide written notice and a copy of his findings to Akoustis and one of Qorvo's in-house attorneys to permit Qorvo to understand the reason(s) and extent of Akoustis's noncompliance.

(5) The audits may be conducted a maximum of twice per calendar year, during the course of normal business hours, and upon electronic or written notice of at least five business days to Akoustis. The parties will use good faith efforts to conduct the audit in a manner least disruptive to Akoustis' normal business activities. The cost of any audit shall be born equally by Akoustis (50%) and Qorvo (50%). However, in the event an audit shows a violation of this Permanent Injunction Order, the cost of the audit shall be borne exclusively by Akoustis.

### IV. PERMANENT INJUNCTION ON INFRINGEMENT OF THE '018 AND '755 PATENTS

Akoustis and any of its officers, agents, servants, directors, employees, attorneys, subsidiaries, successors in interest, and all those persons in active concert or participation with such persons who receive actual notice of this Order by personal service or otherwise, are permanently enjoined and restrained from making, using, selling, or offering for sale within the United States, or importing into the United States:

(1) the '018 Patent Enjoined Products or any products not more than colorably different from the '018 Patent Enjoined Products from the Effective Date (which is fourteen (14) days from the date of this signed Permanent Injunction) through the expiration of the '018 Patent;

(2) the '755 Patent Enjoined Products or any products not more than colorably different from the '755 Patent Enjoined Products from the Effective Date through the expiration of the '755 Patent.

To ensure compliance with the above provisions of Part IV of this Permanent Injunction Order, should Akoustis assert that the design of one or more of the '018 Patent Enjoined Products or '755 Patent Enjoined Products has been changed such that the product is no longer infringing, Akoustis shall, within fourteen (14) days of the entry of this Permanent Injunction and for each and every product it alleges to now be non-infringing:

(1) certify that the product is non-infringing;

9

(2) provide documentary evidence showing that the product is non-infringing (*e.g.*, stack information evidencing the non-infringement); and

(3) provide cross-sectional electron microscopy analyses demonstrating the non-infringement of the product.

Akoustis shall repeat this compliance process on a quarterly basis through the lifetime of this Permanent Injunction for any '018 Patent Enjoined Product or '755 Patent Enjoined Product that remains on sale and is alleged by Akoustis to be non-infringing.

## V.    NOTICE AND REPORTING

Akoustis shall provide a copy of this Order Granting Permanent Injunction to each customer, vendor, sales representatives (including third party resellers and distributors), employees, partners, and all other persons in active concert or participation with them as of the Effective Date.

Within thirty (30) days of this Order, Akoustis shall file with the Court, and serve on Qorvo, a report in writing under oath setting forth the manner and form in which Akoustis has complied with Part IV of this Permanent Injunction Order.

## VI.   RETENTION OF JURISDICTION

The Court retains jurisdiction over Akoustis and this action for the purpose of enforcing this Permanent Injunction Order.

_____
THE HONORABLE JON P. McCALLA
UNITED STATES DISTRICT JUDGE