# EXHIBIT C

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 2 of 17 PageID #: 29168

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

**Restatement (Third) of Unfair Competition § 45 (1995)**

Restatement of the Law - Unfair Competition | October 2023 Update

Restatement (Third) of Unfair Competition

Chapter 4. Appropriation of Trade Values

Topic 2. Trade Secrets

# § 45 Monetary Relief: Appropriation of Trade Secrets

Comment:

Reporters' Note

Case Citations - by Jurisdiction

> (1) One who is liable to another for an appropriation of the other's trade secret under the rule stated in § 40 is liable for the pecuniary loss to the other caused by the appropriation or for the actor's own pecuniary gain resulting from the appropriation, whichever is greater, unless such relief is inappropriate under the rule stated in Subsection (2).
> (2) Whether an award of monetary relief is appropriate and the appropriate method of measuring such relief depend upon a comparative appraisal of all the factors of the case, including the following primary factors:
>> (a) the degree of certainty with which the plaintiff has established the fact and extent of the pecuniary loss or the actor's pecuniary gain resulting from the appropriation;
>> (b) the nature and extent of the appropriation;
>> (c) the relative adequacy to the plaintiff of other remedies;
>> (d) the intent and knowledge of the actor and the nature and extent of any good faith reliance by the actor;
>> (e) any unreasonable delay by the plaintiff in bringing suit or otherwise asserting its rights; and
>> (f) any related misconduct on the part of the plaintiff.

**Comment:**

*a. Scope.* This Section states the rules governing the recovery of monetary relief in actions for the appropriation of a trade secret. Monetary relief may consist of compensatory damages measured by the loss to the plaintiff or restitutionary relief measured by the unjust gain to the defendant. This Section states the rules applicable to both measures of monetary relief.

The general rules relating to the recovery of compensatory damages in tort actions apply in actions for the appropriation of trade secrets. This Section addresses only issues that have particular significance to the recovery of damages in trade secret actions. The following sections of the Restatement, Second, of Torts are also relevant: §§ 902 and 903 defining "damages" and "compensatory damages"; § 907 stating the rule for recovery of nominal damages; §§ 908 and 909 stating the rules for recovery of punitive damages; § 912 stating the requirement of "certainty"; and §§ 435A and 435B stating rules relating to intended and unintended consequences of tortious conduct.

The general rules relating to the restitution of benefits tortiously acquired are also applicable in actions for the appropriation of trade secrets. See Restatement of Restitution § 136 (1937).

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 3 of 17 PageID #: 29169

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

*b. Appropriateness of monetary relief.* Loss to the plaintiff or gain to the defendant can result from either unauthorized use or unauthorized disclosure of a trade secret. The courts have recognized the need for flexibility in formulating monetary remedies in order to achieve both compensatory and restitutionary objectives.

The plaintiff is generally entitled to recover any proven pecuniary loss attributable to the appropriation of the trade secret. The plaintiff bears the burden of proving the fact and cause of any loss for which recovery is sought. However, the plaintiff is required to prove the amount of such loss with only as much certainty as is reasonable under the circumstances. See Restatement, Second, Torts § 912. If otherwise appropriate, the plaintiff may also recover any gain acquired by the defendant as a result of the appropriation, subject to the limitation on double recovery. See Comment *c*.

The knowledge and intent of the defendant are relevant in determining appropriate relief. A defendant is not subject to liability under the rules stated in § 40 until the defendant has actual or constructive knowledge that the use or disclosure of the trade secret is wrongful. See § 40, Comment *d*. If the defendant has invested in the trade secret prior to acquiring such knowledge, it may be inequitable to deprive the defendant of all gains attributable to subsequent use of the trade secret. The award of a reasonable royalty for use made after notice and an injunction conditioning further use upon payment of a reasonable royalty may be an appropriate remedy. See Comment *g*.

The conduct of the plaintiff may also affect the appropriateness of monetary relief. The traditional equitable doctrines of laches, estoppel, and unclean hands are applicable to the award of monetary as well as injunctive relief in trade secret actions. Cf. §§ 31 and 32.

*c. Relationship of legal and equitable remedies.* The rules governing the award of monetary relief for the appropriation of a trade secret derive from both legal and equitable principles. Cf. § 36, Comment *b*. The traditional measure of damages awards relief measured by the loss to the plaintiff resulting from the appropriation. The nature of a competitive marketplace, however, often makes it difficult for a plaintiff to prove lost sales or other losses attributable to the appropriation of a trade secret. Similarly, the value of a trade secret that has been destroyed through public disclosure is often speculative. The remedy of restitution is thus an important form of monetary relief in trade secret cases. The restitution remedy awards to the plaintiff the enrichment unjustly acquired by the defendant as a result of the appropriation of the plaintiff's trade secret. In some situations the defendant's enrichment is represented by profits from sales made possible by the appropriation; in others, by savings achieved through the use of the trade secret in the defendant's business. In some cases the measure of the plaintiff's compensatory damages and the measure of the defendant's unjust enrichment may converge. For example, relief based on the defendant's profits on sales can measure either the gain derived by the defendant or the loss to the plaintiff from diverted business. Similarly, relief based on a reasonable royalty for the defendant's use may measure either the defendant's savings or the plaintiff's lost revenue. Thus, many cases do not maintain a sharp distinction between compensatory and restitutionary remedies.

Although a few cases have required the plaintiff to elect between compensatory damages and restitution, others permit the plaintiff to pursue both measures provided that there is no double recovery. The better rule permits the plaintiff to prove either or both measures since in many circumstances the loss to the plaintiff and the gain to the defendant do not fully overlap. Both compensatory and restitutionary objectives are ordinarily satisfied, however, if the plaintiff is permitted to recover only the greater of the two measures. The restitutionary remedy serves to deprive the defendant of unjust gains, but it also has the effect of compensating the plaintiff to the extent of the award for any losses resulting from the appropriation. Similarly, an award of the plaintiff's proven losses also has the effect of reducing the defendant's unjust enrichment by the amount of the award. An award of the greater of the two remedies thus ordinarily serves the objectives of both forms of relief and best prevents double recovery. See also § 36, Comment *c*.

> **Illustration:**
>> 1. *A* and *B* are competing manufacturers of radar antennas. *C*, a former employee of *A*, discloses *A*'s trade secrets to *B* in breach of a duty of confidence owed to *A*. *B*, with notice of *C*'s breach of confidence, relies on the trade secrets to underbid *A* on a government contract. The use of *A*'s trade secrets saves *B* $175,000 in manufacturing costs and causes *A* $231,000 in lost profits on the government contract. In an action against *B* for the appropriation of *A*'s trade secrets, an award of both *B*'s savings and *A*'s lost profits would result in double recovery. In addition to appropriate injunctive relief, *A* may recover $231,000, which is the greater of the loss to *A* and the gain to *B* that is attributable to the appropriation.

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 4 of 17 PageID #: 29170

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

*d. Measures of monetary relief.* Courts have recognized at least four methods of measuring monetary relief in trade secret cases. The first method measures the loss to the plaintiff caused by the appropriation. The plaintiff's loss usually consists of profits lost on sales diverted from the plaintiff by the appropriation, loss of royalties or other income that would have been earned by the plaintiff but for the appropriation, or the value of the trade secret if it has been destroyed through a public disclosure by the defendant. The second measure awards to the plaintiff the defendant's profits earned on sales that are attributable to the trade secret. A third method, the "standard of comparison" measure, is derived from patent infringement cases and measures the savings to the defendant that are attributable to the use of the trade secret. This method compares the costs to the defendant of achieving the same result with and without the improper use of the trade secret and awards the difference to the plaintiff. The fourth method awards to the plaintiff a reasonable royalty for the defendant's use of the trade secret. A reasonable royalty is the price that would be agreed upon by a willing buyer and a willing seller for the use made of the trade secret by the defendant. The method is not limited to a percentage of the defendant's sales or profits and may instead rely on any appropriate measure of the fair market value of the defendant's use. Selection of the appropriate method of measuring monetary relief depends on the facts and circumstances of the particular case. See Comments *e-g*.

