IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **PUBLIC VERSION** |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) | |
| | ) | ███████████ |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF QORVO, INC.'S
MOTION FOR PERMANENT INJUNCTIVE RELIEF**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Zachary Alper
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

**Confidential Version Filed: June 17, 2024
Public Version Filed: August 15, 2024**

**TABLE OF CONTENTS**

**Page**

I.      Introduction .................................................................................................................. 1

II.     Background .................................................................................................................... 1

   A.    Qorvo and Akoustis Compete in the Market for BAW Filters ................................ 1

   B.    Akoustis Willfully and Maliciously Misappropriated Qorvo's Trade Secrets .................. 2

   C.    Akoustis Infringed Qorvo's Patents ...................................................................... 5

III.    Legal Standard .............................................................................................................. 5

IV.     Argument ...................................................................................................................... 7

   A.    Akoustis Should Be Enjoined from Continued Misappropriation ...................................... 7

      1.    Qorvo will suffer irreparable injury without an injunction .......................... 8

         a.    Irreparable harm is presumed under North Carolina law .......................... 8

         b.    Continuing use of a trade secret is a "recurrent violation" that gives rise to irreparable harm ............................................................................................. 8

         c.    The willful and malicious nature of Akoustis' conduct gives rise to irreparable harm  9

         d.    Direct competition gives rise to irreparable injury ................................ 10

         e.    Injury to reputation and goodwill will irreparable harm ......................... 11

         f.    Injunctive relief is warranted to prevent disclosure .................................. 11

      2.    Remedies available at law are inadequate ................................................ 12

      3.    The balance of the hardships strongly favors an injunction ....................... 13

      4.    The public interest favors enjoining ongoing use of Qorvo's trade secrets ............. 13

      5.    The trade secret injunction is narrowly tailored ....................................... 14

   B.    Akoustis Should Be Enjoined from Infringing Qorvo's Patents ...................................... 15

      1.    Absent a permanent injunction, Qorvo will suffer irreparable harm that cannot be fully compensated by monetary relief ................................................................................. 15

      2.    The balance of the hardships favors enjoining future infringement .......................... 18

      3.    The public interest favors enjoining future infringement ........................... 18

      4.    The patent infringement injunction is narrowly tailored ........................... 18

   C.    If No Injunction Is Entered, Akoustis Should Pay a Running Royalty ........................... 19

V.      Conclusion ................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications. Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012)................................................................15

*Acumed LLC v. Stryker Corp.*,
  No. 04-cv-0513, 2007 WL 4180682 (D. Or. Nov. 20, 2007) ................................10

*Adv. Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*,
  579 F. Supp. 2d 554 (D. Del. 2008)............................................................17

*Allergan, Inc. v. Merz Pharmaceuticals, LLC*,
  No. 11-cv-0446, D.I. 286 (C.D. Cal. Mar. 9, 2012)...........................................8

*Anacomp, Inc. v. Shell Knob Servs., Inc.*,
  No. 93-CIV-4003, 1994 WL 9681 (S.D.N.Y. Jan. 10, 1994) ................................11

*Anderson v. Davila*,
  125 F.3d 148 (3d Cir. 1997)......................................................................8

*Apple Inc. v. Samsung Elecs. Co.*,
  809 F.3d 633 (Fed. Cir. 2015)..................................................................18

*Baker Indus., Inc. v. Gould*,
  553 S.E.2d 227 (N.C. Ct. App. 2001) ................................................9, 10, 12

*Barr-Mullin, Inc. v. Browning*,
  424 S.E.2d 226 (N.C. Ct. App. 1993) ..........................................................8, 9

*Bianco v. Globus Medical, Inc.*,
  No. 12-cv-00147, 2014 WL 1049067 (E.D. Tex. Mar. 17, 2014) ...........................20

*Bimbo Bakeries USA, Inc. v. Botticella*,
  613 F.3d 102 (3d Cir. 2010)......................................................................14

*Bio-Rad Labs, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)..................................................................17

*Bridgetree, Inc. v. Red F. Marketing LLC*,
  No. 10-cv-00228, 2013 WL 443698 (W.D.N.C. Feb. 5, 2013) ......................7, 8, 15

*BTL Indus. v. Advanced Regenerative Med.*,
  No 23-cv-0359, 2024 WL 455218 (D. Del. Feb. 6, 2024)......................................13

*Butamaxtm Advanced Biofuels LLC v. Gevo, Inc.*,
   868 F. Supp. 2d 359 (D. Del. 2012)........................................................................11

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012).............................................................................11

*Comet Techs. USA, Inc. v. XP Power, LLC*,
   No. 20-cv-06408, 2022 WL 4625149 (N.D. Cal. Sept. 30, 2022)..................7, 9, 15

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
   No. 08-cv-7497, 2014 WL 1883474 (S.D.N.Y. May 9, 2014) ..............................10

*Coventry First v. Ingrassia*,
   No. 05-cv-2802, 2005 WL 1625042 (E.D. Pa. July 11, 2005) ...............................8

*Douglas Dynamics, LLC v. Buyers Products Co.*,
   717 F.3d 1336 (Fed. Cir. 2013)..............................................................15, 16, 18

*E.I. DuPont de Nemours & Co. v. Kolon Indus. Inc.*,
   No. 09-cv-00058, D.I. 2054 (E.D. Va. Feb. 3, 2009) (Exhibit D) ...........................8

*E.I. DuPont de Nemours & Co. v. Unifrax I LLC*,
   No. 14-cv-1250, 2017 WL 4004419 (D. Del. Sept. 12, 2017)..............................18

*eBay, Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)............................................................................................7

*Edwards Lifesciences AG v. CoreValue, Inc.*,
   699 F.3d 1305 (Fed. Cir. 2012)............................................................................6

*Epic Sys. Corp. v. Tata Consultancy Servs., Ltd.*,
   No. 14-cv-00748, D.I. 959 (W.D. Wis. Oct. 31, 2014) .........................................8

*Forest Labs., Inc. v. Ivax Pharm., Inc.*,
   501 F.3d 1263 (Fed. Cir. 2007)..........................................................................19

