IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| | ) |
| Plaintiff, | ) **PUBLIC VERSION** |
| | ) |
| v. | ) C.A. No. 21-1417 (JPM) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) |
| | ) ▇▇▇▇▇▇▇▇ |
| Defendants. | ) |

### PLAINTIFF QORVO, INC.'S REPLY BRIEF IN SUPPORT OF
### MOTION FOR PERMANENT INJUNCTIVE RELIEF

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
(202) 747-1900

Zachary Alper
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130-4092
(858) 720-8900

Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

**Confidential Version Filed: August 8, 2024**
**Public Version Filed: August 15, 2024**

# **TABLE OF CONTENTS**

Page

I. Introduction ................................................................................................................... 1

II. Qorvo Is Entitled to An Injunction for Akoustis' Trade Secret Misappropriation ............. 2

    A. Akoustis' Purported Voluntary Remediation Does Not Moot the Motion ............. 2

        1. Injunctive Relief is Needed to Ensure Transparency and Compliance ................................................................................................ 2

        2. Akoustis' Purported Remedial Efforts are Deficient ................................. 3

        3. Akoustis' Legal Authority is Distinguishable ............................................ 4

    B. Qorvo Faces Ongoing, Irreparable Harm .............................................................. 5

        1. "Actual" Damages Are Not Required for Injunctive Relief ....................... 5

        2. Akoustis Presents No Evidence to Overcome the Presumption of Irreparable Harm ....................................................................................... 6

        3. Akoustis' Legal Authority Supports Qorvo or is Distinguishable .............. 6

    C. Qorvo has No Adequate Remedy at Law .............................................................. 7

    D. Balance of the Hardships and Public Interest Favor Qorvo .................................. 7

III. Qorvo Is Entitled to An Injunction for Akoustis' Infringement of Qorvo's Patents .......... 8

    A. Akoustis' Purported Evidence of "Redesign" is Unsupported and Insufficient ............................................................................................................. 8

    B. The Balance of the Hardships and Public Interest Favor Qorvo ........................... 9

IV. In the Alternative, Qorvo is Entitled to an Ongoing Royalty ........................................... 10

V. Conclusion ...................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
    809 F.3d 633 (Fed. Cir. 2015) ................................................................................................10

*Bone v. Univ. of N. Carolina Health Care Sys.*,
    678 F. Supp. 3d 660 (M.D.N.C. 2023) .....................................................................................5

*Bridgetree, Inc. v. Red F Mktg. LLC*,
    No. 3:10-CV-00228-FDW, 2013 WL 443698 (W.D.N.C. Feb. 5, 2013) ..........................6, 7, 8

*CardiAQ Valve Techs., Inc. v. Neovasc Inc.*,
    708 F. App'x 654 (Fed. Cir. 2017) .......................................................................................7, 9

*Comet Technologies USA Inc. v. XP Power LLC*,
    2022 WL 4625149 (N.D. Cal. Sept. 30, 2022) ......................................................................5, 7

*Comet Technologies USA Inc. v. XP Power LLC*,
    2023 WL 3565070 (N.D. Cal. Mar. 22, 2023) ..........................................................................5

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) ................................................................................................9

*FTC v. Affordable Media*,
    179 F.3d 1228 (9th Cir. 1999) ..................................................................................................3

*KPM Analytics N. Am. Corp. v Blue Sun Scientific, LLC*,
    2024 WL 1558167 (D. Mass. Apr. 10, 2024) ...........................................................................7

*Legacy Data Access, LLC v. MediQuant, Inc.*,
    2017 WL 6001637 (W.D.N.C. Dec. 4, 2017) .......................................................................4, 5

*OmniGen Rsch., LLC v. Wang*,
    No. 16-cv-268, 2017 WL 5505041 (D. Or. Nov. 16, 2017) .....................................................3

*Peters v. Ryan*,
    No. 16-01332, 2017 WL 1393692 (D. Del. Apr. 13, 2017) ....................................................10

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996) ..................................................................................................7

*PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co.*,
    2021 WL 2327509 (W.D. Pa. June 8, 2021) ............................................................................5

*PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*,
    47 F.4th 156 (3d Cir. Aug. 30, 2022)......................................................................................6

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    No. CV 09-157, 2013 WL 6118447 (D. Del. Nov. 20, 2013), *aff'd*, 597 F.
    App'x 630 (Fed. Cir. 2015)..................................................................................................9

**Statutes**

18 U.S.C. § 1836(b)(3)(B) ............................................................................................................10

Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (1990) ..............................................5

North Carolina Trade Secrets Protection Act (N.C.G.S § 66-154(b)) ...........................................6

## I. Introduction

Akoustis does not dispute that it should be required to remove the misappropriated trade secrets from its computer systems. Indeed, Akoustis represents that this process is already underway. Akoustis argues, however, that it alone should be trusted to perform this process, without Court order and without granting Qorvo any audit rights. The evidence presented at trial revealed (repeatedly) why Akoustis cannot be trusted to act properly without an injunction.

