IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | **PUBLIC VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) | |
| | ) | ▮▮▮▮▮ |
| Defendants. | ) | |

**QORVO, INC.'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR ATTORNEYS' FEES</u>**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Zachary Alper
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA  92130-4092
(858) 720-8900

Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA  90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

**Confidential Version Filed: August 8, 2024
Public Version Filed: August 15, 2024**

**TABLE OF CONTENTS**

|      |      |                                                                                          | Page |
|------|------|------------------------------------------------------------------------------------------|------|
| I.   |      | Introduction ............................................................................ | 1 |
| II.  |      | Akoustis' intentional misappropriation harmed Qorvo ................................. | 1 |
| III. |      | The law supports awarding Qorvo the full amount of fees it seeks ..................... | 3 |
| IV.  |      | The attorneys' fees Qorvo seeks to recover are reasonable ............................ | 5 |
|      | A.   | Qorvo is entitled to recover for work performed prior to November 2022 ............ | 5 |
|      | B.   | Akoustis' allegations of litigation misconduct ignores the facts .................... | 7 |
|      | C.   | Qorvo already accounted for its block billed time ................................... | 8 |
|      | D.   | Qorvo properly staffed the depositions it took of Akoustis' witnesses ............. | 9 |
| V.   |      | Conclusion ............................................................................. | 10 |

██████████████████████████

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arnold's Office Furniture LLC v. Borden*,
  No. 5:20-cv-05470, 2023 WL 3851978 (E.D. Pa. June 6, 2023)..............................................2

*Citcon USA, LLC v. RiverPay, Inc.*,
  2022 WL 287563 (9th Cir. Jan. 31, 2022) ................................................................................3

*Eng'g Res., Inc. v. CRS Steam, Inc.*,
  No. 94-cv-6970, 1997 WL 232778 (N.D. Ill. May 1, 1997)......................................................4

*Fair Housing Center of Central Indiana, Inc. v. Welton*,
  1:18-cv-1090, 2020 WL 2218950 (S.D. Ind. May 7, 2020) ......................................................8

*Federal Trade Commission v. Circa Direct LLC*,
  912 F. Supp. 2d 165 (D.N.J. 2012) ...........................................................................................9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...............................................................................................................5, 6

*In re Wilson*,
  1998 WL 671658 (4th Cir. Sep. 23, 1998) ...............................................................................3

*J.L. v. Harrison Twp. Bd. of Educ.*,
  No. 14-2666, 2016 WL 4430929 (D.N.J. Aug. 19, 2016) .........................................................8

*Klapper v. Sullivan*,
  No. 17-cv-13137, 2023 WL 5337151 (D.N.J. Aug. 18, 2023) ..................................................9

*Minehan v. McDowell*,
  No. 21-5314, 2023 WL 8701296 (E.D. Pa. Dec. 15, 2023).......................................................9

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
  No. 1:17-cv-01973, D.I. 1099....................................................................................................5

*Motorola Solutions, Inc. v. Hytera Comm. Corp. Ltd.*,
  2021 WL 12139698 (N.D. Ill. Oct. 15, 2021)..................................................................3, 4, 5

*National Resource Defense Council, Inc. v. Fox*,
  129 F. Supp. 2d 666 (S.D.N.Y. 2001).......................................................................................6

*Nunez v. City of Pompano Beach*,
  2021 WL 5213089 (S.D. Fla. Oct. 25, 2021)............................................................................6

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
 399 F.Supp.2d 1064 (N.D. Cal. Nov. 10, 2005) ...................................................................3, 4

*Oden v. Shane Smith Enterpr., Inc.*,
 27 F.4th 631 (8th Cir. 2022) ......................................................................................................8

*Pl. Parenthood v. Atty. Gen. of State of NJ*,
 297 F.3d 253 (3d Cir. 2002).......................................................................................................9

*PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*,
 2022 WL 22288281 (W.D. Pa. Nov. 14, 2022) ........................................................................3

*PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*,
 2021 WL 2327509 (W.D. Pa. June 8, 2021),
 *aff'd* 47 F.4th 156 (3d Cir. Aug. 30, 2022) ................................................................................3

