**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | |
| Plaintiff, | C.A. No. 21-1417 (JPM) |
| v. | |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

**THE AKOUSTIS DEFENDANTS' OPENING BRIEF IN SUPPORT OF
THEIR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road, Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis
Technologies, Inc. and Akoustis, Inc.*

### **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION AND SUMMARY OF ARGUMENTS ................................................ 1

II.   FACTUAL BACKGROUND ........................................................................................... 1

    A.   QORVO'S TRADE SECRET MISAPPROPRIATION CLAIMS ................................. 1

    B.   PRE-TRIAL PROCEEDINGS ........................................................................... 2

    C.   QORVO'S TRADE SECRET MISAPPROPRIATION BENEFIT CALCULATION ........................... 3

        1.   DR. SHANFIELD'S TESTIMONY ABOUT HOW HE CALCULATED THE DURATION OF AKOUSTIS' HEAD START ....................................................... 4

        2.   MS. BENNIS' TESTIMONY ABOUT HOW SHE CALCULATED THE DURATION OF AKOUSTIS' HEAD START ....................................................... 6

    D.   CARLYN IRWIN'S TESTIMONY ABOUT THE FLAWS IN MS. BENNIS' UNJUST ENRICHMENT CALCULATION ............................................... 7

    E.   AKOUSTIS' RULE 50(A) MOTIONS AT TRIAL ................................................. 9

    F.   THE JURY VERDICT ..................................................................................... 9

III.  LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW ................................ 9

IV.   ARGUMENT .............................................................................................................. 10

    A.   MS. BENNIS' NOVEL METHOD OF ESTIMATING THE HEAD START BENEFIT TO AKOUSTIS RENDERED THE RECORD CRITICALLY DEFICIENT OF THE MINIMUM QUANTUM OF EVIDENCE NECESSARY TO SUPPORT THE JURY'S VERDICT .................... 10

        1.   MS. BENNIS' NEWLY INVENTED REVENUE-ONLY METHODOLOGY IS UNRELIABLE AND CANNOT FORM THE BASIS OF THE TRADE SECRET MISAPPROPRIATION VERDICT MONETARY COMPONENT ........................................... 11

        2.   BECAUSE MS. BENNIS' HEAD START METHODOLOGY WAS INADMISSIBLE, HER TESTIMONY MUST BE EXCLUDED, LEAVING NO SUFFICIENT EVIDENTIARY BASIS FOR THE MONETARY COMPONENT OF THE TRADE SECRET VERDICT ...................................... 15

    B.   MS. BENNIS' RELIANCE ON DR. SHANFIELD'S SPECULATIVE EXPERT OPINION INDEPENDENTLY REQUIRES JUDGMENT AS A MATTER OF LAW .................................. 16

V.    CONCLUSION ........................................................................................................... 19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*,
  432 F. Supp. 2d 1319 (S.D. Fla. 2006) ...........................................................16, 18

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)................................................................................................16, 19

*Bryte ex rel. Bryte v. Am. Household, Inc.*
  429 F.3d 469 (4th Cir. 2005) ...............................................................................18, 19

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ....................................................................................18

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*
  246 F.3d 1336 (Fed. Cir. 2001)....................................................................................16

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)........................................................................................... *passim*

*Eshelman v. Agere Sys. Inc.*,
  554 F.3d 426 (3d Cir. 2009)..........................................................................................10

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)........................................................................................................17

*Genmoora Corp. v. Moore Business Forms, Inc.*,
  939 F.2d 1149 (5th Cir. 1991) ......................................................................................19

*Goebel v. Denver & Rio Grande W. R.R. Co.*,
  215 F.3d 1083 (10th Cir. 2000) ....................................................................................11

*Idenix Pharms. LLC v. Gilead Scis., Inc.*,
  No. 14–846, 2018 WL 922125 (D. Del. Feb. 16, 2018) ..........................................10

*In ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012)..........................................................................................18

*Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*,
  851 F.2d 540 (1st Cir. 1988).........................................................................................17

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993).............................................................................................10

███████████████████████████

*Puma Biotechnology, Inc. v. AstraZeneca Pharms. LP*,
    No. 21 C 1338, 2024 WL 1157120 (D. Del. Mar. 18, 2024)....................................................17

*TK-7 Corp. v. Estate of Barbouti*,
    993 F.2d 722 (10th Cir. 1993) .........................................................................................17

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999).............................................................................................17

*TruGreen Cos., L.L.C. v. Scotts Lawn Serv.*,
    508 F. Supp. 2d 937 (D. Utah 2007) ................................................................................18

*Virnetx, Inc. v. Cisco Sys., Inc.*
    767 F.3d 1308 (Fed. Cir. 2014)........................................................................................16

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000)..........................................................................................................15

**Statutes**

18 U.S.C. § 1836(b)(3)(B) ....................................................................................................2

N.C. Gen. Stat. § 66-154(b) ..................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 50...........................................................................................................8, 9, 15

 Fed. R. Evid. 702 ............................................................................................................ *passim*

