# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF DELAWARE

| | |
|---|---|
| QORVO, INC.<br><br>                Plaintiff,<br><br>v.<br><br>AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC.<br><br>                Defendants. | C.A. No. 21-1417 (JPM) |

## THE AKOUSTIS DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road, Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENTS ...................................... 1

II.     FACTUAL BACKGROUND.................................................................................... 2

A.      Qorvo's Claim of Misappropriation of Trade Secrets and Related Basis for Its Unfair Competition Claim Were Not Asserted Until Its Second Amended Complaint................................................................................................................ 2

B.      Qorvo Pursued a "Hide the Ball" Strategy Regarding Its Trade Secrets Claims Resulting in Unnecessary Attorneys' Fees and Expenses. ......................................... 3

C.      The Evidence at Trial.............................................................................................. 6

D.      The Jury Verdict ..................................................................................................... 7

III.    ARGUMENT........................................................................................................... 8

A.      The Court Should Exercise Its Discretion to Deny Qorvo's Request for Attorneys' Fees. ........................................................................................................................ 8

1.      Akoustis Did Not Intentionally Harm Qorvo.................................................... 8

2.      An Award of Fees Is Not Justified in View of the Jury's Monetary Award.................................................................................................................. 11

B.      Qorvo's Requested Attorneys' Fees Are Not Reasonable. ...................................... 12

1.      Legal standard ................................................................................................... 12

2.      Qorvo's Total Fee Award Is Unreasonable in View of the Cases Cited in its Motion.......................................................................................................... 13

3.      Qorvo's Counsel's Work Performed Before November 2022 Is Not Related to the Trade Secret Claim and Should Be Excluded.......................... 14

4.      The Court Should Reduce the Fee Award to Account for Qorvo's Abusive Litigation Tactic of Failing to Specify or Reduce the Number of the Alleged Trade Secrets.......................................................................... 15

5.      Block Billing Requires an Additional Reduction ............................................ 16

6.      Akoustis Is Not Responsible for Compensating Qorvo's Counsel Travel Time........................................................................................................ 17

7.      Fees from Overstaffed Depositions Is Not Recoverable................................. 18

8.      Clerical and/or Administrative Work Is Not Recoverable.............................. 19

IV.     CONCLUSION....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   399 F. Supp. 2d 1064 (N.D. Cal. 2005) ...............................................................11

*Estate of Accurso v. Infra-Red Servs., Inc.*,
   805 F. App'x 95 (3d Cir. 2020) .....................................................................8, 9

*Agrofresh Inc. v. Essentiv LLC*,
   No. CV 16-662 (MN), 2020 WL 7024867 (D. Del. Nov. 30, 2020) .......................10

*Arnold's Off. Furniture, LLC v. Borden*,
   No. 5:20-CV-05470-JMG, 2023 WL 3851978 (E.D. Pa. June 6, 2023) .............8, 9

*Brown v. Stackler*,
   612 F.2d 1057 (7th Cir. 1980) ......................................................................1, 8

*Citcon USA, LLC v. RiverPay Inc.*,
   No. 20-16929, 2022 WL 287563 (9th Cir. Jan. 31, 2022) .................................9, 12

*Cox v. Elite Energy LLC*,
   Civ. No. 09-444, 2011 WL 4406364 (D.N.J. Sept. 21, 2011) ..............................19

*Eng'g Res., Inc. v. CRS Steam, Inc.*,
   No. 94 C 6970, 1997 WL 232778 (N.D. Ill. May 1, 1997) ..................................11

*Fair Hous. Ctr. of Cent. Indiana, Inc. v. Welton*,
   No. 1:18-CV-1098-JMS-DLP, 2020 WL 2218950 (S.D. Ind. May 7, 2020) .........16

*Giedgowd v. Cafaro Grp., LLC*,
   No. CV 20-6184, 2021 WL 4963532 (E.D. Pa. Oct. 26, 2021) .............................17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .....................................................................................12

*J.L. v. Harrison Twp. Bd. of Educ.*,
   No. 14-2666 (RMB/JS), 2016 WL 4430929 (D.N.J. Aug. 19, 2016) ....................16

*Live Face on Web, LLC v. Rockford Map Gallery, LLC*,
   No. 17-539, 2022 WL 11110133 (D. Del. Oct. 19, 2022) ....................................17

*Loughner v. Univ. of Pittsburgh*,
   260 F.3d 173 (3d Cir. 2001) ......................................................................13, 19

*McKenna v. City of Philadelphia*,
   582 F.3d 447 (3d Cir. 2009) ...........................................................................12

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
No. 1:17-CV-01973, 2021 WL 12139698  (N.D. Ill. Oct. 15, 2021) .................................... 13

*Nat. Res. Defense Council, Inc. v. Fox*,
129 F. Supp. 2d 666 (S.D.N.Y. 2001) ....................................................................... 14

*Nunez v. City of Pompano Beach*,
NO. 20-62626-CIV-DIMITROULEAS/SNOW, 2021 WL 5213089 (S.D. Fla.
Oct. 25, 2021) .................................................................................................... 14

*Oden v. Shane Smith Enterprises, Inc.*,
27 F.4th 631 (8th Cir. 2022) .................................................................................. 16

*Paulus ex rel. P.F.V. v. Cordero*,
Civ. No. 12-986, 2013 WL 432769 (M.D. Pa. Feb. 1, 2013) ................................. 12

*PNC Bank, N.A. v. Davis*,
631 F. Supp. 3d 253 (D. Md. 2022) ....................................................................... 14

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA—ILA Pension Trust
Fund*,
450 F.3d 91 (2d Cir. 2006)...................................................................................... 14

