# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT COURT OF DELAWARE

| | |
|---|---|
| QORVO, INC.<br><br>       Plaintiff,<br><br>v.<br><br>AKOUSTIS TECHNOLOGIES, INC. and AKOUSTIS, INC.<br><br>       Defendants. | C.A. No. 21-1417 (JPM)<br><br>**JURY TRIAL DEMANDED** |

## THE AKOUSTIS DEFENDANTS' OPPOSITION TO
## QORVO'S MOTION FOR PERMANENT INJUNCTIVE RELIEF

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road, Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. LEGAL STANDARD ........................................................................................................ 2

III. ARGUMENT ..................................................................................................................... 3

    A. Akoustis' Voluntary Sequestering And Removal Of All Qorvo Information And Materials Moots Qorvo's Request For Permanent Injunctive Relief For Its Trade Secret Claims ........................................................... 3

    B. Qorvo Has Presented No Evidence That It Suffered Any Direct Or Irreparable Injury From The Alleged Misappropriation ......................................... 6

    C. Qorvo Cannot Show That The Jury's Monetary Award Is An Inadequate Remedy At Law For Akoustis' Alleged Misappropriation Under The DTSA And NCTSPA ............................................................................................... 9

    D. Qorvo Cannot Show That The Balance Of The Hardships And Public Interest In Akoustis' Alleged Misappropriation Weigh In Favor Of Granting Permanent Injunctive Relief ....................................................................... 9

    E. Qorvo Is Not Entitled To A Permanent Injunction That Would Require Akoustis To Prove That Its Redesigned Products Do Not Infringe Qorvo's Patents ....................................................................................................... 10

        1. Future Irreparable Harm Is Moot In Light Of Akoustis' Voluntary Redesign Of Its Products To Avoid Infringement Of The Asserted Patents ........................................................................................................ 11

        2. Qorvo Cannot Show That The Jury's Monetary Award Is An Inadequate Remedy At Law For Akoustis' Alleged Infringement Of The Asserted Patents ....................................................................................... 12

        3. Qorvo Cannot Show That The Balance Of The Hardships And Public Interest Weigh In Its Favor ................................................................. 13

    F. Ongoing Royalty .................................................................................................... 14

IV. CONCLUSION ................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ............................................................................................. 6, 10

*Adler v. Duval Cnty. Sch. Bd.*,
  112 F.3d 1475 (11th Cir. 1997) .................................................................................................. 4

*Amgen Inc. v. Sanofi*,
  872 F.3d 1367 (Fed. Cir. 2017) ................................................................................................ 13

*Apple Inc. v. Samsung Elecs. Co.*,
  735 F.3d 1352 (Fed. Cir. 2013) .................................................................................................. 3

*Bimbo Bakeries USA, Inc. v. Botticella*,
  613 F.3d 102 (3d Cir. 2010) ..................................................................................................... 10

*Bone v. Univ. of N. Carolina Health Care Sys.*,
  678 F. Supp. 3d 660 (M.D.N.C. 2023) .................................................................................... 4, 9

*Bridgetree, Inc. v. Red F. Marketing LLC*,
  No. 10-cv-00228, 2013 WL 443698 (W.D.N.C. Feb. 5, 2013) ............................................... 5, 7

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
  No. 08-cv-7497 (KBF), 2014 WL 1883474 (S.D.N.Y. May 9, 2014) ....................................... 8

*CSX Transp., Inc. v. Tenn. State Bd. of Equalization*,
  964 F.2d 548 (6th Cir. 1992) ..................................................................................................... 3

*E.I. DuPont de Nemours & Co. v. Unifrax I LLC*,
  No. 14-cv-1250, 2017 WL 4004419 (D. Del. Sept. 12, 2017) ................................................. 13

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ............................................................................................................. 2, 10

*i4i Ltd. Partnership v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) .................................................................................................. 13

*Legacy Data Access, LLC v. MediQuant, Inc.*,
  2017 WL 6001637 (W.D.N.C. Dec. 4, 2017) ......................................................................... 5, 6

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) ................................................................................................................... 3

██████████████████████████████

*Polymer Techs. v. Bridwell*,
  103 F.3d 970 (Fed. Cir. 1996)..................................................................................5, 7, 10, 11

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  702 F.3d 1351 (Fed. Cir. 2012)...........................................................................................8

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011).........................................................................................13

*Vojdani v. Pharmsan Labs, Inc.*,
  741 F.3d 777 (7th Cir. 2013) ............................................................................................14

*Weinberger v. Romero–Barcelo*,
  456 U.S. 305 (1982)............................................................................................................2

*WeRide Corp. v. Kun Huang*,
  379 F.Supp.3d 834 (N.D. Cal. April 1, 2019).....................................................................8

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  No. 09-cv-157-RGA, 2013 WL 6118447 (D. Del. Nov. 20, 2013), *aff'd*, 597
  F. App'x 630 (Fed. Cir. 2015) ...........................................................................................12

**Statute**

N.C.G.S. §66-154.......................................................................................................................5

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Qorvo's failure to present ***any*** evidence at trial that it suffered any lost sales, reputational damage, or direct damages of any kind as a result of Akoustis' alleged use of its purported trade secrets dooms its request for permanent injunctive relief for its trade secret claims under the Defend Trade Secrets Act ("DTSA") and North Carolina law. The sole remedy sought by Qorvo at trial was the unjust enrichment or "head start" benefit that Akoustis allegedly received from its possession of Qorvo confidential documents and information. The jury made that determination and awarded $31 million as the value of that discrete head start, as well as another $7 million in exemplary damages to deter such conduct in the future.[1] Without any evidence of ongoing direct harm attributable to Akoustis, however, Qorvo cannot satisfy the irreparable injury requirement for injunctive relief.

In addition, Qorvo's request for the removal of its information and documents from Akoustis' IT and computer systems is moot. As testified to by its CEO, before trial Akoustis's Board of Directors commissioned FTI Consulting, Inc., a third-party vendor, to sequester and remove all Qorvo confidential information from the Akoustis IT and computer systems and its individual employee computers. That process is now nearly finished (as detailed in the concurrently filed Declarations of Anthony S. Nixon and Jerry Bui) and is expected to be completed by early August 2024.

Qorvo's request for permanent injunctive relief for its two asserted patents fares no better. Ignoring the fact that the reasonable royalty damages they pursued at trial has already established that money damages is an adequate remedy at law, Qorvo seeks a permanent injunction against

---

[1] Whether the methodology used by Qorvo and the jury to arrive at the amount of that award was proper is the subject of Akoustis' pending Motions under Rule 50(b) and Rule 59. (*See* D.I. 607 and D.I. 613.)

"colorable variations" that would reverse the burden of proof and require Akoustis to prove that its publicly announced redesigned products do not infringe. Not surprisingly, no caselaw support exists for such an injunction. Qorvo received the Akoustis redesigns during discovery and affirmatively chose not to test those designs for infringement of the Asserted Patents. Should Qorvo subsequently establish a good faith basis for asserting infringement by the redesigned products, it may seek to file a new action. It is clear, however, that Qorvo is not entitled to reverse the burden of proof for any alleged infringement by such new products under the guise of a permanent injunction entered in this case.

For all the reasons described in more detail below, Qorvo's request for permanent injunctive relief should be denied.

## II.   LEGAL STANDARD

To prevail on its motion for permanent injunctive relief under the Defend Trade Secrets Act ("DTSA"), the North Carolina Trade Secrets Protection Act ("NCTSPA"), or the U.S. Patent Act, Qorvo must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982). As explained by the Supreme Court, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay*, 547 U.S. at 391-94 (rejecting the Federal Circuit's general presumption that injunctive relief for a winning patent owner was required in patent cases

and holding that issuance of a permanent injunction in patent cases requires a case-by-case assessment of the traditional equitable factors governing injunctions).

The Supreme Court cautions that "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) (citing *Weinberger*, 456 U.S. at 311–12 (1982)). Rather, "[i]f a less drastic remedy ... [is] sufficient to redress [a plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013).

Indeed, courts routinely refuse to impose injunctive relief when the requesting party has already been adequately compensated with a monetary award. In *CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, the Federal Circuit explained that an injunction is not warranted when the damages awarded by the jury are sufficient to compensate for the alleged harm and the plaintiff did not offer any evidence at trial to the contrary. 708 F. App'x 654, 668 (Fed. Cir. 2017) (observing, "[n]or has CardiAQ shown error in the district court's determination that the requested injunction would be "duplicative" of its monetary award, i.e., that the damages awarded already effectively (though perhaps not perfectly) compensate CardiAQ for the eighteen-month harm that is the basis for its request for a project-suspension injunction."); *see also CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992) (reiterating the long held standard for injunctive relief that "an injunction generally should not issue if there is an adequate remedy at law.").

### III. ARGUMENT

#### A. AKOUSTIS' VOLUNTARY SEQUESTERING AND REMOVAL OF ALL QORVO INFORMATION AND MATERIALS MOOTS QORVO'S REQUEST FOR PERMANENT INJUNCTIVE RELIEF FOR ITS TRADE SECRET CLAIMS

Approximately three months after Qorvo filed its Second Amended Complaint with its first real assertion of trade secret claims, Akoustis' Board of Directors adopted a resolution directing

- 3 -

management to perform a "Document Replacement Project" to sequester and permanently remove from its computers and information systems any documents identified by Qorvo to contain trade secrets and/or confidential information purportedly belonging to Qorvo. (*See* TX-206; Omnibus Decl. of David S. Elkins Ex. 1 (Tr. (May 9, 2024) at 1152:21-1157:22.[2]) This project was postponed until after the close of fact discovery to avoid any claims by Qorvo of evidence spoliation. (*See id*. at 1200:16-24.) As detailed in the Declarations of Jerry Bui and Anthony S. Nixon accompanying this Opposition, an independent third-party vendor, FTI Consulting Inc., and Akoustis' outside counsel (Squire Patton Boggs (US) LLP) worked with the Akoustis IT Department to identify and permanently remove all Qorvo confidential documents and information from the Akoustis IT systems and computers. (Bui Decl. ¶¶ 4-18; Nixon Decl. ¶¶ 3, 5-11.) This process is substantially complete and will be fully completed in early August 2024. (Bui Decl. ¶¶ 17-18; Nixon Decl. ¶ 11.)

Akoustis will no longer possess or have access to the information contained in Trade Secret Groups 2-7 before the Court even hears Qorvo's present motion. Qorvo's request for future injunctive relief for trade secret misappropriation is thus moot. "Equitable relief is a prospective remedy, intended to prevent future injuries." *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Id.*

By permanently removing the offending documents from its records, Akoustis has eliminated any "cognizable danger of recurrent violation" or future injury which could potentially constitute irreparable harm. *See Bone v. Univ. of N. Carolina Health Care Sys.*, 678 F. Supp. 3d 660, 687-688 (M.D.N.C. 2023) (holding that "[w]here the record discloses no significant threat of

---

[2] Subsequent citations to the Trial Transcript omit reference to the Omnibus Elkins Decl.

future violation, the plaintiff fails to carry its burden of establishing that injunctive relief is warranted") (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 635 (1953)). It is well-established that courts should not grant injunctive relief for "[c]ompleted acts and past occurrences in the absence of any evidence tending to show an intention on the part of the defendants to [commit future violations.]" *Legacy Data Access, LLC v. MediQuant, Inc.*, 2017 WL 6001637, at *22 (W.D.N.C. Dec. 4, 2017) (quoting *State ex rel. Bruton v. Am. Legion Post*, 124 S.E.2d 885, 886–87 (1962) (internal quotations omitted); *see also Polymer Techs. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996) (rebutting irreparable harm where the "non-movant has or will soon cease the allegedly infringing activities"). Without the ability to rely on Akoustis' possession of the misappropriated trade secrets, Qorvo has no evidence tending to show an intention by Akoustis to commit future misappropriation of the information in Trade Secret Groups 2-7.

Qorvo therefore attempts to rely on a purported "presumption" of irreparable harm provided by the NCTSPA. (D.I. 609 at 8); *see* N.C.G.S. §66-154 (misappropriation "shall be permanently enjoined"); *Bridgetree, Inc. v. Red F. Marketing LLC,* No. 10-cv-00228, 2013 WL 443698, at *22 (W.D.N.C. Feb. 5, 2013). Qorvo conveniently ignores, however, that this presumption of irreparable harm only applies "***absent*** rebutting evidence." *Legacy Data Access,* 2017 WL 6001637, at *21 (emphasis added). In *Legacy*, defendant hired a former employee of plaintiff who, while employed by defendant, used information from plaintiff that the jury found constituted trade secret misappropriation under the NCTSPA. The Court acknowledged that "[a]s the jury found Defendant misappropriated Plaintiff's trade secrets, there is a rebuttable presumption that Plaintiff has suffered an irreparable injury and will suffer irreparable harm absent an injunction." *Id*. The *Legacy* court, however, went on to find that the presumption of irreparable harm was rebutted because "there [was] no longer evidence tending to show Defendant's intent to

- 5 -

commit future violations" because defendant lost access to the trade secret information after it terminated plaintiff's former employee. *Id*. at 22.

Like the defendant in *Legacy,* Akoustis no longer has access to, possession of, or use of the information contained in Qorvo's Trade Secret Groups 2-7 – and Rohan Houlden, Robert Dry, and Joonbum "JB" Kwon, the former Qorvo employees on whom Qorvo focused most at trial, are no longer at Akoustis. The absence of any evidence tending to show Akoustis' intent or ability to commit future violations rebuts any presumption of irreparable harm.

### B. QORVO HAS PRESENTED NO EVIDENCE THAT IT SUFFERED ANY DIRECT OR IRREPARABLE INJURY FROM THE ALLEGED MISAPPROPRIATION

Not entitled to a presumption of irreparable injury, and devoid of any trial evidence to establish any direct or irreparable injury, Qorvo resorts to a mish-mash of misapplied cases in the hope of creating an illusion of irreparable harm. (*See* D.I. 609 at 8-12). Without any evidentiary foundation, Qorvo urges the Court to find that it will suffer irreparable injury based on: (i) a purported likelihood of recurrent future violations; (ii) the willful and malicious nature of the misappropriation; (iii) direct competition between the parties; (iv) an unsupported claim of injury to Qorvo's reputation and goodwill; and (v) the potential disclosure of its trade secrets to third parties. (*Id*.) Whether to grant permanent injunctive relief, however, is fact specific. *See ActiveVideo Networks v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1338 n.6 (Fed. Cir. 2012) (explaining that "[e]very injunctive case must be considered according to its unique facts."). Unlike the situation faced by this Court, in each of the cases cited by Qorvo the aggrieved party presented evidence to support the alleged harm. Here, Qorvo presented *no* evidence at trial to support any of these five potential harms.

First, by permanently removing all Qorvo documents and information from its records, Akoustis has eliminated any danger of recurrent violations or future injury that might constitute

irreparable harm.  Each of the five harms alleged by Qorvo is premised on the potential for current or future use.  By voluntarily eliminating access to Qorvo's documents and information, Akoustis has eliminated that potential.  Without access to or the ability to use Qorvo's trade secrets from Trade Secret Groups 2-7, there can be no fear of future recurrent misappropriation which "could result in an ongoing and possibly never-ending litigation battle."  *Bridgetree*, 2013 WL 443698, at *22; *see also Polymer Techs.*, 103 F.3d 970, 974 (Fed. Cir. 1996) (rebutting irreparable harm where the "non-movant has or will soon cease the allegedly infringing activities").

Qorvo next attempts to find irreparable injury in future direct competition between Akoustis and Qorvo, potentially causing loss of market share or customers, and future injury to Qorvo's reputation and goodwill if Akoustis is allowed to continue using Qorvo's trade secrets. (*See* D.I. 609 at 10-11.)  Qorvo, however, presented no evidence at trial to support these claims. While Akoustis does not dispute that both companies sell BAW filters, competition between the companies cannot be enjoined given Akoustis' inability to continue using Qorvo's trade secrets. Moreover, Akoustis is only one of several competitors in this market and has annual sales in the tens of millions.  Qorvo, on the other hand, is a billion-dollar company that dwarfs Akoustis in sales volume and number of employees.  Qorvo's real competitors are companies like Broadcom that are an order of magnitude larger than Akoustis.  (*See* Tr. 371:17-372:1; 449:24-450:4; 1193:21-1194:1; 1250:24-1251:6; 2211:15-2212:17.)  Qorvo did not present any evidence at trial regarding a loss of market share or customers to Akoustis.  Similarly, Qorvo fails to present any evidence here of damage to Qorvo's reputation or goodwill that could be attributed to Akoustis' conduct in this case.

The evidence that Qorvo actually presented at trial was directed solely to a theory of unjust enrichment benefit to Akoustis based on a head start theory.  None of that evidence demonstrates

that Qorvo itself suffered damages.  Qorvo's damages expert, Melissa Bennis, admitted during her testimony at trial that she calculated no damages for actual loss to Qorvo.  (*See* Tr. 1720:16-1722:4.)  Without evidence of direct damages in the form of loss of market share or customers, or damage to Qorvo's reputation or goodwill, Qorvo offers no evidence to support its claims for an ongoing irreparable injury caused by the alleged misappropriation.

In each of the cases cited by Qorvo, the defendant had the ability to continue the misappropriation through access to and use of the trade secrets.  For example, in *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351 (Fed. Cir. 2012), the Federal Circuit relied on the jury's finding and other evidence offered at trial to show that the parties "shared some of the same customers, that the two products occupy the same markets, and that Presidio was at times seen as ATC's only true competitor." *Id*. at 1363.  In *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, No. 08-cv-7497 (KBF), 2014 WL 1883474, at *13 (S.D.N.Y. May 9, 2014), the court held that the evidence presented at trial supported a risk to the plaintiff of losing customers to the defendant.  In *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 853 (N.D. Cal. April 1, 2019), the court granted a *preliminary* injunction based on evidence showing a likelihood of continued use of the plaintiff's trade secrets during the pendency of the trial to avoid the potential harms related to market position and continued disclosure to newly hired employees.  In contrast, the record in this case is entirely devoid of evidence showing loss of market share or damage to Qorvo's reputation caused by Akoustis' alleged misappropriation of trade secrets.  Now, given Akoustis's lack of access to or ability to use the deleted Qorvo trade secret information, no future danger of irreparable harm exists.

Finally, Qorvo attempts to rely on a hypothetical possibility of future disclosure of Qorvo's trade secrets to third parties.  (*See* D.I. 609 at 11-12.)  Again, no disclosure is possible if Akoustis

- 8 -

does not possess, or have access to, Qorvo's alleged trade secrets. *See Bone*, 678 F. Supp. 3d at 687 (explaining the well-established principle that "regardless of any irreparable harm Plaintiffs have previously incurred, a permanent injunction will not issue unless there is reason to believe that future injury would constitute irreparable harm.").

### C. QORVO CANNOT SHOW THAT THE JURY'S MONETARY AWARD IS AN INADEQUATE REMEDY AT LAW FOR AKOUSTIS' ALLEGED MISAPPROPRIATION UNDER THE DTSA AND NCTSPA

Following the eight-day trial, the jury awarded Qorvo $31,315,215 in compensatory damages and $7 million in exemplary damages for Akoustis' alleged misappropriation of trade secrets under the DTSA and the NCTSPA. Given Qorvo's decision to focus solely on Akoustis' purported unjust enrichment, and the complete lack of evidence at trial of any direct harm to Qorvo, this monetary windfall to Qorvo is more than adequate to compensate it for the alleged misappropriation of its trade secrets. Qorvo's experts, Dr. Stanley Shanfield and Melissa Bennis, claimed they conducted an extensive analysis regarding the value of the alleged unjust enrichment obtained by Akoustis due to the alleged misappropriation. Without evidence of direct harm, any additional relief would be duplicative of the jury's monetary award. *See CardiAQ Valve Techs.*, 708 F. App'x at 668 (holding that "the requested injunction would be 'duplicative' of its monetary award, i.e., that the damages awarded already effectively (though perhaps not perfectly) compensate CardiAQ.").

### D. QORVO CANNOT SHOW THAT THE BALANCE OF THE HARDSHIPS AND PUBLIC INTEREST IN AKOUSTIS' ALLEGED MISAPPROPRIATION WEIGH IN FAVOR OF GRANTING PERMANENT INJUNCTIVE RELIEF

Qorvo's only "evidence" that the balance of hardships weighs in its favor is that Akoustis *might* continue to misappropriate its trade secrets absent a permanent injunction. (D.I. 609 at 13.) Again, because all the Qorvo confidential documents will be permanently removed from its

records, no such possibility of future recurrent misappropriation exists. Qorvo, therefore, has no evidence of any other direct harm which could support its claim of hardship.

Qorvo relies solely on untethered caselaw "sound bites" to establish the unremarkable proposition that there is a public interest in "upholding the inviolability of trade secrets." (*See* D.I. 609 at 13-14, citing *Bimbo Bakeries USA, Inc. v. Botticella,* 613 F.3d 102 (3d Cir. 2010).) The courts have repeatedly made it clear, however, that no public interest supports granting the extraordinary remedy of injunctive relief absent showings of irreparable harm and that money damages cannot provide an adequate remedy. *See ActiveVideo*, 694 F.3d at 1341 (explaining that the public interest is not sufficient to mandate an injunction "when none of the other three factors support injunctive relief."); *see also eBay*, 547 U.S. 388. No public interest supports enjoining Akoustis from accessing and/or using trade secrets that it no longer has. Without access to or the ability to use the already deleted Qorvo trade secrets in the future, no evidence supports Qorvo's claim that the balance of the hardships and the public interest favor injunctive relief.

### E. QORVO IS NOT ENTITLED TO A PERMANENT INJUNCTION THAT WOULD REQUIRE AKOUSTIS TO PROVE THAT ITS REDESIGNED PRODUCTS DO NOT INFRINGE QORVO'S PATENTS

As Qorvo noted in its Opening Brief, Akoustis publicly announced after the trial that it had redesigned all its products and manufacturing processes to avoid any question of infringement of either of Qorvo's asserted patents going forward. (D.I. 609 at 19.) Qorvo now seeks a permanent injunction that would turn the burden of proof on its head, requiring that *Akoustis* prove its redesigned products do not infringe. Such relief is contrary to established precedent. *See Polymer Techs.*, 103 F.3d at 974 (rebutting irreparable harm where the "non-movant has or will soon cease the allegedly infringing activities"). The jury awarded Qorvo $279,808 for patent infringement *of the accused products* based on a reasonable royalty analysis presented by Qorvo's damages expert.

With no evidence of continued sales of the infringing products, further injunctive relief is not warranted.

### 1. FUTURE IRREPARABLE HARM IS MOOT IN LIGHT OF AKOUSTIS' VOLUNTARY REDESIGN OF ITS PRODUCTS TO AVOID INFRINGEMENT OF THE ASSERTED PATENTS

Qorvo seeks a permanent injunction to enjoin Akoustis from "continuing to infringe the asserted patents." (*See* D.I. 609 at 15.) Immediately after the verdict, however, Akoustis ceased manufacturing and offering for sale the accused products found to infringe the '018 and '755 Patents. (Nixon Decl. ¶ 12.) This alone eliminates any danger of recurrent violations or future injury that might constitute an irreparable harm. *See Polymer Techs.*, 103 F.3d at 974.

The record in this case is replete with evidence of Akoustis' redesign of its products to not infringe the '018 and '755 Patents. Akoustis provided designs and physical samples of the redesigned products to Qorvo throughout discovery. As far back as June 28, 2022, Akoustis disclosed to Qorvo the existence of two non-infringing alternative designs and related configurations for products accused of patent infringement. (Elkins Decl. Ex. 24 at 20 (Akoustis' First Supp. Response to Interrog. No. 8 (June 28, 2022) (citing AKTS_00022006).) On January 6 and March 29, 2023, Akoustis produced samples of the non-infringing alternative designs for its AKF-1252, AKF-1256, A10655, and A10155 BAW filters to Qorvo. (*Id.* at 20-21 (Akoustis' Second Supp. Response to Interrog. No. 8).) On July 21, 2023, Akoustis notified Qorvo that the non-infringing alternative designs provided to Qorvo were "sold in commerce." (*Id.* at 20-21 (Akoustis' Second Supp. Response to Interrog. No. 8).) On September 6, 2023, Akoustis produced a sample of its A10161 alternative design, and on October 10, 2023, produced a sample of its A10156 alternative design. (*Id.* at 21-22 (Akoustis's Third Supp. Response to Interrog. No. 8).) Akoustis continued to supplement its discovery responses to provide Qorvo with information regarding Akoustis's non-infringing alternative designs. (*See id.* at 22 (Akoustis's Fourth Supp.

Response to Interrog. No. 8).) Qorvo explicitly chose to exclude these redesigned products from this case. (*See* D.I. 465 at 30.) The redesigned products are consequently not accused, outside the purview of the action and necessarily cannot be the subject of Qorvo's request for injunctive relief.

Because Akoustis ceased manufacturing and offering for sale all of its accused products found to infringe, no danger of continuing infringement – and irreparable harm to Qorvo – exists in the future. *See XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-cv-157-RGA, 2013 WL 6118447, at *12-13 (D. Del. Nov. 20, 2013), *aff'd*, 597 F. App'x 630 (Fed. Cir. 2015) (denying permanent injunction because the patentee failed to show it would suffer prospective irreparable harm without an injunction where the accused infringer had already switched to a redesign that was more than colorably different from the adjudicated infringing product). To the extent any *de minimis* sales of accused products might have occurred after June 30, 2024 (the end of the period for which Qorvo's damages expert calculated patent infringement damages), the same reasonable royalty determined by the jury could be applied to provide an adequate monetary award.[3]

### 2. QORVO CANNOT SHOW THAT THE JURY'S MONETARY AWARD IS AN INADEQUATE REMEDY AT LAW FOR AKOUSTIS' ALLEGED INFRINGEMENT OF THE ASSERTED PATENTS

The jury awarded Qorvo $279,808 in compensatory damages based on a reasonable royalty analysis for Akoustis' alleged infringement of the '018 and '755 Patents. This monetary award is a common and accepted method for compensating a patent owner for patent infringement. *See CardiAQ Valve Techs.*, 708 F. App'x at 668 (holding that "the requested injunction would be 'duplicative' of its monetary award, *i.e.*, that the damages awarded already effectively (though

---

[3] Although Akoustis objects to the form of potential audits suggested by Qorvo, it would agree to negotiate in good faith with Qorvo for the appointment of an independent third-party auditor acceptable to both companies to verify the sales numbers for non-redesigned accused products that were not included in the calculations presented at trial, if any, should Akoustis' pending Rule 59 Motion with Regards to Qorvo's patent claims be denied.

- 12 -

perhaps not perfectly) compensate CardiAQ."). Qorvo has failed to carry its burden of proof of showing that a monetary award would be inadequate.

### 3. QORVO CANNOT SHOW THAT THE BALANCE OF THE HARDSHIPS AND PUBLIC INTEREST WEIGH IN ITS FAVOR

Qorvo has not provided any evidence to show that the balance of the hardships or public interest favor the entry of permanent injunctive relief on its patent claims. It instead relies *solely* on inapposite caselaw. Qorvo relies on the proposition in *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) and *E.I. DuPont de Nemours & Co. v. Unifrax I LLC,* No. 14-cv-1250, 2017 WL 4004419 (D. Del. Sept. 12, 2017) that to compete against its own patented invention imposes a substantial hardship on the patentee. In each of these cases, however, the patentee provided evidence of its direct harm, such as lost sales, loss of market share, lost customers, or price erosion. Qorvo presented no evidence at trial of any direct harm attributable to Akoustis and its sale of FBAR BAW filters. As stated above, Qorvo's expert (Melissa Bennis) admitted during her trial testimony that Qorvo's damages theory relied solely on unjust enrichment, and she did not calculate any damages for actual loss to Qorvo, whether by lost sales, lost profits, lost market share or damage to Qorvo's reputation. (Tr. 1720:16–1722:4.)

Qorvo also distorts the broad principal that the public has a substantial interest in protecting patent rights. The Federal Circuit has explained that "the touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010). Although the public may have an interest in protecting the property rights of a patentee against an infringer, this cannot be the only basis for injunctive relief. *See Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1381 (Fed. Cir. 2017) (holding that "[i]f a plaintiff fails to show 'that the public interest would not be disserved by a

permanent injunction,' then the district court may not issue an injunction,") (quoting *eBay*, 547 U.S. at 391). Qorvo provided no such factual evidence at trial or with its present motion.

Absent any actual evidence to support its conclusory analysis regarding the balance of hardships or the weighing of the public versus private interests involved, Qorvo fails to carry its burden of proof and its request for permanent injunctive relief should be denied.

### F.  ONGOING ROYALTY

For the same reasons discussed above regarding the lack of evidence to support injunctive relief for the trade secret claims, no record evidence exists to support the calculation or imposition of an additional ongoing royalty for the trade secret claims. (*See* Tr. 1720:20–1722:25.) Qorvo's failure to present such evidence at trial forecloses its ability to seek such a remedy now. *See Vojdani v. Pharmsan Labs, Inc.*, 741 F.3d 777, 786 (7th Cir. 2013) (holding that a reasonable royalty cannot be awarded when the plaintiff "never pursued that theory at trial.")

Moreover, the sole remedy Qorvo focused on at trial was the alleged "head-start" Akoustis received from its possession and use of Qorvo's purported trade secrets. (*See* Tr. 1720:20-1722:25.) Qorvo's damages expert then claimed to calculate the net present value of that "head-start." (Tr. 1696:20–1698:25). Although the jury ultimately disagreed with Qorvo's calculation and awarded a smaller amount, the amount awarded was effectively a fully paid-up royalty for the use of that information. Once properly calculated, any further ongoing relief would be unjustly duplicative. *See CardiAQ Valve Techs.*, 708 F. App'x at 668.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Qorvo's Motion for Permanent Injunctive Relief.

Dated: July 25, 2024

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

Respectfully submitted,

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.*

- 15 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2024, copies of the attached document were served via electronic mail on all counsel of record.

*/s/ Stephen B. Brauerman*
Stephen B. Brauerman