**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF DELAWARE**

QORVO, INC.

       Plaintiff,

v.

AKOUSTIS TECHNOLOGIES, INC. and
AKOUSTIS, INC.

       Defendants.

C.A. No. 21-1417 (JPM)

---

**THE AKOUSTIS DEFENDANTS' MEMORANDUM IN OPPOSITION TO
QORVO'S MOTION FOR PREJUDGMENT AND POST-JUDGMENT INTEREST**

OF COUNSEL:

Squire Patton Boggs (US) LLP
Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants
Akoustis Technologies, Inc. and Akoustis, Inc.*

## **TABLE OF CONTENTS**

Page

I.      Summary of Argument ...................................................................................... 1

II.     Prejudgment Interest Should Not Be Assessed On the Unjust Enrichment Award
        for Trade Secret Misappropriation ....................................................................... 2

        A.      Qorvo's Unjust Enrichment Award Was Unliquidated and Therefore Not
                Subject to Prejudgment Interest. ...................................................................... 2

        B.      Prejudgment Interest Under The DTSA Or N.C. Gen. St. § 24-5 Does Not
                Apply to Unjust Enrichment Awards ................................................................ 3

III.    ANY Prejudgment Interest Should Be Computed Using  the Uncompounded T-
        Bill Rate ............................................................................................................. 7

        A.      The Sole Purpose of Prejudgment Interest is to Compensate Plaintiff ................ 7

        B.      The T-Bill Rate Should be Used to Compute ANY  Prejudgment Interest
                Awarded ......................................................................................................... 8

        C.      Prejudgment Interest Should be Uncompounded or,  in the Alternative,
                Compounded Only Annually ............................................................................ 10

IV.     Qorvo's Prejudgment Interest Computation Should be Rejected for Failing to
        Distribute the Jury Award Over Time and for Double-Counting ..................................... 13

        A.      Improper Accrual for Purposes of Prejudgment Interest ..................................... 13

        B.      Double-Counting Interest for Unjust Enrichment ............................................... 17

V.      Post-Judgment Interest Accrues Only Upon Entry of a Judgment Quantifying the
        Underlying Principal Amount and the Post-Judgment Interest to be Applied .................. 18

VI.     Conclusion ......................................................................................................... 19

█████████████████████

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acceleron, LLC v. Dell Inc.*,
    No. 1:12-CV-4123-TCB, 2022 WL 1087683 (N.D. Ga. Mar. 7, 2022), *aff'd*,
    No. 2022-1620, 2023 WL 4503189 (Fed. Cir. July 13, 2023)..................................................13

*Agilent Techs., Inc. v. Kirkland*,
    C.A. No. 3512-VCS, 2010 WL 610725 (Del. Ch. Feb. 18, 2010)............................................8

*Aia Eng'g Ltd. v. Magotteaux Int'l S/A*,
    No. 3:09-cv-00255, 2012 WL 13254650 (M.D. Tenn. Sept. 28, 2012) ..................................12

*Allen Archery, Inc. v. Browning Mfg. Co.*,
    898 F.2d 787 (Fed. Cir. 1990)...................................................................................................9

*Amgen Inc. v. Hospira, Inc.*,
    336 F. Supp. 3d 333 (D. Del. 2018), *aff'd* 944 F.3d 1327 (Fed. Cir. 2019) ............................9

*Anthuis v. Colt Indus. Op. Corp.*,
    971 F.2d 999 (3d Cir. 1992)......................................................................................................2

*ArgoFresh, Inc. v. Essentiv LLC*,
    C.A. No. 16-662 (MN), 2020 WL 7024867 (D. Del. Nov. 30, 2020) ...................................6, 9

*Barnard v. Theobald*,
    721 F.3d 1069 (9th Cir. 2013) ..................................................................................................5

*Bio-Rad Labs., Inc. v. Nicolet Instr. Corp.*,
    807 F.2d 964 (Fed. Cir. 1986)...................................................................................................7

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
    757 F. Supp. 1101 (S.D. Cal. 1990).........................................................................................11

*CH2O, Inc. v. Meras Eng'g, Inc.*,
    No. LA CV13-08418 JAK, 2020 WL 13388230 (C.D. Cal. Apr. 6, 2020)............................12

*Cornell Univ. v. Hewlett-Packard Co.*,
    No. 01-CV-19742009 WL 1405208 (N.D.N.Y. May 15, 2009)................................................8

*Custom Designs of Nashville, Inc. v. Alsa Corp.*,
    No. 3:08-0665, 2011 WL 839503 (M.D. Tenn. Mar. 7, 2011) ................................................12

*Datascope Corp. v. SMEC, Inc.*,
    879 F.2d 820 (Fed. Cir. 1989)...................................................................................................8

*Del. River & Bay Auth. v. Kopacz,*
  584 F.3d 622 (3d Cir. 2009)................................................................................2

*Eaves v. County of Cape May,*
  239 F.3d 527 (3d Cir. 2001)..............................................................................18

*Eazor Express, Inc. v. Int'l Brotherhood of Teamsters,*
  520 F.2d 951 (3d Cir. 1975)................................................................................2

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,*
  689 F. Supp. 2d 585 (S.D.N.Y. 2010)...............................................................12

*Ferrellgas, Inc. v. Am. Premier Underwriters, Inc.,*
  79 F. Supp. 2d 1160 (C.D. Cal. 1999) ................................................................2

*General Motors Corp. v. Devex Corp.,*
  461 U.S. 648 (1983)........................................................................................4, 7

*Governo Law Firm LLC v. Bergeron,*
  166 N.E.3d 416 (2021)....................................................................................4, 5

*Grant Thornton, LLP v. Fed. Deposit Ins. Corp.,*
  435 F. App'x 188 (4th Cir. 2011) .......................................................................2

*Guest v. Phillips Petroleum Co.,*
  981 F.2d 218 (5th Cir. 1993) ............................................................................12

*Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549 (Fed. Cir. 1984) ...........................10

*In re Hayes Microcomputer Prod., Inc. Pat. Litig.,*
  766 F. Supp. 818 (N.D. Cal. 1991), *aff'd on other grounds,* 982 F.2d 1527
  (Fed. Cir. 1992).................................................................................................11

*I-Systems, Inc. v. Softwares, Inc.,*
  No. CIV.021951, 2005 WL 1430323 (D. Minn. Mar. 7, 2005)........................11

*Joy Techs., Inc. v. Flakt, Inc.,*
  954 F. Supp. 796 (D. Del. 1996).........................................................................8

*Kaneka Corp. v. SKC Kolon PI, Inc.,*
  198 F. Supp. 3d 1089 (C.D. Cal. 2016) ............................................................12

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC,*
  No. 21-10572-MRG, 2024 WL 1558167 (D. Mass. Apr. 10, 2024) ...................5

*Laitram Corp. v NEC Corp.,*
  115 F.3d 947 (Fed. Cir. 1997)....................................................................8, 9, 12

*Lam, Inc. v. Johns-Manville Corp.,*
  718 F.2d 1056 (Fed. Cir. 1983)...........................................................................7

*Mars, Inc. v. Coin Acceptors, Inc.*,
  513 F. Supp. 2d 128 (D.N.J. 2007) ..................................................................12

*Med. Mut. Ins. Co. of N. Carolina v. Mauldin*,
  157 N.C. App. 136, 577 S.E.2d 680 (2003) .......................................................4

*Monsanto Co. v. Strickland*,
  604 F. Supp. 2d 805 (D.S.C. 2009) ..................................................................11

*MWK Recruiting Inc v. Jowers*,
  No. 1:18-CV-444-RP, 2023 WL 4754496 (W.D. Tex. July 25, 2023) ...................11

*Oiness v. Walgreen Co.*,
  88 F.3d 1025 (Fed. Cir. 1996) ...........................................................................7

*PB Legacy, Inc v. Am. Mariculture, Inc.*,
  104 F.4th 1258 (11th Cir. 2024) ........................................................................6

*Perdue Farms Inc. v. Hook*,
  777 So. 2d 1047 (Fla. 2d DCA 2001) ...........................................................2, 3

*Phillips Petroleum Co. v. Rexene Corp.*,
  No. Civ. A. 90-208-LON, 1997 WL 781856 (D. Del. Sept. 4, 1997) ....................8

*Proofpoint, Inc. v. Vade Secure, Inc.*,
  No. 19-cv-04238-MMC, 2023 WL 3395121 (N.D. Cal. Apr. 18, 2023).............4, 5

*Skretvedt v. E.I. DuPont De Nemours*,
  372 F.3d 193 (3d Cir. 2004)..............................................................................18

*Softketeers, Inc. v. Regal West Corp.*,
  No. 8:19-CV-00519-JWH, 2023 WL 2024701 (C.D. Cal. Feb. 7, 2023)...........5, 6

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
  862 F.2d 1564 (Fed. Cir. 1988).........................................................................8

*Sun Shipbuilding & Dry Dock Co. v. U. S. Lines, Inc.*,
  439 F. Supp. 671 (E.D. Pa. 1977), *aff'd sub nom. Sun Shipbuilding & Drydock
  Co. v. U.S. Lines, Inc.*, 582 F.2d 1276 (3d Cir. 1978) ...........................................2

*Symbol Techs., Inc. v. Proxim Inc.*,
  Case No. Civ. 01-801-SLR, 2004 WL 1770290 (D. Del. July 28, 2004)...............11

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
  No. 15 Civ. 211 (LGS), 2021 WL 1553926 (S.D.N.Y. Apr. 20, 2021)...................3

*TB Food USA, LLC v. Am. Mariculture, Inc.*,
  No. 2:17-cv-9-FtM-29NPM, 2022 WL 3028061 (M.D. Fla. Aug. 1, 2022).............6

*Wright v. Genesee Cnty.*,
   504 Mich. 410, 934 N.W.2d 805 (2019) ...................................................................6

*Zargarian v. BMW of North m., LLC*,
   442 F. Supp. 3d 1216 (C.D. Cal. 2020) ..................................................................2

**Statutes**

28 U.S.C. § 1961 ............................................................................................ *passim*

35 U.S.C. § 284 .........................................................................................................3, 7

18 U.S. Code Ch. 90 ...................................................................................................3

Minn. Stat. Ann. § 549.09 ........................................................................................11

N.C. Gen. Stat § 24-5(b) ...........................................................................................4

Tex. Fin. Code § 304.104 ..........................................................................................11

**Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 51(4) (2011) ....................................4

Stephen A. Ross et al., *Corporate Finance* 82 (3d ed. 1993) ........................................................10

Williston on Contracts § 1:6 (4th ed.) ....................................................................6

Defendants Akoustis Technologies, Inc. and Akoustis Inc. (collectively, "Akoustis") respectfully submit this Response in Opposition to Qorvo's Motion for Prejudgment and Post-Judgment Interest.  (D.I. 615 ("Motion").)

## I.      SUMMARY OF ARGUMENT

The Court should deny Qorvo's request for prejudgment interest on the jury award for unjust enrichment based upon Akoustis' head start benefit.  The unjust enrichment award is neither compensatory nor liquidated, making prejudgment interest inappropriate.

The Court should alternatively deny Qorvo's request to apply the prime rate and the North Carolina statutory interest rate, compounded quarterly.  The sole purpose of prejudgment interest is compensatory without being punitive.  Applying the prime rate or the North Carolina statutory rate *over*compensates Qorvo and runs counter to the sole purpose of prejudgment interest.  The T-bill rate is a benchmark for the shortest term, risk-free investment available to ordinary investors and adequately compensates Qorvo.  To the extent that the Court is inclined to award prejudgment interest at all, it should exercise its discretion to award uncompounded interest at the T-bill rate or, at most, compounded annually.

Even if the Court assesses prejudgment interest on the jury award, Qorvo's interest calculation must be rejected because it inappropriately assumes that the full damages amount accrued at the start of the relevant period, which is contrary to its own expert's testimony at trial.  Qorvo's interest calculation for unjust enrichment should further be rejected because it double-counts interest already built into the jury award.

Finally, to the extent that the Court assesses post-judgment interest, it does not accrue until an order quantifying the interest amount is entered.  If the Court grants Qorvo prejudgment interest and attorneys' fees, post-judgment interest does not accrue until the Court enters an order granting post-judgment interest and quantifying the prejudgment interest and attorneys' fees.

## II. PREJUDGMENT INTEREST SHOULD NOT BE ASSESSED ON THE UNJUST ENRICHMENT AWARD FOR TRADE SECRET MISAPPROPRIATION

### A. QORVO'S UNJUST ENRICHMENT AWARD WAS UNLIQUIDATED AND THEREFORE NOT SUBJECT TO PREJUDGMENT INTEREST.

Qorvo is not entitled to prejudgment interest on its unjust enrichment award because it was unliquidated, *i.e.*, the amount could not have been determined by Akoustis before the jury verdict. Liquidated damages are damages that are reasonably ascertainable, *e.g.*, "with mathematical precision." *Eazor Express, Inc. v. Int'l Brotherhood of Teamsters*, 520 F.2d 951, 973 (3d Cir. 1975). "As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due." *Del. River & Bay Auth. v. Kopacz*, 584 F.3d 622, 634 (3d Cir. 2009) (quoting *Anthuis v. Colt Indus. Op. Corp.*, 971 F.2d 999, 1010 (3d Cir. 1992) (citation omitted). But prejudgment interest is generally denied for claims that are not fixed and determined – that is, for claims that are not liquidated – because it would be "unfair to assess interest against a party who did not know, and could not reasonably have ascertained, the amount owed." *Ferrellgas, Inc. v. Am. Premier Underwriters, Inc.*, 79 F. Supp. 2d 1160, 1164 (C.D. Cal. 1999); *Sun Shipbuilding & Dry Dock Co. v. U. S. Lines, Inc.*, 439 F. Supp. 671, 676 (E.D. Pa. 1977), *aff'd sub nom. Sun Shipbuilding & Drydock Co. v. U.S. Lines, Inc.*, 582 F.2d 1276 (3d Cir. 1978) (holding that if "the claim is not mathematically ascertainable, prejudgment interest is ordinarily not allowed"); *see also Grant Thornton, LLP v. Fed. Deposit Ins. Corp.*, 435 F. App'x 188, 209 (4th Cir. 2011) (applying West Virginia law); *Zargarian v. BMW of North m., LLC*, 442 F. Supp. 3d 1216, 1224 (C.D. Cal. 2020).

This principle was applied in *Perdue Farms Inc. v. Hook*, 777 So. 2d 1047, 1050 (Fla. 2d DCA 2001). There plaintiff was awarded damages of $27 million for trade secret misappropriation

under the Florida Uniform Trade Secrets Act and almost $15 million in prejudgment interest.  The Florida appellate court reversed the prejudgment interest award, finding that the underlying damage award could not be liquidated to a date certain.  *Id.* at 1054-55.  Like the plaintiff in *Perdue Farms*, Akoustis was incapable of knowing before the verdict was read at trial the damages amount that would ultimately be awarded for its head start benefit.  Indeed, the amount ultimately awarded by the jury was much less than what Qorvo's expert testified to at trial.  Put simply, the parties zealously disputed the amount of the head start benefit to Akoustis, the jury made its own assessment, and it awarded an amount neither proposed nor hinted at by either party.

Because the jury's award for trade secret misappropriation was not reasonably ascertainable by either party before the verdict, it would be unfair and improper to assess prejudgment interest on that unliquidated amount.  The Court should deny Qorvo's request for prejudgment interest on the jury's head start unjust enrichment benefit award.

### B. PREJUDGMENT INTEREST UNDER THE DTSA OR N.C. GEN. ST. § 24-5 DOES NOT APPLY TO UNJUST ENRICHMENT AWARDS

Prejudgment interest for violations of the Defend Trade Secrets Act ("DTSA") and the North Carolina Trade Protection Act ("NCTPA") is available only for compensatory damages.  The award of Akoustis' head start unjust enrichment benefit is not a compensatory award – it reflects the benefit to Akoustis, not the harm to Qorvo.  Prejudgment interest is not available here.

The DTSA does not specifically provide for prejudgment interest.  35 U.S.C. § 284; 18 U.S. Code Ch. 90 (Protection of Trade Secrets).  In fact, several courts have expressly denied prejudgment interest for damages awarded under the DTSA.  *See*, *e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 Civ. 211 (LGS), 2021 WL 1553926, at *15 (S.D.N.Y. Apr. 20, 2021) (denying prejudgment interest for DTSA claims).  Similarly, the North Carolina statute that Qorvo invokes expressly limits prejudgment interest to **compensatory** damages:  "In

an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied." N.C. Gen. Stat § 24-5(b) (emphasis added)); *see also Med. Mut. Ins. Co. of N. Carolina v. Mauldin*, 157 N.C. App. 136, 139, 577 S.E.2d 680, 682 (2003) (denying prejudgment interest where contribution award was not compensatory).

Not every form of monetary relief is compensatory, however. For example, a damages award based on a defendant's unjust enrichment or disgorgement of profits is measured by the defendant's gain, as compared to compensatory damages which is measured by the plaintiff's loss. Several courts have ruled that "such restitutionary recoveries are not designed to make the plaintiff whole." *See Governo L. Firm LLC v. Bergeron*, 487 Mass. 188, 199, 166 N.E.3d 416, 428 (2021); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 51(4) (2011) ("… the unjust enrichment of a conscious wrongdoer, or of a defaulting fiduciary without regard to notice or fault, is the net profit attributable to the underlying wrong. The object of restitution in such cases is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty. Restitution remedies that pursue this object are often called "disgorgement" or "accounting."). Non-compensatory awards, like unjust enrichment, are not appropriate for prejudgment interest because (as even Qorvo agrees) prejudgment interest's sole purpose is to make plaintiff whole. (*See* D.I. 615 at 3 ("Under Supreme Court precedent, prejudgment interest is used to restore a plaintiff to the position it would have been had there been no wrongdoing. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655-56 (1983).").)

Courts have denied prejudgment interest for non-compensatory trade secret damages. For example, the court in *Proofpoint* denied plaintiff's motion for prejudgment interest on a trade secret award of the defendant's unjust enrichment benefit, finding that "[t]he amounts awarded do

not correspond to any actual loss plaintiffs incurred, and, consequently, are not the type of award for which prejudgment interest ordinarily is appropriate." *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC, 2023 WL 3395121, at *1 (N.D. Cal. Apr. 18, 2023). Similarly, the court in *KPM Analytics* held that although the plaintiff was entitled to prejudgment interest on *its* lost profits because they were "rightly categorized as 'compensatory,'" it was not entitled to prejudgment interest on "any elements of the jury award(s) that are rightly classified as restitutionary in nature, since restitutionary recoveries are not designed to make the plaintiff whole." *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 21-10572-MRG, 2024 WL 1558167, at *22 (D. Mass. Apr. 10, 2024). Restitutionary recoveries are "distinct from damages, which measures compensation for loss rather than disgorgement of the defendant's gain." *Id.* (quoting *Governo L. Firm LLC*, 487 Mass. at 199, 166 N.E.3d at 428 (internal quotations omitted). As with the plaintiff in *Proofpoint*, Akoustis' head start benefit does not constitute an "actual loss" to Qorvo and thus is "not the type of award" for which "prejudgment interest is in order." *Proofpoint*, 2023 WL 3395121, at *1, quoting *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013).

Additionally, courts have declined to award prejudgment interest on a jury's award of unjust enrichment because it "emphasizes the wrongdoer's enrichment, not the victim's loss" and "[does] not involve the restoration of anything [plaintiff] previously possessed." *Softketeers, Inc. v. Regal West Corp.*, No. 8:19-CV-00519-JWH (JDEx), 2023 WL 2024701, at *6 (C.D. Cal. Feb. 7, 2023) (internal quotations and citations omitted). In *Softketeers*, which involved a claim under California's Uniform Trade Secrets Act, the Central District of California observed that:

> It would be odd, then, for [plaintiff] to lay claim to interest as a way to make it "whole," if it never owned the principal – in this instance, [defendant's] profits. Thus, even if prejudgment interest could be tacked onto awards of restitution, this Court is not persuaded that

> prejudgment interest … could be tacked onto awards of unjust enrichment.

*Id.* (internal citation omitted).  Like the plaintiff in *Softketeers*, Qorvo "never owned the principal" which, in this case, was ***Akoustis'*** head start benefit.

Qorvo cites two cases to support its claim that courts "in this District and elsewhere have exercised their discretion to award prejudgment interest on unjust enrichment claims under the DTSA." Motion at 3.  Both are inapposite.  The district court in the first case vacated and remanded for a new trial one day after Qorvo filed its opening brief.  *TB Food USA, LLC v. Am. Mariculture, Inc.*, No. 2:17-cv-9-FtM-29NPM, 2022 WL 3028061, at *17 (M.D. Fla. Aug. 1, 2022), vacated and remanded sub nom. *PB Legacy, Inc v. Am. Mariculture, Inc.*, 104 F.4th 1258, 1265 (11th Cir. 2024).[1]

The plaintiff in the second case cited by Qorvo requested "prejudgment interest on the $1,013,000 in compensatory damages for unjust enrichment resulting from trade secret misappropriation (under both the DTSA and PUTSA)."  *ArgoFresh, Inc. v. Essentiv LLC*, C.A. No. 16-662 (MN), 2020 WL 7024867, at *26 (D. Del. Nov. 30, 2020).  Defendant, however, did not object to plaintiff's assertion that it was entitled to prejudgment interest on the unjust enrichment award and the Court, therefore, did not opine on that issue.  *Id.*[2]  Neither *TB Food* nor

---

[1] Qorvo's statement that "plaintiff received [damages] under a head start theory of unjust enrichment" misstates the Florida court's analysis.  (D.I. at 3.)  To the contrary, the court in *TB Food* examined head start damages only to determine whether the $9.9 million awarded in compensatory damages was duplicative.  *TB Food*, 2022 WL 3028061, at *21.  Unlike Qorvo, the plaintiff in *TB Food* suffered actual damages; the court denied disgorgement damages.  *See id.*

[2] General contract principles provide that a "restitutionary monetary award based on disgorgement of profits is not compensatory in nature; it is measured by the defendant's gain, rather than by the plaintiff's loss, and it is not designed to make the plaintiff whole."  Williston on Contracts § 1:6 (4th ed.); *see also*, *e.g.*, *Wright v. Genesee Cnty.*, 504 Mich. 410, 420, 934 N.W.2d 805, 810 (2019) (plaintiff's claim for unjust enrichment was not a claim for compensatory damages but a claim for restitution).

-6-

*AgroFresh* supports Qorvo's request for prejudgment interest on its non-compensatory unjust enrichment award.

*   *   *

In *General Motors*, the Supreme Court stated that prejudgment interest is used to restore a plaintiff to the position it would have been in absent any wrongdoing. 461 U.S. at 655-56. Because it suffered no damages by virtue of trade secret misappropriation, Qorvo is today in the same position it would have been absent misappropriation. Assessing prejudgment interest here would simply constitute an additional award to Qorvo that was otherwise rejected by the jury. The Court should deny Qorvo's request for this additional windfall.

## III. ANY PREJUDGMENT INTEREST SHOULD BE COMPUTED USING THE UNCOMPOUNDED T-BILL RATE

### A. THE SOLE PURPOSE OF PREJUDGMENT INTEREST IS TO COMPENSATE PLAINTIFF

The purpose of prejudgment interest is purely "to make the [plaintiff] whole" without punishing the defendant or providing a windfall to the plaintiff. *General Motors*, 461 U.S. at 655-56; *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996) ("[p]rejudgment interest has no punitive, but only compensatory purposes") (internal quotations and citations omitted); *see* 35 U.S.C. § 284. Prejudgment interest is not mandatory, and the Court may "limit prejudgment interest, or perhaps even deny it altogether." *Gen. Motors*, 461 U.S. at 657.

To this end, "[t]he rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." *Bio-Rad Labs., Inc. v. Nicolet Instr. Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986). For example, where a plaintiff "affirmatively demonstrated [that it] borrowed money at or above the prime rate in order to continue its operations," a court is justified in applying the prime rate to compute prejudgment interest. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983).

## B.   THE T-BILL RATE SHOULD BE USED TO COMPUTE ANY PREJUDGMENT INTEREST AWARDED

This District and many others have awarded prejudgment interest at the average rate of return on Treasury Bills (the "T-Bill rate") – the same rate for awards of post-judgment interest under 28 U.S.C. § 1961 and that which is generally deemed adequate to compensate plaintiffs. *See Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989) (affirming prejudgment interest calculated by using the T-Bill rate while rejecting the argument that "the Treasury bill rate of section 1961 fails to 'adequately compensate' a patentee").  The T-Bill rate is "a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement."   *Cornell Univ. v. Hewlett-Packard Co.*, No. 01-CV-19742009 WL 1405208, at *3 (N.D.N.Y. May 15, 2009); *see also Phillips Petroleum Co. v. Rexene Corp.*, No. Civ. A. 90-208-LON, 1997 WL 781856, at *28 (D. Del. Sept. 4, 1997); *Joy Techs., Inc. v. Flakt, Inc.*, 954 F.Supp. 796, 808 (D. Del. 1996).  The same principle of using the T-Bill rate as a reasonable method of assessing prejudgment interest applies to trade secrets damages.  *See, e.g.*, *Agilent Techs., Inc. v. Kirkland*, C.A. No. 3512-VCS, 2010 WL 610725, at *29 (Del. Ch. Feb. 18, 2010) (awarding $11,047 for prejudgment interest at the T-Bill rate for lost profit damages based on misappropriation of trade secrets under the Delaware Uniform Trade Secrets Act).

The Federal Circuit did not "intend to establish any rule that prejudgment interest at the prime rate should be awarded as a matter of course in every case."  *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1580 (Fed. Cir. 1988).  The T-Bill rate is appropriate where "there [is] no evidence that [plaintiff] borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [defendant's wrongdoing]." *Laitram Corp. v NEC Corp*., 115 F.3d 947, 955 (Fed. Cir. 1997).  This is because, absent proof of loss or other mitigating factors, the "Treasury

Bill represents a benchmark as the shortest term, risk-free investment available to ordinary investors[, making it] a proper basis upon which to compensate [plaintiff] for the foregone use of the money." *Allen Archery, Inc. v. Browning Mfg. Co*., 898 F.2d 787, 789 (Fed. Cir. 1990).

Like the plaintiffs in *Laitram* and *Allen Archery*, Qorvo submitted no evidence that it was forced to borrow money at the prime (or higher) rate at any time, what investment it would have made with the patent royalty payments from Akoustis, nor any other circumstance or fact that would justify the Court applying a rate higher than the "benchmark" T-Bill rate. *See generally* (D.I. 615 at 1-6.)  Nor could Qorvo have done so:  the patent infringement damages of under $280,000 could hardly have required a multi-billion dollar company like Qorvo borrow money.

The entirety of Qorvo's "reasoning" is encapsulated in a single sentence:

> In patent cases[,] prejudgment interest is calculated using the prime rate compounded quarterly.  *E.g.*, *Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364 (D. Del. 2018), *aff'd* 944 F.3d 1327 (Fed. Cir. 2019).

*Id.* at 2.[3]  Qorvo makes no attempt to explain how its circumstances are comparable to that of the plaintiff in *Amgen*, the case it relies on for applying the prime rate, or to demonstrate any monetary or other harm or inconvenience it suffered as a result of not having the royalty payment from Akoustis starting in 2021 when the Complaint was filed.  *Id.* at 1-2.[4]  In fact, Qorvo's actual interest documented in its 10-K filing is lower than both the prime rate *and* the T-Bill Rate.[5]

---

[3] As to the unjust enrichment award, because it is based upon Akoustis' head start and not on any damages suffered by Qorvo, e.g., lost profits, Qorvo would not have received any payments from Akoustis for trade secret misappropriation to which interest could be applied.  *See* Section II above.

[4] This District applied the prime rate in *AgroFresh* because "there [was] evidence that Plaintiff would have used additional funds during the relevant time period to pay down its debt rather than make further investment."  *AgroFresh*, 2020 WL 7024867 at *27.

[5] Qorvo's income statement in the company's 10-K indicates an annual interest expense of $69,245 for the 12 months ending in March 2024 on the statement of profit and losses.  The long-term debt on the balance sheet, as of March 30, 2024 was $1,549,272,000.  The year prior, the ending balance was $2,048,073,000.  A reasonable presumption is that the average amount outstanding for that year was, $1,813,672,500, the average of the two numbers.  The interest rate is approximately

The Court should therefore reject Qorvo's application of the prime rate in the computation of prejudgment interest, and instead apply the benchmark T-Bill rate to Qorvo's awards of Akoustis' head start benefit and Qorvo's damages for patent infringement because it adequately compensates Qorvo.

### C. PREJUDGMENT INTEREST SHOULD BE UNCOMPOUNDED OR, IN THE ALTERNATIVE, COMPOUNDED ONLY ANNUALLY

Qorvo also urges the Court to compound the prejudgment interest quarterly.  (D.I. 615 at 2 and 6.)  A simple interest award, however, is sufficient to compensate Qorvo, and it has not provided any justification for compounding interest.

"[T]he determination whether to award simple or compound interest … is a matter largely within the discretion of the district court."[6] *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556 (Fed. Cir. 1984).  Because 28 U.S.C. § 1961(b) provides for compounding interest in calculating post-judgment interest, prejudgment interest should, argued the patentholder in *Gyromat*, also be compounded.  The Federal Circuit observed, however, that "[t]he fact that Congress restricted the award of compounded interest to judgments itself strongly suggests that the legislature did not intend that there should be the same rule for prejudgment interest."  *Id.* at 557.  The legislative history of § 1961(b) confirms the Federal Circuit's observation:  "The legislative history shows that in amending 28 U.S.C. § 1961(b), to provide for compound interest on judgments, Congress intended to take no action with respect to prejudgment interest, but to leave that matter for another day."  *Id.* (relying on 127 Cong. Rec. S14699 (daily ed. Dec. 8, 1981)).

---

3.818% (average interest expense divided by average long-term debt), which is significantly lower than both the prime rate and the T-Bill Rate.  (Omnibus Decl. of David S. Elkins ("Elkins Decl.") Ex. 22 (Qorvo's 2024 10-K) at 37; 49.)

[6] With simple interest, the interest is calculated each period on the original base amount.  *See* Stephen A. Ross et al., *Corporate Finance* 82 (3d ed. 1993).

The Federal Circuit then affirmed the District of Connecticut's award of simple prejudgment interest for plaintiff's damages.

The District of Delaware and other district courts have followed suit. *See*, *e.g.*, *Symbol Techs., Inc. v. Proxim Inc.*, Case No. Civ. 01-801-SLR, 2004 WL 1770290, at *9 (D. Del. July 28, 2004) (awarding simple interest based upon the T-Bill rate after recognizing that "[t]he determination of whether to award simple or compounded interest is within the discretion of the court"); *Monsanto Co. v. Strickland*, 604 F. Supp. 2d 805, 817-18 (D.S.C. 2009) (awarding simple interest); *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F. Supp. 1101, 1103 (S.D. Cal. 1990) (awarding simple interest). Indeed, where compound interest is not "in any way necessary to fully compensate [patentholder] for defendants' infringement," simple interest should be awarded. *In re Hayes Microcomputer Prod., Inc. Pat. Litig.*, 766 F. Supp. 818, 825 (N.D. Cal. 1991), *aff'd on other grounds*, 982 F.2d 1527 (Fed. Cir. 1992). Some states, such as Texas and Minnesota, statutorily prohibit compounding prejudgment interest in favor of simple interest. *See*, *e.g.*, *MWK Recruiting Inc v. Jowers*, No. 1:18-CV-444-RP, 2023 WL 4754496, at *3 (W.D. Tex. July 25, 2023) (quoting Tex. Fin. Code § 304.104 ("Prejudgment interest is computed as simple interest and does not compound.")); *I-Systems, Inc. v. Softwares, Inc.*, No. CIV.021951 (JRT/FLN), 2005 WL 1430323, at *16 (D. Minn. Mar. 7, 2005) (quoting Minn. Stat. Ann. § 549.09 (West) ("interest shall be computed as simple interest per annum")).

Qorvo has provided no reasons why it is entitled to more than simple interest and no evidence that would justify the Court's application of compound interest instead of simple interest. (*See generally* D.I. 615 at 2-6.) The Court should therefore apply only uncompounded interest in computing prejudgment interest, if any, to Qorvo's awards of Akoustis' head start benefit and Qorvo's damages for patent infringement.

Alternatively, if the Court does apply a compounded interest rate, it should be compounded annually, not quarterly.[7]  An annual compounding period is within the discretion of the Court. *CH2O, Inc. v. Meras Eng'g, Inc.*, No. LA CV13-08418 JAK (GJSX), 2020 WL 13388230, at *16 (C.D. Cal. Apr. 6, 2020) ("that issue is left to the wide latitude of the trial court") (citations omitted); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 626-26 (S.D.N.Y. 2010).  Courts have based prejudgment interest upon the annual compounding provision in 35 U.S.C. § 1961.  *See e.g., Aia Eng'g Ltd. v. Magotteaux Int'l S/A*, No. 3:09-cv-00255, 2012 WL 13254650, at *5 (M.D. Tenn. Sept. 28, 2012).  Section § 1961 expressly provides that "[i]nterest ... shall be compounded annually."  28 U.S.C. § 1961.  In *Custom Designs of Nashville, Inc. v. Alsa Corp.*, for example, the court found that, "[i]n the absence of any proof regarding what the interest rate would be under a reasonable royalty agreement, ... [the] prejudgment interest ... should be calculated at the standard federal statutory rate of interest provided in 28 U.S.C. § 1961."  No. 3:08-0665, 2011 WL 839503, at *1-2 (M.D. Tenn. Mar. 7, 2011) (awarding annual compounding).  The Federal Circuit and courts in other jurisdictions have awarded annual compounding on prejudgment interest.  *See, e.g., Laitram*, 115 F.3d at 955 (prejudgment interest compounded annually where no evidence that patent holder borrowed money at a higher rate); *Mars, Inc. v. Coin Acceptors, Inc.*, 513 F. Supp. 2d 128, 138 (D.N.J. 2007); *see also Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1125 (C.D. Cal. 2016) (compounding annually where no reason provided for quarterly compounding).

Some courts even require annual compounding.  For example, in 1987, the Texas Legislature amended Section 2 to require that interest be compounded annually.  *Guest v. Phillips*

---

[7] Ms. Bennis stated in her expert report that she would "ordinarily expect" that prejudgment interest be compounded annually.  (Elkins Decl. Ex. 23 at 91.)

*Petroleum Co.*, 981 F.2d 218, 223 (5th Cir. 1993) (holding that under the Texas Deceptive Trade Practices Act, the prevailing plaintiff is entitled to equitable prejudgment interest compounded annually).  Annual compounding accounts for "principles of reasonableness and fairness" and "strikes the appropriate balance between making [the plaintiff] whole without amounting to a windfall."  *See Acceleron, LLC v. Dell Inc.*, No. 1:12-CV-4123-TCB, 2022 WL 1087683, at *20 (N.D. Ga. Mar. 7, 2022), *aff'd*, No. 2022-1620, 2023 WL 4503189 (Fed. Cir. July 13, 2023) (awarding annual compounding).

Here, Qorvo has not presented any proof that it would be prejudiced by annual as opposed to quarterly compounding.  (*See generally* D.I, 615 at 2-6.)  If the Court decides to compound interest at all, therefore, it should apply annual compounding to Qorvo's awards of Akoustis' head start benefit and Qorvo's damages for patent infringement.

## IV.   QORVO'S PREJUDGMENT INTEREST COMPUTATION SHOULD BE REJECTED FOR FAILING TO DISTRIBUTE THE JURY AWARD OVER TIME AND FOR DOUBLE-COUNTING

Setting aside the arguments above, Ms. Bennis' computation of prejudgment interest overcompensates Qorvo by assuming that the entire damages amount accrued at the start of the relevant time period and for double-counting interest for unjust enrichment.

### A.   IMPROPER ACCRUAL FOR PURPOSES OF PREJUDGMENT INTEREST

The relevant time period for which Qorvo requests prejudgment interest is October 4, 2021 (the date that Qorvo filed its Complaint) through May 20, 2024 (the date that the Court entered judgment of the jury's verdict).  Ms. Bennis assumed that the entire patent damages award ($279,808) and the entire unjust enrichment award ($31,315,215) were owed to Qorvo on October 4, 2021, the first day of the relevant time period.  (D.I. 617 Ex. 1, Schedules 1 and 2.)  She

then applied a compounded prime rate (prorated and compounded quarterly) to the entire award through the relevant time period.[8]  (*Id.* ¶ 6 and Ex. 1 Schedules 1 and 2.)

Ms. Bennis's computation of prejudgment interest is too high.  She assumes that the entire jury award had accrued at the beginning of the relevant time period, contradicting her own trial testimony.  She should instead have distributed each award across the relevant time period as she explained at trial, and then applied the prorated prime rate to the time-distributed award amounts.

Taking the patent damages award as an example, Ms. Bennis, while referring to PDX-11.21, testified at trial that "the accused product revenue … starts as of October 2021 … and continues through present, … the fiscal year 2024 results are estimated there."  (Elkins Decl. Ex. 1 (Trial Tr. Day 6) at 1714:21-1715:7.)  PDX-11.21 is shown below:



According to Ms. Bennis *at trial*, only $61,393 in reasonable royalties had accrued by June 30, 2022.  But she *now* assumes that the entire $279,808 award had accrued by October 4, 2021, and applies the quarterly prime rate of 0.81% to the entire amount.  Ms. Bennis then logs

---

[8] Ms. Bennis also provides an alternative computation.  In lieu of the prime rate, Ms. Bennis applied the North Carolina statutory rate of 8% per annum, compounded quarterly, to the unjust enrichment award to arrive at a prejudgment interest amount of $7,304,448.  (D.I. 617 ¶ 7 and Ex. 1 Schedules 1 and 3.  Akoustis' arguments in section IV apply equally to Ms. Bennis' alternative computation based on the North Carolina statutory rate.

$2,199 as the "Interest Earned" for that quarter (10/04/2021 through 12/31/2021). (See yellow highlights below.) For the next quarter (01/01/2022 through 03/31/2022), Ms. Bennis adds $2,199 to the original (and entire) damages award to compute the Cumulative Royalty and Interest amount for that quarter of $282,007. She then applies the quarterly prime rate of 0.82% to $282,007, resulting in Interest Earned that period of $2,320. (See green highlights below.)

**Qorvo, Inc. v. Akoustis Technologies, Inc. and Akoustis, Inc.**
**Calculation of Prejudgment Interest at Prime Rate Compounded Quarterly - Patent Infringement**

Exhibit 1
Schedule 1

| Interest Start Date | Interest End Date | Annual Rate [A], [1] | Quarterly Rate | Damages | Cumulative Royalty and Interest | Interest Earned in Period [2] | Cumulative Interest |
|---|---|---|---|---|---|---|---|
| 10/04/2021 | 12/31/2021 | 3.25% | 0.81% | $ 279,808 | $ 279,808 | $ 2,199 | $ 2,199 |
| 01/01/2022 | 03/31/2022 | 3.29% | 0.82% | | 282,007 | 2,320 | 4,519 |
| 04/01/2022 | 06/30/2022 | 3.93% | 0.98% | | 284,327 | 2,794 | 7,312 |
| 07/01/2022 | 09/30/2022 | 5.37% | 1.34% | | 287,120 | 3,855 | 11,167 |
| 10/01/2022 | 12/31/2022 | 6.82% | 1.71% | | 290,975 | 4,961 | 16,128 |
| 01/01/2023 | 03/31/2023 | 7.69% | 1.92% | | 295,936 | 5,689 | 21,817 |
| 04/01/2023 | 06/30/2023 | 8.16% | 2.04% | | 301,625 | 6,153 | 27,971 |
| 07/01/2023 | 09/30/2023 | 8.43% | 2.11% | | 307,779 | 6,486 | 34,457 |
| 10/01/2023 | 12/31/2023 | 8.50% | 2.13% | | 314,265 | 6,678 | 41,135 |
| 01/01/2024 | 03/31/2024 | 8.50% | 2.13% | | 320,943 | 6,820 | 47,955 |
| 04/01/2024 | 05/20/2024 | 8.50% | 2.13% | | 327,763 | 3,827 | 51,782 |
| | | | Total | $ 279,808 | $ 331,590 | $ 51,782 | |

(D.I. 617 Ex. 1, Sched. 1 (highlights added). Had Ms. Bennis used the distributed award amounts that she had calculated and presented to the jury (*e.g.*, $61,393 distributed from October 4, 2021 through June 30, 2022), the Interest Earned for those two quarters would have been less than $500 per quarter—a far cry from the $2,199 and $2,320 shown in Ms. Bennis's current calculations.

Qorvo's overcounting is even more dramatic with regard to the head start benefit award of $31,315,215. Ms. Bennis explained at trial that she calculated Qorvo's head start benefit by finding the difference between the value of Akoustis' revenue with the head start (row K in PDX-11.5) and the value of that revenue without the head start (row K in PDX-11.6). (Elkins Decl. Ex. 1 at 1697:12-1701:17; *id.* at 1695:10-24 (regarding PDX-11.5) and 1697:12-17 (regarding PDX-11.6).) PDX-11.5 and PDX-11.6 are shown below:



She opined that the value of Akoustis' head start benefit was $66,114,093.  (*Id.* at 1698:13-25.)

The jury awarded $31,315,215 for unjust enrichment, 47% of Qorvo's request at trial.

Adjusting the figures shown in PDX 11.5 and 11.6 by 47%, the value of Akoustis' head start

benefit was only approximately $15 million by the end of 2021.  Yet, now, Ms. Bennis assumes that the entire $31,315,215 had accrued by October 4, 2021.  Again, had Ms. Bennis used the distributed award amounts that she had calculated and presented to the jury (adjusted by 47% to account for what the jury actually awarded), the Interest Earned for the first two quarters after October 4, 2021 would have been approximately $125,000 per quarter.  This is a very far cry from the $246,139 and $259,592 shown in Ms. Bennis's current calculations.  (See yellow and green highlights below.)

Qorvo, Inc. v. Akoustis Technologies, Inc. and Akoustis, Inc.
Calculation of Prejudgment Interest at Prime Rate Compounded Quarterly - Unjust Enrichment

Exhibit 1
Schedule 2

| Interest Start Date | Interest End Date | Annual Rate [A], [1] | Quarterly Rate | Damages | Cumulative Royalty and Interest | Interest Earned in Period [2] | Cumulative Interest |
|---|---|---|---|---|---|---|---|
| 10/04/2021 | 12/31/2021 | 3.25% | 0.81% | $ 31,315,215 | $ 31,315,215 | $ 246,139 | $ 246,139 |
| 01/01/2022 | 03/31/2022 | 3.29% | 0.82% | | 31,561,354 | 259,592 | 505,731 |
| 04/01/2022 | 06/30/2022 | 3.93% | 0.98% | | 31,820,946 | 312,641 | 818,372 |
| 07/01/2022 | 09/30/2022 | 5.37% | 1.34% | | 32,133,587 | 431,393 | 1,249,766 |
| 10/01/2022 | 12/31/2022 | 6.82% | 1.71% | | 32,564,981 | 555,233 | 1,804,999 |
| 01/01/2023 | 03/31/2023 | 7.69% | 1.92% | | 33,120,214 | 636,736 | 2,441,735 |
| 04/01/2023 | 06/30/2023 | 8.16% | 2.04% | | 33,756,950 | 688,642 | 3,130,376 |
| 07/01/2023 | 09/30/2023 | 8.43% | 2.11% | | 34,445,591 | 725,941 | 3,856,317 |
| 10/01/2023 | 12/31/2023 | 8.50% | 2.13% | | 35,171,532 | 747,395 | 4,603,712 |
| 01/01/2024 | 03/31/2024 | 8.50% | 2.13% | | 35,918,927 | 763,277 | 5,366,990 |
| 04/01/2024 | 05/20/2024 | 8.50% | 2.13% | | 36,682,205 | 428,295 | 5,795,285 |
| | | | Total | $ 31,315,215 | $ 37,110,500 | $ 5,795,285 | |

Source:
[A] https://fred.stlouisfed.org/series/DPRIME.

Notes:
[1] The Annual Rate represents the quarterly average prime rate as reported by the Federal Reserve Bank of St. Louis (see https://fred.stlouisfed.org/series/DPRIME).
[2] Interest Earned in Period for the periods October 4, 2021 through December 31, 2021 and April 1, 2024 through May 20, 2024 have been prorated by factors of (89 / 92) and (50 / 91), respectively.

(D.I. 617 Ex. 1, Sched. 2 (highlights added).)

### B.   DOUBLE-COUNTING INTEREST FOR UNJUST ENRICHMENT

Qorvo's prejudgment interest computation further overcompensates Qorvo by double-counting interest for unjust enrichment.  At trial, the damages experts for both parties testified before the jury that determining the monetary value of Akoustis' head start benefit requires accounting for the "time value" of the benefit.  (Elkins Decl. Ex. 1 at 1693:15-1696:19, 2366:16-2367:10.)  As shown in PDX 11.5 and 11.6 (above), Ms. Bennis did so by applying a 14.8% interest

rate. (*Id.* at 1696:9-19.)  Thus, Qorvo's request for prejudgment interest **on top of** the jury award for unjust enrichment overcompensates Qorvo.

Ms. Bennis neglected to account for the distributed nature of the patent and unjust enrichment awards.  By assuming that the entire awards became due to Qorvo at the beginning of the relevant time period, Ms. Bennis overestimated each interest amount earned.  This overestimation was compounded every quarter, resulting in a drastic overcount of prejudgment interest.  Moreover, assessing prejudgment interest on the unjust enrichment award double-counts the interest due to Qorvo.  Even if the Court is amenable to granting prejudgment interest at the rates and compounding schedule that Qorvo requests, the Court should still deny Qorvo's motion.

## V.  POST-JUDGMENT INTEREST ACCRUES ONLY UPON ENTRY OF A JUDGMENT QUANTIFYING THE UNDERLYING PRINCIPAL AMOUNT AND THE POST-JUDGMENT INTEREST TO BE APPLIED

Post-judgement interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield … for the calendar week preceding the date of the judgment" and "computed daily to the date of payment[,] compounded annually."  28 U.S.C. § 1961.  Akoustis does not dispute that Qorvo is entitled to post-judgment interest based on the one-year Treasury Bill rate for quantified damages.

To the extent that any existing damages award is later modified, or the prejudgment interest or attorneys' fees requested by Qorvo are later quantified, post-judgment interest for each award accrues from the date that the Court enters an order quantifying that award.  *Eaves v. County of Cape May*, 239 F.3d 527, 542 (3d Cir. 2001) ("[W]e hold that pursuant to 28 U.S.C. § 1961(a), post-judgment interest on an attorney's fee award runs from the date that the District Court enters a judgment quantifying the amount of fees owed to the prevailing party rather than the date that the Court finds that the party is entitled to recover fees, if those determinations are made separately."); *see also Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 217 (3d Cir. 2004)

("However, while post judgment interest can begin to accrue on a non-final judgment under *Iron Ore*, the phrase any money judgment in § 1961(a) requires that the judgment at issue award a fixed amount of fees to the prevailing party in order to trigger the post-judgment interest period.") (internal citations and quotations omitted).

## VI.    <u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Qorvo's request for prejudgment interest. To the extent that the Court determines that prejudgment interest is appropriate, the T-Bill rate should be applied instead of the prime rate or the North Carolina statutory rate that Qorvo requests. Any such interest should be uncompounded or, at most, compounded yearly.

At the very least, the Court should deny Qorvo's request for prejudgment interest because it proposes a calculation that inappropriately assumes that the entirety of the jury award would have been available to it at the beginning of the relevant time period, and also double-counts interest for the unjust enrichment award.

Finally, post-judgment interest does not begin to accrue until the Court enters an order quantifying the specific amount.

Dated:   July 25, 2024

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Ronald S. Lemieux
David S. Elkins
Victoria Q. Smith
1841 Page Mill Road
Suite 150
Palo Alto, California 94304
(650) 856-6500
ronald.lemieux@squirepb.com
david.elkins@squirepb.com
victoria.smith@squirepb.com

Rachael A. Harris
Matthew A. Stanford
2550 M Street, NW
Washington, DC 20037
(202) 457-6000
rachael.harris@squirepb.com
matthew.stanford@squirepb.com

Xiaomei Cai
2325 E. Camelback Road, Suite 700
Phoenix, AZ 85016
(602) 528-4000
xiaomei.cai@squirepb.com

Respectfully submitted,

/s/ Stephen B. Brauerman
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 N. King Street, Suite 400
Wilmington, Delaware
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants Akoustis Technologies,*
*Inc. and Akoustis, Inc.*

-20-

## __CERTIFICATE OF SERVICE__

The undersigned hereby certifies that on July 25, 2024, copies of the attached document were served via electronic mail on all counsel of record.


*/s/ Stephen B. Brauerman*
Stephen B. Brauerman