# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QORVO, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1417 (JPM) |
| | ) | |
| AKOUSTIS TECHNOLOGIES, INC. and | ) | **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF QORVO, INC.'S FIRST SET OF INTERROGATORIES TO DEFENDANTS
AKOUSTIS TECHNOLOGIES, INC. AND AKOUSTIS, INC.**

Under Rules 26 and 33 of the Federal Rules of Civil Procedure, Local Rule 26.1, and Local

Rule 26.2, Plaintiff Qorvo, Inc. requests that Defendants Akoustis Technologies, Inc., and

Akoustis, Inc. answer separately, fully, in writing, and under oath the interrogatories below within

thirty (30) days after the date of service, in accordance with the Definitions and Instructions below.

**DEFINITIONS**

Notwithstanding any definition set forth below, each word, term, or phrase used in these

Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil

Procedure.  In these Requests, the following terms are to be given their ascribed definitions:

1.      The term "Plaintiff" or "Qorvo" means Qorvo, Inc., and any of its present or former

affiliates, predecessors, successors, partners, subsidiaries, corporate parents, divisions, joint

ventures, officers, directors, agents, employees, consultants, accountants, attorneys,

representatives, or any other person or entity acting on behalf of any of the foregoing.

2.      The terms "Defendants," "Akoustis," "You," and "Your" mean, individually and

collectively, defendants Akoustis Technologies, Inc., Akoustis, Inc., and any present or former

affiliates, predecessors, successors, partners, subsidiaries, corporate parents, divisions, joint

ventures, officers, directors, agents, employees, consultants, accountants, attorneys, representatives, or any other person or entity acting on behalf of any of the foregoing.

3.　　The term "'018 Patent" means U.S. Patent No. 7,522,018.

4.　　The term "'755 Patent" means U.S. Patent No. 9,735,755.

5.　　The term "Patents-in-Suit" means any patent asserted by Qorvo in any Complaint (including any amended complaint) in this matter, including one or all of the '018 Patent and the '755 Patent.  The term "Patent-in-Suit" means one of the Patents-in-Suit.

6.　　The term "Related Patents" means all United States and foreign patents and patent applications (including all published and unpublished, pending, and abandoned applications) relating to any Patent-in-Suit, including patents or patent applications:

a.　　from or through which any Patent-in-Suit directly or indirectly claims priority;

b.　　that claim priority to any Patent-in-Suit; or

c.　　that are otherwise identified in any Patent-in-Suit as related to that patent.

7.　　The term "Akoustis BAW Filters" means the products in the Akoustis 3-7 GHz RF filter portfolio including, but not limited to, the following products identified on Akoustis' website, along with any related device made, under development, used, offered for use, imported, sold, or offered for sale by Akoustis:

| Part # | Description | Application | Center Freq. (MHz) | Bandwidth (MHz) | Typical Insertion Loss (dB) | Package | Size (mm) | DS PDF | Request Sample | Purchase |
|---|---|---|---|---|---|---|---|---|---|---|
| A10149 | 4.9 GHz 5G Coexistence BAW Filter | Infrastructure | 4850 | 100 | 1.7 | Ceramic | 2.5 x 2.0 x 0.8 | 📄 | 📄 | ➡ |
| A10155 | 5.5 GHz WiFi 6E Coexistence BAW Filter | WiFi | 5502.5 | 665 | 1.9 | Laminate | 3.5 x 3.5 x 1.4 | 📄 | 📄 | ➡ |
| A10165 | 6.5 GHz WiFi 6E Coexistence BAW Filter | WiFi | 6535 | 1180 | 1.9 | Laminate | 3.5 x 3.5 x 1.74 | 📄 | 📄 | ➡ |
| A10235 | 3.5 GHz 5G Coexistence BAW Filter | Infrastructure | 3500 | 200 | 1.5 | Ceramic | 2.5 x 2.0 x 0.8 | 📄 | 📄 | ➡ |
| A10252 | 5.2 GHz WiFi Coexistence BAW Filter | WiFi | 5250 | 160 | 1.5 | Laminate | 2.5 x 2.0 x 1.0 | 📄 | 📄 | ➡ |
| A10256 | 5.6 GHz WiFi Coexistence BAW Filter | WiFi | 5665 | 345 | 1.4 | Laminate | 2.5 x 2.0 x 1.0 | 📄 | 📄 | ➡ |
| A10335 | 3.5 GHz 5G Coexistence BAW Filter | Infrastructure | 3450 | 300 | 1.5 | Ceramic | 2.5 x 2.0 x 0.8 | 📄 | 📄 | ➡ |
| AKF-1252 | 5.2 GHz RF BAW Filter | WiFi | 5250 | 160 | 1.7 | Laminate | 2.5 x 2.0 x 1.0 | 📄 | 📄 | ➡ |
| AKF-1256 | 5.6 GHz RF BAW Filter | WiFi | 5665 | 345 | 1.9 | Laminate | 2.5 x 2.0 x 1.0 | 📄 | 📄 | ➡ |
| AKF-1336 | 3.6 GHz CBRS Bandpass BAW Filter | Infrastructure | 3625 | 150 | 1.5 | Ceramic | 2.5 x 2.0 x 0.8 | 📄 | 📄 | ➡ |
| AKF-1938 | 3.8 GHz IF BAW Filter | Defense/General | 3830 | 100 | 1.8 | Ceramic | 2.5 x 2.0 x 0.8 | 📄 | 📄 | ➡ |
| AKF-1950 | 5 GHz UAS BAW Filter | Defense/General | 5060.5 | 150 | 2.0 | Ceramic | 2.5 x 2.0 x 0.8 | 📄 | 📄 | ➡ |

8.      The term "Accused Products" means each and every product made, used, sold, or offered for sale in the United States by or on behalf of Akoustis, or imported into the United States by or on behalf of Akoustis, from October 4, 2015 forward, that is a bulk acoustic wave filter or includes one or more bulk acoustic wave filter(s), including at a minimum the Akoustis BAW Filters and any other products identified in response to Interrogatory No. 1 and in any supplemental response to Interrogatory No. 1.

9.     The term "Answer and Counterclaims" means any answer and counterclaims filed by Akoustis in the above-captioned action in the United States District Court for the District of Delaware, including any amended answers and counterclaims.

10.     The term "Asserted Claims" means any claim of any Patent-in-Suit, including the '018 Patent and the '755 Patent, which Qorvo has asserted Akoustis to be infringing in any Complaint (including any amended complaint), infringement contention, or other disclosure identifying infringed claims.  The term "Asserted Claim" means one of the Asserted Claims.

11.     The term "'786 Patent" means U.S. Pat. No. 10,256,786.

12.     The term "'786 Related Patents" means all United States and foreign patents and patent applications (including all published and unpublished, pending, and abandoned applications) relating to the '786 Patent, including patents or patent applications:

      a.     from or through which the '786 Patent directly or indirectly claims priority;

      b.     that claim priority to the '786 Patent; or

      c.     that are otherwise identified in the '786 Patent as related to that patent.

13.     The term "Identifying Indicia" for a bulk acoustic wave filter means (1) any name(s) and/or identification(s) used to market the product, (2) any name(s) and/or identification(s) used to identify the product internally, (3) any name(s) and/or identification(s) used to identify the product to testing or regulatory organizations, (4) any model numbers and/or serial numbers used to identify any and all versions of the product, (5) the center frequency of the product.

14.     The term "cost of goods sold" means the costs and expenses directly related to the production of goods.  The term "cost of goods sold" excludes indirect costs, including overhead and sales and marketing.

15.     The term "contribution margin" means sales revenue minus the variable costs associated with the production and sales process.

16.     The term "Qorvo Confidential Information" shall mean any information relating to the business, conduct, or operations of Plaintiff or any of its respective clients, customers, suppliers, business partners, service providers, consultants, or licensees; any methods or ways of doing business, including those used in the development, manufacture, test, sale, use, or marketing of the Plaintiff's products; Plaintiff's product lines, customers, customer lists or customer information, sales or dealer networks, vendors, distribution channels, pricing and purchasing information or policies, pricing methods, and non-public catalog or website information; any product specifications, trade secrets, price and discounts lists, suppliers, supplier lists, personnel data, business and marketing plans, ideas or strategies, financial condition, performance and projections and cost data, historical customer data, and all other information that by its nature should be reasonably considered as being confidential to the Plaintiff.

17.     The term "communication" means transmittal of information—in the form of facts, ideas, inquiries, or otherwise—regardless of the manner in which communications took place including, but not limited to, personal conversations, correspondences, electronic mails, physical mails, telephone calls, telephone text messages, facsimile communications, voicemail, electronic messenger messages, or telegrams.

18.     The term "Complaint" means the complaint initiating the above-captioned action filed on or about October 4, 2021, by Plaintiff in the United States District Court for the District of Delaware, the First Amended Complaint filed by Plaintiff on February 18, 2022, along with any other amended complaints.

19.     The term "concerning" means referring to, relating to, describing, evidencing, constituting, or otherwise discussing in any way the subject matter identified in a request.

20.     The term "Document" is used in the broadest sense consistent with the definition in Fed. R. Civ. P. 34(a) including, but not limited to, hard copies, electronically stored information, or physical objects (e.g., research and development samples, prototype devices, production samples).  A draft, translation, or non-identical copy is treated as a separate document from the original within the meaning of this term.

21.     The term "Thing" is used in the broadest sense consistent with the definition in Fed. R. Civ. P. 34 including, but not limited to, physical specimens, or tangible items.

22.     The term "person" means any natural person, business entity, legal entity, governmental entity, or association.

23.     The term "Prior Art" is used in the broadest sense consistent with the use in 35 U.S.C. §§ 102, 103 including, but not limited to, patents, printed publications, prior knowledges, prior uses or implementations, prior sales, offers for sale, or other acts or events consistent with the use in 35 U.S.C. § 102, taken singly or in combination, and shall include Documents and Things.

24.     The terms "refer," "relate," and "respecting" are used in the broadest sense and include, but not limited to, directly or indirectly mentioning, discussing, representing, requesting, reflecting, demanding, analyzing, referencing, summarizing, noting, supporting, memorializing, commenting upon, describing, demonstrating, proving, disproving, supporting, contradicting, or evidencing the stated subject matter of the discovery request in any way.

25.     The terms "sale" and "sales" mean any public or private efforts in connection with the commercialization of a product—e.g., experimental, non-experimental, confidential, non-

confidential, in the United States, outside the United States, offers for sale or license, actual sales or licenses, any advertising of the Akoustis BAW Filters—by or on behalf of Akoustis.

26.    The term "third party" means any person other than Plaintiff or Akoustis.

27.    The terms "and," and "or" shall be understood as either conjunctive or disjunctive, whichever is more inclusive in context.

28.    The terms "including," and "includes" mean "including, but not limited to."

29.    The terms "any," and "all" shall include the other.

30.    The use of singular form of a noun or pronoun shall include, within its meaning, plural form of a noun or pronoun so used, and vice versa.

31.    The use of present tense shall include past tenses, unless otherwise specifically indicated in this discovery request.

32.    The use of masculine gender pronoun shall include, within its meaning, feminine gender pronoun, gender neutral pronoun, or gender inclusive pronoun, and vice versa.

33.     When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

34.    When referring to Documents, "to identify" means to give, to the extent known, the (i) type of Document; (ii) general subject matter; (iii) date of the Document; and (iv) author(s), addressee(s), and recipient(s).

## <u>INSTRUCTIONS</u>

The following instructions are applicable to each specific interrogatory unless otherwise explicitly stated.  These instructions and the above definitions should be construed to require answers based upon the knowledge of, and information available to, the responding party as well as its agents, representatives, and attorneys.

1.      These interrogatories are continuing in character, so the interrogatories require You to promptly provide supplemental answers if further or different information is obtained with respect to these interrogatories as provided by Fed. R. Civ. P. 26(e).

2.      Each interrogatory shall be answered separately, fully, in writing, and under oath unless it is objected to, in which You shall state the reasons for the objections and shall answer to the extent the interrogatory is not objectionable.  No part of an interrogatory should be left unanswered because an objection is interposed to another part of the interrogatory.

3.      If You cannot answer any interrogatory fully and completely after exercising due diligence to make the inquiry and secure the necessary information, You shall answer each such interrogatory to the fullest extent possible, specify the portion of each such interrogatory that You claim to be unable to answer fully and completely, state any information or belief You have concerning the unanswered portion of each such interrogatory, explain why You are unable to answer each such interrogatory fully and completely, and state the facts and knowledge You relied upon to conclude that You are unable to answer the interrogatory fully and completely.

4.      Each interrogatory shall be answered by the party to whom they are directed, or if that party is a public or private corporation, a partnership, an association, or a governmental agency, any officer or agent must furnish the information available to the party.

5.      Each interrogatory shall include all information directly or indirectly available to You, Your agents, Your accountants, Your representatives, or Your attorneys.

6.      If You encounter any ambiguities when construing an interrogatory or Definition, Your response shall explicitly explain, in writing, the matter You deemed ambiguous and Your construction used in responding in such interrogatories.

7.      If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Akoustis' business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for Akoustis or Plaintiff, then Akoustis may answer, in writing, by: (a) specifying the business records that must be reviewed, in sufficient detail to enable Plaintiff to locate and identify the business records as readily as Akoustis could; and (b) producing the business records to Plaintiff, or giving Plaintiff a reasonable opportunity to examine, audit, make copies, make compilations, make abstracts, and summarize such business records.

8.      If any requested information is unavailable because it has been lost, discarded, or destroyed, You shall provide the following information, in writing, for each such item of unavailable information: (a) description of the information (e.g., type, general subject matter, content); (b) the location of all copies of the information; (c) the date, and Identity of the Person responsible for its loss, destruction, transfer, or other action by which the information left Your possession, custody, or control; and (d) description of how the information became unavailable.

9.      If You object to any interrogatory on the ground of privilege, You shall:

   a.      specify the nature of the privilege being claimed (including work product);

   b.      specify the facts supporting Your claimed privilege (including work product);

   c.      specify the general subject matter of the Documents, Things, or communications as to which the privilege is claimed;

   d.  specify the type of the Documents or Things;

   e.  provide a summary of the contents of the Documents, Things, or communications;

   f.  specify the date of the Documents, Things, or communications;

   g.  specify the place of the communications;

   h.  specify the name of the author or natural person making such Documents, Things, or communications;

   i.  identify the addressees or recipients of the Documents, Things, or communications;

   j.  specify the relationship between the author or natural person making such Documents, Things, or communications, and the addressees or recipients of the Documents, Things, or communications;

   k.  specify other information as is sufficient to identify the Documents or Things including, but not limited to, the present location of the Documents or Things, the custodian of the Documents or Things, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other;

   l.  produce the redacted Documents or Things not covered by Your claimed privilege (including work product); and

   m.  answer to the extent the interrogatory is not objectionable.

## INTERROGATORIES

**INTERROGATORY NO. 1:**        Identify by name, model number, and any other Identifying

Indicia any Akoustis products that You identify as a bulk acoustic wave filter or that is, use, or

include one or more such bulk acoustic wave filter(s), including each Accused Product, and for

each product, identify (a) the date it was first made, used, sold, offered for sale, and/or imported

by You or on Your behalf in the United States, (b) the date it was last made, used, sold, offered

for sale, and/or imported by You or on Your behalf in the United States, and (c) the three

individuals having the most knowledge of its design, development, marketing, manufacture,

testing, and sales.

**INTERROGATORY NO. 2:**        For each product identified in response to Interrogatory No.

1, identify all geographic locations where that product or any sub-component or layer of such

product has been manufactured, the date each such product was first manufactured for commercial

purposes, and the identity each vendor or supplier of any material, component or composition used

in each such product.

**INTERROGATORY NO. 3:**        Identify each of Your past and present customers,

distributors, or any other entity purchasing, sampling, or selling any product identified in response

to Interrogatory No. 1, and, for each entity, identify the total number of units shipped or delivered

and total sales in dollar value to or by each such entity for each calendar quarter of sales.

**INTERROGATORY NO. 4:**        Separately for each product identified in response to

Interrogatory No. 1, identify the following financial data, on a quarterly basis, from October 4,

2015 to the present: (a) units sold; (b) location of sales; (c) gross revenues; (d) cost of goods sold;

(e) contribution margin; and (f) profit before taxes, net of any returns, allowances, or credits.

**INTERROGATORY NO. 5:**          For each Patent-in-Suit, describe the circumstances under which You first became aware of that Patent-in-Suit, including: (a) the date when You first became aware of the patent, (b) the source of the information, (c) the identity of the person(s) who received the information on Your behalf, (d) when and how You first obtained a copy of the patent, and (e) any actions taken by You or any of Your directors, officers, or employees in response to learning of the patent.

**INTERROGATORY NO. 6:**          Identify all opinions, evaluations, analyses, or reverse engineering reports, whether written or oral, that You have requested, received, or are aware of regarding any Patent-in-Suit, including, but not limited to, date, author(s), addressee(s), recipient(s), and whether it relates to infringement or non-infringement, validity or invalidity, enforceability or unenforceability, or any other affirmative defense or a valuation of any Patent-in-Suit.

**INTERROGATORY NO. 7:**          Identify in detail all factual bases for Your contention that You do not willfully infringe any Patent-in-Suit, including, but not limited to, whether You will rely on any opinion of counsel, whether written or oral, to rebut Qorvo's willful infringement contention, and the identity of each such opinion (including, but not limited to, by the date, author(s), addressee(s), recipient(s), and type).

**INTERROGATORY NO. 8:**          Identify any acceptable non-infringing alternative(s) available to You as to the Patents-in-Suit and, for each non-infringing alternative, provide: (a) the specific patent and claim element(s) that you contend are not met by the non-infringing alternative; (b) the date when the non-infringing alternative became available to You or will become available to you; (c) all evidence showing that the non-infringing alternative would be acceptable to consumers; (d) any difference in performance between each Accused Product and its non-

- 12 -

infringing alternative; (e) the cost associated with implementing the non-infringing alternative; (f) the time needed to implement the non-infringing alternative; and (g) any other information You contend is relevant to the evaluation of the non-infringing alternative.

**INTERROGATORY NO. 9:**        Identify all evidence of (a) royalty rates and/or lump sum payments You have paid for the use of patents, including an identification of all licenses related in any way to the development, manufacture, use, or sale of any product identified in response to Interrogatory No. 1, and (b) the portion of the profit or the selling price of a product, including any product identified in response to Interrogatory No. 1, that may be customary to pay to allow use of inventions analogous to the inventions of the Patents-in-Suit.

**INTERROGATORY NO. 10:**        Identify by name, model number, and any other Identifying Indicia all past and current Akoustis products that You have sold or offered for sale that include a single crystal piezoelectric layer, and for each such product, identify (a) the date each product was first offered for sale, (b) the date each product was last offered for sale, (c) the number of units sold, (d) the sale date for each product sold, (e) the customer(s) who purchased each such product, and (f) the revenues generated from the sales of each product.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC  20006-6801
(202) 747-1900

Trevor J. Quist
SHEPPARD, MULLIN, RICHTER
   & HAMPTON LLP
1540 El Camino Real
Menlo Park, CA 94025
(650) 815-2645

*Attorneys for Plaintiff Qorvo, Inc.*

February 23, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2022, copies of the foregoing were caused to be served

upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Defendants Akoustis<br>Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| David A. Jakopin, Esquire<br>Dianne L. Sweeney, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>2550 Hanover Street<br>Palo Alto, CA  94304-1115<br>*Attorneys for Defendants Akoustis<br>Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Robert M. Fuhrer, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>1650 Tysons Boulevard, 14th Floor<br>McLean, VA  22102-4856<br>*Attorneys for Defendants Akoustis<br>Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| David L. Stanton, Esquire<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>725 South Figueroa Street, 36th Floor<br>Los Angeles, CA  90017-5524<br>*Attorneys for Defendants Akoustis<br>Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)