# **EXHIBIT 13**

```
 1           IN THE UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF DELAWARE
 3
 4   - - - - - - - - - - - - - -+
 5   QORVO, INC.,                |
 6            Plaintiff,         | Case Number:
 7      vs.                      | 1:21-cv-01417-JPM
 8   AKOUSTIS TECHNOLOGIES,      |
 9   INC., and AKOUSTIS, INC.,   |
10            Defendants.        |
11   - - - - - - - - - - - - - -+
12
13
14
15              Videotaped Deposition of
16              STANLEY SHANFIELD, Ph.D.
17              Friday, January 26, 2024
18                     9:15 a.m.
19
20
21   Reported by:
22   Laurie Donovan, RPR, CRR, CLR
23   Veritext Job No. 6391961
24
25   PAGES 1 - 256
```

Page 1

**Page 6**

```
1  ---------------------------------------------
2           P R O C E E D I N G S
3                   9:15 a.m.
4  ---------------------------------------------
5           THE VIDEOGRAPHER:  Good morning.
6  We're going on the record at 9:15 a.m. on
7  January 26, 2024.
8           Please note that the microphones
9  are sensitive and may pick up whispering and
10 private conversations.  Please mute your
11 phones at this time.  Audio and video
12 recording will continue to take place unless
13 all parties agree to go off the record.
14          This is media unit one of the
15 video-recorded deposition of Mr. Stanley
16 Shanfield in the matter of Qorvo, Inc. versus
17 Akoustis Technologies, Inc., and Akoustis,
18 Inc., filed in the United States District
19 Court for the District of Delaware, case
20 number 1:21-cv-01417-JPM.
21          The location of the deposition is
22 2550 M Street, NW, Washington, D.C., 20037.
23          My name is Gordon Thomas,
24 representing Veritext Legal Solutions, and
25 I'm the videographer.  The court reporter is
```

**Page 7**

```
1  Laurie Donovan from the firm Veritext.
2           Counsel and all present will now
3  state their appearances for the record,
4  beginning with the noticing attorney.
5           MR. LEMIEUX:  My name is Ron
6  Lemieux with Squire Patton Boggs on behalf of
7  the defendant, and accompanying me via Zoom
8  is Xiaomei Cai, one of my colleagues on this
9  case.
10          MR. DEFOSSE:  Jonathan DeFosse from
11 Sheppard Mullin on behalf of Qorvo.  Here
12 with me today is Roy Jung.
13          THE VIDEOGRAPHER:  Will the court
14 reporter please swear in the witness, and
15 counsel may proceed.
16          (Witness duly sworn.)
17          (Technical difficulties.)
18          THE REPORTER:  We need to go off
19 the record.
20          THE VIDEOGRAPHER:  The time is 9:17
21 a.m.  We are going off the record.
22          (Whereupon, a short recess was
23 held.)
24          THE VIDEOGRAPHER:  The time is
25 approximately 9:44 a.m.  We are going back on
```

**Page 8**

```
1  the record.  Please proceed, Counsel.
2                * * * * *
3  Whereupon,
4         STANLEY SHANFIELD, Ph.D.,
5     having been first duly sworn, testified
6     upon his oath as follows:
7     EXAMINATION BY COUNSEL FOR DEFENDANT
8  BY MR. LEMIEUX:
9  Q   Good morning, Dr. Shanfield.
10 A   Good morning.
11 Q   Would you please state your full name
12 for the record, please?
13 A   It's Stanley Shanfield.
14 Q   And if I refer to you during the course
15 of the day as "Dr. Shanfield," is that all right?
16 A   Sure.
17 Q   I want to make sure I give you
18 appropriate respect for someone who has slogged
19 their way through a Ph.D. program.
20     Dr. Shanfield, have you been deposed
21 before?
22 A   Yes.
23 Q   How many times?
24 A   Probably about 15 or 20 times.
25 Q   Okay, so you're familiar with the usual
```

**Page 9**

```
1  instructions in a deposition.
2           You understand that you're testifying
3  here under oath today?
4  A   Yes.
5  Q   And that you are required to respond to
6  my questions unless counsel instructs you not to
7  answer --
8  A   Yes.
9  Q   -- a particular question?
10          We will take breaks from time to time,
11 but if at any point you would like to take a
12 break, just simply ask me, and we'll accommodate
13 that.  Try to do that not while there's a question
14 pending.
15          It's important that we try not to talk
16 over each other for the benefit of the court
17 reporter, and it's going to be even more important
18 that I slow down my speaking cadence for purposes
19 of the court reporter, because I tend to talk
20 quickly.
21          Are you taking any medications,
22 Dr. Shanfield, or is there any reason that might
23 interfere with your ability to give your best
24 testimony today?
25 A   No.
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**Page 106**

1  deposition? I mean --
2   Q   He was asked the same question and
3  provided an answer.
4   A   I would have to understand the context.
5   Q   Same context we have here.
6   A   No. A context of how he answered the
7  question, not the context we have here.
8   Q   So you'd want to know the substance of
9  his answer?
10  A   Yeah.
11  Q   But you can't even provide any answer,
12 correct, because you say it's an impossible --
13  A   No.
14  Q   -- incomplete hypothetical?
15  A   No. I said that you haven't provided
16 enough information for me to answer the question
17 as an engineer.
18  Q   I just want to confirm: Before you
19 finalized and signed your report on patent
20 infringement, you discussed its contents with
21 Dr. Bravman, right?
22  A   I don't recall exactly what we talked
23 about. I believe he had questions that were more
24 general than what was in my report.
25  Q   This conversation, this would have been

**Page 107**

1  a few months ago, right? Your report is dated
2  November 21, 2023. It's January 2024, so this
3  would have been a conversation you would have had
4  with him in the last two months?
5   A   As I said, I don't remember exactly when
6  I talked to him. It wasn't that memorable.
7   Q   You don't remember the contents of the
8  discussion you had with him?
9   A   I, I think I explained that, as I
10 recall, we talked about more general questions
11 than the content of my report, and I'm certain,
12 pretty certain that -- I am certain, rather, that
13 I didn't talk about the contents of my report
14 specifically. He had some technical
15 clarifications, if I recall correctly.
16  Q   And you mentioned you also spoke with
17 Dr. Heinrich?
18  A   Yes.
19  Q   And the content of your discussions with
20 him was the measurements and the tasks that he had
21 been assigned as part of this case?
22  A   With her, yes.
23  Q   With her.
24      And you mentioned there was one other
25 person who was assisting Dr. Heinrich?

**Page 108**

1   A   That's my recollection, but I don't know
2  who it was or what, what their capacity was. They
3  weren't on the call, if that's what you mean.
4   Q   On the call was just Dr. Heinrich?
5   A   Yes.
6   Q   And during that call, had someone
7  provided you with the results of the testing that
8  Dr. Heinrich had conducted?
9   A   Yes, I had some of the cross-section SEM
10 images available to me.
11  Q   Have you read Dr. Heinrich's report?
12 Have you read Dr. Heinrich's report since
13 submitting your final report on November 21, 2023?
14  A   I've looked through it, but not in great
15 detail.
16  Q   And were there pictures of
17 cross-sections included in Dr. Heinrich's report
18 that you had not seen before?
19  A   No.
20  Q   So you had seen all of the
21 cross-sections that were included?
22  A   Actually, I don't know that for certain.
23 There's -- it's hard to remember. They're very
24 complex looking images, so which ones I saw or
25 didn't see, I can't really distinguish.

**Page 109**

1   Q   And did you review Dr. Heinrich's report
2  prior to your coming here today for your
3  deposition?
4   A   Like I said, I, I looked through it but
5  didn't, you know, closely examine every word.
6   Q   Did you review Dr. Bravman's report as
7  well in preparation for your deposition today?
8   A   Yes.
9   Q   What else did you do to prepare for your
10 deposition today, if anything?
11  A   I did the usual review of my report, and
12 I had questions for counsel in some cases about
13 parts of it.
14  Q   So you spoke with counsel?
15  A   Yes, and I looked through some of the
16 references.
17  Q   When you say you looked through some of
18 the references, which references are you referring
19 to?
20  A   Oh, there's a lot, so I can't tell you
21 which ones I looked at, but ones that I thought
22 were, in my mind, were important.
23  Q   And when did you conduct that review of
24 those references?
25  A   When I was preparing to give my

28 (Pages 106 - 109)

## Page 150

 1  a list of the trade secrets that Qorvo intends to
 2  present at trial, correct?
 3         MR. DEFOSSE:  Objection; lacks
 4     foundation.
 5  BY MR. LEMIEUX:
 6     Q   Expects to present at trial.
 7         MR. DEFOSSE:  Objection; lacks
 8     foundation, calls for speculation.
 9         THE WITNESS:  I think it -- you're
10     asking me to speculate on --
11  BY MR. LEMIEUX:
12     Q   You don't think --
13     A   -- other than what I've seen.
14     Q   You don't believe the title of this
15  document is accurate?
16     A   No.  I do.
17         MR. DEFOSSE:  Objection.
18  BY MR. LEMIEUX:
19     Q   Okay.  You do?  Okay, and so of the
20  trade secrets it currently expects to present at
21  trial, are those trade secrets represented by the
22  bullet points that are underneath each numerical
23  heading?
24         MR. DEFOSSE:  Objection; lacks
25     foundation, calls for speculation.

## Page 151

 1         THE WITNESS:  You are asking me to,
 2     from this list, try and speculate what trade
 3     secrets are being referred to.  I identified
 4     trade secrets in detail in my report, and I
 5     would be happy to talk about those.
 6         These are groups, and the first
 7     eight groups in this document are the groups
 8     that I gave an opinion about.
 9  BY MR. LEMIEUX:
10     Q   Do you have any understanding as to
11  whether or not this document is intended to
12  actually disclose and list the trade secrets that
13  plaintiff intends to pursue at trial?
14         MR. DEFOSSE:  Objection; lacks
15     foundation, calls for speculation.
16         THE WITNESS:  Again, you're asking
17     me to  speculate about the meaning of each of
18     these lines in description of this group, of
19     each group, and I, I can tell you what
20     specific trade secrets I believe that
21     Akoustis illicitly obtained, and I'll be
22     happy to go through my report to describe
23     dozens of them.  How it corresponds with this
24     list is -- that would be speculation on my
25     part.

## Page 152

 1  BY MR. LEMIEUX:
 2     Q   Let's, let's take a look at Exhibit 1,
 3  and look at, on page 3 of Exhibit 1, the numerical
 4  heading 2, which states, "Qorvo's BAW filter and
 5  resonator designs."
 6     A   Yes.
 7     Q   Do you believe that the trade secrets
 8  that Qorvo intends to present as misappropriated
 9  by Akoustis at trial include the items that are
10  listed in the bullet points following numerical
11  heading 2?
12         MR. DEFOSSE:  Objection; lacks
13     foundation, calls for speculation.
14         THE WITNESS:  I -- as I've said now
15     twice, you're asking me to speculate on the
16     meaning of this list, and what I can tell you
17     is the groups that are identified here match
18     the first eight of these, and that's the
19     groups that I gave opinions about.
20         I have detailed descriptions of
21     specific trade secrets that I believe were
22     taken from Qorvo, and I can easily go into a
23     description of that.  I'm not going to
24     speculate on what -- which ones, of the ones
25     I've identified, apply to which statement in

## Page 153

 1     this document.
 2  BY MR. LEMIEUX:
 3     Q   Okay.  So, for example, in Exhibit 1
 4  that we have looked at, under the numerical
 5  heading 1, "Qorvo's business plans for WiFi
 6  products," isn't it true that on page 28 of your
 7  report, you have "a description of Qorvo's
 8  business plans for WiFi products" that you assert
 9  to be trade secrets?
10     A   Yes.  In my opinion, Akoustis had
11  acquired Qorvo's confidential information about
12  their strategy and their business plans for the
13  WiFi market, for WiFi BAW filter products, so that
14  group name does correspond to the group that I
15  analyzed.
16     Q   And on -- in looking at Exhibit 1, under
17  the heading "Qorvo's business plans for WiFi
18  products" on page 2, it says, "Akoustis
19  misappropriated trade secrets reflected in
20  confidential Qorvo business plans related to the
21  WiFi market.  Those business plans contain the
22  following trade secrets," and then it proceeds, on
23  page 3, to list a number of bullet points which
24  make reference to very -- looks like deposition
25  exhibits and documents that were produced in