IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| | ) |
| Plaintiff, | ) **PUBLIC VERSION** |
| | ) |
| v. | ) C.A. No. 21-1417 (JPM) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC. and | ) **DEMAND FOR JURY TRIAL** |
| AKOUSTIS, INC., | ) |
| | ) |
| Defendants. | ) |

**QORVO, INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE AKOUSTIS DEFENDANTS' (1) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (D.I. 607); AND (2) MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE REMITTITUR (D.I. 613)**

OF COUNSEL:

Robert M. Masters
Jonathan R. DeFosse
Timothy P. Cremen
Roy D. Jung
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
(202) 747-1900

Zachary Alper
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 100
San Diego, CA 92130-4092
(858) 720-8900

Kazim A. Naqvi
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
(310) 228-3700

Jennifer Klein Ayers
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
(469) 391-7400

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Qorvo, Inc.*

**Confidential Version Filed: August 23, 2024**
**Public Version Filed: August 30, 2024**

During the hearing on August 20, 2024, the Court asked Qorvo to file a copy of Dr. Shanfield's expert report. The Court also stated that Qorvo could submit a supplemental brief citing evidence supporting Dr. Shanfield's opinion. Qorvo submits this brief in response.

## I. RECORD COPY OF DR. SHANFIELD'S EXPERT REPORTS

Copies of Dr. Shanfield's expert reports are attached to the Declaration of Jonathan DeFosse. *See* Exs. A, B, C. Dr. Shanfield's head start analysis is set forth in his November 2023 trade secret report. *See* Ex. A at 481-500, App'x. 5. These are the same opinions Dr. Shanfield offered, without objection, at trial. *See* Tr. 1363:5–1376:3, Trial Ex. 228.

## II. RECORD CITATIONS SUPPORTING DR. SHANFIELD'S OPINION

Dr. Shanfield opined at trial (as in his report) that Akoustis obtained a 55-month head start advantage. *E.g.*, Tr. 1464:13-1465:12. Dr. Shanfield determined the head start by estimating the amount of time Akoustis saved in performing necessary tasks as a result of using Qorvo's trade secrets. *Id.* 1363:2-1364:10. In determining the time savings, Dr. Shanfield relied on his experience in the semiconductor industry. *Id.* He also considered fact testimony concerning how long it took Qorvo to perform the relevant tasks. *See, e.g.*, *id.* 1235:17-1236:10, 1375:10-1376:3, 1435:2-15. Akoustis ignores much of this testimony in its motions, opting to cherry-pick a handful of responses from cross-examination rather than crediting the totality of Dr. Shanfield's testimony.

### A. Dr. Shanfield Testified Based on Decades of Relevant Industry Experience

Dr. Shanfield earned a PhD in physics from MIT, where he also taught courses in RF technology (including RF filters). Tr. 1220:2-7, 1220:23-1221:2. Since then, Dr. Shanfield has worked for 43 years in the semiconductor industry. *Id.* 1224:3-10. During that time, he has been responsible for R&D, manufacturing, and commercial activities. *Id.* 1221:8-1224:1. Dr. Shanfield also has specific experience related to each of the trade secrets he analyzed, including experience founding and running a start-up company, performing project management analysis, performing

market analysis, developing business plans, researching and developing BAW filters, trimming, testing, manufacturing, packaging, customer engagement, and technical marketing. *Id.* 1222:2-1223:16, 1225:4-1227:4, 1392:7-1392:13, 1392:19-1395:2, 1435:2-1436:1, 1463:4-25.

### B. Dr. Shanfield Identified Evidence and Analysis Supporting His Opinions

Dr. Shanfield provided hours of testimony detailing his analysis. For each trade secret group, Dr. Shanfield explained the nature and value of the trade secrets and how Akoustis used those trade secrets to accelerate its entry into the market.

#### 1. Trade Secret Group 1—Qorvo business plans for WiFi products

Dr. Shanfield opined that Akoustis obtained a nine-month head start from stealing Qorvo's business plans. Tr. 1365:6-1366:11. Those plans included Qorvo's assessment of the WiFi market, target product features, costs, and customers, and anticipated gaps in Qorvo's product line. *Id.* 1232:10-1235:23. It takes Qorvo years of due diligence to develop such plans, including visiting customers and partners around the globe and building financial models. *Id.* 1234:24-1236:10 (citing Testa testimony), 1365:13-1366:7; *see also id.* 483:25-484:6, 489:8-490:8.

Dr. Shanfield explained that Akoustis received a head-start from Qorvo's business plans because Akoustis "didn't have to invest the money or go traveling or all the other things you have to do [to] produce a plan like this." Tr. 1237:6-14. As support, Dr. Shanfield cited evidence that Akoustis developed its 5GHz business plan in less than a month after stealing Qorvo's business plans. *See* Tr. 1245:19-1246:2, 1248:9-1249. In particular, Akoustis stole Qorvo's 5GHz business plans in September 2016. Tr. 1240:16-1241:7; *see also* Trial Exs. 20-22; Tr. 838:22-839:18. By October 12, 2016, Akoustis had created its business plan by copying information from Qorvo's plans. Tr. 1248:9-1249:2; *see also* Trial Ex. 124.

### 2. Trade Secret Group 2—BAW filter and resonator designs

Dr. Shanfield opined that Akoustis obtained a 43-month head start from stealing Qorvo's 5GHz BAW filter design documents. Tr. 1368:9-11. These documents provided a "blueprint" for designing 5GHz BAW filters. *Id.* 1251:10-21; *see also id.* 383:7-21 ("cookbook" that shows all the steps to "go from a resonator to a filter"), 1252:6-11 (citing Aigner's testimony). It took Qorvo "[t]wenty years, at least" to develop the trade secrets in these design documents. Tr. 403:6-15.

Dr. Shanfield opined that Akoustis obtained a 43-month head start from stealing the 5 GHz product designs because Akoustis skipped the work normally necessary to design a semiconductor product. Tr. 1261:22-1263:8, 1368:9-11; *see also id.* 1266:12-1267:10. As support, Dr. Shanfield cited evidence that, in September 2016, Akoustis could not even make a working resonator, much less a BAW filter. Tr. 1262:9-12; *see also id.* 607:2-25, 673:12-24. The engineers at Akoustis also lacked experience designing BAW filters. Tr. 1266:20-25; *see also id.* 601:13-602:6. Akoustis thus stole Qorvo's "cookbook" and provided it to the engineer assigned to develop Akoustis' 5GHz BAW filter. *Id.* 1264:24-1265:19; *see also id.* 609:14-23. In less than a year, Akoustis went from not having a working resonator to sampling 5GHz BAW filters. *Id.* 1266:12-1267:10; *see also id.* 673:12-24. Akoustis thus accelerated the normal product development process—a process that still takes Qorvo four or five years even with vastly more experience and resources than Akoustis. *Id.* 1261:22-1263:8, 1266:12-1267:10, 1368:9-11; *see also id.* 375:3-8.

### 3. Trade Secret Group 3—Qorvo's trimming algorithms

Dr. Shanfield opined that Akoustis obtained a 22-month head start from stealing the algorithms that Qorvo uses for trimming. Tr. 1368:15-1369:11. These algorithms are the "secret sauce that allowed [Qorvo] to [get] economical production" of BAW filters. *Id.* 1274:19-1275:7; *see also* Tr. 1276:8-19, 405:17-406:25, 407:12-22, 408:5-16, 408:21-24. It took Qorvo "years of

effort and testing and experimentation and evaluation" to develop the algorithms. *Id.* 1274:12-17. Indeed, Dr. Aigner "personally spent twenty years" developing the procedures. *Id.* 410:2-25.

Dr. Shanfield opined that Akoustis obtained a 22-month head start because Akoustis was able to "skip over all the work that Qorvo did to figure this out, and all the investment Qorvo made in running wafers and testing ideas and setting up computer systems." Tr. 1276:8-13; *see also id.* 1368:15-1369:11 ("They didn't have to do the work; they just adopted what Qorvo did, maybe with a little variation. So that's why it turned out to be this length of time, 22 months."). As support, Dr. Shanfield cited evidence that, rather than spending years developing its own trimming algorithms, Akoustis copied Qorvo's algorithms (right down to the color of the boxes). In particular, in the Summer of 2017, Akoustis needed to develop a trim plan but did not have anyone experienced with trimming. *Id.* 1277:19-1279:13. Akoustis thus hired Joonbum Kwon from Qorvo. *Id.* 1279:7-13; *see also id.* 1206:10-13. Kwon first circulated Qorvo's trimming algorithms in July 2017, with Akoustis recognizing how "helpful" the algorithms were. *Id.* 1279:16-1280:9; *see also* Trial Exs. 12, 123, 215. By October 2017, Akoustis had developed a trimming plan based on the Qorvo algorithms and presented the plan to the Technical Committee of the Akoustis Board of Directors. Tr. 1283:8-24; *see also* Trial Exs. 212, 213, 220. Thus, in three months, Akoustis developed trimming procedures that it had taken Qorvo 20 years to develop. Tr. 1368:15-1369:12.

4. **Trade Secret Group 4—Custom RF connector**

Dr. Shanfield opined that Akoustis obtained a three-month head start from stealing Qorvo's design for a RF connector capable of testing high-frequency products. Tr. 1369:15-1370:7. As support, Dr. Shanfield cited evidence that Akoustis solicited confidential drawings of Qorvo's customized RF connector in November 2016. *Id.* 1290:11-20; *see also* Trial Ex. 221. Akoustis then provided the drawings to a engineer with instructions to copy the drawing. Tr. 1290:24-1291:2; *see also id.* 610:2-612:10. Absent such copying, it would normally take six-to-eight

4

months to design a RF connector based on the time a mechanical engineer would need to design and test possible variations. *Id.* 1369:15-1370:7.

### 5. Trade Secret Group 5—Product development and testing procedures

Dr. Shanfield opined that Akoustis obtained a six-month head start from stealing Qorvo's product development and testing procedures. Tr. 1370:11-13. It took Qorvo years to develop those procedures. *Id.* 1296:14-1371:2; *see also id.* 313:6-11. Dr. Shanfield determined that Akoustis circumvented the time normally necessary to develop such procedures by copying and modifying Qorvo's procedures. *Id.* 1300:2-1301:23. As support, Dr. Shanfield identified numerous instances between 2017 and 2021 where Akoustis had copied Qorvo's documents rather than developing its own procedures, including technology development procedures (*id.* 1300:2-1301:23), product requirements documents (*id.* 1304:18-1311:4), and test plans (*id.* 1301:5-1303:5, 1303:22-1304:15). *See also* Trial Exs. 6, 7, 59, 62, 79-83, 205, 224; Tr. 842:3-844:19.

### 6. Trade Secret Group 6—Reliability testing

Dr. Shanfield opined that Akoustis obtained a 12-month head start from stealing Qorvo's reliability testing procedures. Tr. 1371:6-20. These procedures represent a "treasure trove" of information, including how to set up a testing system, perform the testing, and evaluate the data. *Id.* 1313:9-21; *see also id.* 415:16-22; 417:24-419:12. Qorvo developed the procedures "over the past 25 years." Tr. 419:24-420:5. Dr. Shanfield opined that Akoustis obtained a 12-month head start because it copied Qorvo's procedures rather than developing its own. *Id.* 1371:6-20 (normally takes a company years to establish reliability testing procedures); *see also id.* 416:12-417:2 (Qorvo's procedures "would be a great starting point for anybody in this field to get a head start"). As support, Dr. Shanfield cited evidence showing that Akoustis stole Qorvo's testing procedures in August 2018. *Id.* 1331:12-1332:17; *see also* Trial Exs. 66, 67, 69, 71. Six months later, the person responsible for reliability testing at Akoustis confirmed that the document stolen from

5

Qorvo was "the primary document" Akoustis was using for its testing. Tr. 1332:21-1333:5; *see also* Trial Exs. 72, 73. Akoustis continued to circulate Qorvo's document to test engineers as recently as March 2021. Tr. 1334:17-1335:4; *see also* Trial Ex. 226.

### 7.     Trade Secret Group 7—manufacturing procedures

Dr. Shanfield opined that Akoustis obtained a five-month head start from stealing Qorvo's procedures related to the manufacturing and assembly of BAW filters. Tr. 1371:24-1372:9. These procedures included detailed information necessary to allow manufacturing at scale, including how to qualify the packaging, "reflow" procedures, assembly instructions, and visual inspection procedures. *Id.* 1336:2-1343:2. Dr. Shanfield opined that it would normally take nine or ten months for a company to develop these types of procedures. *Id.* 1372:4-5; *see also Id.* 567:15-24, 576:14-577:7. But Akoustis obtained a five-month head start because it used Qorvo's policies to accelerate the development of Akoustis' policies. *See* Tr. 1343:16-1348:20, 1371:24-1372:9. As support, Dr. Shanfield cited evidence that the engineers responsible for developing Akoustis' procedures circulated Qorvo's documents, met to discuss the documents, and expressly recognized Akoustis was using Qorvo's documents as a basis for its own procedures. *Id.* 1343:16-1348:20; s*ee also* Trial Exs. 197, 292 (stating engineers would review the Qorvo document in "detail" during a meeting; "My suggestion is therefore to use something like the attached process.").

### 8.     Trade Secret Group 8—product roadmaps and prototypes

Dr. Shanfield opined that Akoustis obtained a 15-month head start from stealing confidential documents concerning Qorvo's product roadmaps and product prototypes. Tr. 1372:14-20. Such information gave Akoustis a head start in developing competing products. *See, e.g.*, *id.* 1352:23-1353:6; *see also id.* 504:14-9. As Tony Testa explained, a competitor gets a head start because they would know "specific performance features that we are leveraging," "where we want to differentiate design," and what customers want in the design. *Id.* 504:24-505:9; *see also*

6

*id.* 513:17-514:7, 515:23-516:19, 516:12-517:24. Dr. Shanfield determined that Akoustis obtained a 15-month head start because it had obtained trade secret information concerning Qorvo prototypes—including 5 GHz filters, automotive filters, WiFi 6E filters—long before those products were available on the market and used that information to accelerate Akoustis's product development. *Id.* 1372:19-1373:15; *see also id.* 520:17-22. Dr. Shanfield cited evidence showing near-continuous solicitation and receipt of such information in 2019 and 2020. *Id.* 1353:7-1361:12. For example, Akoustis obtained confidential documents concerning prototypes of 5GHz BAW filters in January 2020, nearly one year before that information was available publicly. Tr. 1356:17-1357:13; *see also* Trial Exs. 127, 128; Tr. 539:24-540:2. Akoustis then provided those materials to the engineer responsible for developing Akoustis' competing product so he could get a head start on the development. Tr. 1357:16-1358:2.

### 9. "Sanity check" of cumulative head start

Dr. Shanfield recognized that Akoustis would have been able to perform many of the tasks associated with the misappropriated trade secrets in parallel. Tr. 1363:2-1364:10. Accounting for the activities that could be performed in parallel, Dr. Shanfield determined that Akoustis gained a cumulative head start benefit of 55 months. *See id.* 1374:8-1375:14. Dr. Shanfield's estimate is supported by the scope of the misappropriation—1,500 confidential documents Dr. Shanfield identified in the possession of 40 different Akoustis employees, representing 46 separate trade secrets. *Id.* 1361:23-1362:15, 1464:1-20. Dr. Shanfield also considered performed a "sanity check" based on the time it takes Qorvo to launch products. *Id.* 1375:10-1376:3. Dr. Shanfield concluded that 55 months was "definitely in the right magnitude" given Dr. Aigner's testimony that it takes Qorvo four-to-five years to develop and launch a BAW filter product. *Id.*

### III. MS. BENNIS REASONABLY RELIED ON DR. SHANFIELD'S OPINIONS

Because Dr. Shanfield's opinions are admissible and supported by substantial evidence, Ms. Bennis reasonably relied upon the head start to calculate Akoustis' unjust enrichment benefit. *E.g.*, D.I. 484-1 (Bennis Rpt.) at 39-41. Had Akoustis not misappropriated Qorvo's trade secrets, it would have needed to acquire additional capital through stock issuance or debt agreements to remain operational—something that even Ms. Irwin has acknowledged. *See* Tr. 2395:3-19.

### IV. CONCLUSION

For the reasons set forth above and in Qorvo's opposition briefs, the Court should deny Akoustis' motions for judgment as a matter of law (D.I. 607) and a new trial (D.I. 613).

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| OF COUNSEL: | */s/ Jeremy A. Tigan* |
| Robert M. Masters<br>Jonathan R. DeFosse<br>Timothy P. Cremen<br>Roy D. Jung<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>2099 Pennsylvania Avenue, NW, Suite 100<br>Washington, DC  20006-6801<br>(202) 747-1900 | Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>Anthony D. Raucci (#5948)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br>araucci@morrisnichols.com |
| Zachary Alper<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>12275 El Camino Real, Suite 100<br>San Diego, CA  92130-4092<br>(858) 720-8900 | *Attorneys for Plaintiff Qorvo, Inc.* |
| Kazim A. Naqvi<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>1901 Avenue of the Stars, 16th Floor<br>Los Angeles, CA  90067<br>(310) 228-3700 |  |
| Jennifer Klein Ayers<br>SHEPPARD, MULLIN, RICHTER & HAMPTON LLP<br>2200 Ross Avenue, 20th Floor<br>Dallas, TX 75201<br>(469) 391-7400 |  |

August 23, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 23, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Stephen B. Brauerman, Esquire<br>Ronald P. Golden III, Esquire<br>BAYARD, P.A.<br>600 North King Street, Suite 400<br>Wilmington, DE  19801<br>*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Ronald S. Lemieux, Esquire<br>David S. Elkins, Esquire<br>Victoria Q. Smith, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>1841 Page Mill Road, Suite 150<br>Palo Alto, CA  94304-1216<br>*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Xiaomei Cai, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>2325 E. Camelback Road, Suite 700<br>Phoenix, AZ  85016<br>*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |
| Rachael A. Harris, Esquire<br>Matthew A. Stanford, Esquire<br>SQUIRE PATTON BOGGS (US) LLP<br>2550 M Street, NW<br>Washington, DC  20037<br>*Attorneys for Defendants Akoustis Technologies, Inc. and Akoustis, Inc.* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)