IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 1:21-cv-01417-JPM |
| v. | ) |
| | ) |
| AKOUSTIS TECHNOLOGIES, INC., and | ) |
| AKOUSTIS, INC., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

Before the Court is Plaintiff Qorvo, Inc's ("Qorvo's" or "Plaintiff's") Motion for Attorney's Fees and Opening Brief in Support, Defendants Akoustis Technologies, Inc. and Akoustis, Inc.'s (collectively, "Akoustis'" or "Defendants'") Response in Opposition, and Plaintiff's Reply in Support. (ECF Nos. 618-19, 625, 640.) Plaintiff seeks $12,116,123.30 in attorney's fees for 15,540.4 hours of work. (ECF No. 619 at PageID 29227.) For the reasons discussed below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

I. **BACKGROUND**

On May 17, 2024, a jury in the District of Delaware found Defendants liable for trade secret misappropriation under the Defend Trade Secrets and North Carolina Trade Secret Act. (ECF No. 601.) The jury found that the misappropriation was willful and malicious, awarded $31,315,214 in unjust enrichment damages and $7,000,000 in punitive damages. (Id.) The jury also found Defendants liable for infringing two claims of United States Patent No. 7,522,018 and two claims

of United States Patent No. 9,735,755. (Id.)  Plaintiff filed the instant Motion on June 17, 2024, Defendants responded on July 25, 2024, and Plaintiff replied on August 8, 2024. (ECF Nos. 619, 625, 640.)  A hearing on this and other post-trial motions was held on August 20, 2024.

II. **LEGAL STANDARD**

Courts may award attorneys' fees to prevailing parties in cases arising under the federal Defend Trade Secrets Act ("DTSA") and North Carolina Trade Secrets Protection Act ("NCTSPA") when the trade secret misappropriation is willful and malicious.  18 U.S.C. § 1836(b)(3)(D) ("In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may . . . if . . . the trade secret was wilfully and maliciously misappropriated, award reasonable attorneys' fees to the prevailing party."); N.C.G.S. § 66-154(d) ("If willful and malicious misappropriation exists, the court may award reasonable attorneys' fees to the prevailing party.").

District courts have "substantial discretion to determine what constitutes reasonable attorneys' fees." United States ex rel. Palmer v. C&D Technologies, Inc., 897 F.3d 128, 137 (citing Pub. Interest Rsch. Grp. of N.J., Inc. v. Windall, 51 F.3d 1179, 1184 (3d Cir. 1995); Rode v. Dellaciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)).  "In a statutory fees case, '[t]he party seeking attorneys' fees has the burden to prove that its request for attorney's fees is reasonable' by 'submit[ting] evidence supporting the hours worked and rates claimed.'" Id. at 139 (citing Rode, 392 F.2d at 1183); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  A reasonable fee calculation begins with the lodestar method, which multiplies the hours reasonably spent on litigation by the reasonable hourly rate for the work completed.  Hensley, 461 U.S. at 433 (1983).  District courts must, if reducing a requested award, "analyze the circumstances requiring the reduction and its relation to the fee . . . [and] make specific findings to support its action." Gunter

2

v. Ridgewood Energy Corp., 223 F.3d 190, 196 (3d Cir. 2000) (quoting Cunningham v. City of McKeesport, 753 F.2d 262, 269 (3d Cir. 1985), vacated on other grounds, 478 U.S. 1015 (1986)) (emphasis omitted).  However, "trial courts need not, and indeed should not, become green-eyeshade accountants." Fox v. Vice, 563 U.S. 826, 838 (2011) (quoting Hensley, 461 U.S. at 437).

III.    **PARTIES' ARGUMENTS**

Plaintiff argues that the jury's verdict established that Akoustis' misappropriation was willful and malicious, and that Qorvo is the prevailing party.  (ECF No. 619 at PageID 29224.)  Plaintiff argues that Akoustis' misappropriation and conduct in litigation also justifies an award of attorneys fees because it "repeatedly sought to evade detection of its misconduct over the course of the lawsuit" and that "efforts to obstruct discovery were pervasive throughout depositions."  (Id. at PageID 29225-26.)  Plaintiff argues that the hours expended (15,520.4) and rate charged are reasonable, and are "substantially discounted and lower than rates often charged in the market." (Id. at PageID 29227.)  Plaintiff notes that the work involved in this case was complex, given the extent of wrongful conduct alleged and litigation behavior by Defendants, that the amount of time dedicated is comparable to that expended on other trade secrets cases, and that their rates are reasonable given the findings of other courts and economic surveys.  (ECF No. 619 at PageID 29228-31.)

Defendants respond first by urging the Court to exercise its discretion under the DTSA and NCTSPA to deny Plaintiff's Request for attorney's fees.[1]  (ECF No. 625 at PageID 30636.) Defendants argue that "there is no evidence that [Defendants] took affirmative steps to purposely

---

[1] Defendants argue that Comment 4 to the Uniform Trade Secrets Act should guide the Court's analysis of the DTSA and NCTSPA's attorney's fees provisions. They have not demonstrated why.  North Carolina is one of only two states that has *not* adopted the UTSA, and while the DTSA created a parallel federal right that is largely duplicative of state UTSAs, it does not incorporate by reference the UTSA's provisions and comments.

3

harm [Plaintiff] . . . [that] the prevailing party has not suffered any actual damages as a result of the alleged misappropriation [and] . . . . [that] the jury's award of exemplary damages . . . is sufficient to penalize Akoustis and deter any future misappropriation." (ECF No. 625 at PageID 30636.) Defendants also argue that what they allege to be abusive litigation conduct by Plaintiff justifies denial or reduction of a fee award, that Plaintiff's fees are unreasonable based on the comparator cases cited, and that certain billing practices justify reductions. (Id. at PageID 30638-40.)

IV. **ANALYSIS**

a. *Discretion to Award Fees*

Defendant concedes that Qorvo may be entitled to attorney's fees, but argues that this Court should exercise its discretion to deny their request for two reasons. (ECF No. 625 at PageID 30643.) Defendants first argue that Plaintiff did not "intend to affirmatively harm Plaintiffs" and "Qorvo could not and did not show that Akoustis took any affirmative steps to inflict harm on Qorvo." (ECF No. 625 at PageID 30544.) Defendants also argue that, based on a comment to the Uniform Trade Secrets Act—which is inapplicable here—the award of fees is not justified in view of the jury's monetary award. (ECF No. 625 at PageID 30646); see supra n.1.

The Court finds that an award of attorney's fees is appropriate here. The jury found that Defendants' conduct was willful and malicious, and Plaintiff was successful on more than three quarters of its claims against Defendant. (ECF No. 601.); Cf. Citcon v. USA, LLC v. Riverpay, 2022 WL 287563, at *2 (9th Cir. Jan. 31, 2022); In re Wilson, 165 F.3d 913 (4th Cir. 1998). The exemplary damages in this case do not preclude an award of attorneys' fees, especially given the breadth of the wrongdoing involved. The willful and malicious misappropriation of trade secrets constitutes harm for liability purposes, even if it does not constitute economic harm. See Bar-

4

Mullin v. Browning, 108 N.C. App. 590, 597 (N.C. App. 1993); Estate of Hurst v. Moorehead I, LLC, 228 N.C.App. 571, 578 (2013) (citing Strates Shows, Inc. v. Amusements of Am., Inc., 184 N.C.App. 455, 462 (2007)); (see also ECF No. 590.)

Defendants do not substantively dispute Plaintiff's lodestar. Plaintiff's have shown that their rates are reasonable given "the prevailing rates in the relevant community." (See ECF No. 619 at PageID 29230-31 (rates charged are under market prevailing rates); ECF No. 671 at PageID 33193:13-18.) See City of Burlington v. Dague, 505 U.S. 557, 559 (quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)) ("What our cases have termed the 'lodestar' is 'the product of reasonable hours times a reasonable rate.'") Accordingly, Plaintiff's lodestar amount of $12,116,123.30 in attorney's fees for 15,540.4 hours of work is accepted.

      b. *Comparator Cases*

Defendants argue that comparator cases do not justify Plaintiff's claims, and the total amount should therefore be reduced by 10%. However, as Defendants articulated at oral argument, they had no concern "as to the fee [Plaintiffs] have charged [but instead] determining what it is they really should receive and not receive." (ECF No. 671 at PageID 33193:13-18.)

Defendants' arguments, to the extent that they were not waived by oral argument, are unavailing. Defendant does not challenge the hourly rate charged by Plaintiff's attorneys, but instead seems to argue that the number of hours expended is unreasonable. Plaintiff's attorneys seek fees for 15,520.4 hours of work in a case involving 397 alleged trade secrets (narrowed to fewer than fifty, for the purposes of presentation at trial) encompassing cutting-edge, highly-complex acoustic wave filter technology. Comparable cases establish that the hours are lower than others found reasonable. See, e.g., Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.,

5

Inc., 2024 WL 115090 (21,000 hours reasonable in complex trade secret case with copyright claims based on "essentially the same proof"). Defendant does not provide countervailing cases or reasons, beyond those discussed below, that Plaintiff's award is unreasonable.

    c. *Fee Reductions*

        i. *Pre-November 2022 Work*

Defendants request a reduction of $1,900,515.43 for work performed prior to November 2022.[2] (ECF No. 625 at PageID 30650.) Defendants argue that because trade secret claims are the sole basis for Plaintiff's Motion for Fees, and Plaintiff did not add trade secret claims until the filing of the Second Amended Complaint in February 2023, "[d]iscovering a plausible trade secret incidentally during the course of discovery of other claims [can] not retroactively justify including attorneys' fees incurred before filing [the] new claims." (ECF No. 625 at PageID 30649.)

At oral argument, Plaintiff argued that the initial Complaint "was asserting allegations that Akoustis had stolen [Qorvo's] confidential information and that is the same core facts as the trade secret claim," justifying inclusion under Hensley. (ECF No. 671 at PageID 33193:3-13.) Plaintiff also argued that Akoustis, in its' Motion for Summary Judgment, "recognize[d] . . . that the unfair competition claim . . . rises and falls on the same facts as Qorvo's misappropriation claim." (ECF No. 671 at PageID 33193:16-18.)

Plaintiff's initial Complaint asserts, *inter alia*, that Akoustis recruited ex-Qorvo employees "focusing on employees with the specialized knowledge of Qorvo's confidential and proprietary

---

[2] Defendants note that they "believe that the case law supports deducting all time entries billed prior to the SAC" but do not request such a reduction or detail what the further reduction amount would be. (Compare ECF No. 625 at PageID 30650 (requesting a reduction of $1,900,515.43 "at a minimum") with ECF No. 625 at PageID 30652 (requesting range of reduction and detailing the dollar value of the upper and lower limits of that range).) The Court therefore only considers the reduction requested, and not the indeterminate upper limit.

information, including Qorvo BAW proprietary information" and that these employees "had routine and repeated access to one or more categories of [] Qorvo BAW Proprietary Information." (ECF No. 1 ¶¶ 47-48.) While the Complaint did not assert trade secret claims, paragraphs 53-58 assert that "ex-Qorvo BAW Employees were hired for the specific purpose of using their knowledge of Qorvo BAW Proprietary Information to permit Akoustis to compete directly against Qorvo for customers and market share," and that "[o]n at least one instance, recruiters . . . expressly asked a Qorvo employee to disclose . . . Qorvo BAW Proprietary Information during the recruitment process [and] . . . asked this Qorvo employee to access Qorvo BAW Proprietary Information from Qorvo's computer systems and share that information on a screen so Akoustis could obtain the confidential information." (ECF No. 1 ¶¶ 53-58.) The Complaint asserted "that Akoustis has used, relied upon, and exploited the Ex-Qorvo BAW Employees' knowledge of the Qorvo BAW Proprietary Information" and "gained an unfair advantage[.]" (ECF No. 1 ¶¶ 55-56.) "Qorvo BAW Proprietary Information" is a defined term in the Complaint that closely mirrors Qorvo's eventual lists of asserted trade secrets.[3] While the Trade Secret claims were articulated more clearly in the Amended Complaint, the common core of facts and related legal theories were present in the initial Complaint. See Hensley, 461 U.S. at 463.

Counsel for Qorvo asserted that billing records for the pre-November 2022 period (and, indeed, the entire billing record) "excluded work unrelated to its trade secret claims," such as

---

[3] (Compare ECF No. 1 ¶ 20 ("Examples of Qorvo's confidential and proprietary information include, but are not limited to, technical expertise and know-how, such as BAW filter designs, specifications, development methods and techniques, material specifications, design tolerances, packaging, quality assurance and testing, manufacturing specifications, methods, and techniques; and business information, such as future product development and refinement plans, pricing information, cost information, marketing and sales strategies, internal organization structures, employee information, and capabilities, as well as supplier lists, customer lists, contracts, demands, desires, and requirements related to BAW filters (together referred to herein as the 'Qorvo BAW Proprietary Information.'") with, e.g., ECF No. 302-1 (listing asserted trade secret categories).)

"where work performed related to Qorvo's claims that Defendants infringed Qorvo's patents." (ECF No. 640 at PageID 31557; ECF No. 621 at PageID 29357 ¶ 5 (Declaration of Jonathan Defosse) (work not relevant to trade secret claims excluded).)  The billing record in the pre-November 2022 period, however, reveals several fully-included billing records that include work unrelated to the trade secret claims, such as:

- An October 19, 2021 entry for "prepare initial disclosures and identification of accused products" by Kevin A. Ryan (1.6 hours, $1,044) (ECF No. 621-1 at PageID 29391.)

- A January 19, 2022 billing record including "review Qorvo patents" by Robert M. Masters (3.0, $3,685.50) (ECF No. 621-1 at PageID 29399.)

- A February 1, 2022 billing record which includes "confer[ing] with J. Defosse concerning damages questions surrounding . . . infringement claims" by Trevor J. Quist (3.4, $2.861.10) (ECF No. 621-1 at PageID 29401.)

- An April 20, 2022 billing record which includes "meeting with team to discuss discovery tasks and invalidity contentions" by Jonathan R. Defosse (1.6, $1,656) (ECF No. 621-1 at PageID 29412.)

- A May 10, 2022 billing record which includes "team meeting to discuss status of discovery responses and preparation of validity/enforceability contentions" by Jonathan R. Defosse (2.2, $2,277) (ECF No. 621-1 at PageID 29416; see also ECF No. 621-1 at PageID 29429 (meeting to discuss "claim construction briefing, infringement analysis, and discovery status").)

- An October 18, 2022 billing record for "Review documents for substantive evidence related to unfair competition and poaching, as well as technical documents related to infringement" by Zachary M. Alper[4] (1.2, $658.00) (ECF No. 621-1 at PageID 29435.)

---

[4] When compared with other document review entries by Mr. Alper in the September – November 2022 period, it is apparent that this refers to reviewing two categories of document, each for a different purpose (technical documents for infringement, and other documents for substantive evidence related to competition and poaching).  When reviewing documents for two or more issues simultaneously, Mr. Alper's records do not distinguish the document groups.  (See, e.g., ECF No. 621-1 at PageID 29432 (September 20, 2022, "Review documents for case-related issues including infringement and unfair competition claims.").)

8

Other fully included narratives are written so broadly that they necessarily include patent claims: for example, on June 29, 2022, Rajesh C. Noronha billed 2.2 hours for "review claims in case and support for each." (ECF No. 621-1 at PageID 29423.) To review all claims in the case necessarily implies review of both excluded and included claims. Similarly, "weekly team meetings" seem to have been billed in full even when the majority of topics were patent-related. (See, e.g., ECF No. 621-1 at PageID 29418 (Jonathan Defosse and Timothy Cremen billing record for May 24, 2022 describing "team meeting to discuss validity contentions, claim terms for construction, and discovery tasks.").)

In addition, while Hensley held that the Court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," it stated only that claims that "are based on related legal theories . . . mak[e] it difficult to divide the hours expended on a claim-by-claim basis," not that fees expended specifically for non-prevailing claims are compensable. 461 U.S. at 435. Accordingly, Plaintiffs have not demonstrated why time expended specifically for legal research on dismissed poaching claims are reasonably compensable. (See, e.g., ECF No. 621 at PageID 29394 ("legal research regarding poaching employees to obtain confidential information and inducing breach of contract in connection with unfair and deceptive trade practices. . .").)

Because the predecessors to successful trade secret claims were asserted in the initial Complaint, and because billing records reveal specific time expended pursuing trade secret claims as early as December 17, 2021, the Court will not categorically exclude all fees prior to November 2022. Because the billing narratives reveal several instances in which non-trade secret claims were included despite best efforts of Plaintiff's team, and block billing practices prevent detailed parsing of a minority of the remaining narratives, the Court will reduce the pre-November 2022 award by

9

10%.  See Live Face on Web, LLC v. Rockford Map Gallery, LLC, 2022 WL 111103 at *2 (D. Del. Oct. 19, 2022) (percentage reduction warranted given "complex nature of the case and abundant billing records.").  Plaintiff's $1,900,515.43 lodestar fee for work performed prior to November 2022 is therefore **reduced by $190,051.54,** resulting in a fee for the pre-November 2022 period of $1,710,463.89 and a total fee of $11,926,071.76.

    ii.  *Allegedly Abusive Litigation Tactics*

Defendants argue that the fee award should be reduced "because Qorvo's litigation tactics, including the decision to pursue an unreasonable number of trade secrets and the refusal to specify the trade secrets at issue or reduce the number until the eve of trial, resulted in excessive fees." (ECF No. 625 at PageID 30650.)  They argue that Qorvo had known since April 3, 2023 that it would have to "pare down" the list of trade secrets but "refused to materially do so until the eve of trial [] [d]espite repeated requests from Akoustis."  (Id. at PageID 30650.)

The Court noted in its Order on Summary Judgment that, while Plaintiff's decision to not reduce the number of asserted trade secrets may be "neither practical nor feasible," "Defendants are not subject to trial by ambush where [Plaintiff's] disclosures [with citations to specific documents] are coupled with detailed analysis in expert reports, and Defendants have had the opportunity to make further inquiry into each alleged trade secret through expert depositions." (ECF No. 545 at PageID 27385-86.)   While the "scope of trade secret allegations [may have] increased attorney hours and fees associated with fact discovery, expert reports[, ] depositions[,] and motions practice[,]" Akoustis has not shown that Qorvo did so unreasonably or in bad faith. (ECF No. 625 at PageID 30651); cf. J.L. v. Harrison Twp. Bd. of Educ., 2016 WL 4430929 (D.N.J. 2016) ("flagrant," "nasty" and "unethical" bad faith conduct by attorney); Fair Housing Ctr. of Central Indiana, Inc. v. Welton, 2020 WL 2218950, *11 (S.D. Ind. May 7, 2020) (discovery

10

conduct was "not reasonable [but rather] unduly cumulative and unnecessarily burdensome"). As this Court wrote at summary judgment, the need for reduction was "a question of trail strategy." (ECF No. 545 at PageID 27486.) Accordingly, given the arguments and citations offered by parties, there is no evidence that Plaintiff's conduct constituted an abusive litigation strategy requiring fee reduction.

### iii. *Block Billing*

Defendants argue that "[a]t least half of the time entries billed by [Plaintiff's] counsel before April 1, 2023, were recorded using block billing that records total daily time working on this case, rather than itemizing the time expended on specific tasks." (ECF No. 625 at PageID 30651.) Defendant seeks a 10-30% reduction "for 50% of the time billed by Sheppard Mullin before April 1, 2023." (Id. at PageID 30652 (citing Live Face on Web, 2022 WL 11110133 at *2; Welch v. Metro Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007)).) Plaintiff responds that "Qorvo voluntarily applied a 52% reduction to 'partially included' time entries" and that Defendants have not identified any specific unreasonably block billed entries. (ECF No. 640 at PageID 31559-60.)

While "[b]lock billing makes it more difficult for courts to review hours expended because we do not know how many hours a lawyer spent on a discrete task[,]" and courts *may* reduce a fee award if block billing appears to have artificially inflated the fees requested to an unreasonable level, block billed hours are not *per se* unreasonable. Simring v. Rutgers, 634 F. App'x 853, 859 (3d Cir. 2015) (vacating an award reduced for block billing and requiring the court to "clarify which specific entries of each lawyer are unreasonable.") Indeed, "there is no authority [in the Third] [C]ircuit categorically prohibiting block billing when submitting invoices for an attorneys' fees motion." MCO & EA LLC v. Silver Globe Inc., 2023 WL 3478466 at *4 (D.N.J. May 15, 2023). While the fees requested are reasonable given the breadth of the claims and work required,

11

the billing narrative reveals several instances in which patent work was not excluded as stated. See supra Section IV.c.i. Sheppard Mullin argues that they deflated their "block billed" entries by 52% prior to filing their request for fees. However, as discussed above, the use of block billing and vague billing narratives makes it impossible to validate whether time expended is properly compensable. Review of the pre-April 2023 entries suggests a good-faith, but occasionally insufficient, effort to properly exclude non-compensable time. To account for the remaining block-billed and inconsistently-billed records, the Court determines that "a 10% . . . reduction . . . of 50% of the time billed by Sheppard Mullin before April 1, 2023," is warranted. (ECF No. 625 at PageID 30652); Live Face on Web, LLC, 2022 WL 111103 at *2. To avoid double counting reductions caused by pre-November 2022 fee objection, the court will take the 10% reduction against the fee amount remaining after Section IV.c.i. The lodestar fee for pre-April 2023 is $3,271,584.00. After the ten percent ($190,051.54) reduction of fees for the period prior to November 2022, $3,081,532.46 in fees remains for work performed before April 2023. A 10% reduction of 50% of the time billed (mathematically, a 5% reduction overall) results in a reduction of $154,076.62. Plaintiff's fee award for work performed prior to April 2023 is therefore **reduced by $154,094.62,** resulting in an award of $3,117,489.38 for work performed prior to April 2023 and a total fee of $11,771,977.14.

      iv.   *Travel Time*

Defendants argue that seven charged instances of travel time are unreasonably charged as part of attorneys' fees. (ECF No. 625 at PageID 30652.) Plaintiff argues, in a footnote, that "the law supports Qorvo's request for these fees." (ECF No. 640 at PageID 31561 (citing Watcher v. Pottsville Area Emergency Med. Serv., Inc., 559 F. Supp. 2d 516 (M.D. Pa. 2008)).) The only case cited by Plaintiffs, however, discusses the routine award of travel expense costs under Federal

Rule of Civil Procedure 54(d)(1), not the cost of attorney travel time billed at attorney work rates. Watcher, 559 F. Supp. 2d. at 539 (citing Bowers v. Foto-Wear, Inc., No. 3:CV-03-1137, 2007 WL 4086339, at *5 (M.D. Pa. Nov. 15, 2007)); Bowers, 2007 WL 4086339 at *5 (discussing travel expenses in analysis of costs under Fed. R. Civ. P. 54(d)(1)). The disputed billing records include "return" time charged as attorney work hours, and not as expenses. (ECF No. 628-19.) The burden is on Plaintiff to demonstrate that expenses are reasonable, and Plaintiff has provided no supportive citation to suggest that attorney travel time is reasonably charged at the same rate as attorney work hours. Moreover, only one of Plaintiff's attorneys included travel time in their request for reasonable fees. (ECF No. 621-1.) Plaintiffs' request for attorneys' fees is therefore **reduced by $24,539.60,** resulting in a total fee award of $11,747,437.54.

v. *Allegedly Overstaffed Depositions*

Defendants argue that because Qorvo had two attorneys present for seventeen (17) out of thirty-one (31) depositions, and billed for both attorneys' time at fifteen (15) of the seventeen (17), they engaged in impermissible "overstaffing and/or top staffing," and should not be compensated for both attorneys' time. (ECF No. 625 at PageID 30653-54 (citing Student Pub. Int. Rsch. Grp. of New Jersey v. Monsanto Co., 721 F. Supp. 604, 611 (D.N.J. 1989)).) Akoustis argues that the identified depositions required "careful preparation, specialized knowledge of the technology, and an encyclopedic understanding" of evidence of hundreds of misappropriated trade secrets, justifying the attendance of two senior attorneys. (ECF No. 640 at PageID 31560 (citing Planned Parenthood v. Attorney Gen. of State of NJ, 297 F.3d 253, 272 (3d. Cir. 2002)).)

The case cited by Defendants involved a fee award in a water pollution case where plaintiffs attorneys claimed they expended 3,499.14 hours and the district court for the District of New Jersey noted that "most of the 'work' related to proving the liability [of defendant for the

13

claims asserted] was done for plaintiffs by [defendant's] monitoring reports." Student Pub. Int. Rsch. Grp., 721 F.Supp. at 610. The district court further noted that "[p]laintiffs were not presented with an unduly difficult, complex, or novel case or one that required a huge amount of time in preparation."[5] Id.

While the instant case did not present legal issues of first impression, it involved state and federal claims related to employee recruitment, alleged theft of hundreds of thousands of documents and hundreds of trade secrets, and patent infringement. Cf. Planned Parenthood, 297 F.3d at 253. Given the technical knowledge required and the breadth of alleged misconduct, "the magnitude of this case mandated the help of numerous attorneys for both parties." Id. Here, Plaintiff and Defendants both used multiple attorneys for depositions, with Defendants triple-staffing at least two of the depositions at which they argue the presence of two Plaintiff's attorneys was unreasonable. (ECF No. 640 at PageID 31561.) The Court therefore finds that depositions were not unreasonably staffed, and will not reduce the fees calculation on this basis.

      vi. *Clerical and Administrative Work*

Defendants argue that entries for clerical or administrative duties, such as printing and shredding, are not compensable. (ECF No. 625 at PageID 30654.) In a footnote, Plaintiff states that "the law supports Qorvo's request for these fees." (ECF No. 640 at PageID 31561 n. 8.) Plaintiff's only cited case, however, does not reference printing and shredding by attorneys in its analysis of appropriate fees. Watcher, 559 F.Supp.2d 516. In analysis of costs, the Middle District

---

[5] The district court's opinion, authored in 1989, also reflects differences in the context of litigation. The court wrote that "overstaffing occurred at trial" because "every day of the trial plaintiffs had three attorneys present" and "[s]eldom in my experience has the presence of more than one attorney per party been absolutely necessary, even in the most complex litigation." Student Pub. Int. Rsch. Grp., 721 F.Supp. at 612. In the case before the Court, no fewer than five attorneys per side were present for each day of trial.

14

of Pennsylvania discusses the per-page cost of printing, but does not discuss costs charged for attorney work which could have been done by administrative staff. Id. at 538-39. Even if Watcher found administrative work performed by attorneys to be compensable, the Third Circuit has held otherwise. Loughner v. University of Pittsburgh, 360 F.3d 173, 180 (3d Cir. 2001). Plaintiff does not argue that the work is not administrative, and review of the records suggests that the four entries in question, for "obtain[ing] [a] printer and print[ing] additional exhibits to Shealy and Kim depositions[,]" (5 hours, $2,600); "[t]ransfer[ing] additional Shealy exhibits" (0.3 hours, $156); "[p]ost deposition shredding and equipment clean ups" (1.5 hours, $780); and "correspond[ence] regarding e-discovery team billing items" (0.3 hours, $156); are administrative in nature and unreasonable to charge using an attorney work rate. (ECF No. 628-21); Loughner, 260 F.3d at 180 ("to claim the same high reimbursement rate [for administrative tasks as for legal work] is unreasonable[,]" even if the work is performed by an attorney.) Accordingly, Plaintiff's request for attorney's fees for these services is **reduced by $3,692.00**, resulting in a total fee award of $11,743,745.54.

V.  **SUMMARY AND CONCLUSION**

For the reasons discussed above, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**. From the lodestar amount of $12,116,123.30, the Court deducts $190,051.54 from fees awarded prior to November 2022**,** $154,094.62 because of block billing, $24,539.60 for uncompensable "return" travel time, and $3,692.00 for administrative work charged at attorney's rates**. Plaintiff is awarded $11,743,745.54  in attorneys' fees.**

**IT IS SO ORDERED**, this 9th day of September, 2024.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE