IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QORVO, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:21-cv-01417-JPM ) ) |
| AKOUSTIS TECHNOLOGIES, INC., and AKOUSTIS, INC., | ) ) ) |
| Defendants. | ) ) |

**ORDER DENYING DEFENDANTS' MOTIONS FOR NEW TRIAL, REMITTITUR, AND JUDGMENT AS A MATTER OF LAW**

Before the Court are Defendants Akoustis Technologies, Inc. and Akoustis, Inc.'s (collectively, "Akoustis'" or "Defendants'") Motions and Opening Briefs in Support of Judgment as a Matter of Law, New Trial, and Remittitur; Plaintiff Qorvo, Inc's ("Qorvo's" or "Plaintiff's") Responses in Opposition, and Defendants' Replies in Support. (ECF Nos. 607, 610, 613–614, 631, 633–34, 639.) For the reasons discussed below, Defendants' Motions are **DENIED**.

I. **BACKGROUND**

On May 17, 2024, a jury in the District of Delaware found Defendants liable for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and North Carolina Trade Secret Protection Act ("NCTSPA"). (ECF No. 601.) The jury found that the misappropriation was willful and malicious, awarded $31,315,214 in unjust enrichment damages and $7,000,000 in punitive damages. (Id.) The jury also found Defendants liable for infringing two claims of United States Patent No. 7,522,018 ("the '018 Patent") and two claims of United States Patent No.

9,735,755 ("the '755 Patent").  (Id.)  Plaintiff filed the instant Motion on June 17, 2024, Defendants responded on July 25, 2024, and Plaintiff replied on August 8, 2024.  (ECF Nos. 619, 625, 640.)  A hearing on this and other post-trial motions was held on August 20, 2024.

## II. PARTIES' ARGUMENTS

Defendants' Motion for Judgment as a Matter of Law reurges their Rule 50(a) Motion, which asserted that Ms. Bennis' head-start damages opinion was based on unreliable methodology and was based on an unreliable and therefore inadmissible opinion from Dr. Shanfield.  (ECF No. 610.)

Defendant's Motion for New Trial or in the Alternative Remittitur first argues that a new trial is justified by an allegedly inconsistent verdict form, repeats the argument that Ms. Bennis' testimony was inadmissible, and argues that the Jury's verdict on patent infringement was against the clear weight of the evidence because "Qorvo failed to introduce sufficient evidence to support a finding of infringement of claims 1 and 12 of the '018 Patent and claims 9 and 10 of the '755 Patent."  (ECF No. 614.)

Qorvo argues that Akoustis waived the plurality of their arguments, that substantial evidence supports the verdict, the inconsistency in the verdict sheet was either reconcilable or harmless, and that both Ms. Bennis' and Dr. Shenfield's testimony was properly admitted.  (ECF Nos. 631, 633.)

## III. LEGAL STANDARD

### a. Judgment as a Matter of Law

A court may grant judgment as a matter of law if it finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . ." Fed. R. Civ. P. 50(a)(1).  Courts assess motions for judgment as a matter of law by determining whether,

"'viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" Eshelman v. Agere Sys., Inc., 554 F.3d 426, 433 (3d Cir. 2009) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)). Judgment as a matter of law "should be granted sparingly," when the record "is critically deficient of the minimum quantum of evidence." Id. "In performing this narrow inquiry, we must refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury." Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007), as amended (Aug. 28, 2007) (citing Lightning Lube, 4 F.3d at 1166).

    b. *New Trial*

A district court "may, on motion, grant a new trial on all or some of the issues. . ." Fed. R. Civ. P. 59(a). New trials can be granted where "the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice," or where "the jury's verdict was facially inconsistent." Zarow-Smith v. N.J. Transit Rail Operations, Inc., 953 F. Supp 581, 585 (D.N.J. Jan. 24, 1997) (citing Roebuck v. Drexel Univ., 852 F.2d 715, 717 (3d Cir. 1988); Mosley v. Wilson, 102 F.3d 85, 90 (3d Cir. 1996)).

IV.   **ANALYSIS**

    a. *Inconsistent Verdict Form*

Defendants argue that the verdict form is inconsistent because "for at least five alleged trade secrets, the jury determined that Akoustis was unjustly enriched by conduct that the jury first determined was not actionable." (ECF No. 614.) Plaintiff argues that the inconsistency in the verdict form was easily harmonized or was harmless. (ECF No. 633 at PageID 31416–18.) Defendants counter, without supportive citation or argument, that the "blatant inconsistencies on

3

the Special Verdict Form" are evidence of "pervasive juror confusion" that "affect[s] the substantial rights of Akoustis[.]" (ECF No. 634 at PageID 31433.)

The verdict form for trade secret claims asked jurors to answer, for each of forty-six alleged trade secrets, whether "Qorvo established by the greater weight or preponderance of the evidence that a) this alleged trade secret qualifies as a trade secret and b) Akoustis is liable for trade secret misappropriation for this trade secret?" and whether "Qorvo established by a greater weight or preponderance of the evidence that Akoustis was unjustly enriched by misappropriating this trade secret?" (ECF No. 601.) In five instances, the Jury found that the answer to the second portion of the question was "yes," but the answer to the first portion was "no." (Id.)

Here, the inconsistency was not irreconcilable. While Akoustis is correct in arguing that trade secret misappropriation cannot be found without the existence of a statutorily recognized trade secret, its careful parsing of the "alleged trade secret" vs. "trade secret" language on the verdict form ignores the fact that parties used "alleged trade secret" and "trade secret" interchangeably throughout trial. Indeed, the jury instructions state that "for each trade secret that Qorvo identifies, Qorvo has to prove by a preponderance of the evidence the following elements: 1) the existence of a trade secret and 2) the misappropriation of that trade secret." (ECF No. 596 at PageID 28687.) This construction—which refers to liability qualified trade secrets and generic asserted trade secrets using the same phrase—was jointly proposed by parties and was not edited by the court. (ECF No. 537 at PageID 26207.) Accordingly, the jury could have interpreted the "trade secret" language in the second portion of Question 1(a) and the jury instruction on unjust enrichment to be the generic "trade secret," finding that while the potential trade secret did not qualify under the specific terms of the misappropriation instruction, Akoustis was "unjustly enriched" by the use of the generic (but not liability qualified) trade secret. Such a finding is not

4

disallowed by the jury instructions: while the jury instructions state that "if you find Qorvo proved that Akoustis misappropriated Qorvo's trade secrets, then you must decide whether Qorvo is entitled to damages on its claim for misappropriation of trade secrets." (ECF No. 596 at PageID 28696; see also ECF No. 537 at PageID 26218 (same language in parties' joint proposed jury instructions).) The second question in Question 1(a) on the verdict form is an intermediate question: it does not ask whether Qorvo is entitled to damages (which would require, under the language of the jury instructions, a finding that the trade secret was misappropriated as a qualified trade secret) but rather for the predicate factual finding that Qorvo was unjustly enriched through misappropriation of a generic trade secret. Accordingly, on the terms of the parties' jointly proposed jury instructions and given the ambiguous use of "trade secret" to both refer to liability qualified trade secrets and generic trade secrets by parties throughout the case, the verdict form is neither inconsistent nor does it demonstrate juror confusion. Cf. Farnsworth v. Marine Basin Inc., 1999 WL 56836 (E.D. La. Feb. 1, 1999) (juror confusion where express instructions to not award damages for two categories simultaneously were ignored).

Even if the verdict was inconsistent, it would not result in a "miscarriage of justice" entitling Defendants to a new trial because it did not impact the finding of liability or the damages award. (ECF No. 601; Tvimm, LLC v. McAfee, Inc., 851 F.3d 1356, 1365 (Fed. Cir. 2017).) Question 1(b) on the verdict form instructed jurors to "[s]tate the amount Akoustis was unjustly enriched by misappropriating Qorvo's trade secrets as to which you have answered "Yes" and "Yes" in Question 1(a) above." (ECF No. 601.) This savings clause prevented any confusion from infecting the damages award.

"Inconsistent jury verdicts are an unfortunate fact of life in law, and should not, in and of themselves, be used to overturn otherwise valid verdicts." Boyanowski v. Cap. Area Intermediate

5

Unit, 215 F.3d 396, 407 (3d Cir. 2000). Here, the jury verdict form is not irreconcilably inconsistent and, even if it were, would not lead to a miscarriage of justice. Accordingly, Defendant's Motion for New Trial on this ground is **DENIED**.

    b. *New Trial on Patent Infringement Claims*

Akoustis argues that "Qorvo relies exclusively on Dr. Bravman's interpretations of Dr. Shanfield's plot graphs to establish infringement for both patents-in-suit," and that "the simulation plots were unreliable and thus insufficient to support the jury's verdict of infringement." (ECF No. 614 at PageID 28992.) Defendants did not object to the reliability of Dr. Shanfield's simulations at the Daubert phase or at trial. Defendants argue that Shanfield's simulations are unreliable and insufficient to support the jury's verdict of infringement because 1) "the lack of [units on the vertical axis of the plot graphs] makes interpreting the plot scientifically unreliable[;]" 2) the data shown in the plots is inconclusive based on the testimony of defense expert Dr. Nguyen, and 3) Dr. Nguyen testified that "the plot graphs are too small to be meaningful for establishing infringement." (ECF No. 614 at PageID 28994.)

Akoustis' arguments are unavailing. Their first argument misstates the record: while the plot graphs used in Shanfield's demonstratives lacked unit measurements, Dr. Bravman testified that he based his analysis on the narrative descriptions and underlying data in Shenfield's report, not on the plot graphs. (ECF No. 616-1 at PageID 29040:3–8 (Bravman Testimony) ("I also considered and used the information provided by Dr. Shanfield and Dr. Heinrich. . . . This is just a summary slide."); id. at PageID 29043:1–4 (Bravman describes reporting a necessary correction to plot graphs based on report's narrative description); id. at PageID 29035:19–22 (Shanfield Testimony) (differentiating between plot graph and "writing").) Accordingly, the lack of unit

6

markers on the plot graphs does not demonstrate that the underlying simulations and narrative on which Dr. Bravman based his testimony are unreliable.

Akoustis cites Shopify Inc. v. Express Mobile, Inc., to support its proposition that "the data shown in the plots is inconclusive" and "inconclusive and seemingly contradictory results cannot serve as the basis for the jury's verdict of infringement." (ECF No. 614 at PageID 28994 (citing Shopify, No. CV 19-439-RGA, 2024 WL 2260900, at *4–6 (D. Del. May 17, 2024)).) Shopify, however, cited several pieces of internally contradictory testimony by the non-movant's expert to find that "unclear, contradictory testimony makes it impossible to have any confidence in the verdict." 2024 WL 2260900, at *6. Here, Akoustis cites the testimony of their expert, Dr. Nguyen, to argue that Dr. Bravman's testimony regarding Dr. Shanfield's plot graphs is unreliable. (ECF No. 614 at PageID 28992–93.) Using Dr. Nguyen's critiques to find Dr. Bravman's testimony internally contradictory when there is no such testimony from Dr. Bravman, however, is unsupported and inapposite to Shopify. See 2024 WL 2260900, at *6. Further, such a finding would improperly invade the province of the jury in crediting the credibility of Dr. Nguyen over Dr. Shanfield. Marra, 497 F.3d at 300.

Akoustis' third argument fails for the same reason: its only citation is to Dr. Nguyen's critical testimony. (ECF No. 614 at PageID 28994.) Using the testimony of a counterparty's expert witness, on its own, to find a methodology unreliable when that methodology was not subject to a Daubert challenge, and when Defendants do not articulate support for a post-trial Daubert challenge, improperly invades the province of the jury and is not grounds for a new trial. Marra, 497 F.3d at 300. Because none of these issues provide a basis for a challenge to the reliability of Dr. Bravman's testimony, they do not "create an unreliable basis for proving

anything," and Defendants cannot meet their burden of persuasion in arguing a new trial is justified. (ECF No. 614 at PageID 28994.)

### c. *Expert Testimony*

#### i. *Procedural Background*

Before trial, Akoustis moved to exclude the testimony and opinions of Plaintiff's damages expert, Melissa Bennis. (ECF Nos. 456–57.) The Court denied that Motion. (ECF No. 553.) Both Ms. Bennis and a defense damages expert, Carlyn Irwin, testified at trial. (ECF No. 610 at PageID 28923–24.) Akoustis did not challenge the testimony of Dr. Stanley Shanfield at the Daubert phase.

#### ii. *Standard for Admission of Expert Evidence*

The Court summarized the standard for admission of expert evidence under Rule 702/Daubert in, *inter alia*, its Order on the Opinions of Dr. Michael Lebby:

> Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise[,]" so long as the proponent of that testimony demonstrates to the court that it is more likely than not that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; []the testimony is based on sufficient facts or data; []the testimony is the product of reliable principles and methods; and []the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.
>
> The trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 594, 597 (1993). The Court "ensur[es] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Bayer Healthcare LLC v. Baltaxa Inc., Case No. 16-cv-1122, 2019 WL 330149, at *1 (D. Del. Jan. 25, 2019) (quoting Daubert, 509 U.S. at 597.) The Third Circuit has framed Rule 702 as "embod[ying] a trilogy of restrictions on expert testimony: qualification, reliability, and fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 749 (3d Cir. 1994) (citing Daubert, 509 U.S. at 579)). "[A] broad range of knowledge, skills and training qualify an expert[,]" so long as the witness possesses specialized expertise. Id. For testimony to be reliable, it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds for his or her belief." Paoli, 35 F.3d at 742. . . .

(ECF No. 546 at PageID 27497.)

### iii. *Admissibility of the Bennis Report*

Defendants' Motions for Judgment as a Matter of Law and New Trial reurge the points made at the Daubert phase.[1] (ECF No. 610 at PageID 28928 ("the Court should find Ms. Bennis' head start benefit opinion inadmissible for the same reasons as set forth in the Bennis Daubert Motion. . ."); ECF No. 614 at PageID 28990–91 (incorporating the arguments from ECF No. 614); see also ECF No. 553.) Defendants argue that the Court should reweigh its earlier decided motion. (ECF No. 610 at PageID 28928.)

Defendants do not, however, provide any reason to reweigh the admissibility of Ms. Bennis' testimony. They argue that she could not provide an example of a case where head start damages were calculated using revenue, and that she is not qualified because she has never before estimated a head start benefit in a trade secret case. (ECF No. 610 at PageID 28930.) These were known factors at the time of the Daubert motion. (See ECF Nos. 456–57, 482, 491.) Moreover, these arguments are unavailing. Whether Ms. Bennis has "estimated a head start benefit in a trade secret case" is irrelevant to her qualifications, which are determined by "academic training and practical experience to determine if the expert has 'more knowledge than the average lay person' on the subject." In re Tylenol (Acetominophen) Mktg., Sales Pracs., & Prod. Liab. Litig., 198 F. Supp. 3d 446 (E.D. Pa. 2016) (quoting Fedor v. Freighliner, Inc., 193 F. Supp. 2d 820, 827 (E.D. Pa. 2002) (citing Waldorf v. Shuta, 142 F.3d 601, 627 (3d Cir. 1998)). Indeed, "Ms. Bennis'

---

[1] Defendants also cite testimony by their damages expert, Carlyn Irwin, who critiqued Ms. Bennis' opinion, and argue that Ms. Bennis failed to include Akoustis' costs in her calculation. Weighing the relative credibility of Ms. Irwin and Ms. Bennis would inappropriately intrude into the province of the jury, and the Court therefore finds these arguments unavailing. Marra, 497 F.3d at 300. Indeed, these criticisms relate to input questions, which, under both prior orders of the Court here and case law of the District of Delaware, go to the weight of the testimony and are properly jury questions. Evolved Wireless, LLC v. Apple Inc., 2019 WL 1178517, at *3 (D. Del. Mar. 12, 2019); ECF No. 553.

9

qualifications to opine on this technique are undisputed: she has an M.B.A. in accounting from Northwestern University's Kellogg School of Management, is a licensed CPA, and is a leader in the Illinois CPA Society." (ECF No. 553 at PageID 28140.) Defendants' argument that Ms. Bennis' methodology is inherently unreliable because it has not been cited in a prior case is likewise unavailing—interpreting Daubert to require methodologies to have been cited previously would require all expert proof to be based on methodologies developed before 1993.

Defendants also argue that "the Court's reference to 'the non-judicial use of revenue' to establish valuation" is in error. (ECF No. 610 at PageID 28929 (citing ECF No. 553 at PageID 28141).) Defendants argue that the Court's text "resembles text from Investopedia.com's definition of the 'Times-Revenue Method'" which includes cautionary notes about use of the times-revenue models to establish startup valuation, and therefore the reference "evidences the unreliability of Ms. Bennis' model." (Id. at PageID 28930–31.) Aside from the use of terms of art ("times-revenue" in both the Order and the quoted Investopedia.com text, and "multiplier based on industry" in the Order to "multiple varies by industry" in the Investopedia.com text), the language of the Order does not "resemble" the quoted language from Investopedia.com. Further, Defendants do not establish why Investopedia.com should be considered a persuasive source of information—the linked page appears to be a search-engine optimized, ad-driven definition summary, albeit one credited to a CFA/Ph.D. author and purportedly "reviewed" and "fact-checked." See Adam Hayes, The Times-Revenue Method: How to Value a Company Based on Revenue, Investopedia (last updated June 15, 2024), https://www.investopedia.com/terms/t/times-revenue-method.asp. Further, the language quoted by Defendants does not establish that Ms. Bennis' methodology is unreliable, but rather that times-revenue "is *not always* a reliable indicator of the value of a firm." (ECF No. 610 at PageID 28931.)

10

Indeed, secondary sources suggest that Bennis' substitution of revenue for profit in determining the headstart benefits Akoustis received is appropriate, given Akoustis' status as a young, startup company. At least one corporate finance textbook on valuation notes that "[f]or new economy firms that have negative earnings, multiples of revenues have replaced multiples of earnings in many valuations." Aswath Damodaran, Investment Valuation: Tools and Techniques for Determining the Value of Any Asset, Ch. 20 (3d Ed. 2012). Revenue multiples (a synonym for the "times-revenue" valuation method) are especially useful for "for very young firms." Id. While times-revenue/revenue multiple valuations can be misleading in some cases, the text teaches clear acceptance of substitution of revenue for earnings in valuations formulas for startups. (See ECF No. 610 at PageID 28930 (quoting ECF No. 553 at PageID 28139–40) ("the times-revenue formula is well-trodden ground for comparing valuation of pre-profit startups in the same field, but is not generally accepted as an appropriate way to establish objective valuation without the use of a multiplier based on industry.").)

To be clear, the Court does not conflate general acceptance of substitution of revenue for profits in market valuations for general acceptance of substitution of revenue in Ms. Bennis' formula. (ECF No. 553 at PageID 28141 (noting that while Ms. Bennis' substitution was not generally accepted, "Daubert . . . rejected general acceptance as the sole basis to assess a methodology.").) Instead, the Court determined in its Daubert analysis, and reaffirms here, that the substitution of revenue for profits in pre-profit startups ("very young firms") provides a basis in secondary sources for the profit to revenue substitution. (See id. at PageID 28139.) As Defendants note in their Motion, "the only difference between the head start methodology and Ms. Bennis' new one is her substitution out of profit in favor of revenue." (ECF No. 610 at PageID 28931.) Further, Defendants' reference to Investopedia.com's definition of the "Times-Revenue

11

Method," (id. at PageID 28930–31), does not change the Court's previous Daubert analysis that Ms. Bennis' methodology is reliable. (ECF No. 553 at PageID 28141.) Specifically, "the qualifications of the expert, the non-judicial use of revenue to establish valuation, and the close relationship of Ms. Bennis' methodology to a methodology established to be reliable . . . all make it more likely than not that Ms. Bennis' methodology is reliable under the meaning of Federal Rule of Evidence 702." (Id.)

    iv.  *Admissibility of the Shanfield Head Start Testimony*

Defendants did not object to Dr. Shenfield's testimony at the Daubert stage. Defendants now argue that because he was not able to "identify the precise source for his opinion regarding the duration of either the 55-month cumulative head start, or the specific head start period for each alleged trade secret or trade secret group[,]" he demurred or provided inconsistent answers regarding the basis for his report, and, in one exchange on cross-examination, admitted he did not consider facts related to Akoustis' acquisition of a fabrication facility, Dr. Shanfield's testimony must be disregarded. (ECF No. 610 at PageID 28921–23.) Defendants then argue that "Dr. Shanfield's trial testimony . . . makes clear that each component of the 55-month head start period was seemingly plucked from thin air—he provided no specific source, analysis, or other support for how he arrived at the monthly allocations comprising the 55-month duration." (ECF No. 610 at PageID 28934.) Defendants do not provide any citation to Dr. Shenfield's report. (ECF No. 610 at PageID 28936.)

Dr. Shanfield's report, in discussing his head start calculation, "cites to [specific] facts and documents . . . to support his analysis, based on his experience in the field." (ECF No. 546 at PageID 27500 (admitting testimony of Defense expert Dr. Michael Lebby under Rule 702) (citing Allscripts Healthcare, LLC v. Andor Health, LLC, No. 21-704-MAK, 2022 WL 3021560, at *25

and n.202 (D. Del. July 29, 2022) (citing Better Commc'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 329 (3d Cir. 2002) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999))).  Dr. Shanfield's report discusses benchmarks from RFMID's New Technology Development Policy, Akoustis Documents, Qorvo Documents, and his own experience used in crafting his head start opinion.  (See, e.g., Expert Report of Dr. Shanfield ("Shanfield Rep."), at *483 (citing Qorvo's development process and related documents to estimate 3-month head start benefit); *486 (citing to revision history of RMFD and comparing it to Qorvo's own revisions to estimate that Akoustis received a two-month head start advantage from misappropriating a technology development process); *491 (detailing the bases from his experience that led Shanfield to arrive at head start periods for specific BAW research).)  "His qualifications . . . bear directly on his opinions on the development process, and he articulates the ways in which his experience informs his interpretation of the facts in the record."  (See ECF No. 546 (discussing Dr. Lebby).)

When an expert's opinion is based on their experience, "[t]he relevant reliability concerns will focus upon personal knowledge and experience of the witness and the methodology used will be applying that experience to the facts of the case."  Allscripts, 2022 WL 3021560, at *25.  Here, the connection and articulation of Dr. Shanfield's experience through his 501-page report, and the nineteen-page section specifically devoted to calculation of the head start period, articulates a clearer connection between his experience and his interpretation of facts and documents in the record than the portions of Dr. Lebby's included at the Daubert phase.  (Compare Shanfield Rep. with Expert Report of Dr. Lebby.)  That Dr. Shanfield was not able to identify specific documents and sources from a five hundred page report while testifying may impugn his credibility or the weight of his evidence, but it does not establish that the factual bases for his opinion were *ipse dixit*.  Accordingly, Defendant's arguments as to his testimony relate to questions properly before

the jury, not questions of admissibility. <u>Marra</u>, 497 F.3d at 300. Defendants have not shown that Dr. Shenfield's testimony was inadmissible.

      v. *As Grounds for New Trial*

Because both Ms. Bennis' and Dr. Shanfield's opinions are admissible under <u>Daubert</u>, <u>see</u> <u>supra</u> Section IV.C.iii–iv, the jury's award was based on admissible record evidence and "the failure to strike Ms. Bennis' testimony" was not prejudicial error. (Cf. ECF No. 614 at PageID 28990.) Accordingly, Defendants' Motion for New Trial is **DENIED**.

      vi. *As Grounds for Judgment as a Matter of Law*

Because both Ms. Bennis' and Dr. Shanfield's opinions were admissible under <u>Daubert</u>, <u>see</u> <u>supra</u> Section IV.C.iii–iv, Defendants' argument fails. Accordingly, Defendants' Motion for Judgment as a Matter of Law is **DENIED**.

    d. *Remittitur*

Defendants' request for remittitur does not provide any independent grounds for relief. (ECF No. 614 at PageID 28991–92.) Because Defendants' request for remittitur asserts the same grounds for relief the Court rejected in Defendants' Motions for Judgment as a Matter of Law and New Trial, it is **DENIED**.

    V.   **CONCLUSION**

For the reasons discussed above, Defendants' Motion for Judgment as a Matter of Law is **DENIED**. Defendants' Motion for New Trial or in the Alternative for Remittitur is **DENIED**.

    **IT IS SO ORDERED**, this 31st day of October, 2024.

                                                    /s/ Jon P. McCalla
                                                    JON P. McCALLA
                                                    UNITED STATES DISTRICT JUDGE