*e. Relief measured by plaintiff's loss.* A frequent element of loss resulting from the appropriation of a trade secret is the lost profit that the plaintiff would have earned in the absence of the use by the defendant. The plaintiff may prove lost profits by identifying specific customers diverted to the defendant. The plaintiff may also prove lost profits through proof of a general decline in sales or a disruption of business growth following the commencement of use by the defendant, although the presence of other market factors that may affect the plaintiff's sales bears on the sufficiency of the plaintiff's proof. If the evidence justifies the conclusion that the sales made by the defendant would have instead been made by the plaintiff in the absence of the appropriation, the plaintiff may establish its lost profits by applying its own profit margin to the defendant's sales. Upon sufficient proof, the plaintiff may also recover lost profits on sales of spare parts, service, supplies, or other items normally purchased from the original seller. In some cases it may be appropriate to measure the plaintiff's loss by a reasonable royalty on the sales made by the defendant. See Comment *g*.

A plaintiff may also recover any other proven pecuniary loss attributable to the appropriation. Courts have permitted recovery of the costs of remedial efforts such as promotional expenses undertaken to recapture customers lost as a result of the defendant's appropriation. The plaintiff is also entitled to recover losses associated with sales of its own goods at reduced prices resulting from the wrongful competition of the defendant.

Damages resulting from the unauthorized disclosure of a trade secret are frequently more difficult to measure than damages caused by unauthorized use. For example, in some cases a defendant's unauthorized disclosure to one competitor of the plaintiff may cause the trade secret to become known to other competitors or to enter the public domain, thus destroying the value of the secret. The appropriate measure of relief may then be the fair market value of the trade secret at the time of the appropriation. This measure can depend upon a variety of factors, including the likelihood that the trade secret would have become known in the absence of the defendant's appropriation. See Comment *h*. If the destroyed trade secret is a central asset of the plaintiff's business, the plaintiff can in some cases measure damages by the reduction in the capital value of the business caused by the appropriation.

*f. Relief measured by defendant's gain.* The traditional form of restitutionary relief in an action for the appropriation of a trade secret is an accounting of the defendant's profits on sales attributable to the use of the trade secret. The general rules governing accountings of profits are applicable in trade secret actions. The plaintiff is entitled to recover the defendant's net profits. The plaintiff has the burden of establishing the defendant's sales; the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits. The rules governing the deductibility of expenses and the allocation of overhead are analogous to those stated in § 37, Comments *g* and *h*, on accountings in actions for trademark infringement. The defendant must account not only for profits earned on sales of products incorporating the trade secret, but also on other sales dependent on the appropriation. For example, profits on the sale of consumable supplies used in a machine embodying the trade secret or profits on spare parts and service may be included in the accounting to the extent that such profits were made possible by the defendant's sale of the original product.

If the trade secret accounts for only a portion of the profits earned on the defendant's sales, such as when the trade secret relates to a single component of a product marketable without the secret, an award to the plaintiff of defendant's entire profit

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 5 of 17 PageID #: 29171

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

may be unjust. The royalty that the plaintiff and defendant would have agreed to for the use of the trade secret made by the defendant may be one measure of the approximate portion of the defendant's profits attributable to the use. See Comment *g*.

If the benefit derived by the defendant consists primarily of cost savings, such as when the trade secret is a more efficient method of production, the "standard of comparison" measure that determines relief based on the savings achieved through the use of the trade secret may be the most appropriate measure of relief. The standard of comparison measure determines the defendant's gain by comparing the defendant's actual costs with the costs that the defendant would have incurred to achieve the same result without the use of the appropriated trade secret. When it would have been possible for the defendant to acquire the trade secret by proper means such as reverse engineering or independent development, the appropriate comparison may be between the costs of such acquisition and the cost of using the appropriated information. In determining the costs of proper acquisition, the court may consider the actual development costs of the plaintiff and, if available, the development or reverse engineering costs of third persons. When acquisition of the trade secret by proper means is unlikely, the appropriate comparison may be between the costs of using the trade secret and the costs of alternative methods available to the defendant to achieve the same result.

Under the principles discussed in § 44, Comment *f*, it is often appropriate to enjoin the defendant's use of a trade secret only for the period of time that would have been required for the defendant to acquire the information by proper means. In such cases, however, the defendant remains liable for any development or reverse engineering costs saved as a result of the appropriation that are not otherwise accounted for through an award of the defendant's profits or other monetary relief.

> **Illustrations:**
>
> 2. *A* and *B* are competing manufacturers of poultry vaccines. *A* spends $400,000 to develop a secret process for the production of a new vaccine. *B* appropriates the trade secret and begins to produce the vaccine in competition with *A*. *B* earns $50,000 in net profits on sales of the vaccine. In the absence of evidence indicating loss to *A* in excess of $50,000, *A* may recover *B*'s $50,000 profit in addition to the award of an injunction prohibiting further use of the process by *B*.
>
> 3. The facts being otherwise as stated in Illustration 2, *B* establishes that other competitors have already succeeded in duplicating *A*'s secret process by analyzing samples of *A*'s vaccine and that *B* would have been similarly successful. The cost of such an analysis is $150,000. The court may properly conclude that an injunction against *B*'s use of the process would be inappropriate and that an award to *A* of $150,000 representing *B*'s savings in analysis costs and $50,000 representing the net profits earned by *B* prior to the time it would have been able to market the vaccine in the absence of the appropriation is an appropriate remedy.
>
> 4. *A*, a shipper, invents several techniques and devices to improve efficiency in the unloading of ships. *B*, a former employee of *A*, discloses the trade secrets to *C*, a competing shipper, in breach of a duty of confidence. *C*, with notice of *B*'s breach of confidence, adopts the techniques and devices in its business. In addition to appropriate injunctive relief, *A* may recover from *C* any savings that have resulted from *C*'s use of *A*'s trade secrets.

*g*. *Reasonable royalty*. A reasonable royalty measure of relief awards to the plaintiff the price that would be set by a willing buyer and a willing seller for the use of the trade secret made by the defendant. However, the royalty agreed to in an actual market transaction reflects a price at which both parties gain from the transaction. To the extent that a court-awarded reasonable royalty accurately reflects the marketplace, the royalty may compensate the plaintiff for loss but it does not necessarily deprive the defendant of the full gain attributable to the appropriation. Since the imposition of a reasonable royalty requires the defendant to pay only the amount it would have paid had it fairly bargained for use of the plaintiff's secret, it may not adequately discourage the appropriation of trade secrets.

There are at least three situations in which the reasonable royalty measure of relief has been applied. First, when the defendant has made a substantial good faith investment in the trade secret prior to receiving notice of the plaintiff's claim, it may be inequitable to require the relinquishment of all profits earned by the defendant after notice. An award of damages measured by a reasonable royalty for use subsequent to the notice and an injunction conditioning future use on the payment of a reasonable royalty gives the plaintiff the market value of the trade secret but protects the defendant's good faith reliance. Second, when the plaintiff's loss, although difficult to measure, is apparently greater than any gain acquired by the defendant,

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 6 of 17 PageID #: 29172

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

a reasonable royalty may be the most appropriate measure of relief. For example, if the defendant's inefficiency results in little or no profit from the exploitation of the trade secret and the loss to the plaintiff cannot otherwise be established, a reasonable royalty may be the best available approximation of the plaintiff's loss. Third, in cases in which the defendant's gain from the trade secret is difficult to measure but apparently exceeds the plaintiff's loss, a reasonable royalty may be the best means of approximating the defendant's unjust enrichment.

The purpose for which the reasonable royalty measure is invoked and the equities of the particular case may properly influence the calculation of the appropriate royalty. To insure adequate deterrence and to prevent unjust enrichment, a court may resolve issues relating to the amount of the royalty against a defendant who has willfully appropriated the trade secret.

> **Illustration:**
>
> > 5. The facts being otherwise as stated in Illustration 4, *C* has no notice of *B*'s breach of confidence until after *C* has invested in equipment designed to implement the trade secrets in its business. A court may properly conclude that the appropriate remedy is a monetary award measured by a reasonable royalty for use of the trade secret by *C* subsequent to the notice of *B*'s breach of confidence and an injunction conditioning future use by *C* on the payment of a reasonable royalty.

*h. Limitation on monetary relief.* Monetary remedies, whether measured by the loss to the plaintiff or the gain to the defendant, are appropriate only for the period of time that the information would have remained unavailable to the defendant in the absence of the appropriation. This period may be measured by the time it would have taken the defendant to obtain the information by proper means such as reverse engineering or independent development. Similarly, the issuance of a patent or other public disclosure of the information by the plaintiff or a third person terminates the secrecy necessary to the protection of the trade secret. Monetary relief based on the defendant's use of the information after the loss of secrecy is therefore appropriate only to the extent necessary to remedy a head start or other unfair advantage attributable to the defendant's prior access to the information. The limitations on the appropriate duration of injunctive relief as stated in § 44, Comment *f*, are thus also generally applicable to the calculation of monetary relief.

The rules governing the appropriate period of liability for monetary relief in actions in tort for the appropriation of a trade secret are not necessarily applicable in actions in contract for breach of agreements relating to the use or disclosure of trade secrets. Remedies for breach of contracts relating to trade secrets are ordinarily measured by the terms of the obligations imposed under the agreement. Licensing agreements, for example, can ordinarily provide for royalty payments covering a period that ends before or after any public disclosure of the trade secret. See § 41, Comment *d*. Similarly, although a nondisclosure agreement that is interpreted to extend beyond a public disclosure of the trade secret may be unenforceable as an unreasonable restraint of trade, *id.*, obligations under a nondisclosure agreement may terminate according to its terms prior to any public disclosure. The use of a trade secret in breach of an enforceable agreement, however, can give rise to both a claim for breach of contract and a claim for appropriation in tort under the rules stated in § 40. Durational limits contained in the agreement may influence but do not necessarily determine the appropriate duration of monetary relief awarded in a tort action pursuant to the rules stated here.

*i. Punitive damages.* A successful plaintiff in an action at common law for the appropriation of a trade secret may recover punitive damages under the rules generally applicable in the jurisdiction to the award of punitive damages in tort actions. See Restatement, Second, Torts § 908. The purpose of punitive damages is to deter and punish egregious conduct, and normally proof of malice or willful misconduct is required. Section 3(b) of the Uniform Trade Secrets Act provides for an award of punitive damages not exceeding twice the amount of compensatory and restitutionary damages in cases of "willful and malicious misappropriation."

*j. Attorney's fees.* Most states do not provide for an award of attorney's fees in actions at common law. In actions under the Uniform Trade Secrets Act, reasonable attorney's fees may be awarded if the appropriation is "willful and malicious," if the claim of appropriation is made in bad faith, or if a motion to terminate an injunction is made or resisted in bad faith. *Id.* § 4.

**Reporters' Note**

*Comment a.* Monetary relief for the appropriation of a trade secret was discussed only briefly in the former Restatement of

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 7 of 17 PageID #: 29173

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

this topic. See Restatement of Torts § 757, Comment *e* (1938). See generally Jager, Trade Secrets Law § 7.03; Milgrim on Trade Secrets § 7.08[3]; Johnson, Remedies in Trade Secret Litigation, 72 Nw.U.L.Rev. 1004 (1978); Prandl, Damages for Misappropriation of Trade Secret, 22 Tort Ins.L.J. 447 (1987). See also § 3 of the Uniform Trade Secrets Act.

*Comment b.* The cases reflect considerable flexibility in the calculation of appropriate monetary relief in trade secret actions. See, e.g., University Computing Co. v. Lykes—Youngstown Corp., 504 F.2d 518, 538 (5th Cir.1974) ("[E]very case requires a flexible and imaginative approach to the problem of damages. * * * [C]ases reveal that most courts adjust the measure of damages to accord with the commercial setting of the injury, the likely future consequences of the misappropriation, and the nature and extent of the use the defendant put the trade secret to after misappropriation.").

For cases recognizing both compensation and unjust enrichment as objectives of monetary relief, see, e.g., Telex Corp. v. Int'l Business Machines Corp., 510 F.2d 894 (10th Cir.), cert. dismissed 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975) (recovery of elements representing plaintiff's loss and defendant's gain); Carter Products, Inc. v. Colgate-Palmolive Co., 214 F.Supp. 383 (D.Md.1963); Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 385 N.E.2d 1349 (1979). A few cases suggest that remedies in trade secret cases should foster commercial morality. See, e.g., Adolph Gottscho, Inc. v. American Marking Corp., 18 N.J. 467, 114 A.2d 438, cert. denied 350 U.S. 834, 76 S.Ct. 69, 100 L.Ed. 744 (1955) (injunction granted despite public disclosure); Kilbarr Corp. v. Business Systems Inc., 679 F.Supp. 422 (D.N.J.1988), affirmed 869 F.2d 589 (3d Cir.1989) (refusing to limit an accounting of profits to the period of the defendant's head start). However, full compensatory and restitutionary relief is ordinarily sufficient to accomplish such an objective.

The plaintiff bears the burden of proving any loss for which relief is sought, but the amount of loss must be proved only with such certainty as is reasonable under the circumstances. See Electro-Miniatures Corp. v. Wendon Co., 771 F.2d 23 (2d Cir.1985); Tri-Tron Int'l v. Velto, 525 F.2d 432 (9th Cir.1975) (the rule precluding an award of speculative profits goes to the fact and cause of the lost profits rather than to the amount); DeVries v. Starr, 393 F.2d 9 (10th Cir.1968); Julius Hyman & Co. v. Velsicol Corp., 123 Colo. 563, 233 P.2d 977, cert. denied 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 654 (1951). But cf. Elcor Chemical Corp. v. Agri-Sul, Inc., 494 S.W.2d 204 (Tex.Civ.App.1973) (insufficient evidence to support an award of damages).

*Comment c.* Monetary remedies may be awarded in conjunction with injunctive relief. See, e.g., Tri-Tron Int'l v. Velto, 525 F.2d 432 (9th Cir.1975) (damages and injunction); USM Corp. v. Marson Fastener Corp., 392 Mass. 334, 467 N.E.2d 1271 (1984) (accounting and injunction); Cherne Industrial, Inc. v. Grounds & Associates, Inc., 278 N.W.2d 81 (Minn.1979) (same). In some cases an injunction may eliminate the need for monetary relief. See, e.g., Winston Research Corp. v. Minnesota Mining and Mfg. Co., 350 F.2d 134 (9th Cir.1965) (defendant was enjoined before any sales of the appropriated product). In other cases, monetary relief may be the more appropriate remedy. See, e.g., Schreyer v. Casco Products Corp., 190 F.2d 921 (2d Cir.1951), cert. denied 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952) (accounting of profits from defendant's head start in using information later disclosed in a patent was an adequate remedy); Tolchester Lines, Inc. v. Dowd, 253 F.Supp. 643 (S.D.N.Y.1966) (monetary relief may be sufficient when an injunction would have the effect of denying the defendant a livelihood).

Section 136 of the Restatement of Restitution (1937) recognizes the importance of a remedy based on unjust enrichment in light of the difficulty of proving damages in trade secret actions. The merger of law and equity allows plaintiffs in most circumstances to pursue both legal and equitable remedies. Section 3(a) of the Uniform Trade Secrets Act authorizes the recovery of both "actual loss" and any "unjust enrichment" not taken into account in calculating actual loss.

Numerous cases hold that monetary relief in trade secret actions is limited to the greater of the plaintiff's loss or the defendant's gain. Clark v. Bunker, 453 F.2d 1006 (9th Cir.1972) (plaintiff is entitled to lost profits but not less than the defendant's gain from the appropriation); Sperry Rand Corp. v. A-T-O, Inc., 447 F.2d 1387 (4th Cir.1971), cert. denied 405 U.S. 1017, 92 S.Ct. 1292, 31 L.Ed.2d 479 (1972) (awarding plaintiff's lost profits in an amount larger than the defendant's savings); Tolchester Lines, *supra* (plaintiff is entitled to defendant's profits and any damages exceeding that amount); Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 381 Mass. 1, 407 N.E.2d 319 (1980) (the appropriate measure is the greater of the plaintiff's lost profits or the defendant's gain); Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 385 N.E.2d 1349 (1979) (plaintiff is entitled to lost profits, but not less than the monetary gain to the defendant).

Illustration 1 is derived from *Sperry Rand Corp., supra.*

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 8 of 17 PageID #: 29174

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

*Comment d.* For discussions of the various measures of monetary relief in trade secret cases, see, e.g., Telex Corp. v. Int'l Business Machines Corp., 510 F.2d 894 (10th Cir.), cert. dismissed 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975); University Computing Co. v. Lykes—Youngstown Corp., 504 F.2d 518 (5th Cir.1974); Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 385 N.E.2d 1349 (1979). See generally Prandl, Damages for Misappropriation of Trade Secret, 22 Tort Ins.L.J. 447 (1987); Annot., Proper Measure and Elements of Damages for Misappropriation of Trade Secret, 11 A.L.R.4th 12 (1982).

*Comment e.* The actual loss to the plaintiff caused by the defendant's appropriation is an appropriate measure of monetary relief. See, e.g., Tri-Tron Int'l v. Velto, 525 F.2d 432 (9th Cir.1975); Sperry Rand Corp. v. A-T-O, Inc., 447 F.2d 1387 (4th Cir.1971), cert. denied 405 U.S. 1017, 92 S.Ct. 1292, 31 L.Ed.2d 479 (1972); Kamin v. Kuhnau, 232 Or. 139, 374 P.2d 912 (1962). See also § 3 of the Uniform Trade Secrets Act.

Lost profits on sales that would have been made by the plaintiff but for the appropriation were awarded in, e.g., *Sperry Rand Corp., supra* (loss of specific contract); Clark v. Bunker, 453 F.2d 1006 (9th Cir.1972) (adopting the presumption that the plaintiff would have made all the sales in the area absent the defendant's appropriation); Telex Corp. v. Int'l Business Machines Corp., 510 F.2d 894 (10th Cir.), cert. dismissed 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975) (lost rental income). Evidence of a decline in plaintiff's sales subsequent to the appropriation is relevant in establishing lost profits. DeVries v. Starr, 393 F.2d 9 (10th Cir.1968). Plaintiff's lost profits are sometimes measured by applying the plaintiff's profit margin to the sales made by the defendant. See Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 385 N.E.2d 1349 (1979) (approving the principle although the evidence did not support its application); DeVries, *supra*; Tri-Tron Int'l, *supra*. The loss of future profits likely to result from the appropriation may also be compensable. See Sperry Rand Corp., *supra* (future sale of spare parts); Financial Programs, Inc. v. Falcon Financial Services, Inc., 371 F.Supp. 770 (D.Or.1974) (future profits on diverted accounts calculated on the basis of past experience); Dozor Agency, Inc. v. Rosenberg, 218 A.2d 583 (Pa.1966) (loss of future premiums calculated on the basis of past experience). The plaintiff was awarded damages reflecting the reduced price received for its own goods as a result of competition attributable to the defendant's appropriation in Julius Hyman & Co. v. Velsicol Corp., 123 Colo. 563, 233 P.2d 977, cert. denied 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 654 (1951).

A royalty adopted by the parties in an "agreement in principle" was applied as the appropriate measure of damages in Vitro Corp. v. Hall Chemical Co., 292 F.2d 678 (6th Cir.1961). See also Kamin, *supra*. A reasonable royalty reflecting the likely loss to the plaintiff was awarded in Carter Products, Inc. v. Colgate-Palmolive Co., 214 F.Supp. 383 (D.Md.1963). See also Goldberg v. Medtronic, Inc., 686 F.2d 1219 (7th Cir.1982) (10% royalty on defendant's sales awarded when it was unlikely that the plaintiff could have marketed the trade secret on its own).

In Precision Plating & Metal Finishing Inc. v. Martin-Marietta Corp., 435 F.2d 1262 (5th Cir.1970), cert. denied 404 U.S. 1002, 92 S.Ct. 571, 30 L.Ed.2d 556 (1971), the value of the trade secret was destroyed by the defendant's disclosure. The court affirmed an award of damages based on the "fair market value" of the trade secret. See also Smith v. Dravo Corp., 208 F.2d 388 (7th Cir.1953) (plaintiffs recovered capital investment losses caused by the appropriation of their trade secret); Registered Physical Therapists, Inc. v. Jepson, 584 P.2d 857 (Utah 1978) (awarding damages measured by the value of the plaintiff's business when the appropriation required the plaintiff to terminate operation).

*Comment f.* An accounting of the defendant's profits from unauthorized use of the plaintiff's trade secret is a common remedy. See, e.g., Clark v. Bunker, 453 F.2d 1006 (9th Cir.1972); Schreyer v. Casco Products Corp., 190 F.2d 921 (2d Cir.1951), cert. denied 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952); Carter Products, Inc. v. Colgate-Palmolive Co., 214 F.Supp. 383 (D.Md.1963); Julius Hyman & Co. v. Velsicol Corp., 123 Colo. 563, 233 P.2d 977, cert. denied 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 654 (1951). Section 3 of the Uniform Trade Secrets Act provides that the plaintiff may recover "the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." See also Restatement of Restitution § 136 (an accounting of profits in trade secret cases is the "usual method of seeking restitution"); Restatement, Second, Agency § 404, Comment *b* (an agent who uses assets, including trade secrets, belonging to the principal is subject to liability for "the value of the use," including profits). See also *id.* § 407, Comment *a* (agent is liable for the amount received from a sale of the principal's trade secret).

The plaintiff is entitled to the defendant's net profits from sales of goods incorporating the trade secret. E.g., Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 385 N.E.2d 1349 (1979). The defendant may also be held accountable for sales of

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 9 of 17 PageID #: 29175

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

other products that are dependent upon sales of the appropriated product. Adolph Gottscho, Inc. v. American Marking Corp., 26 N.J. 229, 139 A.2d 281 (1958) (defendant's profits on ink and solvents were included in an accounting of profits from the appropriation of a trade secret for the design of a marking machine). The plaintiff bears the burden of establishing sales; the defendant has the burden of establishing deductible expenses and any sales not attributable to the use of the trade secret. E.g., USM Corp. v. Marson Fastener Corp., 392 Mass. 334, 467 N.E.2d 1271 (1984); Julius Hyman & Co, *supra*.

Courts are divided on the deductibility by the defendant of bad debts arising from sales of products incorporating the trade secret. Compare Jet Spray Cooler, *supra* (treated as a deductible manufacturing expense) with Julius Hyman & Co., *supra* (the defendant should assume the risk of credit extensions). On the deductibility of income taxes paid by the defendant on the profits for which it is accountable, see § 37, Comment *g*. Cf. USM Corp., *supra* (dictum suggesting that a deduction for income taxes is generally proper, but permitting a claim by the plaintiff to any tax benefits accruing to the defendant as a result of the defendant's payment of the awarded profits); Julius Hyman & Co., *supra* (deductibility of income taxes conditioned on payment to the plaintiff of any tax benefits to the defendant arising from payment of the judgment). On the deductibility of salaries and consulting fees paid to the individual defendants, compare Jet Spray Cooler, *supra* (salaries deductible if reasonable) with Julius Hyman & Co., *supra* (denying the deduction).

In allocating overhead among products derived from the appropriation and other products marketed by the defendant, the courts generally apply an incremental cost allocation that allows deductions only for additional expenses made necessary by the manufacture or sale of the products subject to the accounting. USM Corp., *supra*; Carboline Co. v. Jarboe, 454 S.W.2d 540 (Mo.1970). The defendant may set off losses from prior accounting periods against subsequent profits only if the profits are dependent on expenses incurred in the prior period, such as advertising costs that result in profits in a succeeding year. See Carter Products, *supra*; Adolph Gottscho, Inc., *supra*.

The leading case applying the "standard of comparison" measure is Int'l Industries, Inc. v. Warren Petroleum Corp., 248 F.2d 696 (3d Cir.1957), cert. dismissed 355 U.S. 943, 78 S.Ct. 529, 2 L.Ed.2d 523 (1958) (plaintiff was awarded the defendant's savings measured by the difference in cost between rail transportation and transportation by boat that was made possible by the use of the trade secret). See, e.g., Matarese v. Moore-McCormack Lines, Inc., 158 F.2d 631 (2d Cir.1946) (awarding the defendant's savings from implementing the plaintiff's ideas relating to loading operations less the cost of implementation). The standard of comparison method has also been invoked to support recovery of development and reverse engineering costs saved by the defendant as a result of the appropriation. See, e.g., Salsbury Laboratories, Inc. v. Merieux Laboratories, Inc., 908 F.2d 706 (11th Cir.1990); Telex Corp. v. Int'l Business Machines, Corp., 510 F.2d 894 (10th Cir.), cert. dismissed 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975) (awarding savings in development costs although the defendant did not produce a marketable product); Servo Corp. v. General Electric Co., 393 F.2d 551 (4th Cir.1968); Analogic Corp. v. Data Translation, Inc., 371 Mass. 643, 358 N.E.2d 804 (1976) (suggesting that the dissolution of an injunction after the period necessary for reverse engineering may be conditioned on payment to the plaintiff of costs saved by the defendant).

Illustrations 2 and 3 are suggested by the facts in *Salsbury Laboratories, supra*. Illustration 4 is suggested by the facts in *Matarese, supra*.

*Comment g*. A reasonable royalty measure of damages is expressly authorized in § 3(a) of the Uniform Trade Secrets Act. A reasonable royalty has been described as the royalty that would have been agreed to by a willing buyer and a willing seller. See, e.g., University Computing Co. v. Lykes—Youngstown Corp., 504 F.2d 518 (5th Cir.1974); Forest Laboratories, Inc. v. Pillsbury Co., 452 F.2d 621 (7th Cir.1971). The fact that payment of a reasonable royalty does not deprive the defendant of the entire unjust gain was recognized in Carter Products, Inc. v. Colgate-Palmolive Co., 214 F.Supp. 383 (D.Md.1963), in which the court awarded a reasonable royalty plus additional profits on sales. See also Molinaro v. Burnbaum, 201 U.S.P.Q. 150, (D.Mass.1978). Cf. Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc., 35 F.3d 1226 (8th Cir.1994) (reasonable royalty measure "is most appropriate when the other theories would result in no recovery or when the parties actually had or contemplated a royalty arrangement").

A reasonable royalty is most often awarded as compensation for the plaintiff's loss when actual damages cannot be determined more directly. See University Computing Co., *supra*; Vitro Corp. v. Hall Chemical Co., 292 F.2d 678 (6th Cir.1961); Carter Products, *supra*. The reasonable royalty measure has also been invoked when the defendant began its use of the trade secret in good faith. See Forest Laboratories, *supra* (reasonable royalty awarded for use by the defendant after notice of the plaintiff's claim). Cf. San Manuel Copper Corp. v. Redmond, 8 Ariz.App. 214, 445 P.2d 162 (1968), applying

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 10 of 17 PageID #: 29176

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

the reasonable royalty measure in connection with an appropriation that was not "willful." In some circumstances the defendant's good faith reliance may make any monetary relief inappropriate. See § 3(a) of the Uniform Trade Secrets Act.

A reasonable royalty has been used to apportion the defendant's profits when it would be inequitable to award the plaintiff the entire profit on defendant's sales. See Laurie Visual Etudes, Inc. v. Chesebrough-Pond's, Inc., 105 Misc.2d 413, 432 N.Y.S.2d 457 (Sup.Ct.1980), reversed on other grounds 83 A.D.2d 505, 441 N.Y.S.2d 88 (1981) (defendant contributed substantially to the product's success); Goldberg v. Medtronic, Inc., 686 F.2d 1219 (7th Cir.1982) (awarding a 10% royalty on the defendant's sales because it was unlikely that the plaintiff could have marketed the trade secret without entering into a licensing agreement). See also Egry Register Co. v. Standard Register Co., 23 F.2d 438 (6th Cir.1928) (a patent infringement case apportioning profits by a reasonable royalty when the patented device was only one component of the defendant's product).

In determining the amount of a reasonable royalty, the courts have considered a variety of factors including the nature and importance of the trade secret, the nature and extent of the defendant's use, royalties discussed by the parties or common in the industry, resulting or foreseeable changes in the competitive position of the parties, the development costs of the plaintiff, the availability of alternatives to the trade secret, and other factors that might affect an agreement between willing buyers and sellers. See University Computing Co., *supra*; Forest Laboratories, *supra*; Carter Products, *supra* (royalty rate charged by the plaintiff to other manufacturers is relevant); Vitro Corp., *supra* (royalties established in an "agreement in principle" used to determine a reasonable royalty); Laurie Visual Etudes, *supra* (royalties based on prior negotiations between the parties). The royalty is not limited to a percentage of the defendant's sales. University Computing Co., *supra*.

Illustration 5 reflects the rule in § 2 of the Uniform Trade Secrets Act. See also Forest Laboratories, *supra*. In an extreme case the defendant's good faith reliance may justify the denial of all injunctive and monetary relief. See § 3(a) and the Comment to § 2 of the Uniform Trade Secrets Act.

*Comment h.* The Comment to § 3 of the Uniform Trade Secrets Act states the rule on the duration of monetary relief as follows: "Like injunctive relief, a monetary recovery for trade secret misappropriation is appropriate only for the period in which information is entitled to protection as a trade secret, plus the additional period, if any, in which a misappropriator retains an advantage over good faith competitors because of misappropriation." Cases limiting monetary relief under principles analogous to those applicable to the duration of injunctive relief include, e.g., Schreyer v. Casco Products Corp., 190 F.2d 921 (2d Cir.1951), cert. denied 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952) (affirming an accounting of profits attributable to an acceleration of the date when production by the defendant would otherwise have been possible); Engelhard Industries, Inc. v. Research Instrumental Corp., 324 F.2d 347 (9th Cir.1963), cert. denied 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964) (accounting of defendant's profits during the head start period is appropriate); Reinforced Molding Corp. v. General Electric Co., 592 F.Supp. 1083 (W.D.Pa.1984) (accounting of profits limited to the period required for independent development); Structural Dynamics Research Corp. v. Engineering Mechanics Research Corp., 401 F.Supp. 1102 (E.D.Mich.1975) (imposing a reasonable royalty during the period required for independent development); Carboline Co. v. Jarboe, 454 S.W.2d 540 (Mo.1970) (accounting of profits limited to the time required for reverse engineering). Cf. Kilbarr Corp. v. Business Systems Inc., 679 F.Supp. 422 (D.N.J.1988), affirmed 869 F.2d 589 (3d Cir.1989) (limitation of damages to the head start period was not appropriate when the defendant's appropriation effectively preempted the market).

Contractual royalties for the use of a trade secret may extend beyond public disclosure of the information. Warner-Lambert Pharmaceutical Co. v. John J. Reynolds, Inc., 178 F.Supp. 655 (S.D.N.Y.1959), affirmed 280 F.2d 197 (2d Cir.1960). See also Aronson v. Quick Point Pencil Co., 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979) (federal patent law does not preempt state enforcement of a contractual obligation to pay royalties after a public disclosure of the trade secret). In awarding monetary relief in an action in tort for the appropriation of a trade secret, the court may consider but is not bound by the duration of any contractual obligation. See Sikes v. McGraw-Edison Co., 665 F.2d 731 (5th Cir.), cert. denied 458 U.S. 1108, 102 S.Ct. 3488, 73 L.Ed.2d 1369 (1982) (although confidentiality agreement terminated after two years, an award of defendant's profits from an appropriation of the trade secrets was not limited to the two-year period); compare Premix, Inc. v. Zappitelli, 561 F.Supp. 269 (N.D.Ohio 1983) (awarding lost profits for the agreed period of confidentiality in a breach of contract action).

*Comment i.* Courts approving punitive damage awards in trade secret cases include, e.g., Clark v. Bunker, 453 F.2d 1006 (9th Cir.1972); Sperry Rand Corp. v. A-T-O, Inc., 447 F.2d 1387 (4th Cir.1971), cert. denied 405 U.S. 1017, 92 S.Ct. 1292, 31

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 11 of 17 PageID #: 29177

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

L.Ed.2d 479 (1972); Telex Corp. v. Int'l Business Machines Corp., 510 F.2d 894 (10th Cir.), cert. dismissed 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975); Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 738 P.2d 665 (1987) (Uniform Trade Secrets Act). See generally Jager, Trade Secrets Law § 7.03[3].

*Comment j.* For cases awarding attorney's fees under § 4 of the Uniform Trade Secrets Act, see, e.g., Boeing Co. v. Sierracin Corp., 108 Wash.2d 38, 738 P.2d 665 (1987); Aries Information Systems, Inc. v. Pacific Management Systems Corp., 366 N.W.2d 366 (Minn.App.1985). See generally Jager, Trade Secrets Law § 7.04; Milgrim on Trade Secrets § 7.08[3][e].

**Case Citations - by Jurisdiction**

C.A.2,
C.A.2
C.A.3,
C.A.5
C.A.6,
C.A.7
C.A.10
Ct.Fed.Cl.
N.D.Cal.
D.Md.
S.D.N.Y.
D.R.I.
W.D.Wash.
Alaska,
Kan.
Mass.App.
N.Y.
Tex.App.
Vt.
Wash.App.
Wis.
Wis.App.

**C.A.2,**

**C.A.2,** 2017. Cit. in disc., cit. in cases cit. in disc. and in ftn.; com. (d) cit. in disc.; com. (f) and Rptr's Note to com. (f) quot. in disc. Employer sued competitor and three former employees who left to work for competitor, alleging misappropriation of trade secrets, unfair competition, and unjust enrichment in violation of New York law. The district court entered judgment on a jury verdict awarding employer damages. While affirming the judgment as to liability, this court certified to the New York Court of Appeals the question of whether, under New York law, a plaintiff asserting claims for misappropriation of trade secrets, unfair competition, and unjust enrichment could recover damages that were measured by the costs the defendant avoided due to its unlawful activity. The court noted that, although Restatement Third of Unfair Competition § 45 appeared to support the avoided-costs approach, it was unclear whether the Restatement accurately described New York law with respect to calculating damages in trade-secret and unfair-competition cases. E.J. Brooks Company v. Cambridge Security Seals, 858 F.3d 744, 749, 750.

**C.A.2**

**C.A.2,** 1998. Com. (f) quot. in disc. Computer-software company sued competitor for misappropriation of trade secrets. Following a bench trial, the district court entered judgment for plaintiff in the amount of $14 million. Affirming in part and

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 12 of 17 PageID #: 29178

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

vacating in part, this court held, inter alia, that the damages award was too great, and that, under the reasonable royalty rule, plaintiff was entitled to damages in the amount of $7.7 million. Vermont Microsystems, Inc. v. Autodesk, Inc., 138 F.3d 449, 450.

**C.A.3,**

**C.A.3,** 2016. Quot. in ftn. Communications-equipment manufacturer brought, inter alia, a claim for unfair competition against its former contractor, alleging that defendant took action to directly compete with plaintiff by improperly gaining access to plaintiff's communications systems, soliciting plaintiff's former employees, and using information defendant learned when it was plaintiff's contractor. The district court granted defendant's motion for judgment as a matter of law. Vacating, this court held that plaintiff presented sufficient evidence to support a reasonable jury finding that there was unfair competition under a misappropriation theory. The court noted that New Jersey law, like Restatement Third of Unfair Competition § 45, allowed recovery under a disgorgement theory in cases of unfair competition, and that, here, plaintiff could show damages under either a lost-profit theory or a disgorgement theory. Avaya Inc., RP v. Telecom Labs, Inc., 838 F.3d 354, 387.

**C.A.5**

**C.A.5,** 2010. Com. (f) cit. and quot. but not fol. Owner of copyrighted software sued former customer, after a group of defendant's employees obtained a copy of plaintiff's software from an unknown source and used it without authorization. The district court entered judgment on a jury verdict in favor of plaintiff. This court reversed as to plaintiff's claims for misappropriation of trade secrets and unfair competition and rendered a take-nothing judgment for plaintiff, holding that, while plaintiff demonstrated defendant's total revenue, it failed to deduct unrelated revenue and costs to demonstrate defendant's profits related to the infringement. The court rejected plaintiff's argument that its exhibit showing total revenue satisfied its burden of proof with regard to defendant's "sales" and that defendant subsequently had the burden of demonstrating which portions of its revenue were not attributable to the state-law claims, concluding that the Texas Supreme Court would not adopt the burden-shifting procedures of Restatement Second of Torts § 45, Comment *f*. MGE UPS Systems, Inc. v. GE Consumer and Indus., Inc., 622 F.3d 361, 369, 370.

**C.A.6,**

**C.A.6,** 2022. Coms. (b) and (c) quot. in sup.; com. (d) quot. in sup. and in diss. op.; illus. 2 quot. in diss. op. Dietary-supplement developer sued customer, alleging that defendant misappropriated plaintiff's trade secrets regarding broccoli-seed extracts by hiring plaintiff's former employee, who provided plaintiff's confidential research and development information to defendant, and used it to create competing broccoli supplement products. The district court entered judgment on a jury verdict for plaintiff. This court affirmed, holding, inter alia, that plaintiff was entitled to restitution damages and compensatory damages, including partial research and development costs. Citing Restatement Third of Unfair Competition § 45, the court explained that plaintiff's recovery included costs that defendant avoided by misappropriating plaintiff's research information. The dissent argued that § 45 did not entitle plaintiff to damages arising from research and development unless the trade secrets were destroyed by public disclosure, and here, the record did not indicate that defendant's misappropriation caused such destruction. Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc., 53 F.4th 368, 387, 390, 392, 396.

**C.A.7**

**C.A.7,** 2011. Cit. in disc. S corporation and its shareholders challenged the issue of deficiency notices by the Commissioner of Internal Revenue following Commissioner's finding that settlement income that corporation received in an underlying trade secrets misappropriation suit should have been taxed as ordinary income, rather than long-term capital gain. The tax court agreed with Commissioner and ordered deficiency judgments. Affirming, this court rejected plaintiffs' argument that

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 13 of 17 PageID #: 29179

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

the settlement was payment for damage to corporation's trade secrets, which it alleged were capital assets, holding that, because corporation's litigation strategy had been to seek profits and other types of monetary recovery that could properly be taxed as ordinary income, and not to focus on the damage to or destruction of its capital asset, the settlement was not in lieu of a replacement of capital, and was properly identified as ordinary income. Freda v. C.I.R., 656 F.3d 570, 574, 575.

**C.A.10**

**C.A.10,** 2014. Com. (g) quot. in sup. Computer-software company brought an action for trade-secret misappropriation against former director of the company, alleging that, after defendant had a falling out with his colleagues, he stole the computer source code on which company's products depended and shared it with a rival company that quickly produced a competing software product. The district court entered judgment on a jury verdict awarding plaintiff damages of $2.92 million on a theory of reasonable-royalty damages. Affirming, this court held, inter alia, that Utah's trade-secret statute, which governed defendant's case, expressly allowed a reasonable-royalty-measure of damages when the misappropriator used or disclosed the trade secret, even where, as here, he never used the secret for his own personal profit. The court further held that the amount of the award was not unreasonable as a matter of law, because the jury could reasonably have found that defendant assumed for himself a license that allowed him the right to share the trade secret with a rival, and to permit (if not compel) its commercial exploitation by that rival, leaving the remaining financial value of the (former) secret seriously compromised. Storagecraft Technology Corp. v. Kirby, 744 F.3d 1183, 1185, 1186, 1189.

**C.A.10,** 2008. Com. (d) cit. in disc., com. (g) quot. in sup. Inventor sued manufacturer of medical devices, alleging that it misappropriated his trade secrets and breached a confidentiality agreement by incorporating his inventions into one of its medical devices after the parties failed to reach a license agreement regarding the inventions. The district court entered judgment on a jury verdict for plaintiff. Affirming, this court held, inter alia, that the district court did not err in allowing plaintiff to recoup unjust-enrichment damages against defendant; while the unjust-enrichment award put plaintiff in a much better position than if he had entered a licensing agreement with defendant, under Utah law, defendant, as the party that acted wrongfully, had to assume the risk it took by misappropriating rather than licensing plaintiff's trade secrets. The court also noted that unjust-enrichment awards could in these circumstances serve a legitimate deterrent function. Russo v. Ballard Medical Products, 550 F.3d 1004, 1021.

**Ct.Fed.Cl.**

**Ct.Fed.Cl.**2011. Com. (d) quot. in ftn. Munitions-assembly-systems manufacturer sued the United States, alleging that the U.S. Air Force breached the parties' cooperative research and development agreement by releasing plaintiff's proprietary information to unauthorized recipients, including its competitors. After this court entered judgment for plaintiff on liability, it awarded plaintiff damages for the loss of its proprietary information as an income-producing asset, concluding that plaintiff showed that the damages it sought were foreseeable and caused by the Air Force's breach of the agreement. The court pointed out the distinction between recovering, on the one hand, the value of a lost income-generating asset, as here, and, on the other, expectation damages in the form of lost profits, and noted that the Restatement Third of Competition recognized a similar distinction with respect to the monetary relief appropriate for the tort of trade-secret appropriation. Spectrum Sciences and Software, Inc. v. U.S., 98 Fed.Cl. 8, 15.

**N.D.Cal.**

**N.D.Cal.**2018. Com. (f) quot. in sup. Manufacturer of data centers brought a lawsuit against competitors, alleging that defendants willfully and maliciously misappropriated plaintiff's trade secrets regarding its modular data centers. This court denied defendants' motion for judgment as a matter of law, holding, inter alia, that the jury had reasonably concluded based on the evidence that defendants were unjustly enriched when they caused plaintiff to lose a contract by misappropriating plaintiff's trade secrets. The court cited Restatement Third of Unfair Competition § 45, Comment *f*, in explaining that the

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 14 of 17 PageID #: 29180

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

unjust-enrichment award was appropriate because the burden of proof was on defendants to establish the extent of defendants' earnings from the contract that were not attributable to plaintiff's trade secrets, and determined that the jury's finding that portions of defendants' earnings were due to the misappropriation was supported by substantial evidence. BladeRoom Group Limited v. Emerson Electric Co., 331 F.Supp.3d 977, 988.

**D.Md.**

**D.Md.**2011. Quot. in sup. Former employee sued former employer, alleging that employer retaliated for whistle-blowing activities; employer counterclaimed for, inter alia, misappropriation of trade secrets. Denying in part employee's motion for summary judgment, this court rejected employee's argument that because employer did not demonstrate actual business loss, it could not prove damages. The court explained that damages could include both the actual loss and the unjust enrichment caused by employee's own pecuniary gain from the appropriation, and, here, if employer proved that employee took and used trade secrets to create products that were incorporated into successful bids for government contracts, the amount of compensation received by employee under those contracts could serve as a basis for employer's unjust-enrichment recovery. Glynn v. Impact Science & Techology, Inc., 807 F.Supp.2d 391, 433.

**S.D.N.Y.**

**S.D.N.Y.**2019. Coms. (d) and (h) quot. in sup.; com. (f) quot. in case quot. in sup. In Chapter 11 proceedings for debtor that sold telecommunications equipment, former supplier of power supplies to debtor filed a proof of claim in connection with a lawsuit that it had previously filed against debtor for misappropriation of trade secrets. After the bankruptcy court issued a decision estimating supplier's claim against debtor, supplier appealed, alleging that the bankruptcy court erred in failing to assume debtor's liability for purposes of its estimation, and in failing to award damages for unjust enrichment and lost profits. Affirming, this court cited Restatement Third of Unfair Competition § 45 in holding that the bankruptcy court did not err by inquiring into the value of supplier's trade secrets throughout the period of the alleged misappropriation, and into the extent to which supplier's trade secrets might have been independently discoverable or worked around by debtor during that period, or by basing its estimate on the reasonably royalty debtor would have paid to supplier in light of its cost savings attributable to the misappropriation, rather than based on its unjust enrichment and supplier's lost profits. In re Avaya Inc., 602 B.R. 445, 458, 463.

**S.D.N.Y.**2002. Com. (g) quot. in ftn. in sup. Computer-systems designer that had ceased operations sued competitor for, in part, trade-secret misappropriation. The court ruled that the appropriate measure of damages, where defendant did not profit from the alleged infringement, was a reasonable royalty. The royalty could result in a lump-sum payment based on a reasonable royalty as applied to expected sales or a running royalty based on actual sales. LinkCo, Inc. v. Fujitsu Ltd., 232 F.Supp.2d 182, 186.

**D.R.I.**

**D.R.I.**2019. Cit. in ftn.; coms. (b) and (f) quot. in sup. Producer of automated clinical instruments used to analyze human blood samples sued competitor and former employee who left plaintiff to work for competitor, alleging misappropriation of trade secrets and other claims. After a jury found that defendants willfully misappropriated plaintiff's trade secrets in violation of Rhode Island law and awarded plaintiff damages for unjust enrichment, this court denied in part defendants' motions for judgment as a matter of law or for a new trial or remittitur, holding that the jury's award of damages—in the amount of one year of profits attributable to the unfair head start defendants gained by misappropriating plaintiff's trade secrets—was a rational appraisal of plaintiff's damages for defendants' unjust enrichment under Restatement Third of Unfair Competition § 45. Alifax Holding Spa v. Alcor Scientific Inc., 404 F.Supp.3d 552, 574.

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 15 of 17 PageID #: 29181

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

**W.D.Wash.**

**W.D.Wash.**2019. Com. (f) quot. in case quot. in disc. Software developer brought a lawsuit against university, alleging, inter alia, that defendant misappropriated plaintiff's trade secrets by transferring plaintiff's confidential and proprietary software information while using a competitor's data-management system. This court granted in part defendant's motion for summary judgment, holding that plaintiff failed to allege damages for its misappropriation claim. The court explained that, under Restatement Third of Unfair Competition § 45, Comment *f*, the traditional form of relief for misappropriation of trade secrets was disgorgement of a defendant's profits that were attributable to the use of the trade secrets, and determined that, here, plaintiff did not present any evidence of such profits resulting from defendant's purported use of the trade secrets. Inteum Company, LLC v. National University of Singapore, 371 F.Supp.3d 864, 884.

**Alaska,**

**Alaska,** 2015. Com. (g) quot. in ftn. Developer of a gated subdivision sued realtors who listed a neighboring property for sale, alleging that realtors misappropriated a photograph of the subdivision's sign and included it in the listing for the neighboring property, with the intent of creating the impression that the property was part of the subdivision. The trial court granted summary judgment for realtors. Affirming, this court held that, although the Copyright Act did not preempt a passing-off claim, such a claim required damages, which developer failed to prove with respect to the photograph of the subdivision's sign. The court rejected developer's argument that a "reasonable royalty" measure of damages was appropriate for a passing-off claim under Restatement Third of Unfair Competition § 45, noting that, while such a measure was often used in patent cases and in the context of trade secrets, its use in trademark was atypical. Alaskasland.Com, LLC v. Cross, 357 P.3d 805, 827.

**Kan.**

**Kan.**2011. Com. (d) cit. in disc. Pipe-coating company sued former employees seeking damages, a restraining order, and an injunction against further use of purportedly misappropriated trade secrets, alleging that employees wrongfully took and used, among other things, a secret coating formula developed by company. The trial court found for plaintiff and required defendants to pay a limited-term royalty for any sales to plaintiff's customers based on use of the formula; the court of appeals affirmed in part, but found that the royalty injunction was not warranted. Affirming in part, reversing in part, and remanding, this court held that, although defendants were liable for misappropriating the trade secret, evidence that plaintiff was lax in protecting the secret, that defendants' formula differed from plaintiff's, and that other companies used similar processes, could be exceptional circumstances that justified the imposition of royalties in lieu of other, more substantial damages. Progressive Products, Inc. v. Swartz, 292 Kan. 947, 258 P.3d 969, 979.

**Mass.App.**

**Mass.App.**2011. Com. (f) quot. in sup. Developer of an innovative method to produce a specialized encapsulant used in making solar cells sued competitor and former employee who left to work for competitor, alleging misappropriation of trade secrets and other claims. The trial court found in favor of plaintiff. Affirming, this court held that the use of disgorgement of profits to compensate plaintiff for defendants' misuse of its trade secrets was appropriate. The court noted that, while the precise scope of plaintiff's monetary loss was difficult to quantify, the record supported the trial judge's implicit conclusion that plaintiff, which enjoyed a 25% global market share in a highly specialized product, suffered a loss of sales when it suddenly faced competition from another producer in its own backyard based on improper use of its trade-secret manufacturing process. Specialized Technology Resources, Inc. v. JPS Elastomerics Corp., 80 Mass.App.Ct. 841, 849, 957 N.E.2d 1116, 1123.

**Mass.App.**1993. Subsec. (1) cit. in disc., com. (b) quot. in part in disc. (citing § 45 of T.D. No. 4, 1993. § 45 has since been

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 16 of 17 PageID #: 29182

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

revised; see Official Text). The operators of a billiard parlor sued for injunctive relief to prevent a competitor from opening, alleging unfair trade practices and theft of trade secrets. This court, affirming the trial court's grant of an injunction only preventing the competitor from revealing financial information including accounting procedures obtained from the plaintiffs, held, inter alia, that, as the competing parlor had not yet opened, there was no basis for an award of damages, as these would have been highly speculative. The court noted also that the plaintiffs had not sought damages in their pleadings. Jillian's Billiard v. Beloff Billiards, 35 Mass.App.Ct. 372, 375, 619 N.E.2d 635, 638.

**N.Y.**

**N.Y.**2018. Cit. in disc. and in diss. op. (general cite); coms. (d) and (f) cit. in sup. Manufacturer of plastic indicative security seals filed a complaint in federal court against competitor and three former employees who left manufacturer to work for competitor, alleging misappropriation of trade secrets, unfair competition, and unjust enrichment. The district court entered judgment on a jury verdict awarding plaintiff damages for defendants' unfair competition as measured by the development costs that defendants avoided due to their unlawful activity. Answering a question certified by the court of appeals, this court held that avoided costs were not awardable as compensatory damages in an action based on a theory of unfair competition; rather, damages had to be measured by the losses that the plaintiff actually incurred. The court cited Restatement Third of Unfair Competition § 45 in support of its conclusion that the amount of avoided costs should not be used as a measure of damages in unfair-competition cases. E.J. Brooks Company v. Cambridge Security Seals, 105 N.E.3d 301, 306, 315, 326, 327.

**Tex.App.**

**Tex.App.**2013. Com. (d) cit. in sup. and quot. in ftn., com. (g) cit. in sup. and in ftn., coms. (d)-(g) cit. in ftn. Inventor and owners of a process for mining potash (potassium-containing ore) in a specific area that had anomalously high temperatures brought claims for misappropriation of trade secrets, inter alia, against inventor's former business partner and partner's company's subsidiary, alleging that defendants used plaintiffs' proprietary information in developing their own mining project. The trial court entered judgment on a jury verdict for plaintiffs. Affirming, this court held, among other things, that there was sufficient evidence in the record to support the jury's finding that plaintiffs were entitled to $1,696,428.55 in damages for defendants' misappropriation of trade secrets, which was based on the jury's determination of what a reasonable royalty would have been had the parties negotiated for use of plaintiffs' trade secrets at the time the information was used. In making its decision, the court noted that there were several possible measures of damages in trade-secrets cases in addition to reasonable royalty, including the plaintiff's lost profits, the defendant's gain, and the defendant's savings from using the trade secrets. Bishop v. Miller, 412 S.W.3d 758, 776, 778.

**Vt.**

**Vt.**2002. Subsec. (1) quot. in sup. Owners of advertisement-based newspaper sued former operators of paper for conversion and unfair competition, alleging misappropriation of business assets. The trial court entered judgment on jury verdict for owners. Modifying conversion award and affirming, this court held, inter alia, that evidence that former operators took business assets such as customer lists, bookkeeping records, and office equipment supported unfair-competition claim based on misappropriation. Maguire v. Gorruso, 174 Vt. 1, 800 A.2d 1085, 1092.

**Wash.App.**

**Wash.App.**2018. Com. (f) quot. in disc. Car dealership brought a lawsuit against competitor, alleging that defendant's employee had taken a customer list owned by plaintiff when he left plaintiff's employ and misused it to increase defendant's car sales. The trial court entered judgment for plaintiff. This court reversed and remanded, holding, inter alia, that the trial court erred by providing incorrect jury instructions for calculating plaintiff's damages resulting from defendant's willful and

Case 1:21-cv-01417-JPM   Document 616-3   Filed 06/17/24   Page 17 of 17 PageID #: 29183

§ 45 Monetary Relief: Appropriation of Trade Secrets, Restatement (Third) of Unfair...

malicious misuse of plaintiff's customer list. The court cited Restatement Third of Unfair Competition § 45 in explaining that damages for willful and malicious misuse of a trade secret had to be calculated based off of defendant's sales attributable to the use of the customer lists, rather than all of defendant's sales following defendant obtaining the list. ADA Motors, Inc. v. Butler, 432 P.3d 445, 450.

**Wash.App.**2009. Com. (f) quot. in sup. and adopted. Design engineer contested drill manufacturer's application to terminate a 2001 injunction enjoining manufacturer from misappropriating engineer's design of a particular seafloor drilling technology. The trial court dissolved the injunction, and also ruled that engineer failed to prove that he suffered any damages from manufacturer's licensing to a third party of technology almost identical to his own design. Affirming, this court held that the undivided price of manufacturer's contract with the third party was the correct basis upon which to calculate the proper amount of restitutionary unjust-enrichment damages, and thus manufacturer's royalty payments to engineer based on revenues from the contract properly compensated him; the evidence did not require a separate damages award based on the license agreement, since the trial court could reasonably have concluded that the license of engineer's technology could not realistically have been separated from the overall contract price but, rather, served as an inducement to third party that did not have independent value. Petters v. Williamson & Associates, Inc., 151 Wash.App. 154, 210 P.3d 1048, 1054.

**Wis.**

**Wis.**2002. Com. (e) quot. in sup. Seller of prosthetic components brought suit for trade-secret misappropriation against former manufacturer of its components. The trial court granted defendant's motion for a mistrial. The court of appeals reversed and remanded for a new trial. Affirming, this court held that evidence that defendant marketed defective products incorporating plaintiff's trade secret was relevant and admissible to show plaintiff's damages. World Wide Prosthetic Supply, Inc. v. Mikulsky, 251 Wis.2d 45, 640 N.W.2d 764, 769.

**Wis.App.**

**Wis.App.**2001. Com. (e) cit. in disc. Seller of prosthetic components sued company that formerly manufactured the components for it, alleging that defendant's continued production of the components after their relationship ended constituted misappropriation of trade secrets, and that the misappropriation had caused it to lose profits. The trial court granted defendant's motion for mistrial on the ground that evidence that the components were defective had been erroneously admitted to prove damages. Reversing and remanding, this court held that evidence that the product defendant allegedly produced and distributed after misappropriating plaintiff's trade secrets was defective was admissible to prove that plaintiff suffered actual loss caused by the misappropriation. World Wide Prosthetic Supply, Inc. v. Mikulsky, 246 Wis.2d 461, 471, 631 N.W.2d 253, 258, affirmed 251 Wis.2d 45, 640 N.W.2d 764 (2002).

Restatement of the Law - Unfair Competition © 1995-2023 American Law Institute. Reproduced with permission. Other editorial enhancements © Thomson Reuters.

**End of Document**                                         © 2024 Thomson Reuters. No claim to original U.S. Government Works.