*Fres-co System USA, Inc. v. Hawkins*,
   690 F. App'x 72 (3d Cir. 2017) .....................................................................12, 14

*Fresenius Med. Care Holdings Inc. v. Baxter Int'l, Inc.*,
   No. 03-1431, 2008 WL 928496 (N.D. Cal. Apr. 4, 2008), *rev'd on other
   grounds*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288
   (Fed. Cir. 2009)................................................................................................15

*Gen. Elec. Co. v. Sung*,
   843 F. Supp. 776 (D. Mass. 1994) ....................................................................5, 14

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010)................................................................................18

*Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*,
No. 14-cv-02864, 2018 WL 3036759 (N.D. Cal. June 19, 2018)...........................17

*Kewanee Oil Co. v. Bicron Corp.*,
416 U.S. 470 (1974)................................................................................................5

*KPM Analytics North America Corp. v. Blue Sun Scientific, LLC*,
No. 21-cv-10572, 2024 WL 1558167 (D. Mass. Apr. 10, 2024)............................9

*Mallet & Co. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021) ...................................................................................14

*nCube Corp. v. SeaChange Int'l, Inc.*,
809 F. Supp. 2d 337 (D. Del. 2011)........................................................................19

*Northeastern Pennsylvania Freethough Society v. County of Lackawanna Transit System*,
938 F.3d 424 (3d Cir. 2019)....................................................................................7

*Novozymes A/S v. Genencor Int'l, Inc.*,
474 F. Supp. 2d 592 (D. Del. 2007)........................................................................15

*Nuziard v. Minority Bus. Dev. Agency*,
No. 23-cv-00278, 2024 WL 965299 (N.D. Tex. Mar. 5, 2024)..............................13

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007)..............................................................................20

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
702 F.3d 1351 (Fed. Cir. 2012)........................................................................10, 17

*Quest Car Care Products, Inc. v. Titus*,
No. 23-cv-1066, 2023 WL 9472302 (W.D. Mich. Dec. 27, 2023).........................12

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)........................................................................16, 18

*S&P Glob. v. S&P Data LLC*,
619 F. Supp. 3d 445 (D. Del. 2022)........................................................................7

*SI Handling Systems, Inc. v. Heisley*,
753 F.2d 1244 (3d Cir. 1985)..............................................................................9, 13

*Sionyx LLC v. Hamamatsu Photonics K.K.*,
981 F.3d 1339 (Fed. Cir. 2020)..............................................................................16

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*,
No. 15-cv-00211, D.I. 993 (S.D.N.Y. May 18, 2021) ............................................................7

*TEK Global, S.R.L. v. Sealant Sys. Int'l*,
920 F.3d 777 (Fed. Cir. 2019)..........................................................................................16, 17

*UniRAM Tech., Inc. v. Taiwan Semiconductor*,
No. 04-1268, 2008 WL 11515597 (N.D. Cal. Apr. 17, 2008)................................................11

*Vector Security, Inc. v. Stewart*,
88 F. Supp. 2d 395 (E.D. Pa. 2000) ......................................................................................17

*Wellness Coaches USA, LLC v. MGM Resorts Int'l*,
No. 15-CV-01593, 2015 WL 5146701 (D. Nev. Sept. 1, 2015)................................................9

*WeRide Corp. v. Kun Huang*,
379 F. Supp. 3d 834 (N.D. Cal. 2019) ......................................................................10, 11, 13

*Windsurfing Int'l Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986)................................................................................................13

**Statutes**

18 U.S.C. § 1836(b)(3) ........................................................................................................6

18 U.S.C. § 1836(b)(3)(A)(ii) ...............................................................................................6

18 U.S.C. § 1836(b)(3)(A)(iii)..............................................................................................20

35 U.S.C. § 154(a)(1).............................................................................................................6

35 U.S.C. § 283......................................................................................................................6

N.C.G.S. § 66-154...............................................................................................................6, 8

N.C.G.S. § 66-154(a)(1) .....................................................................................................6, 20

**Other Authorities**

Restatement (Third) of Unfair Competition § 44 (1995)........................................................5

## I.      INTRODUCTION

Following an eight-day trial involving testimony from 27 witnesses and more than 350 exhibits, the jury found that Akoustis willfully and maliciously misappropriated Qorvo's trade secrets and infringed two of Qorvo's patents. In recognition of Akoustis' unlawful conduct, the jury awarded Qorvo more than $38 million in past and punitive damages. Qorvo now seeks a permanent injunction to prohibit Akoustis from the continuing use of Qorvo's trade secrets and infringement of Qorvo's patents. As is set forth below, equitable considerations strongly favor issuance of a permanent injunction in cases like this, where the parties are direct competitors. Qorvo should not be forced to compete with its own trade secrets and patented inventions.

## II.     BACKGROUND

### A.      Qorvo and Akoustis Compete in the Market for BAW Filters

Qorvo and Akoustis are direct competitors in the market for bulk acoustic wave ("BAW") filters. *See, e.g.*, Trial Tr. 293:9-294:7, 534:1-534:8, 1059:14-1059:19, 1068:1-4. BAW filters are "complicated technology" and there are "many, many elements that you need to get just right to make it work." *Id.*, 373:15-24. Qorvo and its predecessor companies worked for nearly 20 years, and invested in excess of $1 billion, to develop commercially viable BAW filters, finally succeeding in 2010.[1] Trial Tr. 372:12-373:19. As a result of its extensive work and investments, Qorvo developed numerous trade secrets related to "things [that] are just not visible on the final product, but they are very important to success." *Id.*, 375:16-376:1. Qorvo also applied for and obtained numerous patents. *See, e.g., id.*, 295:16-18, 365:8-10, 548:20-24. By 2015, Qorvo had

---

[1] Qorvo was formed on January 1, 2015 from the merger of TriQuint Semiconductor, Inc. and RF Micro Devices, Inc. ("RFMD"). D.I. 549 at 8. TriQuint was formed in 1985 and RFMD was formed in 1991. *Id.*

sold more than 10 billion BAW filters and established itself as a leader in the market for BAW filters. *Id.*, 374:10-14.

Akoustis was formed in May 2014 by Dr. Jeffery Shealy, a former executive at RFMD. Trial Tr., 1177:8-14. Akoustis initially focused on research and development of so-called "single-crystal" BAW filters. *Id.*, 948:11-17. In 2016, Akoustis shifted its focus so that it could make products that would generate revenue for its investors—including Dr. Shealy. *See id.*, 1126:11-22. Within a year, Akoustis was sampling BAW filters. *Id.*, 1266:12-1267:10. As of May 2023, Akoustis had sold 61.6 million BAW filters. *Id.*, 1712:20-1713:11. Akoustis also forecasted rapid growth of its products, estimating it would reach $152 million of BAW filter sales by fiscal year 2025. *Id.*

### B.  Akoustis Willfully and Maliciously Misappropriated Qorvo's Trade Secrets

On May 17, 2024, following an eight-day trial, the jury determined that Akoustis willfully and maliciously misappropriated 39 trade secrets from Qorvo (the "Misappropriated Trade Secrets"). *See* D.I. 601 at 1-2. Collectively, the Misappropriated Trade Secrets related to nearly every aspect of Akoustis' operations. During trial, Qorvo organized and presented the Misappropriated Trade Secrets in eight groups: (1) Qorvo's business plans for Wi-Fi products (six trade secrets); (2) Qorvo's BAW filter and resonator designs (16 trade secrets); (3) Qorvo's trimming methods and procedures (three trade secrets); (4) Qorvo's evaluation board design rules and schematics (one trade secret); (5) Qorvo's product development process and testing procedures (two trade secrets); (6) Qorvo's systems, processes, and procedures for testing reliability and mean-time-to-failure of parts (five trade secrets); (7) Qorvo's manufacturing and assembly procedures (one trade secret); and (8) Qorvo's product roadmaps and product prototypes (five trade secrets). *See id.*; *see also, e.g.*, Trial Tr., 1228:14-1229:12.

The evidence presented at trial of Akoustis' willful and malicious activities was overwhelming. Despite having access to only a small subset of Akoustis' files, Qorvo identified **40 Akoustis employees** who possessed confidential Qorvo documents. Trial Tr., 1361:23-1362:15. Akoustis' top executives—including the CEO (Jeff Shealy), the Chief Product Officer (Rohan Houlden), the Executive Vice President of Business Development (Dave Aichele), the Executive Vice President of Fabrication (Mary Winters), the Chief Device Scientist (Rama Vetury), the President of Global Sales (Colin Hunt), and the Vice President of Quality (Joel Morgan)—were actively involved in the misappropriation.[2] Dr. Shealy typified the brazen culture of misappropriation at Akoustis when he testified in another case that he prefers to hire employees who have trade secrets (rather than employees named as inventors on patents) because the employees can use the trade secrets to benefit Akoustis. Trial Tr., 1168:24-1171:2.

Akoustis' efforts to obtain Qorvo's trade secrets were part of a long-running and multi-faceted scheme. The scheme encompassed circulating confidential Qorvo documents using personal email accounts (*see, e.g.*, Exs. 77, 78), using external hard drives to transfer files from Qorvo computers to Akoustis computers (Trial Tr., 821:21-822:19), copying entire Qorvo email accounts (*id.*, 852:4-853:24), duplicating an entire Qorvo laptop computer (*id.*, 816:2-817:2), at least one employee continuing to work at Qorvo after he started working at Akoustis so that he could transfer files (Ex. 219), using expense accounts to pay bribes to obtain "key confidential information" (Ex. 140), and borrowing confidential Qorvo prototypes from a customer so that

---

[2] *See, e.g.*, Ex. 22 (Houlden sending confidential Qorvo business plan to Aichele); Exs. 12, 123 (emails with Vetury and Winters discussing Qorvo trimming algorithms); Exs. 82, 83 (Houlden sending Shealy confidential Qorvo product requirements documents); Exs. 72, 72 (Morgan, Houlden, and Aichele discussing use of confidential Qorvo testing presentation); Ex. 137 (Shealy, Aichele, Houlden discussing confidential Qorvo presentation concerning automotive filters); Ex. 91, 132 (Aichele, Houlden, and Shealy discussing confidential Qorvo datasheets); Exs. 27, 133 (Aichele and Hunt discussing confidential Qorvo presentation on WiFi 6e).

Akoustis could run tests on the prototypes (Ex. 179). A forensic inspection of only a small subset of Akoustis' electronic devices revealed more than 500,000 Qorvo files, plus 279 GB of additional data, on those devices alone. Trial Tr., 812:5-813:5. The volume of information that Akoustis stole from Qorvo as part of the misappropriation scheme was so massive that Qorvo's technical expert—Dr. Stanley Shanfield—could not feasibly review all of the information. *See id.*, 1228:14-1229:12. Dr. Shanfield thus reviewed a subset of the stolen information and, from just that subset, identified nearly 1,500 documents containing Qorvo's confidential information. *Id.*

The documents containing the Misappropriated Trade Secrets were clearly labeled as "confidential."[3] Indeed, Akoustis employees admitted that they knew the documents to be confidential. *See, e.g.*, Trial Tr., 608:24-609:10, 610:2-611:3, 615:13-23, 620:9-13, 689:11-690:15, 706:14-19, 707:17-708:5, 721:1-3, 732:13-24, 734:14-24, 888:7-12, 894:9-15, 897:12-21, 899:7-900:5, 903:24-904:2, 912:4-6, 918:7-919:13, 923:3-924:4, 1094:6-11, 1095:14-16, 1097:25-198:7, 1102:13-20, 1114:12-18. Aware of the impropriety of soliciting and circulating Qorvo's confidential materials, Akoustis repeatedly took actions to evade detection. For example, Akoustis delayed issuing a press release in hopes that "Qorvo IT" would not inspect the computer of a Qorvo employee (Rohan Houlden) that Akoustis hired (*see* Ex. 104); when soliciting confidential Qorvo information, Akoustis used personal email accounts to make people "feel more comfortable" (Ex. 221); Akoustis removed Qorvo labels and confidentiality legends to make the origin of documents less obvious (*see* Exs. 82, 83); Akoustis altered documents to refer to Qorvo's confidential information as "industry standard" (*compare* Ex. 213 *with* Ex. 220).

---

[3] *See, e.g.*, Exs. 7, 8, 9, 10, 11, 14, 20, 21, 22, 23, 24, 27, 28, 33, 34, 35, 37, 44, 45, 46, 48, 76, 79, 124, 136.

Importantly, the full scope of the Qorvo documents in Akoustis' possession is not yet known. Discovery was limited to only a subset of Akoustis employees. Similarly, the forensic inspection encompassed the electronic devices of only certain Akoustis employees. Trial Tr., 806:14-23, 810:18-811:4; *see also* Ex. 112.

Evidence presented at trial established that Akoustis cannot be trusted to fully and fairly address the misappropriation of Qorvo's trade secrets on its own. Akoustis' top management was heavily involved in the misappropriation and Akoustis did not take any disciplinary actions against any of the myriad employees known to have stolen Qorvo's confidential documents, despite company policies purportedly prohibiting such behavior. Trial Tr., 1943:25-1944:4.

### C.   Akoustis Infringed Qorvo's Patents

The jury also determined that Akoustis's manufacturing and sale of its BAW filter products infringes two Qorvo patents—U.S. Patent No. 7,522,018 (the "'018 Patent") and U.S. Patent No. 9,735,755 (the "'755 Patent").[4] D.I. 601.

## III.   LEGAL STANDARD

"Injunctive relief is often appropriate in trade secret cases to insure against additional harm from further unauthorized use of the trade secret and to deprive the defendant of additional benefits from the appropriation." Restatement (Third) of Unfair Competition § 44 (1995). "The purpose of an injunction in a trade secret case is to protect the secrecy of the misappropriated information, eliminate the unfair advantage obtained by the wrongdoer and reinforce the public policy of commercial morality." *Gen. Elec. Co. v. Sung*, 843 F. Supp. 776, 778 (D. Mass. 1994) (citing *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 481 (1974)).

---

[4] Specifically, the following Akoustis BAW filter products were found to infringe: A10149, A10154, A10155, A10156, A10158, A10160, A10165, A10166, A10235, A10238, A10249, A10252, A10256, A10266, A10335, AKF-1252, AKF-1256, AKF-1336, AKF-1938.

Based on the jury's verdict that Akoustis misappropriated 39 of Qorvo's trade secrets, the Court has authorization to issue a permanent injunction under the Defend Trade Secrets Act ("DTSA"). *See* 18 U.S.C. §1836(b)(3). Moreover, under the North Carolina Trade Secret Protection Act ("NCTSPA"), trade secret misappropriation "shall be permanently enjoined upon judgment finding misappropriation for the period that the trade secret exists plus an additional period as the court may deem necessary under the circumstances to eliminate any inequitable or unjust advantage arising from the misappropriation." N.C.G.S. §66-154. Under both the DTSA and the NCTSPA, an injunction may require a defendant to take affirmative steps designed to protect the misappropriated trade secrets. *See* N.C.G.S. §66-154(a)(1) ("In appropriate circumstances, affirmative acts to protect the trade secret may be compelled by order of the court."); 18 U.S.C. §1836(b)(3)(A)(ii) (injunction may require "affirmative actions to be taken to protect the trade secret").

The jury's verdict of patent infringement likewise authorizes the Court to issue a permanent injunction. Indeed, a United States patent gives the patent holder "the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States." 35 U.S.C. §154(a)(1). Congress specifically authorized injunctions to stop patent infringement, providing that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "Absent adverse equitable considerations, the winner of a judgment of validity and infringement may normally expect to regain the exclusivity that was lost with the infringement." *Edwards Lifesciences AG v. CoreValue, Inc.*, 699 F.3d 1305, 1314 (Fed. Cir. 2012).

In order to obtain a permanent injunction under the DTSA, the NCTSPA, or the Patent Act, Qorvo must establish that: (1) it has suffered irreparable injury; (2) there is no inadequate of remedy available at law, such as money damages; (3) the balance of hardships tips in favor of injunctive relief; and (4) granting an injunction would not disserve the public interest. *See, e.g.*, *eBay, Inc. v . MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Northeastern Pennsylvania Freethough Society v. County of Lackawanna Transit System*, 938 F.3d 424, 442 (3d Cir. 2019); *S&P Glob. v. S&P Data LLC*, 619 F. Supp. 3d 445, 472 (D. Del. 2022).

## IV.   ARGUMENT

### A.   Akoustis Should Be Enjoined from Continued Misappropriation

Qorvo seeks injunctive relief in connection with the trade secret verdict that (i) prohibits Akoustis from possessing, accessing, reviewing, using, duplicating, or disclosing certain of the Misappropriated Trade Secrets;[5] (ii) requires Akoustis to engage a third-party e-discovery vendor to quarantine and remove confidential Qorvo materials from Akoustis's computer systems and files; and (iii) provides Qorvo audit rights to ensure compliance with the injunction.

As set forth below, Qorvo satisfies all applicable requirements for the issuance of such injunctive relief. Further, a permanent injunction on these terms is typical where, as here, a defendant has engaged in willful and malicious trade secret misappropriation. *See, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.,* No. 15-cv-00211, D.I. 993 (S.D.N.Y. May 18, 2021) (Exhibit A) (order granting permanent injunction, including a prohibition on future use, the quarantine and removal of trade secrets, and audit rights); *Comet Techs. USA, Inc. v. XP Power, LLC*, No. 20-cv-06408, 2022 WL 4625149, at *4-6 (N.D. Cal. Sept. 30, 2022) (Exhibit B); *Bridgetree, Inc. v. Red F. Marketing LLC*, No. 10-cv-00228, 2013 WL 443698, at *23-25

---

[5] Qorvo is seeking a permanent injunction with respect to the Misappropriated Trade Secrets in Groups 2-7. Qorvo does not seek a permanent injunction with respect to Groups 1 or 8.

(W.D.N.C. Feb. 5, 2013) (establishing "clean room" procedure and audit rights, under the supervision of a forensic examiner, to facilitate the quarantine and removal of trade secrets).[6]

### 1.   Qorvo will suffer irreparable injury without an injunction

Irreparable harm is an injury that cannot be fully redressed with monetary relief. *Coventry First v. Ingrassia*, No. 05-cv-2802, 2005 WL 1625042, at *11 (E.D. Pa. July 11, 2005). Irreparable harm may arise, for example, when "there exists some cognizable danger of a recurrent violation" of legal rights. *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997). North Carolina courts have similarly found irreparable harm where injuries are of "such continuous and frequent recurrence that no reasonable redress can be had in a court of law." *Barr-Mullin, Inc. v. Browning*, 424 S.E.2d 226, 230 (N.C. Ct. App. 1993).

### a.   Irreparable harm is presumed under North Carolina law

As a threshold matter, irreparable harm is presumed under the NCTSPA upon a finding of misappropriation. *See* N.C.G.S. §66-154 (misappropriation "shall be permanently enjoined"); *Bridgetree*, 2013 WL 443698, at *22 ("[T]he jury's finding of trade secret misappropriation entitles Plaintiff to a presumption of irreparable harm absent issuance of an injunction.").

### b.   Continuing use of a trade secret is a "recurrent violation" that gives rise to irreparable harm

Even without a presumption of irreparable harm under the NCTSPA, the continuing use of Qorvo's trade secrets is precisely the type of "recurrent violation" of legal rights that requires

---

[6] *See also Allergan, Inc. v. Merz Pharmaceuticals, LLC,* No. 11-cv-0446, D.I. 286 (C.D. Cal. Mar. 9, 2012) (Exhibit C) (ordering a search using forensic search tools to locate and remove trade secrets, with a right to examine, conduct discovery on, and contest the sufficiency of the remediation process); *E.I. DuPont de Nemours & Co. v. Kolon Indus. Inc.,* No. 09-cv-00058, D.I. 2054 at 2-3 (E.D. Va. Feb. 3, 2009) (Exhibit D) (mandating the removal of all trade secret material, to be confirmed by a forensic expert given sufficient access to computers and networks); *Epic Sys. Corp. v. Tata Consultancy Servs., Ltd.*, No. 14-cv-00748, D.I. 959 at 6-9 (W.D. Wis. Oct. 31, 2014) (Exhibit E) (appointing a monitor with unfettered access to defendants' computers to ensure the removal of all trade secret information).

injunctive relief. As the court held in *Barr-Mullin*, "[t]he very nature of a trade secret mandates that misappropriation will have significant and continuous long-term effects. The party wronged may forever lose its competitive business advantage or, at the least, a significant portion of its market share." 424 S.E.2d at 230; s*ee also Baker Indus., Inc. v. Gould*, 553 S.E.2d 227, 230 (N.C. Ct. App. 2001) ("It is also well settled that an injunction will issue to prevent unauthorized disclosure and use of trade secrets and confidential information.").

Federal courts have similarly held that the "loss of a property interest in and diminution in value of trade secrets" is the type of harm that is not "readily addressed through payment of economic damages" and thus "sufficient to meet the irreparable injury requirement." *Wellness Coaches USA, LLC v. MGM Resorts Int'l*, No. 15-CV-01593, 2015 WL 5146701, at *6 (D. Nev. Sept. 1, 2015). As such, "[a] finding of trade secret misappropriation is generally adequate for a finding of irreparable injury in a trade secret cases." *Comet*, 2022 WL 4625149, at *2; *see also SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985) (finding irreparable harm because there was an "ample showing that appellants intended to use its trade secrets, and did not intend to take reasonable measures to preserve their secret status").

### c.   The willful and malicious nature of Akoustis' conduct gives rise to irreparable harm

Courts have also commonly found irreparable harm where, as here, there is a history of willful and malicious trade secret misappropriation. For example, in *KPM Analytics North America Corp. v. Blue Sun Scientific, LLC*, the defendants "willfully and maliciously misappropriated various combinations of [plaintiff's] trade secrets in the context of a long-running scheme." No. 21-cv-10572, 2024 WL 1558167 at *23 (D. Mass. Apr. 10, 2024). The court in *KPM Analytics* found irreparable injury because "it is fair to anticipate that some or all of the Defendants would commit future, similar misdeeds in the absence of a permanent injunction." *Id*. North

Carolina courts have similarly held that "broad injunctive relief is available where there has been some showing of bad faith or underhanded dealings on the part of the party to be enjoined." *Baker*, 553 S.E.2d at 230.

Here, the trial record is replete with evidence of Akoustis' willful and malicious trade secret misappropriation. *See* Part II.B, above. As in *KPM Analytics* and *Baker*, the misappropriation of Qorvo's trade secrets was part of a "long-running scheme" that involved substantial evidence of bad faith and underhanded dealings. Under these circumstances, there is a "cognizable danger of a recurrent violation" that justifies injunctive relief.

### d.      Direct competition gives rise to irreparable injury

The irreparable injury to Qorvo from the continuing use of its trade secrets is particularly significant in this case because Qorvo and Akoustis are direct competitors. Again, courts have long recognized that "[d]irect competition in the same market is certainly one factor suggesting strongly the potential for irreparable harm." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012). For example, the court in *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08-cv-7497, 2014 WL 1883474, at *12-13 (S.D.N.Y. May 9, 2014), recognized that a plaintiff is irreparably injured where a defendant's misappropriation and use enabled the defendant to compete directly with the plaintiff's core business. *Id.* ("[I]t is well-established that a movant's loss of current or future market share may constitute irreparable harm"); *see also WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 853-854 (N.D. Cal. 2019) ("It is well established that the loss of market position . . . can constitute irreparable harm."); *Acumed LLC v. Stryker Corp.*, No. 04-cv-0513, 2007 WL 4180682, at *4 (D. Or. Nov. 20, 2007) (finding irreparable injury and inadequate remedies at law based on patent plaintiff's "loss of market share and customers."). Here, there is no dispute that Qorvo and Akoustis directly compete in the same market for the same customers. *See, e.g.*, Trial Tr., 1059:14-19, 1068:1-4, 1082:16-25. Moreover,

the BAW filter market has only a small number of suppliers. *Id.*, 293:9-15. Allowing Akoustis to continue using Qorvo's trade secrets to erode Qorvo's market position is a prototypical example of irreparable harm.

### e.    Injury to reputation and goodwill is irreparable harm

The continuing use of Qorvo's trade secrets will also irreparably harm Qorvo's goodwill and reputation. Qorvo and its predecessor companies dedicated decades and more than $1 billion to develop commercially viable BAW filter technology. *See* Trial Tr., 374:25-375:15. As a result of this investment, Qorvo became a market leader and innovator. *Id.*, 294:8-17. If Akoustis is permitted to continue using Qorvo's trade secrets to position itself as a competitor to Qorvo in the market for BAW filters, that will diminish the significance of Qorvo's investments and erode the goodwill Qorvo has built as a market leader and innovator. Again, it is well-established that such reputational harm qualifies as an irreparable injury. *See, e.g.*, *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (holding that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm"); *Butamaxtm Advanced Biofuels LLC v. Gevo, Inc.*, 868 F. Supp. 2d 359, 374 (D. Del. 2012) (same); *Anacomp, Inc. v. Shell Knob Servs., Inc.*, No. 93-CIV-4003, 1994 WL 9681, at *5 (S.D.N.Y. Jan. 10, 1994) ("loss of the advantage of being the pioneer in [a] field and [a] market leader, may constitute irreparable harm").

### f.    Injunctive relief is warranted to prevent disclosure

The continued possession and use of Qorvo's trade secrets also irreparably harms Qorvo due to Qorvo's loss of control over the disclosure of those trade secrets. "A trade secret once lost is, of course, lost forever." *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 853-854 (N.D. Cal. 2019). As such, "[i]t is well established that . . . the disclosure of trade secrets can constitute irreparable harm." *Id.*; *see also UniRAM Tech., Inc. v. Taiwan Semiconductor*, No. 04-1268, 2008

WL 11515597, at *6 (N.D. Cal. Apr. 17, 2008) (loss of control over who receives trade secrets, "is itself an irreparable harm."); *Baker*, 553 S.E.2d at 230 (it is "well settled that an injunction will issue to prevent unauthorized disclosure"); *Fres-co System USA, Inc. v. Hawkins*, 690 F. App'x 72, 75-76 (3d Cir. 2017) (holding that the likelihood of future disclosure of trade secrets qualifies as irreparable harm).

Akoustis obtained and circulated a large number of Qorvo's trade secrets within Akoustis. Without an injunction, Qorvo cannot control to whom Akoustis further discloses the trade secrets. For example, Akoustis could disclose the trade secrets to other suppliers in the market for BAW filters or companies considering investing in or acquiring Akoustis. Akoustis could also publicly disclose the trade secrets in patent applications or conference presentations, claiming those trade secrets as Akoustis' own work. As reflected in the cases cited above, such a loss of control over the dissemination of trade secrets qualifies as irreparable harm.

### 2.      Remedies available at law are inadequate

Remedies available at law, such as money damages, cannot adequately compensate Qorvo for the harm arising from the continued use of its trade secrets. Here, the jury awarded past damages reflecting the unjust enrichment benefit that Akoustis received from entering the market early. The damages award did not compensate Qorvo for the irreparable injuries arising from future use of its trade secrets. Nor could any future monetary award fully compensate Qorvo for such injuries. There is no way to calculate money damages reflecting the full value of Qorvo's loss of market position, the harm to Qorvo's reputation and goodwill, or the harm from the disclosure of Qorvo's trade secrets. *See, e.g.*, *Quest Car Care Products, Inc. v. Titus*, No. 23-cv-1066, 2023 WL 9472302, at *4 (W.D. Mich. Dec. 27, 2023) ("An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate."). Indeed, each of these injuries is "irreparable" precisely because money damages are an inadequate

remedy for these types of harm. *See, e.g.*, *Nuziard v. Minority Bus. Dev. Agency*, No. 23-cv-00278, 2024 WL 965299, at *45 (N.D. Tex. Mar. 5, 2024) ("This is the flip side of 'irreparable harm,' as harm is irreparable where legal remedies are inadequate."). Moreover, it is not feasible for Qorvo to continuously return to court and seek compensation each time it suffers a recurring injury, such as a lost sale due to direct competition with Akoustis in the market for BAW filters. Injunctive relief is the only feasible remedy to address such irreparable and recurring injuries.

### 3.   The balance of the hardships strongly favors an injunction

The irreparable injuries to Qorvo from the continued use of its trade secrets (*see* Part II.B, above) far outweigh any hardship to Akoustis from an injunction. Indeed, Akoustis cannot identify any cognizable legal harm it will suffer if it is enjoined from continuing to use Qorvo's trade secrets. It is axiomatic that a defendant does not suffer hardship from refraining from activities (e.g., trade secret misappropriation) that the law already prohibits. *See, e.g.*, *BTL Indus. v. Advanced Regenerative Med.*, No 23-cv-0359, 2024 WL 455218, at *5 (D. Del. Feb. 6, 2024) (finding "no cognizable hardship to the defendants" from prohibiting trademark infringement); *WeRide Corp.*, 379 F. Supp. 3d at 853 (no hardship from doing "what the law already requires"); *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 & n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

### 4.   The public interest favors enjoining ongoing use of Qorvo's trade secrets

The Third Circuit has held that it is not necessary for district courts to engage in an "extended analysis" of the public interest factor in trade secret cases. *SI Handling*, 753 F.2d at 1264-65. Rather, "extensive precedent" concerning the public interest factor already "supports an injunctive remedy where the elements of a trade secret claim are established." *Id.*  For example,

the Third Circuit has recognized the "generalized public interest in upholding the inviolability of trade secrets." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010). There are no countervailing public interests at issue in this case.[7]

### 5.    The trade secret injunction is narrowly tailored

Qorvo is seeking a narrowly-tailored and specific injunction to prevent continuing use of its trade secrets—a so-called "use" injunction. *See, e.g.*, *General Electric Co. v. Sung*, 843 F. Supp. 776, 779 (D. Mass. 1994) (explaining a "use injunction" enjoins a party from "using the misappropriated information"). For example, Akoustis should be enjoined from the ongoing use of Qorvo's trade secrets (e.g., Qorvo's trimming procedures) to design and manufacture products. Qorvo is not seeking (at this time) a "production" injunction that would more broadly completely prohibit Akoustis from producing BAW filters. *Mallet & Co. v. Lacayo*, 16 F.4th 364, 389 (3d Cir. 2021) ("A production injunction . . . completely bars [a] defendant from manufacturing the type of product in which the trade secret is utilized."). Further, the proposed injunction specifically identifies the Misappropriated Trade Secrets that are the subject of the injunction—those trade secrets in groups 2-7 that the jury found to be misappropriated.

In addition to prohibiting continuing misappropriation of the trade secrets, the proposed injunction requires (i) engaging a qualified vendor to quarantine and remove Qorvo's confidential materials from the Akoustis computer systems; and (ii) giving Qorvo audit rights to ensure the prohibition on use and the quarantine and removal requirements have been satisfied. As noted above, such affirmative steps are authorized under the DTSA and NCTSPA and have been

---

[7] For example, there may be a countervailing public interest in "employers being free to hire whom they please and in employees being free to work for whom they please." *See Fres-co Systems*, 690 F. App'x at 80. But the injunction at issue here does not prevent Akoustis from hiring employees. The injunction instead prohibits continuing misappropriation of trade secrets.

commonly ordered in other cases involving willful and malicious trade secret misappropriation. *See, e.g.*, *Bridgetree*, 2013 WL 443698, at \*23-25; *Comet*, 2022 WL 4625149, at \*4-6.

### B.    Akoustis Should Be Enjoined from Infringing Qorvo's Patents

Qorvo also seeks an injunction prohibiting Akoustis from making, using, selling, offering to sell, or importing the products found to infringe the asserted patents. Again, each of the *eBay* factors supports issuance of a permanent injunction that bars future infringement.

### 1.    Absent a permanent injunction, Qorvo will suffer irreparable harm that cannot be fully compensated by monetary relief

For the sake of brevity and because the "issues of irreparable harm and adequacy of remedies at law are inextricably intertwined," Qorvo addresses them together here. *See ActiveVideo Networks, Inc. v. Verizon Communications. Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012). Both factors support enjoining Akoustis from continuing to infringe the asserted patents.

As discussed above in connection with the trade secret injunction, the direct competition between Qorvo and Akoustis gives rise to irreparable harm. Indeed, the Federal Circuit has recognized in patent cases that, "[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). In such a situation, monetary damages are inadequate. *See Fresenius Med. Care Holdings Inc. v. Baxter Int'l, Inc.*, No. 03-1431, 2008 WL 928496, at \*3-6 (N.D. Cal. Apr. 4, 2008), *rev'd on other grounds*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009) ("Courts routinely find irreparable harm, and therefore grant permanent injunctions where, as here, the infringer and the patentee are direct competitors" and that "monetary damages are not an adequate remedy against future infringement"); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 613 (D. Del. 2007) (finding irreparable harm and

monetary damages to be inadequate and noting the patentee "has a right, granted by Congress, not to assist its rival with the use of proprietary technology").

Here, Qorvo spent nearly 20 years and in excess of $1 billion to develop innovative technology and become a leader in the BAW filter market. *See* Part II.A, above. The record is replete with evidence not only that Akoustis has stolen Qorvo's trade secrets and infringed Qorvo's patents, but also that Akoustis is using Qorvo's own technology to compete against Qorvo for the same customers. [8] *See, e.g.*, Exs. 127, 133, 134, 163, 176, 179.

Moreover, Akoustis is projecting dramatic increases in sales, market share, and revenue over the next few years. Ex. 284; Trial Tr. (May 13), 1712:20-1713:11. Akoustis' gains will come at the expense of Qorvo based on the small amount of competitors in the market and Akoustis' efforts to target Qorvo's customers. Such economic impacts to Qorvo also demonstrate irreparable injury. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1152 (Fed. Cir. 2011) (evidence of loss of market share supports a finding of irreparable injury); *TEK Global, S.R.L. v. Sealant Sys. Int'l,* 920 F.3d 777, 793 (Fed. Cir. 2019) ("Head-to-head competition and lost market share tend to evidence irreparable harm[.]"). Moreover, "[t]he inherent difficulty of quantifying 'loss of market share, brand recognition, and customer goodwill' and of estimating monetary damages indicates that 'remedies at law are inadequate.'" *TEK Global,* 920 F.3d at 792. "[M]ere damages will not compensate for a competitor's increasing share of the market, a market which [plaintiff] competes in, and a market that [plaintiff] has in part created with its investment in patented technology." *Douglas Dynamics*, 717 F.3d at 1345. Such direct competition for customers is

---

[8] At least one court has found that a competitor's misappropriation of a patentee's confidential material to get a head start on market entry for its products is itself an irreparable injury to the patentee for which money damages would be inadequate. *See Sionyx LLC v. Hamamatsu Photonics K.K.*, 981 F.3d 1339, 1349-1350 (Fed. Cir. 2020).

particularly harmful in this market, where relationships with customers often last for years. *See* Trial Tr., 521:9-19; *see also, e.g.*, *Vector Security, Inc. v. Stewart*, 88 F. Supp. 2d 395, 401 (E.D. Pa. 2000).

Direct competition from Akoustis using Qorvo's patented technology also gives rise to irreparable harm because Qorvo does not license the asserted patents to its competitors. *See* Trial Tr., 1697:18-1699:9. Courts have long held that a patentee's unwillingness to license its patents supports a finding of irreparable harm that is not compensable by monetary damages. *See, e.g.*, *Presidio*, 702 F.3d at 1363 (unwillingness to license patent weighs in favor of finding irreparable injury); *Adv. Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 560-61 (D. Del. 2008) (refusal to license a patent to a direct competitor favors a finding of irreparable injury); *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-cv-02864, 2018 WL 3036759, *3 (N.D. Cal. June 19, 2018) ("The fact that Johnstech has never licensed [its] patent indicates that harm suffered by Johnstech cannot be fully redressed by money payment").

Finally, there is a clear causal nexus between the harms to Qorvo discussed above and Akoustis' infringement. *Bio-Rad Labs, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1377-78 (Fed. Cir. 2020). The record demonstrates that: (i) an important consideration for BAW filter customers is performance (Trial Tr., 474:18-22); (ii) the '018 and '755 Patents are directed to improving the most basic performance aspects of BAW filters—increased bandwidth and reduced loss  (*id.*, 1378:17-1379:6, 1387:22-1383:19, 1609:15-1611:8, 1612:20-1613:8); and (iii) Akoustis promotes these very performance improvements—"wide bandwidth" and "low insertion loss"—in its data sheets for the infringing BAW filters. *See, e.g.*, Exs. 240-257. Because the benefits of the patents go directly to at least one of the drivers of customer demand for the Accused Products, a causal nexus exists. *TEK Global*, 920 F.3d at 792.

### 2.     The balance of the hardships favors enjoining future infringement

Courts have often found that requiring a patentee to compete against its own patented invention is a substantial hardship on the patentee that favors entry of an injunction. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("[R]equiring [U.S. Silica] to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on [U.S. Silica]"); *see also E.I. DuPont de Nemours & Co. v. Unifrax I LLC*, No. 14-cv-1250, 2017 WL 4004419, at *5 (D. Del. Sept. 12, 2017) (weighing factor in plaintiff's favor because "requiring Plaintiff to compete against its own invention would be a substantial hardship"). The balance of hardships therefore weighs sharply in Qorvo's favor.

### 3.     The public interest favors enjoining future infringement

Courts in patent cases have consistently held that the public interest favors the enforcement of intellectual property rights. *Douglas*, 717 F.3d at 1345-1346 (public has a "greater interest in acquiring new technology through the protections provided by the Patent Act than it has" in there being additional product options); *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) ("[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions."); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) (finding the public's general interest in upholding patent rights favored injunctive relief). The public interest therefore weighs sharply in Qorvo's favor.

### 4.     The patent infringement injunction is narrowly tailored

Consistent with the jury's findings, Qorvo seeks entry of an Order that permanently enjoins Defendants from ongoing patent infringement. To that end, Akoustis, and all persons acting under, in concert with, or for it, should be enjoined and restrained from making, using, selling, or offering for sale within the United States, or importing into the United States the Akoustis BAW filter

products, or any colorable variations thereof, that have been found to infringe: (i) claims 1 and 12 of the '018 Patent through the expiration of the '018 Patent; and (iii) claims 9 and 10 of the '755 Patent through the expiration of the '755 Patent. The inclusion of "colorable variations" of the infringing products has repeatedly been found proper. *See Forest Labs., Inc. v. Ivax Pharm., Inc.*, 501 F.3d 1263, 1271-72 (Fed. Cir. 2007) (injunctive relief appropriate for "infringement of the patent by the adjudicated [products] and infringement by [products] not more than colorably different from the adjudicated [products]"); *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 341-42 (D. Del. 2011) (enjoining defendants from "making, using, selling, or offering to sell [the accused product] as well as any devices not more than colorably different therefrom that clearly infringe the Adjudicated Claims of [the patent]").

Additionally, Qorvo requests sampling, testing, and certification requirements be included with any permanent injunction. Immediately following the jury's verdict, Akoustis issued public statements that it had changed the design of all of its products so that they no longer infringe. For each product that Akoustis allegedly redesigned, Akoustis should be required to: (i) certify that the product is non-infringing; (ii) provide supporting documentary evidence showing that the product does not infringe (e.g., stack information); and (iii) provide cross-sectional electron microscopy analyses demonstrating the non-infringement.

## C.      If No Injunction Is Entered, Akoustis Should Pay a Running Royalty

As set forth above, monetary relief cannot adequately compensate Qorvo for the continuing use of its trade secrets, nor the ongoing infringement of its patents. However, to the extent the Court declines to issue a permanent injunction for one or both of the claims, Qorvo respectfully requests an order requiring the payment of a running royalty.

The payment of a running royalty is contemplated under the NCTSPA in the event the Court determines it would be "unreasonable" to enjoin continuing use of misappropriated trade

secrets. N.C. Gen. Stat. §66-154(a)(1) ("If the court determines that it would be unreasonable to enjoin use after a judgment finding misappropriation, an injunction may condition such use upon payment of a reasonable royalty for any period the court may deem just."). A reasonable royalty is also permissible under the DTSA in the "exceptional circumstance" that an injunction would be inequitable. *See* 18 U.S.C. § 1836(b)(3)(A)(iii) ("in exceptional circumstances that render an injunction inequitable" a court may grant an injunction "that conditions future use of the trade secret upon payment of a reasonable royalty"); *see also Bianco v. Globus Medical, Inc.*, No. 12-cv-00147, 2014 WL 1049067, at *12 (E.D. Tex. Mar. 17, 2014) (ordering procedure to determine ongoing royalty for misappropriated trade secrets in absence of permanent injunction). The payment of an ongoing royalty is also permissible in the absence of a permanent injunction in a patent case. *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007).

Again, Qorvo respectfully submits that this is **<u>not</u>** an "exceptional" circumstance where a permanent injunction would be "inequitable" or "unreasonable." If, however, the Court disagrees, Qorvo requests an order providing the parties with 30 days to attempt to negotiate a reasonable royalty for ongoing use of the trade secrets and patented technology, to be followed by further motion practice if no agreement is reached. *See Bianco*, 2014 WL 1049067, at *12.

## V.   CONCLUSION

For the reasons set forth above, Qorvo respectfully requests that the Court issue permanent injunctive relief in the form of the proposed Order submitted herewith.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Eric K. Gill
Zachary Alper
Theodore Mayer
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

James C. Wald
Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER
  & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

June 17, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 17, 2024, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                 *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Ronald S. Lemieux, Esquire                                    *VIA ELECTRONIC MAIL*
David S. Elkins, Esquire
Victoria Q. Smith, Esquire
SQUIRE PATTON BOGGS (US) LLP
1841 Page Mill Road, Suite 150
Palo Alto, CA  94304-1216
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Xiaomei Cai, Esquire                                          *VIA ELECTRONIC MAIL*
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, AZ  85016
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

Rachael A. Harris, Esquire                                    *VIA ELECTRONIC MAIL*
Matthew A. Stanford, Esquire
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
*Attorneys for Defendants Akoustis*
*Technologies, Inc. and Akoustis, Inc.*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)