The misappropriation in this case was not just widespread throughout the company—it was sanctioned by Akoustis' top management—many of whom remain at the company without facing any discipline for their extensive misconduct. Indeed, Akoustis' CEO at all relevant times (Dr. Jeffery Shealy) testified, under oath, that he specifically sought to hire employees who have other companies' trade secrets. Far from discouraging Akoustis' activities, Dr. Shealy solicited and directed Akoustis' misappropriation so he could personally profit from the sale of his company stock.[1] Dr. Shealy has never acknowledged the wrongdoing of himself or others at the company.

Like Dr. Shealy, Akoustis continues to deny any misconduct. Despite the jury's findings of willful and malicious trade secret misappropriation, Akoustis continues to argue in post-trial briefing that it did nothing wrong. It claims it is entitled to a new trial, and that the jury's verdict is wrong. Against this backdrop of brazen and unrepentant misconduct, Akoustis cannot be trusted to expunge Qorvo's trade secrets without injunction or audit—courts have repeatedly recognized that asking the proverbial fox to watch the henhouse is inappropriate. This is especially true where, as here, the misappropriation involves current employees (including top leadership) and the trade secrets were incorporated into the company's internal documents, processes, and products.

The declarations of Jerry Bui and Anthony Nixon reinforce the need for injunctive relief.

---

[1] *E.g.*, Trial Ex. 82, 83 (Trade Secrets 5.4 and 5.5, which the jury found were misappropriated).

They fail to identify with specificity any documents that Akoustis "purged," leaving both the Court and Qorvo unable to test the veracity of Akoustis' broad-sweeping representations. They also identify only a small handful of search terms. Not only are these search terms insufficient on their face, but they would not locate any documents where Akoustis used Qorvo's trade secrets after removing Qorvo's name or model numbers. This evidence was prevalent at trial.

Regarding the proposed patent injunction, Akoustis fails to provide any admissible evidence supporting its broad and unverified claims that it redesigned the infringing products. Mr. Nixon is Vice President of IT and has no role in the design or manufacture of products. Yet, Akoustis relies on a few conclusory sentences (which are inadmissible and not supported by actual evidence) to argue the products no longer infringe. Qorvo is entitled to judicial oversight and transparency to confirm that Akoustis' products no longer infringe the patents-in-suit.

## II.     Qorvo Is Entitled to An Injunction for Akoustis' Trade Secret Misappropriation

### A.     Akoustis' Purported Voluntary Remediation Does Not Moot the Motion

Akoustis' entire Opposition is premised on its claim that it has begun removing Qorvo's trade secrets from its systems, the process is "substantially complete[,] and will be fully completed in August 2024." Opp. at 4. Akoustis acts as if it is a verified, proven fact that its remedial efforts will be fulsome, complete, and accurate. Qorvo is not required to take Akoustis at its word.

#### 1.     Injunctive Relief is Needed to Ensure Transparency and Compliance

Given its knowledge of its own trade secrets, Qorvo (with the Court's assistance) is the only party that can ensure Akoustis has completely removed them from its systems. As shown at trial, Akoustis integrated many of Qorvo's trade secrets into Akoustis' documents, processes, and products—they will not be easily identified using search words like "Qorvo." For example, Akoustis incorporated Qorvo's trim process into its own trim processes, algorithms, and business flows to create Akoustis' BAW filters. Trial Tr. 1279:7-1287:7; Trial Exs. 11, 12, 215, 208-213,

2

216-217, 220. Qorvo must be involved in any remedial process to ensure Akoustis has completely purged its trade secrets.

Indeed, courts frequently issue permanent injunctions despite a defendant's arguments that it agreed to take action voluntarily. *See OmniGen Rsch., LLC v. Wang*, No. 16-cv-268, 2017 WL 5505041, at *20 (D. Or. Nov. 16, 2017) ("A defendant's voluntary cessation of…activity is not a ground for the denial of a permanent injunction."); *FTC v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999) ("[I]t is actually well-settled that an action for an injunction does not become moot merely because the conduct complained was terminated, if there is a possibility of recurrence[.]").

### 2. Akoustis' Purported Remedial Efforts are Deficient

Akoustis argues an injunction is unnecessary because it is working with FTI Consulting Inc. and Akoustis' outside counsel "to identify and permanently remove all Qorvo confidential documents and information[.]" Opp. at 4. This argument is problematic for several reasons.

First, FTI consulting is not an independent third party. It is a consulting firm Akoustis retained in June 2023 that has advocated for Akoustis throughout this litigation. A truly independent third party with no prior connection to this case is necessary to ensure transparency.

Second, as set forth in the concurrently-filed motion to strike, the Bui and Nixon Declarations are rife with inadmissible evidence. The Court should disregarded them. Regardless, Mr. Nixon (Akoustis' Vice President of IT) previously admitted that he failed to perform his job responsibilities adequately, which resulted in the deletion or destruction of evidence in this case from two key Akoustis custodians. D.I. 377, 470. It would be patently unfair to require Qorvo to rely solely on the efficacy of Akoustis' IT Department and Akoustis' consulting firm, especially given the prior mistakes of Akoustis' IT personnel.

Even if the Bui and Nixon Declarations are considered, they have several glaring deficiencies and fail to provide several categories of critical information. First, the declarations

3

fail to identify with specificity any documents Akoustis has actually purged. No file list or log has been identified or produced. Qorvo has no way of verifying which documents, if any, Akoustis deleted. But most concerning is the limited number of anemic search terms that Akoustis allegedly applied. Given the breadth and scope of Akoustis' willful and malicious misappropriation, it must do more than the bare minimum to purge Qorvo's trade secrets. Applying only obvious search terms such as "Qorvo" and "QPQ1901" are not enough.

Finally, Akoustis' purported remedial efforts are deficient because Qorvo's proposed injunctive relief is not limited to documents alone. As is typical for cases of this kind, Qorvo seeks an order enjoining, among other things, any possession or use of Qorvo's trade secret information, regardless of whether or not such information is ultimately reflected in documents. For example, Akoustis' purported remedial measures would not account for the use of Qorvo's trade secrets within Akoustis' physical trimming methods and procedures. Injunctive relief is necessary to enjoin all use of Qorvo's trade secrets, not just use that is reduced to writing.

### 3. Akoustis' Legal Authority is Distinguishable

Akoustis relies heavily on *Legacy Data Access, LLC v. MediQuant, Inc.*, 2017 WL 6001637 (W.D.N.C. Dec. 4, 2017). Opp. at 5-6. This case has no similarity to the facts of this case. *Legacy* involved a **single employee** found to have possessed or used the plaintiff's trade secrets. *Legacy Data Access, LLC*, 2017 WL 6001637 at 22. Critically, "the jury did not find that Defendant—apart from its agent Rowland—possessed or used Plaintiff's trade secrets." *Id*. Accordingly, the court determined that the defendant's termination of the single bad-acting employee mooted any need for an injunction. *Id*. Here, by stark contrast, the possession and use of Qorvo's trade secrets infiltrated Akoustis top to bottom. Qorvo's trade secrets were stored throughout Akoustis' computer systems and emails, incorporated or converted into Akoustis

4

documents, and passed around to at least 40 employees.[2] Unlike *Legacy*, those employees worked for Akoustis for many years and several remain at the company. And, the jury here made no finding that Akoustis itself did not possess or use Qorvo's trade secrets—it found just the opposite.

Akoustis' reliance on *Bone v. Univ. of N. Carolina Health Care Sys.*, 678 F. Supp. 3d 660 (M.D.N.C. 2023) is also misplaced. Opp. at 4-5. *Bone* was not a patent or trade secret case, and instead involved compliance with the Americans with Disabilities Act. Regardless, the case actually supports Qorvo's motion. The Court found that despite making "important organizational strides," the defendant's voluntary conduct did not stop the plaintiffs' "continuing irreparable harm[,]" entitling them to a partial injunction. *Bone*, 678 F. Supp. 3d at 695, 703.

### B.  Qorvo Faces Ongoing, Irreparable Harm

Akoustis also argues an injunction is inappropriate because, absent "direct" or "actual" damages, Qorvo cannot prove irreparable harm. Opp. at 6-8. This argument fails.

#### 1.  "Actual" Damages Are Not Required for Injunctive Relief

As a threshold matter, Akoustis does not cite a single case holding that "damages for actual loss" are required to find irreparable injury. Opp. at 7-8. That is not the law. Courts routinely find irreparable harm and issue injunctions where damages were based on unjust enrichment. *See, e.g.*, *Comet Technologies USA Inc. v. XP Power LLC*, 2022 WL 4625149, at *3 (N.D. Cal. Sept. 30, 2022) (granting permanent injunction); *Comet Technologies USA Inc. v. XP Power LLC*, 2023 WL 3565070, at *1 (N.D. Cal. Mar. 22, 2023) (discussing jury's $20 million unjust enrichment damages award); *PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co.*, Ltd., 2021 WL 2327509, at *11 (W.D. Pa. June 8, 2021) (awarding $8,805,929 in unjust enrichment damages for trade secret

---

[2] While Akoustis represents that Rohan Houlden, Robert Dry, and JB Kwon are no longer at Akoustis (Opp., p. 6), several other key misappropriators presumably remain employees, including Colin Hunt, Rama Vetury, Todd Bender, Mary Winters, and Daeho Kim.

misappropriation and granting permanent injunctive relief) *aff'd PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*, 47 F.4th 156, 164 (3d Cir. Aug. 30, 2022). Moreover, the NCTSA expressly defines unjust enrichment damages as "actual damages." N.C.G.S § 66-154(b) ("actual damages may be recovered, measured by . . . the unjust enrichment caused by misappropriation of a trade secret"). Akoustis cannot continue to unjustly enrich itself using Qorvo's trade secrets.

### 2. Akoustis Presents No Evidence to Overcome the Presumption of Irreparable Harm

The Motion established, and Akoustis does not dispute, that Qorvo is entitled to a presumption of irreparable harm given Akoustis' widespread misappropriation of Qorvo's trade secrets. D.I. 609 at 8-12. However, Akoustis has not presented any admissible evidence to rebut that presumption. A proclamation that the Court should trust Akoustis to act appropriately in the future, despite extensive evidence of willful and malicious conduct, is insufficient.

Akoustis' arguments regarding competitive harm also fail to rebut the presumption of irreparable harm. Qorvo did in fact present evidence at trial regarding loss of customers to Akoustis. Trial Tr. 350:1-351:15, 2013:6-2015:18. And, Akoustis' argument that there is no irreparable harm because it is a smaller company compared to some of Qorvo's other competitors makes no sense and has no legal basis. Opp. at 7. In sum, Akoustis has not met its burden in rebutting the presumption of irreparable harm in Qorvo's favor.

### 3. Akoustis' Legal Authority Supports Qorvo or is Distinguishable

Akoustis curiously relies on *Bridgetree, Inc. v. Red F Mktg. LLC*, No. 3:10-CV-00228-FDW, 2013 WL 443698 (W.D.N.C. Feb. 5, 2013), but that case directly supports Qorvo. Opp. at 7. There, the court issued a permanent injunction because "jury's finding of trade secret misappropriation entitles Plaintiff to a presumption of irreparable harm absent issuance of an injunction" and "monetary damages or other remedies for the ongoing possession and use of these

trade secrets would be inadequate[.]" *Id*. at *22. The same holds true here.

Akoustis also repeatedly cites to *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970 (Fed. Cir. 1996). Opp. at 5, 7, 10. That case does not support Akoustis. In fact, the Federal Circuit remanded the district court's denial of a preliminary injunction because the defendant failed to present evidence sufficient to overcome the presumption of irreparable harm. *Id*. at 975. Akoustis' self-serving representations that it expunged Qorvo's trade secrets are insufficient.

### C.     Qorvo has No Adequate Remedy at Law

Akoustis argues that the jury's monetary award "is more than adequate to compensate it for the alleged misappropriation of its trade secrets." Opp. at 9. But, the jury's award of damages only compensated Qorvo for Akoustis' prior unjust enrichment and not the harm Qorvo will suffer if future misappropriation is not enjoined. *See, e.g.*, *Comet Techs. USA Inc. v. XP Power LLC*, 2022 WL 4625149, at *2-3 (N.D. Cal. Sept. 30, 2022) (stating the jury "did not address ongoing or future harm" from unjust enrichment awards); *KPM Analytics N. Am. Corp. v Blue Sun Scientific, LLC*, 2024 WL 1558167, at *24 (D. Mass. Apr. 10, 2024) (stating that although damages award compensates for past harms suffered; it is inadequate to compensate for future injury).

Akoustis relies on *CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, 708 F. App'x 654 (Fed. Cir. 2017). But, in that case, the plaintiff asked the court to enjoin the defendant from working on its product for 18 months. *Id*. at 667 Here, Qorvo is not seeking to enjoin any of Akoustis' business operations or the development of competing BAW filters—it merely seeks to enjoin Akoustis' continued possession or use of Qorvo's trade secrets.

### D.     Balance of the Hardships and Public Interest Favor Qorvo

Akoustis argues in circular manner that the balance of the hardships weighs in its favor because "all the Qorvo confidential documents will be permanently removed from its records." Opp. at 9. Akoustis' representation further establishes that the balance of the hardships favors an

7

injunction because, according to Akoustis, much of the work has already been completed. Further, because Akoustis has claimed it is not using Qorvo's trade secrets (and will soon no longer possess them), there is no hardship by enjoining conduct Akoustis has already agreed to. *See Bridgetree, Inc.*, 2013 WL 443698 at *22 ("Defendants appear to concede that they would not suffer any hardships because they contend they are not using the trade secrets to compete with Plaintiff.").

The public interest weighs in Qorvo's favor because "the public interest would be best served by an injunction prohibiting the use of trade secrets acquired through inappropriate means." *Bridgetree, Inc.*, 2013 WL 443698 at *22.

### III. Qorvo Is Entitled to An Injunction for Akoustis' Infringement of Qorvo's Patents

Akoustis employs a similar "trust us" approach to opposing a patent-related injunction, arguing primarily that an injunction is unnecessary because Akoustis has "redesigned" its products. Opp. at 11. But, Akoustis offers no evidence that any of its newly released products are non-infringing. Akoustis' arguments therefore must fail.

#### A. Akoustis' Purported Evidence of "Redesign" is Unsupported and Insufficient

It is indisputable that courts routinely find irreparable harm when the parties directly compete. *See* D.I. 609 at 15-17. To get around this, Akoustis argues its redesigned products do not infringe. The Court should reject this argument because it is unsupported by ***admissible evidence***. Akoustis relies on Mr. Nixon's conclusory (and hearsay[3]) statement as evidence that it: (i) stopped selling "infringing versions" of the 19 products at issue; and (ii) now sells (allegedly) new, "non-infringing" versions of seven of those products. Nixon Decl., ¶12. But Mr. Nixon lacks foundation to testify regarding Akoustis' alleged re-designs. He is Akoustis' VP of Information Technology and has no role in designing or manufacturing the relevant products. Further, Mr. Nixon fails to

---

[3] Mr. Nixon relies on "conversations" with Akoustis' Kamran Cheema, to aver that it stopped selling infringing products. Qorvo has moved to strike these unreliable hearsay statements.

explain *how* Akoustis redesigned its products or *why* these "new" versions do not infringe. Nor does Akoustis provide any technical information reflecting the purported redesigns.

Instead of providing this most basic information, Akoustis deflects and argues that "it provided designs and physical samples of *the redesigned products*" during fact discovery. D.I. 609 at 11 (emphasis added). But the purported redesigned products were not released until *after trial*. What Akoustis provided during discovery were various samples of redesign alternatives. D.I. 465 at 18-19. Akoustis does not allege any of the prior samples reflect the actual designs of the seven "new" products. Thus, Akoustis fails to support its argument of no irreparable harm. Akoustis' reliance on *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. CV 09-157, 2013 WL 6118447 (D. Del. Nov. 20, 2013), *aff'd*, 597 F. App'x 630 (Fed. Cir. 2015) is also unavailing. There, the plaintiff admitted there was no future harm by the redesigned products. *Id*. at 12. Qorvo makes no such concession.

Akoustis argues that the jury's monetary award is adequate to compensate Qorvo. Opp. at 12-13. The jury's award compensated Qorvo for past infringement, and Qorvo is entitled to injunctive relief to prevent future infringement. *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("A damages award for pre-verdict sales…does not fully compensate the patentee because it fails to account for post-verdict sales[.]"). Akoustis' reliance on *CardiAQ* fails as described above, and it provides no legal authority demonstrating that an injunction cannot be issued after a jury awards damages for past patent infringement.

### B. The Balance of the Hardships and Public Interest Favor Qorvo

Akoustis argues that Qorvo cannot show that the balance of hardships favor it because Qorvo has allegedly not demonstrated "direct harm." Opp. at 13. But "direct harm" is part of the "irreparable harm" analysis, not the "balance of hardships." Regarding the latter, courts routinely find that requiring a patentee to compete against its own invention—as is the case here—is a

9

substantial hardship that favors an injunction. D.I. 609 at 18. Moreover, even if a "direct harm" showing was required, Qorvo established that Akoustis' wrongful conduct caused loss of market share and customers. *E.g.*, Trial Tr. 349:11-351:15, 877:5-12, 903:16-904:11, 1063:14-1065:5, 1078:23-1082:6, 1359:9-1360:2, 2012:24-2014:2, 2015:13-15; *see also e.g.*, Trial Exs. 4, 336, 338.

Akoustis also argues that Qorvo did not explain why the public interest would not be disserved by an injunction. Opp. at 13-14. But courts routinely find that the public interest favors intellectual property rights enforcement over additional product options. D.I. 609 at 18. This, along with the other factors discussed in Qorvo's opening brief and above, show an injunction best serves the public interest. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) ("[T]he public interest nearly always weighs in favor of protecting property rights[.]").

## IV. In the Alternative, Qorvo is Entitled to an Ongoing Royalty

Akoustis provides no response and therefore concedes that Qorvo is entitled to an ongoing royalty for patent infringement in absence of an injunction. *See Peters v. Ryan*, No. 16-01332, 2017 WL 1393692, at *2 (D. Del. Apr. 13, 2017) ("When a party files an opposition brief and fails to contest an issue raised in the opening brief, the issue is considered waived or abandoned[.]"). Akoustis claims the jury's unjust enrichment award "was effectively a fully paid-up royalty[.]" Opp. at 14. Akoustis misconstrues the law. The DTSA provides various forms of relief, and damages based on unjust enrichment or a royalty are two distinct forms of relief. 18 U.S.C. §1836(b)(3)(B). Qorvo pursued, and the jury awarded, damages based on unjust enrichment only. Qorvo remains entitled to an injunction or royalty to address Akoustis' ongoing misappropriation.

## V. Conclusion

Qorvo respectfully requests the Court grant Qorvo's Motion and enter a permanent injunction against Defendants and those working in concert with them as articulated in Qorvo's proposed order to enjoin conduct that was adjudicated at trial.

| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| | */s/ Jeremy A. Tigan* |
| OF COUNSEL: | _____ |
| | Jack B. Blumenfeld (#1014) |
| Robert M. Masters | Jeremy A. Tigan (#5239) |
| Jonathan R. DeFosse | Anthony D. Raucci (#5948) |
| Timothy P. Cremen | 1201 North Market Street |
| Roy D. Jung | P.O. Box 1347 |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | Wilmington, DE  19899-1347 |
| 2099 Pennsylvania Avenue, NW, Suite 100 | (302) 658-9200 |
| Washington, DC  20006-6801 | jblumenfeld@morrisnichols.com |
| (202) 747-1900 | jtigan@morrisnichols.com |
| | araucci@morrisnichols.com |
| Zachary Alper | |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | *Attorneys for Plaintiff Qorvo, Inc.* |
| 12275 El Camino Real, Suite 100 | |
| San Diego, CA  92130-4092 | |
| (858) 720-8900 | |
| | |
| Kazim A. Naqvi | |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | |
| 1901 Avenue of the Stars, 16th Floor | |
| Los Angeles, CA  90067 | |
| (310) 228-3700 | |
| | |
| Jennifer Klein Ayers | |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | |
| 2200 Ross Avenue, 20th Floor | |
| Dallas, TX 75201 | |
| (469) 391-7400 | |

August 8, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 8, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | VIA ELECTRONIC MAIL |
| Ronald S. Lemieux, Esquire<br>David S. Elkins, Esquire<br>Victoria Q. Smith, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>1841 Page Mill Road, Suite 150<br>Palo Alto, CA  94304-1216<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | VIA ELECTRONIC MAIL |
| Xiaomei Cai, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>2325 E. Camelback Road, Suite 700<br>Phoenix, AZ  85016<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | VIA ELECTRONIC MAIL |
| Rachael A. Harris, Esquire<br>Matthew A. Stanford, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>2550 M Street, NW<br>Washington, DC  20037<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | VIA ELECTRONIC MAIL |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)