*Raab v. City of Ocean City*,
 No. 11-cv-6818, 2017 WL 2779753 (D.N.J. Jun. 26, 2017) ....................................................9

*Sabre GLBL, Inc v. Shan*,
 779 Fed.Appx. 843 (3d. Cir. July 3, 2019) ...............................................................................3

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
 No. 15-cv-211, 2024 WL 1116090 (S.D.N.Y. Mar. 13, 2024).............................................4, 5

*Watcher v. Pottsville Area Emergency Medical Svc., Inc.*,
 559 F. Supp. 2d 516 (M.D. Pa. 2008) .....................................................................................10

**Statutes**

California Uniform Trade Secrets Act (Cal. Civil Code § § 3426-3426.11)...................................4

Defend Trade Secrets Act (18 U.S.C. § 1836, et seq)  .....................................................................1

Title VII of the Civil Rights Act (42 U.S.C. §§ 2000e - 2000e17 (as amended)) ..........................6

North Carolina Trade Secrets Protection Act (N.C.G.S § 66-154(b)) .........................................1, 3

I. **Introduction**

Akoustis asks the Court to exercise its discretion and deny Qorvo's request for attorneys' fees because (1) there is no evidence that Akoustis "intentionally harmed" Qorvo and (2) the jury's monetary award is sufficient "punishment" for Akoustis conduct. The Court should not be swayed by these arguments. As set forth below and in Qorvo's Motion, Akoustis' top management sanctioned and participated in Akoustis' multi-year scheme to steal Qorvo's trade secrets. Moreover, the cases Akoustis cites to support its arguments are not comparable to this one.

Realizing that the evidence supports a substantial fee award, the remainder of Akoustis' Opposition asks the Court to reduce the amount it awards for various reasons. As a threshold matter, Akoustis' Opposition appears to concede that Qorvo is entitled to at least $6,964,626.04 if the Court exercises its discretion and awards fees. *See* Opp., p. 20. Akoustis' complaints about the remaining balance of Qorvo's request ($5,151,497.26), however, ignores the evidence in this case and misapplies the law. Akoustis' willful and malicious conduct was pervasive and provides a model for when an attorneys' fees award is appropriate. Accordingly, Qorvo respectfully asks the Court to exercise its discretion and award it $12,116,123.30 in attorneys' fees.

II. **Akoustis' intentional misappropriation harmed Qorvo**

Akoustis' argument that it did not "intentionally" or "affirmatively" harm Qorvo attempts to rewrite history and the standard for awarding attorneys' fees under the DTSA and NCTSA.

Akoustis claims that only "four individuals" at Akoustis (Houlden, Vetury, Dyer, and Dry) ignored its prohibition against taking other companies' confidential information. Opp., p. 6. The evidence at trial, however, told a different story. David Aichele, Akoustis' Executive Vice President of Business Development, solicited Qorvo trade secrets from Rohan Houlden before Mr. Houlden left Qorvo. Tr. 672:16-17, 887:18-23; Trial Exs. 22. He also routinely solicited and reimbursed intermediaries in China and Korea to obtain Qorvo's trade secrets. Tr. 895:23-927:3;

1

*see e.g.*, Trial Ex. 137. Colin Hunt, Akoustis' President of Global Sales, also solicited Qorvo's trade secret prototypes from China. *E.g.*, Tr. 1057:15-1090:10; Trial Ex. 177. And Dr. Shealy, Akoustis' Chief Executive Officer, testified that he targeted hiring employees with trade secrets. Tr. 1169:7-1171:14. These are just a handful of examples out of dozens proving that Akoustis' culture of corruption started at the top. Motion, p. 9-11.

Akoustis' exclamations that it did not "use" Qorvo's trade secrets (Opp., p. 7) also ignores both the evidence and the jury's verdict. For example, trial evidence shows that Mr. Aichele copied Qorvo's trade secrets into Akoustis' business plans and specifications. Tr. 886:14-892:20; Trial Exs. 22, 124. The evidence also shows that Akoustis distributed Qorvo's trade secret trimming algorithms to the Technical Committee of its Board of Directors. Tr. 1831:14-1836:11; Trial Exs. 212, 213, 220. Joel Morgan, Akoustis' Vice President of Quality, wrote that Qorvo's reliability and mean-time-to-failure trade secrets were "the primary document [he] [has] been referencing[.]" Tr. 727:16-728:23, 846:1-12; Trial Exs. 72, 73. Mr. Aichele even admitted that he circulated Qorvo's confidential information when he thought it would help Akoustis make strategic decisions. Tr. 900:11-902:21. Akoustis' misappropriation and use of Qorvo's trade secrets was far more pervasive than just a few "bad apples" (*e.g.*, Houlden, Vetury, Dyer, and Dry).

Against this evidentiary backdrop, the cases cited in Akoustis' Opposition are readily distinguishable. In *Arnold's Office Furniture LLC v. Borden*, the court decided not to award fees because of testimony suggesting the defendant's actions were authorized by an agreement with the plaintiff. No. 5:20-cv-05470, 2023 WL 3851978, at *10 (E.D. Pa. June 6, 2023). Akoustis cannot claim the same. Witness after witness admitted they were not authorized to take, possess, or use Qorvo's trade secrets. *E.g.*, Tr. 733:20-22 (Houlden), 1015:12-21 (Aichele), 1061:11-15 (Hunt).

In *Citcon USA, LLC v. RiverPay, Inc.,* the court based its decision not to award fees on the plaintiff losing **four out of five** asserted trade secrets (a 20% success rate). 2022 WL 287563, at *2 (9th Cir. Jan. 31, 2022). Here, Qorvo proved Akoustis misappropriated over three dozen trade secrets, or nearly 85% of the asserted trade secrets at trial. These cases did not rewrite the standard for awarding fees to require "intentional" or "affirmative" harm.

Akoustis' exclamations that Qorvo suffered no "actual damages" is another red herring. Opp., p. 11. Courts routinely award attorneys' fees on awards of unjust enrichment damages in trade secret misappropriation cases. *See e.g.*, *PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*, 2022 WL 22288281, at *4 (W.D. Pa. Nov. 14, 2022) (awarding $2,151,947.50 in attorneys' fees)[1]; *Sabre GLBL, Inc v. Shan*, 779 Fed.Appx. 843, 859 (3d. Cir. July 3, 2019) (affirming award of head start damages and reinstating arbitrator's award of attorneys' fees); *Motorola Solutions, Inc. v. Hytera Comm. Corp. Ltd.*, 2021 WL 12139698, at *1 (N.D. Ill. Oct. 15, 2021). And the NCTSA expressly defines unjust enrichment damages as "actual damages." N.C.G.S § 66-154(b). Akoustis cannot sidestep an award of attorneys' fees by claiming its conduct did not "harm" Qorvo.

### III. The law supports awarding Qorvo the full amount of fees it seeks

Next, Akoustis argues that the Court should deny Qorvo's motion because the jury punished Akoustis enough. Opp., p. 11. None of Akoustis' cases, however, support denying Qorvo's request on this basis. In *In re Wilson*, the plaintiff prevailed on only 33% of its asserted trade secrets. 1998 WL 671658, at *1 (4th Cir. Sep. 23, 1998). The exemplary damages were also double the plaintiff's compensatory damages. *Id*. Similarly, in *O2 Micro Int'l Ltd. v. Monolithic*

---

[1] The *PPG* Court also awarded $8,805,929 in unjust enrichment damages for trade secret misappropriation. *PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co.*, Ltd., 2021 WL 2327509, at *11 (W.D. Pa. June 8, 2021) (awarding $8,805,929 in unjust enrichment damages for trade secret misappropriation) *aff'd* 47 F.4th 156, 164 (3d Cir. Aug. 30, 2022);

*Power Sys., Inc.*, both sides sought fees as the "prevailing party" under the California UTSA because the jury awarded the plaintiff damages on only one out of eleven trade secrets. 399 F.Supp.2d 1064, 1069 (N.D. Cal. Nov. 10, 2005). The court denied both sides' motions. *Id.*, at 1080. Here, the jury found Akoustis misappropriated 39 out of 46 trade secrets. D.I. 601. The jury's exemplary damages award was also less than a quarter (25%) of the compensatory damages.

Finally, Akoustis' present market capitalization is not a basis for denying Qorvo's request for fees. Not only did Akoustis fail to cite a case supporting denial on this ground,[2] but Akoustis has also repeatedly told investors that "[m]anagement does not expect the verdict will affect its ability to market its product portfolio[,]" and that it has secured millions of dollars of "volume orders" with "Tier-1" customers. Ayers Decl., Exs. A-C. Akoustis also raised $10 million from institutional investors five (5) days after the jury issued its verdict. Ayers Decl., Ex. D. Akoustis' "lack of wealth," even if to be believed, is not grounds for denying Qorvo's request for fees.

Akoustis' arguments that *TriZetto Group Inc.* and *Motorola Solutions, Inc.* fail to support the amount of fees Qorvo seeks are similarly misplaced. Opp., p. 13. The district court in *TriZetto* expressly held that the trade secret claims were intertwined with the copyright claim, and that both were based on "related legal theories," and "essentially the same proof." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15-cv-211, 2024 WL 1116090, at *5 (S.D.N.Y. Mar. 13, 2024). Moreover, the amount of work necessary to investigate and try a misappropriation case does not decrease simply because there is less time to do the work. The fact that Qorvo compressed five years of work into a shorter amount of time and billed 5,400 hours less than the fee-winner in *TriZetto* is not grounds for reducing Qorvo's fee award.

---

[2] The court in *Eng'g Res., Inc. v. CRS Steam, Inc.*, did not deny fees because the award was likely to bankrupt the defendant. Instead, it denied fees under the facts of that case and because the bills were missing numerous pages. No. 94-cv-6970, 1997 WL 232778, at *9 (N.D. Ill. May 1, 1997).

Similarly, although the work performed by attorneys in *Motorola Solutions, Inc.* "dwarfs" "the statistics of the present litigation[,]" so too did Motorola's fee award—$34.2 million. Opp., p. 13 (citing *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-cv-01973, 2021 WL 12139698, at *6 (N.D. Ill. Oct. 15, 2021)). Unsurprisingly, the hours worked in *Motorola Solutions, Inc.* (35,005) was more than double the hours of Qorvo's attorneys.[3] Notably, the court awarded $34.2 million in attorneys' fees even though it had already entered judgment of $135.8 million in compensatory and $271.6 million in exemplary damages. *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-cv-01973, D.I. 1099, at *2 ((N.D. Ill. Jan. 8, 2021). The fees Qorvo seeks are reasonable and comparable to other large misappropriation of trade secret cases.

## IV. The attorneys' fees Qorvo seeks to recover are reasonable

Recognizing that "the Court has no obligation to scrutinize a fee application line by line…but is 'to do rough justice[,]'"[4] the remainder of Akoustis' Opposition asks the Court to reduce any fee award for various reasons. The Court should reject each of these arguments.

### A. Qorvo is entitled to recover for work performed prior to November 2022

First Akoustis asks the Court to deny fees for any work that occurred prior to November 2022 because Qorvo's original Complaint did not assert a misappropriation claim. As set forth in Qorvo's Motion, however, courts routinely award fees for work where the plaintiff's claims for relief "involve a common core of facts" or are "based on related legal theories," or if "time is devoted generally to the litigation as a whole[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

---

[3] The average hourly rate in *Motorola Solutions, Inc.* was also $197.6 higher than Qorvo's average hourly rate. *See* 2021 WL 12139698, at *1 (the attorneys' fee award of $34,244,385.50 divided by the total hours for which fees were requested, 35,005, comes out to an average hourly rate of $978.3. In comparison, Qorvo's requested fee award of $12,116,123.30 divided by the total hours for which fees were requested, 15,520.4, comes out to an average hourly rate of $780.7).

[4] *Syntel*, 2024 WL 1116090, at *7 (quotation omitted).

Qorvo's attorneys reviewed more than 6,000 individual billing entries one-by-one (Motion, pp. 17-18), applied *Hensley*, and excluded work performed on unrelated claims (*e.g.*, patent infringement, false advertising, RICO, etc.), but included work for the unfair competition and conspiracy claims because there is a common nexus between the evidence supporting those claims and Qorvo's misappropriation claim. Akoustis produced more than 12,000 documents before November 2022. Ayers Decl., ¶ 2. Qorvo discovered Akoustis' misappropriation reviewing these documents. D.I. 621; DeFosse Decl., Ex. 1, pp. 40, 43, 48 (document review time entries). Excluding this work is not appropriate, and the cases Akoustis cites explain why.

In *Nunez v. City of Pompano Beach*, the plaintiff sued the defendants alleging they unlawfully terminated him because he refused to violate Florida state law and acquiesce to demands from the city manager to issue building permits. No. 20-cv-62626, D.I. 1-4, at *3 (S.D. Fla. Dec. 21, 2020). A year and a half later, the plaintiff filed a third amended complaint and added a claim under Title VII of the Civil Rights Act for discrimination based upon race and ethnicity. *Nunez v. City of Pompano Beach*, 2021 WL 5213089, **1-2 (S.D. Fla. Oct. 25, 2021). After winning a motion to dismiss, one defendant sought to recover fees as a prevailing party under Title VII. *Id.*, *2. The court limited the fee award to those incurred after the plaintiff filed the third amended complaint because the defendant did "not explain whether or how the [earlier] state law claims against him were interrelated with the frivolous [Title VII] claims[.]" *Id.* *5.

The court in *National Resource Defense Council, Inc. v. Fox* applied a similar rationale when it **awarded** fees for "[u]nsuccessful [c]laims" because they were "intertwined with [a] successful [c]laim" and "involve[d] a common core of facts" "based on related legal theories[.]" *Id.* 129 F. Supp. 2d 666, 672-73. Here, Qorvo excluded work unrelated to its trade secret claims. Motion, p. 18. Qorvo is entitled to recover fees for work performed prior to November 2022.

6

### B. Akoustis' allegations of litigation misconduct ignores the facts

Next Akoustis argues the Court should reduce Qorvo's fees by $1.98 million because "Qorvo's decision to pursue an unreasonable number of trade secrets and…refusal to specify the trade secrets at issue…resulted in excessive fees." Opp., pp. 15-16. The Court should reject this argument—it is incorrect and ignores Qorvo's right to investigate Akoustis' misappropriation.

First, contrary to Akoustis' complaints, Qorvo did "specify the trade secrets at issue" before trial. Not only did Qorvo's pre-trial disclosures identify specific documents, they often used pinpoint citations. *E.g.*, Elkins, Ex. 11, p. 43 (identifying AKTS_00197076 in ¶ 60.2) *and* Elkins, Ex. 12, p. 3 (identifying AKTS_00197076) *with* Trial Ex. 20 at AKTS_00197076 *and* Tr. 481:24-486:8 ("[i]f we go to Akoustis page 197076…"). Dr. Shanfield's Expert Report also used pinpoint citations and even used images of the trade secrets. Ayers Decl., Ex. E, ¶¶ 82-84, 86 (identifying AKTS_00197076). Qorvo did not engage in "hide the ball" tactics. It disclosed the trade secrets it presented at trial long before May 15, 2024.[5]

Moreover, Akoustis' claim that Qorvo engaged in "abusive litigation tactics" is nonsensical. As a threshold matter, the number of trade secrets that Qorvo identified in its pretrial disclosures is a direct reflection of the massive amount of material that Akoustis stole. The only way to narrow a list of "top" trade secrets for jury trial is to review documents, gather evidence, take depositions, and understand the rebuttal case. The parties were still taking fact depositions in November 2023, and Akoustis did not produce certain of the computers subject to the forensic inspection until November 10, 2023. Ayers Decl., ¶ 3. Qorvo also did not depose Akoustis' trade

---

[5] Akoustis essentially re-argues its Motion for Summary Judgment that Qorvo "has failed to identify the asserted trade secrets with sufficient particularity." D.I. 545, p. 3-5. The Court should reject its argument that Qorvo engaged in "abusive litigation tactics" by "failing to specify" the alleged trade secrets for the same reasons articulated in the Court's Order denying Akoustis' motion for summary judgment. *Id.*

secret experts, Drs. Darveaux and Lebby, until the end of January 2024. Qorvo is entitled to recover fees for all this work, not just some of it.[6]

Importantly, all of the cases Akoustis cites involved express findings of bad faith. *Oden v. Shane Smith Enterpr., Inc.*, 27 F.4th 631, 634 (8th Cir. 2022) (demand for fees four times greater than actual fees was bad faith); *Fair Housing Center of Central Indiana, Inc. v. Welton*, 1:18-cv-1090, 2020 WL 2218950, *11 (S.D. Ind. May 7, 2020) (relying on prior findings of discovery abuse to reduce fee award); *J.L. v. Harrison Twp. Bd. of Educ.*, No. 14-2666, 2016 WL 4430929, at *2 (D.N.J. Aug. 19, 2016) (describing plaintiff's counsel as "unprofessional, at times unethical, and hostile"). At no time has Qorvo engaged in bad faith behavior requiring a reduction of its fees.

### C. Qorvo already accounted for its block billed time

Akoustis next asks the court to reduce the total amount of fees it awards Qorvo by almost $500,000 because Qorvo's counsel "block billed" time entries prior to April 1, 2023. As a threshold matter, Akoustis' request ignores the fact that Qorvo already accounted for this issue in its fees submission. *E.g.*, D.I. 621, DeFosse Decl., ¶ 4 (Qorvo seeks to recover only $11.7 million of $14.2 million billed by Sheppard Mullin), ¶ 13 (excluding $1,062,761.80 in fees for Mr. Cremen's work).

In fact, from September 2021 to March 30, 2023, Sheppard Mullin billed Qorvo almost $4.6 million. Ayers Decl., ¶ 6. Qorvo's Motion, however, seeks to recover only $3.2 million—**a voluntary reduction of $1.3 million**. *Id.* Of that $3.2 million, over $1 million involves work relating to multiple claims (*e.g.*, "partially included" time entries). *Id.* But Qorvo's Motion seeks to recover only $493,311.38 of that $1 million. *Id.* In other words**, Qorvo voluntarily applied a**

---

[6] Notably, after Qorvo served its initial May 10, 2023 trade secret disclosure, Akoustis' counsel, Dianne Sweeney, told the Court that "the trade secret identification is what really volleys the ball back to us to then identify what we're going to present in rebuttal." D.I. 199, 37:20-24. Qorvo was not obligated to develop and disclose its trial strategy to Akoustis in July 2023.

8

**52% reduction** to "partially included" time entries. *Id.* Numerous courts have refused to reduce a fee request where the party seeking fees already voluntary reduced them. *E.g.*, *Klapper v. Sullivan*, No. 17-cv-13137, 2023 WL 5337151, at *2, *4 (D.N.J. Aug. 18, 2023) (rejecting proposed 30% discount on block-billed time because the plaintiff voluntarily reduced entries containing non-compensable work); *Minehan v. McDowell,* No. 21-5314, 2023 WL 8701296, at *4 (E.D. Pa. Dec. 15, 2023) (accepting the prevailing party's reductions); *see also Raab v. City of Ocean City*, No. 11-cv-6818, 2017 WL 2779753, at *5 (D.N.J. Jun. 26, 2017) ("block billing will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed").

Notably, Akoustis has not identified any specific "blocked billed" time entries which it contends are unreasonable. *Federal Trade Commission v. Circa Direct LLC*, 912 F. Supp. 2d 165, 177 (D.N.J. 2012) ("time entries must only be specific enough to allow the district court to determine if the hours claimed are unreasonable"). Because Qorvo already reduced the total amount of fees that it seeks for this time period by more than the amount Akoustis requests, the Court should deny it. Akoustis is not entitled to a "double-dip" reduction.

### D.     Qorvo properly staffed the depositions it took of Akoustis' witnesses

Next Akoustis asks the Court to reduce the fee award to Qorvo by $74,313.30 because multiple attorneys attended the depositions of certain witnesses. Opp., p. 18-19. The Court should also reject this request. This case involves complex technology and a detailed scheme to misappropriate thousands of documents containing hundreds of Qorvo trade secrets. Motion, pp. 1-11. Unsurprisingly, deposing Akoustis' witnesses required careful preparation, specialized knowledge of the technology, and an encyclopedic understanding of the evidence. *Pl. Parenthood v. Atty. Gen. of State of NJ*, 297 F.3d 253, 272 (3d Cir. 2002) (affirming fee award and overruling objections predicated on overstaffing in "complex" case that required specialized knowledge). Qorvo appropriately staffed all of the depositions about which Akoustis now complains.

Ironically, Akoustis' own conduct proves the necessity of having multiple attorneys at these depositions because Akoustis often sent more than one attorney to defend them. For example, Akoustis sent **three lawyers** (David Jakopin, Dianne Sweeney, and Theresa Roozen) to defend both Robert Dry's and Rohan Houlden's depositions. Ayers Decl., ¶ 4, *id.*, Ex. F at 17, 29.[7] In combination, Mr. Jakopin, Ms. Sweeney, and Ms. Roozen have **75 years of legal experience**. Mr. Jakopin and Ms. Sweeney also attended Dr. Michael Hodge's deposition. *Id.* And, both Mr. Jakopin and Ms. Roozen attended the deposition of Ms. Ya Annia Shen. *Id.* Even Akoustis' new counsel at Square Patton Boggs sent multiple attorneys to take depositions in this case. *Id.*

Other facts also underscore the reasonableness of Qorvo's conduct. All of the witnesses on Akoustis' list were central figures in the case—half testified adversely at trial during Qorvo's case in chief. The sheer volume of information possessed by these witnesses also supports sending multiple lawyers to their depositions. Qorvo used 735 exhibits during these depositions. Ayers Decl., ¶ 5. Four witnesses (Johnson, Kim, and Nixon) were deposed at the end of fact discovery, immediately before Qorvo served its expert reports, and junior associates (Alper, Jung) accompanied by senior lawyers took three of the depositions. Under the totality of the circumstances, it was reasonable for Qorvo to send two attorneys to each of the depositions Akoustis identifies. The Court should decline Akoustis' request for any fee reduction.[8]

## V. Conclusion

For the reasons set forth above and in Qorvo's Motion, Qorvo respectfully requests that the Court award its reasonable attorneys' fees—$12,116,123.30.

---

[7] The pin cites here refer to PDF page numbers in Ex. F to the Ayers Decl.

[8] Akoustis also complains that Qorvo should not have billed for travel time and/or time spent shredding documents to comply with the protective order. The law supports Qorvo's request for these fees. *E.g., Watcher v. Pottsville Area Emergency Medical Svc., Inc.*, 559 F. Supp. 2d 516 (M.D. Pa. 2008) ("attorney travel to depositions and similar events is 'routinely allowed[.]'").

███████████████████████████

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Jeremy A. Tigan* |
| OF COUNSEL: | _____ |
|  | Jack B. Blumenfeld (#1014) |
| Robert M. Masters | Jeremy A. Tigan (#5239) |
| Jonathan R. DeFosse | Anthony D. Raucci (#5948) |
| Timothy P. Cremen | 1201 North Market Street |
| Roy D. Jung | P.O. Box 1347 |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | Wilmington, DE 19899-1347 |
| 2099 Pennsylvania Avenue, NW, Suite 100 | (302) 658-9200 |
| Washington, DC 20006-6801 | jblumenfeld@morrisnichols.com |
| (202) 747-1900 | jtigan@morrisnichols.com |
|  | araucci@morrisnichols.com |
| Zachary Alper |  |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | *Attorneys for Plaintiff Qorvo, Inc.* |
| 12275 El Camino Real, Suite 100 |  |
| San Diego, CA 92130-4092 |  |
| (858) 720-8900 |  |

Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

August 8, 2024

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 8, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Ronald S. Lemieux, Esquire<br>David S. Elkins, Esquire<br>Victoria Q. Smith, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>1841 Page Mill Road, Suite 150<br>Palo Alto, CA  94304-1216<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Xiaomei Cai, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>2325 E. Camelback Road, Suite 700<br>Phoenix, AZ  85016<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Rachael A. Harris, Esquire<br>Matthew A. Stanford, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>2550 M Street, NW<br>Washington, DC  20037<br>*Attorneys for Defendants Akoustis*<br>*Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

/s/ *Jeremy A. Tigan*

Jeremy A. Tigan (#5239)