*https://en.wikipedia.org/wiki/Gantt_chart* (last accessed June 13, 2024) ......................................5

https://www.investopedia.com/terms/t/times-revenue-method.asp (last accessed
    June 14, 2024)..............................................................................................................13, 14

Restatement (Third) of Unfair Competition § 45 Monetary Relief:
    Appropriation of Trade Secrets, comment.........................................................................11

## I.    INTRODUCTION AND SUMMARY OF ARGUMENTS

Pursuant to Federal Rule of Civil Procedure ("Rule") 50(b), defendants Akoustis Technologies, Inc. and Akoustis, Inc. (collectively "Akoustis") renew their motion for judgment as a matter of law ("JMOL") that plaintiff Qorvo, Inc. ("Qorvo") failed to establish damages for trade secret misappropriation under state and federal law.  Not satisfied with the damages available under traditional and accepted models, Qorvo pursued a *sui generis* theory based on an untested and flawed methodology without support in case law or peer-reviewed (or other) literature.  Trial underscored the unreliable nature of Qorvo's methodology.  Ms. Bennis relied solely on Dr. Stanley Shanfield's opinion regarding the 55-month duration of Akoustis' purported head start through trade secret misappropriation.  Yet Dr. Shanfield admitted on cross-examination that no "good grounds" formed the basis for his head start duration opinion.  Put simply, Ms. Bennis' damages opinion doubled down on the guestimates and *ipse dixit* offered by Dr. Shanfield's unreliable and speculative opinion regarding the creation and duration of the alleged "head start" period with her own unreliable and untested calculation methodology.  The result was a mélange of unreliable and inadmissible opinion testimony under Federal Rule of Evidence 702, and a legally insufficient evidentiary basis for the jury's verdict.

## II.    FACTUAL BACKGROUND

### A.    Qorvo's Trade Secret Misappropriation Claims

Qorvo's Second Amended Complaint is its operative pleading.  It alleged counts for misappropriation of trade secrets under both the Defend Trade Secrets Act ("DTSA") and the equivalent North Carolina state law statute.  (D.I. 125.)

The DTSA provides three forms of damages for trade secret misappropriation: (i)(a) damages for actual loss caused by the misappropriation of the trade secret; and (i)(b) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in

computing damages for actual loss; *or* (ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation as measured by the imposition of a reasonable royalty for the unauthorized disclosure or use of the trade secret. 18 U.S.C. § 1836(b)(3)(B).   The North Carolina trade secret law is virtually identical.  *See* N.C. Gen. Stat. § 66-154(b).

### B.   PRE-TRIAL PROCEEDINGS

Before trial, Akoustis moved pursuant to Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–92 (1993) to exclude the testimony and opinions of Ms. Bennis's trade secret damages analysis.  (D.I. 456-457 (the "Bennis *Daubert* Motion")).  The Bennis Daubert Motion demonstrated that her methodology for calculating Akoustis' head start/unjust enrichment benefit is unsound and thus unreliable.  First, Ms. Bennis' calculation was impermissibly based on a comparison of the "time value" of bare ***revenue*** that Akoustis actually received versus the revenue it would have received if delayed by 55 months.  Case law and related literature, however, recognize profits – and not revenue – as the only cognizable basis for calculating a head start/unjust enrichment benefit.[1]  Second, even if revenue were a proper basis for unjust enrichment damages (it is not), Ms. Bennis erred by including in her revenue calculation all of Akoustis' historical revenue, including revenue unrelated to the possession or use of Qorvo's purported trade secrets.

In denying the Bennis *Daubert* Motion, the Court recognized that "Ms. Bennis' method lacks a testable hypothesis and Plaintiffs have not shown it is subject to peer review."  (D.I. 553 at 5.)  Nonetheless, the Court found that revenue was a proper basis for her calculation in part

---

[1] An alternative methodology for calculating the benefit is to base it on the increased value of the company defendant as a result of the head start.  Ms. Bennis did not perform such a valuation. (Decl. of David S. Elkins in Support of Akoustis' Motion for Judgement as Matter of Law ("Elkins Decl.") Ex. A (Trial Transcript) at 1732:15-22.)

because the "only distinction between Ms. Bennis' technique and that accepted by other courts is the substitution of revenue as an input for profit or incremental increase in business value." (*Id.*)

### C.   QORVO'S TRADE SECRET MISAPPROPRIATION BENEFIT CALCULATION

At trial, Ms. Bennis' trial testimony unfolded in a manner consistent with her expert damages report and deposition testimony, as foretold by the Bennis *Daubert* Motion. Ms. Bennis neither calculated nor provided an opinion regarding Qorvo's actual damages, if any, or damages in the form of a reasonable royalty. (Elkins Decl. Ex. A at 1722:2-10.) Ms. Bennis' only opinion on trade secret misappropriation was her opinion regarding the calculation of the unjust enrichment benefit to Akoustis based on a head start theory. (*Id.* at 1718:20-1719:1.)

Ms. Bennis' head start unjust enrichment benefit calculation turned on Dr. Shanfield's conclusion regarding the duration of the purported "head start" and her decision to use a *sui generis* and untested methodology for calculating that benefit monetarily:

> Q.   How did you calculate the unjust enrichment damages here?
>
> A.   This analysis started, the starting point for it was Dr. Shanfield's analysis. So again, last week we heard that all of the acquisition of confidential important information allowed Akoustis to move into the market and do all the business related things it was doing at least 55 months early.

(*Id.* at 1693:1-8.) Regarding her decision to focus on the *revenue* Akoustis received instead of the normal and widely accepted use of *profits* to measure the alleged benefit provided by the head-start:

> So it then turns to what benefit did that help Akoustis achieve[:]  [w]ell[,] earning revenue. It earned revenue earlier than it otherwise would have. So the analysis then, the test for me, is how do you put a dollar figure on that[,] [h]ow do you figure out the benefit of having that revenue sooner than you otherwise would have[.]

(*Id.* at 1693:9-14.)

### 1. DR. SHANFIELD'S TESTIMONY ABOUT HOW HE CALCULATED THE DURATION OF AKOUSTIS' HEAD START

As noted, Ms. Bennis relied exclusively on Dr. Shanfield's testimony as the foundation and only evidentiary support at trial for the duration of Akoustis' alleged head start. Dr. Shanfield testified about both the cumulative 55-month head start and the duration of the alleged head start for each of the eight trade secrets groups that Qorvo pursued at trial.

When Dr. Shanfield was asked, however, to identify the precise source for his opinion regarding the duration of either the 55-month cumulative head start, or the specific head start period for each alleged trade secret or trade secret group, he could not do so. Asked about the bases for his head start periods, Dr. Shanfield initially testified that he "considered where I could find information that would give me a reference point." (*Id.* at 1392:19-1393:8.) But he could not tie a specific source to a specific head start duration, making clear that he did not know from where he drew the head start durations. For example, at one point he testified that he relied on "an old friend who had set up a facility" to determine head start durations. (*Id.* at 1397:11-19.) But Dr. Shanfield was later forced to admit that he could not have actually relied on that "old friend" because no such reference appeared in his expert report. (*Id.* at 1397:20-1398:5.)

Dr. Shanfield testified that he had "talked with people at Qorvo about all of these items. I didn't necessarily think they had the only word on it, but I reviewed them to make sure what they were saying." (*Id.* at 1398:6-14.) When pushed to identify names, however, Dr. Shanfield could only identify Qorvo's Dr. Aigner – but even then, he demurred in linking Dr. Aigner to any particular head start durations. (*Id.* at 1398:15-1399:9.) Similarly, Dr. Shanfield merely *thought* that he reviewed a peer-reviewed or trade or other publication in determining head start durations:

> Q.     So taking you back in to your determination of how you assigned a certain amount of months for each of the activities that you looked at here, is that assessment of months for each task, like I said, is that based on any other peer-

reviewed or trade journal or any other published material other than your own private estimation that you did for this case?

A.      I think I did look in one case at a publication that – I'm trying to recall exactly what the subject matter was. It was in setting up a reliability facility. I had a pile of publications, and I glanced through them and looked at what, both what we had done at Raytheon, and also what people who had published information about -- evaluating filter reliability had done so that I got a perspective, I saw the named companies. So I guess I did in that case look at actual published information.

(*Id.* at 1395:3-19.)  Ultimately, however, he was again compelled to admit that he must not have done so because he was unable to identify the publication or whether that publication was listed in his expert report.  (*Id.* at 1395:3–19; 1396:11–22.)

Akoustis cross-examined Dr. Shanfield about the GANTT chart[2] he presented on direct exam (Tr. Ex. 228, App'x 5) to support his testimony regarding the duration of the alleged head start.  Dr. Shanfield admitted that "[i]t looks like a GAN[TT] chart, but, actually, it's just, when I say, 'year 1, year 2,' those are meant to be arbitrary times." (*Id.* at 1386:14-1387:2.)  Although the horizontal bars in a GANTT chart indicate time intervals, that was not the meaning given to them in Dr. Shanfield's chart shown the jury:  "What it means is I am plotting the benefit, the savings in time the company realized, and I am putting approximately where that savings might have been realized, but it's somewhat arbitrary." (*Id.* at 1387:19-1388:3.)

Dr. Shanfield further admitted that he did not account for Akoustis' acquisition of its New York Fab facility and its library of processes and development documents when determining the head start duration for trade secret Group 5 (the creation of technology development processes):

---

[2] A Gantt chart is a type of bar chart reflecting a project schedule; the tasks to be performed are shown on the vertical axis, and time intervals on the horizontal axis.  *See* *https://en.wikipedia.org/wiki/Gantt_chart* (last accessed June 13, 2024).

Q.     And in your evaluation of the head start that was allegedly provided here, did you review at all the library of processes and development documents that were already in place at the New York fab facility?

A.     I don't recall, frankly. There's so many documents. I have to go back in my report and check.

Q.     I can tell you, Dr. Shanfield, you did not. At least it was not listed in your report as items that you had reviewed in arriving at your opinion.

A.     Okay.

(*Id.* at 1412:6-1413:1; 1414:15-25.)

### 2.     MS. BENNIS' TESTIMONY ABOUT HOW SHE CALCULATED THE DURATION OF AKOUSTIS' HEAD START

After the conclusion of Dr. Shanfield's testimony, Qorvo called Ms. Bennis to testify regarding the amount by which Akoustis was allegedly unjustly enriched by this 55-month head start.  Before she did so, Akoustis renewed its Bennis *Daubert* Motion.  The Court denied the renewed motion.  (*Id.* at 1682:2-20.)

Ms. Bennis made clear that she relied on Dr. Shanfield's opinion regarding the 55-month duration of the head start in estimating the unjust enrichment benefit to Akoustis.  (*Id.* at 1693:1-14; 1716:13-25 (relying on Appendix C of her report, which also reflected Dr. Shanfield's analysis, which considered a period of 55 months, and also the alleged benefit in monthly increments); 1760:22-24 ("Q. And was your analysis based upon the 55-month head start that Dr. Shanfield opined to during trial? A. Yes.").)  Ms. Bennis testified how her benefit calculation measured the difference between (i) the revenue that Akoustis actually received with (ii) the but-for world where Akoustis would have received the same amount of revenue after a 55-month delay, where both amounts are discounted to present value as of June 30, 2024 using a 14.8% weighted average cost of capital.  (*Id.* at 1693:15-1698:12.)  Subtracting the but-for world revenue from the actual world revenue resulted in a difference – and thus "benefit" of the head start – of $66,114,093.  (*Id.* at

1698:13-25.)  She then testified that using the more up-to-date revenue data for Akoustis fourth quarter of fiscal year 2024 to which David Aichele had testified earlier, "you get a total head[ ]start damages figure of [$]50.3 million." (*Id.* at 1699:17-1700:5.)  She could have based her calculation of Akoustis' head start benefit on any increased company value derived from the head start but chose not to do so. (*Id.* at 1732:15-22.)

Ms. Bennis had never before estimated the benefit of a head start in a trade secret case before this one.  (*Id.* at 1735:14-20.)  She could not identify a single case where a court approved using her *sui generis* head start calculation methodology.  (*Id.* at 1736:1-5.)  She could not identify a single publication approving the use of revenue as the basis for estimating a head start benefit in a trade secret case.  (*Id.* at 1736:6-16.)  She acknowledged that Qorvo chose not to estimate Akoustis' benefit under any other form of unjust enrichment, including Akoustis' avoided costs. (*Id.* at 1725:13-1726:2.)

### D.      CARLYN IRWIN'S TESTIMONY ABOUT THE FLAWS IN MS. BENNIS' UNJUST ENRICHMENT CALCULATION

In contrast to Ms. Bennis, Carlyn Irwin has analyzed a head start benefit 20-25 times and testified at trial about that topic about eight times over the past 12 years before this case.  (*Id.* at 2347:17-24.)  She testified that Ms. Bennis' use of revenue, instead of profits, in her estimate of the head start benefit was "just fundamentally flawed.  She doesn't include any costs related to the production of the BAW filters" yet includes "revenue that had nothing to do with the BAW filters that embody the alleged trade secrets."  (*Id.* at 2346:4-17.)  Ms. Irwin elaborated regarding Ms. Bennis' fundamental flaw in not considering the costs of producing the revenue at issue:

> Q.      Now, can we go back to the first point, ignoring costs relating to production of BAW filters. Can you explain what you mean by that in little bit more detail?
>
> A.      Yes. So it's important to understand that you can't sell a product without making it. And she doesn't account for any costs associated with the revenue that she's modeling.

She's tried to model the time value of that revenue, but that revenue isn't available 100 percent to Akoustis because they spent more money making and selling the product than they actually earned in selling it to date.

(*Id.* at 2347:6-16.)

Ms. Irwin explained that relying on revenue alone to calculate the head start benefit is inconsistent with the principles governing her and Ms. Bennis' area of practice – and is "inconsistent with most basic financial principles that I taught at USC, and I'm sure Ms. Bennis studied as well." (*Id.* at 2356:14-19.) Ms. Irwin elaborated:

Q.   And so is calculating the head-start benefit based on revenue, even if it's discounted by the time value of money, an accepted practice at all?

A. *No*. Now, let me back up a bit. I don't disagree at all with the concept of time value of money. Again, that's a very basic concept in finance. It's the notion that a dollar today is worth more than a dollar in a year or 55 months. But you have to understand what you have available to actually invest[] and earn money on.

(*Id.* at 2356:20-2357:3 (emphasis added).) Not including costs in Ms. Bennis' estimate of head start benefit renders it "completely unreliable," whether the time value of money is used or not – "[y]ou have to include costs." (*Id.* at 2358:22-2359:6.)

One could fix Ms. Bennis' estimate of head start benefit by accounting for Akoustis' costs, Ms. Irwin testified – but doing so results in "cumulative gross profit losses for all of that period of time [of] over $10 million. So there's not hundreds of millions or $60 million to invest; there's negative $10 million to invest at the gross profit level." (*Id.* at 2359:7-25.) By using the proper head start methodology and substituting gross profit for revenue, Ms. Irwin showed that Ms. Bennis' methodology was simply inapplicable to the facts of this case. (*Id.* at 2360:1-15.)

[S]o I can't assume damages and then have a negative damages number. That's just nonsense. What that tells me as a practitioner is that this is not the right methodology, the head start method [used by Ms. Bennis] doesn't fit the facts in this case because there is no benefit to any acceleration in losses.

(*Id.* at 2360:16-22  (emphasis added).)

- 8 -

### E.   AKOUSTIS' RULE 50(A) MOTIONS AT TRIAL

After Ms. Bennis testified, Akoustis orally moved pursuant to Rule 50(a) for judgment as a matter of law with respect to, among other things, trade secret damages (including that component of Qorvo's claim under the North Carolina Unfair and Deceptive Trade Practices Act). Specifically, Akoustis argued that Dr. Shanfield's testimony regarding the basis for the duration of the head start period was speculative, unreliable, and premised only on his subjective belief. Such testimony was therefore inadmissible under Rule 702.  Without any admissible evidence on which to base her damages calculation, the existing unreliability of Ms. Bennis' opinion testimony (as established in the Bennis *Daubert* Motion) was compounded by her reliance on Dr. Shanfield's unreliable and inadmissible opinion regarding the duration periods comprising the asserted head start.  Akoustis therefore argued "that t[w]o expert witnesses are combining unreliable opinions to spin a [tale] of head start fantasy[,] render[ing] the Court's gatekeeping role even more imperative in this case than it usually is.  The Court should instruct the jury to disregard the two opinions and without admissible evidence regarding the value of Akoustis'[] purported head start benefit, that issue should be removed from the jury's purview." (*Id.* at 1762:8-1764:16.)  The Court denied that motion.  (*Id.* at 1766:4-8.)

### F.   THE JURY VERDICT

The jury rendered a verdict in favor of Qorvo on the trade secret claims, awarding $31,315,215.00 in compensatory damages and $7 million in exemplary damages.  (D.I. 601.)

## III.   LEGAL STANDARD FOR JUDGMENT AS A MATTER OF LAW

Federal Rule of Civil Procedure 50(a) provides:

*In General.*  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may … grant a motion for judgment as a matter of law against the party on a claim or defense that, under the

controlling law, can be maintained or defeated only with a favorable finding on that issue."

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a)," after a verdict is rendered a "movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).

When determining whether there is a "legally sufficient evidentiary basis" to find for a party, "[t]he question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir. 1993) (citations omitted). The Court must grant a JMOL "where 'the record is critically deficient of the minimum quantum of evidence'" necessary to support a jury verdict. *Eshelman v. Agere Sys. Inc.,* 554 F.3d 426, 433 (3d Cir. 2009) (citation omitted). Akoustis' burden here, therefore, is to show that the jury's findings, presumed or express, are not supported by substantial evidence. *Idenix Pharms. LLC v. Gilead Scis., Inc.,* No. 14–846, 2018 WL 922125, at *4 (D. Del. Feb. 16, 2018). "Substantial evidence" is that which taken as a whole as might be accepted by a reasonable mind as sufficient to support the finding under review. *Id.*

## IV.   ARGUMENT

### A.   Ms. Bennis' Novel Method Of Estimating The Head Start Benefit To Akoustis Rendered The Record Critically Deficient Of The Minimum Quantum Of Evidence Necessary To Support The Jury's Verdict

Judgment as a matter of law is warranted on Qorvo's trade secret misappropriation claims because the jury's damages verdict was based on Ms. Bennis' (1) *sui generis* and untested methodology for calculating the monetary value of the head start unjust enrichment benefit to Akoustis does not meet the standard for admissibility under *Daubert* and Rule 702, and (2) her incorporation and reliance on Dr. Shanfield's *ipse dixit* opinion that the duration of the alleged

head start was 55 months.  Either deficiency independently renders Ms. Bennis' head start opinion incapable of supporting any monetary award for Qorvo on the trade secret claims; that her opinion encompassed both errors simply compounds the harmful impact of the independent deficiencies.

### 1.   MS. BENNIS' NEWLY INVENTED REVENUE-ONLY METHODOLOGY IS UNRELIABLE AND CANNOT FORM THE BASIS OF THE TRADE SECRET MISAPPROPRIATION VERDICT MONETARY COMPONENT

After trial, the Court may reweigh motions it earlier decided pursuant to Rule 702 and *Daubert*.  *E.g., Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000) ("The district court may also satisfy its gatekeeper role when asked to rule on a . . . post-trial motion.").  Here, the Court should find Ms. Bennis' head start benefit opinion inadmissible for the same reasons as set forth in the Bennis *Daubert* Motion, namely that it is based on an untested and unreliable methodology.

Ms. Bennis' estimate of Akoustis' monetary benefit from the head start was based on a comparison of the "time value" of bare revenue that Akoustis actually received versus the revenue it would have received had that revenue been delayed by five years.  (Elkins Decl. Ex. A at 1693:15-19; 1694:5-16.)   The Bennis *Daubert* Motion (renewed before Ms. Bennis' trial testimony) demonstrates that basing unjust enrichment damages on Akoustis' *revenue* – whether or not discounted to account for the time value of money – is an improper methodology.  All the relevant literature and case law teach that unjust enrichment damages based on a head start theory are based either on the defendant's *profits* or its incremental increases in *business value* realized from alleged wrongdoing.  *See Sedona Conference Commentary on Monetary Remedies in Trade Secrets Litigation*, 24 Sedona Conf. J. at 384-87 (2023)[3]; RESTATEMENT (THIRD) OF UNFAIR

---

[3] Elkins Decl. Ex. B.

COMPETITION § 45 Monetary Relief: Appropriation of Trade Secrets, comment f[4] (stating that unjust enrichment in an action for the misappropriation of trade secrets focuses on the defendant's benefit attributable to the use of the trade secret; "The plaintiff is entitled to recover the defendant's net profits.").

Ms. Bennis had never estimated a head start benefit in a trade secret case before now. (Elkins Decl. Ex. A. at 1735:14-20.)  She could not identify a single case where a court approved using her novel head start calculation methodology.  (*Id.* at 1736:1-5.)  Nor could she identify a single publication approving the use of revenue as the basis for estimating a head start benefit in a trade secret case.  (*Id.* at 1736:6-11.)

Ms. Irwin – who, unlike her counterpart, had a substantial background both estimating and testifying about head start benefits – testified that Ms. Bennis' failure to include the costs of generating Akoustis' BAW filter revenue was "just fundamentally flawed."  (*Id.* at 2346:4-17.) Indeed, Ms. Irwin confirmed that relying on revenue alone to calculate the head start benefit is inconsistent with the principles governing her and Ms. Bennis' area of practice – and inconsistent with most basic financial principles.  (*Id.* at 2356:14-19.)  Put simply, not including costs in Ms. Bennis' estimate of head start benefit renders it "completely unreliable," whether the time value of money is used or not.  (*Id.* at 2358:22-2359:6.)

This Court agreed that "Ms. Bennis' method lacks a testable hypothesis and Plaintiffs have not shown it is subject to peer review."  (D.I. 553 (Order Denying *Daubert* Motions) at 5.) Nevertheless, the Court held:

> Here, the qualifications of the expert, the non-judicial use of revenue to establish valuation, and the close relationship of Ms. Bennis' methodology to a methodology established to be reliable (the calculation of head-start damages using time value using profit or valuation as an input) all make it more likely than not that Ms.

---

[4] Elkins Decl. Ex. C.

> Bennis' methodology is reliable under the meaning of Federal Rule of Evidence
> 702.

(*Id.* at 6.)

The Court erred in concluding that Ms. Bennis' methodology here was reliable under Rule 702.  The discussion that follows focuses on the factors that the Court identified, namely (i) the qualifications of the expert, (ii) the non-judicial use of revenue to establish valuation, and (iii) "the close relationship of Ms. Bennis' methodology to a methodology established to be reliable."

First, while Ms. Bennis was sufficiently qualified to qualify as an expert, she had never before estimated a head start benefit in a trade secret case.

Second, respectfully, the Court's reference to "the non-judicial use of revenue to establish valuation" is not supported by the earlier discussion in its Order Denying *Daubert* Motions or by any authority.  The reference relates back to the following:

> Here, the Sedona Conference text cited by Defendants as a source of generally accepted knowledge in the field states that "[i]n the case of a start-up . . . the company's valuation is closely tied to the value of its trade secret technology, and the company's investment value may be tantamount to or at least closely related to the investment value of the trade secret."  (ECF No. 458.)  This source therefore acknowledges Plaintiff's argument that valuation of a start-up can be difficult to quantify, though does not establish revenue as an appropriate input for valuation. Outside of judicial use, the times-revenue formula is well-trodden ground for comparing valuation of pre-profit start-ups in the same field, but is not generally accepted as an appropriate way to establish objective valuation without the use of a multiplier based on industry.

(D.I. 553 at 5-6.)  Boiled down, the above passage points out that a "times-revenue" formula can sometimes be used for *company valuation* purposes – a methodology that Ms. Bennis chose not to use.  But that does not suggest, much less ensure, such a formula is reliable to use for calculating the monetary value of an alleged head start.   The above excerpt resembles text from Ivestopedia.com's definition of the "Times-Revenue Method":   "[t]he times-revenue method determines the maximum value of a company as a multiple of its revenue for a set period of time.

The multiple varies by industry …"   https://www.investopedia.com/terms/t/times-revenue-method.asp (last accessed June 14, 2024).

> The Investropedia.com discussion goes on to caution, however:
>
> The times-revenue method is not always a reliable indicator of the value of a firm. This is because revenue does not mean profit. The times-revenue method fails to consider the expenses of a company or whether the company is producing positive net income.
>
> Moreover, an increase in revenue does not necessarily translate into an increase in profits. A company may experience 10% year-over-year growth in revenue, yet the company may be experiencing 25% year-over-year growth in expenses.
>
> Valuing a company only on its revenue stream fails to consider what it costs to generate its revenue.
>
> To get a more accurate picture of the current real value of a company, earnings must be factored in. Thus, the multiples of earnings, or earnings multiplier, is preferred to the multiples of revenue method.

*Id.*  These are the very same points that Ms. Irwin testified about at trial, and that Ms. Bennis disregarded in estimating the benefit of the head start to Akoustis.  Taking the cautionary explanation into account, this reference evidences the *un*reliablity of Ms. Bennis' methodology.

Last is the reference to "the close relationship of Ms. Bennis' methodology to a methodology established to be reliable."  It refers back to the Court's observation that

> Head-start damages based on profits are accepted as a reliable methodology for DTSA damages. See Sabre GLBL, Inc. v. Shan, 779 F. App'x 843 (3d Cir. 2019). The only distinction between Ms. Bennis' technique and that accepted by other courts is the substitution of revenue as an input for profit or incremental increase in business value.

(D.I. 553 at 5.)  The Court's observation is correct – the only difference between the accepted head start methodology and Ms. Bennis' new one is her substitution out of profit in favor of revenue. But that substitution is a monumental one for purposes of reliability – as Ms. Irwin demonstrated and the cautionary excerpt from Investopdia.com above makes clear.

No court case nor reliable secondary authority recognizes the ability to substitute revenue for profits and still obtain a reliable result. Moreover, the consequences of putting the Court's imprimatur on Ms. Bennis' substitution here could be seismic.

Defendant's profits is another common category of unjust enrichment benefit. (Elkins Decl. Ex. B *Sedona Commentary* at 384-85.) In cases where a head start lacks support, the same reasoning the Court employed in upholding Ms. Bennis' head start methodology could be used to justify substituting defendant's revenue in place of defendant's profit. Doing so would always favor the plaintiff, because revenue numbers are always larger than gross profit numbers.

But doing so would also turn the law of unjust enrichment benefit on its head. Unjust enrichment measures the benefit realized by the defendant as a result of its use of alleged trade secrets. (Elkins Decl. Ex. A at 1723:7-13.) All of the authority before the Court shows that reliance here on revenue without consideration of the attendant costs does not reflect the ***benefit*** to the defendant – the very concept that unjust enrichment theories are designed to measure.

As discussed above, the Court should revisit its ruling on the Bennis *Daubert* Motion and hold that Ms. Bennis' methodology was in fact unreliable and inadmissible.

**2.     BECAUSE MS. BENNIS' HEAD START METHODOLOGY WAS INADMISSIBLE, HER TESTIMONY MUST BE EXCLUDED, LEAVING NO SUFFICIENT EVIDENTIARY BASIS FOR THE MONETARY COMPONENT OF THE TRADE SECRET VERDICT**

The exclusion of Ms. Bennis' testimony would require a finding in favor of Akoustis on the trade secret misappropriation claim because evidence that fails to meet *Daubert* standards is also insufficient to sustain a jury verdict when challenged under Rule 50. *See Weisgram v. Marley Co.*, 528 U.S. 440, 456 (2000) (holding that lower court properly granted judgment as a matter of law under Rule 50 where it deemed expert evidence introduced at trial was unreliable and therefore inadmissible, and the remaining properly admitted evidence was insufficient to support a verdict);

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (affirming judgment as a matter of law in favor of defendant and noting that "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict").

To that end, courts grant judgment as a matter of law for the moving party after determining that damages expert testimony is unreliable and inadmissible.  *See e.g.*, *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1358 (Fed. Cir. 2001) (affirming the district court's decision to grant TriTech's JMOL because the damages expert methodology was deemed unreliable at trial, and there was no other evidence to support the claim for damages); *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) (affirming JMOL after district court excluded unreliable and inadmissible expert damages testimony).

Because Ms. Bennis' opinion estimating Akoustis' head start benefit was inadmissible, it could not form the basis of the monetary award rendered by the jury.  Accordingly, the Court should follow the authorities above and grant judgment as a matter of law in favor of Akoustis on Qorvo's trade secret misappropriation claims with respect to the monetary award.

### B. Ms. Bennis' Reliance On Dr. Shanfield's Speculative Expert Opinion Independently Requires Judgment As A Matter Of Law

The Court should also exclude Ms. Bennis' testimony and enter judgment as a matter of law on the trade secret claims on the separate ground that Ms. Bennis' testimony depended on Dr. Shanfield's speculative and subjective testimony regarding the 55-month head start period.

Although damages experts are entitled to rely on assumptions regarding the "technical, scientific and regulatory aspects of [a] case," this does not relieve a party of its "responsibility at trial to prove the factual bases on which those assumptions rested."  *AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1345 (S.D. Fla. 2006) (collecting cases holding that

expert opinion is no substitute for the obligation to provide evidence of facts to support expert opinion); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 731-32 (10th Cir. 1993) ("'In order to prevail in this action, [plaintiff] had to present evidence tending to establish the disputed fact that [the accountant] assumed.'" (quoting *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 546 (1st Cir. 1988))).

Ms. Bennis relied on Dr. Shanfield's opinion regarding the 55-month head start as the basis for her unjust enrichment calculation.  (Elkins Decl. Ex. A at 1693:1-8.)  But Dr. Shanfield's testimony regarding the head start does not meet the standard for reliability needed to be admissible.  To satisfy the "reliability" requirement, the expert testimony must "be based on the methods and procedures of science, ***not on subjective belief and unsupported speculation***."  *Puma Biotechnology, Inc. v. AstraZeneca Pharms. LP*, No. 21 C 1338, 2024 WL 1157120, at *18 (D. Del. Mar. 18, 2024) (quoting *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999)) (emphasis added). The question is whether "the expert's testimony is supported by 'good grounds.'" *Id.* (quoting *In re TMI Litig.*, 193 F.3d at 665).

Dr. Shanfield's trial testimony discussed earlier makes clear that each component of the 55-month head start period was seemingly plucked from thin air – he provided no specific source, analysis, or other support for how he arrived at the monthly allocations comprising the 55-month duration.  While he may have "considered where [he] could find information that would give him a reference point" for the head start periods, he did not actually find such information.  He fumbled through his own testimony, in one breath insisting he relied on various "sources" for his 55-month head start opinion, but in the next breath admitting that such sources appear nowhere in his expert report or anywhere else.  In other words, Dr. Shanfield's 55-month opinion was pure "*ipse dixit*," a guestimate devoid of any analysis and unsupported by relevant facts in the record.  *Gen. Elec.*

*Co. v. Joiner*, 522 U.S. 136, 146 (1997) (("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *TruGreen Cos., L.L.C. v. Scotts Lawn Serv.*, 508 F. Supp. 2d 937, 960-61 (D. Utah 2007) (excluding damages expert who applied a lost profits percentage that was essentially a "guestimate").

Courts should exclude such unreliable expert evidence on post-trial motions. *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055-57 (8th Cir. 2000) (holding that trial court should have granted judgment as a matter of law in favor of defendant where plaintiff's expert's testimony on damages did not reflect the reality of the market and was speculative). For example, in *In ZF Meritor, LLC v. Eaton Corp.*, ZF Meritor's damages expert relied on business plans prepared by others, and Eaton argued that the reliance on this data was not reliable. 696 F.3d 254 (3d Cir. 2012). The court agreed that the damages expert's reliance on the plans was improper because he did not know the qualifications of the individuals who prepared them and the evidence was otherwise unreliable and inadmissible. The district court excluded the damages expert's report based on the unreliable business plan. The Third Circuit affirmed.[5] *See also Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1352 (S.D. Fla. 2006) (granting judgment as a matter of law after striking the damages expert testimony, where that expert relied on unreliable and inadmissible underlying evidence; without this expert testimony, the plaintiff was not able to prove alleged damages); *Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 480 (4th Cir. 2005) (once expert evidence and testimony is deemed inadmissible, it is self-evident that the evidence is insufficient to support a verdict for the plaintiffs.'").

---

[5] This Circuit did rule, however, the district court abused discretion in not permitting competitors to submit the expert's alternate damages calculations.

The Court should follow suit and exclude Dr. Shanfield's subjective thoughts on the proper duration of any alleged head start advantage.  Properly excluding Dr. Shanfield's 55-month head start opinion leaves Ms. Bennis with no reliable basis on which to base her head start benefit estimate.  Accordingly, Ms. Bennis' testimony is also unreliable and inadmissible and must be excluded for this independent reason.  "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (affirming grant of post-verdict motion for judgment as a matter of law); *Genmoora Corp. v. Moore Business Forms, Inc.*, 939 F.2d 1149, 1157 (5th Cir. 1991) ("An expert's testimony will not support a verdict if it lacks an adequate foundation in the facts of the case."); *Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 480 (4th Cir. 2005) "[T]he only evidence [plaintiffs] have on the issue of scientific causation is the testimony of their experts. Once that testimony is deemed inadmissible, it is self-evident that the evidence is insufficient to support a verdict for the plaintiffs.").

In sum, Ms. Bennis' estimate of Akoustis' head start benefit depends on Dr. Shanfield's opinion regarding the 55-month duration of the head start.  The unreliability and inadmissibility of that opinion removes the necessary foundation for Ms. Bennis' own opinion.  For this independent reason, the Court should therefore grant judgment as a matter of law in favor of Akoustis on Qorvo's trade secret misappropriation claims with respect to the monetary award.

## V.     **CONCLUSION**

As shown above, the Court should grant Akoustis' motion for judgment as a matter of law.

Dated:   June 17, 2024

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

Respectfully submitted,

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies,*
*Inc. and Akoustis, Inc.*

- 20 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF DELAWARE**

| | |
|---|---|
| QORVO, INC. | |
|         Plaintiff, | C.A. No. 21-1417 (JPM) |
| v. | |
| AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC. | **JURY TRIAL DEMANDED** |
|         Defendants. | |

## <u>PROPOSED ORDER</u>

The Court having considered the Akoustis' Defendants Renewed Motion for Judgment as a Matter of Law (the "Motion");

IT IS HEREBY ORDERED this _____ day of _____, 2024, that the foregoing Motion is GRANTED.

_____
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 17, 2024, copies of the attached document were served via electronic mail on all counsel of record.


<u>*/s/ Ronald P. Golden III*      </u>
Ronald P. Golden III