*Simring v. Rutgers*,
634 F. App'x 853 (3d Cir. 2015) ............................................................................ 16

*Student Pub. Int. Rsch. Grp. of New Jersey v. Monsanto Co.*,
721 F. Supp. 604 (D.N.J. 1989) ............................................................................. 18

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
No. 15 CIV. 211 (LGS), 2024 WL 1116090 (S.D.N.Y. Mar. 13, 2024) .......................... 10, 13

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) .................................................................................. 16

*In re Wilson*,
165 F.3d 913 (4th Cir. 1998) .................................................................................. 11

*Witkowski v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Loc. Union 154*,
No. CIVA06-874, 2010 WL 1433104 (W.D. Pa. Apr. 7, 2010) ............................... 17

**Statutes**

18 U.S.C. §§ 1836(b)(3)(D) ............................................................................................. 8

N.C. Gen. Stat. § 66-154(d) ............................................................................................ 8

## I.      <u>INTRODUCTION AND SUMMARY OF ARGUMENTS</u>

Hoping to pile on to a questionable jury award of compensatory and exemplary damages that far exceeds Akoustis' market cap, Qorvo now seeks an additional award of attorneys' fees that are simply not commensurate with the work that should have reasonably been undertaken on the trade secret claims. The state and federal trade secret misappropriation statutes provide that the Court ***may*** in its discretion award reasonable attorneys' fees to the prevailing party.  But "may" does not mean "must,"[1] and Akoustis respectfully requests the Court to exercise that discretion and deny Qorvo's requested fee award in its entirety.

Courts routinely decline to award fees when, as here, there is no evidence that the defendant took affirmative steps to purposely harm the plaintiff.  Similarly, courts also deny motions for fees when the prevailing party has not suffered any actual damages as a result of the alleged misappropriation.  Finally, the jury's award of exemplary damages, especially in view of the windfall award of head start/unjust enrichment damages of $31 million, is sufficient to penalize Akoustis and deter any future misappropriation.

To the extent the Court does allow an award of fees, the Court should significantly reduce the requested amount, which is unreasonable in light of scope of the trade secret misappropriation claim in this case, Qorvo's unreasonable litigation tactics in pursuing the misappropriation claim, and the billing practices of Qorvo's counsel.

---

[1] *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

## II.   FACTUAL BACKGROUND

### A.   QORVO'S CLAIM OF MISAPPROPRIATION OF TRADE SECRETS AND RELATED BASIS FOR ITS UNFAIR COMPETITION CLAIM WERE NOT ASSERTED UNTIL ITS SECOND AMENDED COMPLAINT

Qorvo filed the original Complaint on October 4, 2021, asserting four claims: (1) patent infringement, (2) false advertising under the Lanham Act, (3) false patent marking, and (4) unfair and deceptive trade practices under the North Carolina law.  (D.I. 1 at 16-30.)  Two of those claims (Lanham Act and false patent marking) were ultimately dismissed by Qorvo prior to the submission of the case to the jury and a third (unfair and deceptive trade practices under North Carolina law) was decided by the jury in favor of Akoustis.  The original Complaint did not assert a claim of trade secret misappropriation under either state or federal law.

On February 18, 2022, Qorvo filed its First Amended Complaint ("FAC"), which amended only allegations related to the claim of unfair and deceptive practices based on employee poaching and false advertising.   (D.I. 28.)   The FAC still did not assert a claim of trade secret misappropriation and made no allegations relating to trade secrets.  Akoustis moved to dismiss all the asserted claims, including the claim of unfair and deceptive trade secrets as amended.  (D.I. 10 & 33.)  On May 10, 2022, the Court denied both motions to dismiss.  (D.I. 67.)

While Akoustis' first motion to dismiss was pending, on February 7, 2022, the Court entered the scheduling order for this case, which centers on the deadlines relating to the patent infringement claim, including deadlines for the infringement and invalidity contentions and claim construction.  (D.I. 23 at 1-2.)  For the next nine months following the entry of the Scheduling Order, the parties engaged in litigation activities primarily related to the patent claims as generally set forth in the Scheduling Order.  During the same period, the parties also engaged in fact discovery.  Before November 2022, Akoustis served nine (9) interrogatories and 46 requests for production on Qorvo, all of which relate to the claim of patent infringement, false patent marking,

and false advertising.  (Elkins Decl., Exs. 2-3.)  Similarly, Qorvo served on Akoustis ten (10) interrogatories, all relating to its patent infringement claim.  (*Id.*, Ex. 4.)  Qorvo also served 93 requests for admission and 143 requests for production on Akoustis relevant to Qorvo's four asserted claims at that time.  (*Id.*, Exs. 5-8.) Qorvo issued two subpoenas in July 2022, both to Akoustis' third-party recruiter companies. (D.I. 118-19.)

On February 8, 2023, Qorvo filed its Second Amended Complaint ("SAC") to assert an additional claim of trade secret misappropriation and to revise its claim of unfair and deceptive trade practices to include a claim based on trade secret misappropriation.  (D.I. 125.)

**B.      QORVO PURSUED A "HIDE THE BALL" STRATEGY REGARDING ITS TRADE SECRETS CLAIMS RESULTING IN UNNECESSARY ATTORNEYS' FEES AND EXPENSES**

From the moment Qorvo first introduced its trade secret claim into the case, it refused to identify with reasonable specificity the trade secrets it intended to pursue at trial.  Qorvo's initially asserted 71 alleged trade secret groups with a total of 352 subcategories on May 1, 2023 (Elkins Decl., Ex. 9), admitting to the Court that "we will have to pare our list to what's manageable for the jury."  (D.I. 177 (Tr. Apr. 3, 2023) at 14.)

The billing records of Qorvo's outside counsel indicate that at least as early as June 6, 2023, Qorvo internally considered and possibly engaged in narrowing its alleged trade secrets. (D.I. 621, Ex. 1 at 123 ███████████████████████████████████████ (emphasis added).)  It also indicates that Qorvo maintained an internal list of "top trade secrets" long before trial.[2]  (*Id.* at 190 (███████████████████████).)

---

[2] It appears that Qorvo has attempted to redact the term "top" from its "top trade secrets" related billing entries.  (*Compare, e.g.*, D.I. 621, Ex. 1 at 192 (███████████████████████████ ███████) *with id.*, Ex. 28 at 8 (billing invoice showing same time entry for ███████████ ███████████████████████████).)  Akoustis contests

████████████████████████████████

Nonetheless, Qorvo continued to **expand** its vague and unspecified list of alleged trade secrets to Akoustis and supplemented its disclosure to identify **389** alleged trade secret on July 25, 2023.  (Elkins Decl., Ex. 10.)  After serving its Supplemental Trade Secret Disclosure, Qorvo's counsel told the Court that "I believe we've -- our goal is [to narrow the trade secrets to] no more than 20, and we would be hopeful that it would be less than that as well. You know, part of that goes into obviously how are you identifying -- defining the individual trade secret."  (D.I. 288 (Tr. Aug. 18, 2023) at 11; *see also id.* (Tr. Aug. 18, 2023) at 9-10) ("So, Your Honor, we have addressed this previously, and we agree that the number of trade secrets needs to be reduced for the purposes of trial and for jury comprehension at the very least.").)  The Court ordered that it "expects Qorvo to significantly reduce its trade secret claims."  (D.I. 313 (Order Sept. 1, 2023) at 2-3.)

Qorvo did not cut down its list, however, and instead further expanded it to 397 on October 12, 2023.[3]  (Elkins Decl. Ex. 11.)  Subsequently, Qorvo served its final "Identification of Trade Secrets It Currently Expects to Present at Trial" ("Trial Disclosure") on November 17, 2023, the day **after fact discovery closed**.  (*Id.* Ex. 12.)  The Trial Disclosure expressly maintained all the alleged trade secrets identified in its October 12, 2023, Supplemental identification of Trade Secrets.  (*Id.* at 1.)  Stating that "[t]o the extent document citations are provided, these are

---

the propriety of such redaction, including on the basis that it is not qualified for attorney-client privilege or work-product privilege.

[3] In view of the foregoing improper redaction, Akoustis has a reasonable basis to doubt and challenge the propriety of other similarly redacted time entries and believes they indicate that Qorvo engaged in an internal narrowing of its alleged trade secrets while at the same time expanding its identification of alleged trade secrets to Akoustis.  Such time entries include, but are not limited to, ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████  (D.I. 621 Ex. 1 at 123-24, 131-32.)

explanatory citations," the Trial Disclosure then identified ten categories of purported trade secrets.  (*Id.* at 2-13.)  Beneath each category were bullet points with a short statement and non-exhaustive "exemplary citations" to documents that purported to relate to the statement.  (*Id.* at 2-14.)  Although Qorvo made it clear that these were mere *examples* of the alleged misappropriation, Qorvo did not identify where in any document the precise trade secret at issue could be found.  Moreover, the Trial Disclosure's 104 bullet points were also missing any statements distinguishing each purported trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.  (*Id.*)

During expert discovery, Dr. Shanfield, Qorvo's expert witness regarding trade secrets, submitted a 680-page expert report.  At his deposition, however, Dr Shanfield refused to identify the actual trade secrets Qorvo intended to pursue at trial, nor did he provide Akoustis with information that would allow it to prepare a defense of these allegations at trial.  Shown the Trial Disclosure at his deposition, Dr. Shanfield was asked regarding "the trade secrets that [Qorvo] currently expects to present at trial, are those trade secrets represented by the bullet points that are underneath each numerical heading?"  (Elkins Decl. Ex. 13 (Shanfield Dep.) at 150:19-23.)  Dr. Shanfield protested that "[y]ou are asking me to, from this list, try and speculate what trade secrets are being referred to."  (*Id.* at 151:1-3.)  He added, "Again you're asking me to speculate about the meaning of each of these lines [or bullet points] . . . I'll be happy to go through my report to describe dozens of them. How it corresponds with this list is, that would be speculation on my part."  (*Id.* at 151:16-25.)

Akoustis brought these problems with the Trial Disclosure to Qorvo's attention during a meet and confer conference on November 28, 2023, attended by both lead and local counsel.

(Elkins Decl. ¶ 15.)  Qorvo's counsel doubled-down, however, and simply repeated its position that the Trial Disclosure was sufficient.  (*Id.*)

On May 5, 2024, the day before trial began, the Court sent to the parties a draft specific verdict form that required findings for  each of 104 alleged trade secrets Qorvo had then identified for trial.  (Elkins Decl., Ex. 14 (5/5/2024 email from E. Currier) at 1-13.)  In response, Qorvo further trimmed its alleged trade secrets down to 46 ***on the first day of trial***.  (*Id.* Ex. 15 (Qorvo's 5/6/2024 Email from R. Jung to E. Currier) at 1.)  ***Only on the night before the Verdict Form was to be submitted to the Jury*** did Qorvo finally provide the pinpoint citations to documents for each alleged trade secret that Akoustis' counsel had asked for since the close of fact discovery.  (*Id.* ¶ 19.)  These "hide the ball" tactics unnecessarily increased the costs of litigation and trial.

### C.    THE EVIDENCE AT TRIAL

Although Qorvo claims the alleged misappropriation was widespread and deeply penetrating into all of Akoustis' operations, in reality 99% of the Qorvo files[4] found in Akoustis' records came from just four individuals – Rohan Houlden, Rama Vetury, David Dyer, and Robert Dry – who joined Akoustis during the early years of the company.[5]  (Elkins Decl. Ex. 1 (Trial Tr.) at 848:12-849:24.)  Despite Akoustis' express prohibition against bringing or disclosing truly confidential information obtained from prior employers (*id.* at 1186:13-1187:2), these four individuals ignored that prohibition. (*See e.g.*, *id.* at 1099:9-14 & 1100:10-17 (Dry admitting error

---

[4] The evidence shows that the so-called "500,000 files" and the "279 GB data" were email archives and backup data that Qorvo could have but never actually analyzed to show whether they contained any confidential information, let alone trade secrets.  (*Id.* at 852:12-856:4.)  Nor does Qorvo identify any forensic evidence of their access in this litigation.  (*Id.*)  Therefore, the quantities repeatedly emphasized by Qorvo both during trial and in its Motion are neither relevant to evaluating misappropriation for the trade secret claim, (D.I. 596 at 64 (limiting instruction)), nor to this Motion seeking to recover attorneys' fees under this very claim.

[5] (*See id.* at 672:16-17 (Houlden joining in September 2016), 870:5-7 (Vetury joining in September 2015), 1091:15-16 (Dry joining in October 2019).)

of judgment on his part in retrospect).)  As a small start-up, however, Akoustis lacked the means and resources to detect and police such violations in its IT systems.  (*Id.* at 1188:6-1189:6.) Akoustis has since acquired the IT capabilities to identify and prevent the introduction of such materials by individual employees.  (*Id.* at 1188:24-1189:6.)

Most important, although the mere possession of confidential information is sufficient to establish a violation of both the DTSA and the North Carolina Trade Secrets Act, no evidence was introduced at trial showing actual ***use*** of any alleged secret.  No evidence or analysis demonstrated that any of Akoustis' products or processes actually incorporate or reflect any alleged trade secrets. Instead, Qorvo's trade secrets expert Dr. Shanfield admitted that "the basis for [his] explanation" of use is to "show[] what happened with documents" and then make conclusions of use from the sharing of such documents with others. (*See, e.g.*, *id.* at 1239:25-1240:4, 1273:3-8 ("it seemed to me like that discussion they had must have been, 'hey, we could use this information'"), 1245:11-15 ("A: Well, this is the response from Dr. Shealy. He says, and he writes back to Rohan, "got it." In other words, he gets what he's talking about. "Let's discuss Monday." And wants to discuss it in person. Basically, he's fine with it.".))  During cross-examination, however, Dr. Shanfield admitted that his opinions were rendered without reviewing any of the processes and procedures actually used by Akoustis in its manufacturing facility.  (*Id.* at 1414:15-25.)

### D.   THE JURY VERDICT

The jury rendered a verdict in favor of Qorvo on the patent infringement claims in the amount of $279,808.00.  (D.I. 601 at 6.)  The jury also found in favor of Qorvo on its trade secret claims, awarding $31,315,215.00 in compensatory damages and $7 million in exemplary damages. (*Id.* at 3-4.)  The jury found no liability under the claim of unfair and deceptive trade practices either as to Qorvo's employee poaching claim or the trade secret claim.  (*Id.* at 5.)

III. **ARGUMENT**

A. **THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY QORVO'S REQUEST FOR ATTORNEYS' FEES**

The Court should deny Qorvo motion for attorneys' fees because: (1) Qorvo has no evidence that it suffered any direct damage as the result of Akoustis' conduct, (2) Qorvo has no evidence that Akoustis intentionally harmed Qorvo, and (3) the jury's monetary award already compensates Qorvo and punishes Akoustis for the unjust enrichment allegedly obtained by Akoustis' misappropriation. Both the DTSA and the North Carolina Trade Secrets Protection Act ("NCTSPA") state that a court "*may* award reasonable attorney's fees to the prevailing party" if willful and malicious misappropriation exists. 18 U.S.C. §§ 1836(b)(3)(D); N.C. Gen. Stat. § 66-154(d) (emphasis added). Thus, the "the award of attorneys' fees . . . is not mandatory." *Estate of Accurso v. Infra-Red Servs., Inc.*, 805 F. App'x 95, 107 (3d Cir. 2020). In fact, "'may' sometimes means 'won't.'" *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980) (discussing different discretionary attorneys' fees statutes). Thus, the decision to award attorneys' fees, even upon a finding of willful and malicious misappropriation, lies solely within the Court's sound discretion. *See Arnold's Off. Furniture, LLC v. Borden*, No. 5:20-CV-05470-JMG, 2023 WL 3851978, at *10 (E.D. Pa. June 6, 2023).

1. **AKOUSTIS DID NOT INTENTIONALLY HARM QORVO**

Courts in this Circuit often decline to award attorneys' fees for trade secrets claims even though the jury found willful and malicious misappropriation. For example, in *Arnold's Off. Furniture*, the court denied a request for fees because there was no direct evidence to show that the defendant's conduct "was intended to affirmatively harm Plaintiffs." 2023 WL 3851978, at *10. The court maintained this position even in the face of the jury conclusion that the defendant's misappropriation was willful and malicious, as the defendant was well aware of his wrongdoing

and was motivated, admittedly, by greed for his misconduct. *Id.* Thus, the *Arnold's* court concluded that defendant's conduct did not merit an award of attorneys' fees. *Id.* Other courts limit fees to cases where the moving party shows that "affirmative steps were taken to inflict harm on the victimized parties," such as depriving plaintiff of the possession of its own trade secrets and deleting files from plaintiff's system resulting in negative impact on plaintiff's operation. *Id.* at *11. Courts may therefore deny a request for fees even upon a finding that the conduct was willful or malicious. *See e.g.*, *Estate of Accurso*, 805 F. App'x at 10 (affirming trial court's decision not to award attorney's fees even upon a jury's finding of willful and malicious misappropriation); *Citcon USA, LLC v. RiverPay Inc.*, No. 20-16929, 2022 WL 287563, at *2 (9th Cir. Jan. 31, 2022) (same).

The same result should obtain here. Notwithstanding the jury's finding of willful or malicious misappropriation,[6] Qorvo could not and did not show that Akoustis took any affirmative steps to inflict harm on Qorvo. Indeed, despite Qorvo's baseless accusations that Akoustis engaged in a "scheme to steal" Qorvo's trade secrets or confidential information (D.I. 619 at 1, 5-6, 13-14), the jury rejected Qorvo's assertion that Akoustis poached Qorvo's employees for the purposes of obtaining Qorvo's confidential information or engaged in any unfair or deceptive practices relating to the trade secrets. (D.I. 601 at 5.) Further, Qorvo has repeatedly made clear that it suffered no actual damages as a result of Akoustis' conduct. Rather, the record reflects that Akoustis, as a small startup formed in 2014, was unable to establish a formal and effective system to detect and police the very conduct it was accused of engaging in. (Elkins Decl. Ex. 1 (Trial Tr.)

---

[6] "Willful and malicious" is defined in the Final Jury Instruction as "such intentional acts **_or_** gross neglect of duty as to exhibit a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the entity at fault is conscious of the consequences of its carelessness." (D.I. 596 at 33 (emphasis added).)

at 1188:16-1189:6 (Dr. Shealy: "The challenge for the company as we were a small startup is . . . [i]n the early stages of a startup, . . . [i]f people are plugging [outside] things into a laptop, [we didn't] have a direct way of policing that.")); 1016:6-1018:5 (Mr. Aichele explaining the challenges dealing with Rohan Houlden circulating business intelligence containing Qorvo's confidential labels, but regretting not acting more diligently to raise concerns).)  Ultimately, there is no allegation, let alone evidence, that Qorvo suffered any actual damages as a result of Akoustis' misappropriation.  (*Id.* at 1720:16-1722:4.)

Qorvo cannot sidestep its decision to not present any evidence that it suffered any direct damages by arguing, without support, that the Court should award attorneys' fees based on "Akoustis' conduct in this litigation."[7]  (D.I. 619 at 14-15.)  Courts have expressly declined to take the liable party's litigation conduct into account in the assessment of whether an award of attorney's fees is appropriate.  *See, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 CIV. 211 (LGS), 2024 WL 1116090, at *5 (S.D.N.Y. Mar. 13, 2024) (finding conduct during the litigation is not "a relevant datapoint in assessing whether an award of attorney's fees is appropriate" and that "[t]he statute looks to the willfulness and maliciousness of the conduct underlying the substantive claim – i.e., the misappropriation of trade secrets -- not to the liable party's conduct during the litigation"); *Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2020 WL 7024867, at *25 (D. Del. Nov. 30, 2020) (finding lack of support for the proposition that litigation conduct is a relevant factor to consider in the exemplary-damages inquiry).

---

[7] Further, as addressed in footnote 8 below, Qorvo's allegation that Akoustis evaded discovery is simply baseless.

### 2. AN AWARD OF FEES IS NOT JUSTIFIED IN VIEW OF THE JURY'S MONETARY AWARD

The Court should also deny Qorvo's request for attorneys' fees for the separate reason that the jury has already awarded significant compensatory damages and exemplary damages to Qorvo. As the Comment to the relevant section of the Uniform Trade Secrets Act notes:

> Section 4 allows *a court to award reasonable attorney fees* to a prevailing party in specified circumstances *as a deterrent* to specious claims of misappropriation, to specious efforts by a misappropriator to terminate injunctive relief, and *to willful and malicious misappropriation. In the latter situation, the court should take into consideration the extent to which a complainant will recover exemplary damages in determining whether additional attorney's fees should be awarded*.

Comment, § 4. Attorney's Fees, Uniform Trade Secrets Act (emphasis added). Here, the jury awarded exemplary damages of $7 million on top of its $31 million award for the alleged unjust enrichment. Given that Qorvo presented no evidence at trial of damage to itself or its business or its reputation, the substantial award of exemplary damages on top of the compensatory award for the alleged benefit received by Akoustis has already made Qorvo more than whole for Akoustis' misconduct. *See In re Wilson*, 165 F.3d 913 (4th Cir. 1998) (affirming lower court's refusal to award attorney's fees because, among other reasons, "substantial exemplary damages were awarded" in the case); *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1080 (N.D. Cal. 2005) (declining to award attorneys' fees under the California trade secret law in part because of the exemplary damages awarded).

Indeed, the compensatory damages alone already exceeds Akoustis' current market capitalization. (Elkins Decl. Ex. 16 at 1 (showing a "Market cap (intraday)" of $13.679 million as of July 22, 2024).) This further supports a denial of Qorvo's Motion for fees. *See Eng'g Res., Inc. v. CRS Steam, Inc.*, No. 94 C 6970, 1997 WL 232778, at *9 (N.D. Ill. May 1, 1997) (finding attorneys' fees not appropriate where jury award adequately compensated plaintiff); *Citcon*, 2022

WL 287563, at *2 (finding lower court did not abuse its discretion to decline to grant punitive damages in view of defendant's "lack of wealth, the nature of the conduct, and the sufficiency of the $1.5 million compensatory damages award").

### B.    QORVO'S REQUESTED ATTORNEYS' FEES ARE NOT REASONABLE

If the Court is inclined to award any attorneys' fees to Qorvo, it should reduce the amount of the fee award as the requested fees are unreasonable.  First, any fee award must not include work performed before the trade secret claim was introduced into this case.  Second, the Court should reduce the award to reflect that Qorvo's counsel purposely engaged in abusive litigation tactics by introducing hundreds of alleged trade secrets that it had no intention of pursuing at trial and refusing to reduce those alleged trade secrets until the eve of trial.  Third, the requested fee award (a) relies on counsel's block-billed entries that are inherently unreliable, (b) includes travel time that is not an appropriate measure for a fee award, and (c) other duplicative and unnecessary work.

### 1.    LEGAL STANDARD

The starting point for determining the amount of a reasonable fee is the lodestar, calculated from "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  *Hensley* instructs that courts are to exclude from the determination of the lodestar any hours not reasonably expended, including those deemed "excessive, redundant, or otherwise unnecessary." *Hensley* at 434.  Even on a calculation of the lodestar, the court has "significant discretion to adjust the lodestar downwards." *Paulus ex rel. P.F.V. v. Cordero*, Civ. No. 12-986, 2013 WL 432769, at *6 (M.D. Pa. Feb. 1, 2013); *see also Hensley* at 434.  Trial courts have a "positive and affirmative function in the fee fixing process, not merely a passive role," and "should reduce the hours claimed by the number of hours spent

litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001).

### 2. QORVO'S TOTAL FEE AWARD IS UNREASONABLE IN VIEW OF THE CASES CITED IN ITS MOTION

Qorvo purports to justify its claim for over $12 million attorneys' fees by pointing to the attorneys' fees awarded in other trade secrets cases.  On review, however, the cases Qorvo relies upon are easily distinguished from the facts of this case.  For example, in *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, the total $14.5 million attorneys' fees were granted for litigating *both* the trade secret claims and the copyright claims.  No. 15 CIV. 211 (LGS), 2024 WL 1116090, at *7 (S.D.N.Y. Mar. 13, 2024).  The total 21,000 hours were spent "over seven years, including trial during the COVID-19 pandemic, and an appeal." *Id.*  Here, Qorvo requested over $12 million of attorneys' fees solely on the basis of the trade secret claims, which were added 14 months after the commencement of the case and litigated only for about 13 months by the time of trial.  In *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, the attorneys' fees were awarded for time billed for both the trade secret claims and the copyright claims during a three-year litigation period when litigation "has spawned more than 1,200 docket entries and . . . involved more than 68 million pages of documents, 528 hours of depositions, unparalleled motion practice, and a trial that occurred over more than three and a half months."  No. 1:17-CV-01973, 2021 WL 12139698, at *6 (N.D. Ill. Oct. 15, 2021).  These numbers dwarf the statistics of the present litigation, such as the approximately 2 million pages of documents produced in this case (D.I. 619 at 17), approximately 175 hours of depositions (Elkins Decl. ¶ 26), and a trial of eight days.  The

Court should account for this and reduce Qorvo's requested award by at least 10%.[8] *See generally*, *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (explaining a court may use a percentage reduction as a practical means of trimming fat from a fee application…"). This reduction would reduce the request for awardable attorneys' fee by $994,946.58. (Elkins Decl. ¶ 28.)

### 3. QORVO'S COUNSEL'S WORK PERFORMED BEFORE NOVEMBER 2022 IS NOT RELATED TO THE TRADE SECRET CLAIM AND SHOULD BE EXCLUDED.

As discussed above, Qorvo did not assert the trade secret claims – the sole basis for Qorvo's Motion for fees – until it filed the SAC in February 2023. Qorvo's billing records reveal that the first billing entry regarding possibly amending the complaint to add the trade secret claims was not until December 2022. (D.I. 621, Ex. 1 at 57 (12/14/2022 time entry by Mr. Trevor).) The Court should reject Qorvo's attempt to include work before that time period in its request for fees.

Discovering a plausible trade secret incidentally during the course of discovery of the ***other*** claims does not retroactively justify including the attorneys' fees incurred before contemplating filing those new claims. Indeed, courts routinely reject attempts to retrofit such fees into the requested award. *See e.g.*, *PNC Bank, N.A. v. Davis*, 631 F. Supp. 3d 253, 281-82 (D. Md. 2022) (excluding from fees recovery time entries reflecting work prior to the filing of the Amended Complaint when the claim on which the fees request was based was first asserted); *Nunez v. City of Pompano Beach*, NO. 20-62626-CIV-DIMITROULEAS/SNOW, 2021 WL 5213089, at * 3 (S.D. Fla. Oct. 25, 2021) (excluding work performed prior to the filing of the Third Amended

---

[8] The proposed 10% reduction here and the 20% reduction proposed in Section III.B.4 should be applied on an adjusted fees after the specific reductions set forth in Sections III.B.3 and III.B.5-8 are applied. (Elkins Decl. ¶¶ 28-29.)

Complaint when the claim of Title VII violations was alleged); *National Res. Defense Council, Inc. v. Fox*, 129 F. Supp. 2d 666, 672 (S.D.N.Y. 2001) (same).

Qorvo itself recognizes that at best, it did not engage in the document review that enabled Qorvo to assert its trade secret claims until November 2022.[9] (D.I. 619 at 2.) Although Akoustis believes that the case law supports deducting all time entries billed prior to the SAC, Akoustis requests that at a minimum the Court exclude fees related to work performed before November 2022 in view of Qorvo's representation about the beginning of its document review, resulting in a reduction of $1,900,515.43. (Elkins Decl. ¶ 21 & Ex. 17.)

### 4. THE COURT SHOULD REDUCE THE FEE AWARD TO ACCOUNT FOR QORVO'S ABUSIVE LITIGATION TACTICS OF FAILING TO SPECIFY OR REDUCE THE NUMBER OF THE ALLEGED TRADE SECRETS

Qorvo's requested award should further be reduced because Qorvo's litigation tactics, including the decision to pursue an unreasonable number of trade secrets and the refusal to specify the trade secrets at issue or reduce that number until the eve of trial, resulted in excessive fees.

Qorvo recites the procedural history of this case with an eye towards convincing the Court that it was Akoustis which created the basis for the exorbitant fee award Qorvo seeks here. But Qorvo's litigation tactics required far more work in this case than should have been necessary. Qorvo has known since submitting its first trade secret disclosure that it would need to "pare down" the list of trade secrets and make them manageable for trial. (D.I. 177 (Tr. Apr. 3, 2023) at 13-14.) Qorvo nevertheless refused to materially do so until the eve of trial. Despite repeated requests by Akoustis for a reduced number of trade secrets and for specificity related to the alleged trade

---

[9] Qorvo's allegation that Akoustis evaded or delayed document production is without merit. Qorvo points to no discovery dispute it raised with the Court, nor any other evidence of alleged evasion of delay. Indeed, Qorvo itself produced only about 2,000 documents in 2022; about 98% of its own production came in 2023. (Elkins Decl. ¶ 27.)

secrets, Qorvo insisted on proceeding with 104 categories of trade secrets through expert discovery and up until the eve of trial.  The unmanaged scope of the trade secret allegations unquestionably increased attorney hours and fees associated with fact discovery, expert reports and depositions, and motions practice (including Akoustis' motion for summary judgment).

Akoustis requests that this Court further reduce any lodestar amount by 20%, which is in line with how other courts have handled situations when the prevailing party engaged in such litigation tactics and gamesmanship.  *See Oden v. Shane Smith Enterpr., Inc.*, 27 F.4th 631, 634 (8th Cir. 2022) (affirming a 20% reduction in requested fees because the prevailing party "engaged in negotiating tactics that unreasonably extended the litigation, wasting the court's time and resources."); *Fair Hous. Ctr. of Cent. Indiana, Inc. v. Welton*, No. 1:18-CV-1098-JMS-DLP, 2020 WL 2218950, at *11 (S.D. Ind. May 7, 2020) (reducing lodestar amount "by 15% to account for excessive and burdensome discovery . . .[and] an additional 5% to account for Plaintiffs' unnecessary "earth-scorching tactics" that resulted in an unnecessary expenditure of time and resources at every stage in this litigation."); *J.L. v. Harrison Twp. Bd. of Educ.*, No. 14-2666 (RMB/JS), 2016 WL 4430929, at *2 (D.N.J. Aug. 19, 2016) ("when the prevailing party acts in bad faith and engages in dilatory tactics, a court may reduce the fee award.").  This reduction for Qorvo's litigation tactics would result in a further reduction in fees of  $1,989,893.15.  (Elkins Decl. ¶ 29.)

### 5.    BLOCK BILLING REQUIRES AN ADDITIONAL REDUCTION

At least half of the time entries billed by Qorvo's counsel before April 1, 2023, were recorded using block billing that records total daily time spent working on this case, rather than itemizing the time expended on specific tasks.[10]  (D.I. 621, Ex. 1 at 1-88.)  Block billing, however,

---

[10]  Qorvo appears to have recognized midstream the problems with block billing and discontinued such billing practice in this case since April 1, 2023.  This confirms that the issues with block

"makes it more difficult for courts to review hours expended because we do not know how many hours a lawyer spent on a discrete task." *See Simring v. Rutgers*, 634 F. App'x 853, 859 (3d Cir. 2015) ("Block billing makes it more difficult for courts to review hours expended because we do not know how many hours a lawyer spent on a discrete task."); *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (replying on California State Bar's Committee on Mandatory Fee Arbitration's report that block billing may increase time by 10 to 30%).

The need to apportion fees to the trade secret claims further highlights the problems associated with block billing. Courts address the negative implications of blockbilling through a percentage reduction of all time block billed. *See Live Face on Web, LLC v. Rockford Map Gallery, LLC*, No. 17-539, 2022 WL 11110133, at * 2 (D. Del. Oct. 19, 2022) (finding percentage reduction method warranted "[g]iven the potentially complex nature of the case and abundant billing records"). As such, Akoustis respectfully submits that this case warrants an exercise of the Court's discretion to impose a 10% to 30% reduction as suggested by *Welch* for 50% of the time billed by Sheppard Mullin before April 1, 2023, resulting in a further reduction of the requested fees in the range of $163,597.20 - $490,791.59. (Elkins Decl. ¶ 22 & Ex. 18).

### 6.   AKOUSTIS IS NOT RESPONSIBLE FOR COMPENSATING QORVO'S COUNSEL TRAVEL TIME

Qorvo's requested fees include 23 hours of "return" travel time billed by Jonathon DeFosse not deducted from Qorvo's alleged recoverable fees. (Elkins Decl. ¶ 23 & Ex. 19). Qorvo offers no evidence of a custom in this market for clients to pay for attorneys' "return" travel time, and Qorvo does not request fees from other timekeepers' travel time. Accordingly, the Court should exclude the above-referenced travel time from the requested fees, totaling $24,539.6. *See*

---

billing are well-recognized and that such practice is unreasonable in terms of providing an accurate accounting of the time billed for the purposes of motions for attorneys' fees.

*Giedgowd v. Cafaro Grp., LLC*, No. CV 20-6184, 2021 WL 4963532, at *8 (E.D. Pa. Oct. 26, 2021) (deducting attorneys' travel time for lack of evidence of a market practice for clients to pay for such time and in view that no other attorneys billed for such time in the case); *Witkowski v. Int'l Bhd. of Boilermakers, Iron Shipbuilders, Loc. Union 154*, No. CIVA06-874, 2010 WL 1433104, at *12 (W.D. Pa. Apr. 7, 2010) (excluding travel time entirely and finding it not appropriate for that attorney to charge for travel time when his counterpart attorneys did not charge for that time). Qorvo does not appear to dispute this and has excluded most of its incurred travel time from its fees request. (*See* D.I. 621, Ex. 1 at 143, 158, 166, 175, 195, 199, 212, 235, and 243 (reflecting that Qorvo has excluded billed time where "travel" was documented in the narrative).) As such, Akoustis respectfully requests that the Court reduce the fees calculation by $24,539.60.

### 7.    FEES FROM OVERSTAFFED DEPOSITIONS IS NOT RECOVERABLE

Seventeen out of the 31 depositions for which Qorvo seeks attorneys' fees were staffed with two attorneys present in the depositions. (D.I. 621, Ex. 1 at 199-200, 251). Qorvo understands that such practices are not acceptable, as it did not bill for Mr. Jung's time in attending the Shanfield and Darveaux depositions. (D.I. 621, Ex. 1 at 208 (1/18/2024 Mr. Jung's billing record on the date of Dr. Darveaux's deposition), 212 (1/26/2024 Mr. Jung's billing record on the date of Dr. Shanfield's deposition).) However, for each of the remaining 15 depositions, Qorvo billed both attendees' time at the depositions and seeks full recovery in its Motion.[11]  For example, both Mr. DeFosse and Mr. Masters attended the depositions of Robert Dry, Rohan Houlden, and

---

[11] (*See* D.I. 621, Ex. 1 at 135-36 (7/11/2023 Hodge deposition); *id*. at 136 (7/12/2023 Shen); *id*. at 158-59 (8/29/2023 Houlden); *id*. at 159 (8/30/2023 Dry); *id*. at 163-64 (9/12/2023 Bender); *id*. at 164-65 (9/12/2023 Winters); *id*. at 165-66 (9/13/2023 Vetury); *id*. at 166-67 (9/15/2023 Aichele 30(b)(1) deposition); *id*. at 179-80 (10/10/2023 Hunt); *id*. at 184-85 (10/20/2023 Kwon); *id*. at 196-97 (11/9/2023 Johnson & Nixon depositions; *id*. at 197-98 (11/10/2023 Aichele 30(b)(6) deposition); *id*. at 199-200 (11/15/2023 Shealy & Kim depositions).)

Jeff Shealy.  Similarly, both Mr. DeFosse and Mr. Gill attended the depositions of Michael Hodge and Ya Annia Shen.  The attorneys' fees incurred by Qorvo's decision to staff two attorneys in a deposition is unnecessary and duplicative and should not be shifted to Akoustis.  *See Student Pub. Int. Rsch. Grp. of New Jersey v. Monsanto Co.*, 721 F. Supp. 604, 611 (D.N.J. 1989) (finding plaintiff's "overstaffing and/or top staffing" many depositions with two attorneys unnecessarily present and deducting hours claimed for depositions).

The time entries reflecting the time billed by the attorneys who were merely present at but did not depose or defend the depositions are compiled and marked in bolded and italicized font in the table attached to the Elkins Declaration at Exhibit T, and total $74,313.30.  (Elkins Decl. ¶ 24 & Ex. 20.)  Akoustis respectfully requests that the Court reduce the fees calculation by $74,313.30.

### 8. CLERICAL AND/OR ADMINISTRATIVE WORK IS NOT RECOVERABLE

Sheppard Mullin's billing records reflect entries for some clerical or administrative duties, such as "obtain[ing] printer and print[ing]," and "shredding."  (*See* D.I. 621, Ex. 1 at 199-200, 251.)  Clerical or administrative work is not compensable.  "A claim by a lawyer for maximum rates for ... tasks [that can be] performed by administrative assistants, paralegals, or secretaries" is unreasonable. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *see also Cox v. Elite Energy LLC*, Civ. No. 09-444, 2011 WL 4406364, at *4 (D.N.J. Sept. 21, 2011) ("Many of the tasks ... such as outlining deposition transcripts, culling exhibits . . . could have been performed by a paralegal or administrative assistant.").  Qorvo does not appear to dispute this and has indicated that it is not seeking to recover fees for clerical work. (D.I. 621 Ex. 1 at 13, 24 (indicating that Qorvo has excluded clerical work performed by paralegals from fees request).)

The time entries that implicate clerical or administrative tasks are compiled in the table attached to the Elkins Declaration at Exhibit U, and total $3,692.  (Elkins Decl. ¶ 25 & Ex. 21.)

Accordingly, Akoustis respectfully requests that the Court further reduce the fee calculation by $3,692.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Akoustis respectfully requests that the Court deny Qorvo's motion for attorneys' fees or, in the alternative, reduce the award to no more than $6,964,626.04 (Elkins Decl. ¶ 30).

Dated:   July 25, 2024

OF COUNSEL:

S<small>QUIRE</small> P<small>ATTON</small> B<small>OGGS</small> (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

/s/ *Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
B<small>AYARD</small>, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on July 25, 2024, copies of the attached document were served via electronic mail on all counsel of record.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman